SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Uniformed Fire Officers Association; Uniformed Firefighters Association of Greater New York; Correction Officers' Benevolent Association of the City of New York, Inc.; Police Benevolent Association of the City of New York, Inc.; Sergeants Benevolent Association; Lieutenants Benevolent Association; Captains Endowment Association; and Detectives' Endowment Association,<br><br>                Petitioners/Plaintiffs,<br><br>   -against-<br><br>Bill de Blasio, in his official capacity as Mayor of the City of New York; the City of New York; Daniel A. Nigro, in his official capacity as the Commissioner of the Fire Department of the City of New York, Cynthia Brann, in her official capacity as the Commissioner of the New York City Department of Correction; Dermot F. Shea, in his official capacity as the Commissioner of the New York City Police Department; the Fire Department of the City of New York; the New York City Department of Correction; the New York City Police Department; Frederick Davie, in his official capacity as the Chair of the Civilian Complaint Review Board; and the Civilian Complaint Review Board,<br><br>             Respondents/Defendants. | Index No.:<br><br><br>**VERIFIED PETITION/ COMPLAINT UNDER ARTICLE 75, UNITED STATES AND NEW YORK CONSTITUTIONS, COMMON LAW, AND ARTICLE 78 SEEKING INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**ORAL ARGUMENT REQUESTED** |

Petitioners/Plaintiffs Uniformed Fire Officers Association, Uniformed Firefighters Association of Greater New York, Correction Officers' Benevolent Association of the City of New York, Inc., Police Benevolent Association of the City of New York, Inc., Sergeants Benevolent Association, Lieutenants Benevolent Association, Captains Endowment Association, and Detectives' Endowment Association ("Petitioners" or the "Unions"), by and through their undersigned attorneys, as and for their Verified Petition and Complaint, allege as follows:

1

## PRELIMINARY STATEMENT

1.      This case challenges Respondents/Defendants' ("Respondents") unilateral pronouncements that they will begin the release as soon as July 15, 2020, of records concerning disciplinary matters against retired and active individual New York City police officers, firefighters, and corrections officers, including those that are non-final, unsubstantiated, unfounded, exonerated, or resulted in a finding of not guilty ("Unsubstantiated and Non-Final Allegations") and confidential settlement agreements, in the wake of the repeal of Civil Rights Law § 50-a.  These Unsubstantiated and Non-Final Allegations—unproven allegations at best and false allegations at worst—will be "data dumped" on the internet, resulting in the publication and promotion of information that will absolutely destroy the reputation and privacy—and imperil the safety—of many of those firefighters and officers.  This indiscriminate release would, among other harms:

- Violate Petitioners' Collective Bargaining Agreements with the Respondents;

- Violate the Due Process Clauses of the United States and New York State Constitutions, and irrevocably and unfairly stigmatize Petitioners' members;

- Breach thousands of settlement agreements entered into in good faith with the Respondents with the promise and expectation of confidentiality; and

- Arbitrarily and capriciously reverse longstanding city and State practice of deeming unsubstantiated allegations to be protected from disclosure, separate and apart from the provisions of § 50-a.

2.      This is not a challenge to disclosure of proven and final disciplinary matters—*i.e.*, those that at least have been vetted through an evidence-based investigative and adjudicatory process that includes basic due process protections.  This is a challenge to protect Petitioners'

members' rights that will be violated when Respondents release these Unsubstantiated and Non-Final Allegations within days, in what amounts to a massive public data dump.

3.      It takes no evidence to make a complaint against a firefighter, corrections officer, or police officer.  Baseless claims can be levied for any number of nefarious motivations.  Without the safeguards of proof and finality, the lives of firefighters, officers, and their families may be irreparably ruined.  Take, for example, the privacy violation and damage to firefighters' or officers' families of releasing unfounded allegations relating to domestic disputes, or an unfounded accusation of racial bias.  If Respondents are permitted to promote and publish on the internet these Unsubstantiated and Non-Final Allegations, Petitioners' members will suffer irreparable harm. The Unsubstantiated and Non-Final Allegations will remain forever in the public domain creating limitless and eternal notoriety, even if they are found to be false and unproven.

4.      Although the repeal of Civil Rights Law § 50-a eliminates a categorical prohibition to the public review of law enforcement records, it does not obliterate pre-existing contractual rights or constitutional and common law protections that all citizens, including the Petitioners, share, which forbid Respondents from promoting unproven, defamatory allegations to the world at large.

5.      **Collective Bargaining Agreements/CPLR Article 75**: Each of the Petitioners has entered into a Collective Bargaining Agreement ("CBA") with their respective agencies and the City governing the terms and conditions of their employment.  The CBAs protect Petitioners against the release of Unsubstantiated and Non-Final Allegations.  The Respondents have no lawful right to unilaterally violate those terms, and render them null and void, or to impose new terms, without following the provisions of the NYC Collective Bargaining Law, including those laws relating to the arbitration of grievances.  In addition, at least some of the Petitioners have

filed (or will be filing) grievances under their respective CBAs.  Pending final determination of those grievances through the collective bargaining process, Respondents must be enjoined under Article 75 of the CPLR.

6.     **Due Process and Equal Protection**: The indiscriminate disclosure on the internet of unproven allegations without due process of law is functionally irreversible, and will create unfair, unlawful, and limitless notoriety for the Petitioners, with substantial impact to their future employment prospects.  Such a release would destroy the reputations and imperil the safety of those firefighters and officers and their families forever—all while the Respondents treat other City employees fairly by protecting their privacy.  The release of Unsubstantiated and Non-Final Allegations constitutes a violation of the Due Process and Equal Protection Clauses of the United States and New York State Constitutions, and treats law enforcement officers different than other city employees for whom unsubstantiated allegations are maintained as private.

7.     **Contract Rights for Past Settlements**: The data dump will also include accusations that resulted in settlement agreements.  Such disclosure will breach those settlement contracts.  Any settlement agreement entered into before June 2020—when Civil Rights Law § 50-a, which shielded disclosure of disciplinary records, was repealed—necessarily incorporated § 50-a's protections against disclosure of this very type of information.  New York's recent repeal of § 50-a does not alter these existing contracts, nor was it ever intended to do so.

8.     **CPLR Article 78**: In addition, release of such Unsubstantiated and Non-Final Allegations would also constitute errors of law and be arbitrary and capricious agency action as an unwarranted and irreversible invasion of the right to privacy.  ***Respondents themselves have asserted for decades that release of Unsubstantiated and Non-Final Allegations would be an unwarranted invasion of privacy***.  It is an error of law and arbitrary and capricious for the

Respondents to change decades of agency practice on the protections afforded Unsubstantiated and Non-Final Allegations under the pretext of the repeal of § 50-a.  Thus, Respondents' actions violate Article 78 of the CPLR.

