# Exhibit 3



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

TO:          HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:      ROBERT W. LINN, COMMISSIONER

SUBJECT:    EXECUTED CONTRACT: POLICE OFFICERS

TERM:       AUGUST 1, 2010 TO JULY 31, 2012

       Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the Patrolmen's Benevolent Association on behalf of the incumbents of positions listed in Article I of said contract.

       The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: February 26, 2016



OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL       CONTRACT

NO: 16001      DATE: February 26 2016

Case 1:20-cv-05441-KPF Document 10-5 Filed 07/17/20 Page 3 of 40

# Patrolmen's Benevolent Association
## 2010 - 2012 Agreement

**AGREEMENT** made this 26th day of february 2016 by and between the City of New York (hereinafter called "the City" or "the Employer"), acting by the Commissioner of Labor Relations, and the **Patrolmen's Benevolent Association of the City of New York, Inc.** (hereinafter called "the Union" or the "PBA"), for the two year period from August 1, 2010 to July 31, 2012. The parties agree that this Agreement modifies the 2006-2010 collective bargaining agreement based upon the November 13, 2015 arbitration award ("Arbitration Award"). Nothing in this agreement is intended to amend or modify the content of the Arbitration Award.

**WHEREAS,** the Police Officers employed by the City have duly designated the Union as their exclusive bargaining representative for the purpose of collective bargaining with the City with respect to wages, hours, and conditions of employment; and

**WHEREAS,** the Union and the City desire to cooperate in establishing conditions which will tend to secure standards and conditions of employment consistent with the dignity of Police Officers, and to provide methods for fair and peaceful adjustment of disputes that may arise between the Union and the City; and

**WHEREAS,** as a result of collective bargaining, the parties have reached an agreement which they desire to reduce to writing;

**NOW, THEREFORE,** it is mutually agreed as follows:

## ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

### Section 1.

The City recognizes the Union as the sole and exclusive collective bargaining representative for the unit consisting of the employees of the New York City Police Department in the title of Police Officer, except those detailed as First, Second or Third Grade Detectives.

### Section 2.

Except as otherwise provided herein, for purposes of this Agreement, the terms "employee" and "employees" or "Police Officer" shall be interchangeable and shall relate solely to employees in the unit described in Section 1 of this Article.

1600 1

## ARTICLE II - UNION SECURITY - DUES CHECKOFF

### Section 1.

All employees covered by this Agreement shall be free to become and remain members of the Union in good standing

### Section 2.

The Union shall have the exclusive right to the check-off and transmittal of dues in behalf of each employee in the unit in accord with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Regulating the Checkoff of Union Dues" and in accord with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Regulations Governing Procedures for Orderly Payroll Checkoff of Union Dues" and any executive orders which amend or supersede said Executive Orders.

### Section 3.

An employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in the proper form, acceptable to the City, which bears the signature of the employee.

### Section 4.

The parties agree to an agency shop to the extent permitted by applicable law as described in a supplemental agreement hereby incorporated by reference into this Agreement.

## ARTICLE III - HOURS AND OVERTIME

### Section 1.

a.  All ordered and/or authorized overtime in excess of forty (40) hours in any week or in excess of the hours required of an employee by reason of the employee's regular duty chart if a week's measurement is not appropriate, whether of an emergency nature or of a non-emergency nature, shall be compensated for either by cash payment or compensatory time off, at the rate of time and one-half, at the sole option of the employee. Such cash payments or compensatory time off shall be computed on the basis of completed fifteen (15) minute segments.

b.  In order to preserve the intent and spirit of this Section on overtime compensation, there shall be no rescheduling of days off and/or tours of duty. Notwithstanding anything to the contrary contained herein, tours rescheduled for court appearances may begin at 8:00 A.M. and shall continue for eight (8) hours and thirty-five (35) minutes. This restriction shall apply both to the retrospective crediting of time off against hours already worked and to the anticipatory reassignment of personnel to different days off and/or tours of duty. In interpreting this Section, T.O.P. 336, promulgated on October 13, 1969, shall be applicable. Notwithstanding anything to the contrary contained herein, the Department shall

2

16001

not have the right to reschedule employees' tours of duty, except that the Department shall have the right to reschedule employees' tours of duty on twenty occasions without payment of pre-tour or post-tour overtime provided that the Department gives at least 24 hours notice to the employees whose tours are to be rescheduled, and the Department may also reschedule employees' tours of duty, without payment of pre-tour or post-tour overtime, for New Year's Eve, St. Patrick's Day, Thanksgiving Day, Puerto Rican Day, West Indies Day and Christopher Street Liberation Day, provided that the Department gives notice before 12:00 a.m. of the day(s) in question. The prohibition on rescheduling tours by more than three (3) hours before or after normal starting time on the above named dates is also eliminated.

## Section 2.

**a.**     Notwithstanding anything to the contrary herein, employees assigned to the Detective Bureau as so-called "white shield detectives" shall receive overtime compensation in accord with the arbitrator's award in O.C.B. Docket No.A-148-70, dated September 8, 1971, unless such compensation in cash is approved by the Borough Commander.

**b.**     Effective February 22, 2010, Police Officers assigned to Detective Track Commands as so-called "White Shield Detectives" shall work the same length of tour and number of appearances as currently worked (i.e., in effect as of August 21, 2008) by Detectives in the respective units to which they are assigned, as modified by this contract.

## Section 3.

Overtime shall be computed on a monthly basis and shall be paid no later than six (6) weeks after submission of the monthly report.

## ARTICLE IV - RECALL AFTER TOUR

## Section 1.

Any employee who is recalled to duty after having completed the employee's regular duty but four (4) hours or more before the commencement of the employee's next regular tour and who is released without having been assigned to duty prior to the commencement of said next regular tour shall receive a minimum of four (4) hours' pay pursuant to the regular overtime provisions of this Agreement, that is, in cash or compensatory time off at the sole option of the employee at the rate of time and one-half (i.e., the equivalent of six (6) hours compensation at the employee's straight time rate).

## Section 2.

Any employee who is recalled to duty after having completed the employee's regular tour of duty but six (6) hours or more before the commencement of the employee's next regular tour and who is assigned to duty and then released from duty prior to the commencement of said next regular tour shall receive a minimum of six (6) hours' pay pursuant to the regular overtime provisions of this Agreement, that is, in cash or compensatory time off, at the employee's sole option, at the rate of

16001

time and one-half (i.e., the equivalent of nine (9) hours' compensation at the employee's straight time rate).

## Section 3.

In the event the actual time spent on recall defined in Sections 1 and 2 of this Article extends beyond the minimum periods provided herein, the employee shall receive pay pursuant to the regular overtime provisions of this Agreement for the full period of time actually spent on such recall.

## Section 4.

Notwithstanding anything to the contrary provided in Sections 1 through 3 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but before the commencement of the next regular tour and who is assigned to duty or held without assignment for the period which extends into the commencement of that next regular tour shall receive pay pursuant to the regular overtime provisions of this Agreement only for the actual time so assigned or held.

## Section 5.

a.      Notwithstanding anything to the contrary in Sections 1 through 4 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but less than four (4) hours before the commencement of the employee's next regular tour and who is released without having been assigned to duty prior to the commencement of that next regular tour shall receive pay in cash or compensatory time off at the employee's sole option, at the rate of time and one-half, for the actual time between the beginning of such recall and the commencement of that next regular tour.

b.      Notwithstanding anything to the contrary in Sections 1 through 4 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but less than six (6) hours before the commencement of the employee's next regular tour and who is assigned to duty and then released from duty prior to the commencement of that next regular tour shall receive pay in cash or compensatory time off at the employee's sole option, at the rate of time and one-half, for the actual time between the beginning of such recall and the commencement of that next regular tour.

