# Exhibit 4



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:      JAMES F. HANLEY, COMMISSIONER *James F. Hanley*

SUBJECT:   EXECUTED CONTRACT: LIEUTENANTS

TERM:      NOVEMBER 1, 2009 TO OCTOBER 31, 2011

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the Lieutenants Benevolent Association on behalf of the incumbents of positions listed in Article I of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: FEB 0 2 2009

OFFICE OF LABOR RELATIONS

REGISTRATION

OFFICIAL                    CONTRACT

NO:                         DATE:
09 0 11                     FEB 0 2 2009

# Lieutenants' Benevolent Association
## 2009-2011 Agreement

### TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION..........................................2
ARTICLE II - UNION SECURITY-DUES CHECKOFF....................................................3
ARTICLE III - HOURS AND OVERTIME .........................................................3
ARTICLE IV - RECALL AFTER TOUR..............................................................5
ARTICLE V - COMPUTATION OF BENEFITS ......................................................6
ARTICLE VI - SALARIES........................................................................6
ARTICLE VII - UNIFORM ALLOWANCE ...........................................................8
ARTICLE VIII - LONGEVITY ADJUSTMENTS ......................................................8
ARTICLE IX - PAYMENT FOR HOLIDAY WORK ...................................................10
ARTICLE X - LEAVES..........................................................................10
ARTICLE XI - VACATIONS.....................................................................11
ARTICLE XII - HEALTH AND WELFARE FUND ...................................................12
ARTICLE XIII - HEALTH AND HOSPITALIZATION BENEFITS.........................................13
ARTICLE XIV - ANNUITY FUND.................................................................15
ARTICLE XV - SENIORITY .....................................................................16
ARTICLE XVI - GENERAL .....................................................................16
ARTICLE XVII - UNION ACTIVITY .............................................................21
ARTICLE XVIII - NO DISCRIMINATION..........................................................21
ARTICLE XIX - NIGHT SHIFT DIFFERENTIAL.....................................................21
ARTICLE XX - OVERTIME TRAVEL GUARANTEE ..................................................22
ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE.....................................23
ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT .................................................27
ARTICLE XXIII - DEATH BENEFIT-UNUSED LEAVE AND COMPENSATORY TIME....28
ARTICLE XXIV - OPTIONAL WORK DURING VACATIONS............................................28
ARTICLE XXV - NO STRIKES ..................................................................28
ARTICLE XXVI - EMPLOYEES SPECIALLY ASSIGNED OR DESIGNATED....................29
ARTICLE XXVII - BULLETIN BOARDS ...........................................................29
ARTICLE XXVIII - NO WAIVER.................................................................29
ARTICLE XXIX - SAVINGS CLAUSE .............................................................29
ARTICLE XXX - LABOR MANAGEMENT COMMITTEE ...............................................29
ARTICLE XXXI - FINANCIAL EMERGENCY ACT...................................................30
ARTICLE XXXII - TERM.......................................................................30

2009-2011 LBA

# Lieutenants' Benevolent Association
## 2009-2011 Agreement

*Agreement* made this⅔/day of *Feb*  , 2008 by and between the **City of New York** (hereinafter called "the **City**" or "the **Employer**"), acting by the Commissioner of Labor Relations, and the **Lieutenants' Benevolent Association of the City of New York** (hereinafter called "the **Union**" or the "**LBA**"), for the period from **November 1, 2009 to October 31, 2011.**

## W I T N E S S E T H:

**WHEREAS**, the Lieutenants employed by the City have duly designated the Union as their exclusive bargaining representative for the purpose of collective bargaining with the City with respect to wages, hours and conditions of employment; and

**WHEREAS**, the Union and the City desire to cooperate in establishing conditions which will tend to secure standards and conditions of employment consistent with the dignity of Lieutenants, and to provide methods for fair and peaceful adjustment of disputes that may arise between the Union and the City; and

**WHEREAS**, as a result of collective bargaining the parties have reached an Agreement which they desire to reduce to writing;

*NOW, THEREFORE,* it is mutually agreed as follows:

## ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

### Section 1.

The City recognizes the Union as the sole and exclusive collective bargaining representative for the unit consisting of the employees of the New York City Police Department in the title of Lieutenant.

### Section 2.

Except as otherwise provided herein, for purposes of this Agreement, the terms "employee" or "employees" and "Lieutenant" or "Lieutenants" shall be interchangeable and shall relate solely to employees in the unit described in Section 1 of this Article.

## ARTICLE II - UNION SECURITY-DUES CHECKOFF

### Section 1.

All employees covered by this agreement shall be free to become and remain members of the Union in good standing.

### Section 2.

The Union shall have the exclusive right to the checkoff and transmittal of dues in behalf of each employee in the unit in accord with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Regulating the Checkoff of Union Dues" and in accord with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Regulations Governing Procedures for Orderly Payroll Checkoff of Union Dues and Agency Shop Fees" and any executive orders which amend or supersede said Executive Orders.

### Section 3.

An employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in a proper form, in accord with Section 2 of this Article II, which bears the signature of the employee.

### Section 4.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference.

## ARTICLE III - HOURS AND OVERTIME

### Section 1a.

Except as otherwise provided herein, all ordered and/or authorized overtime in excess of 40 hours in any week or in excess of the hours required of an employee by reason of the employee's regular duty chart if a week's measurement is not appropriate, whether of an emergency nature or of a non-emergency nature, shall be compensated for either by cash payment or compensatory time off, at the rate of time and one-half, at the sole option of the employee. Such cash payments or compensatory time off shall be computed on the basis of completed fifteen (15) minute segments.

## Section 1b.

In order to preserve the intent and spirit of this Section on overtime compensation, there shall be no rescheduling of days off and/or tours of duty. This restriction shall apply both to the retrospective crediting of time off against hours already worked and to the anticipatory re-assignment of personnel to different days off and/or tours of duty. Notwithstanding anything to the contrary contained herein, the Department shall not have the right to reschedule employees' tours of duty, except that the Department shall have the right to reschedule employees' tours of duty on ten (10) occasions without payment of pre-tour or post-tour overtime provided that the Department gives at least 24 hours notice to the employees whose tours are to be rescheduled, and that on the following occasions the Department may reschedule employees' tours of duty by not more than three hours before or after normal starting time for such tours, without payment of pre-tour or post-tour overtime provided that the Department gives at least seven days' advance notice to the employees whose tours are to be so rescheduled: New Year's Eve, St. Patrick's Day, Thanksgiving Day, Puerto Rican Day, West Indies Day and Christopher Street Liberation Day. This Section 1b shall not apply to employees assigned to the Detective Bureau and/or "Designated as Commander of Detective Squad" and/or "Designated on Special Assignment."

Effective June 16, 2006, the Department shall have the right to reschedule employees' tours of duty on fifteen (15) occasions without payment of pre-tour or post-tour overtime provided that the Department gives at least 24 hours notice to the employees whose tours are to be rescheduled. The Department may also reschedule employees' tours of duty, without payment of pre-tour or post-tour overtime, for New Year's Eve, St. Patrick's Day, Thanksgiving Day, Puerto Rican Day, West Indies Day and Christopher Street Liberation Day, provided that the Department gives notice before 12:00am of the day(s) in question. The three (3) hour rescheduling limitation for the above named dates is also eliminated.

