Case 1:20-cv-05441-KPF Document 10-7 Filed 07/17/20 Page 1 of 48

# Exhibit 5



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

**RENEE CAMPION**
*First Deputy Commissioner*

**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*

**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:      ROBERT W. LINN, COMMISSIONER

SUBJECT:   EXECUTED CONTRACT: CAPTAINS

TERM:      APRIL 1, 2012 TO APRIL 30, 2019

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the Captains' Endowment Association on behalf of the incumbents of positions listed in Article I of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: August 6, 2018



OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL            CONTRACT

NO:                                      DATE:
19001                        August 6, 2018

# Captains' Endowment Association
## 2012-2019 Agreement

### TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION ........................................ 3

ARTICLE II - UNION SECURITY DUES CHECKOFF .................................................... 4

ARTICLE III - HOURS AND OVERTIME .............................................................. 4

ARTICLE IV - COMPUTATION OF BENEFITS ......................................................... 5

ARTICLE V - SALARIES ......................................................................... 5

ARTICLE VI - UNIFORM ALLOWANCE ........................................................... 11

ARTICLE VII - LONGEVITY ADJUSTMENTS ....................................................... 11

ARTICLE VIII - PAYMENT FOR HOLIDAY WORK .................................................. 12

ARTICLE IX - LEAVES .......................................................................... 12

ARTICLE X - VACATIONS ...................................................................... 13

ARTICLE XI - HEALTH AND HOSPITALIZATION BENEFITS ...................................... 14

ARTICLE XII - HEALTH AND WELFARE FUND ................................................... 16

ARTICLE XIII - ANNUITY FUND ................................................................ 18

ARTICLE XIV - GENERAL ...................................................................... 18

ARTICLE XV - UNION ACTIVITY ............................................................... 22

ARTICLE XVI - NO DISCRIMINATION .......................................................... 23

ARTICLE XVII - NIGHT SHIFT DIFFERENTIAL .................................................. 24

ARTICLE XVIII - GRIEVANCE AND ARBITRATION PROCEDURE ................................. 25

ARTICLE XIX - LINE-OF-DUTY DEATH BENEFIT ............................................... 28

ARTICLE XX - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME ..... 28

ARTICLE XXI - INDEMNITY OF SURGEONS .................................................... 28

ARTICLE XXII - LABOR-MANAGEMENT COMMITTEE .......................................... 29

ARTICLE XXIII - NO STRIKES ................................................................. 30

ARTICLE XXIV - NO WAIVER .................................................................. 30

ARTICLE XXV - SAVINGS CLAUSE ............................................................. 31

ARTICLE XXVI - FINANCIAL EMERGENCY ACT ............................................... 31

ARTICLE XXVII - TERM ....................................................................... 31

19001

Appendix A – Side Letter regarding Compensatory Time

Appendix B – Side Letter regarding Air Conditioning in Cars

Appendix C – Side Letter regarding Parking Locations

Appendix D – Side Letter regarding Stabilization Fund

Appendix E - Side Letter regarding Line of Duty Injury Prescription Drugs

Appendix F – Side Letter regarding Welfare Fund Contribution

Appendix G – Side Letter regarding Release Time

Appendix H – Side Letter regarding Laptop Computers

Appendix I – Side Letter regarding Work Tours

Appendix J – Side Letter regarding Deputy Inspector, Inspector, or Deputy Chief

Appendix K – Side Letter regarding Duty Charts

Appendix L – MLC/City Side Letter dated May 14, 2014

19001

# Captains' Endowment Association
# 2012-2019 Agreement

*AGREEMENT* made this ___ day of August 6, 2018, by and between the **City of New York** (hereinafter called "the **City**" or "the **Employer**"), acting by the Commissioner of Labor Relations, and the **Captains' Endowment Association of the City of New York** (hereinafter called "the **Union**" or the "**CEA**"), for the period from **April 1, 2012 to April 30, 2019**.

## W I T N E S S E T H:

**WHEREAS,** the employees defined in Article I, Section 1 below have duly designated the CEA as their exclusive bargaining representative for the purpose of collective bargaining with the City with respect to wages, hours and conditions of employment; and

**WHEREAS,** the CEA and the City desire to cooperate in establishing conditions which will tend to secure standards and conditions of employment consistent with the dignity of said employees, and to provide methods for fair and peaceful adjustment of disputes that may arise between the CEA and the City; and

**WHEREAS,** as a result of collective bargaining the parties have reached an Agreement which they desire to reduce to writing;

**NOW, THEREFORE,** it is mutually agreed as follows:

# ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

## Section 1.

The City recognizes the CEA as the sole and exclusive collective bargaining representative for the unit consisting of the employees of New York City Police Department in the titles of Captain, Captain detailed as Deputy Inspector, Inspector and Deputy Chief (hereinafter collectively referred to as "Captains"), Police Surgeon, Surgeon and Surgeon detailed as Deputy Chief Surgeon and Chief Surgeon (hereinafter collectively referred to as "Surgeons"). The aforesaid Captains and Surgeons shall hereinafter be collectively referred to as "employees".

## Section 2.

Except as otherwise provided herein, for purposes of this Agreement, the terms "employee" or "employees" shall be interchangeable and shall relate solely to employees in the unit described in Section 1 of this Article.

19001

## ARTICLE II - UNION SECURITY DUES CHECKOFF

**Section 1.**

All employees covered by this Agreement shall be free to become and remain members of the CEA in good standing.

**Section 2.**

The CEA shall have the exclusive right to the check-off and transmittal of dues in behalf of each employee in the unit in accord with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Regulating the Checkoff of Union Dues" and in accord with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Regulations Governing Procedures for Orderly Payroll Checkoff of Union Dues" and any executive orders which amend or supersede said Executive Orders.

**Section 3.**

An employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the CEA as the recipient thereof. Such consent, if given, shall be in a proper form, in accord with Section 2 of this Article II, which bears the signature of the employee.

**Section 4.**

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

## ARTICLE III - HOURS AND OVERTIME

**Section 1.**

Overtime performed by Captains shall be compensated for in compensatory time off at the rate of time and one-half when such overtime is ordered by the Police Commissioner or Chief of Department or is performed at a police emergency without prior approval and requests for compensation therefor, after being forwarded through channels together with recommendations, are approved by the Chief of Department or the Chief of Department's designee for such purposes.

Effective January 1, 2016, Captains in their first 3 years of service shall have the option of receiving cash overtime (paid at the straight time rate) for up to 180 hours per calendar year.

Effective January 1, 2016, with the exception of Captains with less than three years of service, members of the bargaining unit shall have the option each quarter in a calendar year of

19001

exchanging 67.5 hours of compensatory time earned in that quarter for 25 hours of cash paid at the straight time rate.

### Section 3. – Rescheduling

The Police Department shall have the right to reschedule tours of duty for all employees in the bargaining unit without additional compensation.

### Section 4. – Range Day

Effective September 1, 2015, newly promoted Captains in their first 5 years of service shall schedule and complete both of their two annual Executive Cycle range days on a regularly scheduled day off, or at a time not otherwise scheduled to work, without compensation. If they are performing additional training on a range day, they will also perform this training on a regularly scheduled day off, or at a time not otherwise scheduled to work, without compensation.

## ARTICLE IV - COMPUTATION OF BENEFITS

Since the basic forty-hour week has not been changed by this Agreement, any modification of standard charts and use of other tours shall not affect current standard practice for the computation of compensation for holidays, vacation days, personal leave days, annuity fund contributions and other relevant benefits, which shall remain on the basis of an eight-hour work day calculation.

