# Exhibit 7

## OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

*The City of New York*

ROBERT W. LINN
*Commissioner*

RENEE CAMPION
*First Deputy Commissioner*

CLAIRE LEVITT
*Deputy Commissioner*
*Health Care Cost Management*

MAYRA E. BELL
*General Counsel*

GEORGETTE GESTELY
*Director, Employee Benefits Program*

TO: HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM: ROBERT W. LINN, COMMISSIONER

SUBJECT: EXECUTED CONTRACT: CORRECTION OFFICERS

TERM: NOVEMBER 1, 2011 TO FEBRUARY 28, 2019

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the Correction Officer's Benevolent Association on behalf of the incumbents of positions listed in Article I of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED:



OFFICE OF LABOR RELATIONS
REGISTRATION

OFFICIAL          CONTRACT

NO:               DATE:
17001             JAN 6, 2017

# CORRECTION OFFICERS
# 2011 - 2019 AGREEMENT

## TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION ...........................................................1

ARTICLE II - UNION SECURITY - DUES CHECKOFF ...............................................................................2

ARTICLE III - HOURS AND OVERTIME .....................................................................................................3

ARTICLE IV - RECALL AFTER TOUR ........................................................................................................3

ARTICLE V - COMPUTATION OF BENEFITS .............................................................................................3

ARTICLE VI - SALARIES ..............................................................................................................................4

ARTICLE VII - UNIFORM ALLOWANCE ...................................................................................................9

ARTICLE VIII - LONGEVITY ADJUSTMENTS ........................................................................................10

ARTICLE IX - PAYMENT FOR HOLIDAY WORK ...................................................................................11

ARTICLE X - LEAVES ................................................................................................................................11

ARTICLE XI - VACATIONS ........................................................................................................................12

ARTICLE XII - HEALTH AND HOSPITALIZATION BENEFITS .............................................................18

ARTICLE XIII - SECURITY BENEFITS FUND ..........................................................................................21

ARTICLE XIV - ANNUITY FUND ..............................................................................................................22

ARTICLE XV - SENIORITY .........................................................................................................................24

ARTICLE XVI - GENERAL ..........................................................................................................................24

ARTICLE XVII - UNION ACTIVITY...........................................................................................................28

ARTICLE XVIII - NO DISCRIMINATION ..................................................................................................29

ARTICLE XIX - BILL OF RIGHTS .............................................................................................................29

ARTICLE XX - NIGHT SHIFT DIFFERENTIAL ........................................................................................29

ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE .........................................................30

ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT................................................................................33

ARTICLE XXIII - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME........................33

ARTICLE XXIV – TERMINAL LEAVE LUMP SUM..................................................................................34

ARTICLE XXV - NO STRIKES.....................................................................................................................34

ARTICLE XXVI - BULLETIN BOARDS .....................................................................................................34

ARTICLE XXVII - NO WAIVER...................................................................................................................34

ARTICLE XXVIII - SAVINGS CLAUSE .....................................................................................................34

ARTICLE XXIX - LABOR-MANAGEMENT COMMITTEES .....................................................................35

ARTICLE XXX - FINANCIAL EMERGENCY ACT....................................................................................36

17001

## CORRECTION OFFICERS
## 2011 - 2019 AGREEMENT

AGREEMENT made this _6th_ day of _January_, 2017, by and between the City of New York (hereinafter called the "City"), acting by the Commissioner of Labor Relations, and the Correction Officers Benevolent Association of the City of New York, Inc. (hereinafter called the "Union" or the "C.O.B.A."), for the period from November 1, 2011 to February 28, 2019.

## W I T N E S S E T H:

WHEREAS, the Correction Officers employed by the City have duly designated the Union as their exclusive bargaining representative for the purpose of collective bargaining with the City with respect to wages, hours and conditions of employment; and

WHEREAS, the Union and the City desire to cooperate in establishing conditions which will tend to secure standards and conditions of employment consistent with the dignity of Correction Officers, and to provide methods for fair and peaceful adjustment of disputes that may arise between the Union and the City; and

WHEREAS, as a result of collective bargaining the parties have reached an agreement which they desire to reduce to writing;

NOW, THEREFORE, it is mutually agreed as follows:

## ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

Section 1.

The City recognizes the Union as the sole and exclusive collective bargaining representative for the unit consisting of the employees of New York City in the title of "Correction Officer."

17001

Section 2.

Except as otherwise provided herein, for purposes of this Contract, the terms "employee," "employees," "Correction Officer" or "Correction Officers" shall be interchangeable and shall relate solely to employees in the unit described in Section 1 of this Article.

## ARTICLE II - UNION SECURITY - DUES CHECKOFF

Section 1.

All employees covered by this Agreement shall be free to become and remain members of the Union in good standing.

Section 2.

The Union shall have the exclusive right to the checkoff and transmittal of dues on behalf of each employee in the unit in accord with the Mayor's Executive Order No. 98, dated May 15, 1969 entitled "Regulations Regulating the Checkoff of Union Dues" and in accord with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Regulations Governing Procedures for Orderly Payroll Checkoff of Union Dues" and any Executive Orders which amend or supersede said Executive Orders.

Section 3.

An employee may consent in writing to the authorization of the deduction of dues from his wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in a proper form, in accord with Section 2 of this Article II, which bears the signature of the employee.

Section 4.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference.

17001

## ARTICLE III - HOURS AND OVERTIME

### Section 1.

All ordered and/or authorized overtime in excess of forty (40) hours in any week or in excess of the hours required of an employee by reason of his regular duty chart if a week's measurement is not appropriate, whether of an emergency nature or of a non-emergency nature, shall be compensated for either by cash payment or compensatory time off, at the rate of time and one-half, at the sole option of the employee. Such cash payments or compensatory time off shall be computed on the basis of fifteen (15) minute segments.

### Section 2.

In order to preserve the intent and spirit of this Section on overtime compensation, there shall be no rescheduling of days off and/or tours of duty. This restriction shall apply both to the retrospective crediting of time off against hours already worked and to the anticipatory re-assignment of personnel to different days off and/or tours of duty.

### Section 3.

Overtime shall be computed on a monthly basis and the Department shall make every reasonable effort to pay such overtime within six (6) weeks following the submission of the monthly report.

## ARTICLE IV - RECALL AFTER TOUR

Any Correction Officer who is recalled to duty after having completed the employee's regular tour of duty shall receive pay pursuant to the regular overtime provisions of this Agreement, that is, in cash or compensatory time off at the sole option of the Correction Officer at the rate of time and one-half for the time actually worked. The Department will issue a directive to the heads of all commands informing them that a Correction Officer who is recalled shall be put to work.

## ARTICLE V - COMPUTATION OF BENEFITS

Since the average basic forty-hour week has not been changed by this Agreement, the current standard practice for the computation of compensation for holidays, vacation days, personal leave days, annuity fund contributions and other relevant benefits, shall continue to be calculated on the basis of an eight-hour work day.

17001

## ARTICLE VI - SALARIES

Section 1.  Salary Rates

During the term of this Agreement, the following basic amounts, which where specified include both salary rates and longevity adjustments, shall prevail for employees:

**a.**     For Correction Officers Hired prior to January 1, 2006

| Grade-Service | Effective 11/1/11 | Effective 12/1/12 | Effective 1/1/14 | Effective 2/1/15 |
|---|---|---|---|---|
| First Grade | | | | |
| 20 Years | $84,618 | $85,391 | $86,171 | $86,959 |
| 15 Years | $83,618 | $84,391 | $85,171 | $85,959 |
| 10 Years | $82,618 | $83,391 | $84,171 | $84,959 |
| 5 Years | $81,618 | $82,391 | $83,171 | $83,959 |
| Basic | $77,253 | $78,026 | $78,806 | $79,594 |
| Second Grade | $59,967 | $60,567 | $61,173 | $61,785 |
| Third Grade | $57,804 | $58,382 | $58,966 | $59,556 |
| Fourth Grade | $49,476 | $49,971 | $50,471 | $50,976 |
| Fifth Grade | $46,682 | $47,149 | $47,620 | $48,096 |
| Sixth Grade | $43,870 | $44,309 | $44,752 | $45,200 |

| Grade-Service | Effective 3/1/16 | Effective 3/1/17 | Effective 3/1/18 |
|---|---|---|---|
| First Grade | | | |
| 20 Years | $88,153 | $90,173 | $92,657 |
| 15 Years | $87,153 | $89,173 | $91,657 |
| 10 Years | $86,153 | $88,173 | $90,657 |
| 5 Years | $85,153 | $87,173 | $89,657 |
| Basic | $80,788 | $82,808 | $85,292 |
| Second Grade | $62,712 | $64,280 | $66,208 |
| Third Grade | $60,449 | $61,960 | $63,819 |
| Fourth Grade | $51,741 | $53,035 | $54,626 |
| Fifth Grade | $48,817 | $50,037 | $51,538 |
| Sixth Grade | $45,878 | $47,025 | $48,436 |

