# Exhibit 8



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

---

TO:      HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:    RENEE CAMPION, COMMISSIONER

SUBJECT:   EXECUTED CONTRACT: FIREFIGHTERS

TERM:     AUGUST 1, 2010 TO JULY 31, 2017

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the Uniformed Firefighters Association on behalf of the incumbents of positions listed in Article I of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: January 17, 2020



OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL        CONTRACT

NO:
20001

DATE:
January 17, 2020

FIREFIGHTERS
2010-2017 AGREEMENT

## TABLE OF CONTENTS

ARTICLE I - RECOGNITION .................................................................................................... 1

ARTICLE II - UNION SECURITY ............................................................................................. 1

ARTICLE III - WORK SCHEDULE .......................................................................................... 2

ARTICLE IV - UNION REPRESENTATION ............................................................................ 4

ARTICLE V - JOB DESCRIPTION ........................................................................................... 5

ARTICLE V-A - MEDICAL OFFICES ...................................................................................... 5

ARTICLE VI - SALARIES ......................................................................................................... 6

ARTICLE VII - TEMPORARY ASSIGNMENTS ..................................................................... 9

ARTICLE VIII - NIGHT SHIFT DIFFERENTIAL ................................................................... 9

ARTICLE IX - SECURITY BENEFIT FUND .......................................................................... 10

ARTICLE X - HEALTH AND HOSPITALIZATION BENEFITS ......................................... 11

ARTICLE XI - ANNUITY FUND ............................................................................................. 13

ARTICLE XII - VACATION AND LEAVE ............................................................................. 13

ARTICLE XIII - SAFETY STANDARDS AND EQUIPMENT ............................................. 17

ARTICLE XIV - FACILITIES .................................................................................................. 18

ARTICLE XV - TRANSPORTATION ...................................................................................... 18

ARTICLE XVI - VACANCIES ................................................................................................. 18

ARTICLE XVII - INDIVIDUAL RIGHTS ............................................................................... 19

ARTICLE XVIII - GRIEVANCE PROCEDURE ..................................................................... 22

ARTICLE XIX - LABOR-MANAGEMENT COMMITTEE ................................................... 25

ARTICLE XX – DELEGATES .................................................................................................. 26

ARTICLE XXI - NO STRIKE ................................................................................................... 26

ARTICLE XXII - IMPARTIAL PANEL ................................................................................... 27

ARTICLE XXIII - DETAILS TO OTHER UNITS .................................................................. 27

ARTICLE XXIV - LINE-OF-DUTY DEATH BENEFIT ........................................................ 28

ARTICLE XXV - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME ............... 28

ARTICLE XXVI - PARKING FACILITIES ............................................................................. 29

ARTICLE XXVII - MEAL PERIODS ....................................................................................... 29

ARTICLE XXVIII - OCCUPATIONAL HEALTH AND SAFETY ......................................... 29

ARTICLE XXIX - PERFORMANCE COMPENSATION ........................................................ 30

i

**2010-2017 Firefighters**

20001

ARTICLE XXXI - APPLICABLE LAWS ........................................................................... 30

ARTICLE XXXII - SAVINGS CLAUSE ........................................................................... 30

SCHEDULE A. ................................................................................................................. 32

SCHEDULE AA ................................................................................................................ 35

ATTACHMENT A – JOB DESCRIPTION – FULL DUTY FIREFIGHTER ........................ 36

ATTACHMENT B – JOB DESCRIPTION – FIRE MARSHAL (UNIFORMED) ................ 37

ATTACHMENT C – LEAVE CARRYOVER FOR LINE-OF-DUTY INJURY .................... 44

ATTACHMENT D – DELEGATE TRANSFERS ............................................................... 45

ATTACHMENT E – ADJACENT POLICE & FIRE FACILITIES ....................................... 46

ATTACHMENT F – PARKING SPACES .......................................................................... 47

ATTACHMENT G – CLEANING & MAINTENANCE ALLOWANCE ............................... 48

ATTACHMENT H – FIRE SALVAGE PROGRAM ........................................................... 49

ATTACHMENT I – ROSTER STAFFING ........................................................................ 50

ATTACHMENT J – JOB DESCRIPTION DEVIATION .................................................... 55

ATTACHMENT K – PARITY AMONG UNIFORMED EMPLOYEES ............................... 56

ATTACHMENT L – LODI PRESCRIPTION DRUGS ....................................................... 57

ATTACHMENT M – LABOR-MANAGEMENT COMMITTEE (GRIEVANCE PROCEDURES) ...... 59

ATTACHMENT N – LABOR-MANAGEMENT COMMITTEE (SAFETY ISSUES) .......................... 60

ATTACHMENT O – VOLUNTARY PAYROLL DEDUCTIONS ......................................... 61

ATTACHMENT P – SIGNAL 10-51 – SUSPENSION OF OUTSIDE ACTIVITIES ............. 62

ATTACHMENT Q – USE OF DEPARTMENT VANS AND SPARE CHIEFS' CARS ......... 63

ATTACHMENT R – EXTENSION OF PROBATIONARY PERIOD FOR LODI .................. 65

ATTACHMENT S – OVERTIME – ON-DUTY INJURY OR ILLNESS .............................. 66

ATTACHMENT T – PRIOR SERVICE AS POLICE OFFICER OR CORRECTION OFFICER ........... 67

ATTACHMENT U – LABOR-MANAGEMENT COMMITTEE (MMOT & RED-LINE) .................... 69

ATTACHMENT V – LABOR-MANAGEMENT COMMITTEE (FUNERAL DETAILS) ................... 70

ATTACHMENT W – LABOR-MANAGEMENT COMMITTEE (AFID/BISP) ..................... 71

ATTACHMENT X – LABOR-MANAGEMENT COMMITTEE (UNIFORM ALLOWANCE TAXABILITY) ...... 72

ATTACHMENT Y – WORK SCHEDULES NOT IN CONFORMANCE WITH ARTICLE III ........... 73

ATTACHMENT Z – LABOR-MANAGEMENT COMMITTEE (CHANGES IN HEADCOUNT) ....... 75

ATTACHMENT AA – MEDICAL BOARD EXPANSION .................................................. 76

ATTACHMENT AB – MEDICAL LEAVE CALCULATION ............................................. 77

ATTACHMENT AC – "SPECIAL ASSIGNMENT" .......................................................... 79

ii

2010-2017 Firefighters

ATTACHMENT AD – EXTRA DEPARTMENTAL EMPLOYMENT ................................................ 81

ATTACHMENT AE – ADDITIONS TO IMPARTIAL ARBITRATION PANEL ................................ 83

ATTACHMENT AF – SUBSEQUENT CONTRACT PERIOD ........................................................... 84

ATTACHMENT AG - MAY 5, 2014 MLC HEALTH AGREEMENT ………………………………85

iii

**2010-2017 Firefighters**

## FIREFIGHTERS
## 2010-2017 AGREEMENT

January 17th,

COLLECTIVE BARGAINING AGREEMENT entered into this _____ day of
2020, by and between the City of New York (hereinafter referred to as the "Employer"), and the
Uniformed Firefighters Association of Greater New York, (hereinafter referred to as the
"Union"), for the period from August 1, 2010 through July 31, 2017.

## W I T N E S S E T H:

WHEREAS, the parties hereto have entered into collective bargaining and desire to reduce
the results thereof to writing,

NOW, THEREFORE, it is mutually agreed as follows:

### ARTICLE I - RECOGNITION

Section 1.

The Employer recognizes the Union as the sole collective bargaining agent for the unit consisting
of all Firefighters and Fire Marshals (Uniformed) employed by the Employer.

Section 2.

The terms "employee" and "employees" as used in the Agreement shall mean only those persons
employed in the titles described in Section 1 of this Article.

### ARTICLE II - UNION SECURITY

Section 1.

The Employer agrees that all employees may become and remain members of the Union in good
standing.

Section 2.

The Employer further agrees that all new employees hired subsequent to the date of signing this
Agreement may become and remain members of the Union in good standing.

Section 3.

It is further agreed that the decision to become or remain members of the Union in good standing
shall remain discretionary both with the employees and with the Union subject to the provisions
of Section 12-314(a) (formerly Section 1173-10-0a) of the Administrative Code.

1

**2010-2017 Firefighters**

Section 4.

A.     The Union shall have the exclusive right to the check off and transmittal of dues on behalf of each employee in the unit and the City shall check off and transmit such dues to the Union, as permitted by applicable law.

B.     The employee may consent in writing to the authorization of the deduction of dues from his wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in the proper form acceptable to the City, which bears the signature of the employee.

Section 5.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

## ARTICLE III - WORK SCHEDULE

Section 1.

Working hours of Firefighters shall be in accordance with Section 15-112 of the Administrative Code of the City of New York. It is understood and agreed that under the two-platoon system as herein set forth each Firefighter is scheduled to work in excess of a forty-hour week. To compensate Firefighters for working this specific additional time, each Firefighter shall be excused from one fifteen-hour tour of duty in each calendar year. In the event that a Firefighter does not receive such specific additional time or because of illness or the needs of the Fire Department is unable to take this adjusted tour off during the calendar year, the entitlement may be carried over into and shall be taken during the immediately succeeding year but not beyond. The fifteen-hour adjusted tour will be scheduled during the vacation cycle in accordance with Article XII Vacation and Leave.

Section 2.

Firefighters when specifically directed by the Commissioner or Chief of the department or their respective designated representatives to perform work in excess of "working hours" as noted in Section 1 of this Article III shall be compensated for by cash payment at the rate of time and one-half based on the regular salary for Firefighters for the actual period of overtime worked.

Section 3.

When Firefighters are not continued on duty but are ordered to report for emergency duty from a scheduled off tour or a scheduled rest period, they shall be compensated for a minimum of four hours if not assigned to duty and for a minimum of six hours if assigned to duty. Such compensation shall be by cash payment at the rate of time and one-half based on the regular salary for Firefighters.

2

**2010-2017 Firefighters**

20001

Section 4.

Notwithstanding anything to the contrary provided herein, any Firefighter who is recalled to duty after having completed the regular tour of duty but before the commencement of the next regular tour and who is assigned to duty or held without assignment for a period which extends into the commencement of that next regular tour shall receive pay pursuant to the regular overtime provisions of this Agreement only for the actual time so assigned or held, and the same shall be deemed pre-shift overtime.

Section 5.

A.     Fire Marshals shall be scheduled to work in accordance with the work chart requiring 34.5 hours every six days. To the extent that the schedule for Fire Marshals provides for more than 34.5 hours every six days, additional tours off shall be granted to offset the number of additional scheduled hours in each calendar year. In the event that a Fire Marshal does not receive such specific additional time or because of illness or the needs of the Fire Department is unable to take such additional tours off during the calendar year the entitlement may be carried over into and shall be taken during the immediately succeeding year but not beyond.

B.     Ordered overtime authorized by the Commissioner or the Chief Fire Marshal as the Commissioner's designated representative which results in a Fire Marshal working in excess of that Marshal's normal tour of duty shall be compensable in cash at time and one-half.

C.     When Fire Marshals not continued on duty are ordered to report for court on a scheduled off-tour or a scheduled rest period, they shall be compensated for a minimum of four hours in cash at the overtime rate. The four hours of compensation shall include any travel time to which they are presently entitled.

Section 6.

When Fire Marshals are ordered to work overtime to complete required administrative duties, they shall be compensated for one hour of paid travel time at the rate of time and one-half (1-1/2x).

Section 7.     Roster Staffing

The Fire Department agrees not to schedule roster staffing overtime on the following tours on the following holidays: New Year's Eve: 6 x 9 tour; New Year's Day: 9 x 6 and 6 x 9 tours; Easter: 9 x 6 tour; July 4th: 9 x 6 and 6 x 9 tours; Thanksgiving: 9 x 6 and 6 x 9 tours; Christmas Eve: 6 x 9 tour and Christmas Day: 9 x 6 and 6 x 9 tours.

Effective February 1, 2016, the Department will designate five (5) Engine Companies to be staffed with a fifth firefighter at the outset of each tour; i.e., staffing level of C + 5. Effective February 1, 2017, the Department will designate an additional five (5) Engine Companies to be staffed with a

3

**2010-2017 Firefighters**

20001

fifth firefighter at the outset of each tour; i.e., staffing level of C + 10. Effective February 1, 2018, the Department will designate an additional five (5) Engine Companies to be staffed with a fifth firefighter at the outset of each tour; i.e., staffing level of C + 15. Effective February 1, 2019, the Department will designate an additional five (5) Engine Companies to be staffed with a fifth firefighter at the outset of each tour; i.e., staffing level of C + 20.

The Department will have sole and exclusive discretion to decide which engine companies will be designated for staffing with five (5) firefighters. Subsequent to the designations, the Department may review these designations on a quarterly basis. In the event that the Department in is sole and exclusive discretion decides to change these designations, it will provide notice prior to the implementation of those changes.

