Case 1:20-cv-05441-KPF Document 10-11 Filed 07/17/20 Page 1 of 66

# Exhibit 9



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:      ROBERT W. LINN, COMMISSIONER

SUBJECT:   EXECUTED CONTRACT: FIRE OFFCIERS

TERM:      MARCH 20, 2011 TO MARCH 19, 2018

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the United Fire Fighters Officers Association, Local 854, International Association of Firefighters, AFL-CIO on behalf of the incumbents of positions listed in Article I of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: JUN 2 5 2018



OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL                    CONTRACT

NO.
18005                     DATE:
                          JUN 2 5 2018

# FIRE OFFICERS
## 2011 - 2018 AGREEMENT

### Table of Contents

ARTICLE I - RECOGNITION ....................................................................................2

ARTICLE II - UNION SECURITY ...........................................................................2

ARTICLE III - WORK SCHEDULE ..........................................................................3

ARTICLE IV - UNION REPRESENTATION ............................................................7

ARTICLE V – SALARIES ..........................................................................................8

ARTICLE VI - OUT-OF-TITLE SPECIAL ASSIGNMENT TOURS.......................12

ARTICLE VII - TEMPORARY ASSIGNMENTS .....................................................13

ARTICLE VIII - NIGHT SHIFT DIFFERENTIAL ...................................................14

ARTICLE IX - FAMILY PROTECTION PLAN FUND ...........................................15

ARTICLE X - HEALTH AND HOSPITALIZATION BENEFITS ............................16

ARTICLE XI - ANNUITY FUND ..............................................................................18

ARTICLE XII - VACATION AND LEAVE ...............................................................19

ARTICLE XIII - SAFETY STANDARDS AND EQUIPMENT ................................22

ARTICLE XIV - FACILITIES ...................................................................................22

ARTICLE XV - TRANSPORTATION........................................................................22

ARTICLE XVI - VACANCIES ..................................................................................22

ARTICLE XVII - INDIVIDUAL RIGHTS ...............................................................23

ARTICLE XVIII - GRIEVANCE PROCEDURE ......................................................26

ARTICLE XIX - DELEGATES ..................................................................................31

ARTICLE XX - NO STRIKE......................................................................................31

ARTICLE XXI - IMPARTIAL CHAIR ......................................................................31

ARTICLE XXII - DETAILS TO OTHER UNITS......................................................32

ARTICLE XXIII - SPECIAL EXPENSE FUND........................................................33

ARTICLE XXIV - LABOR-MANAGEMENT COMMITTEE....................................34

ARTICLE XXV-A - PRODUCTIVITY ISSUES .......................................................35

ARTICLE XXV-B - PRODUCTIVITY ISSUES........................................................36

ARTICLE XXV-C - NEW PROGRAMS ....................................................................37

ARTICLE XXVI - LINE OF DUTY DEATH BENEFIT ...........................................37

ARTICLE XXVII - DEATH BENEFIT UNUSED LEAVE AND COMPENSATORY TIME ...38

ARTICLE XXVIII - MISCELLANEOUS ..................................................................38

ARTICLE XXIX - QUARTERMASTER SYSTEM ...................................................41

ARTICLE XXX - APPLICABLE LAWS ....................................................................41

ARTICLE XXXI - SAVINGS CLAUSE .....................................................................42

Appendix A – Side letter regarding Medical Expert

Appendix B – Side letter regarding Employees Transferring from the Department of Correction to the Fire Department

Appendix C – Side letter regarding Outside Activities

Appendix D – Side letter regarding Private Room Accomodations for Employees Injured in the Line of Duty

Appendix E – Side letter regarding Exchange of Information

Appendix F – Side letter regarding Line of Duty Prescription Drugs

Appendix G – Side letter regarding Executive Order 75

Appendix H – Side letter regarding Paperwork Reduction

Appendix I – Side letter regarding Parity

Appendix J - Side letter regarding Pensions

Appendix K – Side letter regarding Fire Salvage Program

Appendix L – Side letter regarding Special Assignments

Appendix M – Side letter regarding Headcount Changes

Appendix N – Side letter regarding Extra Departmental Employment

Appendix O – Side letter regarding Compensatory Time

Appendix P – Side letter regarding Health Savings and Welfare Fund Contributions

# FIRE OFFICERS
## 2011 - 2018 AGREEMENT

AGREEMENT entered into this  th    day of June, 25th 2018, by and between    the City of New York (hereinafter referred to as the "Employer") and the Uniformed Fire Officers Association, Local 854, International Association of Firefighters, affiliated with the AFL-CIO, (hereinafter referred to as the "Union"), for the period from March 20, 2011 to March 19, 2018

## W I T N E S S E T H:

WHEREAS, the parties hereto have entered into collective bargaining and desire to reduce the results thereof to writing;

NOW, THEREFORE, it is mutually agreed as follows:

## ARTICLE I - RECOGNITION

### Section 1.

The employer recognizes the Union as the sole collective bargaining agent for the unit consisting of all Lieutenants, Captains, Battalion Chiefs, Deputy Chiefs except those Deputy Chiefs designated as Deputy Assistant Chief of Department, Assistant Chief of Department and Chief in Charge (hereinafter collectively referred to as "Fire Officers (line)", and Fire Medical Officers, and Supervising Fire Marshals employed by the Employer in the Fire Department of the City of New York.

### Section 2.

The terms "employee" or "employees" as used in the Agreement shall mean only those persons employed in the titles described in Section 1 of this Article.

## ARTICLE II - UNION SECURITY

### Section 1.

The Employer agrees that all employees may become and remain members of the Union in good standing.

### Section 2.

The employer further agrees that all new employees hired subsequent to the date of signing this Agreement may become and remain members of the Union in good standing.

**Section 3.**

It is further agreed that the decision to become or remain members of the Union in good standing shall remain discretionary both with the employees and with the Union subject to the provisions of Section 12-314 of the Administrative Code.

**Section 4.**

A.  The Union shall have the exclusive right to the checkoff and transmittal of dues on behalf of each employee in the Unit and the City shall checkoff and transmit such dues to the Union, all in accordance with the Mayor's Executive Order #98, dated May 15, 1969, entitled "REGULATIONS REGULATING THE CHECKOFF OF UNION DUES" and in accordance with the Mayor's Executive Order #107, dated December 29, 1986, entitled "REGULATIONS GOVERNING PROCEDURES FOR ORDERLY PAYROLL CHECKOFF OF UNION DUES."

B.  The employee may consent in writing to the authorization of the deduction of dues from wages and to the designation of the Union as the recipient thereof. Such consent if given shall be in the proper form, acceptable to the City, which bears the signature of the employee.

**Section 5.**

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference in this agreement.

## ARTICLE III - WORK SCHEDULE

**Section 1.**

A.  All the terms and conditions of Section 15-112 of the Administrative Code of the City of New York, as presently provided therein and hereby incorporated by reference.

B.  (i)  Notwithstanding the above Section 1(A), the Fire Department shall have the right to schedule Fire Officers (line) assigned to nonfirefighting duties such as the Division of Training, the Bureau of Fire Prevention, Headquarters, and other similar units or administrative functions to duty schedules that do not conform to the Fire Officer duty schedule described in this Article III. For the purpose hereof, any member assigned to respond to an alarm and to perform firefighting duty or supervise firefighting duties shall be deemed to be performing firefighting duties.

18005

(ii)     Prior to an involuntary assignment, the Department shall endeavor to obtain qualified volunteers. The determination of such Fire Officer's qualifications shall be made at the discretion of the Department, whose decision shall be final. The involuntary assignment of a Fire Officer shall be limited to one year, but may be extended to two years in such cases where unique and extraordinary skills or functions are required and where such assignment is of critical importance to the Fire Department.

(iii)    Notwithstanding the foregoing no such assignment shall be made on a punitive basis.

**C.     Communicative Time.**

Fire Officers (line) shall report for duty 15 minutes prior to the start of their tour in order to exchange information between the on-duty officer and the relieving officer. Should an alarm occur during that 15 minute period, the relieving officer shall respond to that alarm.

In the event this provision is declared invalid under the law, the parties will reopen negotiations to resolve the issue of any increased cost which may result from such declaration. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

**Section 2.**

Fire Officers (line) when specifically directed by the Commissioner or Chief of the Department or their respective designated representatives to perform work in excess of working hours as provided in Section 1 of this Article III shall be compensated for the same by cash payment at the rate of time and one-half based on the regular salary for Fire Officers (line) for the actual period of overtime worked, except that all Deputy Chiefs and Battalion Chiefs shall be compensated for overtime worked pursuant to this Article III or any other provision of this Agreement in compensatory time off at the rate of time and one-half when such overtime is specifically directed by the Commissioner or Chief of Department or is performed at a fire emergency without prior approval and requests for compensation therefore, after being forwarded through channels together with recommendations, are approved by the Commissioner or Chief of Department or their respective designated representatives for such purposes.

**Section 3.**

When Fire Officers (line) are not continued on duty but are ordered to report for emergency duty from a scheduled off-tour or a scheduled rest period, they shall be compensated for a minimum of four hours if not assigned to duty and for a minimum of six hours if assigned to duty. Such compensation shall be at the overtime rate of time and one-half, in accord with Section 2 of this Article.



18005

## Section 4.

Notwithstanding anything to the contrary provided herein, any Fire Officer (line) who is recalled to duty after having completed that employee's regular tour of duty but before the commencement of the next regular tour and who is assigned to duty or held without assignment for a period which extends into the commencement of that employee's next regular tour shall be compensated pursuant to the regular overtime provisions of Section 2 of this Article only for the actual time so assigned or held; and the same shall be deemed pre-shift overtime.

## Section 5.

A.      The Department has adjusted the work chart applicable to Supervising Fire Marshals so as to provide for an average work week of 40.25 hours.

Effective March 20, 2006, the Supervising Fire Marshal classification shall include an Assignment Level II. The work duty chart for this detail will be five eight hour tours (5x8). Rescheduling shall be permitted (flopping).

Members assigned to SFM Level II shall receive compensatory time in lieu of cash overtime. Members assigned to SFM Level II for three or more years who are assigned to SFM I thereafter, shall continue to be compensated at the level of SFM Level II.

All other terms and conditions of employment shall be the same as those for SFM Level I, except as otherwise expressly set forth herein.

(i)     The Fire Department shall have the right to schedule Supervising Fire Marshals assigned to Headquarters Special Squads such as Juvenile Firesetters, Modified Red Cap, Day Squads and other similar squads or administrative functions to duty schedules that do not conform to the Supervising Fire Marshal duty schedule referred to in this Article III.

(ii)    Prior to an involuntary assignment, the Department shall endeavor to obtain qualified volunteers. The determination of such Supervising Fire Marshal's qualifications shall be made at the discretion of the Department, whose decision shall be final. The involuntary assignment of a Supervising Fire Marshal shall be limited to one year, but may be extended to two years in such cases where unique and extraordinary skills of functions are required and where such assignment is of critical importance to the Fire Department.

(iii)   Notwithstanding the foregoing no such assignment shall be made on a punitive basis.

B.      Ordered overtime authorized by the Commissioner or the Chief Fire Marshal as the designated representative which results in a Supervising Fire Marshal working in excess of the normal tour of duty shall be compensable in cash at time and one-half. Members

assigned to SFM Level II shall receive compensatory time in lieu of cash overtime.

C.    When Supervising Fire Marshals not continued on duty are ordered to report for Court on a scheduled off-tour or a scheduled rest period, they shall be compensated for a minimum of four hours in cash at the overtime rate. The four hours of compensation shall include any travel time to which they are presently entitled.

D.    Supervising Fire Marshals shall not be rescheduled when required to appear in court in connection with matters assigned to them.

