

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Anthony Paul Coles
T  (212) 335-4844
E  anthony.coles@us.dlapiper.com

July 20, 2020

Hon. Katherine Polk Failla
United States District Court
    for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *Uniformed Fire Officers Association, et al. v. Bill de Blasio, et al.*
        **No. 20-cv-05441 (KPF) (RWL)**

 Dear Judge Failla:

    As counsel to Plaintiffs, we write in response to the letter from Defendants' counsel, filed July 17, 2020.  (*See* ECF No. 7 ("Defs.' July 17 Letter"); *see also* ECF No. 9 ("Pls.' July 17 Letter").)  Plaintiffs represent approximately 60,000 New York City firefighters, police officers, and corrections officers.

    By this letter, we request that the Court direct the parties to meet and confer to propose a schedule for a Preliminary Injunction hearing on the matters raised by Plaintiffs' Verified Petition/Complaint ("Complaint") (ECF No. 10-2), which was removed to this Court, and to meet and confer on the scope of discovery in anticipation of the hearing.  There also should be no question that the TRO entered on July 15 by the Hon. Carol Edmead, JSC, should remain in effect.

    In the wake of the repeal of New York Civil Rights Law § 50-a, which had kept law enforcement personnel records confidential for more than four decades, Defendants have indicated an immediate intent to disclose and promote on the internet thousands of records relating to discipline of firefighters, corrections officers, and police officers, as well as confidential settlement agreements.  But the repeal of § 50-a did not also repeal well-settled law regarding collective bargaining, due process, and contract law.  At issue in this lawsuit is how the repeal of § 50-a can be administered in light of existing legal protections that are independent of § 50-a.  Without the protections of a TRO, the indiscriminate disclosures contemplated by Defendants would cause irreparable harm to Plaintiffs—which Justice Edmead identified as a "critical" concern when she issued her order.  (A copy of Justice Edmead's July 15 order is attached as Exhibit A.)

    As set forth in the Complaint, the release of unsubstantiated, unfounded, exonerated (or not guilty), or pending disciplinary matters ("Unsubstantiated and Non-Final Allegations") and confidential settlement agreements would, among other harms:



Hon. Katherine Polk Failla
July 20, 2020
Page 2

- Violate Plaintiffs' Collective Bargaining Agreements ("CBAs") with the Defendants because Plaintiffs have in place CBAs with terms and conditions that protect against the release of Unsubstantiated and Non-Final Allegations, in various forms, and four of the police association Plaintiffs and the corrections association have pending grievances that are proceeding to arbitration.  The Defendants have no right to unilaterally render those terms null and void without following the provisions of the N.Y. Collective Bargaining Law, including those that mandate arbitration of grievances.  Pending final determination by arbitration of those grievances, Defendants' imminent release of Unsubstantiated and Non-Final Allegations must be enjoined.

- Violate the Due Process and Equal Protection Clauses of the United States and New York State Constitutions, and irrevocably and unfairly stigmatize Petitioners' members.  The proposed indiscriminate disclosure on the internet of unproven allegations is functionally irreversible, and would create unfair (and eternal) reputational and other damage to Plaintiffs;

- Breach thousands of settlement agreements entered into in good faith with the Respondents before the repeal of § 50-a with the legal expectation of confidentiality; and

- Arbitrarily and capriciously reverse longstanding City and State practice of deeming Unsubstantiated and Non-Final Allegations to be protected from disclosure, separate and apart from the provisions of § 50-a.

In further response to Defendants' July 17 Letter, we address Defendants' misstatements of fact and law, including regarding the validity of a TRO issued by Justice Edmead (N.Y. Supreme Court) before the case was removed.

       1.       <u>The State Court's TRO Was Validly Issued and Remains in Effect.</u>

Justice Edmead properly entered a TRO.  The order provides that Defendants, "and those acting in concert with them, are ***Stayed*** from publicly disclosing any records concerning Unsubstantiated and Non-Final Allegations or settlement agreements as defined in [Plaintiffs' Petition], entered into prior to June 12, 2020, relating to the repeal of" CPLR § 50-a(1)."  (ECF No. 7-1 at 2 (emphasis and capitalization in original).)  As Justice Edmead's order makes clear, she not only entered the order timely, but also denied a subsequent application by the Defendants to set the order aside.  As the order reflects, Defendants had neither served a notice of removal on Plaintiffs nor filed a copy of the notice with the clerk of the state court before it went into effect.  (ECF No. 7-1 at 3.)

