# Exhibit B



**Police Benevolent Association**
Of The City Of New York, Inc.

OFFICE OF THE PRESIDENT

July 8, 2020

**VIA E-MAIL & HAND DELIVERY**

Rev. Fred Davie, Chair
Civilian Complaint Review Board
100 Church Street, 10th Floor
New York, NY 10007

**Re:    Applicability of FOIL Exemptions to Police Disciplinary Records, Including Unsubstantiated Complaints**

Dear Chair Davie:

    I write to call your attention to a matter of urgent importance to the safety of every single police officer and our families, as described in the attached letter from PBA General Counsel Michael T. Murray to CCRB Executive Director Jonathan Darche.

    As you know, the PBA strenuously opposed the recent repeal of Civil Rights Law § 50-a ("CRL § 50-a") based in large part on the serious safety concerns arising from the widespread dissemination of police officers' personnel records. Even with the protection of CRL § 50-a, we have seen police officers and their families targeted with threats and harassment – or, in one recent case, a mail bomb – based on mere accusations of misconduct. These concerns, however, were routinely dismissed by both repeal proponents and lawmakers on the grounds that New York State's existing Freedom of Information Law ("FOIL") exemptions provided adequate protection for police officers' privacy and safety.

    As you will read in Mr. Murray's attached letter, the PBA believes that documents related to unsubstantiated allegations and unadjudicated claims are properly withheld under several different FOIL exemptions. Indeed, the CCRB has previously refused to produce such materials, on the ground that doing so would constitute "an unreasonable invasion of privacy" under FOIL. Moreover, as recently as October 2019 you referenced the FOIL exemptions and confirmed the important role they would play following the repeal of CRL § 50-a, stating that "transparency does not have to come at the expense of privacy, safety, or other public interests."

    In our current environment, with the daily demonization of police officers in the media and the almost-nightly physical assaults we are enduring on the streets, our safety concerns are far from abstract: It is a matter of when, not if, an unstable individual is inspired by newly-public police records to target and bring harm to one of our sisters or brothers. We therefore seek your assurances that the CCRB will properly apply all FOIL exemptions to safeguard police officers and our families.

    I look forward to discussing this matter with you at your earliest convenience.

Sincerely,

Patrick J. Lynch
President

125 Broad Street, 11th Floor, New York, N.Y. 10004-2400 | 212-233-5531 | www.nycpba.org



**OFFICE OF THE GENERAL COUNSEL**

July 8, 2020

**VIA E-MAIL & HAND**

Mr. Jonathan Darche, Executive Director
Civilian Complaint Review Board
100 Church Street, 10th Floor
New York, NY 10007

Re: **Applicability of FOIL Exemptions to Police Disciplinary Records, Including Unsubstantiated Complaints**

Dear Executive Director Darche:

      We write on behalf of all active and retired New York City police officers to confirm that the Civilian Complaint Review Board ("CCRB") will apply Freedom of Information Law ("FOIL") exemptions to requests for police disciplinary records and will withhold, *inter alia*, documents relating to unsubstantiated complaints of police misconduct ("Unsubstantiated Documents"), in light of the repeal of Civil Rights Law § 50-a ("CRL § 50-a").[1] As discussed below, New York State Senate and Assembly memoranda, the New York Committee on Open Government (the "FOIL Committee"), advocates for police reform and, indeed, black letter New York law make absolutely clear that—notwithstanding the repeal of CRL § 50-a—existing FOIL exemptions should continue to be used to protect the privacy, safety, and reputations of New York City police officers. Indeed, as recently as October 2019 Chair Davie echoed the FOIL exemptions and indicated the important role they would play following the repeal of CRL § 50-a, stating that "transparency does not have to come at the expense of privacy, safety, or other public interests."

      Importantly, numerous government agencies and advocates have long confirmed that Unsubstantiated Documents are properly withheld under FOIL. Indeed, the CCRB itself has repeatedly refused to produce Unsubstantiated Documents based on the FOIL exemption for documents that, if disclosed, would constitute "an unwarranted invasion of personal privacy." Public Officers Law § 87(2)(b). That this approach is appropriate is further underscored by numerous FOIL Committee Advisory Opinions and even by those who strongly advocated for the repeal of CRL § 50-a. It is also consistent with how unsubstantiated complaints against countless other professionals are treated in New York State. Finally, we call your attention to

---

[1] For purposes of this letter, Unsubstantiated Documents also includes materials related to unfounded, exonerated, and abandoned complaints, as well as complaints that have yet to be adjudicated or are outside of CCRB's jurisdiction.

other applicable FOIL exemptions—including for where disclosure "could endanger the life or safety of any person"—and ask that, prior to disclosing any records, you seriously consider the potential safety risks to New York City police officers, their families, and all New Yorkers.

