**MEMO ENDORSED**



New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
www.nyclu.org

Christopher Dunn
Legal Director

VIA ECF

July 23, 2020

Honorable Katherine Polk Failla
United States District Judge
United States District Court Southern District of New York
40 Foley Square
New York, N.Y. 10007

Re: *Uniformed Fire Officers Assoc. v. de Blasio*, 20 Civ. 5441 (KPF)

Dear Judge Failla:

On behalf of the New York Civil Liberties Union, we write to request that the Court modify the temporary restraining order it issued last night to remove the provision that bars the NYCLU from publishing information about police misconduct it received from the New York City Civilian Complaint Review Board pursuant to a Freedom of Information Law request. The NYCLU submits that the July 22 Order is invalid for two independent reasons.

Most importantly, the Court's Order constitutes a prior restraint that violates the First Amendment. Consistent with its long history of releasing information obtained through open-records requests, the NYCLU had planned to make public the CCRB database today, along with a tool the public could use to search the database and the NYCLU's initial analysis of the contents of the database. This planned publication is of particular significance given the ongoing national controversy over police misconduct and the recent repeal of the state law that previously barred the release of this type of information. Under long-standing Supreme Court law, the First Amendment bars the prior restraint of the NYCLU's publication of this critically important information, no matter what concerns the Court may have about the speed with which the CCRB processed the NYCLU's FOIL request.

Beyond this grave First Amendment violation, the Court lacks authority under Rule 65 to extend its temporary restraining order to the non-party NYCLU. While Rule 65 does authorize issuance of temporary restraining orders against non-parties who are acting in concert with parties, that addresses enforcement only of extant orders and does not reach actions that occur before any judicial relief has been entered.

**1. The Order Is an Unconstitutional Prior Restraint on Speech.**

The July 22 Order is a prior restraint on the NYCLU's core First Amendment-protected speech. Prior restraints constitute "the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and are subject to a

1

"'heavy presumption'" against constitutional validity, *United States v. Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005) (quoting *Bantam Books, Inc v. Sullivan*, 372 U.S. 58, 70 (1963)).[1] Such restraints are permitted only in "exceptional cases" and are subject to "exacting review." *Quattrone*, 402 F.3d at 310–11. "Even where questions of allegedly urgent national security, or competing constitutional interests are concerned, [the Supreme Court has] imposed this 'most extraordinary remed[y]' only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (citing *New York Times Co. v. United States,* 403 U.S. 713 (1971) (*"Pentagon Papers"*) and *Nebraska Press Ass'n*, 427 U.S. at 559). And the Second Circuit has noted that "[w]hen a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech . . . increases." *Met. Opera Ass'n v. Local 100*, 239 F.3d 172, 176-77 (2d Cir. 2001).

The NYCLU has a long history of obtaining important information from the government and making it public for purposes of public education and advocacy. Declaration of Christopher Dunn ¶¶ 3-4 (July 23, 2020) ("Dunn Decl."). The July 22 Order restrains the NYCLU, a non-party, from publishing information of deep public concern regarding the conduct of government officials at a moment when there is significant momentum for legislative reform and accountability and national attention to police misconduct. After obtaining the CCRB spreadsheet on July 14 through a FOIL request, NYCLU staff immediately started to work with the database to prepare the information for public release. *Id*. ¶ 8.  This included creating a tool that would make it easy for members of the public to search the database. *Id.* ¶ 9. The NYCLU was ready to make the search tool available to the public at noon today, Thursday, July 23, 2020. In conjunction with that publication, the NYCLU intended to release information about initial analysis it had done of the database during the brief period it had needed to do the technical work to make the information available. *Id.* ¶ 10. The NYCLU also planned to provide to the public the ability to download the database itself so they could do whatever analysis they wished to. *Id.*  The July 22 Order "deprives the public of specific news" that is "already known" to the NYCLU.  *See In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988) (describing this deprivation of news as "[t]he most offensive aspect of a prior restraint").

