

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Anthony Paul Coles
T  (212) 335-4844
E  anthony.coles@us.dlapiper.com

July 24, 2020

*VIA ECF*

Hon. Katherine Polk Failla
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

**Re:**   ***Uniformed Fire Officers Association, et al. v. Bill DeBlasio, et al.***
           **20-cv-05441 (KPF)(RWL)**

Dear Judge Failla:

    We write in response to Christopher Dunn's letter to the Court of July 23, 2020, and to oppose the application of the New York Civil Liberties Union ("NYCLU") to modify the temporary restraining order Your Honor issued on July 22, 2020.  (*See* ECF No. 16.)

    The Court properly entered a TRO against the NYCLU because it was acting in concert with the Defendants to release Unfounded and Non-Final Allegations affecting 81,000 police officers, and to undermine the rights of those officers.  It is immediately apparent that Mr. Dunn's letter omits any recitation of how the NYCLU obtained these Unfounded and Non-Final Allegations from the Civilian Complaint Review Board ("CCRB") at warp speed.  In light of the Court's finding that the circumstances include "rather curious timing," and given that the production of the CCRB records occurred while the parties "were in discussion, hoping to forestall litigation," that omission by the NYCLU is glaring.  (*See* Transcript of July 22, 2020 court conference ("Tr.") at 80:8-12.)

    Further, Plaintiffs have outstanding discovery to the Defendants to obtain documents and other information relating to the release of the CCRB records to the NYCLU at a pace which "broke land speed records."  (Tr. at 84:2-3.)  As the Court already has determined, if the NYCLU carried out its threat to release the Unfounded and Non-Final Allegations, there would "be serious issues that transcend reputation, that affect employment, that affect safety" which are "not speculative and [are] imminent…."  (Tr. at 82:9-11.)  Even worse, as the Court is aware from Plaintiffs' letter filed earlier today, the Defendants are slow-rolling the production of the discovery in this matter, and have refused to even engage in a substantive "meet and confer" concerning when (or if) the demanded documents will be produced.  (*See* ECF No. 21.)  There is no reason to grant the NYCLU's application to set aside the TRO – which application the NYCLU ironically alleges is in the name of transparency – where the NYCLU and the Defendants seek to shroud their own conduct in secrecy, and have, by all appearances, schemed



Hon. Katherine Polk Failla
July 24, 2020
Page Two

together to try to undermine the collective bargaining rights, constitutional rights and contractual rights of the Plaintiffs.  Contrary to Mr. Dunn's letter, this Court plainly had the authority to bind the NYCLU with its TRO ruling.

The relevant chronology also is devastating to any assertion that the NYCLU and Defendants were acting in good-faith.  As confirmed by the Court at the July 22 Conference, the NYCLU propounded its FOIL request on Thursday, July 9, 2020.  Defendants then admit that "as of" Monday July 13 the CCRB produced the records of 81,000 police officers to NYCLA.  (*See* ECF No. 7 at 3.)  By contrast, a preliminary review of the CCRB's own website shows that it has open FOIL requests dating from May 2019, and that since July 10, 2020, *50 of the 55 FOIL requests it received remain open*, none of which are of the magnitude of the wholesale, indiscriminate document release given to NYCLA.  (City of New York, Open Records Requests, https://a860-openrecords.nyc.gov/request/view_all (last visited July 24, 2020)).

After speaking to Mr. Dunn on the record, this Court made a specific finding that a TRO against the NYCLU was necessary to prevent irreparable harm to plaintiffs. This finding was based on Mr. Dunn's own testimony regarding: (i) information within the NYCLU's control, received from the CCRB just last week; (ii) the NYCLU's intention to immediately that information; and (iii) an analysis of the potential impact of the release of that data on plaintiffs and on this litigation. This Court had the authority, as well as the responsibility, to temporarily restrain the NYCLU based upon its finding of potential harm to plaintiffs' members: the court's "power to enjoin extends to persons and organizations whose activities present a risk of irreparable harm to petitioner that cannot be alleviated by means other than injunction."  *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 427 (E.D.N.Y. 2007), *aff'd Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (finding persons named in injunction, including those not joined as parties in underlying action, bound by its terms); *see also Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 347 (S.D.N.Y. 2012) (enjoining non-party to underlying action from using confidential documents obtained in violation of a protective order).  The case law upon which the NYCLU relies (much of which considered whether an injunction or restraint encompassed a person or entity not named in the order, including in the context of contempt proceedings) is irrelevant here.[1]

---

[1] As the court in *Zyprexa* assessed, *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir.1930), which considered when a nonparty to injunction could be held in contempt, "does not bear on the question [of] who the court may enjoin in the first instance."  *In re Zyprexa*, 474 F. Supp. 2d at 427.  Importantly, the *Zyprexa* court highlighted that "[t]hose persons named in an injunction are considered 'parties' for the purpose of Rule 65(d)."  *Id.* at 419 (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 775 (1994)); *see also Havens v. James*, 435 F. Supp. 3d 494, 503 (W.D.N.Y. 2020) (Rule 65 binds "the parties to the injunction").  The remaining case law the NYCLU cites is also inapposite.  *See, e.g., U.S. Pharmacal Corp. v. U.S.*, 306 F.2d 515, 517 (1st Cir. 1962) (nonparty could not be



