

THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007-2601

JAMES E. JOHNSON
*Corporation Counsel*

KAMI Z. BARKER
Mobile: (216) 903-3610
kbarker@law.nyc.gov

July 29, 2020

**BY ECF**
Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   Uniformed Fire Officers Association, et al. v. Bill DeBlasio, et al.
       20-cv-05441 (KPF) (RWL)

Dear Judge Failla:

We write to respectfully request that the Court lift the portion of the temporary restraining order ("TRO") that prohibits defendants from publishing the CCRB database that the New York Civil Liberties Union ("NYCLU") received on or about July 14, 2020.[1]  Now that the Court has permitted NYCLU to disseminate this database, plaintiffs can no longer claim that they would be irreparably harmed by the defendants publishing that very same data. Thus, it is only proper, then, for the Court to also grant defendants the ability to publish this database and allow the public direct access to this critical information.

On July 28, this Court lifted the TRO against NYCLU and permitted the organization to use, without restriction, the database it received from the CCRB (hereinafter "database" or "CCRB database") on or about July 14, pursuant to their July 9 FOIL request.  The Court also stayed its decision for twenty-four hours to provide the plaintiffs with sufficient time to appeal before the order went into effect. However, the Court, nonetheless, maintained the TRO against defendants, including the restriction on disclosing the very same database.

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'" Impax Media Inc. v. Northeast Adver. Corp., 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559

---

[1] CCRB sent the database to NYCLU on July 14, which it admits receiving electronically by July 15.

F.3d 110, 118 (2d Cir. 2009).  And as plaintiffs themselves stated in their memorandum of law, "once information is public, it can never be made private again." Citing Gambale v. Deutsche Bank AG, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again.").  Therefore, once NYCLU is free to disseminate the CCRB database, they can publish it on the Internet for the world to see.[2] And once it's published, as Your Honor aptly stated during the July 22 conference, "the cat is out of the bag." What is public can never be made private again, and whatever irreparable harm plaintiffs might suffer from the publication of said database could not be avoided by restricting defendants from publishing the very same data.[3] Thus, the entire purpose for maintaining this portion of the TRO is now moot, and that portion should, therefore, be lifted.

Additionally, any harm that plaintiffs might suffer from the publication of this database would be the result of plaintiffs' own delay in bringing this petition. Plaintiffs claim that they were flabbergasted to learn on July 12 that defendants would be releasing pending, unsubstantiated, and unfounded CCRB records "carte blanche" as a result of the repeal of 50-a. However, this claim does not comport with the open record. As early as June 9, groups representing over 200,000 law enforcement officers in New York State, including plaintiffs, submitted a memorandum to the New York State Assembly opposing the then-proposed repeal of 50-a.[4] In this memo, plaintiffs argue that disciplinary complaints that "have not been fully investigated or substantiated are not reliable or fair indicators of an officer's conduct…and release of such records [] would expose the accused officer of serious safety concerns as well as unavoidable and irreparable harm to reputation and livelihood." See Exhibit "A," at 3.  The representatives of the people of New York rejected these arguments and repealed 50-a on June 12, 2020. Yet, plaintiffs delayed *for over a month* in challenging this repeal and waited to bring the underlying petition until July 14. Therefore, any harm plaintiffs' members might suffer as a result of the publication of the CCRB database is due to plaintiffs' actions – or rather inactions – and plaintiffs' alone.

Moreover, NYCLU's publication of the data significantly alters the balance of equities. To succeed on the merits, plaintiffs must show that the harm they would suffer, absent a TRO, is substantially greater than the harm defendants would suffer if a preliminary injunction is granted. See Clemente Global Growth Fund, Inc. v. Pickens, 705 F. Supp. 958, 971 (S.D.N.Y. 1989) (citing Buffalo Forge Co. v. Ampco Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981).

Here, unless the Circuit reverses the Court's decision to lift the TRO, NYCLU will soon disseminate the CCRB database however they see fit and according to their interests alone.

