UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Uniformed Fire Officers Association; Uniformed Firefighters Association of Greater New York; Correction Officers' Benevolent Association of the City of New York, Inc.; Police Benevolent Association of the City of New York, Inc.; Sergeants Benevolent Association; Lieutenants Benevolent Association; Captains Endowment Association; and Detectives' Endowment Association,<br><br>              Petitioners/Plaintiffs,<br><br>              -against-<br><br>Bill de Blasio, in his official capacity as Mayor of the City of New York; the City of New York; Fire Department of the City of New York; Daniel A. Nigro, in his official capacity as the Commissioner of the Fire Department of the City of New York; New York City Department of Correction; Cynthia Brann, in her official capacity as the Commissioner of the New York City Department of Correction; Dermot F. Shea, in his official capacity as the Commissioner of the New York City Police Department; the New York City Police Department; Frederick Davie, in his official capacity as the Chair of the Civilian Complaint Review Board; and the Civilian Complaint Review Board,<br><br>              Respondents/Defendants. | Case No. 1:20-cv-05441-KPF |

## MEMORANDUM OF LAW OF PROPOSED INTERVENOR COMMUNITIES UNITED FOR POLICE REFORM IN SUPPORT OF MOTION TO INTERVENE

Baher Azmy
Darius Charney
Guadalupe V. Aguirre
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, New York 10012
Tel: (212) 614-6464

Alex V. Chachkes
Rene Kathawala
Margaret Wheeler-Frothingham
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Tel: (212) 506-5100
Fax: (212) 506-5151

*Attorneys for Proposed Intervenor*

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................................. 1

II. FACTUAL BACKGROUND .................................................................................. 3

    A.  CPR's organizational mission ............................................................................ 3

    B.  Repeal of § 50-a ................................................................................................ 4

    C.  Plaintiffs' lawsuit .............................................................................................. 6

III. ARGUMENT ......................................................................................................... 8

    A.  CPR is entitled to intervene of right. ................................................................ 8

        1.  The motion is timely. .................................................................................. 9

        2.  CPR has several legally protectable interests at stake in this litigation. .................................................................................................. 10

        3.  CPR's interest will be impaired if any of Plaintiffs' claims succeed. .................................................................................................. 16

        4.  CPR's interests are not adequately protected. ......................................... 20

    B.  Alternatively, CPR should be allowed permissive intervention. ........................ 22

IV. CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
  467 F.3d 238 (2d Cir. 2006)...........................................................................9, 22

*Brennan v. N.Y.C. Bd. of Educ.*,
  260 F.3d 123 (2d Cir. 2001)...............................................................................10

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001).............................................................9, 10, 20, 21

*Capital Newspapers Div. of Hearst Corp. v. Burns*,
  67 N.Y.2d 562 (1986) ........................................................................................14

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
  868 F.3d 104 (2d Cir. 2017)...................................................................11, 12, 16

*Chiles v. Thornburgh*,
  865 F.2d 1197 (11th Cir. 1989) .........................................................................12

*Christa McAuliffe Intermediate School PTO, Inc. v. De Blasio*,
  18-cv-11657, 2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020)...............................24

*City of Newark v. Law Dept. of City of N.Y.*,
  305 A.D.2d 28 (1st Dep't 2003) .........................................................................15

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
  170 F.R.D. 93 (E.D.N.Y. 1996).........................................................................14

*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015)...........................................................................12

*Dorsett v. Cty. of Nassau*,
  289 F.R.D. 54 (E.D.N.Y. 2012)..........................................................................15

*Floyd v. City of New York*,
  1:08-cv-01034AT (S.D.N.Y. Aug. 22, 2018) .......................................................3

*Floyd v. City of New York*,
  302 F.R.D. 69 (S.D.N.Y.2014) *aff'd*, 770 F.3d 1051 (2d Cir.2014)......................10

*Floyd v. City of New York*,
  959 F. Supp. 2d 540 (S.D.N.Y. Aug. 12, 2013)..............................................21, 24

*Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*,
No. 15-CV-0441(JS)(ARL), 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) ......................19, 22

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
797 F.2d 85 (2d Cir. 1986)..................................................................................22

*Hartford Fire Ins. Co. v. Mitlof*,
193 F.R.D. 154 (S.D.N.Y. 2000) ........................................................................10

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982).............................................................................................12

*Herdman v. Town of Angelica*,
163 F.R.D. 180 (W.D.N.Y. 1995).......................................................................13

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
315 F.R.D. 169 (S.D.N.Y. 2016) .......................................................................10

*Jones v. Butz*,
374 F. Supp. 1284 (S.D.N.Y. 1974)....................................................................14

*McNeill v. N.Y. Hous. Auth.*,
719 F. Supp. 233 (S.D.N.Y. 1989) .....................................................................23

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*,
542 F.Supp.2d 296 (S.D.N.Y. 2008)...................................................................10

*Michigan State AFL-CIO v. Miller*,
103 F.3d 1240 (6th Cir. 1997) ............................................................................13

*Miller v. Silbermann*,
832 F. Supp. 663 (S.D.N.Y. 1993) ...................................................................9, 22

*Matter of N.Y. Civil Liberties Union v. N.Y. City Police Dep't*,
No. 133, 2018 WL 6492733 (N.Y. Dec. 11, 2018)................................................4

*N.Y. Pub. Int. Research Grp., Inc. v. Regents of Univ. of State of N.Y.*,
516 F.2d. 350 (2d Cir. 1975)...............................................................................21

*Nat. Resource Def. Council, Inc. v. N.Y.S. Dep't of Envtl. Conserv.*,
834 F.2d 60 (2d Cir. 1987)..............................................................................20, 21

*Olin Corp. v. Lamorak Ins. Co.*,
325 F.R.D. 85 (S.D.N.Y. 2006) ..........................................................................22

*Oneida Indian Nation of Wisconsin v. State of N.Y.*,
732 F.2d 261 (2d Cir. 1984)................................................................................19

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ...................................................................................13

*Providence Baptist Church v. Hillandale Comm., Ltd.*,
    425 F.3d 309 (6th Cir. 2005) ...................................................................................12

*Trustees of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*,
    384 F. Supp. 3d 412 (S.D.N.Y. 2019)......................................................................10

*Underwood v. State of N.Y. Office of Court Admin.*,
    1983 WL 504 (S.D.N.Y. Apr. 29, 1983)................................................................9, 10

*United States v. N.Y.C. Housing Authority*,
    326 F.R.D. 411 (S.D.N.Y. 2018) .............................................................................24

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994)......................................................................................8, 22

