# Exhibit A

```
K7MKUFOC


 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNIFORMED FIRE OFFICERS
     ASSOCIATION, et al.,
 4
                 Plaintiffs,
 5
            v.                              20 CV 5441 (KPF)
 6                                          Telephone Conference
     BILL de BLASIO, et al.,
 7
                 Defendants.
 8
     ------------------------------x
 9                                          New York, N.Y.
                                            July 22, 2020
10                                          4:25 p.m.

11   Before:

12                   HON. KATHERINE POLK FAILLA,

13                                          District Judge

14                          APPEARANCES

15   DLA PIPER LLP
          Attorneys for Plaintiffs
16   BY:  ANTHONY PAUL COLES
          COURTNEY SALESKI
17
     JAMES E. JOHNSON
18        Corporation Counsel of the City of New York
     BY:  DOMINIQUE F. SAINT-FORT
19        REBECCA GIBSON QUINN
          Assistant Corporation Counsel
20

21   NEW YORK CIVIL LIBERTIES UNION
          Amicus
22   BY:  CHRISTOPHER DUNN

23

24

25
```

1   　　　　　Ms. Quinn, is there other information you want me to
2   be aware of?
3   　　　　　MS. QUINN:  That is all that I'm aware of.
4   　　　　　THE COURT:  Okay.
5   　　　　　Did you make Mr. Coles aware of this before you told
6   me?  Is this the first time both of us are hearing this
7   information?
8   　　　　　MS. QUINN:  This is the first time.  Unfortunately, I
9   just received this information now, not -- moments before the
10  call.
11  　　　　　THE COURT:  Of course.  All right.  Thank you.
12  　　　　　Let me, then, please go forward.  It's interesting.  I
13  had started -- in the hour that we were apart, I typed up some
14  notes for a decision, and I'm going to read it into the record
15  now, but I began the whole thing by noting that my focus was
16  based, in large measure, on the representations of Corporation
17  Counsel, that I have been, and, indeed, we have been, focusing
18  on the NYPD materials.
19  　　　　　Let me just pause for a moment.  You're hearing both
20  demonstrators outside the courthouse and lightning and thunder
21  going on right now.  So, if I am occasionally interrupted, that
22  is why.
23  　　　　　In any event, I've been focusing on the NYPD materials
24  because I understand, and I continue to understand, that the
25  FDNY materials are matters that are OATH matters that already

1  are, and have been previously, accessible by a website to which
2  I have been referred.  And I understood, as well, that the
3  focus of the DOCCS materials were substantiated, founded, and
4  final resolutions of complaints and that there was no problem
5  with those.  So, that leaves the NYPD materials.
6       And, as plaintiffs' counsel have described them for me
7  specifically, complaints that are unsubstantiated or unfounded,
8  those in which the officer has been exonerated, and those that
9  are, I'll say, pending -- we could also say nonfinal, as
10 well -- there was some discussion in the papers and a little
11 bit of discussion today about settlement agreements that were
12 entered into prior to June 12th of 2020, and as to those
13 materials, I am granting the temporary restraining order, and I
14 am enjoining the defendants and anyone acting in concert with
15 them from publicly disclosing those materials.
16      Now, we have this problem, because I initially noted
17 that there was a tranche of CCRB materials that falls within
18 the definition that I've just outlined that has been turned
19 over to the New York Civil Liberties Union, and it was my hope
20 that Mr. Dunn would consent, in the short term at least,
21 voluntarily to refraining from disclosing them any further than
22 they've already been disclosed internally or externally, and
23 that the New York Civil Liberties Union would agree that they
24 would not disclose them further.
25      Mr. Dunn, are you willing to make such a

1  representation, or do I need to actually have findings on the
2  matter and an actual order of injunction?
3          MR. DUNN:  Your Honor, we are not prepared to agree to
4  that.
5          THE COURT:  Okay, fine.
6          Then, given what I've heard at this hearing, which
7  includes the rather curious timing and the remarkable speed of
8  the filing of your FOIL request and its response while they
9  were in discussion, hoping to forestall litigation, I am
10 ordering you not to disclose those materials any further than
11 you have internally or externally.  And I am ordering you to
12 advise those to whom you have disclosed them to not disclose
13 them further.  And if we have to have additional proceedings on
14 that, that's fine; you can write more substantial papers, and
15 we'll have a proceeding for that.  For now, that is the
16 temporary injunction.
17         Proceeding now to the law which explains what I have
18 just done:
19         A party seeking a temporary restraining order or a
20 preliminary injunction must show irreparable harm and either a
21 likelihood of success on the merits or sufficiently serious
22 questions going to the merits to make them a fair ground for
23 litigation and a balance of hardships tipping decidedly toward
24 the party requesting the preliminary relief.  I am quoting here
25 from Cacchillo v. Insmed, a Second Circuit decision reported at

638 F.3d 401.  Another example would be Waldman Publishing Company v. Landoll, Incorporated, using the standard in the context of a temporary restraining order.

