# Exhibit B

K7SHUNIO

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNIFORM FIRE OFFICERS
    ASSOCIATION, et al.,
4
                    Plaintiffs,
5
                v.                        20 Civ. 5441 (KPF)
6
    BILL DE BLASIO, et al.,
7
                                          Oral Argument
                                           (Telephonic)
8                   Defendants.

9   ------------------------------x
                                          New York, N.Y.
10                                        July 28, 2020
                                          2:05 p.m.
11
    Before:
12
                        HON. KATHERINE POLK FAILLA,
13
                                          District Judge
14
                            APPEARANCES
15
    DLA PIPER LLP (US)
16       Attorneys for Plaintiffs
    BY:  ANTHONY PAUL COLES
17       COURTNEY SALESKI

18  NEW YORK CITY LAW DEPARTMENT
         Attorneys for Defendants
19  BY:  DOMINIQUE F. SAINT-FORT
         REBECCA GIBSON QUINN
20
    NEW YORK CIVIL LIBERTIES UNION
21       Attorneys for Amicus
    BY:  CHRISTOPHER THOMAS DUNN
22       MOLLY BIKLEN

23

24

25

K7SHUNIO

1   June or the 13th of June, and it would be a much different

2   conversation, focusing much more on prior restraint.  I'm not

3   focusing on prior restraint, although I think the arguments

4   there are quite strong.  I am focusing on the powers that I

5   have and not those that I thought I had.

6           So I am modifying my order to remove the injunctive

7   relief that imposed on the New York Civil Liberties Union with

8   this exception, however.  I want to be clear.  I am staying my

9   own order for 24 hours in case Mr. Coles wishes to take it to

10  the Second Circuit, and if he wants to, he may, and that's

11  fine.  But from my perspective, I cannot enjoin Mr. Dunn and

12  his organization, and I am not going to do so through the prism

13  of Rule 65.

14          On the issue of the dictionary of acronyms, it is

15  interesting to me, but I don't think it's indicative of a

16  scheme, and I don't think it's actually impermissible for him

17  to have that.  The idea that if he's entitled, having received

18  these certain documents before there was an injunction in

19  place, then I do not think it inappropriate.  Therefore, I

20  think it appropriate for him to have the dictionary of command

21  codes.

22          So with that, that resolves that particular issue.

23  The plaintiffs have 24 hours to go to the circuit if they wish

24  to do so.

25          Mr. Dunn, do you understand my decision?

K7SHUNIO

1          MR. DUNN:  I do, your Honor.  Thank you.

2          THE COURT:  All right.  Mr. Coles, do you understand

3    my decision?

4          MR. COLES:  I understand your decision, your Honor.

5    Yes.

6          THE COURT:  All right.  Thank you.

7          I want to turn now to the questions of discovery, and

8    I have much to talk about there.

9          Mr. Dunn, do you wish to now exit the call or do you

10   want to stay on and observe?

11         MR. DUNN:  Your Honor, I'm perfectly happy to stay on

12   and observe, understanding that we are no longer part of this

13   discussion.

14         THE COURT:  That is correct, sir.  Thank you.

15         All right.  Ms. Quinn, again, am I speaking to you on

16   the issues of discovery?  Ms. Quinn, yes.  Unmute yourself,

17   Ms. Quinn.

18         MS. QUINN:  Sorry, your Honor.  Thank you.  I'm sorry,

19   your Honor.  Ms. Saint-Fort is actually going to speak about

20   discovery.

21         THE COURT:  Oh, OK.  Ms. Saint-Fort, welcome back.

22   Thank you very much.

23         Ms. Saint-Fort, Mr. Coles raises a very thoughtful

24   point with which I agree, which is particularly given the

25   amount of stuff that has been given to all of these other

K7SHUNIO

1          MS. SAINT-FORT:  Excuse me.  My apologies.

2          I would again state that what -- whatever discussions

3     may have happened prior to coming to a final conclusion, or at

4     least as final as it could have been on the day that the state

5     court stay was entered, is not relevant for purposes of the

6     preliminary injunction hearing.  The question is whether what

7     was intended to be posted at that time and whether

8     plaintiffs' arguments as to what it believes should not be

9     posted would have been posted by these individual agencies.  So

10    if there were any sort of discussion back and forth as to what

11    to include, what not to include, that would be irrelevant.

