# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Uniformed Fire Officers Association, *et al.*,

        Petitioners/Plaintiffs,

        -against-

Bill de Blasio, in his official capacity as Mayor of the City of New York, *et al.*,

        Respondents/Defendants.

Case No. 1:20-cv-05441-KPF

## BRIEF OF AMICI CURIAE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 31 MEDIA ORGANIZATIONS IN OPPOSITION TO PETITIONERS/PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Katie Townsend
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org

*Counsel of Record for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENTS

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association of reporters and editors with no parent corporation and no stock.

Advance Publications, Inc. ("Advance") certifies that it has no parent corporation and no publicly held corporation owns any of its stock.

The Associated Press is a global news agency organized as a mutual news cooperative under the New York Not-For-Profit Corporation law. It is not publicly traded.

Atlantic Media, Inc. is a privately held media company, and no publicly held corporation owns 10% or more of its stock.

Boston Globe Media Partners, LLC, is a privately held company. No publicly held corporation owns 10% or more of its stock.

BuzzFeed Inc. is a privately owned company, and National Broadcasting Company (NBC) owns 10% or more of its stock.

CBS Broadcasting Inc., on behalf of CBS News and WCBS-TV, is an indirect, wholly owned subsidiary of ViacomCBS Inc.  ViacomCBS Inc. is a publicly traded company. National Amusements, Inc., a privately held company, beneficially owns the majority of the Class A voting stock of ViacomCBS Inc.  ViacomCBS Inc. is not aware of any publicly held entity owning 10% or more of its total common stock, i.e., Class A and Class B on a combined basis.

The Center for Investigative Reporting (d/b/a Reveal) is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Daily News, LP is an indirect subsidiary of Tribune Publishing Company, which is publicly held. Alden Global Capital LLC and affiliates together own over 10% of Tribune

Publishing Company's common stock.  Nant Capital LLC, Dr. Patrick Soon-Shiong and California Capital Equity, LLC together own over 10% of Tribune Publishing Company's stock.

Dow Jones & Company, Inc. ("Dow Jones") is an indirect subsidiary of News Corporation, a publicly held company.  Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones.  News Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of Ruby Newco, LLC.  No publicly traded corporation currently owns ten percent or more of the stock of Dow Jones.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

First Amendment Coalition is a nonprofit organization with no parent company.  It issues no stock and does not own any of the party's or amicus' stock.

Gannett Co., Inc. is a publicly traded company and has no affiliates or subsidiaries that are publicly owned.  BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

The International Documentary Association is an not-for-profit organization with no parent corporation and no stock.

The Investigative Reporting Workshop is a privately funded, nonprofit news organization based at the American University School of Communication in Washington. It issues no stock.

Los Angeles Times Communications LLC is wholly owned by NantMedia Holdings, LLC.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

MediaNews Group Inc. is a privately held company.  No publicly held company owns ten percent or more of its equity interests.

The Foundation for National Progress, dba Mother Jones, is a nonprofit, public benefit corporation. It has no publicly held shares.

MPA - The Association of Magazine Media has no parent companies, and no publicly held company owns more than 10% of its stock.

National Newspaper Association is a non-stock nonprofit Missouri corporation.  It has no parent corporation and no subsidiaries.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

The New York News Publishers Association has no parent company and issues no stock.

The News Leaders Association has no parent corporation and does not issue any stock.

Newsday LLC is a Delaware limited liability company whose members are Tillandsia Media Holdings LLC and Newsday Holdings LLC. Newsday Holdings LLC is an indirect subsidiary of Cablevision Systems Corporation. Cablevision Systems Corporation is (a) directly owned by Altice USA, Inc., a Delaware corporation which is publicly traded on the New York Stock Exchange and (b) indirectly owned by Altice N.V., a Netherlands public company.

Penguin Random House LLC is a limited liability company whose ultimate parent corporation is Bertelsmann SE & Co. KGaA, a privately held company.

POLITICO LLC's parent corporation is Capitol News Company. No publicly held corporation owns 10% or more of POLITICO LLC's stock.

