UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

Uniformed Fire Officers Association; Uniformed
Firefighters Association of Greater New York; Correction
Officers' Benevolent Association of the City of New York,
Inc.; Police Benevolent Association of the City of New
York, Inc.; Sergeants Benevolent Association; Lieutenants
Benevolent Association; Captains Endowment Association;
and Detectives' Endowment Association,

No.: 20-Civ.-05441-KPF

                                        Petitioners/Plaintiffs,

                    - against -

Bill de Blasio, in his official capacity as Mayor of the City
of New York; the City of New York; Fire Department of
the City of New York; Daniel A. Nigro, in his official
capacity as the Commissioner of the Fire Department of the
City of New York; New York City Department of
Correction; Cynthia Brann, in her official capacity as the
Commissioner of the New York City Department of
Correction; Dermot F. Shea, in his official capacity as the
Commissioner of the New York City Police Department;
the New York City Police Department; Frederick Davie, in
his official capacity as the Chair of the Civilian Complaint
Review Board; and the Civilian Complaint Review Board,

                                        Respondents/Defendants.

------------------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

*Of Counsel:*

Kami Zumbach Barker

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................ii

STATEMENT OF FACTS.....................................................................................................2

CIVIL RIGHTS LAW §50-A AND ITS REPEAL ..............................................................2

**ARGUMENT** ........................................................................................................................4

POINT I .................................................................................................................................4

LEGAL STANDARD FOR A PRELIMINARY INJUNCTION ..........................................4

    A.   Plaintiffs Cannot Establish the Likelihood of Reputational Harm ............................5

    B.   Plaintiffs Cannot Establish Harm to Their Members' Safety.....................................6

    C.   Plaintiffs Cannot Establish Any Irreparable Loss of Privacy....................................7

    D.   Plaintiffs Cannot Establish Any Harm to Their Collectively Bargained-For Rights ..8

    E.   Plaintiffs Cannot Establish Violations of Past Settlement Agreements ...................10

    F.   Plaintiffs' Delay Demonstrates the Lack of Irreparable Harm.................................10

POINT II...............................................................................................................................12

PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS .................................12

    A.   Plaintiffs Are Unlikely to Succeed on their Fourteenth Amendment, Federal Due Process and Equal Protection Claims .............................................................................12

    B.   Plaintiffs Are Unlikely to Succeed on the Merits of Any of Their State Law Claims 18

    (i)   Article 78 .............................................................................................................18

    (ii)   New York State Constitution................................................................................25

    (iii)   Article 75 .............................................................................................................25

    (iv)   Breach of Contract...............................................................................................29

POINT III .............................................................................................................................32

THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS.............32

POINT V ..............................................................................................................................32

PLAINTIFFS CANNOT SHOW THAT AN INJUNCTION IS IN THE PUBLIC INTEREST. ...........................................................................................................................32

CONCLUSION…………………………………………………………………………34

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

Adams v. N.Y. State Educ. Dep't,
    732 F. Supp. 2d 420 (S.D.N.Y. 2010) ..................................................................... 14

Allen v. Wright,
    468 U.S. 737 (1984) ................................................................................................. 12

Almontaser v. N.Y. City Dep't of Educ.,
    519 F.3d 505 (2d Cir. 2008) ...................................................................................... 4

Alzheimer's Found. of Am., Inc. v. Alzheimers Disease & Related Disorders
    Ass'n, Inc.,
    No. 10 Civ. 3314, 2015 U.S. Dist. LEXIS 84172 (S.D.N.Y. June 29, 2015) ........... 5

Analytical Diagnostic Lab, Inc. v. Kusel,
    626 F.3d 135 (2d Cir. 2010) .................................................................................... 16

Appalseed Prods., Inc. v. Medianet Digital, Inc.,
    2012 U.S. Dist. LEXIS 93946 (S.D.N.Y. 2012) ..................................................... 11

Bd. of Educ. v. Ambach,
    70 N.Y.2d 501 (1987), cert denied sub nom.,
    Margolin v. Bd. of Educ., 485 U.S. 1034 (1988) .............................................. 26, 27

Board of Regents of State Colleges v. Roth,
    408 U.S. 564 (1972) ................................................................................................. 13

Boss v. Kelly,
    306 F. App'x 649 (2d Cir. 2009) ....................................................................... 14, 15

Bright Homes v. Wright,
    8 N.Y.2d 157 (1960) ................................................................................................ 20

Cantres v. Bd. of Educ.,
    145 A.D.2d 359 (1st Dep't 1988) ............................................................................ 26

Capital Nat'l Bank of New York v. McDonald's Corp.,
    625 F. Supp. 874 (S.D.N.Y. 1986) .......................................................................... 31

Capital Newspapers Div. of Hearst Corp. v. Burns,
    67 N.Y.2d 562 (1986) .............................................................................................. 21

Chrysler Corp. v. Brown,
    441 U.S. 281 (1979) ..............................................................................21

Cielo Garage Owners Co., LLC v Board of Mgrs. of the Cielo Condominium,
    2019 N.Y. Misc. LEXIS 4590 (Sup. Ct. N.Y. Cnty. Aug. 20, 2019) ......................................31

Matter of Collins v Dukes Plumbing & Sewer Serv., Inc.,
    75 A.D.3d 697 (3d Dep't 2010) ..............................................................................20

Conyers v. Rossides,
    558 F.3d 137 (2d Cir. 2009) ............................................................................16, 17

CSI Inv. Partners II, L.P. v. Cendant Corp.,
    507 F. Supp. 2d 384 (S.D.N.Y. 2007) ..............................................................................31

Cullman Ventures, Inc. v. Conk,
    252 A.D.2d 222 (1st Dept. 1998) ..............................................................................28

Matter of Daniel Pantaleo v. New York City Civilian Complaint Review Board,
    Index No. 100641/19 (Sup. Ct. N.Y. Cty. 2019) ......................................18

Davis v. City of New York,
    959 F. Supp. 2d 324 (S.D.N.Y. 2013) ..............................................................................25

Doe v. Greco,
    62 A.D.2d 498 (App. Div. 3rd Dept. 1978) ..............................................................................8

Doe v. Pataki,
    481 F.3d 69 (2d Cir. 2007) ..............................................................................30

Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.,
    627 F. Supp. 1202 (S.D.N.Y. 1986), aff'd, 814 F.2d 90 (2d Cir. 1987) ......................................31

Engquist v. Oregon Dep't of Agric.,
    553 U.S. 591 (2008) ............................................................................16, 17

Fink v. Lefkowitz,
    47 N.Y.2d 567 (1979) ..............................................................................24

Freedom Holdings, Inc. v. Spitzer,
    408 F.3d 112 (2d Cir. 2005) ..............................................................................6

Matter of Gilman v. New York State Division of Housing and Community
    Renewal,
    99 N.Y.2d 144 (2002) ..............................................................................18

Gould v. New York City Police Department,
    89 N.Y.2d 267 (1996) ..............................................................................24

Graham v. Decker,
     No. 20 Civ. 2423, 2020 U.S. Dist. LEXIS 64447 (S.D.N.Y. Apr. 13, 2020)...........................6

Granny Goose Foods, Inc. v. Teamsters,
     415 U.S. 423 (1974) ......................................................................................................5

Gray v. Crew,
     293 A.D.2d 357, appeal dismissed, 99 N.Y.2d 531 (2002)......................................................26

Hall v. Town of Henderson,
     17 A.D.3d 981, lv. to appeal den., 5 N.Y.3d 714 (2005) ........................................................26

Matter of Harbatkin v. New York City Dept. of Records & Info.,
     19 N.Y.3d 373, 380 (2012)...........................................................................................22

Heath v. Stephen Banks,
     692 Fed. Appx. 60 (2d Cir. 2017) ...................................................................................31

Hellenic Am. Neighborhood Action Comm. v. City of New York,
     101 F.3d 877 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997)...........................................16

Henderson v. New York,
     423 F. Supp. 2d 129,145 (S.D.N.Y. 2006) .........................................................................16

Matter of Hughes Hubbard & Reed LLP v Civilian Complaint Review Bd.,
     53 Misc. 3d 947 (Sup. Ct., Kings Cnty. 2016) .....................................................................23

Impax Media Inc. v. Northeast Adver. Corp.,
     No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 (S.D.N.Y. Jan. 10, 2018) ........................4, 5

Jayaraj v. Scappini,
     66 F.3d 36 (2d Cir. 1995) ..............................................................................................5

Johnston v. Tn. of Orangetown,
     562 F. App'x 39 (2d Cir. 2014)........................................................................................16

Matter of Kittredge v. Planning Bd. of Town of Liberty,
     57 AD3d 1336 (2008)...................................................................................................20

Koehler v. New York City,
     Docket No. 04 Civ. 6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005) ...........................16

LaRocca v. Board of Educ. of Jericho Union Free School Dist.,
     220 A.D.2d 424 (2nd Dept. 1995)....................................................................................25

Locurto v. Safir,
     264 F.3d 154 (2d Cir. 2001) ......................................................................................12, 16

Los Angeles v. Lyons,
    461 U.S. 95 (1983) ................................................................................5

Matter of Luongo v. Records Access Appeals Officer,
    2017 N.Y. Slip Op. 31142(U), (Sup. Ct. N.Y. Cty. May 24, 2017) aff'd Matter
    of Luongo v. Records Access Appeals Officer, 168 A.D.3d 504 (App. Div. 1st
    Dept. 2019) ..........................................................................................6

