EXHIBIT B

# COMMITTEE ON OPEN GOVERNMENT

STATE OF NEW YORK
**DEPARTMENT OF STATE**
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
ALBANY, NY 12231-0001
TELEPHONE: (518) 474-2518
FAX: (518) 474-1927
WWW.DOS.NY.GOV/COOG/

**COMMITTEE MEMBERS**
ROANN M. DESTITO
PETER D. GRIMM
M. JEAN HILL
KATHY HOCHUL
HADLEY HORRIGAN
ROBERT MUJICA, JR.
ROSSANA ROSADO
DAVID A. SCHULZ
STEPHEN B. WATERS
MEREDITH S. WEILL

**CHAIRPERSON**
FRANKLIN H. STONE

**EXECUTIVE DIRECTOR**
ROBERT J. FREEMAN

December, 2018

## 2018 REPORT TO THE GOVERNOR AND STATE LEGISLATURE

*"Sunlight is said to be the best disinfectant."*

*Judge Louis Brandeis, 1913*



# Table of Contents

2018: PLUSES AND MINUSES .................................................................................................. 3

    A.    The Mandatory Award of Attorney's Fees Under FOIL ............................................... 3

    B.    Open FOIL NY ............................................................................................................. 3

    C.    Section 50-a of the Civil Rights Law - Confidentiality of Police and Correction Officers' Personnel Records: Time for a Change ...................................................................................................... 3

    D.    The *Glomar* Principle ................................................................................................... 6

    E.    Expediting the FOIL Process ....................................................................................... 6

    F.    Proper Design of Electronic Information Systems ...................................................... 7

PREVIOUS RECOMMENDATIONS FOR CONTINUING CONSIDERATION .................. 7

    A.    The Reasonable Use of Cameras in Courtrooms ........................................................ 8

    B.    Government Created Entities Should Be Subject to FOIL .......................................... 8

    C.    Bring JCOPE within the coverage of FOIL and the Open Meetings Law ................. 9

    D.    Technical Amendments ................................................................................................ 9

    E.    Clarify Civil Rights Law §50-b to Protect Privacy of Victims of Sex Offenses, Not that of Defendants . 11

    F.    Disclose or Withhold E911 Records Pursuant to FOIL ........................................... 12

    G.    Amend FOIL to Create a Presumption of Access to Records of the State Legislature ........................... 13

    H.    Make Accessible Tentative Collective Bargaining Agreements once disclosed to Public Employee Unions ........................................................................................... 14

    I.    Dealing with Lawsuits by Commercial Entities to Block Disclosure ....................... 15

    J.    Require Commercial Enterprises to Renew Requests that Records be Kept Confidential ..................... 16

SERVICES RENDERED BY THE COMMITTEE ................................................................ 19

    A.    Online Access ............................................................................................................. 19

    B.    Telephone Assistance ................................................................................................. 20

    C.    Assistance via Email and Written Correspondence ................................................... 20

    D.    Advisory Opinions ..................................................................................................... 21

    E.    Presentations ............................................................................................................... 21

# 2018: PLUSES AND MINUSES

Like most years, there have been successes regarding open government, as well as losses.

## A.    The Mandatory Award of Attorney's Fees Under FOIL

New York achieved a key gain in the amendment of the Freedom of Information Law (FOIL) that mandates the payment of attorneys' fees to anyone who prevails in a lawsuit challenging denial of an open-records request if the judge finds that there was no reasonable basis for the denial (A.2750/Paulin; S.2392/Gallivan, Chapter 453 of the Laws of 2017). A December 10, 2017 New York *Times* editorial urged that a "bill awaiting the governor's signature would remove one of the biggest obstacles facing those who are wrongly denied documents they have requested under New York's open-records law – the cost of hiring a lawyer to fight that denial in court."  The editorial added that "[t]he tab can easily run into the tens of thousands of dollars, which may be affordable to deeper-pocketed corporations and organizations but is prohibitive for ordinary citizens." Consequently, "many denials never get challenged, and New Yorkers can be left in the dark about problematic policies, ethics scandals or serious violations of the law."

The intent of the legislation in enacting this important amendment was not to penalize government agencies.  On the contrary, the intent is to encourage compliance with law.  Better compliance should result in less litigation and, therefore, lower cost to agencies and taxpayers.

## B.    Open FOIL NY

The Governor in June announced the initiation of Open FOIL NY, a website designed to provide easy access to state agency records through a convenient and centralized online location for filing FOIL requests to nearly 60 New York State Executive agencies and authorities. Notably, New York is the first state in the nation to offer a form that allows a requester to select up to three state agencies in a single submission.

The next phase of Open FOIL NY will involve the use of software designed by the NYS Office of Information Technology Services that will be available to state agencies on a rolling basis.  The software will enhance the application of FOIL by facilitating the processing of requests and identifying frequently requested records for consideration for proactive disclosure. The Committee has received anecdotal reports by state agency records access officers that the implementation of Open FOIL NY has significantly increased the number of requests received by those agencies.

## C.    Section 50-a of the Civil Rights Law - Confidentiality of Police and Correction Officers' Personnel Records: Time for a Change

Section 50-a of the Civil Rights Law provides that personnel records pertaining to police and correction officers, as well as professional firefighters, that "are used to evaluate performance toward continued employment or promotion" are confidential.

The interpretation of §50-a and its application in the courts over the past 40 years has turned a narrow FOIL exception into a virtually impenetrable statutory bar to the disclosure of

information about the conduct of law enforcement officers.  For several years the Committee on Open Government (the "Committee") has called for the repeal or revision of §50-a, but the Legislature has not moved any legislation that has been introduced in this regard.  The continuing impact of §50-a prevents meaningful public oversight of law enforcement agencies and its repeal or revision is long overdue.

Courts have long recognized that public employees enjoy little privacy protection for things they do on the job.  While unsubstantiated complaints, charges or allegations against public employees may typically be withheld where disclosure would constitute "an unwarranted invasion of personal privacy" (FOIL §87[2][b]), many judicial decisions recognize that final determinations of misconduct or rules violations by public employees cannot be withheld on privacy grounds, nor can agreements settling claims involving the job performance of public employees.  Nevertheless, when a final determination is made of misconduct or a rules violation by an employee within the categories covered by §50-a, the finding of misconduct is being withheld as confidential—a result that defeats the objectives of FOIL and serves no apparent compelling policy purpose.  It is ironic that public employees having the most authority over peoples' lives are the least accountable relative to disclosure of government records.  This situation is untenable.

