# EXHIBIT D



**STATEMENT OF OLEG CHERNYAVSKY**
**ASSISTANT DEPUTY COMMISSIONER, LEGAL MATTERS**
**NEW YORK CITY POLICE DEPARTMENT**

**NEW YORK STATE SENATE**
**STANDING COMMITTEE ON CODES**
**VAN BUREN HEARING ROOM A**
**LEGISLATIVE OFFICE BUILDING, 2nd FLOOR**
**ALBANY, NEW YORK**
**OCTOBER 24, 2019**

Good morning Chair Bailey and members of the Senate. I am Oleg Chernyavsky, Assistance Deputy Commissioner of Legal Matters for the New York City Police Department (NYPD). On behalf of Police Commissioner James P. O'Neill, I am pleased to testify today regarding civil rights law provisions relating to personnel records of police officers.

The New York City Police Department's mission is to protect the health, safety and welfare of those who live in, work in, and visit our city. Vital to this mission is a well-trained, focused, and disciplined team of police officers. In recent years, the NYPD has worked tirelessly to strengthen our connection with the communities we serve. We have become more service oriented, better trained at diffusing challenging situations and utilizing alternatives to force. We have become sharply focused on the real drivers of violence in our city. The numbers bear this out. We have driven crime to historic lows while at the same time nearly eliminating the use of stop and frisk and drastically reducing the number of individuals we arrest and summons.

These are all achievements that we take pride in, and we attribute much of our success to our Neighborhood Policing philosophy. Our Neighborhood Policing strategy is a comprehensive crime-fighting strategy built on promoting communication and collaboration between police officers and the people we serve. Our goal is to connect and protect while simultaneously cultivating stronger relationships and building trust with the community. We have conformed our sectors in each precinct to the boundaries of actual established neighborhoods and have sought to inspire a shared responsibility with our local residents in order to fight crime at a more local level and find solutions to community issues. Neighborhood Policing encourages officers to spend time interacting with the communities they serve – to engage with neighborhood residents, identify problems, and work toward positive resolutions. We build trust by working in partnership with a variety of stakeholders – our fellow law enforcement and city agencies, service providers, and advocacy organizations to help the Department become more knowledgeable and responsive to the unique needs of diverse communities and victims of crime. We also build trust by collaborating with our elected, community and faith leaders to improve public safety and security for all New Yorkers.

We recognize, however, that *lasting* trust cannot be achieved without the application of a fair and transparent police discipline process. With more than 36,000 uniformed officers, the NYPD is by far, the largest police force in the nation. Each day, the men and women of the NYPD engage in one of the most complex, but also rewarding, jobs and do so upholding the oath they took and the honor their badge demands. This is what our Department expects. Yet, we know that officers are

human beings. Like any other profession, sometimes our officers make mistakes during trying situations; and troublingly, a few betray the public trust which blemishes the Department, their fellow officers and the badge that they wear.

Yet, when officers are disciplined for substantiated misconduct, the public is often left uninformed. Since 1976, Civil Rights Law 50-a has prohibited the public disclosure of police records relating to misconduct, absent a court order or express consent of the police officer who is the subject of such discipline. As currently constituted, the stringent requirements of Civil Rights Law 50-a breeds mistrust and a belief that the few officers who betray the public trust are never held accountable by the Police Department.

The NYPD does not fear scrutiny; we welcome that discussion. Recognizing that a disciplinary system that is unbiased, clear, and consistent is essential to the Department and the public alike, the NYPD took the initiative to appoint a three-person panel of highly-respected experts to perform an independent and exhaustive review of the Department's disciplinary system. This blue-ribbon panel was specifically tasked with identifying areas where the Department could be more transparent and recommending areas of improvement. These independent experts issued a comprehensive report in January and subsequently, the Department agreed to adopt all 14 of their recommendations to improve the NYPD's disciplinary system, including supporting an amendment to section 50-a of the Civil Rights Law, which is among the reasons we are here today.

