# EXHIBIT J



Of The City Of New York, Inc.

NEW YORK STATE SENATE STANDING COMMITTEE ON CODES
**Public Hearing: Policing (S3695), repeals provisions relating to personnel records of police officers, firefighters, and correctional officers**
October 24, 2019
Van Buren Hearing Room A, Legislative Office Building, 2nd Floor, Albany, New York

## SUPPLEMENTAL STATEMENT OF NYC PBA PRESIDENT PATRICK J. LYNCH

The Police Benevolent Association of the City of New York, Inc. ("NYC PBA") and its over 24,000 members, who patrol New York City's streets and do the difficult and dangerous work of protecting every resident, every visitor and every business operating within the five boroughs, submits this supplemental statement in further opposition to Senate Bill S.3695, the enactment of which would repeal Civil Rights Law § 50-a ("CRL § 50-a"). In advance of the Committee's October 17 hearing on this issue, the NYC PBA submitted a statement sharing our strong concerns regarding that bill and general efforts to repeal CRL § 50-a ("Oct. 17 Statement"). At the October 17 hearing, various stakeholders provided oral testimony, much of which was imprecise, inaccurate, or both. It is vital that the discussion of legislation that will have such a drastic impact on the lives of hundreds of thousands of hard-working New Yorkers be based on facts, not falsehoods. The NYC PBA therefore submits this supplemental statement to clarify the record.[1] The first portion of this statement addresses the scope of documents subject to CRL § 50-a and whether public release would achieve the goals articulated by repeal advocates. The second portion refutes specific inaccuracies cited in the oral testimony.

### *Activists Vocally Demand Access to Substantiated Misconduct Findings (2% of CCRB Cases), Yet Also Quietly Seek Access to Unsubstantiated Allegations via Repeal (98% of CCRB Cases)*

As an initial matter, it is important to clarify the scope of the disciplinary documents that will be subject to unfettered access if CRL § 50-a is repealed, and whether the release of those documents would further the advocates' stated purpose for repeal. Advocates have long argued that the purpose of CRL § 50-a is to "protect and hide bad conduct" committed by law enforcement.[2] This was the key point at the October 17 hearing, where panelist after panelist

---

[1] This supplemental statement should be considered with the previously submitted Oct. 17 Statement.

[2] One panelist went so far as to state that CRL § 50-a's *only* purpose is to protect and hide police violence."

asserted the need for "transparency" to identify so-called "dangerous officers" based on prior findings of misconduct in order to prevent recurrence of such behavior. But the vast majority of discipline records do not reflect any misconduct committed by police officers. Indeed, last year, the New York City Civilian Complaint Review Board ("CCRB") *did not find misconduct in 98% of complaints received.* Repeal advocates consistently conflate *complaints*, which are *allegations* of misconduct, with substantiated findings of wrongdoing. But the difference is vast and important. There simply is no basis to rely on unsubstantiated allegations of misconduct—including false and fraudulent claims—as a means of promoting accountability.

The advocates also rely broadly on the term "misconduct," which encompasses any act for which a police officer can be disciplined. For NYPD officers, this includes, among many other things, failure to maintain a neat and clean personal appearance, unnecessary conversation, and failure to notify a commanding officer when address, telephone number, or social conditions change.[3] It stretches credulity to assert that unfettered access to such information is necessary to achieve the advocates' stated goal. Yet it is plain that release of such information will embarrass police officers, decrease morale, and foster unjustified disrespect for law enforcement.

### *The Liberties Proponents of Repeal Have Taken With The Facts*

The day after the October 17 hearing, New York City Mayor Bill de Blasio delivered a damning assessment of the conduct of those campaigning for the repeal of CRL § 50-a. Specifically, Mayor de Blasio correctly noted that repeal advocates "*are being immature about their facts*" and "*need to start talking about the issues in an honest, intelligent, and fact-based way.*" This stunning rebuke should set off alarm bells within the Codes Committee about the information they are receiving from repeal advocates and, by way of example only, some of the advocates' mischaracterizations are discussed below.

