EXHIBIT P

Friedman, J.P., Renwick, Kern, Oing, JJ.

10995      In re Patrick J. Lynch, etc., et al.,   Index 152235/18
               Plaintiffs-Petitioners-
               Respondents-Appellants,

                     -against-

           The New York City Civilian Complaint
           Review Board, et al.,
               Defendants-Respondents-
               Appellants-Respondents.
               - - - - -
           James P. O'Neill, etc.,
               Nominal Defendant.
           _____

James E. Johnson, Corporation Counsel, New York (Kevin Osowski
of counsel), for appellants-respondents.

Golenbock Eiseman Assor Bell & Peskoe LLP, New York (Matthew C.
Daly of counsel), for respondents-appellants.
           _____

    Order, Supreme Court, New York County (Melissa A. Crane,

J.), entered February 28, 2019, which, insofar as appealed from

as limited by the briefs, granted the hybrid CPLR article 78

petition/complaint to the extent of declaring invalid Rules of

City of New York Civilian Complaint Review Board (38-A RCNY) §§

1-11(a) and (b), 1-33(a), and 1-42(h), and denied the

petition/complaint as to Rules 1-15(a), 1-24(d) and (l), 1-31(b),

1-44, and 1-53(a) and the resolution to begin investigating

alleged sexual misconduct, modified, on the law, to deny the

petition as to invalidate Rules 1-11(a) and (b) and vacate the

declaration that those rules are invalid, and to grant the

11

petition as to the sexual misconduct resolution, and it is
declared that the resolution is invalid, and otherwise affirmed,
without costs.

Defendant-respondent The New York City Civilian Complaint
Review Board (the CCRB) investigates allegations of police
misconduct toward members of the public (NY City Charter §
440[a]).  It is empowered to receive, investigate, hear, make
findings, and recommend action upon complaints that allege
misconduct involving excessive use of force, abuse of authority,
discourtesy or use of offensive language (FADO) (*id.* §
440[c][1]).  At issue in this appeal are certain amended rules
adopted by the CCRB in 2018 (*see* NY City Charter § 440[c][2]; *see
also id.* [City Administrative Procedure Act] [CAPA] § 1043) and a
resolution, also adopted in 2018, to begin investigating sexual
misconduct, which previously had been referred to the New York
City Police Department (NYPD) Internal Affairs Bureau (IAB).
Petitioners contend that the rules and the sexual misconduct
resolution are invalid because, inter alia, they exceed the
CCRB's jurisdiction and are arbitrary and capricious.

38-A RCNY 1-11(a), as amended, permits any individual having
personal knowledge of alleged misconduct by a member of NYPD to
file a complaint.  "Personal knowledge" is defined as knowledge
"gained through firsthand observation or experience" (38-A RCNY

12

1-01).  This rule is within the CCRB's statutory authority and is rationally rooted in the New York City Charter's directive that the CCRB receive complaints from "members of the public" (NY City Charter § 440[a]).

38-A RCNY 1-11(b), as amended, gives the CCRB discretion to investigate complaints filed by "Reporting Non-Witnesses," i.e., persons "without personal knowledge" of the alleged misconduct (38-A RCNY 1-01).  This rule is rationally related to the purpose of the establishment of the CCRB, i.e., that the investigation of complaints of police misconduct "is in the interest of the people of the city of New York and the New York city police department" (NY City Charter § 440[a]).

There is no basis for Supreme Court's speculation that 38-A RCNY 1-11(a) and (b), as amended, would result in "a mass influx of complaints based on unreliable information."  Rule 1-11(b) provides a noninclusive list of the factors to be considered in determining whether to investigate a complaint by a nonwitness, among which are "the nature and/or severity of the alleged misconduct, . . . the practicability of conducting a full investigation . . . and the numbers of complaints received by the Board regarding the incident."  Thus, the CCRB would serve as its own gatekeeper for the investigation of nonwitness complaints.

We are not persuaded by petitioner's alternative argument

that Rules 1-11(a) and (b) are invalid because only those who are
personally aggrieved by the misconduct they allege, i.e., victims
of the misconduct, may file a complaint.  The fact that the
Charter contemplates that complaints will be filed by "members of
the public," without referencing any specific members of the
public, suggests that pursuant to the Charter, complaints may be
filed by victims and nonvictims alike.  Petitioner's assertion
that complaints may be filed by "complainants," a term which
appears elsewhere in the Charter, does not provide support to the
above argument as a complainant, self-evidently, is merely a
person who files a complaint (*see* Black's Law Dictionary 323 [9th
ed 2009]), while a "victim" is a person "harmed by a crime, tort,
or other wrong" (*id.* at 1703).  Although these terms are
frequently used interchangeably, particularly in the criminal
context, they are distinct, and sometimes the distinction is
significant (*see generally People v DiNapoli*, 369 P3d 680, 683,
685 [Colo App 2015], *cert denied* 2016 WL 768341, 2016 Colo LEXIS
221 [2016]).  Moreover, the broad nature of much of the CCRB's
FADO jurisdiction, which, as indicated, includes complaints of
discourtesy and use of offensive language (NY City Charter §
440[c][1]), naturally suggests that complaints may be filed by
members of the public at whom the misconduct is not directed.
Indeed, it is easy to imagine a scenario in which a witness to

14

discourtesy or offensive language might wish to file a complaint while the object of the discourtesy or offensive language might not.

