# EXHIBIT Q

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

No.: 1:20-CV-05441 (KPF)(KWL)


```
UNIFORMED FIRE OFFICERS      )
ASSOCIATION, et al.,         )
                             )
         Plaintiffs,         )
                             )
     vs.                     )
                             )
BILL de BLASIO, et al.,      )
                             )
         Defendants.         )
_____)
```


REMOTE VIDEOTAPED DEPOSITION OF

KERRY JAMIESON

Thursday, August 6, 2020


REPORTED BY:

RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

JOB NO. 28092

1

2

3

4                        August 6, 2020

5                        3:01 p.m.

6

7

8              Videotaped Deposition of KERRY

9    JAMIESON, held remotely before Rhonda

10   Hall-Breuwet, Registered Diplomate Reporter,

11   Certified Realtime Reporter, Licensed Court

12   Reporter (TN), Certified Court Reporter (GA

13   and LA), Florida Professional Reporter, and

14   Notary Public of the State of Florida.

15

16

17

18

19

20

21

22

23

24

25

1    A P P E A R A N C E S:

2

3    ATTORNEYS FOR PLAINTIFFS:

4

5            DLA PIPER LLP (US)

6            1251 Avenue of the Americas

7            New York, New York 10020

8            (212) 335-4500

9            BY:  ANTHONY PAUL COLES, ESQUIRE

10                MICHAEL R. HEPWORTH, ESQUIRE

11           EMAIL:  anthony.coles@dlapiper.com

12                   michael.hepworth@dlapiper.com

13           - and -

14           500 Eighth Street, NW

15           Washington, DC 20004

16           (202) 799-4000

17           BY:  EVAN NORTH, ESQUIRE

18           EMAIL:  evan.north@dlapiper.com

19

20

21

22

23

24

25    (Continued)

Page 4

```
 1    ATTORNEYS FOR DEFENDANT:

 2

 3           NEW YORK CITY LAW DEPARTMENT

 4           100 Church Street

 5           New York, New York  10007

 6           (212) 356-2444

 7           BY:  DOMINIQUE F. SAINT-FORT, ESQUIRE

 8                REBECCA GIBSON QUINN, ESQUIRE

 9           EMAIL:  dosaint@law.nyc.gov

10                   rquinn@law.nyc.gov

11

12

13    ALSO PRESENT:

14           MATT MATYSTIK, Paralegal - DLA Piper

15

16    EXHIBIT TECHNICIAN:

17           GABRIELA ALVAREZ

18

19    VIDEOGRAPHER:

20           JEREMY LeMASTER

21

22

23

24

25
```

Page 5

1                    I N D E X

2

3                                              PAGE

4    DIRECT EXAMINATION BY MR. COLES                9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    E X H I B I T S

2

3      NUMBER              DESCRIPTION            PAGE

4      EXHIBIT 1   CCRB FOIL Manual,              14
                   Bates-stamped
5                  DEF_UFOA_001982 - 1995

6      EXHIBIT 2   Document Titled "Hughes        36
                   Hubbard & Reed versus
7                  Civilian Complaint
                   Review Board"
8
       EXHIBIT 3   Document Titled "Luongo        60
9                  versus Records Access
                   Officer"
10
       EXHIBIT 4   FOIL Subject Matter            66
11                 List from CCRB Website

12     EXHIBIT 5   Declaration of                 73
                   Christopher Dunn, Dated
13                 7/23/20

14     EXHIBIT 6   Exhibit A to                   75
                   Declaration of
15                 Christopher Dunn

16     EXHIBIT 7   Letter from Patrick J.         78
                   Lynch, President of the
17                 Police Benevolent
                   Association, to Fred
18                 Davie, dated 7/8/20

19   EXHIBIT 7-A   Letter from Michael T.         81
                   Murray to Jonathan
20                 Darche, dated 7/8/20

21     EXHIBIT 8   Letter from Dominique          85
                   F. Saint-Fort to Judge
22                 Failla, dated 7/28/20;
                   Letter from Rebecca G.
23                 Quinn n and Dominique
                   Saint-Fort to Anthony
24                 P. Coles and Michael R.
                   Hepworth, dated 7/28/20
25

1                    KERRY JAMIESON

2              THE VIDEOGRAPHER:   Good afternoon.

3     We are now on record.   Today's date is

4     August 6th, 2020, and the time is 3:01 p.m.

5     Eastern Standard Time.

6              This is the video deposition of

7     Kerry Jamieson in the matter of Uniformed

8     Fire Officers Association, et al., versus

9     Bill de Blasio, et al., filed in the United

10    States District Court, Southern District of

11    New York.   Case number is

12    1:20-cv-05441-KPF-RWL.

13             This deposition is taking place

14    via web videoconference with all

15    participants attending remotely due to the

16    COVID-19 pandemic.

17             My name is Jeremy LeMaster.   I'm

18    the videographer representing TransPerfect,

19    and the document tech is Gabriella Alvarez.

20             Counsel on the conference, please

21    identify yourselves and state whom you

22    represent, beginning with the questioning

23    attorney.

24             MR. COLES:   Good afternoon, and

25    good afternoon, Ms. Jamieson.   I'm Tony

1                    KERRY JAMIESON

2        Coles from DLA Piper, and I represent the

3        plaintiffs, and I'm here with Evan North.

4                    THE WITNESS:  Good afternoon.

5                    MR. COLES:  Good afternoon.

6                    Can you hear me okay?

7                    THE WITNESS:  I can.

8                    MR. COLES:  Well, good.  I'm glad

9        we got that straightened out.

10                    MS. QUINN:  And good afternoon,

11        everybody.  My name is Rebecca Quinn.  I'm

12        from the Office of the Corporation Counsel

13        representing the defendants, and I'm here

14        with my colleague Dominique Saint-Fort.

15                    THE VIDEOGRAPHER:  Thank you,

16        Counsel.

17                    Our court reporter today is Rhonda

18        Hall-Breuwet representing TransPerfect.

19                    The court reporter will now swear

20        in the witness.

21                    CERTIFIED STENOGRAPHER:  Raise

22        your right hand, please.

23                    Do you solemnly swear the

24        testimony you are about to give will be the

25        truth, the whole truth, and nothing but the

Page 9

1                    KERRY JAMIESON

2      truth?

3                    THE WITNESS:  I do.

4                    KERRY JAMIESON

5      acknowledged having been duly sworn to tell

6      the truth and testified upon her oath as

7      follows:

8                    DIRECT EXAMINATION

9      BY MR. COLES:

10         Q       Good afternoon, Ms. Jamieson.

11         A       Good afternoon.

12         Q       Have -- have you been deposed

13     before?

14         A       I have not.

15         Q       Okay.  So this is your first time?

16         A       Yes.

17         Q       And so obviously your first time

18     on Zoom also, which makes it a little unusual.

19              Let me tell you a little bit about

20     the ground rules.  I'm going to be asking you

21     questions.  The questions are under oath.  So

22     it's important that you understand my

23     questions clearly.  If you don't understand my

24     question, let me know and I'll try and

25     rephrase it.  But it's equally important that

1                    KERRY JAMIESON

2    you understand that your answers be clear as

3    well.

4              If during the course of the

5    deposition you need to correct something or

6    clear something up, let me know.  If you need

7    a break, that's fine.  The only thing I would

8    ask you is not take a break while a question

9    is pending unless there is an attorney-client

10   privilege or an issue like that.

11             I will tell you that when the

12   deposition is over, we are actually, in

13   addition to doing the video, making a

14   transcript, and you will get an opportunity to

15   look at the transcript and make any

16   corrections on the transcript, although if you

17   do make corrections on the transcript, I may

18   have a second opportunity to make comments on

19   those corrections.  But you will, in fact, get

20   that opportunity.

21             You're here as a 30(b)(6) witness

22   for the CCRB; is that correct?

23        A    That's correct.

24        Q    Okay.  And you're here to talk

25   about the policies and practices for handling

1                     KERRY JAMIESON

2     FOIL requests and the privacy of personnel

3     records at the CCRB?

4          A      That's correct.

5          Q      Okay.  Are you currently working

6     at the CCRB?

7          A      Yes, I am.

8          Q      What is your position there?

9          A      I am the -- one of the assistant

10    general counsels, is my official title.

11         Q      Okay.  And how long have you been

12    at the CCRB?

13         A      Since August of 2017.

14         Q      Okay.  And were you at the CC --

15    were you at the City before that --

16         A      No, I was not.

17         Q      -- before you were -- where were

18    you before arriving at the CCRB?

19         A      I was a supervising attorney at

20    the office of the appellant defender.

21         Q      And do your responsibilities as

22    assistant general counsel relate to the FOIL

23    law?

24         A      Yes.  I'm also -- I am the records

25    access appeals officer.

1                    KERRY JAMIESON

2        Q        Okay.  And can you explain for the

3    record what that means, the records access

4    appeals officer?

5        A        Yes.  So the records access

6    officer at an agency handles the FOIL

7    requests.  If any portion of the request is

8    denied, the requester has an opportunity to

9    appeal the denial.  And that appeal will go to

10   me, and I would review the request and what

11   was sent and what the denial was and the bases

12   and determine whether or not the records

13   access officer's determinations were within

14   the scope of the law.

15       Q        Okay.  And then were you given --

16   were you given training on the FOIL law when

17   you first took the position of assistant

18   general counsel at CCRB?

19       A        Yes.  When I first became

20   assistant general counsel, I was the records

21   access officer at that time.

22       Q        Okay.  And what kind of training

23   were you given at that time with regard to --

24       A        The person who --

25       Q        -- FOIL?

Page 13

```
 1                  KERRY JAMIESON
 2       A        -- the person who was the records
 3  access officer prior to my arrival, she
 4  provided me with training about how to respond
 5  to FOIL requests and about the FOIL law.
 6       Q        Okay.  Did -- were there written
 7  training materials that the CCRB provided to
 8  you?
 9       A        No.
10       Q        Okay.
11       A        Not at that time.
12       Q        Are there written materials today
13  regarding how the CCRB should respond to FOIL?
14       A        We have a draft of a FOIL manual.
15       Q        Anything else?
16       A        No.  That's it, that I'm -- that
17  I'm aware of.
18       Q        Okay.  And explain what the FOIL
19  manual covers.
20       A        The FOIL manual covers the basics
21  of the FOIL law in terms of if you get a
22  request, how many days you have to respond,
23  how to use the open records system, which is
24  the system we prefer to use to handle FOIL
25  requests, and it goes through some of the
```

1                 KERRY JAMIESON

2   common FOIL exceptions that come up in the

3   practice.

4       Q       Okay.  When you say it's a draft,

5   is it something that is used today --

6       A       Yes.

7       Q       -- in terms of guiding the CCRB?

8       A       Yes.

9       Q       Okay.  And does the document have

10  a specific name?

11      A       It's called the FOIL Manual.

12              MR. COLES:  Okay.  Actually, Evan,

13      you put up Tab 27.

14  BY MR. COLES:

15      Q       I'm going to ask you if this is

16  the manual that you're talking about.

17      A       Scroll down, please.

18              That looks to be it.

19              MR. COLES:  Okay.  So I'm going to

20      mark as Exhibit 1 the FOIL manual for the

21      CCRB.

22              (Exhibit Number 1, CCRB FOIL

23          Manual, Bates-stamped

24          DEF_UFOA_001982 - 1995, was marked

25          for identification.)

1                    KERRY JAMIESON

2    BY MR. COLES:

3        Q      Were you involved in preparing

4    this manual?

5        A      I did not draft it, but the

6    records access officer at that time did

7    consult me.

8        Q      Okay.  And to the best of your

9    knowledge, does it represent the guidance that

10   is given to CCRB employees on how to respond

11   to FOIL?

12       A      Yes.

13       Q      Okay.  Are you --

14              MR. COLES:  If you can go to

15       page 1983 of this document, please, Evan.

16   BY MR. COLES:

17       Q      Okay.  Ma'am, can -- I'm not sure

18   on the computer.  I want to make sure you can

19   see this document.

20       A      If you can make it a little bit

21   bigger, that would be great.

22              Okay.

23       Q      Okay.  The first sentence of the

24   manual describes the detailed responsibilities

25   of the records access officer at the CCRB and

1                    KERRY JAMIESON

2      the CCRB's procedures and policies in

3      complying with FOIL.

4                 Is that what this manual does?

5      A      Yes.

6      Q      Okay.  And it also directs the

7      records access officer to comply with the

8      responsibilities, procedures, and policies

9      that are set forth in the manual?

10     A      Yes, that's what it says.

11     Q      Okay.  If you look towards the

12     bottom of the paragraph, there's a highlighted

13     sentence that says:

14               "The New York State -- New York

15     Department of State's Committee on Open

16     Government is responsible for overseeing and

17     advising the government, public, and news

18     media on FOIL."

19               Do you see that?

20     A      Yes.

21     Q      Okay.  Do you have an

22     understanding as to what the Committee on Open

23     Government is and what its function is?

24     A      Yes.

25     Q      Can you please describe its

Page 17

1                    KERRY JAMIESON

2    function and how you worked with it.

3         A       Well, the main function is a

4    Committee on Open Government provides guidance

5    on access to public records, and, you know,

6    the FOIL law can be found on its Website and

7    they also provide advisory opinions to people

8    writing in on various questions involving the

9    FOIL law.

10        Q       Okay.

11        A       They have other functions as well,

12   but that's -- for FOIL purposes, that's what

13   they do.

14        Q       Okay.  And as part of your job, do

15   you review the Committee on Open Government's

16   opinions?

17        A       Not regularly, but I have reviewed

18   some.

19        Q       Okay.  Would you consider the

20   Committee on Open Government to be the

21   statewide authority on the application of

22   FOIL?

23        A       What do you mean -- "statewide

24   authority," what do you mean by that?

25        Q       Is it the state agency that

```
 1                 KERRY JAMIESON

 2    provides guidance to all elements of the State

 3    on the proper application of FOIL?

 4        A        I believe that it's the State

 5    agency.  I also believe that the Court plays a

 6    role in interpreting FOIL law.

 7        Q        Right.

 8                 Is -- what is the CCRB's position

 9    with regard to following advisory opinions

10    issued by the Committee on Open Government?

11                 MS. QUINN:  Objection.

12                 You can answer.

13                 THE WITNESS:  I don't know that we

14        have a policy.  I can tell you what I did

15        as records access officer when I served in

16        that position, which is that if an issue

17        came up that I needed additional

18        clarification on, I would go to the

19        Committee on Open Government and look

20        through and search for the advisory

21        opinions to see if there was anything that

22        was relevant.  But I would also go and look

23        at court cases to see how the law was

24        interpreted in the courts.

25                 ///
```

Page 19

1                    KERRY JAMIESON

2    BY MR. COLES:

3         Q        Okay.  Is it generally the CCRB's

4    practice to follow the advisory opinions

5    issued by the Committee on Open Government?

6                    MS. QUINN:  Objection.

7                    You can answer.

8                    THE WITNESS:  I think it's on a

9         case-by-case basis.  As I said, it's not

10        just what would be an advisory opinion.

11        But if there is also case law relevant to

12        the issue, then we look at -- the records

13        access officer would look at both.

14   BY MR. COLES:

15        Q        Right.  Sitting here today, can

16   you think of any instance in producing FOIL

17   requests that you rejected as incorrect an

18   advisory opinion from the Committee on Open

19   Government Quinn objection?

20                    MS. QUINN:  Objection.

21                    You can answer.

22                    THE WITNESS:  I cannot recall any

23        time right now.

24   BY MR. COLES:

25        Q        Okay.  Can you recall any instance

1                   KERRY JAMIESON

2    where -- anybody else at the CCRB responsible

3    for responding to FOILs rejected an opinion of

4    the advisory committee -- of the advisory --

5    an advisory opinion on the Committee on Open

6    Government?

7                   MS. QUINN:  Objection.

8                   You can answer.

9                   THE WITNESS:  Not that I'm aware

10       of.

11   BY MR. COLES:

12       Q       Are you aware that the committee

13   has long held that the release of

14   unsubstantiated and pending allegations of

15   misconduct would constitute an unreasonable

16   invasion of personal privacy?

17                   MS. QUINN:  Objection.

18                   You can answer.

19                   THE WITNESS:  I'm aware that the

20       committee has issued advisory opinions

21       stating that an agency can assert that

22       exception to the FOIL law if they want to,

23       but it's not mandatory that it's asserted.

24   BY MR. COLES:

25       Q       Right.  My question was a little

```
 1                   KERRY JAMIESON
 2    different, though.  And my question is, are
 3    you aware that the Committee on Open
 4    Government has actually issued a number of
 5    opinions saying that the release of
 6    unsubstantiated or unfounded allegations is a
 7    invasion of privacy?
 8                   MS. QUINN:  Objection.
 9                   THE WITNESS:  My --
10                   MS. QUINN:  I believe that she
11       answered that question.
12                   But you can answer.
13                   THE WITNESS:  I was going to say,
14       my answer remains the same.
15    BY MR. COLES:
16       Q       Okay.  Does the CCRB have a
17    position as -- as to the release of
18    unsubstantiated and unfounded allegations
19    against a police officer that believes that
20    those allegations are not an unwarranted
21    invasion of privacy?
22                   MS. QUINN:  Objection to form.
23                   You can answer.
24                   THE WITNESS:  I'm not sure I
25       understand your question.
```

Page 22

1                    KERRY JAMIESON

2    BY MR. COLES:

3         Q       Okay.  Does this -- does the CCRB

4    have a position as to whether or not the

5    release of unsubstantiated or unfounded

6    complaints against a police officer would

7    constitute an unwarranted invasion of personal

8    privacy?

9         A       I don't know that we have a

10   position.  I know that this -- from my

11   understanding, the CCRB has not and does not

12   assert that FOIL exception when responding to

13   a FOIL request that involves those records.

14        Q       I'm sorry.  I didn't really

15   understand your answer.  Say that one more

16   time.

17        A       My answer was that --

18                MS. QUINN:  I'm sorry.  Can you

19      read back -- can you read back her answer,

20      please.

21                (Previous answer read back.)

22   BY MR. COLES:

23        Q       Could you explain what you mean by

24   that.

25        A       Sure.  So to my knowledge, the

1                    KERRY JAMIESON

2     CCRB does not assert an unwarranted invasion

3     of privacy FOIL exception on the basis of what

4     the outcome of the case was.

5         Q      My question -- does it as a policy

6     matter assert the exception as to unfounded

7     and unsubstantiated allegations?

8                    MS. QUINN:  Objection.

9                    You can answer.

10                   THE WITNESS:  The CCRB doesn't

11        assert the FOIL from -- again, to my

12        knowledge, the CCRB does not assert the

13        unwarranted invasion of privacy exception

14        based on whatever the outcome of the case

15        was.  That does not factor into whether or

16        not that exception is asserted.

