# EXHIBIT R

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

No.: 1:20-CV-05441 (KPF)(KWL)


UNIFORMED FIRE OFFICERS      )
ASSOCIATION, et al.,         )
                             )
          Plaintiffs,        )
                             )
     vs.                     )
                             )
BILL de BLASIO, et al.,      )
                             )
          Defendants.        )
_____ )


REMOTE VIDEOTAPED DEPOSITION OF

SHERYL MONTOUR

Friday, August 7, 2020


REPORTED BY:

RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

JOB NO. 28094

Page 2

```
 1
 2
 3
 4                    August 7, 2020
 5                    11:34 a.m.
 6
 7
 8          Videotaped Deposition of SHERYL
 9    MONTOUR, held remotely before Rhonda
10    Hall-Breuwet, Registered Diplomate Reporter,
11    Certified Realtime Reporter, Licensed Court
12    Reporter (TN), Certified Court Reporter (GA
13    and LA), Florida Professional Reporter, and
14    Notary Public of the State of Florida.
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                        Page 3

 1    A P P E A R A N C E S:

 2

 3    ATTORNEYS FOR PLAINTIFFS:

 4

 5             DLA PIPER LLP (US)

 6             1251 Avenue of the Americas

 7             New York, New York 10020

 8             (212) 335-4500

 9             BY:  ANTHONY PAUL COLES, ESQUIRE

10             EMAIL:  anthony.coles@dlapiper.com

11             - and -

12             500 Eighth Street, NW

13             Washington, DC 20004

14             (202) 799-4000

15             BY:  EVAN NORTH, ESQUIRE

16             EMAIL:  evan.north@dlapiper.com

17

18

19

20

21

22

23

24

25    (Continued)
```

```
                                                         Page 4
 1     ATTORNEYS FOR DEFENDANT:

 2

 3              NEW YORK CITY LAW DEPARTMENT

 4              100 Church Street

 5              New York, New York  10007

 6              (212) 356-2444

 7              BY:  DOMINIQUE F. SAINT-FORT, ESQUIRE

 8                   REBECCA GIBSON QUINN, ESQUIRE

 9              EMAIL:  dosaint@law.nyc.gov

10                      rquinn@law.nyc.gov

11

12

13     ALSO PRESENT:

14            MATT MATYSTIK, Paralegal - DLA Piper

15

16     EXHIBIT TECHNICIAN:

17            GABRIELA ALVAREZ

18

19     VIDEOGRAPHER:

20            JEREMY LeMASTER

21

22

23

24

25
```

Page 5

1                    I N D E X

2

3                                          PAGE

4    DIRECT EXAMINATION BY MR. NORTH              9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    E X H I B I T S

2

3        NUMBER              DESCRIPTION              PAGE

4      EXHIBIT 1   Citywide Privacy              34
                   Protection Policies and
5                  Protocols, dated
                   1/28/19, Bates-stamped
6                  DEF_UFOA_001944 - 1981

7      EXHIBIT 2   Letter from Rebecca G.        52
                   Quinn and Dominique
8                  Saint-Fort to Judge
                   Failla dated 7/25/20
9
       EXHIBIT 3   Letter from Dominique         54
10                 Saint-Fort and Rebecca
                   G. Quinn to Judge
11                 Failla dated 7/30/20

12     EXHIBIT 4   Opinion of the               57
                   Committee on Open
13                 Government, FOIL AO
                   19775, dated 7/27/20

14

15

16

17

18

19

20

21

22

23

24

25

1                    SHERYL MONTOUR

2               THE VIDEOGRAPHER:  Good morning.

3       We are now on the record.  Today's date is

4       August 7th, 2020, and the time is

5       11:34 a.m. Eastern Standard Time.

6               This is the video deposition of

7       Sheryl Montour in the matter of Uniformed

8       Fire Officers Association, et al., versus

9       Bill de Blasio, et al., filed in the United

10      States District Court, Southern District of

11      New York, Case

12      Number 1:20-cv-05441-KPF-RWL.

13              This deposition is taking place

14      via web videoconference with all

15      participants attending remotely due to the

16      COVID-19 pandemic.

17              My name is Jeremy LeMaster.  I am

18      the videographer representing TransPerfect,

19      and the document tech is Gabriela Alvarez.

20              Would counsel on the conference

21      please identify yourselves and state whom

22      you represent, beginning with the

23      questioning attorney.

24              MR. NORTH:  Good morning,

25      everyone.  This is Evan North with

```
 1                 SHERYL MONTOUR
 2      DLA Piper, here on behalf of the
 3      plaintiffs.  I'm joined here today by
 4      Anthony Coles, who is on the phone.
 5              MS. QUINN:  And good morning,
 6      everyone.  My name is Rebecca Quinn from
 7      the office of the Corporation Counsel,
 8      representing defendants, and I'm here with
 9      my colleague Dominique Saint-Fort.
10              THE VIDEOGRAPHER:  Thank you,
11      Counsel.  Our court reporter today is
12      Rhonda Hall-Breuwet, representing
13      TransPerfect.  The court reporter will now
14      swear in the witness.
15              CERTIFIED STENOGRAPHER:  Raise
16      your right hand, please.
17              Do you solemnly swear the
18      testimony you are about to give will be the
19      truth, the whole truth, and nothing but the
20      truth?
21              THE WITNESS:  Yes.
22                 SHERYL MONTOUR
23   acknowledged having been duly sworn to tell
24   the truth and testified upon her oath as
25   follows:
```

```
 1                    SHERYL MONTOUR

 2                    DIRECT EXAMINATION

 3    BY MR. NORTH:

 4        Q        Good morning, Ms. Montour.   How

 5    are you today?

 6        A        I'm good.   How are you?

 7        Q        Good.   Thank you.

 8                  Have you ever been deposed before?

 9        A        No.

10        Q        Are you generally familiar with

11    how depositions work?

12        A        Yes.

13        Q        Do you understand that you're

14    testifying under oath today?

15        A        Yes.

16        Q        And if you don't understand a

17    question, if you can just let me know, I'll

18    try to rephrase it.   But can we agree that if

19    I ask a question and you don't let me know

20    that it was confusing, that you understood the

21    question as I posed it?

22        A        Yes.

23        Q        That question itself may have been

24    confusing.   So I apologize.

25                  There is a court reporter joining
```

Page 10

1                    SHERYL MONTOUR

2    us today, as well as a videographer, and I

3    would just ask that you speak up and speak

4    slowly, and always ensure that you provide a

5    verbal response as opposed to shaking your

6    head so that we capture everything on the

7    transcript.

8         A       Will do.

9         Q       Does that work?

10        A       Yes.

11        Q       So this will be a fairly quick

12   deposition, but you can feel free to let me

13   know if you need a break, and we can take that

14   at any time as long as we don't take a break

15   while a question is pending, unless you need

16   to confer with your attorney on a subject that

17   may be privileged.

18        A       Okay.

19        Q       Does that work?

20        A       Yes, it does.

21        Q       Are you currently employed?

22        A       Yes.

23        Q       By whom?

24        A       The fire department of New York

25   City.

1                    SHERYL MONTOUR

2       Q       How long have you been employed by

3    the fire department?

4       A       Since October 2017.

5       Q       And what is your current position?

6       A       Record access officer/agency

7    attorney.

8       Q       How long have you held that

9    position?

10      A       The entire time.

11      Q       And where did you work previously?

12      A       Previously I worked -- I was a

13   contract attorney at Department of Education.

14      Q       In your current capacity with the

15   fire department, can you please describe the

16   general nature of your job responsibilities.

17      A       I'm the FOIL officer, and I handle

18   incoming FOIL requests and process them

19   through.

20      Q       Are there any other job

21   responsibilities that you have?

22      A       I also handle audio preservation

23   requests, and I manage -- I supervise the

24   unit.  That's about it.

25      Q       Can you tell me the name of the

Page 12

1              SHERYL MONTOUR

2    unit that you supervise, please.

3        A       The FOIL unit.

4        Q       How many other employees are in

5    the FOIL unit?

6        A       One full-time and someone else

7    that assists.  So three of us in total.

8        Q       And do those other employees

9    assist you in responding to FOIL requests?

10       A       Yeah.  Yes.

11       Q       And if I refer to "the department"

12   in this deposition, can we agree that I'm

13   referring to the fire department?

14       A       Agreed.

15       Q       Do you understand that you're here

16   to testify as a designated representative of

17   the fire department?

18       A       I understand.

19       Q       Have you done anything to prepare

20   to testify in that capacity?

21       A       I spoke to the attorneys at the

22   law department.  That's about it.

23       Q       Did you review any documents?

24       A       Not particularly, no.  It's been a

25   busy week.

```
 1                SHERYL MONTOUR

 2      Q        Understood.

 3               Are you prepared today to testify

 4   regarding policies and practices for handling

 5   FOIL requests at the fire department?

 6      A        Yes, to the best of my knowledge.

 7      Q        And are you prepared today to

 8   testify regarding the privacy of personnel

 9   records maintained by the fire department?

10      A        Yes, to the best of my knowledge.

11      Q        And when you say to the best of

12   your knowledge, did you prepare for this

13   deposition to testify on behalf of the

14   department's knowledge on that topic

15   collectively?

16      A        Yes.

17      Q        And are you prepared to do that?

18      A        I'm ready when you are.

19      Q        Okay.  What written policies or

20   rules do you and the FOIL employees in your

21   unit follow in reviewing and responding to

22   FOIL requests?

23      A        Public Officers Law, the Freedom

24   of Information Law, and --

25      Q        Are you referring to -- I'm sorry.
```

1              SHERYL MONTOUR

2    I cut you off, and I'm sure that won't be the

3    last time just because it's on Zoom, but

4    please finish your answer.

5         A        And when necessary, the Committee

6    on Open Governance [sic] and case law.

7         Q        And does the department itself

8    have any of its own policies or written

9    guidance regarding the proper handling of FOIL

10   requests?

11        A        No, not to my knowledge.

12        Q        Does the department follow any

13   citywide policies regarding the disclosure of

14   information to third parties?

15        A        Yes.  They rely on the citywide

16   guidance on privacy.

17        Q        And does that citywide guidance on

18   privacy bear on the department's responses to

19   FOIL requests?

20        A        I'm sure perhaps it -- typically I

21   just refer to the FOIL, to the Freedom of

22   Information Law, the actual statute.

23        Q        And when you are responding to a

24   FOIL request, do you ever consult the views of

25   the Committee on Open Government on the proper

1                    SHERYL MONTOUR

2    response?

3        A       Yes, I do.

4        Q       On what occasions have you done

5    that?

6        A       Any -- on various occasions, just

7    typically when I need further guidance on

8    matters that I haven't typically reviewed or

9    need clarity on a particular statute.

10       Q       And let me just stop and clarify

11   my question because I think it could have been

12   interpreted in one of two ways.

13               Have you ever requested the views

14   of the Committee on Open Government on the

15   proper response to a FOIL request?

16       A       Have I submitted a formal?  No, I

17   don't believe so, to . . .

18       Q       But you would consult the advisory

19   opinions that they make available on their

20   website.  Is that your testimony?

21       A       Yes.

22       Q       And what type of case law would

23   you consult in responding to a FOIL request?

24       A       Like I just look up the -- use

25   keywords to look up things in LexisNexis to

1                    SHERYL MONTOUR

2    find case law, but it just depends on what I'm

3    researching.

4        Q       Do the other members of your team

5    follow the same steps?

6        A       They're mostly in an admin

7    position.  So no.

8        Q       So are you the only attorney for

9    the FOIL unit that would take those types of

10   steps?

11       A       Yes.

12       Q       Right.  And does the department

13   have -- or does the FOIL unit use anything

14   other than the sources that we've just

15   discussed in determining whether -- in

16   determining how to respond to a FOIL request?

17       A       I will mention, there's the New

18   York City administration law for identifiable

19   information.  Other than that, yes, that's

20   everything.

21       Q       Have you received any instruction

22   or training on how to process FOIL requests?

23       A       Formal training?  No.

24       Q       Have you received any informal

25   training?

Page 17

1                    SHERYL MONTOUR

2      A       I trained myself.  I mean, that's

3    my informal training.

4                    CERTIFIED STENOGRAPHER:  I'm

5        sorry.  I missed the very first part of

6        what you said.

7                    THE WITNESS:  I don't remember

8        either.  Repeat the question and I'll

9        reanswer it.

10   BY MR. NORTH:

11      Q       I just asked if you had received

12   any informal training, and I believe you

13   answered that you had just essentially trained

14   yourself.  Is that accurate?

15      A       That's accurate.

16      Q       Okay.  Thank you.

17                    What type of -- going back to the

18   Committee on Open Government advisory

19   opinions, what type of deference do you give

20   the opinions expressed by the Committee on

21   Open Government in determining how to respond

22   to a FOIL request?

