# EXHIBIT S

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

No.: 1:20-CV-05441 (KPF)(KWL)


UNIFORMED FIRE OFFICERS      )
ASSOCIATION, et al.,         )
                             )
        Plaintiffs,          )
                             )
    vs.                      )
                             )
BILL de BLASIO, et al.,      )
                             )
        Defendants.          )
_____)




REMOTE VIDEOTAPED DEPOSITION OF

LAURA MELLO

Friday, August 7, 2020




REPORTED BY:

RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

JOB NO. 28094

1

2

3

4                    August 7, 2020

5                    9:31 a.m.

6

7

8          Videotaped Deposition of LAURA MELLO,

9    held remotely before Rhonda Hall-Breuwet,

10   Registered Diplomate Reporter, Certified

11   Realtime Reporter, Licensed Court Reporter

12   (TN), Certified Court Reporter (GA and LA),

13   Florida Professional Reporter, and Notary

14   Public of the State of Florida.

15

16

17

18

19

20

21

22

23

24

25

```
 1   A P P E A R A N C E S:

 2

 3   ATTORNEYS FOR PLAINTIFFS:

 4

 5           DLA PIPER LLP (US)

 6           1251 Avenue of the Americas

 7           New York, New York 10020

 8           (212) 335-4500

 9           BY:  ANTHONY PAUL COLES, ESQUIRE

10           EMAIL:  anthony.coles@dlapiper.com

11           - and -

12           500 Eighth Street, NW

13           Washington, DC 20004

14           (202) 799-4000

15           BY:  EVAN NORTH, ESQUIRE

16           EMAIL:  evan.north@dlapiper.com

17

18

19

20

21

22

23

24

25   (Continued)
```

Page 4

1        ATTORNEYS FOR DEFENDANT:

2

3                  NEW YORK CITY LAW DEPARTMENT

4                  100 Church Street

5                  New York, New York  10007

6                  (212) 356-2444

7                  BY:  DOMINIQUE F. SAINT-FORT, ESQUIRE

8                       REBECCA GIBSON QUINN, ESQUIRE

9                  EMAIL:  dosaint@law.nyc.gov

10                         rquinn@law.nyc.gov

11

12

13      ALSO PRESENT:

14          LYNELLE MAGINLEY-LIDDIE, ESQ. - Department of Correction

15          MATT MATYSTIK, Paralegal - DLA Piper

16      EXHIBIT TECHNICIAN:

17          GABRIELA ALVAREZ

18

19      VIDEOGRAPHER:

20          JEREMY LeMASTER

21

22

23

24

25

Page 5

1                          I N D E X

2

3                                                    PAGE

4        DIRECT EXAMINATION BY MR. NORTH              9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    E X H I B I T S

 2

 3        NUMBER            DESCRIPTION          PAGE

 4        EXHIBIT 1   Citywide Privacy             27
                      Protection Policies and
 5                    Protocols, dated
                      1/28/19, Bates-stamped
 6                    DEF_UFOA_001944 - 1981

 7        EXHIBIT 2   Opinion of the              67
                      Committee on Open
 8                    Government, FOIL AO
                      19775, dated 7/27/20
 9
          EXHIBIT 3   Letter from Rebecca G.      80
10                    Quinn and Dominique
                      Saint-Fort to Judge
11                    Failla dated 7/25/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    LAURA MELLO

2                    THE VIDEOGRAPHER:  Okay.  Good

3          morning.  We are now on the record.

4          Today's date is August 7th, 2020, and the

5          time is 9:31 a.m. Eastern Standard Time.

6                    This is the video deposition of

7          Laura Mello in the matter of Uniformed Fire

8          Officers Association, et al., versus Bill

9          de Blasio, et al., filed in the United

10         States District Court, Southern District of

11         New York, Case

12         Number 1:20-cv-05441-KPF-RWL.

13                   This deposition is taking place

14         via web videoconference with all

15         participants attending remotely due to the

16         COVID-19 pandemic.

17                   My name is Jeremy LeMaster.  I am

18         the videographer representing TransPerfect,

19         and the document tech is Gabriela Alvarez.

20                   Would counsel on the conference

21         please identify yourselves and state whom

22         you represent, beginning with the

23         questioning attorney.

24                   MR. NORTH:  Good morning.  This is

25         Evan North from the law firm of DLA Piper.

1               LAURA MELLO

2       I'm here on behalf of the plaintiffs.  I'm

3       joined on the phone today by Anthony Coles,

4       also of DLA Piper.

5               MS. SAINT-FORT:  Good morning,

6       everyone.  My name is Dominique Saint-Fort.

7       I'm assistant corporation counsel for the

8       New York City Law Department Office of

9       Corporation Counsel, representing

10      defendants.  I'm here with Rebecca Quinn

11      and Lynelle Maginley-Liddie, who is counsel

12      for the Department of Correction.

13              THE VIDEOGRAPHER:  Thank you,

14      Counsel.  Our court reporter today is

15      Rhonda Hall-Breuwet representing

16      TransPerfect.  The court reporter will now

17      swear in the witness.

18              CERTIFIED STENOGRAPHER:  Raise

19      your right hand, please.

20              Do you solemnly swear the

21      testimony you are about to give will be the

22      truth, the whole truth, and nothing but the

23      truth?

24              THE WITNESS:  Yes.

25              CERTIFIED STENOGRAPHER:  You're

1                    LAURA MELLO

2          good.  Thank you.

3                    LAURA MELLO

4      acknowledged having been duly sworn to tell

5      the truth and testified upon her oath as

6      follows:

7                  DIRECT EXAMINATION

8      BY MR. NORTH:

9          Q       Good morning, Ms. Mello.  Can you

10     please state your full name for the record and

11     spell it.

12         A       Good morning.  My name is Laura,

13     L-a-u-r-a; Mello, M-e-l-l-o.

14         Q       Great.  Thank you.

15                 I just want to go over a few

16     ground rules up front, but can you tell me

17     first if you've ever been deposed before?

18         A       I have.

19         Q       Okay.  So are you generally

20     familiar with how depositions work, at least

21     when you're in person?

22         A       Generally.

23         Q       Okay.  And you understand that

24     you're testifying under oath today?

25         A       Yes.

1                        LAURA MELLO

2          Q        And if you don't understand a

3    question, just let me know, please, and I'll

4    try to rephrase it.  But can we agree that if

5    I ask a question and you don't let me know

6    that it was confusing, that you understood the

7    question as I posed it?

8          A        Yes.

9          Q        And there's obviously a court

10   reporter joining us today, as well as a

11   videographer, who is recording this.  So I'd

12   just ask that you please speak up and speak

13   slowly so that we capture everything that you

14   say.

15         A        Yes.

16         Q        And this will be a fairly quick

17   deposition as they go, but just let me know if

18   you need to take a break at any point, and

19   it's no problem.  I just ask that we not take

20   a break while a question is pending.

21                  Does that work?

22         A        Yes.

23         Q        Great.

24                  Are you currently employed?

25         A        Yes, I am.

1                    LAURA MELLO

2        Q        By whom?

3        A        The New York City Department of

4    Correction.

5        Q        How long have you been employed by

6    the New York City Department of Correction?

7        A        Almost seven years.

8        Q        Okay.  What is your current

9    position?

10        A        I am senior counsel and FOIL

11    officer.

12        Q        How long have you held that

13    position?

14        A        Almost seven years.

15        Q        Can you please describe the

16    general nature of your job responsibilities.

17        A        As FOIL officer, I head up a small

18    FOIL unit that handles FOIL requests and

19    responses.  As senior counsel, I work

20    generally on a number of policy legislative

21    issues -- and legislative issues as well as

22    limited . . .

23        Q        I'm sorry.  I may not have heard

24    the last part of that sentence.  As well as

25    limited?

Page 12

1                      LAURA MELLO

2          A       Litigation.

3          Q       Did you say something after that?

4    Oh, litigation?

5          A       Litigation, yes.

6          Q       Thank you.

7                  And did you previously hold a

8    different position with the Department of

9    Correction?

10         A       No.

11         Q       Okay.  Are you here today to

12   testify on behalf of the Department of

13   Correction?

14         A       Yes.

15         Q       And if I refer to the department

16   generally in this deposition, can we agree

17   that I'm referring to the Department of

18   Correction?

19         A       Yes.

20         Q       And do you understand that you're

21   not here to testify as to your personal

22   opinions and beliefs but, rather, on behalf of

23   the department as a designated representative?

24         A       Yes.

25         Q       Are you prepared today to testify

1                          LAURA MELLO

2       regarding policies and practices for handling

3       FOIL requests and the privacy of personnel

4       records?

5            A       Yes.

6            Q       Have you been trained with regard

7       to FOIL by the department?

8            A       I was given guidance by the deputy

9       general counsel at the time I began my

10      position.

11           Q       Can you describe that guidance for

12      me, please.

13           A       The guidance was in person and

14      verbal, and she was available when I had

15      questions.

16           Q       And have you received any ongoing

17      training or support with regard to FOIL in

18      your position?

19           A       No.

20           Q       What did you do to prepare for

21      today's deposition?

22           A       I spoke with the attorney --

23      attorneys representing the department and the

24      City.

25           Q       And did you speak with anyone

Page 14

```
 1                   LAURA MELLO
 2      else?
 3           A      No.
 4           Q      Did you review any documents?
 5           A      No.
 6           Q      And do you understand that it's
 7      your responsibility today to answer questions
 8      based on the collective knowledge of the
 9      department on this topic?
10           A      To the extent -- yes.
11           Q      Yes?
12           A      Yes.
13           Q      Are you prepared to do that?
14           A      Yes.
15           Q      And do you understand that it's
16      your responsibility to testify as to any
17      relevant information known or available to the
18      department to the extent that information is
19      relevant to the topic that we discussed?
20                   MS. SAINT-FORT:  Objection.  Form.
21                   You can answer.
22                   THE WITNESS:  I understand that it
23         is my obligation to testify to the extent I
24         am knowledgeable and aware.
25                   ///
```

Page 15

1                          LAURA MELLO

2        BY MR. NORTH:

3              Q        And I think you said a moment ago

4        that you spoke with attorneys to prepare for

5        this deposition, and I just want to confirm

6        that you are prepared to testify on behalf of

7        the department based upon the department's

8        knowledge and not just your own knowledge.

9                      Is that fair to say?

10             A        I don't understand.

11             Q        I'm happy to rephrase.  This is a

12       30(b)(6) deposition.  You're here on behalf of

13       the department to testify on behalf of the

14       department, and I just want to confirm that

15       you are prepared to testify on behalf of the

16       department based upon the department's

17       knowledge about this topic and not just your

18       own personal knowledge.

19             A        Yes.

20             Q        Okay.  Thank you.

21                     So today I'd like to ask questions

22       about two general time periods with June 12th,

23       2020, as the dividing line.  We'll first

24       discuss the period prior to June 12th.

25                     Can you tell me first what written

Page 16

1                      LAURA MELLO

2      policies or rules the employees of the FOIL

3      department -- the FOIL team that you work with

4      follow in reviewing and responding to FOIL

5      requests?

6          A      They proceed on guidance that I

7      give in person or over the phone verbally.

8          Q      Are there any written documents

9      that those employees use to guide them in

10     responding to FOIL requests?

11         A      They use the written FOIL law.

12         Q      Did they use anything else?

13         A      No.

14         Q      Are there any written policies or

15     written guidance at the department that

16     provide support to FOIL employees in

17     determining how to apply the FOIL law?

18         A      No.

19                MS. SAINT-FORT:  Objection to

20        form.

21                You can answer.

22                THE WITNESS:  No.

23     BY MR. NORTH:

24         Q      What kind of training have you

25     given the employees in your unit on the proper

Page 17

1                         LAURA MELLO

2        application of FOIL?

3            A       Give consistent, constant ongoing

4        training verbally, whether in person or over

5        the phone.

6            Q       And can you describe the nature of

7        that training.

8            A       We frequently review the process

9        for processing the incoming FOIL requests and

10       the nature of the FOIL exemptions and guidance

11       as to redaction or withholding on the basis of

12       those exemptions where applicable.

13           Q       Okay.  So you mentioned a few

14       things there.  I just want to go through them

15       one by one.

16               When you review the process for

17       processing incoming FOIL requests with your

18       team, can you please describe that process to

19       me and how it works.

20           A       So the process for the FOIL --

21       incoming FOILs, we receive the FOIL request.

22       The FOIL request is lodged in our database,

23       and the request is reviewed to ensure that it

24       reasonably describes the records and that it

25       is requesting records that are possessed or

Page 18

```
 1                    LAURA MELLO

 2    maintained by the department.

 3              We then -- we also ensure that if

 4    the request is for records that relate to a

 5    person other than the requester that the

 6    request is accompanied by a notarized

 7    authorization signed by the person the records

 8    relate to, that that person authorizes their

 9    release.

10              Then an acknowledgment letter is

11    generated to the requester.  Then internal --

12    assuming the department can understand the

13    request and that it reasonably describes the

14    records sought and that the department is in

15    possession of the records, internal requests

16    to the appropriate division or units is

17    generated.

18              When the records are received by

19    the FOIL unit, they are reviewed for

20    responsiveness, completeness, and for any

21    potential FOIL exemptions.  Then redactions

22    are applied, and a final review is conducted.

23    A response letter is generated, and the

24    response is provided.

25         Q    You mentioned the application of
```

1                     LAURA MELLO

2       potential FOIL exemptions.  Can you explain to

3       me in a little bit more detail how that

4       process works.

5                     MS. SAINT-FORT:  Objection to

6           form.

7                     You can answer.

8                     THE WITNESS:  The documents are

9           reviewed for any information that may be

10          withheld or must be withheld by the

11          department as outlined in the FOIL law.

12          And if the records requested or portions of

13          those records fall under those exemptions,

14          then that information is withheld by

15          redaction or the entirety of the document.

16      BY MR. NORTH:

17          Q       And just so I understand, the

18      process that you just described, you described

19      that in the context of my question about how

20      you trained your employees, but I want to

21      understand, is that process that you laid out

22      in a written policy maintained by the

23      department or used by the department but

24      maintained by the City, or is it just a part

25      of your training to your employees?

Page 20

1                    LAURA MELLO
2        A       It is part of the training.
3        Q       Okay.
4        A       In --
5        Q       I'm sorry.  I didn't mean to cut
6    you off, if I did.
7        A       No, that's -- that's all.
8        Q       Okay.  And have you revised this
9    instruction or training in your seven years at
10   the Department of Correction, or has it
11   changed at all during that span?
12       A       It has changed only to the extent
13   that additional guidance or laws have been
14   passed that are relevant to the FOIL law.
15   Then that is modified accordingly.
16       Q       When you refer to additional
17   guidance, what is the source of that guidance?
18       A       The source of that guidance would
19   be from legislation that has passed or from
20   guidance from the law department regarding
21   such passing or revision.
22       Q       So is it fair to say that you keep
23   abreast of changes in litigation [sic] and
24   update your training accordingly?
25       A       Yes.

Page 21

```
 1                    LAURA MELLO
 2              MS. SAINT-FORT:  Objection to
 3         form.
 4    BY MR. NORTH:
 5         Q     I see that it says "litigation" on
 6    the realtime; but if I said that, I was
 7    mistaken.  I meant to say "legislation."
 8              Can you tell me a little bit more
 9    about the guidance that you receive from the
10    law department about the proper application of
11    FOIL.
12              MS. SAINT-FORT:  Objection to
13         form.  I'm going to instruct the witness
14         not to answer to the extent that your
15         answer would infringe on privileged
16         communications.
17              THE WITNESS:  Those are -- that
18         reflects privileged communication.
19    BY MR. NORTH:
20         Q     Do you receive guidance from any
21    other sources besides the law department for
22    your review of new legislation in the FOIL
23    area?
24         A     I periodically review information
25    on the Committee on Open Government website.
```

Page 22

1                    LAURA MELLO
2        Q        What is your understanding of the
3    role of the Committee on Open Government?
4        A        The Committee on Open Government
5    issues advisory opinions on FOIL-related
6    issues.
7        Q        And when you periodically review
8    the Committee on Open Government website, does
9    that review include the review of advisory
10   opinions?
11       A        It may.
12       Q        Has it in the past?
13       A        Yes.
14       Q        And how do you use the advisory
15   opinions issued by the Committee on Open
16   Government in determining the proper
17   application of FOIL to requests received by
18   the department?
19       A        I view the -- I'm sorry.  Could
20   you repeat the question?
21       Q        Sure.
22                How do you use the advisory
23   opinions issued by the Committee on Open
24   Government in determining the proper
25   application of FOIL to requests received by

1                    LAURA MELLO

2       the department?