9.      The Respondents have not identified whose records will be released, the content of those records, or made any determination of the consequences to the safety, reputation, or privacy of the implicated officers.  Pending a determination of the claims asserted in this action, the Respondents must be restrained from the release and promotion on the internet of Unsubstantiated and Non-Final Allegations and confidential settlement agreements—otherwise, the Respondents would make this lawsuit an empty ritual, incapable of protecting the reputation, privacy, and safety of hundreds of New York City's firefighters, police, and corrections officers.  There would be no material prejudice to the Respondents from the entry of provisional relief, but in the absence of provisional relief, the damage to the Petitioners would be irreversible.  To protect Petitioners' rights, Petitioners respectfully request temporary, preliminary, and permanent injunctive relief on all claims, barring the release of records regarding Unsubstantiated and Non-Final Allegations or that regard settlement agreements entered into prior to June 12, 2020.

## PARTIES

10.     Petitioner Uniformed Fire Officers Association ("UFOA") is the duly certified collective bargaining representative of officers of the Fire Department of the City of New York in the rank of Lieutenant, Captain, Battalion Chief, Deputy Chief (except those Deputy Chiefs designated as Deputy Assistant Chief of Department, Assistant Chief of Department and Chief in Charge), Fire Medical Officer, and Supervising Fire Marshal.  Upon information and belief, UFOA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, UFOA seeks to protect the interest of these and other UFOA members.

11.     Petitioner Uniformed Firefighters Association of Greater New York ("UFA") is the duly certified collective bargaining representative of officers Fire Department of the City of New York in the rank of Firefighter and Fire Marshal.  Upon information and belief, UFA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, UFA seeks to protect the interest of these and other UFA members.

12.     Petitioner Correction Officers' Benevolent Association of the City of New York, Inc. ("COBA") is the duly certified collective bargaining representative of officers of the New York City Department of Correction ("NYCDOC") in the rank of Correction Officer.  Upon information and belief, COBA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, COBA seeks to protect the interest of these and other COBA members.

13.     Petitioner Police Benevolent Association of the City of New York, Inc. ("PBA") is the duly certified collective bargaining representative of all officers of the New York City Police Department in the rank of Police Officer.  Upon information and belief, PBA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, PBA seeks to protect the interests of these and other PBA members.

14.     Petitioner Sergeants Benevolent Association ("SBA") is the duly certified collective bargaining representative of all officers of the New York City Police Department in the rank of Sergeant.  Upon information and belief, SBA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, SBA seeks to protect the interests of these and other

SBA members

15.     Petitioner Lieutenants Benevolent Association ("LBA") is the duly certified collective bargaining representative of all officers of the New York City Police Department in the rank of Lieutenant.  Upon information and belief, LBA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, LBA seeks to protect the interests of these and other LBA members.

16.     Petitioner Captains Endowment Association ("CEA") is the duly certified collective bargaining representative of all officers of the New York City Police Department in the rank of Captain.  Upon information and belief, CEA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, CEA seeks to protect the interests of these and other CEA members.

17.     Petitioner Detectives' Endowment Association ("DEA") is the duly certified collective bargaining representative of all officers of the New York City Police Department in the rank of Detective.  Upon information and belief, DEA members will be named in the data that Respondents plan to make public and would suffer a concrete and particularized injury by the release, which is imminent.  By this action, DEA seeks to protect the interests of these and other DEA members.

18.     Respondent Bill de Blasio is the Mayor of the City of New York (the "Mayor") and is named in his official capacity.  The Mayor's principal place of business is located at City Hall, New York, New York 10007.

19.     Respondent the City of New York (the "City") is a municipal corporation organized

and existing under New York state law.  The City's principal place of business is located at City Hall, New York, New York 10007.

20.     Respondent Daniel A. Nigro ("Commissioner Nigro") is the Commissioner of the Fire Department of the City of New York and is named in his official capacity.  Commissioner Nigro's principal place of business is located at 9 MetroTech Center, Brooklyn, New York 11201.

21.     Respondent the Fire Department of the City of New York ("FDNY") is a municipal fire department administered under the New York Administrative Code, Title 29 of the City of New York.  FDNY's principal place of business is located at 9 MetroTech Center, Brooklyn, New York 11201.

22.     Respondent the New York City Department of Correction ("NYCDOC") is a municipal fire department administered under the New York Administrative Code, Title 9 of the City of New York.  NYCDOC's principal place of business is located at 75-20 Astoria Boulevard, East Elmhurst, New York 11370.

23.     Respondent Cynthia Brann ("Commissioner Brann") is the Commissioner of the New York City Department of Correction and is named in her official capacity.  Commissioner Brann's principal place of business is located at 75-20 Astoria Boulevard, East Elmhurst, New York 11370.

24.     Respondent Dermot F. Shea ("Commissioner Shea") is the Commissioner of the New York City Police Department and is named in his official capacity.  Commissioner Shea's principal place of business is located at One Police Plaza, New York, New York 10038.

25.     Respondent the New York City Police Department ("NYPD") is a law enforcement agency administered under the New York Administrative Code, Title 14 of the City of New York. NYPD's principal place of business is located at One Police Plaza, New York, New York 10038.

26.     Respondent Frederick Davie ("Chair Davie") is the Chair of the Civilian Complaint Review Board and is named in his official capacity.  Chair Davie's principal place of business is located at 100 Church Street, 10th Floor, New York, New York 10007.

27.     Respondent the Civilian Complaint Review Board ("CCRB" or "the Board") is an independent municipal agency constituted under § 440 of the Charter of the City of New York. CCRB's principal place of business is located at 100 Church Street, 10th Floor, New York, New York 10007.

## JURISDICTION AND VENUE

28.     This action is brought against the City and the Mayor in his official capacity under Articles 75 and 78 of the CPLR to challenge their role in directing Respondents to publicly release Unsubstantiated and Non-Final Allegations in violation of applicable law and in an arbitrary and capricious manner, and in violation of the terms of Petitioners' CBAs and applicable settlement agreements.

29.     This action is brought against the NYPD and Commissioner Shea in his official capacity under Articles 75 and 78 of the CPLR to challenge the NYPD's planned release of Unsubstantiated and Non-Final Allegations in violation of applicable law and in an arbitrary and capricious manner, and in violation of the police Petitioners' CBAs and applicable settlement agreements.

30.     This action is brought against the FDNY and Commissioner Nigro in his official capacity under Articles 75 and 78 of the CPLR to challenge the FDNY's planned release of Unsubstantiated and Non-Final Allegations in violation of applicable law and in an arbitrary and capricious manner, and in violation of the firefighter Petitioners' CBAs and applicable settlement agreements.