## ARTICLE V - COMPUTATION OF BENEFITS

Since the basic forty-hour week has not been changed by this Agreement, any modification of the nine (9) squad or any other standard charts and use of other tours shall not affect current standard practice for the computation of compensation for holidays, vacation days, personal leave, annuity fund contributions and other relevant benefits, which shall remain on the basis of an eight-hour work day calculation, except as otherwise agreed to by the parties.

16001

# ARTICLE VI - SALARIES

## Section 1.  Salary Rates

During the term of this Agreement, the following basic amounts, which where specified include both salary rates and longevity adjustments, shall prevail for employees:

a.          For Police Officers Hired prior to January 1, 2006

Grade-Service

| First Grade | Effective 8/1/10 | Effective 8/1/11 |
|---|---|---|
| 20 Years | $86,233** | $87,096** |
| 15 Years | $85,113** | $85,965** |
| 10 Years | $84,020 R | $84,861 R |
| 5 Years | $82,928* | $83,758* |
| Basic | $77,253 | $78,026 |
| Second Grade | $61,615 | $62,231 |
| Third Grade | $59,949 | $60,548 |
| Fourth Grade | $57,235 | $57,807 |
| Fifth Grade | $55,292 | $55,845 |
| Sixth Grade | $52,711 | $53,238 |

b.          For Police Officers Hired On/After January 1, 2006

Grade-Service

| First Grade | Effective 8/1/10 | Effective 8/1/11 |
|---|---|---|
| 20 Years | $86,233** | $87,096** |
| 15 Years | $85,113** | $85,965** |
| 10 Years | $84,020 R | $84,861 R |
| Basic (after 5.5 years, 5 year longevity | $82,928* | $83,758* |
| Basic (after 5.5 years) | $77,253 | $78,026 |
| Second Grade (with 5 year longevity) | $62,850* | $63,479* |
| Second Grade (after 4.5 years) | $57,175 | $57,747 |
| Third Grade (after 3.5 years) | $53,803 | $54,341 |
| Fourth Grade (after 2.5 years) | $49,267 | $49,760 |
| Fifth Grade (after 1.5 years) | $44,080 | $44,521 |
| Sixth Grade | $42,395 | $42,819 |

NOTE: The amounts indicated in this Section by asterisks (* and **) include the longevity adjustments in Article VIII of this Agreement.  The longevity adjustments in the amounts indicated herein by a single asterisk (*) shall not be deemed to be part of salary for purposes of retirement allowances unless at the time of retirement an employee paid at such rates shall have completed twenty years of service; and the longevity adjustments in the amounts indicated herein by a double

5

*16001*

asterisk (**) shall not be deemed to be part of salary for purposes of retirement allowances unless at the time of retirement an employee paid at such rates shall have completed twenty-five years of service; except that an employee who has more than twenty years, but less than twenty-five years of service at the time of retirement shall have the adjusted rates indicated by a capital letter R deemed to be part of salary for purposes of retirement allowances. In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

## Section 2

A laid off employee who is returned to service in the employee's former title or in a comparable title from a preferred list, shall receive the basic salary rate that would have been received by the employee had the employee never been laid off, up to a maximum of two (2) years of general salary increases.

## Section 3. General Wage Increase

a.     (i)     Effective August 1, 2010, Employees shall receive a rate increase of 1%.

       (ii)    Effective August 1, 2011, Employees shall receive a rate increase of 1%.

b.     The increases provided for in Section 3a above shall be calculated as follows:

       (i)     The increase in Section 3a(i) shall be based upon the base rates (which shall include salary or incremental schedules) of the applicable titles in effect on July 31, 2010;

       (ii)    The increase in Section 3a(ii) shall be based upon the base rates (which shall include salary or incremental schedules) of the applicable titles in effect on July 31, 2011;

c.     The general increase provided in this Section 3 shall be applied to the base rates and salary grades fixed for the applicable titles, except to the extent that the base rates and salary grades are modified by Section 3 (d) of this provision.

d.     Employees hired on or after January 1, 2006 shall be subject to the salary schedule set forth in Section 1 (b) above.

## Section 4.

Paychecks shall be delivered to commands by 3:00 p.m. on the Thursday preceding payday for distribution after 3:00 p.m. on said Thursday.

## Section 5. Salary Itemization

The Department shall make available in convenient places in each precinct the appropriate payroll work sheets for the purpose of enabling each employee to verify the salary components of the

Case 1:20-cv-05441-KPF Document 10-5 Filed 07/17/20 Page 9 of 40

employee's paycheck. The parties will review further the feasibility of otherwise advising each employee of all payroll components along with the employee's paycheck.

## Section 6. Performance Compensation

The City acknowledges that each of the uniformed services performs an important service that reflects the diverse missions of the City's uniformed agencies. In order to reward service of an outstanding, exceptional nature, each of the uniformed services will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments. The City will notify and discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law. An employee can receive no more than one payment annually.

These provisions shall not affect any existing productivity programs covered in any existing collective bargaining agreements. Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## ARTICLE VII - UNIFORM ALLOWANCE

Effective August 1, 2010, the City shall continue to pay to each employee a uniform allowance of $1,000.00 in accord with existing standard procedures.

Effective August 1, 2011, the City shall pay to each employee a uniform allowance of $1,050.00 in accord with existing standard procedures.



## ARTICLE VIII - LONGEVITY ADJUSTMENTS

### Section 1.

a.   Effective August 1, 2010, Longevity adjustments shall be paid as follows:

   (i)   Upon the completion of five years of service, a Police Officer shall receive a longevity adjustment of $5,675.

   (ii)   Upon completion of ten years of service, a Police Officer First Grade shall receive a longevity adjustment of an additional $1,092.

   (iii)   Upon completion of fifteen years of service, a Police Officer First Grade shall receive a longevity adjustment of an additional $1,093.

   (iv)   Upon completion of twenty years of service, a Police Officer First Grade shall receive a longevity adjustment of an additional $1,120.

b.   Effective August 1, 2011, Longevity adjustments shall be paid as follows:

   (i)   Upon the completion of five years of service, a Police Officer shall receive a longevity adjustment of $5,732.

   (ii)   Upon completion of ten years of service, a Police Officer First Grade shall receive a longevity adjustment of an additional $1,103.

   (iii)   Upon completion of fifteen years of service, a Police Officer First Grade shall receive a longevity adjustment of an additional $1,104.

   (iv)   Upon completion of twenty years of service, a Police Officer First Grade shall receive a longevity adjustment of an additional $1,131.

f.   Effective July 31, 2008, each step of the longevity schedule shall be increased by any future general wage increases, as compounded, as of the effective date of said increases, as reflected in the above schedules.

g.   The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completing 20 years of service. The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service.

   In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

h.   The calculation of night shift differential payments shall be based upon the same factors, amounts and methodology as previously utilized.

16001

i.     ITHP and pension benefit calculations shall only include the amount of the longevity payment that is pensionable.

## Section 2.

The longevity adjustments provided in Section 1 of this Article VIII are reflected in the table of salaries set forth in Article VI, Section 1 of this Agreement.

## ARTICLE IX - PAYMENT FOR HOLIDAY WORK

Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.

## ARTICLE X - LEAVES

## Section 1. Sick Leave

a.    (i)    Each employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect which is service-connected pursuant to Section 14-122.1 of the Administrative Code.