Effective July 7, 2008, the Department shall have the right to reschedule employees' tours of duty on twenty (20) occasions without payment of pre-tour or post-tour overtime provided that the Department gives at least 24 hours notice to the employees whose tours are to be rescheduled. The Department may also reschedule employees' tours of duty, without payment of pre-tour or post-tour overtime, for New Year's Eve, St. Patrick's Day, Thanksgiving Day, Puerto Rican Day, West Indies Day and Christopher Street Liberation Day, provided that the Department gives notice before 12:00am of the day(s) in question. The three (3) hour rescheduling limitation for the above named dates is also eliminated.

## Section 2.

Notwithstanding anything to the contrary in this Agreement, employees assigned to the Detective Bureau and/or "Designated as Commander of Detective Squad" and/or "Designated on Special Assignment" shall receive overtime compensation in the same manner and subject to the same limitations as the members of the Force detailed as First, Second or Third Grade Detectives.

### Section 3.

Overtime shall be computed on a monthly basis and shall be paid no later than six (6) weeks after submission of the monthly report.

## ARTICLE IV - RECALL AFTER TOUR

### Section 1.

Any employee who is recalled to duty after having completed the employee's regular tour of duty but four (4) hours or more before the commencement of the employee's next regular tour and is released without having been assigned to duty prior to the commencement of said next regular tour shall receive a minimum of four hours' pay pursuant to the regular overtime provisions of this Agreement, that is, in cash or compensatory time off at the sole option of the employee at the rate of time and one-half (i.e., the equivalent of six hours compensation at the employee's straight time rate).

### Section 2.

Any employee who is recalled to duty after having completed the employee's regular tour of duty but six (6) hours or more before the commencement of the employee's next regular tour and who is assigned to duty and then released from duty prior to commencement of said next regular tour shall receive a minimum of six hours' pay pursuant to the regular overtime provisions of this Agreement, that is, in cash or compensatory time off, at the employee's sole option, at the rate of time and one-half (i.e., the equivalent of nine hours' compensation at the employee's straight time rate).

### Section 3.

In the event the actual time spent on recall defined in Sections 1 and 2 of this Article extends beyond the minimum periods provided therein, the employee shall receive pay pursuant to the regular overtime provisions of this Agreement for the full period of time actually spent on such recall.

### Section 4.

Notwithstanding anything to the contrary provided in Sections 1 through 3 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but before the commencement of the employee's next regular tour and who is assigned to duty or held without assignment for a period which extends into the commencement of that next regular tour shall receive pay pursuant to the regular overtime provisions of this Agreement only for the actual time so assigned or held.

Case 1:20-cv-05441-KPF   Document 10-6   Filed 07/17/20   Page 8 of 47

### Section 5a.

Notwithstanding anything to the contrary in Sections 1 through 4 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but less than four hours before the commencement of the employee's next regular tour and who is released without having been assigned to duty prior to the commencement of that next regular tour shall receive pay in cash or compensatory time off at the employee's sole option, at the rate of time and one-half, for the actual time between the beginning of such recall and the commencement of that next regular tour.

### Section 5b.

Notwithstanding anything to the contrary in Sections 1 through 4 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but less than six hours before the commencement of the employee's next regular tour and who is assigned to duty and then released from duty prior to the commencement of that next regular tour shall receive pay in cash or compensatory time off at the employee's sole option, at the rate of time and one-half, for the actual time between the beginning of such recall and the commencement of that next regular tour.

## ARTICLE V - COMPUTATION OF BENEFITS

Since the basic forty-hour week has not been changed by this Agreement, any modifications of a standard chart and use of other tours shall not affect current standard practice for the computation of compensation for holidays, vacation days, personal leave days, annuity fund contributions and other relevant benefits, which shall remain on the basis of an eight-hour workday calculation.

## ARTICLE VI - SALARIES

### Section 1a.

The following base annual salary and increment rates shall prevail for employees during the term of this Agreement:

Class of Positions and Steps

(i) Lieutenant

|                      | Effective 11/1/2009 | Effective 11/1/2010 |
|----------------------|---------------------|---------------------|
| 1st Step        | $98,164             | $102,091            |
| 2nd Step        | $98,550             | $102,492            |
| 3rd Step        | $99,000             | $102,960            |
| 4th Step        | $108,244            | $112,574            |

**(ii)** Lieutenant

Designated on Special Assignment or as Commander Detective Squad

|          | Effective 11/1/2009 | Effective 11/1/2010 |
|----------|---------------------|---------------------|
| 1st Step | $109,187 | $113,554 |
| 2nd Step | $110,317 | $114,730 |
| 3rd Step | $111,747 | $116,217 |
| 4th Step | $119,073 | $123,836 |

**(iii)** The salary increases and base annual salary and increment rates for Lieutenant detailed as Director of Legal Bureau shall be fixed in accordance with the formula agreed to and used by the parties in the Agreement for the period January 1, 1971 to June 30, 1973.

### Section 1b.

An employee shall advance one increment step annually on the anniversary date of the employee's appointment to the class of positions occupied.

### Section 2.

A laid off employee who is returned to service in the employee's former title or in a comparable title from a preferred list, shall receive the basic salary rate that would have been received by the employee had the employee never been laid off, up to a maximum of two (2) years of general salary increases.

### Section 3.    General Wage Increase.

a.   **(i)**   Effective November 1, 2009 Employees shall receive a rate increase of 4%.

**(ii)**   Effective November 1, 2010, Employees shall receive an additional rate increase of 4%.

b.   The increases provided for in this Section 3a above shall be calculated as follows:

**(i)**   The increase in Section 3a(i) shall be based upon the base rates (which shall include salary or incremental schedules) of the applicable titles in effect on October 31, 2009;



and

(ii) The rate increase in Section 3a (ii) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on October 31, 2010.

c. The general increase provided in this Section 3 shall be applied to the base rates and salary grades fixed for the applicable titles.

## Section 4.

Paychecks shall be delivered to commands by 3:00 p.m. on the Thursday preceding payday for distribution after 3:00 p.m. on said Thursday.

### Section 5. - Salary Itemization

The Department shall make available in convenient places in each precinct the appropriate payroll work sheets for the purpose of enabling each employee to verify the salary components of the employee's paycheck. The parties will review further the feasibility of otherwise advising each employee of all payroll components along with the employee's paycheck.

## ARTICLE VII - UNIFORM ALLOWANCE

In Fiscal Years 2010 and 2011 the City shall pay to each employee a uniform allowance of $1,100 in accord with the existing standard procedures.

## ARTICLE VIII - LONGEVITY ADJUSTMENTS

### Section 1.

a. Effective November 1, 2009 longevity adjustments shall continue to be paid as follows:

(i) Upon the completion of five years of service, employees shall receive a longevity adjustment of $5,745.

(ii) Upon completion of ten years of service, employees shall receive a longevity adjustment of an additional $1,000.

    **(iii)**   Upon completion of fifteen years of service, employees shall receive a longevity adjustment of an additional $1,000.

    **(iv)**   Upon completion of twenty years of service, employees shall receive a longevity adjustment of an additional $1,000.

b.    Effective October 31, 2011, longevity adjustments shall be paid as follows:

    **(i)**   Upon the completion of five years of service, employees shall receive a longevity adjustment of $5,745.

    **(ii)**   Upon completion of ten years of service, employees shall receive a longevity adjustment of an additional $1,000.

    **(iii)**   Upon completion of fifteen years of service, employees shall receive a longevity adjustment of an additional $1,500.

    **(iv)**   Upon completion of twenty years of service, employees shall receive a longevity adjustment of an additional $1,000.