## ARTICLE V - SALARIES

### Section 1. - Salary Rates

During the term of this Agreement, the following basic annual salary and increment rates shall prevail for employees:

### Class of Positions or Detail and Step

Captain

| | 4/1/2012 | 3/1/2013 | 3/1/2014 | 10/1/2014 | 10/1/2015 | 10/1/2016 | 10/1/2017 |
|---|---|---|---|---|---|---|---|
| 1st step | $114,978 | $116,128 | $117,289 | $118,462 | $119,647 | $121,442 | $124,478 |
| 2nd step | $117,202 | $118,374 | $119,558 | $120,754 | $121,962 | $123,791 | $126,886 |
| 3rd step | $121,010 | $122,220 | $123,442 | $124,676 | $125,923 | $127,812 | $131,007 |
| 4th step | $146,583 | $148,049 | $149,529 | $151,024 | $152,534 | $154,822 | $158,693 |

10/1/2018

| | |
|---|---|
| 1st step | $128,212 |

2012-2019 CEA

19001

2nd step    $130,693
3rd step    $134,937
4th step    $163,454
Deputy Inspector

|          | 4/1/2012  | 3/1/2013  | 3/1/2014  | 10/1/2014 | 10/1/2015 | 10/1/2016 | 10/1/2017 |
|----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| 1st step | $128,424  | $129,708  | $131,005  | $132,315  | $133,638  | $135,643  | $139,034  |
| 2nd step | $137,045  | $138,415  | $139,799  | $141,197  | $142,609  | $144,748  | $148,367  |
| 3rd step | $145,671  | $147,128  | $148,599  | $150,085  | $151,586  | $153,860  | $157,707  |
| 4th step | $154,300  | $155,843  | $157,401  | $158,975  | $160,565  | $162,973  | $167,047  |

10/1/2018

1st step    $143,205
2nd step    $152,818
3rd step    $162,438
4th step    $172,058

Inspector

|          | 4/1/2012  | 3/1/2013  | 3/1/2014  | 10/1/2014 | 10/1/2015 | 10/1/2016 | 10/1/2017 |
|----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| 1st step | $135,039  | $136,389  | $137,753  | $139,131  | $140,522  | $142,630  | $146,196  |
| 2nd step | $144,181  | $145,623  | $147,079  | $148,550  | $150,036  | $152,287  | $156,094  |
| 3rd step | $153,331  | $154,864  | $156,413  | $157,977  | $159,557  | $161,950  | $165,999  |
| 4th step | $162,472  | $164,097  | $165,738  | $167,395  | $169,069  | $171,605  | $175,895  |

10/1/2018

1st step    $150,582
2nd step    $160,777
3rd step    $170,979
4th step    $181,172

2012-2019 CEA

6

19001

Deputy Chief

|          | 4/1/2012  | 3/1/2013  | 3/1/2014  | 10/1/2014 | 10/1/2015 | 10/1/2016 | 10/1/2017 |
|----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| 1st step | $142,056  | $143,477  | $144,912  | $146,361  | $147,825  | $150,042  | $153,793  |
| 2nd step | $151,751  | $153,269  | $154,802  | $156,350  | $157,914  | $160,283  | $164,290  |
| 3rd step | $161,445  | $163,059  | $164,690  | $166,337  | $168,000  | $170,520  | $174,783  |
| 4th step | $171,142  | $172,853  | $174,582  | $176,328  | $178,091  | $180,762  | $185,281  |

|          | 10/1/2018 |
|----------|-----------|
| 1st step | $158,407  |
| 2nd step | $169,219  |
| 3rd step | $180,026  |
| 4th step | $190,839  |

Surgeon*/Police Surgeon

|          | 4/1/2012  | 3/1/2013  | 3/1/2014  | 10/1/2014 | 10/1/2015 | 10/1/2016 | 10/1/2017 |
|----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| 1st step | $108,165  | $109,247  | $110,339  | $111,442  | $112,556  | $114,244  | $117,100  |
| 2nd step | $111,222  | $112,334  | $113,457  | $114,592  | $115,738  | $117,474  | $120,411  |
| 3rd step | $114,281  | $115,424  | $116,578  | $117,744  | $118,921  | $120,705  | $123,723  |
| 4th step | $117,341  | $118,514  | $119,699  | $120,896  | $122,105  | $123,937  | $127,035  |
| 5th step | $120,378  | $121,582  | $122,798  | $124,026  | $125,266  | $127,145  | $130,324  |
| 6th step | $127,497  | $128,772  | $130,060  | $131,361  | $132,675  | $134,665  | $138,032  |

|          | 10/1/2018 |
|----------|-----------|
| 1st step | $120,613  |
| 2nd step | $124,023  |
| 3rd step | $127,435  |
| 4th step | $130,846  |
| 5th step | $134,234  |
| 6th step | $142,173  |

*for present incumbents only

19001

Deputy Chief Surgeon*

|          | 4/1/2012  | 3/1/2013  | 3/1/2014  | 10/1/2014 | 10/1/2015 | 10/1/2016 | 10/1/2017 |
|----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| 1st step | $123,056  | $124,287  | $125,530  | $126,785  | $128,053  | $129,974  | $133,223  |
| 2nd step | $126,239  | $127,501  | $128,776  | $130,064  | $131,365  | $133,335  | $136,668  |
| 3rd step | $129,388  | $130,682  | $131,989  | $133,309  | $134,642  | $136,662  | $140,079  |
| 4th step | $132,549  | $133,874  | $135,213  | $136,565  | $137,931  | $140,000  | $143,500  |
| 5th step | $135,706  | $137,063  | $138,434  | $139,818  | $141,216  | $143,334  | $146,917  |
| 6th step | $138,866  | $140,255  | $141,658  | $143,075  | $144,506  | $146,674  | $150,341  |

|          | 10/1/2018 |
|----------|-----------|
| 1st step | $137,220  |
| 2nd step | $140,768  |
| 3rd step | $144,281  |
| 4th step | $147,805  |
| 5th step | $151,325  |
| 6th step | $154,851  |

*for present incumbents only

Surgeon detailed as Chief Surgeon*

|          | 4/1/2012  | 3/1/2013  | 3/1/2014  | 10/1/2014 | 10/1/2015 | 10/1/2016 | 10/1/2017 |
|----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| 1st step | $136,141  | $137,502  | $138,877  | $140,266  | $141,669  | $143,794  | $147,389  |
| 2nd step | $139,290  | $140,683  | $142,090  | $143,511  | $144,946  | $147,120  | $150,798  |
| 3rd step | $142,457  | $143,882  | $145,321  | $146,774  | $148,242  | $150,466  | $154,228  |
| 4th step | $145,615  | $147,071  | $148,542  | $150,027  | $151,527  | $153,800  | $157,645  |
| 5th step | $148,768  | $150,256  | $151,759  | $153,277  | $154,810  | $157,132  | $161,060  |
| 6th step | $151,928  | $153,447  | $154,981  | $156,531  | $158,096  | $160,467  | $164,479  |

|          | 10/1/2018 |
|----------|-----------|
| 1st step | $151,811  |
| 2nd step | $155,322  |
| 3rd step | $158,855  |
| 4th step | $162,374  |
| 5th step | $165,892  |
| 6th step | $169,413  |

2012-2019 CEA

8

19001

*for present incumbents only

## Section 2. - Rates Upon Advancement

a.    An employee appointed, promoted or detailed (hereinafter referred to as "advanced") to the next higher rank shall be advanced to the step rate of such higher rank, the salary of which is next above the rate received immediately prior to such advancement, except as provided in Section 4d below.

b.    An employee advanced to a rank which is higher than the next higher rank shall be advanced to the step rate of such higher rank, the salary of which is next above the rate such employee would have received if advanced to the rank immediately below the rank to which advanced except as provided in Section 4d below.

## Section 3. - Increments and Anniversary Dates

Each employee shall progress one increment step in the employee's rank annually, on the employee's anniversary date, subject to the following provisions of this Section 3 and except as provided in Section 4d below. An employee advanced to a new rank from the maximum salary level of the employee's former rank shall have as such employee's anniversary date the date of advancement to the employee's new rank. An employee advanced to a new rank from less than the maximum salary level of the employee's former rank shall keep the same increment anniversary date as the employee had in the former rank except if such employee receives upon advancement a salary higher than that to which the employee would have been entitled by virtue of the next increment due had the employee remained in the former rank, in which case such employee's anniversary date shall be the date of advancement to the employee's new rank.