17001

**b.**　　For Correction Officers Hired between January 1, 2006 and October 31, 2008

| Grade-Service | Effective 11/1/11 | Effective 12/1/12 | Effective 1/1/14 | Effective 2/1/15 |
|---|---|---|---|---|
| First Grade | 11/1/11 | 12/1/12 | 1/1/14 | 2/1/15 |
| 20 Years | $84,618 | $85,391 | $86,171 | $86,959 |
| 15 Years | $83,618 | $84,391 | $85,171 | $85,959 |
| 10 Years | $82,618 | $83,391 | $84,171 | $84,959 |
| 5 Years | $81,618 | $82,391 | $83,171 | $83,959 |
| Basic | $77,253 | $78,026 | $78,806 | $79,594 |
| Second Grade | $57,175 | $57,747 | $58,324 | $58,907 |
| Third Grade | $53,803 | $54,341 | $54,884 | $55,433 |
| Fourth Grade | $49,267 | $49,760 | $50,258 | $50,761 |
| Fifth Grade | $44,080 | $44,521 | $44,966 | $45,416 |
| Sixth Grade | $42,395 | $42,819 | $43,247 | $43,679 |

| Grade-Service | Effective 3/1/16 | Effective 3/1/17 | Effective 3/1/18 |
|---|---|---|---|
| First Grade | 3/1/16 | 3/1/17 | 3/1/18 |
| 20 Years | $88,153 | $90,173 | $92,657 |
| 15 Years | $87,153 | $89,173 | $91,657 |
| 10 Years | $86,153 | $88,173 | $90,657 |
| 5 Years | $85,153 | $87,173 | $89,657 |
| Basic | $80,788 | $82,808 | $85,292 |
| Second Grade | $59,791 | $61,286 | $63,125 |
| Third Grade | $56,264 | $57,671 | $59,401 |
| Fourth Grade | $51,522 | $52,810 | $54,394 |
| Fifth Grade | $46,097 | $47,249 | $48,666 |
| Sixth Grade | $44,334 | $45,442 | $46,805 |

17001

**c.** For Correction Officers Hired between September 1, 2008 and December 31, 2008

| Grade-Service | Effective 11/1/11 | Effective 12/1/12 | Effective 1/1/14 | Effective 2/1/15 |
|---|---|---|---|---|
| First Grade | | | | |
| 20 Years | $84,618 | $85,391 | $86,171 | $86,959 |
| 15 Years | $83,618 | $84,391 | $85,171 | $85,959 |
| 10 Years | $82,618 | $83,391 | $84,171 | $84,959 |
| 5 Years | $81,618 | $82,391 | $83,171 | $83,959 |
| Basic | $77,253 | $78,026 | $78,806 | $79,594 |
| Second Grade | $56,381 | $56,945 | $57,514 | $58,089 |
| Third Grade | $52,159 | $52,681 | $53,208 | $53,740 |
| Fourth Grade | $47,253 | $47,726 | $48,203 | $48,685 |
| Fifth Grade | $43,812 | $44,250 | $44,693 | $45,140 |
| Sixth Grade | $39,698 | $40,095 | $40,496 | $40,901 |

| Grade-Service | Effective 3/1/16 | Effective 3/1/17 | Effective 3/1/18 |
|---|---|---|---|
| First Grade | | | |
| 20 Years | $88,153 | $90,173 | $92,657 |
| 15 Years | $87,153 | $89,173 | $91,657 |
| 10 Years | $86,153 | $88,173 | $90,657 |
| 5 Years | $85,153 | $87,173 | $89,657 |
| Basic | $80,788 | $82,808 | $85,292 |
| Second Grade | $58,960 | $60,434 | $62,247 |
| Third Grade | $54,546 | $55,910 | $57,587 |
| Fourth Grade | $49,415 | $50,650 | $52,170 |
| Fifth Grade | $45,817 | $46,962 | $48,371 |
| Sixth Grade | $41,515 | $42,553 | $43,830 |

17001

**d.** For Correction Officers Hired on or after January 1, 2009

| Grade-Service | Effective | Effective | Effective | Effective |
|---|---|---|---|---|
| First Grade | 11/1/11 | 12/1/12 | 1/1/14 | 2/1/15 |
| 20 Years | $84,618** | $85,391** | $86,171** | $86,959** |
| 15 Years | $83,618** | $84,391** | $85,171** | $85,959** |
| 10 Years | $82,618*R | $83,391*R | $84,171*R | $84,959*R |
| 5-1/2 years | $81,618* | $82,391* | $83,171* | $83,959* |
| 5 Years | $60,746* | $61,310* | $61,879* | $62,454* |
| Upon completion of 5-1/2 years of employment (Basic) | $77,253 | $78,026 | $78,806 | $79,594 |
| Upon completion of 4-1/2 years of employment | $56,381 | $56,945 | $57,514 | $58,089 |
| Upon completion of 3-1/2 years of employment | $52,159 | $52,681 | $53,208 | $53,740 |
| Upon completion of 2-1/2 years of employment | $47,253 | $47,726 | $48,203 | $48,685 |
| Upon completion of 1-1/2 years of employment | $43,812 | $44,250 | $44,693 | $45,140 |
| First 18 months of employment (Annualized) | $40,153 | $40,555 | $40,961 | $41,371 |

| Grade-Service | Effective | Effective | Effective |
|---|---|---|---|
| First Grade | 3/1/16 | 3/1/17 | 3/1/18 |
| 20 Years | $88,153** | $90,173** | $92,657** |
| 15 Years | $87,153** | $89,173** | $91,657** |
| 10 Years | $86,153*R | $88,173*R | $90,657*R |
| 5-1/2 years | $85,153* | $87,173* | $89,657* |
| 5 Years | $63,325* | $64,799* | $66,612* |
| Upon completion of 5-1/2 years of employment (Basic) | $80,788 | $82,808 | $85,292 |
| Upon completion of 4-1/2 years of employment | $58,960 | $60,434 | $62,247 |
| Upon completion of 3-1/2 years of employment | $54,546 | $55,910 | $57,587 |
| Upon completion of 2-1/2 years of employment | $49,415 | $50,650 | $52,170 |
| Upon completion of 1-1/2 years of employment | $45,817 | $46,962 | $48,371 |
| First 18 months of employment (Annualized) | $41,992 | $43,042 | $44,333 |

NOTE: The amounts indicated in this Section by asterisks (* and **) include the longevity adjustments in Article VIII of this Agreement. The longevity adjustments in the amounts indicated herein by a single asterisk (*) shall not be deemed to be part of salary for purposes of retirement allowances unless at the time of retirement a Correction Officer paid at such rates shall have completed twenty years of service; and the longevity adjustments in the amounts indicated herein by a double asterisk (**) shall not be deemed to be part of salary for purposes of retirement allowances unless at the time of retirement a Correction Officer paid at such rates shall have completed twenty-five years of service; except that a Correction Officer who has more than twenty years, but less than twenty-five years of service at the time of retirement shall have the adjusted rates indicated by a capital letter R deemed to be part of salary for purposes of retirement allowances.

17001

In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

Section 2.

A laid off employee who is returned to service in the employee's former title or in a comparable title from a preferred list, shall receive the basic salary rate that would have been received by the employee had the employee never been laid off, up to a maximum of two (2) years of general salary increases.

Section 3.   General Wage Increase

a.      The General increases, effective as indicated, shall be:

    i.      Effective November 1, 2011, Employees shall receive a general wage increase of one percent (1%).

    ii.     Effective December 1, 2012, Employees shall receive a general wage increase of one percent (1%).

    iii.    Effective January 1, 2014, Employees shall receive a general wage increase of one percent (1%).

    iv.     Effective February 1, 2015, Employees shall receive a general wage increase of one percent (1%).

    v.      Effective March 1, 2016, Employees shall receive a general wage increase of one and a half percent (1.5%).

    vi.     Effective March 1, 2017 Employees shall receive a general wage increase of two and a half percent (2.5%).

    vii.    Effective March 1, 2018, Employees shall receive a general wage increase of three percent (3%).

b.      The increases provided for in Section 3 shall be calculated as follows:

    i.      the increases in Section 3a. (i) shall be based upon the base rates (which shall include salary or incremental schedules) in effect on October 31, 2011.

17001

ii.     the increases in Section 3a. (ii) shall be based upon the base rates (which shall include salary or incremental schedules) in effect on November 30, 2012.

iii.     the increases in Section 3a. (iii) shall be based upon the base rates (which shall include salary or incremental schedules) in effect on December 31, 2013.

iv.     the increases in Section 3a. (iv) shall be based upon the base rates (which shall include salary or incremental schedules) in effect on January 31, 2015.

v.     the increases in Section 3a. (v) shall be based upon the base rates (which shall include salary or incremental schedules) in effect on February 29, 2016.

vi.     the increases in Section 3a. (vi) shall be based upon the base rates (which shall include salary or incremental schedules) n effect on February 28, 2017.

vii.     the increases in Section 3a. (vii) shall be based upon the base rates (which shall include salary or incremental schedules) in effect on February 28, 2018.

c.     The general increase provided in this Section 3 shall be applied to the base rates and salary grades fixed for the applicable titles, except to the extent that the base rates and salary grades are modified by Section 3d below.

d.     The base rate and salary grades for Correction Officers hired on or after January 1, 2006 are reflected in the table of salaries set forth in Article VI, Section 1.b., c., and d.

Section 4.

Paychecks shall be delivered to commands by 3:00 p.m. on the Thursday preceding payday for distribution after 3:00 p.m. on said Thursday.

Section 5.   Salary Itemization

The Department shall make available in convenient places in each command the appropriate payroll work sheets for the purpose of enabling each employee to verify the salary components of the employee's paycheck. The parties will review further the feasibility of otherwise advising each employee of all payroll components along with the employee's paycheck.

## ARTICLE VII - UNIFORM ALLOWANCE

In fiscal year 2009-10 and 2010-11, the City shall pay to each employee a uniform

17001

allowance of $1,100.00 in accord with the existing standard procedures.