The Department, on the first day of each month, will review firefighter availability for the preceding 365 days. In the event that firefighter average medical leave exceeds the "designated absence rate" for the preceding 365 day period, the Department will discontinue the staffing levels described above and ensure only a staffing level of C + 0 effective 09:00 hours the following day (the second day of the month). Such staffing level will remain in effect for the remainder of the month. The following month another review of medical leave for the preceding 365 days will occur. When a monthly review results in a return to a level at or below the "designated absence rate", the Department will resume regular staffing effective 09:00 hours the following day (the second day of the month). For the purposes of this agreement, the parties agree that the average medical leave of 7.50% is the "designated absence rate" and includes both line-of-duty and non-line-of-duty medical leave. Medical leave resulting from an agreed-upon catastrophic event will not be included in the medical leave calculation.

This Agreement includes by reference the commitment from the letter of November 28, 1989 from Robert W. Linn, Director of Labor Relations, to Professor Walter Gellhorn, as it relates specifically to the provision of the 96 hours of roster staffing overtime.

The entering into of this Agreement shall not be construed as an admission by the City or by the FDNY that it violated any provision of the New York City Collective Bargaining Law or the collective bargaining agreement between the City and the UFA.

Section 8.    Training

Effective September 1, 2015, Certified First Responder-Defibrillator (CFR-D) training shall be scheduled in advance by the Department to take place on employees' regular day off and shall be paid at a straight time rate.

In addition, the Department, at its discretion, may schedule 8 hours of training to be paid at a straight time rate.


ARTICLE IV - UNION REPRESENTATION

The elected officers of the Union shall be permitted to visit all fire units on the official business of

4

**2010-2017 Firefighters**

20001

the Union. The elected official shall announce that official's presence to the officer in command and carry out the function in a reasonable manner, subject to established labor relations and the Regulations for the Uniformed Forces.

## ARTICLE V - JOB DESCRIPTION

Section 1.

The job description for firefighters shall be in Schedule A annexed hereto and made a part hereof as if fully set forth at length.

Section 2.

The current job description for Fire Marshals is annexed hereto as Schedule Aa and if a new job description is issued it shall be deemed to be annexed hereto as Schedule Aa.

## ARTICLE V-A - MEDICAL OFFICES

Section 1.

The City agrees to implement the recommendations of the Medical Practices Review Committee in accordance with Attachment B of this Agreement. Underlined portions of Attachment B of the 1978-80 Agreement which have not been implemented shall be implemented forthwith. The UFA and the City shall jointly request the Medical Practices Review Committee to take whatever steps are necessary to review and make recommendations concerning the portions of Attachment B which are not underlined.

Section 2.

A.  Complaints concerning the handling of a medical matter or alleging unprofessional conduct by Medical Division personnel may be submitted in writing by the Union to the Chairman of the Medical Practices Review Committee within 15 days after the occurrence upon which the complaint is based. A copy of the complaint shall be submitted to the Chief, Bureau of Health Services of the Fire Department.

B.  The Chief, Bureau of Health Services, shall issue a written determination responding to the complaint to the Union and to the Medical Practices Review Committee stating specific reasons for the determination within 5 working days after the Chief receives the complaint. If the Chief, Bureau of Health Services, rejects a complaint, or fails to answer within 5 working days, the Medical Practices Review Committee shall upon the request of the Union investigate the complaint and issue a written report to the Fire Commissioner advising the Commissioner of the facts and circumstances of the complaint and making recommendations with respect to the disposition of the complaint within 10 working days. A copy of the report and recommendations shall be sent by the Medical Practices Review Committee to the Union at the same time it is sent to the Fire Commissioner. If the Union and the Employer agree, a complaint may be investigated and a report and

5

**2010-2017 Firefighters**

recommendations issued by one member of the Committee.

C.    The Fire Commissioner shall issue a written determination accepting or rejecting the report and recommendations within 10 working days after the Commissioner receives them. If the Commissioner rejects all or any portion of the report or recommendations, the Commissioner shall state the reasons for rejections in writing as part of the determination. Copies of the determination of the Fire Commissioner shall be sent upon issuance to the Union and the Chairman of the Medical Practices Review Committee.

D.    This Section shall not expand or reduce any rights previously held by the parties. The determinations of the Chief, Bureau of Health Services, the Medical Practices Review Committee and the Fire Commissioner shall not be subject to review under the grievance procedure of this Agreement, and do not create any judicially enforceable rights. They are not intended as an adjudication of the rights of the parties or to create judicially admissible evidence.

Section 3.

After receiving written authorization from the Personnel Division to obtain copies of his medical records, an employee shall between the hours of 1 p.m. and 3 p.m., Monday through Friday, excluding holidays, present the authorization to the Medical Division and shall be provided at that time with copies requested.

## ARTICLE VI - SALARIES

Section 1.    Salary Rates

*The following salary schedules reflect the 2002-2006 Reopener agreement where applicable.*

A.    During the term of this Agreement, the following basic amounts shall prevail for firefighters hired prior to January 17, 2006:

|  | Effective 8/1/10 | 9/1/11 | 10/1/12 | 11/1/13 | 12/1/14 | 12/1/15 | 12/1/16 |
|---|---|---|---|---|---|---|---|
| 1st Grade | $77,253 | $78,026 | $78,806 | $79,594 | $80,788 | $82,808 | $85,292 |
| 2nd Grade | $61,799 | $62,417 | $63,041 | $63,671 | $64,626 | $66,242 | $68,229 |
| 3rd Grade | $58,909 | $59,498 | $60,093 | $60,694 | $61,604 | $63,144 | $65,038 |
| 4th Grade | $56,155 | $56,717 | $57,284 | $57,857 | $58,725 | $60,193 | $61,999 |
| 5th Grade | $53,537 | $54,072 | $54,613 | $55,159 | $55,986 | $57,386 | $59,108 |
| 6th Grade | $51,040 | $51,550 | $52,066 | $52,587 | $53,376 | $54,710 | $56,351 |

6

**2010-2017 Firefighters**

20001

B.    During the term of this Agreement, the following basic amounts shall prevail for firefighters hired on or after January 17, 2006:

|           | Effective 8/1/10 | 9/1/11 | 10/1/12 | 11/1/13 | 12/1/14 | 12/1/15 | 12/1/16 |
|-----------|----------|----------|----------|----------|----------|----------|----------|
| 1st Grade | $77,253 | $78,026 | $78,806 | $79,594 | $80,788 | $82,808 | $85,292 |
| 2nd Grade | $55,102 | $55,653 | $56,210 | $56,772 | $57,624 | $59,065 | $60,837 |
| 3rd Grade | $49,989 | $50,489 | $50,994 | $51,504 | $52,277 | $53,584 | $55,192 |
| 4th Grade | $45,445 | $45,899 | $46,358 | $46,822 | $47,524 | $48,712 | $50,173 |
| 5th Grade | $41,724 | $42,141 | $42,562 | $42,988 | $43,633 | $44,724 | $46,066 |
| 6th Grade | $39,764 | $40,162 | $40,564 | $40,970 | $41,585 | $42,625 | $43,904 |

C.    During the term of this Agreement, the following base salary rates shall prevail for employees upon date of promotion to Fire Marshal:

|           | Effective 8/1/10 | 9/1/11 | 10/1/12 | 11/1/13 | 12/1/14 | 12/1/15 | 12/1/16 |
|-----------|----------|----------|----------|----------|----------|----------|----------|
| 1st Grade | $86,524 | $87,389 | $88,263 | $89,146 | $90,483 | $92,745 | $95,527 |
| 2nd Grade | $67,972 | $68,652 | $69,339 | $70,032 | $71,082 | $72,859 | $75,045 |
| 3rd Grade | $64,736 | $65,383 | $66,037 | $66,697 | $67,697 | $69,389 | $71,471 |
| 4th Grade | $61,651 | $62,268 | $62,891 | $63,520 | $64,473 | $66,085 | $68,068 |
| 5th Grade | $58,719 | $59,306 | $59,899 | $60,498 | $61,405 | $62,940 | $64,828 |
| 6th Grade | $55,924 | $56,483 | $57,048 | $57,618 | $58,482 | $59,944 | $61,742 |

Section 2.    Longevity

A. Longevity pay shall continue to be paid to Fire Marshals and First Grade Firefighters as follows:

|                | Effective 8/1/10 | 9/1/11 | 10/1/12 | 11/1/13 | 12/1/14 | 12/1/15 | 12/1/16 |
|----------------|----------|----------|----------|----------|----------|----------|----------|
| After 5 years  | $3,286 | $3,319 | $3,352 | $3,386 | $3,437 | $3,523 | $3,629 |
| After 10 years | $4,296 | $4,339 | $4,382 | $4,426 | $4,492 | $4,604 | $4,742 |
| After 15 years | $5,306 | $5,359 | $5,413 | $5,467 | $5,549 | $5,688 | $5,859 |
| After 20 years | $6,316 | $6,379 | $6,443 | $6,507 | $6,605 | $6,770 | $6,973 |

The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completion of 20 years of service.

The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service.

In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

7

**2010-2017 Firefighters**

B.     The calculation of night shift differential payments shall be based only upon the applicable amounts of night shift differential provided prior to July 1, 1989.

C.     ITHP and pension benefit calculations shall only include the amount of the longevity payment that is pensionable.

D.     Effective July 31, 2010, each step of the longevity schedule shall be increased by any future general wage increases, as of the effective date of said increases.

<u>Section 3.</u>     <u>Differential</u>

A differential in the amount equal to 2.05% of the employee's hourly base salary shall be paid for time spent actually performing chauffeur or tillerman duties pursuant to the terms as agreed upon by the parties. Effective September 1, 2007, the differential shall be increased to 3.00%.

<u>Section 4.</u>     <u>Holidays</u>

Holidays - Each employee shall receive eleven paid holidays annually.

Effective April 1, 2007, for employees hired on or after April 1, 2007, there shall be six (6) fewer paid holidays during the first five (5) years of service, i.e., there shall be three (3) fewer days in each holiday check.

<u>Section 5.</u>     <u>General Wage Increase</u>

a.     For Firefighters and Fire Marshals:

    i.     Effective August 1, 2010, Employees shall receive a general wage increase of one percent (1%).

    ii.     Effective September 1, 2011, Employees shall receive a general wage increase of one percent (1%).

    iii.     Effective October 1, 2012, Employees shall receive a general wage increase of one percent (1%).

    iv.     Effective November 1, 2013, Employees shall receive a general wage increase of one percent (1%).

    v.     Effective December 1, 2014, Employees shall receive a general wage increase of one and a half percent (1.5%).

    vi.     Effective December 1, 2015, Employees shall receive a general wage increase of two and a half percent (2.5%).

8

**2010-2017 Firefighters**

20001

      vii.     Effective December 1, 2016, Employees shall receive a general wage increase of three percent (3%).

b.     The increases provided for in this Section shall be calculated as follows:

      i.      The general increases provided for in Section 5(a) above shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on the day prior to the general increase, e.g. the general increase provided for in Section 5(a)(i) shall be based on the base rates (including salary or incremental salary schedules) of the applicable titles in effect on July 31, 2010.

### Section 6.

Paychecks shall be distributed to the employee's unit by 6 p.m. but not before 3 p.m. on the Thursday preceding payday.

## ARTICLE VII - TEMPORARY ASSIGNMENTS

Whenever an Employee is assigned to the duties of a higher rank (i.e., Officer, Marine Engineer or Pilot) for more than two hours in any tour, that Employee shall be paid in cash for the entire tour at the rate of pay for the higher rank in which that Employee served, even though the Department may replace that Employee at any time with an appropriate Officer, provided that if the Employee is replacing a Fire Officer who is attending an authorized meeting of a certified labor organization as a delegate, the Employee shall be paid in cash at the rate of pay for the higher rank in which that Employee served only for the actual number of hours so served. The intent is that the Department shall have two hours to obtain an Officer, Marine Engineer or Pilot qualified in the higher rank. Payment shall be made within a reasonable time.

## ARTICLE VIII - NIGHT SHIFT DIFFERENTIAL

### Section 1.

There shall be a 10% differential continued for all work actually performed between the hours of 4 p.m. and 8 a.m., provided that more than one hour is actually worked after 4 p.m. and before 8 a.m.

### Section 2.

A.     In lieu of the payments required by Article VIII, Section 1, of this Collective Bargaining Agreement, the employer shall pay all employees except those probationary Firefighters who are attending the Probationary Firefighters' School, pro rata, an annual amount equal to 5.7 percent of the sum of each such employee's base annual salary rate plus longevity adjustments. This benefit shall be computed on the basis of the rates set forth in Article IV, including longevity adjustments, for all Firefighters and Fire Marshals.

9

**2010-2017 Firefighters**

B.    For all employees hired after September 30, 1994:

1.    No night shift differential shall be paid those employees during their first six months of service.

2.    Thereafter, 90% of the night shift differential as described in Section 2.A. of this Article earned by a similarly situated employee hired prior to October 1, 1994 shall be paid until the employee reaches Fifth Grade after one year.

3.    Effective April 1, 2007, for employees hired on or after April 1, 2007, the night shift differential otherwise payable shall be reduced by fifty percent (50%) during the first five (5) years of service.

ARTICLE IX - SECURITY BENEFIT FUND

A.

1.    Effective January 1, 2005, the City shall continue to contribute the pro-rata annual amount $1,425 for each full-time employee for remittance to the mutually agreed upon security benefit fund, the Security Benefit Fund of the Uniformed Firefighters Association, pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel. Such payment shall be made pro rata by the City each twenty-eight days.