## Section 6.

Cash payment for overtime work as provided in Article III, Section 2, of this contract, shall not exceed twenty percent (20%) of an employee's base pay in any fiscal year. Authorized overtime work which would result in a cash payment in excess of this amount shall be compensated for in compensatory time off at the rate of time and one-half.

## Section 7.

Newly promoted Fire Officers shall receive either regular compensation or, in the event of overtime, appropriate overtime compensation for training required by the Department, including assessment and orientation programs.

## Section 8.

Overtime generated by post coverage requirements for company officers shall, to the greatest extent practicable, be equalized among employees in rank. Specifically, allocation of overtime shall be governed by PA/ID 5-75 as amended. This Order is incorporated by reference hereto and shall not be modified, except by mutual consent, during the term of this Agreement. The Department will provide the Union with the number and location of post coverage assignments on a bi-weekly basis.

## Section 9.

Notwithstanding anything herein appearing to the contrary, overtime shall continue to be calculated on the basis of 2088 hours per year.

## Section 10.

The New York City Fire Department shall not assign a Supervising Fire Marshal to supervise more than twelve Field Fire Marshals. For the purposes of determining span of control for Supervising Fire Marshals, a full duty Fire Marshal shall be considered to be a Field Fire Marshal at all times that he/she is working with the exception of the following:

1.    Time spent in court by off tour members,
2.    Time spent in training,

3.    Time spent at the base while doing paperwork following the conclusion of his/her tour, and

4.    Time spent at the base when assigned to the telephone for the entire tour and no light duty personnel are available.

The Fire Department shall not attempt to evade the provisions of this definition by assigning more than one Fire Marshal to a telephone at the base.

## Section 11.

a.    Effective 2006, once each calendar year, the Department shall have the right to schedule one eight (8) hour training day that normally would have been scheduled at an overtime rate, at the straight time rate. In the event the Department does not schedule the tour in that year, it shall have two years to schedule such time. Such training day shall not include CFR-D or CFR-D refresher training.

b.    Effective February 1, 2015, the Department may schedule two eight (8) hour training days that normally would have been scheduled at an overtime rate, at the straight time rate. Effective December 31, 2018, this paragraph b. shall be deleted and discontinued.

c.    Effective January 1, 2019, the Department may schedule eight (8) hours of training that normally would have been scheduled at an overtime rate, at the straight time rate.

d.    Such training sessions shall be scheduled by the Department in blocks of either 4 hours or 8 hours each.

e.    As long as an employee is active in a UFOA title for at least 6 months in a calendar year, the straight-time training hours will not be carried over to the following year; i.e. if the employee is promoted from Firefighter to Lieutenant in August, the Department may carry over the straight-time training hours to the following year; however, if the employee is promoted from Firefighter to Lieutenant in June, the straight time training hours may not be carried over.

## Section 12.

Effective April 20, 2010, all members requiring CFR-D recertification shall be compensated at the overtime rate for the 40 hours spent on such CFR-D training.

## ARTICLE IV - UNION REPRESENTATION

The elected officers of the Union shall be permitted to visit all fire units to which employees are assigned on the official business of the Union. The elected official shall announce that official's presence to the officer in command and carry the function in a reasonable manner, subject to establishing labor relations and the Regulations for the Uniformed Forces.

Time spent by employee representatives to conduct labor relations with the City and on Union

activities shall be governed by the terms of Executive Order No. 75, as amended, entitled "Time Spent on the Conduct of Labor Relations between the City and its Employees and on Union Activity."

## ARTICLE V - SALARIES

### Section 1.

The base annual salary rates for Fire Officers shall be as follows:

Class of Positions Or
Detail and Increment Step

**(i)** Lieutenant– promoted prior to March 1, 2006

|          | 3/20/11  | 2/20/12  | 9/20/12   | 9/20/13   | 9/20/14   | 9/20/15   | 9/20/16   | 9/20/17   |
|----------|----------|----------|-----------|-----------|-----------|-----------|-----------|-----------|
| Maximum  | $98,072  | $99,053  | $100,044  | $101,044  | $102,054  | $103,585  | $106,175  | $109,360  |
| 3rd step | $89,578  | $90,474  | $91,379   | $92,293   | $93,216   | $94,614   | $96,979   | $99,888   |
| 2nd step | $88,322  | $89,205  | $90,097   | $90,998   | $91,908   | $93,287   | $95,619   | $98,488   |
| 1st step | $87,053  | $87,924  | $88,803   | $89,691   | $90,588   | $91,947   | $94,246   | $97,073   |

Lieutenant – promoted on or after March 1, 2006

|          | 3/20/11  | 2/20/12  | 9/20/12   | 9/20/13   | 9/20/14   | 9/20/15   | 9/20/16   | 9/20/17   |
|----------|----------|----------|-----------|-----------|-----------|-----------|-----------|-----------|
| Maximum  | $98,072  | $99,053  | $100,044  | $101,044  | $102,054  | $103,585  | $106,175  | $109,360  |
| 4th step | $83,413  | $84,247  | $85,089   | $85,940   | $86,799   | $88,101   | $90,304   | $93,013   |
| 3rd step | $82,202  | $83,024  | $83,854   | $84,693   | $85,540   | $86,823   | $88,994   | $91,664   |
| 2nd step | $81,661  | $82,478  | $83,303   | $84,136   | $84,977   | $86,252   | $88,408   | $91,060   |
| 1st step | $81,120  | $81,931  | $82,750   | $83,578   | $84,414   | $85,680   | $87,822   | $90,457   |

**(ii)** Captains

|          | 3/20/11   | 2/20/12   | 9/20/12   | 9/20/13   | 9/20/14   | 9/20/15   | 9/20/16   | 9/20/17   |
|----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| Maximum  | $112,574  | $113,700  | $114,837  | $115,985  | $117,145  | $118,902  | $121,875  | $125,531  |
| 3rd step | $102,520  | $103,545  | $104,580  | $105,626  | $106,682  | $108,282  | $110,989  | $114,319  |
| 2nd step | $100,758  | $101,766  | $102,784  | $103,812  | $104,850  | $106,423  | $109,084  | $112,357  |
| 1st step | $99,001   | $99,991   | $100,991  | $102,001  | $103,021  | $104,566  | $107,180  | $110,395  |

18005

**(iii)    Battalion Chief**

|  | 3/20/11 | 2/20/12 | 9/20/12 | 9/20/13 | 9/20/14 | 9/20/15 | 9/20/16 | 9/20/17 |
|---|---|---|---|---|---|---|---|---|
| Maximum | $146,583 | $148,049 | $149,529 | $151,024 | $152,534 | $154,822 | $158,693 | $163,454 |
| 3rd step | $128,235 | $129,517 | $130,812 | $132,120 | $133,441 | $135,443 | $138,829 | $142,994 |
| 2nd step | $120,702 | $121,909 | $123,128 | $124,359 | $125,603 | $127,487 | $130,674 | $134,594 |
| 1st step | $113,164 | $114,296 | $115,439 | $116,593 | $117,759 | $119,525 | $122,513 | $126,188 |

**(iv)    Deputy Chief**

|  | 3/20/11 | 2/20/12 | 9/20/12 | 9/20/13 | 9/20/14 | 9/20/15 | 9/20/16 | 9/20/17 |
|---|---|---|---|---|---|---|---|---|
| Maximum | $162,472 | $164,097 | $165,739 | $167,395 | $169,069 | $171,605 | $175,895 | $181,172 |
| 3rd step | $148,469 | $149,954 | $151,454 | $152,969 | $154,499 | $156,816 | $160,736 | $165,558 |
| 2nd step | $139,606 | $141,002 | $142,412 | $143,836 | $145,274 | $147,453 | $151,139 | $155,673 |
| 1st step | $130,756 | $132,064 | $133,385 | $134,719 | $136,066 | $138,107 | $141,560 | $145,807 |

**(v)    Fire Medical Officer– promoted prior to March 20, 2006**

|  | 3/20/11 | 2/20/12 | 9/20/12 | 9/20/13 | 9/20/14 | 9/20/15 | 9/20/16 | 9/20/17 |
|---|---|---|---|---|---|---|---|---|
| Maximum | $127,497 | $128,772 | $130,060 | $131,361 | $132,675 | $134,665 | $138,032 | $142,173 |
| 4th step | $117,339 | $118,512 | $119,697 | $120,894 | $122,103 | $123,935 | $127,033 | $130,844 |
| 3rd step | $114,282 | $115,425 | $116,579 | $117,745 | $118,922 | $120,706 | $123,724 | $127,436 |
| 2nd step | $111,222 | $112,334 | $113,457 | $114,592 | $115,738 | $117,474 | $120,411 | $124,023 |
| 1st step | $108,164 | $109,246 | $110,338 | $111,441 | $112,555 | $114,243 | $117,099 | $120,612 |

**Fire Medical Officer – promoted on or after March 20, 2006**

|  | 3/20/11 | 2/20/12 | 9/20/12 | 9/20/13 | 9/20/14 | 9/20/15 | 9/20/16 | 9/20/17 |
|---|---|---|---|---|---|---|---|---|
| Maximum | $127,497 | $128,772 | $130,060 | $131,361 | $132,675 | $134,665 | $138,032 | $142,173 |
| 4th step | $110,797 | $111,905 | $113,024 | $114,154 | $115,296 | $117,025 | $119,951 | $123,550 |
| 3rd step | $109,920 | $111,019 | $112,129 | $113,250 | $114,383 | $116,099 | $119,001 | $122,571 |
| 2nd step | $109,043 | $110,133 | $111,234 | $112,346 | $113,469 | $115,171 | $118,050 | $121,592 |
| 1st step | $108,164 | $109,246 | $110,338 | $111,441 | $112,555 | $114,243 | $117,099 | $120,612 |

**(vi)    Supervising Fire Marshal Level I – promoted prior to March 1, 2006**

|  | 3/20/11 | 2/20/12 | 9/20/12 | 9/20/13 | 9/20/14 | 9/20/15 | 9/20/16 | 9/20/17 |
|---|---|---|---|---|---|---|---|---|
| Maximum | $107,252 | $108,325 | $109,408 | $110,502 | $111,607 | $113,281 | $116,113 | $119,596 |
| 3rd step | $98,079 | $99,060 | $100,051 | $101,052 | $102,063 | $103,594 | $106,184 | $109,370 |
| 2nd step | $96,824 | $97,792 | $98,770 | $99,758 | $100,756 | $102,267 | $104,824 | $107,969 |
| 1st step | $95,557 | $96,513 | $97,478 | $98,453 | $99,438 | $100,930 | $103,453 | $106,557 |

Supervising Fire Marshal Level I – promoted on or after March 1, 2006

|  | 3/20/11 | 2/20/12 | 9/20/12 | 9/20/13 | 9/20/14 | 9/20/15 | 9/20/16 | 9/20/17 |
|---|---|---|---|---|---|---|---|---|
| Maximum | $107,252 | $108,325 | $109,408 | $110,502 | $111,607 | $113,281 | $116,113 | $119,596 |
| 4th step | $99,507 | $100,502 | $101,507 | $102,522 | $103,547 | $105,100 | $107,728 | $110,960 |
| 3rd step | $97,344 | $98,317 | $99,300 | $100,293 | $101,296 | $102,815 | $105,385 | $108,547 |
| 2nd step | $96,154 | $97,116 | $98,087 | $99,068 | $100,059 | $101,560 | $104,099 | $107,222 |
| 1st step | $94,532 | $95,477 | $96,432 | $97,396 | $98,370 | $99,846 | $102,342 | $105,412 |

Supervising Fire Marshal Level II

|  | 3/20/11 | 2/20/12 | 9/20/12 | 9/20/13 | 9/20/14 | 9/20/15 | 9/20/16 | 9/20/17 |
|---|---|---|---|---|---|---|---|---|
| Flat rate | $141,468 | $142,883 | $144,312 | $145,755 | $147,213 | $149,421 | $153,157 | $157,752 |

Note: A Lieutenant promoted to Supervising Fire Marshal shall be paid at the step of the Supervising Fire Marshal Level I schedule which the employee attained as a Lieutenant.