Defendants now try again to relitigate Justice Edmead's order because, they argue, it was "issued by the state court following the removal of this matter to federal court."  (Defendants' July 17 Letter at 1.)  Justice Edmead already correctly rejected this argument.  (ECF No. 7-1 at



Hon. Katherine Polk Failla
July 20, 2020
Page 3

3.)  That conclusion was correct and is law of the case, and because it was made before removal was effective, it is as valid as an order of this Court would be today.  *See Nasso v. Seagal*, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003) (stating that, on "removal, the orders entered by the state court are treated as though they had been entered by the federal court"); *Riveredge Owners' Ass'n v. Town of Cortlandt, Inc.*, No. 16-CV-5665, 2016 WL 6462387, at *7 (S.D.N.Y. Nov. 1, 2016) (report and recommendation) ("A federal district court has jurisdiction on the day that a notice of removal is filed with the Clerk of that court . . .  A State court, on the other hand, loses jurisdiction on the date the notice of removal is filed in State court."), *R. & R. adopted*, 2016 WL 7392218 (S.D.N.Y. Dec. 21, 2016); *see also* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.").

Defendants' contention that they "have been, in effect, subject to a restraint without having had an opportunity to be heard on the merits of Plaintiffs' application" is nonsense.  (ECF No. 7 at 2.)  Defendants, in a highly unusual move, initiated removal of this action *in the middle of the TRO hearing* before Justice Edmead, where counsel for all parties were present and had already begun to present argument to the state court.

> 2.    Plaintiffs Are Entitled to a Temporary Restraining Order and Preliminary Injunction.

Plaintiffs docketed a copy of their Complaint, Memorandum of Law, and supporting papers on Friday, July 17 for the Court's reference.  (*See* ECF No. 10 and exhibits thereto.)  We will nonetheless address a few of the matters raised in Defendants' Letter, which were made in shotgun fashion, and without citation to authority.

*First*, Defendants' contention that this action is an "attempt[] to subvert the clear intent" of the repeal § 50-a and to "contravene the legislature's purpose … through this litigation" is meritless.  (Defs.' July 17 Letter at 1-2.)  As Plaintiffs explain in the Complaint, "§ 50-a was never the only source of [Defendants'] obligation to protect the privacy and safety of [Plaintiffs'] members."  (ECF No. 10-2 ¶ 67; *see also, generally, id.* ¶¶ 66-76.)  The repeal of § 50-a did not alter Plaintiffs' collective bargaining rights, which include the right to seek expungement of some of the very information Defendants intend to release on the internet.  It also did not affect the constitutional guarantees of due process and equal protection, or the right to privacy and legal entitlement to reasoned decision-making by government agencies.  Disclosures following the repeal of § 50-a must continue to account for these continuing (and indeed pre-existing) sources of legal protections.

*Second*, Defendants' imminent release of confidential information is a classic manifestation of irreparable injury.  (*See* ECF No. 10-12 at 6-9.)  These Unsubstantiated and Non-Final



Hon. Katherine Polk Failla
July 20, 2020
Page 4

Allegations will be promoted and published by Defendants on the internet, potentially violating the rights of thousands of law enforcement officers.  (*Id.*)  Once inflicted, this harm could never be reversed.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again."); *Doe v. Greco*, 62 A.D.2d 498, 501 (3d Dep't 1978) ("Public disclosure of what is now confidential and should remain confidential would lead to an irreversible breach of that confidentiality.  The harms which would naturally flow from disclosure could not be redressed nor could the parties ever be returned to the *status quo ante*.").  The records at issue have been confidential since 1976, and there is no pressing need to indiscriminately release them.

Defendants callously ignore the threat of physical harm alleged in the Complaint, including targeting of police officers with violence.  (ECF No. 10-2 at ¶ 75.)  And to the extent recent examples of harassment and threats of violence against police shed light on the threatened harms in this case, one need only look to the local papers.[1]  And Defendants' contention that because "[t]he types of records Plaintiffs seek to prevent from disclosure … have, for  years, already been released for other public employees," and because Plaintiffs have failed "to point to even one instance where the public disclosure [of disciplinary files] resulted in harm," any disclosure of Unsubstantiated and Non-Final Allegations "will not cause irreparable harm" is meritless and beside the point.  (Defs.' July 17 Letter at 3.)  Plaintiffs' Memorandum of Law illustrates why past disclosure of similar records in response to specific records requests cannot reasonably be compared to the wholesale global publication and promotion of Unsubstantiated and Non-Final Allegations at issue in this case and the widespread harm this approach will cause.  (ECF No. 10-12 at 6-10; *cf. U.S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 764 (1989) ("Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information.").)  That is precisely why, under similar circumstances less than two weeks ago, the Appellate Division of the Superior Court of New Jersey temporarily enjoined that state's attorney general from ordering public disclosure of the identities of officers who have been sanctioned for serious disciplinary violations—*i.e.*, officers with records of proven misconduct.  *See* Order on Motion, No. A-003950-19T4 (N.J. Super., App. Div. July 8, 2020) (attached as Exhibit C).  That court applied "well-settled law to preserve the officers' challenge by staying implementation of the [attorney