### *Brief FOIL Background*

Originally enacted in 1974, FOIL governs the public's right to gain access to government records. However, this right of access is not absolute, as the law provides numerous important exemptions that allow government agencies to keep records confidential. Specifically, FOIL expressly states that documents are appropriately withheld where (1) disclosure "would constitute an unwarranted invasion of personal privacy" (the "Privacy Exemption"); (2) disclosure "could endanger the life or safety of any person" (the "Safety Exemption"); (3) such documents were "compiled for law enforcement purposes" and if disclosed would, *inter alia*, "interfere with law enforcement investigations or judicial proceedings" (the "Law Enforcement Exemption"); or (4) such documents are "inter-agency or intra-agency materials" (subject to some exceptions) (the "Inter/Intra-Agency Exemption").[2] These exemptions have long been applied to withhold many categories of police disciplinary records including, but not limited to, documents related to unsubstantiated and unadjudicated complaints and/or allegations of misconduct.

### *The FOIL Exemptions Are Plainly Still Applicable*

On June 12, 2020, New York State repealed CRL § 50-a, which had kept police personnel records largely confidential for the last four decades. However, elected officials and government agencies ***specifically cited*** the continuing availability of safeguards provided by existing FOIL exemptions in explaining why the repeal of CRL § 50-a was appropriate. In other words, while repeal removed the ***blanket*** exemption for all police personnel records, it left the FOIL exemptions for ***specific categories*** of police records—like Unsubstantiated Documents— entirely intact. Indeed, the Legislature's amendment to FOIL was to provide ***additional*** protections to law enforcement officers, given the uniquely dangerous nature of the job.

For example, the "Justification" section of the Sponsor Memorandum for the enacted Senate bill stated:

> FOIL already provides that agencies may redact or withhold information whose disclosure would constitute an unwarranted invasion of privacy [the Privacy Exemption]. . . . Furthermore, this bill adds ***additional safeguards*** in the FOIL statute…. The broad prohibition on disclosure created by § 50-a is therefore unnecessary, and can be repealed.[3]

---

[2] Public Officers Law §§ 87(2)(b)(e-g).

[3] Sponsor Memo, Senate Bill S8496, *available at* https://www.nysenate.gov/legislation/bills/2019/s8496.

Thus, far from removing existing FOIL exemptions, the Senate recognized not only that they would continue to apply, but also that further protections were needed. Recent repeal efforts in the New York State Assembly reached a similar conclusion:

> FOIL already provides all public employees, including those protected under § 50-a, the protections necessary to guard against unwarranted invasions of privacy [the Privacy Exemption] and from disclosures that could jeopardize their security or safety [the Safety Exemption].... The general rules and statutory exceptions of FOIL – for example in instances that disclosure would constitute an unwarranted invasion of privacy – are sufficient in protecting police.[4]

Moreover, this is completely consistent with the view of the FOIL Committee—the entity *"responsible for overseeing and advising with regard to the Freedom of Information Law"*—which recently stated:

> In urging the repeal or revision of §50-a, the Committee is not suggesting that police officers should be subject to greater disclosure than other public employees, but rather that they should be subject to the same level of public disclosure and protection as required for all other public employees. FOIL provides all public employees with the protections necessary to guard against unwarranted invasions of privacy and from disclosures that could jeopardize their security or safety. *While police officers have a particular need for such protections, the generally applicable FOIL exemptions are sufficient to safeguard their legitimate privacy and safety concerns.*[5]

And, even the most vocal advocates for repeal have confirmed that existing FOIL exemptions continue to protect police officers. For example, a recent New York City Bar Association Report—authored by attorneys from the Legal Aid Society and the NYCLU—notes:

> CRL 50-a should be repealed because the concerns of the law's original sponsors over the privacy of police officers are adequately addressed by way of other FOIL exceptions. For example, New York's Public Officers Law already prevents records from being disclosed when they would constitute an unwarranted invasion of personal privacy, are compiled for law enforcement purposes or endanger the life or safety of any person, in addition to other circumstances.[6]

---

[4] Sponsor Memo, Assembly Bill A9332, *available at* https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=A09332&term=2015&Memo=Y.