*Pentagon Papers* squarely establishes that the restraining order imposed on the NYCLU violates the First Amendment.  In *Pentagon Papers*, the Supreme Court upheld the right of the press to publish information of national concern obtained from documents stolen by a nonparty. *See* 403 U.S. at 714. As the Court recognized in *Bartnicki v. Vopper*, 532 U.S. 514 (2001), in denying an injunction against publication, *Pentagon Papers* "resolved a conflict between the basic rule against prior restraints on publication and the interest in preserving the secrecy of information that, if disclosed, might seriously impair the security of the Nation." *Id.* at 528. The concurring justices of the *Pentagon Papers* Court concluded that exceptions to the rule of prior restraints were exceedingly narrow and could rarely be justified. *See, e.g.*, 403 U.S. at 730 (Stewart J., concurring) (no prior restraint where disclosure not shown to "surely result in direct, immediate, and irreparable damage to our Nation or its people").

---

[1] Indeed, the Supreme Court has explained that this presumption has special force because the press "guards against the miscarriage of justice by subjecting *the police*, prosecutors, and judicial processes to extensive public scrutiny and criticism." *Nebraska Press Ass'n*, 427 U.S. at 560 (citing *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966) (emphasis added).

By stark contrast in this case, the plaintiffs' claimed risk, *at most*, involves generalized concerns of the safety of police officers and this Court did not make any specific findings of concrete and immediate harm that will result. *See* TRO Hr'g Tr. at 82:9-1 (July 22, 2020) (finding "serious issues that transcend reputation, that affect employment, that affect safety," which the court accept[ed] . . . as not speculative and imminent for purposes of today's proceeding"). Such harms do not establish the "exceptional" circumstances justifying the extraordinary measure of a prior restraint. *See Quattrone*, 402 F.3d at 310. Accordingly, this prior restraint cannot overcome the "heavy presumption" of invalidity.

Furthermore, Supreme Court precedent makes clear that even if the CCRB acted unlawfully in disclosing information and even if the NYCLU knew or had reason to believe the action was unlawful (which it did not), the First Amendment prohibits the punishment—much less enjoining—of the NYCLU's publication of that information. *See Bartnicki*, 532 U.S. 514 (holding that knowing recipient of illegally intercepted recording on matter of public concern could not be held liable for its publication); *Pentagon Papers*, 403 U.S. 713 (upholding right of newspapers to publish leaked classified study related to Vietnam War); *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 430–38 (S.D.N.Y. 2019) (recognizing that under *Bartnicki* the defendants were entitled to publish stolen documents requested from hackers provided they did not participate in hacking); *Republic of Kazakhstan v. Does 1-100*, No. 15-cv-1900 (ER), 2015 WL 6473016, at *2-*3 (S.D.N.Y. Oct. 27, 2015) (clarifying that injunction against hackers did not prohibit news organization from republishing hacked documents because there was no evidence organization was involved in hacking); *Jean v. Massachusetts State Police*, 492 F.3d 24 (1st Cir. 2007) (First Amendment prohibited state from interfering with activist's publication of illegally recorded video of state police where the activist had reason to know of illegality but did not make the recording).

Accordingly, the First Amendment requires that the Court modify its July 22 Order to not restrain the NYCLU from publishing to the public the CCRB information it obtained on July 14.

### 2. The Restraining Order Exceeds the Court's Authority Under Rule 65.

Rule 65 of the Federal Rules of Civil Procedure defines this Court's authority to issue temporary restraining orders, and it does allow for extending such order to nonparties "who are in active concert or participation with" a defendant. *See* Fed. R. Civ. Proc. 65(d)(2). In extending its restraining order to the NYCLU, the Court stated it had found that the NYCLU had acted in concert in with the defendants in light of the speed with which the CCRB processed the NYCLU's FOIL request.[2] While the NYCLU submits that no basis exists for concluding it acted in concert with the CCRB, Rule 65 does not reach actions that precede the entry of judicial relief, as is the undisputed situation here.[3]

---

[2] The NYCLU is non-government, not-for-profit advocacy organization, *see* Dunn Decl. ¶ 2, not affiliated with the defendants and is therefore not subject to any of the collective bargaining agreements, settlements, or constitutional provisions cited as the bases for plaintiffs' claims.