Hon. Katherine Polk Failla
July 24, 2020
Page Three

Moreover, Rule 65 applies the scope of a restraining order to those with notice of the order and "other persons who are in active concert or participation with" the bound party, or any of its officers, agents, servants, employees, and attorneys.  Fed. R. Civ. P. 65(d)(2). This rule codifies the common-law doctrine that parties "'may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'"  *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010) (quoting *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 14, 65 S. Ct. 478, 89 L. Ed. 661 (1945)).  The NYCLU already has appeared and had its rights adjudged by this Court. And, as this Court found, the NYCLU and the CCRB were acting in concert to render this entire proceeding a nullity and an empty ritual. *See* Minute Entry, July 22, 2020; *see also* Tr. at 88:9-19.

With respect to the NYCLU's First Amendment argument, this Court's temporary restraining order prevents private parties from acting in concert with Defendants to enable the CCRB and other New York City Defendants to evade the law.  Upon the evidence presented during Wednesday evening's conference, this Court affirmatively found that the NYCLU was acting in concert with the CCRB.  "Did I make a finding that you are acting in concert with the defendants on disclosure of this information?  I did." (Tr. at 88:17-19; *see also* Tr. at 79:13-15 (". . . I am granting the [TRO], and I am enjoying the defendants and *anyone acting in concert with them* from publicly disclosing these materials").  The NYCLU fails to cite any case involving a restraint imposed by a court to prevent a party from acting in concert with a government entity to enable the government entity to violate the law, including violating Constitutional rights.

Even if the NYCLU may assert the right to free speech under these circumstances (which it cannot), the Court must balance this interest against Plaintiffs' rights under the Due Process Clause to notice of their inclusion in the database and an opportunity to contest it.  (See ECF No. 10-12 at 13-18 (explaining how dissemination will sufficiently impair the liberty interests of the identified officers so as to warrant due process protections).)  The Supreme Court has

---

held in contempt as aider or abettor of named party absent showing that it was identified with the named party); *Herrlein v. Kanakis*, 526 F.2d 252, 254 (7th Cir. 1975) (nonparty not named in injunction could not be held in contempt as aider or abettor of named parties absent evidence of named parties' violation);*O & L Assocs. v. Del Conte*, 601 F. Supp. 1463, 1464 (S.D.N.Y. 1985) (injunction did not bind unnamed nonparty absent showing of active concert or participation); *ONE11 Imports Inc. v. NuOp LLC*, No. 16-CV-7197 (JPO), 2016 WL 7338422, at *2 (S.D.N.Y. Dec. 19, 2016) (injunction did not encompass nonparty retailers or distributors not named in the original injunction); *Spin Master Ltd. v. 158*, No. 18-CV-1774 (LJL), 2020 WL 2766104, at *20 (S.D.N.Y. May 28, 2020) (declining to extend injunction to third parties not before the court and not in privity with the named party); *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (injunction did not encompass nonparty retailers and distributers not shown to be in active concert or participation with restrained party).



Hon. Katherine Polk Failla
July 24, 2020
Page Four

expressly approved of balancing free speech rights against other individual rights in other contexts, such as the Sixth Amendment right to a fair trial, a similarly important constitutional interest. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988) (affirming order restraining trial participants from speaking with press in corruption case where defendants' right to a fair trial was threatened). Plaintiffs are aware of no case allowing a party to act in concert with a government entity to enable the government entity to violate the law and the Constitutional rights of others. *Cf. Nebraska Press Ass'n*, 427 U.S. at 561 ("The authors of the Bill of Rights did not undertake to assign priorities as between the First Amendment and Sixth Amendment rights, ranking one as superior to the other."). Here, there is no alternative to the TRO imposed by this Court, which is the only means for protecting and preserving Plaintiffs' Constitutional rights, which stand to be violated by the very act contemplated by the NYCLU in the wholesale dumping of the CCRB database in the public realm. Any free speech right of the NYCLU must yield to Plaintiffs' fragile due process rights, which would be immediately and permanently extinguished by the planned publication. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again.").

Moreover, as this Court acknowledged, the release of the CCRB database by the NYCLU implicates serious safety concerns for Plaintiffs' members. Tr. at 82:8-12 ("I believe there to be serious issues that transcend reputation, that affect employment, that effect safety, and I am accepting those harms as not speculative and imminent for purposes of today's proceeding.") Tellingly, the NYCLU does not suggest any alternatives to the injunction.

Accordingly, this Court's Order does not constitute an improper prior restraint on the NYCLU's First Amendment rights.

Respectfully submitted,

**DLA Piper LLP (US)**

/s/ *Anthony P. Coles*
Anthony P. Coles

cc:     All counsel of record (*via* ECF)
        Failla_NYSDChambers@nysd.uscourts.gov