---

[2] Indeed, ProPublica already published a version of the CCRB database, which can be found on the Internet at https://www.propublica.org/datastore/dataset/civilian-complaints-against-new-york-city-police-officers.

[3] ProPublica's internet publication of CCRB materials on July 25 should not prevent the lifting of the TRO, as it relates to the database. ProPublica's publication provided narrower search parameters than NYCLU's FOIL request. Because NYCLU's FOIL request included the entire database, their ability to publish it should necessitate defendants' ability do so as well.

[4] A copy of this memorandum can be found in a tweet by NYCPBA Legal at https://twitter.com/NYCPBA_GC/status/1270430606942515200?s=20 and attached hereto as "Exhibit A."

Therefore, plaintiffs would not suffer a greater harm absent the TRO against defendants concerning the database. In fact, they would actually suffer a substantially greater harm if the Court were to maintain that portion of the TRO against defendants. Moreover, this substantially greater harm would also come, no doubt, to the defendants and greater public. By forbidding defendants from publishing the CCRB database, the Court has granted third parties, who have no responsibility for accuracy or completeness, the sole right to distribute this data. This increases the probable spread of misinformation and decreases the public's ever-eroding trust in government – the very thing the 50-a repeal sought to repair. However, by lifting this portion of the TRO, the Court can guarantee the public's direct access to the database and ensure the data's accuracy and validity, which the parties and the public so greatly deserve.

Indeed, if a third-party publisher were to mischaracterize, misstate or miscalculate the data, the TRO would actually prevent defendants[5] from correcting the record, providing accurate data, or challenging the validity of the information provided. Additionally, it would prevent the parties, should they be contacted by the media, from providing members of the press with the historical, political or situational context necessary to understanding and accurately interpreting the data. Certainly, plaintiffs would agree that the parties do not benefit from a situation where third parties control the dissemination and publication of the CCRB database, while we remain powerless to prevent its misinterpretation and misuse.

Ensuring proper access and context to accurate data is key to allowing public confidence in the City and its police force. The "supervision of law enforcement personnel sworn to protect and serve the public unquestionably involves an interest of vital importance to state (or, in this case, municipal) government." Murphy v. City of Manchester, 70 F. Supp. 2d 62, 68 (D.N.H. 1999); see also Gilbert v. Homar, 520 U.S. 924, 932 (1997) (weighty interest in securing public confidence in police department); McDonald v. Metro-North Commuter R.R. Div. of Metro. Transit Auth., 565 F. Supp. 37, 40 (S.D.N.Y. 1983) ("New York State's interest in disciplining police officers . . . is the sort of important state interest which precludes federal interference..."); Karins v. City of Atlantic City, 152 N.J. 532, 706 A.2d 706, 715-716 (1998) (holding that municipality has a strong interest in the off-duty conduct of members of its uniformed forces).

With no rational basis for maintaining the existing TRO, there are only two purposes for maintaining the portion that restricts defendants' disclosure of the database: 1) to gag the defendants and prevent them from discussing, disseminating, or publishing their own data, and 2) to further deprive the City's residents of the civic trust they are desperate to achieve. Therefore, for the foregoing reasons, defendants respectfully request that the TRO be lifted against defendants with respect to the CCRB database, as it was for NYCLU, and permit

---

[5] And, for that matter, plaintiffs since they agreed in the July 28 conference not to reveal any information provided in discovery or otherwise related to this dispute.

defendants to publish the database as they see fit. We thank the Court for its consideration of this request.

Respectfully submitted,

By:   **ECF**:  _____/s/_____
Kami Z. Barker
Assistant Corporation Counsel

_____/s/_____
Rebecca G. Quinn
Assistant Corporation Counsel

_____/s/_____
Dominique Saint-Fort
Assistant Corporation Counsel

cc:   Anthony Coles (by ECF)
DLA Piper
*Attorney for Plaintiffs*