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec.*,
    922 F.2d 92 (2d Cir. 1990)......................................................................................10

**Statutes and Rules**

Fed. R. Civ. P. 24 ........................................................................................... *passim*

N.Y. Civil Rights Law § 50-a ......................................................................... *passim*

**Other Authorities**

*Annual Report to the Governor and State Legislature*, DEPARTMENT OF STATE 1
    (Dec. 2014), https://on.ny.gov/3fbCxGO ....................................................................4

Editorial, *Chokeholds and Police Abuse, Kept from the Public*, N.Y. TIMES (June 12, 2019),
    https://nyti.ms/30WQzaa .............................................................................................. 6

The Honorable Mary Jo White, The Honorable Robert L. Capers, The Honorable
    Barbara S. Jones, *Report of the Independent Panel on the Disciplinary System
    of the New York City Police Department* (Jan. 25, 2019),
    https://www.independentpanelreportnypd.net/assets/report.pd ............................5, 6

New York City Bar, *Report on Legislation by the Civil Rights Committee et al.*, NEW YORK CITY
    BAR ASSOCIATION 1 (2020), https://bit.ly/3jK6O2O. .....................................................4

Nick Pinto, *After Opposing NYPD Transparency for Years, De Blasio's Promise of Reform
    Rings Hollow*, GOTHAMIST (June 2, 2020, 10:47 AM), https://bit.ly/2Dl8TRZ......................6

Nick Pinto, *DeBlasio and NYPD Oversight Board Members At Odds Over Police
    Secrecy Law*, GOTHAMIST (Mar. 12, 2020, 11:01 AM), https://bit.ly/3371Yqn........................5

Senate Standing Committee on Codes, *Public Hearing: Policing (S3695), repeals provisions relating to personnel records of police officers, firefighters, and correction officers*, THE NEW YORK STATE SENATE (Oct. 24, 2019), https://bit.ly/39A0G8O ...........................................................................................................6

## I.   **PRELIMINARY STATEMENT**

Communities United for Police Reform ("CPR") respectfully moves to intervene in this action under Federal Rule of Civil Procedure 24.   CPR is an organization and campaign whose mission is to advance police transparency and accountability, while reducing reliance on policing, for community safety, through civic engagement, policy reform, public advocacy, and community organizing.   Just last month, after years of working on the front lines of the reform effort, a CPR-led coalition won a landmark victory, securing repeal of N.Y. C.R.L. § 50-a.   CPR now seeks to intervene to defend its interest in the full and prompt effectuation of that legislative action; in its mission of ensuring ready public access to records of police misconduct complaints, misconduct investigations, and discipline, including those at issue in this case; and in its current and future use of the judicially enforceable right of access to government records.

The aim of the unions who bring this lawsuit is to impair each of the above interests by shielding from public view categories of records that are now presumptively accessible.   In the process, Plaintiffs seek to establish broad, novel rights purportedly flowing from collective bargaining agreements, settlement agreements, and the New York and United States constitutions—rights that, in Plaintiffs' telling, trump the rights of organizations like CPR and members of the public.   Plaintiffs also seek a finding that Defendants' efforts to promptly and fully effectuate the repeal of § 50-a are arbitrary and capricious, a direct attack on the effectiveness of that landmark legislative action.   If Plaintiffs prevail, it would directly impair CPR's concrete and legally protected interests by requiring diversion of the organization's monetary resources, hampering ongoing reform efforts, foreclosing full public access to misconduct and disciplinary records, rolling back § 50-a's repeal, and potentially interfering with pending and future FOIL requests.   Case law in this Circuit and elsewhere has consistently recognized that these precise types of interests suffice to support intervention of right.

1

Defendants cannot adequately protect CPR's interests.  They comprise the Mayor, the Fire Department, the Department of Corrections, the New York City Police Department ("NYPD"), and the Civilian Complaint Review Board ("CCRB").  Defendants are all represented by a single entity, the City Law Department, which will have to reconcile positions and interests that have long been at loggerheads.  Indeed, the Mayor's Office, CCRB, and NYPD all took different positions and at times changed their positions on § 50-a's repeal—with none meaningfully and consistently supporting full repeal.  So although Defendants now oppose the ultimate relief Plaintiffs seek, their own interests are too numerous and disparate to ensure a vigorous, coherent defense of CPR's interests.  And at times, some Defendants' interests are likely to align with Plaintiffs'—the NYPD and the police unions, for example, have long taken similar positions on issues of transparency and accountability.

Intervention would prejudice no party.  CPR seeks intervention by Order to Show Cause in order to expedite resolution and permit CPR's participation in the upcoming briefing and oral argument on Plaintiffs' request for a preliminary injunction.  If granted, intervention would not delay resolution of the merits.  In addition, CPR would provide unique expertise concerning the police disciplinary system, the law and policies governing disclosure of records, the interests of the public in disclosure of such records, and the legislative history and intent underlying § 50-a's repeal—all of which are central to resolution of this case.

For these reasons and those set forth below, the technical requirements for intervention are satisfied.  Principles of justice, fairness, and plain common sense weigh strongly in favor of it, as well.  This lawsuit is the next front in a battle for transparency and public accountability that has been raging for decades.  And while they may be on opposite sides of the *v* here, Plaintiffs and Defendants have consistently fought hand-in-glove against reform.  CPR has led

the other side.  It represents the communities whose interests are most at stake here, and whose

calls for reform the parties here have stubbornly opposed.  Those communities deserve

protection in this action.  The motion should be granted.[1]

## II.   FACTUAL BACKGROUND

### A.   CPR's organizational mission

CPR is a non-partisan, multi-strategy campaign to end discriminatory and abusive

policing practices, reduce reliance on policing, and build meaningful community safety in New

York.  *See* Declaration of Joo-Hyun Kang In Support of CPR's Motion to Intervene ("Kang

Decl.") ¶ 4.  CPR runs coalitions of over 200 local and national organizational members and

partners and it focuses on bringing together community members, advocates, lawyers,

researchers, and activists to work for change.  *Id.*[2]  CPR represents many of the communities that

are most unfairly targeted by the NYPD and unrepresented by Defendants' interests.  *Id.* ¶ 7.

Through community organizing, public education, policy advocacy, and involvement in

legislative and lobbying efforts, CPR has built a broad-based movement to promote police

accountability, police transparency, and community safety.  *Id.* ¶¶ 4, 6-8.

Since 2012, CPR has been centrally involved with police reform efforts in New York

City, including involvement in curbing NYPD's unconstitutional and discriminatory "Stop-and-

Frisk" practices.  *Id.* ¶ 7.  Its principal goals include transparency and accountability and it has

consistently sought to ensure that its stakeholders and community members have meaningful

access to information and records relating to NYPD's policing practices.[3]  *Id.* ¶ 6.  CPR has long

---

[1] Counsel for Defendants has indicated that Defendants do not consent to CPR's intervention, but do not oppose CPR's proposed briefing schedule.  Counsel for Plaintiffs has indicated that Plaintiffs do not consent to CPR's motion or proposed briefing schedule.

[2] The New York Civil Liberties Union ("NYCLU"), which has been appointed amicus curiae in this case, is a member of CPR's steering committee.  Neither NYCLU nor any other party has assisted with or authored this motion in any way, and CPR brings this motion solely on its own behalf.

[3] For example, during the *Floyd* litigation, CPR advocated for disclosure of records and increased transparency regarding "Stop-and-Frisk" records through the filings of their amicus briefs, including arguing the proposed Confidentiality Order would not adequately ensure community access to crucial records.  *See, e.g.*, *Amicus Curiae* Communities United for Police

fought to reverse policies that shield police misconduct and disciplinary records from public view, including through legislation and by aiding individuals in seeking access to such records. *Id.* ¶¶ 8-9.  Its opponents in that fight have been both Plaintiffs and Defendants.

   **B.      Repeal of § 50-a**

   Until recently, the biggest obstacle to police transparency was § 50-a.  Enacted in 1976, § 50-a generally excluded from disclosure "police personnel records used to evaluate performance towards continued employment of promotion" that were otherwise presumptively public.  C.R.L. § 50-a(1) (repealed June 12, 2020).  Corrections officers and fire fighters were later included. Although the intended scope of § 50-a was narrow—its aim was "to, among other things, prevent 'harassment' by criminal defense attorneys who sought to impeach officers with unsubstantiated prior bad act"[4]—its reach ballooned.  Both Plaintiff unions and several of the organizational Defendants played direct roles in its expansion.  According to a 2014 annual report by the State Committee on Open Government, § 50-a was "expanded in the courts to allow police departments to withhold from the public virtually any record that contains any information that could conceivably be used to evaluate the performance of a police officer."[5] The expansion continued.  In 2018, the New York Court of Appeals held that § 50-a prohibits the release through FOIL even of redacted records.  *See Matter of N.Y. Civil Liberties Union v. N.Y. City Police Dep't*, No. 133, 2018 WL 6492733, at *5 (N.Y. Dec. 11, 2018).  It was the NYPD, represented by the City's corporation counsel, that pushed for an expansive interpretation of § 50-a in that case.

   On June 12, 2020, Governor Cuomo signed the #Repeal50a Bill (S8496/A10611).  This was the result of years of lobbying and advocacy by a host of organizations.  CPR led that charge

---

Reform's Further Opposition to the Independent Monitor's Application for Confidentiality Order, *Floyd v. City of New York*, 1:08-cv-01034AT, (S.D.N.Y. Aug. 22, 2018), ECF No. 643.

[4] New York City Bar, *Report on Legislation by the Civil Rights Committee et al.*, NEW YORK CITY BAR ASSOCIATION 1, 2 (2020), https://bit.ly/3jK6O2O.

[5] State of New York, Department of State Committee on Open Government, *Annual Report to the Governor and State Legislature*, DEPARTMENT OF STATE 1, 3 (Dec. 2014), https://on.ny.gov/3fbCxGO.

for years, through public advocacy, lobbying, testimony, public education, strategic communications, grassroots organizing, and coalition building.  Kang Decl.  ¶ 9; *See* Declaration of Jumaane D. Williams In Support Of CPR's Motion to Intervene ("Williams Decl.") ¶ 5.  It formed a coalition to support a series of bills, including the #Repeal50a bill that the New York State Legislature passed and was signed into law by Governor Cuomo.  Kang Decl. ¶ 10.  It also presented the #SaferNYAct package to the legislature, which included the bill to repeal § 50-a and pushed additional reforms for police transparency and accountability.  *Id.* ¶ 12.  Two of the package's bills—one requiring a statewide reporting process and one creating and strengthening the office of a special prosecutor to investigate officer-involved killings—also recently were signed into law.  *Id.* ¶¶ 11-12  As New York City Public Advocate Jumaane Williams attests, "CPR was a leading organization" in the reform effort, and one with which he has "worked closely" since 2013 on police reform issues.  Williams Decl. ¶ 5.

And for as long as CPR sought § 50-a repeal, both Plaintiffs and Defendants stood in the way.  Plaintiffs, of course, have steadfastly opposed even the slightest modification to § 50-a and routinely pushed for the law's expanded reach.  Although Defendants' positions have been more of a mixed bag—with different organizational Defendants taking differing positions at different times—only one (the CCRB) ever supported full § 50-a repeal.[6]  The NYPD always took an "aggressive" approach to interpretation of § 50-a, as an independent panel concluded in January 2019.[7]  For example, in 2016, NYPD ceased posting "Personnel Orders," which included the offense description, the penalty imposed, and the involved-officer's name even for substantiated disciplinary charges.[8]  Moreover, although NYPD's misconduct and disciplinary trials are open to the public, NYPD treated the trial calendar and ensuing trial transcripts as confidential

---

[6] Nick Pinto, *DeBlasio and NYPD Oversight Board Members At Odds Over Police Secrecy Law*, GOTHAMIST (Mar. 12, 2020, 11:01 AM), https://bit.ly/3371Yqn.

[7] *See* The Honorable Mary Jo White, The Honorable Robert L. Capers, The Honorable Barbara S. Jones, *The Report of the Independent Panel on the Disciplinary System of the New York City Police Department*, at 19 (Jan. 25, 2019) https://www.independentpanelreportnypd.net/assets/report.pdf.

[8] *Id.*

documents barred from disclosure under § 50-a.[9]  Political calculations and differing interests

among Defendants have always been daunting obstacles to reform.

At most, Defendants have at times been open to limited amendments or modifications,

rather than full repeal.  For example, while the Mayor's office ultimately expressed support for

repeal after that result became certain, it had previously advocated a modification that would

permit disclosure only of final findings—and thus would have kept records like those at issue in

this case private.[10]  As one commentator put it, "The mayor himself, far from pushing back on

police secrecy, is himself responsible for much of 50-a's most dramatic expansion."[11]

Presently, although Defendants say they intend to release misconduct and disciplinary

records, the scope of each agency's policy relating to release is unclear.  Defendants have not yet

committed to a consistent approach to the release, and testimony from Defendants during the

present matter suggests that the agencies may only release a subset of the misconduct and

disciplinary records, a course of action that aligns more with those who supported only

*modification* of § 50-a, instead of full repeal.[12]

### C.   Plaintiffs' lawsuit

Plaintiffs filed this lawsuit on July 14, 2020.  Their goal is to prevent Defendants from

disclosing, "in the wake of the repeal of Civil Rights Law § 50-a," certain "records concerning

disciplinary matters against retired and active individual New York City police officers,

firefighters, and corrections officers."  Dkt. 10-2 ¶ 1.  In particular, Plaintiffs allege that

Defendants are prohibited from releasing records for claims that are "non-final, unsubstantiated,

---

[9] *Id.* at 13.

[10] Editorial, *Chokeholds and Police Abuse, Kept from the Public*, N.Y. TIMES (June 12, 2019), https://nyti.ms/30WQzaa.

[11] Nick Pinto, *After Opposing NYPD Transparency for Years, De Blasio's Promise of Reform Rings Hollow*, GOTHAMIST (June 2, 2020), https://bit.ly/2Dl8TRZ.

[12] *See* Senate Standing Committee on Codes, *Public Hearing: Policing (S3695), repeals provisions relating to personnel records of police officers, firefighters, and correction officers*, THE NEW YORK STATE SENATE (Oct. 24, 2019), https://bit.ly/39A0G8O.

unfounded, exonerated, or resulted in a finding of not guilty," as well as those subject to "confidential settlement agreements." *Id.* They intend to establish rights categorically barring release of such records flowing from Collective Bargaining Agreements with Defendants; the Due Process and Equal Protection Clauses of the United States and New York State Constitutions; and past settlement agreements. *Id.*; *see* Dkt. 10-2 ¶ 5 (collective bargaining); ¶ 6 (due process and equal protection); ¶ 7 (settlement agreements). They also directly allege that actions taken by Defendants to effectuate § 50-a repeal are "arbitrary and capricious." *Id.* ¶ 8.

The relief Plaintiffs seek is likewise broad. Although Plaintiffs initially claim to be seeking relief limited to the categories of records identified above (non-final, unsubstantiated, unfounded, and so forth), *id.* ¶ 2, their complaint goes on to seek a bar on the release of "*any other disciplinary records that implicate the privacy and safety concerns of officers.*" *Id.* ¶¶ 92, 102, 108, 112, 117 (emphasis added). They also request that the Court "annul" any attempt to release any record before conducting a "case-by-case analysis to determine whether disclosure is warranted." *Id.* ¶ 131. And they seek a declaration of their rights that will bind Defendants going forward. *Id.* ¶ 136.

On July 15, 2020, Defendants removed this case to this Court. On July 22, 2020, the Court granted Plaintiffs' request for a temporary restraining order. Declaration of Alex V. Chachkes In Support Of CPR's Motion to Intervene ("Chachkes Decl.") ¶ 8, Ex. A [Tr. 78-86]; *see* Minute Order, 7/22/2020. It temporarily enjoined Defendants from releasing records pertaining to claims deemed unsubstantiated, unfounded, exonerated, currently pending, or subject to a settlement agreement. The Court ordered Defendant CCRB to immediately modify publicly available information on its website that the Court deemed covered by its order. *Id.* at Tr. 82-83. The Court also ordered non-party NYCLU—the recipient of records pursuant to a

FOIL request—not to disclose any such records.  *Id.* at Tr. 85-88.

The Court permitted limited discovery; set a due date of August 14, 2020 for briefing on Plaintiffs' request for a preliminary injunction; and set a preliminary injunction hearing for August 18, 2020.  *Id.* at Tr. 84-85.  The Court held an additional conference on July 28, 2020, in which it modified the temporary restraining order so as not to apply to NYCLU and resolved the parties' discovery disputes.  Chachkes Decl. ¶ 9, Ex. B [Tr. 30-31; 40-41; 50-53; 58-64; 68-70; 85-86].

## III.  ARGUMENT

CPR has substantial and concrete interests in this litigation that will be impaired if Plaintiffs succeed.  The current parties to this action cannot adequately protect those interests. CPR is therefore entitled to intervene of right.  *Infra* § A; *see* Fed. R. Civ. P. 24(a).  In all events, because of CPR's vital role in the repeal of § 50-a; ongoing mission to promote police transparency and reform; and deep knowledge of the misconduct and disciplinary procedures and records at issue in this case, its participation would "significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994).  So, at a minimum, this Court should grant permissive intervention.  *Infra* § B; *see* Fed. R. Civ. P. 24(b).

### A.  CPR is entitled to intervene of right.

A party may intervene of right if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The movant must (1) file a timely motion; (2) demonstrate a direct and substantial interest; (3) establish that their interest

may be impaired by the disposition of the action; and (4) show that their interest would not be adequately protected by the current parties to the action. *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). CPR satisfies all four requirements.

### 1.    The motion is timely.

The motion is timely because CPR filed it shortly after the filing of the action and in time to participate in all substantive aspects of the case.

There are no bright-line rules governing the timeliness of an intervention motion. *Underwood v. State of N.Y. Office of Court Admin.*, 1983 WL 504, at \*3 (S.D.N.Y. Apr. 29, 1983). "Factors that inform the timeliness determination include: how long the motion to intervene was delayed, whether the existing parties were prejudiced by that delay, whether the movant will be prejudiced if the motion is denied, and unusual circumstances …." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001). Typically intervention is timely so long the intervenor has not slept on its rights. *Miller v. Silbermann*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993)

This motion is timely. There has been no delay. Plaintiffs filed their complaint in this action in state court on July 14, 2020. Dkt. 10-2. Defendants removed the case to this Court the following day. Dkt. 2. CPR thereafter sought and retained pro bono counsel, who prepared and filed this motion as quickly as practicable.

Intervention at this stage will prejudice no party. The only substantive decision this Court has made to date was its grant of temporary emergency relief on July 22, 2020. The Court ordered any briefing on a preliminary injunction to be filed on or before August 14, 2020, and set a preliminary injunction hearing for August 18, 2020. CPR has filed this motion by order to show cause that, if granted, would permit briefing and decision on this motion in time for CPR to participate in the current case schedule.

Courts routinely find that motions to intervene filed within several months of the commencement of a lawsuit are timely.[13]  And when they deny motions as untimely, it is ordinarily because a party has delayed intervention until after the commencement of discovery or some permanent substantive decision.[14]  This motion comes within two weeks of the filing of this case, and granting it will have no effect on the timing of resolution on the merits.

### 2.   CPR has several legally protectable interests at stake in this litigation.

CPR has direct and substantial interests in the issues and outcome of this litigation, as set forth in the declarations supporting this motion.

Although Rule 24(a)(2) addresses claims of interest "relating to the property or transaction that is the subject of the action," it is well-established that the rule "does not require the intervenor prove a property right, whether in the constitutional or any other sense." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001).  Rather, the would-be intervenor must have some interest in the litigation's subject matter or outcome that is "direct, substantial, and legally protectable." *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec.*, 922 F.2d 92, 97 (2d Cir. 1990).  CPR has several such interests.

***Organizational mission.***  First, both the rights and remedy sought in this action implicate CPR's ability to advance its mission of promoting police transparency and achieving police

---

[13] *Underwood*, 1983 WL 504, at *3 (motion to intervene filed within a month of having notice of action was considered timely); *Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F.Supp.2d 296, 304 (S.D.N.Y. 2008) (delay of a "few" months timely); *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (delay of three months timely); *cf. Butler*, 250 F.3d at 182 (discussing denials where motion was brought 8-18 months after notice of action).

[14] *Trustees of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384 F. Supp. 3d 412, 419-20 (S.D.N.Y. 2019) (motion was untimely when filed two weeks before the close of discovery and one year after case commenced); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 173 (S.D.N.Y. 2016) (motion untimely when granting motion would require new discovery schedule); *Floyd v. City of New York*, 302 F.R.D. 69, 84 (S.D.N.Y.2014) aff'd, 770 F.3d 1051 (2d Cir.2014) (denying motion that was brought after liability was adjudged).

-10-

reform.  CPR, which works with over 200 other organizations, has worked for years to seek meaningful change in policing practices.  Kang Decl. ¶ 4.  Transparency in the police misconduct and disciplinary process is an end in itself because it promotes accountability amongst government officials who hold considerable power over the public.  *Id.* ¶ 16.  CPR and the public have a right to know which officers—holding badges and guns—may present risk to the community.  Transparency is also a critical means through which CPR seeks reform.  *Id.* ¶¶ 15, 17.  Ready access to police misconduct and disciplinary records allows CPR to better understand and quantify the impact of particular policing practices on communities, to intelligently allocate resources when seeking reform, to calibrate the policy responses it proposes, and to make its case for reform to the public and elected officials.  *Id.* ¶ 17; *see* Williams Decl. ¶ 7 ("Full transparency is absolutely critical to further organizing, policymaking, and reform efforts. . . . Shrouding large swathes of misconduct and disciplinary records from scrutiny would render it impossible to hold the NYPD accountable.").

Because this lawsuit seeks to curtail ready public access to an enormously significant category of records—and to set precedent permitting such categorical restrictions on disclosure—CPR's mission is directly implicated.  And as explained further below (at 17-18), recognizing the rights or granting the relief Plaintiffs request would have a direct financial impact on CPR, which would be forced to divert resources to obtain access to materials through other means.  Kang Decl. ¶¶ 20-21.

The Second Circuit has recognized that organizational interests of precisely this sort are sufficient in themselves to establish an interest in litigation.  In *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017), the Court evaluated whether a non-profit organization called The Workplace Project had the concrete interest

necessary to confer Article III standing—an interest that *a fortiori* satisfies Rule 24(a)(2).[15]  The Workplace Project sought to challenge an ordinance regulating "road-side solicitation."  *Id.* at 107.  It based its claim of concrete injury on its mission to "end the exploitation of Latino immigrant workers on Long Island and to achieve socioeconomic justice by promoting the full political, economic, and cultural participation of those workers in the communities in which they live."  *Id.* at 109.  In particular, it argued that enforcement of the ordinance would "impact its ability to organize day laborers" and "require … diver[sion] of resources from other of its activities."  *Id.* at 110.  The Second Circuit found this sufficient to confer standing.  *Id.*; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding Article III standing where defendant landlord's practices required plaintiff organization to "devote significant resources to identify and counteract" those practices).

CPR has the same "real, immediate, and direct" interests at stake, *Centro*, 868 F.3d at 110, and this case presents the same threat of "concrete and demonstrable injury to [CPR's] activities—with the consequent drain on the organization's resources," *Havens*, 455 U.S. at 379.

**Interest in effective § 50-a repeal.**  CPR has led legislative efforts to repeal § 50-a for years, and it therefore has a direct interest in the full and expeditious dismantling of state and local policies that enforced § 50-a's now-overturned mandate.  CPR spearheaded the coalition of organizations, legislators, advocates, survivors of police violence, and families of individuals killed by police seeking § 50-a's repeal.  Kang Decl. ¶¶ 9-12.  It lobbied elected officials, testified at hearings, advocated to the public for repeal legislation, and negotiated the final

---

[15] Courts have consistently held that any interest that satisfies Article III, which is necessarily concrete, immediate, and direct, is sufficient to satisfy Rule 24 as well.  *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015); *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 318 (6th Cir. 2005); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).

language adopted by the legislature.  *Id.*  CPR has actively opposed both Plaintiffs' and Defendants' positions in Albany.  Plaintiffs have steadfastly opposed any change to § 50-a, while several of Defendants opposed any reform until 2018 before ultimately supporting only modification—which CPR consistently opposed as inadequate.  (This is but one of the reasons why the parties cannot adequately represent CPR's interests.  *Infra* Section III.A.4.)  CPR was vital to overcoming this opposition and accomplishing § 50-a's repeal.  Kang Decl. ¶¶ 24-25; Williams Decl. ¶¶ 4-5.

CPR, along with its members and partners, continues to be vital to effectuating that repeal.  As a result of § 50-a, municipalities and their departments across the State developed policies and procedures implementing § 50-a.  There is a significant risk that those entrenched mechanisms will persist—whether by inertia or intent—without CPR's continued advocacy and lobbying.  CPR has every interest in ensuring that the § 50-a regime is promptly dismantled.  This lawsuit is a transparent attempt to lock holdover § 50-a procedures and policies in place for the time being, while establishing rights that would roll back the historic repeal.

Several circuit courts have recognized that the "vital participant[s] in the political process that resulted in legislative [action]" have a direct interest in litigation implicating that action.  *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997); *accord Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) ("[F]or purposes of intervention as of right, a public interest group that has supported a measure … has a 'significant protectable interest' in defending the legality of the measure.").  Several district courts in this circuit have recognized the same principle.  *Herdman v. Town of Angelica*, 163 F.R.D. 180, 187 (W.D.N.Y. 1995) (public interest group that "took an active role" in drafting a law "has a clear interest in the continuing constitutional viability of that law"); *Jones v. Butz*, 374 F. Supp. 1284 (S.D.N.Y.

1974) (allowing intervention for organization that testified before committees regarding laws that were the subject of the lawsuit); *see also Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 100-02 (E.D.N.Y. 1996) (allowing permissive intervention of rabbinical and lay organizations directly involved in passing of legislation protecting consumers of kosher products).

   *Interest in judicially enforceable public right of access.*  Also at stake in this action is CPR's direct, judicially enforceable interest in rights of public access to documents, and similar interests of individuals on whose behalf CPR advocates.  "FOIL … ma[kes] full disclosure by public agencies a public right."  *Capital Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562, 566-67 (1986); *cf.* S. Rep. No. 813, at 3 (1965) (the federal Freedom of Information Act was enacted "to establish a general philosophy of full agency disclosure" of government documents and "to provide a court procedure by which citizens . . . may obtain information wrongfully withheld").  CPR has exercised that right in order to obtain access to documents in the past.  Kang Decl. ¶¶ 18-19.  It also fully intends to use that right in the near future to gain access to police misconduct and disciplinary records—that intention includes an impending FOIL request to Defendants in this case that has a high likelihood of encompassing the precise categories of records this lawsuit seeks to shield from public view.  *Id.*

   In addition to its own direct interest in exercise of FOIL rights, CPR also works with individuals and other organizations who file similar FOIL requests.  As discussed further below, several declarants supporting this motion are police violence survivors or family members of individuals killed by the NYPD.  *See* Declaration of Constance Malcolm In Support Of CPR's Motion to Intervene ("Malcolm Decl.") ¶¶ 2-4; Declaration of Natasha Duncan In Support Of CPR's Motion to Intervene ("Duncan Decl.") ¶¶ 2-3, 5; Declaration of James Blake In Support

Of CPR's Motion to Intervene ("Blake Decl.") ¶¶ 5-8.  They attest to the enormous difficulties they experienced when seeking records from organizational Defendants, and the central role CPR played in helping them understand the process and at times obtain some of the records sought.  Helping individuals like this is part of CPR's mission.  That aspect of CPR's work will become more difficult and more costly if Plaintiffs succeed in effectively neutering § 50-a's repeal.

This lawsuit seeks a permanent injunction preventing disclosure of records to which CPR intends to seek access.  It does so without regard to whether these records are subject to exemption from disclosure under FOIL—indeed, Plaintiffs appear to assert that they have contractual rights that somehow trump FOIL.  *Contra City of Newark v. Law Dept. of City of N.Y.*, 305 A.D.2d 28, 32 (1st Dep't 2003) (rejecting argument that arbitral tribunal had power to "cut off the public's right to FOIL disclosure … without regard to the applicability of any particular statutory exemption").  And this Court's temporary restraining order appears to restrict Defendants from fulfilling CPR's past and intended FOIL requests for the documents at issue in this case.

In analogous contexts, courts have permitted intervention by parties affected by orders rendering presumptively public materials confidential.  Indeed, as one district court in this circuit observed, "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." *Dorsett v. Cty. of Nassau*, 289 F.R.D. 54, 71 (E.D.N.Y. 2012).  Although these cases typically arise in the context of permissive intervention—which we discuss below (*infra* Section III.B)— that is only because would-be intervenors in that context usually arrive only after litigation on the merits of other issues has yielded some confidentiality order.  Here a confidentiality order is

the very aim of the lawsuit, and so CPR's interests flow directly from the rights and relief asserted.  That justifies intervention of right in this case.

### 3.      CPR's interest will be impaired if any of Plaintiffs' claims succeed.

Each of the interests above would be impaired if any of Plaintiffs' claims prevail. Indeed, impeding transparency and reform, rolling back § 50-a repeal, and elevating novel rights of privacy over public disclosure rights is precisely the aim of this lawsuit.

As explained above, the Second Circuit has recognized that an organization's interests are impaired when an action threatens to divert funds from other operations, impose obstacles, or undermine an organization's mission.  *Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 108-10.  Plaintiffs' attempt to sink plans for a publicly accessible database and categorically enjoin release of documents would do just that.  CPR's mission both *is* and is *furthered by* access to misconduct and disciplinary records.  Kang Decl. ¶¶ 13-15.  These are not abstract goals—such data is critical to effectuating § 50-a repeal because publicly accessible databases promote transparency and accountability in their own right, while also reducing the cost and increasing the effectiveness of reform advocacy.  *Id.* ¶¶ 16-18.  Among the relief Plaintiffs seek in this case is a finding that any disclosure that takes place before case-by-case internal review would be arbitrary and capricious, and therefore improper.  Dkt. 10-2 ¶ 8.  This would dramatically raise the costs of disclosure.

CPR also fights for ready and full public access to this data because it is important to ordinary citizens who lack the resources or information to fight endless battles with Defendants over FOIL requests or in discovery during civil suits.  As explained in the declaration of Constance Malcolm—the mother of Ramarley Graham—what little information she was able to obtain about the disciplinary history of the officers who killed her son was only with the help of CPR and other groups.  Malcolm Decl. ¶¶ 8, 14, 17.  CPR provided similar assistance to other

victims or families of victims as well.  Each of these declarants attests to how difficult it was to navigate the thicket of the NYPD's misconduct and disciplinary process and the ins-and-outs of FOIL, and how critical CPR's assistance was.  Blake Decl. ¶¶ 20-22.  As retired tennis player James Blake explained, "even a highly qualified attorney would have trouble navigating the public agency processes that I needed to navigate to pursue my complaint … and get information regarding my case and his prior conduct.  That is where CPR came in."  *Id.* ¶ 19.

 CPR has expended enormous resources seeking disclosure on its own and on others' behalf, resources it could have used for other purposes if the information was available in a publicly accessible database.  If Plaintiffs succeed in thwarting such a database, CPR will be forced to expend resources helping other individuals who seek the basic transparency they need to obtain justice.

To be fully effective, moreover, any public database must necessarily include the particular records at issue in this case—records concerning claims that are, in the Court's words, "unsubstantiated," "unfounded," "exonerated," "pending," "nonfinal," or subject to "settlement agreements."  Chachkes Decl. ¶ 8, Ex. A [Tr. 79].  Without them, it is impossible to assess whether the police misconduct and disciplinary system is properly accountable to the public.  For example, an "exonerated" claim is one where the disciplinary review process concludes that the officer factually did act as described, but that the action is allowable under existing regulations. For purposes of reforming the way that police officers interact with the community, exonerated claims may provide the most information as to what future reform efforts should focus on.

"Pending" claims are also highly relevant to reform efforts because they provide real-time insight into the system's functioning.  Ms. Malcolm's example once again illustrates.  The disciplinary process for the officers who killed her son played out for *almost six years* after the

killing, with Ms. Malcolm's quest for information playing out all the while.  Malcolm Decl. ¶¶

13-14.  If Plaintiffs' view of the law were deemed correct, a "pending investigation" would

always serve to shield such records from view for years—indeed, this might even provide

Defendants an incentive to prolong a pending action.  And at a broader level, no organization

could ever get data that is at once comprehensive and current, information vital to for

effectuating reform.  Williams Decl. ¶ 7 ("Proposing and garnering support by the public

and elected officials for particular policy changes demands providing full, real time facts

concerning past and present NYPD conduct.").

        This lawsuit also more broadly strikes at CPR's interest in full and prompt effectuation of

§ 50-a repeal.  Though nominally an effort to claim rights that somehow paralleled § 50-a all

along, practically the case is an attempt to re-entrench § 50-a.  Common sense and the course of

events makes that clear:  Plainly the disclosures contemplated by Defendants in this case were

occasioned directly by § 50-a repeal, and plainly this lawsuit is a direct reaction to those very

steps.  Dkt. 10-2 ¶ 1 (challenging releases of documents "in the wake of repeal of Civil Rights

Law § 50-a").  In addition, Plaintiffs claim that Defendants' actions to implement § 50-a repeal

are arbitrary and capricious, Dkt. 10-2 ¶ 8, a claim that could have ripple effects by deterring or

hampering future such attempts to repeal now-unjustified policies.  And CPR's interest in seeing

Defendants' promised reforms proceed will be directly impaired if Plaintiffs establish novel

rights against disclosure that track all or any of what § 50-a once did.

        In addition, a permanent injunction against disclosure of the documents at issue in this

case will threaten CPR's interest in asserting the public right of disclosure established by FOIL.

Again, this is not an abstract concern.  CPR has previously depended and will continue to depend

on FOIL to seek access to records, and FOIL would be the only means of accessing records if

Defendants scuttled plans for a full public database.  Kang Decl. ¶ 21.  As detailed in the declaration of CPR's Director, CPR currently has at least one pending FOIL request that has a high likelihood of embracing documents that are currently subject to this Court's temporary restraining order and disclosure of which Plaintiffs' seek to permanently enjoin.  *Id.* ¶ 18.  Any relief that either prevents Defendants from turning over materials that are presumptively available through FOI or that restricts the use of materials properly disclosed would impair CPR's interests in exercising its judicially enforceable right of access and potentially its First Amendment rights as well.

Finally, and looming over this entire case, "there is a significant likelihood that the ultimate resolution of this litigation will lead to conclusion of law on issues of first impression … which will implicate principles of *stare decisis*."  *Oneida Indian Nation of Wisconsin v. State of N.Y.*, 732 F.2d 261, 266 (2d Cir. 1984).  If this litigation results in Plaintiffs establishing constitutional rights to privacy against Defendants that categorically prevent disclosure of certain documents, those rights could be applied in future cases against CPR and others.  For example, broad privacy rights, or a ruling that an agency's use of a database is "arbitrary and capricious," could be used against CPR in later FOIL litigation, other litigation concerning disclosure, or in future efforts to effectuate § 50-a repeal through policy channels.  Courts have recognized these impairments in analogous cases.  *See Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-0441(JS)(ARL), 2016 WL 792411, *1 (E.D.N.Y. Feb. 29, 2016) ("However, this action will determine whether the FAA is statutorily obligated to enforce the grant assurances.  Should the Court rule in favor of Plaintiffs, the stare decisis effect of the Court's declaration will impede the Committee's ability to argue, in a separate breach of contract action, that the FAA must forbear in enforcing certain grant assurances after December 31, 2014,

pursuant to the Settlement Agreement.").

### 4.      CPR's interests are not adequately protected.

The above interests will not be adequately protected by the current parties to this lawsuit. Plaintiffs obviously will not protect CPR's interests because they are directly adverse to them. And although Defendants currently oppose much of the *relief* Plaintiffs seek, Defendants' interests are far too diffuse to guarantee meaningful and vigorous opposition to the positions Plaintiffs take in this litigation.  Indeed, in some instances, the organizational Defendants' interests and positions are very likely *aligned* with Plaintiffs'.

Rule 24(a)'s requirement of inadequate representation is "minimal."  *Butler*, 250 F.3d at 179.  Although the Second Circuit has recognized a "presumption of adequate representation" where "there is an identity of interest" between the would-be intervenor and a party, that presumption can be overcome where there is also some "adversity of interest" or risk of "nonfeasance."  *Id.*  And representation will not be adequate if a party lacks "sufficient motivation to litigate vigorously and to present all colorable contentions."  *Nat. Resource Def. Council, Inc. v. N.Y.S. Dep't of Envtl. Conserv.*, 834 F.2d 60, 62 (2d Cir. 1987).

Here it is impossible to talk about any identity of interest between CPR and Defendants because there are simply too many Defendants with too many different interests at stake— indeed, it is hard to imagine that Defendants have anything approaching a coherence of interest even amongst themselves.  As noted previously, Defendants have historically taken disparate positions on § 50-a reform, ranging from full repeal to no modification at all.  *Supra* Section II.B; Kang Decl. ¶ 23.  The organizational Defendants also have different past and intended practices concerning disclosure of disciplinary materials.  Their own perspectives on their operations and duties, as well as their individual relationships with Plaintiff unions, are likely to shade their willingness to advance certain positions in this case.  And this diffusion and likely

conflict of interests will almost certainly lead to a form of "nonfeasance," *Butler*, 250 F.3d at

179, and a failure to "raise all colorable contentions," *NRDC*, 834 F.2d at 62—not because of

some failure of zealousness or competence on the part of Defendants' counsel, but because

counsel will inevitably be reconciling a host of interests and concerns on behalf of its many,

differently-situated clients.  CPR would ensure that all arguments are before the court.

There are also ways in which certain organizational Defendants' interests are aligned

with Plaintiffs and "adverse" to CPR's.  For example, Plaintiffs maintain that release of records

will "destroy the reputations" of officers.  Dkt. 10-2 ¶ 6.  Naturally, the NYPD too has a direct

interest in its officers' reputations, an interest it invoked frequently during the § 50-a regime to

expand that law and avoid any disclosure.  Kang Decl. ¶¶ 22, 24-25; Malcolm Decl. ¶¶ 15-16;

Duncan Decl. ¶16-17, 20; Blake Decl. ¶¶ 22-23, 28. Defendants may be wary of challenging

even baseless claims of reputational harm for fear of minimizing those concerns, or subjugating

them to the public interest in disclosure.  This is hardly speculative—NYPD has previously

pursued such interests by shielding records of officer misconduct and discipline because

disclosure would reveal failures, inadequacies, and biases in the NYPD's disciplinary system.[16]

At a minimum, there is little question CPR will "make a more vigorous presentation of

[that] side of the argument" than Defendants would.  *N.Y. Pub. Int. Research Grp., Inc. v.*

*Regents of Univ. of State of N.Y.*, 516 F.2d. 350, 352 (2d Cir. 1975).  Again, this is not a question

of competence or good faith.  It is simply an inherent adversity of interest between CPR and

Defendants, many of which have joined Plaintiffs as CPR's staunchest opponents.  There is no

reason to believe Defendants—after years of opposing CPR—will suddenly protect CPR's

---

[16] *See, e.g.*, *Floyd v. City of New York*, 959 F. Supp. 2d 540, 617 (S.D.N.Y. Aug. 12, 2013)
("[W]hen confronted with evidence of unconstitutional stops, the NYPD routinely denies the
accuracy of the evidence, refuses to impose meaningful discipline, and fails to effectively
monitor the responsible officers for future misconduct.")

interests in this lawsuit.

Finally, an additional complicating factor is Plaintiffs' invocation of the parties' collective bargaining agreements, which further skews the parties' interests away from those CPR would advance in this litigation.  Given all of the cross-cutting interests identified above, there is an intolerable risk that Defendants lack sufficient incentive to protect the rights and interests CPR wishes to assert here.

### B.   Alternatively, CPR should be allowed permissive intervention.

Even if this Court concludes that CPR is not entitled to intervene of right, it should grant permissive intervention because CPR's interests and expertise will aid in full development of the factual and legal issues in the case.

Permissive intervention is appropriate where (1) the applicant timely moves for intervention and (2) the application has a claim or defense that shares with the main action a common question of law of fact.  Fed. R. Civ. P. 24(b).  The rule "is to be liberally construed. *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y.  2006), and motions under it "liberally granted," *Miller*, 832 F. Supp. at 669.  "The phrase 'claim or defense' is not to be read technically and only requires 'some interest on the part of the applicant.'"  *Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-0441(JS)(ARL), 2016 WL 792411, at *8 (E.D.N.Y. Feb. 29, 2016) (collecting cases).  Although courts consider "substantially the same factors" for both permissive and as of right intervention, *"R" Best Produce, Inc. v. Shulman-Rabin Marketing Corp.*, 467 F.3d 238, 240 (2d Cir. 2006), the key inquiry when (as here) a motion is timely is whether the party seeking intervention will "significantly contribute to [the] full development of the underlying factual issued in the suit and to the just and equitable adjudication of the legal questions presented."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994); *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d

Cir. 1986).

In addition to having several interests at stake in this litigation, CPR's role in § 50-a's repeal and its "deep knowledge of the disciplinary systems and disclosure mechanisms at issue make it uniquely situated to contribute to legal and factual development." Kang Decl. ¶ 26.  As discussed above, CPR has led the fight for police transparency and accountability for years.  It is intimately familiar with the legal arguments and policies at stake.

CPR is also well-versed in Defendants' misconduct and disciplinary systems, having become one of the few organizations with such expertise.  Kang Decl. ¶¶ 20, 27.  It has helped countless individuals, several of whose declarations support this motion, in navigating those systems to seek and sometimes obtain disclosure.  Blake Decl. ¶¶ 18, 26-27; Malcolm Decl. ¶¶ 17, 20-21; Duncan Decl. ¶¶ 9-10, 11-13, 20.  And CPR is also "well-positioned to develop the facts concerning the public interest in readily accessible disciplinary records and to develop legal arguments pertaining to public rights of access."  Kang Decl. ¶ 28.  Moreover, given that the records at issue in this litigation involve nuanced definitions, CPR's expertise will be useful in educating the Court.  Indeed, the parties have so far struggled to reach consensus on definitions of basic terms, like "substantiated" and "unsubstantiated."  *See* Chachkes Decl. ¶ 9, Ex. B [Tr. 60-64].

CPR's expertise would undoubtedly benefit the litigation by providing its insight and ensuring the accuracy of the record.  Courts routinely grant permissive intervention where a party can bring such expertise to bear.  *McNeill v. N.Y. Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989) (granting permissive intervention to low-income tenants in a suit challenging the city housing authority's policies, where proposed intervenors could elucidate the difficulties facing tenants as a result of the housing authority's policies); *Christa McAuliffe Intermediate*

*School PTO, Inc. v. De Blasio*, 18-cv-11657, 2020 WL 1432213, *2-3 & n.9 (S.D.N.Y. Mar. 24, 2020) (intervenor would provide "unique perspective"); *United States v. N.Y.C. Housing Authority*, 326 F.R.D. 411, 415, 418-19 (S.D.N.Y. 2018) (intervenor would "provide this Court with a fuller picture to evaluate the fairness, reasonableness, and equities").

\*\*\*

The district court in *Floyd v. City of New York* recognized that "the communities most affected by the NYPD's use of stop and frisk have a distinct perspective that is highly relevant to crafting effective reforms.  No amount of legal or policing expertise can replace a community's understanding of the likely practical consequences of reforms in terms of both liberty and safety."  959 F. Supp. 2d 668, 686 (S.D.N.Y. 2013).  Such perspective is no less vital in this case.  CPR is dedicated to representing the interests of the communities who will be most affected by the Court's decision.  This Court should permit CPR to forcefully defend those interests.

IV.    **CONCLUSION**

For the reasons above, CPR respectfully requests that the Court grant its motion to

intervene.


Dated:  New York, New York
        July 29, 2020

                                        Respectfully submitted,

                                        Orrick, Herrington & Sutcliffe LLP


                                        By: */s/ Alex V. Chachkes*

Baher Azmy                              Alex V. Chachkes
Darius Charney                          Rene Kathawala
Guadalupe V. Aguirre                    Margaret Wheeler-Frothingham
CENTER FOR CONSTITUTIONAL RIGHTS        ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Broadway                            51 West 52nd Street
New York, New York 10012                New York, New York 10019
Tel: (212) 614-6464                     Tel: (212) 506-5100
                                        Fax: (212) 506-5151