Many courts have found, and have identified, the showing of irreparable harm as the single most important prerequisite for the issuance of a temporary restraining order. And such harm must be shown to be imminent and not remote or speculative and the alleged injury must be one incapable of being fully remedied by monetary damages.  As one example of that, I cite Local 1814, International Longshoremen's Association v. New York Shipping Association, 965 F.2d 1224 (2d Cir. 1992).  And likelihood of success on the merits does not require that the party demonstrate that it is an absolute certainty, only that the probability of prevailing is better than 50 percent.  On that last point, I am citing to and quoting from Abdul Wali v. Coughlin, 754 F.2d 1015 (2d Cir. 1985).  To me, this particular motion rises and falls on the irreparable harm element, and as I read through the papers of both sides, which were very well written, especially given the time crunches each side had, I was reminded of metaphors which kept coming to mind involving horses, and barns, and milk that is spilled and bells that have been rung, but the point of the metaphors, and the reason they have relevance to this analysis, is that if I don't stay -- at least enter a temporary restraining order -- it would seem to me that the case is over.

1     And it also, I've now been told, would have a dramatically

2     deleterious impact on the related arbitration.

3             Defendants don't actually really engage on this point.

4     They argue, instead, that any such harm would not be

5     irreparable or that it would be speculative, but accepting as

6     true the well-pleaded allegations of plaintiffs' pleading, and

7     reviewing the materials that I have received, and talking to

8     counsel today, I can't agree with that proposition.  I believe

9     there to be serious issues that transcend reputation, that

10    affect employment, that affect safety, and I am accepting those

11    harms as not speculative and imminent for purposes of today's

12    proceeding.  I'm not going to say that all of plaintiffs'

13    claims have equal traction, but I am going to say that they

14    have raised sufficiently serious questions going to the merits,

15    particularly on the contractual claims, and perhaps less so on

16    the constitutional claims, that a TRO is warranted.

17            Conversely, I do believe the public interests are not

18    disserved by any such TRO, and I don't believe that the

19    defendants are harmed by a brief delay in implementing the

20    disclosures that they've contemplated making post repeal of

21    50-a if, indeed, we ultimately conclude that the plaintiffs

22    have alleged a viable claim.

23            The next issue for me is that of discovery.  But,

24    actually, before I get to that, I do have to, I suppose, speak

25    about injunctive relief.  So, it was easy enough to say don't

1  disclose anything further, but now I understand that the CCRB
2  has done just that.  So, I'm going to have to order them to
3  change their trial calendars to go back to the way that it was
4  prior to the repeal, where there was a date, a precinct, and an
5  incident as described using the FADO, F-A-D-O, metric, without
6  reference to the name of the officer.  And I'm sure they will
7  be able to do that promptly.
8  		So then the next issue is that of discovery, and I
9  must say my initial inclination was not to schedule discovery,
10  but given what has become evolving answers to questions that
11  I've posed during this proceeding, including an evolution of an
12  answer while I was on a break writing this opinion, and
13  accepting, as well, plaintiffs' counsel's assertion that he
14  received still different answers when he asked the questions of
15  affected parties, and when folks affiliated with his clients
16  made those requests of the affected parties, I'm going to allow
17  limited discovery over the next approximately two weeks, to
18  conclude on August 7th of 2020.  To my mind, the areas of
19  discovery that matter include the following:  A final answer
20  from each of the organizational defendants concerning precisely
21  what materials are contemplated to be disclosed, in what
22  format, where they will be disclosed, and when that disclosure
23  is to take place.  And I believe, as well, there can be limited
24  discovery into the timing or the circumstances of the CCRB's
25  response to the FOIL request.  I'm candidly less interested in

1   Mr. Dunn's request inasmuch as he basically has given me an

2   explanation of it today.  I am trying to figure out how the

3   CCRB broke land speed records in order to provide an answer to

4   it.  If the plaintiffs want additional discovery -- I

5   understand they've already propounded certain requests -- they

6   are invited to meet and confer with defendants, and they can

7   come to me with disputes, but, of course, that's got to be done

8   very quickly.

9              So the issue, then, is how long is this TRO to last?

10  Under Rule 65 of the Federal Rules of Civil Procedure, the

11  order expires at the time after entry not to exceed 14 days

12  that the Court sets unless before that time, the Court, for

13  good cause, extends it for a like period or the adverse party

14  consents to a longer extension, and the reasons for extension

15  must be entered on the record.

16             I am going out slightly longer.  The preliminary

17  injunction hearing in this case will take place on Tuesday,

18  August 18, at 2:00 p.m.  I'm going out slightly longer than the

19  14 days, for several reasons, but principally two.  The first

20  is the fact that I have allowed discovery, limited discovery,

21  in this case.  The second is that I can already foresee delays

22  and difficulties in getting that discovery and getting the

23  materials together for the preliminary injunction hearing

24  occasioned by the COVID-19 pandemic and folks who have issues

25  in getting to their offices.  So, for those reasons, I'm going

1    out slightly beyond the 14 days.

2            Now, the parties have made their cases to me orally
3    and in writing.  It may be that supplemental briefing is
4    necessary after discovery.  I suspect both sides will feel that
5    it is.  If you feel the need to submit additional briefing to
6    me, I'd ask you to keep it as simple as possible, not to repeat
7    yourself, and to submit it by August 14th of 2020.

8            Mr. Dunn, I did want to hear from you, sir, as well,
9    in connection with this proceeding.  Just looking at the
10   calendar, perhaps the 14th may not give you sufficient time,
11   but let me talk to you on that point.  It seems to me,
12   Mr. Dunn, that you don't need to consult with the parties as
13   much as to provide your organization's thoughts on the law and
14   how it should be applied to the facts of this case.

15           So, may I ask for your amicus brief, as well, on the
16   14th, or is that an impossibility?

17           MR. DUNN:  Your Honor, that is fine, of course.  But I
18   would -- if you would allow, I do ask that you give me an
19   opportunity to address the order that you have directed towards
20   us.  I did not have any opportunity to address it during the
21   arguments.  There's no briefing on this, and we are not a party
22   to this action.  The Court doesn't have any jurisdiction over
23   us.  I would like to at least be able to address to you my
24   considerations around that because I don't believe there's any
25   basis for this Court to order any relief against NYCLU at this

1    point.
2         THE COURT:  Sir, I actually would welcome the
3    opportunity to have briefing on that.  I suspect that you're
4    not going to have any disputes with defendants.
5         Can I ask you to work with plaintiffs' counsel to put
6    together a highly expedited briefing schedule that works for
7    both of you?  And can I ask you, at least for now, to abide by
8    my instructions, even if later, I agree with you that I don't
9    have the jurisdiction to issue them?
10        MR. DUNN:  Well, your Honor, frankly, I've appeared in
11   this court -- I have not appeared before you -- I'm very
12   mindful of a request like that, but I'm sure, as you
13   appreciate, we are not a party to this litigation.
14        THE COURT:  All right.
15        MR. DUNN:  I don't think it's a novel thought to
16   say -- I say this with all due respect -- the Court doesn't
17   have any jurisdiction over the NYCLU as a nonparty, and so I
18   would submit to you that I understand what you're saying and
19   the request, but I don't believe there's any basis for any
20   valid order, given we're simply not a party.
21        THE COURT:  I'm going to ask you, please, to never use
22   the construction "with all due respect" whenever speaking with
23   me because that always is followed by some expression of
24   disrespect.  So just don't do it.
25        MR. DUNN:  Okay.

1    THE COURT:  Give me something tomorrow, and I'll get
2 something from plaintiffs, if plaintiffs want to say anything
3 within a day, and I'll rule on it.  I do want to hear from you
4 on it, sir, most definitely.
5    MR. DUNN:  Okay.  Well, I will do that, of course, but
6 I guess what I am saying to you is, right now, the Court, as
7 far as we are concerned, has no jurisdiction over us
8 whatsoever.
9    THE COURT:  Okay.
10    MR. DUNN:  And an order from you, I don't believe
11 there's any basis for that to have any legal effect since we
12 are a stranger in terms of being a party to the Court.
13    THE COURT:  I do understand your position, sir.  I
14 want to see it executed in writing.  Are you willing to do
15 that?
16    MR. DUNN:  Of course.
17    THE COURT:  All right.
18    I know, and you're going to keep telling me, we're
19 going to get into an infinite loop here, sir.  I appreciate
20 your view that I have no jurisdiction -- I might even come to
21 agree with you -- I want to see something, I want to have
22 something other than an hour or two of oral argument on things
23 that don't quite necessarily touch on this issue, sir.
24    MR. DUNN:  I understand completely.  I'm put in a very
25 awkward position because you are issuing something you are

1   describing as an order that binds the NYCLU and -- well, you
2   understand our position.  So I hear what you're saying.  We
3   will, of course, submit something tomorrow, but I must say, in
4   all my years of practice, I've never faced this situation where
5   we have a Court directing us to do something when we are not a
6   party to a litigation or a case that is actually before the
7   Court.
8           THE COURT:  No, sir, sure.  I guess the issue is
9   earlier on in my decision, I did make a factual finding that
10  you were acting in concert with the defendants, and I thought
11  that would have been enough.
12          MR. DUNN:  I see.  Okay.  I didn't understand you to
13  be making that finding.
14          THE COURT:  Oh, no, I am, I am.  It is made.  And if
15  that changes your arguments, that's fine, too.
16          So, are you technically a party to this litigation,
17  sir?  You are not.  Did I making a finding that you are acting
18  in concert with the defendants on disclosure of this
19  information?  I did.
20          MR. DUNN:  Okay.
21          THE COURT:  All right.  But if you want to write me
22  about why that's absolutely wrong, sir, it's not my intention
23  to get things wrong, it's my intention to get things right, but
24  I certainly would like to hear from you before making any
25  further decision.