12          And I would disagree with Mr. Coles that these

13    communications would not be protected by attorney-client

14    privilege or deliberative process privilege.  As your Honor

15    points out, we do have a limited time here, and I think we are

16    fashioning a way to respond to this request that is the most

17    efficient given the time that we have and the purposes of the

18    preliminary injunction hearing.

19          THE COURT:  All right.  Thank you.

20          Mr. Coles, anything else?

21          MR. COLES:  No, your Honor.

22          THE COURT:  OK.  Thank you.

23          On request No. 4, I am accepting for now the

24    defendants' proposed modification of that response.  I will

25    allow the smaller -- the narrowed time period.  I thank you for

K7SHUNIO

1    your arguments, but at this stage, and given the other things

2    that we have to do, I will accept that for this category the

3    shorter time frame is appropriate.

4              I want to turn, please, to requests 5 and 6, because I

5    tend to view them somewhat together.

6              One moment, please.  I am advised by my deputy that

7    the background noise that perhaps you're hearing, I'm certainly

8    hearing it -- it's actually interfering with my ability to hear

9    what's going on -- is coming from someone on one of the Skype

10   lines.  So if you're not talking, please mute yourself because

11   we really don't want to hear the background noise.

12             With that proviso, let me continue.

13             With Ms. Saint-Fort, with respect to request No. 5 and

14   request No. 6, is there a clearinghouse or is there a place

15   where requests for disciplinary records are stored and their

16   responses stored?  Now, perhaps there are several places, but

17   I'm assuming that as requests for disciplinary records are

18   submitted, someone catalogs them and someone responds to them,

19   and I'm trying to figure out where that information would be

20   maintained.

21             MS. SAINT-FORT:  My understanding, your Honor, it

22   could be done differently by all these agencies.  But to the

23   extent that the requests are coming in via FOIL, I don't know

24   that they would be distinguished based on whether it's a

25   request for disciplinary records or not.  They would simply be

K7SHUNIO

1    documents that we're going to have to go through which are not

2    specifically segregated as to dismissals for unsubstantiated --

3    dismissals because the complaints or the records sought were

4    unsubstantiated or nonfinal or records that were -- the

5    requests for records were denied for reasons other than 50-a.

6    That is to require the FOIL officers and FOIL appeal officers

7    of the agencies that are involved in this case to go through

8    all the FOIL records -- FOIL responses that they have made

9    since the time period that it would appear that your Honor

10   would set as to how far back we're going.

11            Additionally, I would want to be clear that there

12   should be a limitation as to the types of disciplinary records

13   that we're looking at here; that they would only be members of

14   service -- members who are individuals who would be members of

15   the plaintiffs' union organization and not all employees of the

16   various agencies that are involved.

17            THE COURT:  All right.  One moment, please.

18            I'm advised that an audio bridge that we had through

19   AT&T may have cut out, so I think we're going to try and

20   reinstate it.  And perhaps it was the gentleman with the corn

21   dog who is responsible for it.  But I'm now told it's on.  So

22   all right.  Let me proceed.

23            Thank you to both of you for your arguments.

24            Here's what I am directing with respect to requests 5

25   and 6.  I want the disclosure of all denials of requests for

K7SHUNIO

1   disciplinary records for members of service for the one-year

2   period from July 12 of 2019 to July 12 -- no, 11th of 2020, up

3   until the date of the repeal, because I think what we're seeing

4   is disclosures that have been made since then, but really the

5   issue is what was done prior to the repeal.  So it's a one-year

6   period, it's for members of service, and it is the denials.  I

7   think it would be impracticable at this stage, for a

8   preliminary injunction hearing, to do all of the ancillary

9   communications.  So I just want the denials to be produced.

10          That would cover requests -- yes?  Someone speaking.

11          MS. SAINT-FORT:  Can I make one clarification?

12          THE COURT:  Please.

13          MS. SAINT-FORT:  The repeal was June 12 --

14          THE COURT:  Did I say --

15          MS. SAINT-FORT:  -- 2020.

16          THE COURT:  Did I say something --

17          MS. SAINT-FORT:  You said July.

18          THE COURT:  I'm sorry.  Thank you so much.  I have

19   July on the brain because that is the month we're in right now.

20          The one year prior to June 12 of 2020.  Thank you for

21   reminding me what month the repeal took place in.

22          Otherwise, Ms. Saint-Fort, you understand my

23   directive?

24          MS. SAINT-FORT:  I do.  I just want to clarify

25   because just the request itself is for the city.  We are

K7SHUNIO

1    talking about the fire department, NYPD, and the Department of

2    Corrections?

3             THE COURT:  That is correct.

4             MS. SAINT-FORT:  OK.  Thank you.

5             THE COURT:  Thank you.  Very much.

6             All right.  Mr. Coles, let me please hear from you on

7    request 7.

8             MR. COLES:  OK.  On request No. 6, your Honor, I'm

9    sorry, I just want to have clarity on that.  Are they not

10   required to produce documents for the same time period for

11   request No. 6 as well?

12            THE COURT:  It is the same time period.  That would

13   be -- oh, excuse me, that's right, because the request No. 5

14   were the denials, and request No. 6 is for the actual

15   documents.  Is that your point, Mr. Coles?

16            MR. COLES:  No.  Request No. 5 is for police officers,

17   and request No. 6 is for city employees other than law

18   enforcement officers.

19            THE COURT:  Excuse me.  Sir, it was my understanding,

20   and it's perhaps my misapprehension, that with request No. 5,

21   would those records only pertain to police officers?  I was

22   holding out the theoretical possibility that they might apply

23   to someone else.

24            MR. COLES:  Yes.  We use the defined term

25   "disciplinary records," which refers to law enforcement

K7SHUNIO

| | |
|---|---|
| 1 | officers.  So five deals with denials relating to law |
| 2 | enforcement officers, and six deals with denials relating to |
| 3 | other city employees.  The argument being that you can't or |
| 4 | that it would be arbitrary and capricious to treat the law |
| 5 | enforcement officers entirely different from other city |
| 6 | employees.  So accepting the one-year time frame, that should |
| 7 | apply to both requests No. 5 and request No. 6. |
| 8 | THE COURT:  The one-year time frame does apply to |
| 9 | request No. 5 and to request No. 6. |
| 10 | MR. COLES:  Thank you, your Honor. |
| 11 | MS. SAINT-FORT:  If I may, your Honor, on that point, |
| 12 | given that that is a far broader group of individuals, all city |
| 13 | employees, the city has multiple agencies that we would have to |
| 14 | go through to get these FOIL requests for disciplinary records. |
| 15 | Even a one-year time frame for all of these agencies is quite |
| 16 | significant and overly broad for this -- for the purposes of |
| 17 | this case. |
| 18 | THE COURT:  One moment, please. |
| 19 | Ms. Saint-Fort, for request No. 6, it is 6b, it's the |
| 20 | denial, it's not the release.  So it's the denial for other |
| 21 | city employees, and I am ordering it. |
| 22 | MS. SAINT-FORT:  The denial for all other city |
| 23 | employees? |
| 24 | THE COURT:  That is correct. |
| 25 | MS. SAINT-FORT:  If I just may, your Honor, there are |

K7SHUNIO

1    that agencies actually have privacy rules that are separate

2    from the citywide rules, but if they do that's certainly what

3    we would want to explore at the preliminary injunction hearing.

4         So what we're asking for are the city manuals that

5    define how they treat the privacy of personnel records.  If

6    they're citywide at the agency that she mentioned, that's fine.

7    If there are other agencies that have different protocols,

8    which I imagine is possible but seems to me unlikely, then we

9    should have an opportunity to look at those as well.

10        THE COURT:  My concern here is that whatever I order,

11   I cannot win.  Here's what I mean by that.  If I order just the

12   disclosure of the citywide privacy policies that DCAS puts

13   forward, then I am almost certainly excluding individual

14   agencies.  But if I require the agencies to produce this

15   material in the foreshortened time frame of the PI hearing, I

16   think it would be impracticable.  So I am denying request No. 7

17   at this time.

18        I want to move now -- sir?

19        MR. COLES:  I'm sorry, your Honor.  I was going to

20   suggest that perhaps we limit the agencies to those that are

21   named as defendants in the case.

22        THE COURT:  Ms. Saint-Fort --

23        MR. COLES:  And that way we would solve

24   Ms. Saint-Fort's problem.

25        THE COURT:  Ms. Saint-Fort, is that practicable?  I

K7SHUNIO

1    think the answer is yes.

2              MS. SAINT-FORT:  As to FDNY, NYPD, and DOC?

3              THE COURT:  That's correct.

4              MS. SAINT-FORT:  I just want to be clear that does not

5    include CCRB.  They're not an employer.

6              THE COURT:  They don't have a policy -- they don't

7    have policies of this type, correct?

8              MS. SAINT-FORT:  I don't know whether they do or do

9    not, but they're not an employer that would be giving out this

10   kind of disciplinary information that's the subject of this

11   lawsuit.

12             THE COURT:  Fair enough.  All right.  As to the fire

13   department, the police department, and DOCs, yes.

14             All right.  Request 8, Mr. Coles, with respect to

15   request 8, perhaps you want this dictionary that I heard

16   Mr. Dunn speak about a few moments ago and that ought to be

17   produced.  But I'm just not sure -- this idea of all documents

18   explaining the terminology, it seems to me that that's better

19   done by having someone, if such a person exists, who works for

20   the city or one of these constituent agencies explain to you

21   what the terminology is.  To me it's better done with a witness

22   than with documents, but I'll hear from you on that point and

23   then I'll hear from Ms. Saint-Fort.

24             MR. COLES:  OK.  I believe there are documents in the

25   police department and in the other defendant agencies that

K7SHUNIO

1  actually seek to explain how the respective departments define

2  the various terms they use:  What is an unsubstantiated claim?

3  What is a charge and specification?  What is a not guilty

4  finding?

5          At the hearing we had last week, there was

6  significant, I thought, confusion, about what a substantiated

7  claim is.  A substantiated claim is not a final claim.  It is

8  not substantiated in sort of the sense that people normally

9  think of that.  It is simply a case that at the moment, at that

10 moment, is unproven.  I believe that each of the defendant

11 agencies do have guidelines that provide how they define each

12 of those terms and what each of those terms means.

13          THE COURT:  It's your belief, Mr. Coles, that the

14 guidelines of each of these agencies are not identical?  That

15 what the fire department might consider substantiated is

16 something different than what the NYPD would consider

17 substantiated?

18          MR. COLES:  I think it's possible.

19          THE COURT:  All right.  Why -- if I may, sir, why does

20 that matter for the PI hearing?

21          MR. COLES:  Because I believe at the PI hearing that

22 the city is going to make arguments about what each of these

23 terms mean in terms of whether or not there is a due process

24 consequence, and I think it is important to be able to show to

25 your Honor, for instance, that something that the police

K7SHUNIO

1    department may call substantiated is actually very far from

2    being substantiated.

3         It is a significant problem with the ProPublica

4    document release that was made over the weekend.  The

5    ProPublica document release talked about substantiated CCRB

6    complaints, which creates a terrible misapprehension that those

7    were actually final determinations.  Many of those

8    substantiated CCRB determinations actually resulted in not

9    guilty findings when they were reviewed by the police

10   department.  So how each of these agencies defines these terms

11   seems to me to be very, very significant.

12        THE COURT:  Let's talk about what the terms are.  Is

13   it "substantiated" and its converse "unsubstantiated,"

14   "founded" and "unfounded," "final" and "nonfinal"?  What are

15   the words?

16        MR. COLES:  It's the words that are used in the

17   allegations that are made in the department.  So it actually

18   does vary from department to department.  They have similar

19   characterizations, but they're not identical from department to

20   department.  But each department will have a guide of some

21   sort, and the police department it will be patrol guide.  In

22   the fire department, it will be some sort of patrol guide as

23   well that actually explains what they mean when they use these

24   terms that are included in the allegations.

25        THE COURT:  Ms. Saint-Fort, may I hear from you,

K7SHUNIO

1    please.

2            MS. SAINT-FORT:  Yes, your Honor.  I think what you

3    were just trying to get at with plaintiffs' counsel is what's

4    principal here, what specific terms are we talking about?

5    Plaintiffs have advanced this case claiming that

6    unsubstantiated, nonfinal, and unfounded disciplinary records

7    should not be released.  To the extent that an agency defines

8    their -- an agency determines that the charges that are against

9    an officer, the disciplinary records they have, fit into one of

10   those categories, that's what we're talking about.  So I don't

11   know why the definition of all these other terms would be

12   relevant.  If plaintiffs -- I think plaintiffs, in the first

13   instance, certainly needs to let us know what specific terms

14   should be defined.

15           THE COURT:  Well, I've just given you six, right:

16   substantiated, founded, final, and their negatives.

17           Mr. Coles, what else?

18           MR. COLES:  Well, in our papers we seek to enjoin

19   unsubstantiated, unfounded, exonerated, or not guilty.

20           THE COURT:  All right.  So exonerated and not guilty.

21           MR. COLES:  And not guilty.  Substantiated and

22   unsubstantiated.

23           THE COURT:  I understand.  That's why I've said the

24   negatives which each of these.

25           MR. COLES:  Yes, yes, yes, yes.

K7SHUNIO

1          THE COURT:  Those are the terms, Ms. Saint-Fort.  Can

2     I get a definition for them?

3          MS. SAINT-FORT:  We can provide a definition for those

4     terms.

5          I do also just want to note the difference in agency

6     position when it comes to finality of decisions.  That while --

7     for CCRB, once they make a determination that is considered

8     final.  Whether it's substantiated or unsubstantiated for

9     purposes of that agency, it is considered final.  That it goes

10    on to the NYPD to do -- to take the case forward or do with it

11    what the NYPD decides to do, for CCRB it is final.  I do just

12    want to note that for the record.

13         THE COURT:  Ms. Saint-Fort, the point that Mr. Coles

14    is making is he was hopeful that there would be at least a

15    common understanding among the agencies as to what these terms

16    meant.  I appreciate what you're saying to me now, which is

17    that CCRB may have an idiosyncratic definition of some of these

18    terms.  Rather than require you to produce all documents

19    explaining or defining this terminology, I would like each

20    agency's definition of these terms, and however you get them to

21    Mr. Coles is how we want them.

22         But I appreciate what you've just now said about the

23    distinction -- the fact that CCRB may have its own view of

24    something, and you'll have to let -- that's something that I

25    would need to know and Mr. Coles would need to know.

K7SHUNIO

1    at the preliminary injunction hearing.

2            It's absurd to me that they will say we're going to

3    produce these document.  You don't have to look at them.  You

4    can't see them.  We absolutely need to see them and analyze

5    them and present them to you in order to make our causes of

6    action.

7            THE COURT:  All right.  Thank you.

8            I am not going to order that these documents be

9    produced prior to the preliminary injunction hearing.  As

10   Ms. Saint-Fort is aware and Ms. Quinn is aware as well, there

11   is an injunction in place, and nothing is being to be produced

12   except for those things that have already been produced that

13   were done before the injunction was in place.  I think that

14   Mr. Coles and Ms. Saleski will be able to look at the things

15   that have produced in response to request No. 1, and they will

16   see there perhaps unsubstantiated or nonfinal allegations, and

17   they'll be able to make this argument to me.

18           But I also accept Mr. Coles' argument to me, and

19   actually Ms. Saint-Fort's argument about it, that it's the

20   plaintiffs' perspective that none of these should be produced.

21   So I'm not sure we need to see just how bad an individual one

22   is.  I think generalizations can be made about them without

23   seeing the specifics of them in order to make the arguments to

24   me that are necessary for the PI hearing.  Again, I haven't

25   done anything with respect to dissolving the injunction, so

K7SHUNIO

1    nothing's getting produced before then.  And depending on how

2    things go, we may be able to address at the hearing prospective

3    productions about which the plaintiffs are concerned.  So I am

4    denying those requests for this time.

5              MR. COLES:  May I be heard on that for one second --

6              THE COURT:  Of course.

7              MR. COLES:  -- just before the break?

8              THE COURT:  Of course, sir.

9              MR. COLES:  Request No. 1 is directed only to the

10   CCRB.  I think request No. 1 should also include the police

11   department.  The police department takes allegations of a

12   different structure and a different type than the CCRB, and it

13   actually is the final arbiter of CCRB determinations.  So by

14   limiting ourselves to the CCRB, I think you would be excluding

15   our ability to show you the damage that some of these claims

16   can cause to our plaintiffs.  So I would ask that we add the

17   police department for this period to request No. 1.

18             THE COURT:  All right.  So in fact what you're doing

19   is proposing a friendly amendment to your requests 9 and 10 to

20   be disciplinary records publicly released by the NYPD for the

21   period June 12, 2020, to the present.

22             Ms. Saint-Fort, I am accepting that friendly

23   amendment.  He did it to request No. 1.  I'm doing it to

24   request No. 9 and request No. 10.  Please add to your request

25   No. 1 those disciplinary records that have been publicly

K7SHUNIO

1    released by the NYPD for the period June 12, 2020, to the

2    present.

3              Do you understand?

4              MS. SAINT-FORT:  Yes, your Honor.

5              THE COURT:  All right.  Then that has been done.

6    We've added that.  However you -- whatever request you'd like

7    it to be added to, it is now there.  That has been done.

8              All right.  We will talk about depositions, and my

9    hope is that our discussion of depositions will be shorter than

10   our discussion of documents.  Let's take ten minutes, because I

11   want to make sure the reporter recovers from the nearly two

12   hours of discussion we've just had.  So what I'm going to do is

13   I'm going to remain on Skype.  I'm just going to turn off my

14   video and my microphone.  I invite you to do the same, and I

15   will see you in ten minutes.  And I thank you very much.  See

16   you then.

17             (Recess)

18             THE COURT:  As between Ms. Saint-Fort and Ms. Quinn,

19   to whom should I be discussing the issue of depositions?

20             MS. SAINT-FORT:  To me, your Honor, Dominique

21   Saint-Fort.

22             THE COURT:  You truly have drawn the short straw

23   today.  OK.  Thank you.

24             Ms. Saint-Fort, let me speak before I solicit views

25   from Mr. Coles.  I can understand a visceral reaction to having

K7SHUNIO

1   usually you can find some way to come up to speed on

2   information necessary to be able to testify to certain topics.

3   And we would ask your Honor to consider this in the context of

4   our claims that we would like to be able to show the

5   substantial questions of law relating to the equal protection

6   claim as well as the arbitrary and capricious claim as it

7   relates to the treatment of our clients, its members versus the

8   other city employees.

9           THE COURT:  Excuse me.  Let me just take down my notes

10   on what you've been saying.  Thank you.

11          All right.  Again, thank you for your patience.  This

12   would be the time I'll step off the bench, but instead you're

13   just stuck watching me as I review these things.

14          What I'm going to do is I am denying as to all topics

15   but topic No. 4.  I will permit brief 30(b)(6) depositions for

16   the organizational defendants on policies and practices for

17   handling FOIL requests.

18          I do understand and acknowledge that there's some

19   merit to Ms. Saint-Fort's argument that this can be done

20   through document production, but I think that there are nuances

21   that may not be clear from the documents.  And I also

22   understood, and here I agree with Ms. Saleski the most, about

23   the need for a deposition to capture what they believe is an

24   inconsistency in practice.  So on that topic alone I'm allowing

25   a 30(b)(6) deposition.  If it ends up being four agency

K7SHUNIO

```
1    representatives or one who just knows everything, doesn't

2    matter to me.  It's topic 4 only and not the other topics.

3    Thank you.

4              All right.  Mr. Coles --

5              MS. SAINT-FORT:  If I may?

6              THE COURT:  You may, Ms. Saint-Fort.  Thank you.

7              MS. SAINT-FORT:  Thank you, your Honor.

8          I have just a brief follow-up on that point.  When you

9    say "brief depositions," will your Honor be instituting a time

10   limitation?

11             THE COURT:  I can't imagine each deposition would

12   exceed 90 minutes.  So if you want, I will give you a 90-minute

13   limit on each deposition, which I'd love if you came in earlier

14   than 90 minutes, but I don't think it takes longer than that.

15   You can really truncate the stuff at the front end.  So, yes,

16   90-minute limits.  Thank you.  Thank you, Ms. Saint-Fort.

17             Ms. Saint-Fort, was there something else you wanted to

18   add?

19             MS. SAINT-FORT:  Not on that point, your Honor, no.

20             THE COURT:  OK.  Thank you.

21             Ms. Saint-Fort, is there something on another point

22   that you'd like to discuss?

23             MS. SAINT-FORT:  There is another issue that Ms. Quinn

24   will be addressing.  I don't know if now is the proper time.  I

25   don't know.  I'm not sure where your Honor was going.
```