Radio Television Digital News Association is a nonprofit organization that has no parent company and issues no stock.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization.  It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

The Tully Center for Free Speech is a subsidiary of Syracuse University.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos. WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS ............................................................. i

TABLE OF AUTHORITIES ............................................................................ vi

INTEREST OF AMICI CURIAE ...................................................................... 1

INTRODUCTION ...................................................................................... 2

ARGUMENT ........................................................................................... 3

    I.    Petitioners/Plaintiffs' request for a preliminary injunction should be denied. ................... 3

        A.    The injunction sought by Petitioners/Plaintiffs will stymie long-awaited public access to law enforcement records and harm the public's right to know. .............. 4

        B.    Petitioners/Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims. ......................................................................... 7

CONCLUSION ........................................................................................ 10

APPENDIX A ........................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*City of Chicago v. Fraternal Order of Police*, 2020 IL 124831 ................................................. 9, 10

*Digital First Media v. Ewing Twp.*, 462 N.J. Super. 389 (App. Div. 2020) ................................... 8

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) .................................................... 4

*Mills v. Alabama*, 384 U.S. 214 (1966) ................................................................................... 2, 4

*N.Y. Times Co. v. Dep't of Treasury*, No. 09 CIV. 10437 FM, 2010 WL 4159601 (S.D.N.Y. Oct. 13, 2010) ............................................................................................................................... 5

*New Mexico Found. for Open Gov't v. Corizon Health*, No. A-1-CA-35951, 2019 WL 4551658 (N.M. Ct. App. Sept. 13, 2019) ............................................................................................. 9

*New Orleans Bulldog Society v. La. Soc'y for the Prevention of Cruelty to Animals*, 2015-1351 (La. App. 4 Cir. 9/7/16) .......................................................................................................... 9

*N.Y. Lawyers for Pub. Interest v. N.Y. City Police Dep't*, 64 Misc. 3d 671 (N.Y. Sup. Ct. 2019)... ............................................................................................................................................... 5

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ......................................................... 5

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ..................................................... 4

*State ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St. 3d 382 (1985) ..................................... 9

*SWB Yankees LLC v. Wintermantel*, 615 Pa. 640 (2012) ............................................................ 9

**Statutes**

Cal. Penal Code § 832.7 (2019) .................................................................................................... 8

Del. Code Ann. tit. 11, § 9200 ..................................................................................................... 3

N.Y. Pub. Off. Law §§ 84 *et seq.* ................................................................................................ 2

N.Y. Civ. Rights Law §50-a ............................................................................................... *passim*

**Other Authorities**

Dennis Slattery, *New York lawmakers vote to repeal 50-a, making police disciplinary records public*, N.Y. Daily News (June 10, 2020), https://bit.ly/30tvvsY ............................................... 8

*Illinois v. City of Chicago*, Case No. 1:17-cv-06260, N.D. Ill., Dkt. 703-1, Consent Decree, issued Jan. 31, 2019. ............................................................................................................... 6

Invisible Institute, *Citizens Police Data Project* (last accessed August 2020), https://perma.cc/EF6M-W47N ............................................................................................... 6

John Kelly and Mark Nichols, *Tarnished Brass*, USA Today (last updated Oct. 14, 2019), https://perma.cc/7YHS-PX5L ............................................................................................ 5, 6

*Reporters Committee letter urges immediate repeal of Section 50-a of the New York Civil Rights Law*, Reporters Committee for Freedom of the Press (June 7, 2020), https://perma.cc/6XQN-4L93 ....................................................................................................................................... 3

Rob Arthur, *Bad Chicago Cops Spread Their Misconduct Like a Disease*, The Intercept (Aug. 16, 2018), https://perma.cc/3SQU-524T ................................................................. 6, 7

Robert Lewis, Noah Veltman and Xander Landen, *Is Police Misconduct a Secret in Your State?*, WNYC (Oct. 15, 2015), https://perma.cc/EC7G-EP3J ............................................................ 3

Shaila Dewan and Serge F. Kovaleski, *Thousands of Complaints Do Little to Change Police Ways*, N.Y. Times (May 30, 2020), https://perma.cc/FB27-4CPF ............................................ 7

## INTEREST OF AMICI CURIAE[1]

Amici curiae are the Reporters Committee for Freedom of the Press ("Reporters Committee"), Advance Publications, Inc., The Associated Press, Atlantic Media, Inc., Boston Globe Media Partners, LLC, BuzzFeed, CBS Broadcasting Inc., on behalf of CBS News and WCBS-TV, The Center for Investigative Reporting (d/b/a Reveal), Daily News, LP, Dow Jones & Company, Inc., The E.W. Scripps Company, First Amendment Coalition, Gannett Co., Inc., International Documentary Association, Investigative Reporting Workshop at American University, Los Angeles Times Communications LLC, The Media Institute, MediaNews Group Inc., Mother Jones, MPA - The Association of Magazine Media, National Newspaper Association, National Press Photographers Association, New York News Publishers Association, The News Leaders Association, Newsday LLC, Penguin Random House LLC, POLITICO LLC, Radio Television Digital News Association, Society of Environmental Journalists, Society of Professional Journalists, Tully Center for Free Speech, and The Washington Post.

Lead amicus the Reporters Committee is an unincorporated nonprofit association, founded by leading journalists and media lawyers in 1970, when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.[2]

Amici and the reporters and news outlets whose interests they represent rely on access to information about the conduct of government agencies and officials—including police officers—

---

[1] No party's counsel authored this brief in whole or in part, and no party, party's counsel, or any person other than amici curiae or their counsel contributed money that was intended to fund preparing or submitting this brief. Petitioners/Plaintiffs do not oppose the filing of this brief; Respondents/Defendants take no position on the filing of this brief.

[2] Full descriptions of the other amici are included below as Appendix A.

to report on matters of public concern.  Meaningful, timely access to records of police

misconduct, like those at issue in this case, enable members of the press to fulfill their

constitutionally recognized role to gather and report newsworthy information about the activities

of government.  As such, amici have a strong interest in this case.  Following the recent repeal of

New York Civil Rights Law Section 50-a ("Section 50-a"), amici have sought to obtain, analyze,

and report on critical information about the actions of law enforcement personnel that have long

been hidden from public view, thereby fulfilling the press's role "as a powerful antidote to any

abuses of power by government officials and as a constitutionally chosen means for keeping

officials . . . responsible" and accountable.  *Mills v. Alabama*, 384 U.S. 214, 219 (1966).

## INTRODUCTION

Amici respectfully submit this brief in opposition to Petitioners' motion for a preliminary

injunction which, if granted, would further delay public access to long-hidden information about

the conduct of law enforcement officers in New York.  The public and the press depend upon the

free flow of information from government agencies and officials, like Respondents/Defendants,

in order to keep a watchful eye on the actions of government.  Indeed, as New York's Freedom

of Information Law, N.Y. Pub. Off. Law §§ 84 *et seq.* ("FOIL") states, "government is the

public's business" and "the public, individually and collectively and represented by a free press

should have access to records of the government."  Such is particularly the case here—where the

repeal of Section 50-a has finally granted the public and the press access to information about the

conduct of law enforcement personnel that has long—and unnecessarily—been shielded from

public view.  Amici seek to highlight the importance and urgency of public access to such

information, and thus, respectfully urge the Court to deny Petitioners' motion for a preliminary

injunction.

## ARGUMENT

**I.     Petitioners/Plaintiffs' request for a preliminary injunction should be denied.**

Immediately preceding the repeal of Section 50-a, New York was one of only two states that specifically made records of police misconduct confidential, thus shielding them from disclosure under New York's Freedom of Information Law.  *See generally* Robert Lewis, Noah Veltman and Xander Landen, *Is Police Misconduct a Secret in Your State?*, WNYC (Oct. 15, 2015), https://perma.cc/EC7G-EP3J.[3]  As a result of Section 50-a, newsgathering and reporting on police misconduct was persistently stymied for nearly 45 years; simultaneously, public oversight of law enforcement suffered.  Prior to its repeal, amici were keenly aware of the barrier that Section 50-a posed for journalists and news organizations seeking to report on the conduct of law enforcement personnel.  *See, e.g.*, *Reporters Committee letter urges immediate repeal of Section 50-a of the New York Civil Rights Law*, Reporters Committee for Freedom of the Press (June 7, 2020), https://perma.cc/6XQN-4L93.  On June 12, 2020, the New York Legislature repealed Section 50-a, enabling New Yorkers, for the first time in decades, to have informed, meaningful public debate about police culture, conduct, and reform.

In moving for a preliminary injunction to prevent Respondents/Defendants from making public the records at issue—records long sought by the public and the press, and subject to much greater degrees of openness in other states—Petitioners/Plaintiffs turn a deaf ear to the resounding voice of New Yorkers calling for increased transparency and accountability, the will of the Legislature that repealed Section 50-a, and the palpable benefits of openness not only for the public but also for Petitioners/Plaintiffs and law enforcement, generally.  Indeed, Petitioners/Plaintiffs' exaggerated claims of harm they assert could flow from public release of

---

[3]     Delaware is now the only state with a law explicitly deeming police disciplinary records confidential.  Del. Code Ann. tit. 11, § 9200.

the records of police misconduct at issue, discussed *infra* at 7–10, are neither supported nor outweigh the importance—and urgency—of the transparency that the public has long awaited.

A.   The injunction sought by Petitioners/Plaintiffs will stymie long-awaited public access to law enforcement records and harm the public's right to know.

Members of the news media play a vital role in ensuring trust in government institutions. *See, e.g.*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). Indeed, "[t]he Constitution specifically selected the press . . . to play an important role in the discussion of public affairs." *Mills*, 384 U.S. at 219. This is particularly true with respect to the news media's reporting on the conduct of law enforcement personnel. With the repeal of Section 50-a comes a unique opportunity for members of the news media to analyze and report on newly available data in a manner that will better inform the public, improve institutional trust, and tell stories that will have a meaningful impact on society's "discussion of public affairs." *Id.* at 219.

Petitioners/Plaintiffs' assertion in support of their motion for a preliminary injunction that "the balance of equities strongly favors preservation of the status quo," Mem. of Law in Supp. of Verified Pet./Compl. and Proposed Order to Show Cause Seeking TRO and Prelim. Inj. ("Pet'rs' Mem."), ECF No. 10-12, at 2, ignores the fact that the New York Legislature has unequivocally, and over the objections of Petitioners/Plaintiffs, decided to make these records public. Further, Petitioners/Plaintiffs' claim that the public interest in such information is low or nonexistent, Pet'rs' Mem. at 3, runs counter to fundamental principles of transparency and accountability— principles whose importance has been consistently reaffirmed by the courts, both in general and in the context of freedom of information in particular. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (explaining that "an informed citizenry [is] vital to the functioning of a democratic society [and is] needed to check against corruption"); *N.Y. Times Co. v. Dep't of*

*Treasury*, No. 09 CIV. 10437 FM, 2010 WL 4159601, at *6 (S.D.N.Y. Oct. 13, 2010)

(recounting importance of access to "[o]fficial information that sheds light on" a government

agency's conduct); *see also N.Y. Lawyers for Pub. Interest v. N.Y. City Police Dep't*, 64 Misc. 3d

671, 678–79 (N.Y. Sup. Ct. 2019).  Petitioners' greatest oversight, however, is that they ignore

the substantial benefits of increased transparency—benefits reaped *both* by law enforcement

personnel and the communities they serve.

 Access to government records concerning police misconduct and discipline has made

possible powerful journalism affecting communities across the nation.  For example, USA Today

has created a database of 85,000 officers who have been investigated or disciplined for

misconduct.  *See* John Kelly and Mark Nichols, *Tarnished Brass*, USA Today (last updated Oct.

14, 2019), https://perma.cc/7YHS-PX5L.  USA Today relied on state open records laws to obtain

information about more than 110,000 internal affairs investigations by hundreds of individual

departments, and more than 30,000 officers who were decertified by 44 state oversight agencies.

*See id*.  Built on records obtained from thousands of state agencies, prosecutors, police

departments and sheriffs, the database details at least 200,000 incidents of alleged misconduct,

much of it previously unreported.

 USA Today's reporting was motivated, in part, by the notion that "[d]espite their role as

public servants, the men and women who swear an oath to keep communities safe can generally

avoid public scrutiny for their misdeeds."  *Id*.  The reporting seeks to help identify decertified

officers who continue to work in law enforcement.  *Id*.  Such transparency is, as Laurie

Robinson, co-chair of the 2014 White House Task Force on 21st Century Policing, has stated, "a

very key step along the way to repairing [] relationships" between law enforcement and the

communities they serve.  *Id*.

Similarly, the Citizens Police Data Project published by the Invisible Institute, contains the disciplinary records of Chicago police officers in a comprehensive, searchable format, from which copious examples of meaningful analysis and reporting have flowed.  The data covers more than 30,000 officers and almost 23,000 complaints between 2000 and 2018.  Invisible Institute, *Citizens Police Data Project* (last accessed August 2020), https://perma.cc/EF6M-W47N.  Reporting based on this data has revealed striking trends in how misconduct spreads by way of example when new officers are exposed to the problematic tendencies of other officers. *See, e.g.*, Rob Arthur, *Bad Chicago Cops Spread Their Misconduct Like a Disease*, The Intercept (Aug. 16, 2018), https://perma.cc/3SQU-524T ("The data shows that [officers prone to misconduct] also may be teaching their colleagues bad habits . . . . The officers who had been exposed to the . . . misconduct-prone cops . . . went on to show complaint rates nine times higher over the next ten years than those who hadn't.").  A consent decree between the State of Illinois and the City of Chicago entered last year responds to the troubling trends illuminated by the Citizens Police Data Project by formalizing an "early intervention" program to "proactively identify at-risk behavior by officers" in an effort to stem the deleterious ripple effect of officer misconduct.  *Illinois v. City of Chicago*, Case No. 1:17-cv-06260, N.D. Ill., Dkt. 703-1, Consent Decree, issued Jan. 31, 2019.

This is a salient example of the value of the records Petitioners/Plaintiffs attempt to paint as unimportant, *see, e.g.*, Pet'rs' Mem. at 3, 4; meaningful reporting and tangible reform has flowed from access to records of even those "non-final" or "unsubstantiated" allegations of misconduct which Petitioners/Plaintiffs seek to keep shrouded in secrecy.  *Compare* Pet'rs' Mem. (insinuating no public interest in the complaints, themselves, of police misconduct, or of complaints deemed unsubstantiated by the reviewing authority) *with* Arthur, *supra* (explaining

that many officers begin by engaging in conduct "right at the edge of what is acceptable procedure," which may not register as misconduct by a reviewing authority, but which the data analyzed by the Intercept renders significant because it allows for observation of trends, early intervention, and meaningful reform).  In addition, press and public access to "non-final" or "unsubstantiated" allegations of misconduct allows members of the public to evaluate for themselves whether police departments—which often function with little to no outside oversight—are timely and effectively investigating incidents.  *See, e.g.*, Shaila Dewan and Serge F. Kovaleski, *Thousands of Complaints Do Little to Change Police Ways*, N.Y. Times (May 30, 2020), https://perma.cc/FB27-4CPF (noting the "reluctance of investigators . . . to second-guess an officer's split-second decision," and the concomitant need for more effective, robust oversight).  In sum, members of the news media—as well as social science researchers, historians, and many others—should not be denied access to data made publicly available by the Legislature through its repeal of Section 50-a.

      B.      Petitioners/Plaintiffs cannot demonstrate a likelihood of success on the merits of <u>their claims.</u>

Petitioners/Plaintiffs advance several arguments as to the purported likelihood they will succeed on the merits of their claims, which Respondents/Defendants have addressed in prior submissions to the Court.  *See, e.g.*, ECF No. 23 at 3.  Amici write to highlight for the Court the following two issues which undercut Petitioners/Plaintiffs' contention that they are likely to succeed on the merits.

First, Petitioners/Plaintiffs contend that Respondents/Defendants' decision to make the records of misconduct at issue available to the public "unreasonably treats firefighters, corrections officers, and police officers differently than other public employees."  Pet'rs' Mem. at 3.  Yet, this ignores the fact that during the 44-year existence of Section 50-a, that provision

made law enforcement personnel records uniquely secret; the Legislature repealed Section 50-a

in "an attempt to level the playing field," and finally "get information into the public."  Dennis

Slattery, *New York lawmakers vote to repeal 50-a, making police disciplinary records public*,

N.Y. Daily News (June 10, 2020), https://bit.ly/30tvvsY (statement of New York State

Assemblyman Daniel O'Donnell).  The repeal of Section 50-a, thus, corrects course after a long

era of secrecy, so New Yorkers may "take one step forward today on transparency."  *Id*.  The

Legislature's and Respondents/Defendants' decision to open such records to public scrutiny,

rather than being "arbitrary and capricious [on the grounds that] it . . . breaks from long-settled

agency practice," Pet'rs' Mem. at 3–4, purposefully responds to the long history of a lack of

public access to these records in New York, and falls directly in line with broader efforts to

increase law enforcement transparency across the country.

        Indeed, California recently reformed its law to increase public access to police

disciplinary records.  In California, there is now a general requirement of disclosure in response

to a request for records relating to "critical incidents," which include when officers discharge

their firearms at a person; the use of force by an officer which causes death or great bodily

injury; incidents where officers were dishonest in their reporting; and incidents where an officer

committed sexual assault.  Cal. Penal Code § 832.7 (2019).  Earlier this year, use of force reports

compiled after police officers used force against minors became public records in the state of

New Jersey.  *See Digital First Media v. Ewing Twp*., 462 N.J. Super. 389 (App. Div. 2020), cert.

denied, No. 084250, 2020 WL 3843639 (N.J. July 2, 2020).  And, just weeks ago, the Illinois

Supreme Court ruled that complaint register files—allegations of police misconduct—and other

disciplinary records cannot be destroyed even if they are more than five years old because of that

state's "well-defined and dominant public policy" in favor of the preservation and disclosure of

important government records.  *See City of Chicago v. Fraternal Order of Police*, 2020 IL

124831.

Second, Petitioners/Plaintiffs claim that public release of the records at issue will infringe

their ability to enter into collective bargaining agreements.  Pet'rs' Mem. at 11.

Respondents/Defendants make clear that "police discipline and the dissemination of information

related to that discipline is *not* a subject of collective bargaining."  ECF No. 23 at 3.  Yet, even

assuming, *arguendo*, that release of the records at issue affects Petitioners/Plaintiffs' collective

bargaining agreements, it is well established that contracts may not be used to evade

transparency requirements under state law.  Indeed, courts around the country that have

addressed the interaction between contracts and state public records laws have consistently held

that a contract cannot override a statutory mandate of access.[4]  Notably, when the Illinois

Supreme Court examined this very issue earlier this year, it emphatically held that a provision in

a collective bargaining agreement between the City of Chicago and the Chicago Fraternal Order

of Police, which contained a provision mandating the destruction of certain records of police

misconduct, was unenforceable as against public policy.  *City of Chicago*, 2020 IL 124831, ¶ 44–

46.  Here, the people of New York and their Legislature have spoken.  Petitioners/Plaintiffs

---

[4]     *See, e.g.*,  *State ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St. 3d 382, 384 (1985)
(holding that a contractual provision between a city and its employees could not alter the duties of
the city to provide access to public records under that state's public records law); *New Mexico
Found. for Open Gov't v. Corizon Health*, No. A-1-CA-35951, 2019 WL 4551658, *5 (N.M. Ct.
App. Sept. 13, 2019) (explaining that attempting to circumvent a citizen's right of access to public
records by way of contracts was a practice that stands to "thwart the very purpose of [the] Public
Records Act and [would] mark a significant departure from New Mexico's presumption of
openness at the heart of New Mexico access law"); *New Orleans Bulldog Society v. La. Soc'y for
the Prevention of Cruelty to Animals*, 2015-1351 (La. App. 4 Cir. 9/7/16) (making clear that
Louisiana's "Public Records Law cannot be circumscribed by a contract"); *SWB Yankees LLC v.
Wintermantel*, 615 Pa. 640, 659 (2012) (government agencies must not "be free to contract away
the public access requirements of the [law]").

cannot unilaterally undo legislative reform efforts aimed at making government agencies and officials, including law enforcement officers, more accountable to the public they are sworn to serve, by invoking collective bargaining agreements.

## CONCLUSION

Ensuring timely, meaningful, public access to the records at issue here is precisely what the New York Legislature intended when it repealed Section 50-a.  And when journalists are able to scrutinize such records, which speak to the conduct of law enforcement personnel, they can tell stories that have a powerful impact on communities.  For all these reasons, amici urge the Court to deny Petitioners/Plaintiffs' motion for a preliminary injunction.

Dated: August 14, 2020                                        Respectfully submitted,

                                                        /s/ Katie Townsend
                                                        Katie Townsend
                                                        THE REPORTERS COMMITTEE FOR
                                                         FREEDOM OF THE PRESS
                                                        1156 15th St. NW, Suite 1020
                                                        Washington, DC 20005
                                                        Phone: (202) 795.9300
                                                        Facsimile: (202) 795.9310
                                                        ktownsend@rcfp.org

                                                        *Counsel of Record for Amici Curiae*

## APPENDIX A

**Advance Publications, Inc.** is a diversified privately-held company that operates and invests in a broad range of media, communications and technology businesses. Its operating businesses include Conde Nast's global magazine and digital brand portfolio, including titles such as Vogue, Vanity Fair, The New Yorker, Wired, and GQ, local news media companies producing newspapers and digital properties in 10 different metro areas and states, and American City Business Journals, publisher of business journals in over 40 cities.

**The Associated Press** ("AP") is a news cooperative organized under the Not-for-Profit Corporation Law of New York.  The AP's members and subscribers include the nation's newspapers, magazines, broadcasters, cable news services and Internet content providers.  The AP operates from 280 locations in more than 100 countries.  On any given day, AP's content can reach more than half of the world's population.

**Atlantic Media, Inc.** is a privately held, integrated media company that publishes The Atlantic and National Journal.  These award-winning titles address topics in national and international affairs, business, culture, technology and related areas, as well as cover political and public policy issues at federal, state and local levels.  The Atlantic was founded in 1857 by Oliver Wendell Holmes, Ralph Waldo Emerson, Henry Wadsworth Longfellow and others.

**Boston Globe Media Partners, LLC** publishes The Boston Globe, the largest daily newspaper in New England.

**BuzzFeed** is a social news and entertainment company that provides shareable breaking news, original reporting, entertainment, and video across the social web to its global audience of more than 200 million.

**CBS Broadcasting Inc., on behalf of CBS News and WCBS-TV,** produces and broadcasts news, public affairs and entertainment programming. Its CBS News Division produces morning, evening and weekend news programming, as well as news and public affairs newsmagazine shows, such as "60 Minutes" and "48 Hours." CBS Broadcasting Inc. also directly owns and operates television stations across the country, including WCBS-TV in New York City.

**The Center for Investigative Reporting (d/b/a Reveal)**, founded in 1977, is the nation's oldest nonprofit investigative newsroom. Reveal produces investigative journalism for its website https://www.revealnews.org/, the Reveal national public radio show and podcast, and various documentary projects. Reveal often works in collaboration with other newsrooms across the country.

**Daily News, LP** publishes the New York Daily News, a daily newspaper that serves primarily the New York City metropolitan area and is one of the largest papers in the country by circulation. The Daily News' website, NYDailyNews.com, receives approximately 100 million page views each month.

**Dow Jones & Company** is the world's leading provider of news and business information. Through The Wall Street Journal, Barron's, MarketWatch, Dow Jones Newswires, and its other publications, Dow Jones has produced journalism of unrivaled quality for more than 130 years and today has one of the world's largest newsgathering operations. Dow Jones's professional information services, including the Factiva news database and Dow Jones Risk & Compliance, ensure that businesses worldwide have the data and facts they need to make intelligent decisions. Dow Jones is a News Corp company.

**The E.W. Scripps Company** serves audiences and businesses through local television, with 60 television stations in 42 markets. Scripps also owns Newsy, the next-generation national news network; national broadcast networks Bounce, Grit, Escape, Laff and Court TV; and Triton, the global leader in digital audio technology and measurement services. Scripps serves as the long-time steward of the nation's largest, most successful and longest-running educational program, the Scripps National Spelling Bee.

**First Amendment Coalition** is a nonprofit public interest organization dedicated to defending free speech, free press and open government rights in order to make government, at all levels, more accountable to the people. The Coalition's mission assumes that government transparency and an informed electorate are essential to a self-governing democracy. To that end, we resist excessive government secrecy (while recognizing the need to protect legitimate state secrets) and censorship of all kinds.

**Gannett** is the largest local newspaper company in the United States. Its 260 local daily brands in 46 states and Guam — together with the iconic USA TODAY — reach an estimated digital audience of 140 million each month.

**The International Documentary Association** (IDA) is dedicated to building and serving the needs of a thriving documentary culture. Through its programs, the IDA provides resources, creates community, and defends rights and freedoms for documentary artists, activists, and journalists.

**The Investigative Reporting Workshop**, based at the School of Communication (SOC) at American University, is a nonprofit, professional newsroom. The Workshop publishes in-depth stories at investigativereportingworkshop.org about government and corporate

accountability, ranging widely from the environment and health to national security and the economy.

**Los Angeles Times Communications LLC** is one of the largest daily newspapers in the United States.  Its popular news and information websites, www.latimes.com, attracts audiences throughout California and across the nation.

**The Media Institute** is a nonprofit foundation specializing in communications policy issues founded in 1979.  The Media Institute exists to foster three goals: freedom of speech, a competitive media and communications industry, and excellence in journalism.  Its program agenda encompasses all sectors of the media, from print and broadcast outlets to cable, satellite, and online services.

**MediaNews Group** is a leader in local, multi-platform news and information, distinguished by its award-winning original content and high quality local media.  It is one of the largest news organizations in the United States, with print and online publications across the country.

**Mother Jones** is a nonprofit, reader-supported news organization known for ground-breaking investigative and in-depth journalism on issues of national and global significance.

**MPA – The Association of Magazine Media** ("MPA") is the industry association for magazine media publishers. The MPA, established in 1919, represents the interests of close to 100 magazine media companies with more than 500 individual magazine brands. MPA's membership creates professionally researched and edited content across all print and digital media on topics that include news, culture, sports, lifestyle and virtually every other interest, avocation or pastime enjoyed by Americans. The MPA has a long history of advocating on First Amendment issues.

**National Newspaper Association** is a 2,000 member organization of community newspapers founded in 1885.  Its members include weekly and small daily newspapers across the United States. It is based in Pensacola, FL.

**The National Press Photographers Association** ("NPPA") is a 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its creation, editing and distribution.  NPPA's members include television and still photographers, editors, students and representatives of businesses that serve the visual journalism industry. Since its founding in 1946, the NPPA has vigorously promoted the constitutional rights of journalists as well as freedom of the press in all its forms, especially as it relates to visual journalism. The submission of this brief was duly authorized by Mickey H. Osterreicher, its General Counsel.

**The New York News Publishers Association** is a trade association which represents daily, weekly and online newspapers throughout New York State. It was formed in 1927 to advance the freedom of the press and to represent the interests of the newspaper industry. The News Leaders Association was formed via the merger of the American Society of News Editors and the Associated Press Media Editors in September 2019.  It aims to foster and develop the highest standards of trustworthy, truth-seeking journalism; to advocate for open, honest and transparent government; to fight for free speech and an independent press; and to nurture the next generation of news leaders committed to spreading knowledge that informs democracy.

**Newsday LLC** ("Newsday") is the publisher of the daily newspaper, Newsday, and related news websites.  Newsday is one of the nation's largest daily newspapers, serving Long Island through its portfolio of print and digital products. Newsday has received 19 Pulitzer Prizes and other esteemed awards for outstanding journalism.

**Penguin Random House LLC** publishes adult and children's fiction and nonfiction in print and digital trade book form in the U.S.  The Penguin Random House global family of companies employ more than 10,000 people across almost 250 editorially and creatively independent imprints and publishing houses that collectively publish more than 15,000 new titles annually.  Its publishing lists include more than 60 Nobel Prize laureates and hundreds of the world's most widely read authors, among whom are many investigative journalists covering domestic politics, the justice system, business and international affairs.

**POLITICO** is a global news and information company at the intersection of politics and policy.  Since its launch in 2007, POLITICO has grown to nearly 300 reporters, editors and producers.  It distributes 30,000 copies of its Washington newspaper on each publishing day and attracts an influential global audience of more than 35 million monthly unique visitors across its various platforms.

**Radio Television Digital News Association** ("RTDNA") is the world's largest and only professional organization devoted exclusively to electronic journalism. RTDNA is made up of news directors, news associates, educators and students in radio, television, cable and electronic media in more than 30 countries. RTDNA is committed to encouraging excellence in the electronic journalism industry and upholding First Amendment freedoms.

**The Society of Environmental Journalists** is the only North-American membership association of professional journalists dedicated to more and better coverage of environment-related issues.

**Society of Professional Journalists** ("SPJ") is dedicated to improving and protecting journalism.  It is the nation's largest and most broad-based journalism organization, dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior.

Founded in 1909 as Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry, works to inspire and educate the next generation of journalists and protects First Amendment guarantees of freedom of speech and press.

**The Tully Center for Free Speech** began in Fall, 2006, at Syracuse University's S.I. Newhouse School of Public Communications, one of the nation's premier schools of mass communications.

**The Washington Post** (formally, WP Company LLC d/b/a The Washington Post) is a news organization based in Washington, D.C. It publishes The Washington Post newspaper and the website www.washingtonpost.com, and produces a variety of digital and mobile news applications. The Post has won Pulitzer Prizes for its journalism, including the award in 2020 for explanatory reporting.

**CERTIFICATE OF SERVICE**

I, Katie Townsend, do hereby certify that I have filed the foregoing Brief of Amici Curiae electronically with the Clerk of Court for the United States District Court for the Southern District of New York using the CM/ECF system on August 14, 2020.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


_/s/ Katie Townsend_
Katie Townsend
_Counsel of Record for Amici Curiae_