Luongo v. Records Access Off.,
    150 A.D.3d 13 (1st Dep't 2017) ..........................................................23

Massi v. Flynn,
    353 Fed. Appx. 658 (2d Cir. 2009) .....................................................17

McMenemy v. City of Rochester,
    241 F.3d 279 (2d Cir. 2001) ................................................................13

Neilson v. D'Angelis,
    409 F.3d 100 (2d Cir. 2005) ................................................................17

New Look Party, Ltd. v. Louise Paris, Ltd.,
    2012 U.S. Dist. LEXIS 9539 (S.D.N.Y. 2012) ...................................11

New York State Housing Finance Agency Employees' Ass'n v. New York State
    Housing Finance Agency,
    183 A.D.2d 435 (1st Dep't 1992) ........................................................28

Matter of NY Civ. Liberties Union v. N.Y. City Police Dep't,
    32 N.Y.3d 556 (2018) ............................................................................2

O'Shea v. Littleton,
    414 U.S. 488 (1974) ..............................................................................5

Oneida Indian Nation of N.Y. v. Madison Cnty.,
    665 F.3d 408 (2d Cir. 2011) ................................................................13

Patrick Lynch, et. al. v. The New York City Civilian Complaint Review Board,
    Index No. 152235/2018 (Sup. Ct. N.Y. Cty. 2018) .............................18

Paul v Davis,
    424 U.S. 693 (1976) ............................................................................13

Peckham v. Calogero,
    12 N.Y.3d 424 (2009) ..........................................................................19

In the Matter of Pell v. Bd. of Educ.,
    34 N.Y.2d 222 (1974) ..........................................................................18

People v. Olah,
    300 N.Y. 96 (1949)........................................................................................20

Plummer v. Klepak,
    48 N.Y.2d 486 (1979), cert. denied, 445 U.S. 952 (1980) ......................27

Police Benevolent Assn. v. State of New York,
    145 A.D.3d 1391 (3d Dept. 2016)..........................................................24

Porr v. Daman,
    299 Fed. Appx. 84 (2d Cir. 2008) ..........................................................17

Raymond v. City of New York,
    No. 15 CV 6886 (LTS) (HBP), 2017 U.S. Dist. LEXIS 31742 (S.D.N.Y. Mar.
    6, 2017) (dismissing plaintiffs' state constitutional claims as superfluous
    where they were also brought under § 1983) ..........................................25

Ryan v. Carroll,
    67 F. Supp. 2d 356 (S.D.N.Y. 1999) ......................................................16

Sadallah v. City of Utica,
    383 F.3d 34 (2004) ..................................................................................13

Salvano v. Merrill Lynch Pierce Fenner & Smith,
    85 N.Y.2d 173 (1995)..............................................................................28

Schacht v. New York,
    39 N.Y.2d 28 (1976)..........................................................................26, 27

Score, Inc. v. Cap Cities/ABC, Inc.,
    724 F. Supp. 194 (S.D.N.Y. 1989) ............................................................4

Segal v. City of New York,
    459 F.3d 207 (2006) ..........................................................................13, 16

Sessom v. New York State Div. of Parole,
    Docket No. 17-CV-6634 (CM), 2017 U.S. Dist. LEXIS 177988 (S.D.N.Y.
    2017)........................................................................................................14

Short v. Bd. of Managers of Nassau Cty. Med. Ctr.,
    57 N.Y.2d 399 (1982)..............................................................................22

Skandia America Reinsurance Corp. v. Schenck,
    441 F. Supp. 715 (S.D.N.Y. 1977) ....................................................30, 31

Staskowski v. Cty. of Nassau,
    410 F. App'x 420 (2d Cir. 2011) ............................................................16

Matter of TJS of N.Y., Inc. v. New York State Dep't of Taxation & Fin.,
    89 A.D.3d 239 (3d Dep't 2011)...................................................................22

Tom Doherty Assocs. v. Saban Entm't, Inc.,
    60 F.3d 27 (2d Cir. N.Y. 1995) ....................................................................5

Tough Traveler, Ltd., v. Outbound Prods.,
    60 F.3d 964 (2d Cir. 1995) .........................................................................12

Town of Castle Rock v. Gonzales,
    545 U.S. 748 (2005) ...................................................................................12

Trump v. Deutsche Bank AG,
    943 F.3d 627 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct.
    2019 (2020) ..........................................................................................31, 32

Vega v. Lantz,
    596 F.3d 77 (2d Cir. 2010) .........................................................................13

Velez v. Levy,
    401 F.3d 75 (2d Cir. 2005) .........................................................................13

Washington Post Co. v. New York State Ins. Dept.,
    61 N.Y.2d 557 (1984).................................................................................25

Wiese v. Kelley,
    No. 08-CV-6348 (CS), 2009 U.S. Dist. LEXIS 82307 (S.D.N.Y. 2009)..............................14

Winter v. Natural Res. Def. Council, Inc.,
    555 U.S. 7 (2008) .....................................................................................4, 5

Wolk v. Kodak Imaging Network, Inc.,
    2011 U.S. Dist. LEXIS 27541 (S.D.N.Y. 2011) ..........................................11

Zahra v. Town of Southfield,
    48 F.3d 674 (2d Cir. 1995) .........................................................................13

**Statutes**

CPLR 7502 ...................................................................................................28

CPLR Sec. 7801 ...........................................................................................18

Civil Rights Law § 50-a ........................................................................passim

Fed. R. Civ. P. 30 ........................................................................................23

Freedom Of Information Act ........................................................................21

Freedom Of Information Law .................................................................................*passim*

New York City Administrative Code Section 14-115 ....................................................... 12

New York City Administrative Code Section 15-113 ....................................................... 12

N.Y. Pub. Off. Law § 84 .................................................................................................. 21

N.Y. Pub. Off. Law § 87 ..................................................................................... 16, 21, 24

N.Y. Pub. Off. Law § 89 .................................................................................................. 19

N.Y. Pub. Off. L. § 89(2-b) ................................................................................................ 3

N.Y. Pub. Off. L. § 89(2-c) ................................................................................................ 3

State Civil Service Law Section 75 ................................................................................... 12

**Other Authorities**

U.S. Const., Fourteenth Amendment ................................................................... 12, 15, 16

Report on Legislation by the Civil Rights Committee, https://perma.cc/95C7-
    292N; The Report of the Independent Panel on the Disciplinary System of the
    New York City Police Department (Jan. 25, 2019), https://perma.cc/EX3U-
    G8DT ............................................................................................................................. 3

Sponsor Memo, S8496, June 6, 2020 ............................................................................. 20

## PRELIMINARY STATEMENT

On June 12, 2020, Governor Andrew Cuomo signed the statute repealing Civil Rights Law § 50-a ("§50-a"), making law enforcement disciplinary records open to public inspection, under New York Freedom of Information Laws ("FOIL").  On June 17, 2020, in an effort of great transparency, Mayor de Blasio announced that the City of New York would soon be publishing its law enforcement disciplinary records online.  Over a month after the repeal went into effect, on July 14, 2020, plaintiffs, unions representing various New York City law enforcement personnel, brought this action, pursuant to 42 U.S.C. § 1983, the New York State Constitution, and CPLR Articles 75 and 78, and alleging breach of contract.  Specifically, plaintiffs allege that defendants' determination to disclose law enforcement disciplinary records, including unsubstantiated, unfounded, exonerated, and non-final charges of misconduct (hereinafter "the disputed records" or "Unsubstantiated and Non-Final Allegations"), violated their members' constitutional rights to due process and equal protection, was arbitrary and capricious, and violated certain provisions of applicable collective bargaining agreements ("CBA") and their members' prior settlement agreements.

Plaintiffs seek an order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, preventing defendants from releasing information, including allegations that are  Unsubstantiated and Non-Final Allegations brought against uniformed members of New York City's Fire Department (FDNY), Police Department (NYPD) and Department of Correction (DOC), and confidential settlement agreements.  See Plaintiffs' State Court Memo. of Law ("Pl. Memo.") at Dkt. No. 10. Ex. 12, p. 9.  Plaintiffs seek this drastic remedy after failing to convince the Legislature through years of vociferous lobbying to preserve § 50-a or otherwise exempt the

1

disputed records from disclosure.  Plaintiffs' last-ditch effort to circumvent the Legislature – and the will of the people – should not be countenanced.

Plaintiffs cannot meet the requirements for a preliminary injunction, as they cannot establish that any potential alleged harm, absent the requested relief, is irreparable or likely, nor can they demonstrate that they are likely to succeed on the merits of their claims, or that the balance of equities tips in their favor, or that the preliminary injunction would be in the public interest. Plaintiffs' motion must, therefore, be denied.

## STATEMENT OF FACTS

For a complete statement of facts, defendants respectfully refer the Court to the Declaration of Kami Z. Barker, dated August 14, 2020, ("Barker Decl.") and the annexed exhibits, to the Declaration of Kerry Jamieson, dated August 14, 2020 ("Jamieson Decl."), and to the Declaration of Jonathan Darche, dated August 14, 2020 ("Darche Decl.") and the annexed exhibits.

## CIVIL RIGHTS LAW §50-A AND ITS REPEAL

In 1976, the New York State Legislature (hereinafter "the Legislature") passed § 50-a, which made law enforcement disciplinary records confidential and unavailable for public inspection, even in response to a request under New York's Freedom of Information Law (FOIL). See Matter of NY Civ. Liberties Union v. N.Y. City Police Dep't, 32 N.Y.3d 556, 570 (2018). Following the death of Eric Garner at the hands of NYPD officer Daniel Pantaleo in 2014, § 50-a became a major topic of public discussion.  See Barker Decl. at Exhibit "A."  For years, policing reform advocates and law enforcement unions lobbied the Legislature for or against a repeal or reform, resulting in yearly proposed bills and two public hearings in the State Senate, as calls for

action came from various stakeholders from all over the state.[1]  See Barker Decl. at ¶¶ 16-35.  Yet, no legislative action ever materialized until this year.  See id. at ¶¶ 36-39.

The stalemate in Albany finally ended after the tragic death of George Floyd at the hands of a Minneapolis police officer in late May 2020.  See id.  The event galvanized historic levels of public engagement, protests, and calls for change across the country, including in New York, where thousands of citizens marched for criminal justice reform.  See id. at ¶ 37.  On June 9, 2020, the New York State Assembly and Senate passed S8496,[2] a bill to repeal § 50-a, effective immediately, and on June 12, 2020, Governor Cuomo signed the repeal into law.  See id. at ¶ 53.

The enacted bill repealed § 50-a in its entirety, eliminating the statutory requirement of confidentiality afforded to law enforcement disciplinary records, with one caveat:  it added into FOIL a provision barring disclosure of specific sensitive information in law enforcement disciplinary records, such as home addresses and phone numbers, social security and employee identification numbers, and medical, mental health, and substance abuse histories.  See S8496 § 4 (adding N.Y. Pub. Off. L. § 89(2-b)).  In addition, the enacted bill specified that law enforcement agencies "may," at their discretion, redact minor "technical infractions" before disclosing disciplinary records.  See S8496 § 4 (adding N.Y. Pub. Off. L. § 89(2-c)).

The enacted bill neither required confidentiality nor directed any other form of special treatment to apply to unsubstantiated, unfounded, or non-final disciplinary records.  That was no oversight either.  Through testimony before the Legislature and a formal Memorandum in Opposition, plaintiffs, as part of a broader coalition of law enforcement unions, objected to the proposed repeal multiple times on the grounds that it did not want unsubstantiated or unfounded

[1] New York City Bar Report on Legislation by the Civil Rights Committee, https://perma.cc/95C7-292N; The Report of the Independent Panel on the Disciplinary System of the New York City Police Department (Jan. 25, 2019), https://perma.cc/EX3U-G8DT.

[2] Available at https://perma.cc/L9Q2-4H9H.

allegations publicly disclosed.  See Barker Decl. at ¶¶ 20, 23-24, 45.  On the day of the bill's passage, the issue was debated at length on the State Assembly floor, and multiple Assembly Members objected on these grounds, requesting to carve out an exception in the repeal for unsubstantiated allegations.  See Barker Decl. at ¶¶ 46-50, and Exhibit M thereto (collecting relevant excerpts of the transcript of the Assembly debate).  Nevertheless, over these objections, without any carveout whatsoever for Unsubstantiated and Non-Final allegations, the bill passed with an overwhelming majority in both houses of the Legislature and is now the law of this state.

## ARGUMENT

### POINT I

### LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

In order to justify a preliminary injunction, plaintiffs must demonstrate: 1) irreparable harm absent injunctive relief; 2) a likelihood of success on the merits; 3) the balance of equities tips decidedly in the plaintiffs' favor; and 4) that the public's interest weighs in favor of granting an injunction.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction."  Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018)(quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).  To show of irreparable harm, plaintiff must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989).

Plaintiffs identify five alleged "irreparable harms" that flow from defendants' lawful disclosure of Unsubstantiated and Non-Final Allegations and of disciplinary records from matters that resulted in Settlement Agreements: (1) reputational harm to certain unidentified union

4

members; (2) safety risks to unidentified union members; (3) loss of privacy; (4) breach of collective bargaining agreements; and (5) breach of individual members' settlement agreements. See id. at 6-9.

### A. Plaintiffs Cannot Establish the Likelihood of Reputational Harm

Plaintiffs' claim that disclosure of the disputed records may lead to some purported irreparable injury to their members' reputational harm is the exact type of speculative harm that Courts have found insufficient to warrant the issuance of a preliminary injunction. See Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 29 (2d Cir. N.Y. 1995) ("Irreparable harm is an injury that is not remote or speculative but actual and imminent."); Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(injuries to one's reputation are also generally not considered to be "irreparable" for purposes of deciding an injunction motion)(citing Stewart v. United States I.N.S., 762 F.2d 193, 199-200 (2d Cir. 1985)(reputational injury not sufficient to justify injunctive relief)). Similarly, "conclusory statements of loss of reputation will not justify an irreparable harm finding." Alzheimer's Found. of Am., Inc. v. Alzheimers Disease & Related Disorders Ass'n, Inc., No. 10 Civ. 3314, 2015 U.S. Dist. LEXIS 84172, at *11 (S.D.N.Y. June 29, 2015). As such, speculative and unidentified reputational harm does not, as a matter of law, suffice to support a motion for a preliminary injunction.

Moreover, plaintiffs are required to demonstrate that irreparable injury is *likely* in the absence of an injunction. Los Angeles v. Lyons, 461 U.S. 95, 103 (1983)(emphasis added); Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 441 (1974); O'Shea v. Littleton, 414 U.S. 488, 502 (1974). Indeed, "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Courts'] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008)(citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)(per curiam).

5

**B.  Plaintiffs Cannot Establish Harm to Their Members' Safety**

Plaintiffs next argue that disclosure of Unsubstantiated and Non-Final Allegations and Settlement Agreements would jeopardize the safety of Firefighters, Correction Officers and Police Officers as well as the safety of their families.  To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent."  Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted); see also Graham v. Decker, No. 20 Civ. 2423, 2020 U.S. Dist. LEXIS 64447 at *7 (S.D.N.Y. Apr. 13, 2020)(for a preliminary injunction to be issued on the basis of safety, the "risk to life, health or safety" must be "imminent.")  Plaintiffs cannot meet this burden.

Plaintiffs conveniently ignore that disciplinary records for Firefighters and Correction Officers have been public on the New York City Office of Administrative Trial and Hearing ("OATH") website since 2004.  See Barker Decl. at ¶ 9.  Despite these disciplinary records being public for 17 years, plaintiffs provide no factual support showing that the publication of these disciplinary records caused their members any of the safety risks they hypothesize about.

Likewise, for decades, until 2016, the NYPD posted officer disciplinary outcomes outside the media room for members of the press to examine and report.  Matter of Luongo v. Records Access Appeals Officer, 2017 NY Slip Op 31142(U), at 2 (Sup. Ct. N.Y. Cty. May 24, 2017)("The NYPD posted ['Personnel Orders'] publicly for approximately forty years… The Orders contain summaries of employment updates for both officers and civilian employees of the NYPD, including transfers, promotions, retirements, and disciplinary dispositions.") aff'd Matter of Luongo v. Records Access Appeals Officer, 168 A.D.3d 504 (App. Div. 1st Dept. 2019).  Yet, no harm has ever been traced to those postings.

Further, in 2018, the publication, Buzzfeed News, uploaded 1,800 NYPD officers' disciplinary dispositions – which were anonymously leaked by an unknown whistleblower – to a

6

publicly-available online database.  <u>See</u> Barker Decl. at ¶ 5.  In 2018, the Legal Aid Society created

an online database called Cop Accountability Project statistics or "CAPstat," which includes data

from lawsuits against NYPD officers over several years, as well as data on the leaked disciplinary

records that came from BuzzFeed News.  <u>See</u> Barker Decl. at ¶ 6.  Yet, in all that time with the

publication of all those records, plaintiffs fail to identify a single incident where any of their

members were threatened or at risk as the result of the publication.

On July 26, 2020, ProPublica published the CCRB officer histories, including

unsubstantiated allegations, of over 4,000 NYPD officers on a searchable, public, online database.

<u>See</u> Barker Decl. at ¶ 57.  Again, plaintiffs have not mentioned a single safety threat that came to

their members as a result.

Plaintiffs' Verified Complaint ("Complaint") provides no facts to support

plaintiffs' purely speculative assertions that "[t]he widely promoted release prizes maximum

transparency above all other interests, including the very real risk that officers called out by name

will be targeted, harassed, threatened, harmed, or attacked."  <u>See</u> p. 10 of Pl. Memo. Notably,

plaintiffs fail to allege that any of their members have been in danger *as the result of* the publication

of their disciplinary records.  They only allege that "[o]fficers accused of misconduct have been

subject to threats and harassment and reprisals in recent years."  <u>See</u> ¶ 75 of Complaint.  Moreover,

the examples they provide neither involve officers who have been accused of misconduct nor

officers whose disciplinary records have been published.[3]  Defendants' history of posting

disciplinary results, as well as the databases posted by Legal Aid Society, BuzzFeed and, more

recently, ProPublica without impacting the safety of police, fire or correction officers demonstrates

that there is simply no basis for plaintiffs' speculation.

### C.  Plaintiffs Cannot Establish Any Irreparable Loss of Privacy

---

[3] Additionally, defendants have made clear that officers' personally identifying information, other than the officer's name, will not be provided in the documents it publishes.  <u>See</u> Jamieson Decl. at ¶ 11.

Plaintiffs next argue that disclosure of Unsubstantiated and Non-Final Allegations and disciplinary information from matters with Settlement Agreements results in irreparable harm in the form of a "loss of privacy" regarding confidential information.  Pl. Memo. at 10.  In support, plaintiffs simply state that confidential information should be kept confidential.  See id. at 6-7.  To support this circular argument, plaintiffs cite to a 1978 case from the Third Department which affirmed the grant of injunctive relief to plaintiff public assistance recipients, which enjoined defendant town supervisor from reading the names of the public assistance recipients at a public meeting.  See id. at 6-7 citing Doe v. Greco, 62 A.D.2d 498 (App. Div. 3rd Dept. 1978).  However, in Doe, "the plain intent of the statute" there was to preclude the public disclosure of confidential information, namely identities of public assistance recipients.  Id at 500-501.

In contrast, here, the "plain intent" of the repeal of § 50-a was to eliminate the confidentiality of law enforcement disciplinary records.  As such, plaintiffs seek to shield the very information that has been deemed non-confidential.  Along these same lines, plaintiffs are correct in arguing that once the disputed records are made public, nothing can be done "to unring that bell." Pl. Memo. at 1-2.  However, it seems that the bell plaintiffs truly wish this Court to unring is the repeal of § 50-a.  That is simply not possible in this forum.

### D.  Plaintiffs Cannot Establish Any Harm to Their Collectively Bargained-For Rights

Plaintiffs next argue that the disclosure at issue would constitute an irreparable harm because it would "destroy valuable collectively bargained-for rights."  See Pl. Memo. at 7. Plaintiffs contend that they have the contractual right to have exonerated and/or unfounded "investigative reports" removed from their personnel files.  Id. at 8.  As an initial matter, these unspecified "investigative reports" are not – by plaintiffs' own definition – at issue in this litigation.  Whether or not they can be removed from a personnel file is of no issue to this motion. Moreover, the CCRB is not a party to any of plaintiffs' CBAs, and its records are not subject to

8

plaintiffs' collectively bargained-for rights.  Therefore, these bargained-for rights do not apply to CCRB records, the very crux of plaintiffs' concerns.

Nevertheless, plaintiffs misstate the applicable CBA provisions for many of plaintiffs' CBAs.  For example, in the Sergeant's Benevolent Association ("SBA") contract, a member may only seek expungement for "Schedule A" violations and only after two years from the date of the disposition.  See Barker Decl. at Exhibit "N."  Plaintiffs COBA and CEA have similar provisions.  DEA's CBA is silent on the matter.  See id.  Moreover, even for those plaintiffs' CBAs that do grant the right to expungement of certain records from an officer's personnel file, that right does not create an entitlement to remove the actual complaint or allegation from the defendants' own records in toto, much less from the public domain.

Indeed, disclosure of Unsubstantiated and Non-Final Allegations and settlement agreements has absolutely no bearing on what is contained in a Firefighter, Correction Officer or Police Officer's personnel file.  The FDNY, DOC and NYPD can certainly comply with contractual obligations to remove certain records from personnel files and, simultaneously, make the disclosures at issue in this case.  Expungement from personnel records may restrict the NYPD, FDNY and DOC from relying on the expunged disciplinary records when evaluating, promoting, transferring or otherwise making personnel decisions about an officer.  Disclosing the records in response to FOIL requests or on publicly available databases enhances transparency and public accountability.  These two goals are not mutually exclusive.

Next, plaintiffs contend that the applicable CBAs have provisions that allow employees to supposedly "seek expungement of records of disciplinary cases where 'disposition of the charge at trial or on review or appeal therefrom is other than 'guilty.'"  Pl. Memo. at 8.  Plaintiffs argue that it is "impossible" for officers to exercise this contractual right if these records are publicly released.  Id.  First, plaintiffs again misstate the applicable provisions of some of the

CBAs, which provide that a member may only seek this relief in connection with "Schedule A" violations two years after the date of the disposition.  Second, again, the public disclosure of documents related to Unsubstantiated and Non-Final Allegations and Settlement Agreements has absolutely no bearing on a member exercising this contractual benefit.

Lastly, plaintiffs argue that the "City's release of the records would render meaningless the officers' contractual right to arbitrate grievances that have been or are about to be filed under the CBAs to prevent the release of the records."  Pl. Memo. at 9.  This argument rings particularly hollow given that plaintiffs PBA, LEA, and CEA are the only parties who have demanded arbitration and only did so on August 3 and 4, 2020 – two weeks after seeking the TRO in this case.  See Barker Decl. at Exhibit "O."  The City should not have to delay the lawful disclosure of the disputed records simply because – at some point in the future – the plaintiffs may choose to file a grievance.  As such, plaintiffs have not shown irreparable harm.

### E.  Plaintiffs Cannot Establish Violations of Past Settlement Agreements

Plaintiffs' final argument is that defendants' disclosure of the disputed records would violate their members' settlement agreements over charges of misconduct.  See ¶¶ 7, 65 Complaint at Dkt. Nos. 1, 5.  In their Complaint, plaintiffs allege that, had they known that their plea agreements might become public, they might have defended themselves against disciplinary charges more vigorously.  See id. at ¶ 62.  First, this argument is inapplicable to CCRB records, due to the CCRB's critical independence from the NYPD.  Therefore, officer settlements with the NYPD, the DOC, or the FDNY can neither bind the CCRB to their terms or conditions nor have any bearing on its investigations or findings thereof.  Moreover, as explained more fully below, in the breach of contract discussion, plaintiffs lack standing to even assert these claims, and contracting parties cannot limit the state's sovereign power to legislate. Thus, plaintiffs' due process claims fail.  Thus, plaintiffs are unable to demonstrate any irreparable harm.

### F.  Plaintiffs' Delay Demonstrates the Lack of Irreparable Harm

Plaintiffs' delay in moving for a preliminary injunction weighs against a finding of irreparable harm.  See Appalseed Prods., Inc. v. Medianet Digital, Inc., 2012 U.S. Dist. LEXIS 93946, 35 (S.D.N.Y. 2012).  Plaintiffs claim that they were somehow stunned when, on June 17, 2020, Mayor de Blasio announced defendants' intent to release all disciplinary records, including unsubstantiated and non-final charges of misconduct, as a result of the repeal of § 50-a.  See ¶ 36 of Complaint at Dkt. Nos. 1, 5.  However, this claim does not comport with the public record.

As early as October 17, 2019, plaintiffs vociferously lobbied the New York State General Assembly against permitting, *inter alia*, the release of unsubstantiated and non-final allegations through the repeal of § 50-a and testified regarding their view before the Legislature. See Barker Decl. at ¶¶ 18-25; 35; 40-45.  On June 9, 2020, when the Legislature began debating the repeal, plaintiffs, along with several other law enforcement unions in New York State, submitted a memorandum in opposition to the Legislature.  See Barker Decl. at Exhibit "L."  They argued that disciplinary complaints, which "have not been fully investigated or substantiated are not reliable or fair indicators of an officer's conduct…and release of such records [] would expose the accused officer of serious safety concerns as well as unavoidable and irreparable harm to reputation and livelihood."  See id.  They made the very same arguments when they testified in front of the State Senate eight months earlier on October 17 and 24, 2019.  See Barker Decl. at ¶¶ 18-25; 35; 40-45.  Nevertheless, the legislature expressly rejected these arguments and repealed § 50-a on June 12, 2020.  Yet, once Governor Cuomo signed the repeal on June 12, 2020, plaintiffs delayed commencing this action for *over a month* – and  are making the very same arguments that they made before the State Legislature.

Plaintiffs' delay weighs against a finding of irreparable harm.  New Look Party, Ltd. v. Louise Paris, Ltd., 2012 U.S. Dist. LEXIS 9539 at *10 (S.D.N.Y. 2012)(quoting Richard Feiner & Co. v. Turner Entm't Co., 98 F.3d 33, 34 (2d Cir. 1996); Wolk v. Kodak Imaging

Network, Inc., 2011 U.S. Dist. LEXIS 27541, 22-23 (S.D.N.Y. 2011)("Plaintiff's delay in bringing her motion for a preliminary injunction belies her claim of irreparable harm.").  Indeed, the failure to act sooner undercuts the very sense of urgency required in a motion for preliminary relief and, in fact, suggests the lack of irreparable injury.  Tough Traveler, Ltd., v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995).  Therefore, any harm plaintiffs' members might suffer as a result of the publication of these records is due to plaintiffs' actions – or rather inactions – and plaintiffs' alone.  Accordingly, plaintiffs cannot meet the requirement of showing an irreparable harm and therefore their motion a preliminary injunction must be denied.

## POINT II

### PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

**A.     Plaintiffs Are Unlikely to Succeed on their Fourteenth Amendment, Federal Due Process and Equal Protection Claims**

To make a Fourteenth Amendment claim, plaintiffs must allege a personal injury, which is traceable to defendants' allegedly unlawful conduct and likely to be redressed by the requested relief.  See Allen v. Wright, 468 U.S. 737, 751 (1984). Plaintiffs have not and cannot demonstrate that they would succeed on these claims.  Indeed, these claims are deficient on their face and will certainly be dismissed by this Court on a Rule 12 motion.

#### 1.  Due Process

The Fourteenth Amendment's guarantee of procedural due process applies only when a constitutionally protected property or liberty interest is at stake.  Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  Therefore, when analyzing procedural due process claims, the threshold issue is whether the plaintiff possessed a valid property[4] or liberty interest.  See

---

[4] Plaintiffs do not claim, nor can they, that their members are at risk of losing a property interest without due process under the circumstances presented in this case.  In any event, for the permanent employees who possess a property interest in their employment, any process that is due to protect such employees is provided through the disciplinary hearing process, set forth in Section 14-115 of the New York City Administrative Code (for the uniformed ranks of

Oneida Indian Nation of N.Y. v. Madison Cnty., 665 F.3d 408, 427-28 (2d Cir. 2011); see also Zahra v. Town of Southfield, 48 F.3d 674, 689 (2d Cir. 1995).  The Due Process Clause "does not itself create" protectable property interests; rather property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (quotations omitted).  To demonstrate such an interest, plaintiffs must show more than a mere abstract need or desire, but rather a legitimate entitlement to said interest.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  Since the repeal of § 50-a, plaintiffs' members' disciplinary records are no longer categorically shielded from disclosure, and, thus, plaintiffs' members lack any such entitlement.

Plaintiffs allege reputational harm as the basis of an alleged deprivation of a liberty interest.  See ¶ 6 of Complaint, Dkt. Nos. 1, 5.  But the Supreme Court has made clear that alleged damage to reputation, without more, is not a deprivation of any liberty interest protected by the Due Process Clause.  Paul v Davis, 424 US 693, 701 & n.3 (1976).  To prevail, therefore, plaintiffs must establish the three elements of a "stigma-plus" claim: (1) that defendants made stigmatizing and defamatory statements about their members, which call into question their good names, reputations, honor or integrity; (2) that the stigmatizing statements were made public, and (3) that the stigmatizing records were published concurrently with, or in close proximity to, the loss of employment or some other tangible employment action.  See Segal v. City of New York, 459 F.3d 207, 212 (2006); see also Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010); Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005); Sadallah v. City of Utica, 383 F.3d 34, 38 (2004).  Plaintiffs cannot demonstrate, nor have they pled, all of these elements.

---

the NYPD), Section 15-113 of the New York City Administrative Code (for Firefighters and Fire Officers) and New York State Civil Service Law Section 75 for all other members.  See Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001).

With respect to the first and second element, the complaint only alleges that the disputed records *may* be false or misleading and they cannot plead, with any certainty, that the statements are, in fact, false. See Complaint, ¶¶ 60, 69. This broad and speculative statement is insufficient to establish a due process claim. It also makes clear that the records will likely have information (such as the agency's classification of the complaint or charges as unsubstantiated or exonerated) that would help contextualize any description of the complaint or charges provided. Accurate descriptions of allegations and personnel actions or decisions that are made public are not actionable "even when a reader might infer something unfavorable about the employee" from those allegations. Wiese v. Kelley, No. 08-CV-6348 (CS), 2009 U.S. Dist. LEXIS 82307, at *13-15 (S.D.N.Y. 2009). These vague allegations are insufficient to state a due process claim.

Perhaps more importantly, even if plaintiffs could demonstrate the dissemination of stigmatizing statements, plaintiffs cannot demonstrate the loss of employment or some other tangible employment action. At worst, plaintiffs argue the existence of a remote possibility that publishing this information could interfere with their members' future job prospects. The argument that a liberty interest arises when the government makes public statements that potentially interfere with future job prospects is an argument that has been routinely and consistently rejected by the Second Circuit as plainly insufficient to support a "stigma-plus" claim. See Boss v. Kelly, 306 F. App'x 649 (2d Cir. 2009) (summary order) ("A negative impact on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation, is insufficient" to implicate a due process liberty interest.) (citations and internal quotations omitted); Valmonte, 18 F.3d at 1001; Sessom v. New York State Div. of Parole, Docket No. 17-CV-6634 (CM), 2017 U.S. Dist. LEXIS 177988 at *4-5 (S.D.N.Y. 2017)("A negative effect of a bad reputation on one's career prospects in not enough to state a claim.")(quoting Vega, 596 F.3d at 81); Adams v. N.Y. State Educ. Dep't, 732 F. Supp. 2d 420,

449 (S.D.N.Y. 2010) ("Statement[s] that an employee poorly performed [his] duties or acted in an improper manner, or that describe behavior or actions that are within the employee's power to correct, do not generally qualify as stigma for constitutional purposes.") (internal quotation marks and citations omitted).

Similarly, plaintiff's unsupported and speculative assertion that being labeled a bad actor could impact their members' safety is also the sort of "typical consequence of a bad reputation" that the Second Circuit has rejected. Boss, 306 F.App'x 649 (rejecting liberty interest claim arising from removal of Police Officer's firearm). Plaintiffs not only fail to establish any element of their Fourteenth Amendment liberty interest due process claims, their reliance on theories consistently rejected by the Second Circuit makes such claims borderline frivolous.

Plaintiffs also allege that the effect of the repeal on existing settlement agreements has an impermissible retroactive effect on the liberty and property interests of the officers. Id.; Pl. Memo., p. 17-18. Plaintiffs allege that a retroactive application of the repeal only passes due process muster when supported by "a legitimate legislative purpose furthered by rational means." Pl. Memo., p. 18. Plaintiffs argue that defendants' release of the disputed records does not pass this test because plaintiffs relied on the assurance of §50-a confidentiality when entering into these settlements and, had they known that the records would be released, they would have vigorously defended the allegations.

But a legislative change that authorizes disclosure of existing as well as newly created records is not therefore "retroactive. And in any case, there are multiple legitimate legislative purposes for such a change. The plainest is to afford greater transparency about the conduct of public officers who wield extraordinary authority over residents and others, as well as about the workings of the disciplinary systems for such officers.

Even assuming that plaintiffs could establish a liberty interest with respect to the disclosure under FOIL, they would still be unable to succeed on their due process claim because they would be unable to establish that the City is failing to provide their members with all the process that is due.  The Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997).  It is clear that the City provides a full panoply of remedies, such as pre-deprivation disciplinary hearings for permanent employees, the opportunity to respond to allegations throughout the course of an investigation, and the availability of Article 78 review.  That is all the process that is due.  See Segal, 459 F.3d at 216-217; Locurto, 264 F.3d at 173-174; Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Henderson v. New York, 423 F. Supp. 2d 129,145 (S.D.N.Y. 2006); Koehler v. New York City, Docket No. 04 Civ. 6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005); Ryan v. Carroll, 67 F. Supp. 2d 356, 361 (S.D.N.Y. 1999).  Accordingly, even if plaintiffs were able to establish a constitutionally protected liberty interest, which they cannot, their due process claims fail because the City indisputably provides all the process that is due.

### 2.  Equal Protection

For their Fourteenth Amendment equal protection claim, plaintiffs allege that they are treated differently than similarly situated employees when applying the privacy and safety exemptions provided in Pub. Off. Law § 87.  See Complaint ¶ 11 Dkt. Nos. 1, 5.  This sort of equal protection claim is not only without merit but has specifically been rejected by the Supreme Court.  In the context of constitutional claims arising from public employment, plaintiffs are

required to demonstrate that any alleged treatment that is different from other similarly situated employees was based on membership in a specific class that has been granted legal protection. See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 605 (2008); see also Analytical Diagnostic Lab, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) ("The Supreme Court's decision in Engquist ... eliminated class-of-one claims for government employees."); Staskowski v. Cty. of Nassau, 410 F. App'x 420 (2d Cir. 2011) (summary order); Conyers v. Rossides, 558 F.3d 137, 151–52 (2d Cir. 2009); Massi v. Flynn, 353 Fed. Appx. 658, 660 (2d Cir. 2009) (summary order); Porr v. Daman, 299 Fed. Appx. 84, 86 (2d Cir. 2008).

In reading this requirement into the equal protection clause, the Supreme Court specifically ruled out equal protection claims challenging different applications of discretion to different employees because permitting such would serve to constitutionalize all decisions by a public employer concerning its employees:

> [If] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim.

Engquist, 553 U.S. 607-608.  Plaintiffs herein are attempting to do *precisely* what the Supreme Court said they cannot.  They are attempting to constitutionalize the discretionary applications of the FOIL laws with respect to the City's employees.  Because plaintiffs do "not allege [that they were] discriminated against on the basis of race, sex, national origin, or other protected classification," their equal protection claims must be dismissed.  Conyers, 558 F.3d, 152.

Even if plaintiffs could proceed with an equal protection claim in the absence of identifying a legally protected class, their claim would nonetheless fail because, as set forth in Point III(B)(i) *infra*, the City has articulated a rational and non-discriminatory basis for treating

17

plaintiffs differently than other similarly-situated City employees.  Moreover, it would be improper to compare plaintiffs' members to City employees who do not work in law enforcement due to the obvious and significant differences between those various roles.  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)(to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.").[5]  Accordingly, plaintiffs equal protections claims cannot succeed.

**B.     Plaintiffs Are Unlikely to Succeed on the Merits of Any of Their State Law Claims**

### (i)  Article 78

Animating their Article 78 claim, plaintiffs allege that the "release of [] Unsubstantiated and Non-Final Allegations would…constitute errors of law and be arbitrary and capricious agency action as an unwarranted and irreversible invasion of the right to privacy."  See ¶ 8 of Complaint at Dkt. Nos. 1, 5.  That is patently false.  Notably, at the outset, all CCRB determinations, including unsubstantiated findings, are final agency determinations and, therefore, do not fall within plaintiffs' objections to "non-final allegations."  See Darche Decl. at ¶ 24.[6]  That aside, however, plaintiffs fully fail to state a cause of action.

It is well settled that "[i]n reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious."  Matter of Gilman v. New York State Division of Housing and Community Renewal, 99 NY2d 144, 149 (2002).  Tellingly, a court may not substitute its judgment

---

[5] Indeed, in collective bargaining negotiations, the plaintiffs herein frequently argue that they are entitled to more favorable terms and conditions than their civilian counterparts due to the very different nature of their roles.  It is the height of hypocrisy to now claim that they should be treated identically to their civilian counterparts.

[6] In contrast, a non-final agency determination is not reviewable in court.  See Art. 78, CPLR Sec. 7801.  Given that Plaintiff PBA itself has challenged CCRB determinations, through Article 78, plaintiffs plainly recognize the finality of the CCRB's determinations, which include findings of, inter alia, an "unsubstantiated" complaint of misconduct.  See e.g. Patrick Lynch, et. al. v. The New York City Civilian Complaint Review Board, Index No. 152235/2018 (Sup. Ct. N.Y. Cty. 2018); Matter of Daniel Pantaleo v. New York City Civilian Complaint Review Board, Index No. 100641/19 (Sup. Ct. N.Y. Cty. 2019), decisions of which are annexed to the Barker Decl. as Exhibit "P."

for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion." In the Matter of Pell v. Bd. of Educ., 34 NY2d 222, 230-231 (1974).  Further, "courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise." Peckham v. Calogero, 12 NY3d 424, 431 (2009).

The centerpiece of plaintiffs' claim under Article 78 is an assertion that "[i]t is an error of law and arbitrary and capricious for the [Defendants] to change decades of agency practice on the protections afforded Unsubstantiated and Non-Final Allegations under the pretext of the repeal of § 50-a." See ¶ 8 of Complaint.  Plaintiffs' sweeping contention lacks support.  With the repeal of § 50-a, there is no longer a categorical right to shield law enforcement disciplinary records – including unsubstantiated and non-final allegations.

Along with the repeal, the Legislature also amended Pub. Off. Law § 89 to require the redaction of certain information in law enforcement disciplinary histories, including, an officer's medical history, home addresses, personal telephone numbers, personal e-mail addresses, and mental health services, prior to disclosure.  Pub. Off. Law § 89 (2-b).  Agencies may also redact records pertaining to technical infractions, such as a minor violation of the Patrol Guide concerning officer appearance, for example.  Pub. Off. Law § 89 (2-b).  Further, the Legislature considered and *rejected* plaintiffs' arguments for exempting unsubstantiated, unfounded, and exonerated allegations from disclosure.  See Barker Decl. ¶¶ 20, 23-24, 46-50, and the June 9, 2020 transcript of the General Assembly Debate, annexed to the Barker Decl. as Exhibit "M."  In fact, the Legislature declined to exempt, limit, or even define unsubstantiated or non-final complaints of misconduct to ensure full transparency.  See id.

Thus, the public disclosure of disciplinary records – a disclosure that plaintiffs seek to impede – fully accords with the legislative purpose of the repeal of § 50-a and the concurrent

amendment of Pub. Off. Law § 89.   That galvanizing legislative purpose is captured in the

sponsor's memorandum that accompanied the senate bill, repealing § 50-a:

> FOIL already provides that agencies may redact or
> withhold information whose disclosure would
> constitute an unwarranted invasion of privacy.
> Recent changes to the Civil Service Law have
> created additional, non-discretionary protections
> against the release of certain sensitive information
> such as contact information. Furthermore, this bill
> adds additional safeguards in the FOIL statute.
> Finally, courts have the ability to protect against
> improper cross-examination and determine if police
> records are admissible in a trial, without the denial of
> public access to information regarding police activity
> created by § 50-a. The broad prohibition on
> disclosure created by § 50-a is therefore unnecessary
> and can be repealed as contrary to public policy.
>
> Repeal of § 50-a will help the public regain trust that
> law enforcement officers and agencies may be held
> accountable for misconduct.

Sponsor Memo, S8496, June 6, 2020, Barker Decl. at ¶ 39.

Therefore, the Legislature's failure to exclude from public release unsubstantiated

or non-final allegations in law enforcement disciplinary records evidences a clear intention that

they may be disclosed.  Matter of Collins v Dukes Plumbing & Sewer Serv., Inc., 75 AD3d 697,

699-700 (3d Dep't 2010); see also Bright Homes v. Wright, 8 NY2d 157, 162, 168 (1960)("Courts

are not supposed to legislate under the guise of interpretation, and in the long run it is better to

adhere closely to this principle and leave it to the Legislature to correct evils if any exist."); People

v. Olah, 300 NY 96, 102 (1949)("A statute must be construed and applied as it is written by the

Legislature, not as some judges may believe it should have been written."); Matter of Kittredge v.

Planning Bd. of Town of Liberty, 57 AD3d 1336, 1339 (2008) ("In construing a statute, a court

must attempt to harmonize all its provisions and to give meaning to all its parts, considered as a

whole, in accord with legislative intent. Such intent and meaning is best determined from the plain

language of the statutory text.").  Accordingly, the statutory language repealing § 50-a, and the laws of FOIL, as intended by the Legislature, each control.

Indeed, the FOIL statute states that "a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions." N.Y. Pub. Off, Law § 84.  To that end, "[t]he people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society.  Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality."  Id.  To achieve government transparency, exemptions under FOIL must be narrowly construed, granting the public with maximum access to government records.  See Chrysler Corp. v. Brown, 441 U.S. 281, 292-293 (1979) ("Congress did not design the FOIA exemptions to be mandatory bars to disclosure").

Plaintiffs suggest that the privacy and safety exemptions in Pub. Off. Law § 87 somehow require mandatory confidentiality for unsubstantiated and non-final allegations towards law enforcement.  See ¶ 123 of Complaint at Dkt. Nos. 1, 5 ("Because the pre-existing privacy exceptions plainly apply to Unsubstantiated and Non-Final Allegations, any decision to release this data in full would necessarily [be] an error of law.")  However, these exceptions are plainly permissive.[7]  The statute reads, "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency *may* deny access to records or portions thereof that…"  Pub. Off. Law § 87 (emphasis added).  Thus,

---

[7] Moreover, plaintiff PBA's president, Patrick Lynch, admitted that these exceptions are permissive when he testified in front of the Legislature on October 24, 2019.  See Testimony of Patrick Lynch, PBA President, annexed to Barker Decl. as Exhibit "J."  He said,

> the FOIL statute states that an 'agency *may* deny access to records… that if disclosed would constitute an unwarranted invasion of personal privacy.'  Put differently, absent CRL § 50-a FOIL would *expressly permit* government agencies to release confidential police officer records….

See id. (emphasis his own).

even if such materials qualified for exemption under those provisions, the invocation of such an exception is solely within the agency's discretion.  See Capital Newspapers Div. of Hearst Corp. v. Burns, 67 N.Y.2d 562, 567 (1986)("[W]hile an agency is permitted to restrict access to [] records falling within the statutory exemptions, the language of the exemption provision contains permissive rather than mandatory language, and it is within the agency's discretion to disclose such records, with or without identifying details, if it so chooses."); see also Short v. Bd. of Managers of Nassau Cty. Med. Ctr., 57 N.Y.2d 399, 404 (1982).

Moreover, after the repeal of § 50-a, on July 27, 2020, the New York State Committee on Open Government ("Committee") issued an advisory opinion on this subject.  See Advisory Opinion attached to Dkt. No. 75 as Exhibit "C."  The Committee opined that agencies could permissively disclose or withhold unsubstantiated and non-final law enforcement disciplinary records at their discretion.  Id.  While advisory opinions "are not binding authority, they may be considered on the strength of their reasoning and analysis."  Matter of TJS of N.Y., Inc. v. New York State Dep't of Taxation & Fin., 89 A.D.3d 239, 242 n.1 (3d Dep't 2011).  The Committee also noted in their earlier 2018 Report—prior to the repeal of § 50-a— that "it is ironic that public employees having the most authority over peoples' lives are the least accountable relative to disclosure of government records."  See the Committee's 2018 Annual Report annexed to the Barker Decl. as Exhibit "B."

Plaintiffs demand a blanket mandatory exception in FOIL for all unsubstantiated, unfounded, exonerated, and non-final law enforcement disciplinary records.  But that exception would thwart the legislative intent of FOIL.  It is undeniably the intent of the Legislature that police disciplinary records, including for unsubstantiated and non-final matter, be available to the public. To conclude otherwise would offend statutory law and, consequently, create a chilling effect on police transparency nation-wide.  As contemplated by state law, for an agency to assert

discretionary privacy exceptions to disclosure under FOIL, it must "balance[e] the privacy interests at stake against the public interest in [the] disclosure of the information." See Matter of Harbatkin v. New York City Dept. of Records & Info. Servs., 19 N.Y.3d 373, 380 (2012)("a court must decide whether any invasion of privacy . . . is unwarranted by balancing the privacy interests at stake against the public interest in [the] disclosure of the information."). A determination that the balance weighs in favor of disclosure is entirely supported by the repeal's legislative intent.

Plaintiffs further allege that defendants are breaking an "established practice on the protections afforded Unsubstantiated and Non-Final Allegations" and, that such a break with past policy is arbitrary absent an explanation of the reason for the change. But plaintiffs cannot demonstrate that defendants ever had a practice to categorically assert the privacy or safety FOIL exemptions to unsubstantiated or non-final allegations. Indeed, defendants testified, through Fed. R. Civ. P. 30(b)(6) witnesses, that FOIL requests are evaluated on a case-by-case basis, with exemptions applied only as appropriate. See Barker Decl. at ¶¶ 62, 64, 66, and 68. Defendants further testified that nothing requires a categorical or reflexive application of these exemptions for certain types of records. See Barker Decl at ¶¶ 63, 65, 67, and 69.

Plaintiffs' only support for the proposition that defendants ever had such a practice is to cite to two cases, where the CCRB asserted the privacy exception, in addition to § 50-a, with respect to unsubstantiated cases. However, neither Matter of Hughes Hubbard & Reed LLP v Civilian Complaint Review Bd., 53 Misc. 3d 947 (Sup. Ct., Kings Cnty. 2016) nor Luongo v. Records Access Off., 150 A.D.3d 13, 16 (1st Dep't 2017) note the existence of any such policy, and the FOIL requests that they relate to date back to 2015 and 2014 respectively. See Jamieson Dec. ¶ 13. In addition, for the past several years, the CCRB has not relied on the case disposition (such as unsubstantiated, unfounded, or exonerated) as a basis for asserting the privacy exemption in response to a FOIL request for officer CCRB histories or other documents.

Id. ¶¶ 13, 17.  Two cases, involving requests from 2014 and 2015, do not suggest the existence of any categorical policy even at that time, let alone in recent years.

While the CCRB *has* asserted the privacy exemption in response to certain FOIL requests in recent years, it explained that its basis for doing so was unrelated to the case disposition.  Thus, the CCRB asserted (and continues to assert) the privacy exception in response to FOIL requests calling for documents that include civilian names (other than the requester's), such as complainants or witnesses, or that include private details regarding an incident.  Thus, even prior to the repeal of § 50-a, the CCRB did not deny access to officer history reports related to truncated, unsubstantiated, exonerated, or unfounded complaints of misconduct based upon a privacy exception or any other FOIL exception.  See ¶17 of the Jamieson Decl.  Therefore, plaintiffs' claim of a recent break with past established practice is unfounded.

In addition, while there has been no change in policy, the CCRB has explained that recent events provide additional support for its current practice of not asserting the privacy exemption with regard to complaints or dispositions in unsubstantiated, exonerated, or unfounded cases.  As CCRB notes, "the increasingly intense public sentiment regarding transparency on police disciplinary matters, culminating in the repeal of Civil Rights Law § 50-a without an exception carved-out for pending, unsubstantiated, exonerated, and unfounded cases, is evidence of the tremendous public interest in this information, particularly for officer histories and complaint reports. The Legislature's decision to repeal the law only reinforces our judgment not to invoke the privacy exception for those records and to only apply the exception on a case-by-case basis."  See Jamieson Decl. ¶ 25.

No support exists for a categorical mandate either. In fact, it is black letter law in New York that there are no categorical exemptions from disclosure under FOIL for particular types of documents. Gould v. New York City Police Department, 89 N.Y.2d 267, 275 (1996) ("blanket

exemptions for particular types of documents are inimical to FOIL's policy of open government"); Police Benevolent Assn. v. State of New York, 145 A.D.3d 1391, 1392 (3d Dept. 2016) ("Public Officers Law §87(2)(b) permits an agency to deny access to records of portions thereof, if disclosure 'would constitute an unwarranted invasion of privacy.' The statute does not, however, categorically exempt such documents from disclosure."); Fink v. Lefkowitz, 47 N.Y.2d 567, 571 (1979)(An agency that seeks to invoke an exemption, must therefore "articulate a particularized and specific justification' for not disclosing requested documents.")

### (ii)  New York State Constitution

It is well settled that "New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff." Davis v. City of New York, 959 F. Supp. 2d 324 (S.D.N.Y. 2013)(quotation and citation omitted). Here, plaintiffs assert their due process and equal protection claims under both the New York State Constitution and § 1983, which indicates that plaintiffs have an alternative remedy through § 1983. Therefore, no private right of action is available. See Raymond v. City of New York, No. 15 CV 6886 (LTS) (HBP), 2017 U.S. Dist. LEXIS 31742 at *25 (S.D.N.Y. Mar. 6, 2017) (dismissing plaintiffs' state constitutional claims as superfluous where they were also brought under § 1983). Plaintiffs are, thus, unlikely to succeed on this claim.

### (iii)  Article 75

Plaintiffs allege that defendants violated their CBAs when they decided to publish unsubstantiated and non-final disciplinary records for law enforcement personnel without first bargaining over it. However, as a matter of public policy, an agency cannot bargain away the public's right to access public records." LaRocca v. Board of Educ. of Jericho Union Free School Dist., 220 A.D.2d 424, 427 (2nd Dept. 1995); Washington Post Co. v. New York State Ins. Dept., 61 N.Y.2d 557, 565 (1984).

Further, plaintiffs allege that when defendants decided to make the disputed records public, they violated their CBAs' clauses requiring defendants to automatically grant or, in some cases, permitting members to request, the expungement from their personnel file of any disciplinary "investigative reports [or cases] that are classified exonerated or unfounded."  See ¶¶ 55-56 of Complaint at Dkt. Nos. 1, 5.  However, the public disclosure of the disputed records does not extinguish this right.  Officers may still request that these records be removed from their personnel folders, and defendants may still remove them from plaintiffs' members' personnel files when the appropriate time arrives.  Moreover, for plaintiffs COBA, SBA, and CEA, nothing in their CBAs even mandates the expungement of these records or guarantees that defendants remove them from plaintiffs' members' personnel files.

Further, plaintiffs' CBAs contain grievance and arbitration procedures to resolve disputes like the one herein.  Plaintiffs cannot proceed in any court on a breach of contract claim where their collective bargaining agreements each contain a provision to arbitrate disputes arising under those agreements. The Legislature has recognized the strong policy favoring internal grievance mechanisms and the finality of the grievance process in public collective bargaining agreements.  Bd. of Educ. v. Ambach, 70 N.Y.2d 501, 509-10 (1987), cert denied sub nom., Margolin v. Bd. of Educ., 485 U.S. 1034 (1988).  Accordingly, in New York, a union and its members must first exhaust the remedies provided in the applicable collective bargaining agreement covering that employee before proceeding to court.

> It is well established that an aggrieved union member whose employment is subject to the terms of a collective bargaining agreement entered into by his union and employer must first avail himself of the grievance procedure set forth in the agreement before he can commence an action in court.

Cantres v. Bd. of Educ., 145 A.D.2d 359, 360 (1st Dep't 1988)(citing Plummer v. Klepak, 48 N.Y.2d 486, 489 (1979), cert. denied, 445 U.S. 952 (1980)); see Gray v. Crew, 293 A.D.2d 357

(1st Dep't), <u>appeal dismissed</u>, 99 N.Y.2d 531 (2002); Hall v. Town of Henderson, 17 A.D.3d 981, 982 (4th Dep't), lv. to appeal den., 5 N.Y.3d 714 (2005); see also Schacht v. New York, 39 N.Y.2d 28, 32 (1976)("Plaintiff, having designated the union to be her agent for collective bargaining purposes, is bound by agreements made by that union on her behalf.  She may not reject certain acts of her bargaining representative and accept others.").

In Ambach, the Court of Appeals recognized that through the grievance procedures the interests of all parties to collective bargaining are served and, thus, once in place, those procedures should not be undermined.

> [Grievance procedures] enable the union to participate in administering the contract it negotiated; they aid the employer by channeling grievances into one forum providing one set of remedies; and they permit efficient protection of employee rights (Republic Steel v Maddox, 379 U.S. 650, 653). They are Congress' "preferred method for settling disputes and stabilizing the 'common law' of the plant." (Id.) Allowing individual employees to circumvent the grievance procedure in favor of other remedies as a general matter would impair those interests, deprive the parties of the opportunity to "establish a uniform and exclusive method for orderly settlement of employee grievances", and "'inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.'"

70 N.Y.2d at 509.

Any claimed violation of Plaintiffs' contracts must be pursued through the grievance and arbitration processes contained within their collective bargaining agreements, not in this or any other court.  Because the CBA between plaintiffs and defendants binds plaintiffs to its terms, see Plummer v. Klepak, 48 N.Y.2d 486, 489 (1979); Schacht, 39 N.Y.2d at 32, plaintiffs are unlikely to succeed on these claims.

Plaintiffs allege in their complaint, dated July 13, 2020, that "Petitioners PBA, SBA, LBA, CEA and COBA have filed grievances in accordance with the provisions of their

27

respective CBAs *demanding arbitration* in response to this anticipated one-sided nullification of their bargained-for contractual rights."  See ¶ 82 of Complaint at Dkt. Nos. 1, 5 (emphasis added). However, plaintiffs PBA, LEA, and CEA are the only plaintiffs who have demanded arbitration, and they only did so on August 3 and 4, 2020.  See Barker Decl. at ¶ 59.  Article 75 of the CPLR pertains to arbitration, a remedy, which none of the plaintiffs sought as of the time they filed this action and which several plaintiffs have yet to seek today.  CPLR 7502(c) states in pertinent part:

> The supreme court in the county in which an arbitration is pending or in a county specified in subdivision (a) of this section, may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitration that is pending …but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. … the sole ground for the granting of the remedy shall be as stated above. If an arbitration is not commenced within thirty days of the granting of the provisional relief, the order granting such relief shall expire and be null and void and costs, including reasonable attorney's fees, awarded to the respondent.

Section 7502(c) of the CPLR authorizes issuance of a preliminary injunction in connection with an arbitrable controversy "upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."  See Salvano v. Merrill Lynch Pierce Fenner & Smith, 85 N.Y.2d 173, 181, (1995).  Its intent is merely to hold the parties in status quo until the arbitration is decided.  See New York State Housing Finance Agency Employees' Ass'n v. New York State Housing Finance Agency, 183 AD2d 435 (1st Dep't 1992). Further, the provisions of Article 75 by their terms apply only "when one party, seeking to compel arbitration, is aggrieved by the failure of another party to arbitrate, or when a party not participating in an arbitration seeks to stay the proceeding on the basis that a valid agreement either was not made or was not complied with."  Cullman Ventures, Inc. v. Conk, 252 A.D.2d 222, 229 (1st Dept. 1998).

28

Here, most plaintiffs have yet to demand arbitration, let alone reach that point in the grievance process.  Moreover, none of plaintiffs have any contractual relationship with the CCRB, sufficient to bargain away its findings or determinations.  Under such circumstances, no claim under Article 75 can be maintained.  Furthermore, plaintiffs seek to "preserve the *status quo* … while the parties arbitrate this issue pursuant to the terms of their CBAs."  See ¶ "83" of Complaint at Dkt. Nos. 1, 5.  Specifically, plaintiffs allege that, according to their respective CBAs, "any member may have removed from h[is] or her personnel folder investigative reports that are classified exonerated or unfounded."  See ¶ 55 of Complaint at Dkt. Nos. 1, 5.  They also make the same claims for the ability to remove exonerated or unfounded disciplinary cases from their personnel files.  See ¶ 56 of Complaint at Dkt. Nos. 1, 5.  However, as discussed above in [Point 2], some of plaintiffs' CBAs do not even give this right, and the DEA's does not mention it at all.  See relevant portions of petitioners' CBAs, annexed to the Barker Decl. as Exhibit "N."  For plaintiffs SBA, CEA, and COBA, their members may only seek this relief and only after certain requirements.  See id.

Moreover, even for those CBAs which grant plaintiffs this right, disclosure of Unsubstantiated and Non-Final Allegations and settlement agreements has absolutely no bearing on what is contained in a Firefighter, Correction Officer or Police Officer's personnel file.  The FDNY, DOC and NYPD can certainly comply with contractual obligations to remove certain records, when necessary, from personnel files and, simultaneously, make the disclosures at issue in this case.  Therefore, an order directing defendants to maintain the "*status quo"* could only require defendants to continue giving plaintiffs the right to request such an expungement two years after its disposition or actually doing so, depending on the plaintiff.  See id.  For these reasons, plaintiffs cannot state a claim under Article 75.

**(iv) Breach of Contract**

29

As previously discussed, Plaintiffs allege that defendants would violate their members' settlement agreements over charges of misconduct by disclosing the disputed records,[8] which *might* relate to those allegations or charges because, had they known that their plea agreements might become public, they might have defended themselves against disciplinary charges more vigorously.  See Complaint at ¶ 7, 62, 65.  Plaintiffs further argue that such a disclosure would make defendants in breach of their plaintiffs' members' settlement agreements because those agreements were entered into while § 50-a was in effect and, thus, necessarily "include[d] the confidentiality protection provided by § 50-a."  Pl. Memo. at 21-22; see also ¶ 65 of the Complaint.  In effect, the unions are making the remarkable claim that settlements with a city agency rendered § 50-a immutable and FOIL inoperable as to all records concerning the settled charges.

This claim is all the more preposterous because the unions do not allege that the referenced settlements included any language about document disclosure, let alone incorporated § 50-a or the confidentiality requirements thereof. Everyone—contracting parties included—is presumed to understand that state law is subject to change by act of the Legislature.  Contracting parties rarely, if ever, succeed in limiting the state's sovereign power to legislate even where, unlike here, they are entered into by state agencies and include language that could be read as purporting to do so.  Doe v. Pataki, 481 F.3d 69 (2d Cir. 2007)(where there was "no indication that plaintiff sought to have the duration-of-registration or the scope-of-notification requirements remain unaltered by subsequent state legislation," the Court held that plaintiff's prior settlement agreement with the State did not entitle plaintiff to register as a sex offender under the previous

---

[8] To the extent that plaintiffs argue that disclosure of unsubstantiated, unfounded, exonerated, and non-final allegations would violate their members' past settlement agreements: "unsubstantiated and non-final" allegations of misconduct would never be disputed in the first place, let alone the need to defend or settle them.  Never mind that settlements, by their very nature, are final.

and shorter statutory requirement). There's certainly no basis for such a claim based on contracts executed by a city agency, where plaintiffs cite no language in the contracts even hinting that state law might be frozen in place, if that were even possible.

Plaintiffs rely on Skandia America Reinsurance Corp. v. Schenck, 441 F. Supp. 715 (S.D.N.Y. 1977) to support the proposition that "[the] law, 'in force at the time' of the settlement agreements, is 'a part of the contract.'" See id. at 724. However, their reliance upon this case is entirely misplaced. In Skandia, there was diversity of citizenship, and the contract/treaty at issue was silent on which law would govern the parties in the event of insolvency, while also designating a specific New York insurance law for determining the recipient of the reinsurance proceeds. Id. at 723. In determining which jurisdiction and law governed the contract, the Court noted that it must consider the laws the parties contemplated at the time they entered into it. Id. at 723-24. This is wholly inapplicable to the instant case.

Moreover, plaintiffs lack standing to assert these claims on behalf of their members in the first place. Only parties to a contract have standing to assert a breach of contract claim. Heath v. Stephen Banks, 692 Fed. Appx. 60, 60-61 (2d Cir. 2017)("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); see also Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 627 F. Supp. 1202, 1212 (S.D.N.Y. 1986), aff'd, 814 F.2d 90 (2d Cir. 1987); Capital Nat'l Bank of New York v. McDonald's Corp., 625 F. Supp. 874, 883 (S.D.N.Y. 1986). Plaintiffs concede that, with respect to its second and third causes of action for breach of Settlement Agreement and breach of contract, none of the individual defendants are parties to the contracts. Plaintiffs, therefore, cannot succeed on the merits of these claims. CSI Inv. Partners II, L.P. v. Cendant Corp., 507 F. Supp. 2d 384, 412-413 (S.D.N.Y. 2007); see also Cielo Garage Owners Co., LLC v Board of Mgrs. of the Cielo Condominium, 2019 N.Y. Misc. LEXIS 4590, *3, (Sup. Ct. N.Y. Cnty. Aug. 20, 2019).

## POINT III

### THE BALANCE OF EQUITIES DOES NOT TIP
### IN FAVOR OF PLAINTIFFS

Even if plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they most certainly cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor.  Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020).  Here, any purported abstract harm to plaintiffs that could result from the public disclosure of the disputed records does not *decidedly* outweigh the public's interest in obtaining the very records the repeal of §50-a was meant to make transparent.  See Id. at 674 ("Even if the balance of these hardships/equities tips in favor of Appellants, which is debatable, it does do so 'decidedly'") (citations omitted).  Therefore, plaintiffs' motion should be denied for this reason as well.

### POINT V

### PLAINTIFFS CANNOT SHOW THAT AN
### INJUNCTION IS IN THE PUBLIC INTEREST.

Plaintiffs must also satisfy the requirement that the injunction is in the public interest.  Id.  They cannot do so.  Plaintiffs made the same arguments they make here to the Legislature when they lobbied against repeal of § 50-a.  After hearing their advocacy, the Legislature decided to revoke § 50-a and did not insert protections for the records that Plaintiffs seek to shield from disclosure.  Indeed, in his press release, upon signing the repeal of §50-a, Governor Cuomo stated:

> [T]he current law prevents access to both records of the disciplinary proceedings themselves and the recommendations or outcomes of those proceedings, leading to records of complaints or finding of law enforcement misconduct that did not result in criminal charges against an office almost entirely inaccessible to the public.  Repealing Civil Rights Law § 50-a will allow for the disclosure of law enforcement disciplinary records, increasing transparency and helping regain the public trust that law enforcement

officers and their agencies may be held accountable for misconduct.

<u>See</u> Barker Decl. at ¶ 54.

To date, plaintiffs have not argued, much less demonstrated, that an injunction, which, in large part, serves to thwart the repeal of § 50-a is in the public interest. Rather, plaintiffs have only argued why such an injunction is in *their* interest. Therefore, as plaintiffs cannot satisfy this element for injunctive relief, there motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny plaintiffs' motion for a preliminary injunction and grant further relief as the Court deems just and proper.

Dated:       New York, New York
             August 14, 2020

JAMES E. JOHNSON
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
646-960-1103
kbarker@law.nyc.gov

By:      /s/
         Kami Z. Barker
         Assistant Corporation Counsel