A review of its legislative history indicates that § 50-a was enacted in 1976 with a narrow purpose—to protect police officers from harassing cross-examination by defense counsel in criminal prosecutions based on unproven or irrelevant material contained in their personnel files. Today, the courts' broad reading of §50-a deprives the public of information essential to democratic oversight and lends a counter-productive shield of opacity to the State and local police agencies.

Courts have permitted police departments to withhold virtually any information that could conceivably reflect upon a future decision to promote or retain an officer.[1]  Our last five Annual Reports have each highlighted the alarming lack of public information about law enforcement agencies that these rulings have engendered, including:

- The withholding of records of an officer's involvement in a hit and run accident while off-duty;[2]
- The withholding of basic information about police accrual and leave practices;[3]
- The withholding of information even in cases where departments have determined that their officers broke the law;[4] and

---

[1]  See, e.g. *Gannett Co. v James*, 86 AD2d 744, 447 NYS2d 781 (4th Dept. 1982); *Daily Gazette Co. v City of Schenectady*, 93 NY2d 145, 688 NYS2d 472 (1999).

[2]  *Hearst v New York State Police*, 109 AD3d 32, 966 NYS2d 557 (3rd Dept. 2013).

[3]  *Stuart v Department of Community and Correctional Services*, Supreme Court, Chemung County, August 30, 2001 (permitted deletion of names of officers from accrual and leave statements, notwithstanding *Capital Newspapers v Burns*, 67 NY2d 562, 505 NYS2d 576 (1986), which required disclosure of lost time reports that include days and dates of sick leave used).

[4] See, e.g., Gus Garcia Roberts and Sandra Peddie, "Unjustified," Newsday (Dec. 18, 2013) available at  http://data.newsday.com/long-island/crime/huntington-station-shooting/ (discussing conclusions of illegal conduct by police in internal affairs reports that are typically withheld under Section 50-a).

- The withholding of a report about the failings of a police department that led to the death of a woman the police had a duty to protect, and a $7.7 million payout of taxpayer funds to settle a wrongful death action.[5]

The imposition of such secrecy under §50-a was clearly never intended by the legislature. Until recently, it seemed that few other than the Committee and newspapers' editorial writers had been critical of §50-a. That has changed.

In April 2018, the New York City Bar Association Civil Rights and Criminal Courts Committees joined nearly 30 organizations, including the New York Civil Liberties Union and the Legal Aid Society, in support of a bill, A.3333, that would repeal §50-a. To evaluate the City Bar's report, the New York State Bar Association designated a "Working Group on Civil Rights Law §50-a." The Working Group's recommendation will be made to the State Bar Association at its annual meeting in January 2019, and it is expected that a proposal to repeal will be approved.

A continuing difficulty in opposition to the amendment or repeal of §50-a is the concern that doing so could open the door to "unfettered access to personnel records" (PBA response to the New York State Bar Association Working Group). The concern is unfounded.

Even without §50-a, FOIL provides broad protection to law enforcement personnel. One of FOIL's express exceptions authorizes an agency to withhold records where disclosure would constitute an unwarranted invasion of personal privacy, §87(2)(b), and this provision has long been held to allow "unsubstantiated allegations" against an employee to be withheld. Another provision, §87(2)(f), permits an agency to deny access when disclosure "could endanger the life or safety of any person." Section 89(7) permits the home address of a present or former public employee to be withheld. A performance evaluation may also be withheld pursuant to §87(2)(g), concerning "intra-agency materials," insofar as it includes the opinions of agency officials concerning a public employee's performance. A final determination regarding the performance of public employees is necessarily available to fulfill FOIL's mandate to inform citizens about the actions of their government. These provisions protect the very interests that motivated the legislature to enact §50-a in the first place.

In urging the repeal or revision of §50-a, the Committee is not suggesting that police and correction officers should be subject to greater disclosure than other public employees, but rather that they should be subject to the same level of public disclosure and protection as required for all other public employees. FOIL provides all public employees with the protections necessary to guard against unwarranted invasions of privacy and from disclosures that could jeopardize their security or safety. While police officers have a particular need for such protections, the generally applicable FOIL exemptions are sufficient to safeguard their legitimate privacy and safety concerns. Moreover, the courts are adequately equipped to protect against improper cross-examination and determine when records regarding a police officer's behavior are admissible in a trial. The blanket denial of public access to information about police activity that §50-a imposes is unnecessary and undesirable.

The corrosive absence of transparency existing under §50-a undermines accountability, increases public skepticism and foments distrust. All members of this Committee have long

---

[5] Sid Cassese, "Nassau Oks $7.7M Jo'Anna Bird settlement," Newsday, Jan. 30, 2012, available at https://www.newsday.com/long-island/nassau/nassau-oks-7-7m-jo-anna-bird-settlement-1.3491132

agreed that §50-a is ripe for reconsideration by the Governor and the State Legislature.  It is long past time to act.

## D.    The *Glomar* Principle

This year, the Court of Appeals, in a 5-4 decision in the case, *Abdur-Rashid v New York City Police Department,* 31 NY3d 217 (2018), held that under certain circumstances, FOIL §87 permits the government to answer a FOIL request by declining to acknowledge whether it possesses the requested records, a response known as a "Glomar response." [6]

The majority in *Abdur-Rashid* found that the New York City Police Department's (NYPD) *Glomar* response to a FOIL request was permissible, explaining that, "when there is a FOIL request as to whether a specific individual or organization is being investigated or surveilled, the agency - - in order to avoid 'tipping its hand' - - must be permitted to provide a *Glomar*-type response."  The Court also emphasized that the ability to assert a *Glomar* response is limited, stating that:

> "…under the circumstances presented here, where necessary to give full effect to the law enforcement and public safety statutory exemptions, the NYPD's response neither confirming nor denying the existence of the investigative or surveillance records sought is compatible with FOIL and the policy underlying those exemptions, which is to provide the public access to records without compromising a core function of government – the investigation, prevention and prosecution of crime."

We have begun to see responses to FOIL requests that misinterpret the *Abdur-Rashid* decision, applying it too broadly, and have advised that the Court of Appeals specified that *Glomar*-type denials of access can only be made in situations where, if records were to exist, the law enforcement or public safety exceptions could clearly be asserted as justification for withholding the requested records from disclosure.


## E.    Expediting the FOIL Process

In previous reports, we have discussed the reality that the use and utility of FOIL have increased dramatically with the evolution of information technology.  Many agencies receive far more requests now than in previous years.   For some agencies, a significant increase in FOIL requests may lead to delayed responses to such requests.  This is a trend that deserves to be addressed.

Section 84 of FOIL, the "Legislative declaration," clearly indicates the intent of that statute and provides in part that "It is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible."  Based on that direction, records that are clearly public and readily retrievable should be promptly provided.

---

[6] "*Glomar*" refers to the Glomar Explorer, a ship built for the CIA in the early 1970s that sank in the Pacific Ocean soon after it went into service.  In response to requests for information about the Glomar Explorer made pursuant to the federal FOI Act, the Government asserted, in essence, that that it would not say whether it had the records requested, but if it did, it would deny access to them.  Federal courts approved this response, allowing FOIA requests to be denied without an admission that records existed.

Aside from the direction given in the Legislative declaration, when an agency needs more than five business days from the receipt of a request, §89(3)(a) requires that the agency acknowledge the receipt of the request in writing within that time that includes "a statement of the approximate date, which shall be reasonable under the circumstances of the request, when such request will be granted or denied…" When "circumstances prevent disclosure to the person requesting the record or records within twenty business days from the date of acknowledgement of the receipt of the request, the agency shall state, in writing, both the reason for the inability to grant the request within twenty business days and a date certain within a reasonable period, depending on the circumstances, when the request will be granted in whole or in part."

Delays may in some instances be justified, but in others may reflect a failure to comply with law.

In order to help reduce the number of FOIL requests that require response by a government agency, thereby expediting the responses to other FOIL requests, the Committee recommends, as we have in a number of previous reports, legislation requiring that agencies post records online, even before requests for the records are made pursuant to FOIL. The advantages of doing so are clear.  When records are posted on an agency's website, they are readily available to members of the public without the need to request them under FOIL.

In the past legislative term (2017-2018), legislation was introduced by Assembly Member Buchwald (A.9738) and Senator Krueger (S.4586) that would create an obligation for government agencies to proactively disclose records, with reasonable limitations.  Agencies should, "to the extent practicable" post records of significance to the public online.  Proactive disclosure is an efficient means of promoting FOIL and can serve as an effective means of providing public access quickly and easily.

## F.   Proper Design of Electronic Information Systems

A provision in FOIL that is too frequently overlooked would, if implemented more widely, speed up the process of responding to requests.  Section 89(9) states that:

> "When records maintained electronically include items of information that would be available under this article, as well as items that may be withheld, an agency in designing its information retrieval methods, whenever practicable and reasonable, shall do so in a manner that permits the segregation and retrieval of available items in order to provide maximum public access."

Through the implementation of §89(9), an agency can maximize access in a manner consistent with law and, in many cases, automatically redact in a manner that protects personal privacy.

# PREVIOUS RECOMMENDATIONS FOR CONTINUING CONSIDERATION

The following recommendations have been offered in earlier reports.  The Committee believe that they continue to have merit and should be considered seriously by the Governor and Legislature.

## A.      The Reasonable Use of Cameras in Courtrooms

While several judges have determined that the statutory ban on the use of cameras is unconstitutional, legislation remains necessary to ensure that court proceedings are meaningfully open to the public. Especially in consideration of the successful use of cameras in the Diallo trial, as well as other proceedings around the state, the Committee reaffirms its support for the concept, subject to reasonable restrictions considerate to the needs of witnesses.

As former Chief Judge Lippman expressed, "[t]he public has a right to observe the critical work that our courts do each and every day to see how our laws are being interpreted, how our rights are being adjudicated and how criminals are being punished, as well as how our taxpayer dollars are being spent."

Although New York is often considered to be the media capital of the world, cameras are permitted, in some instances with limitations, in courts in 45 states.  Few states, one of which is New York, expressly prohibit the use of cameras in trial courts.  Former Chief Judge Lippman's proposal would give judges the discretion to limit camera coverage of trials and allow witnesses to request that their facial features be obscured when giving testimony.

## B.      Government Created Entities Should Be Subject to FOIL

An entity created by a government agency or a subsidiary or affiliate of a government agency is, in reality, an extension of the government.  The records of such an entity must fall within the coverage of FOIL.

A significant element of a recent investigation by the US Attorney for the Southern District of New York focused on non-profit entities associated with the State University of New York (SUNY).  Efforts by the news media to gain access to records of those entities have been rebuffed, despite the Committee's view that many are and have been required to comply with FOIL.

FOIL applies to agency records.  To ensure that the records of entities created by government are subject to FOIL, the definition of "agency" in FOIL §86(3) should be amended to mean:

"any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, as well as entities created by an agency or that are governed by a board of directors or similar body a majority of which is designated by one or more state or local government officials, except the judiciary or the state legislature."

While profit or not-for-profit corporations would not in most instances be subject to FOIL because they are not governmental entities, there are several judicial determinations in which it was held that certain not-for-profit corporations, due to their functions and the nature of their relationship with government, are "agencies" that fall within the scope of FOIL. (see e.g., *Buffalo News v Buffalo Enterprise Development Corp.*, 84 NY 2d 488 (1994); *Hearst Corporation v Research Foundation of the State of New York*, 24 Misc. 3d 611 (2012)).

It is emphasized that the receipt of government funding or entering into contractual relationships with a government agency does not transform a private entity into a government agency. Rather, the Committee's proposal is limited to those entities which, despite their corporate status, are subsidiaries or affiliates of a government agency.

## C.  Bring JCOPE within the coverage of FOIL and the Open Meetings Law

There is no logical rationale for exempting the Joint Committee on Public Ethics (JCOPE) from FOIL and the OML.

JCOPE and its predecessor, the Commission on Public Integrity, were created to offer guidance and opinions to public officers and employees concerning ethics and conflicts of interest, and to investigate possible breaches of law relating to statutes that contain standards concerning ethical conduct. Detailed financial disclosure statements are required to be submitted by elected state officials and policy making employees to JCOPE and had also been required by the Commission.

In its 2010 report to the Governor and the Legislature, the Committee recommended that the Commission on Public Integrity, which was also generally exempt from the disclosure provisions of FOIL and Open Meeting Law, should be subject to those laws. In 2016, we recommended that JCOPE be subject to FOIL and Open Meeting law. We offer the same recommendation now.

Every municipal ethics body is required to comply with FOIL and the OML, and those laws do not create a hindrance regarding their operation. On the contrary, the exceptions to rights of access provide those bodies with the flexibility necessary to function effectively. Moreover, the balance inherent in those laws serves to enhance the public's confidence in government.

Following the issuance of a report by the New York Ethics Review Commission critical of JCOPE's lack of transparency, the *Albany Times-Union* on November 7, 2015 referred to several deficiencies in the law applicable to that agency. Its editorial suggested that JCOPE should be subject to FOIL and the OML, for those laws "have ample exemptions to protect sensitive information and the integrity of investigations," adding that "Secrecy should not be JCOPE's default setting."

An area of particular criticism that would be corrected involves a basic element of government accountability: knowing how our government officials vote on issues. A requirement of FOIL since its enactment in 1974, FOIL §87(3)(a), is an obligation that agencies maintain records indicating the manner in which its members cast their votes. Because FOIL does not apply to JCOPE, the public has no way of knowing whether or how its members vote on matters that come before the Commission. The absence of accountability of that nature breeds mistrust and clearly warrants the change that we seek.

## D.  Technical Amendments

The following proposed technical amendments reflect an effort to clarify existing provisions in FOIL. First, there are two provisions of FOIL that state that an unwarranted invasion of personal privacy includes the disclosure of a list of names and addresses if a list would be used for solicitation or fund-raising purposes. Because the language involves personal

privacy, it has long been advised by the Committee that the ability to deny access pertains to a list of natural persons and their residential addresses.  The exception does not apply to a list of vendors or others engaged in a business or professional activity.

Second is a recommendation dealing with the "preparation" of records.  No one clearly knows what that means, and to clarify, the term "prepare" should be replaced by "create."  The principle is that FOIL pertains to existing records and does not require that an agency create new records to respond to a request.  The term "prepare" has been interpreted far more broadly and led to inconsistency of interpretation.

Finally, we are proposing technical amendments to the law to clarify the existing provisions relating to the time in which an agency is required to respond to a FOIL request.

<u>Subparagraph (iii) of paragraph (b) of subdivision (2) of section 89 of the public officers law is amended as follows:</u>

iii. sale or release of lists of names <u>of natural persons</u> and <u>residential</u> addresses if such lists would be used for solicitation or fund-raising purposes;

<u>Paragraph (a) of subdivision (3) of section 89 of the public officers law is amended, paragraph (b) is renumbered as paragraph (g), and new paragraphs (b-f) are added to read as follows:</u>

3. (a) Each entity subject to the provisions of this article, within five business days of the receipt of a written request for a record reasonably described, shall make such record available to the person requesting it, deny such request in writing or furnish a written acknowledgment of the receipt of such request and a statement of the approximate date, which shall be reasonable under the circumstances of the request, when ~~such request will be granted or denied~~ <u>a response will be given</u>, including, where appropriate, a statement that access to the record will be determined in accordance with subdivision five of this section.

(b) An agency shall not deny a request on the basis that the request is voluminous or that locating<u>, generating,</u> or reviewing the requested <u>record or</u> records or providing the requested copies is burdensome because the agency lacks sufficient staffing or on any other basis if the agency may engage an outside professional service to provide copying, programming or other services required to provide the copy, the costs of which the agency may recover pursuant to paragraph (c) of subdivision one of section eighty-seven of this article.

<u>(c)</u> An agency may require a person requesting lists of names <u>of natural persons</u> and <u>residential</u> addresses to provide a written certification that such person will not use such lists of names and addresses for solicitation or fund-raising purposes and will not sell, give or otherwise make available such lists of names and addresses to any other person for the purpose of allowing that person to use such lists of names and addresses for solicitation or fund-raising purposes.

<u>(d)</u> If ~~an agency determines to grant a request in whole or in part, and~~ if circumstances prevent <u>an agency from notifying the person requesting the record or records of the agency's determination regarding rights of access and</u> disclosure to the person requesting the record or records within twenty business days from the date of the acknowledgement

of the receipt of the request, the agency shall state, in writing, both the reason for the inability to ~~grant the request~~ <u>do so</u> within twenty business days and a date certain within a reasonable period, depending on the circumstances, ~~when the request will be granted in whole or in part~~ when <u>a determination regarding disclosure will be rendered</u>.

<u>(e)</u>  Upon payment of, or offer to pay, the fee prescribed therefor, the entity shall provide a copy of such record and certify to the correctness of such copy if so requested, or as the case may be, shall certify that it does not have possession of such record or that such record cannot be found after diligent search.

<u>(f)</u> Nothing in this article shall be construed to require any entity to ~~prepare~~ <u>create</u> any record not possessed or maintained by such entity except the records specified in subdivision three of section eighty-seven and subdivision three of section eighty-eight of this article. When an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort, it shall be required to do so. When doing so requires less employee time than engaging in manual retrieval or redactions from non-electronic records, the agency shall be required to retrieve or extract such record or data electronically. ~~Any programming necessary to~~ <u>The retrieval of</u> ~~retrieve~~ a record <u>or data</u> maintained in a computer storage system and ~~to~~ <u>the</u> transfer <u>of</u> that record to the medium requested by a person or to <u>a medium that would</u> allow the transferred record to be read or printed shall not be deemed to be the ~~preparation or~~ creation of a new record.

<u>(g)</u> ~~(b)~~ All entities shall, provided such entity has reasonable means available, accept requests for records submitted in the form of electronic mail and shall respond to such requests by electronic mail, using forms, to the extent practicable, consistent with the form or forms developed by the committee on open government pursuant to subdivision one of this section and provided that the written requests do not seek a response in some other form.

## E.   Clarify Civil Rights Law §50-b to Protect Privacy of Victims of Sex Offenses, Not that of Defendants

Section 50-b of the Civil Rights Law states that a record that identifies or tends to identify the victims of sex offenses cannot be disclosed, even if redactions would preclude identification of a victim.

Subdivision (1) of that statute provides that:

"The identity of any victim of a sex offense, as defined in article one hundred thirty or section 255.25, 255.26 or 255.27 of the penal law, or an offense involving the alleged transmission of the human immuno-deficiency virus, shall be confidential.  No report, paper, picture, photograph, court file or other documents, in the custody or possession of any public officer or employee, which identifies such victim shall be made available for public inspection.  No public officer or employee shall disclose any portion of any police report, court file, or other document, which tends to identify such a victim except as provided in subdivision two of this section."

In addition, §50-c of the Civil Rights Law states that:

"Private right of action.  If the identity of the victim of a sex offense
defined in subdivision one of section fifty-b of this article is disclosed in
violation of such section, any person injured by such disclosure may bring
an action to recover damages suffered by reason of such wrongful
disclosure.  In any action brought under this section, the court may award
reasonable attorney's fees to a prevailing plaintiff."

Due to the breadth and vagueness of the language quoted above, public officials have
been reluctant to disclose any information concerning sex offenses for fear of being sued.

The Committee recommends that the second sentence of §50-b be amended to state that:

"No portion of any report, paper …. which identifies such a victim shall
be available for public inspection."

Finally, §50-c refers to any disclosure made in violation of §50-b, whether the disclosure
is intentional or otherwise, inadvertent, or made after the victim's identity has been disclosed by
other means.  There should be standards that specify the circumstances under which a disclosure
permits the initiation of litigation to recover damages, and we recommend that §50-c be amended
as follows:

"Private right of action.  If the identity of the victim of an offense is
disclosed in violation of section fifty-b of this article and has not otherwise
been publicly disclosed, such victim [any person injured by such
disclosure] may bring an action to recover damages suffered by reason of
such wrongful disclosure.  In any action brought under this section, the
court may award reasonable attorney's fees to a prevailing plaintiff."

## F.    Disclose or Withhold E911 Records Pursuant to FOIL

Records of 911 calls are, in most instances, confidential, even when it is in the public's
interest to disclose, when there is no valid basis for denying access, or when the caller wishes to
access the record of his/her own words.

E911 is the term used to describe an "enhanced" 911 emergency system.  Using that
system, the recipient of the emergency call has the ability to know the phone number used to
make the call and the location from which the call was made.  Section 308(4) of County Law
prohibits the disclosure of records of E911 calls.  The law states:

"Records, in whatever form they may be kept, of calls made to a municipality's
E911 system shall not be made available to or obtained by any entity or person,
other than that municipality's public safety agency, another government agency
or body, or a private entity or a person providing medical, ambulance or other
emergency services, and shall not be utilized for any commercial purpose other
than the provision of emergency services."

However, that statute is either unknown to many law enforcement officials, or it is
ignored.  For example, soon after a Lake George tour boat sank and twenty people died,
transcripts of 911 calls were published.  While those who made the emergency calls were not
identified, the disclosure of the transcripts clearly violated existing law.

12

The Committee recommends that subdivision (4) of §308 of the County Law be repealed. By bringing records of 911 calls within the coverage of FOIL, they can be made available by law enforcement officials when disclosure would enhance their functions, to the individuals who made the calls, and to the public in instances in which there is no valid basis for denying access. When there are good reasons for denying access, to prevent unwarranted invasions of personal privacy, to protect victims of or witnesses to crimes, to preclude interference with a law enforcement investigation, FOIL clearly provides grounds for withholding the records.

This proposal was introduced as S.1175 (Senator Hoylman) in 2016. We note that the County Law does not apply to New York City, which has for years granted or denied access to records of 911 calls as appropriate based on FOIL.

## G.   Amend FOIL to Create a Presumption of Access to Records of the State Legislature

To promote accountability, transparency, and trust, the Committee urges that FOIL should be amended to require the State Legislature to meet standards of accountability and disclosure in a manner analogous to those maintained by state and local agencies.

Concern has been expressed about access to communications with constituents who contact legislators to express concerns in their personal or private capacity. It is our opinion that the Legislature would have authority to withhold such communications on the ground that disclosure would constitute an unwarranted invasion of personal privacy. To confirm the existence of protection of those records, §89(2)(b), which includes a series of examples of unwarranted invasions of personal privacy, could be amended to include reference to communications of a personal nature between legislators and their constituents. Communications with those who write on behalf of corporate or business interests should be subject to disclosure, for there is nothing "personal" about them.

Statutory guarantees of access would increase public confidence in the State Legislature as an institution. Accordingly, we support the intent of legislation introduced by Senator Krueger and Assemblymember O'Donnell (S.4307, A.6078) in 2015, which embodies the following:

- Include both houses of the State Legislature in the definition of "agency" in §86(3), and amend §89(2)(b) to protect communications of a personal nature between state legislators and their constituents.

- Where FOIL imposes distinct requirements on "state agencies," add "or house of the state legislature" (see §§87[4] and 89[5]).

- Maintain §88 of the FOIL, which requires each house to make available for public inspection and copying certain records that are unique to the State Legislature, such as those referenced earlier. Subdivision (1) should be removed as duplicative and misleading due to amendments made to the fee provisions contained in §87(1)(b) and (c).

- Environmental Conservation Law §70-0113 should be repealed.

- Executive Law §713(3) should be amended to reference Article 6 of the Public Officers Law, not a particular section within Article 6.

## H.    Make Accessible Tentative Collective Bargaining Agreements once disclosed to Public Employee Unions

When tentative collective bargaining agreements have been reached and their terms distributed to union members for approval, they should be available to the public.

Disclosure of those negotiated contracts before ratification serves to protect and offer fairness to taxpayers.  A cash basis accounting system has allowed governments to make financial commitments that future taxpayers may be unable to meet.  Disclosure gives citizens an opportunity to point out that possibility, before ratification, when the long term welfare of the community may not be recognized as a priority.  Disclosure under FOIL can save taxpayers' money.

Legislative History:  The below proposed amendment to Public Officers Law §87(2)(c) was introduced in the Assembly in 2013 (A.3746) and would confirm the advice rendered by the Committee on Open Government in several written opinions.

The Committee urges the enactment of the following amendment, which would provide that an agency may withhold records that:

"(c) if disclosed would impair present or imminent contract awards or collective bargaining negotiations: (i) provided, however, that records indicating the proposed terms of a public employee union or school district collective bargaining agreement together with facts describing the economic impact and any new costs attributable to such agreement, contract or amendment shall be made available to the public immediately following approval of such proposed terms by a public employee union, and at least two weeks prior to the approval or rejection of such proposed terms by the public employer when such records are sent to members of the public employee union for their approval or rejection; and (ii) that copies of all proposed public employee union or school district collective bargaining agreements, employment contracts or amendments to such contracts together with facts describing the economic impact and any new costs attributable to such agreement, contract or amendment be placed on the municipal or school district websites, if such websites exist, and within the local public libraries and offices of such school districts or in the case of collective bargaining agreements negotiated by the state of New York, on the website of the governor's office of employee relations at least two weeks prior to approval or rejection of such proposed public employee union or school district proposed collective bargaining agreements or action taken to approve other employment contracts or amendments thereto;"

Many situations have arisen in which tentative collective bargaining agreements have been reached by a public employer, such as a school district, and a public employee union, such as a teachers' association.  Even though those agreements may involve millions of dollars during the term of the agreement, rarely does the public have an opportunity to gain access to the agreement or, therefore, analyze its contents and offer constructive commentary.  Despite the importance of those records, there are no judicial decisions dealing with access for a simple

reason:  before a court might hear and decide, the contract will have been signed and the issue moot with respect to rights of access.

We point out that §87(2)(c) of FOIL authorizes an agency to withhold records when disclosure would "impair present or imminent contract awards or collective bargaining negotiations."  It has been advised that the exception does not apply in the situation envisioned by the legislation, for negotiations are no longer "present or imminent"; they have ended.  More significantly, the purpose of the exception is to enable the government to withhold records when disclosure would place it, and consequently the taxpayer, at a disadvantage at the bargaining table.  It has been held, however, that §87(2)(c) does not apply when both parties to negotiations have possession of and can be familiar with the same records, when there is "no inequality of knowledge" regarding the content of records.  When a proposed or tentative agreement has been distributed to union members, perhaps hundreds of employees, knowledge of the terms of the agreement is widespread, but the public is often kept in the dark.

## I.   Dealing with Lawsuits by Commercial Entities to Block Disclosure

For several years, Committee recommended legislation dealing with the ability of a commercial enterprise to attempt to preclude a state agency from disclosing records believed by that entity to cause substantial injury to its competitive position if disclosed.  Under the current provision, §89(5) of FOIL, the entity has fifteen days after a state agency's determination to disclose the records to initiate a proceeding to block disclosure.

As in other situations, the result often is a delay in disclosure, as well as the cost in time and effort to bring the proceeding to a conclusion.  In the past, the Committee proposed that a commercial entity that does not prevail in such a proceeding should be required to reimburse the state agency, which in essence, would be an award of attorney's fees.  The bill that would do so was introduced (A.327/Paulin; S.3390 Lupardo) in 2015 and 2016 but met with resistance.  In short, those who opposed the bill expressed the view that private entities should not be penalized via an award of attorney's fees payable to a state agency.

An alternative approach, developed with Assemblymember Paulin would be similar to legislation offered by the Committee dealing with the ability of an agency to delay perfecting an appeal, resulting in the reality that access delayed is access denied.   The proposal is as follows:

> "(d) a proceeding to review an adverse determination pursuant to paragraph (c) of this subdivision may be commenced pursuant to article seventy-eight of the civil practice law and rules.  Such proceeding, when brought by a person seeking an exception from disclosure pursuant to this subdivision, must be commenced within fifteen days of the service of the written notice containing the adverse determination provided for in subparagraph two of paragraph (c) of this subdivision.  The proceeding shall be given preference and shall be brought on for argument on such terms and conditions as the presiding justice may direct, not to exceed forty-five days.  Appeal to the appellate division of the Supreme Court must be made in accordance with law, and must be filed within fifteen days after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry.  An appeal taken from an order of the court requiring disclosure shall be given preference,

> shall be brought on for argument on such terms and conditions as the
> presiding justice may direct, not to exceed sixty days.  This action shall
> be deemed abandoned when the party requesting an exclusion from
> disclosure fails to serve and file a record and brief within thirty days after
> the date of the notice of appeal.  Failure by the party requesting an
> exclusion from disclosure to serve and file a record and brief within the
> allotted time shall result in the dismissal of the appeal."

We urge that the legislation be enacted in 2018.

## J.   Require Commercial Enterprises to Renew Requests that Records be Kept Confidential

Current laws can prevent disclosure of commercial information interminably and create a substantial burden on state agencies when that information is requested.

Specifically, FOIL includes unique and innovative provisions concerning the treatment of records required to be submitted to a state agency by a commercial enterprise pursuant to law or regulation.  They are intended to provide a procedural framework for consideration of the so-called "trade secret" exception to rights of access.

Section 87(2)(d) of FOIL permits an agency to withhold records to the extent that they:

> "are trade secrets or are submitted to an agency by a commercial
> enterprise or derived from information obtained from a commercial
> enterprise and which if disclosed would cause substantial injury to the
> competitive position of the subject enterprise..."

Under §89(5) of FOIL, a commercial enterprise that is required to submit records to a state agency may, at the time of submission, identify those portions of the records that it believes would fall within the scope of the exception.  If the agency accepts the firm's contention, those aspects of the records are kept confidential.  If and when a request for the records is made under FOIL, the agency is obliged to contact the firm to indicate that a request has been made and to enable the firm to explain why it continues to believe that disclosure would cause substantial injury to its competitive position.  If the agency agrees with the firm's claim, the person requesting the records has the right to appeal the denial of access.  If the determination to deny access is sustained, the applicant for the records may seek judicial review, in which case the agency bears the burden of proof.  However, if the agency does not agree that disclosure would cause substantial injury to the firm's competitive position, the firm may appeal.  If that appeal is denied, the firm has fifteen days to initiate a judicial proceeding to block disclosure.  In such a case, the firm has the burden of proof.

The request for confidentiality remains in effect without expiration, unless and until an agency seeks to disclose on its own initiative or until a FOIL request is made.  Because there is no expiration, agencies are required to implement the procedure in §89(5), often years after a request for confidentiality was made.

To streamline the procedure and reduce the burden on state agencies, §89(5) should be amended as follows:

5.(a)(1) A person acting pursuant to law or regulation who, subsequent to the effective date of this subdivision, submits any information to any state agency may, at the time of submission, request that the agency <u>provisionally</u> except such information from disclosure under paragraph (d) of subdivision two of section eighty-seven of this article. Where the request itself contains information which if disclosed would defeat the purpose for which the exception is sought, such information shall also be <u>provisionally</u> excepted from disclosure.

(1-a) A person or entity who submits or otherwise makes available any records to any agency, may, at any time, identify those records or portions thereof that may contain critical infrastructure information, and request that the agency that maintains such records provisionally except such information from disclosure under subdivision two of section eighty-seven of this article.  Where the request itself contains information which if disclosed would defeat the purpose for which the exception is sought, such information shall also be <u>provisionally</u> excepted from disclosure.

(2) The request for an exception shall be in writing<u>, shall specifically identify which portions of the record are the subject of the request for exception</u> and <u>shall</u> state the reasons why the information should be <u>provisionally</u> excepted from disclosure. <u>Any such request for an exception shall be effective for a five-year period from the agency's receipt thereof. Provided, however, that not less than sixty days prior to the expiration of the then current term of the exception request, the submitter may apply to the agency for a two-year extension of its exception request.  Upon timely receipt of a request for an extension of an exception request, an agency may either (A) perform a cursory review of the application and grant the extension should it find any justification for such determination, or (B) commence the procedure set forth in paragraph (b) of this subsection to make a final determination granting or terminating such exception.</u>

(3) Information submitted as provided in subparagraphs one and one-a of this paragraph shall be <u>provisionally</u> excepted from disclosure and be maintained apart by the agency from all other records until <u>the expiration of the submitter's exception request or</u> fifteen days after the entitlement to such exception has been finally determined, or such further time as ordered by a court of competent jurisdiction.

(b) <u>During the effective period of an exception request under this subdivision, on the</u> initiative of the agency at any time, or upon the request of any person for a record excepted from disclosure pursuant to this subdivision, the agency shall:

(1) inform the person who requested the exception of the agency's intention to determine whether such exception should be granted or continued;

(2) permit the person who requested the exception, within ten business days of receipt of notification from the agency, to submit a written

statement of the necessity for the granting or continuation of such exception;

(3) within seven business days of receipt of such written statement, or within seven business days of the expiration of the period prescribed for submission of such statement, issue a written determination granting, continuing or terminating such exception and stating the reasons therefor; copies of such determination shall be served upon the person, if any, requesting the record, the person who requested the exception, and the committee on ~~public access to records~~ open government.

(c) A denial of an exception from disclosure under paragraph (b) of this subdivision may be appealed by the person submitting the information and a denial of access to the record may be appealed by the person requesting the record in accordance with this subdivision:

(1) Within seven business days of receipt of written notice denying the request, the person may file a written appeal from the determination of the agency with the head of the agency, the chief executive officer or governing body or their designated representatives.

(2) The appeal shall be determined within ten business days of the receipt of the appeal. Written notice of the determination shall be served upon the person, if any, requesting the record, the person who requested the exception and the committee on ~~public access to records~~ open government. The notice shall contain a statement of the reasons for the determination.

(d) A proceeding to review an adverse determination pursuant to paragraph (c) of this subdivision may be commenced pursuant to article seventy-eight of the civil practice law and rules. Such proceeding, when brought by a person seeking an exception from disclosure pursuant to this subdivision, must be commenced within fifteen days of the service of the written notice containing the adverse determination provided for in subparagraph two of paragraph (c) of this subdivision.

(e) The person requesting an exception from disclosure pursuant to this subdivision shall in all proceedings have the burden of proving entitlement to the exception.

(f) Where the agency denies access to a record pursuant to paragraph (b) of this subdivision in conjunction with ~~(d) of~~ subdivision two of section eighty-seven of this article, the agency shall have the burden of proving that the record falls within the provisions of such exception.

(g) Nothing in this subdivision shall be construed to deny any person access, pursuant to the remaining provisions of this article, to any record or part excepted from disclosure upon the express written consent of the person who had requested the exception.

(h) As used in this subdivision the term "agency" or "state agency" means only a state department, board, bureau, division, council or office and any public corporation the majority of whose members are appointed by the governor.

This recommendation was proposed by the Legislature in years past, including in 2012 and 2013 (A.610), when it was introduced in both houses and passed by the Assembly (A.9022/S.7816).

# SERVICES RENDERED BY THE COMMITTEE

**3423** TELEPHONE INQUIRIES
**1628** RESPONSES TO WRITTEN INQUIRIES
**94** ADVISORY OPINIONS
**77** PRESENTATIONS
THOUSANDS ADDRESSED
THOUSANDS OF RADIO AND WEBINAR LISTENERS

Committee staff offers advice and guidance orally and in writing to the public, representatives of state and local government, and to members of the news media. Each year we track telephone calls and advisory opinions rendered. In 2012, in an effort to be more comprehensive in our data collection, we began tracking email responses to questions, which has become an important element of the services that we provide.

During the past year, with a staff of three, the Committee responded to over 3,400 telephone inquiries, over 1600 requests for guidance answered via email or U.S. mail and responded to 94 requests for detailed written opinions in regard to the FOIL, the OML and Personal Privacy Protection Law. In addition, staff gave 77 presentations before government and news media organizations, on campus and in public forums, training and educating more than 3,800 people concerning public access to government information and meetings. We are grateful that many entities are now broadcasting, webcasting and/or recording our presentations, thereby making them available to others.

A.    Online Access

Since its creation in 1974, the Committee's staff has prepared more than 25,500 written advisory opinions in response to inquiries regarding New York's open government laws. The opinions prepared since early 1993 that have educational or precedential value are available online through searchable indices.

In addition to the text of open government statutes and the advisory opinions, the Committee's website also includes:

- Model forms for email requests and responses
http://www.dos.ny.gov/coog/emailrequest.html;
http://www.dos.ny.gov/coog/emailresponse.html

- Regulations promulgated by the Committee (21 NYCRR Part 1401)
http://www.dos.ny.gov/coog/regscoog.html

- "Your Right to Know," a guide to FOIL and OML that includes sample letters of request and appeal, as well as links to a variety of additional material.
http://www.dos.ny.gov/coog/Right_to_know.html

- "You Should Know", which describes the Personal Privacy Protection Law
http://www.dos.ny.gov/coog/shldno1.html

- An educational video concerning FOIL and OML consisting of 27 independently accessible subject areas
http://www.dos.ny.gov/video/coog.html

- Responses to "FAQ's" (frequently asked questions)
http://www.dos.ny.gov/coog/freedomfaq.html;
http://www.dos.ny.gov/coog/openmeetinglawfaq.html

- "News" that describes matters of broad public interest and significant developments in legislation or judicial decisions
http://www.dos.ny.gov/coog/news.html

## B.    Telephone Assistance

This year, Committee staff answered approximately 3,423 telephone inquiries, the majority of which pertained to FOIL.  We recorded fewer telephone inquiries than in 2017, most likely due to an increased reliance on email and the website.



## C.    Assistance via Email and Written Correspondence

In 2012, Committee staff began tracking substantive email requests in much the same way it tracks telephone statistics, by writer and subject.  Like telephone calls, routine and mundane office business emails were not tracked.

This past year, 1628 written responses to inquiries other than advisory opinions via email and postal mail were prepared in regard to the FOIL and OML.   Based on the data captured, the majority of the requests concern issues related to FOIL.



## D.    Advisory Opinions

Committee staff is conscientious about providing guidance as efficiently as possible, including links to online advisory opinions when appropriate, and therefore, prepared fewer written advisory opinions than in previous years.  When a written response from staff contained a substantive opinion with legal analysis, it was recorded as an advisory opinion as before.

Nevertheless, Committee staff prepared 94 advisory opinions in response to requests from across New York.   As is true in years past, the majority of the opinions (58) pertained to FOIL.



## E.    Presentations

An important aspect of the Committee's work involves efforts to educate by means of seminars, workshops, radio and television interview programs, and various public presentations.  During the past year, the staff gave 77 presentations.  The presentations are identified below by interest group for the period of November 1, 2017 to October 31, 2018.  More than 3,800 received training and education through those events, and countless others benefitted from the use of the Committee's training video online, materials posted on the website, as well as radio and television programs.



1.    **Presentations, addresses and training were given before the following groups associated with   government:**

- Lumsden McCormick, Exempt Organizations Annual Conference, Buffalo
- NYS Association of School Business Officials, Albany
- International Conference on Public Administration, Accra, Ghana (2 presentations)
- Village of Hempstead, training
- BOCES Business Officials, Albany
- Association of Towns, newly elected officials, Rochester
- Association of Towns, newly elected officials, Albany
- Hempstead Board of Education/Administrators, Hempstead
- Association of Towns Annual Conference, New York City
- Montgomery County, training, Fonda
- New York Government Finance Officers Association, Albany
- Tug Hill Local Government Conference, Watertown (2 presentations)
- Southern Tier Central Annual Leadership Conference, Corning
- Local government training sponsored by Town of Bolton
- New York Planning Federation Planning and Zoning Conference, Bolton Landing
- NYS Association of Town Clerks, Albany
- New York GovBuy Conference, Albany
- NY Conference of Mayors, Annual Conference, Saratoga Springs
- State Archives sponsored FOIL/Records Management Training, Albany
- Town of Oyster Bay, court ordered training
- New York Municipal Clerks Institute, Albany
- City of Peekskill, training
- County and Borough Historians Institute, Albany
- Community Board 8, Brooklyn
- NYS Public Employer Labor Relations Association, Saratoga Springs
- Madison-Oneida BOCES training, Verona
- City of Yonkers Police Department, training, Yonkers
- City of Kingston, training, Kingston

- Dutchess County, training, Poughkeepsie (CLE)
- Rockland County, training, New City (CLE)
- NY Conference of Mayors Training School, Lake Placid (CLE, 2 presentations)
- NYS Archives, training, Albany
- City of Kingston, training, Kingston
- Town of Schuyler Municipal Continuing Education Program, Schuyler
- Upstate Chapter, American Planning Association Annual Conference, Ithaca
- Adirondack Association of School Business Officials, Plattsburgh
- Clarkstown Police Department, training, Clarkstown
- Cornell Cooperative Extension Executive Leadership Conference, Ithaca
- Central NY Association of School Business Officials, Canandaigua
- NYS School Boards Association, New York City

2.  **Presentations for students:**

- CUNY, Graduate School of Journalism, New York City
- Senate Fellows, Albany
- Ithaca College, journalism students, Ithaca
- CCNY, journalism students, New York City
- Syracuse University, Maxwell School, Shenzhen municipal officials, Albany
- Syracuse University, Maxwell School, Fudan graduate students, Albany
- Syracuse University, Maxwell School, Beihang graduate students, Albany
- Syracuse University, Maxwell School, Sun Yat-Sen University, Guangzhou, graduate students, Albany
- SUNY Albany, journalism students, Albany
- Syracuse University, Maxwell School, Zheziang graduate students, Albany
- College of St. Rose, journalism students, Albany
- SUNY Stony Brook, journalism students, Albany

3. **Presentations for groups associated with the news media:**
- Capitol Pressroom, radio broadcast, Albany
- New York Press Association, Albany
- WIBX, Utica, radio broadcast
- Capitol Pressroom, radio broadcast, Albany
- WMHT TV, "Citizen Active" interview, Albany
- WCSS Amsterdam, radio broadcast
- WKNY, Kingston, radio broadcast
- WTEN TV, Albany, FOIL interview

4. **Other presentations/public forums:**
- Town of New Lebanon, public forum
- International Visitor Leadership Program, Palestinian delegation, Albany
- Town of Danby, public forum
- International Center of the Capital Region, Georgian delegation, Albany

- Federal Bar Association, New York City (CLE)
- Saratoga Public Library, public forum
- Town of Norwich, public forum
- City of Corning, public forum
- NY Publishers Association/Capital District Council for the Social Studies, keynote, Bethlehem
- Hoosick Valley Central School District, public forum, Schaghticoke
- NYS Bar Association, Albany (CLE)
- International Visitor Leadership Program, Israeli delegation, Albany
- Locust Valley School District, public forum, Locust Valley
- Center for Governance, Clinton Community College, keynote, Plattsburgh
- Baruch College, faculty and students, New York City