Section 50-a was enacted to protect police officers and prevent them being harassed in the courtroom based upon unsubstantiated, unverified or immaterial allegations of misconduct that are irrelevant to the subject of their testimony. Section 50-a requires a court to examine an officer's personnel records in-camera and make a determination as to whether the allegations of misconduct are material and relevant before permitting defense counsel access to such records. The law requires that each party be afforded an opportunity to be heard during this process, including the officer. The safeguards imposed by section 50-a promote the fair administration of justice. A repeal of the law would extinguish the officer's voice in a process centered on disclosure of their own personnel records and provide defense counsel access to records irrelevant to the case before the court. Moreover, it would make publically available records of administrative violations. This could include violations of even the lowest level of Department rules such as misplacing an identification card or failing to shine his or her shoes. Disclosure of such information, without safeguards or an officer having the ability to contest its release, serves only to embarrass police officers and muddying the waters, turning trials into accusations about an officer, and unnecessarily derailing criminal prosecutions.

Harassment on the stand or in the street is not the only risk our officers would face. Law enforcement encounters are understandably unpleasant experiences for those that are the subject of such action. One unfortunate development is that perpetrators who victimize the public seek to retaliate and threaten police officers. Officers have seen protests at their homes and death threats to themselves – and their families – even before the facts of an incident are fully known. Just last year, there were 154 direct threats made against individual NYPD officers, up from 151 such threats in 2017. This total does not include the additional 150 general threats made against police in New York City in each of those years. In the internet age, where personal information may be a Google search away, releasing personnel records in cases where there are allegations but the

facts are not fully known, cases stemming from administrative violations that have never been the focus of public scrutiny, or in cases where there is a clear and explicit threat, is a risk to officer safety.

The Department has attempted to make available some disciplinary information publicly. Attempts to release anonymized summaries of disciplinary proceedings have been blocked by the courts as violating 50-a. A number of courts have revisited the scope of protections afforded by section 50-a and have further considered the heighted dangers faced by police officers. The courts have affirmed that the scope of section 50-a protects against all these risks.

Transparency, of course, need not come at the cost of officer safety, and officer safety need not come at the cost of transparency. For this reason, the NYPD unequivocally supports an amendment to Civil Rights Law 50-a. We support a careful balance between protection for our officers and the need for transparency. An amended 50-a should allow the release of the complaint, allegations or charges, the transcript of the hearing, any written opinion, and final disposition and penalty at the conclusion of a discipline process for serious police misconduct. All this information has been previously shielded by 50-a. In serious discipline cases, this reformed approach would allow for the disclosure of cases after they have been adjudicated – providing the public greater transparency than before. Minor misconduct, such as uniform infraction or lateness, should continue to maintain their 50-a protections.

By amending, rather than repealing the law, we can create a balance between officer safety, accountability and transparency. This past year, the Department has taken many steps towards finding that balance. We have narrowed our interpretation of the scope of 50-a through changes in our Department policies. For example, when a Freedom of Information Law (FOIL) request is made for body-camera footage, arrest reports, and other routine police reports completed in connection with an arrest, the NYPD Legal Bureau is no longer asserting 50-a as a basis for non-disclosure. We have also begun to publish annual reports on our website, dating back to 2016, that provide aggregate discipline information including the disciplinary charge and the penalty received. To promote open disciplinary proceedings, an updated trial calendar can now be found on our website as well. Most recently, the Department has issued presumptive discipline protocols for members of the service determined to have committed domestic violence acts. The Department is dedicated to creating a disciplinary system that is equitable, fair and transparent.

Our officers are engaged in rewarding, but dangerous work. They accept these dangers because they have chosen a selfless profession devoted to making the lives of the people of New York City safer. It is our collective responsibility to find a meaningful and more balanced way to address calls for greater transparency and accountability while promoting the fair administration of justice and ensuring a safe work environment for our officers. A complete repeal of Civil Rights Law 50-a would pose a formidable challenge to these goals. We welcome the opportunity to work with you to amend the portions of 50-a that restrict transparency, but preserve those sections of the law that protect the brave men and women who protect us all.

Thank you for the opportunity to testify, I am happy to answer any questions you may have.