**Advocate assertion: New York is one of only two states that limit public access to police disciplinary records.**

**Reality: Police disciplinary records are "pretty much always confidential" in 23+ states and virtually all states limit public access to such records.**

Incredibly, panelists continued to regurgitate the completely debunked assertion that New York is one of only two states that restricts access to police disciplinary records.[4] If the Codes

---

[3] NYPD Patrol Guide Proc. No. 206-03 (Disciplinary Matters).

[4] *See* Robert Lewis *et al.*, *Is Police Misconduct a Secret in Your State?*, WNYC News (Oct. 15, 2015) (finding that there are "23 states plus the District of Columbia where police disciplinary records are pretty much always confidential," 15 states where such records have "limited availability," and even in the very small minority of states where police records are sometimes public, "many of these states still make records of unsubstantiated complaints or active investigations confidential," which would not be the case in New York absent CRL § 50-a).

2

Committee nevertheless credits demonstrably false statements like this and pursues a repeal of CRL § 50-a, it will be sending a clear message that facts no longer matter in New York State.

Tellingly, some advocates apparently realized the impact that this "two states" falsehood would have on their credibility, but their response was to be even more misleading. Rather than just admit the truth—that in 23+ states police disciplinary records are "pretty much always confidential"—they have simply added the word "specifically" to their argument and now claim that New York is one of two states that "specifically" restricts access to police records. In fact, and as the advocates conveniently failed to mention, many states have *far broader* statutes that make the disciplinary records of police officers *and* other public employees confidential.[5] The advocates' goal is clear—that the Codes Committee not notice or appreciate this single word revision and incorrectly believe that 48 other states publish police disciplinary records. Frankly, we should be outraged by this transparent attempt to mislead our elected officials.[6]

**Advocate assertion: Repeal would pose zero risk to police officer safety because home addresses might still be protected.**

**Reality: The internet exists and information such as the names of police officers can easily be used to locate their homes.**

Advocates repeatedly made the point that they do not want—and FOIL would protect—addresses and social security numbers, so the repeal of CRL § 50-a would not pose any safety risks to police officers. But, to accept this argument would require the Codes Committee to simply pretend that the internet does not exist. In this day and age, everyone—the repeal advocates, criminals, elected officials, law enforcement—understands and can agree on the fact that a person's name can easily be used to locate their home address. This should not be controversial.

Moreover, that individuals would use such information in an attempt to murder police officers is not "bad faith fearmongering," as the advocates claim.[7] *Indeed, it recently happened, in New York City, and resulted in the death of an innocent New Yorker.* Specifically:

---

[5] *See id.* (concluding that police disciplinary records are confidential in Alaska, California, Colorado, Delaware, the District of Columbia, Idaho, Iowa, Kansas, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Dakota, Virginia, and Wyoming).

[6] In one exchange, it was suggested that it would be unacceptable for NYPD police officers to have stronger privacy protections than LAPD police officers. But, if CRL § 50-a is repealed, LAPD police officers would have *far stronger* privacy protections than NYPD police officers. There was no explanation of why that would be acceptable.

[7] In light of the assassinations of New York City Police Officers Ramos, Liu, and Familia, and countless other recent attacks on first responders, the accusation levied by repeal advocates that law enforcement is engaging in "fearmongering" here—much less "bad faith fearmongering"—is exceedingly offensive and plainly wrong. How many more police officers need to be assaulted or murdered because of their uniforms before their safety concerns will be heard and not thoughtlessly—and condescendingly—dismissed?

3

> Kingsley built the explosive device used in the July 28, 2017 murder as part of his broader effort to retaliate violently against several police officers who were part of an NYPD unit that had arrested him in January 2014 . . [He] methodically sought revenge against the officers. He conducted internet searches and made telephone calls to determine the locations of the officers' residences. . . Ultimately, he arranged for the explosive device to be placed outside of [a] Queens residence . . . The building owner inadvertently detonated the device when he tried to open it, and he died as a result of his injuries.[8]

Accordingly, the fact that home addresses may not be released is—as the advocates know—entirely beside the point. Stating the obvious, the publication of information like names, precincts, and incident details can easily be used in a matter of minutes to identify where police officers and their families reside. To suggest that police officers will be safe so long as their addresses are kept confidential is both naïve and irresponsible.

**Advocate Assertion: The ONLY RISK to protect against is attacks directed at police officers who commit misconduct.**

**Reality: A MAJOR RISK to protect against is general attacks against police officers who have committed no misconduct.**

One of the main risks of a CRL § 50-a repeal is blatantly obvious, yet not a single panelist bothered to even mention it, let alone explain why it is not a valid concern. If CRL § 50-a is repealed, allegations of misconduct will constantly be sensationalized by the media and advocacy groups, in a cynical effort to generate revenue (tabloids) and demonize police officers (advocates). In the current climate, the publication of outrageous false accusations will only embolden those who believe it is acceptable to assault and even murder police officers.

One line in the October 17, 2019 hearing got a big reaction from repeal advocates—"feelings aren't facts." But, that statement only strongly confirms the need for CRL § 50-a. Here are the facts:

- **Rafael Ramos** was a beloved husband and father of two boys. He lived in Queens and worked in Brooklyn. He was a New York City Police Officer and he was murdered because of his uniform, purportedly as "revenge" for the alleged misconduct of others.

- **Wenjian Liu** was a beloved husband, son, and father to a baby girl he never got to meet. He was a New York City Police Officer and he was murdered because of his uniform, purportedly as "revenge" for the alleged misconduct of others.

---

[8] Press Release, *Brooklyn Man Arrested for Using a Weapon of Mass Destruction*, United States Department of Justice (Feb. 28, 2018).

4

- **Miosotis Familia** was a beloved single mother who also cared for an elderly parent. She lived and worked in the Bronx. She was a New York City Police Officer and she was murdered because of her uniform, purportedly as "revenge" for the alleged misconduct of others.

The recent assassinations of these three hero police officers are "facts," not mere "feelings." That they were murdered in "retaliation" for actions that had absolutely nothing to do with them is a "fact," not a "feeling." And it is a matter of basic common sense that the release of unsubstantiated misconduct allegations—which is exactly what the repeal of CRL § 50-a would do—will unfairly villainize *all* police officers (not just those accused of misconduct) and exponentially increase the risk of random "revenge" or "retaliatory" attacks against them.

By contrast, advocates *are* seeking to repeal CRL § 50-a based on "feelings"—for example, a "feeling" that New York State can roll the dice and take its chances with police officer safety and nothing will happen; a "feeling" that repeal might not result in the many harms highlighted by progressive commentators; a "feeling" that public safety will somehow not be impacted when guilty individuals are set free after false allegations of police misconduct derail criminal trials; and a "feeling" that it is acceptable to provide police officers with fewer privacy protections than countless other far less dangerous professions.

Finally, New York criminal justice reform advocates spent a considerable amount of time discussing the self-serving assertion of a Chicago criminal justice reform advocate who published police records that he was unaware of any "reports" of any individuals saying that they attacked police officers after reviewing the records. Again, this completely misses the point: the mere fact that the advocates claim to be unaware of safety impacts does not disprove their existence, and this narrow focus completely ignores the general deterioration of the safety environment in which police officers work every day. Moreover, it would be patently irresponsible to repeal a law that has kept New York union workers safe for 43 years based on the alleged experience of a single reform advocate in a single city over a short period of time.

**Advocate Assertion: FOIL provides sufficient protections for officer safety and privacy so 50a is not needed.**

**Reality: FOIL provides no such protection.**

Advocates repeatedly suggested that existing privacy exemptions under FOIL render CRL § 50-a unnecessary, but one crucial word was largely absent from their testimony— "discretion." They consciously avoided that word because it completely puts the lie to the assertion that FOIL safeguards police information. For the avoidance of any doubt, the FOIL statute states that an "agency *may* deny access to records . . . that if disclosed would constitute an unwarranted invasion of personal privacy." Put differently, absent CRL § 50-a FOIL would *expressly permit* government agencies to release confidential police officer records, *even where it would be an unwarranted privacy invasion*. Accordingly, and contrary to the claims of numerous proponents of repeal, FOIL in fact provides zero protection to police officers.[9]

---

[9] Indeed, CRL § 50-a was passed two years after FOIL, precisely because the FOIL exemptions now championed by repeal advocates were not adequately protecting police officers.

5

**Advocate assertion: Repealing CRL § 50-a would level the discipline records playing field for police officers and all other public employees.**

**Reality: Absent CRL § 50-a, police officers would have *far less* protection than other licensed-professionals, public employees, and elected officials throughout New York State.**

Repealing CRL § 50-a would make available unsubstantiated allegations leveled against police officers.[10] Yet, various statutes and practices ensure that pending, unproven, and disproven allegations are kept confidential for millions of employees across New York State. For example:

- Education Law §3020-A. When a teacher is acquitted of misconduct claims the "*charges must be expunged from the employment record*" in order "*to preclude unsubstantiated charges from being used unfairly against or in relation to a tenured teacher.*"

- Education Law § 6510(8). "*Files … relating to the investigation of possible instances of professional misconduct … shall be confidential and not subject to disclosure* at the request of any person, except upon the order of a court in a pending action or proceeding."

- Public Health Law § 230. "Administrative warnings and consultations [regarding licensed physicians] shall be confidential and shall not constitute an adjudication of guilt or be used as evidence that the licensee is guilty of the alleged misconduct." Reports to the Office of Professional Misconduct "shall remain confidential."

- The New York State Education Department investigates misconduct of virtually all licensed professions and keeps confidential unsubstantiated claims and many substantiated claims. "*Complaints are accusations of professional misconduct; those that do not result in disciplinary action are confidential.*"[11]

- Executive Law § 94. Joint Commission on Public Ethics ("JCOPE")[12] *proceedings are confidential, and complainants may not be notified of any JCOPE action regarding*

---

[10] Police officers are uniquely susceptible to civilian complaints. In the ordinary course of carrying out their responsibilities officers necessarily engage in tense and antagonistic scenarios with civilians.

[11] http://www.op.nysed.gov/opd/opdfaq.htm (FAQ, "How can I find out if there have been any disciplinary actions against a licensee?").

[12] JCOPE has jurisdiction over violation of the state's ethics laws (Public Officers Law §§73, 73-a, and 74), the "Little Hatch Act" (Civil Service Law §107), and the Lobbying Act (Legislative Law Article 1-A) as they apply to State legislators, candidates for the Legislature and legislative employees, the four statewide elected officials, candidates for those offices, executive branch employees, political party chairs, and lobbyists and their clients.

6

*their complaint* unless and until there is final action that can be publicly disclosed pursuant to the statute.[13]

The panelists repeatedly noted that police officers wield great power over the public and they deserve less protection, not more. While there is no doubt that police officers hold a unique position in the community, it is baseless to suggest that they are the only employees wielding significant power over people's lives and safety such that they should stand alone as the only group not entitled to basic privacy protections. For example, children are left alone in the care of educators, and patients rely upon medical professionals to administer medication and perform operations. It would be patently inequitable to protect the privacy rights and unsubstantiated allegations of state-licensed professionals, while not protecting the privacy rights and unsubstantiated allegations of police officers.

**Advocate Assertion: CRL § 50-a protects police officers and harms the public.**

**Reality: CRL § 50-a protects communities by focusing criminal trials on the merits of the case and not on irrelevant and immaterial "fishing expeditions" into police officer records.**

Advocates boldly asserted that CRL § 50-a "harms New Yorkers." But this conclusory assertion lacks nuance and overlooks the very premise behind the statute's creation—and the careful statutory scheme designed to balance police officers' rights with the public's right of access. The impetus for enacting this statute in 1976 was the practice by defense attorneys of "fishing" through police files for information to embarrass and harass police officer witnesses in criminal trials. Putting aside any concern for the reputations and careers of the police officers, which the advocates clearly do not value, this practice puts New Yorkers at risk. The effect is the creation of a sideshow that distracts from the merits of the defendant's case. The police officer is suddenly on trial and the inquiry into the defendant's guilt is subordinated. Law enforcement throughout New York State, including District Attorneys, are well aware that if CRL § 50-a is repealed, dangerous defendants will benefit from this strategy, escaping accountability, and walking back into our communities. CRL § 50-a expressly permits the release of relevant and material police discipline records for use in a criminal trial so that exculpatory information may be admitted while harassing material is weeded out. This carefully crafted safeguard protects police officers and all New Yorkers.

\* \* \*

In light of all of the foregoing, the NYC PBA strongly opposes any efforts to repeal Civil Rights Law § 50-a.

---

[13] https://jcope.ny.gov/jcope-investigative-process (JCOPE Investigative Process).

7