38-A RCNY 1-15(a), as amended, authorizes the CCRB Chair to investigate complaints of misconduct filed after the expiration of Civil Service Law (CSL) § 75(4)'s 18-month statute of limitations period, which relates to the commencement of removal and disciplinary proceedings.  Specifically, CSL 75(4) provides, in pertinent part, that "no removal or disciplinary proceeding shall be commenced more than eighteen months after the occurrence of the alleged incompetency or misconduct complained of . . . ." Supreme Court properly found that the amended rule does not run afoul of the statute of limitations and is not arbitrary or capricious.  Initially, amended Rule 1-15(a) merely authorizes the CCRB to *investigate* a complaint.  It does not authorize the commencement of any removal or disciplinary proceedings after the 18-month statute of limitations has expired, which is precisely what is barred by CSL 75(4).  Further, after an investigation, the CCRB can make recommendations short of removal and disciplinary proceedings, such as instructions or training for the offending officer, which would not implicate CSL 75(4)'s statute of limitations.  Additionally, if the CCRB determines that the misconduct complained of rose to the level of criminal

conduct, which is outside of the CCRB's jurisdiction, the CCRB can refer the matter to the appropriate agency for action, which also does not violate CSL 75(4).  Moreover, these actions comport with the CCRB's mandate to investigate and "make findings and recommend action."  Contrary to the dissent's contention, the legislature, in enacting CSL 75(4), could have barred an agency from investigating all complaints and making any recommendation whatsoever after the expiration of the 18-month statute of limitations.  However, it did not do so and instead, chose only to bar the commencement of removal or disciplinary proceedings after the expiration of the statute of limitations.

The CCRB amended 38-A RCNY 1-24(d), relating to "Conduct of Interviews," to direct that police officers be informed at the beginning of the interview that intentionally false statements may be grounds for dismissal under the NYPD Patrol Guide. Additionally, revised Rule 1-24(l) provides for civilian interviewees to be notified at the beginning of the interview that they will be asked to sign a verification statement at the end of the interview and, that at the end of the interview, the interviewee will be asked to sign a verification statement attested to by a commissioner of deeds.  Supreme Court properly found that both provisions were rational as they satisfy the Charter's requirement for sworn statements from complainants and

witnesses.  Although the rule's requirement that police officers
give statements under express penalties of perjury is more
rigorous than its provision for civilians to sign verifications,
police officers and civilians are not similarly situated.  The
police officers face the possibility of dismissal if they make
false statements and the rule merely reminds the officers of the
potential consequences they will face.  Further, Supreme Court
properly credited the CCRB's contention that requiring civilian
witnesses to sign the verification form at the beginning of the
interview rather than at the end could discourage some civilians
from testifying.

38-A RCNY 1-31(b) formerly required the CCRB to sit in
panels with at least one City Council, Mayoral and Police
Commissioner designee.  The CCRB amended the rule to permit
panels to deviate from this requirement and to consist of members
from only two of the categories, where strict compliance would
delay the CCRB's operations.  Supreme Court properly found the
amended rule to be rational because the Charter only requires
that the panels be formed with members from two of the categories
and that if there is an emergency situation, the CCRB needs to
proceed rapidly.  Petitioner's contention that the rule will tend
to prejudice police officers because Police Commissioner
designees are fewer in number and therefore less likely to be

17

available for a given panel is speculative.

38-A RCNY 1-33(a), which was amended to permit consideration of prior unsubstantiated complaints, provided they were not the "sole" basis for making findings, was properly invalidated by the Supreme Court.  Rule 1-33(a), as amended, is invalid because the Charter itself forbids any consideration of prior unsubstantiated complaints.  Indeed, the Charter specifies that "No finding or recommendation shall be based solely upon an unsworn complaint or statement, *nor shall prior unsubstantiated, unfounded or withdrawn complaints be the basis for any such finding or recommendation*" (NY City Charter § 440[c][1][emphasis added]).  The omission of the word "sole" in the clause at issue should be taken to have been deliberate and a contrast to the preceding clause, thereby signifying a directive that prior unsubstantiated complaints play no role in subsequent findings.

38-A RCNY 1-42(h) was amended to provide that, after referral of a case for prosecution by the CCRB's Administrative Prosecution Unit (APU), the CCRB's Chief Prosecutor or Executive Director or designee may ask the panel to add allegations, or to reconsider unsubstantiated allegations for substantiation, upon written notice to all parties.  In so doing, the CCRB noted that the memorandum of understanding (MOU) between itself and the NYPD, which provided for prosecution of cases by the APU,

18

analogized the APU to the NYPD's Department Advocate's Office
(DAO), which prosecuted internal NYPD disciplinary proceedings.
Supreme Court properly invalidated amended Rule 1-42(h) because
the Charter does not give the CCRB this power.  The Charter
empowers the CCRB only to make findings and recommendations for
action by the Police Commissioner (*see* NY City Charter §§
440[c][1], [d][3]).  Among other things, the CCRB can recommend
to the Police Commissioner that charges and specifications be
brought and the Police Commissioner can accept or reject this
recommendation.  The MOU provides a mechanism for delegating to
the APU prosecution of CCRB-recommended charges and
specifications accepted by the Commissioner.  Amended charges and
specifications, being in effect, new charges, would have to be
submitted to the Commissioner as recommendations.  This is a
limitation imposed by the Charter.  Since neither the CCRB nor
the NYPD has the power to override the Charter, the two agencies'
MOU cannot do so either.

    38-A RCNY 1-44 was amended to provide for non-FADO
misconduct to "be noted in case dispositions by categories
describing the possible misconduct and the evidence of such
misconduct."  Supreme Court properly found the amended rule to be
rational based on the CCRB's explanation that the revision
codified existing practice and was designed to make a record of

the existence of possible non-FADO misconduct, which would likely be referred to another agency, without making any findings or recommendations with respect thereto.  Contrary to the dissent's assertion that the revision exceeds the CCRB's FADO jurisdiction because it incorporates non-FADO findings into the case disposition, the amended rule specifies that potential non-FADO misconduct is to be "noted" as "possible misconduct" with a listing of evidence of such misconduct and thus entails neither a finding nor a determination made by the CCRB.

38-A RCNY 1-53(a) authorized the CCRB's Executive Director to delegate duties to CCRB members or "senior staff."  The CCRB amended the rule to expand the Executive Director's authority to delegate to all "Agency Staff" and not merely "senior staff." Supreme Court properly found the amended rule to be rational and not overbroad because it conforms with the requirements of the Charter.  Specifically, the Charter gives the CCRB the power "to appoint such employees as are necessary to exercise its powers and fulfill its duties" and it does not prohibit the Executive Director from further delegating duties (NY City Charter § 440[c][5]).  Moreover, to the extent that problems may arise with the Executive Director's delegation of duties, including a lack of transparency, Rule 1-53(a)(2) makes clear that the CCRB may limit the Executive Director's authority at any time by further

20

resolution.

In addition to CCRB's adoption of the revised rules, the CCRB passed a resolution to begin investigating allegations of sexual misconduct.  The resolution to begin investigating allegations of sexual misconduct announced a change from the CCRB's historic practice of referring such allegations to the NYPD, on the ground that "sexual misconduct by a police officer is, at its core, an abuse of authority" (which is included in the CCRB's FADO jurisdiction).  The CCRB resolved that it would immediately begin investigating allegations of what it termed "Phase 1" sexual misconduct, i.e., generally, sexual harassment without physical contact.  It would also begin training and preparing to investigate "Phase 2" sexual misconduct, i.e., generally, sexual conduct involving physical contact, and would begin investigating Phase 2 sexual misconduct allegations upon the Executive Director's report that the CCRB was "ready" for Phase 2.

By declaring that the CCRB would assert jurisdiction over an entire category of misconduct that it had historically referred as a matter of policy, the resolution announced a sweeping policy change that materially affected the rights of all alleged victims of sexual misconduct and allegedly offending police officers "equally and without exception," and thus amounted to the

21

adoption of a new "rule" (*Matter of Singh v Taxi & Limousine Commn. of City of N.Y.*, 282 AD2d 368, 368 [1st Dept 2001], [citing, inter alia, NY City Charter § 1041(5)(a)(iii)], *lv denied* 96 NY2d 720 [2001]).  However, because the CCRB undisputedly did not follow the public vetting process required by CAPA for adopting a new rule, the sexual misconduct resolution is a nullity (NY City Charter § 1043; *see Callahan v Carey*, 2012 NY Slip Op 30400[U] [Sup Ct, NY County 2012], *affd for reasons stated below* 103 AD3d 464 [1st Dept 2013], *affd sub nom Matter of Council of the City of N.Y. v Department of Homeless Servs. of the City of N.Y.*, 22 NY3d 150 [2013]).

> All concur except Friedman, J.P. who
> dissents in part in a memorandum
> as follows:

FRIEDMAN, J.P. (dissenting in part)

For the reasons discussed below, while I otherwise concur in the majority's disposition of this appeal, I respectfully dissent to the extent the majority affirms Supreme Court's denial of the petition insofar as it seeks invalidation of revised § 1-15(a) of the Rules of the Civilian Complaint Review Board (CCRB) and the final sentence of revised § 1-44 thereof.  In my view, these amendments to the CCRB Rules should be invalidated on the ground that each of them exceeds the power granted to the CCRB by section 440 of the Charter of the City of New York (NY City Charter § 440).

I turn first to revised § 1-15(a) of the CCRB Rules, which, as noted, was sustained by Supreme Court when challenged in this article 78 proceeding by plaintiffs-petitioners Patrolmen's Benevolent Association (PBA) and its president.  Revised § 1-15(a) provides that the CCRB may, in its discretion, investigate a complaint filed "after the 18-month statute of limitations has expired pursuant to Civil Service Law § 75(4)."[1]  The referenced statute of limitations of Civil Service Law § 75(4) bars the

---

[1]Revised § 1-15(a) provides in full: "When a complaint is filed with the Board after the 18-month statute of limitations has expired pursuant to Civil Service Law § 75(4), the Chair in consultation with the Executive Director will determine whether to investigate the complaint."

commencement of a removal or disciplinary proceeding against a
covered civil servant (including a member of the New York City
Police Department)

> "more than eighteen months after the occurrence of the
> alleged incompetency or misconduct complained of and
> described in the charges . . . , provided, however,
> that such limitation[] shall not apply where the
> incompetency or misconduct complained of and described
> in the charges would, if proved in a court of
> appropriate jurisdiction, constitute a crime."

In upholding revised § 1-15(a), the majority appears to rely
primarily, as did Supreme Court, upon the Civil Service Law's
"crime" exception to the 18-month statute of limitations for
disciplinary proceedings.  However, the authority to investigate
late complaints purportedly conferred on the CCRB by revised § 1-
15(a) is not limited to complaints of alleged misconduct that
would also constitute a criminal offense.  Moreover, the CCRB, in
defending revised § 1-15(a) upon this appeal, places no reliance
on the "crime" exception to the disciplinary statute of
limitation.  In fact, the exception is not even mentioned in the
section of the CCRB's appellate brief addressing this issue, and
the CCRB has never expressed, either on this appeal or in the
record, any intention to limit its investigation of time-barred
complaints to those alleging conduct that might constitute a
criminal offense.  On the contrary, as noted by the majority, the
CCRB states that, should it make a finding of noncriminal

misconduct that occurred more than 18 months before the complaint was filed, it will recommend the imposition of "informal discipline, such as an instruction from the officer's supervisor or additional training."

The "crime" exception to the Civil Service Law's 18-month statute of limitations, even if it could save a hypothetical rule authorizing the CCRB to investigate a late complaint of misconduct that possibly constitutes a crime, cannot save revised § 1-15, which contains no such limitation.[2]  NY City Charter § 440 mandates that the CCRB's findings and recommendations be "submitted to the police commissioner" — necessarily implying that the CCRB's powers are limited to complaints of misconduct on which the police commissioner can act by imposing discipline. Under Civil Service Law § 75(4), the commissioner has no power to impose discipline on an officer based on noncriminal misconduct that occurred more than 18 months before the charge was filed. Accordingly, because revised § 1-15(a) purports to authorize the CCRB to investigate a complaint of alleged misconduct of any kind (not just potentially criminal misconduct) that occurred more than 18 months before the complaint was filed, the provision is impermissibly overbroad and should be invalidated in its entirety

------

[2]And, to reiterate, the CCRB makes plain that it has no intention of abiding by any such limitation in practice.

25

(*see Boreali v Axelrod*, 71 NY2d 1, 14 [1987]).

In an attempt to justify the effective elimination of the disciplinary statute of limitations effected by revised § 1-15, the majority draws a distinction between "*investigat*[ing] a complaint," on the one hand, and, on the other hand, "the commencement of [a] removal or disciplinary proceeding[]."  Only the latter, according to the majority, is subject to the 18-month statute of limitations.  This distinction is without foundation. Far from drawing a distinction between investigations and proceedings, Civil Service Law § 75 makes clear that an investigation is part of a disciplinary proceeding.  Under Civil Service Law § 75(4), the limitation period runs from "the occurrence of the alleged incompetency or misconduct complained of," not from the completion of the investigation.  Further, under Civil Service Law § 75(2), an employee who "appears to be a potential subject of disciplinary action" is entitled to representation "at the time of questioning," i.e., even before being charged.  Plainly, the legislature regarded an investigation as part and parcel of a disciplinary proceeding, and the distinction drawn by the majority has no statutory basis.

A few more points deserve to be made concerning the CCRB's attempt to circumvent the disciplinary statute of limitations enacted by the legislature.  First, the "informal" disciplinary

26

measures (such as "behavior correction or training") that the
CCRB proposes to recommend for noncriminal misconduct that
occurred more than 18 months before the filing of the complaint
would still constitute discipline and, as such, are barred by
Civil Service Law § 75(4).  Further, as the Police Department
noted in objecting to revised § 1-15(a), the mere presence of a
late complaint on his or her record would "unduly stigmatize" a
police officer, as it could impact future promotions and
transfers.  In enacting Civil Service Law § 75(4), the
legislature, after balancing the competing interests, determined
that such adverse consequences are appropriate only where an
officer has been confronted with the charges within the
statutorily defined limitations period.  The majority essentially
rewrites Civil Service Law § 75(4) when it asserts that it would
not violate the statute of limitations for the CCRB to recommend
that an officer undergo what it calls "instructions or training"
— and suffer the negative consequences that will inevitably ensue
therefrom — based on conduct that occurred more than 18 months
before the filing of the complaint.

I further note that, in authorizing the CCRB to investigate
a late complaint of any kind of alleged misconduct, revised § 1-
15(a) deprives police officers of the certainty and repose with
which the Legislature intended to provide them by enacting the

27

disciplinary statute of limitations.  There is no basis for
singling out New York City police officers, among all the
government employees covered by the Civil Service Law, to deprive
them of this benefit.

Finally, I believe that we should modify the order appealed
from to invalidate the final sentence of revised § 1-44 of the
CCRB Rules.  This new provision grants the CCRB an entirely new
power to take "note[]" in its case dispositions of "possible
misconduct falling outside its jurisdiction" and of "the evidence
of such misconduct."  In this regard, it should be borne in mind
that the CCRB's jurisdiction under the City Charter is limited to
misconduct falling within the categories of "excessive use of
force, abuse of authority, discourtesy, or use of offensive
language" (NY City Charter § 440 [c][1]), colloquially known as
"FADO" misconduct.  The previous version of § 1-44 tracked an
April 2012 memorandum of understanding between the CCRB and the
Police Department by requiring the CCRB, upon "becom[ing] aware
of possible misconduct falling outside its jurisdiction, such as
the making of a false statement by an officer, . . . not itself
[to] prosecute such possible misconduct but . . . instead [to]
immediately refer such possible misconduct to the Police
Department for investigation and possible prosecution by the
Police Department."  Revised § 1-44, while retaining the language

28

just quoted, turns the meaning of the rule on its head by adding
the following new concluding sentence: "Other misconduct will be
noted in case dispositions by categories describing the possible
misconduct and the evidence of such misconduct."[3]

In my view, the amendment of § 1-44 to empower the CCRB to
take "note[]" in its case dispositions of possible non-FADO
misconduct, and of the evidence of such misconduct, essentially
directs the CCRB to make findings concerning misconduct outside
its jurisdiction under the City Charter.  The majority resists
this conclusion by pointing to the new sentence's reference to

---

[3] In its entirety, revised § 1-44 provides as follows, with
changes from the previous version indicated by underlining of new
material and bracketing of deleted material:

"§ 1-44 Other Misconduct.

"If during the course of a Prosecution the [CCRB]
Civilian Complaint Review Board becomes aware of
possible misconduct falling outside its jurisdiction,
such as the making of a false statement by an officer,
the Board shall not itself prosecute such possible
misconduct but shall instead immediately refer such
possible misconduct to the Police Department for
investigation and possible prosecution by the Police
Department.  The [CCRB shall] Civilian Complaint Review
Board will provide to the Police Department such
assistance as may be requested, in the investigation or
[p]Prosecution by the Police Department of such
possible misconduct and shall, if necessary, coordinate
its Prosecution with that of the Police Department.
Other misconduct will be noted in case dispositions by
categories describing the possible misconduct and the
evidence of such misconduct."

29

"*possible* misconduct" (emphasis added).  No doubt the word
"possible" was inserted into the amendment as a fig leaf to
achieve just this result, but I see no practical difference, in
terms of impact upon an accused police officer, between a finding
by the CCRB of "misconduct" and a finding by the CCRB of
"possible misconduct."  In either case, the finding becomes part
of the officer's permanent record and will affect the future
course of his or her career, whatever the commissioner's ultimate
disposition of the matter might be.  Further, there is no need
for including a finding of "possible [non-FADO] misconduct" in a
case disposition by the CCRB, since the CCRB can refer to the
Police Department instances of possible non-FADO misconduct of
which it becomes aware (and, indeed, is directed to do so
"immediately") without making any such formal finding in the
final case disposition.  In sum, revised § 1-44, to the extent it
purports to empower the CCRB to make findings concerning police
misconduct outside its FADO jurisdiction (whether "possible" or
actual), should be invalidated.

For the foregoing reasons, I would modify the order appealed
from to invalidate revised § 1-15(a) of the CCRB rules and to

invalidate the final sentence of revised § 1-44 of the CCRB
Rules.  To the extent the majority does otherwise, I respectfully
dissent.  In all other respects, I concur with the majority's
disposition of the appeal and cross appeal.

              THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

                  ENTERED:  MAY 28, 2020

_____
                  CLERK

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: _How Joan A. Mdn._    PART __11__
_____
                    *Justice*

Pantaleo, Daniee                    INDEX NO. _100641/19_

-v-                                 MOTION DATE _____

Civilian Complaint Review Bd.       MOTION SEQ. NO. __001__
_____

The following papers, numbered 1 to _____ , were read on this motion to/for _Palmary Report_

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits— Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is _decided in accordance with the annexed Memorandum Decision + Order,_

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____

FOR THE FOLLOWING REASON(S):

Dated: _May 9, 2019_                              _____, J.S.C.
                                          **HON. JOAN A. MADDEN**
                                                       J.S.C.

1. CHECK ONE: .................................................. ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER          ☐ SUBMIT ORDER

                                                    ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, IAS PART 11
------------------------------------------------------------------------X
In the Matter of the Application of Police Officer
DANIEL PANTALEO,

                                                             INDEX NO. 100641/19

                              Petitioner,

For a Judgment Pursuant to Article 78 of the
Civil Practice Law and Rules,

         - against -

NEW YORK CITY CIVILIAN COMPLAINT
REVIEW BOARD, FREDERICK DAVIE, as
Chair of the New York City Complaint Review
Board, JAMES P. O'NEILL, as Police Commissioner
of the City of New York, THE NEW YORK CITY
POLICE DEPARTMENT OF THE CITY OF NEW
YORK, and THE CITY OF NEW YORK,

                              Respondents.
------------------------------------------------------------------------X
JOAN A. MADDEN, J.:

     In this Article 78 proceeding, petitioner moves, by order to show cause, pursuant to

CPLR 7803(2) and (3) to enjoin the respondent the New York City Civilian Complaint Review

Board ("CCRB") from prosecuting New York City Police Department ("NYPD") disciplinary

case number 2018-19274 against petitioner on the grounds that the CCRB lacks jurisdiction to

prosecute the case, and that the NYPD's decision not to hold a hearing on the question of

CCRB's jurisdiction was arbitrary and capricious. At this stage of the proceeding, petitioners

seek an order pursuant to CPLR 6301 and 6311 for a preliminary injunction enjoining the CCRB

from prosecuting the case pending a determination by this court as to CCRB's jurisdiction.[1]

---

[1]After hearing argument on the record on April 30, 2019, the court declined to issue a
temporary restraining order to prohibit CCRB from prosecuting the NYPD disciplinary
proceeding.

Respondents oppose the application.

The trial of the NYPD disciplinary proceeding that is the subject of this application is set to begin on May 13, 2019, and arises out of the July 17, 2014 incident involving the death of Eric Garner after his attempted arrest by petitioner and other NYPD officers in Staten Island, New York ("the Garner incident").

The central issue raised by petitioner is whether the CCRB lacks jurisdiction over the prosecution of this matter which was investigated by the CCRB[2] and led to the issuance of charges and specifications against petitioner arising out of the Garner incident on July 18, 2018.[3] Section 440(c)(1) of the City Charter gives the CCRB "the power to receive, investigate, hear,

---

[2]In her affirmation submitted in support of respondents' opposition, Suzanne O'Hare, Esq., the Deputy Chief Prosecutor of the Administrative Prosecution Unit at the CCRB states "upon information and belief" that the Garner incident was also investigated by NYPD's Internal Affairs Bureau ("IAB"), that IAB found that petitioner used a prohibited chokehold while effectuating the arrest of Mr. Garner, and that on or about January 15, 2015, IAB recommended that charges be referred against petitioner and forwarded its findings to NYPD's Advocate Office ("DAO"). See O'Hare Aff. ¶ 25.  She also states that after both the NYPD and CCRB completed their investigations and recommended charges, upon information belief, because of a request from the Department of Justice ("DOJ") that a hold be placed on the matter, the NYPD did not pursue the disciplinary matter or permit the CCRB to draft charges against petitioner.  By letter dated July 16, 2018, the NYPD notified DOJ that due to its protracted review of the case, the NYPD could no longer forebear with respect to pursuing the disciplinary case against petitioner, and that if DOJ did not publicly announce its intent to file criminal charges related to the Garner incident by August 31, 2018, the disciplinary proceedings would go forwarded on or shortly after September 1, 2018. Id ¶'s 26-27.

[3]While petitioner seeks to enjoin the CCRB's prosecution of the charges and specifications against petitioner, the crux of petitioner's position is that under section 440(c)(1) of the City Charter, the CCRB lacked jurisdiction to investigate and recommend the charges that underlie the prosecution. Accordingly, respondents' argument that since petitioner seeks to enjoin the prosecution as opposed to the investigation by the CCRB, and that the prosecution is governed by a Memorandum of Understanding ("MOU"), and not City Charter, is not dispositive of the issues here.

2

make findings and recommend action upon complaints by members of the public against members of the police department that allege misconduct involving excessive use of force, abuse of authority, discourtesy, or use of offensive language...." Petitioner argues that as based on the holding in Lynch v. New York City Civilian Complaint Review Board, (Crane, J), 2019 WL 1475017, 2019 Slip Op 29089 (Sup Ct NY Co. Feb. 27, 2019), the complaint which forms the basis for CCRB's jurisdiction under section 440(c)(1) of the City Charter must be from an eyewitness, the complaint underlying the instant disciplinary proceeding is invalid, or at least requires a hearing as to its validity. Specifically, petitioner asserts that a recording of the complaint which was made by telephone by a Jada Wilson ("Wilson") to the CCRB on July 18, 2014, on the day after the Garner incident, when compared to a video of the incident, provides a good faith basis to believe that Wilson did not witness the Garner incident.

On March 20, 2019, petitioner moved to dismiss the NYPD disciplinary proceeding before the CCRB on the ground that CCRB did not have jurisdiction to prosecute the disciplinary charges filed against him based on the holding in Lynch. By written decision dated April 8, 2019, the Honorable Rosemarie Maldonado, NYPD Deputy Commissioner of Trials ("DCT Maldonado"), denied the motion. DCT Maldonado found that "notwithstanding error in the caller's (i.e. Wilson's) account, the information relayed during the 2014 intake call provided a rational basis to move forward with the investigation." In support of this finding, DCT Maldonado noted that: "The interviewer specifically asked the caller whether they actually witnessed the arrest or whether they were calling on someone's behalf. The caller clearly responded that she had witnessed the arrest. Moreover, although the caller eventually stopped cooperating with the CCRB, the agency did follow up [with Wilson] and in fact had subsequent

3

contact with [her]."

DCT Maldonado also found that <u>Lynch</u> decision was inapplicable to this matter since it concerned "sua sponte investigations and complaints with insufficient firsthand knowledge of an incident [and that] the Lynch court did not expressly place any new obligations on CCRB with respect to eyewitness complaints.[4]"

In this Article 78 proceeding, petitioner bases his challenge of DCT Madonado's determination on the grounds that alleged errors in Wilson's account of the Garner incident renders her finding that the CCRB has jurisdiction arbitrary and capricious. Thus, petitioner argues a preliminary injunction should issue enjoining the trial.

In opposition, respondents argue that petitioner has not satisfied the three-part test required to obtain a preliminary injunction, including that petitioner cannot show likelihood of success on the merits since DCT Maldonado rationally found that the <u>Lynch</u> decision is inapplicable to this matter.

A preliminary injunctive relief is drastic remedy, and thus should not be granted unless the movant demonstrates "a clear right" to such relief. <u>City of New York v 330 Continental, LLC</u>, 60 AD3d 226, 234 (1st Dept 2009); <u>Peterson v Corbin</u>, 275 AD2d 35 [2d Dept], <u>lv dismissed</u>, 95 NY2d 919 (2000). Entitlement to a preliminary injunction requires a showing of (1) the likelihood of success on the merits, (2) irreparable injury absent the granting of

---

[4]DCT Madonado also found that "the relevant time line renders <u>Lynch</u> inapplicable to the proceeding [since] [t]he February 27, 2019 <u>Lynch</u> decision invalidated a CCRB rule which went into effect in February 2018 [whereas] CCRB's investigation in this case commenced with a July 18, 2014 phone call and concluded in August 2017 [and that][t]herefore the 2019 <u>Lynch</u> decision cannot be applied retroactively to the CCRB investigation of this case."

4

preliminary injunctive relief, and (3) a balancing of the equities in the movant's favor. CPLR

6301; Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839 (2005); Aetna Ins. Co. v

Capasso, 75 NY2d 860 (1990). If any one of these three requirements is not satisfied, the motion

must be denied. Faberge Intern., Inc. v Di Pino, 109 AD2d 235 (1st Dept 1985).

 "In reviewing an administrative agency determination, [courts] must ascertain whether

there is a rational basis for the action in question or whether it is arbitrary and capricious" Matter

of Gilman v. New York State Division of Housing and Community Renewal, 99 NY2d 144, 149

(2002); see also CPLR 7803(3)(Article 78 review is limited to "whether a determination was

made in violation of lawful procedure, was affected by an error of law or was arbitrary and

capricious or an abuse of discretion...."). Thus, "a court may not substitute its judgment for that

of the board or body it reviews unless the decision under review is arbitrary and unreasonable

and constitutes an abuse of discretion." In the Matter of Pell v. Bd. of Educ., 34 NY2d 222, 230-

231 (1974). Furthermore, "courts must defer to an administrative agency's rational interpretation

of its own regulations in its area of expertise." Peckham v. Calogero, 12 NY3d 424, 431 (2009).

 Under these standards, the application for a preliminary injunction must be denied. First,

petitioner has not demonstrated that likelihood of success on the merits as he has not adequately

shown that the CCRB lacks jurisdiction over this proceeding based on the holding in Lynch. In

Lynch the court invalidated certain Revised Rules adopted by the CCRB in 2018,[5] including

---

[5]While twelve Revised Rules were at issue in the proceeding before the court in Lynch, only Revised Rules 1-11(a)(b) and (c) are discussed below, since these are the only Revised Rules cited by petitioner in support of this application.

5

Revised Rule 1-11(c),[6] the "Sua Sponte" Investigations Rule, which permitted the CCRB to

review incidents without the prerequisite of a civilian complaint, and allowed the CCRB to

contact potential victims who may not know of CCRB's existence.  The court wrote that as

"[t]he [City] Charter (referring to section 440(c)(1)) clearly contemplates that CCRB's

jurisdiction is limited to investigations 'upon complaint,' [and as the Revised Rule]...would

allow respondents to expand its Charter to solicit complaints actively, rather than 'investigating

upon complaint'... [t]he Revised Rule ... goes beyond CCRB's jurisdiction." 2019 WL 1475017,

*7.  The court also found that Revised Rule 1-11(a) (b),[7] which, *inter alia*, allegedly expanded

the individuals who could file a complaint to include non-witnesses was arbitrary and capricious

as it was "so broad that there is a serious likelihood that complaints based upon unreliable

information will ensue, not to mention the possibility of a mass influx of complaints based on

unreliable information." Id  *8.  In so finding, the court noted that petitioners characterized the

---

[6]Revised Rule 1-11(c) stated that:

> (c) The Board has the power to review incidents involving NYPD officers
> and investigate cases arising therefrom within the Board's jurisdiction
> under the New York City Charter.

[7]Revised Rule 1-11(a) and (b) provides:

(a) An Alleged Victim, a parent, a legal guardian or legal representative if the Alleged
Victim is a minor, or any individual having Personal Knowledge of alleged misconduct by a
member of the New York City Police Department, each have standing to file a complaint.

(b) Complaints of alleged police misconduct filed by Reporting Non-Witnesses may be
investigated at the discretion of the Executive Director or Chair of the Board. Among the factors
to be considered are: the nature and/or severity of the alleged misconduct, the availably of
evidence and/or witnesses, the ability to identify officers and civilians involved, the practicability
of conducting a full investigation within the time prescribed by the statute of limitations and the
numbers of complaints received by the Board regarding the incident.

Revised Rule 1-11(a)(b) as the "YouTube Complaints rule" since under the Rule, a viewer who watches an incident on YouTube could file a complaint with the CCRB, even though "[t]hat person has no firsthand experience, and no knowledge whether the video is embellished or fabricated. " Id.

Here, it cannot be said that there was no rational basis for CCRB's jurisdiction over petitioner's disciplinary proceeding under section 440(c)(1) of the City Charter based on the holding in Lynch.[8] In this connection, DCT Maldonado rationally found the Lynch decision was inapplicable to this matter since that decision concerns "sua sponte investigations and complaints with insufficient firsthand knowledge of an incident [and that] the Lynch court did not expressly place any new obligations on CCRB with respect to eyewitness complaints." In addition, in addressing Lynch with respect to whether a complaint from an eyewitness is required in order to invoke CCRB's jurisdiction,[9] DCT Maldonado found that the 2014 intake call provided a rational basis to move forward with the investigation, particularly as the caller stated that she witnessed the arrest. Furthermore, any factual issues raised by alleged inconsistencies in the caller's complaint does not provide grounds for finding that CCRB's determination as to its jurisdiction was arbitrary or capricious, or warrant a hearing as to this issue. See Flacke v. Onondaga Landfill System, Inc., 69 NY2d 355 (1987)("where... the judgment of the agency involves factual

---

[8] As DCT Maldonado's decision is at issue and as petitioner primarily relies on Lynch, the principles of Article 78 review apply. Thus, the court need not address respondents' argument that Lynch is inapplicable as it was decided after the completion of the investigation herein.

[9] The decision in Lynch did not specifically hold that a complaint to the CCRB must be by an eyewitness, but rather it invalidated Revised Rules 1-11(a), (b) and (c). In this decision, the court makes no determination as to whether a complaint from an eyewitness is required for CCRB's jurisdiction.

7

evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference"). Accordingly, petitioner has failed to show a likelihood of success on the merits.[10]

As to the balance of the equities, the court finds that petitioner has not shown that the equities weigh in his favor, particularly as the underlying proceeding which he seeks to stay relates to events that occurred almost five years ago on July 14, 2014. Moreover, the family of Mr. Garner, who lost a loved one, and petitioner, whose career and reputation are at stake, have significant interests in the trial of the issues surrounding the Garner incident going forward at this time, as does the public since the Garner incident raises serious concerns about interactions between individuals in the community and members of the NYPD.

With respect to the requirement that petitioner demonstrate irreparable harm, petitioner's argument is not persuasive that he will suffer irreparable harm as he could be subject to a second trial in the future if this trial proceeds and he is found guilty and, on appeal, it is found that the CCRB lacked jurisdiction.

As petitioner has failed to demonstrate the likelihood of success on the merits, that the equities balance in his favor, or irreparable harm, the motion for a preliminary injunction must be denied.

In view of the above, it is

ORDERED that petitioner's motion for a preliminary injunction is denied.

Dated: May 1, 2019

_____

HON. JOAN A. MADDEN
J.S.C.

---

[10]It is noted that issues relating to the credibility of the person making a complaint as an eyewitness can be explored in determining whether a complaint is substantiated or unsubstantiated.

8