17    BY MR. COLES:

18        Q      So even if a case is

19    unsubstantiated or unfounded, the CCRB will

20    not assert the unwarranted invasion of

21    personal privacy exception?  Is that your

22    testimony?

23                   MS. QUINN:  Objection.  Asked and

24        answered.

25                   But you may answer.

Page 24

                    KERRY JAMIESON

1

2              Pardon me.

3              THE WITNESS:  The records access

4       officer takes every FOIL request and

5       evaluates it individually.  However, to my

6       knowledge, that exception is not asserted

7       on that basis.

8    BY MR. COLES:

9       Q      Why not?

10      A      Why not?  Well, because the

11   records access officer does not -- we've never

12   done an analysis of whether or not an

13   allegation is unsubstantiated on exonerated,

14   unfounded doesn't have to be -- it's not an

15   exception that needs to be asserted.  It

16   doesn't fall -- it's not mandatory that that

17   exception is asserted under the FOIL law.

18      Q      Okay.  And are you saying that as

19   a policy matter the CCRB has decided not to

20   assert that exemption?

21             MS. QUINN:  Objection.  Asked and

22      answered.

23             You may answer.

24             THE WITNESS:  I would say that to

25      my knowledge, the records access officer

Page 25

1                    KERRY JAMIESON

2      does not assert that the unwarranted

3      invasion of privacy exception for -- based

4      on the outcome of a CCRB investigation.

5               MR. COLES:  Evan, you can take the

6      exhibit down for the time being.

7  BY MR. COLES:

8      Q       Does the CCRB have a policy as to

9  whether or not it releases the disciplinary

10 records of claims and allegations that are

11 pending?

12     A       I'm sorry.  I don't know if I

13 understand your question.

14     Q       Okay.  Does the CCRB -- well, you

15 understand that a claim or allegation at the

16 CCRB will go through a process, correct?

17     A       Uh-huh.

18     Q       Okay.  And then ultimately that

19 process will result in a claim being

20 unsubstantiated or substantiated, correct?

21               MS. QUINN:  Objection.  This is

22     outside the scope of this deposition.

23               MR. COLES:  It's not.

24               MS. QUINN:  Asking about the

25     process of CCRB investigations is outside

Page 26

```
 1                    KERRY JAMIESON
 2        the scope.
 3                  MR. COLES:   This is directly
 4        related to FOIL.
 5                  MS. QUINN:   How so?
 6                  MR. COLES:   Can I have my question
 7        back?
 8                  I'm not going to engage in
 9        colloquy.  If you want to direct her not to
10        answer, we'll take it up with the judge.
11                  MS. QUINN:   I'm going to direct
12        her not to answer, unless you can come to
13        the --
14                  MR. COLES:   Can I have the
15        question back, please, and then you can
16        direct her not to answer.
17        BY MR. COLES:
18           Q      Actually, I'll -- here's -- so we
19        don't waste time, does the CCRB have a policy
20        of withholding as privacy allegations that
21        haven't yet been concluded because they're
22        under investigation?
23           A      Not on unwarranted invasion of
24        privacy grounds, no.
25           Q      On some other grounds?
```

Page 27

1                    KERRY JAMIESON

2        A       Yes.

3        Q       On what grounds?

4        A       Usually we -- I believe the record

5    access officer asserts the inter-agency or

6    intra-agency exception, and it's also I

7    believe the interference with judicial

8    proceedings.  So we have -- there's two

9    different things.  There's CCRB cases, and

10   then if a case is pending in the APU, the

11   records access officer will not release any

12   information about the CCRB case or the APU

13   case until the APU case is closed.

14       Q       Okay.  And in determining the

15   privacy exception under FOIL, does the records

16   access officer look at every FOIL request on a

17   case-by-case basis?

18       A       Yes.

19       Q       And makes a determination about

20   privacy on a case-by-case basis?

21       A       I believe they -- the records

22   access officer looks at all the FOIL

23   exceptions.

24       Q       Okay.  And is it your testimony

25   that as a matter of practice the CCRB never

Page 28

```
1                    KERRY JAMIESON
2     asserts the privacy exception on the basis of
3     the outcome of the case?
4                    MS. QUINN:  Objection.  Asked and
5         answered.
6                    But you may answer.
7                    THE WITNESS:  To my knowledge,
8         that -- since I have been records access
9         officer and since I've been at the agency,
10        that has not occurred.
11    BY MR. COLES:
12        Q       Is that a written policy?
13        A       No, it's not a written policy.
14        Q       Who established the policy?
15                   MS. QUINN:  Objection.
16                   THE WITNESS:  Having --
17                   MS. QUINN:  You can answer.
18                   THE WITNESS:  We have in the FOIL
19        manual some guidance on when exceptions can
20        be asserted.  There is no guidance there
21        about denying based on privacy.  There's no
22        guidance on asserting the privacy exception
23        based on the outcome of a case or the
24        pending nature of a case.
25                   ///
```

Page 29

1                    KERRY JAMIESON

2    BY MR. COLES:

3         Q        Okay.  And why does the CCRB

4    believe that the release of unsubstantiated or

5    unfounded allegations is not an invasion of

6    personal privacy?

7                    MS. QUINN:  Objection.

8                    You can answer.

9                    THE WITNESS:  The exception is

10        permissive.  And so FOIL starts from the

11        standpoint that all records should be

12        released.  And then it's only if an

13        exception applies and the agency wants to

14        assert that exception that records should

15        be held back.  But the presumption is that

16        all records are disclosable to the public.

17   BY MR. COLES:

18        Q        Do you know what the police

19   department's position is with regard to

20   unsubstantiated and unfounded allegations?

21                    MS. QUINN:  Objection.  This is --

22                    I'm going to instruct the witness

23        not to answer as being outside the scope.

24   BY MR. COLES:

25        Q        Do you know whether or not the

Page 30

```
 1                    KERRY JAMIESON
 2    position the CCRB takes is different than
 3    other City agencies?
 4                    MS. QUINN:  Objection.
 5                    You can answer.
 6                    THE WITNESS:  I do not know.
 7    BY MR. COLES:
 8        Q       Okay.  And what was the reasoning
 9    behind the CCRB's determination not to ever --
10    not to ever assert the privacy objection as to
11    unsubstantiated and unfounded claims?
12                    MS. QUINN:  Objection.
13                    You can answer.
14                    THE WITNESS:  The records access
15        officer follows the FOIL law.  It's a
16        permissive exception.
17    BY MR. COLES:
18        Q       Okay.  Have you ever been involved
19    in discussions regarding the commission -- the
20    Committee on Open Government opinions
21    indicating that unsubstantiated or unfounded
22    allegations could constitute an unwarranted
23    invasion of privacy?
24        A       Discussions?
25        Q       Yes.
```

1                    KERRY JAMIESON

2      A       I don't -- I don't know that I

3  understand what you mean.  Discussions with

4  who?

5      Q       Discussions with other members of

6  the CCRB.

7      A       Can we take a -- take a break?

8  Can we -- I just need to consult with counsel.

9              MR. COLES:  Sure.

10             THE VIDEOGRAPHER:  We are off the

11      record at 3:25 p.m.

12             (Break taken from 3:25 p.m. to

13         3:28 p.m.)

14             (Previous question read back.)

15             THE VIDEOGRAPHER:  And we're back

16      on the record at 3:28 p.m.

17             THE WITNESS:  Okay.  I cannot

18      answer that question without breaching

19      attorney-client privilege.

20  BY MR. COLES:

21      Q       When did you have those

22  discussions?

23             MS. QUINN:  Objection.  Only

24      answer to the extent that it doesn't

25      disclose an attorney-client privilege.

1                  KERRY JAMIESON

2                  THE WITNESS:  I honestly don't

3       know the date.

4    BY MR. COLES:

5       Q      Okay.  Was it within the last

6    three weeks?

7       A      Yes.

8                  MS. QUINN:  Same objection.

9                  MR. COLES:  Excuse me?

10                  MS. QUINN:  Same objection.

11                  But you may answer.

12                  THE WITNESS:  Yes.

13   BY MR. COLES:

14      Q      Who was present at the

15   conversation?

16      A      I can't answer that without

17   breaching attorney-client privilege.

18      Q      Was your attorney present?

19                  MS. QUINN:  Objection.  Only

20       answer that question to the extent it

21       doesn't breach attorney-client privilege.

22                  THE WITNESS:  Other members of

23       CCRB legal staff.

24   BY MR. COLES:

25      Q      Anybody outside the CCRB present?

Page 33

1                    KERRY JAMIESON

2        A        No.

3        Q        Will you tell me the substance of

4    the discussions there?

5                    MS. QUINN:  Objection.

6                    I'm instructing the witness not to

7           answer that question as it breaches

8           attorney-client privilege.

9    BY MR. COLES:

10       Q        Will you tell me the reasons why

11   the CCRB does not follow the Committee on Open

12   Government's guidance that unsubstantiated or

13   unfounded allegations are subject to the

14   privacy exemption of FOIL?

15                   MS. QUINN:  Objection.

16                   You can answer.

17                   THE WITNESS:  Well, I disagree

18          with the premise of your question.  The --

19          my understanding of the guidance from the

20          Committee on Open Government is that the

21          unwarranted invasion of privacy exception

22          could be asserted for that purpose, but

23          that agency is not required to assert that.

24          So I don't believe that the CCRB does not

25          follow the guidance.

 1                    KERRY JAMIESON

 2    BY MR. COLES:

 3        Q        Well, my question is, what are the

 4    reasons why the CCRB decided to disclose

 5    information that the Open Commission --

 6    Committee on Open Government said may be an

 7    unreasonable or unwarranted invasion of

 8    privacy?

 9                    MS. QUINN:  Objection to form.

10                    You can answer.

11                    THE WITNESS:  I believe the answer

12        is the same, that it's a permissive

13        exception.  So the records access officer

14        can't assert it or not assert it.

15    BY MR. COLES:

16        Q        But my question -- as I understand

17    it, it is a policy of the CCRB not to assert

18    it, according to your earlier testimony, and

19    my question is, what are the reasons for that

20    policy?

21                    MS. QUINN:  Objection.

22                    You can answer.

23                    THE WITNESS:  I believe my earlier

24        testimony was that the records access

25        officer looks at every FOIL request

Page 35

1                    KERRY JAMIESON

2      individually.  But to my knowledge has not

3      asserted the unwarranted invasion of

4      privacy exception for that, nor do I

5      believe that the records access officer

6      would, but, again, each FOIL request is

7      handled individually.

8  BY MR. COLES:

9      Q      And why do you believe the record

10  access officer would not assert that

11  objection?

12      A      Because it's -- because the

13  records access officer has not, and since the

14  assertion -- since it is a permissive

15  exception, you know, and furthermore, you

16  know, the CCRB, since 50-a was repealed, the

17  landscape is different from what it was

18  before.

19      Q      Okay.  Are you aware that

20  historically the CCRB has taken the position

21  that unsubstantiated and unfounded allegations

22  are, in fact, information that should be

23  withheld under the privacy exception?

24              MS. QUINN:  Objection.  You can

25      answer.

1                    KERRY JAMIESON

2                    THE WITNESS:  I am not aware of

3         that and I don't know that to be the case.

4    BY MR. COLES:

5         Q       I'd like to show you Tab 10.

6    We're going to mark it as Exhibit 2.  It's a

7    case called Hughes Hubbard & Reed versus

8    Civilian Complaint Review Board.  We're going

9    to put it up on the screen for you.

10                   (Exhibit Number 2, Document

11              Titled "Hughes Hubbard & Reed

12              versus Civilian Complaint Review

13              Board," was marked for

14              identification.)

15   BY MR. COLES:

16        Q       Ms. Jamieson, are you familiar

17   with this case, Hughes Hubbard & Reed versus

18   Civilian Complaint Review Board?

19        A       I've seen it before.

20        Q       Okay.  And when did you last see

21   it?

22        A       I can't answer that.  I don't

23   know.

24                   MR. COLES:  Okay.  And if you go

25        to the second page, please, Evan.

Page 37

1                    KERRY JAMIESON

2    BY MR. COLES:

3         Q        You'll see this is a -- this is a

4    case that deals with a request of CCRB

5    records, and they're listed there on the left

6    side.

7                    Do you see that?

8                    MS. QUINN:   Is there a way that we

9         can make the whole page visible?  I want to

10        see the paragraph before the highlighted

11        paragraph.

12                    Thank you.

13   BY MR. COLES:

14        Q        And you'll note that the case --

15   in the case the petitioner requested documents

16   on behalf of a client who was a defendant in a

17   case investigated by Detective Scarcella, and

18   the CCRB denied petitioner's request based

19   upon Public Officers Law 87(2)(a), which

20   permits agencies to deny access to records

21   when they are specifically exempted from

22   disclosure by state or federal statute and

23   Civil Rights Law 51.

24                    Do you see that?

25        A        I see 50-a.

Page 38

1                KERRY JAMIESON

2      Q        It's 50-a(1).

3      A        That one?

4      Q        Yes.

5               Okay.  And if you look at the

6      highlighted section on the bottom, it says:

7      "In this regard, the CCRB explained."

8               MR. COLES:  And, Evan, if you can

9         go to the next page.

10     BY MR. COLES:

11     Q        "Courts have routinely and

12     specifically held that CCRB records, which by

13     their very nature are used to evaluate police

14     officer performance, are restricted by Civil

15     Rights Law 50-a."

16               And then if you go down to the

17     next sentence the CCRB writes:

18               "Also, I would note that, to the

19     extent your request seeks records concerning

20     any matters that were not substantiated, any

21     such requests would also represent an

22     unreasonable invasion of privacy?"

23               And the CCRB wrote that in 2015.

24               Do you see that?

25     A        I see that.

1                    KERRY JAMIESON

2        Q        Did there come a time, to your

3   knowledge, when the CCRB took the position

4   that the release of unsubstantiated claims

5   were an unreasonable invasion of privacy?

6        A        Well, I wasn't employed by the

7   CCRB at this time, so I can't comment on that.

8        Q        My question is, are you aware of

9   that?

10       A        I wasn't employed at the -- so at

11  the time when this was written, I wouldn't

12  have known that.

13       Q        You are aware that that policy

14  existed?

15       A        When I began at CCRB, I was not

16  aware.

17       Q        And you began CCRB in what year?

18       A        2017, August.

19       Q        Do you have any knowledge as to

20  whether or not the CCRB has changed its policy

21  concerning the release of unsubstantiated

22  documents since 2016?

23                MS. QUINN:  Objection.

24                You can answer.

25                THE WITNESS:  I don't know that

1                    KERRY JAMIESON

2        it's changed its policy.  From my

3        understanding, it's up to the agency or the

4        records access officer in a particular case

5        to determine whether or not to assert a

6        particular exemption.  And I don't believe

7        that -- and if it's asserted in one

8        particular case that it needs to be

9        asserted in other cases.

10   BY MR. COLES:

11       Q      But to your knowledge, the CCRB

12   simply doesn't assert anymore that

13   unsubstantiated complaints are protected by

14   the privacy exemption, correct?

15                 MS. QUINN:  Objection.

16                 You can answer.

17                 THE WITNESS:  It's my

18       understanding that, again, each FOIL

19       request is evaluated on an individual

20       case-by-case basis.  To my knowledge, since

21       I have been employed at the CCRB, this

22       particular privacy exemption has not been

23       asserted with regards to the manner -- with

24       regards to the outcome of -- of a case.

25                 ///

1                    KERRY JAMIESON

2    BY MR. COLES:

3        Q        Are you aware recently that the

4    CCRB released records of 81,000 police

5    officers to the New York Civil Liberties

6    Association?

7                    MS. QUINN:  Objection.

8                    You can answer.

9                    THE WITNESS:  I'm aware.

10   BY MR. COLES:

11       Q        Okay.  Is it your testimony that

12   the records access officer in that case

13   provided or conducted an individualized

14   determination of the privacy exemption for all

15   those 81,000 officers?

16                   MS. QUINN:  Objection.

17                   You can answer.

18                   THE WITNESS:  I believe that the

19       records access officer -- again, I was not

20       that person, but the request was for

21       similar records.  So in an individual -- so

22       there was no need to do a line by line of

23       every -- of all 81,000-plus officers.  I

24       believe it was the determination to give

25       out information -- limited information

Page 42

1                    KERRY JAMIESON

2        about cases.

3                    So from my understanding, pending

4        cases, which means cases that were pending

5        at the CCRB or are pending in the APU were

6        not included in that disclosure.  Cases

7        that were mediated were not just included

8        in that disclosure.  I believe cases that

9        were referred were not included in that

10       disclosure.

11                   So I do believe that the records

12       access officer made a determination based

13       on -- that -- those records, whether or not

14       they were substantiated or unsubstantiated,

15       unfounded, exonerated, that did not go

16       to -- that did not warrant the assertion of

17       that privacy exemption.

18  BY MR. COLES:

19       Q       Is it your testimony she looked at

20  all of the claims for the 81,000 officers

21  claim by claim?

22                   MS. QUINN:  Objection.

23                   You can answer.

24                   THE WITNESS:  That's not my

25       testimony.  My testimony is that the

Page 43

1                      KERRY JAMIESON

2       request was for types of records that apply

3       to many officers, and the determination was

4       made as to which records would be released.

5       But all the records are similar.

6                So in the sense that whether the

7       outcome of the case, whether it's

8       substantiated, unsubstantiated, exonerated,

9       unfounded, did not go -- did not warrant

10      assertion of the unwarranted invasion of

11      privacy exception.

12  BY MR. COLES:

13      Q       How could you reach that

14  conclusion with any confidence without doing a

15  file-by-file, officer-by-officer review?

16              MS. QUINN:  Objection.

17              THE WITNESS:  Well, no information

18      other than the outcome of the case was

19      released.

20  BY MR. COLES:

21      Q       Let -- my question is, how could

22  you know that releasing the information you

23  did wouldn't invade the privacy at least of

24  some of those officers without doing --

25      A       Again --

Page 44

1                    KERRY JAMIESON

2      Q        -- a case-by-case analysis?

3      A        Again, that's -- the exception is

4  a permissive one.  So there's no requirement

5  that the agency asserted at all.

6            So, again, the premise is that

7  all -- when a FOIL request comes in, that the

8  records should be released.  It is -- FOIL

9  exceptions are supposed to be narrowly

10 construed, and it's up to the agency to

11 determine whether or not to assert a

12 permissive exemption.  So we're not required

13 to assert it at all.

14     Q        Okay.  Is there anything you want

15 to add to your answer?

16     A        No.

17     Q        Do you believe that the CCRB has

18 an obligation to maintain the privacy of

19 officer personnel records under 87(2)(b)?

20            MS. QUINN:  Objection.

21            I'm going to instruct the witness

22     not to answer as to what she believes.

23 BY MR. COLES:

24     Q        When I say "you," I'm talking

25 about the CCRB because you're a 30(b)(6)

1                KERRY JAMIESON

2    witness.

3              THE WITNESS:  Should I answer?

4              MS. QUINN:  Yes, you can answer.

5              THE WITNESS:  Can you repeat the

6        question?  I'm sorry.

7              MR. COLES:  She'll read it back to

8        you.

9              (Previous question read back.)

10             THE WITNESS:  I believe the CCRB

11       has an obligation to follow the FOIL law.

12   BY MR. COLES:

13       Q      Okay.  Can you answer yes or no to

14   my question?

15             MS. QUINN:  Objection.

16             You can answer.

17             THE WITNESS:  I don't know that

18       your question can be answered yes or no.

19   BY MR. COLES:

20       Q      Why not?

21       A      You're saying do I -- that we have

22   obligations to protect the privacy?  We have

23   obligations to provide the -- to -- to follow

24   the law.

25       Q      Is there anything you want to add

Page 46

1                    KERRY JAMIESON

2      to your answer?

3           A        No.

4           Q        Okay.  And is it fair to say that

5      you can't answer the question yes or no

6      whether or not the CCRB believes it has an

7      obligation and responsibility to maintain the

8      privacy rights of officers?

9                    MS. QUINN:  Objection.

10                   You can answer.

11                   THE WITNESS:  Well, I think we

12          have an obligation to protect personal

13          identifying information about these

14          officers, and we certainly do that, and we

15          will redact any information that falls into

16          that category.  We do that for not for just

17          for officers but for civilians and anyone

18          else's records.

19                   And as an agency, we're subject to

20          identifying information law, so we do

21          follow that to the extent it is not

22          inconsistent with FOIL.  So we do protect

23          privacy in those ways.  So -- but the

24          privacy exception is not asserted as it

25          relates to the outcome of the case.

Page 47

1                    KERRY JAMIESON

2    BY MR. COLES:

3        Q      Do you know whether or not the

4    FOIL officer did a file-by-file or

5    case-by-case analysis of those 81,000 officers

6    to determine whether or not the safety

7    exemption in the FOIL law applied?

8                MS. QUINN:  Objection.

9                You can answer.

10               THE WITNESS:  I was not the person

11       who did that, but I can assume that she did

12       not go through every single one.  But,

13       again, is also making the -- again, these

14       are permissive exceptions.  So the agency

15       is not required to assert any of them.

16   BY MR. COLES:

17       Q      Okay.  Is it your --

18               MS. QUINN:  Excuse me.  Can we --

19       are we still working with the exhibit?  If

20       not, can we put the witness back on.

21               MR. COLES:  You can move the

22       exhibit down.

23               MS. QUINN:  Thank you.

24   BY MR. COLES:

25       Q      Is it your testimony that the CCRB

                        KERRY JAMIESON

1

2      does not consider it an obligation to apply

3      the safety exemption when the release of

4      documents may put officers at risk?

5                   MS. QUINN:  Objection.

6                   You can answer.

7                   THE WITNESS:  I believe that if

8          the -- if the records access officer has

9          any reason to assert it, then the records

10         access officer probably would.  However,

11         there's no requirement that the agency

12         assert that exception at all.

13     BY MR. COLES:

14         Q       But in this case, your testimony

15     is the records access officer couldn't have

16     looked at all the 81,000 officers.  So my

17     question to you is, how can you have any

18     confidence that some of those documents didn't

19     create safety risks for these subject

20     officers?

21                   MS. QUINN:  Objection.

22                   You can answer that.

23                   THE WITNESS:  The only documents

24         that were released was basically an

25         officer's name and whether or not -- a case

1                    KERRY JAMIESON

2        number and whether or not -- and what the

3        outcome of the case was.  There was no

4        additional documents.  There's no facts

5        about the case, nothing.

6    BY MR. COLES:

7        Q       You didn't look at the cases on a

8    case-by-case basis to determine if that

9    information in certain cases may, in fact,

10   create a risk of safety.  Is that fair?

11       A       Again, I'm not the person who did

12   that, but I'm pretty sure that she did not go

13   through line by line all 81,000.  However, I'm

14   confident that she did not believe that there

15   was any basis for asserting that exception.

16       Q       Okay.  Do you know what analysis

17   she provided or undertook in order to reach

18   that conclusion?

19       A       I can't answer that.

20       Q       Does the --

21       A       I can only follow the law.

22       Q       Does the CCRB have a policy that,

23   in order to protect the safety of officers, a

24   case-by-case, file-by-file review should be

25   done of every FOIL request?

Page 50

1                    KERRY JAMIESON

2              MS. QUINN:  Objection.

3              You can answer.

4              THE WITNESS:  We have a policy

5      that each FOIL request is evaluated on a

6      case-by-case basis.  Each FOIL request.

7      And if there is an applicable FOIL

8      exemption that the agency chooses to

9      assert, and we're talking about permissive

10     ones, then it's up to the records access

11     officer whether or not to assert it.

12             MR. COLES:  Can I have my question

13     back, please.  I'm not sure that was

14     exactly responsive, and I want to make sure

15     that you and I are on the same page in this

16     area.  So I'm going to ask the court

17     reporter to read it back.

18             (Previous question read back.)

19             THE WITNESS:  So we do a

20     case-by-case analysis of each FOIL request.

21     I don't know if that answers your question.

22     And to the extent that the records access

23     officer determines that an exception should

24     be asserted, that person will assert it.

25             ///

Page 51

 1                    KERRY JAMIESON

 2   BY MR. COLES:

 3      Q       Okay.  I guess I don't want to

 4   belabor this, but just so we have a clear

 5   record, how could anyone at the CCRB know

 6   whether or not the safety exemption applies if

 7   it doesn't -- if it doesn't look at every

 8   single file that is being produced?

 9              MS. QUINN:  Objection.

10              You can answer.

11              THE WITNESS:  CCRB isn't required

12      to assert or look for any of those FOIL

13      exemptions.  They're permissive exemptions.

14      So there's no requirement that the agency

15      engage in any analysis.  To the extent that

16      the records access officer does and chooses

17      to assert it, then the records access

18      officer can.

19   BY MR. COLES:

20      Q       And the analysis you just -- or

21   the answer you just gave applies to the safety

22   exemption, in the CCRB's view?

23      A       That applies to every permissive

24   exemption.

25      Q       Including --

Page 52

```
 1                    KERRY JAMIESON
 2       A       There's --
 3       Q       Including the safety exception?
 4       A       Yes.  So permissive -- that is a
 5   permissive exemption.
 6       Q       Does it -- is it -- has it ever
 7   been raised as a concern at the CCRB that not
 8   providing or not enforcing the safety
 9   exclusion might in fact create real-world
10   risks for police officers in the field?
11              MS. QUINN:  Objection.
12              THE WITNESS:  Well --
13              MS. QUINN:  You can answer.
14              THE WITNESS:  I can tell you
15      from -- so it depends on what the FOIL
16      request is.  So a FOIL request for officer
17      histories, which, as I mentioned before,
18      just says the officer's name, a case
19      number, and what the outcome of the case
20      is, and has no information, I don't believe
21      there's any basis for raising a life and
22      safety exception for that.  However, if
23      there's a different type of FOIL request
24      that involves more documents, then the
25      agency does assert the life and safety.
```

Page 53

1                    KERRY JAMIESON

2          So it's not a matter that the

3     agency doesn't assert that exception.  It

4     certainly does.  However, with respect to

5     officer history, which is what I believe

6     you are asking about, then that is not --

7     then I don't believe that that exception --

8     the records access officer didn't believe

9     that that exception was applicable and

10    needed to be asserted.

11    BY MR. COLES:

12      Q      Okay.  And then we can close this

13    down, but you reached that conclusion without

14    doing a file-by-file review, correct?

15              MS. QUINN:  Objection.

16              You can answer.

17              THE WITNESS:  I'm not -- I didn't

18    do it so I can't say, but I -- I presume

19    that she did not review 81,000 records.

20    BY MR. COLES:

21      Q      All right.  Okay.  And presumably

22    she didn't make any review as to whether or

23    not the release of records would affect the

24    collective bargaining rights of the individual

25    officers; is that correct?

Page 54

```
1                    KERRY JAMIESON
2               MS. QUINN:  Objection.
3               You can answer.
4               THE WITNESS:  Well, I don't
5     believe that there's an exception for that.
6   BY MR. COLES:
7        Q      Okay.  Are you aware of -- well,
8   are you familiar with the collective
9   bargaining agreements of the -- of the unions
10  who are plaintiffs in this action?
11              MS. QUINN:  Objection.
12              THE WITNESS:  No.
13              MS. QUINN:  That's outside the
14      scope of this deposition.
15  BY MR. COLES:
16       Q      Okay.  Do you know whether or not,
17  as -- in your position as a records access
18  officer, the collective bargaining agreements
19  of the plaintiffs in this action affect the
20  release of unsubstantiated allegations?
21              MS. QUINN:  Objection.
22              You can answer.
23              THE WITNESS:  I don't believe that
24      there is a FOIL exception for collective
25      bargaining agreements.  There's a FOIL
```

Page 55

1                     KERRY JAMIESON

2        exception for negotiations around

3        collective bargaining agreements, but there

4        is no exception under FOIL.  So I don't

5        believe that we can even assert that.

6                     MS. QUINN:  Tony, can I just --

7        I'm just going to take a 30-second break,

8        if you don't mind.  It's going to be

9        probably more like a minute.

10                    MR. COLES:  Okay.  We'll take a

11       one-minute break.

12                    MS. QUINN:  Thank you very much.

13                    MR. COLES:  Are you going to speak

14       to the witness?  Is that what you want to

15       do?

16                    MS. QUINN:  Yes, I'd like to speak

17       to the witness.  Thank you.

18                    THE VIDEOGRAPHER:  We are off

19       record at 3:53 p.m.

20                    (Break taken from 3:53 p.m. to

21            3:54 p.m.)

22    BY MR. COLES:

23       Q      Did your counsel just speak to you

24    about the question that I had asked?

25                    THE VIDEOGRAPHER:  Sorry, Counsel.

```
1                    KERRY JAMIESON

2              We are back on record at 3:54 p.m.

3   BY MR. COLES:

4       Q       I'm sorry.  Did your counsel just

5   speak to you about the question that I had

6   asked?

7       A       No.

8       Q       Okay.  Did she speak to you about

9   any of the questions that I had asked?

10      A       No.

11      Q       Okay.  Are you familiar with

12  87(2)(c), the exemption in that provision --

13      A       Yes.

14      Q       -- of the FOIL law?

15              Okay.  And are you aware that it

16  says that there's an exemption that if

17  disclosed would impair present or imminent

18  contract or collective bargaining

19  negotiations?

20      A       Yes, I'm aware of that exemption.

21      Q       Okay.  And is it your testimony

22  that the CCRB is free to release documents

23  that may be prevented or that may be addressed

24  or maintained as confidential in the

25  collective bargaining agreement?
```

1                    KERRY JAMIESON

2               MS. QUINN:  Objection.

3               You can answer.

4               THE WITNESS:  I'm not sure I

5        understand your question.  Can it be read

6        back to me, please?

7    BY MR. COLES:

8        Q        I'll rephrase it to make it clear.

9               Is it the CCRB's position that it

10   can release documents that collective

11   bargaining agreements require to be

12   confidential?

13       A        I believe the CCRB's records

14   access officer would follow the FOIL law which

15   -- which makes it permissive to assert that

16   the -- that if there's information that be

17   relevant to a collective bargaining

18   negotiation.

19       Q        And it's the CCRB's position that

20   it could release that information under the

21   FOIL law even though the information may be

22   protected by a collective bargaining agreement

23   entered into between the City and the

24   officer's union?

25               MS. QUINN:  Objection.

Page 58

1                    KERRY JAMIESON

2                    You can answer.

3                    THE WITNESS:  I believe the FOIL

4         law is -- it's a permissive exemption so it

5         can be asserted or not asserted.  There's

6         no requirement that it is.

7    BY MR. COLES:

8         Q      So the answer to my question is

9    yes, you believe the CCRB can do that?

10        A      Under FOIL, that record could be

11   released, yes.

12        Q      Okay.  And is it fair to say the

13   CCRB does not make an analysis of what the

14   collective bargaining agreements deem as

15   confidential or not as confidential?

16                   MS. QUINN:  Objection.

17                   You can answer.

18                   THE WITNESS:  I don't believe that

19        that falls within the exception, any of the

20        FOIL exceptions.

21   BY MR. COLES:

22        Q      My question was a little

23   different.  My question is, is whether or not

24   you do an analysis of whether -- of how the

25   collective bargaining agreement treats certain

Page 59

```
 1                  KERRY JAMIESON
 2    documents in making your -- in making the
 3    agency's FOIL determination.
 4                  MS. QUINN:  Objection.
 5                  You can answer.
 6                  THE WITNESS:  That agency follows
 7        the FOIL law, and the FOIL law talks about
 8        87 -- I believe it's (2)(c) talks about
 9        imminent or present contract negotiations
10        and it's permissive.  So I believe your
11        question was about existing contracts.  So
12        I don't -- so, again, we would follow the
13        FOIL law.
14    BY MR. COLES:
15        Q       Okay.  Is there anything more you
16    want to add to your answer about what that
17    exception means?
18        A       No.
19        Q       Okay.  You said you came to the
20    CCRB in 2017, correct?
21        A       Yes.
22        Q       Okay.  I want to show you the next
23    exhibit.  It's -- I think it will be
24    Exhibit 3.  It is Tab 11.  It's a case called
25    Luongo versus Records Access Officer, and it's
```

Page 60

1                    KERRY JAMIESON

2    dated March 2017.

3                    (Exhibit Number 3, Document

4            Titled "Luongo versus Records

5            Access Officer," was marked for

6            identification.)

7    BY MR. COLES:

8        Q      Okay.  The first question, ma'am,

9    is whether or not you're familiar with this

10   case.

11       A      Yes, I'm familiar with it.

12       Q      Okay.  I'd like -- when did you

13   first become familiar with the case?

14       A      When I started at the agency.

15       Q      Okay.

16              MR. COLES:  Can we go to page 3.

17       The next page, please.  Oh, that's fine.

18       Page 3.

19   BY MR. COLES:

20       Q      How was it how you became -- what

21   were the circumstances under which you became

22   familiar with this case?

23       A      When I began at the agency, I read

24   numerous FOIL cases to become more familiar

25   with FOIL and to understand the law generally

Page 61

1                    KERRY JAMIESON

2    speaking.  So . . .

3         Q       And you understood that -- you

4    understood that this case had to do with the

5    release of disciplinary records regarding

6    Officer Daniel Pantaleo, correct?

7         A       Yes.

8         Q       Okay.  And you understand that the

9    CCRB denied the request, right?

10        A       Yes, that's my understanding.

11        Q       Okay.  On the page that's now on

12   the screen, there's a paragraph that's in the

13   highlight.

14                Do you see that?

15        A       Yes.

16        Q       It says:  "On December 24, 2014,

17   CCRB denied the request, citing the statutory

18   exemption from disclosure provided for police

19   personnel records contained in Public Officers

20   Law and civil rights law."

21                You see that, right?

22        A       Yes.

23        Q       Okay.  I want you to focus on the

24   next sentence.

25                "In addition to the statutory

Page 62

1               KERRY JAMIESON

2  exemptions, CCRB noted that the request for

3  records relating to unsubstantiated matters

4  would constitute an unreasonable invasion of

5  privacy?"

6          Do you see that?

7     A     Yes, I see it.

8     Q     Okay.

9          MS. QUINN:  Can I just ask that we

10     scroll down to the paragraph at the bottom

11     of the first column?  I just want to see

12     the paragraph preceding.

13          Thank you.

14  BY MR. COLES:

15     Q     Do you have an understanding as to

16  the basis for the CCRB's conclusion that the

17  request for records related to unsubstantiated

18  matters would constitute an unreasonable

19  invasion of privacy?

20     A     I did not work at the CCRB at the

21  time of that letter.  So no, I don't know.

22     Q     Okay.  But wasn't that the

23  practice at the CCRB at the time you joined in

24  August 2017?

25          MS. QUINN:  Objection.

Page 63

1                    KERRY JAMIESON

2              You can answer.

3              THE WITNESS:  I don't know that

4      your statement is correct.

5    BY MR. COLES:

6      Q      Okay.  Well, is it your view that

7    in 2017 the statement here, that

8    "unsubstantiated matters would constitute an

9    unreasonable invasion of privacy," did not

10   reflect CCRB policy at that time?

11     A      I believe the statement was made

12   in 2014.  But, again, having not worked at the

13   agency at that time, I can assume that the

14   FOIL officer followed the law and chose to

15   assert a permissive exception, but I --

16     Q      I'm sorry.  But it's broader than

17   that.  There the FOIL officer is saying

18   unsubstantiated matters by definition would

19   constitute an unreasonable invasion of

20   privacy.

21              Do you see that?

22              MS. QUINN:  Objection.

23              You can answer.

24              THE WITNESS:  I mean, I see the

25     highlighted portion of the decision.

Page 64

1                       KERRY JAMIESON

2               Did you have a question about -- I

3       see that that's what it says, but I'm -- I

4       don't know what your question is.

5    BY MR. COLES:

6       Q       Well, do you have any reason to

7    believe that that didn't reflect CCRB policy

8    at the time?

9               MS. QUINN:  Objection.

10              You can answer.

11              THE WITNESS:  I don't have -- I'm

12      sorry.  I don't have enough information to

13      answer that question.

14   BY MR. COLES:

15      Q       Well, you're here as the 30(b)(6)

16   witness.  Did you make any effort to determine

17   the history of the CCRB's policy regarding the

18   release of unsubstantiated matters before this

19   deposition?

20              MS. QUINN:  Objection.

21              You can answer.

22              THE WITNESS:  Yes, I'm aware of

23      the CCRB's policy.  However, in 2014, what

24      was the basis of -- what was the reasoning

25      behind why that particular exception was

Page 65

1                    KERRY JAMIESON

2        asserted, I cannot say.

3    BY MR. COLES:

4        Q       Did you make any effort to

5    determine why that policy was reflected in

6    Exhibit 3?

7                    MS. QUINN:  Objection.

8                    You can answer.

9                    THE WITNESS:  I don't know that a

10       policy was -- is reflected there.  What I

11       see is a response to an individual FOIL

12       request.

13   BY MR. COLES:

14       Q       Okay.  Are you familiar with a

15   document on the CCRB Website called "FOIL

16   Subject Matter List"?

17       A       I perused it.  I don't know it

18   in-depth.

19       Q       Okay.  I'm going to put it up.

20                    MR. COLES:  Evan, can you put up

21       the exhibit.

22                    MS. QUINN:  I'm sorry.  Where did

23       you say this was from?

24                    MR. COLES:  We're marking as

25       Exhibit 4 a document from the CCR Website

Page 66

1                    KERRY JAMIESON

2        entitled "FOIL Subject Matter List."

3                    (Exhibit Number 4, FOIL Subject

4               Matter List from CCRB Website, was

5               marked for identification.)

6    BY MR. COLES:

7        Q       Ms. Jamieson, this is the document

8    that you've perused?

9        A       Yes.

10       Q       Okay.  And can you explain what

11   this document reflects?

12       A       It reflects that the FOIL law

13   requires that every agency have a subject

14   matter list that generally describes records

15   that it has in its possession.

16       Q       Okay.  And if you look at the

17   first paragraph over here, about three lines

18   up from the bottom there's a sentence that

19   begins with the word "All."  Do you see that?

20               It says:  "All government records

21   are subject to the exemptions stipulated in

22   FOIL."

23               Do you see that?

24       A       Uh-huh.

25       Q       Does that reflect CCRB policy?

1                    KERRY JAMIESON

2       A        That reflects the FOIL law.

3       Q        Right.  But isn't it true that as

4   a matter of policy the CCRB does not provide

5   or use certain exemptions that are stipulated

6   in the FOIL law?

7       A        No, that's not true.

8                MS. QUINN:  Okay.

9   BY MR. COLES:

10      Q        Isn't it true that the CCRB

11  releases unsubstantiated allegations even

12  though the Committee on Open Government, for

13  instance, has said that it may, in fact, treat

14  those allegations as privacy under the FOIL

15  law?

16      A        The -- the agency has released

17  officer histories that indicate that case was

18  unsubstantiated.

19      Q        Okay.  So don't you think this

20  sentence that the CCRB has on its Website is

21  somewhat misleading?  Because it would allow

22  officers to believe that the CCRB is, in fact,

23  going to apply the exemptions stipulated in

24  FOIL on a case-by-case basis?

25               MS. QUINN:  Objection.

Page 68

1              KERRY JAMIESON

2              You can answer.

3              THE WITNESS:  I don't believe it's

4       misleading.  It says -- it reflects what

5       the law is, that all records are subject to

6       exemption, in which they -- which is true.

7  BY MR. COLES:

8       Q      Anything you want to add to that

9  answer?

10      A      No.  I believe that it's not

11  misleading.

12      Q      Okay.  Is there any document you

13  know that the CCRB has released to the public

14  where it says that as a matter of policy

15  unsubstantiated and unfounded allegations are

16  not subject to the privacy exemption of FOIL?

17             MS. QUINN:  Objection.  You can

18      answer.

19             THE WITNESS:  Not that I'm aware

20      of.

21  BY MR. COLES:

22      Q      Are you -- are you aware of any

23  document that the CCRB has released to the

24  public where it said it will not, as a matter

25  of discretion, apply the FOIL exemptions on a

Page 69

```
 1                    KERRY JAMIESON

 2    case-by-case basis?

 3                    MS. QUINN:  Objection.  You can

 4         answer.

 5                    THE WITNESS:  I'm sorry.  Can you

 6         read back the question?

 7                    MR. COLES:  Sure.

 8                    (Previous question read back.)

 9                    THE WITNESS:  Not that I'm aware

10         of.

11    BY MR. COLES:

12         Q      Okay.  You said you were aware --

13                    MR. COLES:  You can take the

14         exhibit down, Evan.

15    BY MR. COLES:

16         Q      Ma'am, you said you were aware of

17    the 81,000 officer records that were released

18    to the New York Civil Liberties Association?

19         A      I'm aware that there was a

20    disclosure --

21         Q      That's right.

22         A      -- to New York Civil Liberties

23    Union.

24         Q      Were you involved in the decision

25    to make that disclosure?
```

Page 70

1                   KERRY JAMIESON

2        A        No, I was not.

3        Q        Okay.  Do you know who made the

4   determination to release those documents?

5                   MS. QUINN:  Objection.  I'm going

6        to instruct the witness only to answer as

7        it doesn't impinge on attorney-client

8        privilege.

9                   THE WITNESS:  I don't know the

10       answer to that.

11   BY MR. COLES:

12       Q        Do you know whether or not the

13   executive director of the CCRB was involved in

14   that decision?

15       A        From my understanding, he had some

16   involvement.  I'm not 100 percent sure exactly

17   what that was.

18       Q        What is your understanding of the

19   involvement that he did have?

20       A        It's my understanding that he

21   forwarded the FOIL request to the records

22   access officer.

23       Q        Okay.  And do you know whether or

24   not he forwarded it with a cover email of any

25   sort?

1                    KERRY JAMIESON

2              MS. QUINN:   Objection.

3        This witness -- I think this is outside the

4        scope of the deposition.

5    BY MR. COLES:

6         Q        You can answer the question.

7              MS. QUINN:   This deposition is

8    on -- no, I'm instructing her not to

9    answer.   This is on FOIL policies and

10   procedures.

11             MR. COLES:   I think this deals

12   directly with FOIL policy and procedures.

13   I would like an answer to the question.

14             MS. QUINN:   Can you rephrase the

15   question?

16             MR. COLES:   No.   She can read it

17   back.

18             MS. QUINN:   All right.   Let's read

19   it back.

20                  (Previous question read back.)

21             THE WITNESS:   I don't recall.   I

22   don't think so, but I don't recall.

23   BY MR. COLES:

24        Q        Do you know whether or not he

25   spoke to the records access officer about that

1                    KERRY JAMIESON

2    FOIL request?

3        A        I don't know.

4        Q        Now, it's typical that FOIL

5    requests are sent to the records access

6    officer, right?

7        A        Actually, we get a lot of times

8    they come through investigators.  People don't

9    always know who to send them to.  So they get

10   forwarded to the records access officer

11   regardless of how they come into the agency.

12       Q        But someone who's been, say, on

13   the board of the CCRB or involved in the CCRB

14   for many years would understand, someone like

15   Mr. Dunn, that the records access officer is

16   the person who handles and receives FOIL

17   requests according to City regulations?

18                MS. QUINN:  Objection.

19                You can answer.

20                THE WITNESS:  I'm not sure I

21     understand your question.

22   BY MR. COLES:

23       Q        Well, I'm -- why don't we move to

24   the next exhibit.  It's Tab 4.

25                Okay.  This is the Declaration of

Page 73

1                    KERRY JAMIESON

2    Christopher Dunn.

3                    Do you see that?

4    A       I see what's on the screen.

5                    MR. COLES:  Okay.  And we're going

6       to mark this Declaration in the exhibits as

7       the next exhibit in this deposition.

8                    (Exhibit Number 5, Declaration

9            of Christopher Dunn, Dated 7/23/20,

10           was marked for identification.)

11   BY MR. COLES:

12   Q       And you understand that Mr. Dunn

13   has been involved with overseeing the CCRB for

14   many years, correct?

15                   MS. QUINN:  Objection.

16                   You can answer.

17                   THE WITNESS:  I don't know what

18      you mean by "overseeing."  I know he shows

19      up at board meetings.

20                   MR. COLES:  Okay.  Can we go to

21      the next page, please, Evan.

22   BY MR. COLES:

23   Q       Okay.  You see Mr. Dunn says at

24   paragraph 5:

25                   "As part of its police

Page 74

```
 1                    KERRY JAMIESON
 2     accountability work, the NYCLU has been deeply
 3     involved in civilian oversight of the NYPD."
 4              Do you see that?
 5       A      Yes.
 6       Q      And he says at the bottom of that
 7     paragraph, that he's attended monthly meetings
 8     with the CCRB for nearly 20 years?
 9       A      I see that sentence.
10       Q      And then he goes on to say:  "I
11     have extensive knowledge of CCRB operations,
12     including its data systems"?
13       A      I see the sentence.
14       Q      Okay.  And you have no reason to
15     believe that isn't true, correct?
16       A      I don't know how to answer that.
17       Q      Okay.  And Mr. -- do you know
18     Mr. Dunn?
19              MS. QUINN:  Objection.
20              Do not answer that question.
21              Mr. Coles, this is going beyond
22     the scope of this deposition.  This is on
23     FOIL.  This is on FOIL policy and
24     procedures.
25              MR. COLES:  Well, exactly.  We're
```

Page 75

1                    KERRY JAMIESON

2        talking about whether or not the CCRB

3        follows FOIL policy and procedures and what

4        procedures they follow.

5                    MS. QUINN:  But I don't know what

6        that has to do with Mr. Dunn and his

7        position and whether she knows him.

8                    I believe that the judge ordered

9        us to keep this 30(b)(6) to FOIL policies

10       and procedures.

11                    (Exhibit Number 6, Exhibit A to

12                    Declaration of Christopher Dunn,

13                    was marked for identification.)

14   BY MR. COLES:

15       Q        Okay.  I'm going to show you

16   Exhibit A to Mr. Dunn's affidavit.  It's a

17   letter dated July 9, 2020, to the executive

18   director of CCRB.

19                    Okay.  And you see it's a FOIL

20   request for NYPD officer allegation histories?

21   Do you see that?

22       A        Zoom in, please, and make it a

23   little larger?

24                    Thank you.

25       Q        Have you seen this letter before?

Page 76

1                   KERRY JAMIESON

2      A      I -- it's possible, but I'm not

3  really sure.  I don't -- I may not have.

4      Q      What is your recollection as to

5  why you might have seen it previously?

6                MS. QUINN:  Objection.

7                I'm going to instruct the witness

8      to only answer as it doesn't impinge on

9      attorney-client privilege.

10               THE WITNESS:  I don't have any

11     independent recollection of seeing this.

12     It's possible that I have, but I don't -- I

13     don't remember now.

14  BY MR. COLES:

15     Q      Okay.  Do you have any information

16  or knowledge as to why Mr. Dunn sent this

17  letter, this FOIL request, to the executive

18  director instead of to the records access

19  officer of the CCRB?

20               MS. QUINN:  Objection.

21               I'm going to instruct the witness

22     not to answer.

23               Mr. Coles, this is outside the

24     scope.  You were -- the judge did not grant

25     you leave to take a 30(b)(6) on your

Page 77

```
 1                    KERRY JAMIESON
 2        requested Topic 2, which was discussion
 3        about NYCLU.  This is FOIL policies and
 4        procedures.
 5                  MR. COLES:  Yes, we are talking
 6        about FOIL policy and procedures.  I would
 7        like an answer to that question.
 8                  MS. QUINN:  I'm going to instruct
 9        the witness not to answer.  Topic 2 was
10        rejected by the judge.  FOIL policies and
11        procedures.
12     BY MR. COLES:
13        Q       Are you going to follow that
14     instruction?
15        A       Yes.
16        Q       Okay.  Would you tell me whether
17     or not you have any information as to the
18     circumstances under which this letter was sent
19     to Mr. Darche by Mr. Dunn?
20                  MS. QUINN:  I'm instructing the
21        witness not to answer that for the same
22        reason.  It's outside the scope of this
23        deposition.
24                  MR. COLES:  It actually affects
25        the responses to FOIL, which is within the
```

Page 78

1                  KERRY JAMIESON

2        scope of the deposition.   But we can take

3        that up offline if you're directing her not

4        to answer.

5                MS. QUINN:   I prefer to take that

6        offline.

7                MR. COLES:   Okay.   As I did with

8        your colleague, I object to all your

9        directions not to answer, but I'm not going

10        to deal with them one by one.   We'll deal

11        with them offline.

12    BY MR. COLES:

13        Q        Okay.   I'd like to next show you,

14    Ms. Jamieson, as the next exhibit a letter

15    from the Police Benevolent Association to Fred

16    Davie, the chair of the CCRB, dated July 8,

17    2020.

18                CERTIFIED STENOGRAPHER:

19        Mr. Coles, was that last document to be an

20        exhibit?

21                MR. COLES:  Yes.   And this will be

22        the next exhibit.

23                (Exhibit Number 7, Letter from

24            Patrick J. Lynch, President of the

25            Police Benevolent Association, to

Page 79

1                    KERRY JAMIESON

2              Fred Davie, dated 7/8/20, was

3              marked for identification.)

4    BY MR. COLES:

5        Q      Have you seen --

6              MR. COLES:  Is this Exhibit 5 now?

7              CERTIFIED STENOGRAPHER:  I am not

8        sure.

9    BY MR. COLES:

10       Q      Have you seen this July 8, 2020,

11   letter before?

12       A      Are there any additional pages to

13   this?

14       Q      I just want to know whether or not

15   you've seen this letter before, the July 8th,

16   2020, letter.

17             MS. QUINN:  Objection.

18             THE WITNESS:  I know that I saw --

19       I'm sorry.

20             MS. QUINN:  You can answer.  You

21       can answer.

22             THE WITNESS:  I've seen a letter

23       from the Police Benevolent Association with

24       regard to FOIL.  I don't know if it was

25       this letter.

Page 80

```
 1                KERRY JAMIESON
 2    BY MR. COLES:
 3        Q      Okay.  What were the circumstances
 4    under which you saw it?
 5                MS. QUINN:  Objection.
 6                I'm going to ask the witness --
 7        instruct the witness only to answer as long
 8        as it doesn't impinge on attorney-client
 9        privilege.
10                THE WITNESS:  So I believe that
11        the letter was sent to me to review and to
12        come up with a response.
13    BY MR. COLES:
14        Q      Did you, in fact, respond to the
15    letter?
16        A      The letter -- from my
17    recollection, the letter that I received was
18    multiple pages long.  So I can't say just from
19    what you have on the screen if that -- if this
20    is the exact letter.
21        Q      Okay.  Did -- you received a
22    letter from the PBA that was multiple pages
23    long, correct?  And if we go --
24        A      Yes.
25        Q      -- to the --
```

Page 81

1                    KERRY JAMIESON

2                    MR. COLES:  We can mark as the --

3      what exhibit are we up to?

4                    CERTIFIED STENOGRAPHER:  Since I'm

5      not handling them, I have not kept up with

6      the numbers.

7                    MR. COLES:  Okay.  We're going to

8      go to the next exhibit, the -- go to the

9      next page of this PDF.

10                   MR. NORTH:  This should be

11     Exhibit 6 [sic].

12                   MR. COLES:  This will be 6-A

13     [sic].

14                   (Exhibit Number 7-A, Letter

15             from Michael T. Murray to Jonathan

16             Darche, dated 7/8/20, was marked

17             for identification.)

18     BY MR. COLES:

19        Q      This is a letter from the Office

20     of General Counsel that's a number of pages

21     long to the executive director of the CCRB.

22                   Is this the letter you're

23     referring to?

24        A      I believe so.  I believe that

25     this -- I remember the longer letter.

Page 82

1                KERRY JAMIESON

2      Q      Okay.  And did you, in fact,

3   prepare a response to the letter?

4      A      I did not.

5      Q      Did anybody?

6             MS. QUINN:  Objection.

7             You can answer.

8             THE WITNESS:  Not to my knowledge.

9      I was the person that was supposed to

10     respond and I did not.

11   BY MR. COLES:

12     Q      And why did you choose not to

13   respond?

14             MS. QUINN:  Objection.

15             You can answer.

16             THE WITNESS:  I didn't choose not

17     to respond.  The instant lawsuit was filed.

18   BY MR. COLES:

19     Q      Why did that stop you from

20   responding?

21             MS. QUINN:  Objection.  I'm going

22     to instruct her not to answer as that

23     impinges upon attorney-client privilege.

24   BY MR. COLES:

25     Q      Did you prepare a draft of a

Page 83

1                    KERRY JAMIESON

2    response?

3       A        No.

4       Q        The letter is dated, what,

5    July 8th?  The lawsuit was not brought until a

6    week later, approximately.

7                    MS. QUINN:  Objection.  We're

8         going into attorney-client-privileged

9         matters, Tony.

10                   I'm going to instruct her not to

11        answer.

12   BY MR. COLES:

13      Q        But my question is, why did you

14   not respond between July 8th and the date of

15   July 14th when this lawsuit was commenced?

16                   MS. QUINN:  Objection.  This

17        impinges upon attorney-client privilege.

18                   I'm instructing the witness not to

19        answer.

20                   MR. COLES:  I don't see how that

21        could be attorney-client privilege, but

22        we'll take that up off -- offline.

23   BY MR. COLES:

24      Q        In this letter, are you aware that

25   the PBA asked the CCRB to apply the FOIL

Page 84

1                    KERRY JAMIESON

2  exemptions to any FOIL request it received?

3      A       From my recollection of the

4  letter, it was asserting that the FOIL

5  exemption should be applied.

6      Q       Right.  And what is -- since you

7  didn't respond before, what would be your

8  response today to this letter on behalf of --

9  what would the CCRB's response today be to

10  this letter?

11             MS. QUINN:  Objection.  To --

12     objection.

13             You can answer.

14             THE WITNESS:  I'm not sure that --

15     are you saying that -- I'm just not sure

16     what your question is.  You're saying what

17     would an answer to this multipage letter

18     be?

19  BY MR. COLES:

20     Q       No.  Answer to the question that

21  you just said that the letter presented to

22  you, which is asking these -- whether or not

23  the CCRB will apply the FOIL exemptions to all

24  FOIL requests.

25             MS. QUINN:  Objection.  I'm going

Page 85

```
 1                    KERRY JAMIESON

 2      to instruct the witness not to answer as

 3      this impinges upon attorney-client

 4      privilege.

 5              MR. COLES:  I'm asking for the

 6      CCRB's position on this letter.

 7              MS. QUINN:  And I'm instructing

 8      the witness not to answer.

 9              MR. COLES:  I'd like to mark as

10      the next exhibit a letter that the

11      corporation counsel wrote to the Court

12      disclosing a number of FOIL requests that

13      the CCRB had responded to from June 12th to

14      the date of the letter.

15              It's Tab 7, Evan.

16              (Exhibit Number 8, Letter from

17         Dominique F. Saint-Fort to Judge

18         Failla, dated 7/28/20; Letter from

19         Rebecca G. Quinn n and Dominique

20         Saint-Fort to Anthony P. Coles and

21         Michael R. Hepworth, dated 7/28/20,

22         was marked for identification.)

23      BY MR. COLES:

24         Q      Okay.  Just before we get to this

25      specific letter, Ms. Jamieson, do you have any
```

1                    KERRY JAMIESON

2     information as to whether or not the request

3     by NYCLU in the prior exhibit for CCRB

4     records, the entire database, was the only

5     FOIL request that CCRB received for the entire

6     CCRB database?

7                    MS. QUINN:  Objection.

8                    You can answer.

9                    THE WITNESS:  I don't know.

10    BY MR. COLES:

11       Q      Okay.  Do you find it unusual that

12    someone would ask for the entire CCRB

13    database?

14       A      Following the repeal of 50-a, we

15    received numerous requests for information.

16    So in that context, no.

17       Q      Okay.  But there was only one

18    request for the entire database, to the best

19    of your knowledge, correct?

20       A      I don't know the answer to that.

21       Q      If you look at the letter to the

22    law department -- I'm going to ask Evan to

23    turn to the second page, which is a letter

24    addressed to DLA Piper.

25                    Do you see that?

Page 87

```
1                    KERRY JAMIESON

2        A       Yes.

3        Q       Okay.  And this letter identifies

4   documents released by the CCRB between

5   June 12th and July 24th.

6                MR. COLES:  You'll see that, Evan,

7        if you go to the next page.

8   BY MR. COLES:

9        Q       Were you involved in the

10  preparation of this letter?

11       A       No.

12       Q       Okay.  Were you aware the letter

13  was going out?

14       A       Yes.

15       Q       Okay.  How did this letter come to

16  be written?

17                MS. QUINN:  Objection.

18                I'm going to instruct the witness

19       not to answer, as that deals with -- first

20       of all, this litigation is outside the

21       scope, and second, it impinges on

22       attorney-client privilege.

23  BY MR. COLES:

24       Q       The letter lists a number of FOIL

25  requests, 60 or so, 60-plus FOIL requests.
```

1                    KERRY JAMIESON

2    Are you aware of that?

3               MS. QUINN:  Objection.

4               You can answer.

5               THE WITNESS:  I don't know the

6       number.

7    BY MR. COLES:

8       Q      Okay.  But you know it's a large

9    number of requests.  You can tell just by

10   looking at the letter.  We'll scroll down the

11   letter for you.

12              MR. COLES:  Evan, why don't you go

13      to the next couple of pages.

14   BY MR. COLES:

15      Q      Okay.  So it's more than three

16   pages of bullet points of requests.

17              Do you -- were you involved in

18   responding to any of those requests that were

19   made and identified in this letter between

20   June 12th and the date of the letter?

21      A      No.

22              MS. QUINN:  Can we see the second

23      page?  I don't see the -- all the requests

24      listed in front of us.

25              ///

Page 89

```
 1                  KERRY JAMIESON
 2  BY MR. COLES:
 3      Q      Do you know whether or not the
 4  CCRB --
 5      A      Let me -- I'd actually like to
 6  amend my previous answer.
 7             I might be aware of some of these
 8  requests but not all.
 9      Q      Okay.  Do you know -- and these
10  are -- if you add them together, it's a fairly
11  large number.  Do you know whether or not a
12  file-by-file, case-by-case determination was
13  made as to each of these responses?
14             MS. QUINN:  Objection.
15             You can answer.
16             THE WITNESS:  I -- some other -- I
17     mean, just looking at this list now, some
18     of the requests are fairly small for
19     officers, therefore it's possible in those
20     instances.  There was, but --
21             There's a fly in here.
22             You know, it's hard -- it's hard
23     to say whether in every single one.  It
24     looks like a lot of this information would
25     have been data that was just pulled from an
```

Page 90

1                    KERRY JAMIESON

2       electronic database.

3    BY MR. COLES:

4       Q      Okay.  And in that case, each of

5    the exemptions wouldn't have been reviewed on

6    a file-by-file basis, right?

7                    MS. QUINN:  Objection.

8                    You can answer.

9                    THE WITNESS:  I don't -- each of

10       them the exempt- -- I don't understand the

11       question.

12    BY MR. COLES:

13       Q      If the data was just pulled from a

14    database and made available to the requesting

15    person, then in that case the records access

16    officer would not have looked at a

17    case-by-case, file-by-file production of each

18    of the complaints to determine whether or not

19    an exemption applied, correct?

20                    MS. QUINN:  Objection.

21                    THE WITNESS:  I don't know that to

22       be --

23                    MS. QUINN:  You can answer.

24                    THE WITNESS:  I don't know that to

25       be the case.  I don't know.

Page 91

1                    KERRY JAMIESON

2    BY MR. COLES:

3        Q      Okay.  But you think certainly

4    it's possible that on all of these, it was not

5    a case-by-case, file-by-file determination

6    made as to each of the exemptions?

7                    MS. QUINN:  Objection.

8                    You can answer.

9                    THE WITNESS:  I'm not exactly sure

10        what you mean when you say "case-by-case,

11        file-by-file."

12    BY MR. COLES:

13        Q      Okay.  I mean before producing any

14    information, a determination is made for each

15    record that's produced, whether or not it

16    falls within a FOIL exception.

17        A      I would presume that the records

18    access officer made a determination as to --

19    from my understanding, actually, the officer

20    histories do not contain certain records.  So

21    there was some evaluation of what information

22    would be disclosed and what information would

23    not be disclosed --

24        Q      Do you know the --

25        A      In response --

Page 92

1                    KERRY JAMIESON

2       Q       I'm sorry.  I'm sorry.  Please

3   finish your answer.

4       A       In response to each individual

5   FOIL request.

6       Q       Okay.  Do you know the extent of

7   the evaluation that was made with regard to

8   each request?

9       A       Well, I do know that the officer

10  histories that were given out did not, for

11  instance, include a pending CCRB case or a

12  pending APU case.

13      Q       Okay.

14      A       And it did not include a mediated

15  case or a mediated-attempted case.

16      Q       Right.  But that wasn't my

17  question.  My question is, is whether or not

18  on all of these documents that were produced

19  each specific situation was reviewed to

20  determine whether or not one of the FOIL

21  exemptions applied.

22                  MS. QUINN:  Can we see the

23      other -- this is a long list, and I don't

24      see all the requests.

25                  MR. COLES:  You can scroll through

Page 93

1                    KERRY JAMIESON

2       the list.

3                    THE WITNESS:  So, again, it's

4       possible that -- the records access officer

5       does an analysis.  Like, they take each

6       FOIL request individually.

7                    Now, for officer histories, I know

8       that there are certain categories of

9       information that just were not going to be

10      included in the -- in the officer

11      histories.  I mentioned those before.  So

12      I'm not going to repeat them again.  So

13      those weren't given out in any situation.

14                   So there was an analysis done as

15      to what information could be released

16      through an officer history.  And from my

17      understanding, that was the information

18      that was released.  So there was an

19      analysis done about what would be in an

20      officer history that we would produce.

21      BY MR. COLES:

22           Q       So many of these releases included

23      unsubstantiated claims.  Are you aware of

24      that?

25           A       I would presume so.

1                    KERRY JAMIESON

2       Q       Okay.  Do you know whether or not

3   any claim-by-claim analysis was done as to

4   whether or not the release of unsubstantiated

5   claims created a unwarranted invasion of

6   privacy?

7               MS. QUINN:  Objection.

8               You can answer.

9               THE WITNESS:  I believe that the

10      records access officer would have done an

11      analysis based on FOIL, and I don't know

12      that the records access officer would have

13      asserted that particular privilege as it is

14      permissive.

15              MS. QUINN:  And I'm sorry.  We've

16      reached the 90-minute deadline for this

17      deposition.

18              MR. COLES:  Well, I have a few

19      more questions.

20              MS. QUINN:  Well, I'm sorry.  We

21      have a 90-minute time limit set by the

22      Court.  So we have to end it.

23              MR. COLES:  No, we actually had a

24      break.  You took the -- you took the

25      witness out.  You've asked [sic] a lot of

Page 95

```
 1                 KERRY JAMIESON
 2     objections --
 3               MS. QUINN:  And we incorp-
 4               MR. COLES:  -- objections --
 5               MS. QUINN:  -- and we incorporated
 6     those into the -- the time.
 7               MR. COLES:  Okay.  Well, I have no
 8     --
 9               MS. QUINN:  We added additional
10     minutes on to accommodate the breaks.
11               MR. COLES:  How many minutes have
12     we run?
13               MS. QUINN:  90 minutes.
14               MR. COLES:  So you haven't added
15     additional minutes on.
16               MS. QUINN:  We've run 90 minutes
17     of active questioning on the record,
18     Mr. Coles.  One hour and 35 minutes, to be
19     precise.
20               MR. COLES:  Okay.  The plaintiffs
21     have more questions of this witness.  Are
22     you closing the deposition?
23               MS. QUINN:  I'm closing the
24     deposition pursuant to the order by Judge
25     Failla.  90 minutes.
```

1                    KERRY JAMIESON

2              MR. COLES:  Okay.  Ms. Jamieson,

3        thank you for showing up.  I do have some

4        issues with the objections that Counsel

5        made.  So we may be seeing you again.  But

6        either way, thank you for your time today.

7        And subject to my objections and the right

8        to recall you, we'll close the deposition

9        for now because your attorney won't allow

10       you to answer any more questions.

11             THE VIDEOGRAPHER:  Okay.  If

12       that's everything, this concludes today's

13       deposition of Kerry Jamieson.  The time off

14       record is 4:38 p.m. Eastern Time.

15             CERTIFIED STENOGRAPHER:

16       Ms. Quinn, can I get your side's order for

17       the record, please?

18             MR. COLES:  Ms. Jamieson, you can

19       leave the deposition if you'd like to.

20       Thank you for your time.

21             MS. QUINN:  I'm sorry.  I didn't

22       hear that.  Can you say that again?

23             CERTIFIED STENOGRAPHER:  Can I get

24       your side's order for the transcript?

25             MS. QUINN:  My side's order?

```
 1                CERTIFIED STENOGRAPHER:  Yes.  Do
 2      you need a copy of the transcript?
 3                MS. QUINN:  Yes.  Yes.
 4      Absolutely.
 5                CERTIFIED STENOGRAPHER:  Do you
 6      need it expedited?
 7                MS. QUINN:  If we could, yes.
 8                CERTIFIED STENOGRAPHER:  Does
 9      anyone need a rough draft?
10                MS. QUINN:  A rough draft?  No, I
11      don't think so.
12                MR. COLES:  Yes, we would like a
13      rough.
14                CERTIFIED STENOGRAPHER:  Okay.
15      Thank you.
16                (Concluded at 4:39 p.m.)
17
18
19
20
21
22
23
24
25
```

Page 98

1

2

3

4

5

6       _____

7            KERRY JAMIESON

8

9

10           Subscribed and sworn to before me

11           this ___ day of _____, 2020.

12

13      _____

14           (Notary Public)

15

16           My Commission

17           expires:_____

18

19

20

21

22

23

24

25

Page 99

1                    CERTIFICATE OF OATH

2

3    STATE OF FLORIDA

4    COUNTY OF POLK

5

6         I, the undersigned authority, certify

7    that KERRY JAMIESON remotely appeared before

8    me and was duly sworn.

9

10        WITNESS my hand and official seal this

11   6th day of August, 2020.

12

13

14

15   _____

16   Rhonda Hall-Breuwet, RDR, CRR, LCR, CCR, FPR

17   Notary Public - State of Florida

18   My Commission Expires:  9/28/23

19   Commission No. GG 360849

20

21

22

23

24

25

Page 100

1              C E R T I F I C A T E

2    STATE OF FLORIDA:

3

4         I, RHONDA HALL-BREUWET, RDR, CRR, LCR,

5    CCR, FPR, stenographic shorthand reporter, do

6    hereby certify:

7         That the witness whose deposition is

8    hereinbefore set forth was duly sworn, and

9    that such deposition is a true record of the

10   testimony given by such witness.

11        I further certify that I am not related

12   to any of the parties to this action by blood

13   or marriage, and that I am in no way

14   interested in the outcome of this matter.

15        IN WITNESS WHEREOF, I have hereunto set

16   my hand this 6th day of August, 2020.

17

18   _____

19   RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

20   Stenographic Shorthand Reporter

21

22

23

24

25

1      ERRATA SHEET FOR THE TRANSCRIPT OF:

2      Case Name: UNIFORMED FIRE OFFICERS
       ASSOCIATION, et al. V. BILL de BLASIO, et al.
3      Dep. Date: August 6, 2020
       Deponent:  KERRY JAMIESON
4                       CORRECTIONS:

5      Pg.   Ln.   Now Reads      Should Read     Reason

6      ____  ____  _____  _____  _____

7      ____  ____  _____  _____  _____

8      ____  ____  _____  _____  _____

9      ____  ____  _____  _____  _____

10     ____  ____  _____  _____  _____

11     ____  ____  _____  _____  _____

12     ____  ____  _____  _____  _____

13     ____  ____  _____  _____  _____

14     ____  ____  _____  _____  _____

15     ____  ____  _____  _____  _____

16     ____  ____  _____  _____  _____

17

18                   _____

19                   Signature of Deponent

20     SUBSCRIBED AND SWORN BEFORE ME

21     THIS _____ DAY OF _____, 2020

22

23     _____

24     (Notary Public)  MY COMMISSION EXPIRES: _____

25

**A**

**Absolutely** 97:4
**access** 6:9 11:25
  12:3,5,13,21 13:3
  15:6,25 16:7 17:5
  18:15 19:13 24:3
  24:11,25 27:5,11
  27:16,22 28:8
  30:14 34:13,24
  35:5,10,13 37:20
  40:4 41:12,19
  42:12 48:8,10,15
  50:10,22 51:16,17
  53:8 54:17 57:14
  59:25 60:5 70:22
  71:25 72:5,10,15
  76:18 90:15 91:18
  93:4 94:10,12
**accommodate**
  95:10
**accountability** 74:2
**acknowledged** 9:5
**action** 54:10,19
  100:12
**active** 95:17
**add** 44:15 45:25
  59:16 68:8 89:10
**added** 95:9,14
**addition** 10:13
  61:25
**additional** 18:17
  49:4 79:12 95:9
  95:15
**addressed** 56:23
  86:24
**advising** 16:17
**advisory** 17:7 18:9
  18:20 19:4,10,18
  20:4,4,5,20
**affect** 53:23 54:19
**affidavit** 75:16
**afternoon** 7:2,24
  7:25 8:4,5,10 9:10
  9:11
**agencies** 30:3 37:20
**agency** 12:6 17:25
  18:5 20:21 28:9

29:13 33:23 40:3
  44:5,10 46:19
  47:14 48:11 50:8
  51:14 52:25 53:3
  59:6 60:14,23
  63:13 66:13 67:16
  72:11
**agency's** 59:3
**agreement** 56:25
  57:22 58:25
**agreements** 54:9
  54:18,25 55:3
  57:11 58:14
**al** 1:5,8 7:8,9 101:2
  101:2
**allegation** 24:13
  25:15 75:20
**allegations** 20:14
  21:6,18,20 23:7
  25:10 26:20 29:5
  29:20 30:22 33:13
  35:21 54:20 67:11
  67:14 68:15
**allow** 67:21 96:9
**Alvarez** 4:17 7:19
**amend** 89:6
**Americas** 3:6
**analysis** 24:12 44:2
  47:5 49:16 50:20
  51:15,20 58:13,24
  93:5,14,19 94:3
  94:11
**answer** 18:12 19:7
  19:21 20:8,18
  21:12,14,23 22:15
  22:17,19,21 23:9
  23:25 24:23 26:10
  26:12,16 28:6,17
  29:8,23 30:5,13
  31:18,24 32:11,16
  32:20 33:7,16
  34:10,11,22 35:25
  36:22 39:24 40:16
  41:8,17 42:23
  44:15,22 45:3,4
  45:13,16 46:2,5
  46:10 47:9 48:6

48:22 49:19 50:3
  51:10,21 52:13
  53:16 54:3,22
  57:3 58:2,8,17
  59:5,16 63:2,23
  64:10,13,21 65:8
  68:2,9,18 69:4
  70:6,10 71:6,9,13
  72:19 73:16 74:16
  74:20 76:8,22
  77:7,9,21 78:4,9
  79:20,21 80:7
  82:7,15,22 83:11
  83:19 84:13,17,20
  85:2,8 86:8,20
  87:19 88:4 89:6
  89:15 90:8,23
  91:8 92:3 94:8
  96:10
**answered** 21:11
  23:24 24:22 28:5
  45:18
**answers** 10:2 50:21
**Anthony** 3:9 6:23
  85:20
**anthony.coles@d...**
  3:11
**anybody** 20:2
  32:25 82:5
**anymore** 40:12
**appeal** 12:9,9
**appeals** 11:25 12:4
**appeared** 99:7
**appellant** 11:20
**applicable** 50:7
  53:9
**application** 17:21
  18:3
**applied** 47:7 84:5
  90:19 92:21
**applies** 29:13 51:6
  51:21,23
**apply** 43:2 48:2
  67:23 68:25 83:25
  84:23
**approximately**
  83:6

**APU** 27:10,12,13
  42:5 92:12
**area** 50:16
**arrival** 13:3
**arriving** 11:18
**asked** 23:23 24:21
  28:4 55:24 56:6,9
  83:25 94:25
**asking** 9:20 25:24
  53:6 84:22 85:5
**assert** 20:21 22:12
  23:2,6,11,12,20
  24:20 25:2 29:14
  30:10 33:23 34:14
  34:14,17 35:10
  40:5,12 44:11,13
  47:15 48:9,12
  50:9,11,24 51:12
  51:17 52:25 53:3
  55:5 57:15 63:15
**asserted** 20:23
  23:16 24:6,15,17
  28:20 33:22 35:3
  40:7,9,23 44:5
  46:24 50:24 53:10
  58:5,5 65:2 94:13
**asserting** 28:22
  49:15 84:4
**assertion** 35:14
  42:16 43:10
**asserts** 27:5 28:2
**assistant** 11:9,22
  12:17,20
**Association** 1:5
  6:17 7:8 41:6
  69:18 78:15,25
  79:23 101:2
**assume** 47:11
  63:13
**attended** 74:7
**attending** 7:15
**attorney** 7:23
  11:19 32:18 96:9
**ATTORNEYS** 3:3
  4:1
**attorney-client**
  10:9 31:19,25

32:17,21 33:8
  70:7 76:9 80:8
  82:23 83:17,21
  85:3 87:22
**attorney-client-p...**
  83:8
**August** 1:17 2:4 7:4
  11:13 39:18 62:24
  99:11 100:16
  101:3
**authority** 17:21,24
  99:6
**available** 90:14
**Avenue** 3:6
**aware** 13:17 20:9
  20:12,19 21:3
  35:19 36:2 39:8
  39:13,16 41:3,9
  54:7 56:15,20
  64:22 68:19,22
  69:9,12,16,19
  83:24 87:12 88:2
  89:7 93:23

**B**

**B** 6:1
**back** 22:19,19,21
  26:7,15 29:15
  31:14,15 45:7,9
  47:20 50:13,17,18
  56:2 57:6 69:6,8
  71:17,19,20
**bargaining** 53:24
  54:9,18,25 55:3
  56:18,25 57:11,17
  57:22 58:14,25
**based** 23:14 25:3
  28:21,23 37:18
  42:12 94:11
**bases** 12:11
**basically** 48:24
**basics** 13:20
**basis** 19:9 23:3
  24:7 27:17,20
  28:2 40:20 49:8
  49:15 50:6 52:21
  62:16 64:24 67:24

69:2 90:6
**Bates-stamped** 6:4
14:23
**began** 39:15,17
60:23
**beginning** 7:22
**begins** 66:19
**behalf** 37:16 84:8
**belabor** 51:4
**believe** 18:4,5
21:10 27:4,7,21
29:4 33:24 34:11
34:23 35:5,9 40:6
41:18,24 42:8,11
44:17 45:10 48:7
49:14 52:20 53:5
53:7,8 54:5,23
55:5 57:13 58:3,9
58:18 59:8,10
63:11 64:7 67:22
68:3,10 74:15
75:8 80:10 81:24
81:24 94:9
**believes** 21:19
44:22 46:6
**Benevolent** 6:17
78:15,25 79:23
**best** 15:8 86:18
**beyond** 74:21
**bigger** 15:21
**Bill** 1:8 7:9 101:2
**bit** 9:19 15:20
**Blasio** 1:8 7:9
101:2
**blood** 100:12
**board** 6:7 36:8,13
36:18 72:13 73:19
**bottom** 16:12 38:6
62:10 66:18 74:6
**breach** 32:21
**breaches** 33:7
**breaching** 31:18
32:17
**break** 10:7,8 31:7
31:12 55:7,11,20
94:24
**breaks** 95:10

**broader** 63:16
**brought** 83:5
**bullet** 88:16

**C**
**c** 3:1 59:8 100:1,1
**called** 14:11 36:7
59:24 65:15
**case** 7:11 19:11
23:4,14,18 27:10
27:12,13,13 28:3
28:23,24 36:3,7
36:17 37:4,14,15
37:17 40:4,8,24
41:12 43:7,18
46:25 48:14,25
49:3,5 52:18,19
59:24 60:10,13,22
61:4 67:17 90:4
90:15,25 92:11,12
92:15,15 101:2
**cases** 18:23 27:9
40:9 42:2,4,4,6,8
49:7,9 60:24
**case-by-case** 19:9
27:17,20 40:20
44:2 47:5 49:8,24
50:6,20 67:24
69:2 89:12 90:17
91:5,10
**categories** 93:8
**category** 46:16
**CC** 11:14
**CCR** 1:24 65:25
99:16 100:5,19
**CCRB** 6:4,11 10:22
11:3,6,12,18
12:18 13:7,13
14:7,21,22 15:10
15:25 20:2 21:16
22:3,11 23:2,10
23:12,19 24:19
25:4,8,14,16,25
26:19 27:9,12,25
29:3 30:2 31:6
32:23,25 33:11,24
34:4,17 35:16,20

37:4,18 38:7,12
38:17,23 39:3,7
39:15,17,20 40:11
40:21 41:4 42:5
44:17,25 45:10
46:6 47:25 49:22
51:5,11 52:7
56:22 58:9,13
59:20 61:9,17
62:2,20,23 63:10
64:7 65:15 66:4
66:25 67:4,10,20
67:22 68:13,23
70:13 72:13,13
73:13 74:8,11
75:2,18 76:19
78:16 81:21 83:25
84:23 85:13 86:3
86:5,6,12 87:4
89:4 92:11
**CCRB's** 16:2 18:8
19:3 30:9 51:22
57:9,13,19 62:16
64:17,23 84:9
85:6
**certain** 49:9 58:25
67:5 91:20 93:8
**certainly** 46:14
53:4 91:3
**CERTIFICATE**
99:1
**Certified** 2:11,12
8:21 78:18 79:7
81:4 96:15,23
97:1,5,8,14
**certify** 99:6 100:6
100:11
**chair** 78:16
**changed** 39:20 40:2
**choose** 82:12,16
**chooses** 50:8 51:16
**chose** 63:14
**Christopher** 6:12
6:15 73:2,9 75:12
**Church** 4:4
**circumstances**
60:21 77:18 80:3

**citing** 61:17
**City** 4:3 11:15 30:3
57:23 72:17
**civil** 37:23 38:14
41:5 61:20 69:18
69:22
**civilian** 6:7 36:8,12
36:18 74:3
**civilians** 46:17
**claim** 25:15,19
42:21,21
**claims** 25:10 30:11
39:4 42:20 93:23
94:5
**claim-by-claim**
94:3
**clarification** 18:18
**clear** 10:2,6 51:4
57:8
**clearly** 9:23
**client** 37:16
**close** 53:12 96:8
**closed** 27:13
**closing** 95:22,23
**Coles** 3:9 5:4 6:24
7:24 8:2,5,8 9:9
14:12,14,19 15:2
15:14,16 19:2,14
19:24 20:11,24
21:15 22:2,22
23:17 24:8 25:5,7
25:23 26:3,6,14
26:17 28:11 29:2
29:17,24 30:7,17
31:9,20 32:4,9,13
32:24 33:9 34:2
34:15 35:8 36:4
36:15,24 37:2,13
38:8,10 40:10
41:2,10 42:18
43:12,20 44:23
45:7,12,19 47:2
47:16,21,24 48:13
49:6 50:12 51:2
51:19 53:11,20
54:6,15 55:10,13
55:22 56:3 57:7

58:7,21 59:14
60:7,16,19 62:14
63:5 64:5,14 65:3
65:13,20,24 66:6
67:9 68:7,21 69:7
69:11,13,15 70:11
71:5,11,16,23
72:22 73:5,11,20
73:22 74:21,25
75:14 76:14,23
77:5,12,24 78:7
78:12,19,21 79:4
79:6,9 80:2,13
81:2,7,12,18
82:11,18,24 83:12
83:20,23 84:19
85:5,9,20,23
86:10 87:6,8,23
88:7,12,14 89:2
90:3,12 91:2,12
92:25 93:21 94:18
94:23 95:4,7,11
95:14,18,20 96:2
96:18 97:12
**colleague** 8:14 78:8
**collective** 53:24
54:8,18,24 55:3
56:18,25 57:10,17
57:22 58:14,25
**colloquy** 26:9
**column** 62:11
**come** 14:2 26:12
39:2 72:8,11
80:12 87:15
**comes** 44:7
**commenced** 83:15
**comment** 39:7
**comments** 10:18
**commission** 30:19
34:5 98:16 99:18
99:19 101:24
**committee** 16:15
16:22 17:4,15,20
18:10,19 19:5,18
20:4,5,12,20 21:3
30:20 33:11,20
34:6 67:12

**common** 14:2
**Complaint** 6:7 36:8
  36:12,18
**complaints** 22:6
  40:13 90:18
**comply** 16:7
**complying** 16:3
**computer** 15:18
**concern** 52:7
**concerning** 38:19
  39:21
**concluded** 26:21
  97:16
**concludes** 96:12
**conclusion** 43:14
  49:18 53:13 62:16
**conducted** 41:13
**conference** 7:20
**confidence** 43:14
  48:18
**confident** 49:14
**confidential** 56:24
  57:12 58:15,15
**consider** 17:19
  48:2
**constitute** 20:15
  22:7 30:22 62:4
  62:18 63:8,19
**construed** 44:10
**consult** 15:7 31:8
**contain** 91:20
**contained** 61:19
**context** 86:16
**Continued** 3:25
**contract** 56:18 59:9
**contracts** 59:11
**conversation** 32:15
**copy** 97:2
**corporation** 8:12
  85:11
**correct** 10:5,22,23
  11:4 25:16,20
  40:14 53:14,25
  59:20 61:6 63:4
  73:14 74:15 80:23
  86:19 90:19
**corrections** 10:16

10:17,19 101:4
**counsel** 7:20 8:12
  8:16 11:22 12:18
  12:20 31:8 55:23
  55:25 56:4 81:20
  85:11 96:4
**counsels** 11:10
**COUNTY** 99:4
**couple** 88:13
**course** 10:4
**court** 1:1 2:11,12
  7:10 8:17,19 18:5
  18:23 50:16 85:11
  94:22
**courts** 18:24 38:11
**cover** 70:24
**covers** 13:19,20
**COVID-19** 7:16
**create** 48:19 49:10
  52:9
**created** 94:5
**CRR** 1:24 99:16
  100:4,19
**currently** 11:5

**D**

**D** 5:1
**Daniel** 61:6
**Darche** 6:20 77:19
  81:16
**data** 74:12 89:25
  90:13
**database** 86:4,6,13
  86:18 90:2,14
**date** 7:3 32:3 83:14
  85:14 88:20 101:3
**dated** 6:12,18,20
  6:22,24 60:2 73:9
  75:17 78:16 79:2
  81:16 83:4 85:18
  85:21
**Davie** 6:18 78:16
  79:2
**day** 98:11 99:11
  100:16 101:21
**days** 13:22
**DC** 3:15

**de** 1:8 7:9 101:2
**deadline** 94:16
**deal** 78:10,10
**deals** 37:4 71:11
  87:19
**December** 61:16
**decided** 24:19 34:4
**decision** 63:25
  69:24 70:14
**Declaration** 6:12
  6:14 72:25 73:6,8
  75:12
**deem** 58:14
**deeply** 74:2
**defendant** 4:1
  37:16
**defendants** 1:9
  8:13
**defender** 11:20
**definition** 63:18
**DEF_UFOA_001...**
  6:5 14:24
**denial** 12:9,11
**denied** 12:8 37:18
  61:9,17
**deny** 37:20
**denying** 28:21
**Dep** 101:3
**department** 4:3
  16:15 86:22
**department's**
  29:19
**depends** 52:15
**Deponent** 101:3,19
**deposed** 9:12
**deposition** 1:15 2:8
  7:6,13 10:5,12
  25:22 54:14 64:19
  71:4,7 73:7 74:22
  77:23 78:2 94:17
  95:22,24 96:8,13
  96:19 100:7,9
**describe** 16:25
**describes** 15:24
  66:14
**DESCRIPTION**
  6:3

**detailed** 15:24
**Detective** 37:17
**determination**
  27:19 30:9 41:14
  41:24 42:12 43:3
  59:3 70:4 89:12
  91:5,14,18
**determinations**
  12:13
**determine** 12:12
  40:5 44:11 47:6
  49:8 64:16 65:5
  90:18 92:20
**determines** 50:23
**determining** 27:14
**different** 21:2 27:9
  30:2 35:17 52:23
  58:23
**Diplomate** 2:10
**direct** 5:4 9:8 26:9
  26:11,16
**directing** 78:3
**directions** 78:9
**directly** 26:3 71:12
**director** 70:13
  75:18 76:18 81:21
**directs** 16:6
**disagree** 33:17
**disciplinary** 25:9
  61:5
**disclosable** 29:16
**disclose** 31:25 34:4
**disclosed** 56:17
  91:22,23
**disclosing** 85:12
**disclosure** 37:22
  42:6,8,10 61:18
  69:20,25
**discretion** 68:25
**discussion** 77:2
**discussions** 30:19
  30:24 31:3,5,22
  33:4
**District** 1:1,2 7:10
  7:10
**DLA** 3:5 4:14 8:2
  86:24

**document** 6:6,8
  7:19 14:9 15:15
  15:19 36:10 60:3
  65:15,25 66:7,11
  68:12,23 78:19
**documents** 37:15
  39:22 48:4,18,23
  49:4 52:24 56:22
  57:10 59:2 70:4
  87:4 92:18
**doing** 10:13 43:14
  43:24 53:14
**Dominique** 4:7
  6:21,23 8:14
  85:17,19
**dosaint@law.nyc...**
  4:9
**draft** 13:14 14:4
  15:5 82:25 97:9
  97:10
**due** 7:15
**duly** 9:5 99:8 100:8
**Dunn** 6:12,15
  72:15 73:2,9,12
  73:23 74:18 75:6
  75:12 76:16 77:19
**Dunn's** 75:16

**E**

**E** 3:1,1 5:1 6:1
  100:1,1
**earlier** 34:18,23
**Eastern** 7:5 96:14
**effort** 64:16 65:4
**Eighth** 3:14
**either** 96:6
**electronic** 90:2
**elements** 18:2
**else's** 46:18
**email** 3:11,18 4:9
  70:24
**employed** 39:6,10
  40:21
**employees** 15:10
**enforcing** 52:8
**engage** 26:8 51:15
**entered** 57:23

**entire** 86:4,5,12,18
**entitled** 66:2
**equally** 9:25
**ERRATA** 101:1
**ESQUIRE** 3:9,10
3:17 4:7,8
**established** 28:14
**et** 1:5,8 7:8,9 101:2
101:2
**evaluate** 38:13
**evaluated** 40:19
50:5
**evaluates** 24:5
**evaluation** 91:21
92:7
**Evan** 3:17 8:3
14:12 15:15 25:5
36:25 38:8 65:20
69:14 73:21 85:15
86:22 87:6 88:12
evan.north@dla...
3:18
**everybody** 8:11
**exact** 80:20
**exactly** 50:14 70:16
74:25 91:9
**EXAMINATION**
5:4 9:8
**exception** 20:22
22:12 23:3,6,13
23:16,21 24:6,15
24:17 25:3 27:6
27:15 28:2,22
29:9,13,14 30:16
33:21 34:13 35:4
35:15,23 43:11
44:3 46:24 48:12
49:15 50:23 52:3
52:22 53:3,7,9
54:5,24 55:2,4
58:19 59:17 63:15
64:25 91:16
**exceptions** 14:2
27:23 28:19 44:9
47:14 58:20
**exclusion** 52:9
**Excuse** 32:9 47:18

**executive** 70:13
75:17 76:17 81:21
**exempt** 90:10
**exempted** 37:21
**exemption** 24:20
33:14 40:6,14,22
41:14 42:17 44:12
47:7 48:3 50:8
51:6,22,24 52:5
56:12,16,20 58:4
61:18 68:6,16
84:5 90:19
**exemptions** 51:13
51:13 62:2 66:21
67:5,23 68:25
84:2,23 90:5 91:6
92:21
**exhibit** 4:16 6:4,6,8
6:10,12,14,14,16
6:19,21 14:20,22
25:6 36:6,10
47:19,22 59:23,24
60:3 65:6,21,25
66:3 69:14 72:24
73:7,8 75:11,11
75:16 78:14,20,22
78:23 79:6 81:3,8
81:11,14 85:10,16
86:3
**exhibits** 73:6
**existed** 39:14
**existing** 59:11
**exonerated** 24:13
42:15 43:8
**expedited** 97:6
**expires** 98:17 99:18
101:24
**explain** 12:2 13:18
22:23 66:10
**explained** 38:7
**extensive** 74:11
**extent** 31:24 32:20
38:19 46:21 50:22
51:15 92:6

_____
        **F**
_____
**F** 4:7 6:21 85:17

100:1
**fact** 10:19 35:22
49:9 52:9 67:13
67:22 80:14 82:2
**factor** 23:15
**facts** 49:4
**Failla** 6:22 85:18
95:25
**fair** 46:4 49:10
58:12
**fairly** 89:10,18
**fall** 24:16
**falls** 46:15 58:19
91:16
**familiar** 36:16 54:8
56:11 60:9,11,13
60:22,24 65:14
**federal** 37:22
**field** 52:10
**file** 51:8
**filed** 7:9 82:17
**file-by-file** 43:15
47:4 49:24 53:14
89:12 90:6,17
91:5,11
**find** 86:11
**fine** 10:7 60:17
**finish** 92:3
**Fire** 1:5 7:8 101:2
**first** 9:15,17 12:17
12:19 15:23 60:8
60:13 62:11 66:17
87:19
**Florida** 2:13,14
99:3,17 100:2
**fly** 89:21
**focus** 61:23
**FOIL** 6:4,10 11:2
11:22 12:6,16,25
13:5,5,13,14,18
13:20,21,24 14:2
14:11,20,22 15:11
16:3,18 17:6,9,12
17:22 18:3,6
19:16 20:22 22:12
22:13 23:3,11
24:4,17 26:4

27:15,16,22 28:18
29:10 30:15 33:14
34:25 35:6 40:18
44:7,8 45:11
46:22 47:4,7
49:25 50:5,6,7,20
51:12 52:15,16,23
54:24,25 55:4
56:14 57:14,21
58:3,10,20 59:3,7
59:7,13 60:24,25
63:14,17 65:11,15
66:2,3,12,22 67:2
67:6,14,24 68:16
68:25 70:21 71:9
71:12 72:2,4,16
74:23,23 75:3,9
75:19 76:17 77:3
77:6,10,25 79:24
83:25 84:2,4,23
84:24 85:12 86:5
87:24,25 91:16
92:5,20 93:6
94:11
**FOILs** 20:3
**follow** 19:4 33:11
33:25 45:11,23
46:21 49:21 57:14
59:12 75:4 77:13
**followed** 63:14
**following** 18:9
86:14
**follows** 9:7 30:15
59:6 75:3
**form** 21:22 34:9
**forth** 16:9 100:8
**forwarded** 70:21
70:24 72:10
**found** 17:6
**FPR** 1:24 99:16
100:5,19
**Fred** 6:17 78:15
79:2
**free** 56:22
**front** 88:24
**function** 16:23 17:2
17:3

**functions** 17:11
**further** 100:11
**furthermore** 35:15

_____
        **G**
_____
**G** 6:22 85:19
**GA** 2:12
**GABRIELA** 4:17
**Gabriella** 7:19
**general** 11:10,22
12:18,20 81:20
**generally** 19:3
60:25 66:14
**GG** 99:19
**GIBSON** 4:8
**give** 8:24 41:24
**given** 12:15,16,23
15:10 92:10 93:13
100:10
**glad** 8:8
**go** 12:9 15:14 18:18
18:22 25:16 36:24
38:9,16 42:15
43:9 47:12 49:12
60:16 73:20 80:23
81:8,8 87:7 88:12
**goes** 13:25 74:10
**going** 9:20 14:15,19
21:13 26:8,11
29:22 36:6,8
44:21 50:16 55:7
55:8,13 65:19
67:23 70:5 73:5
74:21 75:15 76:7
76:21 77:8,13
78:9 80:6 81:7
82:21 83:8,10
84:25 86:22 87:13
87:18 93:9,12
**good** 7:2,24,25 8:4
8:5,8,10 9:10,11
**government** 16:16
16:17,23 17:4,20
18:10,19 19:5,19
20:6 21:4 30:20
33:20 34:6 66:20
67:12

**Government's**
17:15 33:12
**grant** 76:24
**great** 15:21
**ground** 9:20
**grounds** 26:24,25
27:3
**guess** 51:3
**guidance** 15:9 17:4
18:2 28:19,20,22
33:12,19,25
**guiding** 14:7

### H

**H** 6:1
**Hall-Breuwet** 1:24
2:10 8:18 99:16
100:4,19
**hand** 8:22 99:10
100:16
**handle** 13:24
**handled** 35:7
**handles** 12:6 72:16
**handling** 10:25
81:5
**hard** 89:22,22
**hear** 8:6 96:22
**held** 2:9 20:13
29:15 38:12
**Hepworth** 3:10
6:24 85:21
**hereinbefore** 100:8
**hereunto** 100:15
**highlight** 61:13
**highlighted** 16:12
37:10 38:6 63:25
**historically** 35:20
**histories** 52:17
67:17 75:20 91:20
92:10 93:7,11
**history** 53:5 64:17
93:16,20
**honestly** 32:2
**hour** 95:18
**Hubbard** 6:6 36:7
36:11,17
**Hughes** 6:6 36:7,11

36:17

### I

**identification**
14:25 36:14 60:6
66:5 73:10 75:13
79:3 81:17 85:22
**identified** 88:19
**identifies** 87:3
**identify** 7:21
**identifying** 46:13
46:20
**imminent** 56:17
59:9
**impair** 56:17
**impinge** 70:7 76:8
80:8
**impinges** 82:23
83:17 85:3 87:21
**important** 9:22,25
**include** 92:11,14
**included** 42:6,7,9
93:10,22
**including** 51:25
52:3 74:12
**inconsistent** 46:22
**incorp** 95:3
**incorporated** 95:5
**incorrect** 19:17
**independent** 76:11
**indicate** 67:17
**indicating** 30:21
**individual** 40:19
41:21 53:24 65:11
92:4
**individualized**
41:13
**individually** 24:5
35:2,7 93:6
**information** 27:12
34:5 35:22 41:25
41:25 43:17,22
46:13,15,20 49:9
52:20 57:16,20,21
64:12 76:15 77:17
86:2,15 89:24
91:14,21,22 93:9

93:15,17
**instance** 19:16,25
67:13 92:11
**instances** 89:20
**instant** 82:17
**instruct** 29:22
44:21 70:6 76:7
76:21 77:8 80:7
82:22 83:10 85:2
87:18
**instructing** 33:6
71:8 77:20 83:18
85:7
**instruction** 77:14
**interested** 100:14
**interference** 27:7
**interpreted** 18:24
**interpreting** 18:6
**inter-agency** 27:5
**intra-agency** 27:6
**invade** 43:23
**invasion** 20:16 21:7
21:21 22:7 23:2
23:13,20 25:3
26:23 29:5 30:23
33:21 34:7 35:3
38:22 39:5 43:10
62:4,19 63:9,19
94:5
**investigated** 37:17
**investigation** 25:4
26:22
**investigations**
25:25
**investigators** 72:8
**involved** 15:3
30:18 69:24 70:13
72:13 73:13 74:3
87:9 88:17
**involvement** 70:16
70:19
**involves** 22:13
52:24
**involving** 17:8
**in-depth** 65:18
**issue** 10:10 18:16
19:12

**issued** 18:10 19:5
20:20 21:4
**issues** 96:4

### J

**J** 6:16 78:24
**Jamieson** 1:16 2:9
7:1,7,25 8:1 9:1,4
9:10 10:1 11:1
12:1 13:1 14:1
15:1 16:1 17:1
18:1 19:1 20:1
21:1 22:1 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1 31:1 32:1
33:1 34:1 35:1
36:1,16 37:1 38:1
39:1 40:1 41:1
42:1 43:1 44:1
45:1 46:1 47:1
48:1 49:1 50:1
51:1 52:1 53:1
54:1 55:1 56:1
57:1 58:1 59:1
60:1 61:1 62:1
63:1 64:1 65:1
66:1,7 67:1 68:1
69:1 70:1 71:1
72:1 73:1 74:1
75:1 76:1 77:1
78:1,14 79:1 80:1
81:1 82:1 83:1
84:1 85:1,25 86:1
87:1 88:1 89:1
90:1 91:1 92:1
93:1 94:1 95:1
96:1,2,13,18 98:7
99:7 101:3
**Jeremy** 4:20 7:17
**job** 1:25 17:14
**joined** 62:23
**Jonathan** 6:19
81:15
**judge** 6:21 26:10
75:8 76:24 77:10
85:17 95:24

**judicial** 27:7
**July** 75:17 78:16
79:10,15 83:5,14
83:15 87:5
**June** 85:13 87:5
88:20

### K

**keep** 75:9
**kept** 81:5
**Kerry** 1:16 2:8 7:1
7:7 8:1 9:1,4 10:1
11:1 12:1 13:1
14:1 15:1 16:1
17:1 18:1 19:1
20:1 21:1 22:1
23:1 24:1 25:1
26:1 27:1 28:1
29:1 30:1 31:1
32:1 33:1 34:1
35:1 36:1 37:1
38:1 39:1 40:1
41:1 42:1 43:1
44:1 45:1 46:1
47:1 48:1 49:1
50:1 51:1 52:1
53:1 54:1 55:1
56:1 57:1 58:1
59:1 60:1 61:1
62:1 63:1 64:1
65:1 66:1 67:1
68:1 69:1 70:1
71:1 72:1 73:1
74:1 75:1 76:1
77:1 78:1 79:1
80:1 81:1 82:1
83:1 84:1 85:1
86:1 87:1 88:1
89:1 90:1 91:1
92:1 93:1 94:1
95:1 96:1,13 98:7
99:7 101:3
**kind** 12:22
**know** 9:24 10:6
17:5 18:13 22:9
22:10 25:12 29:18
29:25 30:6 31:2

32:3 35:15,16
36:3,23 39:25
43:22 45:17 47:3
49:16 50:21 51:5
54:16 62:21 63:3
64:4 65:9,17
68:13 70:3,9,12
70:23 71:24 72:3
72:9 73:17,18
74:16,17 75:5
79:14,18,24 86:9
86:20 88:5,8 89:3
89:9,11,22 90:21
90:24,25 91:24
92:6,9 93:7 94:2
94:11
**knowledge** 15:9
22:25 23:12 24:6
24:25 28:7 35:2
39:3,19 40:11,20
74:11 76:16 82:8
86:19
**known** 39:12
**knows** 75:7
**KPF** 1:3
**KWL** 1:3

**L**
**LA** 2:13
**landscape** 35:17
**large** 88:8 89:11
**larger** 75:23
**law** 4:3 11:23 12:14
12:16 13:5,21
17:6,9 18:6,23
19:11 20:22 24:17
30:15 37:19,23
38:15 45:11,24
46:20 47:7 49:21
56:14 57:14,21
58:4 59:7,7,13
60:25 61:20,20
63:14 66:12 67:2
67:6,15 68:5
86:22
**lawsuit** 82:17 83:5
83:15

**LCR** 1:24 99:16
100:4,19
**leave** 76:25 96:19
**left** 37:5
**legal** 32:23
**LeMASTER** 4:20
7:17
**letter** 6:16,19,21,22
62:21 75:17,25
76:17 77:18 78:14
78:23 79:11,15,16
79:22,25 80:11,15
80:16,17,20,22
81:14,19,22,25
82:3 83:4,24 84:4
84:8,10,17,21
85:6,10,14,16,18
85:25 86:21,23
87:3,10,12,15,24
88:10,11,19,20
**Let's** 71:18
**Liberties** 41:5
69:18,22
**Licensed** 2:11
**life** 52:21,25
**limit** 94:21
**limited** 41:25
**line** 41:22,22 49:13
49:13
**lines** 66:17
**list** 6:11 65:16 66:2
66:4,14 89:17
92:23 93:2
**listed** 37:5 88:24
**lists** 87:24
**litigation** 87:20
**little** 9:18,19 15:20
20:25 58:22 75:23
**LLP** 3:5
**Ln** 101:5
**long** 11:11 20:13
80:7,18,23 81:21
92:23
**longer** 81:25
**look** 10:15 16:11
18:19,22 19:12,13
27:16 38:5 49:7

51:7,12 66:16
86:21
**looked** 42:19 48:16
90:16
**looking** 88:10
89:17
**looks** 14:18 27:22
34:25 89:24
**lot** 72:7 89:24
94:25
**Luongo** 6:8 59:25
60:4
**Lynch** 6:16 78:24

**M**
**main** 17:3
**maintain** 44:18
46:7
**maintained** 56:24
**making** 10:13
47:13 59:2,2
**mandatory** 20:23
24:16
**manner** 40:23
**manual** 6:4 13:14
13:19,20 14:11,16
14:20,23 15:4,24
16:4,9 28:19
**March** 60:2
**mark** 14:20 36:6
73:6 81:2 85:9
**marked** 14:24
36:13 60:5 66:5
73:10 75:13 79:3
81:16 85:22
**marking** 65:24
**marriage** 100:13
**materials** 13:7,12
**MATT** 4:14
**matter** 6:10 7:7
23:6 24:19 27:25
53:2 65:16 66:2,4
66:14 67:4 68:14
68:24 100:14
**matters** 38:20 62:3
62:18 63:8,18
64:18 83:9

**MATYSTIK** 4:14
**ma'am** 15:17 60:8
69:16
**mean** 17:23,24
22:23 31:3 63:24
73:18 89:17 91:10
91:13
**means** 12:3 42:4
59:17
**media** 16:18
**mediated** 42:7
92:14
**mediated-attemp...**
92:15
**meetings** 73:19
74:7
**members** 31:5
32:22
**mentioned** 52:17
93:11
**Michael** 3:10 6:19
6:24 81:15 85:21
**michael.hepwort...**
3:12
**mind** 55:8
**minute** 55:9
**minutes** 95:10,11
95:13,15,16,18,25
**misconduct** 20:15
**misleading** 67:21
68:4,11
**monthly** 74:7
**move** 47:21 72:23
**multipage** 84:17
**multiple** 80:18,22
**Murray** 6:19 81:15

**N**
**n** 3:1 5:1 6:23
85:19
**name** 7:17 8:11
14:10 48:25 52:18
101:2
**narrowly** 44:9
**nature** 28:24 38:13
**nearly** 74:8
**need** 10:5,6 31:8

41:22 97:2,6,9
**needed** 18:17 53:10
**needs** 24:15 40:8
**negotiation** 57:18
**negotiations** 55:2
56:19 59:9
**never** 24:11 27:25
**New** 1:2 3:7,7 4:3,5
4:5 7:11 16:14,14
41:5 69:18,22
**news** 16:17
**North** 3:17 8:3
81:10
**Notary** 2:14 98:14
99:17 101:24
**note** 37:14 38:18
**noted** 62:2
**number** 6:3 7:11
14:22 21:4 36:10
49:2 52:19 60:3
66:3 73:8 75:11
78:23 81:14,20
85:12,16 87:24
88:6,9 89:11
**numbers** 81:6
**numerous** 60:24
86:15
**NW** 3:14
**NYCLU** 74:2 77:3
86:3
**NYPD** 74:3 75:20

**O**
**oath** 9:6,21 99:1
**object** 78:8
**objection** 18:11
19:6,19,20 20:7
20:17 21:8,22
23:8,23 24:21
25:21 28:4,15
29:7,21 30:4,10
30:12 31:23 32:8
32:10,19 33:5,15
34:9,21 35:11,24
39:23 40:15 41:7
41:16 42:22 43:16
44:20 45:15 46:9

47:8 48:5,21 50:2
51:9 52:11 53:15
54:2,11,21 57:2
57:25 58:16 59:4
62:25 63:22 64:9
64:20 65:7 67:25
68:17 69:3 70:5
71:2 72:18 73:15
74:19 76:6,20
79:17 80:5 82:6
82:14,21 83:7,16
84:11,12,25 86:7
87:17 88:3 89:14
90:7,20 91:7 94:7
**objections** 95:2,4
96:4,7
**obligation** 44:18
45:11 46:7,12
48:2
**obligations** 45:22
45:23
**obviously** 9:17
**occurred** 28:10
**office** 8:12 11:20
81:19
**officer** 6:9 11:25
12:4,6,21 13:3
15:6,25 16:7
18:15 19:13 21:19
22:6 24:4,11,25
27:5,11,16,22
28:9 30:15 34:13
34:25 35:5,10,13
38:14 40:4 41:12
41:19 42:12 44:19
47:4 48:8,10,15
50:11,23 51:16,18
52:16 53:5,8
54:18 57:14 59:25
60:5 61:6 63:14
63:17 67:17 69:17
70:22 71:25 72:6
72:10,15 75:20
76:19 90:16 91:18
91:19 92:9 93:4,7
93:10,16,20 94:10
94:12

**officers** 1:5 7:8
37:19 41:5,15,23
42:20 43:3,24
46:8,14,17 47:5
48:4,16,20 49:23
52:10 53:25 61:19
67:22 89:19 101:2
**officer's** 12:13
48:25 52:18 57:24
**officer-by-officer**
43:15
**official** 11:10 99:10
**offline** 78:3,6,11
83:22
**Oh** 60:17
**okay** 8:6 9:15 10:24
11:5,11,14 12:2
12:15,22 13:6,10
13:18 14:4,9,12
14:19 15:8,13,17
15:22,23 16:6,11
16:21 17:10,14,19
19:3,25 21:16
22:3 24:18 25:14
25:18 27:14,24
29:3 30:8,18
31:17 32:5 35:19
36:20,24 38:5
41:11 44:14 45:13
46:4 47:17 49:16
51:3 53:12,21
54:7,16 55:10
56:8,11,15,21
58:12 59:15,19,22
60:8,12,15 61:8
61:11,23 62:8,22
63:6 65:14,19
66:10,16 67:8,19
68:12 69:12 70:3
70:23 72:25 73:5
73:20,23 74:14,17
75:15,19 76:15
77:16 78:7,13
80:3,21 81:7 82:2
85:24 86:11,17
87:3,12,15 88:8
88:15 89:9 90:4

91:3,13 92:6,13
94:2 95:7,20 96:2
96:11 97:14
**ones** 50:10
**one-minute** 55:11
**open** 13:23 16:15
16:22 17:4,15,20
18:10,19 19:5,18
20:5 21:3 30:20
33:11,20 34:5,6
67:12
**operations** 74:11
**opinion** 19:10,18
20:3,5
**opinions** 17:7,16
18:9,21 19:4
20:20 21:5 30:20
**opportunity** 10:14
10:18,20 12:8
**order** 49:17,23
95:24 96:16,24,25
**ordered** 75:8
**outcome** 23:4,14
25:4 28:3,23
40:24 43:7,18
46:25 49:3 52:19
100:14
**outside** 25:22,25
29:23 32:25 54:13
71:3 76:23 77:22
87:20
**overseeing** 16:16
73:13,18
**oversight** 74:3

——————
**P**
——————
**P** 3:1,1 6:24 85:20
**page** 5:3 6:3 15:15
36:25 37:9 38:9
50:15 60:16,17,18
61:11 73:21 81:9
86:23 87:7 88:23
**pages** 79:12 80:18
80:22 81:20 88:13
88:16
**pandemic** 7:16
**Pantaleo** 61:6

**paragraph** 16:12
37:10,11 61:12
62:10,12 66:17
73:24 74:7
**Paralegal** 4:14
**Pardon** 24:2
**part** 17:14 73:25
**participants** 7:15
**particular** 40:4,6,8
40:22 64:25 94:13
**parties** 100:12
**Patrick** 6:16 78:24
**PAUL** 3:9
**PBA** 80:22 83:25
**PDF** 81:9
**pending** 10:9 20:14
25:11 27:10 28:24
42:3,4,5 92:11,12
**people** 17:7 72:8
**percent** 70:16
**performance** 38:14
**permissive** 29:10
30:16 34:12 35:14
44:4,12 47:14
50:9 51:13,23
52:4,5 57:15 58:4
59:10 63:15 94:14
**permits** 37:20
**person** 12:24 13:2
41:20 47:10 49:11
50:24 72:16 82:9
90:15
**personal** 20:16
22:7 23:21 29:6
46:12
**personnel** 11:2
44:19 61:19
**perused** 65:17 66:8
**petitioner** 37:15
**petitioner's** 37:18
**Pg** 101:5
**Piper** 3:5 4:14 8:2
86:24
**place** 7:13
**plaintiffs** 1:6 3:3
8:3 54:10,19
95:20

**plays** 18:5
**please** 7:20 8:22
14:17 15:15 16:25
22:20 26:15 36:25
50:13 57:6 60:17
73:21 75:22 92:2
96:17
**points** 88:16
**police** 6:17 21:19
22:6 29:18 38:13
41:4 52:10 61:18
73:25 78:15,25
79:23
**policies** 10:25 16:2
16:8 71:9 75:9
77:3,10
**policy** 18:14 23:5
24:19 25:8 26:19
28:12,13,14 34:17
34:20 39:13,20
40:2 49:22 50:4
63:10 64:7,17,23
65:5,10 66:25
67:4 68:14 71:12
74:23 75:3 77:6
**POLK** 99:4
**portion** 12:7 63:25
**position** 11:8 12:17
18:8,16 21:17
22:4,10 29:19
30:2 35:20 39:3
54:17 57:9,19
75:7 85:6
**possession** 66:15
**possible** 76:2,12
89:19 91:4 93:4
**practice** 14:3 19:4
27:25 62:23
**practices** 10:25
**preceding** 62:12
**precise** 95:19
**prefer** 13:24 78:5
**premise** 33:18 44:6
**preparation** 87:10
**prepare** 82:3,25
**preparing** 15:3
**present** 4:13 32:14

32:18,25 56:17
59:9
**presented** 84:21
**President** 6:16
78:24
**presumably** 53:21
**presume** 53:18
91:17 93:25
**presumption** 29:15
**pretty** 49:12
**prevented** 56:23
**previous** 22:21
31:14 45:9 50:18
69:8 71:20 89:6
**previously** 76:5
**prior** 13:3 86:3
**privacy** 11:2 20:16
21:7,21 22:8 23:3
23:13,21 25:3
26:20,24 27:15,20
28:2,21,22 29:6
30:10,23 33:14,21
34:8 35:4,23
38:22 39:5 40:14
40:22 41:14 42:17
43:11,23 44:18
45:22 46:8,23,24
62:5,19 63:9,20
67:14 68:16 94:6
**privilege** 10:10
31:19,25 32:17,21
33:8 70:8 76:9
80:9 82:23 83:17
83:21 85:4 87:22
94:13
**probably** 48:10
55:9
**procedures** 16:2,8
71:10,12 74:24
75:3,4,10 77:4,6
77:11
**proceedings** 27:8
**process** 25:16,19
25:25
**produce** 93:20
**produced** 51:8
91:15 92:18

**producing** 19:16
91:13
**production** 90:17
**Professional** 2:13
**proper** 18:3
**protect** 45:22 46:12
46:22 49:23
**protected** 40:13
57:22
**provide** 17:7 45:23
67:4
**provided** 13:4,7
41:13 49:17 61:18
**provides** 17:4 18:2
**providing** 52:8
**provision** 56:12
**public** 2:14 16:17
17:5 29:16 37:19
61:19 68:13,24
98:14 99:17
101:24
**pulled** 89:25 90:13
**purpose** 33:22
**purposes** 17:12
**pursuant** 95:24
**put** 14:13 36:9
47:20 48:4 65:19
65:20
**p.m** 2:5 7:4 31:11
31:12,13,16 55:19
55:20,21 56:2
96:14 97:16

**Q**

**question** 9:24 10:8
20:25 21:2,11,25
23:5 25:13 26:6
26:15 31:14,18
32:20 33:7,18
34:3,16,19 39:8
43:21 45:6,9,14
45:18 46:5 48:17
50:12,18,21 55:24
56:5 57:5 58:8,22
58:23 59:11 60:8
64:2,4,13 69:6,8
71:6,13,15,20

72:21 74:20 77:7
83:13 84:16,20
90:11 92:17,17
**questioning** 7:22
95:17
**questions** 9:21,21
9:23 17:8 56:9
94:19 95:21 96:10
**Quinn** 4:8 6:23
8:10,11 18:11
19:6,19,20 20:7
20:17 21:8,10,22
22:18 23:8,23
24:21 25:21,24
26:5,11 28:4,15
28:17 29:7,21
30:4,12 31:23
32:8,10,19 33:5
33:15 34:9,21
35:24 37:8 39:23
40:15 41:7,16
42:22 43:16 44:20
45:4,15 46:9 47:8
47:18,23 48:5,21
50:2 51:9 52:11
52:13 53:15 54:2
54:11,13,21 55:6
55:12,16 57:2,25
58:16 59:4 62:9
62:25 63:22 64:9
64:20 65:7,22
67:8,25 68:17
69:3 70:5 71:2,7
71:14,18 72:18
73:15 74:19 75:5
76:6,20 77:8,20
78:5 79:17,20
80:5 82:6,14,21
83:7,16 84:11,25
85:7,19 86:7
87:17 88:3,22
89:14 90:7,20,23
91:7 92:22 94:7
94:15,20 95:3,5,9
95:13,16,23 96:16
96:21,25 97:3,7
97:10

**R**

**R** 3:1,10 6:24 85:21
100:1
**Raise** 8:21
**raised** 52:7
**raising** 52:21
**RDR** 1:24 99:16
100:4,19
**reach** 43:13 49:17
**reached** 53:13
94:16
**read** 22:19,19,21
31:14 45:7,9
50:17,18 57:5
60:23 69:6,8
71:16,18,20 101:5
**Reads** 101:5
**really** 22:14 76:3
**Realtime** 2:11
**real-world** 52:9
**reason** 48:9 64:6
74:14 77:22 101:5
**reasoning** 30:8
64:24
**reasons** 33:10 34:4
34:19
**Rebecca** 4:8 6:22
8:11 85:19
**recall** 19:22,25
71:21,22 96:8
**received** 80:17,21
84:2 86:5,15
**receives** 72:16
**recollection** 76:4
76:11 80:17 84:3
**record** 7:3 12:3
27:4 31:11,16
35:9 51:5 55:19
56:2 58:10 91:15
95:17 96:14,17
100:9
**records** 6:9 11:3,24
12:3,5,12,20 13:2
13:23 15:6,25
16:7 17:5 18:15
19:12 22:13 24:3
24:11,25 25:10

27:11,15,21 28:8
29:11,14,16 30:14
34:13,24 35:5,13
37:5,20 38:12,19
40:4 41:4,12,19
41:21 42:11,13
43:2,4,5 44:8,19
46:18 48:8,9,15
50:10,22 51:16,17
53:8,19,23 54:17
57:13 59:25 60:4
61:5,19 62:3,17
66:14,20 68:5
69:17 70:21 71:25
72:5,10,15 76:18
86:4 90:15 91:17
91:20 93:4 94:10
94:12
**redact** 46:15
**Reed** 6:6 36:7,11
36:17
**referred** 42:9
**referring** 81:23
**reflect** 63:10 64:7
66:25
**reflected** 65:5,10
**reflects** 66:11,12
67:2 68:4
**regard** 12:23 18:9
29:19 38:7 79:24
92:7
**regarding** 13:13
30:19 61:5 64:17
**regardless** 72:11
**regards** 40:23,24
**Registered** 2:10
**regularly** 17:17
**regulations** 72:17
**rejected** 19:17 20:3
77:10
**relate** 11:22
**related** 26:4 62:17
100:11
**relates** 46:25
**relating** 62:3
**release** 20:13 21:5
21:17 22:5 27:11

29:4 39:4,21 48:3
53:23 54:20 56:22
57:10,20 61:5
64:18 70:4 94:4
**released** 29:12 41:4
43:4,19 44:8
48:24 58:11 67:16
68:13,23 69:17
87:4 93:15,18
**releases** 25:9 67:11
93:22
**releasing** 43:22
**relevant** 18:22
19:11 57:17
**remains** 21:14
**remember** 76:13
81:25
**REMOTE** 1:15
**remotely** 2:9 7:15
99:7
**repeal** 86:14
**repealed** 35:16
**repeat** 45:5 93:12
**rephrase** 9:25 57:8
71:14
**REPORTED** 1:23
**reporter** 2:10,11,12
2:12,13 8:17,19
50:17 100:5,20
**represent** 7:22 8:2
15:9 38:21
**representing** 7:18
8:13,18
**request** 12:7,10
13:22 22:13 24:4
27:16 34:25 35:6
37:4,18 38:19
40:19 41:20 43:2
44:7 49:25 50:5,6
50:20 52:16,16,23
61:9,17 62:2,17
65:12 70:21 72:2
75:20 76:17 84:2
86:2,5,18 92:5,8
93:6
**requested** 37:15
77:2

**requester** 12:8
**requesting** 90:14
**requests** 11:2 12:7
13:5,25 19:17
38:21 72:5,17
84:24 85:12 86:15
87:25,25 88:9,16
88:18,23 89:8,18
92:24
**require** 57:11
**required** 33:23
44:12 47:15 51:11
**requirement** 44:4
48:11 51:14 58:6
**requires** 66:13
**respect** 53:4
**respond** 13:4,13,22
15:10 80:14 82:10
82:13,17 83:14
84:7
**responded** 85:13
**responding** 20:3
22:12 82:20 88:18
**response** 65:11
80:12 82:3 83:2
84:8,9 91:25 92:4
**responses** 77:25
89:13
**responsibilities**
11:21 15:24 16:8
**responsibility** 46:7
**responsible** 16:16
20:2
**responsive** 50:14
**restricted** 38:14
**result** 25:19
**review** 6:7 12:10
17:15 36:8,12,18
43:15 49:24 53:14
53:19,22 80:11
**reviewed** 17:17
90:5 92:19
**Rhonda** 1:24 2:9
8:17 99:16 100:4
100:19
**right** 8:22 18:7
19:15,23 20:25

53:21 61:9,21
67:3 69:21 71:18
72:6 84:6 90:6
92:16 96:7
**rights** 37:23 38:15
46:8 53:24 61:20
**risk** 48:4 49:10
**risks** 48:19 52:10
**role** 18:6
**rough** 97:9,10,13
**routinely** 38:11
**rquinn@law.nyc...**
4:10
**rules** 9:20
**run** 95:12,16

___

**S**

**S** 3:1 6:1
**safety** 47:6 48:3,19
49:10,23 51:6,21
52:3,8,22,25
**Saint-Fort** 4:7 6:21
6:23 8:14 85:17
85:20
**saw** 79:18 80:4
**saying** 21:5 24:18
45:21 63:17 84:15
84:16
**says** 16:10,13 38:6
52:18 56:16 61:16
64:3 66:20 68:4
68:14 73:23 74:6
**Scarcella** 37:17
**scope** 12:14 25:22
26:2 29:23 54:14
71:4 74:22 76:24
77:22 78:2 87:21
**screen** 36:9 61:12
73:4 80:19
**scroll** 14:17 62:10
88:10 92:25
**seal** 99:10
**search** 18:20
**second** 10:18 36:25
86:23 87:21 88:22
**section** 38:6
**see** 15:19 16:19

18:21,23 36:20
37:3,7,10,24,25
38:24,25 61:14,21
62:6,7,11 63:21
63:24 64:3 65:11
66:19,23 73:3,4
73:23 74:4,9,13
75:19,21 83:20
86:25 87:6 88:22
88:23 92:22,24
**seeing** 76:11 96:5
**seeks** 38:19
**seen** 36:19 75:25
76:5 79:5,10,15
79:22
**send** 72:9
**sense** 43:6
**sent** 12:11 72:5
76:16 77:18 80:11
**sentence** 15:23
16:13 38:17 61:24
66:18 67:20 74:9
74:13
**served** 18:15
**set** 16:9 94:21
100:8,15
**SHEET** 101:1
**She'll** 45:7
**shorthand** 100:5
100:20
**show** 36:5 59:22
75:15 78:13
**showing** 96:3
**shows** 73:18
**sic** 81:11,13 94:25
**side** 37:6
**side's** 96:16,24,25
**Signature** 101:19
**similar** 41:21 43:5
**simply** 40:12
**single** 47:12 51:8
89:23
**Sitting** 19:15
**situation** 92:19
93:13
**small** 89:18
**solemnly** 8:23

**somewhat** 67:21
**sorry** 22:14,18
25:12 45:6 55:25
56:4 63:16 64:12
65:22 69:5 79:19
92:2,2 94:15,20
96:21
**sort** 70:25
**Southern** 1:2 7:10
**speak** 55:13,16,23
56:5,8
**speaking** 61:2
**specific** 14:10
85:25 92:19
**specifically** 37:21
38:12
**spoke** 71:25
**staff** 32:23
**Standard** 7:5
**standpoint** 29:11
**started** 60:14
**starts** 29:10
**state** 2:14 7:21
16:14 17:25 18:2
18:4 37:22 99:3
99:17 100:2
**statement** 63:4,7
63:11
**States** 1:1 7:10
**statewide** 17:21,23
**State's** 16:15
**stating** 20:21
**statute** 37:22
**statutory** 61:17,25
**STENOGRAPH...**
8:21 78:18 79:7
81:4 96:15,23
97:1,5,8,14
**stenographic** 100:5
100:20
**stipulated** 66:21
67:5,23
**stop** 82:19
**straightened** 8:9
**Street** 3:14 4:4
**subject** 6:10 33:13
46:19 48:19 65:16

66:2,3,13,21 68:5
68:16 96:7
**Subscribed** 98:10
101:20
**substance** 33:3
**substantiated**
25:20 38:20 42:14
43:8
**supervising** 11:19
**supposed** 44:9 82:9
**sure** 15:17,18 21:24
22:25 31:9 49:12
50:13,14 57:4
69:7 70:16 72:20
76:3 79:8 84:14
84:15 91:9
**swear** 8:19,23
**sworn** 9:5 98:10
99:8 100:8 101:20
**system** 13:23,24
**systems** 74:12

**T**

**T** 6:1,19 81:15
100:1,1
**Tab** 14:13 36:5
59:24 72:24 85:15
**take** 10:8 25:5
26:10 31:7,7 55:7
55:10 69:13 76:25
78:2,5 83:22 93:5
**taken** 31:12 35:20
55:20
**takes** 24:4 30:2
**talk** 10:24
**talking** 14:16 44:24
50:9 75:2 77:5
**talks** 59:7,8
**tech** 7:19
**TECHNICIAN**
4:16
**tell** 9:5,19 10:11
18:14 33:3,10
52:14 77:16 88:9
**terms** 13:21 14:7
**testified** 9:6
**testimony** 8:24

23:22 27:24 34:18
34:24 41:11 42:19
42:25,25 47:25
48:14 56:21
100:10
**thank** 8:15 37:12
47:23 55:12,17
62:13 75:24 96:3
96:6,20 97:15
**thing** 10:7
**things** 27:9
**think** 19:8,16 46:11
59:23 67:19 71:3
71:11,22 91:3
97:11
**three** 32:6 66:17
88:15
**Thursday** 1:17
**time** 7:4,5 9:15,17
12:21,23 13:11
15:6 19:23 22:16
25:6 26:19 39:2,7
39:11 62:21,23
63:10,13 64:8
94:21 95:6 96:6
96:13,14,20
**times** 72:7
**title** 11:10
**Titled** 6:6,8 36:11
60:4
**TN** 2:12
**today** 8:17 13:12
14:5 19:15 84:8,9
96:6
**today's** 7:3 96:12
**Tony** 7:25 55:6
83:9
**Topic** 77:2,9
**training** 12:16,22
13:4,7
**transcript** 10:14,15
10:16,17 96:24
97:2 101:1
**TransPerfect** 7:18
8:18
**treat** 67:13
**treats** 58:25

**true** 67:3,7,10 68:6
74:15 100:9
**truth** 8:25,25 9:2,6
**try** 9:24
**turn** 86:23
**two** 27:8
**type** 52:23
**types** 43:2
**typical** 72:4

**U**

**Uh-huh** 25:17
66:24
**ultimately** 25:18
**undersigned** 99:6
**understand** 9:22
9:23 10:2 21:25
22:15 25:13,15
31:3 34:16 57:5
60:25 61:8 72:14
72:21 73:12 90:10
**understanding**
16:22 22:11 33:19
40:3,18 42:3
61:10 62:15 70:15
70:18,20 91:19
93:17
**understood** 61:3,4
**undertook** 49:17
**unfounded** 21:6,18
22:5 23:6,19
24:14 29:5,20
30:11,21 33:13
35:21 42:15 43:9
68:15
**Uniformed** 1:5 7:7
101:2
**union** 57:24 69:23
**unions** 54:9
**United** 1:1 7:9
**unreasonable**
20:15 34:7 38:22
39:5 62:4,18 63:9
63:19
**unsubstantiated**
20:14 21:6,18
22:5 23:7,19

24:13 25:20 29:4
29:20 30:11,21
33:12 35:21 39:4
39:21 40:13 42:14
43:8 54:20 62:3
62:17 63:8,18
64:18 67:11,18
68:15 93:23 94:4
**unusual** 9:18 86:11
**unwarranted** 21:20
22:7 23:2,13,20
25:2 26:23 30:22
33:21 34:7 35:3
43:10 94:5
**use** 13:23,24 67:5
**Usually** 27:4

**V**

**V** 101:2
**various** 17:8
**versus** 6:6,9 7:8
36:7,12,17 59:25
60:4
**video** 7:6 10:13
**videoconference**
7:14
**videographer** 4:19
7:2,18 8:15 31:10
31:15 55:18,25
96:11
**Videotaped** 1:15
2:8
**view** 51:22 63:6
**visible** 37:9
**vs** 1:7

**W**

**want** 15:18 20:22
26:9 37:9 44:14
45:25 50:14 51:3
55:14 59:16,22
61:23 62:11 68:8
79:14
**wants** 29:13
**warrant** 42:16 43:9
**Washington** 3:15
**wasn't** 39:6,10
62:22 92:16

**waste** 26:19
**way** 37:8 96:6
100:13
**ways** 46:23
**web** 7:14
**Website** 6:11 17:6
65:15,25 66:4
67:20
**week** 83:6
**weeks** 32:6
**weren't** 93:13
**we'll** 26:10 55:10
78:10 83:22 88:10
96:8
**we're** 31:15 36:6,8
44:12 46:19 50:9
65:24 73:5 74:25
81:7 83:7
**we've** 24:11 94:15
95:16
**WHEREOF**
100:15
**withheld** 35:23
**withholding** 26:20
**witness** 8:4,7,20
9:3 10:21 18:13
19:8,22 20:9,19
21:9,13,24 23:10
24:3,24 28:7,16
28:18 29:9,22
30:6,14 31:17
32:2,12,22 33:6
33:17 34:11,23
36:2 39:25 40:17
41:9,18 42:24
43:17 44:21 45:2
45:3,5,10,17
46:11 47:10,20
48:7,23 50:4,19
51:11 52:12,14
53:17 54:4,12,23
55:14,17 57:4
58:3,18 59:6 63:3
63:24 64:11,16,22
65:9 68:3,19 69:5
69:9 70:6,9 71:3
71:21 72:20 73:17

76:7,10,21 77:9
77:21 79:18,22
80:6,7,10 82:8,16
83:18 84:14 85:2
85:8 86:9 87:18
88:5 89:16 90:9
90:21,24 91:9
93:3 94:9,25
95:21 99:10 100:7
100:10,15
**word** 66:19
**work** 62:20 74:2
**worked** 17:2 63:12
**working** 11:5 47:19
**wouldn't** 39:11
43:23 90:5
**writes** 38:17
**writing** 17:8
**written** 13:6,12
28:12,13 39:11
87:16
**wrote** 38:23 85:11

---

**X**

**X** 5:1 6:1

---

**Y**

**year** 39:17
**years** 72:14 73:14
74:8
**York** 1:2 3:7,7 4:3
4:5,5 7:11 16:14
16:14 41:5 69:18
69:22

---

**Z**

**Zoom** 9:18 75:22

---

**1**

**1** 6:4 14:20,22
**1:20-CV-05441** 1:3
**1:20-cv-05441-K...**
7:12
**10** 36:5
**100** 4:4 70:16
**10007** 4:5
**10020** 3:7
**11** 59:24

**12th** 85:13 87:5
88:20
**1251** 3:6
**14** 6:4
**14th** 83:15
**1983** 15:15
**1995** 6:5 14:24

---

**2**

**2** 6:6 36:6,10 59:8
77:2,9
**20** 74:8
**20004** 3:15
**2014** 61:16 63:12
64:23
**2015** 38:23
**2016** 39:22
**2017** 11:13 39:18
59:20 60:2 62:24
63:7
**202** 3:16
**2020** 1:17 2:4 7:4
75:17 78:17 79:10
79:16 98:11 99:11
100:16 101:3,21
**212** 3:8 4:6
**24** 61:16
**24th** 87:5
**27** 14:13
**28092** 1:25

---

**3**

**3** 6:8 59:24 60:3,16
60:18 65:6
**3:01** 2:5 7:4
**3:25** 31:11,12
**3:28** 31:13,16
**3:53** 55:19,20
**3:54** 55:21 56:2
**30(b)(6)** 10:21
44:25 64:15 75:9
76:25
**30-second** 55:7
**335-4500** 3:8
**35** 95:18
**356-2444** 4:6
**36** 6:6
**360849** 99:19

---

**4**

**4** 6:10 65:25 66:3
72:24
**4:38** 96:14
**4:39** 97:16

---

**5**

**5** 6:12 73:8,24 79:6
**50-a** 35:16 37:25
38:15 86:14
**50-a(1)** 38:2
**500** 3:14
**51** 37:23

---

**6**

**6** 1:17 2:4 6:14
75:11 81:11 101:3
**6th** 7:4 99:11
100:16
**6-A** 81:12
**60** 6:8 87:25
**60-plus** 87:25
**66** 6:10

---

**7**

**7** 6:16 78:23 85:15
**7-A** 6:19 81:14
**7/23/20** 6:13 73:9
**7/28/20** 6:22,24
85:18,21
**7/8/20** 6:18,20 79:2
81:16
**73** 6:12
**75** 6:14
**78** 6:16
**799-4000** 3:16

---

**8**

**8** 6:21 78:16 79:10
85:16
**8th** 79:15 83:5,14
**81** 6:19
**81,000** 41:4,15
42:20 47:5 48:16
49:13 53:19 69:17
**81,000-plus** 41:23
**85** 6:21
**87** 59:8

**87(2)(a)** 37:19
**87(2)(b)** 44:19
**87(2)(c)** 56:12

---

**9**

**9** 5:4 75:17
**9/28/23** 99:18
**90** 95:13,16,25
**90-minute** 94:16,21