23      A       They're opinions.  I just use them

24   as guidance, but I usually refer to case law

25   and see what the case law says on it because

1                    SHERYL MONTOUR

2    they're not -- they're not final.  The

3    committee oftentimes issues opinions that

4    differ from case law.  So it's just kind of

5    guidance, is how I treat it.

6         Q      Do you consider the committee's

7    views to be authoritative?

8         A      No.  No.

9         Q      Do you consider them to be

10   persuasive?

11        A      I consider them to be a starting

12   point of guidance on where you should go, but

13   typically it requires further investigation

14   because oftentimes I find that case law

15   differs from their opinions.

16        Q      How do you determine -- strike

17   that.

18               How does the department ensure

19   that its responses to FOIL requests are

20   treated similarly from one request to the

21   next?

22               MS. QUINN:  Objection.

23               You can answer.

24               THE WITNESS:  Can you repeat the

25      question one more time?

Page 19

1                    SHERYL MONTOUR

2    BY MR. NORTH:

3        Q       Sure.  I'll ask a slightly

4    different question that hopefully is more

5    clear.

6                    How does the department, or how

7    does the FOIL unit, ensure that its responses

8    to FOIL requests are similar and consistent

9    from one request to the next?

10                   MS. QUINN:  Objection.

11                   You can answer.

12                   THE WITNESS:  It's hard to answer.

13           But really, with FOIL, it's on a

14           case-by-case basis.  For the regular

15           requests that I receive that are kind of

16           uniform and the bulk of our request, you

17           know, we redact PII.

18                   And it's kind of uniform because a

19           911 call is similar in all aspects, but

20           when it comes to unique FOIL requests, it's

21           a case-by-case basis.  And I ensure it by

22           passing judgment -- I mean, outside of PII,

23           it just varies on what the document has.

24           You know, I have to read it and determine

25           what to disclose and what not to disclose.

Page 20

```
 1                   SHERYL MONTOUR
 2   BY MR. NORTH:
 3        Q       And just so that I understand
 4   exactly what you're referring to, when you
 5   talk about the document and you mention that
 6   it varies on what -- your decision varies
 7   based on what the document has, are you
 8   referring to the request or the records that
 9   are requested?
10        A       The records that are requested.
11        Q       And can you walk me through the
12   process of how you determine whether a
13   particular record should be disclosed in
14   response to a FOIL request?
15        A       Well, because FOIL has very few
16   exemptions that are in toto, like I wouldn't
17   have to produce anything, I typically request
18   the documents from the record holder; and upon
19   receiving it, I determine if there is any
20   exemptions that would in whole allow the
21   document not to be released.  And if there
22   isn't any other statutes that prevent it from
23   being released in its entirety, I go line by
24   line and determine what's releasable and
25   what's not releasable.
```

Page 21

1                    SHERYL MONTOUR

2      Q       And when you go line by line, as

3   you say, are you going line by line in the

4   specific records that are requested to

5   determine whether an exemption applies?

6      A       Yes.

7      Q       And do you do that in all cases?

8      A       Yes.  For the uniques, yes, we do.

9   I mean, we do that for all cases, actually,

10  yes.

11     Q       Going back to the Committee on

12  Open Government for a moment, you mentioned

13  that you don't view their views as binding and

14  that you often follow up with case law

15  research.

16             Can you provide an example of

17  where you reviewed a Committee on Open

18  Government advisory opinion and then followed

19  that up with case law and that case law was at

20  odds with the advisory opinion?

21             MS. QUINN:  Objection.

22             You can answer.

23             THE WITNESS:  A specific instance?

24     No, I can't think of one at the moment.

25             ///

```
 1                  SHERYL MONTOUR
 2   BY MR. NORTH:
 3       Q      And does the department -- does
 4   the department follow any other steps to
 5   ensure that its treatment of FOIL requests is
 6   consistent from one request to the next?
 7               MS. QUINN:  Objection.
 8               You can answer.
 9               THE WITNESS:  No.  I just try to
10       treat everything as it comes.  And since
11       I'm usually the one reviewing it, at times
12       sometimes I escalate, but yes, just opinion
13       on once you receive the document.  There's
14       nothing further I can say we do.
15   BY MR. NORTH:
16       Q      And in what circumstances would
17   you escalate a particular request?
18       A      I do quality control.  So for the
19   typical records that are somewhat uniform, I
20   have my admin do the first level of quality
21   control, and then I do the second level of
22   quality control.  However, when it comes to
23   more unique requests, I do the first level of
24   quality control, and then I typically escalate
25   it to my -- the chief privacy officer, my
```

1                    SHERYL MONTOUR

2    boss, to do my quality control.

3        Q      Who is the chief privacy officer

4    of the fire department?

5        A      James Saunders.

6        Q      When you mentioned more unique

7    requests that would start with your review and

8    then potentially escalate to the chief privacy

9    officer, can you give me an example of a more

10   unique request?

11       A      A unique request would be, let's

12   say, training manuals.  Training manuals or

13   inspection reports for the Second Avenue

14   Subway line.  Those are more unique requests.

15       Q      Would a request for disciplinary

16   records of firefighters or fire officers be

17   considered a more unique request?

18       A      Yes.

19       Q      Have you ever escalated a request

20   for disciplinary records of firefighters or

21   fire officers to the chief privacy officer?

22       A      Yes.

23       Q      When did that occur?

24       A      Before a request for years' worth

25   of disciplinary records, we asserted 50-a,

1                    SHERYL MONTOUR

2    however, but we did provide aggregate

3    information.

4        Q       There was a little interference in

5    the middle of that answer, but I think I got

6    it.

7                Do I have it correct that you

8    received a request for years' worth of

9    disciplinary records?

10       A       It was for disciplinary and EEO

11   records.  So we -- I conferred with him,

12   requested the data, but we only ended up

13   releasing aggregate information.  Disciplinary

14   -- disciplinary records are protected under

15   50-a.

16       Q       And what was the -- can you

17   describe what the aggregate information that

18   you produced consisted of?

19       A       Literally, just substantiated,

20   unsubstantiated, and I remember there was a

21   chunk that we didn't know what the outcome

22   was.  But it was very limited.  It literally

23   was just year, substantiated, unsubstantiated,

24   I believe, and the numbers that we didn't know

25   what happened because there are some files

1                    SHERYL MONTOUR

2  because it was -- I think it was a decade or

3  two decades worth of information and our

4  document system wasn't up to date.  So we

5  couldn't provide the final outcome.  So some

6  of them were unknown, is what we called it.

7       Q       Can you clarify generally when

8  this request was received or specifically, if

9  you know?

10      A       I know it came in before I

11 started, and because we're typically

12 backlogged, it wasn't responded to and

13 escalated to litigation after I started,

14 pretty much right after I started, I believe.

15      Q       Did the request call for

16 disclosure of actual disciplinary records of

17 members of service?

18      A       As they requested, yes, but we

19 asserted 50-a.

20      Q       And did you do so in written

21 communication to the requester?

22      A       Yes.

23      Q       And did you provide a basis for

24 denying the requests, at least as to the

25 actual disciplinary records, other than

1                    SHERYL MONTOUR

2    Section 50-a?

3         A         I don't -- I don't really recall,

4    but I don't think so.  Because that's one of

5    the exemptions that are in total.  So I -- I

6    would have to -- I just don't remember.  I

7    don't believe so, but I don't quite remember.

8         Q         Do you recall whether you consider

9    the potential privacy implications or the

10   applicability of the privacy exemption to the

11   request?

12        A         I don't understand the question.

13        Q         Are you familiar with the privacy

14   exemption to FOIL?

15        A         Yes.

16        Q         Do you recall whether you

17   considered the applicability of that exemption

18   to the request that we're discussing?

19        A         If you're asking in regards to

20   disciplinary records, no, because they're

21   exempt in whole, or they were at the time.

22        Q         And you mentioned that this

23   request was a few years ago.  Have you or has

24   the department received a request for

25   disciplinary records since the repeal of 50-a?

Page 27

                    SHERYL MONTOUR

1

2       A       I believe there has been a couple,

3   but I'm backlogged and still dealing with

4   requests from 2019.  So they're not -- other

5   than acknowledging them, I haven't started

6   working on them.

7       Q       How long does it typically take

8   the fire department to respond to a FOIL

9   request?

10      A       It takes at least three to six

11  months, but really with our backlog, there are

12  things that take a whole year or more.

13      Q       So when you are operating with a

14  backlog, do certain requesters ever jump to

15  the front of the line or closer to the front

16  of the line for one reason or another?

17      A       Sometimes.  However, it typically

18  has to deal with if someone -- if there was a

19  fire and someone ahead of the line had

20  requested the same fire report, my assistants

21  would get it from tracking multiple requests.

22  So if someone at a hundred requested an

23  incident and someone at 5,000, when I'm

24  closing it, I'll close both because they

25  requested the same report.  Sometimes,

1                   SHERYL MONTOUR

2    depending on urgency, we can escalate FOIL

3    requests -- basically, it comes from the

4    executive floor to escalate, then I'll

5    escalate, but I don't otherwise, typically.

6        Q       Just to make sure I got your

7    testimony right, did you say that if it comes

8    from the executive floor you'll escalate?

9        A       If there's an urgency and they

10   express that, you know, that information is

11   needed as soon as possible, then yes.

12       Q       Do you ever prioritize certain

13   requests based upon the identity of the

14   requester?

15       A       Not typically.

16       Q       Does the FOIL unit at the fire

17   department take any steps to ensure that its

18   responses under FOIL are consistent with the

19   types of responses provided by other City

20   agencies?

21               MS. QUINN:  Objection.

22               You can answer.

23               THE WITNESS:  I don't think I

24       understand.  Could you repeat it?

25               ///

Page 29

1                    SHERYL MONTOUR

2    BY MR. NORTH:

3        Q       I'm happy to rephrase it.  Sure.

4                You have counterparts at other

5    City agencies who also are responsible for

6    responding to FOIL requests.

7        A       Right.

8        Q       Is that fair to say?

9        A       That is.

10       Q       Does the FOIL unit at the fire

11   department take any steps to ensure that the

12   way that the fire department responds to FOIL

13   requests is consistent with how other City

14   agencies respond to FOIL requests?

15       A       No.  I'm not sure how I would --

16   no.  I don't think we do, because you wouldn't

17   know if another agency received the same

18   request.  There was a committee at the mayor's

19   office where we would meet and discuss FOIL

20   issues.  That was about as far as I could say

21   without conferring with other record access

22   officers.

23       Q       Does the committee that you just

24   referenced have a name?

25       A       I don't -- I think it was maybe

1              SHERYL MONTOUR

2  the mayor's office FOIL committee -- I don't

3  know what it was called, actually.  I don't

4  know.

5      Q      And are you using the past tense

6  because that committee no longer exists?

7      A      It was more like meetings that

8  they were having.  I don't want to necessarily

9  categorize it as an official committee, but

10  the mayor's office for a while, they were --

11  was having all the -- inviting several record

12  access officers from different agencies to

13  meet and discuss the varying issues that we

14  come across and seeing if we could help each

15  other in guidance.  But I have not -- they

16  have not had a meeting, to my knowledge, for

17  probably almost a year.

18      Q      I'm sorry.  Did you say almost a

19  year?

20      A      Yeah.  At least I haven't been

21  invited if there was.

22      Q      Did you ever attend one of these

23  meetings and discuss the disclosure of

24  disciplinary records?

25      A      No.

1                    SHERYL MONTOUR

2       Q       Was the topic of the correct

3   application of the privacy exemption to FOIL

4   ever discussed at these meetings?

5       A       Just to clarify, when you say "the

6   privacy exemption," you mean the unwarranted

7   invasion of privacy?

8       Q       Yes, and I apologize.  I am using

9   a shorthand, but you have it right.

10      A       I can't recall any specific

11  discussion, but it comes up often.  So I would

12  rather say I don't recall, but all of

13  it's . . .

14      Q       So when you say that it comes up

15  often, are you referring to the committee

16  meetings that we were just discussing or other

17  circumstances when that subject comes up?

18      A       I would say it's the exemption I

19  use the most, and probably most FOIL officers.

20      Q       And what are the circumstances in

21  which you use the privacy exemption?  Can we

22  agree to call it the privacy exemption and

23  we'll know that we're talking about what you

24  just referred to as the unwarranted invasion

25  of privacy?

1                    SHERYL MONTOUR

2       A        Agreed.

3                 Mainly PII is what I use it for,

4    personally identifiable information.

5       Q        Thank you.

6                 Are there any other circumstances

7    in which the privacy exemption is discussed?

8                 MS. QUINN:  Objection.

9                 You can answer.

10                THE WITNESS:  Not in particular.

11                CERTIFIED STENOGRAPHER:  I'm

12      sorry?

13   BY MR. NORTH:

14      Q        Have you discussed --

15      A        Not in particular.

16      Q        Have you discussed the correct

17   application of the privacy exemption to a

18   request for firefighter disciplinary records

19   with anyone?

20                MS. QUINN:  Objection.

21                I would just like to instruct the

22      witness only to answer that question as it

23      doesn't infringe on attorney-client

24      privilege.  But you can answer.

25                THE WITNESS:  Can you repeat it

 1                   SHERYL MONTOUR

 2      now?

 3   BY MR. NORTH:

 4      Q      Yes.  And just to clarify,

 5   whenever I ask a question that in your mind

 6   could potentially implicate something that is

 7   privileged, I'm not calling for you to provide

 8   anything that you consider to be privileged.

 9   But I would like to know whether you have

10   discussed the correct application of the

11   privacy exemption to a request for firefighter

12   disciplinary records with anyone.

13                   MS. QUINN:  Objection.

14                   You can answer.

15                   THE WITNESS:  Not necessarily,

16        because up until recently, I wasn't allowed

17        to give them out.  So I would just say

18        "50-a," and that would be the end of it.  I

19        haven't had to request it or review it

20        because, again, it was wholly exempt.  And

21        since the repeal, other than this matter,

22        no, I have not necessarily discussed it.

23   BY MR. NORTH:

24      Q      And when you say "other than this

25   matter," you're referring to discussions with

1                    SHERYL MONTOUR

2    counsel in this matter?

3        A      In -- yes.

4        Q      Have you had discussions with

5    anyone other than counsel in this matter

6    regarding the correct application of the

7    privacy exemption in light of the repeal of

8    50-a?

9        A      No.

10        Q      Let's take a look at Tab 26,

11    please.  I'm going to have a document that

12    should show up on your screen, and we'll try

13    to make it as easy to read as possible.  This

14    is the Citywide Privacy Protection Policies

15    and Protocols.

16               Are you familiar with this

17    document?

18        A      Yes, I've seen it before.

19               MR. NORTH:  I'd like to introduce

20    this document as mark it as Exhibit A --

21    I'm sorry.  Exhibit 1.

22               (Exhibit Number 1, Citywide

23            Privacy Protection Policies and

24            Protocols, dated 1/28/19,

25            Bates-stamped DEF_UFOA_001944 -

```
 1                    SHERYL MONTOUR

 2            1981, was marked for

 3            identification.)

 4   BY MR. NORTH:

 5       Q      Do you use this document in

 6   referring -- in responding to FOIL requests?

 7       A      I don't typically refer to it.

 8       Q      Are you familiar with the model

 9   protocols for handling third-party requests

10   for information held by City agencies?

11       A      I know I've reviewed it in the

12   past, but I don't want to say I'm proficient

13   at it.  But from what I --

14              (Indiscernible crosstalk.)

15       Q      Let's go to -- I'm sorry.  I cut

16   you off.  Please continue.

17       A      That's it.  You can continue.

18              MR. NORTH:  Let's go to the page

19       that ends in 1954, and we'll try to enlarge

20       that highlighted Section 1.5.5 which

21       references those model protocols.

22   BY MR. NORTH:

23       Q      The second sentence says:  "The

24   Model Protocols set forth a factual and legal

25   assessment process which agencies must follow
```

Page 36

 1                    SHERYL MONTOUR
 2    when handling a request from a third party for
 3    City information, including but not limited to
 4    identifying information."
 5              Does the department follow the
 6    model protocols?
 7         A    I believe so.  If this -- if
 8    you're asking me do we do what this line you
 9    just repeated states, yes.
10         Q    I think there's something covering
11    your camera.
12         A    Oh.
13         Q    It may just be your hand.  Sorry.
14         A    Yeah, it was.
15         Q    And are you familiar with the
16    factual and legal assessment process that's
17    required by the model protocols?
18         A    I'm going to just reiterate,
19    typically I -- when I get a request, I review
20    the law committee and case law.  I don't think
21    my procedures differ, but I don't want to say
22    I'm referring to this document when responding
23    to a FOIL request because I am not.
24         Q    Do you understand whether or not
25    the model protocols are relevant to the

1                   SHERYL MONTOUR

2    department's consideration of FOIL requests?

3                   MS. QUINN:  Objection.

4                   You can answer.

5                   THE WITNESS:  Can you repeat the

6       question?

7    BY MR. NORTH:

8       Q       Sure.

9               Do you have an understanding of

10   whether or not the model protocols are

11   relevant to the department's consideration of

12   FOIL requests?

13      A       I would venture to say yes because

14   it deals with confidentiality.

15      Q       And do they also deal with the

16   proper handling of third-party requests for --

17   for the information?

18      A       I don't understand the question.

19   Repeat it, please.

20      Q       Sure.

21              You mentioned that you would

22   venture to say that the department does follow

23   the model protocols to the extent they deal

24   with confidentiality, and I also wanted to

25   know whether you understand the model

Page 38

1                    SHERYL MONTOUR

2     protocols to be relevant to the proper

3     handling of third-party requests for

4     information.

5          A       Yes.

6          Q       I'm sorry.  Did you say yes?

7          A       I said yes, yes.

8          Q       Okay.  Thank you.

9                  The last sentence of this

10    highlighted portion, do you see where it says:

11    "Agencies must either adopt the model

12    protocols in their entirety, or develop and

13    adopt a comparable protocol"?

14         A       Yes.

15         Q       Has the fire department adopted

16    the model protocols in their entirety?

17         A       I believe so, but I think that

18    question might be best for the chief privacy

19    officer.

20         Q       Do you understand the functions of

21    the chief privacy officer to relate to the

22    disclosure of information to third parties?

23         A       Repeat the question.

24         Q       Do you understand the functions of

25    the chief privacy officer at the fire

1                    SHERYL MONTOUR

2    department to relate to the disclosure of

3    information to third parties?

4        A        I work with the chief privacy

5    officer, and he directs me.  But I don't think

6    I understand the question enough to answer it.

7        Q        Okay.  Sure.  I'm happy to

8    rephrase it or come at it from a different

9    angle.

10               So you testified that you believe

11   that the model protocols have been adopted by

12   the agency but that that question might be

13   best suited for the chief privacy officer.

14               Do I have that right?

15       A        Yes.

16       Q        And you previously testified that

17   you are the supervisor of the FOIL unit.

18               Do I have that right?

19       A        Yes.

20       Q        As the supervisor of the FOIL

21   unit, are you responsible for handling

22   requests from third parties for City

23   information?

24       A        Yes.

25       Q        But as the supervisor of the FOIL

Page 40

1                    SHERYL MONTOUR

2    unit, you can't say one way or the other

3    whether the department has adopted the model

4    protocols?

5         A       I would say I believe that they

6    have adopted the model protocols because this

7    is the privacy guidance.  When I went

8    searching for -- asking for documentation,

9    this is the documentation that we provided for

10   these cases to the guidelines that we follow.

11   So actually, yes, we have adopted them.

12        Q       Thank you.

13                And when this document refers to

14   the model protocols as governing requests,

15   including but not limited to identifying

16   information, do you understand the other

17   things that the model protocols -- do you have

18   an understanding of what the other things that

19   the model protocols relate to?

20        A       PII, HIPAA, and confidentiality.

21        Q       Do the model protocols govern the

22   proper application of the privacy exemption to

23   FOIL?

24        A       I believe it covers the things we

25   should consider as PII.

Page 41

1                    SHERYL MONTOUR

2        Q        And PII is encompassed within

3    identifying information.   Would you agree?

4        A        Yes.

5        Q        Does the department have any other

6    written policies that guide you in determining

7    how to respond to a FOIL request?

8                    MS. QUINN:   Objection.

9                    You can answer.

10                   THE WITNESS:   No.

11   BY MR. NORTH:

12       Q        I want to go back to a topic that

13   you touched on before, which is the

14   file-by-file review of the records that you

15   performed, and then discuss that in the

16   context of the specific FOIL exemptions.

17                   Do you perform a file-by-file

18   review of requested records to determine

19   whether they are responsive to a particular

20   request?

21       A        Yes.

22       Q        Do you perform a file-by-file

23   review of requested records to determine

24   whether the privacy exemption applies to a

25   particular record that is requested?

Page 42

1                    SHERYL MONTOUR

2        A       Yes.

3        Q       Do you perform a file-by-file

4   review of requested records to determine

5   whether the safety exemption applies to a

6   particular record that is requested?

7        A       Yes, when it applies.

8        Q       Did you perform --

9        A       Because I --

10       Q       -- a file-by-  --

11               (Indiscernible crosstalk.)

12       A       -- exemptions on a case-by-case

13  basis, I use whatever exemptions are within

14  the law as it applies on a case-by-case basis.

15       Q       And is it fair to say that you

16  perform that analysis by looking at the

17  records themselves?

18       A       Yes.

19       Q       Do some types of records within a

20  particular category of records implicate some

21  exemptions even if others in that category do

22  not implicate those exemptions?

23       A       I don't think I understand the

24  question.

25       Q       Sure.  I'm happy to rephrase it.

1                    SHERYL MONTOUR

2      It was a bit abstract.

3                    So if you're looking at a

4      particular category of records that has been

5      requested and you have multiple records that

6      are responsive, is it possible that those

7      multiple records may each implicate different

8      exemptions such that you would need to

9      withhold one under the privacy exemption,

10     disclose another, withhold another under the

11     safety exemption, etc.?

12         A       Yes.  That's the line-by-line

13     part.  Yes.

14         Q       And then making this just a bit

15     more specific and going back to the topic of

16     disciplinary records, just to clarify, has the

17     department ever received records requests

18     under FOIL for disciplinary records that would

19     encompass unsubstantiated or unfounded

20     allegations?

21                    MS. QUINN:  Objection.

22                    You can answer.

23                    THE WITNESS:  Is the question have

24         I reviewed requests for disciplinary

25         records?  I don't quite --

Page 44

1                    SHERYL MONTOUR

2    BY MR. NORTH:

3         Q       The question is slightly -- sure.

4    The question is slightly different, and that

5    is:  Has the department ever received records

6    requests under FOIL for disciplinary records

7    where those requests would encompass

8    unsubstantiated or unfounded allegations?

9         A       Because up until now, whenever I

10   received a request for disciplinary records, I

11   actually haven't seen any because there's no

12   reason for me to see any because 50-a applied,

13   which exempt them in whole.

14        Q       And when you say "up until now,"

15   you're talking about up until the repeal of

16   50-a?

17        A       Correct.

18        Q       And since the repeal of 50-a, have

19   you had occasion to consider whether a

20   disciplinary records request encompassing

21   unsubstantiated or unfounded allegations

22   should be granted or denied?

23                MS. QUINN:  Objection.

24                You can answer.

25                THE WITNESS:  Not as of yet, no.

Page 45

1                    SHERYL MONTOUR

2                    CERTIFIED STENOGRAPHER:  I'm

3      sorry?

4                    THE WITNESS:  No, not as of yet.

5      BY MR. NORTH:

6       Q       Just speaking more generally about

7      your application of the privacy exemption to

8      any requests for records of the fire

9      department, can you please explain for me how

10     the department determines whether the

11     disclosure of a particular record could

12     constitute an unwarranted invasion of privacy.

13      A       Okay.  So the quickest answer is,

14     does it involve PII or HIPAA; and then in

15     other respects, it's just the content of the

16     actual record.  In instances where on a 911

17     call if it involves a sexual assault of some

18     sort -- we don't typically remove the reason

19     for the call.  On that particular instance, we

20     would because it's unwarranted invasion of

21     privacy on that level.  So that's an example.

22      Q       And does the department ever

23     consider what -- I'm sorry.  Did you say

24     something?

25      A       Go ahead.

Page 46

1                    SHERYL MONTOUR

2        Q      Does the department ever consider

3   whether it is proper to withhold, under the

4   privacy exemption, information that could harm

5   the reputation of a member of service?

6        A      Harm?  Not in particular, no.  I'm

7   sure if it came up I would consider it, but

8   have I had the occasion to?  Not as of yet,

9   no.

10       Q      In the context of firefighter

11  personnel records, are there any records that

12  would be properly withheld under the privacy

13  exemption because the release could harm the

14  reputation of the member of service

15  identified?

16              MS. QUINN:  Objection.

17              You can answer.

18              THE WITNESS:  Can you repeat the

19     question?

20  BY MR. NORTH:

21       Q      Sure.  Well, let me ask just a

22  slightly more -- a slightly more specific and

23  less-abstract -- less-abstract question.

24              Have you ever considered whether

25  the release of unsubstantiated allegations

```
 1                    SHERYL MONTOUR
 2    against firefighters contained in their
 3    personnel records could harm the reputations
 4    of those firefighters?
 5              MS. QUINN:  Objection.
 6              I'm just going to instruct the
 7         witness only to answer that question to the
 8         extent it doesn't infringe on
 9         attorney-client privilege.
10              THE WITNESS:  Because of 50-a, I
11         have not had to review such record to make
12         that determination in regards to
13         disciplinary or firefighter personnel
14         records.
15    BY MR. NORTH:
16         Q      And I understand that you haven't
17    been confronted with a particular request that
18    would require you to make that determination.
19    My question was slightly different, and that
20    is whether the department has considered the
21    possibility that the release of
22    unsubstantiated allegations against
23    firefighters could harm their reputations.
24              MS. QUINN:  Objection.
25              I'm just going to instruct the
```

1                    SHERYL MONTOUR

2        witness only to answer that question to the

3        extent it doesn't infringe on

4        attorney-client privilege.

5                    THE WITNESS:  Okay.  Taking out

6        the reputation aspect of your question,

7        we've had -- we've had FOIL requests that

8        deal with EEO matters, and in those cases,

9        I've had to consider it.  However, thus

10       far, we -- I've provided aggregate

11       information and have not yet had to produce

12       actual records.  So it takes out the part

13       of the harm because I'm giving aggregate

14       Excel-type information that just has title,

15       the particular -- but yes, that's my

16       answer.  Actually, that's it.

17  BY MR. NORTH:

18       Q       Okay.  And just to check that I

19  understand that answer, when you started that

20  answer by saying "taking out the reputation

21  aspect of your question," what do you mean by

22  that?

23       A       I follow the rule, what FOIL

24  suggests under the law, but I just haven't had

25  to actually consider that particular aspect

Page 49

1                    SHERYL MONTOUR

2    because I've been providing aggregate

3    information and haven't had to release actual

4    records.  And that would come into play when I

5    had to review actual records.  But I just --

6         Q        When you say actual --

7         A        Uh-huh.

8         Q        I'm sorry.  I cut you off.  Please

9    finish.

10        A        Because it's just I -- to my

11   understanding, I didn't like the term

12   "reputation" -- it's not that I didn't like

13   it.  I just don't quite understand.  But it's

14   a privacy matter, and so if I had received a

15   request, I would consider substantiated or

16   unsubstantiated, but I'd follow the guidance

17   that's been provided either through case law

18   or the committee, which I think has opinions

19   out there on the topic.

20        Q        Okay.  And I'm sorry if my

21   question about reputation was unclear, but I

22   can try to be a little bit more specific.

23                 My question was whether the

24   department has considered whether the release

25   of unsubstantiated allegations against

Page 50

1                    SHERYL MONTOUR

2      firefighters could harm the good name of the

3      firefighters who were identified.

4                    MS. QUINN:  Objection.

5                    I'm going to instruct the witness

6          only to answer that question to the extent

7          it doesn't infringe on attorney-client

8          privilege.

9                    THE WITNESS:  I would say that

10         from my -- from my knowledge and

11         understanding, the case law on this is

12         the -- if it's unsubstantiated, the

13         identity of the party would not be

14         released.

15     BY MR. NORTH:

16         Q      Okay.  Does the department track

17     FOIL requests and responses using a computer

18     system or database of some kind?

19         A      We use the New York City

20     OpenRecords database.

21         Q      And is that where you store or log

22     all of the incoming requests and the outgoing

23     responses?

24         A      If it's not mail, yes.  We track

25     them all through the system, but the responses

Page 51

1                    SHERYL MONTOUR

2    aren't necessarily all in the system because

3    sometimes you have to mail out the responses.

4    But they're all tracked through there, yes,

5    and it will indicate --

6         Q      And are you able to -- I'm sorry.

7    I cut you off again.  I think you said "it

8    will indicate"?

9         A      Yes.  It'll indicate that I mailed

10   it when I close it, but you won't -- the

11   record wouldn't be there necessarily.

12        Q      Are you able to call up past

13   requests or response letters based upon

14   whether the request was granted or denied?

15        A      In the system?

16        Q      In the system.

17        A      I believe so.

18        Q      And does the department forward

19   copies of denial letters to the law

20   department?

21        A      Typically, no.  Why would you do

22   that?

23        Q      You're not aware of any legal

24   requirement that agencies in New York City

25   forward copies of denial letters to the law

Page 52

1                    SHERYL MONTOUR

2     department?

3        A       Not that I'm aware of, no.

4                MR. NORTH:  Let's call up Tab 5,

5        please, and I believe that will become

6        Exhibit 2.

7                    (Exhibit Number 2, Letter from

8                Rebecca G. Quinn and Dominique

9                Saint-Fort to Judge Failla dated

10               7/25/20, was marked for

11               identification.)

12    BY MR. NORTH:

13       Q       I don't imagine you've seen this

14    document before, but please tell me if you

15    have.

16       A       Can we enlarge it?

17       Q       This is a letter from the City of

18    New York law department to the United States

19    District Court in this matter, and I just

20    wanted to call your attention to page 2.

21    There's some highlighted language here.  One

22    moment.  I'm finding my place.

23               MR. NORTH:  I just want to

24       confirm, Matt, that this is Tab 5.

25               I'm sorry.  Bear with me one

Page 53

1                SHERYL MONTOUR

2       moment.

3                THE WITNESS:  Okay.

4                MR. NORTH:  I'm just having an

5       exhibit issue.  Would this be a good time

6       to take just a two-to-three-minute break?

7       Would that be all right with everyone?

8                MS. QUINN:  That's fine with us.

9                THE WITNESS:  That's fine.

10               MS. QUINN:  Sheryl, you can turn

11      your camera off and go mute.

12               THE VIDEOGRAPHER:  We're off

13      record at 12:32 p.m.

14                (Break taken from 12:32 p.m. to

15          12:35 p.m.)

16               THE VIDEOGRAPHER:  We are back on

17      record at 12:35 p.m.

18               MR. NORTH:  Okay.  Sorry for that

19      brief delay, but we're just going to look

20      at a different document, which I'll

21      introduce the next exhibit.  This is

22      another letter from the City of New York

23      Law Department to the United States

24      District Court dated July 30th, 2020.

25                And if we could just go, please,

Page 54

```
 1                 SHERYL MONTOUR

 2      to the second page.  There's a paragraph

 3      that begins with "FDNY."  And blow that up

 4      a little bit.

 5   BY MR. NORTH:

 6      Q      Could you just take a moment to

 7   read that paragraph.

 8      A      (Reviewing document.)

 9             CERTIFIED STENOGRAPHER:  Is this

10      being marked as Exhibit 3?

11             MR. NORTH:  Yes, thank you.

12             (Exhibit Number 3, Letter from

13         Dominique Saint-Fort and Rebecca G.

14         Quinn to Judge Failla dated

15         7/30/20, was marked for

16         identification.)

17   BY MR. NORTH:

18      Q      And just let me know when you're

19   finished reading that paragraph, please.

20      A      Will do.  Almost.

21      Q      Thank you.

22      A      (Reviewing document.)

23             Okay.

24      Q      My one question for you on this is

25   the sentence midway through the paragraph
```

Page 55

```
 1                    SHERYL MONTOUR

 2     that's highlighted:  "Additionally, the Bureau

 3     of Legal Affairs FOIL Unit does not track

 4     requests by whether they were granted or

 5     denied, or the reason they were denied."

 6              Is it accurate that you previously

 7     testified that you are able to call up in the

 8     OpenRecords system requests based upon the

 9     disposition of the request?

10     A       One by one, yes.

11     Q       Okay.  Do you agree with this

12     highlighted sentence that your unit at the

13     fire department does not track requests by

14     whether they were granted or denied?

15     A       We don't track it that way, nor

16     does the system that we use on OpenRecords

17     allow us to pull up requests by the

18     determination.  We would have to type in the

19     FOIL number into the system.  It would pull up

20     that particular request.  We would click into

21     it.  And when we enter, we would see what --

22     if it was granted or not granted.  After

23     actually it loads entirely, at the bottom it

24     would tell us what happened.  So it would have

25     to be done one by one.
```

Page 56

1                    SHERYL MONTOUR

2      Q       Okay.  Thank you for clarifying

3   that.

4      A       You're welcome.

5              MR. NORTH:  We can drop this

6        exhibit, please.

7   BY MR. NORTH:

8      Q       Let's go back to talking about the

9   Committee on Open Government for a moment,

10  please.

11             Would you describe the committee

12  as the statewide executive authority on the

13  scope and application of FOIL by agencies in

14  New York?

15             MS. QUINN:  Objection.  Asked and

16        answered.

17             You can answer.

18             THE WITNESS:  They're the body in

19        place to provide agencies with guidance,

20        but that guidance is non -- not necessarily

21        binding because FOIL allows permissive, and

22        it's up to the agency.

23             MR. NORTH:  And let's call up one

24        of their advisory opinions.  It's Tab 14,

25        and we'll mark it for this deposition as

Page 57

1              SHERYL MONTOUR

2      Exhibit 4.

3                  (Exhibit Number 4, Opinion of

4              the Committee on Open Government,

5              FOIL AO 19775, dated 7/27/20, was

6              marked for identification.)

7                  MR. NORTH:  Matt, are you able to

8      call up Tab 14?  Thank you.  If we can go

9      down to the next page.

10  BY MR. NORTH:

11      Q      In the final paragraph, there is a

12  sentence that's highlighted, and it says:  "In

13  light of the repeal of 50-a, a request for

14  disciplinary records relating to a police

15  officer must be reviewed in the same manner as

16  a request for disciplinary records of any

17  other public employee."

18                  Do you see that sentence?

19      A      Can we enlarge, please?

20      Q      Yes.

21      A      Thank you.  Okay.

22                  Okay.  What is the question again?

23      Q      Is this -- is this consistent with

24  the department's views on the proper handling

25  of a FOIL request in light of the repeal of

Page 58

1                    SHERYL MONTOUR

2    50-a?

3                    MS. QUINN:  Objection.

4                    I'm just going to instruct the

5         witness not to answer this question to the

6         extent it infringes on attorney-client

7         privilege.

8    BY MR. NORTH:

9         Q       And to be clear, I'm not asking

10   for any privileged information, and you should

11   not disclose privileged information in

12   responding to any question that I ask.  But I

13   am asking about the nonprivileged subject of

14   the department's views or policies on the

15   proper treatment of a request for disciplinary

16   records in light of the repeal of 50-a, which

17   does not inherently call for a privileged

18   answer.  So please do --

19                    MS. QUINN:  And my objection

20        stands.  That answer may very well

21        implicate things that were discussed that

22        are subject to attorney-client privilege.

23        So the instruction to the witness remains.

24                    You may answer that question to

25        the extent it doesn't infringe on

Page 59

1                    SHERYL MONTOUR

2       attorney-client privilege.

3                THE WITNESS:  Okay.  Yes, this

4       would be my understanding.  With the repeal

5       of 50-a, I would treat these records

6       similar to other FOIL requests and apply

7       the FOIL law on a case-by-case basis, line

8       by line.

9                MR. NORTH:  Okay.  I think that's

10      all we're going to use this document for.

11      So we can take the exhibit down.

12   BY MR. NORTH:

13      Q     What is department's position as

14   to whether unsubstantiated allegations are

15   disclosable under FOIL?

16                MS. QUINN:  Objection.

17                I'm just going to instruct the

18      witness not to answer to the extent it

19      infringes on attorney-client privilege.

20                THE WITNESS:  I don't believe we

21      have necessarily a policy.  I would request

22      the file, and when I receive the file, I'll

23      review it.  But I -- from my FOIL

24      knowledge, for an unsubstantiated matter, I

25      wouldn't be providing any PII of anyone.

Page 60

1                    SHERYL MONTOUR

2    BY MR. NORTH:

3        Q      Do you understand the privacy

4    exemption of FOIL to be broader or different

5    in character from laws that regulate the

6    disclosure of PII?

7                MS. QUINN:  Objection.

8                You can answer.

9                THE WITNESS:  I don't understand

10       the question.

11   BY MR. NORTH:

12       Q      Sure.  So just backing up and

13   taking this step by step, you said that from

14   your FOIL knowledge, for an unsubstantiated

15   allegation, you wouldn't be providing PII of

16   anyone, and my question is whether you

17   understand the privacy exemption to apply to

18   more than just PII.

19       A      Yes.

20       Q      And . . .

21              Sorry for the delay.  I'm just

22   catching up with the transcript here.

23              Has the department discussed

24   changing its policies or practice with regard

25   to the disclosure of disciplinary records in

```
 1                    SHERYL MONTOUR
 2    light of the repeal of 50-a?
 3              MS. QUINN:  Objection.
 4              THE WITNESS:  Not to -- go ahead.
 5              MS. QUINN:  I would just -- you
 6       know, just note my objection that I'm
 7       instructing the witness not to answer this
 8       question to the extent it would reveal
 9       information that is protected by the
10       attorney-client privilege.
11              THE WITNESS:  Thank you.
12              To my knowledge, we have not, as
13       of yet, discussed it.  At least I haven't
14       been party to any discussions.
15    BY MR. NORTH:
16       Q      Okay.  All right.  If you can give
17    me just a few moments, I think I'm done for
18    the day, but I just wanted to make sure.
19       A      Okay.
20       Q      Thank you.
21              THE VIDEOGRAPHER:  Do you want me
22       to stay on record for that or go off?
23              MR. NORTH:  That's fine.  I don't
24       think we're going to run out of time.
25              Okay.  That is all the questions I
```

Page 62

```
 1                    SHERYL MONTOUR
 2       have for you today, Ms. Montour, and I
 3       appreciate your time today.  I appreciate
 4       the time that it took you to prepare for
 5       this deposition, which I'm sure was
 6       significant.  So thank you very much for
 7       that.
 8                    I would just like to repeat on the
 9       record for counsel plaintiff's request that
10       the model protocols, as well as any
11       agency-specific adaptations of those
12       protocols or substantially similar
13       protocols, be produced by the close of
14       business today, which is the close of
15       discovery, to the extent they haven't been
16       produced yet.
17                    MS. QUINN:  Thank you very much,
18       and we will take that under advisement.
19                    MR. NORTH:  Okay.  Thank you,
20       everybody, for your time today.
21                    MS. QUINN:  Thank you so much.
22                    Sheryl, thank you.
23                    MS. SAINT-FORT:  Thank you.
24                    MS. QUINN:  Evan, thank you very
25       much.
```

1                SHERYL MONTOUR

2            MS. SAINT-FORT:  Thank you very

3     much.

4            THE VIDEOGRAPHER:  This concludes

5     the deposition of Sheryl Montour.  Going

6     off record at 12:48 p.m. Eastern Time.

7            CERTIFIED STENOGRAPHER:  Does

8     everyone want the same order on the

9     transcript as yesterday?

10           MS. QUINN:  Yes.  Thank you,

11    Rhonda.

12           MR. NORTH:  Yes.  Thank you.

13             (Concluded at 12:49 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6      _____

7      SHERYL MONTOUR

8

9

10     Subscribed and sworn to before me

11     this ___ day of _____, 2020.

12

13     _____

14     (Notary Public)

15

16     My Commission

17     expires:_____

18

19

20

21

22

23

24

25

Page 65

```
 1                CERTIFICATE OF OATH

 2

 3   STATE OF FLORIDA

 4   COUNTY OF POLK

 5

 6        I, the undersigned authority, certify

 7   that SHERYL MONTOUR remotely appeared before

 8   me and was duly sworn.

 9

10        WITNESS my hand and official seal this

11   9th day of August, 2020.

12

13

14

15   _____

16   Rhonda Hall-Breuwet, RDR, CRR, LCR, CCR, FPR

17   Notary Public - State of Florida

18   My Commission Expires:  9/28/23

19   Commission No. GG 360849

20

21

22

23

24

25
```

Page 66

1                   C E R T I F I C A T E

2    STATE OF FLORIDA:

3

4         I, RHONDA HALL-BREUWET, RDR, CRR, LCR,

5    CCR, FPR, stenographic shorthand reporter, do

6    hereby certify:

7         That the witness whose deposition is

8    hereinbefore set forth was duly sworn, and

9    that such deposition is a true record of the

10   testimony given by such witness.

11        I further certify that I am not related

12   to any of the parties to this action by blood

13   or marriage, and that I am in no way

14   interested in the outcome of this matter.

15        IN WITNESS WHEREOF, I have hereunto set

16   my hand this 9th day of August, 2020.

17

18   _____

19   RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

20   Stenographic Shorthand Reporter

21

22

23

24

25

Page 67

1    ERRATA SHEET FOR THE TRANSCRIPT OF:

2    Case Name: UNIFORMED FIRE OFFICERS
     ASSOCIATION, et al. V. BILL de BLASIO, et al.
3    Dep. Date: August 7, 2020
     Deponent:  SHERYL MONTOUR
4                  CORRECTIONS:

5    Pg.   Ln.   Now Reads      Should Read    Reason

6    ____  ____  _____  _____   _____

7    ____  ____  _____  _____   _____

8    ____  ____  _____  _____   _____

9    ____  ____  _____  _____   _____

10   ____  ____  _____  _____   _____

11   ____  ____  _____  _____   _____

12   ____  ____  _____  _____   _____

13   ____  ____  _____  _____   _____

14   ____  ____  _____  _____   _____

15   ____  ____  _____  _____   _____

16   ____  ____  _____  _____   _____

17

18                 _____

19                 Signature of Deponent

20   SUBSCRIBED AND SWORN BEFORE ME

21   THIS _____ DAY OF _____, 2020

22

23   _____

24   (Notary Public)  MY COMMISSION EXPIRES: _____

25

**A**

**able** 51:6,12 55:7
57:7
**abstract** 43:2
**access** 11:6 29:21
30:12
**accurate** 17:14,15
55:6
**acknowledged** 8:23
**acknowledging**
27:5
**action** 66:12
**actual** 14:22 25:16
25:25 45:16 48:12
49:3,5,6
**adaptations** 62:11
**Additionally** 55:2
**admin** 16:6 22:20
**administration**
16:18
**adopt** 38:11,13
**adopted** 38:15
39:11 40:3,6,11
**advisement** 62:18
**advisory** 15:18
17:18 21:18,20
56:24
**Affairs** 55:3
**agencies** 28:20 29:5
29:14 30:12 35:10
35:25 38:11 51:24
56:13,19
**agency** 29:17 39:12
56:22
**agency-specific**
62:11
**aggregate** 24:2,13
24:17 48:10,13
49:2
**ago** 26:23
**agree** 9:18 12:12
31:22 41:3 55:11
**Agreed** 12:14 32:2
**ahead** 27:19 45:25
61:4
**al** 1:5,8 7:8,9 67:2,2
**allegation** 60:15

**allegations** 43:20
44:8,21 46:25
47:22 49:25 59:14
**allow** 20:20 55:17
**allowed** 33:16
**allows** 56:21
**Alvarez** 4:17 7:19
**Americas** 3:6
**analysis** 42:16
**angle** 39:9
**answer** 14:4 18:23
19:11,12 21:22
22:8 24:5 28:22
32:9,22,24 33:14
37:4 39:6 41:9
43:22 44:24 45:13
46:17 47:7 48:2
48:16,19,20 50:6
56:17 58:5,18,20
58:24 59:18 60:8
61:7
**answered** 17:13
56:16
**Anthony** 3:9 8:4
**anthony.coles@d...**
3:10
**AO** 6:13 57:5
**apologize** 9:24 31:8
**appeared** 65:7
**applicability** 26:10
26:17
**application** 31:3
32:17 33:10 34:6
40:22 45:7 56:13
**applied** 44:12
**applies** 21:5 41:24
42:5,7,14
**apply** 59:6 60:17
**appreciate** 62:3,3
**asked** 17:11 56:15
**asking** 26:19 36:8
40:8 58:9,13
**aspect** 48:6,21,25
**aspects** 19:19
**assault** 45:17
**asserted** 23:25
25:19

**assessment** 35:25
36:16
**assist** 12:9
**assistants** 27:20
**assists** 12:7
**Association** 1:5 7:8
67:2
**attend** 30:22
**attending** 7:15
**attention** 52:20
**attorney** 7:23
10:16 11:7,13
16:8
**attorneys** 3:3 4:1
12:21
**attorney-client**
32:23 47:9 48:4
50:7 58:6,22 59:2
59:19 61:10
**audio** 11:22
**August** 1:17 2:4 7:4
65:11 66:16 67:3
**authoritative** 18:7
**authority** 56:12
65:6
**available** 15:19
**Avenue** 3:6 23:13
**aware** 51:23 52:3
**a.m** 2:5 7:5

**B**

**B** 6:1
**back** 17:17 21:11
41:12 43:15 53:16
56:8
**backing** 60:12
**backlog** 27:11,14
**backlogged** 25:12
27:3
**based** 20:7 28:13
51:13 55:8
**basically** 28:3
**basis** 19:14,21
25:23 42:13,14
59:7
**Bates-stamped** 6:5
34:25

**bear** 14:18 52:25
**beginning** 7:22
**begins** 54:3
**behalf** 8:2 13:13
**believe** 15:17 17:12
24:24 25:14 26:7
27:2 36:7 38:17
39:10 40:5,24
51:17 52:5 59:20
**best** 13:6,10,11
38:18 39:13
**Bill** 1:8 7:9 67:2
**binding** 21:13
56:21
**bit** 43:2,14 49:22
54:4
**Blasio** 1:8 7:9 67:2
**blood** 66:12
**blow** 54:3
**body** 56:18
**boss** 23:2
**bottom** 55:23
**break** 10:13,14
53:6,14
**brief** 53:19
**broader** 60:4
**bulk** 19:16
**Bureau** 55:2
**business** 62:14
**busy** 12:25

**C**

**C** 3:1 66:1,1
**call** 19:19 25:15
31:22 45:17,19
51:12 52:4,20
55:7 56:23 57:8
58:17
**called** 25:6 30:3
**calling** 33:7
**camera** 36:11
53:11
**capacity** 11:14
12:20
**capture** 10:6
**case** 7:11 14:6
15:22 16:2 17:24

17:25 18:4,14
21:14,19,19 36:20
49:17 50:11 67:2
**cases** 21:7,9 40:10
48:8
**case-by-case** 19:14
19:21 42:12,14
59:7
**catching** 60:22
**categorize** 30:9
**category** 42:20,21
43:4
**CCR** 1:24 65:16
66:5,19
**certain** 27:14 28:12
**CERTIFICATE**
65:1
**Certified** 2:11,12
8:15 17:4 32:11
45:2 54:9 63:7
**certify** 65:6 66:6,11
**changing** 60:24
**character** 60:5
**check** 48:18
**chief** 22:25 23:3,8
23:21 38:18,21,25
39:4,13
**chunk** 24:21
**Church** 4:4
**circumstances**
22:16 31:17,20
32:6
**City** 4:3 10:25
16:18 28:19 29:5
29:13 35:10 36:3
39:22 50:19 51:24
52:17 53:22
**citywide** 6:4 14:13
14:15,17 34:14,22
**clarify** 15:10 25:7
31:5 33:4 43:16
**clarifying** 56:2
**clarity** 15:9
**clear** 19:5 58:9
**click** 55:20
**close** 27:24 51:10
62:13,14

**closer** 27:15
**closing** 27:24
**Coles** 3:9 8:4
**colleague** 8:9
**collectively** 13:15
**come** 30:14 39:8
   49:4
**comes** 19:20 22:10
   22:22 28:3,7
   31:11,14,17
**Commission** 64:16
   65:18,19 67:24
**committee** 6:12
   14:5,25 15:14
   17:18,20 18:3
   21:11,17 29:18,23
   30:2,6,9 31:15
   36:20 49:18 56:9
   56:11 57:4
**committee's** 18:6
**communication**
   25:21
**comparable** 38:13
**computer** 50:17
**Concluded** 63:13
**concludes** 63:4
**confer** 10:16
**conference** 7:20
**conferred** 24:11
**conferring** 29:21
**confidentiality**
   37:14,24 40:20
**confirm** 52:24
**confronted** 47:17
**confusing** 9:20,24
**consider** 18:6,9,11
   26:8 33:8 40:25
   44:19 45:23 46:2
   46:7 48:9,25
   49:15
**consideration** 37:2
   37:11
**considered** 23:17
   26:17 46:24 47:20
   49:24
**consisted** 24:18
**consistent** 19:8

22:6 28:18 29:13
   57:23
**constitute** 45:12
**consult** 14:24 15:18
   15:23
**contained** 47:2
**content** 45:15
**context** 41:16
   46:10
**continue** 35:16,17
**Continued** 3:25
**contract** 11:13
**control** 22:18,21,22
   22:24 23:2
**copies** 51:19,25
**Corporation** 8:7
**correct** 24:7 31:2
   32:16 33:10 34:6
   44:17
**CORRECTIONS**
   67:4
**counsel** 7:20 8:7,11
   34:2,5 62:9
**counterparts** 29:4
**COUNTY** 65:4
**couple** 27:2
**court** 1:1 2:11,12
   7:10 8:11,13 9:25
   52:19 53:24
**covering** 36:10
**covers** 40:24
**COVID-19** 7:16
**crosstalk** 35:14
   42:11
**CRR** 1:24 65:16
   66:4,19
**current** 11:5,14
**currently** 10:21
**cut** 14:2 35:15 49:8
   51:7

**D**

**D** 5:1
**data** 24:12
**database** 50:18,20
**date** 7:3 25:4 67:3
**dated** 6:5,8,11,13

34:24 52:9 53:24
   54:14 57:5
**day** 61:18 64:11
   65:11 66:16 67:21
**DC** 3:13
**de** 1:8 7:9 67:2
**deal** 27:18 37:15,23
   48:8
**dealing** 27:3
**deals** 37:14
**decade** 25:2
**decades** 25:3
**decision** 20:6
**DEFENDANT** 4:1
**defendants** 1:9 8:8
**deference** 17:19
**DEF_UFOA_001...**
   6:6 34:25
**delay** 53:19 60:21
**denial** 51:19,25
**denied** 44:22 51:14
   55:5,5,14
**denying** 25:24
**Dep** 67:3
**department** 4:3
   10:24 11:3,13,15
   12:11,13,17,22
   13:5,9 14:7,12
   16:12 18:18 19:6
   22:3,4 23:4 26:24
   27:8 28:17 29:11
   29:12 36:5 37:22
   38:15 39:2 40:3
   41:5 43:17 44:5
   45:9,10,22 46:2
   47:20 49:24 50:16
   51:18,20 52:2,18
   53:23 55:13 60:23
**department's**
   13:14 14:18 37:2
   37:11 57:24 58:14
   59:13
**depending** 28:2
**depends** 16:2
**Deponent** 67:3,19
**deposed** 9:8
**deposition** 1:15 2:8

7:6,13 10:12
   12:12 13:13 56:25
   62:5 63:5 66:7,9
**depositions** 9:11
**describe** 11:15
   24:17 56:11
**DESCRIPTION**
   6:3
**designated** 12:16
**determination**
   47:12,18 55:18
**determine** 18:16
   19:24 20:12,19,24
   21:5 41:18,23
   42:4
**determines** 45:10
**determining** 16:15
   16:16 17:21 41:6
**develop** 38:12
**differ** 18:4 36:21
**different** 19:4
   30:12 39:8 43:7
   44:4 47:19 53:20
   60:4
**differs** 18:15
**Diplomate** 2:10
**DIRECT** 5:4 9:2
**directs** 39:5
**disciplinary** 23:15
   23:20,25 24:9,10
   24:13,14 25:16,25
   26:20,25 30:24
   32:18 33:12 43:16
   43:18,24 44:6,10
   44:20 47:13 57:14
   57:16 58:15 60:25
**disclosable** 59:15
**disclose** 19:25,25
   43:10 58:11
**disclosed** 20:13
**disclosure** 14:13
   25:16 30:23 38:22
   39:2 45:11 60:6
   60:25
**discovery** 62:15
**discuss** 29:19 30:13
   30:23 41:15

**discussed** 16:15
   31:4 32:7,14,16
   33:10,22 58:21
   60:23 61:13
**discussing** 26:18
   31:16
**discussion** 31:11
**discussions** 33:25
   34:4 61:14
**disposition** 55:9
**District** 1:1,2 7:10
   7:10 52:19 53:24
**DLA** 3:5 4:14 8:2
**document** 7:19
   19:23 20:5,7,21
   22:13 25:4 34:11
   34:17,20 35:5
   36:22 40:13 52:14
   53:20 54:8,22
   59:10
**documentation**
   40:8,9
**documents** 12:23
   20:18
**Dominique** 4:7 6:7
   6:9 8:9 52:8
   54:13
**dosaint@law.nyc...**
   4:9
**drop** 56:5
**due** 7:15
**duly** 8:23 65:8 66:8

**E**

**E** 3:1,1 5:1 6:1 66:1
   66:1
**Eastern** 7:5 63:6
**easy** 34:13
**Education** 11:13
**EEO** 24:10 48:8
**Eighth** 3:12
**either** 17:8 38:11
   49:17
**EMAIL** 3:10,16
   4:9
**employed** 10:21
   11:2

**employee** 57:17
**employees** 12:4,8
  13:20
**encompass** 43:19
  44:7
**encompassed** 41:2
**encompassing**
  44:20
**ended** 24:12
**ends** 35:19
**enlarge** 35:19
  52:16 57:19
**ensure** 10:4 18:18
  19:7,21 22:5
  28:17 29:11
**enter** 55:21
**entire** 11:10
**entirely** 55:23
**entirety** 20:23
  38:12,16
**ERRATA** 67:1
**escalate** 22:12,17
  22:24 23:8 28:2,4
  28:5,8
**escalated** 23:19
  25:13
**ESQUIRE** 3:9,15
  4:7,8
**essentially** 17:13
**et** 1:5,8 7:8,9 67:2,2
**Evan** 3:15 7:25
  62:24
**evan.north@dla...**
  3:16
**everybody** 62:20
**exactly** 20:4
**EXAMINATION**
  5:4 9:2
**example** 21:16 23:9
  45:21
**Excel-type** 48:14
**executive** 28:4,8
  56:12
**exempt** 26:21
  33:20 44:13
**exemption** 21:5
  26:10,14,17 31:3

31:6,18,21,22
  32:7,17 33:11
  34:7 40:22 41:24
  42:5 43:9,11 45:7
  46:4,13 60:4,17
**exemptions** 20:16
  20:20 26:5 41:16
  42:12,13,21,22
  43:8
**exhibit** 4:16 6:4,7,9
  6:12 34:20,21,22
  52:6,7 53:5,21
  54:10,12 56:6
  57:2,3 59:11
**exists** 30:6
**expires** 64:17 65:18
  67:24
**explain** 45:9
**express** 28:10
**expressed** 17:20
**extent** 37:23 47:8
  48:3 50:6 58:6,25
  59:18 61:8 62:15

**F**

**F** 4:7 66:1
**factual** 35:24 36:16
**Failla** 6:8,11 52:9
  54:14
**fair** 29:8 42:15
**fairly** 10:11
**familiar** 9:10 26:13
  34:16 35:8 36:15
**far** 29:20 48:10
**FDNY** 54:3
**feel** 10:12
**file** 59:22,22
**filed** 7:9
**files** 24:25
**file-by** 42:10
**file-by-file** 41:14
  41:17,22 42:3
**final** 18:2 25:5
  57:11
**find** 16:2 18:14
**finding** 52:22
**fine** 53:8,9 61:23

**finish** 14:4 49:9
**finished** 54:19
**fire** 1:5 7:8 10:24
  11:3,15 12:13,17
  13:5,9 23:4,16,21
  27:8,19,20 28:16
  29:10,12 38:15,25
  45:8 55:13 67:2
**firefighter** 32:18
  33:11 46:10 47:13
**firefighters** 23:16
  23:20 47:2,4,23
  50:2,3
**first** 17:5 22:20,23
**floor** 28:4,8
**Florida** 2:13,14
  65:3,17 66:2
**FOIL** 6:13 11:17
  11:18 12:3,5,9
  13:5,20,22 14:9
  14:19,21,24 15:15
  15:23 16:9,13,16
  16:22 17:22 18:19
  19:7,8,13,20
  20:14,15 22:5
  26:14 27:8 28:2
  28:16,18 29:6,10
  29:12,14,19 30:2
  31:3,19 35:6
  36:23 37:2,12
  39:17,20,25 40:23
  41:7,16 43:18
  44:6 48:7,23
  50:17 55:3,19
  56:13,21 57:5,25
  59:6,7,15,23 60:4
  60:14
**follow** 13:21 14:12
  16:5 21:14 22:4
  35:25 36:5 37:22
  40:10 48:23 49:16
**followed** 21:18
**follows** 8:25
**formal** 15:16 16:23
**forth** 35:24 66:8
**forward** 51:18,25
**FPR** 1:24 65:16

66:5,19
**free** 10:12
**Freedom** 13:23
  14:21
**Friday** 1:17
**front** 27:15,15
**full-time** 12:6
**functions** 38:20,24
**further** 15:7 18:13
  22:14 66:11

**G**

**G** 6:7,10 52:8 54:13
**GA** 2:12
**Gabriela** 4:17 7:19
**general** 11:16
**generally** 9:10 25:7
  45:6
**GG** 65:19
**GIBSON** 4:8
**give** 8:18 17:19
  23:9 33:17 61:16
**given** 66:10
**giving** 48:13
**go** 18:12 20:23 21:2
  35:15,18 41:12
  45:25 53:11,25
  56:8 57:8 61:4,22
**going** 17:17 21:3,11
  34:11 36:18 43:15
  47:6,25 50:5
  53:19 58:4 59:10
  59:17 61:24 63:5
**good** 7:2,24 8:5 9:4
  9:6,7 50:2 53:5
**govern** 40:21
**Governance** 14:6
**governing** 40:14
**Government** 6:13
  14:25 15:14 17:18
  17:21 21:12,18
  56:9 57:4
**granted** 44:22
  51:14 55:4,14,22
  55:22
**guidance** 14:9,16
  14:17 15:7 17:24

18:5,12 30:15
  40:7 49:16 56:19
  56:20
**guide** 41:6
**guidelines** 40:10

**H**

**H** 6:1
**Hall-Breuwet** 1:24
  2:10 8:12 65:16
  66:4,19
**hand** 8:16 36:13
  65:10 66:16
**handle** 11:17,22
**handling** 13:4 14:9
  35:9 36:2 37:16
  38:3 39:21 57:24
**happened** 24:25
  55:24
**happy** 29:3 39:7
  42:25
**hard** 19:12
**harm** 46:4,6,13
  47:3,23 48:13
  50:2
**head** 10:6
**held** 2:9 11:8 35:10
**help** 30:14
**hereinbefore** 66:8
**hereunto** 66:15
**highlighted** 35:20
  38:10 52:21 55:2
  55:12 57:12
**HIPAA** 40:20
  45:14
**holder** 20:18
**hopefully** 19:4
**hundred** 27:22

**I**

**identifiable** 16:18
  32:4
**identification** 35:3
  52:11 54:16 57:6
**identified** 46:15
  50:3
**identify** 7:21
**identifying** 36:4

40:15 41:3
**identity** 28:13
  50:13
**imagine** 52:13
**implicate** 33:6
  42:20,22 43:7
  58:21
**implications** 26:9
**incident** 27:23
**including** 36:3
  40:15
**incoming** 11:18
  50:22
**indicate** 51:5,8,9
**Indiscernible** 35:14
  42:11
**informal** 16:24
  17:3,12
**information** 13:24
  14:14,22 16:19
  24:3,13,17 25:3
  28:10 32:4 35:10
  36:3,4 37:17 38:4
  38:22 39:3,23
  40:16 41:3 46:4
  48:11,14 49:3
  58:10,11 61:9
**infringe** 32:23 47:8
  48:3 50:7 58:25
**infringes** 58:6
  59:19
**inherently** 58:17
**inspection** 23:13
**instance** 21:23
  45:19
**instances** 45:16
**instruct** 32:21 47:6
  47:25 50:5 58:4
  59:17
**instructing** 61:7
**instruction** 16:21
  58:23
**interested** 66:14
**interference** 24:4
**interpreted** 15:12
**introduce** 34:19
  53:21

**invasion** 31:7,24
  45:12,20
**investigation** 18:13
**invited** 30:21
**inviting** 30:11
**involve** 45:14
**involves** 45:17
**issue** 53:5
**issues** 18:3 29:20
  30:13
**It'll** 51:9

### J
**James** 23:5
**Jeremy** 4:20 7:17
**job** 1:25 11:16,20
**joined** 8:3
**joining** 9:25
**Judge** 6:8,10 52:9
  54:14
**judgment** 19:22
**July** 53:24
**jump** 27:14

### K
**keywords** 15:25
**kind** 18:4 19:15,18
  50:18
**know** 9:17,19 10:13
  19:17,24 24:21,24
  25:9,10 28:10
  29:17 30:3,4
  31:23 33:9 35:11
  37:25 54:18 61:6
**knowledge** 13:6,10
  13:12,14 14:11
  30:16 50:10 59:24
  60:14 61:12
**KPF** 1:3
**KWL** 1:3

### L
**LA** 2:13
**language** 52:21
**law** 4:3 12:22 13:23
  13:24 14:6,22
  15:22 16:2,18
  17:24,25 18:4,14

21:14,19,19 36:20
  36:20 42:14 48:24
  49:17 50:11 51:19
  51:25 52:18 53:23
  59:7
**laws** 60:5
**LCR** 1:24 65:16
  66:4,19
**legal** 35:24 36:16
  51:23 55:3
**LeMASTER** 4:20
  7:17
**less-abstract** 46:23
  46:23
**letter** 6:7,9 52:7,17
  53:22 54:12
**letters** 51:13,19,25
**let's** 23:11 34:10
  35:15,18 52:4
  56:8,23
**level** 22:20,21,23
  45:21
**LexisNexis** 15:25
**Licensed** 2:11
**light** 34:7 57:13,25
  58:16 61:2
**limited** 24:22 36:3
  40:15
**line** 20:23,24 21:2,2
  21:3,3 23:14
  27:15,16,19 36:8
  59:7,8
**line-by-line** 43:12
**literally** 24:19,22
**litigation** 25:13
**little** 24:4 49:22
  54:4
**LLP** 3:5
**Ln** 67:5
**loads** 55:23
**log** 50:21
**long** 10:14 11:2,8
  27:7
**longer** 30:6
**look** 15:24,25 34:10
  53:19
**looking** 42:16 43:3

### M
**mail** 50:24 51:3
**mailed** 51:9
**maintained** 13:9
**making** 43:14
**manage** 11:23
**manner** 57:15
**manuals** 23:12,12
**mark** 34:20 56:25
**marked** 35:2 52:10
  54:10,15 57:6
**marriage** 66:13
**Matt** 4:14 52:24
  57:7
**matter** 7:7 33:21
  33:25 34:2,5
  49:14 52:19 59:24
  66:14
**matters** 15:8 48:8
**MATYSTIK** 4:14
**mayor's** 29:18 30:2
  30:10
**mean** 17:2 19:22
  21:9 31:6 48:21
**meet** 29:19 30:13
**meeting** 30:16
**meetings** 30:7,23
  31:4,16
**member** 46:5,14
**members** 16:4
  25:17
**mention** 16:17 20:5
**mentioned** 21:12
  23:6 26:22 37:21
**middle** 24:5
**midway** 54:25
**mind** 33:5
**missed** 17:5
**model** 35:8,21,24
  36:6,17,25 37:10
  37:23,25 38:11,16
  39:11 40:3,6,14
  40:17,19,21 62:10
**moment** 21:12,24
  52:22 53:2 54:6
  56:9
**moments** 61:17

**months** 27:11
**Montour** 1:16 2:9
  7:1,7 8:1,22 9:1,4
  10:1 11:1 12:1
  13:1 14:1 15:1
  16:1 17:1 18:1
  19:1 20:1 21:1
  22:1 23:1 24:1
  25:1 26:1 27:1
  28:1 29:1 30:1
  31:1 32:1 33:1
  34:1 35:1 36:1
  37:1 38:1 39:1
  40:1 41:1 42:1
  43:1 44:1 45:1
  46:1 47:1 48:1
  49:1 50:1 51:1
  52:1 53:1 54:1
  55:1 56:1 57:1
  58:1 59:1 60:1
  61:1 62:1,2 63:1,5
  64:7 65:7 67:3
**morning** 7:2,24 8:5
  9:4
**multiple** 27:21 43:5
  43:7
**mute** 53:11

### N
**N** 3:1 5:1
**name** 7:17 8:6
  11:25 29:24 50:2
  67:2
**nature** 11:16
**necessarily** 30:8
  33:15,22 51:2,11
  56:20 59:21
**necessary** 14:5
**need** 10:13,15 15:7
  15:9 43:8
**needed** 28:11
**New** 1:2 3:7,7 4:3,5
  4:5 7:11 10:24
  16:17 50:19 51:24
  52:18 53:22 56:14
**non** 56:20
**nonprivileged**

58:13
**North** 3:15 5:4 7:24
7:25 9:3 17:10
19:2 20:2 22:2,15
29:2 32:13 33:3
33:23 34:19 35:4
35:18,22 37:7
41:11 44:2 45:5
46:20 47:15 48:17
50:15 52:4,12,23
53:4,18 54:5,11
54:17 56:5,7,23
57:7,10 58:8 59:9
59:12 60:2,11
61:15,23 62:19
63:12
**Notary** 2:14 64:14
65:17 67:24
**note** 61:6
**number** 6:3 7:12
34:22 52:7 54:12
55:19 57:3
**numbers** 24:24
**NW** 3:12

**O**

**oath** 8:24 9:14 65:1
**objection** 18:22
19:10 21:21 22:7
28:21 32:8,20
33:13 37:3 41:8
43:21 44:23 46:16
47:5,24 50:4
56:15 58:3,19
59:16 60:7 61:3,6
**occasion** 44:19
46:8
**occasions** 15:4,6
**occur** 23:23
**October** 11:4
**odds** 21:20
**office** 8:7 29:19
30:2,10
**officer** 11:17 22:25
23:3,9,21 38:19
38:21,25 39:5,13
57:15

**officers** 1:5 7:8
13:23 23:16,21
29:22 30:12 31:19
67:2
**officer/agency** 11:6
**official** 30:9 65:10
**oftentimes** 18:3,14
**Oh** 36:12
**Okay** 10:18 13:19
17:16 38:8 39:7
45:13 48:5,18
49:20 50:16 53:3
53:18 54:23 55:11
56:2 57:21,22
59:3,9 61:16,19
61:25 62:19
**once** 22:13
**Open** 6:12 14:6,25
15:14 17:18,21
21:12,17 56:9
57:4
**OpenRecords**
50:20 55:8,16
**operating** 27:13
**opinion** 6:12 21:18
21:20 22:12 57:3
**opinions** 15:19
17:19,20,23 18:3
18:15 49:18 56:24
**opposed** 10:5
**order** 63:8
**outcome** 24:21
25:5 66:14
**outgoing** 50:22
**outside** 19:22

**P**

**P** 3:1,1
**page** 5:3 6:3 35:18
52:20 54:2 57:9
**pandemic** 7:16
**paragraph** 54:2,7
54:19,25 57:11
**Paralegal** 4:14
**part** 17:5 43:13
48:12
**participants** 7:15

**particular** 15:9
20:13 22:17 32:10
32:15 41:19,25
42:6,20 43:4
45:11,19 46:6
47:17 48:15,25
55:20
**particularly** 12:24
**parties** 14:14 38:22
39:3,22 66:12
**party** 36:2 50:13
61:14
**passing** 19:22
**PAUL** 3:9
**pending** 10:15
**perform** 41:17,22
42:3,8,16
**performed** 41:15
**permissive** 56:21
**personally** 32:4
**personnel** 13:8
46:11 47:3,13
**persuasive** 18:10
**Pg** 67:5
**phone** 8:4
**PII** 19:17,22 32:3
40:20,25 41:2
45:14 59:25 60:6
60:15,18
**Piper** 3:5 4:14 8:2
**place** 7:13 52:22
56:19
**plaintiffs** 1:6 3:3
8:3
**plaintiff's** 62:9
**play** 49:4
**please** 7:21 8:16
11:15 12:2 14:4
34:11 35:16 37:19
45:9 49:8 52:5,14
53:25 54:19 56:6
56:10 57:19 58:18
**point** 18:12
**police** 57:14
**policies** 6:4 13:4,19
14:8,13 34:14,23
41:6 58:14 60:24

**policy** 59:21
**POLK** 65:4
**portion** 38:10
**posed** 9:21
**position** 11:5,9
16:7 59:13
**possibility** 47:21
**possible** 28:11
34:13 43:6
**potential** 26:9
**potentially** 23:8
33:6
**practice** 60:24
**practices** 13:4
**prepare** 12:19
13:12 62:4
**prepared** 13:3,7,17
**PRESENT** 4:13
**preservation** 11:22
**pretty** 25:14
**prevent** 20:22
**previously** 11:11
11:12 39:16 55:6
**prioritize** 28:12
**privacy** 6:4 13:8
14:16,18 22:25
23:3,8,21 26:9,10
26:13 31:3,6,7,21
31:22,25 32:7,17
33:11 34:7,14,23
38:18,21,25 39:4
39:13 40:7,22
41:24 43:9 45:7
45:12,21 46:4,12
49:14 60:3,17
**privilege** 32:24
47:9 48:4 50:8
58:7,22 59:2,19
61:10
**privileged** 10:17
33:7,8 58:10,11
58:17
**probably** 30:17
31:19
**procedures** 36:21
**process** 11:18
16:22 20:12 35:25

36:16
**produce** 20:17
48:11
**produced** 24:18
62:13,16
**Professional** 2:13
**proficient** 35:12
**proper** 14:9,25
15:15 37:16 38:2
40:22 46:3 57:24
58:15
**properly** 46:12
**protected** 24:14
61:9
**Protection** 6:4
34:14,23
**protocol** 38:13
**protocols** 6:5 34:15
34:24 35:9,21,24
36:6,17,25 37:10
37:23 38:2,12,16
39:11 40:4,6,14
40:17,19,21 62:10
62:12,13
**provide** 10:4 21:16
24:2 25:5,23 33:7
56:19
**provided** 28:19
40:9 48:10 49:17
**providing** 49:2
59:25 60:15
**public** 2:14 13:23
57:17 64:14 65:17
67:24
**pull** 55:17,19
**p.m** 53:13,14,15,17
63:6,13

**Q**

**quality** 22:18,20,22
22:24 23:2
**question** 9:17,19,21
9:23 10:15 15:11
17:8 18:25 19:4
26:12 32:22 33:5
37:6,18 38:18,23
39:6,12 42:24

46:19,23 47:7,19
48:2,6,21 49:21
49:23 50:6 54:24
57:22 58:5,12,24
60:10,16 61:8
**questioning** 7:23
**questions** 61:25
**quick** 10:11
**quickest** 45:13
**Quinn** 4:8 6:7,10
8:5,6 18:22 19:10
21:21 22:7 28:21
32:8,20 33:13
37:3 41:8 43:21
44:23 46:16 47:5
47:24 50:4 52:8
53:8,10 54:14
56:15 58:3,19
59:16 60:7 61:3,5
62:17,21,24 63:10
**quite** 26:7 43:25
49:13

**R**

**R** 3:1 66:1
**Raise** 8:15
**RDR** 1:24 65:16
66:4,19
**read** 19:24 34:13
54:7 67:5
**reading** 54:19
**Reads** 67:5
**ready** 13:18
**really** 19:13 26:3
27:11
**Realtime** 2:11
**reanswer** 17:9
**reason** 27:16 44:12
45:18 55:5 67:5
**Rebecca** 4:8 6:7,10
8:6 52:8 54:13
**recall** 26:3,8,16
31:10,12
**receive** 19:15 22:13
59:22
**received** 16:21,24
17:11 24:8 25:8

26:24 29:17 43:17
44:5,10 49:14
**receiving** 20:19
**record** 7:3 11:6
20:13,18 29:21
30:11 41:25 42:6
45:11,16 47:11
51:11 53:13,17
61:22 62:9 63:6
66:9
**records** 13:9 20:8
20:10 21:4 22:19
23:16,20,25 24:9
24:11,14 25:16,25
26:20,25 30:24
32:18 33:12 41:14
41:18,23 42:4,17
42:19,20 43:4,5,7
43:16,17,18,25
44:5,6,10,20 45:8
46:11,11 47:3,14
48:12 49:4,5
57:14,16 58:16
59:5 60:25
**redact** 19:17
**refer** 12:11 14:21
17:24 35:7
**referenced** 29:24
**references** 35:21
**referred** 31:24
**referring** 12:13
13:25 20:4,8
31:15 33:25 35:6
36:22
**refers** 40:13
**regard** 60:24
**regarding** 13:4,8
14:9,13 34:6
**regards** 26:19
47:12
**Registered** 2:10
**regular** 19:14
**regulate** 60:5
**reiterate** 36:18
**relate** 38:21 39:2
40:19
**related** 66:11

**relating** 57:14
**releasable** 20:24,25
**release** 46:13,25
47:21 49:3,24
**released** 20:21,23
50:14
**releasing** 24:13
**relevant** 36:25
37:11 38:2
**rely** 14:15
**remains** 58:23
**remember** 17:7
24:20 26:6,7
**REMOTE** 1:15
**remotely** 2:9 7:15
65:7
**remove** 45:18
**repeal** 26:25 33:21
34:7 44:15,18
57:13,25 58:16
59:4 61:2
**repeat** 17:8 18:24
28:24 32:25 37:5
37:19 38:23 46:18
62:8
**repeated** 36:9
**rephrase** 9:18 29:3
39:8 42:25
**report** 27:20,25
**REPORTED** 1:23
**reporter** 2:10,11,12
2:12,13 8:11,13
9:25 66:5,20
**reports** 23:13
**represent** 7:22
**representative**
12:16
**representing** 7:18
8:8,12
**reputation** 46:5,14
48:6,20 49:12,21
**reputations** 47:3
47:23
**request** 14:24
15:15,23 16:16
17:22 18:20 19:9
19:16 20:8,14,17

22:6,17 23:10,11
23:15,17,19,24
24:8 25:8,15
26:11,18,23,24
27:9 29:18 32:18
33:11,19 36:2,19
36:23 41:7,20
44:10,20 47:17
49:15 51:14 55:9
55:20 57:13,16,25
58:15 59:21 62:9
**requested** 15:13
20:9,10 21:4
24:12 25:18 27:20
27:22,25 41:18,23
41:25 42:4,6 43:5
**requester** 25:21
28:14
**requesters** 27:14
**requests** 11:18,23
12:9 13:5,22
14:10,19 16:22
18:19 19:8,15,20
22:5,23 23:7,14
25:24 27:4,21
28:3,13 29:6,13
29:14 35:6,9 37:2
37:12,16 38:3
39:22 40:14 43:17
43:24 44:6,7 45:8
48:7 50:17,22
51:13 55:4,8,13
55:17 59:6
**require** 47:18
**required** 36:17
**requirement** 51:24
**requires** 18:13
**research** 21:15
**researching** 16:3
**respects** 45:15
**respond** 16:16
17:21 27:8 29:14
41:7
**responded** 25:12
**responding** 12:9
13:21 14:23 15:23
29:6 35:6 36:22

58:12
**responds** 29:12
**response** 10:5 15:2
15:15 20:14 51:13
**responses** 14:18
18:19 19:7 28:18
28:19 50:17,23,25
51:3
**responsibilities**
11:16,21
**responsible** 29:5
39:21
**responsive** 41:19
43:6
**reveal** 61:8
**review** 12:23 23:7
33:19 36:19 41:14
41:18,23 42:4
47:11 49:5 59:23
**reviewed** 15:8
21:17 35:11 43:24
57:15
**reviewing** 13:21
22:11 54:8,22
**Rhonda** 1:24 2:9
8:12 63:11 65:16
66:4,19
**right** 8:16 16:12
25:14 28:7 29:7
31:9 39:14,18
53:7 61:16
**rquinn@law.nyc...**
4:10
**rule** 48:23
**rules** 13:20
**run** 61:24

**S**

**S** 3:1 6:1
**safety** 42:5 43:11
**Saint-Fort** 4:7 6:8
6:10 8:9 52:9
54:13 62:23 63:2
**Saunders** 23:5
**saying** 48:20
**says** 17:25 35:23
38:10 57:12

**scope** 56:13
**screen** 34:12
**seal** 65:10
**searching** 40:8
**second** 22:21 23:13
  35:23 54:2
**Section** 26:2 35:20
**see** 17:25 38:10
  44:12 55:21 57:18
**seeing** 30:14
**seen** 34:18 44:11
  52:13
**sentence** 35:23
  38:9 54:25 55:12
  57:12,18
**service** 25:17 46:5
  46:14
**set** 35:24 66:8,15
**sexual** 45:17
**shaking** 10:5
**SHEET** 67:1
**Sheryl** 1:16 2:8 7:1
  7:7 8:1,22 9:1
  10:1 11:1 12:1
  13:1 14:1 15:1
  16:1 17:1 18:1
  19:1 20:1 21:1
  22:1 23:1 24:1
  25:1 26:1 27:1
  28:1 29:1 30:1
  31:1 32:1 33:1
  34:1 35:1 36:1
  37:1 38:1 39:1
  40:1 41:1 42:1
  43:1 44:1 45:1
  46:1 47:1 48:1
  49:1 50:1 51:1
  52:1 53:1,10 54:1
  55:1 56:1 57:1
  58:1 59:1 60:1
  61:1 62:1,22 63:1
  63:5 64:7 65:7
  67:3
**shorthand** 31:9
  66:5,20
**show** 34:12
**sic** 14:6

**Signature** 67:19
**significant** 62:6
**similar** 19:8,19
  59:6 62:12
**similarly** 18:20
**six** 27:10
**slightly** 19:3 44:3,4
  46:22,22 47:19
**slowly** 10:4
**solemnly** 8:17
**somewhat** 22:19
**soon** 28:11
**sorry** 13:25 17:5
  30:18 32:12 34:21
  35:15 36:13 38:6
  45:3,23 49:8,20
  51:6 52:25 53:18
  60:21
**sort** 45:18
**sources** 16:14
**Southern** 1:2 7:10
**speak** 10:3,3
**speaking** 45:6
**specific** 21:4,23
  31:10 41:16 43:15
  46:22 49:22
**specifically** 25:8
**spoke** 12:21
**Standard** 7:5
**stands** 58:20
**start** 23:7
**started** 25:11,13,14
  27:5 48:19
**starting** 18:11
**state** 2:14 7:21 65:3
  65:17 66:2
**states** 1:1 7:10 36:9
  52:18 53:23
**statewide** 56:12
**statute** 14:22 15:9
**statutes** 20:22
**stay** 61:22
**STENOGRAPH...**
  8:15 17:4 32:11
  45:2 54:9 63:7
**stenographic** 66:5
  66:20

**step** 60:13,13
**steps** 16:5,10 22:4
  28:17 29:11
**stop** 15:10
**store** 50:21
**Street** 3:12 4:4
**strike** 18:16
**subject** 10:16 31:17
  58:13,22
**submitted** 15:16
**Subscribed** 64:10
  67:20
**substantially** 62:12
**substantiated**
  24:19,23 49:15
**Subway** 23:14
**suggests** 48:24
**suited** 39:13
**supervise** 11:23
  12:2
**supervisor** 39:17
  39:20,25
**sure** 14:2,20 19:3
  28:6 29:3,15 37:8
  37:20 39:7 42:25
  44:3 46:7,21
  60:12 61:18 62:5
**swear** 8:14,17
**sworn** 8:23 64:10
  65:8 66:8 67:20
**system** 25:4 50:18
  50:25 51:2,15,16
  55:8,16,19

———————
**T**
**T** 6:1 66:1,1
**Tab** 34:10 52:4,24
  56:24 57:8
**take** 10:13,14 16:9
  27:7,12 28:17
  29:11 34:10 53:6
  54:6 59:11 62:18
**taken** 53:14
**takes** 27:10 48:12
**talk** 20:5
**talking** 31:23 44:15
  56:8

**team** 16:4
**tech** 7:19
**TECHNICIAN**
  4:16
**tell** 8:23 11:25
  52:14 55:24
**tense** 30:5
**term** 49:11
**testified** 8:24 39:10
  39:16 55:7
**testify** 12:16,20
  13:3,8,13
**testifying** 9:14
**testimony** 8:18
  15:20 28:7 66:10
**thank** 8:10 9:7
  17:16 32:5 38:8
  40:12 54:11,21
  56:2 57:8,21
  61:11,20 62:6,17
  62:19,21,22,23,24
  63:2,10,12
**things** 15:25 27:12
  40:17,18,24 58:21
**think** 15:11 21:24
  24:5 25:2 26:4
  28:23 29:16,25
  36:10,20 38:17
  39:5 42:23 49:18
  51:7 59:9 61:17
  61:24
**third** 14:14 36:2
  38:22 39:3,22
**third-party** 35:9
  37:16 38:3
**three** 12:7 27:10
**time** 7:4,5 10:14
  11:10 14:3 18:25
  26:21 53:5 61:24
  62:3,4,20 63:6
**times** 22:11
**title** 48:14
**TN** 2:12
**today** 8:3,11 9:5,14
  10:2 13:3,7 62:2,3
  62:14,20
**Today's** 7:3

**topic** 13:14 31:2
  41:12 43:15 49:19
**total** 12:7 26:5
**toto** 20:16
**touched** 41:13
**track** 50:16,24 55:3
  55:13,15
**tracked** 51:4
**tracking** 27:21
**trained** 17:2,13
**training** 16:22,23
  16:25 17:3,12
  23:12,12
**transcript** 10:7
  60:22 63:9 67:1
**TransPerfect** 7:18
  8:13
**treat** 18:5 22:10
  59:5
**treated** 18:20
**treatment** 22:5
  58:15
**true** 66:9
**truth** 8:19,19,20,24
**try** 9:18 22:9 34:12
  35:19 49:22
**turn** 53:10
**two** 15:12 25:3
**two-to-three-min...**
  53:6
**type** 15:22 17:17,19
  55:18
**types** 16:9 28:19
  42:19
**typical** 22:19
**typically** 14:20
  15:7,8 18:13
  20:17 22:24 25:11
  27:7,17 28:5,15
  35:7 36:19 45:18
  51:21

———————
**U**
**Uh-huh** 49:7
**unclear** 49:21
**undersigned** 65:6
**understand** 9:13

9:16 12:15,18
20:3 26:12 28:24
36:24 37:18,25
38:20,24 39:6
40:16 42:23 47:16
48:19 49:13 60:3
60:9,17
**understanding**
37:9 40:18 49:11
50:11 59:4
**understood** 9:20
13:2
**unfounded** 43:19
44:8,21
**uniform** 19:16,18
22:19
**Uniformed** 1:5 7:7
67:2
**unique** 19:20 22:23
23:6,10,11,14,17
**uniques** 21:8
**unit** 11:24 12:2,3,5
13:21 16:9,13
19:7 28:16 29:10
39:17,21 40:2
55:3,12
**United** 1:1 7:9
52:18 53:23
**unknown** 25:6
**unsubstantiated**
24:20,23 43:19
44:8,21 46:25
47:22 49:16,25
50:12 59:14,24
60:14
**unwarranted** 31:6
31:24 45:12,20
**urgency** 28:2,9
**use** 15:24 16:13
17:23 31:19,21
32:3 35:5 42:13
50:19 55:16 59:10
**usually** 17:24 22:11

**V**

**V** 67:2
**varies** 19:23 20:6,6

**various** 15:6
**varying** 30:13
**venture** 37:13,22
**verbal** 10:5
**versus** 7:8
**video** 7:6
**videoconference**
7:14
**videographer** 4:19
7:2,18 8:10 10:2
53:12,16 61:21
63:4
**Videotaped** 1:15
2:8
**view** 21:13
**views** 14:24 15:13
18:7 21:13 57:24
58:14

**W**

**walk** 20:11
**want** 30:8 35:12
36:21 41:12 52:23
61:21 63:8
**wanted** 37:24 52:20
61:18
**Washington** 3:13
**wasn't** 25:4,12
33:16
**way** 29:12 40:2
55:15 66:13
**ways** 15:12
**web** 7:14
**website** 15:20
**week** 12:25
**welcome** 56:4
**went** 40:7
**we'll** 31:23 34:12
35:19 56:25
**we're** 25:11 26:18
31:23 53:12,19
59:10 61:24
**we've** 16:14 48:7,7
**WHEREOF** 66:15
**wholly** 33:20
**withheld** 46:12

**withhold** 43:9,10
46:3
**witness** 8:14,21
17:7 18:24 19:12
21:23 22:9 28:23
32:10,22,25 33:15
37:5 41:10 43:23
44:25 45:4 46:18
47:7,10 48:2,5
50:5,9 53:3,9
56:18 58:5,23
59:3,18,20 60:9
61:4,7,11 65:10
66:7,10,15
**work** 9:11 10:9,19
11:11 39:4
**worked** 11:12
**working** 27:6
**worth** 23:24 24:8
25:3
**wouldn't** 20:16
29:16 51:11 59:25
60:15
**written** 13:19 14:8
25:20 41:6

**X**

**X** 5:1 6:1

**Y**

**Yeah** 12:10 30:20
36:14
**year** 24:23 27:12
30:17,19
**years** 23:24 24:8
26:23
**yesterday** 63:9
**York** 1:2 3:7,7 4:3
4:5,5 7:11 10:24
16:18 50:19 51:24
52:18 53:22 56:14

**Z**

**Zoom** 14:3

**1**

**1** 6:4 34:21,22
**1.5.5** 35:20

**1/28/19** 6:5 34:24
**1:20-CV-05441** 1:3
**1:20-cv-05441-K...**
7:12
**100** 4:4
**10007** 4:5
**10020** 3:7
**11:34** 2:5 7:5
**12:32** 53:13,14
**12:35** 53:15,17
**12:48** 63:6
**12:49** 63:13
**1251** 3:6
**14** 56:24 57:8
**1954** 35:19
**19775** 6:13 57:5
**1981** 6:6 35:2

**2**

**2** 6:7 52:6,7,20
**20004** 3:13
**2017** 11:4
**2019** 27:4
**202** 3:14
**2020** 1:17 2:4 7:4
53:24 64:11 65:11
66:16 67:3,21
**212** 3:8 4:6
**26** 34:10
**28094** 1:25

**3**

**3** 6:9 54:10,12
**30th** 53:24
**335-4500** 3:8
**34** 6:4
**356-2444** 4:6
**360849** 65:19

**4**

**4** 6:12 57:2,3

**5**

**5** 52:4,24
**5,000** 27:23
**50-a** 23:25 24:15
25:19 26:2,25
33:18 34:8 44:12

44:16,18 47:10
57:13 58:2,16
59:5 61:2
**500** 3:12
**52** 6:7
**54** 6:9
**57** 6:12

**7**

**7** 1:17 2:4 67:3
**7th** 7:4
**7/25/20** 6:8 52:10
**7/27/20** 6:13 57:5
**7/30/20** 6:11 54:15
**799-4000** 3:14

**9**

**9** 5:4
**9th** 65:11 66:16
**9/28/23** 65:18
**911** 19:19 45:16