3            A       I use the advisory opinions as

4       guidance, other information they may provide

5       as guidance.  I do not use them as binding but

6       as instructive.

7            Q       Is it fair to say that they have,

8       in legal speak, persuasive authority as

9       opposed to binding authority?

10                  MS. SAINT-FORT:  Objection.  Form.

11                  You can answer.

12                  THE WITNESS:  They can be

13        persuasive.

14      BY MR. NORTH:

15           Q       Is there anything else that guides

16      how the department responds to FOIL requests?

17           A       No.

18           Q       Are there any policies used by

19      other City agencies regarding FOIL that the

20      department uses to guide its discretion in

21      responding to FOIL requests?

22           A       No.

23           Q       Are there any citywide policies

24      issued by the City of New York pertaining to

25      the disclosure of information to third parties

Page 24

1                      LAURA MELLO

2      that the department uses in responding to FOIL

3      requests?

4          A       No.

5          Q       How does the department ensure

6      that its treatment of FOIL requests is

7      consistently applied from one request to the

8      next?

9                  MS. SAINT-FORT:  Objection to

10            form.

11                  You can answer.

12                  THE WITNESS:  We build on -- we

13            understand how requests have been responded

14            to, and we are able to reference previous

15            requests in our database, and generally we

16            are able to apply consistent responses to

17            the same types of requests based on

18            those -- based on those records.

19      BY MR. NORTH:

20          Q       So is it a common part of your

21      practice, in responding to FOIL requests, to

22      review previous requests and the department's

23      responses to those requests to determine how

24      to respond to the new requests?

25          A       Yes.

Page 25

1                    LAURA MELLO

2                    MS. SAINT-FORT:   Objection to

3          form.

4     BY MR. NORTH:

5          Q       And you mentioned that the

6     previous requests are stored in a database; is

7     that correct?

8          A       Yes.

9          Q       And you also testified that you're

10    able to retrieve previous requests and

11    responses from those databases -- from that

12    database; is that correct?

13         A       Yes.

14         Q       How are you able to search that

15    database for previous requests and responses?

16         A       We can search by subject of the

17    FOIL.  We can search by the requester name.

18    We can search by the name of the individual

19    whose records are being requested.  We can

20    search by attorney name if it's been -- or

21    firm if it's been submitted by an attorney or

22    a firm.

23         Q       Are you able to search by

24    whether -- are you able to search according to

25    the disposition of the request?

Page 26

1                    LAURA MELLO

2              MS. SAINT-FORT:  Objection.

3              You can answer.

4    BY MR. NORTH:

5        Q     I'm sorry.  You cut out for a

6    second there.  Was that a yes or no?

7        A     No.

8        Q     Thank you.

9              So of the different things that

10   you can search by that you just described,

11   which one of those functions would you

12   typically use to pull up relevant previous

13   requests to inform your disposition on a new

14   request?

15             MS. SAINT-FORT:  Objection to

16       form.

17             You can answer.

18             THE WITNESS:  The subject of the

19       request.

20   BY MR. NORTH:

21       Q     What is the subject of the

22   request?  Can you give me an example of the

23   subject of the request?

24       A     An example would be inmate file.

25       Q     So if you received a new request

Page 27

1                         LAURA MELLO

2          for a specific inmate's file, you could look

3          up that new inmate -- you could look up that

4          inmate's name and see if there are previous

5          requests for that inmate file using a name, or

6          you could also search for previous requests

7          for other inmate files using that as the

8          subject?  Do I have that right?

9              A       Yes.

10             Q       Would member of service

11         disciplinary records be another subject that

12         you could search for?

13             A       Disciplinary records is a subject

14         we can search for.

15             Q       Let's take a look at a document.

16                     MR. NORTH:  Matt, if you can pull

17            up Tab 26, please.

18                         (Exhibit Number 1, Citywide

19                  Privacy Protection Policies and

20                  Protocols, dated 1/28/19,

21                  Bates-stamped DEF_UFOA_001944 -

22                  1981, was marked for

23                  identification.)

24         BY MR. NORTH:

25             Q       And Ms. Mello, this should appear

Page 28

1                    LAURA MELLO

2      on your screen automatically in just a few

3      moments, but while he pulls it up, I'm going

4      to be showing you a document called "Citywide

5      Privacy Protection Policies and Protocols."

6           A     Yes.

7           Q     Do you see it?

8           A     Yes, I do.

9           Q     Are you familiar with this

10     document?

11          A     Yes, I am.

12          Q     How are you familiar with it?

13          A     I am the department's agency

14     privacy officer.

15          Q     And in that capacity, do you

16     interact with the City's chief privacy

17     officer?

18          A     Yes, I do.

19          Q     Do you routinely use this document

20     in your capacity as the privacy officer for

21     the department?

22          A     Yes, I do.

23                MR. NORTH:  If we can scroll

24       down -- there's some numbering at the

25       bottom -- to page 1954.

Page  29

1                          LAURA MELLO

2        BY MR. NORTH:

3             Q        There's a highlighted

4        Section 1.5.5 entitled "Model Protocols for

5        Handling Third-Party Requests for Information

6        Held by City Agencies."

7             A        Yes.

8             Q        And you see where it says "City

9        agencies should follow the Model Protocols for

10       Handling Third-Party Requests for information

11       Held by City Agencies, issued as City policy

12       in April 2017 by the First Deputy Mayor."

13            A        Yes.

14            Q        "The Model Protocols set forth a

15       factual and legal assessment process which

16       agencies must follow when handling a request

17       from a third party for City information,

18       including but not limited to identifying

19       information.  Agencies must either adopt the

20       Model Protocols in their entirety, or develop

21       and adopt a comparable protocol."

22            A        Yes.

23            Q        Has the department adopted the

24       model protocols?

25            A        Yes.

Page 30

1                        LAURA MELLO

2          Q        And do the model protocols govern

3      the department's handling of FOIL requests?

4          A        It could be considered a broad

5      guidance.

6          Q        Do you use the model protocols in

7      determining how to respond to FOIL requests?

8          A        To the extent -- I'm sorry.  Could

9      you repeat the question?  I got distracted for

10     a second.

11         Q        No problem.

12                  Do you use the model protocols in

13     determining how to respond to FOIL requests?

14         A        As a broad guidance.

15         Q        Would you characterize this as one

16     of the written policies that you use to

17     broadly guide your response to FOIL requests?

18                  MS. SAINT-FORT:  Objection to

19         form.

20                  You can answer.

21                  THE WITNESS:  Yes.  We -- that --

22         that's accurate.

23     BY MR. NORTH:

24         Q        This provision -- not of the model

25     protocols but the document on your screen --

1                    LAURA MELLO

2     references that the model protocols set forth

3     the factual and legal assessment process for

4     agencies to follow.  Can you please describe

5     for me generally what that factual and legal

6     assessment process involves.

7          A     It basically --

8                CERTIFIED STENOGRAPHER:  I'm

9     sorry.  Did you cut out?

10               THE WITNESS:  No.  No.  There was

11     some static.

12               MS. SAINT-FORT:  Did you hear the

13     question, Laura?  Do you need it repeated?

14               THE WITNESS:  I did hear it, yeah.

15               I know that we -- our process

16     follows this guidance.  I have not recently

17     reviewed the model protocol specifically.

18     So I don't want to misstate the actual

19     steps listed, but our steps are consistent

20     with it.

21     BY MR. NORTH:

22          Q     Since we don't have the document

23     here, can you provide any more detail on what

24     that factual and legal assessment process

25     entails?

1                        LAURA MELLO

2         A       We ensure that the requester has

3    a -- so the department advises the individual

4    that all requests -- third-party requests for

5    information must go through the legal division

6    and specifically the FOIL officer.  The FOIL

7    officer must be aware of all these requests.

8    And then that's where the information is

9    reviewed.  The request is reviewed, and the

10   request is assessed to ensure that it is

11   properly disclosable and that disclosure does

12   not violate any laws related to identifying

13   information.

14        Q       And does that process involve the

15   application of particular FOIL exemptions to a

16   request for information?

17        A       It may.

18        Q       And when you mention identifying

19   information, can you please describe what you

20   mean by that.

21        A       Identifying information is

22   generally information sometimes called

23   "personally identifying information" that can

24   be used individually or in -- together,

25   multiple pieces of identifying information to

1                    LAURA MELLO

2      identify an individual, such as name, birth

3      date, address.

4          Q      And aside from personal

5      identifying information, do the model

6      protocols govern the treatment of other

7      information where disclosure of that

8      information could constitute an unwarranted

9      invasion of privacy?

10         A      Yes.

11         Q      Can you please describe what the

12     model protocols say in that regard.

13         A      The -- like I said, I haven't

14     recently reviewed the model protocols

15     specifically except to ensure that our

16     handling of information is consistent with

17     them, handling of requests for information.

18                We ensure either that the

19     person -- that the information requested is

20     public, already publicly available, or maybe

21     publicly disclosed because it is publicly

22     available elsewhere.  And if it is not

23     publicly available, then we review that

24     request to ensure that information is not

25     disclosed to -- in an unwarranted way; that

```
                           LAURA MELLO
 1
 2      the requester has the right and the authority
 3      to request and receive the information.  We
 4      also make sure that it doesn't violate any
 5      legal requirements to keep the information
 6      confidential.
 7          Q       And when you speak of legal
 8      requirements to keep the information
 9      confidential, do you have particular legal
10      requirements in mind?
11          A       For example, we don't disclose
12      social security numbers, to the extent that we
13      possess them.
14          Q       Are there other legal requirements
15      that you have in mind that don't relate to
16      personally identifiable information?
17          A       We're talking prior to -- before
18      50-a was repealed, that was one limitation
19      about disciplinary records.
20          Q       And do you have anything else in
21      mind?
22          A       At the moment, no.
23          Q       And, again, recognizing that you
24      don't have the document in front of you and
25      you say you haven't referenced it recently,
```

1                    LAURA MELLO

2    can you describe for me whether the model

3    protocols require the individual assessment of

4    records prior to their release to determine

5    whether disclosure is appropriate.

6         A        Each request would be on a

7    case-by-case basis, handled on a case-by-case

8    basis.

9         Q        Do you consider whether disclosure

10   is appropriate on a record-by-record basis?

11                 MS. SAINT-FORT:  Objection to

12        form.

13                 You can answer.

14                 THE WITNESS:  If the request -- if

15        the response to a request entailed multiple

16        records, yes.

17   BY MR. NORTH:

18        Q        So would you perform a

19   file-by-file review of each of the records

20   encompassed by a single request?

21        A        Yes.

22        Q        And is that required by the model

23   protocols?

24        A        I don't recall.

25        Q        But it's fair to say that that is

1                          LAURA MELLO

2        the common practice at the Department of

3        Correction?

4             A      Yes.

5             Q      At the outset, you mentioned that

6        you have a small FOIL unit.  Can you tell me

7        how many employees of the department are

8        responsible in some way for reviewing and

9        responding to FOIL requests?

10            A      There are two full-time legal

11       assistants and one part-time legal assistant

12       who work on FOIL requests.  Other attorneys in

13       the legal division may assist in the process

14       on an as-needed basis.

15            Q      Has your staffing gone up or down

16       in this area over the past five years?

17                   MS. SAINT-FORT:  Objection to

18            form.

19                   You can answer.

20                   THE WITNESS:  No.  I -- let me

21            clarify.  We had this setup.  One full-time

22            legal assistant left; so it went down.  But

23            then another legal assistant was added; so

24            it went back up.  It has not gone up from

25            that in that time period.

Page 37

```
 1                     LAURA MELLO
 2      BY MR. NORTH:
 3           Q       Okay.  Thank you for clarifying.
 4                   You mentioned before and we've
 5      discussed the specific exemptions to
 6      disclosure under FOIL, and I would just like
 7      to go through those one by one.
 8                   In general when responding to a
 9      FOIL request, does the department consider
10      whether the release of a particular record
11      would constitute an unreasonable or
12      unwarranted invasion of privacy?
13           A       Yes.
14           Q       And same question as to the safety
15      exemption.  Does the agency, in responding to
16      a FOIL request, consider whether the
17      disclosure would threaten the life or safety
18      of any person?
19           A       Yes.
20           Q       And then same question about
21      another exemption.  Does the agency consider
22      whether disclosure of a particular record
23      would impair contract awards or collective
24      bargaining negotiations?
25           A       If appropriate, yes.
```

1                    LAURA MELLO

2        Q        How does -- just speaking of this

3    last one about contract awards and collective

4    bargaining, how does the agency apply that

5    exemption or determine whether it could

6    potentially apply?

7        A        I do not recall a FOIL request

8    that implicated that specific exemption.

9        Q        Has the department ever received

10   records requests under FOIL for disciplinary

11   or personnel records of corrections officers?

12       A        Rarely, but yes.

13       Q        Has the department received any

14   such requests since June 12th of 2020?

15       A        Yes.

16       Q        And has the department responded

17   to those requests?

18       A        No.

19       Q        Going back to the privacy

20   exemption, how does the department determine

21   whether disclosure of a disciplinary record

22   might affect a corrections officer's privacy

23   rights?

24       A        (Zoom audio cut out) . . . whose

25   records are being requested if the requester

Page 39

LAURA MELLO

1
2    is not the person who is requesting -- I just

3    want to -- I'm sorry.  I just got a note --

4    message on my screen saying my Internet

5    connection is unstable.  I just wanted

6    to . . .

7         Q       Oh, okay.  No, I think you -- I'm

8    sorry.

9                 And I should clarify, and I

10   appreciate that distinction that you just

11   made.  I am speaking of requests for records

12   where the requester is not the subject of the

13   records, if that makes sense.

14        A       In that case, we would require --

15   we require a notarized authorization from the

16   subject of the records before we release that

17   record.  We don't release -- in the context of

18   disciplinary records, we don't release those

19   records -- we don't release those records

20   unless we have them.

21        Q       Unless you have a notarized

22   release from the subject of the records.  Do I

23   have that right?

24        A       Yes.

25        Q       Okay.  Is there any aspect of --

Page 40

1                          LAURA MELLO

2       and to clarify -- and I apologize for jumping

3       around a bit, when I said we would talk about

4       two time periods, but I want to understand, is

5       that your current policy?

6           A       We --

7                   MS. SAINT-FORT:  Objection to the

8            form, unless -- the witness can answer to

9            the extent it doesn't infringe on

10           privilege.

11                  THE WITNESS:  I have not made that

12           determination.

13      BY MR. NORTH:

14          Q       You cut out; so I just want to

15      clarify.  Did you say that you have not made

16      that determination or the department has not

17      made that determination?

18          A       That's correct.

19          Q       Okay.  Thank you.

20                  Is the department currently

21      considering whether to change that policy?

22                  MS. SAINT-FORT:  Objection to

23           form.  The witness can answer to the extent

24           it does not breach privilege.

25                  THE WITNESS:  Can you repeat the

Page 41

1                          LAURA MELLO

2          question, please?

3      BY MR. NORTH:

4          Q     Is the department currently

5      considering whether to change that policy?

6                    MS. SAINT-FORT:  Same objection.

7                    THE WITNESS:  We have not made

8          that determination.

9      BY MR. NORTH:

10         Q     My question was just slightly

11     different, and it is whether the department is

12     currently considering whether to change the

13     policy.

14                    MS. SAINT-FORT:  Objection to

15         form.  I'm also objecting on the basis of

16         privilege.  The witness can answer to the

17         extent it does not breach privileged

18         communications.

19                    THE WITNESS:  We have not made

20         that determination yet.

21     BY MR. NORTH:

22         Q     I'm just asking a slightly

23     different question and certainly not looking

24     into the substance of your consideration.  I'm

25     just looking for an answer on whether the

Page 42

1                          LAURA MELLO

2       department is currently considering whether to

3       permit individuals other than the officers

4       identified in the disciplinary records to

5       access those disciplinary records.

6                    MS. SAINT-FORT:  Objection on the

7              basis of privilege.  The witness has

8              already answered.  I'm going to instruct

9              her not to answer any further because the

10             answer to that question would necessarily

11             reveal privileged communications.

12      BY MR. NORTH:

13          Q       Are you going to follow your

14      counsel's instruction?

15          A       Yes.

16          Q       Going back to the privacy

17      exemption, what types of information has the

18      department withheld under this exemption in

19      the past?

20          A       We have withheld the names of

21      individuals.  We have withheld identifying

22      numbers, such as field numbers, book and case

23      numbers, NYCET numbers.  We have withheld date

24      of birth.  We have withheld addresses, phone

25      numbers, email addresses.  We have withheld

Page 43

1                     LAURA MELLO

2      many other types of identifying information.

3      We have sometimes withheld other information,

4      such as work locations, work assignments, if

5      taken together it could potentially identify

6      an individual.  Any pieces of --

7           Q      Has the department --

8           A      Yeah, go ahead.

9           Q      No, I'm sorry.  I didn't mean to

10     cut you off.  You were finishing your answer.

11          A      Any pieces of information relating

12     to an individual, specifically an individual

13     that might together or independently might

14     tend to identify that individual.

15          Q      Thank you.

16                 And aside from information that

17     might tend to identify an individual, has the

18     agency relied on the privacy exemption to deny

19     public access to its records?

20          A      I'm not sure I understand the

21     question.

22          Q      I'm asking if there are other

23     types of records, aside from records that

24     might tend to identify a member of service or

25     corrections officer, that the agency has

Page 44

1                    LAURA MELLO

2     denied public access to under the privacy

3     exemption to FOIL.

4          A       Yes, records that might tend to

5     identify an inmate or an individual in

6     custody.

7          Q       Any other types of records?

8          A       Records that might tend to

9     identify a nonuniformed employee of the

10    department where applicable, or a visitor.

11         Q       Has the department ever --

12         A       A visitor to the department also.

13    Any -- any person who comes in contact with

14    the department, there is -- the privacy

15    exemption review would take place if that

16    individual is identified in records.

17         Q       Thank you.  And I'm sorry I keep

18    stepping on your answers.  It's just a quirk

19    of this platform.

20                 Has the department ever relied on

21    the privacy exemption to deny a request for

22    officer disciplinary records?

23                 MS. SAINT-FORT:  I'm sorry, Laura.

24       Did you cut out?

25                 THE WITNESS:  Did anyone hear me

1                    LAURA MELLO

2        answer?

3                 MS. SAINT-FORT:  No.

4                 THE WITNESS:  I'm getting an

5        unstable --

6                 MR. NORTH:  No.  I'm sorry.

7                 THE WITNESS:  -- connection again.

8                 MS. SAINT-FORT:  No, we did not

9        hear your answer.

10   BY MR. NORTH:

11        Q     Could you please repeat it, or

12   would you like me to read the question back?

13        A     Please read the question back.

14        Q     Has the department ever relied on

15   the privacy exemption to deny any requests for

16   officer disciplinary records?

17        A     We rarely get requests for officer

18   disciplinary records.  I don't recall

19   immediately whether we have.  It's possible.

20        Q     And moving to the safety

21   exemption, how does the agency determine

22   whether disclosure of a record might affect

23   the life or safety of any person?

24        A     The Department of Correction

25   operates in a very safe and secure

Page 46

1                    LAURA MELLO
2    environment.  Safety is paramount in our
3    facilities.  So we review records very
4    carefully to determine whether the disclosure
5    of any particular information might be a
6    safety or security risk to everyone working or
7    living in our facilities or the department in
8    general.
9         Q     Can you provide an example of a
10   document that the department has withheld or
11   would withhold under the safety exemptions?
12        A     Yes.
13              MS. SAINT-FORT:  Object to the
14        form.
15              You can answer.
16              THE WITNESS:  There was a document
17        that revealed the identity of a
18        confidential informer and the actions that
19        that person had taken.
20   BY MR. NORTH:
21        Q     Can you provide any examples of a
22   document that relates to a correction officer
23   that --
24        A     You're frozen.
25        Q     -- the department would withhold?

Page 47

1                          LAURA MELLO

2          A          I can't . . .

3          Q          I think we might be having

4     connection issues, but can you hear me now,

5     Ms. Mello?  Are you able to hear me?

6          A          Now I can hear.  I -- I -- after I

7     answered my last question -- I can hear you.

8     Can you hear me?

9          Q          Yes, I can.  You're cutting out a

10    bit, but I'll just try that question again.

11                     Can you provide any examples of a

12    document that relates to a --

13         A          Yes.  I didn't hear the question.

14         Q          Okay.  Can you provide any

15    examples of a document that relates to a

16    corrections officer that the department would

17    withhold under the safety exemption?

18         A          Should I try to call in and not

19    use the audio -- the Internet audio?  Would

20    that help?

21         Q          I would have to defer to our tech

22    team on that, if that's a solution.

23                     DOCUMENT TECH:  Yes, Ms. Mello,

24         you can actually -- yeah, you can actually

25         call in.  I think we should go off the

1                        LAURA MELLO

2          record, and then we can deal with this

3          technical problem.  Is that okay?

4                    MS. SAINT-FORT:  That's fine.

5                    MR. NORTH:  Yes, let's do that,

6          please.

7                    THE VIDEOGRAPHER:  We're off

8          record at 10:23 a.m.

9                      (Break taken from 10:23 a.m. to

10              10:27 a.m.)

11                   THE VIDEOGRAPHER:  We're back on

12          the record at 10:27 a.m.

13     BY MR. NORTH:

14          Q     Okay.  Ms. Mello, I had previously

15     asked a question, and it seems like you might

16     have answered it, but I didn't hear it.  So if

17     you could just bear with me, I'll ask the same

18     question again.

19                   Can you provide any examples of a

20     document that relates to a corrections officer

21     that the department would withhold under the

22     safety exemption?

23          A     Relates to the -- can you clarify

24     that, please?

25          Q     Sure.

1                    LAURA MELLO

2              So does the department possess

3     records that relate to corrections officers,

4     such as their personnel files?

5          A     Yes.

6          Q     And does the department consider

7     whether the release of those records could

8     implicate the safety exemption?

9          A     Yes.  If we get a request for

10    them, yes.

11         Q     And walk me through that analysis

12    just a bit so I can understand how the

13    department views the safety exemption in the

14    specific context of a request for officer --

15    corrections officer personnel files.  What are

16    the safety considerations at work?

17         A     The safety considerations with

18    respect to records pertaining to a correction

19    officer are the same concerns that pertain to

20    any record possessed by the department.  We

21    work in a very safe and secure environment,

22    and there are many safety considerations in

23    that context.  And so any record is reviewed

24    for potential safety or security concerns that

25    would affect either the safety and security of

Page 50

1                              LAURA MELLO

2        any one individual person or the safety and

3        security of the functioning of the jail as a

4        whole.

5            Q        And can you provide any examples

6        of information that the department contains

7        that would not be disclosable because of the

8        safety exemption?

9                    MS. SAINT-FORT:  Objection to

10           form.

11                    You can answer.

12                    THE WITNESS:  Records that might

13           describe the method of assessing a

14           potential security breach in a facility and

15           how officers are to respond to that breach.

16       BY MR. NORTH:

17           Q        Are there any records contained

18       within corrections officer personnel files

19       that would affect the life or safety of any

20       person if disclosed?

21           A        Every file is reviewed in its

22       entirety to ensure that anything relating to

23       safety or security is appropriately reviewed

24       and addressed.

25           Q        My question was just a bit

Page 51

1                          LAURA MELLO

2        different, and it was asking about any

3        specific types of records, examples of

4        specific types of records contained within

5        personnel files that could affect the life or

6        safety of any person if disclosed.

7                     MS. SAINT-FORT:  Objection to

8            form.

9                     You can answer if you understand.

10                    THE WITNESS:  There are many types

11           of records that may be within a file, and

12           if those records related to something

13           that -- there are many types of records in

14           the file.  Not -- the same records are not

15           in every file.  That's why we have to

16           review every file individually.  It could

17           be -- so to the extent that it would

18           contain a record that describes a security

19           feature of the jail, that just describes

20           security feature -- the security response,

21           that would be taken into consideration.

22       BY MR. NORTH:

23           Q     And could that information be

24       included in personnel files?

25                    MS. SAINT-FORT:  Objection.  Form.

1                    LAURA MELLO

2              You can answer.

3              THE WITNESS:  Unlikely, but

4      possibly.

5      BY MR. NORTH:

6         Q     Is that possibility the reason for

7      the file-by-file review?

8         A     One of them.

9         Q     And what are the others?

10        A     We always review every document

11     before it goes out.  We don't assume anything.

12        Q     Why is it important to review

13     every document before it goes out?

14        A     To ensure that there is no

15     information that is disclosed that should not

16     be disclosed or must not be disclosed.

17        Q     Do you ever take a categorical

18     approach as opposed to an individual approach

19     in determining whether certain categories of

20     records should be disclosed, or do you always

21     review each record before it goes out?

22        A     If the record is available to us

23     and we receive it, we review it before we

24     disclose it.

25        Q     On an individual basis?

Page 53

1                    LAURA MELLO

2          A        Yes.

3          Q        Does the department forward copies

4     of its FOIL denial letters to the law

5     department?

6          A        No.

7          Q        Are you aware of any legal

8     requirement that the department do so?

9          A        No.

10          Q        Does the department have a

11     responsibility to protect the safety of its

12     officers?

13                    MS. SAINT-FORT:  Objection to

14          form.  And also outside the scope of this

15          topic, unless you can connect it to FOIL.

16                    MR. NORTH:  I'm happy to connect

17          it to FOIL.

18     BY MR. NORTH:

19          Q        Does the department have a

20     responsibility to protect the safety of its

21     officers in responding to a FOIL request?

22          A        The department has a

23     responsibility to protect the safety of all

24     individuals who work and live in its

25     facilities, in responding to a FOIL request.

1                    LAURA MELLO

2        Q        We spoke earlier about the

3    Committee on Open Government.  Is it fair to

4    describe the committee as the statewide

5    authority on the scope and application of FOIL

6    by agencies in New York?

7        A        Yes.

8        Q        And I think you testified earlier

9    that the department considers the views of the

10   committee in deciding how to respond to FOIL

11   requests.  Is that an accurate

12   characterization of your testimony?

13       A        The department may consider --

14   yes.

15       Q        And I think you also testified

16   that the department stays abreast of the

17   committee's advisory opinions.  Is that an

18   accurate characterization of your testimony?

19       A        I review, periodically,

20   information on the Committee on Open

21   Government website, yes.

22       Q        Has the department ever sought the

23   views of the committee on the proper

24   application of FOIL to a particular case?

25       A        I have not consulted with the

Page 55

```
 1                    LAURA MELLO
 2     Committee on Open Government.
 3          Q      Are you aware of anyone else at
 4     the department doing so?
 5          A      No.
 6          Q      Is the department aware that the
 7     committee has long advised that public
 8     disclosure of unsubstantiated or unfounded
 9     misconduct complaints could constitute an
10     unwarranted invasion of privacy?
11          A      Could you repeat that, please?
12          Q      Sure.  I know it was a long-winded
13     question.
14                 Is the department aware that the
15     Committee on Open Government has long advised
16     that public disclosure of unsubstantiated or
17     unfounded misconduct complaints could
18     constitute an unwarranted invasion of privacy?
19          A      I'm aware that the unwarranted
20     invasion of privacy is a consideration in
21     disclosure of such, yes.
22          Q      You're specifically aware that the
23     disclosure of unsubstantiated or unfounded
24     allegations could implicate -- could cause an
25     invasion of privacy; is that correct?
```

Page 56

1                    LAURA MELLO

2         A       Yes.

3         Q       Do you agree with this position?

4                 MS. SAINT-FORT:  Objection to

5      form.

6                 You can answer to the -- as to the

7      department.

8                 THE WITNESS:  The department

9      agrees --

10     BY MR. NORTH:

11        Q       I'm sorry.  Just -- go ahead.

12        A       Go ahead.

13        Q       Just to clarify, whenever I do say

14     "you," I am referring to the royal you, the

15     department.

16        A       The department's position has been

17     that such a disclosure could be an unwarranted

18     invasion of privacy.

19        Q       And how long has that been the

20     position of the department?

21        A       Since I've been there.

22        Q       Does that remain the position of

23     the department?

24                MS. SAINT-FORT:  Objection to

25      form.

Page 57

1                    LAURA MELLO

2              You can answer so long as it

3         doesn't breach privileged conversations.

4              THE WITNESS:  The department has

5         been reviewing all recent legislation and

6         recent issues.

7    BY MR. NORTH:

8         Q       And just to check and so that it's

9    clear on the record, is it the position of the

10   department that the disclosure of

11   unsubstantiated or unfounded allegations

12   against corrections officers could constitute

13   an unwarranted invasion of privacy?

14             MS. SAINT-FORT:  Objection.

15        Privilege.  You can answer to the extent it

16        doesn't -- your response does not breach

17        privilege.

18             THE WITNESS:  The department's

19        position has been that such disclosure

20        could be an unwarranted invasion of

21        privacy.

22   BY MR. NORTH:

23        Q       Thank you.

24             Does the department have policy or

25   practice for how to handle a request for

Page 58

1                    LAURA MELLO

2      unsubstantiated or unfounded allegations

3      against officers?

4           A      The department's policy relating

5      to requests for officer disciplinary records

6      is consistent across -- for any request for

7      disciplinary records.  The department receives

8      very few such requests.

9           Q      And is there -- when you say "the

10     department's policy relating to requests," is

11     that an unwritten policy?

12          A      That is an unwritten policy.

13          Q      And is it the unwritten policy or

14     practice of the department not to disclose

15     unsubstantiated or unfounded allegations

16     against corrections officers?

17               MS. SAINT-FORT:  Objection.

18               You can answer.

19               THE WITNESS:  Am I to answer?  I

20        didn't hear.

21               MS. SAINT-FORT:  Yes, you can

22        answer to the extent that it doesn't

23        infringe on privilege.

24               THE WITNESS:  Could you repeat the

25        question, please?

Page 59

1                      LAURA MELLO

2       BY MR. NORTH:

3            Q       Yes.

4                    Is it the unwritten policy or

5       practice of the department not to disclose

6       unsubstantiated or unfounded allegations

7       against corrections officers?

8            A       It has been the department's

9       policy not to disclose disciplinary records

10      unless the department receives a notarized

11      authorization from the individual whose --

12      whose records they are.

13           Q       And going back to the practice of

14      responding to FOIL requests, who is reviewing

15      the requests and potentially responsive

16      documents for the department?

17           A       The -- when a request comes in, it

18      is reviewed by a FOIL unit staff member.

19      There are many requests that are very standard

20      and common, such as requests for inmate files.

21      If a request relates to a disciplinary

22      request, they are instructed to notify me of

23      all such requests, and then I review the

24      request myself.

25           Q       What is the reason for that

Page 60

1                    LAURA MELLO

2    escalation to you in the case of requests for

3    disciplinary records?

4        A      In the past under 50-a, it was

5    very important to ensure that we complied with

6    the requirement not to disclose such

7    (indiscernible).

8                    CERTIFIED STENOGRAPHER:  I'm

9       sorry.  I didn't catch that last word.

10                   THE WITNESS:  Such records.

11   BY MR. NORTH:

12       Q      And when those requests were

13   elevated to you in the past under 50-a -- let

14   me start that question over.

15              In the past when records requests

16   were elevated to you because they encompassed

17   disciplinary records, did you consider

18   anything other than Section 50-a in

19   determining whether the requests should be

20   granted or denied?

21       A      The -- we rarely get those

22   requests.  So I would -- I would consider any

23   exemption -- any applicable exemption under

24   FOIL, any mandatory or permissive exemption

25   under FOIL.  So it could encompass those, yes.

Page 61

LAURA MELLO

1

2      Q      Just to check, separate and apart

3      from 50-a, you would apply the FOIL exemptions

4      to requests for disciplinary records?

5                  MS. SAINT-FORT:   Objection to

6          form.

7                  You can answer.

8                  THE WITNESS:   Where appropriate,

9          yes.

10     BY MR. NORTH:

11     Q      And I think you testified earlier

12     that the department has received requests for

13     disciplinary records since June 12, 2020; is

14     that correct?

15     A      That's correct.

16     Q      Who has asked for disciplinary

17     records from the department since June 12th,

18     2020?

19     A      Can -- who as in --

20     Q      Can you please identify the

21     requesters.

22     A      I don't have the names.  I don't

23     have their names handy.

24     Q      Can you describe for me the nature

25     of those requests in any way, such as the

Page 62

1                    LAURA MELLO

2     types of information sought?

3               MS. SAINT-FORT:  Objection to

4          form.

5               You can answer, if you understand.

6               THE WITNESS:  We have received

7          requests for disciplinary records for

8          officers.

9     BY MR. NORTH:

10         Q      Do those requests encompass

11    unsubstantiated or unfounded allegations

12    against officers?

13         A      The request itself?

14         Q      Yes.

15         A      I don't believe so.

16         Q      Just to clarify, the department

17    has received requests for disclosure of

18    disciplinary records since June 12th, but you

19    don't believe that those requests encompass

20    unsubstantiated allegations against

21    corrections officers?

22         A      I wouldn't say that's exactly

23    accurate.  The requests may not specify the

24    word "unsubstantiated."  They have -- there

25    have been requests for all disciplinary

Page 63

1                    LAURA MELLO

2    records.

3         Q        There have been requests for all

4    disciplinary records maintained by the

5    department for corrections officers; is that

6    correct?

7         A        Pertaining to specific

8    individuals.

9         Q        Have there been any large-volume

10   requests that are not specific to particular

11   corrections officers?

12        A        There is one that is somewhat

13   broader.

14        Q        Broader in what respect?

15        A        Relating to multiple officers.

16        Q        Can you give me a sense for the

17   quantity or volume of records requested?

18        A        The volume of records?  No.

19   The -- approximately ten officers, I believe.

20        Q        Is the requester approximately --

21   is the request for disciplinary records of

22   approximately ten officers the largest such

23   request that you've seen since June 12th, to

24   your knowledge?

25        A        To my knowledge as of yesterday.

Page 64

1                          LAURA MELLO

2          Q       Would you agree that disclosure of

3    unsubstantiated or unfounded complaints could

4    have an adverse effect on the reputation or

5    good name of the officers they identify?

6                  MS. SAINT-FORT:  Objection to

7          form.

8                  You can answer.

9                  THE WITNESS:  We have not yet made

10         that determination.

11   BY MR. NORTH:

12         Q       Without breaching any

13   attorney-client privilege, can you tell me

14   whether that is currently a subject of

15   conversation at the department?

16         A       That is something that we are

17   aware is an issue.

18         Q       And in what respect is that an

19   issue?

20                 MS. SAINT-FORT:  Objection to

21         form.  Privilege.  You can answer so long

22         as your response does not breach

23         attorney-client privilege.

24                 THE WITNESS:  We are aware that

25         that is a concern.

Page 65

1                         LAURA MELLO

2        BY MR. NORTH:

3             Q        Again without breaching privilege,

4        can you explain to me whether the department

5        has a concern that the release of

6        unsubstantiated allegations lodged against

7        corrections officers could affect the

8        reputation of those officers?

9                      MS. SAINT-FORT:  Objection.  Asked

10            and answered and also privileged.

11                     You can answer to the extent it

12            does not infringe on attorney-client

13            privilege.

14                     MR. NORTH:  That wasn't the basis

15            for my question.  That was the basis for my

16            question, and I'm happy to ask again.

17       BY MR. NORTH:

18            Q        Without breaching privilege, can

19       you explain to me whether the department has a

20       concern that the release of unsubstantiated

21       allegations lodged against corrections

22       officers could affect the reputations of those

23       officers?

24                     MS. SAINT-FORT:  Objection.  Asked

25            and answered.

Page 66

```
 1                      LAURA MELLO

 2              You can answer again.

 3              THE WITNESS:  It is something that

 4         we are aware is a concern.

 5    BY MR. NORTH:

 6         Q      Without breaching privilege, is

 7    that a concern of the department?

 8         A      That is something the department

 9    is aware is a concern.

10         Q      And in deciding whether

11    unsubstantiated or unfounded complaints should

12    be disclosed, has the department considered

13    whether such disclosure could affect

14    corrections officers' future employment

15    opportunities?

16              MS. SAINT-FORT:  Objection.

17              You can answer to the extent it

18         does not breach attorney-client privilege.

19              THE WITNESS:  That's -- the

20         department is aware that is a concern.

21    BY MR. NORTH:

22         Q      Is that a concern of the

23    department?

24              MS. SAINT-FORT:  Objection.  Asked

25         and answered.
```

Page 67

1                         LAURA MELLO

2                    THE WITNESS:  The department is

3            aware that is a concern.

4       BY MR. NORTH:

5            Q       I'm just asking a slightly

6       different question.  Is the department

7       concerned that the release of unsubstantiated

8       or unfounded complaints should be -- could

9       affect the future employment opportunities of

10      the identified corrections officers?

11                   MS. SAINT-FORT:  Objection.

12           Privileged.  To respond would necessarily

13           breach a attorney-client privilege.  So I'm

14           going to instruct the witness not to

15           answer.

16      BY MR. NORTH:

17           Q       Are you going to follow your

18      counsel's advice?

19           A       Yes.

20                   MR. NORTH:  Let's look at Tab 14,

21           please.

22                   (Exhibit Number 2, Opinion of

23               the Committee on Open Government,

24               FOIL AO 19775, dated 7/27/20, was

25               marked for identification.)

Page 68

1                         LAURA MELLO

2                    MR. NORTH:  This is an advisory

3          opinion of the Committee on Open

4          Government, and I'll mark this as an

5          exhibit.  And I may need to retroactively

6          go back and mark the previous document that

7          we showed as an exhibit.  That should also

8          be numbered and introduced.

9                    I believe this is Exhibit 2 for

10         this deposition, but please correct me if

11         that's wrong.

12     BY MR. NORTH:

13         Q      Are you familiar with this

14     advisory opinion, Ms. Mello?

15         A      Yes.

16         Q      When did you review this advisory

17     opinion?

18         A      I'm not sure of the exact date.

19     Sometime within the last week.

20         Q      How did this advisory opinion come

21     to your attention?

22         A      It was forwarded to me by the law

23     department.

24                    MR. NORTH:  If we can look at

25         page 2, seven lines down.  So the first

Page 69

1                    LAURA MELLO
2          highlighted block.  Actually, we'll look at
3          the second highlighted block.
4     BY MR. NORTH:
5          Q      Do you see where it says:  "The
6     new provisions of FOIL did not make changes to
7     provisions concerning personal privacy as
8     defined in Section 87(2)(b)"?
9          A      Yes.
10         Q      Are you aware of the new
11    provisions of FOIL?
12         A      Yes.
13         Q      And do you agree with this
14    statement that the new provisions of FOIL did
15    not make changes to provisions concerning
16    personal privacy as defined in 87(2)(b)?
17                MS. SAINT-FORT:  Objection.
18                You can answer.
19                THE WITNESS:  Yes.
20    BY MR. NORTH:
21         Q      I'm sorry.  Did you say yes?
22         A      Yes.
23         Q      And on page 2 also -- actually,
24    the following sentence says:  "Based on our
25    longstanding interpretation that requires an

Page 70

1                          LAURA MELLO

2       agency to determine if an unsubstantiated or

3       unfounded complaint against an employee would,

4       if disclosed, constitute an unwarranted

5       invasion of personal privacy, and absent

6       language expressing that the legislature

7       intended that law enforcement disciplinary

8       records should enjoy less protection than the

9       disciplinary records of other government

10      employees, we do not impute such an intent."

11                  Does the department agree with

12      this sentence?

13                  MS. SAINT-FORT:  Objection.

14                  You can answer.

15                  THE WITNESS:  I just want to read

16          it myself here before I answer.

17      BY MR. NORTH:

18          Q       Please do.

19          A       (Reviewing document.)

20                  Yes.  I answered yes.  I don't

21      know if you heard me.

22          Q       Thank you.  Thank you.  Yes, I

23      did.

24                  And in the final paragraph, the

25      committee states in the highlighted portion:

Page 71

1                       LAURA MELLO

2          "In light of the repeal of Section 50-a, a

3          request for disciplinary records relating to a

4          police officer must be reviewed in the same

5          manner as a request for disciplinary records

6          of any other public employee."

7                       Do you see that text?

8          A        Yes.

9          Q        Understanding that this is

10         directed to a police officer, if we just

11         substitute "corrections officer" for "police

12         officer" in this sentence, would the

13         department agree with this statement of the

14         committee?

15                   MS. SAINT-FORT:  Objection.

16                   You can answer to the extent that

17              it doesn't infringe on privilege.

18                   THE WITNESS:  The department

19              understands that this is the advice of the

20              Committee on Open Government.

21         BY MR. NORTH:

22         Q        Does the department intend to

23         follow this advice?

24                   MS. SAINT-FORT:  Objection.

25                   You can answer to the extent it

Page 72

1                    LAURA MELLO

2        doesn't breach attorney-client privilege.

3                    THE WITNESS:  The department is

4        taking this under consideration.

5    BY MR. NORTH:

6        Q       Is there an existing policy in

7    place at the department that is not being

8    taken under consideration that pertains to the

9    disclosure of disciplinary records?

10                   MS. SAINT-FORT:  Objection.  Can

11       you specify the time frame for the

12       question, please.

13                   MR. NORTH:  I did in the question,

14       but I'm happy do that again --

15                   MS. SAINT-FORT:  Sorry.

16                   MR. NORTH:  -- and clarify that.

17       That's fine.

18                   MS. SAINT-FORT:  Thank you.

19   BY MR. NORTH:

20       Q       Does the department have an

21   existing policy that is in force today that

22   relates to the disclosure of disciplinary

23   records in response to FOIL requests?

24                   MS. SAINT-FORT:  You can --

25       objection.

Page 73

1                         LAURA MELLO

2                  You can answer to the extent it

3          doesn't breach attorney-client privilege.

4                  THE WITNESS:   The department is

5          reviewing --

6      BY MR. NORTH:

7          Q       Okay.

8          A       -- its policies relating to (Zoom

9      audio cut out) . . .

10         Q       I'm sorry.  You cut out.  The

11     department is reviewing?

12         A       Its policies relating to the

13     disclosure of this from everybody.

14         Q       And I appreciate the department is

15     currently reviewing those policies, but my

16     question was just a bit different, and that is

17     whether there is a policy that is currently in

18     force at the department for responding to FOIL

19     requests for disciplinary records of

20     corrections officers?

21                 MS. SAINT-FORT:  Objection.

22                 You can answer.

23                 THE WITNESS:  The policy is under

24         review.

25                         ///

Page 74

1                          LAURA MELLO

2       BY MR. NORTH:

3            Q        Has the policy been suspended?

4            A        The policy is under review.

5            Q        Is the department's current

6       position -- strike that.

7                          Prior to the repeal of 50-a, was

8       it the department's position that a request

9       for disciplinary records for a corrections

10      officer must be reviewed in the same manner as

11      a request for disciplinary records of any

12      other public employee?

13                          MS. SAINT-FORT:  Objection.

14                          You can answer.

15                          THE WITNESS:  Can you repeat the

16          question again?

17                          MR. NORTH:  Could I have the court

18          reporter read that question back, please.

19                          (Previous question read back.)

20                          THE WITNESS:  Prior to the repeal

21          of 50-a, it was not the department's

22          position that a request for disciplinary

23          records of an officer must be reviewed in

24          the same manner as the disciplinary

25          officers -- as disciplinary records of

Page 75

```
 1                    LAURA MELLO
 2        another employee.
 3    BY MR. NORTH:
 4        Q       Why was that the case?
 5        A       Because 50-a -- because of 50-a.
 6        Q       And after the repeal of 50-a or
 7    after June 12th, 2020, was it the position of
 8    the department that the request for
 9    disciplinary records relating to a corrections
10    officer must be reviewed in the same manner as
11    a request for disciplinary records of any
12    other public employee?
13                    MS. SAINT-FORT:  Objection.
14                    THE WITNESS:  That is --
15                    MS. SAINT-FORT:  You can answer.
16    BY MR. NORTH:
17        Q       I'm sorry.  I didn't hear a
18    response.
19                    MS. SAINT-FORT:  The court
20        reporter can read back her answer, if you
21        got it.
22                    CERTIFIED STENOGRAPHER:  I didn't
23        hear one.
24                    MS. SAINT-FORT:  Okay.
25                    THE WITNESS:  That is under
```

Page 76

1                      LAURA MELLO

2          review.

3     BY MR. NORTH:

4          Q      And is the department considering

5     whether requests for disciplinary records

6     relating to a corrections officer should be

7     reviewed in the same manner as a request for

8     disciplinary records of any other public

9     employee, in light of the repeal of 50-a?

10              MS. SAINT-FORT:  Objection.  Asked

11          and answered and privileged.

12              You can respond to the extent it

13          does not breach attorney-client privilege.

14     BY MR. NORTH:

15          Q      And to clarify, I'm not asking for

16     the substance of any conversations that you've

17     had with an attorney on this subject.  I'm

18     asking a question that does not go to the

19     substance or -- and does not call for

20     privileged information.  I'm merely asking a

21     yes-or-no question as to whether the

22     department is considering whether requests for

23     disciplinary records relating to a corrections

24     officer should be reviewed in the same manner

25     as requests for disciplinary records of any

Page 77

```
1                    LAURA MELLO
2      other public employee, in light of the repeal
3      of 50-a.
4               MS. SAINT-FORT:  I'm going to make
5          the same objection because your question
6          necessarily requires an answer based on
7          privileged communications.
8               But you can answer to the extent
9          you don't reveal such communication.
10              THE WITNESS:  That is under the --
11         that is under review.
12     BY MR. NORTH:
13         Q      And to be clear, I'm not asking
14     for the position or any legal advice that you
15     have received on the proper position but
16     merely whether that is being considered.
17              MS. SAINT-FORT:  Objection.
18              THE WITNESS:  The department --
19              MS. SAINT-FORT:  Same.  You can
20         answer to the extent it doesn't infringe
21         privilege.
22              THE WITNESS:  The department's
23         position is under review.
24     BY MR. NORTH:
25         Q      How would the department handle a
```

Page 78

1                        LAURA MELLO
2      FOIL request today for disciplinary records of
3      an employee who was not a law enforcement
4      officer?
5                    MS. SAINT-FORT:  Objection.
6                    THE WITNESS:  The department --
7                    MS. SAINT-FORT:  You can answer.
8                    THE WITNESS:  The department
9           receives that request, makes the internal
10          request for the records, and when receives
11          the records, reviews the records for any
12          applicable FOIL -- any applicable FOIL
13          exemptions, whether they are mandatory or
14          permissive.
15     BY MR. NORTH:
16        Q       And would the department handle a
17     FOIL request for disciplinary records of a law
18     enforcement officer differently from what you
19     just described?
20                    MS. SAINT-FORT:  Objection.
21                    You can answer to the extent it
22          does not breach privilege.
23                    THE WITNESS:  The department is
24          not currently releasing disciplinary
25          records of officers because there is a

1                     LAURA MELLO

2          prohibition on doing so.

3     BY MR. NORTH:

4          Q       And I certainly understand why

5     that is the case, but in the absence of that

6     prohibition -- strike that.

7                     Are you referring to the

8     injunction in this lawsuit?

9          A       Yes.

10          Q       And in the absence of that

11     injunction, would the department treat a FOIL

12     request for disciplinary records of a law

13     enforcement officer differently from the

14     process you described for a nonlaw enforcement

15     officer?

16                     MS. SAINT-FORT:  Objection.

17                     THE WITNESS:  That is under --

18                     MS. SAINT-FORT:  Privilege.  You

19          can answer to the extent it does not

20          infringe on attorney-client privilege.

21                     THE WITNESS:  That is under

22          review.

23     BY MR. NORTH:

24          Q       I just have a few more questions

25     for you today.

Page 80

1                    LAURA MELLO

2              MR. NORTH:  If we can look at

3         Tab 5, please.  I'd like to introduce this

4         as the next exhibit, which I believe is

5         Exhibit 3 for this deposition, but the

6         court reporter will correct me if that's

7         wrong.

8                 (Exhibit Number 3, Letter from

9              Rebecca G. Quinn and Dominique

10             Saint-Fort to Judge Failla dated

11             7/25/20, was marked for

12             identification.)

13   BY MR. NORTH:

14       Q      This is a letter from the New York

15   City Law Department to the United States

16   District Court dated July 25, 2020.  Have you

17   seen this record -- have you seen this

18   document before, Ms. Mello?

19       A      I have not.

20              MR. NORTH:  If we could just go

21         to, I believe, the second page.

22   BY MR. NORTH:

23       Q      The highlighted portion there, do

24   you see where it states --

25              MR. NORTH:  And if we could blow

Page 81

1                         LAURA MELLO

2          up that text a little bit, please.

3     BY MR. NORTH:

4          Q     You see where it states:  "The

5     repeal was signed on June 12, 2020, and the

6     City agencies that had applicable records,

7     including the CCRB, all separately began to

8     determine ways that they could provide the

9     public the information and data within their

10    possession, which included unsubstantiated,

11    exonerated, and unfounded cases, that would be

12    subject to FOIL.  The CCRB immediately began

13    efforts to provide the information that would

14    now be disclosable under FOIL to the public,

15    to fulfill the legislature's mandate."

16               Do you agree that the repeal of

17    50-a was a mandate from the legislature to

18    release all disciplinary records?

19               MS. SAINT-FORT:  Objection.  I'm

20         going to instruct the witness not to answer

21         as outside of the scope of this topic.

22               MR. NORTH:  This topic is FOIL

23         policies and practices and the protection

24         of private information, and this passage of

25         the law department's letter relates to the

Page 82

1                    LAURA MELLO

2          disclosure of documents under FOIL.  And I

3          am asking the witness for the department's

4          position on its obligations to withhold or

5          disclose particular documents under FOIL.

6          So it's very much relevant to Topic

7          Number 4.

8                    MS. SAINT-FORT:  I disagree.  Your

9          specific question, which can be read back

10          by the court reporter, if necessary, was

11          whether she agrees that 50-a was a mandate

12          to disclose records, and that's not within

13          the scope of the topic.

14                    MR. NORTH:  I certainly intended

15          to ask about the department's views.  So

16          I'll ask that question again.

17     BY MR. NORTH:

18          Q     Is it the department's position

19     that the repeal of 50-a was a mandate from the

20     legislature to release all disciplinary

21     records?

22                    MS. SAINT-FORT:  Objection.

23                    You can answer to the extent it

24          does not breach attorney-client privilege.

25                    THE WITNESS:  I have not

1                          LAURA MELLO

2         previously seen this sentence or this

3         description, and as I have previously

4         stated, the department's policy is under

5         review.

6    BY MR. NORTH:

7         Q      And does the department have a

8    position as to whether the repeal of 50-a is a

9    requirement or a mandate by the State to

10   disclose all disciplinary records

11   notwithstanding the FOIL exemptions?

12                   MS. SAINT-FORT:  Objection.

13                   You can answer to the extent it

14        does not breach attorney-client privilege.

15                   THE WITNESS:  The department is

16        reviewing this and other related policies.

17   BY MR. NORTH:

18        Q      Is the department considering any

19   proactive disclosure of disciplinary records

20   in response to the repeal of 50-a?

21                   MS. SAINT-FORT:  Objection.  I'm

22        going to instruct the witness not to

23        answer.  It's outside the scope of this

24        topic.

25                   ///

Page 84

1                    LAURA MELLO

2     BY MR. NORTH:

3          Q       Are you going to follow your

4     counsel's advice?

5          A       Yes.

6          Q       Does the department have a

7     position as to whether or not the disciplinary

8     records of its corrections officers should

9     receive the protections that other City

10    employees are afforded?

11               MS. SAINT-FORT:  Objection.  Asked

12         and answered.

13    BY MR. NORTH:

14         Q       You can answer.

15         A       Could you read the question again?

16         Q       Does the department have a

17    position as to whether or not the disciplinary

18    records of its corrections officers should

19    receive the same protections that other City

20    employees are afforded?

21         A       The department's policies on

22    responding to these requests are under review.

23               MS. SAINT-FORT:  I added a couple

24         minutes for extra time, but I think we

25         might be at 90 minutes.  I don't know if

Page 85

1                     LAURA MELLO

2          you want to confirm with Jeremy.  I don't

3          know if there's a time frame on the video,

4          but I added time for breaks and additional

5          technical issues.

6                     MR. NORTH:  Okay.  I just had a

7          few more questions, if you could just give

8          me a couple of more minutes to finish up

9          and get done with --

10                     MS. SAINT-FORT:  Probably just --

11          probably just one, but I think we're at the

12          time -- the time limit.

13                     MR. NORTH:  Okay.

14     BY MR. NORTH:

15          Q     Has the department changed its

16     position as to which disciplinary records it

17     would release in light of the repeal of 50-a

18     since the repeal of 50-a?

19                     MS. SAINT-FORT:  Objection.

20                     You can answer to the extent that

21          does not infringe on attorney-client

22          privilege.

23                     THE WITNESS:  The department's

24          position is under review.

25                     ///

Page 86

1                          LAURA MELLO

2          BY MR. NORTH:

3               Q      But that -- so just one quick

4          follow-up on that.

5                      The law department has represented

6          to the Court which disciplinary records the

7          department was planning to publicly release,

8          and my question goes to whether that

9          representation has been changed or is subject

10         to revision since it was made.

11                   MS. SAINT-FORT:  I'm going to

12              object.  It's outside the scope of this

13              topic.  That's different from FOIL

14              requests.  So I think with that, we can

15              conclude.

16                   MR. NORTH:  Okay.  Ms. Mello,

17              that's all the questions that I have for

18              you today.  I would like to say -- and

19              thank you very much for your time today,

20              and thank you for the time it took to

21              prepare for this deposition.  I'm sure that

22              it was an unwelcome intrusion, as it often

23              is into our lives.  So thank you very much.

24              I genuinely appreciate that.

25                   I do want to say on the record to

Page 87

1                    LAURA MELLO

2         Ms. Saint-Fort that we, to my knowledge,

3         have not received a copy of the model

4         protocols document that was discussed

5         today.  That document is referred to in a

6         document that you -- that the law

7         department produced this week, and it

8         clearly is relevant, as the witness

9         testified to the department's consideration

10        of FOIL requests, and should be produced by

11        the close of business today.

12                    MS. SAINT-FORT:  We'll take that

13        under advisement.

14                    MR. NORTH:  Okay.  Thank you,

15        everyone.

16                    THE VIDEOGRAPHER:  That concludes

17        today's deposition of Laura Mello.  Time

18        off record is 11:14 a.m.

19                    (Concluded at 11:14 a.m.)

20

21

22

23

24

25

Page 88

1

2

3

4

5

6

7

8            _____

9            LAURA MELLO

10

11

12           Subscribed and sworn to before me

13           this ___ day of _____, 2020.

14

15           _____

16           (Notary Public)

17

18           My Commission

19           expires:_____

20

21

22

23

24

25

Page 89

1                      CERTIFICATE OF OATH

2

3      STATE OF FLORIDA

4      COUNTY OF POLK

5

6           I, the undersigned authority, certify

7      that LAURA MELLO remotely appeared before me

8      and was duly sworn.

9

10          WITNESS my hand and official seal this

11     9th day of August, 2020.

12

13

14

15     _____

16     Rhonda Hall-Breuwet, RDR, CRR, LCR, CCR, FPR

17     Notary Public - State of Florida

18     My Commission Expires:  9/28/23

19     Commission No. GG 360849

20

21

22

23

24

25

Page 90

1                  C E R T I F I C A T E

2        STATE OF FLORIDA:

3

4              I, RHONDA HALL-BREUWET, RDR, CRR, LCR,

5        CCR, FPR, stenographic shorthand reporter, do

6        hereby certify:

7              That the witness whose deposition is

8        hereinbefore set forth was duly sworn, and

9        that such deposition is a true record of the

10       testimony given by such witness.

11             I further certify that I am not related

12       to any of the parties to this action by blood

13       or marriage, and that I am in no way

14       interested in the outcome of this matter.

15             IN WITNESS WHEREOF, I have hereunto set

16       my hand this 9th day of August, 2020.

17

18       _____

19       RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

20       Stenographic Shorthand Reporter

21

22

23

24

25

Page 91

1     ERRATA SHEET FOR THE TRANSCRIPT OF:

2     Case Name: UNIFORMED FIRE OFFICERS
      ASSOCIATION, et al. V. BILL de BLASIO, et al.
3     Dep. Date: August 7, 2020
      Deponent:  LAURA MELLO
4              CORRECTIONS:

5   Pg.   Ln.   Now Reads     Should Read   Reason

6   ____  ____  _____  _____  _____

7   ____  ____  _____  _____  _____

8   ____  ____  _____  _____  _____

9   ____  ____  _____  _____  _____

10   ____  ____  _____  _____  _____

11   ____  ____  _____  _____  _____

12   ____  ____  _____  _____  _____

13   ____  ____  _____  _____  _____

14   ____  ____  _____  _____  _____

15   ____  ____  _____  _____  _____

16   ____  ____  _____  _____  _____

17

18            _____

19            Signature of Deponent

20   SUBSCRIBED AND SWORN BEFORE ME

21   THIS _____ DAY OF _____, 2020

22

23   _____

24   (Notary Public)  MY COMMISSION EXPIRES: _____

25

## A

**able** 24:14,16 25:10
  25:14,23,24 47:5
**abreast** 20:23
  54:16
**absence** 79:5,10
**absent** 70:5
**access** 42:5 43:19
  44:2
**accompanied** 18:6
**accurate** 30:22
  54:11,18 62:23
**acknowledged** 9:4
**acknowledgment**
  18:10
**action** 90:12
**actions** 46:18
**actual** 31:18
**added** 36:23 84:23
  85:4
**additional** 20:13,16
  85:4
**address** 33:3
**addressed** 50:24
**addresses** 42:24,25
**adopt** 29:19,21
**adopted** 29:23
**adverse** 64:4
**advice** 67:18 71:19
  71:23 77:14 84:4
**advised** 55:7,15
**advisement** 87:13
**advises** 32:3
**advisory** 22:5,9,14
  22:22 23:3 54:17
  68:2,14,16,20
**affect** 38:22 45:22
  49:25 50:19 51:5
  65:7,22 66:13
  67:9
**afforded** 84:10,20
**agencies** 23:19 29:6
  29:9,11,16,19
  31:4 54:6 81:6
**agency** 28:13 37:15
  37:21 38:4 43:18
  43:25 45:21 70:2

**ago** 15:3
**agree** 10:4 12:16
  56:3 64:2 69:13
  70:11 71:13 81:16
**agrees** 56:9 82:11
**ahead** 43:8 56:11
  56:12
**al** 1:5,8 7:8,9 91:2,2
**allegations** 55:24
  57:11 58:2,15
  59:6 62:11,20
  65:6,21
**Alvarez** 4:17 7:19
**Americas** 3:6
**analysis** 49:11
**answer** 14:7,21
  16:21 19:7 21:14
  21:15 23:11 24:11
  26:3,17 30:20
  35:13 36:19 40:8
  40:23 41:16,25
  42:9,10 43:10
  45:2,9 46:15
  50:11 51:9 52:2
  56:6 57:2,15
  58:18,19,22 61:7
  62:5 64:8,21
  65:11 66:2,17
  67:15 69:18 70:14
  70:16 71:16,25
  73:2,22 74:14
  75:15,20 77:6,8
  77:20 78:7,21
  79:19 81:20 82:23
  83:13,23 84:14
  85:20
**answered** 42:8 47:7
  48:16 65:10,25
  66:25 70:20 76:11
  84:12
**answers** 44:18
**Anthony** 3:9 8:3
**anthony.coles@d...**
  3:10
**AO** 6:8 67:24
**apart** 61:2
**apologize** 40:2

**appear** 27:25
**appeared** 89:7
**applicable** 17:12
  44:10 60:23 78:12
  78:12 81:6
**application** 17:2
  18:25 21:10 22:17
  22:25 32:15 54:5
  54:24
**applied** 18:22 24:7
**apply** 16:17 24:16
  38:4,6 61:3
**appreciate** 39:10
  73:14 86:24
**approach** 52:18,18
**appropriate** 18:16
  35:5,10 37:25
  61:8
**appropriately**
  50:23
**approximately**
  63:19,20,22
**April** 29:12
**area** 21:23 36:16
**aside** 33:4 43:16,23
**asked** 48:15 61:16
  65:9,24 66:24
  76:10 84:11
**asking** 41:22 43:22
  51:2 67:5 76:15
  76:18,20 77:13
  82:3
**aspect** 39:25
**assessed** 32:10
**assessing** 50:13
**assessment** 29:15
  31:3,6,24 35:3
**assignments** 43:4
**assist** 36:13
**assistant** 8:7 36:11
  36:22,23
**assistants** 36:11
**Association** 1:5 7:8
  91:2
**assume** 52:11
**assuming** 18:12
**as-needed** 36:14

**attending** 7:15
**attention** 68:21
**attorney** 7:23
  13:22 25:20,21
  76:17
**attorneys** 3:3 4:1
  13:23 15:4 36:12
**attorney-client**
  64:13,23 65:12
  66:18 67:13 72:2
  73:3 76:13 79:20
  82:24 83:14 85:21
**audio** 38:24 47:19
  47:19 73:9
**August** 1:17 2:4 7:4
  89:11 90:16 91:3
**authority** 23:8,9
  34:2 54:5 89:6
**authorization** 18:7
  39:15 59:11
**authorizes** 18:8
**automatically** 28:2
**available** 13:14
  14:17 33:20,22,23
  52:22
**Avenue** 3:6
**awards** 37:23 38:3
**aware** 14:24 32:7
  53:7 55:3,6,14,19
  55:22 64:17,24
  66:4,9,20 67:3
  69:10
**a.m** 2:5 7:5 48:8,9
  48:10,12 87:18,19

## B

**B** 6:1
**back** 36:24 38:19
  42:16 45:12,13
  48:11 59:13 68:6
  74:18,19 75:20
  82:9
**bargaining** 37:24
  38:4
**based** 14:8 15:7,16
  24:17,18 69:24
  77:6

**basically** 31:7
**basis** 17:11 35:7,8
  35:10 36:14 41:15
  42:7 52:25 65:14
  65:15
**Bates-stamped** 6:5
  27:21
**bear** 48:17
**began** 13:9 81:7,12
**beginning** 7:22
**behalf** 8:2 12:12,22
  15:6,12,13,15
**beliefs** 12:22
**believe** 62:15,19
  63:19 68:9 80:4
  80:21
**Bill** 1:8 7:8 91:2
**binding** 23:5,9
**birth** 33:2 42:24
**bit** 19:3 21:8 40:3
  47:10 49:12 50:25
  73:16 81:2
**Blasio** 1:8 7:9 91:2
**block** 69:2,3
**blood** 90:12
**blow** 80:25
**book** 42:22
**bottom** 28:25
**breach** 40:24 41:17
  50:14,15 57:3,16
  64:22 66:18 67:13
  72:2 73:3 76:13
  78:22 82:24 83:14
**breaching** 64:12
  65:3,18 66:6
**break** 10:18,20
  48:9
**breaks** 85:4
**broad** 30:4,14
**broader** 63:13,14
**broadly** 30:17
**build** 24:12
**business** 87:11

## C

**C** 3:1 90:1,1
**call** 47:18,25 76:19

**called** 28:4 32:22
**capacity** 28:15,20
**capture** 10:13
**carefully** 46:4
**case** 7:11 39:14
    42:22 54:24 60:2
    75:4 79:5 91:2
**cases** 81:11
**case-by-case** 35:7,7
**catch** 60:9
**categorical** 52:17
**categories** 52:19
**cause** 55:24
**CCR** 1:24 89:16
    90:5,19
**CCRB** 81:7,12
**certain** 52:19
**certainly** 41:23
    79:4 82:14
**CERTIFICATE**
    89:1
**Certified** 2:10,12
    8:18,25 31:8 60:8
    75:22
**certify** 89:6 90:6,11
**change** 40:21 41:5
    41:12
**changed** 20:11,12
    85:15 86:9
**changes** 20:23 69:6
    69:15
**characterization**
    54:12,18
**characterize** 30:15
**check** 57:8 61:2
**chief** 28:16
**Church** 4:4
**City** 4:3 8:8 11:3,6
    13:24 19:24 23:19
    23:24 29:6,8,11
    29:11,17 80:15
    81:6 84:9,19
**citywide** 6:4 23:23
    27:18 28:4
**City's** 28:16
**clarify** 36:21 39:9
    40:2,15 48:23

**correction** 4:14
    8:12 11:4,6 12:9
    12:13,18 20:10
    36:3 45:24 46:22
    49:18
**corrections** 38:11
    38:22 43:25 47:16
    48:20 49:3,15
    50:18 57:12 58:16
    59:7 62:21 63:5
    63:11 65:7,21
    66:14 67:10 71:11
    73:20 74:9 75:9
    76:6,23 84:8,18
    91:4
**counsel** 7:20 8:7,9
    8:11,14 11:10,19
    13:9
**counsel's** 42:14
    67:18 84:4
**COUNTY** 89:4
**couple** 84:23 85:8
**court** 1:1 2:11,12
    7:10 8:14,16 10:9
    74:17 75:19 80:6
    80:16 82:10 86:6
**COVID-19** 7:16
**CRR** 1:24 89:16
    90:4,19
**current** 11:8 40:5
    74:5
**currently** 10:24
    40:20 41:4,12
    42:2 64:14 73:15
    73:17 78:24
**custody** 44:6
**cut** 20:5 26:5 31:9
    38:24 40:14 43:10
    44:24 73:9,10
**cutting** 47:9

──────────── **D** ────────────

**D** 5:1
**data** 81:9
**database** 17:22
    24:15 25:6,12,15
**databases** 25:11

**56:13** 62:16 72:16
    76:15
**clarifying** 37:3
**clear** 57:9 77:13
**clearly** 87:8
**close** 87:11
**Coles** 3:9 8:3
**collective** 14:8
    37:23 38:3
**come** 68:20
**comes** 44:13 59:17
**Commission** 88:18
    89:18,19 91:24
**committee** 6:7
    21:25 22:3,4,8,15
    22:23 54:3,4,10
    54:20,23 55:2,7
    55:15 67:23 68:3
    70:25 71:14,20
**committee's** 54:17
**common** 24:20
    36:2 59:20
**communication**
    21:18 77:9
**communications**
    21:16 41:18 42:11
    77:7
**comparable** 29:21
**complaint** 70:3
**complaints** 55:9,17
    64:3 66:11 67:8
**completeness** 18:20
**complied** 60:5
**concern** 64:25 65:5
    65:20 66:4,7,9,20
    66:22 67:3
**concerned** 67:7
**concerning** 69:7,15
**concerns** 49:19,24
**conclude** 86:15
**Concluded** 87:19
**concludes** 87:16
**conducted** 18:22
**conference** 7:20
**confidential** 34:6,9
    46:18
**confirm** 15:5,14

**85:2**
**confusing** 10:6
**connect** 53:15,16
**connection** 39:5
    45:7 47:4
**consider** 35:9 37:9
    37:16,21 49:6
    54:13 60:17,22
**consideration**
    41:24 51:21 55:20
    72:4,8 87:9
**considerations**
    49:16,17,21
**considered** 30:4
    66:12 77:16
**considering** 40:21
    41:5,12 42:2 76:4
    76:22 83:18
**considers** 54:9
**consistent** 17:3
    24:16 31:19 33:16
    58:6
**consistently** 24:7
**constant** 17:3
**constitute** 33:8
    37:11 55:9,18
    57:12 70:4
**consulted** 54:25
**contact** 44:13
**contain** 51:18
**contained** 50:17
    51:4
**contains** 50:6
**context** 19:19
    39:17 49:14,23
**Continued** 3:25
**contract** 37:23 38:3
**conversation** 64:15
**conversations** 57:3
    76:16
**copies** 53:3
**copy** 87:3
**corporation** 8:7,9
**correct** 25:7,12
    40:18 55:25 61:14
    61:15 63:6 68:10
    80:6

**date** 7:4 33:3 42:23
    68:18 91:3
**dated** 6:5,8,11
    27:20 67:24 80:10
    80:16
**day** 88:13 89:11
    90:16 91:21
**DC** 3:13
**de** 1:8 7:9 91:2
**deal** 48:2
**deciding** 54:10
    66:10
**DEFENDANT** 4:1
**defendants** 1:9
    8:10
**defer** 47:21
**defined** 69:8,16
**DEF_UFOA_001...**
    6:6 27:21
**denial** 53:4
**denied** 44:2 60:20
**deny** 43:18 44:21
    45:15
**Dep** 91:3
**department** 4:3,14
    8:8,12 11:3,6 12:8
    12:12,15,17,23
    13:7,23 14:9,18
    15:7,13,14,16
    16:3,15 18:2,12
    18:14 19:11,23,23
    20:10,20 21:10,21
    22:18 23:2,16,20
    24:2,5 28:21
    29:23 32:3 36:2,7
    37:9 38:9,13,16
    38:20 40:16,20
    41:4,11 42:2,18
    43:7 44:10,11,12
    44:14,20 45:14,24
    46:7,10,25 47:16
    48:21 49:2,6,13
    49:20 50:6 53:3,5
    53:8,10,19,22
    54:9,13,16,22
    55:4,6,14 56:7,8
    56:15,20,23 57:4

57:10,24 58:7,14
59:5,10,16 61:12
61:17 62:16 63:5
64:15 65:4,19
66:7,8,12,20,23
67:2,6 68:23
70:11 71:13,18,22
72:3,7,20 73:4,11
73:14,18 75:8
76:4,22 77:18,25
78:6,8,16,23
79:11 80:15 83:7
83:15,18 84:6,16
85:15 86:5,7 87:7
**department's** 15:7
15:16 24:22 28:13
30:3 56:16 57:18
58:4,10 59:8 74:5
74:8,21 77:22
81:25 82:3,15,18
83:4 84:21 85:23
87:9
**Deponent** 91:3,19
**deposed** 9:17
**deposition** 1:15 2:8
7:6,13 10:17
12:16 13:21 15:5
15:12 68:10 80:5
86:21 87:17 90:7
90:9
**depositions** 9:20
**deputy** 13:8 29:12
**describe** 11:15
13:11 17:6,18
31:4 32:19 33:11
35:2 50:13 54:4
61:24
**described** 19:18,18
26:10 78:19 79:14
**describes** 17:24
18:13 51:18,19
**description** 6:3
83:3
**designated** 12:23
**detail** 19:3 31:23
**determination**
40:12,16,17 41:8

41:20 64:10
**determine** 24:23
35:4 38:5,20
45:21 46:4 70:2
81:8
**determining** 16:17
22:16,24 30:7,13
52:19 60:19
**develop** 29:20
**different** 12:8 26:9
41:11,23 51:2
67:6 73:16 86:13
**differently** 78:18
79:13
**Diplomate** 2:10
**DIRECT** 5:4 9:7
**directed** 71:10
**disagree** 82:8
**disciplinary** 27:11
27:13 34:19 38:10
38:21 39:18 42:4
42:5 44:22 45:16
45:18 58:5,7 59:9
59:21 60:3,17
61:4,13,16 62:7
62:18,25 63:4,21
70:7,9 71:3,5 72:9
72:22 73:19 74:9
74:11,22,24,25
75:9,11 76:5,8,23
76:25 78:2,17,24
79:12 81:18 82:20
83:10,19 84:7,17
85:16 86:6
**disclosable** 32:11
50:7 81:14
**disclose** 34:11
52:24 58:14 59:5
59:9 60:6 82:5,12
83:10
**disclosed** 33:21,25
50:20 51:6 52:15
52:16,16,20 66:12
70:4
**disclosure** 23:25
32:11 33:7 35:5,9
37:6,17,22 38:21

45:22 46:4 55:8
55:16,21,23 56:17
57:10,19 62:17
64:2 66:13 72:9
72:22 73:13 82:2
83:19
**discretion** 23:20
**discuss** 15:24
**discussed** 14:19
37:5 87:4
**disposition** 25:25
26:13
**distinction** 39:10
**distracted** 30:9
**District** 1:1,2 7:10
7:10 80:16
**dividing** 15:23
**division** 18:16 32:5
36:13
**DLA** 3:5 4:15 7:25
8:4
**document** 7:19
19:15 27:15 28:4
28:10,19 30:25
31:22 34:24 46:10
46:16,22 47:12,15
47:23 48:20 52:10
52:13 68:6 70:19
80:18 87:4,5,6
**documents** 14:4
16:8 19:8 59:16
82:2,5
**doing** 55:4 79:2
**Dominique** 4:7
6:10 8:6 80:9
**dosaint@law.nyc...**
4:9
**due** 7:15
**duly** 9:4 89:8 90:8

———————
**E**
———————
**E** 3:1,1 5:1 6:1 90:1
90:1
**earlier** 54:2,8 61:11
**Eastern** 7:5
**effect** 64:4
**efforts** 81:13

**Eighth** 3:12
**either** 29:19 33:18
49:25
**elevated** 60:13,16
**email** 3:10,16 4:9
42:25
**employed** 10:24
11:5
**employee** 44:9 70:3
71:6 74:12 75:2
75:12 76:9 77:2
78:3
**employees** 16:2,9
16:16,25 19:20,25
36:7 70:10 84:10
84:20
**employment** 66:14
67:9
**encompass** 60:25
62:10,19
**encompassed** 35:20
60:16
**enforcement** 70:7
78:3,18 79:13,14
**enjoy** 70:8
**ensure** 17:23 18:3
24:5 32:2,10
33:15,18,24 50:22
52:14 60:5
**entailed** 35:15
**entails** 31:25
**entirety** 19:15
29:20 50:22
**entitled** 29:4
**environment** 46:2
49:21
**ERRATA** 91:1
**escalation** 60:2
**ESQ** 4:14
**ESQUIRE** 3:9,15
4:7,8
**et** 1:5,8 7:8,9 91:2,2
**Evan** 3:15 7:25
**evan.north@dla...**
3:16
**everybody** 73:13
**exact** 68:18

**exactly** 62:22
**EXAMINATION**
5:4 9:7
**example** 26:22,24
34:11 46:9
**examples** 46:21
47:11,15 48:19
50:5 51:3
**exemption** 37:15
37:21 38:5,8,20
42:17,18 43:18
44:3,15,21 45:15
45:21 47:17 48:22
49:8,13 50:8
60:23,23,24
**exemptions** 17:10
17:12 18:21 19:2
19:13 32:15 37:5
46:11 61:3 78:13
83:11
**exhibit** 4:16 6:4,7,9
27:18 67:22 68:5
68:7,9 80:4,5,8
**existing** 72:6,21
**exonerated** 81:11
**expires** 88:19 89:18
91:24
**explain** 19:2 65:4
65:19
**expressing** 70:6
**extent** 14:10,18,23
20:12 21:14 30:8
34:12 40:9,23
41:17 51:17 57:15
58:22 65:11 66:17
71:16,25 73:2
76:12 77:8,20
78:21 79:19 82:23
83:13 85:20
**extra** 84:24

———————
**F**
———————
**F** 4:7 90:1
**facilities** 46:3,7
53:25
**facility** 50:14
**factual** 29:15 31:3

31:5,24
**Failla** 6:11 80:10
**fair** 15:9 20:22 23:7
  35:25 54:3
**fairly** 10:16
**fall** 19:13
**familiar** 9:20 28:9
  28:12 68:13
**feature** 51:19,20
**field** 42:22
**file** 26:24 27:2,5
  50:21 51:11,14,15
  51:16
**filed** 7:9
**files** 27:7 49:4,15
  50:18 51:5,24
  59:20
**file-by-file** 35:19
  52:7
**final** 18:22 70:24
**fine** 48:4 72:17
**finish** 85:8
**finishing** 43:10
**Fire** 1:5 7:7 91:2
**firm** 7:25 25:21,22
**first** 9:17 15:23,25
  29:12 68:25
**five** 36:16
**Florida** 2:13,14
  89:3,17 90:2
**FOIL** 6:8 11:10,17
  11:18,18 13:3,7
  13:17 16:2,3,4,10
  16:11,16,17 17:2
  17:9,10,17,20,21
  17:22 18:19,21
  19:2,11 20:14
  21:11,22 22:17,25
  23:16,19,21 24:2
  24:6,21 25:17
  30:3,7,13,17 32:6
  32:6,15 36:6,9,12
  37:6,9,16 38:7,10
  44:3 53:4,15,17
  53:21,25 54:5,10
  54:24 59:14,18
  60:24,25 61:3

67:24 69:6,11,14
  72:23 73:18 78:2
  78:12,12,17 79:11
  81:12,14,22 82:2
  82:5 83:11 86:13
  87:10
**FOILs** 17:21
**FOIL-related** 22:5
**follow** 16:4 29:9,16
  31:4 42:13 67:17
  71:23 84:3
**following** 69:24
**follows** 9:6 31:16
**follow-up** 86:4
**force** 72:21 73:18
**form** 14:20 16:20
  19:6 21:3,13
  23:10 24:10 25:3
  26:16 30:19 35:12
  36:18 40:8,23
  41:15 46:14 50:10
  51:8,25 53:14
  56:5,25 61:6 62:4
  64:7,21
**forth** 29:14 31:2
  90:8
**forward** 53:3
**forwarded** 68:22
**FPR** 1:24 89:16
  90:5,19
**frame** 72:11 85:3
**frequently** 17:8
**Friday** 1:17
**front** 9:16 34:24
**frozen** 46:24
**fulfill** 81:15
**full** 9:10
**full-time** 36:10,21
**functioning** 50:3
**functions** 26:11
**further** 42:9 90:11
**future** 66:14 67:9

**G**

**G** 6:9 80:9
**GA** 2:12
**Gabriela** 4:17 7:19

**general** 11:16 13:9
  15:22 37:8 46:8
**generally** 9:19,22
  11:20 12:16 24:15
  31:5 32:22
**generated** 18:11,17
  18:23
**genuinely** 86:24
**getting** 45:4
**GG** 89:19
**GIBSON** 4:8
**give** 8:21 16:7 17:3
  26:22 63:16 85:7
**given** 13:8 16:25
  90:10
**go** 9:15 10:17 17:14
  32:5 37:7 43:8
  47:25 56:11,12
  68:6 76:18 80:20
**goes** 52:11,13,21
  86:8
**going** 21:13 28:3
  38:19 42:8,13,16
  59:13 67:14,17
  77:4 81:20 83:22
  84:3 86:11
**good** 7:2,24 8:5 9:2
  9:9,12 64:5
**govern** 30:2 33:6
**government** 6:8
  21:25 22:3,4,8,16
  22:24 54:3,21
  55:2,15 67:23
  68:4 70:9 71:20
**granted** 60:20
**Great** 9:14 10:23
**ground** 9:16
**guidance** 13:8,11
  13:13 16:6,15
  17:10 20:13,17,17
  20:18,20 21:9,20
  23:4,5 30:5,14
  31:16
**guide** 16:9 23:20
  30:17
**guides** 23:15

**H**

**H** 6:1
**Hall-Breuwet** 1:24
  2:9 8:15 89:16
  90:4,19
**hand** 8:19 89:10
  90:16
**handle** 57:25 77:25
  78:16
**handled** 35:7
**handles** 11:18
**handling** 13:2 29:5
  29:10,16 30:3
  33:16,17
**handy** 61:23
**happy** 15:11 53:16
  65:16 72:14
**head** 11:17
**hear** 31:12,14
  44:25 45:9 47:4,5
  47:6,7,8,13 48:16
  58:20 75:17,23
**heard** 11:23 70:21
**held** 2:9 11:12 29:6
  29:11
**help** 47:20
**hereinbefore** 90:8
**hereunto** 90:15
**highlighted** 29:3
  69:2,3 70:25
  80:23
**hold** 12:7

**I**

**identifiable** 34:16
**identification**
  27:23 67:25 80:12
**identified** 42:4
  44:16 67:10
**identify** 7:21 33:2
  43:5,14,17,24
  44:5,9 61:20 64:5
**identifying** 29:18
  32:12,18,21,23,25
  33:5 42:21 43:2
**identity** 46:17
**immediately** 45:19

81:12
**impair** 37:23
**implicate** 49:8
  55:24
**implicated** 38:8
**important** 52:12
  60:5
**impute** 70:10
**include** 22:9
**included** 51:24
  81:10
**including** 29:18
  81:7
**incoming** 17:9,17
  17:21
**independently**
  43:13
**indiscernible** 60:7
**individual** 25:18
  32:3 33:2 35:3
  43:6,12,12,14,17
  44:5,16 50:2
  52:18,25 59:11
**individually** 32:24
  51:16
**individuals** 42:3,21
  53:24 63:8
**inform** 26:13
**information** 14:17
  14:18 19:9,14
  21:24 23:4,25
  29:5,10,17,19
  32:5,8,13,16,19
  32:21,22,23,25
  33:5,7,8,16,17,19
  33:24 34:3,5,8,16
  42:17 43:2,3,11
  43:16 46:5 50:6
  51:23 52:15 54:20
  62:2 76:20 81:9
  81:13,24
**informer** 46:18
**infringe** 21:15 40:9
  58:23 65:12 71:17
  77:20 79:20 85:21
**injunction** 79:8,11
**inmate** 26:24 27:3

27:5,7 44:5 59:20
**inmate's** 27:2,4
**instruct** 21:13 42:8
67:14 81:20 83:22
**instructed** 59:22
**instruction** 20:9
42:14
**instructive** 23:6
**intend** 71:22
**intended** 70:7
82:14
**intent** 70:10
**interact** 28:16
**interested** 90:14
**internal** 18:11,15
78:9
**Internet** 39:4 47:19
**interpretation**
69:25
**introduce** 80:3
**introduced** 68:8
**intrusion** 86:22
**invasion** 33:9 37:12
55:10,18,20,25
56:18 57:13,20
70:5
**involve** 32:14
**involves** 31:6
**issue** 64:17,19
**issued** 22:15,23
23:24 29:11
**issues** 11:21,21
22:5,6 47:4 57:6
85:5

**J**

**jail** 50:3 51:19
**Jeremy** 4:20 7:17
85:2
**job** 1:25 11:16
**joined** 8:3
**joining** 10:10
**Judge** 6:10 80:10
**July** 80:16
**jumping** 40:2
**June** 15:22,24
38:14 61:13,17

62:18 63:23 75:7
81:5

**K**

**keep** 20:22 34:5,8
44:17
**kind** 16:24
**know** 10:3,5,17
31:15 55:12 70:21
84:25 85:3
**knowledge** 14:8
15:8,8,17,18
63:24,25 87:2
**knowledgeable**
14:24
**known** 14:17
**KPF** 1:3
**KWL** 1:3

**L**

**LA** 2:12
**laid** 19:21
**language** 70:6
**largest** 63:22
**large-volume** 63:9
**Laura** 1:16 2:8 7:1
7:7 8:1 9:1,3,12
10:1 11:1 12:1
13:1 14:1 15:1
16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1
28:1 29:1 30:1
31:1,13 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1,23 45:1
46:1 47:1 48:1
49:1 50:1 51:1
52:1 53:1 54:1
55:1 56:1 57:1
58:1 59:1 60:1
61:1 62:1 63:1
64:1 65:1 66:1
67:1 68:1 69:1
70:1 71:1 72:1

73:1 74:1 75:1
76:1 77:1 78:1
79:1 80:1 81:1
82:1 83:1 84:1
85:1 86:1 87:1,17
88:9 89:7 91:3
**law** 4:3 7:25 8:8
16:11,17 19:11
20:14,20 21:10,21
53:4 68:22 70:7
78:3,17 79:12
80:15 81:25 86:5
87:6
**laws** 20:13 32:12
**lawsuit** 79:8
**LCR** 1:24 89:16
90:4,19
**left** 36:22
**legal** 23:8 29:15
31:3,5,24 32:5
34:5,7,9,14 36:10
36:11,13,22,23
53:7 77:14
**legislation** 20:19
21:7,22 57:5
**legislative** 11:20,21
**legislature** 70:6
81:17 82:20
**legislature's** 81:15
**LeMASTER** 4:20
7:17
**letter** 6:9 18:10,23
80:8,14 81:25
**letters** 53:4
**let's** 27:15 48:5
67:20
**Licensed** 2:11
**life** 37:17 45:23
50:19 51:5
**light** 71:2 76:9 77:2
85:17
**limit** 85:12
**limitation** 34:18
**limited** 11:22,25
29:18
**line** 15:23
**lines** 68:25

**listed** 31:19
**litigation** 12:2,4,5
20:23 21:5
**little** 19:3 21:8 81:2
**live** 53:24
**lives** 86:23
**living** 46:7
**LLP** 3:5
**Ln** 91:5
**locations** 43:4
**lodged** 17:22 65:6
65:21
**long** 11:5,12 55:7
55:15 56:19 57:2
64:21
**longstanding** 69:25
**long-winded** 55:12
**look** 27:2,3,15
67:20 68:24 69:2
80:2
**looking** 41:23,25
**Lynelle** 4:14 8:11
**L-a-u-r-a** 9:13

**M**

**Maginley-Liddie**
4:14 8:11
**maintained** 18:2
19:22,24 63:4
**mandate** 81:15,17
82:11,19 83:9
**mandatory** 60:24
78:13
**manner** 71:5 74:10
74:24 75:10 76:7
76:24
**mark** 68:4,6
**marked** 27:22
67:25 80:11
**marriage** 90:13
**Matt** 4:15 27:16
**matter** 7:7 90:14
**MATYSTIK** 4:15
**Mayor** 29:12
**mean** 20:5 32:20
43:9
**meant** 21:7

**Mello** 1:16 2:8 7:1
7:7 8:1 9:1,3,9,13
10:1 11:1 12:1
13:1 14:1 15:1
16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1,25
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1
46:1 47:1,5,23
48:1,14 49:1 50:1
51:1 52:1 53:1
54:1 55:1 56:1
57:1 58:1 59:1
60:1 61:1 62:1
63:1 64:1 65:1
66:1 67:1 68:1,14
69:1 70:1 71:1
72:1 73:1 74:1
75:1 76:1 77:1
78:1 79:1 80:1,18
81:1 82:1 83:1
84:1 85:1 86:1,16
87:1,17 88:9 89:7
91:3
**member** 27:10
43:24 59:18
**mention** 32:18
**mentioned** 17:13
18:25 25:5 36:5
37:4
**merely** 76:20 77:16
**message** 39:4
**method** 50:13
**mind** 34:10,15,21
**minutes** 84:24,25
85:8
**misconduct** 55:9
55:17
**misstate** 31:18
**mistaken** 21:7
**model** 29:4,9,14,20

29:24 30:2,6,12
30:24 31:2,17
33:5,12,14 35:2
35:22 87:3
**modified** 20:15
**moment** 15:3 34:22
**moments** 28:3
**morning** 7:3,24 8:5
9:9,12
**moving** 45:20
**multiple** 32:25
35:15 63:15
**M-e-l-l-o** 9:13

—————————

**N**

**N** 3:1 5:1
**name** 7:17 8:6 9:10
9:12 25:17,18,20
27:4,5 33:2 64:5
91:2
**names** 42:20 61:22
61:23
**nature** 11:16 17:6
17:10 61:24
**necessarily** 42:10
67:12 77:6
**necessary** 82:10
**need** 10:18 31:13
68:5
**negotiations** 37:24
**new** 1:2 3:7,7 4:3,5
4:5 7:11 8:8 11:3
11:6 21:22 23:24
24:24 26:13,25
27:3 54:6 69:6,10
69:14 80:14
**nonlaw** 79:14
**nonuniformed** 44:9
**North** 3:15 5:4 7:24
7:25 9:8 15:2
16:23 19:16 21:4
21:19 23:14 24:19
25:4 26:4,20
27:16,24 28:23
29:2 30:23 31:21
35:17 37:2 40:13
41:3,9,21 42:12

45:6,10 46:20
48:5,13 50:16
51:22 52:5 53:16
53:18 56:10 57:7
57:22 59:2 60:11
61:10 62:9 64:11
65:2,14,17 66:5
66:21 67:4,16,20
68:2,12,24 69:4
69:20 70:17 71:21
72:5,13,16,19
73:6 74:2,17 75:3
75:16 76:3,14
77:12,24 78:15
79:3,23 80:2,13
80:20,22,25 81:3
81:22 82:14,17
83:6,17 84:2,13
85:6,13,14 86:2
86:16 87:14
**notarized** 18:6
39:15,21 59:10
**Notary** 2:13 88:16
89:17 91:24
**note** 39:3
**notify** 59:22
**notwithstanding**
83:11
**number** 6:3 7:12
11:20 27:18 67:22
80:8 82:7
**numbered** 68:8
**numbering** 28:24
**numbers** 34:12
42:22,22,23,23,25
**NW** 3:12
**NYCET** 42:23

—————————

**O**

**oath** 9:5,24 89:1
**object** 46:13 86:12
**objecting** 41:15
**objection** 14:20
16:19 19:5 21:2
21:12 23:10 24:9
25:2 26:2,15
30:18 35:11 36:17

40:7,22 41:6,14
42:6 50:9 51:7,25
53:13 56:4,24
57:14 58:17 61:5
62:3 64:6,20 65:9
65:24 66:16,24
67:11 69:17 70:13
71:15,24 72:10,25
73:21 74:13 75:13
76:10 77:5,17
78:5,20 79:16
81:19 82:22 83:12
83:21 84:11 85:19
**obligation** 14:23
**obligations** 82:4
**obviously** 10:9
**Office** 8:8
**officer** 11:11,17
28:14,17,20 32:6
32:7 43:25 44:22
45:16,17 46:22
47:16 48:20 49:14
49:15,19 50:18
58:5 71:4,10,11
71:12 74:10,23
75:10 76:6,24
78:4,18 79:13,15
**officers** 1:5 7:8
38:11 42:3 49:3
50:15 53:12,21
57:12 58:3,16
59:7 62:8,12,21
63:5,11,15,19,22
64:5 65:7,8,22,23
66:14 67:10 73:20
74:25 78:25 84:8
84:18 91:2
**officer's** 38:22
**official** 89:10
**Oh** 12:4 39:7
**okay** 7:2 9:19,23
11:8 12:11 15:20
17:13 20:3,8 37:3
39:7,25 40:19
47:14 48:3,14
73:7 75:24 85:6
85:13 86:16 87:14

**ongoing** 13:16 17:3
**Open** 6:7 21:25
22:3,4,8,15,23
54:3,20 55:2,15
67:23 68:3 71:20
**operates** 45:25
**opinion** 6:7 67:22
68:3,14,17,20
**opinions** 12:22
22:5,10,15,23
23:3 54:17
**opportunities**
66:15 67:9
**opposed** 23:9 52:18
**outcome** 90:14
**outlined** 19:11
**outset** 36:5
**outside** 53:14 81:21
83:23 86:12

—————————

**P**

**P** 3:1,1
**page** 5:3 6:3 28:25
68:25 69:23 80:21
**pandemic** 7:16
**paragraph** 70:24
**Paralegal** 4:15
**paramount** 46:2
**part** 11:24 19:24
20:2 24:20
**participants** 7:15
**particular** 32:15
34:9 37:10,22
46:5 54:24 63:10
82:5
**parties** 23:25 90:12
**party** 29:17
**part-time** 36:11
**passage** 81:24
**passed** 20:14,19
**passing** 20:21
**PAUL** 3:9
**pending** 10:20
**perform** 35:18
**period** 15:24 36:25
**periodically** 21:24
22:7 54:19

**periods** 15:22 40:4
**permissive** 60:24
78:14
**permit** 42:3
**person** 9:21 13:13
16:7 17:4 18:5,7,8
33:19 37:18 39:2
44:13 45:23 46:19
50:2,20 51:6
**personal** 12:21
15:18 33:4 69:7
69:16 70:5
**personally** 32:23
34:16
**personnel** 13:3
38:11 49:4,15
50:18 51:5,24
**persuasive** 23:8,13
**pertain** 49:19
**pertaining** 23:24
49:18 63:7
**pertains** 72:8
**Pg** 91:5
**phone** 8:3 16:7
17:5 42:24
**pieces** 32:25 43:6
43:11
**Piper** 3:5 4:15 7:25
8:4
**place** 7:13 44:15
72:7
**plaintiffs** 1:6 3:3
8:2
**planning** 86:7
**platform** 44:19
**please** 7:21 8:19
9:10 10:3,12
11:15 13:12 17:18
27:17 31:4 32:19
33:11 41:2 45:11
45:13 48:6,24
55:11 58:25 61:20
67:21 68:10 70:18
72:12 74:18 80:3
81:2
**point** 10:18
**police** 71:4,10,11

—————————

**policies** 6:4 13:2
 16:2,14 23:18,23
 27:19 28:5 30:16
 73:8,12,15 81:23
 83:16 84:21
**policy** 11:20 19:22
 29:11 40:5,21
 41:5,13 57:24
 58:4,10,11,12,13
 59:4,9 72:6,21
 73:17,23 74:3,4
 83:4
**POLK** 89:4
**portion** 70:25
 80:23
**portions** 19:12
**posed** 10:7
**position** 11:9,13
 12:8 13:10,18
 56:3,16,20,22
 57:9,19 74:6,8,22
 75:7 77:14,15,23
 82:4,18 83:8 84:7
 84:17 85:16,24
**possess** 34:13 49:2
**possessed** 17:25
 49:20
**possession** 18:15
 81:10
**possibility** 52:6
**possible** 45:19
**possibly** 52:4
**potential** 18:21
 19:2 49:24 50:14
**potentially** 38:6
 43:5 59:15
**practice** 24:21 36:2
 57:25 58:14 59:5
 59:13
**practices** 13:2
 81:23
**prepare** 13:20 15:4
 86:21
**prepared** 12:25
 14:13 15:6,15
**PRESENT** 4:13
**previous** 24:14,22

25:6,10,15 26:12
 27:4,6 68:6 74:19
**previously** 12:7
 48:14 83:2,3
**prior** 15:24 34:17
 35:4 74:7,20
**privacy** 6:4 13:3
 27:19 28:5,14,16
 28:20 33:9 37:12
 38:19,22 42:16
 43:18 44:2,14,21
 45:15 55:10,18,20
 55:25 56:18 57:13
 57:21 69:7,16
 70:5
**private** 81:24
**privilege** 40:10,24
 41:16 42:7 57:15
 57:17 58:23 64:13
 64:21,23 65:3,13
 65:18 66:6,18
 67:13 71:17 72:2
 73:3 76:13 77:21
 78:22 79:18,20
 82:24 83:14 85:22
**privileged** 21:15,18
 41:17 42:11 57:3
 65:10 67:12 76:11
 76:20 77:7
**proactive** 83:19
**probably** 85:10,11
**problem** 10:19
 30:11 48:3
**proceed** 16:6
**process** 17:8,16,18
 17:20 19:4,18,21
 29:15 31:3,6,15
 31:24 32:14 36:13
 79:14
**processing** 17:9,17
**produced** 87:7,10
**Professional** 2:13
**prohibition** 79:2,6
**proper** 16:25 21:10
 22:16,24 54:23
 77:15
**properly** 32:11

**protect** 53:11,20,23
**protection** 6:4
 27:19 28:5 70:8
 81:23
**protections** 84:9,19
**protocol** 29:21
 31:17
**protocols** 6:5 27:20
 28:5 29:4,9,14,20
 29:24 30:2,6,12
 30:25 31:2 33:6
 33:12,14 35:3,23
 87:4
**provide** 16:16 23:4
 31:23 46:9,21
 47:11,14 48:19
 50:5 81:8,13
**provided** 18:24
**provision** 30:24
**provisions** 69:6,7
 69:11,14,15
**public** 2:14 33:20
 43:19 44:2 55:7
 55:16 71:6 74:12
 75:12 76:8 77:2
 81:9,14 88:16
 89:17 91:24
**publicly** 33:20,21
 33:21,23 86:7
**pull** 26:12 27:16
**pulls** 28:3

———————
**Q**
**quantity** 63:17
**question** 10:3,5,7
 10:20 19:19 22:20
 30:9 31:13 37:14
 37:20 41:2,10,23
 42:10 43:21 45:12
 45:13 47:7,10,13
 48:15,18 50:25
 55:13 58:25 60:14
 65:15,16 67:6
 72:12,13 73:16
 74:16,18,19 76:18
 76:21 77:5 82:9
 82:16 84:15 86:8

**questioning** 7:23
**questions** 13:15
 14:7 15:21 79:24
 85:7 86:17
**quick** 10:16 86:3
**Quinn** 4:8 6:10
 8:10 80:9
**quirk** 44:18

———————
**R**
**R** 3:1 90:1
**Raise** 8:18
**rarely** 38:12 45:17
 60:21
**RDR** 1:24 89:16
 90:4,19
**read** 45:12,13
 70:15 74:18,19
 75:20 82:9 84:15
 91:5
**Reads** 91:5
**realtime** 2:11 21:6
**reason** 52:6 59:25
 91:5
**reasonably** 17:24
 18:13
**Rebecca** 4:8 6:9
 8:10 80:9
**recall** 35:24 38:7
 45:18
**receive** 17:21 21:9
 21:20 34:3 52:23
 84:9,19
**received** 13:16
 18:18 22:17,25
 26:25 38:9,13
 61:12 62:6,17
 77:15 87:3
**receives** 58:7 59:10
 78:9,10
**recognizing** 34:23
**record** 7:3 9:10
 37:10,22 38:21
 39:17 45:22 48:2
 48:8,12 49:20,23
 51:18 52:21,22
 57:9 80:17 86:25

87:18 90:9
**recording** 10:11
**records** 13:4 17:24
 17:25 18:4,7,14
 18:15,18 19:12,13
 24:18 25:19 27:11
 27:13 34:19 35:4
 35:16,19 38:10,11
 38:25 39:11,13,16
 39:18,19,19,22
 42:4,5 43:19,23
 43:23 44:4,7,8,16
 44:22 45:16,18
 46:3 49:3,7,18
 50:12,17 51:3,4
 51:11,12,13,14
 52:20 58:5,7 59:9
 59:12 60:3,10,15
 60:17 61:4,13,17
 62:7,18 63:2,4,17
 63:18,21 70:8,9
 71:3,5 72:9,23
 73:19 74:9,11,23
 74:25 75:9,11
 76:5,8,23,25 78:2
 78:10,11,11,17,25
 79:12 81:6,18
 82:12,21 83:10,19
 84:8,18 85:16
 86:6
**record-by-record**
 35:10
**redaction** 17:11
 19:15
**redactions** 18:21
**refer** 12:15 20:16
**reference** 24:14
**referenced** 34:25
**references** 31:2
**referred** 87:5
**referring** 12:17
 56:14 79:7
**reflects** 21:18
**regard** 13:6,17
 33:12
**regarding** 13:2
 20:20 23:19

Registered 2:10
relate 18:4,8 34:15
  49:3
related 32:12 51:12
  83:16 90:11
relates 46:22 47:12
  47:15 48:20,23
  59:21 72:22 81:25
relating 43:11
  50:22 58:4,10
  63:15 71:3 73:8
  73:12 75:9 76:6
  76:23
release 18:9 35:4
  37:10 39:16,17,18
  39:19,22 49:7
  65:5,20 67:7
  81:18 82:20 85:17
  86:7
releasing 78:24
relevant 14:17,19
  20:14 26:12 82:6
  87:8
relied 43:18 44:20
  45:14
remain 56:22
REMOTE 1:15
remotely 2:9 7:15
  89:7
repeal 71:2 74:7,20
  75:6 76:9 77:2
  81:5,16 82:19
  83:8,20 85:17,18
repealed 34:18
repeat 22:20 30:9
  40:25 45:11 55:11
  58:24 74:15
repeated 31:13
rephrase 10:4
  15:11
REPORTED 1:23
reporter 2:10,11,11
  2:12,13 8:14,16
  10:10 74:18 75:20
  80:6 82:10 90:5
  90:20
represent 7:22

representation
  86:9
representative
  12:23
represented 86:5
representing 7:18
  8:9,15 13:23
reputation 64:4
  65:8
reputations 65:22
request 17:21,22
  17:23 18:4,6,13
  24:7 25:25 26:14
  26:19,22,23,25
  29:16 32:9,10,16
  33:24 34:3 35:6
  35:14,15,20 37:9
  37:16 38:7 44:21
  49:9,14 53:21,25
  57:25 58:6 59:17
  59:21,22,24 62:13
  63:21,23 71:3,5
  74:8,11,22 75:8
  75:11 76:7 78:2,9
  78:10,17 79:12
requested 19:12
  25:19 33:19 38:25
  63:17
requester 18:5,11
  25:17 32:2 34:2
  38:25 39:12 63:20
requesters 61:21
requesting 17:25
  39:2
requests 11:18 13:3
  16:5,10 17:9,17
  18:15 22:17,25
  23:16,21 24:3,6
  24:13,15,17,21,22
  24:23,24 25:6,10
  25:15 26:13 27:5
  27:6 29:5,10 30:3
  30:7,13,17 32:4,4
  32:7 33:17 36:9
  36:12 38:10,14,17
  39:11 45:15,17
  54:11 58:5,8,10

59:14,15,19,20,23
  60:2,12,15,19,22
  61:4,12,25 62:7
  62:10,17,19,23,25
  63:3,10 72:23
  73:19 76:5,22,25
  84:22 86:14 87:10
require 35:3 39:14
  39:15
required 35:22
requirement 53:8
  60:6 83:9
requirements 34:5
  34:8,10,14
requires 69:25 77:6
respect 49:18 63:14
  64:18
respond 24:24 30:7
  30:13 50:15 54:10
  67:12 76:12
responded 24:13
  38:16
responding 16:4,10
  23:21 24:2,21
  36:9 37:8,15
  53:21,25 59:14
  73:18 84:22
responds 23:16
response 18:23,24
  30:17 35:15 51:20
  57:16 64:22 72:23
  75:18 83:20
responses 11:19
  24:16,23 25:11,15
responsibilities
  11:16
responsibility 14:7
  14:16 53:11,20,23
responsible 36:8
responsive 59:15
responsiveness
  18:20
retrieve 25:10
retroactively 68:5
reveal 42:11 77:9
revealed 46:17
review 14:4 17:8,16

18:22 21:22,24
  22:7,9,9 24:22
  33:23 35:19 44:15
  46:3 51:16 52:7
  52:10,12,21,23
  54:19 59:23 68:16
  73:24 74:4 76:2
  77:11,23 79:22
  83:5 84:22 85:24
reviewed 17:23
  18:19 19:9 31:17
  32:9,9 33:14
  49:23 50:21,23
  59:18 71:4 74:10
  74:23 75:10 76:7
  76:24
reviewing 16:4
  36:8 57:5 59:14
  70:19 73:5,11,15
  83:16
reviews 78:11
revised 20:8
revision 20:21
  86:10
Rhonda 1:24 2:9
  8:15 89:16 90:4
  90:19
right 8:19 27:8
  34:2 39:23
rights 38:23
risk 46:6
role 22:3
routinely 28:19
royal 56:14
rquinn@law.nyc...
  4:10
rules 9:16 16:2

─────────────
         S
─────────────
S 3:1 6:1
safe 45:25 49:21
safety 37:14,17
  45:20,23 46:2,6
  46:11 47:17 48:22
  49:8,13,16,17,22
  49:24,25 50:2,8
  50:19,23 51:6

53:11,20,23
Saint-Fort 4:7 6:10
  8:5,6 14:20 16:19
  19:5 21:2,12
  23:10 24:9 25:2
  26:2,15 30:18
  31:12 35:11 36:17
  40:7,22 41:6,14
  42:6 44:23 45:3,8
  46:13 48:4 50:9
  51:7,25 53:13
  56:4,24 57:14
  58:17,21 61:5
  62:3 64:6,20 65:9
  65:24 66:16,24
  67:11 69:17 70:13
  71:15,24 72:10,15
  72:18,24 73:21
  74:13 75:13,15,19
  75:24 76:10 77:4
  77:17,19 78:5,7
  78:20 79:16,18
  80:10 81:19 82:8
  82:22 83:12,21
  84:11,23 85:10,19
  86:11 87:2,12
saying 39:4
says 21:5 29:8 69:5
  69:24
scope 53:14 54:5
  81:21 82:13 83:23
  86:12
screen 28:2 30:25
  39:4
scroll 28:23
seal 89:10
search 25:14,16,17
  25:18,20,23,24
  26:10 27:6,12,14
second 26:6 30:10
  69:3 80:21
Section 29:4 60:18
  69:8 71:2
secure 45:25 49:21
security 34:12 46:6
  49:24,25 50:3,14
  50:23 51:18,20,20

**see** 21:5 27:4 28:7
  29:8 69:5 71:7
  80:24 81:4
**seen** 63:23 80:17,17
  83:2
**senior** 11:10,19
**sense** 39:13 63:16
**sentence** 11:24
  69:24 70:12 71:12
  83:2
**separate** 61:2
**separately** 81:7
**service** 27:10 43:24
**set** 29:14 31:2 90:8
  90:15
**setup** 36:21
**seven** 11:7,14 20:9
  68:25
**SHEET** 91:1
**shorthand** 90:5,20
**showed** 68:7
**showing** 28:4
**sic** 20:23
**Signature** 91:19
**signed** 18:7 81:5
**single** 35:20
**slightly** 41:10,22
  67:5
**slowly** 10:13
**small** 11:17 36:6
**social** 34:12
**solemnly** 8:20
**solution** 47:22
**somewhat** 63:12
**sorry** 11:23 20:5
  22:19 26:5 30:8
  31:9 39:3,8 43:9
  44:17,23 45:6
  56:11 60:9 69:21
  72:15 73:10 75:17
**sought** 18:14 54:22
  62:2
**source** 20:17,18
**sources** 21:21
**Southern** 1:2 7:10
**span** 20:11
**speak** 10:12,12

13:25 23:8 34:7
**speaking** 38:2
  39:11
**specific** 27:2 37:5
  38:8 49:14 51:3,4
  63:7,10 82:9
**specifically** 31:17
  32:6 33:15 43:12
  55:22
**specify** 62:23 72:11
**spell** 9:11
**spoke** 13:22 15:4
  54:2
**staff** 59:18
**staffing** 36:15
**standard** 7:5 59:19
**start** 60:14
**state** 2:14 7:21 9:10
  83:9 89:3,17 90:2
**stated** 83:4
**statement** 69:14
  71:13
**states** 1:1 7:10
  70:25 80:15,24
  81:4
**statewide** 54:4
**static** 31:11
**stays** 54:16
**STENOGRAPH...**
  8:18,25 31:8 60:8
  75:22
**stenographic** 90:5
  90:20
**stepping** 44:18
**steps** 31:19,19
**stored** 25:6
**Street** 3:12 4:4
**strike** 74:6 79:6
**subject** 25:16 26:18
  26:21,23 27:8,11
  27:13 39:12,16,22
  64:14 76:17 81:12
  86:9
**submitted** 25:21
**Subscribed** 88:12
  91:20
**substance** 41:24

76:16,19
**substitute** 71:11
**support** 13:17
  16:16
**sure** 22:21 34:4
  43:20 48:25 55:12
  68:18 86:21
**suspended** 74:3
**swear** 8:17,20
**sworn** 9:4 88:12
  89:8 90:8 91:20

**T**
**T** 6:1 90:1,1
**Tab** 27:17 67:20
  80:3
**take** 10:18,19 27:15
  44:15 52:17 87:12
**taken** 43:5 46:19
  48:9 51:21 72:8
**talk** 40:3
**talking** 34:17
**team** 16:3 17:18
  47:22
**tech** 7:19 47:21,23
**technical** 48:3 85:5
**TECHNICIAN**
  4:16
**tell** 9:4,16 15:25
  21:8 36:6 64:13
**ten** 63:19,22
**tend** 43:14,17,24
  44:4,8
**testified** 9:5 25:9
  54:8,15 61:11
  87:9
**testify** 12:12,21,25
  14:16,23 15:6,13
  15:15
**testifying** 9:24
**testimony** 8:21
  54:12,18 90:10
**text** 71:7 81:2
**thank** 8:13 9:2,14
  12:6 15:20 26:8
  37:3 40:19 43:15
  44:17 57:23 70:22

70:22 72:18 86:19
  86:20,23 87:14
**things** 17:14 26:9
**think** 15:3 39:7
  47:3,25 54:8,15
  61:11 84:24 85:11
  86:14
**third** 23:25 29:17
**third-party** 29:5,10
  32:4
**threaten** 37:17
**time** 7:5,5 13:9
  15:22 36:25 40:4
  72:11 84:24 85:3
  85:4,12,12 86:19
  86:20 87:17
**TN** 2:12
**today** 8:3,14 9:24
  10:10 12:11,25
  14:7 15:21 72:21
  78:2 79:25 86:18
  86:19 87:5,11
**today's** 7:4 13:21
  87:17
**topic** 14:9,19 15:17
  53:15 81:21,22
  82:6,13 83:24
  86:13
**trained** 13:6 19:20
**training** 13:17
  16:24 17:4,7
  19:25 20:2,9,24
**TRANSCRIPT**
  91:1
**TransPerfect** 7:18
  8:16
**treat** 79:11
**treatment** 24:6
  33:6
**true** 90:9
**truth** 8:22,22,23
  9:5
**try** 10:4 47:10,18
**two** 15:22 36:10
  40:4
**types** 24:17 42:17
  43:2,23 44:7 51:3

51:4,10,13 62:2
**typically** 26:12

**U**
**undersigned** 89:6
**understand** 9:23
  10:2 12:20 14:6
  14:15,22 15:10
  18:12 19:17,21
  24:13 40:4 43:20
  49:12 51:9 62:5
  79:4
**understanding**
  22:2 71:9
**understands** 71:19
**understood** 10:6
**unfounded** 55:8,17
  55:23 57:11 58:2
  58:15 59:6 62:11
  64:3 66:11 67:8
  70:3 81:11
**Uniformed** 1:5 7:7
  91:2
**unit** 11:18 16:25
  18:19 36:6 59:18
**United** 1:1 7:9
  80:15
**units** 18:16
**unreasonable**
  37:11
**unstable** 39:5 45:5
**unsubstantiated**
  55:8,16,23 57:11
  58:2,15 59:6
  62:11,20,24 64:3
  65:6,20 66:11
  67:7 70:2 81:10
**unwarranted** 33:8
  33:25 37:12 55:10
  55:18,19 56:17
  57:13,20 70:4
**unwelcome** 86:22
**unwritten** 58:11,12
  58:13 59:4
**update** 20:24
**use** 16:9,11,12
  22:14,22 23:3,5

26:12 28:19 30:6
30:12,16 47:19
**uses** 23:20 24:2

**V**

**V** 91:2
**verbal** 13:14
**verbally** 16:7 17:4
**versus** 7:8
**video** 7:6 85:3
**videoconference**
7:14
**videographer** 4:19
7:2,18 8:13 10:11
48:7,11 87:16
**Videotaped** 1:15
2:8
**view** 22:19
**views** 49:13 54:9,23
82:15
**violate** 32:12 34:4
**visitor** 44:10,12
**volume** 63:17,18
**vs** 1:7

**W**

**walk** 49:11
**want** 9:15 15:5,14
17:14 19:20 31:18
39:3 40:4,14
70:15 85:2 86:25
**wanted** 39:5
**Washington** 3:13
**wasn't** 65:14
**way** 33:25 36:8
61:25 90:13
**ways** 81:8
**web** 7:14
**website** 21:25 22:8
54:21
**week** 68:19 87:7
**went** 36:22,24
**we'll** 15:23 69:2
87:12
**we're** 34:17 48:7,11
85:11
**we've** 37:4
**WHEREOF** 90:15

**withheld** 19:10,10
19:14 42:18,20,21
42:23,24,25 43:3
46:10
**withhold** 46:11,25
47:17 48:21 82:4
**withholding** 17:11
**witness** 8:17,24
14:22 16:22 19:8
21:13,17 23:12
24:12 26:18 30:21
31:10,14 35:14
36:20 40:8,11,23
40:25 41:7,16,19
42:7 44:25 45:4,7
46:16 50:12 51:10
52:3 56:8 57:4,18
58:19,24 60:10
61:8 62:6 64:9,24
66:3,19 67:2,14
69:19 70:15 71:18
72:3 73:4,23
74:15,20 75:14,25
77:10,18,22 78:6
78:8,23 79:17,21
81:20 82:3,25
83:15,22 85:23
87:8 89:10 90:7
90:10,15
**word** 60:9 62:24
**work** 9:20 10:21
11:19 16:3 36:12
43:4,4 49:16,21
53:24
**working** 46:6
**works** 17:19 19:4
**wouldn't** 62:22
**written** 15:25 16:8
16:11,14,15 19:22
30:16
**wrong** 68:11 80:7

**X**

**X** 5:1 6:1

**Y**

**yeah** 31:14 43:8
47:24

**years** 11:7,14 20:9
36:16
**yesterday** 63:25
**yes-or-no** 76:21
**York** 1:2 3:7,7 4:3
4:5,5 7:11 8:8
11:3,6 23:24 54:6
80:14

**Z**

**Zoom** 38:24 73:8

**1**

**1** 6:4 27:18
**1.5.5** 29:4
**1/28/19** 6:5 27:20
**1:20-CV-05441** 1:3
**1:20-cv-05441-K...**
7:12
**10:23** 48:8,9
**10:27** 48:10,12
**100** 4:4
**10007** 4:5
**10020** 3:7
**11:14** 87:18,19
**12** 61:13 81:5
**12th** 15:22,24
38:14 61:17 62:18
63:23 75:7
**1251** 3:6
**14** 67:20
**1954** 28:25
**19775** 6:8 67:24
**1981** 6:6 27:22

**2**

**2** 6:7 67:22 68:9,25
69:23
**20004** 3:13
**2017** 29:12
**202** 3:14
**2020** 1:17 2:4 7:4
15:23 38:14 61:13
61:18 75:7 80:16
81:5 88:13 89:11
90:16 91:3,21
**212** 3:8 4:6
**25** 80:16

**26** 27:17
**27** 6:4
**28094** 1:25

**3**

**3** 6:9 80:5,8
**30(b)(6)** 15:12
**335-4500** 3:8
**356-2444** 4:6
**360849** 89:19

**4**

**4** 82:7

**5**

**5** 80:3
**50-a** 34:18 60:4,13
60:18 61:3 71:2
74:7,21 75:5,5,6
76:9 77:3 81:17
82:11,19 83:8,20
85:17,18
**500** 3:12

**6**

**67** 6:7

**7**

**7** 1:17 2:4 91:3
**7th** 7:4
**7/25/20** 6:11 80:11
**7/27/20** 6:8 67:24
**799-4000** 3:14

**8**

**80** 6:9
**87(2)(b)** 69:8,16

**9**

**9** 5:4
**9th** 89:11 90:16
**9/28/23** 89:18
**9:31** 2:5 7:5
**90** 84:25