31.     This action is brought against the NYCDOC and Commissioner Brann in her

official capacity under Articles 75 and 78 of the CPLR to challenge any planned DOCs release of Unsubstantiated and Non-Final Allegations in violation of applicable law and in an arbitrary and capricious manner, and in violation of correction Petitioners' CBA and applicable settlement agreements.

32.    This action is brought against the CCRB and Chair Davie under Article 78 of the CPLR to challenge the CCRB's release of Unsubstantiated and Non-Final Allegations in violation of applicable law and in an arbitrary and capricious manner.

33.    This action is also brought against all Respondents under the general original jurisdiction of this Court under Article VI, Section 7 of the New York Constitution.

34.    This Court has personal jurisdiction over all Respondents under CPLR § 301 because Respondents work in or conduct substantial business within New York.

35.    The Court also has jurisdiction under CPLR § 3001.

36.    This action is timely under CPLR § 217 (1) because it was brought within four months of June 16, 2020, the first time Mayor de Blasio announced the City's intention to release unsubstantiated resolved complaints against NYPD officers, including law enforcement officers represented by Petitioners.

37.    Venue is proper in this Court under CPLR §§ 503(a), 506(b), and 7804(b).

38.    The Unions have associational standing to sue here because (1) one or more of every unions' members has standing to sue; (2) the interests advanced by vindicating the rights of the members are sufficiently germane to the Petitioners' purposes to demonstrate that Petitioners will appropriately represent the members' interests; and (3) the participation of the individual members is not required to assert the claim or to afford the Petitioners complete relief. *See Westchester Cnty. Dep't of Pub. Safety Police Benev. Ass'n, Inc. v. Westchester Cnty.*, 35 A.D.3d

592, 594, 828 N.Y.S.2d 412, 414 (2d Dep't 2006).

## BACKGROUND

### A.      The Disciplinary Process and Handling of Complaints Against Officers

39.     Complaints against NYPD, FDNY and DOC officers may be brought by civilians, inmates, other officers, or by the Departments themselves.  There are numerous avenues for complaints to be made against officers, and it can be done as easily as anonymously calling 311 or sending an anonymous email:

- **NYPD**: In addition to being reported internally through the chain of command, complaints against any NYPD office may be reported in person, by telephone via NYC's 311 hotline, or via the CCRB's dedicated hotline, by email or mail to the CCRB, the Internal Affairs Bureau of NYPD, or directly to the New York City Inspector General for the NYPD.
- **FDNY:** A complaint against an FDNY officer may be reported internally through chain of command, to the FDNY confidential complaint telephone line, or directly to the Inspector General for the FDNY.
- **NYCDOC:** A complaint against a DOC officer may be reported by an inmate grievance through the Office of Constituent and Grievances Services, internally through chain of command, through the NYC Board of Corrections, or directly to the Inspector General for NYCDOC.

40.     The disciplinary processes of the NYFD, NYDOC, and NYPD are similar.  For police, the NYPD procedures involve complaints and investigations, followed potentially by a proceeding where necessary and a final discretionary decision by the Commissioner.

41.     For example, a complaint against an NYPD officer may be reported to the CCRB, the Internal Affairs Bureau of NYPD ("NYPD-IAB"), or the Office of Inspector General for NYPD ("NYPD-OIG").  Complaints may be brought by fellow officers, civilians, or the NYPD itself.  Civilian and officer complaints may be made anonymously.

42.     Once a complaint is lodged, it is investigated by the CCRB, NYPD-IAB, or the NYPD's Force Investigation Division ("NYPD-FID").  NYPD-IAB investigates most complaints alleging serious misconduct brought against officers.  CCRB investigates complaints made by

members of the public against officers involving allegations of use of force (with the exception of those in the category of "readily capable of causing death or serious physical injury," which will be investigated by NYPD-IAB or NYPD-FID), abuse of authority, discourtesy, and offensive language.  NYPD-FID investigates all firearms discharges, fatalities related to police action, and cases when a subject of police action is seriously injured and death is likely.

43.     After being investigated, an allegation is designated as "unfounded" when the investigation determines that it did not occur.  An allegation is designated as "unsubstantiated" if the investigators do not believe a preponderance of the evidence supports that the conduct described in the complaint occurred.  An officer may be "exonerated" if the investigation finds that the conduct occurred but was not improper.

44.     If the investigation concludes that the conduct occurred in whole or in part and was at least somewhat improper, the investigating entity will make a recommendation for the officer to be subject to certain discipline and/or training or, in serious cases, for the officer be served with Charges and Specifications, which detail the specific provisions of the Department's rules and regulations alleged to have been violated, but there is no final determination that the allegation is true.

45.     If Charges and Specifications are filed, the officer may elect to proceed to trial before an appointed Trial Commissioner, whose responsibility it is to determine whether the charges were proven by a preponderance of the credible evidence and, if so, what penalty should be imposed.  The Trial Commissioner provides a written recommendation which summarizes the evidence and recommends a finding and, if appropriate, a disciplinary penalty. The Commissioner makes the final determination on whether to accept the Trial Commissioner's recommendation, and whether and to what degree discipline should be imposed

46.     Although some Charges and Specifications filed against officers relate to purely technical infractions, such as lateness, record keeping, and lost/damaged property, many of the Charges filed relate to significantly more serious allegations.

47.     The vast majority of NYPD complaints are never proven, even by the relatively low preponderance-of-the-evidence standard.

48.     A January 2019 Independent Panel Report regarding the NYPD Disciplinary System reported that approximately 55,000 annual complaints are made against NYPD officers through the CCRB and NYPD's Advocate Office.  *See The Report of the Independent Panel on the Disciplinary System of the New York City Police Department,* Mary Jo White et. al., Jan. 25, 2019, at p. 7 (the "2019 Panel Report").  However, less than 1% of those complaints resulted in a disciplinary trial or settlement, presumably reflecting both the vast number of frivolous complaints made, and the fact that most disciplinary measures are instituted for violation of department rules, many of which are appropriately dealt with through command discipline.[1]  "[O]ver 60% of the Department's disciplinary cases are settled," *see* 2019 Panel Report at 7; as discussed below (*see infra* at F), officers who entered into Settlement agreements did so on the assumption that that these settlement agreements would remain private pursuant to CRL § 50-a.

49.     Although they vary in some respects, NYFD and NYDOC have similar tiered procedures to investigate complaints against firefighters and correctional officers, but also provide for further review by the Office of Administrative Trials and Hearings.

**B.     Respondents Announce Data Dump of Previously Confidential Records**

50.     Despite that many of these allegations are never proven and some are found to be

---

[1] *See Rebuttal from the Sergeant's Benevolent Association,* Ed Mullins, February 11, 2019, at p. 7 (reflecting approximately 150 NYPD disciplinary cases tried per year, and approximately 300 cases "settled" per year).  *See also NYPD REPORT: Discipline in the NYPD,* 2019 (last accessed 07.12.2020 at https://www1.nyc.gov/assets/nypd/downloads/pdf/analysis_and_planning/discipline/discipline-in-the-nypd-2019.pdf.

completely unfounded, the Mayor, NYPD, and CCRB have indicated that they intend to release all disciplinary records of firefighters, corrections officers, and police officers, including Unsubstantiated and Non-Final Allegations, in a series of data dumps into internet databases starting as early as July 15, 2020.

51.     During a July 1 meeting, the NYPD provided Petitioners with a sample of the DADS data it anticipated producing.  The sample reflected information relating to 137 "open pending disciplinary cases" against NYPD captains, lieutenants, sergeants, and officers ranging from minor technical infractions—for example, leaving the home without authorization while on sick leave—to serious crimes. At other times, the NYPD said it would promote on the internet all pending matters, which are by definition unproven. In any case, there is an immediate threat of the release of Unsubstantiated and Non-Final Allegations that must be enjoined.

### C.     Release of Unsubstantiated and Non-Final Allegations Violates Collective Bargaining Agreements between the City and Certain Petitioners

52.     The release of Unsubstantiated and Non-Final Allegations would nullify important contractual rights in the collective bargaining agreements ("CBAs") between most Petitioners and the City.[2]  The CBAs entered into by Petitioners SBA, PBA, LBA, CEA, COBA, UFA and UFOA, expired but currently controlling pursuant to the Triborough Amendment, provide their members with a contractual right to have investigative reports that are classified as "exonerated," "unfounded," or—in the case of the FDNY, otherwise "not guilty"—removed from their personnel folders.

53.     For example, Article XV, section 7(c) of the CBA entered into between the SBA and the City states that the NYPD "will upon written request to the Chief of Personnel by the

---

[2] Petitioners' CBAs are attached to this Petition as Exhibit 2 (SBA), Exhibit 3 (PBA), Exhibit 4 (LBA), Exhibit 5 (CEA), Exhibit 6 (DEA), Exhibit 7 (COBA), Exhibit 8 (UFA), and Exhibit 9 (UFOA).

individual employee, remove from the Personnel Folder investigative reports which, upon completion of the investigation are classified 'exonerated' and/or 'unfounded'."  With the exception of the DEA, the other police and also the correction Petitioners' CBAs have substantively identical provisions.[3]

54.     The police Petitioners' CBAs also permit them to petition the Police Commissioner to expunge the records of certain cases heard in the Trial Room where the disposition of the charge at trial or on review or appeal is other than "guilty," after 2 years have passed.  *See*, *e.g.*, LBA CBA Article XVI, § 8 ("Disciplinary Records").

55.     Similarly, Article XVII Section 9 of the CBA entered into between the UFA and the City states:

> If an employee is found not guilty in a disciplinary hearing, the record of the proceedings shall not become part of that employee's personal record.  An employee who is found not guilty shall have the right to examine that employee's personal record in the presence of an official of the Department after written request to the Department to ascertain compliance.

UFA CBA, Article XVII, § 9.  The UFOA CBA contains an identical provision.  *See* UFOA CBA, Article XVII, § 9.  Likewise, under COBA's CBA Article XVI, any member may have removed from her or her personnel folder investigative reports that are classified exonerated or unfounded. Under DOC Directive 4257R-A, VI(6), a violation of which is grievable under the CBA, when at a command disciplinary hearing a Hearing Officer determines that the allegations are not substantiated, no record of the command disciplinary charges is to be maintained except in the command discipline log.  Under that same directive, article X, a substantiated command discipline

---

[3] *See* LBA CBA, Art. XVI, § 7(c); CEA CBA, Art. XIV, § 6(c); PBA CBA, Art. XVI, § 7(c), COBA CBA, Art. XVI, § 11.  The COBA CBA also notes that: "The past disciplinary or work record of an employee may not be revealed during a Section 75, Civil Service Law, disciplinary proceeding until a determination as to guilt or innocence of the member has been determined."  COBA CBA, Art. XVI, § 12.

shall be expunged from the member's personnel folder after one year if they have not been penalized thereafter in a separate disciplinary matter during that time.

56.     Respondents' planned action of dumping all pending and historical disciplinary complaints against New York City police, fire and corrections officers on a public-facing online database, without any review or analysis, would functionally negate the rights of officers to clear their disciplinary records of unfounded and unsubstantiated allegations, where that information would forever be publicly available in the future.

57.     The rights contained in Petitioners CBAs were negotiated by Petitioners' respective Unions specifically because of the significant harm and embarrassment having inaccurate complaints and allegations on Petitioners' records could cause Petitioners, where personnel records are used for future promotions and job transfers.

58.     On Monday, July 13, 2020, four of the police union Petitioners filed grievances with John P. Beirne, the Deputy Commission for the NYPD's Office of Labor Relations, in response to the anticipated one-sided nullification of their bargained for contractual rights, demanding that Respondents "cease and desist."  And, the corrections union Petitioners filed a grievance with New York City's Office of Labor Relations Commissioner Renee Campion.  *See* Ex. 1.  In grieving Respondents' planned data dump, Petitioners argued that the release of the Unsubstantiated and Non-Final Allegations against active and retired members would deprive members of the benefit of contractual provisions allowing them to expunge from their personnel files records relating to any investigations resulting in a not-guilty finding.  Given the scope of Petitioners' rights potentially impacted by Respondents' action, the Petitioners' grievances were filed directly at Step III, in accordance with the provisions of Respondents' CBAs.  *See, e.g.*, PBA CBA, Article XXI, § 4.  Copies of the grievances are attached to this Petition as Exhibit 1.

**D.      Release of Unsubstantiated and Non-Final Allegations Violates the U.S. and N.Y. Constitutions**

59.      The United States and New York State Constitutions each provide that no person shall be deprived of life, liberty, or property without due process of law.  U.S. Const. amend. XIV; N.Y. Const. s. 1, art. 6.  Respondents' disclosure of Unsubstantiated and Non-Final Allegations will violate those Due Process Clauses because it will deprive the subject officers of future liberty and property interests without adequate process.

60.      The publication of Unsubstantiated and Non-Final Allegations against police officers will "call[] into question their good name, reputation, honor, or integrity" and thus stigmatize the firefighters and officers.  *Lee TT. v. Dowling*, 87 N.Y.2d 699, 708 (1996) (internal quotation marks omitted).  Such stigmatization will include Unsubstantiated and Non-Final Allegations related to serious crimes and serious misconduct.  These allegations may be completely false, and yet Respondents intend to include them without regard for their veracity.

61.      Beyond the reputational harm and stigma from simply having Unsubstantiated and Non-Final Allegations indiscriminately promoted on the internet, these Allegations will be made available to employers, credit agencies, landlords, banks officers, potentially eviscerating the futures of many of the Petitioners, without sufficient and adequate due process.

62.      In addition, the release of records of past Unsubstantiated and Non-Final Allegations would doubly violate the Due Process Clauses because officers relied on the City's guarantee of the confidentiality of such allegations in deciding how to respond to them.  If the officers had known that the City would make such allegations public, they might have defended themselves against the allegations in a more vigorous, more vocal, and more resource-intensive fashion to protect their reputations, and hence their future liberty and property interests.  Releasing records of Unsubstantiated and Non-Final Allegations that pre-date the City's announced intent to

publicize such records therefore would upset the officers' reliance on the City's guarantee to protect their reputations and privacy from the harms associated with public disclosure of such allegations. Application of the repeal of § 50-a to existing records thus would have an impermissible retroactive effect on the officers' liberty and property interests in violation of the Due Process Clauses.

63.    If permitted, Respondents' hastily planned database of Unsubstantiated and Non-Final Allegations also will provide less protection to New York City firefighters, corrections officers, and police officers—who unquestionably face unique safety concerns—than other licensed professionals in the State enjoy. *See Office of the Professions, available at* http://www.op.nysed.gov/home.html (noting that the list of state-licensed professionals who have unsubstantiated complaints kept confidential includes acupuncturists, architects, athletic trainers, behavior analysts, certified public accountants, chiropractors, dentists, dental hygienists, dietitian-nutritionists, engineers, geologists, interior designers, laboratory technicians, land surveyors, landscape architects, massage therapists, medical physicists, mental health practitioners, midwives, nurses, occupational therapists, opticians, optometrists, perfusionists, pharmacists, physical therapists, podiatrists, polysomnographic technologists, psychologists, respiratory therapists, social workers, shorthand reporters, speech pathologists, and veterinarians).

64.    Indeed, the City's treatment of all other licensed professionals excludes Unsubstantiated and Non-Final Allegations. In New York's online database of professional misconduct, the City only includes those allegations that result in an adverse disciplinary action against the professional. *See Enforcement Actions*, Office of the Professions, available at http://www.op.nysed.gov/opd/rasearch.htm# (listing only actions against professionals that result in an adverse action). Respondents have no practical reason to treat petitioners any differently.

This attempt to give firefighters and officers fewer protections in an arbitrary manner is not rationally related to a legitimate government interest.

### E. Release of Unsubstantiated and Non-Final Allegations Violates Settlement Contracts

65.     The release of these documents, some of which contain settled cases, also violates the settlement contracts negotiated by Petitioners and Respondents here. For decades, these settlements were made against the backdrop of Civil Rights Law § 50-a, which required that the disciplinary files be kept confidential.  That law, "in force at the time" of the settlement agreements, is "a part of the contract." *Skandia America Reinsurance Corp. v. Schenck*, 441 F. Supp. 715, 724 (S.D.N.Y. 1977).  Releasing these documents would breach settlement contracts entered into before the repeal of § 50-a.  On information and belief, the pending disclosure will include even those cases where officers have entered into settlement agreements, which would constitute a breach of the settlement agreement.

### F. New York Has Long Recognized a Privacy Interest in Disciplinary Records, and Their Planned Mass Disclosure Is an Error of Law or an Abuse of Discretion

66.     For decades, New York police, fire, and corrections departments were required under Civil Rights Law § 50-a to keep personnel records, including the disciplinary files discussed above, largely confidential.  Civil Rights Law § 50-a was enacted in 1976 and provided that "[a]ll personnel records used to evaluate performance toward continued employment or promotion . . . shall be considered confidential and not subject to inspection or review."  The statute contained only two exceptions to confidentiality: officer consent (Civil Rights Law § 50-a[1]) and court authorization (Civil Rights Law § 50-a[3]).  Section 50-a "was sponsored and passed as a safeguard against potential harassment of officers through unlimited access to information contained in personnel files." *Luongo v. Records Access Officer*, 150 A.D.3d 13, 20 (1st Dep't 2017).

67. On June 12, 2020, New York State repealed CRL § 50-a. While § 50-a provided an express means for protecting all police, firefighter, and corrections officer personnel records, regardless of their contents, that law was never the sole basis for keeping confidential significant portions of those files. Respondents' conclusion that these records may now be released legally, and en masse, because of that repeal is erroneous as a matter of law under CPLR § 7803(3). In addition to the legally protected interests described above, as is widely recognized, including by the proponents of § 50-a's repeal and the Court of Appeals, § 50-a was never the only source of Respondents' obligation to protect the privacy and safety of Petitioners' members.

68. Respondents' decision ignores legislative intent regarding the repeal of § 50-a. The history of the legislation demonstrates a clear understanding that other sources of law would provide continuing protections for certain types of personnel records. As even the most vocal advocates for repeal of § 50-a recognized, other laws are intended to prevent the release of records when disclosure will result in unwarranted invasions of personal privacy. Indeed, these protections were expressly cited by the sponsor of the enacted Senate bill to repeal § 50-a as a reason that law was "unnecessary." Sponsor Mem., N.Y. Senate Bill S8496, *available at* https://www.nysenate.gov/ legislation/bills/2019/s8496.

69. Civil Rights Law § 50-a was never the only source of the privacy protections for Unsubstantiated and Non-Final Claims. For example, in 1979, shortly after § 50-a was codified, the Court of Appeals observed that § 50-a "fairly reflects the pre-existing judicial consensus" regarding the confidentiality of police personnel records. *People v. Gissendanner*, 48 N.Y.2d 543, 551 (1979). In other words, the privacy protections pre-existed § 50-a in the common law and likewise survive § 50-a's repeal. And the Court of Appeals has held that individuals may have a "legally protected privacy interest" in ensuring public records disclosures do not violate their

privacy interests.  In *New York Times Co. v. City of New York Fire Department*, the Court held that "surviving relatives [of 911 callers on September 11, 2001] have a legally protected privacy interest" in nondisclosure of tapes and transcripts of those calls.  4 N.Y.3d 477, 485 (2005). Likewise, here, Petitioners' members have a privacy interest in nondisclosure of allegations that may tarnish their reputations despite being, in many cases, without merit; this outweighs any public interest in reviewing and relying on allegations that could be misleading or simply false.  At bottom, those with a "legally protected privacy interest" in nondisclosure of government records must have a means of enforcing that interest.  Respondents' data dump deprives the identified individuals of that opportunity.

70.     Moreover, the Committee on Open Government has long taken the position that the release of unsubstantiated allegations constitutes an unwarranted invasion of privacy.  As one advisory opinion explained: "when allegations or charges of misconduct have not yet been determined or did not result in disciplinary action, the records relating to such allegations may … be withheld, for disclosure would result in an unwarranted invasion of personal privacy …. Further, to the extent that charges are dismissed or allegations are found to be without merit, I believe that they may be withheld based on considerations of privacy."  Comm. on Open Gov't, Adv.   Op.   No.   FOIL-AO-17195   (May   29,   2008),   *available   at* https://docs.dos.ny.gov/coog/ftext/f17195.html  (internal  citations  omitted).   Another  opinion states: "In numerous contexts, it has been advised that records relating to unsubstantiated charges, complaints or allegations may be withheld to protect the privacy of the accused."  Comm. on Open Gov't,   Adv.   Op.   No.   FOIL-AO-12005   (Mar.   21,   2000),   *available   at* https://docs.dos.ny.gov/coog/ftext/f12005.htm.

71.     Because Respondents' failed to consider these other sources of protection for

information in government records, which exist independently of § 50-a, as well as because of the legally protected interests identified above, their decision is an error of law.

72.     In the alternative, by proceeding without due consideration of the many authorities counseling against disclosure of Unsubstantiated and Non-Final Allegations and even their own past treatment of such records— separate and apart from § 50-a—Respondents' decision was arbitrary and capricious under CPLR § 7803(3).

73.     Respondents failed to do any reasoned analysis before disregarding legislative intent, their previous judgments on the same issue, statements by the Committee on Open Government, and the expectation set by the courts of this State in considering the privacy and safety implications of releasing personnel records.  Although Respondents are free to change policies, they may not do so at the expense of the long-settled reliance interests of firefighters, police officers and correction officers in the confidentiality of Unsubstantiated and Non-Final Allegations.

74.     The City has repeatedly recognized that disclosure of unsubstantiated disciplinary records would itself constitute an "unreasonable invasion of privacy." *Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd.*, 53 Misc.3d 947 (Sup. Ct., Kings Cnty. 2016) (citation omitted); *see also Luongo v. Records Access Officer*, 150 A.D.3d 13, 25-26 (1st Dep't 2017) ("In addition to statutory exemptions, CCRB noted that the request for records relating to unsubstantiated matters would constitute 'an unreasonable invasion of privacy.'")  Their reversal now lacks even a minimal level of analysis beyond the erroneous conclusion that the repeal of § 50-a permits unlimited disclosure.

75.     This invasion of privacy also has implications for the safety of officers.  Officers accused of misconduct have been subject to threats and harassment and reprisals in recent years.

Naming firefighters and officers in an easily accessible database and listing every charge ever levied against them, regardless of outcome or substantiation, will provide motivated and unstable individuals with all the information they need to track down specific police officers.  The news is replete with examples of police officers who have been targeted and killed because of their uniform.  In recent years, three New York City police officers have been targeted and assassinated. In 2014, Officers Wenjian Liu and Rafael Ramos were ambushed and killed while sitting in a patrol car in Brooklyn.  In 2017, Officer Miosotis Familia was shot at point-blank range while sitting in her patrol car.  And in 2018, federal authorities arrested a Brooklyn resident for targeting NYPD officers with an improvised explosive device, killing an innocent civilian in the process. As these incidents continue and even accelerate, officers have a reasonable interest in ensuring their safety and the safety of their families.

76.     The thoughtlessness and capriciousness is evident by the sample list that the NYPD provided to show the nature of its data dump.  Because Respondents' sudden turnabout in policy was effected without regard for its established practices and settled expectations, and made without even a minimal level of analysis, it was arbitrary and capricious.

## **CLAIMS FOR RELIEF**

### **FIRST CAUSE OF ACTION:**
### **Art. 75 Breach of Collective Bargaining Agreement/TRO in Aid of Arbitration**

77.     Petitioners repeat and reallege paragraphs 1 through 76 as if fully stated herein.

78.     In executing CBAs with Petitioners, the City agreed that all members of the SBA, PBA, LBA, CEA, COBA, UFA and UFOA have a contractual right to have investigative reports that are classified as "exonerated," "unfounded" or, in the case of the FDNY, otherwise "not

guilty," removed from their personnel folders.[4]  The City further agreed that officers in the employ of the police Petitioners would be permitted to petition the Police Commissioner to expunge the records of certain cases heard in the Trial Room where the disposition of the charge at trial or on review or appeal is other than "guilty," after 2 years have passed.  *See, e.g.*, LBA CBA Article XVI, § 8 ("Disciplinary Records").

79.     Respondents' planned action of dumping all pending and historical disciplinary complaints against New York City police, fire and corrections officers on a public-facing online database, without any review or analysis, would functionally negate the rights of officers to clear their disciplinary records of unfounded and unsubstantiated allegations, leaving their bargained-for rights null and void.

80.     The rights contained in Petitioners' CBAs were negotiated by Petitioners specifically because of the significant harm and embarrassment having inaccurate complaints and allegations on Petitioners' records could cause Petitioners, where personnel records are used for future promotions and job transfers, and where such protections have been long recognized as important to officer safety.

81.     Because use of officers' personal records is a term and condition of their employment, the officers have a right to collectively bargain over the confidential treatment of their personnel files under the Taylor Law.  *See* CSL §§ 203; 201(4).

82.     Petitioners PBA, SBA, LBA, CEA and COBA have filed grievances in accordance with the provisions of their respective CBAs demanding arbitration in response to this anticipated one-sided nullification of their bargained-for contractual rights.

---

[4] *See* LBA CBA, Art. XVI, § 7(c); CEA CBA, Art. XIV, § 6(c); PBA CBA, Art. XVI, § 7(c), COBA CBA, Art. XVI, §§ 11, 12 & DOC Directive 4257R-A, Arts. VI(6) & X; UFA CBA, Article XVII, § 9; UFOA CBA, Article XVII, § 9.  While each of the referenced CBAs are expired, their terms continue uninterrupted pursuant to The Triborough Amendment.

83.     Temporary and preliminary injunctive relief is required to preserve the status quo and enjoin Respondents from engaging in a data dump while the parties arbitrate this issue pursuant to the terms of their CBAs, because Respondents have both publicly and privately indicated that they intend to begin releasing this personal data, including the Unsubstantiated and Non-Final Allegations, as soon as this coming Wednesday July 15, 2020.  If this information is made available to the public online, it will be reviewed and analyzed, reported on, and widely disseminated by the media, ensuring that it will remain publicly available forever whether or not the City later decides to remove it.

### SECOND CAUSE OF ACTION:
### 42 U.S.C. § 1983 - Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution

84.     Petitioners repeat and reallege paragraphs 1 through 83 as if fully stated herein.

85.     Respondents plan to release, en masse, the entire collection of disciplinary complaints lodged against firefighters and officers, regardless of outcome or substantiation.

86.     The publication of Unsubstantiated and Non-Final Allegations will defame the subject officers with accusations that are unsupported by evidence and that will unfairly tarnish the officers' reputations.   The Unsubstantiated and Non-Final Allegations are necessarily defamatory because they are, by definition, mere accusations that were not supported by evidence, have not been through the investigatory process, or are not final.  In the alternative, the publication of Unsubstantiated and Non-Final Allegations that accuse officers of criminal conduct (including but not limited to domestic violence) or other conduct that would seriously affect future employment opportunities in the law enforcement arena (including but not limited to excessive force and filing a false report) is defamatory and likely to result in serious reputational harm.  The release of records of past Unsubstantiated and Non-Final Allegations also would upset the officers'

reliance interests formed by the City's guarantee of confidentiality in deciding how much of their time and resources to devote to rebutting such allegations and documenting exculpatory evidence.

87.     Petitioners' members have a protected liberty interest in seeking future employment opportunities free from the specter of Unsubstantiated and Non-Final Allegations, which Respondents intend to publish and publicize.

88.     Petitioners' members have a protected property interest in future employment opportunities that will be unavailable to them because of the specter of Unsubstantiated and Non-Final Allegations, which Respondents intend to publish and publicize.

89.     Respondents do not intend to provide notice to the subject officers or an opportunity to be heard before publication in the databases.  There is not a mechanism for officers to have their names or any allegations removed from the database.

90.     On information and belief, Respondents have not evaluated, and do not intend to evaluate, the individual disciplinary records before they are released.

91.     Respondents made these decisions under color of state law and will deprive the rights' of Petitioners' members while acting under color of state law.

92.     Therefore, the Court should enjoin the determinations of Respondents and prohibit the release of Unsubstantiated and Non-Final Allegations as well as any other disciplinary records that implicate the privacy and safety concerns of officers.  Temporary, preliminary, and permanent injunctive relief is required to protect Petitioners' rights.

**THIRD CAUSE OF ACTION:**
**N.Y. Const. s. 1 art. 6 - Violation of the Due Process Clause of the N.Y. State Constitution**

93.     Petitioners repeat and reallege paragraphs 1 through 92 as if fully stated herein.

94.     Respondents plan to release, en masse, the entire collection of disciplinary complaints lodged against firefighters and officers, regardless of outcome or substantiation.

95.     The publication of Unsubstantiated and Non-Final Allegations will defame the subject firefighters and officers with accusations that are unsupported by evidence and that will unfairly tarnish the officers' reputations.  The Unsubstantiated and Non-Final Allegations are necessarily defamatory because they are, by definition, mere accusations that were not supported by evidence, have not been through the investigatory process, or are not final.  In the alternative, the publication of Unsubstantiated and Non-Final Allegations that accuse officers of criminal conduct (including but not limited to domestic violence) or other conduct that would seriously affect future employment opportunities in the law enforcement arena (including but not limited to excessive force and filing a false report) is defamatory and likely to result in serious reputational harm.  The release of records of past Unsubstantiated and Non-Final Allegations also would upset the officers' reliance interests formed by the City's guarantee of confidentiality in deciding how much of their time and resources to devote to rebutting such allegations and documenting exculpatory evidence.

96.     Petitioners' members have a protected liberty interest in seeking future employment opportunities free from the specter of Unsubstantiated and Non-Final Allegations, which Respondents intend to publish and publicize.

97.     Petitioners' members have a protected property interest in future employment opportunities that will be unavailable to them because of the specter of Unsubstantiated and Non-Final Allegations, which Respondents intend to publish and publicize.

98.     Even if any one member of the Petitioner unions may not experience any future harm from the release of the documents, the release would decrease the average availability of jobs and the average salary of union members.

99.     Respondents do not intend to provide notice to the subject firefighters or officers

or an opportunity to be heard before publication in the databases.  There is not a mechanism for firefighters or officers to have their names or any allegations removed from the database.

100.    On information and belief, Respondents have not evaluated, and do not intend to evaluate, the individual disciplinary records before they are released.

101.    Respondents made these decisions under color of state law and will deprive the rights' of Petitioners' members while acting under color of state law.

102.    Therefore, the Court should enjoin the Respondents from releasing Unsubstantiated and Non-Final Allegations as well as any other disciplinary records that implicate the privacy and safety concerns of officers.  Temporary, preliminary, and permanent injunctive relief is required to protect Petitioners' rights.

## FOURTH CAUSE OF ACTION:
### 42 U.S.C. § 1983 - Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

103.    Petitioners repeat and reallege paragraphs 1 through 102 as if fully stated herein.

104.    Respondents plan to release, en masse, the entire collection of disciplinary complaints lodged against firefighters and officers, regardless of outcome or substantiation.

105.    This release, which gives firefighters and officers different privacy protections than other state-regulated professions, is not rationally related to a legitimate government purpose.

106.    On information and belief, Respondents have not evaluated, and do not intend to evaluate, the individual disciplinary records before they are released.

107.    Respondents made these decisions under color of state law and will deprive the rights' of Petitioners' members while acting under color of state law.

108.    Therefore, the Court should enjoin the determinations of Respondents and prohibit the release of Unsubstantiated and Non-Final Allegations as well as any other disciplinary records

that implicate the privacy and safety concerns of officers.  Temporary, preliminary, and permanent injunctive relief is required to protect Petitioners' rights.

## FIFTH CAUSE OF ACTION:
## N.Y. Const. s. 1 art. 11 - Violation of the Equal Protection Clause of the N.Y. State Constitution

109.    Petitioners repeat and reallege paragraphs 1 through 108 as if fully stated herein.

110.    Respondents plan to release, en masse, the entire collection of disciplinary complaints lodged against firefighters and officers, regardless of outcome or substantiation.

111.    This release, which gives firefighters and officers different privacy protections than other state-regulated professions and other public sector employees, is not rationally related to a legitimate government purpose.

112.    Therefore, the Court should enjoin the determinations of Respondents and prohibit the release of Unsubstantiated and Non-Final Allegations as well as any other disciplinary records that implicate the privacy and safety concerns of officers.  Temporary, preliminary, and permanent injunctive relief is required to protect Petitioners' rights.

## SIXTH CAUSE OF ACTION:
## Breach of Contract

113.    Petitioners repeat and reallege paragraphs 1 through 112 as if fully stated herein.

114.    Petitioners and Respondents negotiated and executed settlement agreements that incorporated a then-present confidentiality law.

115.    Release of these records would violate those agreements.

116.    On information and belief, Respondents have not evaluated, and do not intend to evaluate, the individual police disciplinary records before they are released, and thus will release cases that have settled under these settlement agreements.

117.    Therefore, the Court should enjoin the determinations of Respondents and prohibit

the release of Unsubstantiated and Non-Final Allegations as well as any other police disciplinary records that contain settlement agreements.  Temporary, preliminary, and permanent injunctive relief is required to protect Petitioners' rights.

## SEVENTH CAUSE OF ACTION:
## VIOLATION OF N.Y. C.P.L.R. § 7803 – Action Affected by an Error of Law

118.    Petitioners repeat and reallege paragraphs 1 through 117 as if fully stated herein.

119.    Respondents plan to release, en masse, the entire collection of disciplinary complaints lodged against NYPD officers, regardless of outcome or substantiation.

120.    As a matter of law, Unsubstantiated and Non-Final Allegations are confidential, separate and apart from the existence of CRL § 50-a.

121.    Release of records relating to Unsubstantiated and Non-Final Allegations would constitute an unwarranted invasion of privacy and endanger the safety of the subjects of those records.

122.    On information and belief, Respondents have not evaluated, and do not intend to evaluate, the individual police disciplinary records before they are released.

123.    Because the pre-existing privacy exceptions plainly apply to Unsubstantiated and Non-Final Allegations, any decision to release this data in full would necessarily an error of law.

124.    In the alternative, failure to make individualized determinations regarding these Unsubstantiated and Non-Final Allegations to determine whether any or all of it must be withheld is an error of law.

125.    Therefore, because Respondents' decisions were affected by an error of law under CPLR § 7803(3), the Court should annul the determinations of Respondents and prohibit the release of Unsubstantiated and Non-Final Allegations.  Temporary, preliminary, and permanent injunctive relief is required to protect Petitioners' rights.

**EIGHTH CAUSE OF ACTION:**
**VIOLATION OF N.Y. C.P.L.R. § 7803 – Arbitrary and Capricious Action**

126.    Petitioners repeat and reallege paragraphs 1 through 125 as if fully stated herein.

127.    In deciding to release Unsubstantiated and Non-Final Allegations, Respondents' have acted in an arbitrary and capricious manner.

128.    Respondents failed to consider legislative intent, their previous judgments on the same issue, statements by the Committee on Open Government, and the expectation set by the courts of this State in considering the privacy and safety implications of releasing personnel records. .

129.    On information and belief, Respondents have not evaluated, and do not intend to evaluate, individual police disciplinary records before they are released.  Respondents' complete failure to conduct an individualized review is arbitrary and capricious and an abuse of discretion.

130.    Although Respondents are free to change policies, they may not do so at the expense of the long-settled reliance interests of firefighters and officers in the confidentiality of Unsubstantiated and Non-Final Allegations.

131.    To the extent Respondents have discretion to determine whether to release any personnel data at all, it is an abuse of discretion to release the complete collection of police disciplinary complaints (with a substantial portion thereof consisting of Unsubstantiated and Non-Final Allegations) without performing a case-by-case analysis to determine whether disclosure is warranted based on the unique circumstances of the case.

132.    Therefore, the Court should annul the determination of Respondents and prohibit the release of Unsubstantiated and Non-Final Allegations.  Temporary, preliminary, and permanent injunctive relief is required to protect Petitioners' rights.

## NINTH CAUSE OF ACTION:
### Declaratory Judgment

133.     Petitioners repeat and reallege paragraphs 1 through 132 as if fully stated herein.

134.     An actual case or controversy exists between Petitioners and Respondents regarding the claims raised above.

135.     Absent clarification from the Court, the dispute between Petitioners and Respondents is capable of, and likely to be, recurring.

136.     Accordingly, Petitioners are entitled to a declaration that publication of Unsubstantiated and Non-Final Allegations (1) would violate the collective bargaining agreements between the City and Petitioners; (2) would violate the Due Process Clauses of the U.S. and N.Y. State Constitutions; (3) would violate the Equal Protection Clauses of the U.S. and N.Y. State Constitutions; (4) would constitute a breach of contract in violation of settlement agreements; and (5) would be a violation of law and arbitrary and capricious.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Court enter an Order:

1.  Temporarily and immediately restraining the publication of any records concerning Unsubstantiated and Non-Final Allegations or that regard settlement agreements entered into prior to June 12, 2020;

2.  To show cause as to why the court should not issue an injunction barring the publication of any records concerning Unsubstantiated and Non-Final Allegations or that regard settlement agreements entered into prior to June 12, 2020;

3.  Preliminarily and permanently enjoining the publication of any records concerning Unsubstantiated and Non-Final Allegations or that regard settlement agreements entered into prior to June 12, 2020;

4. Declaring that publication of Unsubstantiated and Non-Final Allegations (1) would violate the collective bargaining agreements between the City and Petitioners; (2) would violate the Due Process Clauses of the U.S. and N.Y. State Constitutions; (3) would violate the Equal Protection Clauses of the U.S. and N.Y. State Constitutions; (4) would constitute a breach of contract in violation of settlement agreements; and (5) would be a violation of law and arbitrary and capricious and

5. Granting whatever other relief the Court deems necessary and just.

Dated: July 14, 2020                                         DLA PIPER LLP (US)
      New York, New York

By: */s/ Anthony P. Coles*
Anthony P. Coles
Michael R. Hepworth
1251 6th Avenue
New York, NY 10020
Telephone: (212) 335-4844
Facsimile: (212) 884-8644
Email: anthony.coles@dlapiper.com
Email: michael.hepworth@dlapiper.com

Courtney G. Saleski
   (*pro hac vice* to be filed)
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-2431
Facsimile: (215) 606-2046
Email: courtney.saleski@dlapiper.com

*Attorneys for Petitioners/Plaintiffs*

## VERIFICATION

STATE OF NEW YORK          )
                           )     SS.:
COUNTY OF NEW YORK         )

EDWARD D. MULLINS, being sworn, deposes and says:

I am the President of the Sergeants Benevolent Association ("SBA"), the duly certified collective bargaining representative of all officers of the New York City Police Department in the rank of Sergeant, petitioner in this lawsuit. I have read the foregoing Petition and know the contents thereof, and the same is true to my own knowledge, except as to matters alleged upon information and belief, and as to those matters I believe them to be true.  This verification is made by me because the SBA is an association and I am an officer thereof.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows: information contained in documents attached as exhibits to this Petition.

Sworn before me this
13th day of July, 2020

_Edward Mullins_
EDWARD D.  MULLINS

_____
Notary Public

ROSA LUNA-MOLÉ
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02LU6101319
Qualified in Putnam County
My Commission Expires 11/10/2023