        (ii)    Each employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect, whether or not service-connected.

b.    The Chief of Personnel shall consult with representatives of the Patrolmen's Benevolent Association regarding the enforcement of the Sick Leave program in order to insure that undue restrictions will not be placed upon employees. Departmental orders in connection therewith shall be issued after consultation with the Patrolmen's Benevolent Association.

c.    Eligible employees who request sick leave for an injury or illness shall no longer be subject to home visitation and confinement outside the hours of the employee's regularly scheduled tour of duty, except where the convalescence for the injury or illness requires home confinement in the opinion of the Department's Medical Division, after consultation with the employee's personal physician.

d.    The following employees are not eligible to participate in the program:
        1.    Any Employee who is designated as "chronic sick";
        2.    Any Employee who is on modified assignment;
        3.    Any Employee who is on dismissal probation; and
        4.    Any Employee who is on suspension.

e.    (i)    For purposes of this agreement the "designated absence rate" is the average lost

16001

days, including both line-of-duty and non-line-of-duty sick leave, per member of service in the PBA bargaining unit for Fiscal Year 2007-2008, which equals 11.56 days per year.

(ii)     The Department, on the first day of each month, will review Police Officer availability for the preceding 365 days. In the event that Police Officer average sick leave for the entire PBA bargaining unit exceeds the designated absence rate for the preceding 365 day period by more than 10%, the previous Patrol Guide home visitation and confinement policies will be placed into effect the following day. Such procedures will remain in effect for the remainder of the month, provided however, the Police Commissioner in his own discretion may permit the new procedures to remain in effect.

(iii)    The following month another review of sick leave usage for the preceding 365 days will occur. When a monthly review results in a return to a level at or below the "designated absence rate" plus 10% the Department will resume the new visitation and confinement procedures the following day (the second day of the month).

## Section 2.  Death-in-Family Leave

In the event of a death in an employee's immediate family and upon application to and approval of the employee's commanding officer or supervisory head, an employee shall receive leave with pay not exceeding four consecutive regular tours of duty.  For the purposes of this Section, the phrase, "immediate family", shall include any of the following: (a) a spouse, (b) a natural, foster or step-parent, child, brother or sister, (c) a father-in-law or mother-in-law, or (d) any relative residing in the employee's household.  The commanding officer or supervisory head granting such leave shall verify the death and relationship of the deceased.  If the deceased was in the military service of the United States at the time of death, the employee requesting leave shall produce the official notice of death.

## Section 3.  Military Leave

Military leave not exceeding thirty (30) calendar days in any one calendar year and not exceeding thirty (30) days in any one continuous period of such absence shall be granted with pay to any employee requiring such leave to satisfy military obligations.

## Section 4.  Special Excusals

Excused time accorded to other personnel employed by the City under circumstances such as excusals for the Dr. Martin Luther King, Jr., and the Senator Robert F. Kennedy funerals and the Moon Landing Observation Day shall be granted equally to employees covered by this Agreement. All compensating days off shall be subject to the exigencies of the Department.

## Section 5.  Leave to attend hearings

Individual employee grievants shall be granted leave with pay for such time as is necessary to testify at arbitration hearings.

16001

Leave with pay shall be granted to three (3) employees who are named grievants in a group arbitration proceeding, for such time as is necessary for them to testify at their group arbitration hearings.

Leave with pay for such time as is necessary to testify at their hearings shall be granted to employees who, after final adjudication of proceedings under Section 210 paragraph 2h of the Civil Service Law are determined not to have been in violation of Section 210.

## ARTICLE XI – VACATIONS

### Section 1.

The Department shall continue to provide the following authorized annual vacations for employees hired prior to July 1, 1988:

a.  Following the first 3 years of service (First Grade Police Officer): twenty-seven (27) work days.

b.  During the first 3 years of service (Second, Third, Fourth Grade and Probationary Police Officer): twenty (20) work days.

c.  During the calendar year in which the third anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | Apr. 15 | 26 work days |
| Apr. 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

### Section 2.

The Department shall provide the following authorized annual vacations for employees hired on or after July 1, 1988 and before July 1, 2008:

a.  Following the first 5 years of service: twenty-seven (27) work days.

b.  During the first 5 years of service: twenty (20) work days.

c.  During the calendar year in which the fifth anniversary of appointment occurs:

**IF APPOINTMENT**                    **VACATION ALLOWANCE**



11

| DATE IS: | | SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | Apr. 15 | 26 work days |
| Apr. 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

## Section 3.

The Department shall provide the following authorized annual vacations for employees hired on or after July 1, 2008:

a. Following the first 5 years of service: twenty-seven (27) work days.

b. During the first 5 years of service: ten (10) work days.

c. During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT | | VACATION ALLOWANCE |
|---|---|---|
| DATE IS: | | SHALL BE: |
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | Apr. 15 | 25 work days |
| Apr. 16 | June 15 | 22 work days |
| June 16 | July 15 | 19 work days |
| July 16 | Sept. 15 | 16 work days |
| Sept. 16 | Nov. 15 | 15 work days |
| Nov. 16 | Dec. 15 | 12 work days |
| Dec. 16 | Dec. 31 | 11 work days |



## Section 4.

Effective July 31, 2010, the Department shall provide the following authorized annual vacations for employees hired on or after July 1, 2008:

    a.  Following the first 5 years of service: twenty-seven (27) work days.

    b.  During the first 2 years of service: ten (10) work days.

    c.  During the third, fourth and fifth years of service: thirteen (13) work days.

    d.  During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| **FROM** | **TO** | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | Apr. 15 | 25 work days |
| Apr. 16 | June 15 | 23 work days |
| June 16 | July 15 | 21 work days |
| July 16 | Sept. 15 | 18 work days |
| Sept. 16 | Nov. 15 | 17 work days |
| Nov. 16 | Dec. 15 | 15 work days |
| Dec. 16 | Dec. 31 | 14 work days |

## Section 5.

Employees may select individual vacation days at the time vacations are picked, provided that the maximum number of employees allowed to take such individual vacation days at any time shall be 2% of the Force and provided further that no employee may choose more than one of the following holidays as an individual vacation day: Independence Day, Labor Day, Thanksgiving Day, Christmas Day, and New Year's Day. Any employee who fails to select such individual vacation days at the time the employee makes his regular vacation pick may select such individual vacation days at a later time subject to the exigencies of the Department. Such individual vacation days shall be treated as regular vacation picks.

## Section 6. Accrual of Vacation

If the Police Department calls upon an employee in writing to forego the employee's vacation or any part thereof that portion up to a maximum of three (3) weeks of vacation shall be carried over until such time as it can be liquidated in the following calendar year subject to the following conditions:

    (1)    the selection of such vacation days shall be in the discretion of and subject to the exigencies of the Department; and

    (2)    the selection of such days in the following calendar year shall be made after the regular vacation picks; and

13



(3)    the utilization of this vacation time shall be restricted to the months of January
through May and September through November.

It is the intention of the Police Department to allow an employee to request permission to accrue
vacation consistent with this provision and to grant such requests which are reasonable.

## ARTICLE XII - HEALTH AND HOSPITALIZATION BENEFITS

### Section 1.

The City shall continue to provide a fully paid choice of health and hospitalization insurance plans
for each employee, not to exceed 100% of the full cost of HIP-HMO on a category basis.  There
will be an annual reopening period during the term of this Agreement for active employees to
exercise their choice among medical plans.

### Section 2.

Retirees shall continue to have the option of changing their previous choice of Health Plans.  This
option shall be:

(a) a one time choice;

(b) exercised only after one year of retirement; and

(c) can be exercised at any time without regard to contract periods.

The effective date of change to a new plan shall be the first day of the month three months after the
month in which the application has been received by the New York City Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to January 1, 1980 and every
two years thereafter, retirees shall have the option of changing their previous choice of health plans.
This option shall be exercised in accordance with procedures established by the Employer.  The
Union will assume the responsibility of informing retirees of this option.

### Section 3.

a.    Effective July 1, 1983 and thereafter, the City's cost for each employee and each
retiree under age 65 coverage shall be equalized at the Community-rated basic
HIP/HMO plan payment rate as approved by the State Department of Insurance on a
category basis of individual or family, e.g. the Blue Cross/GHICBP payment for
family coverage shall be equal to the HIP/HMO payment for family coverage.

b.    If a replacement plan is offered to employees and retirees under age 65 which
exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall
not bear the additional costs.



14

Case 1:20-cv-05441-KPF Document 10-5 Filed 07/17/20 Page 17 of 40

c.    The City (and other related Employers) shall continue to contribute on a City employee benefits program-wide basis the additional amount of $35 million to maintain the health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefits.

The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the Blue Cross/GHI-CBP plan; and, if sufficient funds are available, to fund new benefits.

The health insurance stabilization reserve fund shall be credited with the divisions or reduced by the losses attributable to the Blue Cross/GHI-CBP plan.

d.    In the event that there is a Citywide or program-wide health insurance package which exceeds the cost of the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein. However, it is understood that the PBA will not be treated any better or any worse than any other Union participating in the Citywide or Program-wide Health Program with regard to increased health insurance costs.

## Section 4. Health Care Flexible Spending Account,

a.    A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code. Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account. Participating employees shall contribute at least $260 per year up to a maximum of $1,000 per year. Said contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan. Any unfunded balance may be deducted from final salary payments due an employee.

b.    Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered. In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

c.    An administrative fee of $1.00 per week for the first year shall be charged for participation in the program. An employee's participation in the account is irrevocable during a plan year. At the close of the plan year any excess balance in an employee's account will not be refunded.



## ARTICLE XIII - HEALTH AND WELFARE FUND

### Section 1.

a.  1.  Effective July 31, 2008, the Employer's annual contractual amount of contributions to the Active and Retiree Health and Welfare Funds of the Patrolmen's Benevolent Association of the City of New York ("Welfare Funds") shall be increased by any future general wage increases, as compounded, as of the effective date of said increases, pursuant to the terms of a supplemental agreement to be reached by the parties, which shall not be inconsistent with this Article, subject to the approval of the Corporation Counsel as to form.

2.  In accordance with the above paragraph, effective August 1, 2010, the City shall contribute the pro-rata annual amount of $1,529 for each employee for remittance to the PBA Active and Retiree Health and Welfare Funds pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

3.  In accordance with the above paragraph, effective August 1, 2011, the City shall contribute the pro-rata annual amount of $1,544 for each employee for remittance to the PBA Active and Retiree Health and Welfare Funds pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

b.  Pursuant to its commitment, the PBA will continue to provide benefits to employees' domestic partners.

c.  To the extent permitted by law, part of the amounts so contributed maybe applied to maintain an appropriate legal services plan, pursuant to the terms of a supplemental agreement between the parties as approved by the Corporation Counsel.

d.  Employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Health and Welfare Fund of the Patrolmen's Benevolent Association at the time of such separation pursuant to a supplementary agreement between the City and the PBA shall continue to be so covered, subject to the provisions of Sections 1 (a), (b), and (c) hereof, on the same contributory basis as incumbent employees. Contributions shall be made only for such time as said individuals remain primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

e.  **Civil Legal Representation Fund**

The City shall continue to contribute $75 per annum for each active Employee to the Welfare Fund to establish a civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel. While these funds shall be administered by the applicable Welfare Fund, they are to be maintained in a separate account and shall not be commingled with the other monies received by the Welfare Fund. Only the $75 provided above may be used for civil legal

16001

representation. No additional monies from the Welfare Fund may be used for civil legal representation.

f.      Such payments shall be made pro-rata by the City on a monthly basis.

**Section 2.**

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the date of the suspension, the employee shall receive full Health and Welfare Fund contribution for the period of the suspension.

## ARTICLE XIV - ANNUITY FUND

**Section 1.**

The City shall continue to contribute for each employee, on a twenty eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which such amount shall not exceed $522.00 per annum for each employee in full pay status in the prescribed twelve (12) month period. Contributions hereunder shall be remitted by the City each twenty eight (28) to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

**Section 2.**

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the effective date of the suspension, the employee shall receive full annuity coverage for the period of the suspension.

## ARTICLE XV – SENIORITY

The Department recognizes the importance of seniority in filling vacancies within a command and shall make every effort to adhere to this policy, providing the senior applicant has the ability and qualifications to perform the work involved. While consultation on such matters is permissible, the final decision of the Department shall not be subject to the grievance procedure.

16001

## ARTICLE XVI – GENERAL

### Section 1.  Safety Helmets

The City agrees to furnish a safety helmet and equipment related thereto for each employee.  Such headgear shall conform to Police Department specifications in effect at the time of this Agreement.

### Section 2.  Parking Facilities

It is the intent of the Department to make available without liability to the City, City-owned property and on-street location adjacent to, near or part of police stations or other command locations, as parking facilities for the personal cars of employees.  A single designated representative of the Department and a single designated representative of the PBA will survey locations in the vicinity of station houses to determine what space is available which could reasonably be used for police parking and, where space exists, the Department and the PBA will jointly request of the appropriate City agency designation of such locations.  This expressed intent of the Department does not imply any obligation or commitment on the part of the City or the Department to make available any such location or parking facilities.  Where such property is provided and so designated for this purpose, the City shall not be obligated to improve the same, nor to maintain it for parking.  The City need not continue to provide such property for parking when the City, in its discretion, decides to make a different use of it.

All inquires or complaints from employees concerning the subject matter or application of this section shall be referred directly to the PBA for investigation and review.  The PBA shall screen and thereafter shall present only those inquiries or complaints which it believes are justified to the Commanding Officer of the Office of Labor Relations of the Police Department, or the Commanding Officer's designee, for discussion and possible adjustment.

Effective August 1, 2010, this Section shall not be subject to the grievance procedure. Effective January 1, 2016, this Section shall be subject to the grievance procedure; however the Police Commissioner's decision at Step IV may not be subject to appeal under Article XXI, Section 8.

### Section 3.  Maintenance of Facilities

All commands and other Departmental places of assignment shall have adequate heating, hot water and sanitary facilities.  The Union shall give notice to the Department of any failure to maintain these conditions.  If not corrected by the Department within a reasonable time, the Union may commence a grievance at Step 3 of the grievance procedure concerning that failure.

### Section 4.  Private Hospital Accommodations for Line-of-Duty Injuries

It is the intent of the City to use its best efforts to secure private room accommodations in a hospital for employees injured in the line of duty.  This Section shall not be subject to the grievance procedure.

### Section 5.  Information Exchange

16001

a.  The Department will provide the Union with a copy of all Orders, Department Bulletins, "Open Door" issues, and press releases. The details of delivery shall be worked out between the parties.

The Department will provide to the Union on a semi-annual basis a computer printout containing names and addresses of employees, listed alphabetically.

b.  The Union will provide the Department with a copy of Union publications, bulletins and press releases.

## Section 6.  Meal Areas

A representative of the Department and a representative of the PBA will meet to determine an adequate meal area for employees within each command and other Departmental places of assignment. This does not contemplate rebuilding or extensive remodeling.

## Section 7.  Personal Folder

a.  The Personnel Bureau will provide the Union with a list of categories of items included in the Personal Folder with an indication of those confidential items which an employee is not permitted to review.

b.  Employees may view their folders on normal business days between the hours of 9 A.M. and 5 P.M. by appearing in person at the Employee Management Division, Personnel Bureau, 10th Floor, Police Headquarters. To avoid delay, employees should call the Employee Management Division at least one day in advance.

c.  The Department will, upon written request to the Chief of Personnel by the individual employee, remove from the Personal Folder investigative reports which, upon completion of the investigation, are classified "exonerated" and/or "unfounded."

## Section 8.  Disciplinary Records

Where an employee has been charged with a "Schedule A" violation as listed in Patrol Guide 118-2 and such case is heard in the Trial Room and disposition of the charge at trial or on review or appeal therefrom is other than "guilty", the employee concerned may, after 2 years from such disposition, petition the Police Commissioner for a review for the purpose of expunging the record of the case. Such review will be conducted by a board composed of the Deputy Commissioner - Trials, Department Advocate, and the Chief of Personnel, or their designees. The Board will make a recommendation to the Police Commissioner. The employee concerned will be notified of the final decision of the Police Commissioner by the Deputy Commissioner - Trials.

## Section 9.  Disciplinary Procedure

The parties, through a joint subcommittee, shall develop procedures to insure that:

a.  All disciplinary charges shall be brought in a timely fashion pursuant to the current departmental regulations.



b.    Departmental trials shall be held as promptly as possible, utilizing additional hearing personnel.

c.    Reimbursement shall be made for any period of suspension in excess of any penalty ultimately levied.

## Section 10.  Fixed Post Duty

A commanding officer may limit fixed post duty for a single employee to a single four-hour period.

## Section 11.  Meal Scheduling

Employees shall not be assigned meals as a matter of practice during either the first hour and one-half or last hour and one-half of their tours. In cases of emergency this practice may be altered.

## Section 12.  Lump Sum Payment

Where an employee has an entitlement to accrued annual leave and/or compensatory time, and the City's fiscal condition requires employees who are terminated, laid off or who choose to retire in lieu of layoff to be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the employer shall provide the monetary value of accumulated and unused annual leave and/or compensatory time allowances standing to the employee's credit in a lump sum.  Such payment shall be in accordance with the provisions of Executive Order 30, dated June 24, 1975.

Where an employee has an entitlement to terminal leave and the City's fiscal situation requires that employees who are terminated, laid off, or retired be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the employer shall provide a monetary lump sum payment for terminal leave in accordance with the provisions of Executive Order 31, dated June 24, 1975.

## Section 13.  Interest Payments

Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after execution of this Agreement or one hundred-twenty (120) days after the effective date of the increase, whichever is later, to the date of actual payment.  Interest on longevity and step-up increments, differentials and holiday pay shall accrue at the rate of three percent (3 %) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days after the execution of this Agreement, whichever is later, to the date of actual payment.  Interest on overtime pay shall accrue at the rate of three percent (3 %) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days following the employee's submission of an overtime report, whichever is later.  Interest accrued pursuant to this paragraph shall be payable only if the amount of interest due to an individual employee exceeds five dollars ($5).

## Section 14.  Layoffs

Where layoffs are scheduled the following procedure shall be used:

16001

a. Notice shall be provided to the appropriate Union not less than 30 days before the effective dates of such projected layoffs.

b. Within such 30-day period designated representatives of the Employer will meet and confer with the designated representatives of the appropriate Union with the objective of considering feasible alternatives to all or part of such scheduled layoffs, including but not limited to (a) the transfer of employees to agencies with retraining, if necessary, consistent with Civil Service Law but without regard to Civil Service title, (b) the use of Federal and State funds whenever possible to retain or re-employ employees scheduled for layoff, (c) the elimination or reduction of the amount of work contracted out to independent contractors and (d) encouragement of early retirement and the expediting of the processing of retirement applications.

When a layoff occurs, the Department will provide the Union with a list of employees who are on a preferred list with the original date of appointment utilized for the purpose of such layoff.

### Section 15. Public Transportation

The City and the PBA will use their best efforts to effect free transportation on buses and subways for police officers.

### Section 16. Funding Applications

The City shall continue to apply for Federal funding to hire additional police officers.

### Section 17. Polygraphs

The current practice concerning the use of polygraphs in internal investigations shall be maintained during the term of this Agreement.

### Section 18. Seniority for Steady Tours

Operation Order #105 dated 11/6/78 shall be modified to delete all references to seniority as the basis for assignment to steady tours. Police Officers who are currently assigned to steady late tours pursuant to the old clause will be "grandfathered," but subject to the current rules on removal for cause. Volunteers for steady late tours shall be solicited in the first instance by seniority with the commanding officer having the discretion to choose volunteers. If the most senior volunteer is not chosen, the officer may appeal to the First Deputy Commissioner or his designee whose decision shall be binding and not subject to the grievance and arbitration procedure.

### Section 19. Mutual Exchange of Tours

a. Commanding Officers shall permit members performing similar duties to exchange tours voluntarily when there is no interference with police service.

b. Members are not permitted to exchange tours so that they would perform two (2) consecutive tours.

16001

c.       This procedure shall be incorporated into the Patrol Guide.

## Section 20.  Vacation Selection

a.       Effective July 31, 2012, Police Officers shall be permitted to select vacation based on their seniority (date of appointment to the NYPD) within their squad or command, whichever is appropriate, and subject to Operations Order No. 40 issued on October 16, 2014.

b.       This provision shall be implemented on January 1, 2016.

## Section 21.  Vacation Donation

a.       Effective July 31, 2012, Police Officers shall be permitted to donate vacation days to other members of the bargaining unit for medical or similar personal emergencies incurred by the recipient, provided:
      1.       There is no impact on the Final Average Salary of the donor or donee who retires; and
      2.       Neither the donor or donee is in his/her final year of service with the NYPD; and
      3.       Approval is granted by the commanding officer, which approval shall not be unreasonably denied.

b.       This provision shall be implemented on January 1, 2016.

## Section 22.  Recoupment

a.       Effective July 31, 2012, the following process shall apply when there has been an overpayment to a Police Officer:
      1.       The Police Department shall promptly notify the police officer, in writing. Such writing shall contain a detailed explanation of when the police officer received the alleged overpayment, the amount and calculation of the alleged overpayment, the amount that the Department believes the proper payment should have been, and the reasons why the Department believes the amount received was an overpayment and notify the police officer of his right to contest the overpayment within 15 days of receipt of that writing. The police officer shall have 15 days from receipt of such notice within which to contest that overpayment, and that objection shall be in writing.
      2.       If the police officer does not contest the overpayment in writing within 15 days from the receipt of the overpayment notice, the Department may commence recoupment the second pay period immediately following the 30th day after receipt by the police officer of the Police Department's initial written notification of overpayment.
      3.       If the police officer does contest the overpayment in writing within 15 days from the receipt of the overpayment notice, and if the Department intends to proceed with any recoupment, the Department shall respond in writing within 15 days of receiving the written objection, explaining in detail why it disagrees with the police officer's stated objection. The Department may then commence recoupment in the second pay period immediately following the 30th day after receipt by the police officer of the Police Department's initial written notification of overpayment.

4.      For this purpose, no more than 7.5% of the police officer's gross pay (minus court ordered child support payments) may be withheld from the police officer's regular paycheck, per pay period, unless the police officer and the Department agree in writing to a different percentage or payment schedule.

5.      If the Department has official notice of an officer's intention to leave the Department such that full recoupment may not be made pursuant to the 7.5% formula and subject to the above procedure, the Department may withhold pay from the officer's paycheck in equal amounts so that full recoupment is achieved by the time the officer leaves the Department.

b.      This provision shall be implemented on January 1, 2016.

## ARTICLE XVII - UNION ACTIVITY

### Section 1.

With respect to time spent by Union officials and representatives in the conduct of labor relations, the provisions of Mayor's Executive Order No. 75, dated March 22, 1973, or any other applicable Executive Order or local law, or as otherwise provided in this Agreement shall be deemed applicable. No employee shall otherwise engage in Union activities during the time the employee is assigned to the employee's regular duties.

### Section 2.

PBA Trustees and delegates shall be recognized as representatives of the PBA within their respective territories and commands. For the purpose of attending the regular scheduled monthly delegate meeting, PBA delegates shall be assigned to the second platoon and excused from duty for that day. In the event the delegate so assigned to the second platoon is unable to attend said monthly delegate meeting because of illness which requires remaining at home or hospitalization, or absence from the New York metropolitan area on leave or by assignment, or required court appearance, then and only then will a designated alternate delegate be excused from duty as spelled out in this Section. The Union will provide the City with a list of those attending each such meeting, which shall be the basis for their payment.

### Section 3.

The parties shall explore a further clarification of Departmental rules and procedures to enable PBA delegates and officers to represent properly the interests of employees. An appropriate Departmental order in this regard shall be issued.

## ARTICLE XVIII - NO DISCRIMINATION

In accord with applicable law, there shall be no discrimination by the City against any employee because of Union activity.

## ARTICLE XIX - NIGHT SHIFT DIFFERENTIAL

a.      There shall be a 10% night shift differential effective January 1, 1971 applicable to all

23

16001

employees assigned to rotating tours of duty for all work actually performed between the hours of 4:00 p.m. and 8:00 a.m. There shall be a 10% night shift differential effective January 1, 1971 applicable to all other employees for all work actually performed between the hours of 4:00 p.m. and 8:00 a.m., provided that more than one hour is actually worked after 4:00 p.m. and before 8:00 a.m.

b.    Where overtime compensation is to be calculated for tours in the regular duty chart, the overtime calculation shall be based on the rate paid for the tour to which the overtime is attached; for tours not in the regular duty chart, the overtime calculation shall be based on the rate paid for half or more of the hours of the tour to which the overtime is attached.

c.    For all employees hired after June 30, 1991:

1.    No night shift differential shall be paid to those employees while they are assigned to the Police Academy as a recruit or for Recruit Training.

2.    Thereafter, 55 % of the night shift differential as described in paragraph "a" above earned by a similarly situated Police Officer hired prior to July 1, 1991 shall be paid until the employee reaches First Grade after five years. Effective January 1, 1995, the rates paid to Police Officers shall equal the ratio between the Police Officer's base salary and the Basic First Grade salary in effect at the time. Those rates shall be as follows:

|  |  |
|---|---|
| Second Grade: 78% | Fifth Grade: 68% |
| Third Grade: 75% | Sixth Grade: 64% |
| Fourth Grade: 71% | |

## ARTICLE XX - OVERTIME TRAVEL GUARANTEE

### Section 1.

The assignment of an employee to a post not within the employee's permanent command shall in the first instance be accomplished so that the assignment originates and terminates within such employee's permanent command and within the employee's regular tour of duty.

### Section 2.

Overtime travel guarantee compensation shall continue to be paid as follows:

a.    In the event that an employee is assigned to a post outside the employee's permanent command and is required to report -at such post at the start of the employee's regular tour of duty, the employee shall accrue an allowance for travel to the post to assigned post at the rate of time and one-half for forty-five (45) minutes of travel time if the assigned post is within the same patrol borough as the employee's permanent command or at the rate of time and one-half for 1-1/4 hours if the assigned post is in a different patrol borough from that of the employee's permanent command.

b.    In the event that an employee is assigned to a post outside the employee's permanent

1600 1

command and cannot return to the permanent command within the regular tour of duty, the employee shall accrue an allowance for travel to the permanent command at the same rate as stated in Subsection 2a of this Article XX.

## Section 3.

The overtime accrued pursuant to this Article for any one day shall be taken by the employee at the employee's sole option either all in cash or all in compensatory time off.

## Section 4.

In the administration of the provisions of this Article the arbitrator's award in OCB Docket No. A-114-70 shall be applicable except that the provisions of this Article shall apply to employees assigned to the Tactical Patrol Unit.

## Section 5

a.   All claims for payment of compensatory time off which is earned as provided in Article XX of the contract on April 1, 1977 or thereafter must be submitted to the appropriate payroll personnel by the applicant within 180 days from the date payment is earned for payment in cash. All applications submitted after 180 days up to 365 days from the date payment is earned will be granted the appropriate compensatory time off only for claims under Article XX.

b.   If a request for payment is timely submitted and rejected by the Police Department, the grievant shall have 90 days from the date of receipt of a written rejection notice to file a grievance pursuant to Article XXI.

c.   The above clarification shall apply only to Article XX claims earned on April 1, 1977 or thereafter.

d.   This clarification applies to a grievance brought under this collective bargaining contract only. It has no applicability to any other legal remedy which an individual may have.

## ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE

## Section 1. Definitions.

a.   For the purpose of this Agreement, the term "grievance" shall mean:

   1.   a claimed violation, misinterpretation or inequitable application of the provisions of this Agreement;

   2.   a claimed violation, misinterpretation or misapplication of the written rules, regulations or procedures of the Police Department affecting terms and conditions of employment, provided that, except as otherwise provided in this Section la, the term "grievance" shall not include disciplinary matters;



3.  a claimed improper holding of an open-competitive rather than a promotion examination;

4.  a claimed assignment of the grievant to duties substantially different from those stated in the grievant's job title specification.

b.  For the purposes of this Agreement, the term "Commanding Officer" shall mean the immediate Commanding Officer of the aggrieved employee.

c.  For the purposes of this Agreement, the term "Reviewing Officer" shall mean the superior officer in charge of the next higher command or level above a Commanding Officer.

d.  For the purposes of this Agreement, the term "Board" shall mean the Personnel Grievance Board to be composed of three (3) members, as follows: a Deputy Commissioner or other designee of the Police Commissioner, who shall be Chairman of the Board, the Chief of the Department or the Chief of the Department's designee, and the President of the Union or the President's designee.

e.  For the purposes of this Agreement, the term "grievant" shall mean an employee or group of employees asserting a grievance or the Union or both, as the context requires.

## Section 2.

The availability of the grievance or arbitration procedure shall not justify a failure to follow orders.

## Section 3.

a.  Every grievant shall have the right to present a grievance in accord with the procedure provided herein free from coercion, interference, restraint or reprisal.

b.  The informal resolution of differences or grievances is urged and encouraged at all levels of supervision.

c.  Commanding Officers and Reviewing Officers shall promptly consider grievances presented to them and, within the scope of their authority take such necessary action as is required herein.

d.  Commanding Officers, Reviewing Officers and members of the Personnel Grievance Board shall consider objectively the merits of grievances with due consideration to the harmonious interrelationship that is sought to be achieved among all members of the force and for the good of the Police Department.

e.  Any employee may present the employee's own grievance through the first four steps of the grievance procedure either individually (with the aid of the employee's own counsel if the employee so chooses), or through the Union, provided, however, that the Union shall have the right to have a representative present at each step of the grievance procedure.

## Section 4.



Under the grievance procedure herein a grievance must be initiated within 90 days following the date on which the grievance arose or the date on which the grievant should reasonably have learned of the grievance or the execution date of this Agreement, whichever date is the latest. Grievances shall be processed according to the following procedure:

## STEP I.

A grievant shall present the grievance to the Commanding Officer either orally or in writing. The Commanding Officer shall carefully consider the matter, make a decision thereon and advise the grievant of the decision within five (5) days of the grievance's submission.

## STEP II.

If the grievance is not satisfactorily adjusted at Step I, the grievant may seek the following review within ten days after receipt of the Step I decision. The grievant shall reduce the grievance to writing on Form P.D. 158-151 (in triplicate), setting forth a concise statement of the grievance and the results of the proceedings at Step I. The grievant shall forward two copies to the appropriate Reviewing Officer and retain one copy for personal use. The Reviewing Officer shall forward one copy to the Commanding Officer, requesting the Commanding Officer's comments. The Reviewing Officer shall carefully consider said grievance, make a determination, and notify the grievant and the Commanding Officer of the Reviewing Officer's decision within ten (10) days following receipt of the grievance.

## STEP III.

If the grievance is still not satisfactorily adjusted, the grievant may, not later than ten days after notification of the Reviewing Officer's decision, seek further review as follows:

The grievance shall be submitted to the Chairman of the Personnel Grievance Board on the grievance form supplied by the Office of Labor Relations of the Police Department. The Board shall forward one copy to the Reviewing Officer, requesting the Reviewing Officer's comments thereon. The Personnel Grievance Board shall meet at least once a month on a date designated by the Chairman. At each meeting, the Board shall consider all grievances which, at least five days prior to such meeting, have been properly referred to the Board. The grievant may choose to have the grievant's representatives present at the meeting, at which time oral and written statements may be presented.

The Board shall carefully consider said grievance, make a determination and notify the grievant, the Commanding Officer and the Reviewing Officer, in writing, of its decision within seven days after the meeting at which the grievance is considered.

It is understood and agreed by and between the parties that there are certain grievable disputes which are of a Department level or of such scope as to make adjustments at Step I or Step II of the grievance procedure impracticable, and, therefore, such grievances may be instituted at Step III of the grievance procedure by filing the required written statement of the grievance directly with the Chairman of the Personnel Grievance Board; the Chairman or Chairman's designee shall convene a meeting of the Board within five (5) working days following receipt of the grievance, and the Board shall render its decision within five (5) working days following that meeting.

Case 1:20-cv-05441-KPF   Document 10-5   Filed 07/17/20   Page 30 of 40

## STEP IV.

Where the grievance is not satisfactorily adjusted at Step III, the grievant may refer the grievance, not later than thirty (30) calendar days after notification of the Board's decision, to the Police Commissioner for determination; and the Police Commissioner shall make a determination within ten (10) working days following receipt of the grievance. This determination shall be made after appropriate consultation with any or all parties to the grievance, including the Chairman of the Board and/or the Board members; and copies shall be sent to the grievant and the Union.

Grievances which affect substantial numbers of employees may be compressed by elimination of the fourth Step of the grievance procedure.

## Section 5.

At every step of these procedures, the grievant and the officer considering the grievance shall work for a satisfactory adjustment. At any step, the Commanding Officer, the Reviewing Officer, and the Board shall have the right to summon the grievant and any and all persons considered necessary to the equitable adjustment of the grievance. Proceedings shall be informal. The Chairman of the Personnel Grievance Board shall take such steps to implement the provisions concerning grievances as are necessary for the proper and effective operation of the procedures provided for herein. The Chairman shall resolve questions as to jurisdictional responsibility of Commanding Officers and Reviewing Officers and shall work out the operational details of the program. For these purposes, the Chairman shall issue orders and instructions through the Chief of Department not inconsistent with the provisions of this Article.

## Section 6.

The grievance procedure established hereinbefore is designed to operate within the framework of, and is not intended to abolish or supersede, existing rules and procedures providing for additional methods of redress. These include, but are not limited to, the existing rights of a grievant to request an interview with the Police Commissioner.

## Section 7.

Any or all of the foregoing grievance steps may be waived by the written consent of both parties.

## Section 8.

Within twenty (20) days following receipt of the Police. Commissioner's Step IV decision, the Union shall have the right to bring grievances unresolved at Step IV to impartial arbitration pursuant to the New York City Collective Bargaining Law and the Consolidated Rules of the New York City Office of Collective Bargaining. In addition, upon ten (10) days' written notice to the Union, the City shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined as a "grievance" herein. The City shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining, with a copy to the Union; and the matter shall proceed pursuant to the Consolidated Rules of the Office of Collective Bargaining.

16001

A permanent rotating Panel of a minimum of five (5) Arbitrators shall be established, drawn from the official panel of the Office of Collective Bargaining, as agreed to by both parties. The members of the Panel shall be assigned on a rotating basis to arbitrate all grievances under this Section.

The assigned Arbitrator shall hold a hearing at a time and place convenient to the parties and a transcript shall be taken unless the taking of a transcript is waived by both parties. The arbitrator shall attempt to issue an award within ten (10) days after the completion of the hearing.

The City and the Union shall each pay 50% of the fees and expenses of the Arbitrator and of all other expenses incidental to such arbitration. The costs of one copy for each party and one copy for the Arbitrator of the transcripts shall be borne equally by the parties.

### Section 9.

In case of grievances falling within Sections 1(a)(1), 1(a)(2), or 1(a)(3) of this Article, the arbitrator's decision, and order or award (if any), shall be limited to the application and interpretation of the collective bargaining Agreement, rule, regulation, procedure, order or job title specification involved, and the Arbitrator shall not add to, subtract from, or modify any such Agreement, rule, regulation, procedure, order or job title specification. An Arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accord with Article Seventy-Five of the Civil Practice Law and Rules, except that awards as to grievances concerning assignment of the grievant to duties substantially different from those stated in the grievant's job title specification or the use of an open-competitive rather than promotional examination, shall be final and binding and enforceable only to the extent permitted by law. An Arbitrator may provide for and direct such relief as the Arbitrator determines to be necessary and proper, subject to the limitation set forth above and any applicable limitations of law.

### Section 10.

The time limits contained in this Article may be modified by mutual agreement. In the event that the Department fails to comply with the time limits prescribed herein, the grievance may be advanced to the next step.

### ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT

In the event an employee dies because of a line-of-duty injury received during the actual and proper performance of police service relating to the alleged or actual commission of an unlawful act, or directly resulting from a characteristic hazard of police duty, through no fault of the employee's own, a payment of $25,000 shall be made from funds other than those of the Retirement System in addition to any other payment which may be made as a result of such death. Such payment shall be made to the beneficiary designated under the Retirement System or, if no beneficiary is so designated, to the estate of the deceased.

### ARTICLE XXIII - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, the employee's beneficiary designated under the Retirement System or, if no beneficiary is so designated, the deceased's estate shall receive payment in cash for the following as a death benefit:

16001

a.   All unused accrued leave up to a maximum of 54 days' credit.

b.   All unused accrued compensatory time earned subsequent to January 1, 1971 which is
verifiable by official Department records up to a maximum of two hundred (200) hours.

## ARTICLE XXIV - OPTIONAL WORK DURING VACATION

### Section 1.

Any employee may volunteer to work for one five-day period per year during such employee's
vacation leave. Whether the volunteer will be assigned to duty is within the discretion of the
Department. If assigned to such duty, the assignment shall be at the discretion of the Department to
any regular platoon in any one command for the entire five (5) day period. No employee shall be
discriminated against in the application of this Section because the employee is in the last year of
service.

### Section 2.

An employee who so volunteers shall be compensated at the employee's regular straight time rate of
pay for all work performed during the employee's assigned platoon's regular hours of work. Except
as otherwise provided in this Article, all other provisions of this Agreement shall be applicable to
work so performed.

### Section 3.

Contributions under Article XIII (Health and Welfare Fund) and Article XIV (Annuity Fund) of this
Agreement shall not be paid for work performed pursuant to this Article.

### Section 4.

For the purposes of Article XX, (Overtime Travel Guarantee) of this Agreement, the command to
which an employee is so assigned for the five (5) day period shall be deemed that employee's
"permanent command."

## ARTICLE XXV - NO STRIKES

In accord with applicable law, neither the Union nor any employee shall induce or engage in any
strikes, slowdowns, work stoppages, or mass absenteeism, or induce any mass resignations during
the term of this Agreement.

## ARTICLE XXVI - BULLETIN BOARDS

The Union may post notices on bulletin boards in places and locations where notices are usually
posted by the Employer for employees to read. All notices shall be on Union stationary, shall be
used to only notify employees of matters pertaining to Union affairs, and shall not contain any

16001

derogatory or inflammatory statements concerning the City, the Department, or personnel employed by either entity.

## ARTICLE XXVII - LABOR-MANAGEMENT COMMITTEE

### Section 1.

The City and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee.

### Section 2.

The labor-management committee shall consider and may recommend to the Police Commissioner changes in the working conditions of the employees, including, but not limited, to the following subjects: the adequate levels of Police coverage to ensure the safety of employees on duty; an excusal policy for employees appearing in court after the midnight tour. Matters subject to the grievance procedure shall not be appropriate items for consideration by the labor-management committee.

### Section 3.

The labor-management committee shall consist of six (6) members who shall serve for the term of this Agreement. The Union shall designate three (3) members and the Police Commissioner shall designate three (3) members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one (1) alternate. The committee shall select a chairman from among its members at each meeting. The chairmanship of the committee shall alternate between the members designated by the Police Commissioner and the members designated by the Union. A quorum shall consist of a majority of the total membership of the committee. The committee shall make its recommendation to the Police Commissioner in writing.

### Section 4.

The labor-management committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties. At least one (1) week in advance of a meeting the party calling the meeting shall provide to the other party a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

## ARTICLE XXVIII - NO WAIVER

Except as otherwise provided in this Agreement, the failure to enforce any provision of this Agreement shall not be deemed a waiver thereof. This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which employees are entitled by law.

## ARTICLE XXIX - SAVING CLAUSE

If any provision of this Agreement is found to be invalid such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.

16001

## ARTICLE XXX - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York, as amended.

February 26, 2016

**IN WITNESS WHEREOF,** the parties have executed this agreement on the day and year first above written.

**CITY OF NEW YORK**

**PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.**

BY: _____

BY: _____

ROBERT W. LINN
Commissioner of
Labor Relations

PATRICK J. LYNCH
President

**APPROVED AS TO FORM:**

BY: _____
ACTING CORPORATION COUNSEL

**DATE SUBMITTED TO THE FINANCIAL CONTROL BOARD:**

**UNIT:  Police Officer**

**TERM:  August 1, 2010 to July 31, 2012**

OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL          CONTRACT

NO: 16001

DATE:
February 26, 2016



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
 *Health Care Cost Management*

**MAYRA E. BELL**
 *General Counsel*
**GEORGETTE GESTELY**
 *Director, Employee Benefits Pro*

Mr. Patrick Lynch
President
Patrolmen's Benevolent Association
125 Broad Street
New York, New York 10004

Re:     PBA Agreement covering the period from August 1, 2010 through July 31, 2012

Dear Mr. Lynch:

This is to confirm our mutual understanding and agreement regarding the method of calculating the 20 and 25 years of service for the "pensionability" of longevity adjustments pursuant to Article VIII, Section 1(g) of the Agreement.  The following categories of service shall be considered police service for purposes of computing the 20 or the 25 year pensionability of longevity differential payments:

- laid-off police time which has been purchased for pension credit
- prior City uniformed service
- prior State service credited under the pension law as uniformed service.

The following category of service shall be considered police service for purposes of computing the 25 year pensionability of longevity differential payment:

- prior City service, including trainee time

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF THE PBA

BY: _____
     Patrick J. Lynch

*16001*



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

**RENEE CAMPION**
*First Deputy Commissioner*

**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*

**GEORGETTE GESTELY**
*Director, Employee Benefits P*

Mr. Patrick Lynch
President
Patrolmen's Benevolent Association
125 Broad Street
New York, New York 10004

Re:    PBA Agreement covering the period from August 1, 2010 through July 31, 2012

Dear Mr. Lynch:

The City and the PBA recognize that, pursuant to Administrative Code Section 12-127, the City is obligated to pay for the cost of line of duty injury prescription drugs for PBA members. The parties further recognize that a significant number of PBA members have utilized the PBA Health and Welfare fund to pay for these prescription drugs without reimbursement by the City. The PBA agrees to waive any and all claims retroactively and prospectively against the City for the reimbursement of the cost of line of duty injury prescription drugs.

Nothing contained in this letter is intended to modify or amend the arbitrator's award in OCB docket no. A-12057-06.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF THE PBA

BY: _____
    Patrick J. Lynch
    President

1600.1

Case 1:20-cv-05441-KPF Document 10-5 Filed 07/17/20 Page 37 of 40



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Pro*

Mr. Patrick Lynch
President
Patrolmen's Benevolent Association
125 Broad Street
New York, New York 10004

Re: PBA Agreement covering the period from August 1, 2010 through July 31, 2012

Dear Mr. Lynch:

A committee composed of an equal number of City and PBA representatives shall be created to study the possible implementation of a ten hour tour.

This committee shall make recommendations to the City and PBA after a one-year review of relevant information.

This provision is effective on July 31, 2012, with an implementation date of March 15, 2016.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF THE PBA

BY: _____
Patrick J. Lynch

1600.1

35



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

ROBERT W. LINN
*Commissioner*
RENEE CAMPION
*First Deputy Commissioner*
CLAIRE LEVITT
*Deputy Commissioner*
 *Health Care Cost Management*

MAYRA E. BELL
*General Counsel*
GEORGETTE GESTELY
*Director, Employee Benefits Program*

February **16**, 2016

Mr. Patrick Lynch
President
Patrolmen's Benevolent Association
40 Fulton Street
New York, New York 10038-1850

Re:   PBA Agreement covering the period from August 1, 2010 through July 31, 2012

Dear Mr. Lynch:

This is to confirm our mutual understanding and agreement regarding implementation of Article XI, Section 4 of the above Agreement.

For Employees who reach their third year of service after July 2010, the number of additional annual leave days in that year shall be posted depending on their month of original appointment in the Academy, as set forth in the table below:

| DATE OF APPT | ADD'L VAC DAYS |
|---|---|
| Jan 1 to April 15 | 3 days |
| Apr 16 to July 15 | 2 days |
| July 16 to Nov 15 | 1 day |
| Nov 16 to Dec 31 | 0 days |



Mr. Patrick Lynch
February 16, 2016
Page Two

Thereafter, in January, the Department shall post thirteen (13) days of annual leave in each of the fourth and fifth years of service. During the calendar year in which the fifth anniversary of appointment occurs, the Department shall apply the schedule provided in Section 4. d. of Article XI.

If the above accords with your understanding, please execute the signature line below.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF THE PBA

BY: _____
        Patrick Lynch

16001

37



**THE POLICE COMMISSIONER**
**CITY OF NEW YORK**

February 10, 2016

Mr. Patrick Lynch
President
Patrolmen's Benevolent Association
125 Broad Street
New York, New York 10004

Re:    PBA Agreement covering the period from August 1, 2010 to July 31, 2012

Dear Mr. Lynch:

Please be advised that in fiscal years 2011, 2012, and 2013, the Police Department purchased radio motor patrol and radio emergency cars with air conditioning.

Sincerely,

William Bratton
Police Commissioner

16001