## Section 2.

a.    The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completing 20 years of service.

    The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service.

    In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

b.    The calculation of night shift differential payments shall be based upon the same factors, amounts and methodology as previously utilized.

c.    ITHP and pension benefit calculations shall only include the amount of the longevity payment that is pensionable.

FILED: NEW YORK COUNTY CLERK 07/14/2020 09:50 PM | INDEX NO. 154982/2020
NYSCEF DOC. NO. 5 | RECEIVED NYSCEF: 07/14/2020

Case 1:20-cv-05441-KPF  Document 10-6  Filed 07/17/20  Page 12 of 47

# ARTICLE IX - PAYMENT FOR HOLIDAY WORK

Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.

# ARTICLE X - LEAVES

## Section 1. - Sick Leave

**a.** **(i)** Each employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect which is service-connected pursuant to Section 14-122.1 of the Administrative Code.

**(ii)** Each employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect, whether or not service-connected.

**b.** The Chief of Personnel shall consult with representatives of the LBA regarding the enforcement of the sick leave program in order to insure that undue restrictions will not be placed upon Lieutenants. Departmental orders in connection therewith shall be issued after consultation with the LBA.

## Section 2 - Death-in-Family Leave

In the event of a death in an employee's immediate family and upon application to and approval of the employee's commanding officer or supervisory head, the employee shall receive leave with pay not exceeding four consecutive regular tours of duty. For the purposes of this section, the phrase, "immediate family," shall include any of the following: (a) a spouse, (b) a natural, foster or step-parent, child, brother or sister, (c) a father-in-law or mother-in-law, or (d) any relative residing in the employee's household. The commanding officer or supervisory head granting such leave shall verify the death and relationship of the deceased. If the deceased was in the military service of the United States at the time of the death, the employee requesting leave shall produce the official notice of death.

## Section 3. - Military Leave

Military leave not exceeding a total of thirty (30) days in any one calendar year and not exceeding thirty (30) days in any one continuous period of such absence shall be granted with pay to any employee requiring such leave to satisfy military obligations.

## Section 4. - Special Excusals

Excused time accorded to other personnel employed by the City under circumstances such as excusals for the Dr. Martin Luther King, Jr. and the Senator Robert F. Kennedy funerals and the

2009-2011 LBA                              10

Moon Landing Observation Day shall be granted equally to employees covered by this Agreement. All compensating days off shall be subject to exigencies of the Department.

## Section 5. - Leave to Attend Hearings

Individual employee grievants shall be granted leave with pay for such time as is necessary to testify at arbitration hearings.

Leave with pay shall be granted to three (3) employees who are named grievants in a group arbitration proceeding, for such time as is necessary for them to testify at their group arbitration hearings.

Leave with pay for such time as is necessary to testify at their hearings shall be granted to employees who, after final adjudication of proceedings under Section 210, paragraph 2h of the Civil Service Law are determined not to have been in violation of Section 210.

# ARTICLE XI - VACATIONS

## Section 1.

The Department shall continue to provide authorized annual vacations of twenty-seven work days.

## Section 2.

Employees may select individual vacation days at the time vacations are picked, provided that the maximum number of employees allowed to take such individual vacation days at any time shall be 2% of the Unit Rank Complement, and provided further that no employee may choose more than one of the following holidays as an individual vacation day: Independence Day, Labor Day, Thanksgiving Day, Christmas Day and New Year's Day. Any employee who fails to select such individual vacation days at the time the employee makes the regular vacation pick may select such individual vacation days at a later time subject to the exigencies of the Department. Such individual vacation days shall be treated as regular vacation picks.

## Section 3. - Accrual of Vacation

If the Police Department calls upon an employee in writing to forego the employee's vacation or any part thereof that portion up to a maximum of three weeks of vacation shall be carried over until such time as it can be liquidated in the following calendar year subject to the following conditions:

(1)     the selection of such vacation days shall be in the discretion of and subject to the exigencies of the Department; and

(2)    the selection of such days in the following calendar year shall be made after the regular vacation picks; and

(3)    the utilization of this vacation time shall be restricted to the months of January through May and September through November.

It is the intention of the Police Department to allow an employee to request permission to accrue vacation consistent with this provision and to grant such requests which are reasonable.

## ARTICLE XII - HEALTH AND WELFARE FUND

### Section 1.

a.    Effective November 1, 2009, the City shall continue to contribute the pro-rata annual amount of $1,500 for each employee for remittance to the Health and Welfare Fund of the Lieutenants' Benevolent Association of the City of New York ("Welfare Fund") pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

b.    Pursuant to its commitment, the LBA will continue to provide benefits to employees domestic partners.

c.    To the extent permitted by law, part of the amounts so contributed may be applied to maintain an appropriate legal services plan, pursuant to the terms of a supplemental agreement between the parties as approved by the Corporation Counsel.

d.    Effective June 16, 2003, employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Health and Welfare Fund of the Lieutenants' Benevolent Association at the time of such separation pursuant to a supplementary agreement between the City and the LBA shall continue to be so covered, subject to the provisions of Sections 1 a and b hereof, on the same contributory basis as incumbent employees. Contributions shall be made only for such time as said individuals remain primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

e.    **Civil Legal Representation Fund**

Effective November 1, 2009, the City shall continue to contribute $75 per annum for each active Employee to the Welfare Fund to the civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel. While these funds shall be administered by the applicable Welfare

Fund, they are to be maintained in a separate account and shall not be commingled with the other monies received by the Welfare Fund. Only the $75 provided above may be used for civil legal representation. No additional monies from the Welfare Fund may be used for civil legal representation.

**f.**    Such payments shall be made pro-rata by the City every twenty-eight (28) days.

### Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the date of the suspension, the employee shall receive full Health and Welfare Fund coverage for the period of the suspension.

## ARTICLE XIII - HEALTH AND HOSPITALIZATION BENEFITS

### Section 1.

The City shall continue to provide a fully paid choice of health and hospitalization insurance plans for each employee, not to exceed 100% of the full cost of HIP-HMO on a category basis. There will be an annual reopening period during the term of this Agreement for active employees to exercise their choice among medical plans.

### Section 2.

Retirees shall have the option of changing their previous choice of Health Plans. This option:

    **(a)**    shall be a one time choice;

    **(b)**    shall be exercised only after one year of retirement; and

    **(c)**    can be exercised at any time without regard to contract periods.

The effective date of change to a new plan shall be the first day of the month three months after the month in which the application has been received by the New York City Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to January 1, 1980 and every two years thereafter, retirees shall have the option of changing their previous choice of health plans. This option shall be exercised in accordance with procedures established by the Employer. The Union will assume the responsibility of informing retirees of this option.

## Section 3.

a.  Effective July 1, 1983 and thereafter, the City's cost for each employee and for each retiree under age 65 shall be equalized at the community rated basic HIP/HMO plan payment rate as approved by the State Department of Insurance on a category basis of individual or family, e.g. the GHI-CBP/Blue Cross payment for family coverage shall be equal to the HIP/HMO payment for family coverage.

b.  If a replacement plan is offered to employees and retirees under age 65 which exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall not bear the additional costs.

c.  The City shall continue to contribute on a City employee benefits program-wide basis the additional annual amount of $30 million to maintain the health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefits.

    The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the GHI-CBP/Blue Cross plan; and, if sufficient funds are available, to fund new benefits.

    The health insurance stabilization reserve fund shall be credited with the divisions or reduced by the losses attributable to the GHI-CBP/Blue Cross plan.

d.  Pursuant to paragraph 7 of MLC Health Benefits Agreement, notwithstanding the above, in each of the fiscal years 2001 and 2002, the City shall not make the annual $35 million contributions to the health insurance stabilization fund.

e.  In the event that there is a Citywide or program-wide health insurance package which exceeds the cost of the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein. However, it is understood that the LBA will not be treated any better or any worse than any other Union Participating in the Citywide or Program-wide Health Program with regard to increased health insurance costs.

## Section 4.

Where an employee is suspended without pay prior to disciplinary trial for disciplinary reasons for more than 30 days, the employee shall receive full health and hospitalization benefit coverage during the period of the suspension following the first 30 days. Where an employee is subsequently restored

to full pay status, as of the date of suspension, the employee shall be restored to full health and hospitalization coverage for the first 30 days of the suspension.

## Section 5.  Health Care Flexible Spending Account.

a.     A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code. Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account. Participating employees shall contribute at least $260 per year up to a maximum of $5,000 per year. Said contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan. Any unfunded balance may be deducted from final salary payments due an employee.

b.     Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered. In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

c.     An administrative fee of $1.00 per week for the first year shall be charged for participation in the program. An employee's participation in the account is irrevocable during a plan year. At the close of the plan year any excess balance in an employee's account will not be refunded.

## ARTICLE XIV -
## A. ANNUITY FUND

### Section 1.

a.     Effective November 1, 2009, the City shall continue to contribute for each employee, on a twenty eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed: $1542.51 per annum for each Lieutenant; $1,605.15 per annum for each Lieutenant designated on Special Assignment or as Commander of Detective Squad; and, $1,766.97 for each Lieutenant designated as Director of Legal Bureau.

b.     Effective October 31, 2011, the City shall contribute to the annuity fund a one-time lump sum payment in the amount of $892.00 on behalf of each active member.

## Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the effective date of the suspension, the employee shall receive full Annuity Fund coverage for the period of the suspension.

# ARTICLE XIV -
# B. DEFERRED COMPENSATION

Effective November 1, 2009, the City shall continue to contribute $300.00 per annum to the 401(a) Savings Incentive Plan on behalf of each active Employee in the bargaining unit who a) is a member of the 457 Plan and b) who invests a minimum of one percent (1%) of salary per annum.
Effective October 31, 2011, there shall be a $1,784 one-time lump sum payment per active eligible employee into the 401(a) Savings Incentive Plan on behalf of each active Employee in the bargaining unit who a) is a member of the 457 Plan and b) who invests a minimum of one percent (1%) of salary per annum.

The Employee's 401(a) Plan account shall be invested in the same option(s) the Employee has designated for his/her 457 Plan account. The Employee's beneficiary for the 401(a) Plan shall be the same as the beneficiary designated by the Employee in the 457 Plan.

The parties will establish a labor-management committee to discuss implementation issues.

# ARTICLE XV - SENIORITY

The Department recognizes the importance of seniority in filling vacancies within a command and shall make every effort to adhere to this policy, providing the senior applicant has the ability and qualifications to perform the work involved. While consultation on such matters is permissible, the final decision of the Department shall not be subject to the grievance procedure.

# ARTICLE XVI - GENERAL

## Section 1. - Safety Helmets

The City agrees to furnish a safety helmet and equipment related thereto for each employee. Such headgear shall conform to Police Department specifications in effect at the time of this Agreement.

## Section 2. - Parking Facilities

It is the intent of the Department to make available without liability to the City, City-owned property and on-street locations adjacent to, near or part of police stations or other command locations, as

parking facilities for the personal cars of employees. A single designated representative of the Department and a single designated representative of the Union will survey locations in the vicinity of station houses to determine what space is available which could reasonably be used for police parking and, where space exists, the Department and the Union will jointly request of the appropriate City agency designation of such locations. This expressed intent of the Department does not imply any obligation or commitment on the part of the City or the Department to make available any such location or parking facilities. Where such property is provided and so designated for this purpose, the City shall not be obligated to improve the same, nor to maintain it for parking. The City need not continue to provide such property for parking when the City, in its discretion, decides to make a different use of it.

All inquiries or complaints from employees concerning the subject matter or application of this section shall be referred directly to the Union for investigation and review. The Union shall screen and thereafter shall present only those inquiries or complaints which it believes are justified to the Commanding Officer of the Office of Labor Relations of the Police Department, or the Commanding Officer's designee, for discussion and possible adjustment.

This Section shall not be subject to the grievance procedure.

### Section 3. - Maintenance of Facilities

All commands and other Departmental places of assignment shall have adequate heating, hot water and sanitary facilities. The Union shall give notice to the Department of any failure to maintain these conditions. If not corrected by the Department within a reasonable time, the Union may commence a grievance at Step 3 of the grievance procedure concerning that failure.

### Section 4. - Private Hospital Accommodations for Line-of-Duty Injuries

It is the intent of the City to use its best efforts to secure private room accommodations in a hospital for employees injured in the line of duty. This Section shall not be subject to the grievance procedure.

### Section 5. - Information Exchange

a.   The Department will provide the Union with a copy of all Orders, Department Bulletins, "Open Door" issues, and press releases. The details of delivery shall be worked out between the parties.

The Department will provide to the Union on a semi-annual basis a computer printout containing names and addresses of employees, listed alphabetically.

b.   The Union will provide the Department with a copy of Union publications, bulletins and press releases.



## Section 6. - Meal Areas

A representative of the Department and a representative of the LBA will meet to determine an adequate meal area for employees within each command and other Departmental places of assignment. This does not contemplate rebuilding or extensive remodeling.

## Section 7. - Personal Folder

a.      The Personnel Bureau will provide the Union with a list of categories of items included in the Personal Folder with an indication of those confidential items which an employee is not permitted to review.

b.      Employees may view their folders on normal business days between the hours of 9 A.M. and 5 P.M. by appearing in person at the Employee Management Division, Personnel Bureau, 10th Floor, Police Headquarters. To avoid delay, employees should call the Employee Management Division at least one day in advance.

c.      The Department will upon written request to the Chief of Personnel by the individual employee, remove from the Personnel Folder investigative reports which, upon completion of the investigation are classified "exonerated" and/or "unfounded".

## Section 8. - Disciplinary Records

Where an employee has been charged with a "Schedule A" violation as listed in Patrol Guide 206-3 and such case is heard in the Trial Room and disposition of the charge at trial or on review or appeal therefrom is other than "guilty", the employee concerned may, after 2 years from such disposition, petition the Police Commissioner for a review for the purpose of expunging the record of the case. Such review will be conducted by a board composed of the Deputy Commissioner - Trials, Department Advocate, and the Chief of Personnel, or their designees. The Board will make a recommendation to the Police Commissioner. The employee concerned will be notified of the final decision of the Police Commissioner by the Deputy Commissioner - Trials.

## Section 9. - Disciplinary Procedures

The parties, through a joint subcommittee, shall develop procedures to insure that:

a.      All disciplinary charges shall be brought in a timely fashion pursuant to the current departmental regulations.

b.      Departmental trials shall be held as promptly as possible, utilizing additional hearing personnel.

c.    Reimbursement shall be made for any period of suspension in excess of any penalty ultimately levied.

## Section 10. - Fixed Post Duty

A commanding officer may limit fixed post duty for a single employee to a single four-hour period.

## Section 11. - Meal Scheduling

Employees shall not be assigned meals as a matter of practice during either the first hour and one-half or last hour and one-half of their tours. In cases of emergency this practice may be altered.

## Section 12. - Lump Sum Payments

Where an employee has an entitlement to accrued annual leave and/or compensatory time, and the City's fiscal condition requires employees who are terminated, laid off or who choose to retire in lieu of layoff to be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the employer shall provide the monetary value of accumulated and unused annual leave and/or compensatory time allowances standing to the employee's credit in a lump sum. Such payment shall be in accordance with the provisions of Executive Order 30, dated June 24, 1975.

Where an employee has an entitlement to terminal leave and the City's fiscal situation requires that employees who are terminated, laid off or retired be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the employer shall provide a monetary lump sum payment for terminal leave in accordance with the provisions of Executive Order 31, dated June 24, 1975.

## Section 13. - Interest Payments

Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after execution of this Agreement or one hundred-twenty (120) days after the effective date of the increase, whichever is later, to the date of actual payment. Interest on longevity and step-up increments, differentials and holiday pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days after the execution of this Agreement, whichever is later, to the date of actual payment. Interest on overtime pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days following the employee's submission of an overtime report, whichever is later. Interest accrued pursuant to this paragraph shall be payable only if the amount of interest due to an individual employee exceeds five dollars ($5).

## Section 14. - Public Transportation

The City and the LBA will use their best efforts to effect free transportation on buses and subways for lieutenants.

## Section 15. - Polygraphs

The current practice concerning the use of polygraphs in internal investigations shall be maintained during the term of this Agreement.

## Section 16. - Probationary Period

Upon an employee's satisfactory completion of six (6) months of probation, the employee's commanding officer may recommend that the employee be granted permanent status.

## Section 17 - Performance Compensation

The City acknowledges that each of the uniformed forces performs an important service that reflects the diverse missions of the City's uniformed agencies. In order to reward service of an outstanding, exceptional nature, each of the uniformed agencies will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments. The City will notify and discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for the granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law. An employee can receive no more than one payment annually.

This provision shall not affect any existing productivity programs covered in any existing collective bargaining agreements. Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## ARTICLE XVII - UNION ACTIVITY

**Section 1.**

Time spent by Union officials and representatives in the conduct of labor relations shall be governed by the provisions of Mayor's Executive Order No. 75, as amended, dated March 22, 1973, or any other applicable Executive Order or local law, or as otherwise provided in this Agreement. No employee shall otherwise engage in Union activities during the time the employee is assigned to the employee's regular duties.

**Section 2.**

LBA Trustees and delegates shall be recognized as representatives of the LBA within their respective territories and commands. For the purpose of attending the regular scheduled monthly delegate meetings, but not more than twelve (12) per year, there will be a 24-hour excusal for daytime meetings on the 1st, 2nd and 3rd platoons on the day of the meeting, and for evening meetings on the 2nd and 3rd platoons on the day of the meeting and the 1st platoon on the following day. If the delegate or officer is either sick or out-of-town on leave or assignment, or is required to appear in court, an alternate will be able to obtain this same excusal. The Union will provide the City with a list of those attending each such meeting, which shall be the basis for their payment.

**Section 3.**

The parties shall explore a further clarification of Departmental rules and procedures to enable LBA delegates and officers to represent properly the interests of Lieutenants. An appropriate Departmental order in this regard shall be issued.

## ARTICLE XVIII - NO DISCRIMINATION

In accord with applicable law, there shall be no discrimination by the City against any employee because of Union activity.

## ARTICLE XIX - NIGHT SHIFT DIFFERENTIAL

a.  There shall be a 10% night shift differential effective January 1, 1971 applicable to all employees assigned to rotating tours of duty for all work actually performed between the hours of 4:00 P.M. and 8:00 A.M. There shall be a 10% night shift differential effective January 1, 1971 applicable to all other employees for all work actually performed between the hours of 4:00 P.M. and 8:00 A.M., provided that more than one hour is actually worked after 4:00 P.M. and before 8:00 A.M.

b.  Where overtime compensation is to be calculated for tours in the regular duty chart, the overtime calculation shall be based on the rate paid for the tour to which the overtime is

attached; for tours not in the regular duty chart, the overtime calculation shall be based on the rate paid for half or more of the hours of the tour to which the overtime is attached.

## ARTICLE XX - OVERTIME TRAVEL GUARANTEE

### Section 1.

The assignment of an employee to a post not within the employee's permanent command (hereinafter referred to as "flying") shall in the first instance be accomplished so that the assignment originates and terminates within such employee's permanent command and within the employee's regular tour of duty.

### Section 2.

Overtime travel guarantee compensation shall continue to be paid as follows:

a.     In the event that an employee is assigned to a post outside the employee's permanent command and is required to report at such post at the start of the employee's regular tour of duty, the employee shall accrue an allowance for travel to the assigned post at the rate of time and one-half for 45 minutes of travel time if the assigned post is within the same patrol borough as the employee's permanent command or at the rate of time and one-half for 1-1/4 hours if the assigned post is in a different patrol borough from that of the employee's permanent command.

b.     In the event that an employee is assigned to a post outside the employee's permanent command and cannot return to the permanent command within the regular tour of duty, the employee shall accrue an allowance for travel to the permanent command at the same rate as stated in Subsection 2(a) of this Article.

### Section 3.

The overtime accrued pursuant to this Article for any one day shall be taken at the employee's sole option either all in cash or all in compensatory time off.

### Section 4.

Notwithstanding anything to the contrary herein, employees assigned to the Detective Bureau and/or "Designated as Commander of Detective Squad" and/or "Designated on Special Assignment" shall not receive Overtime Travel Guarantee compensation during the entire period of such assignment, except when assigned in uniform.

## ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE

### Section 1. - Definitions

a.   For the purposes of this Agreement the term, "grievance," shall mean:

   (1)   a claimed violation, misinterpretation or inequitable application of the provisions of this Agreement;

   (2)   a claimed violation, misinterpretation or misapplication of the rules, regulations, or procedures of the Police Department affecting terms and conditions of employment, provided that, except as otherwise provided in this Section 1(a), the term, "grievance" shall not include disciplinary matters;

   (3)   a claimed improper holding of an open-competitive rather than a promotional examination;

   (4)   a claimed assignment of the grievant to duties substantially different from those stated in the grievant's job title specifications.

b.   For the purposes of this Agreement the term "Commanding Officer" shall mean the immediate Commanding Officer of the aggrieved employee.

c.   For the purposes of this Agreement the term "Reviewing Officer" shall mean the superior officer in charge of the next higher command or level above a Commanding Officer.

d.   For the purposes of this Agreement the term "Board" shall mean the Personnel Grievance Board to be composed of three (3) members, as follows: a Deputy Commissioner or other designee of the Police Commissioner, who shall be Chairman of the Board, the Chief of Department or the Chief of Department's designee, and the President of the Union or the President's designee.

e.   For the purposes of this Agreement the term, "grievant," shall mean an employee or group of employees asserting a grievance or the Union or both, as the context requires.

### Section 2.

The availability of the grievance or arbitration procedure shall not justify a failure to follow orders.

## Section 3.

a.   Every grievant shall have the right to present a grievance in accord with the procedure provided herein free from coercion, interference, restraint or reprisal.

b.   The informal resolution of differences or grievances is urged and encouraged at all levels of supervision.

c.   Commanding Officers and Reviewing Officers shall promptly consider grievances presented to them and, within the scope of their authority take such necessary action as is required herein.

d.   Commanding Officers, Reviewing Officers and members of the Personnel Grievance Board shall consider objectively the merits of grievances with due consideration to the harmonious interrelationship that is sought to be achieved among all members of the force and for the good of the Police Department.

e.   Any employee may present the employee's own grievance through the first four steps of the grievance procedure either individually (with the aid of the employee's own counsel if the employee so chooses), or through the Union, provided, however, that the Union shall have the right to have a representative present at each step of the grievance procedure.

## Section 4.

Under the grievance procedure herein a grievance must be initiated within 90 days following the date on which the grievance arose or the date on which the grievant should reasonably have learned of the grievance or the execution date of this Agreement, whichever date is the latest. Grievances shall be processed according to the following procedure:

## STEP I.

A grievant shall present the grievance to the Commanding Officer either orally or in writing. The Commanding Officer shall carefully consider the matter, make a decision thereon and advise the grievant of the decision within five (5) days of the grievance's submission.

## STEP II.

If the grievance is not satisfactorily adjusted at Step I, the grievant may seek the following review within ten days after receipt of the Step I decision. The grievant shall reduce the grievance to writing on Form P.D. 158-151 (in triplicate), setting forth a concise statement of the grievance and the results of the proceedings at Step I. The grievant shall forward two copies to the appropriate Reviewing Officer and retain one copy for personal use. The Reviewing Officer shall forward one copy to the Commanding Officer, requesting the Commanding Officer's comments. The Reviewing Officer shall carefully consider said grievance, make a determination, and notify the grievant and the

Commanding Officer of the Reviewing Officer's decision within ten (10) days following receipt of the grievance.

## STEP III.

If the grievance is still not satisfactorily adjusted, the grievant may, not later than ten days after notification of the Reviewing Officer's decision, seek further review as follows:

The grievant shall prepare a report on P.D. 158-151 (in quintuplicate) setting forth a concise statement of the grievance and the results of the proceedings at Steps I and II. The grievant shall forward four copies of the report through official channels to the Chairman, Personnel Grievance Board, retaining one copy for personal use. The Board shall forward one copy to the Reviewing Officer, requesting the Reviewing Officer's comments thereon. The Personnel Grievance Board shall meet at least once a month on a date designated by the Chairman. At each meeting, the Board shall consider all grievances which, at least five days prior to such meeting, have been properly referred to the Board. The grievant may choose to have the grievant's representatives present at the meeting, at which time oral and written statements may be presented.

The Board shall carefully consider said grievance, make a determination and notify the grievant, the Commanding Officer and the Reviewing Officer, in writing, of its decision within seven days after the meeting at which the grievance is considered.

It is understood and agreed by and between the parties that there are certain grievable disputes which are of a Department level or of such scope as to make adjustments at Step I or Step II of the grievance procedure impracticable, and, therefore, such grievances may be instituted at Step III of the grievance procedure by filing the required written statement of the grievance directly with the Chairman of the Personnel Grievance Board; the Chairman or Chairman's designee shall convene a meeting of the Board within five (5) working days following receipt of the grievance, and the Board shall render its decision within five (5) working days following that meeting.

## STEP IV.

Where the grievance is not satisfactorily adjusted at Step III, the grievant may refer the grievance, not later than thirty (30) calendar days after notification of the Board's decision, to the Police Commissioner for determination; and the Police Commissioner shall make a determination within ten (10) working days following receipt of the grievance. This determination shall be made after appropriate consultation with any or all parties to the grievance, including the Chairman of the Board and/or the Board members; and copies shall be sent to the grievant and the Union.

Grievances which affect substantial numbers of employees may be compressed by elimination of the fourth Step of the grievance procedure.

## Section 5.

At every step of these procedures, the grievant and the officer considering the grievance shall work for a satisfactory adjustment. At any step, the Commanding Officer, the Reviewing Officer, and the Board shall have the right to summon the grievant and any and all persons considered necessary to the equitable adjustment of the grievance. Proceedings shall be informal. The Chairman of the Personnel Grievance Board shall take such steps to implement the provisions concerning grievances as are necessary for the proper and effective operation of the procedures provided for herein. The Chairman shall resolve questions as to jurisdictional responsibility of Commanding Officers and Reviewing Officers and shall work out the operational details of the program. For these purposes, the Chairman shall issue orders and instructions through the Chief of Department not inconsistent with the provisions of this Article.

## Section 6.

The grievance procedure established hereinbefore is designed to operate within the framework of, and is not intended to abolish or supersede, existing rules and procedures providing for additional methods of redress. These include, but are not limited to, the existing rights of a grievant to request an interview with the Police Commissioner.

## Section 7.

Any or all of the foregoing grievance steps may be waived by the written consent of both parties.

## Section 8.

Within twenty (20) days following receipt of the Police Commissioner's Step IV decision, the Union shall have the right to bring grievances unresolved at Step IV to impartial arbitration pursuant to the New York City Collective Bargaining Law and the Consolidated Rules of the New York City Office of Collective Bargaining. In addition, upon ten (10) days' written notice to the Union, the City shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined as a "grievance" herein. The City shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining, with a copy to the Union; and the matter shall proceed pursuant to the Consolidated Rules of the Office of Collective Bargaining.

A permanent rotating Panel of three (3) Arbitrators shall be established, drawn from the official panel of the Office of Collective Bargaining, as agreed to by both parties. The members of the Panel shall be assigned on a rotating basis to arbitrate all grievances under this Section.

The assigned Arbitrator shall hold a hearing at a time and place convenient to the parties and a transcript shall be taken unless the taking of a transcript is waived by both parties. The arbitrator shall attempt to issue an award within ten (10) days after the completion of the hearing.

The City and the Union shall each pay 50% of the fees and expenses of the Arbitrator and of all other expenses incidental to such arbitration. The costs of one copy for each party and one copy for the Arbitrator of the transcripts shall be borne equally by the parties.

## Section 9.

In case of grievances falling within Sections 1(a)(1) or 1(a)(2) of this Article, the arbitrator's decision, and order or award (if any), shall be limited to the application and interpretation of the collective bargaining Agreement, rule, regulation, procedure, order or job title specification involved, and the Arbitrator shall not add to, subtract from, or modify any such Agreement, rule, regulation, procedure, order or job title specification. An Arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accord with Article Seventy-Five of the Civil Practice Law and Rules, except that awards as to grievances concerning assignment of the grievant to duties substantially different from those stated in the grievant's job title specification or the use of an open-competitive rather than promotional examination, shall be final and binding and enforceable only to the extent permitted by law. An Arbitrator may provide for and direct such relief as the Arbitrator determines to be necessary and proper, subject to the limitation set forth above and any applicable limitations of law.

## Section 10.

The time limits contained in this Article may be modified by mutual agreement. In the event that the Department fails to comply with the time limits prescribed herein, the grievance may be advanced to the next step.

## ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT

In the event an employee dies because of a line-of-duty injury received during the actual and proper performance of police service relating to the alleged or actual commission of an unlawful act, or directly resulting from a characteristic hazard of police duty, through no fault of the employee's, a payment of $25,000 shall be made from funds other than those of the Retirement System in addition to any other payment which may be made as a result of such death. Such payment shall be made to the beneficiary designated under the Retirement System or, if no beneficiary is so designated, to the estate of the deceased.

## ARTICLE XXIII - DEATH BENEFIT-UNUSED LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, the employee's beneficiary designated under the Retirement System or, if no beneficiary is so designated, the deceased's estate shall receive payment in cash for the following as a death benefit:

a.    All unused accrued leave up to a maximum of 54 days' credit;

b.    All unused accrued compensatory time earned subsequent to January 1, 1971 which is verifiable by official Department records up to a maximum of two hundred (200) hours.

## ARTICLE XXIV - OPTIONAL WORK DURING VACATIONS

### Section 1.

Any employee may volunteer to work for one five-day period during such employee's vacation leave. Whether the volunteer will be assigned to duty is within the discretion of the Department. If assigned to duty, the assignment shall be at the discretion of the Department to any regular platoon in any one command for the entire five-day period. No employee shall be discriminated against in the application of this Section because the employee is in the last year of service.

### Section 2.

An employee who so volunteers shall be compensated at the employee's regular straight-time rate of pay for all work performed during the assigned platoon's regular hours of work. Except as otherwise provided in this Article, all other provisions of this Agreement shall be applicable to work so performed.

### Section 3.

Contributions under Article XII (Health and Welfare Fund) and Article XIV (Annuity Fund) of this Agreement shall not be paid for work performed pursuant to this Article.

### Section 4.

For the purposes of Article XX (Overtime Travel Guarantee) of this Agreement, the command to which an employee is so assigned for the five-day period shall be deemed that employee's "permanent command."

## ARTICLE XXV - NO STRIKES

In accord with applicable law, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, or mass absenteeism, or induce any mass resignations during the term of this Agreement.

## ARTICLE XXVI - EMPLOYEES SPECIALLY ASSIGNED OR DESIGNATED

Notwithstanding anything to the contrary contained in this agreement, employees assigned to the Detective Bureau and/or "Designated as Commander of the Detective Squad" and/or "Designated on Special Assignment" shall be eligible for the receipt of benefits under this Agreement in the same manner and under the same circumstances as Members of the Force detailed as First, Second and Third Grade Detectives.

## ARTICLE XXVII - BULLETIN BOARDS

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the employer for employees to read. All notices shall be on Union stationery, shall be used only to notify employees of matters pertaining to Union affairs, and shall not contain any derogatory or inflammatory statements concerning the City, the Department, or personnel employed by either entity.

## ARTICLE XXVIII - NO WAIVER

Except as otherwise provided in this Agreement, the failure to enforce any provision of this Agreement shall not be deemed a waiver thereof. This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which employees are entitled by law.

## ARTICLE XXIX - SAVINGS CLAUSE

If any provision of the Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.

## ARTICLE XXX - LABOR MANAGEMENT COMMITTEE

### Section 1.

The City and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee.

### Section 2.

The labor-management committee shall consider and may recommend to the Police Commissioner changes in the working conditions of the employees, including, but not limited to, the following subjects: the adequate levels of police coverage to ensure the safety of employees on duty; and excusal policy for employees appearing in court after the midnight tour. Matters subject to the

grievance procedure shall not be appropriate items for consideration by the labor-management committee.

**Section 3.**

The labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the Police Commissioner shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one alternate. The committee shall select a chairman from among its members at each meeting. The chairmanship of the committee shall alternate between members designated by the Police Commissioner and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the Police Commissioner in writing.

At the request of either the Police Department or the L.B.A., a representative of the Mayor's Office of Labor Relations will sit in on the Labor Management Committee.

**Section 4.**

The labor-management committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties. At least one week in advance of a meeting the party calling the meeting shall provide to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

## ARTICLE XXXI - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law including the New York State Financial Emergency Act for the City of New York, as amended.

## ARTICLE XXXII - TERM

The term of this Agreement shall commence on November 1, 2009 and shall expire at midnight on October 31, 2011.



February 2, 2005

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

**CITY OF NEW YORK**

**LIEUTENANTS' BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK**

BY _____
JAMES F. HANLEY
Commissioner
Labor Relations

BY _____
THOMAS SULLIVAN
President

**APPROVED AS TO FORM:**

BY _____
PAUL T. REPHEN
Acting Corporation Counsel

**DATE SUBMITTED TO THE FINANCIAL CONTROL BOARD:**

OFFICE OF LABOR RELATIONS

REGISTRATION

OFFICIAL                              CONTRACT

NO:                                   DATE:
09011                                 FEB 0 2 2009

UNIT: LIEUTENANTS

TERM: November 1, 2009 to October 31, 2011

2009-2011 LBA



### THE POLICE COMMISSIONER
CITY OF NEW YORK

March 23, 2009

Lieutenant Thomas Sullivan
Lieutenants Benevolent Association
233 Broadway – Suite 1801
New York, New York 10279

**Re:   LBA AGREEMENT FOR THE PERIOD
SEPTEMBER 1, 2007 TO OCTOBER 31, 2011**

Dear Lieutenant Sullivan,

A representative of the Lieutenants Benevolent Association shall be a member of the Disciplinary Advisory Labor Management Committee established to review the existing disciplinary process of the Police Department, in addition to the Police Benevolent Association (PBA) representative, the Deputy Commissioner of Trials, the Department Advocate and the Deputy Commissioner of Labor Relations. The Committee shall make recommendations to the Police Commissioner on the operation of the disciplinary machinery.

Sincerely,

Raymond W. Kelly
Police Commissioner





**THE POLICE COMMISSIONER**
CITY OF NEW YORK

March 23, 2009

Lieutenant Thomas Sullivan
Lieutenants Benevolent Association
233 Broadway – Suite 1801
New York, New York 10279

        **Re:   LBA AGREEMENT FOR THE PERIOD
                SEPTEMBER 1, 2007 TO OCTOBER 31, 2011**

Dear Lieutenant Sullivan,

      Please be advised that the Police Department will fill permanent vacancies where they exist in the Patrol Precinct Desk assignments from the Borough Replacement Lieutenants assigned within the borough. This shall not be subject to the grievance procedure.

      In addition, it is the intent of the Department, if possible, to give a Borough Replacement Lieutenant seventy-two (72) hours notice prior to rescheduling his tour of duty. This shall not be subject to the grievance procedure.

                    Sincerely,

                    Raymond W. Kelly
                    Police Commissioner



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*


Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway - Suite 850
New York, New York 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

A Committee will be constituted of eight persons, four appointed by the City and four by
the LBA, to survey the availability of parking locations in the vicinity of station houses.
This Committee shall report within 90 days after ratification of the above Agreement
which report shall make recommendation to increase the availability of parking spaces if
that result is legally permissible and administratively possible.

Very truly yours,

*James F. Hanley*

James F. Hanley


2009-2011 LBA



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway - Suite 850
New York, New York 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

Lieutenants assigned to Patrol Precinct and Highway Unit desk duty shall be scheduled to work 243.33 tours of duty a year consisting of 8 hour and 35 minute tours.

Lieutenants assigned to the Patrol Boroughs performing duty as borough replacement for Patrol Precinct and Highway Unit desk officers ("Replacement Lieutenants") shall also perform 243.33 - 8 hour and 35 minute tours. Article III, 1b and Article XXI shall not be applicable to these "Replacement Lieutenants."

Borough Lieutenants rescheduled for other than desk duty assignments shall receive the Overtime Travel Guarantee where appropriate.

Effective August 1, 2006, as a result of the 2003-07 collective bargaining agreement, all employees shall work an additional ten (10) minutes per tour.

Very truly yours,

James F. Hanley

2009-2011 LBA



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway - Suite 850
New York, N.Y. 10279

Re: LBA Agreement for the period November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

This is to confirm our mutual understanding and agreement regarding the increased number of appearances required by certain Lieutenants as follows:

A. Effective July 1, 1990, as a result of the 1987-90 collective bargaining agreement, each employee shall be required to work two (2) additional tours beyond the number currently required.

Each employee promoted to Lieutenant on or after July 1, 1990 shall be required to work three (3) additional tours per year beyond the number required for a similarly situated incumbent Lieutenant.

B. Effective July 1, 1995, as a result of the 1992-95 collective bargaining agreement, the following shall apply to each employee promoted to Lieutenant on or after July 1, 1990:

After serving five (5) years in the rank of Lieutenant, employees shall be required to work two (2) additional tours per year beyond the number required for a similarly situated incumbent Lieutenant promoted prior to July 1, 1990. After serving six (6) years in the rank of Lieutenant, employees shall be required to work one (1) additional tour per year beyond the number required for a similarly situated incumbent Lieutenant promoted prior to July 1, 1990. After serving seven (7) years in the rank of Lieutenant, employees shall work the same number of tours per year as a similarly situated incumbent Lieutenant promoted prior to July 1, 1990.

2009-2011 LBA

C. Effective August 1, 2006, pursuant to the 2003-07 collective bargaining agreement, the following shall apply:

In addition to the above number of additional tours required to be worked, all employees promoted on or after August 1, 2006 shall be required to forego an additional thirteen (13) chart days per year for seven (7) years. After serving seven (7) years in the rank of Lieutenant, employees shall work the same number of tours per year as a similarly situated incumbent Lieutenant promoted prior to August 1, 2006.

D. Effective October 1, 2008, the following shall replace section C above:

In addition to the above number of additional tours required to be worked, employees promoted on or after August 1, 2006 shall be required to forego an additional 13 chart days per year for the first two years in the rank of Lieutenant, and additional 12 per year in the 3rd year, and an additional 11 per year in years 4 through 7. After serving seven years in the rank of Lieutenant, employees shall work the same number of tours per year as a similarly situated incumbent Lieutenant promoted prior to August 1, 2006.

Very truly yours,

James F. Hanley

2009-2011 LBA



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway
New York, N.Y. 10279

Re: LBA Agreement for the period
    November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

This is to confirm our mutual understanding and agreement regarding Article XIII of the above Agreement. If the stabilization fund referred to does not have sufficient monies to maintain the then current level of health insurance benefits provided under GHI-CBP/Blue Cross plan, payroll deductions in the appropriate amounts shall be taken from employees and retirees enrolled in such plan unless agreement is reached on a program wide basis to take the needed monies from the contributions to the welfare fund provided in Article XII of the above Agreement.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF THE LBA

BY: 
Thomas Sullivan

2009-2011 LBA



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Lieutenant Thomas Sullivan
President
Lieutenants Benevolent Association
233 Broadway
New York, N.Y. 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

This is to confirm our mutual understanding and agreement that the Lieutenants Benevolent Association (LBA) has accepted and agreed to be bound by the terms of the 2000-2003 LBA Agreement. It is understood that up to $25 per each active employee per year to be allocated as a "Civil Legal Representation Fund" by the employer is subject to further discussions. The contributions which are provided could be for benefits other than civil legal representation expenses and if so, are subject to the employer's agreement.

These funds shall be administered by the applicable welfare fund; they are to be maintained in a separate account and shall not be commingled with the other monies received by the welfare fund.

Very truly yours,

*James F. Hanley*

James F. Hanley

2009-2011 LBA



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

**40 Rector Street, New York, NY 10006-1705**

http://nyc.gov/olr

*JAMES F. HANLEY*
*Commissioner*
*MARGARET M. CONNOR*
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway
New York, N.Y. 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

The City and the LBA recognize that, pursuant to Administrative Code Section 12-127, the City is obligated to pay for the cost of line of duty injury prescription drugs for LBA members. The parties further recognize that a significant number of LBA members have utilized the LBA Health and Welfare Fund to pay for these prescription drugs without reimbursement by the City. The LBA agrees to waive any and all claims retroactively and prospectively against the City for the reimbursement of the cost of line of duty injury prescription drugs.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF LBA

BY _____
Thomas Sullivan

2009-2011 LBA



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

**40 Rector Street, New York, NY 10006-1705**

http://nyc.gov/olr

*JAMES F. HANLEY*
*Commissioner*
*MARGARET M. CONNOR*
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway
New York, N.Y. 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

This is to confirm that during negotiations for the successor agreement to this 2009-2011 agreement the parties shall negotiate the issue of increasing the City's contribution to the LBA Health and Welfare Fund as the first issue to be addressed. The issues to be negotiated shall include the intent of the parties to equalize the City's total contribution to the LBA Health and Welfare Fund with the total contributions made by the City to other health and welfare funds on behalf of other employees and that the LBA shall be responsible for the cost of such increased contributions.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

*James F. Hanley*

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF LBA

BY *Thomas Sullivan*

Thomas Sullivan

2009-2011 LBA

THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway
New York, N.Y. 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

Effective 11/1/98, the City shall grant one (1) additional full-time release position. Such additional release time shall be governed by Executive Order 75 ("EO 75"), except insofar as the LBA has funded the ongoing costs of such additional release time for the term of this agreement and thereafter out of the settlement costs of a prior collective bargaining agreement and therefore Section 4(1) of EO 75 shall not apply to this additional release time.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF LBA

BY

Thomas Sullivan

2009-2011 LBA

Case 1:20-cv-05441-KPF Document 10-6 Filed 07/17/20 Page 45 of 47



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

**40 Rector Street, New York, NY 10006-1705**

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway
New York, N.Y. 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

Upon ratification, the Union shall withdraw, with prejudice, the following case(s):

- Failure to implement 12-Hour Tour Pilot Program Improper Practice.

- Failure to implement Night Shift Differential Payment Improper Practice.

(BCB-2633-07)

If the above accords with your understanding, please execute the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF LBA

BY Thomas Sullivan

Thomas Sullivan

2009-2011 LBA



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Lieutenant Thomas Sullivan, President
Lieutenants Benevolent Association
233 Broadway
New York, N.Y. 10279

Re: LBA Agreement for the period
November 1, 2009 to October 31, 2011

Dear Lieutenant Sullivan:

This is to confirm our mutual understanding and agreement regarding the length of the tour and the increased number of appearances required by certain Lieutenants as follows:

Duty Schedules

a.  Effective August 1, 2006, for all new promotees the length of the tour shall be eight hours and forty-five minutes (8:45), inclusive of the additional time further specified in paragraph c., below.

b.  In addition to the number of additional tours required to be worked pursuant to the 2000-2003 LBA unit agreement, all employees promoted on or after August 1, 2006 shall be required to forego an additional thirteen (13) chart days per year for seven (7) years. After serving seven (7) years in the rank of Lieutenant, employees shall work the same number of tours per year as a similarly situated incumbent Lieutenant promoted prior to August 1, 2006.

c.  Effective August 1, 2006, all employees shall work an additional ten (10) minutes per tour.

2009-2011 LBA

d. Effective October 1, 2008, the LBA will buyback one chart day on the third anniversary and one additional chart day on the fourth anniversary for Lieutenants promoted on or after August 1, 2006.

If the above accords with your understanding, please execute the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF LBA

BY

Thomas Sullivan

2009-2011 LBA