## Section 4. - General Wage Increase.

a.    (i)    Effective March 1, 2013, Employees shall receive a rate increase of 1%.

        (ii)    Effective March 1, 2014, Employees shall receive an additional rate increase of 1%.

        (iii)    Effective October 1, 2014, Employees shall receive an additional rate increase of 1%.

        (iv)    Effective October 1, 2015, Employees shall receive an additional rate increase of 1%.

        (v)    Effective October 1, 2016, Employees shall receive an additional rate increase of 1.5%.

        (vi)    Effective October 1, 2017, Employees shall receive an additional rate increase of 2.5%.

19001

      **(vii)**    Effective October 1, 2018, Employees shall receive an additional rate increase of 3%.

**b.**    The increases provided for in this Section 4 shall be calculated as follows:

      **(i)**    The rate increase in Section 4a (i) shall be based upon the base rates (which shall include salary or incremental schedules) of the applicable titles in effect on February 28, 2013; and

      **(ii)**    The rate increase in Section 4a (ii) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on February 28, 2014.

      **(iii)**    The rate increase in Section 4a (iii) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on September 30, 2014.

      **(iv)**    The rate increase in Section 4a (iv) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on September 30, 2015.

      **(v)**    The rate increase in Section 4a (v) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on September 30, 2016.

      **(vi)**    The rate increase in Section 4a (vi) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on September 30, 2017.

      **(vii)**    The rate increase in Section 4a (vii) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on September 30, 2018.

**c.**    The general increase provided in this Section 4 shall be applied to the base rates and salary grades fixed for the applicable titles.

**d.**    The general wage increases provided for in this Section 4 shall be payable as soon as practicable after the effective date of such increases.

**Section 5. - Paychecks**

Paychecks shall be delivered to commands by 3:00 p.m. on the Thursday preceding payday for distribution after 3:00 p.m. on said Thursday.


19001

## Section 6. - Salary Itemization

The Department shall make available in convenient places in each command the appropriate payroll work sheets for the purpose of enabling each employee to verify the salary components of the employee's paycheck. The parties will review further the feasibility of otherwise advising each employee of all payroll components along with the employee's paycheck.

## Section 7. – Deferred Compensation Fund

Effective February 1, 2015, the City's contribution to the 401 (a) Savings Incentive plan shall decrease by $345 to $35 per annum.

The Employee's 401 (a) Plan account shall be invested in the same options(s) that the Employee has designated for his/her 457 Plan account. The Employee's beneficiary for the 401 (a) Plan shall be the same beneficiary designated by the Employee in the 457 Plan.

# ARTICLE VI - UNIFORM ALLOWANCE

## Section 1.

a.    In Fiscal Years 2012-2019, the City shall pay to each employee a uniform allowance of $980 in accord with the existing standard procedures.

# ARTICLE VII - LONGEVITY ADJUSTMENTS

## Section 1.

a.    Effective April 1, 2012, longevity adjustments shall be paid as follows:

(i)    Upon the completion of five years of service, employees shall receive a longevity adjustment of $5,745.

(ii)    Upon completion of ten years of service, employees shall receive a longevity adjustment of $6,745.

(iii)    Upon completion of fifteen years of service, employees shall receive a longevity adjustment of $7,745.

(iv)    Upon completion of twenty years of service, employees shall receive a longevity adjustment of an additional $8,745.

## Section 2.

a.    The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completing 20 years of service.

2012-2019 CEA

11

19001

The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service.

In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

b.    The calculation of night shift differential payments shall be based upon the same factors, amounts and methodology as previously utilized.

c.    ITHP and pension benefit calculations shall only include the amount of the longevity payment that is pensionable.

## ARTICLE VIII - PAYMENT FOR HOLIDAY WORK

Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.

## ARTICLE IX - LEAVES

### Section 1. - Personal Leave Day

Each employee shall accrue one personal leave day with pay for each fiscal year during which the employee is employed by the Police Department, which the employee shall be entitled to take at the employee's discretion, subject to the exigencies of the Police Department, in the following fiscal year. A leave day shall consist of an excusal from one regular tour of duty.

This Section 1 shall not apply to employees promoted to Captain on or after July 1, 1990.

### Section 2. - Sick Leave

a.    Each employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect, whether or not service-connected.

b.    The Chief Surgeon shall consult with representatives of the CEA regarding the enforcement of the sick leave program in order to insure that undue restrictions will not be placed upon Captains. Departmental orders in connection therewith shall be issued after consultation with the CEA.

### Section 3. - Death-in-Family Leave

In the event of a death in an employee's immediate family and upon application to and approval

2012-2019 CEA

19001

of the employee's commanding officer or supervisory head, the employee shall receive leave with pay not exceeding four consecutive regular tours of duty. For the purposes of this Section, the phrase, "immediate family" shall include any of the following: (a) a spouse or domestic partner, (b) a natural, foster or step-parent, child, brother or sister, (c) a father-in-law or mother-in-law, or (d) any relative residing in the employee's household. The commanding officer or supervisory head granting such leave shall verify the death and relationship of the deceased. If the deceased was in the military service of the United States at the time of death, the employee requesting leave shall produce the official notice of death.

### Section 4. - Military Leave

Military leave not exceeding a total of thirty (30) days in any one calendar year and not exceeding thirty (30) days in any one continuous period of such absence shall be granted with pay to any employee requiring such leave to satisfy military obligations.

### Section 5. - Special Excusals

Excused time accorded to other personnel employed by the City under circumstances such as excusals for the Dr. Martin Luther King, Jr. and the Senator Robert F. Kennedy funerals and the Moon Landing Observation Day shall be granted equally to employees covered by this Agreement. All compensating days off shall be subject to exigencies of the Department.

### Section 6. - Leave to Attend Hearings

Individual employee grievants shall be granted leave with pay for such time as is necessary to testify at arbitration hearings.

Leave with pay shall be granted to three (3) employees who are named grievants in a group arbitration proceeding, for such time as is necessary for them to testify at their group arbitration hearings.Leave with pay for such time as is necessary to testify at their hearings shall be granted to employees who, after final adjudication of proceedings under Section 210, paragraph 2h of the Civil Service Law, are determined not to have been in violation of Section 210.

## ARTICLE X - VACATIONS

### Section 1.

The Department shall continue to provide authorized annual vacations of twenty-seven (27) work days. However, effective September 1, 2007 until March 1, 2009 new promotees to the rank of Captain shall accrue six fewer annual leave days per annum. On March 1, 2009, all employees shall receive annual vacations of twenty-seven (27) work days.

### Section 2.

Employees may select individual vacation days at the time vacations are picked subject to the exigencies of the Department.

2012-2019 CEA

19001

**Section 3. - Accrual of Vacation**

If the Police Department calls upon an employee in writing to forego the employee's vacation or any part thereof that portion up to a maximum of three weeks of vacation shall be carried over until such time as it can be liquidated in the following calendar year subject to the following conditions:

    **(1)**    the selection of such vacation days shall be in the discretion of and subject to the exigencies of the Department; and

    **(2)**    the selection of such days in the following calendar year shall be made after the regular vacation picks; and

    **(3)**    the utilization of this vacation time shall be restricted to the months of January through May and September through November.

    **(4)**    It is the intention of the Police Department to allow an employee to request permission to accrue vacation consistent with this provision and to grant such requests which are reasonable.

## ARTICLE XI - HEALTH AND HOSPITALIZATION BENEFITS

**Section 1.**

The City shall continue to provide a fully paid choice of health and hospitalization insurance plans for each employee, not to exceed 100% of the full cost of HIP-HMO on a category basis. There will be an annual reopening period during the term of this Agreement for active employees to exercise their choice among medical plans.

**Section 2.**

Retirees shall continue to have the option of changing their previous choice of Health plans. This option shall be:

    **(a)**    a one time choice;
    **(b)**    exercised only after one year of retirement; and
    **(c)**    exercised at any time without regard to contract periods.

The effective date of change to a new plan shall be the first day of the month three months after the month in which the application has been received by the New York City Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to January 1, 1980 and every two years thereafter, retirees shall have the option of changing their previous choice of health

2012-2019 CEA

**19001**

plans. This option shall be exercised in accordance with procedures established by the Employer. The Union will assume the responsibility of informing retirees of this option.

There shall be a sub-committee with representatives of both the City and the Uniformed Superior Officers Coalition ("USOC") to meet and discuss issues of health coverage for employees who retire prior to the age of 55 and have health benefits coverage from another employer. The parties shall share in the savings generated. The parties may agree to expand their discussion of issues regarding retiree health subject to mutual agreement.

### Section 3.

a. Effective July 1, 1983 and thereafter, the City's cost for each employee and for each retiree under age 65 shall be equalized at the community rated basic HIP/HMO plan payment rate as approved by the State Department of Insurance on a category basis of individual or family, (e.g. the GHI-CBP/Blue Cross payment for family coverage shall be equal to the HIP/HMO payment for family coverage).

b. If a replacement plan is offered to employees and retirees under age 65 which exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall not bear the additional costs.

c. The City (and other related Employers) shall contribute on a City employee benefits program-wide basis the additional amounts of $30 million to maintain the health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefit.

The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the GHI-CBP/Blue Cross plan; and, if sufficient funds are available, to fund new benefits.

The health insurance stabilization reserve fund shall be credited with the divisions or reduced by the losses attributable to the GHI-CBP/Blue Cross plan.

d. Pursuant to paragraph 7 of the 2005 MLC Health Benefits Agreement, notwithstanding the above, in each of the fiscal years 2001 and 2002, the City shall not make the annual $35 million contributions to the health insurance stabilization fund.

e. In the event that there is a Citywide or program-wide health insurance package which exceeds the cost of the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein. However, it is understood that the CEA will not be treated any better or any worse than any other union participating in the Citywide or Program-wide Health Program with regard to increased health insurance costs.

19001

<u>Section 4.</u>

Where an employee is suspended without pay prior to disciplinary trial for disciplinary reasons for more than 30 days, the employee shall receive full health and hospitalization benefit coverage during the period of the suspension following the first 30 days. Where an employee is subsequently restored to full pay status, as of the date of suspension, the employee shall be restored to full health and hospitalization coverage for the first 30 days of the suspension.

<u>Section 5. Health Care Flexible Spending Account.</u>

a.     A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code. Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account. Participating employees shall contribute at least $260 per year up to a maximum of $5,000 per year. Said contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan. Any unfunded balance may be deducted from final salary payments due an employee.

b.     Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered. In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

c.     An administrative fee of $1.00 per week for the first year shall be charged for participation in the program. An employee's participation in the account is irrevocable during a plan year. At the close of the plan year any excess balance in an employee's account will not be refunded.

## ARTICLE XII - HEALTH AND WELFARE FUND

<u>Section 1.</u>

a.     Effective October 31, 2009, the pro-rata contribution shall be increased to $1,500 for each employee.

b.     Effective February 1, 2015, there shall be a $100 per year reduction in the City's active and retiree Welfare Fund contributions.

c.     Effective September 1, 2015, there shall be a $63 Welfare Fund reduction for retirees (new retiree welfare fund contribution amount will be $1,337 excluding contributions from the stabilization fund).

2012-2019 CEA

19001

d.  Pursuant to its commitment, the CEA will continue to provide benefits to employees' domestic partners.

e.  To the extent permitted by law, part of the amounts so contributed may be applied to maintain an appropriate legal services plan, pursuant to the terms of a supplemental agreement between the parties as approved by the Corporation Counsel.

f.  Effective November 1, 2003, employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Health and Welfare Fund of the Captain's Endowment Association at the time of such separation pursuant to a supplementary agreement between the City and the CEA shall continue to be so covered, subject to the provisions of Section 1(a) and (b) hereof, on the same contributory basis as incumbent employees. Contributions shall be made only for such time as said individuals remain primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

g.  **Civil Legal Representation Fund**

Effective November 1, 2003, the City shall continue to contribute $75 per annum for each active Employee to the Welfare Fund to the civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel. While these funds shall be administered by the applicable Welfare Fund, they are to be maintained in a separate account and shall not be commingled with the other monies received by the Welfare Fund. Only the $75 provided above may be used for civil legal representation. No additional monies from the Welfare Fund may be used for civil legal representation.

h.  Such payments shall be made pro-rata by the City every twenty-eight (28) days.

## Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the date of the suspension, the employee shall receive full Health and Welfare Fund coverage for the period of the suspension.

## Section 3.

This Agreement incorporates the terms of the May 5, 2014 Letter Agreement regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee, as appended to this agreement.

19001

Case 1:20-cv-05441-KPF   Document 10-7   Filed 07/17/20   Page 20 of 48

# ARTICLE XIII - ANNUITY FUND

## Section 1.

**a.**     Effective May 1, 2011, the City shall contribute for each employee, on a twenty eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed: $ 3,533.68 for a Captain detailed as a Deputy Chief; $ 3,486.70 for a Captain detailed as an Inspector; $3,437.11 for a Captain detailed as a Deputy Inspector; $2,189.53 for a Captain with less than 5 years of service as a Captain; $3,390.13 for a Captain with 5 or more years of service as a Captain; $1,539.53 for the first five years of service for a Captain promoted on or after September 1, 2007; $3,452.77 for a Surgeon detailed as a Chief Surgeon; $3,348.37 for a Surgeon detailed as a Deputy Chief Surgeon; and $3,233.53 for a Surgeon and Police Surgeon.

**b**.     Effective September 1, 2015, there shall be a $1,140 per year annuity reduction for newly promoted Captains in their first 5 years of service (new annual annuity contribution will be $399.53).

## Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the effective date of the suspension, the employee shall receive full Annuity Fund coverage for the period of the suspension.

# ARTICLE XIV - GENERAL

## Section 1. - Parking Facilities

It is the intent of the Department to make available without liability to the City, City-owned property and on-street locations adjacent to, near or part of police stations or other command locations, as parking facilities for the personal cars of employees.   A single designated representative of the Department and a single designated representative of the CEA will survey locations in the vicinity of the station houses to determine what space is available which could reasonably be used for police parking and, where such space exists, the Department and the CEA will jointly request of the appropriate City agency designation of such locations.  This expressed intent of the Department does not imply any obligation or commitment on the part of the City or the Department to make available any such location or parking facilities.  Where such property is provided and so designated for this purpose, the City shall not be obligated to improve the same, nor to maintain it for parking. The City need not continue to provide such property for parking when the City, in its discretion, decides to make a different use of it.



Case 1:20-cv-05441-KPF   Document 10-7   Filed 07/17/20   Page 21 of 48

All inquiries or complaints from employees concerning the subject matter or application of this Section shall be referred directly to the CEA for investigation and review. The CEA shall screen and thereafter shall present only those inquiries or complaints which it believes are justified to the Commanding Officer of the Office of Labor Relations of the Police Department or the Commanding Officer's designee for discussion and possible adjustment.

This Section shall not be subject to the grievance procedure.

## Section 2. - Maintenance of Facilities

All command and other Departmental places of assignment shall have adequate heating, hot water and sanitary facilities. The Union shall give notice to the Department of any failure to maintain these conditions. If not corrected by the Department within a reasonable time, the Union may commence a grievance at Step 3 of the grievance procedure concerning that failure.

## Section 3. - Private Hospital Accommodations for Line-of-Duty Injuries

It is the intent of the City to use its best efforts to secure private room accommodations in a hospital for employees injured in the line of duty. This section shall not be subject to the grievance procedure.

## Section 4. - Information Exchange

a.    The Department agrees to furnish the CEA with a copy of all Orders, Department Bulletins, "Open Door" issues, and Press Releases. The details of delivery shall be worked out between the parties.

      The Department will provide on a semiannual basis a computer printout containing names and addresses of employees, listed alphabetically.

b.    The CEA will provide the Department with a copy of CEA publications, bulletins and press releases.

## Section 5. - Meal Areas

A representative of the Department and a representative of the CEA will meet to determine an adequate meal area for employees within each command and other Departmental places of assignment. This does not contemplate rebuilding or extensive remodeling.

## Section 6. - Personal Folder

a.    The Personnel Bureau will provide the Union with a list of categories of items included in the Personal Folder with an indication of those confidential items which an employee is not permitted to review.

2012-2019 CEA

19

Case 1:20-cv-05441-KPF   Document 10-7   Filed 07/17/20   Page 22 of 48

b.  Employees may view their folders on normal business days between the hours of 9 A.M. and 5 P.M. by appearing in person at the Employee Management Division, Personnel Bureau, 10th Floor, Police Headquarters.  To avoid delay, employees should call the Employee Management Division at least one day in advance.

c.  The Department will, upon written request to the Chief of Personnel by the individual employee, remove from the Personal Folder investigative reports which, upon completion of the investigation, are classified "exonerated" and/or "unfounded".

## Section 7. - Fixed Post Duty

A commanding officer may limit fixed post duty for a single employee to a single four-hour period.

## Section 8. - Meal Scheduling

Employees shall not be assigned meals as a matter of practice during either the first hour and one-half or last hour and one-half of their tours.  In cases of emergency this practice may be altered.

## Section 9. - Lump Sum Payments

Where an employee has an entitlement to accrued annual leave and/or compensatory time, and the City's fiscal condition requires employees who are terminated, laid off or who choose to retire in lieu of layoff to be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the Employer shall provide the monetary value of accumulated and unused annual leave and/or compensatory time allowances standing to the employee's credit in a lump sum.  Such payments shall be in accordance with the provisions of Executive Order 30, dated June 24, 1975.

Where an employee has an entitlement to terminal leave and the City's fiscal situation requires that employees who are terminated, laid off or retired be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the Employer shall provide a monetary lump sum payment for terminal leave in accordance with the provisions of Executive Order 31, dated June 24, 1975.

A.

The resolution of the Board of Estimate of the City of New York dated June 27, 1957, states the following:

> *Members of the Force shall be granted terminal leave with pay upon retirement not to exceed one month for every ten years of service, pro-rated for a fractional part thereof, provided, however, that no terminal leave shall be granted to an employee against whom*

2012-2019 CEA

19001

*departmental disciplinary charges are pending.*

Effective February 1, 2015, such employees as described in the Resolution above and are entitled to payment and who are members of the CEA shall now be entitled to voluntarily choose the option of a one-time lump sum payment as their terminal leave benefit in lieu of their current terminal leave benefit prior to retirement. Such payments shall be made as soon as practicable after retirement. In the event that a change in legislation is needed to effectuate this agreement, the parties agree to jointly support the necessary legislation to implement these terms.

## Section 10. - Interest Payments

Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after execution of this Agreement or one hundred-twenty (120) days after the effective date of the increase, whichever is later, to the date of actual payment. Interest on longevity and step-up increments, differentials and holiday pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days after the execution of this Agreement, whichever is later, to the date of actual payment. Interest on overtime pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following the employee's submission of an overtime report, whichever is later. Interest accrued pursuant to this paragraph shall be payable only if the amount of interest due to an individual employee exceeds five dollars ($5.00).

## Section 11. - Layoffs

Where layoffs are scheduled the following procedure shall be used:

1.  Notice shall be provided to the appropriate Union not less than thirty (30) days before the effective dates of such projected layoffs.

2.  Within such 30-day period designated representatives of the Employer will meet and confer with the designated representatives of the appropriate Union with the objective of considering feasible alternatives to all or part of such scheduled layoffs, including but not limited to (a) the transfer of employees to agencies with retraining, if necessary, consistent with Civil Service Law but without regard to Civil Service title, (b) the use of Federal and State funds whenever possible to retain or reemploy employees scheduled for layoff, (c) the elimination or reduction of the amount of work contracted out to independent contractors and (d) encouragement of early retirement and the expediting of the processing of retirement applications.

    When a layoff occurs, the Department will provide the Union with a list of employees who are on a preferred list with the original date of appointment utilized for the purpose of such layoff.



Case 1:20-cv-05441-KPF Document 10-7 Filed 07/17/20 Page 24 of 48

### Section 12. - Public Transportation

The City and the CEA will use their best efforts to effect free transportation on buses and subways for police officers.

### Section 13. - Polygraphs

The current practice concerning the use of polygraphs in internal investigations shall be maintained during the term of this Agreement.

### Section 14. - Probationary Period

If an employee who is in the civil service title of Captain satisfactorily completes six (6) months of probation, after being promoted to the rank of Captain, his commanding officer may recommend that the employee be granted permanent status.

### Section 15. - Performance Compensation

The City acknowledges that each of the uniformed forces performs an important service that reflects the diverse missions of the City's uniformed agencies. In order to reward service of an outstanding, exceptional nature, each of the uniformed agencies will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments. The City will notify and discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for the granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law. An employee can receive no more than one payment annually.

This provision shall not affect any existing productivity programs covered in any existing collective bargaining agreements. Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## ARTICLE XV - UNION ACTIVITY

### Section 1.

Time spent by CEA officials and representatives in the conduct of labor relations shall be

2012-2019 CEA

19001

governed by the provisions of Mayor's Executive Order No. 75, as amended, dated March 22, 1973, or any other applicable Executive Order or local law, or as otherwise provided in this Agreement. No employee shall otherwise engage in CEA activities during the time the employee is assigned to the employee's regular duties.

### Section 2.

The parties shall explore a further clarification of departmental rules and procedures to enable CEA delegates and officers to represent properly the interests of the employees. An appropriate departmental order in this regard shall be issued.

## ARTICLE XVI - NO DISCRIMINATION

In accord with applicable law, there shall be no discrimination by the City against any employee because of CEA activity.

## ARTICLE XVII - NIGHT SHIFT DIFFERENTIAL

Captains shall receive a differential of ten (10) percent for work performed between the hours of 4:00 P.M. and 8:00 A.M. provided that such work is performed as part of an approved duty chart.

## ARTICLE XVIII - GRIEVANCE AND ARBITRATION PROCEDURE

### Section 1. - Definitions

a.  For the purposes of this Agreement, the term "grievance" shall mean:

  (1)  a claimed violation, misinterpretation or inequitable application of the provisions of this Agreement;

  (2)  a claimed violation, misinterpretation or misapplication of the rules, regulations or procedures of the Police Department affecting terms and conditions of employment, provided that, except as otherwise provided in this Section 1(a), the term "grievance" shall not include disciplinary matters;

  (3)  a claimed improper holding of an open-competitive rather than a promotional examination;

  (4)  a claimed assignment of the grievant to duties substantially different from those stated in the grievant's job title specification.

1900

b.   For the purposes of this Agreement the term, "Commanding Officer" shall mean the immediate Commanding Officer of the aggrieved employee.

c.   For the purposes of this Agreement the term "Reviewing Officer" shall mean the superior officer in charge of the next higher command or level above a Commanding Officer.

d.   For the purposes of this Agreement the term "Board" shall mean the Personnel Grievance Board to be composed of three (3) members, as follows:  a Deputy Commissioner or other designee of the Police Commissioner, who shall be Chairman of the Board, the Chief of the Department or the Chief of the Department's designee, and the President of the Union or the President's designee.

e.   For the purposes of this Agreement the term "grievant" shall mean an employee or group of employees asserting a grievance or the Union or both, as the context requires.

## Section 2.

The availability of the grievance or arbitration procedure shall not justify a failure to follow orders.

## Section 3.

a.   Every grievant shall have the right to present a grievance in accord with the procedure provided herein free from coercion, interference, restraint or reprisal.

b.   The informal resolution of differences of grievances is urged and encouraged at all levels of supervision.

c.   Commanding Officers and Reviewing Officers shall promptly consider grievances presented to them and, within the scope of their authority take such necessary action as is required herein.

d.   Commanding Officers, Reviewing Officers and members of the Personnel Grievance Board shall consider objectively the merits of grievances with due consideration to the harmonious interrelationship that is sought to be achieved among all members of the force and for the good of the Police Department.

e.   Any employee may present the employee's own grievance through the first four steps of the grievance procedure either individually (with the aid of the employee's own counsel if the employee so chooses), or through the Union, provided however that the Union shall have the right to have a representative present at each step of the grievance procedure.

2012-2019 CEA

24

19001

## Section 4.

Under the grievance procedure herein, a grievance must be initiated within 90 days following the date on which the grievance arose or the date on which the grievant should reasonably have learned of the grievance or the execution date of this Agreement, which ever date is the latest. Grievances shall be processed according to the following procedure:

## STEP I.

A grievant shall present the grievance to the Commanding Officer either orally or in writing. The Commanding Officer shall carefully consider the matter, make a decision thereon and advise the grievant of the decision within five (5) days of the grievance's submission.

## STEP II.

If the grievance is still not satisfactorily adjusted, at STEP I, the grievant may seek the following review within ten days after receipt of the Step I decision. The grievant shall reduce the grievance to writing on Form P.D. 158-151 (in triplicate), setting forth a concise statement of the grievance and the results of the proceedings at Step I. The grievant shall forward two copies to the appropriate Reviewing Officer and retain one copy for personal use. The Reviewing Officer shall forward one copy to the Commanding Officer, requesting the Commanding Officer's comments. The Reviewing Officer shall carefully consider said grievance, make a determination, and notify the grievant and the Commanding Officer of the Reviewing Officer's decision within ten (10) days following receipt of the grievance.

## STEP III.

If the grievance is still not satisfactorily adjusted, the grievant may, not later than ten days after notification of the Reviewing Officer's decision, seek further review as follows:

The grievant shall prepare a report on P.D. 158-151 (in quintuplicate) setting forth a concise statement of the grievance and the results of the proceedings at Step I and II. The grievant shall forward four copies of the report through official channels to the Chairman, Personnel Grievance Board, retaining one copy for personal use. The Board shall forward one copy to the Reviewing Officer, requesting the Reviewing Officer's comments thereon. The Personnel Grievance Board shall meet at least once a month on a date designated by the Chairman. At each meeting, the Board shall consider all grievances which, at least five days prior to such meeting, have been properly referred to the Board. The grievant may choose to have the grievant's representatives present at the meeting, at which time oral and written statements may be presented.

The Board shall carefully consider said grievance, make a determination and notify the grievant, the Commanding Officer and the Reviewing Officer, in writing, of its decision within seven days

2012-2019 CEA

19001

after the meeting at which the grievance is considered.

It is understood and agreed by and between the parties that there are certain grievable disputes which are of a Department level or of such scope as to make adjustments at Step I or Step II of the grievance procedure impracticable, and, therefore, such grievances may be instituted at Step III of the grievance procedure by filing the required written statement of the grievance directly with the Chairman of the Personnel Grievance Board; the Chairman or Chairman's designee shall convene a meeting of the Board within five (5) working days following receipt of the grievance, and the Board shall render its decision within five (5) working days following that meeting.

## STEP IV.

Where the grievance is not satisfactorily adjusted at Step III, the grievants may, not later than 30 calendar days after notification of the Board's decision, request that the grievance be referred to the Police Commissioner for determination; and the Police Commissioner shall make a determination within ten working days following receipt of the grievance. This determination shall be made after appropriate consultation with any or all parties to the grievance, including the Chairman of the Board and/or the Board members; and copies shall be sent to the grievant and the Union.

Grievances which affect substantial numbers of employees may be compressed by elimination of the fourth Step of the Grievance Procedure.

## Section 5.

At every step of these procedures, the grievant and the officer considering the grievance shall work for a satisfactory adjustment. At any step, the Commanding Officer, the Reviewing Officer and the Board shall have the right to summon the grievant and any and all persons considered necessary to equitable adjustment of the grievance. Proceedings shall be informal. The Chairman of the Personnel Grievance Board shall take such steps to implement the provisions concerning grievances as are necessary for the proper and effective operation of the procedures provided for herein. The Chairman shall resolve questions as to jurisdictional responsibility of Commanding Officers and Reviewing Officers and shall work out the operational details of the program. For these purposes, the Chairman shall issue orders and instructions through the Chief of the Department not inconsistent with the provisions of this Article.

## Section 6.

The grievance procedure established hereinbefore is designed to operate within the framework of, and is not intended to abolish or supersede existing rules and procedures providing for additional methods of redress. These include, but are not limited to, the existing rights of a

2012-2019 CEA

19001

grievant to request an interview with the Police Commissioner.
## Section 7.

Any and all of the foregoing grievance steps may be waived by the written consent of both parties.

## Section 8.

Within twenty (20) days following receipt of the Police Commissioner's STEP IV decision, the Union shall have the right to bring grievances unresolved at STEP IV to impartial arbitration pursuant to the New York City Collective Bargaining Law and the Consolidated Rules of the New York City Office of Collective Bargaining. In addition, upon ten (10) days' written notice to the Union, the City shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined as a "grievance" herein. The City shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining, with a copy to the Union; and the matter shall proceed pursuant to the Consolidated Rules of the Office of Collective Bargaining.

A permanent rotating Panel of five (5) Arbitrators shall be established, drawn from the official panel of the Office of Collective Bargaining, as agreed to by both parties. The members of the Panel shall be assigned on a rotating basis to arbitrate all grievances under this Section.

The assigned Arbitrator shall hold a hearing at a time and place convenient to the parties and a transcript shall be taken unless the taking of a transcript is waived by both parties. The Arbitrator shall attempt to issue an award within ten (10) days after the completion of the hearing.

The City and the Union shall each pay 50% of the fees and expenses of the Arbitrator and of all other expenses incidental to such arbitration. The costs of one copy for each party and one copy for the Arbitrator of the transcripts shall be borne equally by the parties.

## Section 9.

In the case of grievances falling within Sections 1(a)(1) or 1(a)(2) of this Article, the Arbitrator's decision, and order or award (if any), shall be limited to the application and interpretation of the collective bargaining agreement, rule, regulation, procedure, order or job title specification involved, and the Arbitrator shall not add to, subtract from, or modify any such Agreement, rule, regulation, procedure, order or job title specification. An Arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accord with Article Seventy-five of the Civil Practice Law and Rules, except that awards as to grievances concerning assignment of the grievant to duties substantially different from those stated in the grievant's job title specification or the use of open-competitive rather than promotional examinations shall be final and binding

2012-2019 CEA

19001

and enforceable only to the extent permitted by law. An Arbitrator may provide for and direct such relief as the Arbitrator determines to be necessary and proper, subject to the limitations as set forth above and any applicable limitations of the law.

### Section 10.

The time limits contained in this Article may be modified by mutual agreement. In the event that the Department fails to comply with the time limits prescribed herein, the grievance may be advanced to the next step.

## ARTICLE XIX - LINE-OF-DUTY DEATH BENEFIT

In the event, an employee dies because of a line-of-duty injury received during the actual and proper performance of police service relating to the alleged or actual commission of an unlawful act, or directly resulting from a characteristic hazard of police duty, through no fault of the employee's, a payment of $25,000 shall be made from funds other than those of the Retirement System in addition to any other payment which may be made as a result of such death. Such payment shall be made to the beneficiary designated under the Retirement System or, if no beneficiary is so designated, to the estate of the deceased.

## ARTICLE XX - DEATH BENEFIT - UNUSED
## LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, the employee's beneficiary designated under the Retirement System or, if no beneficiary is so designated, the deceased's estate shall receive payment in cash for the following as a death benefit:

(a)     All unused accrued leave up to a maximum of 54 days' credit;

(b)     All unused accrued compensatory time earned subsequent to January 1, 1971 which is verifiable by official Department records up to a maximum of two hundred (200) hours.

## ARTICLE XXI - INDEMNITY OF SURGEONS

### Section 1.

The City shall save harmless and indemnify each Surgeon for any claim, action or proceeding for damages and/or personal injury arising out of a negligent act or failure to act or tort which occurred when a Surgeon was discharging the Surgeon's duties within the scope of the Surgeon's employment.

19001

## Section 2.

The foregoing is conditioned upon the following:

(a)     Each employee hereunder shall promptly forward to the Office of Deputy Commissioner for Legal Matters, Police Department, any summons, notice, demand, complaint, process or pleading, of whatsoever nature, pertaining to claims, actions or proceedings received or served upon them or each of them. The Police Department will forthwith forward such summons or notice to the Corporation Counsel.

(b)     Each employee hereunder shall cooperate fully in aiding the City to investigate, adjust, settle or defend each claim, action or proceeding.

(c)     The defense of all claims, actions and proceedings within the purview of this Article shall be conducted by the City. The Corporation Counsel of the City shall appear and defend such actions and proceedings on behalf of each employee covered hereunder.

(d)     No settlement shall be made without the approval of the City, including the Comptroller, and in accordance with procedures previously employed to settle actions involving municipal employees.

In the event of any appeal from a judgment against a Surgeon hereunder, the City will promptly satisfy the judgment or stay the execution thereof by filing the appropriate bonds or instruments, so that execution shall not issue against the Surgeon.

## Section 3.

The parties agree that the provisions of this Article shall remain in force and effect for the term of this Agreement unless and until applicable state law shall provide for comparable indemnification of employees. In that event, such applicable state law shall supersede the indemnification provided herein.

## ARTICLE XXII - LABOR-MANAGEMENT COMMITTEE

### Section 1.

The City and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee.

19001

#### Section 2.

The labor-management committee shall consider and may recommend to the Police Commissioner changes in the working conditions of the employees, including, but not limited to, the following subjects: the adequate levels of police coverage to ensure the safety of employees on duty; an excusal policy for employees appearing in court after the midnight tour. Matters subject to the grievance procedure shall not be appropriate items for consideration by the labor-management committee.

#### Section 3.

The labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the Police Commissioner shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one alternate. The committee shall select a chairman from among its members at each meeting. The chairmanship of the committee shall alternate between the members designated by the Police Commissioner and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the Police Commissioner in writing. At the request of either the Police Department or the CEA a representative of the Mayors Office of Labor Relations will sit in on the labor-management committee.

#### Section 4.

The labor-management committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties. At least one week in advance of a meeting the party calling the meeting shall provide to the other party a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the Committee.

## ARTICLE XXIII - NO STRIKES

In accord with applicable law, neither the CEA nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, or mass absenteeism, or induce any mass resignations during the term of this Agreement.

## ARTICLE XXIV - NO WAIVER

Except as otherwise provided in this Agreement, the failure to enforce any provision of this Agreement shall not be deemed a waiver thereof. This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which employees are entitled by law.

19001

Case 1:20-cv-05441-KPF   Document 10-7   Filed 07/17/20   Page 33 of 48

## ARTICLE XXV - SAVINGS CLAUSE

If any provision of this Agreement is found to be invalid such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.

## ARTICLE XXVI - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York, as amended.

## ARTICLE XXVII - TERM

The term of this Agreement shall commence on April 1, 2012 and shall expire at midnight on April 30, 2019.

19001

August 6, 2018

IN WITNESS WHEREOF, the parties have executed this agreement on the day and year first above written.

CITY OF NEW YORK

By: _____

ROBERT W. LINN
Commissioner, Office of
Labor Relations

CAPTAINS' ENDOWMENT
ASSOCIATION OF THE
CITY OF NEW YORK, INC.

By: _____

ROY T. RICHTER
President

APPROVED AS TO FORM:

By: _____

ERIC EICHENHOLTZ
Acting Corporation Counsel

DATE SUBMITTED TO THE
FINANCIAL CONTROL BOARD:

_____

UNIT:  CAPTAINS

TERM: April 1, 2012 to April 30, 2019

2012-2019 CEA

OFFICE OF LABOR RELATIONS
REGISTRATION

OFFICIAL          CONTRACT

NO:
19001

DATE:
August 6, 2018



**THE POLICE COMMISSIONER**
**CITY OF NEW YORK**

Deputy Inspector Roy Richter
President
Captains' Endowment Association
233 Broadway
New York, NY 10279

Re:    CEA Agreement for the Period November 1, 2003 to March 31, 2012

Dear Captain Driscoll:

Please be advised that requests for approval for compensatory time, pursuant to Article III § 1 of the above captioned agreement, that have not received a reply from the Chief of Department within 90 days shall be deemed to have been approved after 90 days.

Very truly yours,

Raymond W. Kelly
Police Commissioner

19001



**THE POLICE COMMISSIONER**
CITY OF NEW YORK

Deputy Inspector Roy Richter

President
Captains' Endowment Association
233 Broadway
New York, NY 10279

Re:    CEA Agreement for the Period November 1, 2003 to March 31, 2012

Dear Captain Driscoll:

     Please be advised that in fiscal years 2004-2012, the Police Department will purchase radio motor patrol cars and radio emergency patrol cars with air conditioning.

Very truly yours,

Raymond W. Kelly
Police Commissioner

1 Police Plaza, New York, NY 10038  ●  646-610-5410  ●  Fax: 646-610-5865
Website: http://nyc.gov/nypd

19001



**THE POLICE COMMISSIONER**
CITY OF NEW YORK

Deputy Inspector Roy Richter
President
Captains' Endowment Association
233 Broadway
New York, NY 10279

Re:     CEA Agreement for the Period November 1, 2003 to March 31, 2012

Dear Captain Driscoll:

       A Committee shall be constituted of eight persons, four by the City and four by
the CEA, to survey the availability of parking locations in the vicinity of station houses.
This Committee shall report within 90 days after ratification of the Agreement which
report shall make recommendations to the availability of parking spaces if that result is
legally permissible and administratively possible.

                                    Very truly yours,

                                    Raymond W. Kelly
                                    Police Commissioner

19001



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Captain Roy T. Richter
President
Captains' Endowment Association
233 Broadway
New York, N.Y. 10279

Re: CEA Agreement for the period November 1, 2003 through March 31, 2012

Dear Captain Richter:

This is to confirm our mutual understanding and agreement regarding Article XI of the above Agreement. If the stabilization fund referred to does not have sufficient monies to maintain the then current level of health insurance benefits provided under GHI-CBP/Blue Cross plan, payroll deductions in the appropriate amounts shall be taken from employees and retirees enrolled in such plan unless agreement is reached on a program wide basis to take the needed monies from the contributions to the welfare fund provided in Article XII of the above Agreement.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF THE CEA

BY:
    Roy T. Richter

2003-2012 CEA

19001



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Captain Roy T. Richter
President
Captains' Endowment Association
233 Broadway
New York, N.Y. 10279

Re: CEA Agreement for the period November 1, 2003 through March 31, 2012

Dear Captain Richter:

The City and the CEA recognize that, pursuant to Administrative Code Section 12-127, the City is obligated to pay for the cost of line of duty injury prescription drugs for CEA members. The parties further recognize that a significant number of CEA members have utilized the CEA Health and Welfare Fund to pay for these prescription drugs without reimbursement by the City. The CEA agrees to waive any and all claims retroactively and prospectively against the City for the reimbursement of the cost of line of duty injury prescription drugs.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF CEA

Roy T. Richter

2003-20012 CEA

19001



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Captain Roy T. Richter
President
Captains' Endowment Association
233 Broadway
New York, N.Y. 10279

Re: CEA Agreement for the period November 1, 2003 through March 31, 2012

Dear Captain Richter:

This is to confirm that during negotiations for the successor to this 2003-2012 agreement the parties shall negotiate the issue of increasing the City's contribution to the CEA Health and Welfare Fund as the first issue to be addressed. The issues to be negotiated shall include the intent of the parties to equalize the City's total contribution to the CEA Health and Welfare Fund with the total contributions made by the City to other health and welfare funds on behalf of other employees and that the CEA shall be responsible for the cost of such increased contributions.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

*James F. Hanley*
James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF CEA

Roy T. Richter

2003-20012 CEA

**19001**



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Captain Roy T. Richter
President
Captains' Endowment Association
233 Broadway
New York, N.Y. 10279

Re:  CEA Agreement for the period November 1, 2003 through March 31, 2008

Dear Captain Richter:

Effective December 1, 1998, the City shall grant one (1) additional day per week of release time.  Such additional release time shall be governed by Executive Order 75, ("EO 75") except insofar as the CEA has funded the outgoing costs of such additional release time for the term of this agreement and thereafter out of the settlement costs of this collective bargaining agreement and therefore Section 4(1) of EO 75 shall not apply to this additional release time.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF CEA

Roy T. Richter

2003-20012 CEA

19001



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Captain Roy T. Richter
President
Captains' Endowment Association
233 Broadway
New York, N.Y. 10279

Re: CEA Agreement for the period November 1, 2003 through March 31, 2012

Dear Captain Richter:

This is to confirm our mutual understanding and agreement that the use of laptop computers is an issue which is appropriate for discussion in the Labor/Management Committee which was established pursuant to Article XXII of this agreement.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF CEA

Roy T. Richter

2003-20012 CEA

19001



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

ROBERT W. LINN
*Commissioner*
RENEE CAMPION
*First Deputy Commissioner*
CLAIRE LEVITT
*Deputy Commissioner*
*Health Care Cost Management*

MAYRA E. BELL
*General Counsel*
GEORGETTE GESTELY
*Director, Employee Benefits Program*

August 6 , 2018

Captain Roy T. Richter
President
Captains' Endowment Association
233 Broadway
New York, N.Y. 10279

Re: CEA Agreement for the period April 1, 2012 through May 30, 2019

Dear Captain Richter:

This is to confirm our mutual understanding and agreement that effective September 1, 2015, Captains in their 2nd, 3rd, 4th and 5th year of service shall be scheduled to work 8 hour tours instead of 9 hour tours.

Additionally, effective September 1, 2015, there shall be one additional scheduled work tour without additional compensation for Captains in their 2nd, 3rd, 4th and 5th year of service.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF CEA

Roy T. Richter, President

2012-2019 CEA

19001



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Roy T. Richter
President
Captains Endowment Association
233 Broadway, Room 850
New York, New York 10279

Re:   CEA Agreement for the period November 1, 2003 through March 31, 2012

Dear President Richter:

This is to confirm the understanding between the City of New York ("City") and the Captains Endowment Association ("CEA") regarding Captains detailed or assigned to the ranks of Deputy Inspector, Inspector or Deputy Chief.

Effective September 1, 2007, the City shall increase the current number of budgeted positions for Captains detailed or assigned to the above ranks to 4.92% of the current CEA bargaining unit. This side letter shall not prohibit or limit the Police Commissioner's discretion to detail or assign Captains to the ranks of Deputy Inspector, Inspector or Deputy Chief.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF CEA

Roy T. Richter, CEA President

2003-20012 CEA

19001



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Roy T. Richter
President
Captains Endowment Association
233 Broadway, Room 850
New York, New York 10279

Re:  CEA Agreement for the period November 1, 2003 through March 31, 2012

Dear President Richter:

The City and the Captains Endowment Association ("CEA") acknowledge that an Administrative Law Judge of the New York State Public Employment Relations Board in Case No. DR-119 (dated May 3, 2007) held that the subject of duty charts, as outlined in 1(d) of Chapter 143 of the Unconsolidated Laws, is a prohibited subject of bargaining. The City and PBA are appealing that determination and other unions have been granted permission by PERB to file amicus briefs.

The parties agree to continue in status quo pending a final and binding decision on that issue by PERB or a court of competent jurisdiction, and all appeals thereto, on the legal challenges to that decision. In the event the determination in DR-119 that duty charts are a prohibited subject of bargaining is affirmed, the parties will jointly support legislation to ameliorate the effect of the decision.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

*James F. Hanley*

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF CEA

_____

Roy T. Richter, CEA President

2003-20012 CEA

19001



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

May 5, 2014

Harry Nespoli
Chair, Municipal Labor Committee
125 Barclay Street
New York, NY 10007

Dear Mr. Nespoli:

This is to confirm the parties' mutual understanding concerning the following issues:

1.     Unless otherwise agreed to by the parties, the Welfare Fund contribution will remain constant for the length of the successor unit agreements, including the $65 funded from the Stabilization Fund pursuant to the 2005 Health Benefits Agreement between the City of New York and the Municipal Labor Committee.

2.     Effective July 1, 2014, the Stabilization Fund shall convey $1 Billion to the City of New York to be used to support wage increases and other economic items for the current round of collective bargaining (for the period up to and including fiscal year 2018). Up to an additional total amount of $150 million will be available over the four year period from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties. Thereafter, $ 60 million per year will be available from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.

3.     If the parties decide to engage in a centralized purchase of Prescription Drugs, and savings and efficiencies are identified therefrom, there shall not be any reduction in welfare fund contributions.

4.     There shall be a joint committee formed that will engage in a process to select an independent healthcare actuary, and any other mutually agreed upon additional outside expertise, to develop an accounting system to measure and calculate savings.

19001

5.    The MLC agrees to generate cumulative healthcare savings of $3.4 billion over the course of Fiscal Years 2015 through 2018, said savings to be exclusive of the monies referenced in Paragraph 2 above and generated in the individual fiscal years as follows: (i) $400 million in Fiscal Year 2015; (ii) $700 million in Fiscal Year 2016; (iii) $1 billion in Fiscal Year 2017; (iv) $1.3 billion in Fiscal Year 2018; and (v) for every fiscal year thereafter, the savings on a citywide basis in health care costs shall continue on a recurring basis. At the conclusion of Fiscal Year 2018, the parties shall calculate the savings realized during the prior four-year period. In the event that the MLC has generated more than $3.4 billion in cumulative healthcare savings during the four-year period, as determined by the jointly selected healthcare actuary, up to the first $365 million of such additional savings shall be credited proportionately to each union as a one-time lump sum pensionable bonus payment for its members. Should the union desire to use these funds for other purposes, the parties shall negotiate in good faith to attempt to agree on an appropriate alternative use. Any additional savings generated for the four-year period beyond the first $365 million will be shared equally with the City and the MLC for the same purposes and subject to the same procedure as the first $365 million. Additional savings beyond $1.3 billion in FY 2018 that carry over into FY 2019 shall be subject to negotiations between the parties.

6.    The following initiatives are among those that the MLC and the City could consider in their joint efforts to meet the aforementioned annual and four-year cumulative savings figures: minimum premium, self-insurance, dependent eligibility verification audits, the capping of the HIP HMO rate, the capping of the Senior Care rate, the equalization formula, marketing plans, Medicare Advantage, and the more effective delivery of health care.

7.    <u>Dispute Resolution</u>

    a.  In the event of any dispute under this agreement, the parties shall meet and confer in an attempt to resolve the dispute. If the parties cannot resolve the dispute, such dispute shall be referred to Arbitrator Martin F. Scheinman for resolution.
    b.  Such dispute shall be resolved within 90 days.
    c.  The arbitrator shall have the authority to impose interim relief that is consistent with the parties' intent.
    d.  The arbitrator shall have the authority to meet with the parties at such times as the arbitrator determines is appropriate to enforce the terms of this agreement.
    e.  If the parties are unable to agree on the independent health care actuary described above, the arbitrator shall select the impartial health care actuary to be retained by the parties.
    f.  The parties shall share the costs for the arbitrator and the actuary the arbitrator selects.

2

19001

If the above accords with your understanding and agreement, kindly execute the signature line provided.

Sincerely,

Robert W. Linn
Commissioner

Agreed and Accepted on behalf of the Municipal Labor Committee

BY: _____

Harry Nespoli, Chair

3

19001