## ARTICLE VIII - LONGEVITY ADJUSTMENTS

Section 1.

a.      Longevity adjustments shall continue to be paid as follows:

        Effective November 1, 2011, the longevity schedule shall be:

            i.      Upon the completion of five years of service, a Correction Officer First Grade shall receive a longevity adjustment of $4,365

            ii.     Upon completion of ten years of service, a Correction Officer First Grade shall receive a longevity adjustment of an additional $1,000

            iii.    Upon completion of fifteen years of service, a Correction Officer First Grade shall receive a longevity adjustment of an additional $1,000

            iv.     Upon completion of twenty years of service, a Correction Officer First Grade shall receive a longevity adjustment of an additional $1,000

b       .The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completing 20 years of service.

        The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service.

        In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

c.      The calculation of night shift differential payments shall be based upon the same factors, amounts and methodology as previously utilized.

d.      ITHP and pension benefit calculations shall only include the amount of the longevity payment that is pensionable.

Section 2.

        The longevity adjustments provided in Section 1 of this Article VIII are reflected in

17001

the table of salaries set forth in Article VI, Section 1 of this Agreement.

## ARTICLE IX - PAYMENT FOR HOLIDAY WORK

Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.

## ARTICLE X - LEAVES

Section 1.  Sick Leave

(i)     Each Correction Officer shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect which is service-connected pursuant to Section 9-117.1(a) of the Administrative Code.

(ii)    Each Correction Officer shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect, whether or not service-connected.

Section 2.  Death-in-Family Leave

In the event of a death in a Correction Officer's immediate family and upon application to and approval of the employee's commanding officer or supervisory head, a Correction Officer shall receive leave with pay not exceeding four (4) consecutive regular tours of duty. For the purposes of this Section, the phrase, "Immediate Family", shall include any of the following: (a) a spouse, (b) a natural, foster or step-parent, child, brother or sister, (c) a father-in-law or mother-in-law, or (d) any relative residing in the Correction Officer's household. The commanding officer or supervisory head granting such leave shall verify the death and relationship of the deceased. If the deceased was in the military service of the United States at the time of death, the Correction Officer requesting leave shall produce the official notice of death.

Section 3.  Military Leave

In accordance with DCAS Personnel Services Bulletin 440-11R, Military Leave not exceeding a total of thirty (30) work days in one calendar year and not exceeding thirty (30) work days in any one continuous period of such absence shall be granted with pay to COBA members to satisfy military obligations.

Section 4.  Special Excusals

Excused time accorded to other personnel employed by the City under circumstances such as excusals for the Dr. Martin Luther King, Jr. and the Senator Robert F. Kennedy

17001

funerals and the Moon Landing Observation Day shall be granted equally to employees covered by this Agreement. All compensating days off shall be subject to exigencies of the Department.

Section 5.   Leave to Attend Hearings

Individual employee grievants shall be granted leave with pay for such time as is necessary to testify at arbitration hearings.

Leave with pay shall be granted to three (3) employees who are named grievants in a group arbitration proceeding, for such time as is necessary for them to testify at their group arbitration hearings.

Leave with pay for such time as is necessary to testify at their hearings shall be granted to employees who, after final adjudication of proceedings under Section 210 paragraph 2h of the Civil Service Law, are determined not to have been in violation of Section 210.

## ARTICLE XI - VACATIONS

Section 1.

The Department shall continue to provide the following authorized annual vacations for employees hired prior to July 1, 1988:

> a.    Following the first 3 years of service (First Grade Correction Officer): twenty-seven (27) work days.
>
> b.    During the first 3 years of service (Second, Third, Fourth Grade and Probationary Correction Officer): twenty (20) work days.
>
> c.    During the calendar year in which the third anniversary of appointment occurs:

17001

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 26 work days |
| Apr. 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

Section 2.

The Department shall provide the following authorized annual vacations for Correction Officers hired between July 1, 1988 through to June 30, 1993 inclusive:

a.   Following the first 5 years of service: twenty-seven (27) work days.

b.   During the first 5 years of service: twenty (20) work days.

c.   During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 26 work days |
| Apr. 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

Section 3.

The Department shall provide the following authorized annual vacations for Correction Officers hired after June 30, 1993:

a.   Following the first 5 years of service: twenty-seven (27) work days.

17001

    b.     During the first 5 years of service: twelve (12) work days.

    c.     During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 24 work days |
| Apr. 16 | June 15 | 22 work days |
| June 16 | July 15 | 20 work days |
| July 16 | Sept. 15 | 18 work days |
| Sept. 16 | Nov. 15 | 16 work days |
| Nov. 16 | Dec. 15 | 14 work days |
| Dec. 16 | Dec. 31 | 12 work days |

    d.     Effective July 1, 1997, the Department shall provide the following authorized annual vacations for Correction Officers hired after June 30, 1993:

        i.     Following the first 5 years of service: twenty-seven (27) work days.

        ii.     During the first 5 years of service: thirteen (13) work days.

        iii.     During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 24 work days |
| Apr. 16 | June 15 | 22 work days |
| June 16 | July 15 | 20 work days |
| July 16 | Sept. 15 | 18 work days |
| Sept. 16 | Nov. 15 | 16 work days |
| Nov. 16 | Dec. 15 | 14 work days |
| Dec. 16 | Dec. 31 | 13 work days |

    e.     Effective November 1, 2002, the Department shall provide the following authorized annual vacations for Correction Officers hired after June 30, 1993 and before January 1, 2006:



    i.      Following the first 5 years of service: twenty-seven (27) work days.

    ii.     During the first 5 years of service: eighteen (18) work days.

    iii.    During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 25 work days |
| Apr. 16 | June 15 | 24 work days |
| June 16 | July 15 | 23 work days |
| July 16 | Sept. 15 | 21 work days |
| Sept. 16 | Nov. 15 | 20 work days |
| Nov. 16 | Dec. 15 | 19 work days |
| Dec. 16 | Dec. 31 | 18 work days |

    f.     Effective January 1, 2006, the Department shall provide the following authorized annual vacations for Correction Officers hired on or after January 1, 2006:

    i.      Following the first 5 years of service: twenty-seven (27) work days.

    ii.     During the first 5 years of service: sixteen (16) work days.

    iii.    During the calendar year in which the fifth anniversary of appointment occurs:

17001

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 25 work days |
| Apr. 16 | June 15 | 23 work days |
| June 16 | July 15 | 22 work days |
| July 16 | Sept. 15 | 20 work days |
| Sept. 16 | Nov. 15 | 18 work days |
| Nov. 16 | Dec. 15 | 17 work days |
| Dec. 16 | Dec. 31 | 16 work days |

g.      Effective January 1, 2009, the Department shall provide the following authorized annual vacations for Correction Officers hired after January 1, 2009:

   i.   Following the first 5 years of service: twenty-seven (27) work days.

   ii.  During the first 5 years of service: thirteen (13) work days.

   iii. During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 24 work days |
| Apr. 16 | June 15 | 22 work days |
| June 16 | July 15 | 20 work days |
| July 16 | Sept. 15 | 18 work days |
| Sept. 16 | Nov. 15 | 16 work days |
| Nov. 16 | Dec. 15 | 14 work days |
| Dec. 16 | Dec. 31 | 13 work days |

h.      Effective January 1, 2017, the Department shall provide the following authorized annual vacations for Correction Officers:

   i.   For Correction Officers hired before January 1, 2009: 2.25 days per month (rate of 27 days per year)

   ii.  For Correction Officers hired on or after January 1, 2009:

17001

    1.    During the first 5 years of service: 1.083 days per month (rate of 13 days per year (as rounded to the nearest full day))

    2.    Following the first 5 years of service: 2.25 days per month (rate of 27 days per year)

## Section 4.

Vacations shall be scheduled in accordance with existing procedures except as modified by the side letter attached to this Agreement.

## Section 5.

The Department agrees to allow Correction Officers to use their accrued vacation days in the vacation year in which they are earned subject to the exigencies of the Department.

## Section 6.

Correction Officers may request in writing permission to carry over into the next vacation year a maximum of 3 weeks vacation. It is the intention of the Department of Correction to grant such requests which are reasonable. The utilization of this vacation time shall be restricted to the months of January through May and September through November. Vacations shall be scheduled to begin and/or end, connected to a pass day.

## Section 7.   Annual Leave Donation Pilot Program

a.    In order to assist Correction Officers who have exhausted all available leave and need to take a prolonged absence from duty due to the medical emergency of an immediate family member, the Department of Correction shall implement a Pilot Program entitled "Annual Leave Donation Program," which shall expire on October 31, 2018. Correction Officers who anticipate using a significant amount of leave to resolve issues caused by a major illness or medical condition of an immediate family member, may apply. The Pilot Program will be sponsored by the Department.

b.    All Correction Officers are eligible to participate as donors or recipients. Donations of accrued annual leave must be made in full day increments and will be debited from the donor's annual leave balance after review of the form and credited to the annual leave bank as full days. Only accrued annual vacation leave may be donated. Any time which is not vacation is not eligible for this program. All donations of accrued annual leave are voluntary. Donations cannot be directed to a particular Correction Officer. Donations will be included in a pool of annual leave to be dispersed by a joint

17001

Labor-Management panel. Donations into the "Annual Leave Donation Program" are not permitted in the calendar year of a Correction Officer's separation from the Department, and any such donations shall be retroactively withdrawn and returned to the individual.

c.      A Correction Officer must have donated at least one vacation day to the pool to be eligible for a disbursement during the life of the Pilot Program. A Correction Officer may donate a maximum of five vacation days per calendar year. Upon depleting all accrued personal leave, including compensatory time, a Correction Officer may receive a maximum disbursement equal to one year's vacation time that would be accrued by the Correction Officer in the same year. In cases of extreme hardship, the Labor-Management Panel may waive the required donation to the "Annual Leave Donation Program" prior to a disbursement, as well as the maximum disbursement and donation limits.

d.      All decisions concerning the implementation of the "Annual Leave Donation Program" and the eligibility of the donor/donee will be mutually agreed upon by the Labor-Management panel. All decisions must comply with IRS Revenue Ruling 90- 29. The decisions of the Labor-Management panel are final and not subject to review, appeal or any grievance procedures. The Labor-Management panel shall consist of four members, two members each from the COBA and the Department. A majority vote is necessary to receive a disbursement from the program.

e.      This "Annual Leave Donation Program" shall only be implemented in accordance with IRS Revenue Ruling 90-29 and as required by law.

## ARTICLE XII - HEALTH AND HOSPITALIZATION BENEFITS

Section 1.

         The City shall continue to provide a fully paid choice of health and hospitalization insurance plans for each employee, not to exceed 100% of the full cost of HIP-HMO on a category basis.  There will be an annual reopening period during the term of this Agreement for active employees to exercise their choice among medical plans.

Section 2.

         Retirees shall continue to have the option of changing their previous choice of Health Plans. This option shall be:

         (a)      a one time choice;
         (b)      exercised only after one year of retirement; and
         (c)      can be exercised at any time without regard to contract periods.

         The effective date of change to a new plan shall be the first day of the month three (3) months after the month in which the application has been received by the New York City

17001

Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to July 1, 1980 and every two years thereafter, retirees shall have the option of changing their previous choice of health plans. This option shall be exercised in accordance with procedures established by the Employer. The Union will assume the responsibility of informing retirees of this option.

Section 3.

a.    Effective July 1, 1983 and thereafter, the City's cost for each employee and each retiree under age 65 coverage shall be equalized at the Community rated basic HIP/HMO plan payment rate as approved by the State Department of Insurance on a category basis of individual or family, e.g. the Blue Cross/GHI-CBP payment for family coverage shall be equal to the HIP/HMO payment for family coverage.

b.    If a replacement plan is offered to employees and retirees under age 65 which exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall not bear the additional costs.

c.    The City (and other related Employers) shall continue to contribute on a City employee benefits program-wide basis the additional annual amount of $30 million to maintain the health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefits.

The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the Blue Cross/GHI-CBP plan; and, if sufficient funds are available, to fund new benefits.

The health insurance stabilization reserve fund shall be credited with the dividends or reduced by the losses attributable to the Blue Cross/GHI-CBP plan.

d.    Pursuant to paragraph 7 of MLC Health Benefits Agreement, notwithstanding the above, in each of the fiscal years 2001 and 2002, the City shall not make the annual $35 million contributions to the health insurance stabilization fund.

e.    In the event that there is a Citywide or program-wide health insurance package which exceeds the cost of the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package

17001

which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein. However, it is understood that the COBA will not be treated any better or any worse than any other Union participating in the Citywide or Program-wide Health Program with regard to increased health insurance costs.

Section 4.

Where an employee is suspended without pay prior to disciplinary trial for disciplinary reasons for more than thirty (30) days, the employee shall receive full health and hospitalization benefit coverage during the period of the suspension following the first thirty (30) days. Where an employee is subsequently restored to full pay status, as of the date of suspension, the employee shall be restored to full health and hospitalization coverage for the first thirty (30) days of the suspension.

Section 5. Health Care Flexible Spending Account

a.    A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code. Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account. Participating employees shall contribute at least $260 per year up to a maximum of $5,000 per year. Said contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan. Any unfunded balance may be deducted from final salary payments due an employee.

b.    Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered. In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

c.    An administrative fee of $1.00 per week for the first year shall be charged for participation in the program. An employee's participation in the account is irrevocable during a plan year. At the close of the plan year any excess balance in an employee's account will not be refunded.

Section 6 - Health Care Savings (Citywide)

The May 5, 2014 Letter Agreement regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee, attached as an Appendix, is deemed part of this Agreement.

17001

## ARTICLE XIII - SECURITY BENEFITS FUND

Section 1.

a.      Effective November 1, 2009, the City shall continue to contribute the pro-rata annual amount of $1,680 for each active employee, and $1,475 for each retiree for remittance to the Security Benefits Fund of the Correction Officers Benevolent Association of the City of New York pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.  Effective December 1, 2010, there shall be an increase in the City's contribution to the active and retiree welfare funds in the prorata amount of $100.00 per annum.

b.      To the extent permitted by law, part of the amounts so contributed may be applied to maintain an appropriate legal services plan, pursuant to the terms of a supplemental agreement between the parties as approved by the Corporation Counsel.

c.      Effective November 1, 2009, employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Fund of the Correction Officers' Benevolent Association at the time of such separation pursuant to a supplementary agreement between the City and the COBA shall continue to be so covered, subject to the provisions of Section 1(a), (b), (c) and (f) hereof.  Contributions shall be made only for such time as said individuals remain primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

d.      The Union agrees to provide welfare fund benefits to domestic partners of covered employees in the same manner as those benefits are provided to spouses of married covered employees.

e.      Civil Legal Representation Fund

i.      Effective December 1, 2010, the City shall contribute $75 per annum for each active Employee to the Security Benefits Fund to maintain a civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel.  While these funds shall be administered by the applicable Security Benefits Fund, they are to be maintained in a separate account and shall not be commingled with the other monies received by the Security Benefits Fund.  Only the $75 provided above may be used for civil legal representation.  No additional monies from the Security Benefits Fund may be used for civil legal representation.

ii.     Effective April 1, 2016, the City's contributions to the Civil Legal Defense Fund shall be suspended until the expiration of this Agreement, and be restored effective March 1, 2019.

17001

f.      Such payments shall be made pro-rata by the City every twenty-eight (28) days.

<u>Section 2.</u>

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the date of the suspension, the employee shall receive full Health and Security Benefits Fund coverage for the period of the suspension.

## ARTICLE XIV - ANNUITY FUND

<u>Section 1.</u>

a.      Effective August 1, 2007, for Correction Officers *who have completed five years of service*, the City shall continue to contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $1,041.37 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

b.      Effective January 1, 2009, for Correction Officers *who have completed five years of service*, the City shall continue to contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $577.37 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

c.      Effective August 1, 2009, for Correction Officers *who have completed five years of service*, the City shall contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $947.37. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

d.      Effective December 1, 2010, for Correction Officers *who have completed five years of service*, the City shall contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $1,411.37. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

17001

e.    Effective August 1, 2007, the contribution to the annuity fund *during the first five years of service* shall not exceed $475.00 per annum per employee. Thereafter, the City shall contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $1,0471.00 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

f.    Effective January 1, 2009, the contribution to the annuity fund *during the first five years of service* shall not exceed $11.00 per annum per employee. Thereafter, the City shall contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $577.37 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

g.    Effective August 1, 2009, the contribution to the annuity fund *during the first five years of service* shall not exceed $381.00 per annum per employee. Thereafter, the City shall contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $947.37 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

h.    Effective December 1, 2010, the contribution to the annuity fund *during the first five years of service* shall not exceed $845.00 per annum per employee. Thereafter, the City shall contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $1411.37 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of

17001

a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the effective date of the suspension, the employee shall receive full annuity fund coverage for the period of the suspension.

## ARTICLE XV - SENIORITY

The Department recognizes the importance of seniority in filling vacancies within a command and shall make every effort to adhere to this policy, providing the senior applicant has the ability and qualifications to perform the work involved. While consultation on such matters is permissible, the final decision of the Department shall not be subject to the grievance procedure.

## ARTICLE XVI - GENERAL

Section 1.   Safety Helmets

The City agrees to furnish a safety helmet and equipment when required.

Section 2.   Maintenance of Facilities

All commands and other Departmental places of assignment shall have adequate heating, hot water and sanitary facilities. The Union shall give notice to the Department of any failure to maintain these conditions. If not corrected by the Department within a reasonable time, the Union may commence a grievance at Step 2 of the grievance procedure concerning that failure.

Section 3.   Semi-Private Hospital Accommodations for Line-of-Duty Injuries

The City shall prepare, submit and support legislation to provide semi-private hospital accommodations for Correction Officers injured in the line-of-duty.

Section 4.   Meal Scheduling

Employees shall not be assigned meals as a matter of practice during either the first hour and one-half or last hour and one-half of their tours. In cases of emergency this practice may be altered.

17001

Section 5.   Mutual Exchange of Tours

a.      Commanding Officers shall permit members performing similar duties to exchange tours voluntarily when there is no interference with correction service and where such exchange of tours does not result in overtime for either member.

b.      All mutuals shall be between two members and completed within a two week period.  "Self-mutuals" are expressly prohibited.

Section 6.   Pilot Program for Coordination of Tours for Child/Family Care Issues

In an effort to assist Correction Officers who are experiencing child care/family issues and have a member of the department with whom they share child or family care duties, the Department shall implement a Pilot Program for twelve (12) months that will permit Correction Officers to request a change of tour within their assigned command or request transfer to a command with an opening on their desired tour, subject to the operational needs of the Department. Correction Officers requesting said accommodations must submit documentation, to be determined by DOC, detailing the reasons for the accommodation. The request will not be unreasonably denied.

Section 7.   Lump Sum Payments

Where an employee has an entitlement to accrued annual leave and/or compensatory time, and the City's fiscal condition requires employees who are terminated, laid off or who choose to retire in lieu of layoff to be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the Employer shall provide a monetary value of accumulated and unused annual leave and/or compensatory time allowances standing to the employee's credit in a lump sum.  Such payments shall be in accordance with the provisions of Executive Order 30, dated June 24, 1975.

Where an employee has an entitlement to terminal leave and the City's fiscal situation requires that employees who are terminated, laid off or retired be removed from the payroll on or before a specific date, or where an employee reached the mandatory retirement age, the Employer shall provide a monetary lump sum payment for terminal leave in accordance with the provisions of Executive Order 31, dated June 24, 1975.

Section 8.   Interest Payments

Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after execution of this Agreement or one hundred-twenty (120) days after the effective date of the increase, whichever is later, to the date of actual payment.  Interest on longevity and step-up increments, differentials and holiday pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after the execution of this Agreement, or one hundred-twenty

17001

(120) days following its earning, whichever is later, to the date of actual payment. Interest on overtime pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days following the employee's submission of an overtime report, whichever is later. Interest accrued pursuant to this paragraph shall be payable only if the amount of interest due to an individual employee exceeds five dollars ($5.00).

Section 9.   Layoffs

Where layoffs are scheduled the following procedure shall be used:

> 1.      Notice shall be provided to the Union not less than thirty (30) days before the effective dates of such projected layoffs.

> 2.      Within such 30-day period designated representatives of the Employer will meet and confer with the designated representatives of the Union with the objective of considering feasible alternatives to all or part of such scheduled layoffs, including but not limited to (a) the transfer of employees to agencies with re-training, if necessary, consistent with the Civil Service Law but without regard to Civil Service title, (b) the use of Federal and State funds whenever possible to retain or re-employ employees scheduled for layoff, (c) the elimination or reduction of the amount of work contracted out to independent contractors and (d) encouragement of early retirement and the expediting of the processing of retirement applications.

> When a layoff occurs, the Department will provide the Union with a list of employees who are on a preferred list with the original date of appointment utilized for the purpose of such layoff.

Section 10.   Public Transportation

The City and the C.O.B.A. will use their best efforts to effect free transportation on buses and subways for Correction Officers.

Section 11.   Personnel Folder

The Department will upon written request to the Chief of Administration by the individual employee, remove from the personnel folder, investigative reports which upon completion of the investigation are classified exonerated and/or unfounded.

Section 12.   Disciplinary Record

The past disciplinary or work record of an employee may not be revealed during a Section 75, Civil Service Law, disciplinary proceeding until a determination as to guilt or

17001

innocence of the member has been determined.

Section 13.   Thirty-Day Suspension Review Committee

a.      There shall be a Thirty (30) Day Suspension Review Committee to review appeals of suspensions of Correction Officers suspended for a period of greater than thirty (30) days without pay for involvement in impermissible use of force or line of duty incidents. All such suspensions will be heard by the committee on a case-by-case basis.

b.      The Suspension Review Committee shall be headed by a Chairperson designated by the Commissioner, whose duty it shall be to convene the committee.

c.      The Committee will consist of five (5) voting members:
    i.   The Chairperson
    ii.  The Chief of Department or designee;
    iii. Warden from the facility to which the suspended officer is assigned;
    iv.  Investigation Division Representative;
    v.   Union or Line Representative.

d.      The Committee shall meet on a monthly basis, or more often if necessary, to review any suspensions of greater than thirty (30) days for involvement in impermissible use of force or line of duty incidents, which have not been revoked under the existing procedures.

e.      The Committee will issue a recommendation to the Commissioner as to whether the member should be returned to regular or modified duty after serving the first thirty (30) days of the suspension.

f.      Final authority to return a suspended officer to duty will remain within the sole and exclusive discretion of the Commissioner.

Section 14.   Short Sleeve Shirts

        Correction Officers may wear short sleeve shirts and no ties on inside posts all year around.

Section 15.   Replacement of Splashed Uniforms

DOC will establish procedures to ensure that the office of the Chief of Security will maintain new uniform shirts and pants to be made available to Correction Officers who are splashed with bodily fluids. When a Correction Officer is splashed with bodily fluids, he or she will

17001

submit a form created by DOC to the office of the Chief of Security. The Officer will then be supplied with a replacement shirt and/or pants.

Section 16. Performance Compensation

The City acknowledges that each of the uniformed forces performs an important service that reflects the diverse missions of the City's uniformed agencies. In order to reward service of an outstanding, exceptional nature, each of the uniformed agencies will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments. The City will notify and discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for the granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law. An employee can receive no more than one payment annually.

This provision shall not affect any existing productivity programs covered in any existing collective bargaining agreements. Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## ARTICLE XVII - UNION ACTIVITY

Section 1.

Time spent by Union officials and representatives in the conduct of labor relations shall be governed by the provisions of Mayor's Executive Order No. 75, as amended, dated March 22, 1973, or any other applicable Executive Order or local law, or as otherwise provided in this Agreement. No employee shall otherwise engage in Union activities during the time the employee is assigned to the employee's regular duties.

Section 2.

C.O.B.A. officers and delegates shall be recognized as representatives of the C.O.B.A. within their respective commands. For the purpose of attending the regularly scheduled monthly meeting, C.O.B.A. delegates shall be excused from duty if the meeting coincides with the delegate's scheduled tour, provided that the command has received at least seventy-two (72) hours advance notice of such request for excusal.

17001

Section 3.

The Department of Correction will issue a memorandum to all heads of institutions instructing them to discuss labor/management problems with alternate Union delegates when a regular delegate is not available, and such alternate will be released for the regularly scheduled monthly meeting when the regular delegate is unable to attend said monthly delegate meeting because of illness which requires remaining at home or hospitalization, or absence from the New York metropolitan area on leave or by assignment, or required court appearance.

## ARTICLE XVIII - NO DISCRIMINATION

In accord with applicable law, there shall be no discrimination by the City against any Correction Officer because of Union activity.

## ARTICLE XIX - BILL OF RIGHTS

The Guidelines for Interrogation of members of the Department in force at the execution date of this Agreement will not be altered during the term of this Agreement, except to reflect subsequent changes in the law or final decisions of the Supreme Court of the United States and the Court of Appeals of the State of New York regarding the procedures and conditions to be followed in the interrogation of a member of the Department. No less than two (2) weeks' written notice of such proposed alteration of the said Guidelines shall be given to the Union.

## ARTICLE XX - NIGHT SHIFT DIFFERENTIAL

a.     There shall be a 10% night shift differential which shall continue to be paid to Correction Officers assigned to rotating tours of duty for all work actually performed between the hours of 4:00 p.m. and 8:00 a.m. Effective July 1, 1978 a 10% night shift differential shall continue to be paid to all other Correction Officers for work actually performed between the hours of 4:00 p.m. and 8:00 a.m., provided that more than one (1) hour is actually worked after 4:00 p.m. and before 8:00 a.m.

b.     Where overtime compensation is to be calculated for tours in the regular duty chart, the overtime calculation shall be based on the rate paid for the tour to which the overtime is attached; for tours not in the regular duty chart, the overtime calculation shall be based on that rate paid for half or more the hours of the tour to which the overtime is attached.

c.     For all Correction Officers hired after June 30, 1993:

17001

1.      No night shift differential shall be paid to those employees during the first six months of service.

2.      Thereafter, 55% of the night shift differential as described in paragraph "a" above earned by a similarly situated Correction Officer hired prior to July 1, 1993 shall be paid until the employee reaches First Grade after five years.

## ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE

### Section 1.  Definition

For the purpose of this Agreement the term, "grievance" shall mean:

a.      a claimed violation, misinterpretation or inequitable application of the provisions of this Agreement;

b.      a claimed violation, misinterpretation or misapplication of the rules, regulations, or procedures of the agency affecting terms and conditions of employment, provided that, except as otherwise provided in this Section 1a, the term "grievance" shall not include disciplinary matters;

c.      a claimed violation, misinterpretation or misapplication of the Guidelines for Interrogation of Members of the Department referred to in Article XIX of this Agreement;

d.      a claimed improper holding of an open-competitive rather than a promotional examination;

e.      a claimed assignment of the grievant to duties substantially different from those stated in the employee's job title specification.

### Section 2.

The grievance procedure, except for paragraph d. of Section 1 above, shall be as follows:

Step I  The employee and/or the Union shall present the grievance verbally or in the form of a memorandum to the "Head of the Facility" not later than ninety (90) days after the date on which the grievance arose. The employee may also request an appointment to discuss the grievance. The Head of the

17001

Facility shall take any steps necessary to a proper disposition of the grievance and shall reply in writing by the end of the third work day following the date of submission.

Step II An appeal from an unsatisfactory decision at Step I shall be presented in writing to the agency head or the designated representative. The appeal must be made within five (5) working days of the receipt of the Step I decision. The agency head or the designated representative, if any, shall meet with the employee and/or the Union for review of the grievance and shall issue a decision by the end of the tenth work day following the date on which the appeal was filed.

Step III An appeal from an unsatisfactory decision at Step II shall be presented by the employee and/or the Union to the Commissioner of Labor Relations, in writing, within ten (10) working days of the receipt of the Step II decision. Copies of such appeals shall be sent to the agency head. The Commissioner of Labor Relations, or designee, shall review all appeals from Step II decisions and shall answer such appeals within fifteen (15) working days.

Step IV An appeal from an unsatisfactory decision at Step III may be brought solely by the Union to the Office of Collective Bargaining for impartial arbitration within fifteen (15) working days of receipt of the Step III decision. In addition, the City shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined herein as a "grievance." The City shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining. A copy of the notice requesting impartial arbitration shall be forwarded to the opposing party. The arbitration shall be conducted in accord with the Consolidated Rules of the Office of Collective Bargaining. The costs and fees of such arbitration shall be borne equally by the Union and the City. The decision or award of the arbitrator shall be final and binding in accord with applicable law and shall not add to, subtract from or modify any contract, rule, regulation, existing policy or order mentioned in Section 1 of this Article.

Section 3.

As a condition to the right of a Union to invoke impartial arbitration set forth in this Article, including the arbitration of a grievance involving a claimed improper holding of an open-competitive rather than a promotional examination, the employee or employees and the Union shall be required to file with the Director of the Office of Collective Bargaining a written waiver of the right, if any, of the employee or employees and the Union to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.

17001

Section 4.

Any grievance of a general nature affecting a large group of employees and which concerns the claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement shall be filed at the option of the Union at Step III of the grievance procedure, without resort to previous steps.

Section 5.

If a decision satisfactory to the Union at any level of the grievance procedure is not implemented within a reasonable time, the Union may re-institute the original grievance at Step III of the grievance procedure; or if a satisfactory Step III decision has not been so implemented, the Union may institute a grievance concerning such failure to implement at Step IV of the grievance procedure.

Section 6.

If the City exceeds any time limit prescribed at any step in the grievance procedure, the grievant and/or the Union may invoke the next step of the procedure, except, however, that only the Union may invoke impartial arbitration under Step IV.

Section 7.

The City shall notify the Union in writing of all grievances filed by employees, all grievance hearings, and all determinations. The Union shall have the right to have a representative present at any grievance hearing and shall be given forty-eight (48) hours' notice of all grievance hearings.

Section 8.

Each of the steps in the grievance procedure, as well as time limits prescribed at each step of this grievance procedure, may be waived by mutual agreement of the parties.

Section 9.

a.    Any grievance relating to a claimed improper holding of an open-competitive rather than a promotional examination shall be presented in writing by the employee or the Union representative to the Commissioner of Labor Relations not later than thirty (30) days after the notice of intention to conduct such open-competitive examination, or copy of the appointing officer's request for such open-competitive examination, as the case may be, has been posted in accordance with Section 51 of the Civil Service Law. The grievance shall be considered and passed upon within ten (10) days after its presentation. The decision shall be in writing, copies of which shall be transmitted to both parties to the grievance upon issuance.

17001

b.  A grievance relating to the use of an open-competitive rather than a promotional examination which is unresolved by the Commissioner of Labor Relations may be brought to impartial arbitration as provided in Sections 2 and 3 above. Such a grievance shall be presented by the Union, in writing, for arbitration within fifteen (15) days of the presentation of such grievance to the Commissioner of Labor Relations, and the arbitrator shall decide such grievance within seventy-five (75) days of its presentation to him. The party requesting such arbitration shall send a copy of such request to the other party. The costs and fees of such arbitration shall be borne equally by the Union and the City.

Section 10.

The availability of the grievance or arbitration procedure shall not justify a failure to follow orders.

Section 11.

The grievance and arbitration procedures contained in this Agreement shall be the exclusive remedy for the resolution of disputes defined as "grievance" herein. This Section shall not be construed in any manner to limit the statutory rights and obligations of the City under Article XIV of the Civil Service Law.

## ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT

In the event a Correction Officer dies because of line-of-duty injury received during the actual and proper performance of Correction Officer service relating to the alleged or actual commission of an unlawful act, or directly resulting from a characteristic hazard of Correction Officer duty, through no fault of the employee's, a payment of $25,000 shall be made from funds other than those of the Retirement System in addition to any other payment which may be made as a result of such death. Such payment shall be made to the beneficiary designated under the Retirement System or, if no beneficiary is so designated to the estate of the deceased.

## ARTICLE XXIII - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, the employee's beneficiary designated under the Retirement System or, if no beneficiary is so designated, the deceased's estate shall receive payment in cash for the following as a death benefit:

a.  All unused accrued leave up to a maximum of 54 days' credit;

b.  All unused accrued compensatory time earned subsequent to January 1, 1971 which is

17001

verifiable by official Department records up to a maximum of two hundred (200) hours.

## ARTICLE XXIV – TERMINAL LEAVE LUMP SUM

The resolution of the Board of Estimate of the City of New York dated June 27, 1957, states the following:

> *Members of the Force shall be granted terminal leave with pay upon retirement not to exceed one month for every ten years of service, pro-rated for a fractional part thereof, provided, however, that no terminal leave shall be granted to an employee against whom departmental disciplinary charges are pending.*

Effective July 1, 2016, such Employees as described in the Resolution above and are entitled to payment shall be entitled to voluntarily choose the option of a one-time lump sum payment as their terminal leave benefit in lieu of their current terminal leave benefit prior to retirement. Such payments shall be made as soon as practicable after retirement.

## ARTICLE XXV - NO STRIKES

In accord with applicable law, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, or mass absenteeism, or induce any mass resignation during the term of this Agreement.

## ARTICLE XXVI - BULLETIN BOARDS

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the Employer for employees to read. All notices shall be on Union stationery, shall be used only to notify employees of matters pertaining to Union affairs, and shall not contain any derogatory or inflammatory statements concerning the City, the Department, or personnel employed by either entity.

## ARTICLE XXVII - NO WAIVER

Except as otherwise provided in this Agreement, the failure to enforce any provision of this Agreement shall not be deemed a waiver thereof. This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which Correction Officers are entitled by law.

## ARTICLE XXVIII - SAVINGS CLAUSE

If any provision of this Agreement is found to be invalid, such invalidity shall not

17001

impair the validity and enforceability of the remaining provisions of this Agreement.

## ARTICLE XXIX - LABOR-MANAGEMENT COMMITTEES

Section 1.

The City and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee in each of the agencies having at least fifty (50) employees covered by this Agreement.

Section 2.

Each labor-management committee shall consider and recommend to the agency head changes in the working conditions of the employees within the agency who are covered by this Agreement. Matters subject to the grievance procedure shall not be appropriate items for consideration by the labor-management committee.

Section 3.

Each labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the agency head shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one (1) alternate. Each committee shall select a chairman from among its members at each meeting. The chairmanship of each committee shall alternate between the members designated by the agency head and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the agency head in writing.

At the request of either the Department of Correction or the C.O.B.A., a representative of the Office of Labor Relations will sit in on the Labor Management Committee.

Section 4.

The labor-management committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties. At least one (1) week in advance of a meeting the party calling the meeting shall provide to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of a committee.

17001

## ARTICLE XXX - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law including the New York State Financial Emergency Act for the City of New York, as amended.

17001

WHEREFORE, we have hereunto set our hands and seals this 6th day of January, 2017.

CITY OF NEW YORK

CORRECTION OFFICERS BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.

BY:

BY:

ROBERT W. LINN
Commissioner of Labor Relations

ELIAS HUSAMUDEEN
President

APPROVED AS TO FORM:

Date submitted to the
FINANCIAL CONTROL BOARD

BY:

ERIC EICHENHOLZ
ACTING CORPORATION COUNSEL

UNIT: **CORRECTION OFFICERS**

TERM: **November 1, 2011 to February 28, 2019**

OFFICE OF LABOR RELATIONS
REGISTRATION

OFFICIAL                      CONTRACT

NO:                              DATE:

17001                          JAN 6, 2017

NEW YORK CITY DEPARTMENT OF CORRECTION
Martin F. Horn, Commissioner

Office of the Commissioner

33 Beaver Street, 23rd fl.
New York, NY 10004
Office 212-266-1212
Fax 212-266-1219

**The City of New York**

Norman Seabrook, President
Correction Officers' Benevolent Association
75 Broadway, Suite 810
New York, N.Y. 10004-2415

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm our understanding that when a Correction Officer is required to report to a location other than his/her assigned location, he/she shall be allowed travel time within the tour of duty.

This shall not pertain to staff who normally have field assignments.

Very truly yours,

Martin F. Horn
Commissioner

17001

*The City of New York*

NEW YORK CITY DEPARTMENT OF CORRECTION
Martin F. Horn, Commissioner

Office of the Commissioner

33 Beaver Street, 23rd fl.
New York, NY 10004
Office 212 266 1212
Fax 212 266 1219

Norman Seabrook, President
Correction Officers' Benevolent Association
75 Broadway, Suite 810
New York, N.Y. 10004-2415

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

When the Departmental Doctor determines that a Correction Officer is injured in the line of duty and is incapacitated and unable to return to work for a finite period of time, then the Department will not confine such Officer to his/her residence for that period. If the administrative determination by the Commissioner or his/her designee is different from that of the Departmental Doctor, then the change will be communicated to the Officer by telephone or in writing.

It is expressly understood that the determination by the Commissioner or his/her designee is final and not subject to the grievance procedure. This procedure does not affect any other rule or regulation of the Department.

Very truly yours,

Martin F. Horn
Commissioner

1 7 0 0 1

Correction Officers Benevolent Association                November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

March 25, 2009

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street
Suite 0810
New York, New York 10004-2415

Dear Mr. Seabrook:

On February 19, 2009, we informed you that an unspecified credit from the partial discontinuation of "unit management" would be available to the Correction Officers Benevolent Association.

Please be advised that we have subsequently calculated that credit to be 0.07%.

Accordingly, effective January 1, 2009, we are proposing a welfare fund increase in the amount of $35.00 per annum for active employees that would be fully funded by the 0.07% credit derived from the reduction in "unit management." This would fully expend the available credit.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

*James F. Hanley*
James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

By: *Norman Seabrook*
Norman Seabrook
President

DOC Unit Management - Disposition of Credit (2)

*17001*

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street, Suite 810
New York, N.Y. 10004

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011 - Change of Sick
Leave Language

Dear Mr. Seabrook:

The sole intent of the change in the sick leave language in Article X, Section 2 of the October
1, 1991 - March 31, 1995 Agreement was to acknowledge enactment of Section 9-117.1(a) of the New
York City Administrative Code which allows Correction Officers to continue to exclude line of duty
sick leave payments from gross income in accordance with Internal Revenue Code Section 104 (a)(1)
and Section 1.104 (b) of the Internal Revenue Service Regulations.

Please be assured that the 1987-90 Police Agreement varied in the same manner from the 1984-
87 Police Agreement as did the Correction Officers Agreement, and that there was no intent to nor
does it deprive any Correction Officer of any benefit nor diminish any benefit, but rather to keep and
further an existing benefit.

The sick leave provisions of Article X, Section 2 (i) and (ii) of the 2007-2009 Correction
Officer Agreement have no other purpose, nor shall they have any other use, but to continue the benefit
therein previously contained.

Very truly yours,

James F. Hanley

Correction Officers Benevolent Association

17001
November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

## OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street, Suite 810
New York, N.Y. 10004

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm our mutual understanding and agreement that during the first five (5) years of service, Correction Officers hired after June 30, 1993 shall have the option to use up to three (3) compensatory time days per year as vacation days.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY:

Norman Seabrook
President

*17001*

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street, Suite 810
New York, N.Y. 10004

Re:     Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm our mutual understanding and agreement that a Labor-Management Committee will be established with the Union and the Department of Correction to resolve sick leave and Health Management Division issues.

If the above accords with your understanding, please execute the signature line provided.

Very truly yours,

*James F. Hanley*

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____
Norman Seabrook
President

17001

THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Re:     COBA Agreement for the period November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

The City and the COBA recognize that, pursuant to Administrative Code Section 12-127, the City is obligated to pay for the cost of line of duty injury prescription drugs for COBA members. The parties further recognize that a significant number of COBA members have utilized the COBA Health and Welfare Fund to pay for these prescription drugs without reimbursement by the City. The COBA agrees to waive any and all claims retroactively and prospectively against the City for the reimbursement of the cost of line of duty injury prescription drugs.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____
Norman Seabrook
President

17001

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Re:  COBA Agreement for the period November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

Effective the date of approval of the 2003-2005 COBA agreement, employees who have transferred from the uniformed service of the New York City Police Department and the New York City Fire Department shall be treated in the same manner as if they had been a member of the uniformed service continuously for the purpose of calculating increments and longevity adjustments only.

Very truly yours,

James F. Hanley

17001

Correction Officers Benevolent Association                                   November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Re:     COBA Agreement for the period November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

    This is to confirm our agreement to establish a labor management committee to discuss the following items:

        a.     Rikers Island Security, Women's facilities
        b.     evaluation of probationary Correction Officers
        c.     some notice on transfers
        d.     environmental issues
        e.     access to personnel files
        f.     parking at Borough facilities
        g.     jury duty

                                Very truly yours,

                                James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____
        Norman Seabrook
        President

17001

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Re:   COBA Agreement for the period November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm our agreement to establish a labor management committee to discuss the impact of increased productivity. The committee will explore proposals for increased productivity by Correction Officers. Mutually agreed upon proposals may be discussed for implementation. After implementation of any agreed upon proposal, the parties may discuss application of the results of implementation.

If this accords with your understanding, please execute at the line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY:

Norman Seabrook
President

17001

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Dear Mr. Seabrook:

Re:	COBA Agreement for the period November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm our mutual understanding and agreement regarding Article XII of the above Agreement. If the stabilization fund referred to in Article XII does not have sufficient monies to maintain the then current level of health insurance benefits provided under GHI-CBP/Blue Cross plan, payroll deductions in the appropriate amounts shall be taken from employees and retirees enrolled in such plan unless agreement is reached on a program wide basis to take the needed monies from the contributions to the welfare fund provided in Article XIII of the above Agreement.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF THE COBA

BY:

Norman Seabrook
President

17001

Correction Officers Benevolent Association	November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm the mutual understanding of the parties with respect to the above captioned Agreement.

The Department of Correction plans to expand the application of "unit management" on a phased-in basis.

The Department reserves its rights to staff its facilities in accordance with the needs of the Agency. To this end, "unit management" shall not impede the assignment of staff, at the discretion of management, between and/or among units in a facility under unit management. The terms of the "travel time" sideletter shall continue to apply in instances where a Correction Officer is assigned to a location outside his/her parent command, except for field assignments.

The Department of Correction will schedule vacations in the most efficient and cost-effective manner (i.e., "vacation smoothing"). Vacation picks shall be based on seniority <u>by tour</u> within the command to assure to the greatest extent practicable an even distribution <u>by tour</u> in each of the respective vacation picks, that is, no more than ten percent of the command <u>by tour</u> per pick.

In the event that unit management is not implemented, or discontinued at management's discretion after implementation, the vacation scheduling modifications shall nevertheless continue to apply. In such an instance, however, the parties agree to reopen the contract on a limited basis with respect to negotiations on an alternate disposition of the savings associated with this issue.

Nothing contained herein shall limit or diminish the Employer's or the Union's rights pursuant to §12-307(b) of the New York City Collective Bargaining Law, except as specifically provided herein. Notwithstanding this, the Union waives its right to raise any claims of any nature relating to this vacation scheduling modification including, but not limited to, a claim of practical impact relating to this scheduling modification, and the Union agrees that all matters subject to bargaining have been

17001

disposed of in this Agreement. Notwithstanding this, a claimed violation, misinterpretation, or misapplication of the vacation scheduling modification may be the subject of a grievance.

The Employer and the Union agree to convene a labor-management meeting at the request of either party to meet and confer on issues that may arise from the implementation of unit management in the various facilities. The Office of Labor Relations will send a representative at the request of either party.

The Employer and the Union understand and agree that in the event that any aspect of this agreement is contingent on the amendment of Section 9-116 of the Administrative Code for the purpose of effectuating this agreement, then the Union shall cooperate and assist the Employer in its efforts to achieve the necessary amendment, if any, subject to approval by both the City and the union of the language and other terms of the said legislation.

If any part of this Agreement is found by a Court of competent jurisdiction to be invalid, then the terms of this Agreement in its entirety will immediately terminate and be given no further effect. In such event, the parties agree to negotiate immediately over substitute savings to be achieved.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY. _____
Norman Seabrook
President

17001



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm our mutual understanding and agreement that a Labor-Management Committee will be established with the Union and the Department of Correction to discuss the subject of nutrition as it applies to the meals made available to Correction Officers.

Very truly yours,

James F. Hanley

17001



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

This is to confirm our mutual understanding and agreement that a Labor-Management Committee will be established with the Union and the Department of Correction to discuss ways to mitigate the initial cost impact on newly appointed Correction Officers who are required to purchase uniforms and related equipment.

Very truly yours,

James F. Hanley

1 7 0 0 1



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

Effective as soon as practicable, a member injured in the line of duty, and whose claim is found to be compensable by the Law Department, who requires medications to treat the illness or injury will have all related costs of such medications covered in the same manner then in effect immediately prior to the agreement between the City and the COBA that COBA members will utilize the COBA Health and Welfare Fund to pay for prescription drugs without reimbursement of the cost of line of duty injury prescription drugs by the City.

Upon reverting to the above procedure, the existing side letter in the contract shall be superseded. However, the COBA agrees to waive any and all claims retroactively against the City for the reimbursement.

If the above accords with your understanding, please execute the signature line provided.

Very truly yours,

*James F. Hanley*

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____

Norman Seabrook
President

17001



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re: COBA Agreement for the period of November 1, 2009 to October 31, 2011

Dear Mr. Seabrook:

The Department of Correction has established a category of Correction Officers designated on "special assignment."

The designation of certain Correction Officers detailed on "special assignment" in the Department of Correction shall be in the sole discretion of the Commissioner.

The number of employees eligible for such designation shall not exceed 4.92% of the budgeted positions in the bargaining unit.

> "Special Assignment"
> 4th Year Step       12% (an additional 3%)
> 3rd Year Step       9% (an additional 3%)
> 2nd Year Step       6% (an additional 3%)
> 1st Year Step       3%

The affected employee's initial receipt of special assignment pay shall commence upon completion of six (6) months of satisfactory performance in the special assignment designation.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: Norman Seabrook

Norman Seabrook
President

17001

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re:     COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This is to confirm our mutual understanding and agreement that a Labor-Management Committee will be established with the Union and the Department of Correction to discuss ways to reduce the cost of purchasing uniforms.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF COBA

BY:

Elias Husamudeen
President

Correction Officers Benevolent Association

November 1, 2011 to February 28, 2019

17001

FILED: NEW YORK COUNTY CLERK 07/14/2020 09:50 PM
NYSCEF DOC. NO. 8   Case 1:20-cv-05441-KPF   Document 10-9   Filed 07/17/20   Page 59 of 71

INDEX NO. 154982/2020
RECEIVED NYSCEF: 07/14/2020



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Re:   COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

    This letter serves to confirm the parties' mutual understanding concerning the issuance of "good guy letters" by the Department of Correction. The Department, in consultation with the New York City Law Department, will develop criteria for the Department to consider when deciding if a Correction Officer will be issued a "good guy letter" upon his or her retirement.

    If the above accords with your understanding, please countersign below.

Sincerely,

Robert W. Linn

ACCEPTED AND AGREED ON BEHALF OF COBA

BY: _____
Elias Husamudeen
President

*17001*



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re:   COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This is to confirm our mutual understanding and agreement regarding the Labor-Management Committee on Facilities created pursuant to the parties' 2011-2019 Memorandum of Agreement. Within six (6) months after the date it first convened, the Committee will issue a report to the Commissioner on the matters discussed by the committee, including any recommended changes or improvements to locker room or bathroom facilities. The Commissioner will issue a response within ninety (90) days of receipt of the Committee's report.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____
Elias Husamudeen
President

*17001*

Correction Officers Benevolent Association

November 1, 2011 to February 28, 2019



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

ROBERT W. LINN
*Commissioner*
RENEE CAMPION
*First Deputy Commissioner*
CLAIRE LEVITT
*Deputy Commissioner*
*Health Care Cost Management*

MAYRA E. BELL
*General Counsel*
GEORGETTE GESTELY
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re:    COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This is to confirm our mutual understanding and agreement that DOC will establish a Medical Practice Review Committee, which shall include a representative from the Union, to conduct fact finding and issue recommendations for improved medical practices at the Health Management Division.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF COBA

BY:
Elias Husamudeen
President

Correction Officers Benevolent Association

*17001*

November 1, 2011 to February 28, 2019



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
  *Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re:    COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This is to confirm our mutual understanding and agreement that the parties will convene, at the Union's request, a Labor-Management committee which shall include representative(s) from the Mayor's Office of Labor Relations to discuss any impact on C.O.B.A. members of changes in the Department's headcount.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____
Elias Husamudeen
President

17001

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re:   COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This is to confirm our mutual understanding and agreement that a Labor-Management committee will be established with representatives of the Department of Correction and the C.O.B.A. to study and review the current grievance procedure with the intent of developing procedures to expedite the process.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____
Elias Husamudeen
President

17001

Correction Officers Benevolent Association                    November 1, 2011 to February 28, 2019



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705

nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
  *Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re:    COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This is to confirm our mutual understanding and agreement that the Union and the Department shall establish a joint committee which shall meet on a regular basis to discuss and consider appropriate means of resolving health and safety issues.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF COBA

BY:

Elias Husamudeen
President

*17001*

Correction Officers Benevolent Association                          November 1, 2011 to February 28, 2019



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
  *Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street, Suite 810
New York, NY 10004

Re:    COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This letter serves to confirm the parties' mutual understanding concerning the Rikers Island Central Arrest Unit.

a.  In order to provide a safe environment, the Department of Correction shall, in coordination with the Bronx District Attorney's Office, create a Rikers Island Central Arrest Unit in order to more effectively pursue re-arrest for aggravated harassment and assault on Correction Officers committed by inmates while incarcerated.

b.  Commanding Officers shall report, as soon as possible, to the Office of Commissioner and to the Chief of the Department that an assault upon a correction officer has been reported to him/her. The Office of the Chief of Security shall investigate and file a complete report as soon as possible to the Office of the Commissioner and to the Chief of the Department. The full report shall be signed by the correction officer to acknowledge that he/she has seen the report and he/she may append a statement to such report.

c.  The Chief of Security shall notify the correction officer of its readiness to assist the correction officer. This assistance is intended solely to apply to the criminal aspect of any case arising from such assault.

d.  The Department shall be responsible for collecting data on every Correction Officer assaulted and must upon request provide the Union with such information/data.

e.  The provisions in Operation Order 52/89 shall apply.

17001

If the above accords with your understanding, please countersign below.

Sincerely,

Robert W. Linn

ACCEPTED AND AGREED ON BEHALF OF COBA

BY: _____

Elias Husamudeen
President

17001



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

ROBERT W. LINN
*Commissioner*
RENEE CAMPION
*First Deputy Commissioner*
CLAIRE LEVITT
*Deputy Commissioner*
*Health Care Cost Management*

MAYRA E. BELL
*General Counsel*
GEORGETTE GESTELY
*Director, Employee Benefits Program*

Elias Husamudeen
President
Correction Officers' Benevolent Association
75 Broad Street – Suite 810
New York, New York 10004

Re:   COBA Agreement for the period of November 1, 2011 to February 28, 2019

Dear Mr. Husamudeen:

This letter serves to confirm the parties understanding regarding Correction Officer vacation accruals. Correction Officers who accrued the incorrect amount of vacation during the fifth calendar year after their appointment shall have their accruals corrected pursuant to the previously existing vacation tables in the parties' Collective Bargaining Agreement.

Effective January 1, 2017, Correction Officers shall accrue vacation time as follows:

    a.    For Correction Officers hired before January 1, 2009:

            2.25 days per month (rate of 27 days per year)

    b.    For Correction Officers hired on or after January 1, 2009:

            i.    During the first 5 years of service: 1.083 days per month (rate of 13 days per year (as rounded to the nearest full day))

            ii.    Following the first five years of service: 2.25 days per month (rate of 27 days per year)

COBA Vacation Side Letter (P. 1 of 2)

1 7 0 0 1

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF COBA

BY

Elias Husamudeen
President

17001

COBA Vacation Side Letter (P. 2 of 2)

Correction Officers Benevolent Association

November 1, 2011 to February 28, 2019



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

May 5, 2014

Harry Nespoli
Chair, Municipal Labor Committee
125 Barclay Street
New York, NY 10007

Dear Mr. Nespoli:

This is to confirm the parties' mutual understanding concerning the following issues:

1.     Unless otherwise agreed to by the parties, the Welfare Fund contribution will remain constant for the length of the successor unit agreements, including the $65 funded from the Stabilization Fund pursuant to the 2005 Health Benefits Agreement between the City of New York and the Municipal Labor Committee.

2.     Effective July 1, 2014, the Stabilization Fund shall convey $1 Billion to the City of New York to be used to support wage increases and other economic items for the current round of collective bargaining (for the period up to and including fiscal year 2018). Up to an additional total amount of $150 million will be available over the four year period from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties. Thereafter, $ 60 million per year will be available from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.

3.     If the parties decide to engage in a centralized purchase of Prescription Drugs, and savings and efficiencies are identified therefrom, there shall not be any reduction in welfare fund contributions.

4.     There shall be a joint committee formed that will engage in a process to select an independent healthcare actuary, and any other mutually agreed upon additional outside expertise, to develop an accounting system to measure and calculate savings.

1

17001

5.    The MLC agrees to generate cumulative healthcare savings of $3.4 billion over the course of Fiscal Years 2015 through 2018, said savings to be exclusive of the monies referenced in Paragraph 2 above and generated in the individual fiscal years as follows: (i) $400 million in Fiscal Year 2015; (ii) $700 million in Fiscal Year 2016; (iii) $1 billion in Fiscal Year 2017; (iv) $1.3 billion in Fiscal Year 2018; and (v) for every fiscal year thereafter, the savings on a citywide basis in health care costs shall continue on a recurring basis. At the conclusion of Fiscal Year 2018, the parties shall calculate the savings realized during the prior four-year period. In the event that the MLC has generated more than $3.4 billion in cumulative healthcare savings during the four-year period, as determined by the jointly selected healthcare actuary, up to the first $365 million of such additional savings shall be credited proportionately to each union as a one-time lump sum pensionable bonus payment for its members. Should the union desire to use these funds for other purposes, the parties shall negotiate in good faith to attempt to agree on an appropriate alternative use. Any additional savings generated for the four-year period beyond the first $365 million will be shared equally with the City and the MLC for the same purposes and subject to the same procedure as the first $365 million. Additional savings beyond $1.3 billion in FY 2018 that carry over into FY 2019 shall be subject to negotiations between the parties.

6.    The following initiatives are among those that the MLC and the City could consider in their joint efforts to meet the aforementioned annual and four-year cumulative savings figures: minimum premium, self-insurance, dependent eligibility verification audits, the capping of the HIP HMO rate, the capping of the Senior Care rate, the equalization formula, marketing plans, Medicare Advantage, and the more effective delivery of health care.

7.    <u>Dispute Resolution</u>

    a.  In the event of any dispute under this agreement, the parties shall meet and confer in an attempt to resolve the dispute. If the parties cannot resolve the dispute, such dispute shall be referred to Arbitrator Martin F. Scheinman for resolution.

    b.  Such dispute shall be resolved within 90 days.

    c.  The arbitrator shall have the authority to impose interim relief that is consistent with the parties' intent.

    d.  The arbitrator shall have the authority to meet with the parties at such times as the arbitrator determines is appropriate to enforce the terms of this agreement.

    e.  If the parties are unable to agree on the independent health care actuary described above, the arbitrator shall select the impartial health care actuary to be retained by the parties.

    f.  The parties shall share the costs for the arbitrator and the actuary the arbitrator selects.

17001

If the above accords with your understanding and agreement, kindly execute the signature line provided.

Sincerely,

Robert W. Linn
Commissioner

Agreed and Accepted on behalf of the Municipal Labor Committee

BY:

Harry Nespoli, Chair

3

17001