2.    Effective July 31, 2008 the City shall continue to contribute the pro-rata annual amount $1655 for each retired employee for remittance to the mutually agreed upon security benefit fund, the Security Benefit Fund of the Uniformed Firefighters Association, pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

3.    Effective September 1, 2015, the City's welfare fund contribution shall be decreased by $200 per member per year to $1,300 for active employees and to $1,455 for retirees.

4.    Pursuant to its commitment, the UFA will continue to provide benefits to employees' domestic partners.

B.    Effective January 1, 1995, employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Security Benefit Fund of the Uniformed Firefighters Association at the time of such separation pursuant to a supplementary agreement between the City and the UFA shall continue to be so covered, subject to the provisions of Section 1A and 1B hereof, on the same contributory basis as incumbent employees. Contributions shall be made only for such time as said individuals are eligible to be primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

10

**2010-2017 Firefighters**

20001

D.      Such payment shall be made pro-rata by the City every twenty-eight (28) days.

## ARTICLE X - HEALTH AND HOSPITALIZATION BENEFITS

Section 1.

The City shall continue to provide a fully paid choice of health and hospitalization insurance plans for each employee, not to exceed 100% of the full cost of HIP-HMO on a category basis. There will be an annual reopening period during the term of this Agreement for active employees to exercise their choice among medical plans.

Where an employee is suspended without pay for disciplinary reasons, the employee shall continue to receive health and hospitalization benefit coverage during the period of suspension.

Section 2.

Retirees shall continue to have the option of changing their previous choice of Health Plans. This option:

        (a)     shall be a one-time choice;
        (b)     shall be exercised only after one year of retirement;
        (c)     can be exercised at any time without regard to contract periods.

The effective date of change to a new plan shall be the first day of the month three months after the month in which the application has been received by the New York City Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to January 1, 1980 and every two years thereafter retirees shall have the option of changing their previous choice of health plans. This option shall be exercised in accordance with procedures established by the Employer. The Union will assume the responsibility of informing retirees of this option.

Section 3.

A.      Effective July 1, 1983 and thereafter, the City's cost for each employee and each retiree under age 65 shall be equalized at the community rated basic HIP/HMO plan payment rate as approved by the State Department of Insurance on a category basis of individual or family e.g. the Blue Cross/GHI-CBP payment for family coverage shall be equal to the HIP/HMO payment for family coverage.

B.      If a replacement plan is offered to employees and retirees under age 65 which exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall not bear the additional costs.

C.      The City (and other related Employers) shall continue to contribute on a City employee benefits program-wide basis the additional annual amount of $30 million to maintain the

11

**2010-2017 Firefighters**

20001

health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefits.

The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the Blue Cross/GHI-CBP plan; and, if sufficient funds are available, to fund new benefits.

The health insurance stabilization reserve fund shall be credited with the dividends or reduced by the losses attributable to the Blue Cross/GHI-CBP plan.

C.      Pursuant to paragraph 7 of the 2005 MLC Health Benefits Agreement, notwithstanding the above, in each of the fiscal years 2001 and 2002, the City shall not make the annual $35 million contributions to the health insurance stabilization fund.

D.      With respect to section 12f of the MLC Health Benefits Agreement, the Welfare Fund contributions shall be made on behalf of the families who qualify for health insurance coverage under Section 12-126(b)(2) of the Administrative Code. The cost of providing this benefit shall be funded solely by the Health Insurance Stabilization Fund.

F.      In the event that there is a Citywide or program-wide health insurance package which exceeds the cost to the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein. However, it is understood that the UFA will not be treated any better or any worse than any other Union Participating in the Citywide or Program-wide Health Program with regard to increased health insurance costs.

Section 4.  Health Care Flexible Spending Account.

a.      A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code. Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account. Participating employees shall contribute at least $260 per year up to a maximum of $5,000 per year. Said contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan. Any unfunded balance may be deducted from final salary payments due an employee.

b.      Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered. In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

     ii.      An administrative fee of $1.00 per week for the first year shall be charged for participation in the program. An employee's participation in the account is irrevocable

12

**2010-2017 Firefighters**

20001

during a plan year. At the close of the plan year any excess balance in an employee's
account will not be refunded.

Section 5.

This Agreement incorporates the terms of the May 5, 2014 Letter Agreement regarding health
savings and welfare fund contributions between the City of New York and the Municipal Labor
Committee, as appended to this Agreement.

## ARTICLE XI - ANNUITY FUND

Effective May 31, 2002, the City shall continue to contribute for each Firefighter and Fire Marshal,
on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which
such Firefighter or Fire Marshal is paid by the City. The total annual contribution shall not exceed
$1,044 for each Firefighter or $1,566 for each Fire Marshal in full pay status in the prescribed
twelve month period. Contributions hereunder shall be remitted by the City each twenty-eight (28)
days to the Uniformed Firefighters Association Compensation Accrual Fund pursuant to the terms
of a supplemental agreement to be reached by the parties subject to the approval of the Corporation
Counsel.

Effective April 1, 2007, for employees hired on or after April 1, 2007, there shall be no annuity
contributions remitted during the employees' first five years of service.

## ARTICLE XII - VACATION AND LEAVE

Section 1.

A.   Effective July 1, 1997, the yearly annual leave accrual shall be increased by 39 hours. Such
     accrual shall be implemented as follows: effective calendar year 1997 - two 9 hour tours;
     effective calendar year 1998 - 39 hours. Each Firefighter hired prior to July 1, 1988 shall
     be entitled to vacation leave as prescribed in the annual Leave Allowance Program for the
     Fire Department, as established by the Board of Estimate Resolution--6/27/57--(Cal. No.
     580) as amended to date, and in Regulations for the Uniformed Force. Annual Leave Credit
     shall be pro-rated each year for Firefighters appointed after January 1.

B.   Each Firefighter hired prior to December 31, 1992 (inclusive) shall be entitled to vacation
     leave as prescribed in the annual Leave Allowance Program for the Fire Department, as
     established by the Board of Estimate Resolution--6/27/57--(Cal. No. 580) as amended to
     date, and in Regulations for the Uniformed Force. Annual Leave Credit shall be
     pro-rated each year for Firefighters appointed after January 1.

     An annual leave allowance, based on service in the Department, shall be granted to
     members in accordance with the following:

13

**2010-2017 Firefighters**

20001

| SERVICE | ANNUAL LEAVE ACCRUAL | MONTHLY ACCRUAL |
|---|---|---|
| 5 years and over | 210 hours (10-9 hr. tours; 8-15 hr. tours) | 17.5 hours |

Effective January 1, 2006, the annual leave allowance shall be as follows:

| SERVICE | ANNUAL LEAVE ACCRUAL | MONTHLY ACCRUAL |
|---|---|---|
| 5 years and over | 195 hours (10-9 hr. tours; 7-15 hr. tours) | 16.25 hours |

Vacations shall be in accordance with a nine-group chart which is hereby incorporated by reference and made a part of the agreement.

C.     Each Firefighter hired after December 31, 1992 shall be entitled to vacation leave as prescribed in the annual Leave Allowance Program for the Fire Department, as established by the Board of Estimate Resolution--6/27/57--(Cal. No. 580) as amended to date, and in Regulations for the Uniformed Force. Annual Leave Credit shall be pro-rated each year for Firefighters appointed after January 1.

An annual leave allowance, based on service in the Department, shall be granted to members in accordance with the following:

| SERVICE | ANNUAL LEAVE ACCRUAL | MONTHLY ACCRUAL |
|---|---|---|
| 6 years and over | 210 hours (10-9 hr. tours; 8-15 hr. tours) | 17.5 hours |
| 5 years | 177 hours (8-9 hr. tours; 7-15 hr. tours) | 14.75 hours |
| 3 years and 4 years | 114 hours (6-9 hr. tours; 4-15 hr. tours) | 9.5 hours |
| 1 year and 2 years | 72 hours (3-9 hr. tours; 3-15 hr. tours) | 6 hours |

14

**2010-2017 Firefighters**

20001

Effective January 1, 2006, the annual leave allowance shall be as follows:

| SERVICE | ANNUAL LEAVE ACCRUAL | MONTHLY ACCRUAL |
|---------|----------------------|-----------------|
| 6 years and over | 195 hours (10-9 hr. tours; 7-15 hr. tours) | 16.25 hours |
| 5 years | 162 hours (8-9 hr. tours; 6-15 hr. tours) | 13.5 hours |
| 3 years and 4 years | 99 hours (6-9 hr. tours; 3-15 hr. tours) | 8.25 hours |
| 1 year and 2 years | 57 hours (3-9 hr. tours; 2-15 hr. tours) | 4.75 hours |

Vacations shall be in accordance with a nine-group chart which is hereby incorporated by reference and made a part of the agreement.

Section 2.

Present practice regarding annual leave for Fire Marshals shall continue, except that as of January 1, 2006, Fire Marshals will be entitled to 211 hours of annual leave per year, accrued at a rate of 17 hours and 35 minutes per month.

Section 3.

A.    If an employee does not receive, or because of illness or the needs of the Fire Department, is unable to take all or part of that employee's vacation in a calendar year, that employee may be entitled to carry the unused portion over into and take such unused portion during the succeeding year but not beyond.

B.    An employee's annual leave shall be changed to sick leave during a period of verified hospitalization or if that employee is seriously disabled but not hospitalized while on annual leave. The medical leave provided herein shall be administered in the same way as the medical leave program for employees who are not on leave. The Department's decision shall be final in granting leave under this paragraph provided, however, that complaints concerning the refusal of the Chief Medical Officer to change an employee's annual leave to sick leave may be submitted to the Medical Practices Review Committee as complaints pursuant to Article VA, Section 3 of this Agreement.

15

**2010-2017 Firefighters**

20001

Section 4.

Excused time accorded to all other personnel employed by the City such as excusals for the Dr. Martin Luther King, Jr. and the Senator Robert F. Kennedy funerals and the Moon Landing Observation Day, shall be granted equally to employees covered by this Agreement. Employees not accorded the day off shall be credited with compensatory time off.

Section 5.

Compensatory days shall be subject to the exigencies of the Department. Where any employee is entitled to receive a compensatory day and is denied the request of that employee's choice of a compensatory day, that employee shall have the right, in accordance with existing procedures, to take such compensatory time subsequently, or, subject to the discretion of the Department, receive cash, at straight time, for the applicable period in which event payment shall be made as soon as possible.

Section 6.

Any employee who is on light duty as a result of a line of duty illness or injury and who has not yet taken that employee's vacation shall not be required to take the vacation while that employee is continued on light duty.

Rescheduling of any such vacation shall be subject to the exigencies of the Department.

Section 7.

Before commencing duty with a new group, a Firefighter who has completed working two 9-hour or two 15-hour tours and who is entitled to a 48-hour or a 72-hour leave shall be permitted to complete the full 48-hour or 72-hour leave.

Section 8.

The Fire Department agrees to make its best efforts to promulgate the vacation chart at least ninety (90) days prior to January 1st of each year.

Section 9.    Off Line Holiday Pay

Effective September 1, 2009, all members off the line (inclusive of light and full duty) who have a work schedule which provides for a regular day off (RDO) during the workweek shall forego this RDO in the week in which a holiday occurs. In the event that more than one holiday occurs in a week, the member must forego the RDO and one tour of annual leave. All members off the line who have a work schedule, which does not provide for a RDO during the work week, must forego one tour of annual leave. Under no circumstances where a member is regularly scheduled to work on a holiday shall that member receive overtime for hours actually worked per that schedule (with the exceptions of veterans working on Memorial or Veteran's day). The intent of

16

**2010-2017 Firefighters**

20001

this provision is to ensure that all members referred to above provide 40 hours of work in a week in which a holiday occurs.

In lieu of foregoing a tour of annual leave, the member may reschedule an additional tour of duty with the consent of the Fire Department.

Section 10.        Terminal Leave

The resolution of the Board of Estimate of the City of New York dated June 27, 1957, states the following:

> *Members of the Force shall be granted terminal leave with pay upon retirement not to exceed one month for every ten years of service, pro-rated for a fractional part thereof, provided, however, that no terminal leave shall be granted to an employee against whom departmental disciplinary charges are pending.*

Effective September 1, 2015, the parties agree that such Employees as described in the Resolution above and are entitled to payment shall now be entitled to voluntarily choose the option of a one-time lump sum payment as their terminal leave benefit in lieu of their current terminal leave benefit prior to retirement, Such payments shall be made as soon as practicable after retirement, consistent with the Stipulation of Settlement reached by the parties in OCB case docketed as A-15208-16.

In the event that a change in legislation is needed to effectuate this agreement, the parties agree to jointly support the necessary legislation to implement the terms of this Section 10.


ARTICLE XIII - SAFETY STANDARDS AND EQUIPMENT
Section 1.

The Department shall establish minimum safety standards for all Firefighting and Fire Marshal vehicles, consistent with the standards of the State Motor Vehicle Bureau for comparable vehicles, and shall have annual inspections to insure the maintenance of these standards.

Section 2.

The assigned Engine or Ladder Chauffeurs, in the presence of the House Watchperson, shall notify the Company Officer of defects in apparatus so that an inspection of the apparatus may be undertaken and a recording of the Officer's findings made in the Company Journal pursuant to Chapter 13.2.6 of the Fire Department's Regulations.

Section 3.

When a company receives new equipment, replacement equipment, equipment repaired by the Division of Repair and Transportation, and when equipment is repaired in quarters by a mechanic, the Officer on duty shall inspect such equipment to insure that it is in proper working

17

**2010-2017 Firefighters**

20001

order. Such officer shall make a signed notation in the Company Journal regarding the results of such inspection.

### Section 4.

In selecting chauffeurs and tiller persons, the Department recognizes the importance of seniority (measured by time in the rank) provided the senior applicant has the ability and qualifications to perform the work. However, the Department's decision is final.

### Section 5.

A medical expert designated by the UFA and a representative designated by the Fire Department shall meet to develop procedures to monitor Firefighters and Fire Marshals who may be exposed to hazardous materials.

## ARTICLE XIV - FACILITIES

### Section 1.

All quarters shall have adequate heating, hot water, sanitary and sanitation facilities and Fire Marshal quarters shall have adequate desks, telephones and locker space. Notice of any claimed violation shall be given to the Department. If the Department does not correct the claimed violation within a reasonable time the Union may file a grievance at Step III of the grievance procedure.

### Section 2.

When it is anticipated that a fire house or Fire Marshal quarters will be without heat (during the heating season), water, power or sanitation facilities for the duration of a tour or longer the Department will relocate affected companies or Fire Marshal units to an alternate location until the condition is corrected.

## ARTICLE XV - TRANSPORTATION

The Department recognizes its responsibility to provide transportation to and from fires and in emergencies. When transportation is not made available, and an employee is authorized to use and uses that employee's personal car, that employee shall be paid $1.75 for that use. Payment shall be made within a reasonable time.

## ARTICLE XVI - VACANCIES

The Department shall periodically list vacancies in Department Orders. In filling vacancies, the Department recognizes the importance of seniority (measured by time in the Department) provided the senior applicant has the ability and qualifications to perform the work involved. However, the Department's decision is final.

18

**2010-2017 Firefighters**

20001

## ARTICLE XVII - INDIVIDUAL RIGHTS

Preamble.

It is the policy of the Fire Department of the City of New York to secure for all
employees their rights and privileges as citizens in a democratic society, consistent with their
duties and obligations as employees of the Fire Department and the City of New York. To
further the administration of this policy, the following guidelines are established:

Section 1.

Interrogations, interviews, trials and hearings conducted by duly authorized representatives of
the Fire Department shall be conducted during reasonable hours, preferably when an employee is
on duty. If an interrogation, interview, or hearing takes place when an employee is not on duty,
that employee shall be compensated by cash payment for the time spent, including two hours of
travel time, at the rate of time and one-half. If a trial takes place when an employee who is a
witness is not on duty, that employee shall be compensated by cash payment for the time spent
including two hours of travel time, at the rate of time and one-half. If a trial takes place when an
employee who is an accused is not on duty, that employee shall be compensated by cash
payment for the time spent, including two hours of travel time, at the rate of straight time, unless
the trial was postponed by the accused for that employee's convenience or for the convenience of
that employee's counsel and/or that employee's union representative, in which case the accused
shall receive no compensation.

Section 2.

At the time an employee is notified to appear for interrogation, interview, trial or hearing at
Department headquarters, the Fire Department shall advise that employee either in writing, when
practicable, or orally to be later confirmed in writing of (1) the specific subject matter of such
interrogation, interview, trial or hearing; and (2) whether that employee is a suspect or
non-suspect. If notified orally, the employee shall be given a written notice before the
interrogation, interview, trial or hearing.

Section 3.

Notice of trial shall be in writing at least ten (10) days in advance of such trial, unless the
employee waives such notice or unless that employee applies or has applied for a service
retirement.

Section 4.

The employee who is the subject of interrogation, interview, trial or hearing shall be advised of
the name, rank, and unit of the officer in charge of the interrogation, interview, trial or hearing

19

**2010-2017 Firefighters**

20001

and of the name, rank and unit or other identification of all persons present connected with the interrogation, interview or hearing. The questioning of employees shall be of reasonable duration and the employee shall be allowed time for personal needs, meals and necessary telephone calls. Offensive or profane language shall not be used, nor shall the employee be threatened for failure to answer questions nor promised anything if the member does answer questions.

Section 5.

When an employee is a suspect in a departmental investigation or trial, the officer in charge of the investigation shall give the employee the following warning before the member is questioned:

I wish to advise you that you have all the rights and privileges guaranteed by the Laws of the State of New York and the Constitution of this State and the United States, including the right not to be compelled to incriminate yourself. You have the right to an attorney present if you wish. I wish to further advise you that if you refuse to answer any questions relating to the performance of your duties, you will be subject to dismissal from your employment with the City. However, if you do answer questions, neither your answers nor any information or evidence which is gained by reason of such answers can be used against you in any criminal proceeding. You are advised, however, that if you knowingly make any false answers or deceptive statements, you may be subject to criminal prosecution and disciplinary action by reason thereof.

Such employee shall be advised of the right to union representation. When the interrogating officer is advised by the employee that the member desires the aid of counsel and/or a union representative, the interrogation shall be suspended and the employee shall be granted a reasonable time to obtain counsel and/or a union representative, which time shall not be less than twenty-four (24) hours.

If it appears that the investigation may result in a disciplinary proceeding based on the employee's answer to questions or on the employee's refusal to answer, a stenographic or electronic record of the questioning of the employee shall be made unless the exigencies of the situation prevent such recording.

In the event that an employee is subject to charges by the Department, any such record shall be made available to the employee or the employee's representative. The cost of the recording shall be shared equally by the parties.

Section 6.

A. An employee shall not be questioned by the Fire Department on personal behavior while off-duty and out of uniform except that the Department shall continue to have the right to question an employee about personal behavior while off-duty and out of uniform in the following areas:

      i.     matters pertaining to official department routine or business;

20

**2010-2017 Firefighters**

20001

      ii.     extra departmental employment;
      iii.    conflict of interest;
      iv.    injuries or illnesses;
      v.     residency;
      vi.    performance as a volunteer firefighter;
      vii.   loss or improper use of department property.

B. If an employee alleges a breach of subdivision A of this section 6, the member has the right to a hearing and determination by the Impartial Panel within 24 hours following the claimed breach.

To exercise this right, the employee must request such determination at the time when an Official of the Department asks questions in an area which is disputed under subdivision A of this section. If the employee requests such determination, the member shall not be required to answer such questions until the Impartial Panel makes a determination.

Section 7.

All employees are reminded that failure to answer relevant questions may result in disciplinary action including dismissal from the Department.

Section 8.

In the course of an investigation or interrogation, an employee who is not a suspect is required to cooperate in the investigation of a complaint. Statements the member has made in the course thereof may not be used against the member in a subsequent proceeding in which the member becomes a suspect.

Section 9.

If an employee is found not guilty in a disciplinary hearing, the record of the proceedings shall not become part of that employee's personal record. An employee who is found not guilty shall have the right to examine that employee's personal record in the presence of an official of the Department after written request to the Department to ascertain compliance.

Section 10.

If the Department fails to comply with the provisions of this Article, any questions put to the employee shall be deemed withdrawn and the refusal to answer any such questions shall not be prejudicial to the employee. Withdrawal as herein described shall not preclude the Department from proceeding anew in the manner prescribed herein.

Section 11.

The employee shall have the right, at that employee's own expense, to have that employee's physician consult with the Department Medical Board after the examination and interview of the

**2010-2017 Firefighters**

20001

employee, but before the Departmental Board completes its record and makes its recommendation. Present practice regarding filing of medical statements and documentation shall continue.

Section 12.

If an employee is subpoenaed to testify before a governmental body up to a maximum of two employees "per day" in a proceeding, the employee shall be compensated by cash payment for the time spent testifying, plus two hours travel time, provided that no compensation be paid unless the employee notifies the Department that employee has received a subpoena within 72 hours after that employee has received it; or as soon as that employee has received it if the return date is within 72 hours thereafter. Any amounts received by the employee as witness fees shall be deducted from compensation received by the employee from the Department pursuant to this Section.

## ARTICLE XVIII - GRIEVANCE PROCEDURE

Section 1.

A grievance is defined as a complaint arising out of a claimed violation, misinterpretation or inequitable application of the provisions of this contract or of existing policy or regulations of the Fire Department affecting the terms and conditions of employment. A direct order by a Superior Officer, under all circumstances, must be carried out and objections raised at a later date through the formal grievance procedure. Prior to the formal presentation of the grievance, every effort shall be made to find ways and means of identifying and removing the cause of the grievance by discussions with the employee's immediate superior. In the event that any employee and/or the Union shall present a grievance, such grievance shall be handled in the following manner:

STEP I.    A. Within 120 days following the date on which the grievance arose, an aggrieved employee shall initiate the grievance, in writing, on the prescribed form to the Company Commander. The determination of the Company Commander passing on the grievance shall be in writing and a report shall be forwarded on the prescribed form to the Fire Commissioner, the aggrieved employee and the Company Delegate within five (5) days after the submission of the grievance. If the grievance is not resolved to the satisfaction of the aggrieved employee, the employee shall have the right to process the grievance to the next step in the grievance procedure.

B. The Company Delegate shall be the employee's representative at the first step in the grievance procedure.

STEP II.    A. An appeal from the Company Commander's determination at Step I shall be forwarded in writing on the prescribed form to the Borough Commander within five (5) days after the aggrieved employee receives a

22

**2010-2017 Firefighters**

20001

copy of the Company Commander's determination.

The Borough Commander shall schedule a Step II meeting which shall take place within seven (7) days after the filing of an appeal.

The Company Commander and the Battalion Chief on duty in the employee's Battalion on the date of the proposed meeting shall be notified of the meeting and directed to attend. The Borough Commander may direct the attendance of any subordinate officer or other witness within the Department, and shall consider any request by the grievant or the Union to direct the attendance of witnesses at the Step II meeting.

The determination of the Borough Commander passing upon the Step I appeal shall be in writing and a report shall be forwarded on the prescribed form to the Fire Commissioner, the aggrieved employee and representative within three (3) days after the hearing. If the grievance is not resolved at Step II, the aggrieved employee has the right to proceed to the next step in the grievance procedure.

B. A member of the Union's Executive Board shall be the employee's representative at the second step in the grievance procedure.

STEP III.   A. An appeal from the Borough Commander's determination at a Step II meeting must be forwarded in writing on the prescribed form to the Fire Commissioner within five (5) days after receipt by the aggrieved employee and the Union of a copy of the Borough Commander's determination. The Commissioner, the Chief of the Department and the Chief-in-Charge Bureau of Personnel and Administration and/or their designees and the aggrieved employee and representative shall meet within ten (10) days of the receipt of the appeal from the Borough Commander's decision at Step II. The parties shall work for a satisfactory resolution of the grievance through conference, negotiations and agreement. The Commissioner shall within five (5) days of the Step III meeting issue a determination, in writing, to the aggrieved employee and representative.

B. A member of the Union's Executive Board shall be the employee's representative at the third step of the grievance procedure. No more than four (4) members of the Executive Board are to attend a Step III meeting.

STEP IV.   If, after completion of all of the steps provided for above, the grievance has not been resolved, the Union solely shall have the right to bring such grievance to the Impartial Panel for arbitration in accordance with the applicable provisions of the New York City Collective Bargaining Law and Consolidated Rules promulgated by the Office of Collective Bargaining with respect to arbitration. Notice of the Union's intent to

23

**2010-2017 Firefighters**

20001

proceed to arbitration shall be served on the Commissioner of Labor
Relations within ten (10) days of receipt by the union of the decision of
the Commissioner or designated representative. In addition, the Employer
shall have the right to bring directly to arbitration any dispute between the
parties concerning any matter defined as a "grievance" herein. The
Employer shall commence such arbitration by submitting a written request
therefor to the Impartial Panel, with a copy to the Union, and the matter
shall proceed in accordance with the Consolidated Rules of the Office of
Collective Bargaining. The Impartial Panel shall hold a hearing within ten
(10) days after the Panel receives a request for arbitration at a time and
place convenient to the parties, and the Panel shall issue an award within
ten (10) days after the completion of the hearing.

## Section 2.

The time limits contained in this Article may be modified by mutual agreement. Any grievance
decision not appealed within the time limits prescribed in this agreement after receipt of the
determination of the appropriate department official shall not be subject to further appeal.

In the event that the Department or the City fails to comply with the time limits prescribed
herein, the grievance automatically shall be advanced to the next step.

## Section 3.

It is understood and agreed by and between the parties that there are certain grievable disputes
which are of a department level or of such scope as to make adjustments at Step I and Step II of
the grievance procedure impracticable, and, therefore, such grievance shall be instituted at Step
III of the grievance procedure. The Union may petition the Impartial Panel for leave to file a
grievance involving potential irreparable harm concerning safety and health directly at Step IV.
The Impartial Panel shall have the power to permit such grievance at Step IV for good cause
shown or direct said grievance to be instituted at Step III. If the Impartial Panel determines that
the grievance may be properly filed directly at Step IV, the City retains its right to assert all
defenses which may be properly raised at Step IV.
Section 4.

When possible, every effort shall be made to hold grievance hearings when a union
representative involved is on duty. However, time lost by union representatives and aggrieved
employees shall not be compensable.

## Section 5.

Grievances raised by Fire Marshals shall be processed according to the Grievance Procedure set
forth in this Article except as follows:

A.   In Step I, grievances shall be forwarded to the Deputy Chief Fire Marshal in charge of the
     member's base.

24

**2010-2017 Firefighters**

B.     In Step II, appeals shall be forwarded to the Chief Fire Marshal.

Section 6.

A copy of every Borough policy directive shall be sent to the Union when issued. If the Union
informs the Department that the Union believes that the Borough policy directive is in violation
of the terms of this agreement or of existing policy or regulations of the Fire Department
affecting the terms and conditions of employment, the Borough policy directive shall be
considered official department policy, unless the Department modifies or revokes such Borough
policy directive prior to its effective date.

Section 7.

Whenever the Department intends to alter an existing policy or program or to establish a new
policy or program, the Department shall give the Union at least fourteen (14) days notice of the
intended change or new implementation, except in situations when the Department must act
more quickly because of emergency or other good cause. The Department shall use its best
efforts to notify the union of the intended change between the hours of 9:00 a.m. to 5:00 p.m.,
and shall endeavor to provide said notice electronically. This shall not affect the Department's
right to implement or change such policies or programs nor the Union's right to oppose such
programs.


ARTICLE XIX - LABOR-MANAGEMENT COMMITTEE

Section 1.

The Employer and the Union recognize that cooperation between labor and management is
indispensable to the accomplishment of sound and harmonious labor relations and agree to
jointly maintain and support a Labor-Management Committee ("Committee").


Section 2.

The Committee shall consider and may recommend to the Fire Commissioner changes in
working conditions of the employees, including, but not limited to, health and safety issues.
Matters subject to the grievance procedure contained in this Agreement shall be appropriate
items for consideration by the Committee, but submission of a matter to the Committee shall not
affect the right to grieve the matter.

Section 3.

The Committee shall consist of six members. The Fire Commissioner and the President of the
Union shall each select three members, and may designate an alternate for each member
authorized to act in the absence of a member. Members shall serve for the term of this

25

**2010-2017 Firefighters**

20001

Agreement, provided, however, that the appointing party may remove members that party has appointed at any time. Vacancies shall be filled by the appointing party.

Section 4.

The Committee shall select a Chair from among its members at each meeting. The chairship of the Committee shall alternate between the members designated by the Fire Commissioner and the members designated by the President of the Union. A quorum shall consist of a majority of the total membership of the Committee. The Committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties. A written agenda of matters to be discussed shall be provided by the party calling the meeting at least one week in advance of the meeting, and the other party shall provide any additions to the agenda at least one day in advance. Minutes shall be kept of each meeting with responsibility for keeping minutes alternating between the members designated by each of the parties. Copies of minutes shall be typed and promptly distributed to all members of the Committee. The Committee shall make its recommendations to the Fire Commissioner in writing.

Section 5.

The Department and the Union shall use their best efforts to schedule two (2) labor-management committee meetings per month.

## ARTICLE XX – DELEGATES

The Union may designate a delegate for each company or special unit with 10 or more Firefighters or Fire Marshals who shall be the representative of the Union. Where there are more than 25 Fire Marshals in a location, the Union may designate additional delegates in a ratio of one delegate for each additional 25 Marshals at such location. The delegate shall perform the regular duties as an employee. A mutual made by a delegate to enable the delegate to attend a Union meeting shall be considered a variance and shall be exempt from the then-existing mutual policy.

The Fire Department shall make every effort to assist Company Delegates in providing coverage whenever Delegates are excused to attend UFA meetings. Only members who are available to perform duty at straight time salary shall be selected to replace Delegates whether selected by the Fire Department or an individual Delegate.

## ARTICLE XXI - NO STRIKE

The Union and the Employees shall not induce or engage in any strikes, slowdowns, work stoppages or mass absenteeism nor shall the Union induce any mass resignations during the term of the Agreement.

26

**2010-2017 Firefighters**

20001

## ARTICLE XXII - IMPARTIAL PANEL

As soon as practicable after the execution of this Agreement, a permanent rotating Panel of a minimum of three (3) Arbitrators shall be established, drawn from the official panel of the Office of Collective Bargaining, as agreed to by both parties, to act during the term of this Agreement. The members of the Panel shall be assigned on a rotating basis to arbitrate in all instances where arbitration is called for under the terms and conditions of this Agreement.

The assigned Arbitrator shall hold a hearing at a time and place convenient to the parties and a transcript shall be taken unless the taking of a transcript is waived by both parties. The Arbitrator shall attempt to issue an award within ten (10) days after the completion of the hearing.

Should any member(s) of the three-person rotating Impartial Panel resign, refuse to act or be incapable of acting or should any of the offices become vacant for any reason, the parties shall immediately designate another person(s) to act on such Impartial Panel. If the parties cannot agree on the successor(s), then arbitrations under the grievance procedures of this Agreement shall be held pursuant to the Consolidated Rules of the Office of Collective Bargaining.

## ARTICLE XXIII - DETAILS TO OTHER UNITS

<u>Section 1.</u>

A.   In the event that a Firefighter or Fire Marshal is detailed to a unit other than the unit to which that employee is permanently assigned, if that employee is required to report at the other unit at the start of a respective tour (e.g., 0900, 1800, etc.), that employee shall receive compensation for travel to the unit to which that employee is detailed at the rate of time and one-half for 45 minutes of travel time if the detailed unit is within the same borough as that employee's permanent unit or 1-1/4 hours if the detailed unit is in a different borough than that of that employee's permanent unit.

B.   In the event that a Firefighter or Fire Marshal is detailed to a unit other than the unit to which that employee is permanently assigned and that employee cannot return to the permanent unit within a regular tour of duty (e.g. by 1800, 0900, etc.), that employee shall receive compensation for travel to the permanent unit at the same rates as stated in paragraph A hereof.

C.   In any event, if the Department transports such detailed Firefighter or Fire Marshal, then that employee shall receive compensation at time and one-half only for the actual travel time outside of that employee's regular tour of duty.

<u>Section 2.</u>

In the event that a Firefighter is detailed for more than a single tour and is entitled to receive compensation for travel time, the Firefighter so detailed shall receive compensation for travel time in the manner prescribed in Section 1 of this Article only for the beginning of the first and

**2010-2017 Firefighters**

20001

the end of the last day of such detail.

Section 3.

A Firefighter or Fire Marshal shall not be eligible for compensation for travel time as provided in this Article if:

A.    the detail is for a training assignment of any type or to any training location;

B.    the Firefighter is detailed while on light duty status;

C.    the Firefighter who is detailed is assigned to the limited service squad;

D.    the Firefighter is detailed from a staffing pool;

E.    the Firefighter who is detailed earns overtime on the detail;

F.    the Firefighter is detailed to a company in the same quarters as that employee's own or in adjacent quarters.

Section 4.

When computing overtime compensation for travel time as required by this Article, the basic hourly rate excluding all premiums shall be used.

Section 5.

The Fire Department agrees to continue its practice of not detailing firefighters to a unit for the purpose of placing a unit on-line for CFR-D purposes.

## ARTICLE XXIV - LINE-OF-DUTY DEATH BENEFIT

In the event that an employee dies because of an injury incurred through no fault of that employee's own while actually responding to, working at or returning from an alarm, a payment of $25,000 will be made from funds other than those of the Retirement System in addition to any other payment which may be made as a result of such death. Such payment shall be made to the estate of the deceased.

## ARTICLE XXV - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, that employee's estate shall receive payment in cash for the following as a death benefit:

28

**2010-2017 Firefighters**

A.   All unused accrued annual leave up to a maximum of 54 days credit;

B.   All unused accrued compensatory time earned subsequent to March 15, 1968 which is verifiable by official Department records up to a maximum of two hundred (200) hours.

## ARTICLE XXVI - PARKING FACILITIES

To the maximum extent practicable and consistent with City policy, parking spaces up to a maximum of six spaces per company, will be made available for the cars of employees adjacent to, part of, or as close as possible to firehouses, and such spaces will be marked appropriately. The Department will issue appropriate parking permits for the designated spaces. The UFA shall notify the Department, the Transportation Administration, and the Commissioner of Labor Relations of any requests for parking spaces. The City shall have 10 days to respond to such requests. If the response is a denial, it shall be specific as to the reasons. If the UFA disagrees with any such denial, it shall inform the Commissioner of Labor Relations as to the specific reasons for its disagreement, and may refer the matter to the Impartial Panel for advisory arbitration.

## ARTICLE XXVII - MEAL PERIODS

In order to improve the efficiency, productivity, health and morale of Firefighters, existing practices regarding meal periods shall be modified as follows:

Each unit shall be scheduled to receive one half-hour meal period in each tour as described in AUC-Response to fires and other emergencies by a unit during its meal period shall be governed by the provisions of that circular.

## ARTICLE XXVIII - OCCUPATIONAL HEALTH AND SAFETY

A.   All protective gear required by the Department shall be provided without cost to the firefighter in a quartermaster system. The Department shall also provide dress uniforms and work station uniforms via the quartermaster system.

In addition, effective August 1, 2005, the City shall provide a $450 per year per firefighter cleaning allowance. This provision applies only to firefighters.

B.   The City shall pay to each Fire Marshal a uniform allowance of $1,100 per annum, to be paid in accord with existing standard procedures. Effective July 31, 2008, the amount paid by the City to each Fire Marshal for a uniform allowance shall be increased by $1,100 per annum in accordance with existing standard procedures.

29

**2010-2017 Firefighters**

20001

## ARTICLE XXIX - PERFORMANCE COMPENSATION

The City acknowledges that each of the uniformed forces performs an important service that reflects the diverse missions of the City's uniformed agencies. In order to reward service of an outstanding, exceptional nature, each of the uniformed agencies will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments. The City will notify and discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for the granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law. An employee can receive no more than one payment annually.

This provision shall not affect any existing productivity programs covered in any existing collective bargaining agreements. Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## ARTICLE XXXI - APPLICABLE LAWS

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York, as amended.

## ARTICLE XXXII - SAVINGS CLAUSE

Should any part of this Agreement or any provision herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions thereof.

**2010-2017 Firefighters**

20001

WHEREFORE, we have hereunto set our hands and seals this 17ᵗʰ day of January, 2020

CITY OF NEW YORK

BY: _____
RENEE CAMPION
Commissioner of
Labor Relations

UNIFORMED FIREFIGHTERS
ASSOCIATION

BY: _____
GERARD FITZGERALD
President

APPROVED AS TO FORM:

BY: _____
ACTING CORPORATION COUNSEL

DATE SUBMITTED
TO THE FINANCIAL CONTROL BOARD:

UNIT:  FIREFIGHTERS

TERM:  August 1, 2010 to July 31, 2017

OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL                    CONTRACT

NO:
20001

DATE:
January 17, 2020

31

**2010-2017 Firefighters**

20001

Case 1:20-cv-05441-KPF   Document 10-10   Filed 07/17/20   Page 37 of 92

## SCHEDULE A.

## JOB DESCRIPTION - FULL DUTY FIREFIGHTER

1.      Fire and Emergency Operations.

Under immediate supervision of company officers a Firefighter while engaged in fire and emergency operations performs emergency duties varying from those requiring minimal individual judgment to those requiring some independent judgment but in accordance with prescribed methods and procedures. These duties are performed in responding to, working at and returning from fire and emergency operations. They shall include but are not limited to:

   a)      Monitoring all alarm circuits and equipment, recording of all alarms received and proper performance of housewatch duty.
   b)      Operation of apparatus and other automotive equipment of the department.
   c)      Rescue, search, ventilation, laddering, overhauling and forcible entry.
   d)      Stretching of hose lines, directions of streams and use of nozzles.
   e)      All chauffeuring duties and related duties.
   f)      Operations of small boats, deckhands and mariner duties on fireboats.
   g)      Use of tools and equipment made available for accomplishment of duties.
   h)      Patrolling and responding, as necessitated by fire and/or emergency conditions and fire protection needs.

2.      Fire Prevention Operations.

Under normal supervision of company officers a Firefighter individually or collectively with other Firefighters, performs inspectional, investigational, educational and regulative duties in the area of fire prevention operations. These activities involve separate procedures and the making of decisions requiring individual judgment but in accordance with prescribed methods and procedures and/or direction of immediate superiors. This shall include but is not limited to:

   a)      Inspection of buildings, structures, tunnels, enclosures, vessels, piers, terminals, bridges, carriers, containers places or premises including fire protective equipment contained therein.
   b)      Dissemination of information and education to the public.
   c)      Investigation of perilous or fire breeding conditions.
   d)      Issuance of summonses, violation orders or referrals to other city agencies as required by law.
   e)      Recording and clerical procedures in connection with all of the above items.

This shall exclude but is not limited to:

   a)      Electrical inspections, except for those which create fire breeding potentials.
   b)      Alarm Box inspections, except in cases of emergencies affecting fire alarm

32

20001

circuits.

c)     Clerical, other than those specifically related to required duties.

3.     Quarters and Apparatus Operations.

Under general supervision of company officers a Firefighter performs routine preventive maintenance operations in areas of quarters and apparatus. Work is performed with all methods and procedures defined and duties assigned at frequent intervals under complete supervisory controls. This shall include but is not limited to:

a)     Apparatus and equipment as noted in Chapter 13 of the Regulations for the Uniformed Force.
b)     Company quarters as noted in Chapter 19 of the Regulations for the Uniformed Force.
c)     Marine Administration Division as noted in Chapter 14 of the Regulations for the Uniformed Force.

Certain specific quarters and apparatus operations have been delegated to Civilian personnel within the civil service framework where budget authorization has been obtained. Examples of such inclusions are listed below:

a)     Tire changing for heavy apparatus, as opposed to passenger vehicle type.
b)     Major painting and major chipping of vessels, and major painting in quarters or for apparatus.
c)     Removal of rubbish work after completion of work by contractors.
d)     Major mechanical repairs, such as brake adjustments and clutch repair.
e)     Assisting in contract work on Fire Department buildings.
f)     Moving and vanning of furniture and equipment.

However, in an emergency situation Firefighters may be required to perform any duty assigned, including duties listed above, when the Fire Commissioner or the Chief of Department believes that the exigency of the situation requires the performance of such duties.

4.     Training.

Under direct supervision of superior officers, Firefighters engage in training and drill activities to attain and maintain that degree of knowledge and skill required to perform their proper functions as Firefighters in the Fire Department of the City of New York.

20001

5.    General Department

Under normal supervision of company officers a Firefighter shall be responsive to the immediate demands of and the service function to the general public and to the lawful orders and directives of that employee's immediate supervisors and the regulations for the Uniformed Force as promulgated by the Fire Commissioner.

6.    Limiting Clause

Nothing herein contained is intended to, nor shall it, contravene any law of the State and/or the City of New York or the rules and regulations of the Fire Department of the City of New York

20001

SCHEDULE Aa

Job Description - FIRE MARSHAL (UNIFORMED)

Duties and Responsibilities
Under supervision, performs responsible work in the investigation of the causes, circumstances and origins of fires and/or explosions; performs related work including but not limited to:

a)      Looks for and examines evidence at the fire scene to determine origin and cause of fire; collects, preserves, and requests analysis of evidence; completes the required forms; directs and/or coordinates photographing fire scene and related evidence; analyzes and interprets laboratory results to determine its potential value and relevance to the investigation.

b)      Performs mobile and fixed surveillance, including the use of electronic devices, to gather intelligence, to identify, locate and apprehend suspects and to locate witnesses; prepares and serves subpoenas to ensure the appearance of witnesses and production of records relevant to the investigation; administers oaths to witnesses; obtains sworn oral and/or written testimony from witnesses; interviews witnesses and/or suspects to obtain information about investigations.

c)      Applies for and executes search and arrest warrants; effects arrests of suspects; transports suspect to police precinct and central booking and completes related paperwork, including On-Line-Booking Sheet.

d)      Gives testimony as expert and lay witness at hearings, jury proceedings, and criminal and civil trials.

e)      Operates star-wars handie-talkie and fire department's radio to receive and transmit information.

f)      Makes recommendations to immediate supervisor regarding the status of investigations.

g)      Coordinates investigative activities with various federal, state, local and private agencies.

h)      Provides guidance and assistance to recently trained and graduated fire marshals.

i)      Prepares fire investigation reports, including the completion of related forms.

j)      Coordinates, prepares and manages a schedule for daily activities.

k)      Maintains and safeguards personal firearms and equipment and demonstrates proficiency in the use of firearms, as required by department's policy.

l)      Ensures the proper maintenance of department vehicles and equipment.

35

20001



www.nyc.gov/fdny

**Daniel A. Nigro**
**Fire Commissioner**

ATTACHMENT A

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23 Street
New York, NY 10007

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

     All overtime worked shall be paid no later than sixty days after the end of the month in which the overtime is worked. Any errors will be paid within fourteen days of the payday on which the overtime was to have been paid.

                         Very truly yours,

                         Daniel A. Nigro
                         Commissioner

36

**Fire Department, City of New York**

9 MetroTech Center, Brooklyn New York 11201-3857

20001

ATTACHMENT B

Based upon the July 28, 1978 Report of the Fire Department Medical Practices Review Committee ("Committee") the parties agree as follows:

1. The underlined portions of the annexed Recommendations of the Committee shall be implemented immediately, and all legal steps and administrative orders and directives necessary for such implementation shall be effectuated forthwith.

2. To the extent the remaining recommendations require further study, consultations, or contact with other institutions or persons, such actions shall be undertaken as soon as possible, pursued vigorously and the recommendations implemented in accordance with the result of such actions as expeditiously as possible.

3. The Ongoing Panel recommended by the Committee shall be the original Committee.

(1)    Finding:

The Fire Department Medical Division in general is performing its required functions as prescribed by the Department and has the interest of the health of the members of the Department as its overall objective. Our evidence indicates that many members of the Department are in favor of retaining this service. However, the Committee finds that certain problems exist which need prompt resolution.

Recommendation:

The Fire Department Medical Division should be maintained and specific changes made as recommended below.

(2)    Finding:

Some members of the Department and their Union leadership believe that the Medical Division has acted more as an arm of management's absence control efforts rather than in the interest of the health and well-being of the Firefighters. This negative opinion tends to be based on a series of incidents occurring over a period of time, although it is suggested that it became accentuated in the years just prior to this administration. This negative perception is not directed against all of the medical officers, staff, or practices of the Medical Division, but tends to focus on rather specific recurrent types of incidents.

37

20001

Recommendation:

It is clear to the Committee that so long as the Medical Division remains part of the Department and is responsible for fitness for duty evaluations, inevitably a conflict of interest will be perceived by some. The leadership of the Department should reinforce the need for concrete actions to reverse the negative perceptions voiced by a number of patients. Patients at all times must be addressed and treated with respect. Inappropriate professional behavior must be effectively dealt with administratively. The Department should give high priority to minimizing this perception by positive and ongoing actions. This report hopefully points to some beginning directions but cannot be the end of a new Departmental effort.

(3)    Finding:

Physicians reporting to fires are sometimes delayed for a variety of reasons. Furthermore, fire calls during the day when the clinic is in session, depletes the clinic's medical staff. In addition, the areas of medical subspecialization of some of the medical officers appear not to be those urgently required at the scene of a fire.

Recommendations:

(a) Medical officers on call, particularly during the day time hours, and at times of heavy traffic congestion should not be relied upon for prompt responses to the scene of a fire or to fire houses. Their later response and night time coverage may still be desirable as a back-up resource or during a transition to the arrangements recommended below (b).

(b) Specific, preselected hospitals, preferably those with relevant tertiary care capabilities, should respond to the fire scene with physician(s); either a senior level resident or attending physician specially trained and oriented in fire injuries. A physician in internal medicine trained in cardiopulmonary problems, smoke inhalation, etc., and/or one trained to deal with trauma such as fractures, sprains, burns, etc., should respond. Consideration should be given to the possible use of the City's MERVANS, and the Emergency Medical Service should participate in planning this response system.

(c) If possible, standardized criteria should be developed to assist in more uniform medical evaluation and treatment planning.

(d) It is desirable that for every tour of duty, at each fire house a trained EMT (Emergency Medical Technician) be on duty. The member should be specifically trained in assisting at the scene of a fire in the emergency treatment and triage of common fire fighter injuries and illnesses.

20001

(4)    Finding:

On occasion Firefighters injured in line of duty have been taken to hospitals not appropriate for the specialty care they require.

Recommendation:

Specific pre-selected institutions with appropriate specialized tertiary care resources should be identified and used promptly for particular injuries - (e.g. eye injuries). If a Firefighter is initially brought to another institution and the determination made that a specialty service is required, after stabilization, the member should be promptly moved to the appropriate institution. A list of these specialty services should be made and updated annually. If the Emergency Medical Services can be of assistance in this effort they should be so involved.

(5)    Finding:

On occasion there appears to be undue delay in authorizing or arranging for appropriate specialty consultation for sick or injured Firefighters.

Recommendation:

Procedures and policies should be established to assure prompt referral of any individual for specialty consultation. A relationship should be established with a number of institutions and individuals expert in their fields and capable of in depth evaluation and treatment. Where possible the consultants should be located in each borough.

(6)    Finding:

The medical officers' visits to hospitals is reportedly sporadic and on occasion the patient is disturbed rather than helped.

Recommendation:

A standard procedure should be established and followed with regard to prompt and regular visits to hospitalized Firefighters. The medical officer should, in consultation with the responsible physician, review the medical records and history and make suggestions with regard to the patient's treatment, discharge or other disposition. If transfer to another facility is deemed necessary, it should be expedited. In the event of a disagreement between the responsible physician and the medical officer, the Firefighters should be advised of this and counseled as to the reason for the medical officer's recommendation. If necessary a third party specialist should be called promptly. In no event should a patient be subjected to harsh physical or mental

20001

treatment. Problem cases should be seen by the Chief Medical Officer whenever necessary.

(7)  Finding:

There are certain routine policies and practices of the Medical Division and the Department that appear to be unnecessary and potentially counter-productive.

Recommendations:

(a) There do not seem to be compelling reasons for the medical officers to see Firefighters who have themselves determined that they are sufficiently recovered from an acute short term illness to return to duty. This procedure should be eliminated and replaced by self-declaration by the Firefighters with the concurrence of his commanding officer.

(b) A procedure should be established to avoid frequent visits to clinic for routine check-ups in the case of intermediate term illness or injuries such as fractures or coronaries. An initial evaluation of each case and consultation with the private physician should enable the establishment of a reasonable recovery period. Toward the end of this pre-determined period a re-evaluation, if necessary in person, should be performed. A weekly desk audit of these patients should be formed and appropriate appointments and consultations scheduled. Specialists selected by the Department and located in each borough could be delegated the responsibility to review and recommend duty status in their field of expertise.

(c) Uniformity requiring that a non-bedded sick or disabled Firefighter remain at home while on sick leave should be discontinued, particularly in instances of illness or injuries with prolonged recuperation periods.

(d) Surprise visits by physicians for the purpose of determining whether a Firefighter is at home should be discontinued. This "truancy" function is not an appropriate medical responsibility.

(e) The elimination of physician visits at home for purpose of return-to-duty status determination should be evaluated in a pilot study to ascertain whether this procedure in fact results in a significantly more rapid return to duty.

(8)  Finding:

The Medical Division's function in review of health status and duty fitness evaluation is necessary but should not be its sole objective. The Medical Division should also provide services of primary care treatment for minor illnesses as well as certain other evaluation, treatment, rehabilitation and preventative services. These health services, if available, would

20001

result in more rapid recovery or actual avoidance of illness, injury or disability both short and long term. They would undoubtedly result in an improved perception of the Department's Medical Services. In the Committee's opinion, some of these services will be reimbursable by third party insurance.

Recommendations:

(a) Minor illness and injuries should be evaluated and treatment initiated by the medical staff. Full-time seven days a week primary care physicians and nurse practitioners or physician assistants, trained and experienced in primary care, should be selectively recruited. The current mix of subspecialists in the Department seems somewhat inappropriate and should be re-evaluated.

(b) Back ailments and other musculoskeletal problems are of high incidence in the Department. A special group of physicians and support staff (including physio-therapists) should be developed to diagnose, treat and provide rehabilitation programs. This program should be designed in consultation with individuals expert in this area. Appropriate members of the current medical staff may be suitable for assignment to this program but it will require additional expert medical and auxiliary staff. A special site will be required which could be in the clinic building. Establishing this program at another site may be considered, including the possibility of a health care institution based facility. Eventually, depending on workload, additional decentralized sites may be needed.

(c) A hypertension screening and treatment program should be developed and implemented for members of the Department, in consulting with individuals familiar with such programs. It should be staffed by appropriately trained and experienced physicians and nurse practitioners. This program could initially be situated in the clinic area, and ultimately depending on workload, may be decentralized.

(d) A cardiac evaluation and rehabilitation program modeled after existing programs should be developed. This program should be made available to members of the Department with cardiac illnesses.

(e) The physical re-examination program initiated by the Department is a commendable first step towards health maintenance. This program should be expanded to provide complete examinations and appropriate laboratory studies and should be integrated with the programs noted above.

(9)    Finding:

The clinic area is physically uncomfortable and impersonal. Waiting time is often

41

20001

prolonged. For some members, visits to the clinic are made more difficult because of lack of nearby parking.

Recommendations:

(a) <u>Prompt action should be given towards improving the environmental qualities of the clinic and related facilities. The waiting area should be redesigned to create a more comfortable and warm atmosphere. Some of the modern health institutions can provide suitable models.</u>

(b) <u>Individual scheduled or block scheduled appointments at the clinic should be implemented to avoid prolonged waiting times.</u>

(c) If possible arrangements should be made to provide parking facilities for Firefighters when they must visit the clinic.

(10) Finding:
The organization, structure and staff utilization of the Medical Division are not optimal for the Division to accomplish its goals.

Recommendations:

(a) Serious consideration should be given to reorganizing the Medical Division consistent with the findings and recommendations of this Committee. The recruitment of an Administrator, preferably a physician, with practical experience in primary ambulatory care should be aggressively pursued. The Committee believes this would assist in the implementation of these recommendations.

(b) Nurse practitioners and/or physician assistants should be employed to serve in the clinic to assist in the work-up and examination of all patients and the staffing of the programs recommended above. Recruitment of these individuals should focus not only on their professional skills and experience but also on their ability to help create a more positive atmosphere. The current nurse utilization does not appear to provide critically needed services. The maintenance of this staff may not be essential unless they can be effectively integrated into the proposed structure.

(11) Finding:

There is need for the development of a process by which the quality of medical care provided to the members of the Department can be evaluated on an ongoing basis.

42

20001

Recommendations:

(a) <u>A systematic Departmental recording and analysis of patients' complaints should be established to evaluate progress and to permit prompt corrective action. A patient satisfaction questionnaire of the Medical Division's performance should be developed to enable regular measurement of the Medical Division's performance and to assist in making necessary changes. To the degree that expectations and practical realities do not coincide, effective communication and education must be provided.</u>

(b) <u>An ongoing medical care review panel independent of the Medical Division should be established to assist the Department in monitoring the quality and nature of its medical services. This panel, which should be of the nature of a medical advisory board to the Commissioner, will help assist him in evaluating the quality of medical services, recommend changes to improve these services, and help assess their implementation. The panel should meet on a regular basis (at least quarterly), and receive relevant reports and information as to the medical services provided, and make appropriate recommendations to the Commissioner.</u> While it is not within the scope of this Committee's mandate, it is not unreasonable to suggest that some mechanism be established to assist other agencies in the ongoing evaluation of the medical services they provide to their employees.

20001



**Daniel A. Nigro**
**Fire Commissioner**

## ATTACHMENT C

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23 Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

An employee shall not lose an adjusted tour or annual leave carried over into the succeeding year, but not taken during that year because of a line-of-duty injury.

Very truly yours,

Daniel A. Nigro
Commissioner

20001

44

**Fire Department, City of New York**
9 MetroTech Center, Brooklyn New York 11201-3857



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

ATTACHMENT D

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23 Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

For the term of this Agreement, "A delegate who is a Firefighter first grade and who has served as a delegate for six months shall not be involuntarily transferred because of activities protected under the Taylor Law and the NYCCBL as a delegate on behalf of the Union."

Very truly yours,

Renee Campion

45

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT E

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23 Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

The City and the UFA agree that all fire companies adjacent to police stations shall have access to heating and cooling controls located in police stations or that such companies shall have separate heating and cooling controls. To accomplish this goal, the City agrees to make every effort to resolve this problem by communications with the Police Commissioner and any other relevant City officials to establish procedures and programs for resolving this problem.

The City and the UFA further agree that all fire companies should be provided with adequate ventilation. The Fire Department intends to continue installation of apparatus floor ventilation systems according to the schedule that has been furnished to the Union, to consult and discuss with the Union any problem which might delay the scheduled completion of such installation, and to continue to maintain in good order those ventilation systems which have been or shall be installed.

Very truly yours,

Renee Campion

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

ATTACHMENT F

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23 Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

The City of New York recognizes its ongoing obligations under Article XXX of the 1980-82 Agreement with respect to parking spaces.

The City will use its best efforts forthwith to fulfill those obligations, and will keep the Union fully apprised of its efforts to secure such parking.

Very truly yours,

Renee Campion

47

20001



www.nyc.gov/fdny

**Daniel A. Nigro**
**Fire Commissioner**

## ATTACHMENT G

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23 Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

Entitlement to the existing allowance for cleaning and maintenance of personal equipment shall accrue upon entry to that effect by the Company Officer in the Company Journal.

Very truly yours,

Daniel A. Nigro
Commissioner

48

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT H

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23 Street
New York, NY 10010

                                    Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

Upon execution of this agreement the parties agree to the extension of the fire salvage program
to all ladder companies citywide.

                                    Very truly yours,

                                    Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA

By: GERARD FITZGERALD

2 0 0 0 1



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT I

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re:     2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This letter will confirm our mutual understanding regarding the January 30, 1996 Stipulation of Settlement in BCB Case No. 1265-90, known as the Roster Staffing Agreement. The parties agree to extend the Roster Staffing Agreement by amending the January 31, 2006 dates set forth in the Eleventh paragraph to read January 31, 2011.

This will also confirm the parties' understanding with respect to the Hazardous Materials Technical units that are the subject of Arbitration No. A-10735-04. The parties agree that these units shall not be counted and shall not be included in the C+60 engine companies under the Roster Staffing Agreement.

Effective January 1, 2003, 96 hours of roster staffing overtime for UFA Board Members to be used consistent with the Roster Staffing Agreement.

The union agrees to withdraw, with prejudice, the cases docketed as BCB-2928-11, A-13849-11. The union agrees to withdraw the case docketed as A-13910-11 without prejudice to re-filing should a similar circumstance arise in the future.

This will confirm our mutual understanding that a labor-management committee be established with representatives of the Fire Department and the UFA that will meet on a regular

50

20001

basis to monitor and study all aspects of the current roster staffing program including safety issues and any issues regarding the calculation of medical leave. The committee shall develop and make recommendations to the Fire Commissioner.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF FDNY:

By: Daniel A. Nigro

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

51



# OFFICE OF MUNICIPAL LABOR RELATIONS

118 CHURCH STREET, NEW YORK, N.Y. 10007

**ROBERT W. LINN**
*Director*

**JAMES P. HANLEY**
*1st Deputy Director*

November 28, 1989

Professor Walter Gellhorn
Columbia University Law School
435 West 116th Street
New York, New York 10027

RE: BCB-1117A-8A

Dear Professor Gellhorn:

The City of New York has reviewed the position it took in the above-enumerated impact proceeding before you and has decided to modify its Roster Manning Proposal.

The Roster Manning Proposal described by the City in that proceeding is modified as follows:

The original proposal detailed at the hearings used as a starting point the current budgeted headcount (budgeted headcount represents an average number of firefighters on payroll over a one year period) of 9262. That headcount will be brought down by 200 to 9062 to fully realize the budgetary savings from the extra 39.6 hours per firefighter per year resulting from the recent impasse award. In the original proposal, the City assumed that it would need to add 318 firefighters to the budgeted headcount which would have brought the headcount up to 9280.

Under the revised proposal, each firefighter except for probationary firefighters in their first six months of

-2-

employment and firefighters on final leave will be guaranteed 96 hours of overtime opportunities in exchange for which the authorized budgetary headcount will be reduced to 8921. As soon as the Department is able to implement the previously announced closing of five battalions, the headcount will be reduced to 8896.

The 96 hours of overtime will be worked according to a schedule established by the Department and must be actually worked by each eligible firefighter to receive the overtime compensation. Mutual exchanges of these overtime tours will only be permitted where the exchange is completed within seven days of the scheduled overtime tour. Full duty firefighters will be assigned to overtime on the backstep and light duty firefighters to administrative overtime. The Department may, in its discretion, schedule the overtime during low availability periods.

In all other respects, the City's proposal and position remain the same.

The substance of this proceeding is whether the City's roster manning proposal would have a practical impact on the workload and safety of firefighters on the "backstep." While we do not believe that the UFA proved its case, we nevertheless reviewed the proposal to see if additional steps could be taken to address the UFA's concerns.

The City believes that the modifications set forth above do address these concerns especially as the Fire Department intends to schedule the 96 hours of overtime for each active firefighter at the times that the roster manning model predicts low availability. By now having the flexibility to provide additional manpower at the times when the UFA argues it is needed the most, the revised or modified roster manning proposal alleviates any alleged claim that the program has a practical impact on workload or safety. Also the additional pay each active firefighter will be eligible to receive from the 96 hours of overtime will adequately compensate them for the overtime pay these firefighters may lose as a result of the implementation of the original roster manning program.

A copy of this letter is being "faxed" to Mike Abram.

Very truly yours

Robert W. Linn

c: Michael Abram

08622, p.65-66

Oct-29-2002 00:50am   From-CERTILMAN BALIN                    +5162967111             T-602  P.012/012  F-848



# THE CITY OF NEW YORK
## OFFICE OF LABOR RELATIONS
40 Rector Street, New York, N.Y. 10006



**JAMES F. HANLEY**
*Acting Commissioner*
**CAROLINE I. SULLIVAN**
*Deputy Commissioner*

January 30, 1996

Thomas Von Essen, President
Uniformed Firefighters Association
204 East 23rd Street, 5th Floor
New York, NY 10007

Dear Mr. Von Essen:

This is to clarify paragraphs *sixth and seventh* of the Stipulation of Settlement between the parties, dated January 30, 1996, resolving issues in Case # BCB-1265-90. The daily medical leave is calculated as follows:

Number of scheduled Firefighter hours missed due to medical leave divided by
The product of the number of active Firefighters on payroll multiplied by 5.76*.

* The value of 5.76 represents the average number of hours a Firefighter is scheduled to work on a daily basis according to the current "25 Group Chart" pursuant to Section 15-112 of the New York City Administrative Code. The value is derived by dividing 144 (hours) by 25 (days).

Sincerely,

James F. Hanley

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

ATTACHMENT J

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re:     2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that the parties agree to discuss the assignment of duties to firefighters which deviate substantially from the job description attached to the contract. This shall replace and be the successor to Article XX in the 1991-95 contract.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

55

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT K

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 Agreement

Dear Mr. Fitzgerald:

The City reaffirms its commitment to the concept of parity which it defines as basic maximum salary among uniformed employees.

Very truly yours,

Renee Campion

56

20001

 **Office of Labor Relations**

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT L

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York NY 10010

### Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

The City and the UFA recognize that pursuant to Administrative Code section 12-127, the City is obligated to pay for the cost of line of duty injury prescription drugs for UFA members. The parties further recognize that a significant number of UFA members have previously utilized the UFA Health and Welfare Fund to pay for these prescription drugs without reimbursement by the City. Up to the adoption of the new program outlined below, the UFA agrees to waive any and all claims for the reimbursement of the cost of said line of duty injury prescription drugs.

Effective as soon as practicable on or after September 1, 2007, members injured in the line of duty who require medications to treat the illness or injury as authorized by the Bureau of Health Services will have all related costs of such medications fully covered by the Fire Department.

The Fire Department reserves the right to determine the means, methods and procedures by which such prescription drugs shall be paid and/or reimbursed including, but not limited to, the selection of participating pharmacies and/or mail order services, and the means of payment and/or reimbursement, e.g., by prescription drug card or similar mechanism.

20001

The Fire Department shall provide thirty (30) days notice to the Union prior to effecting any changes in the program.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

58



www.nyc.gov/fdny

**Daniel A. Nigro**
Fire Commissioner

## ATTACHMENT M

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that a labor management committee will be established with representatives of the Fire Department and the UFA to study and review the current grievance procedure with the intent of developing procedures to expedite the process.

Very truly yours

Daniel A. Nigro
Commissioner

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

59

2 0 0 0 1

**Fire Department, City of New York**
9 MetroTech Center, Brooklyn New York 11201-3857



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT N

Gerard Fitzgerald, President
Unformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: UFA 2010-2017 Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that a labor management committee will be established with representatives of the City and the UFA to study and make recommendations regarding safety issues.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

60

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT O

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that an agreed upon procedure will be set up to implement voluntary payroll deductions as requested by the UFA.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

61

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT P

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

### Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

Pursuant to the Impasse Award in I-193-88A, the parties agree that they are bound by Signal 10-51 - Suspension of Outside Activities set forth in Fire Department Order No. 119, dated August 25, 1989, (as modified in Fire Prevention Manual Chapter 3, Addendum 2, section 4.1.2, revised December 19, 2006) during the term of the 2002-2006 Agreement.

Very truly yours,

Renee Campion

20001

## ATTACHMENT Q

TO:       All Officers

FROM:     Chief of Department

RE:       Use of Department Vans and Spare Chiefs' Cars


In order to clarify existing policies regarding assignments of firefighters to operate Department Vans and Spare Chiefs' Cars whereby manning is reduced below minimum manning levels your attention is called to the following guidelines set forth in Cases Nos. A-830-79 and A-840-79.

Minimum manning may not be reduced in the following situations:

1.   Messenger Duty

Department Vans and Spare Chiefs' Cars may not be used for messenger duty between command locations and firehouses when it reduces minimum manning. Non-emergency messages, including Department orders and directives, may not be carried between divisional headquarters and divisional headquarters and command headquarters by Department Vans and Spare Chiefs' Cars in a manner that reduces minimum manning.

2.   Transportation of Non-Firefighting Equipment

Department Vans and Spare Chiefs' Cars may not be used to transport non-firefighting equipment between locations, including firehouses, borough and divisional headquarters and repair shops when it reduces minimum manning and no emergency requires such use.

3.   Transportation of Apparatus and Equipment

Department Vans and Spare Chiefs' Cars may not be used to transport firefighting apparatus or equipment when it reduces minimum manning and no emergency exists except that firefighting equipment requiring immediate repair or replacement as a result of loss or damage during a tour are not included. Scheduled inspection, maintenance, repair or replacement on a regular basis, particularly when items are accumulated until a number of items are available or until a particular date is reached, is prohibited. Examples of this category are movement of spare apparatus to and from Department shops and accumulation of radios for repair on a regular scheduled basis.

A company that is out of service may use Department Vans and Spare Chiefs' Cars to obtain spare apparatus. However, the movement of broken down apparatus, the "jockeying" of vehicles from one location to another until the repair shop is capable of receiving those vehicles, and the return of the apparatus from the repair shop in a manner that reduces minimum manning when there is no emergency is not permissible. A company may use Department Vans and Spare Chiefs' Cars to obtain vital and unique tools essential to firefighting duties which require immediate replacement, e.g., power saws, generators and Hurst tools.

2 0 0 0 1

4.    Delivery of Department Forms, Records, or Regular Payroll

Delivery of Department records, forms and regular payrolls among command headquarters or to firehouses which reduces minimum manning is prohibited when no emergency exists.

5.    Transportation of Personnel

Department personnel and other persons may not be transported in a manner which reduces minimum manning when no emergency exists.

Routine movement of uniformed personnel for foreseeable or planned reasons, such as interviews, the transportation of firefighters from fires with non-serious injuries, when ambulances should be used, and the transportation of non-departmental personnel such as official visitors (e.g. picked-up at the airport) is not permissible. Emergency transportation of a firefighter who has suffered a serious injury at a fire for treatment even though it reduces minimum manning is permissible, but every effort should be made to transport such a firefighter by ambulance or other emergency vehicle.

Accordingly, all assignments shall be made in accordance with the foregoing.

64

20001

Case 1:20-cv-05441-KPF Document 10-10 Filed 07/17/20 Page 70 of 92



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT R

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that a probationary Firefighter who sustains an injury in the line of duty and is unable to perform his or her duties may at the Department's discretion have their probationary period extended but will receive their salary increase on their anniversary date.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

65



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT S

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that a member who reports being injured or becoming ill while on duty shall receive overtime while waiting for a doctor after his or her scheduled tour of duty ends if ordered by the medical officer to stay.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

66

2 0 0 0 1



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT T

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that the parties agreed during the 2002-2006 round of bargaining to jointly support legislation to amend Section 15-111 of the Administrative Code of the City of New York, so that members of the uniformed force of the FDNY, who were New York City police officers prior to joining the Fire Department, shall no longer have their prior police service counted in determining their compensation. Upon appointment to the FDNY, they shall be considered newly appointed employees for purposes of salary and all other economic benefits (excluding pensions) – with no prior service.

Former correction officers shall be treated the same as former police officers for purposes of salary and all other economic benefits (excluding pensions) when they join the Fire Department.

If this provision is challenged, the parties shall take all reasonable steps to defend fully the lawfulness of such provision. Moreover, should the parties be unsuccessful, for whatever reason, in implementing such change, including if the provision is overturned by a judicial or administrative tribunal, the parties agree to reopen the contract to bargain over alternative savings that are equivalent in value to that which the Union was credited under this contract. In the event

67

20001

the parties are unable to agree, this issue may be submitted to interest arbitration for final and binding resolution.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT U

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that issues pertaining to minimum manning overtime "red-line" and administrative overtime shall be referred to the labor-management committee for discussion.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

BY: _____
GERARD FITZGERALD

69

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

ATTACHMENT V

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that issues pertaining to funeral details shall be referred to the labor-management committee for discussion.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

70



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT W

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding that issues pertaining to AFID/BISP Inspections and the heat index shall be referred to the labor-management committee for discussion.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

71

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT X

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This will confirm our mutual understanding regarding the taxability of the Uniform Allowance for Fire Marshals. Upon execution of the parties' agreement, the parties shall establish a labor management committee to explore whether the Uniform Allowance payment for Fire Marshals can be made non-taxable.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

72

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT Y

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, NY 10010

### Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This is to confirm the parties' understanding with respect to assignment of Firefighters to schedules that do not conform to duty schedules as described in Article III of the parties' collective bargaining agreement. The parties' existing practices of scheduling Firefighters (line) to duties requiring schedules not in conformance with Article III of the parties' collective bargaining agreement (including those which had been the subject of the following actions: A-10691-04; A10883-05; BCB-2478-05; A-8502-00 and Index No. 1634/04 (Supreme Court of the State of New York, County of Kings)) shall continue.

The Department shall also continue to make such assignments in the following manner. Prior to any involuntary assignment, the Department shall endeavor to obtain qualified volunteers, subject to their qualifications. The involuntary assignment of a Firefighter shall be limited to one year. Extensions of such assignments shall be consistent with the existing practices not to exceed two years. Such assignments shall not be made on a punitive basis.

The Parties agree to meet and discuss any issues regarding these matters in a Labor-Management Committee.

Regarding arbitration award No. A-8502-00 and Index No. 16348/04 (Supreme Court, Kings County), the parties agree that they shall disregard these cases and not refer to either case

73

20001

in the future, other than for the purpose of enforcing this letter agreement. The parties also agree that the stipulated issue in the above-referenced arbitration shall be governed by this letter agreement.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

74

Case 1:20-cv-05441-KPF   Document 10-10   Filed 07/17/20   Page 80 of 92



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT Z

Gerard Fitzgerald, President
Uniformed Firefighters Association
204 East 23rd Street
New York, New York 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

The parties acknowledge that, from time to time, the headcount at the Fire Department varies. The parties agree to convene at the union's request, a Labor Management committee which shall include representative(s) from the Mayor's Office of Labor Relations to discuss changes in the headcount and its impact, if any, on UFA members.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

75

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT AA

Gerard Fitzgerald
President
Uniformed Firefighters Association
204 East 23rd Street
New York, New York 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This is to confirm the parties' understanding with regard to expansion of the Medical Board under Section 13-323 of the New York City Administrative Code. The Union shall support legislation amending Section 13-323 to expand the medical board. Should the parties be unsuccessful, for whatever reason, in implementing such change, the parties agree to reopen the contract to bargain over alternative savings that are equivalent in value to that which the Union was credited under this provision. In the event the parties are unable to agree, this issue solely may be submitted to interest arbitration for final and binding resolution.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

76

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT AB

Gerard Fitzgerald
President
Uniformed Firefighters Association
204 East 23rd Street
New York, New York 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This is to confirm the parties' understanding with regard to the Fire Department's calculation of medical leave.

The Fire Department's calculation of medical leave will continue to reflect the methodology per the 1996 Roster Staffing Agreement except that:

- Any scheduled hours lost to medical leave during the member's scheduled tour of duty will be calculated based on the actual hours lost to medical leave during that scheduled tour.

- Light-duty classification will only be used to reflect members actually reporting for duty and working.

20001

- Members simultaneously categorized as being on terminal leave and medical leave status will be excluded from "lost time" in the medical leave calculation.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

78

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT AC

Gerard Fitzgerald
President
Uniformed Firefighters Association
204 East 23rd Street
New York, New York 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

Effective July 1, 2007, there shall be an assignment differential of twelve percent (12%) payable to a category of Firefighters assigned to "special assignment" upon satisfactory completion of a review period established by the Fire Department.

The selection and assignment of employees to these units shall be in accordance with existing criteria.

The units to be included in this program shall be: HazMat Company; HazMat Battalion; Rescue Companies; Squads; and HazTech Engines.

The parties will convene a labor management meeting to discuss the potential inclusion of other units in this program as well as the treatment of current incumbents.

20001

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

20001

 *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT AD

Gerard Fitzgerald
President
Uniformed Firefighters Association
204 East 23rd Street
New York, New York 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

Policies and procedures for Extra Departmental Employment (EDE) as described in PA/ID 12-67 will be modified to waive the requirements for EDE except as noted herein. EDE remains prohibited while members are on medical leave and light duty; however, EDE may be permissible while on light duty if approved by the Fire Commissioner or his designee. EDE will remain prohibited as per PA/ID 12-67 for Conflicts of Interest, probationary firefighters attending Fire Academy probationary school and as noted currently in PA/ID 12-67 Section 1.8 and 1.10. In addition, EDE must not interfere or conflict with the regular departmental duties or with availability for overtime or emergency duty. Existing procedures for approval of EDE for those who will continue to be subject to such requirements will remain as per PA/ID 12-67. Lastly, the Fire Commissioner reserves the right to deny or revoke permission for any specific occupation or place of employment notwithstanding regulations and orders.

20001

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

82

20001



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT AE

Gerard Fitzgerald
President
Uniformed Firefighters Association
204 East 23rd Street
New York, New York 10010

Re: 2010-2017 UFA Agreement

Dear Mr. Fitzgerald:

This letter confirms our mutual agreement to add Mary O'Connell and Howard Edelman to the parties' impartial panel of arbitrators.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

83

20001



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

## ATTACHMENT AF

Gerard Fitzgerald
President
Uniformed Firefighters Association
204 East 23rd Street
New York, New York 10010

Re: Subsequent Contract Period

Dear Mr. Fitzgerald:

In the event that any other uniformed union receives an Award or reaches a negotiated settlement with economic terms greater than those provided in this agreement, the parties agree, pursuant to Section 209.2 of the New York State Public Employees Fair Employment Act, that the Union, following the expiration of this Agreement, will have the right to immediately seek the appointment of an interest arbitration panel for the contract period beginning August 1, 2017.

Very truly yours,

RENEE CAMPION

AGREED AND ACCEPTED ON BEHALF OF THE UFA:

By: GERARD FITZGERALD

84

20001



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

ATTACHMENT AG

May 5, 2014

Harry Nespoli
Chair, Municipal Labor Committee
125 Barclay Street
New York, NY 10007

Dear Mr. Nespoli:

This is to confirm the parties' mutual understanding concerning the following issues:

1.      Unless otherwise agreed to by the parties, the Welfare Fund contribution will remain constant for the length of the successor unit agreements, including the $65 funded from the Stabilization Fund pursuant to the 2005 Health Benefits Agreement between the City of New York and the Municipal Labor Committee.

2.      Effective July 1, 2014, the Stabilization Fund shall convey $1 Billion to the City of New York to be used to support wage increases and other economic items for the current round of collective bargaining (for the period up to and including fiscal year 2018).  Up to an additional total amount of $150 million will be available over the four year period from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.  Thereafter, $ 60 million per year will be available from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.

3.      If the parties decide to engage in a centralized purchase of Prescription Drugs, and savings and efficiencies are identified therefrom, there shall not be any reduction in welfare fund contributions.

4.      There shall be a joint committee formed that will engage in a process to select an independent healthcare actuary, and any other mutually agreed upon additional outside expertise, to develop an accounting system to measure and calculate savings.

1

20001

5.      The MLC agrees to generate cumulative healthcare savings of $3.4 billion over the course of Fiscal Years 2015 through 2018, said savings to be exclusive of the monies referenced in Paragraph 2 above and generated in the individual fiscal years as follows: (i) $400 million in Fiscal Year 2015; (ii) $700 million in Fiscal Year 2016; (iii) $1 billion in Fiscal Year 2017; (iv) $1.3 billion in Fiscal Year 2018; and (v) for every fiscal year thereafter, the savings on a citywide basis in health care costs shall continue on a recurring basis. At the conclusion of Fiscal Year 2018, the parties shall calculate the savings realized during the prior four-year period. In the event that the MLC has generated more than $3.4 billion in cumulative healthcare savings during the four-year period, as determined by the jointly selected healthcare actuary, up to the first $365 million of such additional savings shall be credited proportionately to each union as a one-time lump sum pensionable bonus payment for its members. Should the union desire to use these funds for other purposes, the parties shall negotiate in good faith to attempt to agree on an appropriate alternative use. Any additional savings generated for the four-year period beyond the first $365 million will be shared equally with the City and the MLC for the same purposes and subject to the same procedure as the first $365 million. Additional savings beyond $1.3 billion in FY 2018 that carry over into FY 2019 shall be subject to negotiations between the parties.

6.      The following initiatives are among those that the MLC and the City could consider in their joint efforts to meet the aforementioned annual and four-year cumulative savings figures: minimum premium, self-insurance, dependent eligibility verification audits, the capping of the HIP HMO rate, the capping of the Senior Care rate, the equalization formula, marketing plans, Medicare Advantage, and the more effective delivery of health care.

7.      Dispute Resolution

      a. In the event of any dispute under this agreement, the parties shall meet and confer in an attempt to resolve the dispute. If the parties cannot resolve the dispute, such dispute shall be referred to Arbitrator Martin F. Scheinman for resolution.

      b. Such dispute shall be resolved within 90 days.

      c. The arbitrator shall have the authority to impose interim relief that is consistent with the parties' intent.

      d. The arbitrator shall have the authority to meet with the parties at such times as the arbitrator determines is appropriate to enforce the terms of this agreement.

      e. If the parties are unable to agree on the independent health care actuary described above, the arbitrator shall select the impartial health care actuary to be retained by the parties.

      f. The parties shall share the costs for the arbitrator and the actuary the arbitrator selects.

20001

If the above accords with your understanding and agreement, kindly execute the signature line provided.

Sincerely,

Robert W. Linn
Commissioner

Agreed and Accepted on behalf of the Municipal Labor Committee

BY: _____
Harry Nespoli, Chair

3

20001