Members assigned to SFM Level II for three (3) or more years who are assigned to SFM Level I thereafter shall continue to be compensated at the level of SFM Level II.

**Section 2.**

An employee shall advance one increment step annually, dating from the anniversary date of appointment.

**Section 3.**

Longevity

A.    Longevity pay shall continue to be paid as follows:

With 5 years of service....$4,000
With 10 years of service....$5,000
With 15 years of service....$6,000
With 20 years of service....$7,000

Effective April 20, 2010 longevity pay shall be paid as follows:

With 5 years of service....$5,000
With 10 years of service....$6,000
With 15 years of service....$7,000
With 20 years of service....$8,000

B.    The term "service" as used herein shall mean service in the Fire Service of the City of New

York.

C.    The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completion of 20 years of service. The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service. In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

D.    Calculation of the night shift differential shall be based upon the longevity schedules in effect prior to November 1, 1992.

**Section 4.**

ASSIGNMENT DIFFERENTIAL

Effective September 1, 2007, there will be an assignment differential in the annualized amount of $2,500 for those Deputy Chiefs designated as Division Commanders and $1,500 for those Battalion Chiefs designated as Battalion Commanders.

**Section 5.**

Effective July 1, 2008, each employee shall receive ten (10) paid holidays annually.

**Section 6.**

A Lieutenant or Captain assigned to the superpumper system shall receive, in addition to the base annual salary provided in Section 1 of this Article, an annual differential of $600 pro-rated during the term of such assignment.

**Section 7.**

A Battalion Chief promoted to Deputy Chief on or after July 1, 1971 from an incremental level less than the maximum for the Battalion Chief rank shall be slotted, or be deemed slotted, into that Deputy Chief incremental level which is next higher in the amount than the sum of the Battalion Chief incremental level plus the then annual increment, if any, applicable to such Battalion Chief level, provided, however, that in no event shall such promotion result in a salary in excess of the then maximum salary for the Deputy Chief Rank.

Effective July 1, 2016, the parties agree that employees with at least 3 years of service in the Fire Marshal title shall, upon promotion to Lieutenant, be "slotted in" to the next-highest step of the

Lieutenant salary schedule. Employees with less than 3 years of Fire Marshal service shall begin at the first step. In no event shall an employee move to the maximum Lieutenant salary with less than one year of Lieutenant service; if the employee's Fire Marshal salary exceeds the step before Lieutenant's basic maximum, he/she may maintain the Fire Marshal salary for the duration of the probationary period. Under these circumstances, the employee would be moved to the basic maximum salary upon completion of probation.

## Section 8.

Paychecks shall be distributed to the employee's unit by 6 p.m., but not before 3 p.m. on the Thursday preceding payday.

Upon request, the Department will route and deliver a covering Officer's paycheck to any designated unit within the assigned Division.

## Section 9.

A.   Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after the execution of the applicable agreement or one hundred-twenty (120) days after the effective date of the increase whichever is later, to the date of actual payment.

B.   Interest on shift differentials, holiday and overtime pay, shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following their earning or one hundred-twenty (120) days after the execution of this Agreement, whichever is later, to the date of actual payment.

C.   Interest accrued under A. or B. above shall be payable only if the amount of interest due to an individual employee exceeds five dollars ($5.00).

### ARTICLE VI - OUT-OF-TITLE SPECIAL ASSIGNMENT TOURS

## Section 1.

The Fire Department will use its best efforts to maintain an adequate number of Fire Officers (line) (as the term is defined in Article I, Section 1 of this Agreement) in each rank to minimize acting out-of-title tours. The Department will fill vacancies in the above ranks by promotions within sixty days unless the Department projects that the filling of these vacancies is not necessary as the Department has minimized acting out-of-title tours and that the conditions shall continue without the filling of these vacancies.

## Section 2.

The Department will attempt to eliminate or minimize acting out-of-title, while keeping special assignment officer tours to a minimum. The Department will make a monthly analysis of the

number of acting out-of-title tours, and special assignment tours in the Fire Officer (line) ranks described in Section 1.

The Department will: (i) each month provide the union with data on acting out-of-title and special assignment for the preceding month; and (ii) meet every sixty (60) days with the Union to review the aforesaid data.

## Section 3.

Any grievance brought pursuant to this provision shall be initiated at the third step of the grievance procedure.

## Section 4.

Nothing contained in this Article shall amend, alter or impair any other provision in Article III or Article VII of this Agreement.

## ARTICLE VII - TEMPORARY ASSIGNMENTS

## Section 1.

Whenever a Fire Officer (line) is assigned to the duties of a higher rank for more than two hours in any tour, that Officer shall be paid cash for the entire tour at the minimum rate of pay for the higher rank in which that Officer served, even though the Department may replace that officer at any time with the appropriate officer. In the case of a Battalion Chief assigned to the duties of a Deputy Chief pursuant to the preceding sentence, that Battalion Chief shall be paid at that rate of pay for the Deputy Chief rank which is next higher than the rate of pay such Battalion Chief receives in that Chief's Battalion Chief rank. The intent is that the Department shall have two hours to obtain a Fire Officer (line) qualified in the higher rank. If, however, the Fire Officer (line) is replacing a Fire Officer (line) who is attending an authorized meeting of a certified labor organization as a delegate, such Fire Officer (line) replacement shall be paid in cash straight time at the rate of pay for the higher rank only, for the actual number of hours so served. In none of the indicated cases is a Company Officer to be replaced, if missing, by a Firefighter.

## Section 2.

Post coverage is to be provided at all times for Company Officers permanently assigned on Departmental orders to a Fire Company. Any time that such a Lieutenant is absent at the outset of a tour that Lieutenant shall be replaced by another Lieutenant. Any time that such a Captain is absent at the onset of a tour that Captain shall be replaced by a Captain. Where a covering Lieutenant or Captain is not available to provide such post coverage, that post coverage shall be provided on an overtime basis to be paid in cash at time and one half. In none of the indicated cases is a Company Officer to be replaced, if missing, by a Firefighter or an acting officer.

## Section 3.

No temporary assignment to Fire Officer (line) above the rank of Lieutenant shall be made out-of-title except by a Fire Officer (line) of the next lower Civil Service rank.

### Section 4.

Whenever a Captain or Chief Officer is placed on leave after the start of a tour, and no special assignment officer of similar rank is available, the position shall be filled by the next lower rank and that member shall be compensated for the entire tour at the salary rate of the higher rank if assigned to the duties of the higher rank for more than two hours in any tour.

#### For a Captain Vacancy and no S.A. Captain is Available:

(1) In a single house the senior Lieutenant on duty in the nearest double house within the same battalion or when not available, then from the nearest available double house, shall be detailed and designated the acting Captain of the unit wherein the original vacancy occurred.

(2) In a double house the Lieutenant on duty in the unit housed in the same quarters shall be designated the acting Captain and detailed to the unit wherein the original vacancy occurred. That Lieutenant is to be replaced by a S.A. Lieutenant if available; and if not, by an Acting Lieutenant selected from the quarters which provided the Acting Captain.

(3) In a double house where both units have a Captain on duty the replacement for the vacancy of one of the Captains shall be treated as in one (1) above.

The unit providing this Acting Captain shall then be staffed by a S.A. Lieutenant if available, and if not available, then by an Acting Lieutenant selected from the quarters which provided the Acting Captain.

When vacancies of this type occur at a scene of operations implementation of these procedures may be delayed until such time as conditions stabilize allowing a smooth transition.

### ARTICLE VIII - NIGHT SHIFT DIFFERENTIAL

A. There shall be a 10% differential continued for all work actually performed by Fire Officers (line) and Supervising Fire Marshals, Levels I and II, between the hours of 4 p.m. and 8 a.m., provided that more than one hour is actually worked after 4 p.m. and before 8 a.m.

B. In lieu of the payments to Fire Officers (line) required by Article VIII, Section A above, the Employer shall pay all Fire Officers (line) and Supervising Fire Marshals, Levels I and II, pro-rata an annual amount equal to 5.4 percent of the sum of each such employee's base annual salary rate plus longevity and adjustments.

C.     In lieu of the payments to Fire Medical Officers required by Article VIII, Section A. above, the Employer shall pay to all Fire Medical Officers pro-rata an annual amount equal to 5.4 percent of the sum of each such employee's base annual salary rate plus longevity and adjustments.

This benefit shall be computed on the basis of the rates set forth in Article V, plus the longevity adjustment for all Fire Officers (line), Supervising Fire Marshals, and Fire Medical Officers.

## ARTICLE IX - FAMILY PROTECTION PLAN FUND

A.     1.     Effective March 20, 2007, the City shall continue to contribute the pro-rata annual amount of $1,410 for each employee for remittance to the Uniformed Fire Officers Association Family Protection Plan, ("FPP") pursuant to the terms of a supplemental agreement reached by the parties and approved by the Corporation Counsel. Effective April 20, 2010, the pro-rata annual amount shall be increased to $1,460 for each employee.

2.     Effective March 20, 2007, the City shall continue to contribute the pro-rata annual amount of $1,410 for each retired employee for remittance to the Uniformed Fire Officers Association Family Protection Plan, ("FPP") pursuant to the terms of a supplemental agreement reached by the parties and approved by the Corporation Counsel. Effective March 20, 2008, the pro-rata annual amount shall be increased to $1,470 for each retired employee. Effective April 20, 2010, the pro-rata annual amount shall be increased to $1,530 for each retired employee.

3.     Effective February 1, 2015, there welfare fund contribution shall be reduced by $100 for actives and retirees. The new active pro-rata contribution amount shall be $1,360, and the new retiree pro-rata contribution amount shall be $1,430.

4.     Effective July 1, 2016, the welfare fund contribution shall be increased by $100 per employee per annum for retired employees only to $1,530.

5.     Effective June 15, 2018, the welfare fund contribution shall be increased by $100 per employee per annum for active employees only to $1,460.

B.     Pursuant to its commitment, the UFOA will continue to provide benefits to employees' domestic partners.

C.     Employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Family Protection Plan of the Uniformed Fire Officers Association at the time of such separation pursuant to a supplementary agreement between the City and the UFOA shall continue to be so covered, subject to the provisions of Section A and B hereof, on the same contributory basis as incumbent employees. Contributions shall be made only for such times as said individuals are eligible to be primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

18005

**D.**     Civil Legal Representation Fund

The City shall contribute $25 per annum for each active Employee to the FPP to establish a civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel. While these funds shall be administered by the FPP, they are to be maintained in a separate account and shall not be commingled with the other monies received by the FPP. Only the $25 provided above may be used for civil legal representation. No additional monies from the FPP may be used for civil legal representation.

**E.**     Such payments shall be made pro-rata by the City every twenty-eight (28) days.

## ARTICLE X - HEALTH AND HOSPITALIZATION BENEFITS

### Section 1.

The City shall continue to provide a fully paid choice of health and hospitalization insurance plans for each employee, not to exceed 100% of the full cost of HIP/HMO on a category basis. There will be an annual reopening period during the term of this agreement for active employees to exercise their choice among medical plans.

### Section 2.

Retirees shall have the option of changing their previous choice of Health Plans. This option shall be:

      **(a)**     a one time choice; and

      **(b)**     exercised only after one year of retirement; and

      **(c)**     can be exercised at any time without regard to contract periods.

The effective date of change to a new plan shall be the first day of the month three months after the month in which the application has been received by the New York City Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to January 1, 1981 and every two years thereafter, retirees shall have the option of changing their previous choice of health plans. This option shall be exercised in accordance with procedures established by the Employer. The Union will assume the responsibility of informing retirees of this option.

There shall be a sub-committee with representatives of both the City and the Uniformed Superior Officers Coalition ("USOC") to meet and discuss issues of health coverage for employees who retire prior to the age of 55 and have health benefits coverage from another employer. The parties shall share in the savings generated. The parties may agree to expand their discussion of issues

regarding retiree health subject to mutual agreement.

## Section 3.

A.   Effective November 1, 1990 and thereafter, the City's cost for each employee and for each retiree under 65 shall be equalized at the Community rated basic HIP/HMO plan payment rate as approved by the State Department of Insurance on a category basis of individual or family, e.g. the Blue Cross/GHI-CBP payment for family coverage shall be equal to the HIP/HMO payment for family coverage.

B.   If a replacement plan is offered to employees and retirees under age 65 which exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall not bear the additional costs.

C.   The City (and other related Employers) shall continue to contribute on a City employee benefits program-wide basis the additional annual amount of $30 million to maintain the health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefits.

The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the Blue Cross/GHI-CBP plan; and, if sufficient funds are available, to fund new benefits.

The health insurance stabilization reserve fund shall be credited with the dividends or reduced by the losses attributable to the Blue Cross/GHI-CBP plan.

D.   Pursuant to paragraph 7 of the 2005 MLC Health Benefits Agreement, notwithstanding the above, in each of the fiscal years 2001 and 2002, the City shall not make the annual $35 million contributions to the health insurance stabilization fund.

E.   In the event that there is a Citywide or program-wide health insurance package which exceeds the cost of the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein. However, it is understood that the UFOA will not be treated any better or any worse than any other Union participating in the Citywide of Program-wide Health Program with regard to increased health insurance costs.

## Section 4.  Health Care Flexible Spending Account.

a.   A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code. Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account. Participating employees shall contribute at least $260 per year up to a maximum of $5,000 per year. Said

contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan. Any unfunded balance may be deducted from final salary payments due an employee.

**b.** Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered. In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

**c.** An administrative fee of $1.00 per week for the first year shall be charged for participation in the program. An employee's participation in the account is irrevocable during a plan year. At the close of the plan year any excess balance in an employee's account will not be refunded.

### Section 5.

This Agreement incorporates the terms of the May 5, 2014 Letter Agreement regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee, as appended to this agreement.

### ARTICLE XI - ANNUITY FUND

The City shall continue to contribute the following to the Annuity Fund established by the Union, for each class of positions and detail as follows

A. Effective April 20, 2010

| Class of Positions or Detail | Per Annum Amount |
| --- | --- |
| Deputy Chief | $2,573.00 |
| Battalion Chief | $2,215.43 |
| Captain | $1,774.34 |
| Lieutenant | $1,656.89 |
| Fire Medical Officer | $1,797.83 |
| Supervising Fire Marshal (I and II) | $1,656.89 |

B. Effective February 1, 2015

| Class of Positions or Detail | Per Annum Amount |
| --- | --- |
| Deputy Chief | $2,312.00 |
| Battalion Chief | $1,954.43 |
| Captain | $1,513.34 |

| | |
|---|---|
| Lieutenant | $1,395.89 |
| Fire Medical Officer | $1,536.83 |
| Supervising Fire Marshal (I and II) | $1,395.89 |

C.   Effective June 15, 2018

| Class of Positions or Detail | Per Annum Amount |
|---|---|
| Deputy Chief | $2,573.00 |
| Battalion Chief | $2,215.43 |
| Captain | $1,774.34 |
| Lieutenant | $1,656.89 |
| Fire Medical Officer | $1,797.83 |
| Supervising Fire Marshal (I and II) | $1,656.89 |

D.   The City shall continue to contribute for each employee, on a twenty-eight (28) day cycle basis, a pro rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed the per annum amounts in Sections A. and B. for each employee in full pay status in the prescribed twelve (12) month period.

Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

## ARTICLE XII - VACATION AND LEAVE

### Section 1.

Each Fire Officer (line) shall be entitled to vacation leave as prescribed in the Annual Leave Allowance Program for the Fire Department as established by the Board of Estimate Resolution - 6/27/57 - (CAL. NO. 580) as amended to date, and in regulations for the Uniformed Force. Annual Leave Credit shall be pro-rated each year for the Fire Officers (line) appointed after January 1.

A.   An annual leave allowance, based on service in the Department, shall be granted to Fire Officers (line) in accordance with the following:

| SERVICE | ANNUAL LEAVE | MONTHLY ACCRUAL |
|---|---|---|
| 3 years & Over | 26 work days (10-9 hr. tours; 8-15 hr. tours) | 2-2/12 work days |
| Less than 3 years | 20 work days (8-9 hr. tours; 6-15 hr. tours) | 1-8/12 work days |

**B.**     Vacations shall be in accordance with an eight group chart.

## Section 2.

Present practice regarding annual leave for Fire Medical Officers and Supervising Fire Marshals I and II shall continue.

## Section 3.

**A.**     If an employee does not receive, or because of illness or the needs of the Fire Department, is unable to take all or part of the vacation in a calendar year, that employee may be entitled to carry the unused portion over into and take such unused portion during the succeeding year but not beyond.

**B.**     An employee's annual leave shall be changed to sick leave during a period of verified hospitalization or if that employee is seriously disabled but not hospitalized while on annual leave. The medical leave provided herein shall be administered in the same way as the medical leave program for employees who are not on leave. The Department's decision shall be final in granting leave under this paragraph.

**C.**     All Fire Officers (line) shall have the right with the approval of the commander involved to make mutual exchanges in full or in part of vacation time within a company, battalion or division, or adjoining companies, battalions, or divisions, as the case may be. Present single companies shall be paired by the Department and the foregoing procedures shall apply between the paired companies.

**D.**     Supervising Fire Marshals I and II shall have the right with the approval of the Chief Fire Marshal to make mutual exchanges in full or in part of vacation time.

## Section 4.

Excused time accorded to all other personnel employed by the City such as excusals for the Dr. Martin Luther King, Jr. and the Senator Robert F. Kennedy funerals and the Moon Landing Observation Day, shall be granted equally to employees covered by this agreement. Employees not accorded the day off shall be credited with compensatory time off.

## Section 5.

Compensatory days shall be subject to the exigencies of the Department. Where an employee is entitled to receive a compensatory day and is denied the request of that employee's choice of a compensatory day, that employee shall have the right, in accordance with existing procedures, to take such compensatory time subsequently, or, subject to the discretion of the Department, receive cash, at straight time, for the applicable period in which event payment shall be made as soon as

18005

possible. This provision is not applicable to Battalion Chiefs and Deputy Chiefs. The above provision shall not diminish or impair the rights of Battalion Chiefs and Deputy Chiefs to receive compensatory days under existing procedures.

### Section 6.

Any employee who is on light duty as a result of a line of duty illness or injury and who has not yet taken a vacation shall not be required to take the vacation while that employee is continued on light duty.

Rescheduling of any such vacation shall be subject to the exigencies of the Department.

### Section 7.

Before commencing duty with a new group, a Fire Officer (line) who has completed working two 9-hour or two 15-hour tours and who is entitled to a 48-hour or a 72-hour leave shall be permitted to complete the full 48-hour or 72-hour leave.

### Section 8.

Any employee applying for either ordinary or line-of-duty disability retirement, shall begin to receive all of that employee's accrued time, including accrued vacation, compensatory time, terminal leave and any other accrued leave, as of the date that employee submits a disability retirement application.

### Section 9.

All members off line (inclusive of light and full duty) who have a work schedule which provides for a regular day off (RDO) during the workweek shall forego this RDO in the week in which a holiday occurs. In the event that more than one holiday occurs in a week, the member must forego the RDO and one tour of annual leave or compensatory time. All members off line who have a work schedule which does not provide for a RDO during the work week must forego one tour of annual leave or compensatory time. Under no circumstances where a member is regularly scheduled to work on a holiday shall that member receive overtime or compensatory time for hours actually worked per that schedule (with the exceptions of veterans working on Memorial or Veteran's day). The intent of this provision is to ensure that a total of 40 hours needs to be accounted for by all UFOA members referred to above in a week in which a holiday occurs.

In lieu of foregoing a tour of annual leave or compensatory time, the member may reschedule an additional tour of duty with the consent of the Fire Department.

## ARTICLE XIII - SAFETY STANDARDS AND EQUIPMENT

### Section 1.

The Department shall establish minimum safety standards for vehicles, consistent with the standards of the State Motor Vehicle Bureau for comparable vehicles, and shall have annual inspections to insure the maintenance of these standards.

### Section 2.

Effective March 20, 2011, the Fire Department shall institute a ten year replacement policy for all first line (regularly assigned) ladder, squad, and rescue firefighting vehicles. The Department shall operate all first line engine, ladder, squad, and rescue companies with vehicles less than eleven (11) years of age.

Effective May 2, 2016, the Fire Department shall institute an eleven year replacement policy for all first line (regularly assigned) engine firefighting vehicles. The Department shall operate all first line engine companies with vehicles less than twelve (12) years of age.

If such vehicle is unavailable, this Section shall not affect the Fire Officer's duty to respond to all fires, other emergencies, and/or training assignments on available equipment.

## ARTICLE XIV - FACILITIES

All quarters shall have adequate heating, hot water, sanitary and sanitation facilities.

Notice of any claimed violation shall be given to the Department. If the Department does not correct the claimed violation within a reasonable time the Union may file a grievance at Step III of the grievance procedure.

## ARTICLE XV - TRANSPORTATION

The Department recognizes its responsibility to provide transportation to and from fires and in emergencies. When transportation is not made available, and an employee is authorized to use and uses that employee's personal car, he shall be paid $1.75 for that use. Payment shall be made within a reasonable time.

## ARTICLE XVI - VACANCIES

### Section 1.

In filling vacancies, the Department recognizes the importance of seniority (measured by time in the Rank) provided the senior applicant has the ability and qualifications to perform the work involved. However, the Department's decision is final.

### Section 2.

The Department shall periodically list vacancies in Department Orders.

## ARTICLE XVII - INDIVIDUAL RIGHTS

It is the policy of the Employer to secure for all employees their rights and privileges as citizens in a democratic society, consistent with their duties and obligations as employees of the Fire Department and the City of New York. To further the administration of this policy, the following guidelines are established:

### Section 1.

Interrogations, interviews, trials, and hearings conducted by duly authorized representatives of the Employer shall be conducted during reasonable hours, preferably when an employee is on duty. If an interrogation, interview, or hearing takes place when an employee is not on duty, that employee shall be compensated by cash payment for the time spent, including two hours of travel time, at the rate of time and one-half. If a trial takes place when an employee who is a witness is not on duty, that employee shall be compensated by cash payment for the time spent including two hours of travel time, at the rate of time and one-half. If a trial takes place when an employee who is an accused is not on duty, that employee shall be compensated by cash payment for the time spent, including two hours of travel time, at the rate of straight time, unless the trial was postponed by the accused for that employee's convenience or for the convenience of counsel and/or the union representative, in which case the accused shall receive no compensation.

### Section 2.

At the time an employee is notified to appear for interrogation, interview, trial or hearing the Employer shall advise the employee either in writing, when practicable, or orally to be later confirmed in writing of (1) the specific subject matter of such interrogation, interview, trial or hearing; and (2) whether that employee is a suspect or non-suspect. If notified orally, the employee shall be given a written notice before the interrogation, interview, trial or hearing. If an interrogation or interview may lead to disciplinary action, the employee may be accompanied by counsel and/or a union representative at such interrogation or interview.

### Section 3.

Notice of trial shall be in writing at least ten (10) days in advance of such trial, unless the employee waives such notice or unless that employee applies or has applied for a service retirement.

### Section 4.

The employee who is the subject of interrogation, interview, trial or hearing shall be advised of the name, rank, and unit of the officer in charge of the interrogation, interview, trial or hearing and the name, rank and unit or other identification of all persons present connected with the

interrogation, interview or hearing. The questioning of employees shall be of reasonable duration and the employee shall be allowed time for personal needs, meals and necessary telephone calls. Offensive or profane language shall not be used, nor shall the employee be threatened for failure to answer questions or promised anything if that employee does answer questions.

### Section 5.

When an employee is a suspect in a departmental investigation or trial, the officer in charge of the investigation or trial shall give the employee the following warning before that employee is questioned:

> I wish to advise you that you have all the rights and privileges guaranteed by the law of the State of New York and the Constitutions of this State and of the United States, including the right not to be compelled to incriminate yourself. You have the right to have an attorney present if you wish. I wish further to advise you that if you refuse to answer any questions relating to the performance of your duties, you will be subject to dismissal from your employment with the City. However, if you do answer questions, neither your answers nor any information or evidence which is gained by reason of such answers can be used against you in any criminal proceeding. You are advised, however, that if you knowingly make any false answers or deceptive statements, you may be subject to criminal prosecution and disciplinary action by reason thereof.

Such employee shall also be advised of the right to union representation. When the interrogating officer is advised by the employee that employee desires the aid of counsel and/or a union representative, the interrogation shall be suspended and the employee shall be granted a reasonable time to obtain counsel and/or a union representative, which time shall be at least two working days.

If it appears that the investigation may result in a disciplinary proceeding based on the Employee's answer to questions or on the refusal to answer, a stenographic or electronic record of the questioning of the employee shall be made unless the exigencies of the situation prevent such recording.

In the event that an employee is subject to charges by the Department, any such record shall be made available to the employee or the representative. The cost of the recording shall be shared equally by the parties.

### Section 6.

A.    An employee shall not be questioned by the Employer on personal behavior while off duty and out of uniform except that the Employer shall continue to have the right to question an employee about personal behavior while off duty and out of uniform in the following areas:

  i.    matters pertaining to official department routine or business;

      **ii.**    extra departmental employment;

      **iii.**   conflict of interest;

      **iv.**   injuries or illnesses;

      **v.**    residency;

      **vi.**   performance as volunteer firefighter;

      **vii.**  loss or improper use of department property.

**B.**    If an employee alleges a breach of subdivision (a) of this Section 6., that employee has the right to a hearing and determination by the Impartial Chair within 24 hours following the claimed breach. To exercise this right, the employee must request such arbitration at the time when an official of the Employer asks questions in an area which is disputed under subdivision (a) of this section. If the employee requests such arbitration, that employee shall not be required to answer such questions until the arbitrator makes the award.

### Section 7.

All employees are reminded that failure to answer relevant questions may result in disciplinary action including dismissal from the Department.

### Section 8.

In the course of an investigation or interrogation, an employee who is not a suspect is required to cooperate in the investigation of a complaint. Statements the employee has made in the course thereof may not be used against that employee in a subsequent proceeding in which that employee becomes a suspect.

### Section 9.

If an employee is found not guilty in a disciplinary hearing, the record of the proceedings shall not become part of that employee's personal record. An employee who is found not guilty shall have the right to examine the personal record in the presence of an official of the Department after written request to the Department to ascertain compliance.

### Section 10.

If the Employer fails to comply with the provisions of this Article, any questions put to the employee shall be deemed withdrawn and the refusal to answer any such questions shall not be prejudicial to the employee. Withdrawal as herein described shall not preclude the Department from proceeding anew in the manner prescribed herein.

### Section 11.

The employee shall have the right, at that employee's own expense, to have a personal physician consult with the Departmental Medical Board after the examination and interview of the employee, but before the Departmental Board completes its record and makes its recommendation. Present practice regarding filing of medical statements and documents shall continue.

### Section 12.

If an employee is subpoenaed to testify before a governmental body up to a maximum of two employees "per day" in a proceeding, the employee shall be compensated by cash payment for the time spent testifying, plus two hours travel time, provided that no compensation shall be paid unless the employee notifies the Department that that employee has received a subpoena within 72 hours after receipt of it; or as soon as that employee has received it if the return date is within 72 hours thereafter. Any amounts received by the employee as witness fees shall be deducted from compensation received by the employee from the Department pursuant to this Section.

## ARTICLE XVIII - GRIEVANCE PROCEDURE

### Section 1.

A grievance is defined as a complaint arising out of a claimed violation, misinterpretation or inequitable application of the provisions of this contract or of existing policy or regulations of the Fire Department affecting the terms and conditions of employment. A direct order, written or verbal, by a Superior Officer, under all circumstances, must be carried out and objections raised at a later date through the formal grievance procedure. The Union has designated the appropriate delegate, as defined in Article XIX of this Agreement, as a member's representative at Step No. I of these procedures. Such Battalion or special Union delegate shall be hereinafter referred to as the delegate. In the event that any employee shall present a grievance, such grievance shall be handled in the following manner:

## STEP NO. I

A-1.    An aggrieved member initiates the grievance procedure by explaining a problem verbally to that member's immediate supervisor.[1] The immediate supervisor in grievance procedures, for the purpose of verbal presentation, is defined as -

(a)    For Lieutenants - The Captain or other Commanding Officer of the unit involved.

(b)    For Captains - The Battalion Chief who is responsible for the day-to-day supervision.

---

[1] In some instances the Commanding Officer will also be the immediate supervisor, in which case the Commanding Officer will participate in the Step No. I as the immediate supervisor. If the matter is not resolved, that Officer will then act as the Commanding Officer.

1 8 0 0 5

(c) For Battalion Chiefs - The Deputy Chief who is responsible for day-to-day supervision.

(d) For Deputy Chiefs - The Staff Officer charged with administrative supervision over the division involved.

(e) For Supervising Fire Marshals - The Assistant Chief Fire Marshal.

(f) For Fire Medical Officers – The Supervising Chief Medical Officer.

(g) It is possible that such immediate supervisor may not be in a position to alleviate the grievance depending upon its context. However, in all cases the subordinate officer shall consult with the above-named immediate supervisor before engaging in any of the further delineated procedures. In addition, such immediate supervisor shall make every effort by consultation with superior officers involved to identify the grievance and remove the cause.

EXAMPLE: A grievance action by a Lieutenant may arise because of an action by a Battalion Chief. This Lieutenant must consult with that Lieutenant's Captain before engaging in other procedures outlined. A grievance action by a Captain may arise because of an action by the Battalion Commander, who is not that Captain's day-to-day supervisor. This Captain must consult with the Battalion Chief who is responsible for the day-to-day supervision before engaging in other procedures outlined.

2. If the matter is not resolved to the employee's satisfaction, the aggrieved employee may request the delegate to discuss the matter verbally with the immediate supervisor as noted above.

3. Prior to the formal presentation of the grievance or complaint to the immediate Commanding Officer, who, for the purpose of these grievance procedures, is defined as:

(a) For Lieutenants - Battalion Commander,

(b) For Captains - Battalion Commander,

(c) For Battalion Chiefs - Division Commander,

(d) For Supervising Fire - The Assistant Chief Fire Marshal,

(e) For Fire Medical Officers – Supervising Chief Medical Officer, and

(f) For Deputy Chief - Staff Officer charged with administrative supervision over the involved division.

Every effort shall be made to find ways and means of identifying and removing the cause of the grievance or complaint.

4.      If the matter remains unresolved following the discussion outlined above, the grievance shall formally be submitted in writing, on a prescribed form, to the immediate Commanding Officer, as noted above. Such formal submission must, in any event, occur within 120 days following the date on which the grievance arose.

B-1.    Upon request of the aggrieved employee, the delegate shall accompany the employee at a meeting with the immediate Commanding Officer, as noted above, who shall specify date, time and place of hearing. Said Commanding Officer shall, within five (5) calendar days of receipt of appeal, notify all concerned of the date, time, place of hearing and details of grievance.[2]

2.      The determination of the immediate Commanding Officer passing on the grievance shall be in writing, and a report shall be forwarded on the prescribed form to the Fire Commissioner, the aggrieved and the delegate within three (3) calendar days after the meeting.

3.      If the grievance is not resolved to the satisfaction of the aggrieved, the employee has the right to proceed to the next step in the grievance procedure.

C-1.    Time lost by a delegate or union representative in the adjustment of a grievance shall not be compensable.

2.      Time lost by an aggrieved member in the adjustment of a grievance shall not be compensable.

D-1.    Failure to Appeal - Any grievance decision not appealed within five (5) calendar days after receipt of the Department's answer in the previous step shall be considered as settled on the basis of such an answer and not subject to further appeal. This limitation is applicable to all steps.

## STEP NO. II

A member of the Union Executive Board shall be the member's representative at this step of the grievance procedure. The official to whom the appeal shall be made is designated as follows:

(a)     For Company Officer - The Division Commander.

(b)     For Battalion Chiefs - The Staff Officer charged with administrative responsibility

---

[2] If the grievance relates to a nature of an order issued by a superior, Section 25.1.1 of Regulations for the Uniformed Force shall be complied with.

18005

for the involved division.

(c)    For Deputy Chiefs assigned or reporting to the Bureau of Fire - The Chief of Department.

(d)    For all other Deputy Chiefs - The Chief in Charge, Bureau of Personnel and Administration.

(e)    For Supervising Fire Marshals - The Chief Fire Marshal.

(f)    For Fire Medical Officer - The Chief in Charge, Bureau of Personnel and Administration.

**A-1.**    An appeal from the Step I determination shall be forwarded by the aggrieved, in writing, on the prescribed form, to the Officer to whom the appeal is to be made within five (5) calendar days after the aggrieved received a copy of the determination of the immediate Commanding Officer.

**B-1.**    Upon request of the aggrieved employee, a member of the Union Executive Board shall accompany that employee at a meeting with the Officer to whom the appeal is to be made who shall specify the date, time, place of hearing and details of grievance.

**C-1.**    The determination of the Officer passing upon the appeal shall be in writing and a report shall be forwarded on the prescribed form to the Fire Commissioner, the aggrieved and the Representative within five (5) calendar days after the hearing.

**2.**    If the grievance is not resolved at this level, the aggrieved, either individually or by the representative has the right to proceed to the next step in the grievance procedure.

## STEP NO. III.

The President and members of the Executive Board may be designated as the Union representatives on the Department level; no more than four (4) members of the Executive Board are to attend a meeting.

**A-1.**    An appeal from the Step II determination must be forwarded in writing by the aggrieved, on the prescribed form, to the Fire Commissioner within five (5) calendar days after the aggrieved receives a copy of the determination.

**B-1.**    The Commissioner, the Chief of Department, the Chief in Charge - Bureau of Personnel and Administration, and/or their designees, the aggrieved and/or the representatives shall work for a satisfactory resolution of the grievance or complaint through conference, negotiation, and agreement. Such conference shall be held within ten (10) days of the receipt of the appeal. The Commissioner shall within five (5) days after such conference serve the determination, in writing, upon the aggrieved employee and the representative.

## STEP NO. IV.

If, after completion of all of the steps provided for above, the grievance has not been resolved, the Union solely shall have the right to bring such grievance to the Impartial Chair for arbitration in accordance with the applicable provisions of the New York City Collective Bargaining Law and Consolidated Rules promulgated by the Office of Collective Bargaining with respect to arbitration. Notice of the Union's intent to proceed to arbitration shall be served on the Commissioner of Labor Relations within ten (10) days of receipt by the Union and the employee of the decision of the Commissioner or the designated representative. In addition, the Employer shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined as a "grievance" herein. The Employer shall commence such arbitration by submitting a written request therefore to the Impartial Chair, with a copy to the Union, and the matter shall proceed in accordance with the Consolidated Rules of the Office of Collective Bargaining. The Impartial Chair shall hold a hearing within ten (10) days after the Chair receives a request for arbitration at a time and place convenient to the parties, and the Chair shall issue an award within ten (10) days after the completion of the hearing.

## Section 2.

The time limits contained in this Article may be modified by mutual agreement. Any grievance decision not appealed within the time limits prescribed in this Agreement after receipt of the determination of the appropriate department official shall be considered settled on the basis of such determination and shall not be subject to further appeal.

In the event that the Department fails to comply with the time limits prescribed herein, the grievance automatically shall be advanced to the next step.

## Section 3.

It is understood and agreed by and between the parties that there are certain grievable disputes which are of a department level or of such scope as to make adjustments at Step I and Step II of the grievance procedure impracticable, and, therefore, such grievance shall be instituted at Step III of the grievance procedure. The Union may petition the Impartial Chair for leave to file a grievance involving potential irreparable harm concerning safety and health directly at Step IV. The Impartial Chair shall have the power to permit such grievance at Step IV for good cause shown or direct said grievance to be instituted at Step III. If the Impartial Chair determines that the grievance may be properly filed directly at Step IV, the City retains its right to assert all defenses which may be properly raised at Step IV.

## Section 4.

When possible, every effort shall be made to hold grievance hearings when a union representative involved is on duty.

**Section 5.**

Individual Borough Commands shall not establish policy and/or programs at variance with this Agreement. A copy of every Borough policy directive shall be sent to the Union when issued.

## ARTICLE XIX - DELEGATES

The Union shall designate a Delegate for each Battalion and the following units:

> Office of the Chief of Department
> Division of Fire Prevention
> Division of Training
> Division of Safety
> Marine Division
> Division of Repairs and Transportation
> Community Relations Bureau
> Medical Division and Medical Office
> Fire Emergency Division
> Bureau of Fire Investigation (2 Delegates)

Each delegate shall perform the regular duties as an employee and shall be considered a representative of the Union.

## ARTICLE XX - NO STRIKE

The Union and the Employees shall not induce or engage in any strikes, slowdowns, work stoppages or mass absenteeism nor shall the Union induce any mass resignations during the term of this Agreement.

## ARTICLE XXI - IMPARTIAL CHAIR

As soon as practicable after the execution of this Agreement, the parties hereto will designate an Impartial Chair to act during the term of this Agreement. The Impartial Chair shall serve as arbitrator in all instances where arbitration is called for under the terms and conditions of this Agreement, and, further, he shall be available to serve as mediator in all disputes arising under this agreement or between the Union and the Employer.

Should the Impartial Chair resign, refuse to act or be incapable of acting or should the office become vacant for any reason, the parties shall immediately designate another person to act as such Impartial Chair. If the parties cannot agree on the successor Impartial Chair, then arbitrations under the grievance procedures of this Agreement shall be held pursuant to the Consolidated Rules of the Office of Collective Bargaining.

## ARTICLE XXII - DETAILS TO OTHER UNITS

### Section 1.

A.    In the event that a Company Officer is detailed to a unit other than the unit to which that Officer is permanently assigned, if that Officer is required to report at the other unit at the start of a respective tour (e.g., 0900, 1800, etc.), that Officer shall receive compensation for travel to the unit to which that Officer is detailed at the rate of time and one-half for 45 minutes of travel time if the detailed unit is within the same borough as that Officer's permanent unit or 1-1/4 hours if the detailed unit is in a different borough than that of the permanent unit.

B.    In the event that a Company Officer is detailed to a unit other than the unit to which that Officer is permanently assigned and that Officer cannot return to the permanent unit within a regular tour of duty (e.g., by 1800, 0900, etc.), that Officer shall receive compensation for travel to the permanent unit at the same rates as stated in paragraph A. hereof.

C.    In any event, if the Department transports such detailed Company Officer, then that Officer shall receive compensation at time and one-half only for the actual travel time outside of the regular tour of duty.

### Section 2.

In the event that a Company Officer is detailed for more than a single tour and is entitled to receive compensation for travel time, the Company Officer so detailed shall receive compensation for travel time in the manner prescribed in Section 1 of this Article only for the beginning of the first and the end of the last day of such detail.

### Section 3.

A Company Officer shall not be eligible for compensation for travel time as provided in this Article if:

a.    The detail is for training assignment of any type or to any training location,

b.    The Company Officer is detailed while on light duty status,

c.    The Company Officer who is detailed is assigned to the limited service squad,

d.    The Company Officer is detailed from a staffing pool,

e.    The Company Officer who is detailed earns overtime on the detail,

f.     The Company Officer is detailed to a company in the same quarters as that Officer's own or in adjacent quarters,

g.     The Company Officer is a covering officer.

### Section 4.

When computing overtime compensation for travel time as required by this Article, the basic hourly rate excluding all premiums shall be used.

### Section 5.

When a covering officer is to be given a one-tour assignment outside the assigned division and there are multiple vacancies, best efforts will be made by the Department to assign that Officer to a division as close as possible to that Officer's residence.

## ARTICLE XXIII - SPECIAL EXPENSE FUND

### Section 1.

The Special Expense Fund for Firehouses will be continued in the amount of $100 per unit per year. A Unit for these purposes is defined as a Fire Company, a Rescue Company, a Squad Company, a Marine Company, a Fire Battalion, a Fire Division, a Fire Prevention District Office, and a Super Pumper Company.  The purpose of establishing such Special Expense Fund is to enable certain purchases to be made with the least possible loss of time.  These purchases shall entail a minor expense and shall be of an emergent nature (that is, cannot practicably be handled by normal requisition procedures).

### Section 2.

The maximum expenditure per purchase shall be $25.  Expenditures in amounts not exceeding $25 shall be authorized by the Unit Commander.  All expenditures shall be subject to the procedures as set forth in PA/ID 2-70, effective January 26, 1970.

### Section 3.

Subject to the Comptroller's approval, units shall only be required to submit annual Special Expense Fund reports, provided that such report is submitted by May 15.

### Section 4.

The Fire Department shall establish a pilot program involving no more than 3 companies, wherein the Special Expense Funds of such companies shall be increased so as to allow for the purchase of

necessary supplies and materials for the company quarters from such Funds. The Department shall monitor and evaluate such program and keep the Union advised.

## ARTICLE XXIV - LABOR-MANAGEMENT COMMITTEE

### Section 1.

The Employer and the Union recognize that cooperation between labor and management is indispensable to the accomplishment of sound and harmonious labor relations and agree to jointly maintain and support a Labor-Management Committee ("Committee").

### Section 2.

The Committee shall consider and may recommend to the Fire Commissioner changes in the working conditions of the employees, including, but not limited to, health and safety issues. Matters subject to the Grievance Procedure contained in this agreement shall be appropriate items for consideration by the Committee, but submission of a matter to the Committee shall not affect the right to grieve the matter.

### Section 3.

The Committee shall consist of six members. The Fire Commissioner and the President of the Union shall each select three members, and may designate an alternate for each member authorized to act in the absence of a member. Members shall serve for the term of this Agreement, provided, however that the appointing party may remove members that party has appointed at any time. Vacancies shall be filled by the appointing party.

### Section 4.

The Committee shall select a Chair from among its members at each meeting. The chair of the Committee shall alternate between the members designated by the Fire Commissioner and the members designated by the President of the Union. A quorum shall consist of a majority of the total membership of the Committee. The Committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties. A written agenda of the matters to be discussed shall be provided by the party calling the meeting at least one week in advance of the meeting, and the other party shall provide any additions to the agenda at least one day in advance. Minutes shall be kept of each meeting with responsibility for keeping minutes alternating between the members designated by each of the parties. Copies of minutes shall be typed and promptly distributed to all members of the Committee. The Committee shall make its recommendations to the Fire Commissioner in writing.

## ARTICLE XXV-A - PRODUCTIVITY ISSUES

<u>Section 1.</u>

The Union recognizes that the provisions of this Article XXV-A are matters concerning which the City has the right to act unilaterally. Notwithstanding the above, the parties agree to the following sections:

<u>Section 2.</u>      <u>Flexible Response.</u>

The Union recognizes the unilateral right of the City to determine the type and level of response, City-wide.

<u>Section 3.</u>      <u>Weighted Response Index ("W.R.I.")</u>

A.      The impact of the W.R.I. decision is suspended until July 1, 1973.

B.      Between December 31, 1972 and July 1, 1973, the Impartial Chair shall study data presented by the parties in order to determine:

   (1)      What the data shows with respect to the W.R.I.

   (2)      Whether the Impartial Chair wants to make changes in the cut-off numbers in the W.R.I.

C.      If after July 1, 1973 there is an application of the W.R.I. as it is now or may be changed by the Impartial Chair, the 52-week period of measurement referred to in the decision shall be July 1, 1972 to July 1, 1973, or such later period as the Impartial Chair may provide.

D.      After July 1, 1972, the City may make unilateral changes and install programs unilaterally subject to the following:

   (1)      Submission of the intended program to the Office of Labor Relations.

   (2)      No less than 2 weeks notice of the change is to be given to the Union.

   (3)      Within the two weeks the Union is to be given an opportunity to discuss the changes with the City.

   (4)      If no agreement is reached as a result of such discussion, the City may install the program; and the Union reserves all rights it has to oppose the same.

<u>Section 4.</u>

Runs and workers shall be credited to the relocated working company.

## ARTICLE XXV-B - PRODUCTIVITY ISSUES

**Section 1.**   **Attack Units**

A.   The Union recognizes the right of the Fire Department to establish Attack Units as follows:

1.   In those quarters which at the time of the installation of an Attack Unit house a Tower Ladder and Rapid Water Pumper, the companies in those quarters may be merged (into 1 company) and their designation changed to Attack Unit Company. Each such company so designated and merged as an Attack Unit shall be commanded by a Company Officer of the rank of Captain at all times and on all tours. If the Tower Ladder or Rapid Water Pumper of an Attack Unit is out of service, it will be replaced by a like piece of equipment from available spares of a non-Attack Unit Company as quickly as possible.

2.   Attack Units shall be installed only in quarters currently in Type 7 Hazard Region, as that Region is now designated by the Fire Department, and in City Island, and will be relocated or interchanged only with other Attack Unit Companies.

3.   The Department may install a maximum of ten (10) Attack Units.

4.   At the time an Attack Unit is installed there will be an increase in quota in the number of Captains so that there will be a sufficient number to staff such unit and a reduction in the quota of the number of Lieutenants. This provision does not limit quota increases and/or decreases which may result due to other factors or Department policies.

5.   Each Attack Unit shall be assigned clerical help in the rank of Firefighter during the daytime tours, except Saturdays, Sundays and Holidays. Duties to be performed by such Firefighter shall be determined by the Company Commander.

6.   The Attack Unit program shall not be used as a factor in the reduction of response. However, the union recognizes the rights of management to reduce response and to change alarm assignments for other reasons. This shall not change the nature of an Attack Unit as a two-piece response.

7.   The Department shall establish a training program for Officers who are to be assigned to the Attack Units and shall familiarize the Uniformed Fire Officers Association with such training program. Any Company Officer permanently assigned to the Attack Units shall receive training in such training program prior to that Officer's assignment. Every reasonable effort shall be made to provide prior similar training to Company Officers who will be temporarily assigned to such Attack Units.

8.   The Department shall provide the Uniformed Fire Officers' Association with

fourteen (14) days notice prior to the installation of any Attack Unit. Any Company Officer who by virtue of the establishment of an Attack Unit is to be reassigned to another company shall be given a reasonable priority consideration in choice of assignment. However, the Department's decision shall be final.

## Section 2.

Firefighters in an Attack Unit shall not be required to perform duties of a supervisory nature on a regular and recurring basis as a result of establishment of an Attack Unit. If it is found by an arbitrator that a particular duty performed by a Firefighter in an Attack Unit is supervisory the arbitrator may order the cessation of the particular duty found to be supervisory and the arbitrator's award shall be limited solely to the ordering of such cessation. It is recognized that fire scene supervision is continued by means of a handie-talkie or similar communication by an officer during excursions (such as, without limitation, examining a floor above a fire, examining the front of a building, or attending to other matters that require that officer's presence) from the fire floor, hose line locations, apparatus locations or other fire scene operational areas. Duties performed by a Firefighter not in the presence of an officer but pursuant to handie-talkie or similar communication with an officer, including (without limitation) relaying of orders received from an officer, do not constitute supervisory work. Officer supervision via a handie-talkie or similar communication is considered to be direct supervision and control of any such operation.

## ARTICLE XXV-C - NEW PROGRAMS

The Commissioner may elect to submit a proposed program under the provisions of either Article XXV-A, provided however, that having elected which procedure to follow, the Commissioner may not thereafter resubmit the same program under the alternative procedure. In the event it is determined by the appropriate forum that the Commissioner did not have the right to proceed under the Article elected, the Commissioner may then seek to proceed under the alternative procedure.

Notwithstanding the above, the Union agrees that the Commissioner's right to implement new programs under Article XXVI-A has in no way been diminished by the inclusion into this agreement of Article XXVI-C.

## ARTICLE XXVI - LINE OF DUTY DEATH BENEFIT

## Section 1.

In the event that a Fire Officer (line) or Fire Medical Officer dies because of an injury incurred through no fault of that Officer's own while actually responding to, working at or returning from an alarm, or, in the case of a Supervising Fire Marshal I and II because of an injury directly resulting from a hazard unique to Fire Marshal duty through no fault of that Marshal's own, a payment of $25,000 will be made from funds other than those of the Retirement System, in addition to any other payment which may be made as a result of such death. Such payment shall be made to the beneficiary designated under the Retirement System or, if no beneficiary is so designated, to the estate of the deceased.

## Section 2.

Semi-private hospital accommodations shall be provided for employees injured in the line of duty.

## ARTICLE XXVII - DEATH BENEFIT UNUSED LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, that employee's estate shall receive payment in cash for the following as a death benefit:

A.     All unused accrued annual leave up to a maximum of 54 days' credit;

B.     All unused accrued compensatory time earned subsequent to March 15, 1968 which is verifiable by official Department records up to a maximum of two hundred (200) hours.

## ARTICLE XXVIII - MISCELLANEOUS

### Section 1.

The City shall continue to maintain in effect for each Fire Officer (line) rank the Limited Service Status quota in effect on September 26, 1975.

### Section 2.

Company relocations as provided for on assignment cards will be reviewed after the program is operational.  It is intended to relieve the busiest companies from the added burden of routine relocations.

### Section 3.

Damaged tools and equipment will be repaired and/or replaced promptly.

### Section 4.

Photocopy machines will be provided for each Division.

### Section 5.

The Fire Department will supply the Union on a regular basis, data necessary to determine compliance with the workload standards referred to in this Agreement.

### Section 6.

To the maximum extent practicable and consistent with City policy, parking spaces up to a maximum of one space per unit, will be made available for the cars of employees adjacent to, part of, or as close as possible to firehouses, and such spaces will be marked appropriately. The Department will issue appropriate parking permits for the designated areas. The UFOA shall notify the Department, the Transportation Administration, and the Office of Labor Relations of any requests for parking spaces. The City shall have 10 days to respond to such requests. If the response is a denial, it shall be specific as to the reasons. If the UFOA disagrees with any such denial, it shall inform the Office of Labor Relations as to the specific reasons for its disagreement, and may refer the matter to the Impartial Chair for advisory arbitration.

**Section 7.**

In order to improve the efficiency, productivity, health and morale of officers, existing practices regarding meal periods shall be modified as follows:

Each unit shall be scheduled to receive one half-hour meal period in each tour as described in AUC. Response to fires and other emergencies by a unit during its rest period shall be governed by the provisions of that circular.

**Section 8.**

The Department shall provide each member with a laminated identification card, including a photograph of each member. In the event the card is lost, the replacement cost shall be borne by the employee. Possession of the identification card shall be mandatory. If there is a change in the use of identification cards for purposes other than identification, the City and UFOA shall meet to discuss those changes and bargain, where necessary.

**Section 9.**

A.    Each member shall receive a duplicate copy of any medical records made by the Department which are included in the member's medical/personnel file at the time of the preparation of such records.

B.    The Department shall have a reasonable time to develop and implement the necessary systems and paperwork to comply with the foregoing.

**Section 10.**

Pursuant to regulations promulgated by the Department, the Employer shall reimburse any employee for property loss or damage sustained to the employee's personal vehicle when such vehicle's use is authorized to provide transportation while in the performance of the employee's duty.

**Section 11.**

The City shall furnish to each unit a copy of the collective bargaining agreement within 60 days of its final approval.

## Section 12. - Performance Compensation

The City acknowledges that each of the uniformed forces performs an important service that reflects the diverse missions of the City's uniformed agencies. In order to reward service of an outstanding, exceptional nature, each of the uniformed agencies will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments. The City will notify and discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for the granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law. An employee can receive no more than one payment annually.

This provision shall not affect any existing productivity programs covered in any existing collective bargaining agreements. Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## Section 13.

All Fire Officers shall be required to assume all the duties associated with completing the electronic forms: PCR, CD-72, CD-73 and, MD-X3. In completing the CD-72, CD-73 and MD-X3, Fire Officers shall verify an incident as a witness or indicate that the officer completing the form was not a witness to the incident.

## Section 14.

The resolution of the Board of Estimate of the City of New York dated June 27, 1957, states the following:

> *Members of the Force shall be granted terminal leave with pay upon retirement not to exceed one month for every ten years of service, pro-rated for a fractional part thereof, provided, however, that no terminal leave shall be granted to an employee against whom departmental disciplinary charges are pending.*

Effective February 1, 2015, such employees as described in the Resolution above and are entitled to payment and who are members of the UFOA shall now be entitled to voluntarily choose the

18005

option of a one-time lump sum payment as their terminal leave benefit in lieu of their current terminal leave benefit prior to retirement. Such payments shall be made as soon as practicable after retirement. In the event that a change in legislation is needed to effectuate this agreement, the parties agree to jointly support the necessary legislation to implement these terms.

## Section 15.

The Union has withdrawn the following litigation:
- BCB-2928-11 (Roster Staffing)
- BCB-3099-13 (Supervising Fire Marshal Staffing)
- BCB-4012-13 (Promotions)

The Union's withdrawal of BCB-3099-13 shall be without prejudice to its legal rights if a similar controversy arises in the future.

The Union further agrees that it will not proceed further on the following litigation:
- A-13760-11 and Index No. 152070/13 (Fire Apparatus)

## ARTICLE XXIX - QUARTERMASTER SYSTEM

## Section 1.

Fire Officers will be included in the Fire Department Quartermaster System and receive an annual cleaning allowance of $520 per Fire Officer (line) and Supervisory Fire Marshal I and II and $355 per Fire Medical Officer.

## Section 2.

Fire Officers and Supervisory Fire Marshals shall be afforded the same tax treatment of the cleaning allowance as currently afforded to Firefighters in the Quartermaster System.

## ARTICLE XXX - APPLICABLE LAWS

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York, as amended.

## ARTICLE XXXI - SAVINGS CLAUSE

Should any part of this Agreement or any provision herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions thereof.

WHEREFORE, we have hereunto set our hands and seals this _____ day of June, 25th 2018

CITY OF NEW YORK

UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, Affiliated with AFL-CIO

BY: _____
ROBERT W. LINN
Commissioner

BY: _____
JAMES LEMONDA
President

APPROVED AS TO FORM:

BY: _____
ERIC EICHENHOLTZ
Acting Corporation Counsel

DATE SUBMITTED TO THE FINANCIAL CONTROL BOARD:

UNIT: FIRE OFFICERS

TERM: March 20, 2011 to March 19, 2018

OFFICE OF LABOR RELATIONS
REGISTRATION

OFFICIAL          CONTRACT

NO: 18005          DATE: JUN 25 2018



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, NY 10007

Dear Mr. McDonnell:

   A medical expert designated by the UFOA and the UFA and a representative designated by the Fire Department shall meet to develop procedures to monitor Firefighters who may be exposed to hazardous materials.

Very truly yours,

*James F. Hanley*

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: _John J. McDonnell_
    John J. McDonnell

Modified - Uniformed Fire Officers Association            Term: March 20, 2007 to March 19, 2011

18005

THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
## 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, NY 10007

Dear Mr. McDonnell:

Employees who have transferred from the uniformed service of the New York City Department of Correction to the Fire Department shall be treated in the same manner as if they had transferred from the uniformed service of the New York City Police Department for the purpose of calculating increments and longevity adjustments.

Very truly yours,

*James F. Hanley*

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: *John J. McDonnell*

John J. McDonnell

Modified - Uniformed Fire Officers Association          Term: March 20, 2007 to March 19, 2011

18005

THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, NY 10007

Dear Mr. McDonnell:

The parties to the collective bargaining agreement between the Uniformed Fire Officers Association, Local 854, AFL-CIO ("UFOA") and the City of New York agree as follows:

1a. The Fire Department will not schedule AFID-AFRD and other outside activities where severe weather conditions such as extreme heat or cold and heavy rain or snow exist. The parties will resolve any problems with the application of such departmental policy in the labor-management committee and such matters will not be subject to the grievance and arbitration procedure. In the event that any such problems are not resolved in the labor-management committee, such scheduling in inclement weather shall be the same as that for Firefighters.

b. Notwithstanding the foregoing, the Fire Department will not regularly schedule AFID to be performed during more than one scheduled period per tour, on weekends, or between 6 P.M. and 9 A.M.

c. Outside activities in the morning and afternoon shall be scheduled to permit a reasonable meal period in between.

d. The Fire Department will undertake to review and reduce paperwork required for AFID-AFRD. The Fire Department will advise the UFOA of the process of such review and permit the UFOA to participate therein. Such process and the results thereof shall not be subject to Step IV of the Grievance Procedure.

2.    The UFOA may utilize its Civil Legal Representation Fund for the purpose of providing another form of benefit to the membership than that currently in effect, subject to the written agreement of the parties as to the nature of such benefit.

Very truly yours,

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: _____
John McDonnell



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, NY 10007

Dear Mr. McDonnell:

It is the intent of the City to use its best efforts to secure private room accommodations in a hospital for employees injured in the line of duty. This Section shall not be subject to the grievance procedure.

Very truly yours,

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: _____
John J. McDonnell

Case 1:20-cv-05441-KPF   Document 10-11   Filed 07/17/20   Page 52 of 66

UNIFORMED
FIRE DEPARTMENT, CITY OF NEW YORK
FIRE OFFICERS
LOCAL 854, INTERNATIONAL ASSN. OF FIRE FIGHTERS, AFL-CIO
ASSOCIATION

**225 BROADWAY    NEW YORK, NY 10007    SUITE 401**
**TEL: (212) 293-9300   FAX: (212) 292-1560   EMAIL: WWW.UFOA.ORG**

June 8, 2009

Commissioner James F. Hanley
Office of Labor Relations
40 Rector Street
New York, New York 10006

Dear Commissioner Hanley:

This letter will confirm our mutual understanding that as a matter of past practice Fire Officers
have taken fifteen minutes before their tours to exchange information between ingoing and
outgoing officers.

Very truly yours,

John J. McDonnell



18005



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

*JAMES F. HANLEY*
Commissioner
*MARGARET M. CONNOR*
First Deputy Commissioner

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, New York 10007

Dear Mr. McDonnell:

The City and the UFOA recognize pursuant to Administrative Code section 12-127 the City is obligated to pay for the cost of line of duty prescription drugs for UFOA members. The parties further recognize that a significant number of UFOA members have utilized the UFOA Family Protection Plan to pay for reimbursement of these prescription drugs without cost to the City. The UFOA agrees to waive any and all claims retroactively and prospectively against the City for the reimbursement of the cost of line of duty injury prescription drugs incurred in outpatient treatment.

Very truly yours,

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY:

John J. McDonnell

Modified - Uniformed Fire Officers Association          48          Term: March 20, 2007 to March 19, 2011

18005



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, New York 10007

Dear Mr. McDonnell:

The City shall grant additional release time to six UFOA Executive Board members by way of releasing them from all scheduled night tours of duty (6x9).  Such additional release time shall be governed by Executive Order 75, ("EO 75") except insofar as the UFOA has funded the ongoing costs of such additional release time for the term of this Agreement and thereafter out of the settlement costs of this collective bargaining agreement and therefore section 4(1) of EO 75 shall not apply to this additional release time.

Very truly yours,

*James F. Hanley*

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: *John J. McDonnell*

John J. McDonnell

18005

Case 1:20-cv-05441-KPF   Document 10-11   Filed 07/17/20   Page 55 of 66



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, New York 10007

Dear Mr. McDonnell:

The parties shall establish a committee including the First Deputy Commissioner of the Fire Department or his/her representative, a representative of UFOA and a representative of the Office of Labor Relations to address issues of paperwork reduction. The Committee may include others on whom the parties may agree.

Very truly yours,

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: _____
John J. McDonnell

Modified - Uniformed Fire Officers Association          50          Term: March 20, 2007 to March 19, 2011

18005



THE CITY OF NEW YORK
## OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

*JAMES F. HANLEY*
*Commissioner*
*MARGARET M. CONNOR*
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, N.Y. 10007

Dear Mr. McDonnell:

    The City reaffirms its commitment to the concept of parity which it defines as basic maximum salary among uniformed employees.

Very truly yours,

*James F. Hanley*

James F. Hanley

Modified - Uniformed Fire Officers Association      Term: March 20, 2007 to March 19, 2011

18005



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell, President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, N.Y. 10007

Dear Mr. McDonnell:

This is to confirm that the parties will jointly support legislation to allow active Tier II employees covered by this agreement to purchase Tier I benefits at their expense through payroll deductions.

This agreement is subject to the parties agreeing upon the costs of these benefit improvements. The cost of these benefit improvements and any additional health insurance costs will be borne entirely by the participating employees without any cost to the City.

A pension labor management committee will be established to agree upon the details of the proposed legislation and its attendant costs.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: John J. McDonnell

Modified - Uniformed Fire Officers Association                    Term: March 20, 2007 to March 19, 2011

18005



# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705

nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

**RENEE CAMPION**
*First Deputy Commissioner*

**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

**MAYRA E. BELL**
*General Counsel*

**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

James Lemonda, President
Uniformed Fire Officers Association
125 Maiden Lane, 6th Floor
New York, NY 10038

Re: UFOA Agreement covering the period from March 20, 2011, to March 19, 2018

Dear Mr. Lemonda:

The parties agree to the extension of the fire salvage program to all ladder companies citywide.

Very truly yours,

Robert W. Linn

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

BY: _____
James Lemonda

18005



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell
President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, New York 10007

Dear Mr. McDonnell:

Effective September 1, 2007, there shall be an assignment differential payable over three years (four steps) to Lieutenants, Captains, and Battalion Chiefs, assigned or long term detailed to "special assignments" in the following companies: HAZ-MAT, HAZ-MAT Battalion, Rescue Companies, SOC (Rescue) Battalion, Squads and HAZ-TECH Engine Companies. Covering officers assigned to SOC are included in the special assignment.

The four step plan will include rate increases to base salary of:

- 3% upon assignment;
- 6% upon completion of one year of assignment;
- 9% upon completion of two years of assignment; and
- 12% upon completion of three years of assignment (with the exception of Battalion Chiefs who shall receive 10.84%).

Notwithstanding the foregoing paragraph, members assigned or long term detailed prior to September 1, 2007 to the above "special assignments", including covering officers assigned to SOC, shall be slotted in at the appropriate level based upon years of service in these units in their current title.

Deputy Chiefs assigned or long term detailed to the SOC (Rescue) and HAZ-MAT Operations shall receive an annualized differential of $2,500 upon assignment to these units.

The parties will convene a labor-management meeting to discuss implementation of this "special assignment," as well as to discuss the potential inclusion of other units in this program.

If the above conforms to your understanding, please execute the signature line below.

Sincerely,

James F. Hanley
Commissioner

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

By: _____
John J. McDonnell, President UFOA



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell
President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, New York 10007

Dear Mr. McDonnell:

The parties acknowledge that, from time to time, the headcount at the Fire Department varies. The parties agree to convene at the union's request, a Labor Management committee which shall include representative(s) from the Mayor's Office of Labor Relations to discuss changes in the headcount and its impact, if any, on UFOA members.

Very truly yours,

James F. Hanley
Commissioner

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

By: _____
John J. McDonnell, President UFOA

Modified - Uniformed Fire Officers Association

Term: March 20, 2007 to March 19, 2011

18005



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

*JAMES F. HANLEY*
*Commissioner*
*MARGARET M. CONNOR*
*First Deputy Commissioner*

John J. McDonnell
President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, New York 10007

Dear Mr. McDonnell:

Policies and procedures for Extra Departmental Employment (EDE) as described in PA/ID 12-67 will be modified to waive the requirements for EDE except as noted herein. EDE remains prohibited while members are on medical leave and light duty; however, EDE may be permissible while on light duty if approved by the Fire Commissioner or his designee. EDE will remain prohibited as per PA/ID 12-67 for Conflicts of Interest, and as noted currently in PA/ID 12-67 Section 1.8 and 1.10. In addition, EDE must not interfere or conflict with the regular departmental duties or with availability for overtime or emergency duty. Existing procedures for approval of EDE for those who will continue to be subject to such requirements will remain as per PA/ID 12-67. Lastly, the Fire Commissioner reserves the right to deny or revoke permission for any specific occupation or place of employment notwithstanding regulations and orders.

If the above conforms to your understanding, please execute the signature line below.

Sincerely,

James F. Hanley
Commissioner

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

By: 

John J. McDonnell, President

Modified - Uniformed Fire Officers Association

Term: March 20, 2007 to March 19, 2011

18005



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

John J. McDonnell
President
Uniformed Fire Officers Association
225 Broadway, Suite 401
New York, New York 10007

Dear Mr. McDonnell:

At the request of the Union, the Fire Department will convene a labor management meeting to discuss the issues related to accrual and disposition of compensatory time, which will include representative(s) of the NYC Mayor's Office of Labor Relations.

Sincerely,

James F. Hanley
Commissioner

AGREED AND ACCEPTED ON BEHALF OF THE UFOA

By: John J. McDonnell, President

Modified - Uniformed Fire Officers Association          Term: March 20, 2007 to March 19, 2011

18005



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006–1705
http://nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

May 5, 2014

Harry Nespoli
Chair, Municipal Labor Committee
125 Barclay Street
New York, NY 10007

Dear Mr. Nespoli:

This is to confirm the parties' mutual understanding concerning the following issues:

1.    Unless otherwise agreed to by the parties, the Welfare Fund contribution will remain constant for the length of the successor unit agreements, including the $65 funded from the Stabilization Fund pursuant to the 2005 Health Benefits Agreement between the City of New York and the Municipal Labor Committee.

2.    Effective July 1, 2014, the Stabilization Fund shall convey $1 Billion to the City of New York to be used to support wage increases and other economic items for the current round of collective bargaining (for the period up to and including fiscal year 2018).  Up to an additional total amount of $150 million will be available over the four year period from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.  Thereafter, $ 60 million per year will be available from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.

3.    If the parties decide to engage in a centralized purchase of Prescription Drugs, and savings and efficiencies are identified therefrom, there shall not be any reduction in welfare fund contributions.

4.    There shall be a joint committee formed that will engage in a process to select an independent healthcare actuary, and any other mutually agreed upon additional outside expertise, to develop an accounting system to measure and calculate savings.

18005

5.    The MLC agrees to generate cumulative healthcare savings of $3.4 billion over the course of Fiscal Years 2015 through 2018, said savings to be exclusive of the monies referenced in Paragraph 2 above and generated in the individual fiscal years as follows: (i) $400 million in Fiscal Year 2015; (ii) $700 million in Fiscal Year 2016; (iii) $1 billion in Fiscal Year 2017; (iv) $1.3 billion in Fiscal Year 2018; and (v) for every fiscal year thereafter, the savings on a citywide basis in health care costs shall continue on a recurring basis. At the conclusion of Fiscal Year 2018, the parties shall calculate the savings realized during the prior four-year period.  In the event that the MLC has generated more than $3.4 billion in cumulative healthcare savings during the four-year period, as determined by the jointly selected healthcare actuary, up to the first $365 million of such additional savings shall be credited proportionately to each union as a one-time lump sum pensionable bonus payment for its members.  Should the union desire to use these funds for other purposes, the parties shall negotiate in good faith to attempt to agree on an appropriate alternative use. Any additional savings generated for the four-year period beyond the first $365 million will be shared equally with the City and the MLC for the same purposes and subject to the same procedure as the first $365 million. Additional savings beyond $1.3 billion in FY 2018 that carry over into FY 2019 shall be subject to negotiations between the parties.

6.    The following initiatives are among those that the MLC and the City could consider in their joint efforts to meet the aforementioned annual and four-year cumulative savings figures: minimum premium, self-insurance, dependent eligibility verification audits, the capping of the HIP HMO rate, the capping of the Senior Care rate, the equalization formula, marketing plans, Medicare Advantage, and the more effective delivery of health care.

7.    <u>Dispute Resolution</u>

    a.  In the event of any dispute under this agreement, the parties shall meet and confer in an attempt to resolve the dispute.  If the parties cannot resolve the dispute, such dispute shall be referred to Arbitrator Martin F. Scheinman for resolution.

    b.  Such dispute shall be resolved within 90 days.

    c.  The arbitrator shall have the authority to impose interim relief that is consistent with the parties' intent.

    d.  The arbitrator shall have the authority to meet with the parties at such times as the arbitrator determines is appropriate to enforce the terms of this agreement.

    e.  If the parties are unable to agree on the independent health care actuary described above, the arbitrator shall select the impartial health care actuary to be retained by the parties.

    f.  The parties shall share the costs for the arbitrator and the actuary the arbitrator selects.

18005

If the above accords with your understanding and agreement, kindly execute the signature line provided.

Sincerely,

Robert W. Linn
Commissioner


Agreed and Accepted on behalf of the Municipal Labor Committee

BY:

Harry Nespoli, Chair

3

18005