---

[1] *See, e.g.*, Thomas Tracy and John Annese, *Queens NYPD lieutenant gets phone threats after protester's arrest: sources*, N.Y. Daily News (July 14, 2020), https://www.nydailynews.com/new-york/nyc-crime/ny-queens-cop-threatened-after-protester-arrest-20200714-uau5dt4aq5ftzefjn7q7mbpyvy-story.html (describing NYPD lieutenant who received "about 30 phone calls and 40 texts on his department phone, including photos of severed legs and limbs, and messages like … "We have all of your personal info" and "Watch you back, we will blast you…."").



Hon. Katherine Polk Failla
July 20, 2020
Page 5

general's orders] pending [its] disposition of the appeal." *Id.* at 2. Here, Plaintiffs similarly seek nothing more than to preserve the status quo and prevent the specific irreparable harms described in the Complaint and Memorandum of Law. (*See* ECF No. 10-2 ¶¶ 3, 9; ECF No. 10-12 at 6-11.)

*Third*, Defendants' purported justiciability concerns are without merit. Defendants begin by contending that "Plaintiffs have not actually identified a dispute with each of the City agencies named in this matter." (ECF No. 7 at 3.) For example, they argue that "Plaintiffs are seeking to enjoin NYPD from taking an action it does not plan to take" because NYPD "intends to publish only Charges and Specifications, dispositions and penalties." (*Id.*) As the Complaint alleges, the NYPD has clearly threatened the immediate release of unproven claims. (*See* ECF No. 10-2 ¶¶ 1-9.) And as explained in Plaintiffs' Affirmation in Support of Emergency Relief, NYPD told Plaintiffs' counsel it intended to disclose records of unsubstantiated, unfounded, exonerated, and pending disciplinary matters by or before July 15, 2020. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982))). On July 13 and 14, we asked counsel for Defendants whether any release could be delayed beyond July 15, and they refused to commit then, or at the subsequent hearing before Justice Edmead.

Plaintiffs also adequately address the role of Defendants Fire Department of New York and the Department of Corrections, alleging that "the Mayor, NYPD, and CCRB have indicated that they intend to release all disciplinary records of firefighters, corrections officers, and police officers, including Unsubstantiated and Non-Final Allegations." (ECF No. 10-2 ¶ 50.) And, at any rate, public statements made by Mayor de Blasio about the imminent release of records for police officers, firefighters, and correction officers contradict Defendants' assertions before the Court.[2] Plaintiffs have sufficiently alleged that publication on the internet of disciplinary records from each of the Defendant agencies is imminent. (*See, e.g.*, ECF No. 10-2 ¶ 1 (alleging that Defendants will begin the release of records "concerning disciplinary matters against retired and active individual New York City police officers, firefighters and corrections officers")).

Defendants also contend there is no case or controversy against Defendant Civilian Complaint Review Board ("CCRB") because – although their explanation is vague and ambiguous – the CCRB has already indiscriminately released many of the documents in question since the June repeal of § 50-a, including some documents "as of" July 13, the same day

---

[2] *See, e.g.*, *NYC mayor wants disciplinary records for firefighters and correction officers posted online, just like police*, N.Y. Daily News (June 29, 2020), https://www.nydailynews.com/new-york/nyc-crime/ny-50-a-de-blasio-fndy-correction-department-20200629-az6br44mcbbclbg2rbcf24x6ii-story.html.



Hon. Katherine Polk Failla
July 20, 2020
Page 6

Defendants received notice of Plaintiffs' intention to file this lawsuit.  (Defs.' July 17 Letter at 3.)  Plaintiffs, however, are not aware of any such release, which in any event would raise concerns about the CCRB's actions.

On July 8, 2020, Plaintiff, Police Benevolent Association of the City of New York, Inc. ("PBA"), wrote to Defendant Frederick Davie, Chair of the CCRB, reminding him that "the CCRB has previously refused to produce" Unsubstantiated and Non-Final Allegations in response to individual requests "on the ground that doing so would constitute an 'unreasonable invasion of privacy[.]'"  (Letter from Patrick J. Lynch to Rev. Fred Davie (July 8, 2020).)  The letter also sought Mr. Davie's "assurances that the CCRB will properly apply all FOIL exemptions to safeguard police officers and families" notwithstanding the repeal of § 50-a, as Mr. Davie suggested the CCRB would do in October 2019. (Attached as Exhibit B is Mr. Lynch's letter and an accompanying letter, also dated July 8, 2020, from Michael Murray to Jonathan Darche.)

It now may appear that, as of the date of the PBA's letter, the CCRB had already released some of these documents to requestors, and it did so again less than a week later.  Plaintiffs have a live claim for injunctive relief to prevent further dissemination of Unsubstantiated and Non-Final Allegations, including pending cases that have not yet been released.  (*See* Defs.' July 17 Letter at 3 (noting that disclosure did not include pending or open cases).)  Separately, these representations demonstrate Plaintiffs' urgent need to take limited discovery in advance of the preliminary injunction hearing.  Plaintiffs seek expedited discovery of (i) any release of Unsubstantiated and Non-Final Allegations by the CCRB, (ii) the recipients of any such release, (iii) any communications concerning the release, among other things.  Plaintiffs are entitled to know what, if anything, the CCRB has produced, to whom, when, and why, and to fashion any appropriate remedies or safeguards.  Far from mooting the point, as Defendants allege, the CCRB's conduct emphasizes the importance of the TRO, which stays and binds Defendants and those "acting in concert" with them.  It also highlights the importance of Plaintiffs' request for expedited discovery.

*Fourth*, Defendants' cursory, four-paragraph discussion of the merits of Plaintiffs' 33-page Complaint, including nine claims for relief, hardly requires a response.  However, their brief assessment of the claims belies several fundamental misunderstandings that bear mentioning:

- Each of the Plaintiff Unions has entered into a CBA with their respective agencies and the City governing the terms and conditions of their employment.  Multiple Plaintiffs have filed grievances and initiated the arbitration process outlined in their CBAs because the release of Unsubstantiated and Non-Final Allegations would violate the CBAs and unilaterally render certain provisions null and void.  In requesting an injunction in aid of arbitration (Count 1), Plaintiffs seek to prohibit



Hon. Katherine Polk Failla
July 20, 2020
Page 7

Defendants from undermining their arbitrations by irreversibly publishing the very information that would be at issue in those tribunals.  The law is well settled that courts have authority to order provisional injunctive relief to "protect the viability of an award" in arbitration and prevent that process from becoming an empty ritual. *Saferstein v. Wendy*, 137 Misc. 2d 1032, 1034 (Sup. Ct., N.Y. Cnty. 1987) ("[CPLR § 7502(c)] was intended to maintain the status quo pending arbitration in order to protect the viability of an award in favor of the applicant."); *see also Espiritu Santo Holdings, LP v. L1bero Partners, LP*, No. 19-cv-3930, 2019 WL 2240204, at *16 (S.D.N.Y. May 14, 2019) ("This Court also has authority to issue the requested injunctive relief pursuant to Fed. R. Civ. P. 64, which incorporates state-law provisional remedies, including injunctions in aid of arbitration under C.P.L.R. § 7502(c).")*, aff'd*, 789 F. App'x 288 (2d Cir. 2020).  Defendants' argument that "the court does not have jurisdiction over any breach of the collective bargaining agreements" misunderstands both the nature of the relief requested in Count 1 and this Court's authority.  (Defs.' July 17 Letter at 4.)

- The Due Process Clauses of the U.S. and N.Y. Constitutions prohibit government employers from inflicting reputational harm on individuals and depriving them of a protected liberty interest without adequate procedures.  Here, Plaintiffs' members will face reputational harm (stigma) from the worldwide publication of Unsubstantiated and Non-Final Allegations, and this harm will implicate their liberty interest in pursuing future employment opportunities (plus).  (ECF No. 10-12 at 13-18.)  This liberty interest is well recognized, particularly in the context of websites created and promoted by the government that potential employers are likely to access.  *See Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (stating that "the dissemination of information from [a state registry of child abuse offenders] to potential child care employers, coupled with the defamatory nature of inclusion on the list, does implicate a liberty interest"); *Bursac v. Suozzi*, 22 Misc. 3d 328, 340 (Sup. Ct., Nassau Cnty. 2008) (stating that county executive's public posting of identifying information about DWI arrestees "on an Internet Web site with unlimited access to the public" could "affect a legal status and impose specific harm by being available to, *inter alia*, search engines, credit agencies, landlords and potential employers, for a lifetime, regardless of the underlying outcome of the case").  Separately, Defendants are mistaken that the due process claims involve the disclosure of settlement agreements.  (Defs.' July 17 Letter at 4.)  They seem to be referencing Plaintiffs' allegation that the release of these records "would doubly violate due process because, in deciding how to respond to allegations, officers relied on the City's guarantee that such allegations would remain confidential."  (ECF No. 10-12 at 17.)  This application of the repeal of § 50-a would have an impermissibly retroactive effect by upsetting reliance interests and



Hon. Katherine Polk Failla
July 20, 2020
Page 8

triggering fundamental fairness concerns. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 278-80 (1994).

- The Defendants' imminent disclosures will also breach disciplinary settlement agreements entered into prior to the repeal of § 50-a (Count 6). Because § 50-a was in effect when the agreements were executed, the law's protections "form a part of the contract *as fully as if expressly incorporated in the contract*." (ECF No. 10-12 at 22 (quoting 11 Williston on Contracts § 30:19).) Defendants provide no contrary authority on this point.

- The Equal Protection Clauses of the U.S. and N.Y. Constitutions prohibit the government from treating similarly situated individuals differently. The planned disclosures violate this principle insofar as firefighters, corrections officers, and police officers will receive "different treatment from that received by other individuals similarly situated." (ECF No. 10-12 at 19-21.) Defendants' contention that "Plaintiffs are in fact now treated similarly to other City employees" because OATH, the agency that "adjudicates disciplinary charges for the majority of City employees," publishes its Reports and Recommendations online, including for charges that "are ultimately adjudicated as not-guilty" fails to account for the full spectrum of allegations that Defendants have indicated they will publish and promote online. (ECF No. 7 at 4.) (ECF No. 1-1 ¶ 51.) Defendants do not contend that OATH publishes all pending and unsubstantiated accusations against, for example, sanitation workers or City Council members that do not lead to charges. But that is the type of disclosure the City has indicated it will make against firefighters and officers in light of the repeal of § 50-a.

- As to Plaintiffs' Article 78 claims (Counts 7 and 8), Defendants again misapprehend the practical significance of the repeal of § 50-a, which merely repealed the law barring disclosure: it did not *require* disclosure, and it certainly did not require disclosure without consideration of the consequences of other laws, and in violation of Plaintiffs' legal, contractual and constitutional rights. Defendants' data dump ignores their past practice, well-settled expectations, and the independent sources of law cited in the Memorandum of Law that would make any decision to release Unsubstantiated and Non-Final Allegations an arbitrary and capricious one. (ECF No. 10-12 at 23-29.) This is especially so because the documents were not individually analyzed. It is bedrock administrative law that the agency must not consider things categorically when a more focused review is possible. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 45 (1983). Finally, Defendants' purported ripeness issue is circular: they claim that an agency determination to release the records "is speculative" and unreviewable until



Hon. Katherine Polk Failla
July 20, 2020
Page 9

the records are actually released, (Defs.' July 17 Letter at 5), while simultaneously claiming that no action lies once the records are released, (*id.* at 3). Such circular logic cannot stand.

3.    Plaintiffs Request Expedited Discovery and a Briefing Schedule.

Finally, Plaintiffs respectfully request the Court order the parties to meet and confer on a briefing schedule to address the motion for a preliminary injunction and the scope of discovery, and the continuation of the TRO pending the hearing and determination of that motion.  The need for discovery in advance of the preliminary injunction hearing is particularly acute here. Defendants contend they have released some but not all of the records Plaintiffs contend are protected from disclosure by law.  It is important to understand exactly what records were disclosed, by which Defendants, and when. Plaintiffs also are entitled to discovery on the contours of the terms Defendants use, including their use of words like "unsubstantiated," and Plaintiffs must explore relevant information concerning Defendants longstanding practice, separate and apart from  § 50-a, of deeming certain unproven allegations against city employees and officers as confidential, and related matters.

The rights Plaintiffs seek to redress are important and fundamental.  Plaintiffs appreciate the Court's consideration and are available at the Court's convenience, and also available to engage in a meet and confer with counsel for Defendants on these matters at the Court's direction.  We would expect to reach out to counsel for Defendants promptly on these matters.

As this letter was being filed, we received correspondence from counsel for Defendants proposing a briefing schedule for a preliminary injunction motion that is unreasonably short and fails to provide for necessary discovery.  In addition, under Fed. R. Civ. P. 65(b), the TRO entered by Judge Edmead remains in effect.

Respectfully submitted,

Anthony P. Coles

cc:    All counsel of record (*via* ECF)
       failla_NYSDChambers@nysd.uscourts.gov