[5] 2018 Annual Report, New York State Committee on Open Government, *available at* https://www.dos.ny.gov/coog/pdfs/2018%20Annual%20Report.pdf ("2018 Annual Report") (emphasis added).

[6] NYC Bar Association Report, *Promote Police Transparency with the Repeal of CRL 50-a* (reissued June 9, 2020), *available at* https://s3.amazonaws.com/documents.nycbar.org/files/2017285-50aPoliceRecordsTransparency.pdf ("City Bar Report").

Finally, and importantly, even putting aside the statements of the legislators, FOIL experts, and repeal advocates, New York law plainly mandates that the FOIL exemptions continue to be applicable to police disciplinary records. Indeed, the Court of Appeals has expressly held that statutory language explicitly providing that certain documents are public records "does not negate . . . [the] right to assert that some information [subject to disclosure under the law in question] . . . is exempt from disclosure under FOIL." *Matter of Markowitz v. Serio*, 11 N.Y.3d 43, 49 (2008); *see also Xerox Corp. v. Webster*, 65 N.Y.2d 131, 132 (1985) (holding that appellant's argument that a statute "establishing general principles for access to public records requires disclosure of the requested documents notwithstanding the exemptions specified under FOIL . . . would nullify the FOIL exemptions, which the Legislature . . . could not have intended"). Similarly, a recent appellate decision found that a statute providing that the names and addresses of pistol permit holders "shall be a public record," when read in conjunction with the FOIL statute, did not render all such information automatically disclosable, but rather rendered it "subject to FOIL disclosure, ***unless an exemption to disclosure contained in the Public Officers Law applies***." *Matter of Gannett Satellite Info. Network v County of Putnam*, 142 A.D.3d 1012, 1016 (2d Dep't 2016) (emphasis added). In so holding, the court noted that "FOIL exemptions must be read as having engrafted, as a matter of public policy, certain limitations on the disclosure of otherwise accessible records," and held that "a statutory mandate that certain documents or information contained therein are public record 'suggests that . . . they are subject to public disclosure unless the [agency] asserts that a FOIL exemption applies.'"[7]

In light of all of the foregoing, it is abundantly clear that the CCRB must continue to apply FOIL exemptions to police disciplinary records. And, as discussed below, it is well-settled that Unsubstantiated Documents, among others, are properly withheld under FOIL.

### *The Privacy Exemption*

As you are aware, the CCRB has previously taken the position that FOIL requests for Unsubstantiated Documents are properly rejected, as disclosure would constitute "an unwarranted invasion of personal privacy."[8] This position is supported by numerous Advisory Opinions from the FOIL Committee—which has further confirmed that documents relating to pending or unadjudicated matters are appropriately withheld—and even by those who strongly advocated for the repeal of CRL § 50-a. It is also consistent with how unsubstantiated complaints against countless other professionals are treated in New York State.

---

[7] At the risk of stating the obvious, if the Legislature intended to make police officers a special group not entitled to the safety and privacy protections of FOIL, it would have expressly done so.

[8] Public Officers Law § 87(2)(b).

4

### CCRB Applies the Privacy Exemption to Withhold Unsubstantiated Documents

As an initial matter, the CCRB has already recognized that the Privacy Exemption is properly applied to withhold Unsubstantiated Documents. For example, in response to a 2015 FOIL request for various materials relating to a retired detective, the CCRB stated:

> To the extent your request seeks records concerning any matters that were not substantiated, any such requests would also represent an unreasonable invasion of privacy.[9]

Similarly, with respect to a separate request for documents relating to an active police officer:

> CCRB noted that the request for records relating to unsubstantiated matters would constitute 'an unreasonable invasion of privacy.'[10]

There is no rational justification for the CCRB to take the position that the FOIL production of Unsubstantiated Documents was inappropriate in 2015, but it is somehow appropriate in 2020. Any deviation from this prior precedent would plainly be arbitrary, capricious, and an abuse of discretion.

### The FOIL Committee Has Repeatedly Confirmed that Unsubstantiated Documents are Properly Withheld

This approach is consistent with how numerous authorities agree Unsubstantiated Documents should be treated after the repeal of CRL § 50-a. For example, the FOIL Committee recently made clear:

> Even without §50-a, FOIL provides broad protection to law enforcement personnel. One of FOIL's express exceptions authorizes an agency to withhold records where disclosure would constitute an unwarranted invasion of personal privacy, §87(2)(b), and this provision has long been held to allow "unsubstantiated allegations" against an employee to be withheld.[11]

Indeed, the FOIL Committee has for decades taken the position that Unsubstantiated Documents (including unadjudicated complaints) are properly withheld under the Privacy Exemption. Thus, with respect to a 2008 FOIL request, the Committee advised that certain findings related to firefighter misconduct could be released, "except to the extent that it includes

---

[9] *See Hughes Hubbard & Reed v. CCRB*, 41 N.Y.S.3d 369 (Sup. Ct., Kings Cnty. 2016) (June 5, 2015 CCRB letter); *id.* (July 23, 2015 CCRB letter, reiterating that "disclosure of the records you seek would constitute an acute and unreasonable invasion of privacy").

[10] *See Luongo v. Records Access Officer, CCRB*, 51 N.Y.S.3d 46 (1st Dep't 2017).

[11] 2018 Annual Report.

5

charges that were dismissed or that could not be substantiated, or information relating to those charges." It further stated:

> When allegations or charges of misconduct have not yet been determined or did not result in disciplinary action, the records relating to such allegations may . . . be withheld, for disclosure would result in an unwarranted invasion of personal privacy [*see, e.g.*, *Herald Company v. School District of City of Syracuse*, 430 N.Y.S.2d 460 (1980)]. Further, to the extent that charges are dismissed or allegations are found to be without merit . . . they may be withheld based on considerations of privacy.[12]

This conclusion has been reiterated time-and-time-again by the Committee. *See, e.g.*, FOIL-AO-12005 ("In numerous contexts, it has been advised that records relating to unsubstantiated charges, complaints or allegations may be withheld to protect the privacy of the accused."); FOIL-AO-17301 ("Our opinion concerning a report indicating that allegations of sexual harassment could not be substantiated is that such a record may be withheld on the ground that disclosure would constitute an unwarranted invasion of personal privacy."); FOIL-AO-10399 (misconduct complaints properly withheld because at the time such documents are prepared "there would be neither any indication nor any finding that the claims made are more than unsubstantiated allegations").[13]

For the avoidance of any doubt, the above and other Advisory Opinions make clear that documents and materials related to pending complaints that have yet to be fully adjudicated are appropriately withheld under the Privacy Exemption. In the current climate, and with mere allegations of misconduct amplified incessantly by the media and on platforms like Twitter, the release of this information will undoubtedly result in cases being prejudged. Put simply, if the CCRB releases such materials before final disposition, it will be impossible for police officers to receive a fair proceeding.

Finally, it is well-established that these Advisory Opinions, "written by the Committee empowered to address such issues, [are] entitled to great weight and, if not irrational or unreasonable, should be upheld." *See, e.g.*, *Whitehead v. Morgenthau*, 552 N.Y.S.2d 518 (Sup. Ct., N.Y. Cnty. 1990). Accordingly, the CCRB should follow the Committee's Advisory Opinions and withhold Unsubstantiated Documents.

### Prior to Repeal of CRL § 50-A, Supporters Argued Unsubstantiated Documents Would Remain Confidential

---

[12] FOIL-AO-17195, *available at* https://docs.dos.ny.gov/coog/ftext/f17195.html.

[13] These Advisory Opinions are available at https://docs.dos.ny.gov/coog/ftext/f12005.htm, https://docs.dos.ny.gov/coog/ftext/f17301.html, and https://docs.dos.ny.gov/coog/ftext/f10399.htm.

Importantly, in advocating for the repeal of CRL § 50-a, supporters not only conceded, but in fact strenuously contended that the Privacy Exemption would prevent the release of Unsubstantiated Documents. A recent article authored by the Director of the Citizens Union Foundation—an entity "committed to reforming New York City and State government by fostering accountability, accessibility, and transparency"—is instructive. There, he stated:

> It has also been argued in support of 'reform' of Section 50-a, as opposed to repeal, that it is unfair to police officers for there to be public disclosure of records pertaining to unsubstantiated complaints or charges against them. However, police officers, like other public officials and employees, already enjoy significant (if not absolute) protection against such disclosure. FOIL exempts from its requirements records the disclosure of which would constitute an unwarranted invasion of personal privacy (see Public Officers Law §§ 87(2)(b) and 89(2)(b)).
>
> The Committee on Open Government has issued two advisory opinions stating that the personal privacy exemption is applicable when allegations or charges of misconduct have not yet been determined or did not result in disciplinary action (see FOIL AO-10399 (Oct. 31, 1997) (police officers)) or when allegations of misconduct were not substantiated (see FOIL AO-12005 (Mar. 21, 2000) (prison inmates)).[14]

Indeed, Citizens Union publicly endorsed the FOIL Committee's analysis, stating that the "reasoning of the advisory opinions cited above appears correct at least with respect to documents that reveal the identity of the individuals against whom the unsubstantiated complaints were made." *Id.* It went on to note the very limited circumstances where FOIL disclosure of Unsubstantiated Documents might be appropriate, such as through "statistical tabulations and other data that do not reveal the identity of the police officer." *Id.*

As the above example makes clear, it would simply be wrong to invoke the Privacy Exemption—and a promise that Unsubstantiated Documents would still be confidential—to obtain support for repeal, and then abandon that approach once repeal was achieved. For years, repeal advocates championed the "FOIL has adequate protections" argument. Now, CCRB must apply those protections to prevent disclosure of Unsubstantiated Documents.

**Other Professions Do Not Make Unsubstantiated Documents Public**

Withholding Unsubstantiated Documents would assure that police officers are treated the same as other public employees and licensed professionals throughout New York State. In light of the fact that—unlike massage therapists, speech pathologists, interior designers, and

---

[14] Frederick Schaffer, *The Time Has Come to Repeal Section 50-A of New York's Civil Rights Law*, Gotham Gazette (June 5, 2020); *available at* https://www.gothamgazette.com/opinion/153-citizens-union-speakers/9466-repeal-section-50-a-new-york-civil-rights-law.

geologists—police officers have been targeted for assassination on numerous occasions simply because of their uniform, the safeguards in place to protect them must at least be as robust as those of other professionals.

For example, the New York State Education Department—tasked with investigating misconduct related to virtually all licensed professions—states that unsubstantiated claims it receives are not public and even many substantiated claims are in fact kept confidential. Specifically, "complaints are accusations of professional misconduct; those that do not result in disciplinary action are confidential."[15] Moreover, "minor forms of misconduct may be handled through advisory letters or administrative warnings . . . these administrative actions are confidential."[16]

Similarly, the FOIL Committee recently issued an Advisory Opinion noting that whenever a teacher is acquitted of misconduct claims the "charges must be expunged from the employment record" in order "to preclude unsubstantiated charges from being used unfairly against or in relation to a tenured teacher." Again, there is no valid justification for police officers to receive less privacy protection than teachers and other professionals throughout the State, yet that would be the reality if Unsubstantiated Documents relating to police officers are disclosed.

## *The Safety Exemption*

Moreover, and crucially, FOIL allows the CCRB to withhold any document that "if disclosed could endanger the life or safety of any person." Public Officers Law § 87(2)(f). An agency "need not demonstrate the existence of a specific threat or intimidation," as only the "possibility of endangerment [is needed] to invoke the exemption."[17] The FOIL Committee has confirmed that this exemption should be applied notwithstanding the repeal of CRL § 50-a:

---

[15] http://www.op.nysed.gov/opd/opdfaq.htm (FAQ, "How can I find out if there have been any disciplinary actions against a licensee?").

[16] *Id.* The list of state-licensed professionals who have unsubstantiated complaints kept confidential includes: Acupuncturists, Architects, Athletic Trainers, Behavior Analysts, Certified Public Accountants, Chiropractors, Dentists, Dental Hygienists, Dietitian-Nutritionists, Engineers, Geologists, Interior Designers, Laboratory Technicians, Land Surveyors, Landscape Architects, Massage Therapists, Medical Physicists, Mental Health Practitioners, Midwives, Nurses, Occupational Therapists, Opticians, Optometrists, Perfusionists, Pharmacists, Physical Therapists, Podiatrists, Polysomnographic Technologists, Psychologists, Respiratory Therapists, Social Workers, Shorthand Reporters, Speech Pathologists, and Veterinarians. *See* http://www.op.nysed.gov/prof/.

[17] *Matter of Luongo v. Records Access Officer, Civilian Complaint Review Bd.*, 150 A.D.3d 13 (1st Dep't 2017); *Matter of Connolly v. New York Guard*, 175 A.D.2d 372, 373 (3d Dep't 1991) (agency need only demonstrate "a possibility of endanger[ment]" in order to invoke the Safety Exemption).

8

> Even without §50-a, FOIL provides broad protection to law enforcement personnel . . . §87(2)(f) permits an agency to deny access when disclosure "could endanger the life or safety of any person."[18]

The appropriate application of the Safety Exemption is critical, given that New York City police officers have recently been murdered simply for being police officers. In 2014, Police Officers Wenjian Liu and Rafael Ramos were assassinated because of the uniform they wore. In 2017, Police Officer Miosotis Familia was assassinated because of the uniform she wore, by a man who had ranted on social media about unspecified allegations of police misconduct. Recent days have seen multiple instances of police officers being shot at, because of the uniform they wore. The unfortunate fact is that unstable individuals use information in the public domain—often misrepresented and twisted—to "justify" attacks on innocent police officers.

Indeed, it is indisputable that specific New York City police officers have already been targeted for murder using publicly-available information. For example, according to the Department of Justice, a man recently attempted to send a mail bomb to the New York City police officers who arrested him. He had methodically "conducted internet searches and made telephone calls to determine the locations of the officers' residences." The bomb, however, was sent to the wrong address and the New Yorker who received the package was murdered when the bomb detonated.[19]

Similarly, courts have warned about the ease with which unstable individuals can use publicly-disclosed identifying information to inflict physical harm. In *Matter of Bellamy v. NYPD*, the First Department found that unredacted documents providing the identities of persons who spoke with police during a homicide investigation were exempt from disclosure under FOIL. 87 A.D.3d 874, 875-76 (1st Dep't 2011).[20] The court reasoned that "after learning the names, all one would need is an internet connection to determine where they live and work." *Id*. The same logic applies here, where the addresses and family members of police officers involved can easily be found on the internet.[21]

---

[18] 2018 Annual Report.

[19] Press Release, *Brooklyn Man Arrested for Using a Weapon of Mass Destruction*, United States Department of Justice (Feb. 28, 2018).

[20] Courts have shown a strong interest in ensuring that disclosure does not "endanger the life and safety of witnesses or have a chilling effect on future witness cooperation." *Johnson v. NYPD*, 257 A.D.2d 343 (1st Dep't 1999) ("DD5" reports containing witness information may be withheld).

[21] During New York State Senate hearings regarding the repeal of CRL § 50-a, one local activist even stated on the record: "Name a cop and I'll find their address, phone number & relatives, I'll find them all on Google." https://www.nysenate.gov/calendar/public-hearings/october-24-2019/public-hearing-policing-s3695-repeals-provisions-relating (beginning at the 2:53:39 mark).

9

Finally, courts have identified numerous documents properly withheld under the Safety Exemption where disclosure would reveal confidential strategic information regarding an agency's tactical responses and deployments of personnel. For example, in *Ruberti, Girvin & Ferlazzo P.C. v. New York State Division of State Police*, the court found that documents disclosing the troop, zone, and station assignments of police officers could endanger their safety. 218 A.D.2d 494 (3d Dep't 1996). Suffice it to say that police disciplinary records undoubtedly contain information on NYPD strategy (not to mention witnesses and complainants), and it would be nonsensical to conclude that all of this information must be disclosed simply because CRL § 50-a was repealed.

In short, the CCRB has both the power and the obligation to keep New York City police officers—who are mothers and fathers, sisters and brothers, sons and daughters— and all New Yorkers safe. It MUST NOT release any document that may raise potential safety ramifications to police officers, their families, and the public at large.

## *The Law Enforcement Exemption*

Public Officers Law § 87(2)(e) provides, in pertinent part, that an agency "may deny access to records or portions thereof that . . . are compiled for law enforcement purposes and which, if disclosed would: (i) interfere with law enforcement investigations or judicial proceedings; [or] (ii) deprive a person of a right to a fair trial or impartial adjudication...." Advocates for repeal (as well as the FOIL Committee) have repeatedly conceded that this exemption continues to apply:

> CRL 50-a should be repealed because the concerns of the law's original sponsors over the privacy of police officers are adequately addressed by way of other FOIL exceptions. For example, New York's Public Officers Law already prevents records from being disclosed when they . . . are compiled for law enforcement purposes . . . in addition to other circumstances.[22]

The Court of Appeals has confirmed that "the purpose of the Freedom of Information Law is not to enable persons to use agency records to frustrate pending or threatened investigations, nor to use that information to construct a defense to impede a prosecution." *Matter of Fink v. Lefkowitz*, 47 N.Y.2d 567, 572 (1979). Thus, for example, courts have held that the Law Enforcement Exemption is applicable to prevent the disclosure of records prior to the completion of a law enforcement investigation. *DeLuca v. New York City Police Department*, 689 N.Y.S.2d 487 (1999). Moreover, one of the main purposes of the exemption "is to encourage private citizens to furnish controversial information to government agencies by assuring confidentiality under certain circumstances," an interest that all New Yorkers presumably share. *See, e.g.*, FOIL-AO-f9673 (finding that any right of access would be narrow with respect to "tapes of interviews, transcripts, notes, correspondence, logs and any and all

---

[22] City Bar Report.

10

information found and produced during an investigation by the Office of the Inspector General").[23]

Importantly, New York courts have already held that complaints against police officers are properly withheld pursuant to the Law Enforcement Exemption. In *Gannett Co. v James*, reporters sought various complaints and other documents on the basis that "[t]he information contained in the records sought . . . is essential to public awareness of the conduct of law enforcement personnel." 86 A.D.2d 744, 745 (4th Dep't 1982).[24] The court held that such documents were properly withheld pursuant to the Law Enforcement Exemption, because "the confidentiality afforded to those who wish it in reporting abuses is an important element in encouraging reports of possible misconduct which might not otherwise be made. Thus, these complaints are exempt from disclosure which might interfere with law enforcement investigations and identify a confidential source or disclose confidential information." *Id.* Thereafter, the Court of Appeals expressly approved the application of the Law Enforcement Exemption to complaints against police officers. *Capital Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562, 569 (1986) (finding that police records were properly withheld under FOIL exemptions); *see also Scaccia v. New York State Div. of State Police*, 138 A.D.2d 50 (3d Dep't 1988) (holding that written report regarding misconduct accusations made in connection with state police investigator's disciplinary proceeding was properly withheld under both the Law Enforcement and Inter/Intra-Agency Exemptions).

In the current climate, there can be little question that disclosure of police personnel records will interfere with ongoing disciplinary proceedings, including by potentially frustrating or threatening pending investigations. Indeed, the release of police personnel records in such instances would clearly result in cases being tried in the court of public opinion. To maintain the integrity of these and other proceedings, the CCRB must continue to apply the Law Enforcement Exemption.

## *The Inter/Intra-Agency Exemption*

FOIL further allows government agencies to withhold "inter-agency or intra-agency materials which are not (1) statistical or factual tabulations or data; (2) instructions to staff that affect the public; (3) final agency policy or determinations; or (4) external audits, including but

---

[23] *Available at* https://docs.dos.ny.gov/coog/ftext/f9673.htm.

[24] The categories of documents sought included: "(1) complaints made to the Internal Affairs Division of the Rochester Police Department alleging harassment or use of force by police officers for the past two years; (2) copies of "Use of Force" forms filed by Rochester police officers for the years 1976-1979; (3) complaints to the Internal Affairs Division of the Monroe County Sheriff's Department alleging harassment or use of force; (4) documents forwarded to the Monroe County Civil Service Commission by the Rochester Police Department concerning disciplinary action taken against its police officers; (5) documents reflecting the final disposition of civil service hearings concerning Rochester Police Department personnel with the names of officers for the years 1976-1980; and (6) documents reflecting the final disposition of civil service hearings concerning Rochester Police Department personnel for the years 1976-1980, without the names of the officers." *Id.* at 744.

11

not limited to audits performed by the comptroller and the federal government." Public Officers Law § 87(2)(g). Like other exemptions, the FOIL Committee has confirmed that the Intra/Inter-Agency Exemption is properly applied to withhold police disciplinary records following the repeal of CRL § 50-a:

> A performance evaluation may also be withheld pursuant to §87(2)(g), concerning "intra-agency materials," insofar as it includes the opinions of agency officials concerning a public employee's performance.[25]

In addition to performance evaluations, the Inter/Intra-Agency Exemption has been used to withhold countless police records. For example, the First Department has held that "police reports and records, including DD5s, are interagency material and not final agency policy or determinations, and are exempted from disclosure under FOIL."[26] Similarly, in a case related to NYPD surveillance, New York courts determined that "responsive records seeking information regarding any 'joint NYPD–CIA unit engaged in counterterrorism surveillance or information gathering' and the 'NYPD's sharing of information about informants with the CIA or other agencies' fell squarely within FOIL's inter and intra-agency exemption."[27] Other potentially relevant documents that have been withheld include supervisors' opinions regarding performance;[28] subjective comments, opinions, and recommendations;[29] rating sheets used for evaluation purposes;[30] recommendations regarding candidates;[31] names and charges related to

---

[25] 2018 Annual Report.

[26] *Scott v. Chief Med. Exam'r, City of New York*, 179 A.D.2d 443 (1st Dep't 1992).

[27] *Asian Am. Legal Def. & Educ. Fund v. New York City Police Dep't*, 964 N.Y.S.2d 888, 897 (Sup. Ct., N.Y. Cnty. 2013). The court further noted that the FOIL request was "not reasonably described."

[28] FOIL-AO-17902, *available at* https://docs.dos.ny.gov/coog/ftext/f17902.html (noting that "[i]f a supervisor expressed an opinion concerning your performance in writing to another City official, that portion of such a record may be withheld under §87(2)(g)").

[29] *Professional Standards Review Council of America Inc. v. New York State Dept. of Health*, 597 N.Y.S.2d 829, 831 (3d Dep't 1993) ("subjective comments, opinions and recommendations written in by committee members are not required to be disclosed").

[30] *Shaw v. Lerer*, 446 N.Y.S.2d 855 (Sup. Ct. Westchester Cnty. 1981) (rating sheets used to evaluate coaches exempted as inter/intra-agency material).

[31] *Rothenberg v. City University of New York*, 594 N.Y.S.2d 219 (1st Dep't 1993) (recommendations of committees concerning promotional candidates exempt).

12

unproven allegations;[32] hearing panel documents;[33] investigative reports;[34] and many other pre-decisional documents prepared as part of an investigation.[35] Given the significant authority holding that many types of inter-agency and intra-agency materials are exempt from disclosure under FOIL, this exemption should continue to be applied to police personnel records.

* * *

As noted above, during his testimony at the October 24, 2019 Senate Hearing regarding the repeal of CRL § 50-a, Chair Davie confirmed that "transparency does not have to come at the expense of privacy, safety, or other public interests." The CCRB now must show that those words have meaning, by applying FOIL's exemptions to withhold Unsubstantiated Documents and other materials that put the privacy and safety of police officers at risk. In the event that the CCRB intends to reject its prior position with respect to Unsubstantiated Documents, well-settled New York law, the statements of New York legislators, the guidance of the FOIL Committee, and the assertions of numerous repeal advocates (among others) and NOT invoke FOIL exemptions to protect New York City police officers, we respectfully request that you notify us immediately and, in all events, provide affected active and retired police officers notice of at least ten business days prior to any disclosure.

Sincerely,

*Michael T. Murray*/SAS
Michael T. Murray

cc:
Patrick J. Lynch
Matthew Kadushin, Esq., General Counsel (*via hand*)
CCRB Records Access Officer (*via hand*)
CCRB Records Access Appeals Officer (*via hand*)

---

[32] *Herald Co. v. School Dist. of City of Syracuse*, 430 N.Y.S.2d 460 (Sup. Ct. Onondaga Cnty. 1980) (finding "the name and charges constitute a material part of the unproved allegation before the hearing panel and are pre-determination materials exempt from disclosure under subparagraph (2)(g) of Section 87 of the Public Officers Law").

[33] *McAulay v. Bd. of Ed. of City of New York*, 403 N.Y.S.2d 116, 117 (1978) ("The hearing panel documents or report sought are not final agency determinations or policy. Rather, they are pre-decisional material, prepared to assist an agency decision maker (here, the Chancellor) in arriving at his decision.").

[34] *Goodstein & West v. O'Rourke*, 608 N.Y.S.2d 306 (2d Dept. 1994) (investigative report exempt as pre-decisional interagency material).

[35] FOIL-AO-9673, *available at* https://docs.dos.ny.gov/coog/ftext/f9673.htm; *Sell v. New York City Dept. of Educ.*, 24 N.Y.S.3d 41 (1st Dept. 2016) ("Parts of the witness statements, email correspondence, and other materials consist of 'opinions, ideas, or advice exchanged as part of the consultative or deliberative process of government decision making,' rather than 'factual account[s] of the witness's observations.'").

13