[3] A non-party acts in concert if the "third party 'aided and abetted' the party subject to the injunction," which requires showing "that the non-party had actual knowledge of the judicial decree and violated it, and that the challenged action was taken for the benefit of, or to assist, a party subject to the decree." *Spin Master Ltd. v. 158*, No. 18-CV-1774 (LJL), 2020 WL 2766104, at *20 (S.D.N.Y. May 28, 2020) (quoting *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015) (citation omitted)). The only evidence before this Court of *any* relationship between the

As the Supreme Court explained in *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945), Rule 65(d)(2) is meant to codify the common law doctrine that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Id.* at 14. But this has no application to acts that occurred before any decree has been issued (much less before any proceeding was instituted). *See Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (Hand, L.) ("[T]he only occasion when a person not a party may be punished is when he has helped to bring about, not merely what the decree has forbidden, . . . but what it has the power to forbid, an act of a party."); *United Pharmacal Corp. v. United States*, 306 F.2d 515, 517 (1st Cir. 1962)(explaining that a past collaboration or contractual relationship prior to the preliminary injunction is not controlling).

The NYCLU submitted its FOIL request on July 9, 2020. Dunn Decl. ¶ 7. The City has informed the Court that the CCRB responded to the request on July 13, and the NYCLU received that response by email through the standard New York City portal for such requests at 12:33 p.m. on July 14. *Id.* ¶ 8. The initial state court order in this case, however, was not issued until July 15 (and as the NYCLU understands it, the case was not even filed until after the NYCLU had received the database). *See* ECF No. 12-1. Consequently, when the NYCLU received the documents, no judicial order was in place such that any interactions between the NYCLU and the CCRB could, under Rule 65, constitute active concert. *See ONE11 Imports Inc. v. NuOp LLC*, No. 16-CV-7197 (JPO), 2016 WL 7338422, at *2 (S.D.N.Y. Dec. 19, 2016); *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (collecting cases).

In *One11 Imports Inc.*, Judge Oetken considered whether the preliminary injunction he had issued forbidding defendants from "advertising, promoting, marketing, selling, and/or distributing products that bear the name 'My Marquee Lightbox'" also enjoined nonparty resellers who had obtained the products prior to the injunction. *ONE11 Imports Inc*, 2016 WL 7338422, at *1-*2. He held that because the defendant's sale of the infringing to the nonparties took place before the entry of the injunction, the "Court's preliminary injunction Order does not, therefore, 'reach backwards in time to action taken prior to the time it was issued.'" *Id.* (quoting *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998)); *see also Herrlein v. Kanakis*, 526 F.2d 252, 255 (7th Cir. 1975) (nonparties not bound by injunction because the transfer of assets "occurred before the lawsuit against [the defendants] was initiated and thus could not have been undertaken to defy the court's order."); *O & L Assocs. v. Del Conte*, 601 F. Supp. 1463, 1464 (S.D.N.Y. 1985) (Weinfeld, J.) (non-party Columbia Pictures not bound by injunction even where it had entered into licensing agreement after lawsuit had commenced and plaintiffs had filed their motion for preliminary injunctive relief but before the injunction was issued).

So too here, the NYCLU received the spreadsheet prior to the suit in this matter and the entry of the state supreme court's restraining order on July 15 and this Court's July 22 Order, and thus there was no party with which the NYCLU could be in active concert. This Court's restraining order

---

NYCLU and the defendants is that the NYCLU received a response to its July 9 records request from the CCRB on July 14. Dunn Decl. ¶ 8.  Even assuming the timing of the response reflected undue speed by the CCRB, this does not suggest that the challenged action was taken for the benefit of or to assist a party to violate a court order.

therefore exceeds the authority that Rule 65 confers.

* * *

For the foregoing reasons, the NYCLU respectfully requests that this Court modify its July 22 Order to the extent that the Order restrains the NYCLU from disclosing the information it received from the CCRB on July 14, 2020.

Respectfully submitted,

*/s/Christopher Dunn*
Christopher Dunn
Molly K. Biklen
Jordan Laris Cohen
NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
(212) 607-3300
cdunn@nyclu.org

```
The Court is in receipt of the above-letter from NYCLU.  (Dkt. #16).
As discussed at the hearing on July 22, 2020, Plaintiffs are ordered
to respond by today, July 24, 2020.
```

Dated: July 24, 2020
       New York, New York

SO ORDERED.

*[signature]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE