EXHIBIT T

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

No.: 1:20-CV-05441 (KPF)(KWL)


UNIFORMED FIRE OFFICERS        )
ASSOCIATION, et al.,           )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
BILL de BLASIO, et al.,        )
                               )
          Defendants.          )
_____)


REMOTE VIDEOTAPED DEPOSITION OF

LESA MOORE

Thursday, August 6, 2020


REPORTED BY:

RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

JOB NO. 28092

Page 2

1

2

3

4                         August 6, 2020

5                         1:04 p.m.

6

7

8              Videotaped Deposition of LESA MOORE,

9      held remotely before Rhonda Hall-Breuwet,

10     Registered Diplomate Reporter, Certified

11     Realtime Reporter, Licensed Court Reporter

12     (TN), Certified Court Reporter (GA and LA),

13     Florida Professional Reporter, and Notary

14     Public of the State of Florida.

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1    A P P E A R A N C E S:

 2

 3    ATTORNEYS FOR PLAINTIFFS:

 4

 5            DLA PIPER LLP (US)

 6            1251 Avenue of the Americas

 7            New York, New York 10020

 8            (212) 335-4500

 9            BY:  ANTHONY PAUL COLES, ESQUIRE

10                 MICHAEL R. HEPWORTH, ESQUIRE

11            EMAIL:  anthony.coles@dlapiper.com

12                    michael.hepworth@dlapiper.com

13            - and -

14            500 Eighth Street, NW

15            Washington, DC 20004

16            (202) 799-4000

17            BY:  EVAN NORTH, ESQUIRE

18            EMAIL:  evan.north@dlapiper.com

19

20

21

22

23

24

25    (Continued)
```

Page 4

1    ATTORNEYS FOR DEFENDANT:

2

3            NEW YORK CITY LAW DEPARTMENT

4            100 Church Street

5            New York, New York  10007

6            (212) 356-2444

7            BY:  DOMINIQUE F. SAINT-FORT, ESQUIRE

8                 REBECCA GIBSON QUINN, ESQUIRE

9            EMAIL:  dosaint@law.nyc.gov

10                   rquinn@law.nyc.gov

11

12

13   ALSO PRESENT:

14           MATT MATYSTIK, Paralegal - DLA Piper

15

16   EXHIBIT TECHNICIAN:

17           GABRIELA ALVAREZ

18

19   VIDEOGRAPHER:

20           JEREMY LeMASTER

21

22

23

24

25

Page 5

1                    I N D E X

2

3                                        PAGE

4    DIRECT EXAMINATION BY MR. COLES          9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    E X H I B I T S

2

3      NUMBER              DESCRIPTION          PAGE

4    EXHIBIT 1   Opinion of the                 65
                 Committee on Open
5                Government, FOIL AO
                 19775, dated 7/27/20
6
     EXHIBIT 2   Letter from Patrick J.          82
7                Lynch, President of the
                 Police Benevolent
8                Association, to Dermot
                 Shea, dated 6/29/20;
9                Letter from Michael T.
                 Murray, Police
10               Benevolent Association,
                 to Ernest Hart, dated
11               6/29/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    LESA MOORE
 2            THE VIDEOGRAPHER:  Good afternoon.
 3     We are now on the record.  Today's date is
 4     August 6th, 2020, and the time is 1:04 p.m.
 5     Eastern Standard Time.
 6            This is the video deposition of
 7     Lesa Moore in the matter of The Uniformed
 8     Fire Officers Association, et al., versus
 9     Bill de Blasio, et al., filed in the United
10     States District Court, Southern District of
11     New York, Case Number
12     1:20-cv-05441(KPF)(RWL).
13            This deposition is taking place
14     via web videoconference with all
15     participants attending remotely due to the
16     COVID-19 pandemic.
17            My name is Jeremy LeMaster.  I am
18     the videographer representing TransPerfect,
19     and the document tech is Gabriela Alvarez.
20            Will counsel on the conference
21     please identify yourselves and state whom
22     you represent, beginning with the
23     questioning attorney.
24            MR. COLES:  My name is Tony Coles.
25     Good afternoon, everybody.  I represent the
```

```
 1                    LESA MOORE

 2      plaintiffs, and I'm with the firm

 3      DLA Piper, and I'm here with Evan North,

 4      also from DLA Piper.

 5                 MS. SAINT-FORT:  Good afternoon.

 6      My name is Dominique Saint-Fort from the

 7      New York City Law Department, Office of

 8      Corporation Counsel, representing the

 9      defendants, and I'm here with Rebecca

10      Quinn, also from my office representing

11      defendants.

12                 THE VIDEOGRAPHER:  Thank you,

13      Counsel.

14                 The court reporter today is Rhonda

15      Hall-Breuwet representing TransPerfect.

16                 The court reporter will now swear

17      in the witness.

18                 CERTIFIED STENOGRAPHER:  Raise

19      your right hand, please.

20                 Do you solemnly swear the

21      testimony you are about to give will be the

22      truth, the whole truth, and nothing but the

23      truth?

24                 THE WITNESS:  Yes.

25                 CERTIFIED STENOGRAPHER:  Thank
```

```
 1                    LESA MOORE
 2      you.
 3                    LESA MOORE
 4      acknowledged having been duly sworn to tell
 5      the truth and testified upon her oath as
 6      follows:
 7                    DIRECT EXAMINATION
 8      BY MR. COLES:
 9          Q       Good afternoon, Ms. Moore.  How
10      are you?
11          A       I'm okay.  How are you?
12          Q       Okay.
13                  Have you been deposed before?
14          A       No.
15          Q       So this will be your first
16      deposition and --
17          A       Where I'm being deposed.
18          Q       Excuse me?
19          A       Where I'm being deposed.
20          Q       Have you taken depositions?
21          A       No.
22          Q       Have you defended depositions?
23          A       I have attended them.
24          Q       Okay.
25          A       As counsel.
```

Page 10

1                    LESA MOORE

2      Q      All right.  So just to give you

3  the quick ground rules is, I'll be asking

4  questions.  You are under oath.  So make sure

5  that you answer the questions to the best of

6  your ability.  If you don't understand the

7  question, let me know and I'll try and

8  rephrase it.  It's very important that we have

9  a clear record and a clear communication

10  between the two of us.

11              Does that make sense to you?

12      A      Yes.

13      Q      Good.  If you want to take a break

14  at any time, that's fine.  The only thing I

15  would ask is not take a break in the middle of

16  a question unless there's some attorney-client

17  privilege issue.  Okay?

18      A      Okay.

19      Q      Good.  You're here as a 30(b)(6)

20  witness on behalf of the City; is that right?

21      A      Yes.

22      Q      Okay.  And you're here to talk

23  about the -- well, what's your understanding

24  of what you're here to talk about?

25              MS. SAINT-FORT:  Objection.  Form.

1                    LESA MOORE

2              You can answer.

3              THE WITNESS:  About our FOIL

4       policies and regarding the repeal of 50-a.

5  BY MR. COLES:

6       Q      Okay.  Are you here also to talk

7  about the policies and practices for handling

8  FOIL requests and the privacy of personnel

9  records?  Would that be a fair statement?

10             MS. SAINT-FORT:  Objection to

11      form.

12             You can answer.

13             THE WITNESS:  Yes.

14  BY MR. COLES:

15      Q      Okay.  What is your current

16  position now?

17      A      My title is managing attorney for

18  the civil section.  I'm an agency attorney,

19  and essentially my role is to manage the FOIL

20  litigation received by NYPD and to oversee

21  their intake, assign them to attorneys,

22  overview of strategies for how to proceed with

23  a case, and ensuring that documents are filed

24  timely with the Court.

25      Q      Okay.  And how long have you had

1                     LESA MOORE

2     that position?

3          A       Since 2017.

4          Q       Okay.  Were you with the police

5     department before 2017?

6          A       Yes.

7          Q       And what position did you have?

8          A       Agency attorney, and I believe for

9     two years I was the assistant counsel.

10         Q       Okay.  And agency attorney in

11    which group?

12         A       With the -- I've been with the

13    NYPD civil section the entire time.

14         Q       Okay.  And when did you start with

15    the NYPD civil section?

16         A       In November 2006.

17         Q       Okay.  And then was that

18    immediately after law school?

19         A       Yes.  A few months after.

20         Q       Okay.  How many people are in the

21    FOIL litigation section that you work in?

22                 MS. SAINT-FORT:  Objection to

23        form.

24                 THE WITNESS:  It's -- it's

25        fluctuated.  I believe right now we have,

                        LESA MOORE

1    like, eight attorneys and myself as a

2    supervisor.

3  BY MR. COLES:

4        Q        Okay.  Do you supervise all eight

5  of the attorneys?

6        A        On FOIL litigation, yes.

7        Q        And to whom do you report?

8        A        My immediate supervisor is David

9  Goldfarb, who is the director of the civil

10  section.

11        Q        Okay.  Do you supervise the police

12  department's record access officer?

13        A        No.

14        Q        Who is the police department

15  records access officer?

16        A        Richard Mantellino.

17        Q        Is he part of your group?

18        A        No.  He does not -- in the

19  organizational chart, he does not fall under

20  my group.

21        Q        Okay.  Have you ever personally

22  responded to a FOIL request?

23        A        Yes.

24        Q        In what capacity?

                        LESA MOORE

1

2      A        As direct -- as -- in litigation

3  under the direction of Richard Mantellino.

4      Q        Okay.  When you say "in

5  litigation," by that do you mean cases that

6  have been challenged in one form or another by

7  a person requesting access?

8      A        Yes.

9      Q        And was there more than one

10 occasion when you personally responded to a

11 FOIL request?

12     A        Yes.

13     Q        And about how many occasions?

14     A        I don't recall.

15     Q        In responding to requests, did you

16 take direction from Mr. Mantellini [sic], or

17 did you apply your own discretion as to what

18 to produce?

19     A        In consultation with him at times.

20     Q        Okay.  Would you say it's more

21 than five occasions?

22     A        I would say more than five.

23     Q        Okay.  And less than ten?

24              MS. SAINT-FORT:  Objection to

25     form.

1                     LESA MOORE

2              You can answer.

3              THE WITNESS:  I don't recall if

4     it's more than ten.  I would -- I would

5     think over the years it's more than ten.

6  BY MR. COLES:

7      Q      Okay.  Did you have any

8  relationship with the City's chief privacy

9  officer, any reporting relationship?

10     A      No, not -- no.

11     Q      Do you know who the City's chief

12 privacy officer is?

13     A      I don't recall.  I think I've

14 heard the name before, but I don't recall who

15 it is.

16     Q      Okay.  And are you familiar with

17 any protocols or guidances that the chief

18 privacy officer has created with regard to

19 FOIL?

20     A      I believe I've reviewed directions

21 issued by the law department on FOIL policy.

22     Q      Okay.  But my question was about

23 the directions issued by the chief privacy

24 officer.  Can you think of any?

25     A      I think -- I can't think off the

Page 16

```
 1                    LESA MOORE
 2   top of my head, but I know we've gotten
 3   directives from the FOIL policy, and I do
 4   believe it may have included directions that
 5   were issued by the privacy officer.
 6        Q       Okay.  Are there -- when you first
 7   came into the group, were you given training
 8   on FOIL-related matters?
 9        A       What do you --
10                MS. SAINT-FORT:  Objection to
11        form.
12                You can answer the question.  Go
13        ahead.
14                THE WITNESS:  I have a question.
15        What do you mean by when I first came into
16        the group?
17   BY MR. COLES:
18        Q       Well, I'll ask a proper question.
19   Have you been trained with regard to FOIL by
20   the police department?
21        A       Yes.
22        Q       Okay.  And can you describe that
23   training?
24        A       Well, I've been -- when I started
25   in 2006 and in the years preceding, a
```

1                    LESA MOORE

2    supervisor would assign me for litigation

3    cases to defend in the Supreme Court.  And in

4    addition, we've also done train- -- like we

5    strategized together, and I believe I was

6    given a primer on FOIL, and we strategized on

7    cases over the years until I took over as

8    supervisor.

9         Q      Okay.  Are you aware of written

10   policies that the department has for handling

11   FOIL requests?

12        A      No, not -- not -- I believe that

13   there are guidelines we -- we follow, but I

14   don't believe that there's, like, a specific

15   written policy that I've seen.

16        Q      Okay.  Are there written --

17        A      I know we follow the Public

18   Officers Law.

19        Q      Okay.  Are there written

20   guidelines?

21        A      Not that I'm aware of.  I'm aware

22   that there is -- I believe it's a patrol guide

23   or an admin guide that says that we can -- if

24   we receive a FOIL request in a unit, you are

25   supposed to respond to the FOIL unit about the

1                        LESA MOORE

2      request that you receive.  I don't believe

3      it's more specific than that.

4           Q        Okay.  So just so I'm clear, to

5      the best of your knowledge sitting today, you

6      don't know of any written guidelines the

7      police department has issued with regard to

8      how to respond to FOIL requests other than

9      what you've testified to?

10          A        No.

11          Q        Okay.  Do you know whether or not

12     the police department has written guidelines

13     on the privacy of personnel records?

14          A        I believe in the patrol guide

15     there might be one or two lines that talk

16     about -- in various patrol guides that say

17     that personnel records are confidential, maybe

18     one or two times.  I just -- I don't recall,

19     like, a written policy, though, like an entire

20     patrol guide on it.

21          Q        Okay.  What specifically do you

22     remember from the patrol guide?

23          A        I remember reviewing a patrol

24     guide procedure that says personnel records --

25     like, I think in the footnotes it says

Page 19

1                    LESA MOORE

2    personnel records are confidential records.

3         Q       And do you know what section of

4    the patrol guide that was in?

5         A       No.  I don't recall.

6         Q       Okay.  Do you know what training

7    the records access officer receives from the

8    police department?

9         A       I know that in the past we've had

10   the FOIL litigation supervisors train the FOIL

11   section, give a presentation on it.  Beyond

12   that, we've had the same FOIL person for a

13   long time.  So I'm not aware of anything else

14   that we do.

15        Q       Okay.  When you say -- when you

16   say "the same FOIL person," you mean the same

17   records access officer?

18        A       Richard Mantellino's been the

19   records access officer for several years now.

20   So any training would have gotten would have

21   been before I was in the position, so I

22   haven't had to train any.  I do know that when

23   the prior supervisor was there that they did

24   do training in FOIL.

25        Q       Who did the -- who was trained in

1                    LESA MOORE

2    FOIL?

3        A        Everybody who was assigned to the

4    FOIL unit at that time.

5        Q        Okay.  And did you participate in

6    that training or was that --

7        A        No, I --

8        Q        -- before your time?

9        A        No, I didn't participate in it.  I

10   knew about it, that it occurred.

11       Q        And is it fair to say that you did

12   not have that training when you joined the

13   unit?  That was before your time?

14       A        No.  It --

15                MS. SAINT-FORT:  Objection to

16       form.

17                THE WITNESS:  -- during my --

18                MS. SAINT-FORT:  You can answer.

19                THE WITNESS:  It was during my

20       tenure there, but I was assigned to the

21       litigation unit, and I know that the

22       litigation supervisor at the time did train

23       them.  But I did not attend the training.

24   BY MR. COLES:

25       Q        Now, I guess my specific question

1                    LESA MOORE

2   was whether or not you know the training that

3   Mr. Mantellino, the records access officer,

4   was given before he was named the records

5   access officer.

6       A       I'm not aware of any -- of him

7   being trained.

8       Q       Okay.

9       A       Before he was the record access

10  officer.  I'm not -- I don't know what

11  training he would have gotten.

12      Q       Okay.  Have you had any training

13  relating to the privacy of personnel records?

14      A       No.

15      Q       How does the department go about

16  evaluating whether or not a certain record

17  is -- a certain personnel record is private?

18              MS. SAINT-FORT:  Objection to

19      form.

20              You can answer, if you understand.

21              THE WITNESS:  Could you rephrase

22      your question?  I'm not quite sure what

23      you -- like, what you're asking.

24  BY MR. COLES:

25      Q       Sure.  Are you familiar with the

Page 22

1                    LESA MOORE

2    Freedom of -- the state Freedom of Information

3    Law?

4         A      Yes.

5         Q      Okay.  And are you familiar with

6    Section 87 of that law that refers to access

7    to agency records?

8         A      Yes.

9         Q      Okay.  And are you familiar with

10   Section 87(2)(b), which talks about an

11   exemption from FOIL for records, if disclosed,

12   would constitute an unwarranted invasion of

13   personal privacy?  Are you familiar with that?

14        A      Yes.

15        Q      What are the protocols that the

16   department uses to determine whether or not a

17   request seeks documents that would constitute

18   an unwarranted invasion of personal privacy?

19        A      Do you mean in the FOIL unit?

20        Q      No.  I mean the police department,

21   the -- the police department in responding to

22   FOILs.

23        A      In responding to a FOIL request?

24        Q      Yes.

25        A      Well, whoever is assigned is aware

Page 23

1                    LESA MOORE

2    that if there's personal information listed in

3    records that it's supposed -- we're supposed

4    to claim the public -- the Public Officers Law

5    privacy exemption.

6        Q       Have you -- are you aware of any

7    other protocols that address the scope of the

8    privacy exemption or how to analyze whether or

9    not the privacy exemption applies?

10               MS. SAINT-FORT:  Objection to

11       form.

12               You can answer.

13               THE WITNESS:  I'm not quite sure I

14       understand what you're asking me.

15   BY MR. COLES:

16       Q       Is one of the factors that the

17   department looks at in determining whether or

18   not a production of documents would be an

19   unwarranted invasion of privacy?

20       A       In the context of FOIL?

21       Q       Yes.

22       A       So we -- the person who was

23   assigned a FOIL request would have to look at

24   what exactly is being sought, what documents

25   exist, and then look at the information in

Page 24

1                    LESA MOORE

2    there.  And then if it contains PI -- personal

3    identifiable information, they are supposed to

4    claim privacy.

5        Q       Okay.  And what do you mean when

6    you say "personal identifying information"?

7    Can you describe that?

8        A       Like if somebody's home address,

9    telephone number, email address is listed in

10   records, we are -- date of birth, we are --

11   that sort of information, we're trained that

12   -- that we should be claiming privacy.

13       Q       Okay.  Any other type of

14   information that you consider private?

15       A       It's just -- it's such a long

16   list, like I can't just come up with a list.

17   It's a long list.  Like the most common are

18   the ones I named.

19       Q       Okay.  Do you feel as a -- do you

20   feel the department has a responsibility to

21   protect the privacy of an officer when

22   responding to a FOIL request?

23                    MS. SAINT-FORT:  Objection to

24       form, and also outside the scope of this

25       deposition.

Page 25

```
 1                    LESA MOORE

 2              My understanding is that we're

 3      talking about FOIL policies and practices.

 4      She's testifying as a witness for the NYPD.

 5      Her feelings as to whether a particular

 6      policy is appropriate or not is not an

 7      appropriate question here.

 8              MR. COLES:  I didn't mean to ask

 9      about feeling.

10   BY MR. COLES:

11      Q      Does the department have a

12   responsibility to protect the privacy of an

13   officer when responding to a FOIL request?

14      A      We do protect the privacy of an

15   officer when responding to FOIL requests.

16      Q      Do you feel you have -- does the

17   department have a responsibility to protect

18   the privacy?

19              MS. SAINT-FORT:  Objection.  Asked

20      and answered.

21              You can answer again.

22              THE WITNESS:  We do protect the

23      privacy of police officers if records are

24      requested regarding them.

25              ///
```

1                    LESA MOORE

2    BY MR. COLES:

3        Q        I know, but you're not answering

4    my question directly.   My question is, does

5    the department have a responsibility to do

6    that?

7                    MS. SAINT-FORT:   Same objection.

8                    THE WITNESS:   We have a

9        responsibility to apply the law.

10   BY MR. COLES:

11       Q        So would it be fair to say that

12   the department has a responsibility to protect

13   the unwarranted invasion of privacy of police

14   officers in connection with FOIL requests?

15                   MS. SAINT-FORT:   Objection to

16       form.

17                   You can answer.

18                   THE WITNESS:   We are already --

19       whenever we get a request, it's part of our

20       standard protocol is to review records to

21       make sure we're protecting anyone's

22       privacy.

23   BY MR. COLES:

24       Q        And do you review every request

25   that comes in to make sure that privacy is

Page 27

1                    LESA MOORE

2    protected?

3         A       You mean in FOIL?

4         Q       Yes.

5         A       No.  I wouldn't review the

6    request.

7         Q       Does the department review each

8    FOIL request before responding to make sure

9    that the privacy of the officer is protected?

10                MS. SAINT-FORT:  Objection.

11                You can answer.

12                THE WITNESS:  The department --

13         the persons who are assigned review.

14         Whoever is assigned to is assigned to

15         review the records for privacy and any

16         other exemptions that apply.

17    BY MR. COLES:

18         Q       And that would be done for each

19    FOIL request; is that right?

20         A       Yes, for every FOIL request.

21         Q       Okay.  In other words, you would

22    look at each FOIL request individually to

23    determine whether or not the requested

24    documents would be an unwarranted invasion of

25    privacy; is that right?

                    LESA MOORE

1

2      A       We are looking for every

3   exemption -- all the exemptions that apply,

4   including privacy.

5      Q       Okay.  Other than what you've

6   testified to, do you have any other

7   information about the factors that the

8   department applies in determining whether or

9   not a request would constitute an unreasonable

10  invasion of privacy?

11             MS. SAINT-FORT:  Objection.

12             You can answer.

13             THE WITNESS:  No.  I think it's --

14      it's a file-by-file review based on the

15      request that's received.

16  BY MR. COLES:

17      Q       Okay.  Do you also make a

18  file-by-file review to determine whether or

19  not a release of documents would present a

20  risk of safety?

21      A       Yes.  That's one of the

22  exemptions.

23      Q       Okay.  And is a file-by-file

24  review done to make sure that any documents

25  produced don't create a risk of safety to an

1                    LESA MOORE

2    officer?

3               MS. SAINT-FORT:  Objection.

4               You can answer.

5               THE WITNESS:  Yes.  It's -- it's

6         for every -- we apply all the exemptions.

7         So when we receive a record, we're

8         reviewing it for every exemption including

9         life and safety.

10   BY MR. COLES:

11        Q     Does the department have a

12   responsibility to protect the safety of

13   officers when responding to FOIL requests?

14               MS. SAINT-FORT:  Objection.

15               You can answer.

16               THE WITNESS:  I think we have a

17        responsibility to apply the law.

18   BY MR. COLES:

19        Q     Can you answer my question,

20   though?

21        A     We have a responsibility to apply

22   the law.

23        Q     My question was does the

24   department have a responsibility to protect

25   the safety of an officer when responding to a

Page 30

1                    LESA MOORE

2   FOIL request?

3        A       I think we have a responsibility

4   to apply the law.

5        Q       No, I understand that.  But my

6   question was specifically directed to safety.

7                MS. SAINT-FORT:  The witness has

8       already answered the question.

9   BY MR. COLES:

10       Q       Is there anything you want to add

11   to your answer?

12       A       No.

13       Q       Okay.  So -- are you sure?

14       A       Yes.

15       Q       Okay.  What training does the

16   police department give to FOIL officers as to

17   the factors they should apply in determining

18   whether a request would create a risk of

19   safety to an officer?

20       A       It would be what's in Public

21   Officers Law and -- and the other exemptions

22   that we frequently apply in FOIL.

23       Q       How would you go about determining

24   whether or not a certain request would put at

25   risk the safety of an officer?

1                    LESA MOORE

2        A       So in -- we know that Public

3    Officers Law has a life and safety exemption

4    and we know that it's frequently been applied

5    to people's home addresses, there are ways to

6    locate them, so that's a type of information

7    that would be used to determine life -- in

8    reviewing it, you look at the type of

9    information that's in a record to determine

10   whether or not you claim life and safety or

11   privacy.

12       Q       Right.  Are the factors different,

13   in your mind, for determining whether or not

14   there's a privacy exemption as opposed to a

15   safety exemption?

16       A       Yes.  It's two separate

17   exemptions.

18       Q       Okay.  And what are the different

19   factors that it would apply to safety that may

20   not apply to privacy?

21               MS. SAINT-FORT:  Objection to

22       form.

23               You can answer.

24               THE WITNESS:  Well, so for life

25       and safety, we even take into consideration

Page 32

1                          LESA MOORE

2        the number of officers assigned to a

3        specific location and not giving out that

4        information, which would not be -- that's

5        one of the -- what should not be privacy

6        but would be life and safety.

7    BY MR. COLES:

8        Q        Anything -- I'm sorry.  Go ahead.

9        A        So that you would take into

10   consideration the information that's listed in

11   the document you're about to determine if you

12   should release.

13       Q        Do you ever make a determination

14   as to whether or not publicly releasing the

15   name of an officer would create a risk of

16   safety?

17       A        I believe that there -- it has

18   been considered in prior FOIL responses.

19       Q        When you say "prior FOIL

20   responses," what do you mean by that?

21       A        In making a decision on whether or

22   not we will release information, we have

23   thought about whether or not releasing the

24   name of the personal would be problematic.

25       Q        And how do you go about deciding

                      LESA MOORE

1

2    whether or not it would be problematic?

3         A       We look at what the record

4    reveals, we look at the totality of the

5    circumstances that we know about in making

6    that determination.

7         Q       And you understand, obviously,

8    it's important to protect the safety of an

9    officer, right?

10              MS. SAINT-FORT:  Objection to

11       form.

12              You can answer.

13              THE WITNESS:  Could you repeat

14       your question?

15              MR. COLES:  The court reporter can

16       read it back.

17              (Previous question read back.)

18              THE WITNESS:  Right.

19   BY MR. COLES:

20        Q       Okay.  And in determining whether

21   or not a response to a FOIL would create a

22   risk of safety, you make a file-by-file

23   determination, correct?

24        A       Yes.

25        Q       Is it fair to say that in every

```
 1                LESA MOORE
 2   FOIL the department looks at, it makes a
 3   determination as to whether or not the privacy
 4   exemption applies?
 5       A     Yes.
 6       Q     Is it also fair to say that with
 7   respect to every FOIL request that the
 8   department responds to, it makes a
 9   determination as to whether or not the safety
10   exemption applies?
11       A     Yes.
12       Q     Have you had any training in
13   collective bargaining?
14             MS. SAINT-FORT:  Objection.
15   Outside the scope of this deposition.
16             THE WITNESS:  Not -- no, not --
17             MS. SAINT-FORT:  You don't have to
18     answer, Lesa.
19             THE WITNESS:  Oh, sorry.
20   BY MR. COLES:
21       Q     Ma'am, are you familiar with
22   87(2)(c) of the FOIL law which says that if
23   disclosed, would impair a present or imminent
24   contract awards or collective bargaining
25   negotiations?
```

Page 35

```
 1              LESA MOORE
 2      A       Yes.
 3      Q       Okay.  Now, have you had any
 4   training in collective bargaining?
 5              MS. SAINT-FORT:  Objection.
 6      You'll have to clarify if you're talking
 7      about the use of that response as an
 8      exemption to FOIL, not a general question
 9      about collective bargaining.  That would be
10      outside the scope of this deposition.
11   BY MR. COLES:
12      Q       How do you understand that
13   exemption to apply?
14      A       Just as it's listed in the
15   statute.  If there's a contract that is
16   pending or there is a collective bargaining
17   agreement that's pending and it's not been
18   finalized, then we can assert that exemption.
19      Q       It also gets asserted, according
20   to 87(2)(c), if there's a present contract, a
21   contract in place, correct?
22      A       I -- I'm not -- I'm not sure that
23   I'm -- I know that for certain.  I just know
24   that we reviewed that -- we can review that
25   statute and we can use it.
```

Page 36

1                    LESA MOORE

2       Q       Okay.  Is -- what are the factors

3    that you apply in reviewing whether or not a

4    disclosure under FOIL would impair present or

5    imminent collective bargaining?

6       A       I don't -- I don't know if

7    we've -- I don't know if we've ever had to do

8    that.  I know we've used the contract portion,

9    definitely.

10      Q       Okay.  Have you personally ever

11   reviewed the collective bargaining agreements

12   of any of the plaintiffs in this action?

13              MS. SAINT-FORT:  Objection.

14       That's outside the scope of this

15       deposition.

16              So I'm instructing the witness not

17       to answer.

18              MR. COLES:  Okay.  I'm not going

19       to object to every instruction not to

20       answer, but I'm just going to have a

21       blanket objection to those so we can take

22       them up at the end.

23              MS. SAINT-FORT:  Sure.

24   BY MR. COLES:

25      Q       In responding to FOIL requests,

Page 37

1                    LESA MOORE

2    does the department consider whether or not

3    the requested documents would be inconsistent

4    with the collective bargaining agreements that

5    cover the union that the subject officer is

6    in?

7        A       I'm not -- I don't know.

8        Q       In the few times that you

9    responded to FOIL requests, did you make any

10   effort to become familiar with the collective

11   bargaining agreements of the -- that cover the

12   officers whose documents you were producing?

13              MS. SAINT-FORT:  Objection to

14      form.

15              You can answer.

16              THE WITNESS:  So I've not had any

17      cases where that's been an issue.

18   BY MR. COLES:

19       Q       How do you know, if you haven't

20   read the collective bargaining agreements?

21       A       How do I know?  I know what

22   FOIL -- even if I -- I know that we -- I've

23   not applied the collective bargaining section

24   in any of the -- in any of the REO decisions

25   I've ever made.

Page 38

1                    LESA MOORE

2        Q      Have you considered whether or not

3    the collective bargaining exemption might

4    apply?

5                MS. SAINT-FORT:  Objection.

6                You can answer.

7                THE WITNESS:  No.  We -- in terms

8        of the different exemptions that we

9        consider, I can -- I can say I've not

10       applied it.

11   BY MR. COLES:

12       Q      And is that a true -- true for the

13   department as a whole?

14               MS. SAINT-FORT:  Objection.

15               THE WITNESS:  I don't know if

16       that --

17               MS. SAINT-FORT:  You can go ahead.

18               THE WITNESS:  I don't know.

19   BY MR. COLES:

20       Q      Did you try to determine whether

21   or not the department applies the collective

22   bargaining exemption before qualifying as a

23   30(b)(6) witness today?

24               MS. SAINT-FORT:  Objection.

25               You can answer.

1                    LESA MOORE

2                THE WITNESS:  No.

3    BY MR. COLES:

4       Q      Why not?

5                Do you have an answer to the

6    question?

7       A      I didn't hear any question.

8       Q      The question was, why didn't you?

9       A      Oh.  I wasn't aware that was a

10   part of the topic.

11      Q      Okay.  Are you aware of any

12   training that the department gives to FOIL

13   officers with regard to the collective

14   bargaining agreements that the City has

15   entered into?

16      A      I'm not aware.  I don't know.

17      Q      Okay.  Does the City have a

18   responsibility to protect the collective

19   bargaining rights of an officer when

20   responding to a FOIL request?

21                MS. SAINT-FORT:  Objection.

22                You can answer.

23                THE WITNESS:  I think the City

24      is -- and the police department in

25      particular or FOIL unit is required to

Page 40

1                          LESA MOORE

2        follow the law.

3     BY MR. COLES:

4        Q        I had a more specific question.

5        A        We're required to follow the law.

6     I can't be more specific than that.

7        Q        Well, as part of the law, do you

8     believe the department has a responsibility to

9     protect the collective bargaining rights of an

10    officer when responding to FOIL?

11               MS. SAINT-FORT:  Objection.

12               THE WITNESS:  I believe -- I

13        believe we have a -- we have a

14        responsibility to apply the law.

15    BY MR. COLES:

16       Q        No, I have that answer.  I was

17    asking a more specific question.  My more

18    specific question is whether or not the

19    department has a responsibility to protect the

20    collective bargaining rights of officers when

21    responding to a FOIL request.

22               MS. SAINT-FORT:  Objection.  The

23        witness has already answered that question.

24    BY MR. COLES:

25       Q        Can you answer that yes or no?

```
 1                    LESA MOORE
 2               MS. SAINT-FORT:  The witness
 3      already answered.
 4    BY MR. COLES:
 5        Q       Yes, I'm asking whether or not you
 6    can ask -- yes or no, whether or not the
 7    department has a responsibility to protect the
 8    collective bargaining rights of an officer
 9    when responding to FOIL.
10        A       I can't -- I can't answer that yes
11    or no.
12        Q       And why is that?
13        A       Because I believe we have a
14    right -- we have a responsibility to apply the
15    law.
16        Q       Okay.  Is there anything that you
17    want to add to your answer?
18        A       No.
19        Q       Are you sure?
20        A       Yes.
21        Q       Okay.  Do you know whether or not
22    the department provides training to its FOIL
23    officers as to whether settlement agreements
24    entered into should be produced under FOIL?
25        A       I don't think there's been a -- I
```

Page 42

1                          LESA MOORE

2    think that we have had discussions about

3    training, and there have been discussion about

4    types of records that, given the repeal of

5    50-a, will be produced.

6         Q        Can you please expand on that a

7    little bit?

8         A        We -- so we started -- we are

9    formulating policy on given the repeal of 50-a

10   what will be the records that will be produced

11   under FOIL, and there was a few training

12   sessions to train additional persons who are

13   not assigned to the FOIL unit on FOIL law.

14        Q        Who conducted that training?

15        A        James Conroy.

16        Q        And who is he?

17        A        He's -- I believe his title is

18   director of transparency, I believe.

19        Q        Okay.  And how do you know about

20   that training?

21        A        I was invited to the training, and

22   I discussed it with Jim.

23        Q        Did you participate in the

24   training?

25        A        No.

```
 1                     LESA MOORE
 2       Q       Do you know what documents were
 3   used to train the -- the FOIL officers?
 4               MS. SAINT-FORT:  Objection to
 5       form.
 6               You can answer.
 7               THE WITNESS:  I believe the law
 8       itself and the new law, and I'm not sure
 9       what else he used.  But I know the actual
10       Public Officers Law and the revised -- the
11       new version of Public Officers Law with the
12       changes that the repeal of 50-a, the actual
13       law was -- was used in the training.  I
14       don't know what other materials he used.
15   BY MR. COLES:
16       Q       Did you attend the training
17   session?
18       A       No.
19               MS. SAINT-FORT:  Object.
20   BY MR. COLES:
21       Q       Did you have an opportunity to
22   review the materials that were used?
23       A       I believe so.  I believe I
24   reviewed the -- the actual law.
25       Q       Other than the actual law, did you
```

Page 44

1                    LESA MOORE

2      review any materials that the department

3      prepared?

4           A       Yes.

5           Q       What were those?

6           A       I believe there was a memo from

7      the law department that I reviewed on the

8      application of the law following the repeal.

9      There was a Word document which included the

10     sections of the law and the common exemptions

11     used in FOIL, and I believe maybe a

12     PowerPoint.  I can't quite remember what it

13     addressed.  I think it addressed common

14     exemptions used in FOIL.

15          Q       And who prepared the PowerPoint?

16          A       I'm not sure who was the original

17     person who prepared it.  I believe maybe Jim

18     revised it.  I'm not sure.

19          Q       Okay.  And just so we have a clear

20     record, ma'am, can you tell me who got the

21     training that Mr. Conroy provided?

22          A       It would have been some of the

23     attorneys assigned to the legal bureau but who

24     are not assigned to the FOIL unit.

25          Q       Okay.

Page 45

                        LESA MOORE

1

2       A       I'm not sure who else got

3   training.  I'm not sure if anybody else in the

4   legal bureau got trained, but . . .

5       Q       Okay.  Have you ever received any

6   training in due process rights of police

7   officers?

8               MS. SAINT-FORT:  Objection.

9       Outside the scope of this deposition.

10              So the witness will not answer.

11  BY MR. COLES:

12      Q       In reviewing FOIL requests, do you

13  take into account whether or not the

14  production of a certain document would violate

15  somebody's constitutional rights?

16      A       I believe the FOIL unit takes into

17  consideration the Public Officers Law section

18  that deals with interference and right to a

19  fair trial.

20      Q       Okay.  Do you know whether or

21  not -- does the City take into account or the

22  police department take into account whether or

23  not the production of certain documents would

24  violate an officer's constitutional rights?

25              MS. SAINT-FORT:  Objection to

Page 46

```
 1                  LESA MOORE
 2      form.
 3              You can answer.
 4              THE WITNESS:  I don't know about
 5      constitutional rights in general.  I know
 6      that in regards to making a decision that
 7      the investigator is supposed to review the
 8      records and consider interference exemption
 9      and that applies in Public Officers Law.
10  BY MR. COLES:
11      Q      Okay.  I was asking specifically
12  whether or not you know if the department
13  makes a determination as to whether or not a
14  production would violate constitutional
15  rights.
16      A      So the ones -- the one that I do
17  know of is the right to a fair trial.  That is
18  encapsulated into interference exemption,
19  which is a section of Public Officers Law that
20  says you can't release law enforcement records
21  that would interfere with a trial.
22      Q      Right.  And are there -- I'm
23  sorry.  Please finish your answer, ma'am.
24      A      Or an ongoing judicial proceeding.
25      Q      Would that include -- are there
```

Page 47

```
 1                    LESA MOORE
 2   any other constitutional rights that you think
 3   a FOIL -- that the City has FOIL officers
 4   apply when looking at specific --
 5              MS. SAINT-FORT:  Objection.
 6   BY MR. COLES:
 7      Q      Let me get the question in.
 8              Are there any other constitutional
 9   rights that the department looks at in
10   determining whether or not to produce
11   documents in response to a FOIL request?
12              MS. SAINT-FORT:  Objection to
13      form.
14              You can answer.
15              THE WITNESS:  I can't -- I can't
16      answer that.  Like, there are several
17      constitutional rights.  I -- the ones that
18      I can think of off the top of my head is
19      the right to the fair trial that is
20      encapsulated in Public Officers Law.
21   BY MR. COLES:
22      Q      Does the department still make
23   individualized review on a file-by-file basis
24   of requests for disciplinary records since the
25   repeal of 50-a?
```

Page 48

```
 1                    LESA MOORE
 2              MS. SAINT-FORT:  Objection.
 3              You can answer.
 4              THE WITNESS:  So thus far we have
 5      not gotten to that stage yet because so far
 6      we've only acknowledged the requests.  So
 7      we haven't gotten to the review of the
 8      records for the exemptions yet.
 9   BY MR. COLES:
10      Q      Okay.  But do you plan to
11   review -- does the City plan to review whether
12   or not the exemptions apply on a
13   request-by-request basis?
14      A      Yes.
15              MS. SAINT-FORT:  I just want to
16      clarify that you mean the NYPD, not the
17      City generally, correct, Tony?
18              THE WITNESS:  Yeah.
19   BY MR. COLES:
20      Q      So just so we have a clear record,
21   ma'am, the department plans to apply on a
22   case-by-case basis the FOIL exemptions to
23   FOILs that were made after the repeal of 50-a;
24   is that correct?
25      A      Yes.  We will be reviewing them,
```

Page 49

```
 1                    LESA MOORE
 2    and we will be making a case-by-case
 3    determination based on each request.
 4        Q      Okay.  Are you familiar with the
 5    Committee on Open Government?
 6                MS. SAINT-FORT:  Objection.
 7                You can answer whether you're
 8      familiar subject to further objection.
 9                THE WITNESS:  Yes.
10    BY MR. COLES:
11        Q      Okay.  And have you had training
12    on the role of the Committee on Open
13    Government?
14                MS. SAINT-FORT:  Objection.
15      Outside the scope.
16                MR. COLES:  It's not outside the
17      scope.
18                MS. SAINT-FORT:  It's a very broad
19      question about whether she's aware -- does
20      that -- the subject of this deposition is
21      FOIL.  So unless you connect it to the
22      subject of this deposition, it's a very
23      broad, open question that's not clearly
24      relevant to the topic of this deposition.
25                MR. COLES:  Let's have the
```

Page 50

```
 1                  LESA MOORE

 2      question read back, please.

 3                MS. SAINT-FORT:  Sure.

 4                (Previous question read back.)

 5                MS. SAINT-FORT:  The objection

 6      remains.

 7  BY MR. COLES:

 8      Q       You can answer the question.

 9                MS. SAINT-FORT:  I'm instructing

10      the witness not to answer.  It's outside

11      the scope of the deposition.

12  BY MR. COLES:

13      Q       Are you aware that the Committee

14  on Open Government has a relationship to FOIL

15  policy?

16      A       Yes.

17      Q       Okay.  Are you aware that the

18  Committee on Open Government sets standards

19  with regard to FOIL?

20                MS. SAINT-FORT:  Objection.

21                You can answer.

22                THE WITNESS:  Yes.

23  BY MR. COLES:

24      Q       Okay.  And does the department

25  look to the Committee on Open Government for
```

Page 51

1                    LESA MOORE

2    information regarding the standards that apply

3    to FOIL requests?

4        A       We have reviewed some of their

5    advisory opinions.

6        Q       Okay.  And why do you review their

7    advisory opinions?

8        A       We might be trying to make a

9    determination on whether or not we -- an

10   exemption applies to something and we might

11   review some advisory opinions from the

12   committee to see where -- if they've addressed

13   the topic and what -- what decision they made.

14       Q       Okay.  What kind of deference do

15   you give to the advisory opinions issued by

16   the Committee on Open Government?

17       A       If it's -- if the -- if the topic

18   that we're reviewing an exemption for has been

19   applied in case law and their decision is

20   consistent with the case law, we will apply

21   the same decision consistent with case law and

22   what the committee said.

23       Q       Okay.  Does the department give

24   deference to the committee's advisory opinions

25   as to what should be produced or not produced

Page 52

1                    LESA MOORE

2    under FOIL?

3                    MS. SAINT-FORT:  Objection.

4                    You can answer.

5                    THE WITNESS:  Only to the extent

6        where it mesh -- it agrees with the case

7        law.  If there's case law in the area.  And

8        if there's no case law, we will take it

9        into consideration.  I don't know if --

10       it's not necessarily that we will make the

11       same decision that they made.

12   BY MR. COLES:

13       Q     Can you explain, then, how you

14   view the guidance from the Committee on Open

15   Government?

16       A     We view it as guidance.

17       Q     Okay.  Are you aware of any

18   examples where the department has disagreed

19   with the Committee on Open Government with

20   regard to the production of disciplinary

21   records?

22                    MS. SAINT-FORT:  Objection.

23                    You can answer.

24                    THE WITNESS:  I'm not aware.

25                    ///

Page 53

1                    LESA MOORE

2    BY MR. COLES:

3        Q      Can you think of any instance

4    where the department has disagreed with a

5    advisory opinion by the Committee on Open

6    Government regarding personnel records?

7                    MS. SAINT-FORT:  Objection.

8                    You can answer.

9                    THE WITNESS:  I'm not aware.

10   BY MR. COLES:

11       Q      Do you know whether or not the

12   FOIL access officer stays current with the

13   advisory opinions issued by the Committee on

14   Open Government?

15       A      I don't know.

16       Q      Is that part of his job

17   responsibility?

18                    MS. SAINT-FORT:  Objection.

19                    You can answer.

20                    THE WITNESS:  I'm trying to

21       recall.  I can't exactly recall in the

22       written descriptions of his job

23       descriptions.  I don't think it's there,

24       though.  I don't think it says in there

25       that he has to review Committee on Open

Page 54

1                    LESA MOORE

2      Government advisory opinions.

3  BY MR. COLES:

4      Q      Do you know whether or not he does

5  on a regular basis?

6      A      I don't know.

7      Q      Do you know whether or not anyone

8  at the department does on a regular basis?

9      A      I know that we review at times

10  their annual reports.  I try to review it.

11  And we do review -- I know that the -- we do

12  review from time to time when we're

13  researching topics, we will look at their

14  advisory opinions.

15      Q      And you look on their advisory

16  opinions for guidance on the topics you're

17  researching; is that correct?

18              MS. SAINT-FORT:  Objection.

19              THE WITNESS:  Yes.

20              MS. SAINT-FORT:  You can answer.

21              THE WITNESS:  Yes.

22  BY MR. COLES:

23      Q      Do you have an understanding that

24  the Committee on Open Government is the

25  statewide authority on the proper application

Page 55

1                    LESA MOORE

2    of FOIL?

3               MS. SAINT-FORT:  Objection.

4               You can answer.

5               THE WITNESS:  I think they are

6       able to give guidance on FOIL.

7    BY MR. COLES:

8       Q      Do you view them as a statewide

9    authority?

10      A      Yes.

11      Q      Okay.  Are you aware that the

12   committee has long held that the release of

13   unsubstantiated allegations of misconduct

14   would constitute an unreasonable invasion of

15   personal privacy?

16              MS. SAINT-FORT:  Objection.  Are

17      you asking within the context of FOIL?

18              MR. COLES:  Yes.

19              MS. SAINT-FORT:  You can answer.

20              THE WITNESS:  Yes.

21   BY MR. COLES:

22      Q      Okay.  Is that a policy that the

23   police department follows as well?

24      A      So we are currently -- based on

25   the change in the repeal of 50-a, we are

Page 56

1                        LESA MOORE

2     currently creating policy.  I -- prior to

3     this, our policy was not to -- was 50-a.  So

4     that was -- that was our decision.  Our

5     decision would have said 50-a.

6         Q       My question was a little

7     different.  Do you agree with the advisory

8     opinions of the -- does the department agree

9     with the advisory opinions from the Committee

10    on Open Government that unfounded allegations,

11    the release of unfounded allegations would be

12    an unwarranted invasion of personal privacy?

13               MS. SAINT-FORT:  Objection.

14               You can answer to the extent

15        you're not revealing privileged

16        information.

17               THE WITNESS:  So prior to the

18        repeal of 50-a, we would not have been --

19        we wouldn't have gotten to -- we wouldn't

20        have gotten to the point of saying

21        unsubstantiated or protected by anything

22        because we would have just said 50-a, and

23        that would have been a complete bar.

24    BY MR. COLES:

25        Q       Right.  The Committee on Open

Page 57

1                    LESA MOORE

2    Government has said that regardless of 50-a,

3    the release of unsubstantiated allegations for

4    any City employee would be an unreasonable

5    invasion of personal privacy, right?

6              MS. SAINT-FORT:  Objection.

7              You can answer if you're aware

8        that that is a true statement.

9              THE WITNESS:  We have read

10       advisory opinion, at least one, that does

11       say that information.

12   BY MR. COLES:

13       Q     Okay.  And is that an advisory

14   opinion that the department agrees with?

15             MS. SAINT-FORT:  Objection.

16             You can answer.

17             THE WITNESS:  I don't -- we are in

18       the process of determining what our policy

19       would be.  So I think we are aware of it,

20       and we will certainly take it into

21       consideration in formulating a final

22       policy, but it will be taken in

23       consideration.

24   BY MR. COLES:

25       Q     I didn't ask you whether or not it

1                    LESA MOORE

2    was going to be taken into consideration.  I

3    asked you today whether or not the police

4    department's policy follows the Committee on

5    Open Government that the release of

6    unsubstantiated allegations constitutes an

7    unreasonable invasion of personal privacy.

8              MS. SAINT-FORT:  Objection.

9              THE WITNESS:  We have --

10             MS. SAINT-FORT:  You can answer.

11             THE WITNESS:  Okay.

12             We have not issued -- since the

13        repeal of 50-a, we have not issued any REO

14        or appeals officer decision on records.

15        Therefore, we have not -- we have not -- we

16        have not reached the point where we have

17        actually addressed that.

18    BY MR. COLES:

19        Q       When you say "that," what are you

20    referring to?

21        A       In terms of we've not issued any

22    decision where we've had to actually say we

23    have taken the position that unsubstantiated

24    records are not to be released.

25        Q       Okay.  My question is, is that the

Page 59

1              LESA MOORE

2    position of the police department?

3              MS. SAINT-FORT:  Objection.

4    BY MR. COLES:

5        Q      Under FOIL.

6              MS. SAINT-FORT:  I'm going to

7        object on the basis of privilege.  The

8        witness has said that's continued

9        discussion.  So I'm objecting on the basis

10       of deliberative process privilege and

11       instructing her not to answer.

12   BY MR. COLES:

13       Q      I'd like to know, sitting here

14   today, what the police department's position

15   is as to whether or not the release of

16   unsubstantiated allegations would be a

17   unreasonable invasion of privacy under FOIL.

18             MS. SAINT-FORT:  The witness has

19       said that there has not been a

20       determination.

21             MR. COLES:  Let the witness

22       answer, please.

23             MS. SAINT-FORT:  She has.

24             MR. COLES:  Let the witness

25       answer.

Page 60

1                    LESA MOORE

2    BY MR. COLES:

3        Q      What is the position today?

4               MS. SAINT-FORT:  You can repeat

5        your answer, Ms. Moore.

6               THE WITNESS:  We are making -- we

7        haven't answered any of the requests that

8        came in post the change in -- in 50-a.  So

9        we have not had to make an affirmative

10       determination as yet.

11              We are in the process of creating

12       policy about how we will address all these

13       records, including, and we have -- we are

14       taking into consideration the advisory

15       opinion which says that unsubstantiated

16       disciplinary matters are protected by

17       privacy.  I don't -- we are still coming up

18       with what our post 50-a repeal policy will

19       be.

20   BY MR. COLES:

21       Q      Prior to the repeal of 50-a, what

22   was the police department's policy as to

23   whether or not unsubstantiated allegations

24   would be an unwarranted invasion of privacy

25   under FOIL?

```
                          LESA MOORE
 1
 2      A        We never got to that point.
 3               As I said before, if somebody was
 4    not the member of service would request a
 5    member of service's disciplinary record, any
 6    third party, they would have gotten a decision
 7    that said 50-a bars the release.  It would
 8    not -- we don't -- we wouldn't have gone into
 9    details to say unsubstantiated is this or
10    substantiated disciplinary record is this.  It
11    would have been we made a decision based on
12    50-a that it's a disciplinary record.  You're
13    not entitled to it under FOIL.
14      Q        But I'm asking as the 30(b)(6)
15    representative of the police department, what
16    was the police department's position before
17    the repeal of 50-a as to whether or not the
18    release of unsubstantiated allegations would
19    be an unwarranted invasion of privacy?
20               MS. SAINT-FORT:  Objection.  You
21        can answer.
22               THE WITNESS:  Our position was
23        that everything was barred from release by
24        50-a.  So we wouldn't have had to make a
25        decision about whether or not it -- an
```

Page 62

1                    LESA MOORE

2      unsubstantiated decision would have been a

3      privacy invasion because we would have just

4      said 50-a.

5                    So we didn't -- we never had to

6      have a formal policy on unsubstantiated

7      because the decision was always we would

8      just state it's 50-a.  Unless you have a

9      release from the member of service, you

10     cannot get anything.

11    BY MR. COLES:

12        Q        Okay.  So is it your testimony

13    that the police department did not have a

14    policy as to whether or not unsubstantiated

15    allegations, the release of unsubstantiated

16    allegations would be a violation of FOIL?

17                  MS. SAINT-FORT:  Objection to

18       form.

19                  You can answer.

20                  THE WITNESS:  I think our policy

21       was to state it was barred by 50-a.

22    BY MR. COLES:

23        Q        Well, when you say you think,

24    what's your basis for that conclusion?

25        A        Because the REO would issue a

Page 63

1                    LESA MOORE

2    decision whenever a third party asked for

3    records relating to a member of service's

4    disciplinary record, he would issue a decision

5    saying it's barred from a release by 50-a.  On

6    appeal, the appeals officer would issue a

7    similar determination, it's barred by 50-a,

8    and when you got to the litigation stage, we

9    would defend the papers and say 50-a barred

10   the release of the records.

11        Q       Anything to add to your answer?

12        A       No.

13        Q       Post repeal of 50-a, do you

14   believe police officers should be subject to

15   the same FOIL protections as other City

16   employees?

17               MS. SAINT-FORT:   Objection.

18        That's outside the scope of this

19        deposition.   Also asking for the opinion of

20        the deponent.

21               MR. COLES:   Strike.

22   BY MR. COLES:

23        Q       Post repeal of 50-a, is the police

24   department going to treat officers the same as

25   other City employees when it comes to applying

Page 64

```
 1                    LESA MOORE
 2    the protections and exclusions under FOIL?
 3                 MS. SAINT-FORT:  Objection.
 4                 You can answer.
 5                 THE WITNESS:  I think we're going
 6        to apply the law that -- we're going to
 7        look at the changed state in the law.
 8        We're going to look -- and we're going to
 9        make a determination about what we're going
10        to do.
11    BY MR. COLES:
12        Q     Okay.  Does the department have a
13    position as to whether or not officers should
14    be subject to the same protections in FOIL as
15    other City employees?
16                 MS. SAINT-FORT:  Objection.
17                 You can answer.
18                 THE WITNESS:  I think we're going
19        to have to apply the law.  The law -- the
20        Public Officers Law as it now stands has
21        exemptions that are very specific to law
22        enforcement.  So I don't -- I cannot say
23        that we're going to apply it exactly the
24        same.  I think we're just going to have to
25        apply the law.
```

1                    LESA MOORE

2    BY MR. COLES:

3       Q      Okay.  I'm going to show you an

4    opinion on the Committee on Open Government

5    and then ask you the department's position on

6    some of the things said in that opinion.

7                    MR. COLES:  Evan, it's on Tab 14.

8          We'll mark this as Exhibit 1.

9                    (Exhibit Number 1, Opinion of

10              the Committee on Open Government,

11              FOIL AO 19775, dated 7/27/20, was

12              marked for identification.)

13                   MS. SAINT-FORT:  Take your time to

14         read the entire opinion.

15                   MR. COLES:  We're marking as

16         Exhibit 1 a committee of the -- an opinion

17         of the Committee on Open Government, and

18         it's a -- can you -- it's FOIL AO 19775.

19                   THE WITNESS:  Can you please stop

20         moving it.

21                   MR. COLES:  And it's dated

22         July 27, 2020.

23   BY MR. COLES:

24      Q      The question I'm going to have for

25   you is whether or not you've seen this before.

1                    LESA MOORE

2      A        (Reviewing document.)

3               Can you scroll up, please.

4    Further.  Higher.  Up to where the blue's at

5    the top.

6               No, no, not that blue.  The first

7    blue on the first page, on one.  Thanks.

8               (Reviewing document.)

9               Can you scroll up to the end.

10   Thank you.

11              (Reviewing document.)

12              Okay.  I have seen it before.

13     Q        You have seen it before?

14     A        Yes.

15     Q        Good.

16              MR. COLES:  Just leave that page

17      up, please, Evan.

18   BY MR. COLES:

19     Q        And on Exhibit 1, I'd like to

20   direct you to the last highlighted sentence,

21   which reads:

22              "In light of the repeal of

23   Section 50-a, a request for disciplinary

24   records relating to a police officer must be

25   reviewed in the same manner as a request for

1                    LESA MOORE

2    disciplinary records of any other public

3    employee?"

4              Do you see that?

5       A     Yes.

6       Q     Is that the policy of the police

7    department?

8              MS. SAINT-FORT:  Objection.

9              You can answer.

10             THE WITNESS:  I have to refer back

11        to my previous answer.  The Public Officers

12        Law has additional sections that apply

13        specifically to law enforcement records and

14        law enforcement officers.  That is not

15        encapsulated for other employees.

16              I cannot say definitively the

17        department, not having made its final

18        determination, how 50-a's going to affect

19        the -- the repeal of 50-a is going to

20        affect our disclosure of records going

21        forward.  I cannot say -- I cannot state --

22        make that statement.  I can only say we

23        will -- we will apply the law and that we

24        have seen this advisory opinion.

25              ///

Page 68

1                    LESA MOORE

2    BY MR. COLES:

3        Q      Okay.  Do you know whether or not

4    the department intends to follow it?

5               MS. SAINT-FORT:  Objection.

6               You can answer.

7               THE WITNESS:  I think we are

8        considering that we can raise the privacy

9        objection -- the privacy exemption as an

10       objection, as it says in the advisory

11       opinion, to unsubstantiated disciplinary

12       complaints or investigations.

13   BY MR. COLES:

14       Q      Okay.  So if you go up the page a

15   little bit, there's a sentence that begins:

16              "The new provisions of FOIL did

17   not make changes to provisions concerning

18   personal privacy as defined in

19   Section 87(2)(b)?"

20              Do you see that?

21       A      Yes.

22       Q      And you agree with that, don't

23   you?

24              MS. SAINT-FORT:  Objection.

25       You're asking for her personal opinion.

Page 69

1                    LESA MOORE

2    BY MR. COLES:

3         Q       No, when I say "you," I mean the

4    police department as the 30(b)(6)

5    representative.

6         A       I don't think that we would take

7    that same position because I believe 87(2)(b)

8    has been affected by the amendments that are

9    now in 89(2)(b).

10        Q       Can you explain that, please.

11        A       I believe when 50-a was repealed,

12   89(2)(b) had new sections put into it.

13        Q       Okay.  Does the police department

14   believe that the statement that the new

15   provisions of FOIL did not make changes to

16   provisions concerning personal privacy in

17   Section 87(2)(b) to be an accurate statement?

18              MS. SAINT-FORT:  Objection.

19              You can answer.

20              THE WITNESS:  Did you say

21       "accurate" or "inaccurate"?

22   BY MR. COLES:

23        Q       "Accurate."

24        A       I believe that we have reviewed

25   the advisory opinion.  I -- in reviewing the

Page 70

1                         LESA MOORE

2    advisory opinion, I -- this section, I don't

3    believe that that line would be correct, in

4    light of the fact that 87(2)(b) directly

5    relates to 89(2)(b) and 89(2)(b) has been

6    amended.

7                    I don't -- I don't think we've --

8    we have not taken a definitive position on

9    whether or not this line in this decision is

10   we agree with it.

11       Q       When you refer to 89(2)(b), what

12   are you referring to?

13       A       I believe that there were

14   amendments made to 89(2)(b) when they

15   amended -- it included things that -- I

16   believe that we're supposed to now redact as

17   privacy.

18       Q       Okay.  And do you think that

19   changed or does the department view that that

20   changed the provisions concerning personal

21   privacy in Section 87?

22       A       I believe 87(2)(b) and 89(2)(b)

23   are intricately linked, and that it's the same

24   area of law.  And that if there's a change in

25   89(2)(b), it necessarily reflects that it

Page 71

1                      LESA MOORE

2     requires 87(2)(b) to also have been amended in

3     effect.

4         Q        In what way does the department

5     believe that the Section 87(2)(b) has been

6     amended, in effect, post repeal of 50-a?

7                      MS. SAINT-FORT:  Objection to

8          form.

9                      You can answer.

10                     THE WITNESS:  By whatever changes

11         are now listed in 89(2)(b).

12    BY MR. COLES:

13        Q        Anything else?

14        A        Primarily by what is reflected in

15    89(2)(b).

16        Q        Okay.  Does the department have a

17    position as to whether or not the scope of the

18    personal privacy protection in 87(2)(b) is

19    made broader as a result of the changes in 89?

20                     MS. SAINT-FORT:  Objection to

21         form.

22                     You can answer.

23                     THE WITNESS:  I think 89(2)(b) has

24         now made explicit things that we must

25         redact if we contemplate using a record.

Page 72

```
1                    LESA MOORE
2    BY MR. COLES:
3        Q        So is it your view that if there
4    were any changes to Section 87(2)(b), those
5    changes would have expanded the scope of
6    personal privacy available to an officer in
7    connection with a FOIL request?
8                MS. SAINT-FORT:  Objection to
9        form.
10               You can answer.
11               THE WITNESS:  There have been
12       discussions about what will be apart from
13       the -- explicitly what is listed in
14       89(2)(b) to be extended.  There's been
15       discussion about whether or not it enhances
16       or it's -- or it remains status quo.
17   BY MR. COLES:
18       Q        If you look at the next sentence,
19   it says:
20               "Based on our longstanding
21   interpretation that requires an agency to
22   determine if an unsubstantiated or unfounded
23   complaint against an employee would, if
24   disclosed, constitute an unwarranted invasion
25   of personal privacy, and absent language
```

1                    LESA MOORE
2     expressing that the legislature intended that
3     law enforcement disciplinary records should
4     enjoy less protection than the disciplinary
5     records of other government employees, we do
6     not impute such an attempt?"
7              Does the department agree with
8     that?
9              MS. SAINT-FORT:  Objection to
10        form.
11              You can answer.
12              THE WITNESS:  I think that the
13        department had not made a policy decision
14        on -- on that because we always relied on
15        50-a and that, therefore, as we go forward
16        making our decision, we have been made
17        aware of the advisory opinion.  We have --
18        we are taking it into consideration, and
19        certainly whenever we -- there's a decision
20        on the stay and the injunction being sought
21        in this lawsuit, we will also be guided by
22        that or bound by it determining --
23        depending on the outcome, and so therefore
24        that will eventually -- all that will
25        eventually play into the ultimate decision

Page 74

1                    LESA MOORE

2      that we make.

3   BY MR. COLES:

4      Q      Is that your complete answer?

5      A      Yes.

6      Q      Can you give a more specific

7   answer, or is that the best you can answer the

8   question?

9      A      That's the best I can answer the

10  question.  We have taken it into

11  consideration.  We have been advised of the

12  advisory opinion, but we are also aware of the

13  ongoing litigation, and therefore -- and we

14  have not actually released any records.  So

15  we've not actually made a final determination

16  on how we will be reacting to the repeal of

17  50-a, beyond saying that we will be taking

18  everything into consideration and that we have

19  looked at the advisory opinion and we've also

20  -- know that it does say that unsubstantiated

21  decisions of disciplinary matters regarding

22  persons who are protected by 50-a formerly,

23  that this is -- an option is to say personal

24  privacy.

25     Q      Okay.  Is there anything you want

Page 75

```
 1                    LESA MOORE

 2   to add to your answer?

 3       A       No.

 4       Q       What is the difference between an

 5   unsubstantiated allegation and an unfounded

 6   allegation?

 7                MS. SAINT-FORT:   I'm sorry.   Are

 8       we still using the exhibit?

 9                MR. COLES:   You can put the

10       exhibit down.

11                MS. SAINT-FORT:   Okay.   I'm also

12       going to object on the basis of being

13       outside the scope of this deposition and

14       instruct the witness not to answer.

15                MR. COLES:   Well, let's have the

16       exhibit back.

17                Evan, please put Exhibit 1 back

18       up.

19   BY MR. COLES:

20       Q       Okay.  If you look to the section

21   we were just reading, based -- the paragraph

22   that begins "The new provisions," the second

23   sentence there says:

24                "Based on our longstanding

25   interpretation that requires an agency to
```

Page 76

1                        LESA MOORE

2    determine if an unsubstantiated or unfounded

3    complaint against an employee" --

4                Do you see that?

5         A      Yes.

6         Q      Do you have an -- does the

7    department have an understanding as to the

8    difference between an unsubstantiated and

9    unfounded complaint when it comes to FOIL?

10               MS. SAINT-FORT:   I'm going to make

11          the same objections.   Outside the scope of

12          this deposition and instruct the witness

13          not to answer.

14               MR. COLES:   Okay.  Again, I have

15          an ongoing objection to this.  And you

16          understand we'll just bring the witness

17          back.

18    BY MR. COLES:

19         Q      Does the department have a

20    position as to whether or not -- strike that.

21               Is -- what is a charge and

22    specification?

23               MS. SAINT-FORT:   Objection.

24          Outside the scope of this deposition.

25               Instructing the witness not to

Page 77

1                     LESA MOORE

2       answer.

3  BY MR. COLES:

4       Q       Does the department have a

5  position as to whether or not charges and

6  specifications would be producible under FOIL

7  or subject to the FOIL exemptions?

8       A       So prior to the repeal of 50-a, we

9  would not have produced charges and a spec to

10  a third party asking.  We would have asserted

11  50-a.

12       Q       And today?

13       A       We have not fulfilled any of the

14  request as yet.  We have certainly

15  contemplated it being responsive.

16       Q       How would you define a charge and

17  specification?

18       A       I would define it as the

19  allegations brought against a member of

20  service by the department advocate's office

21  listing out all the specific misconduct that

22  is alleged that the person did and that will

23  be adjudicated before the office of the deputy

24  commissioner of trials.

25       Q       Right.  And would it be clear to

Page 78

1                    LESA MOORE

2    say -- would it be accurate to say that

3    charges and specifications are not proven?

4                    MS. SAINT-FORT:  Objection.

5                    You can answer.

6                    THE WITNESS:  It would -- yes.  It

7        would be accurate to say it's alleged.

8    BY MR. COLES:

9        Q      Okay.

10                   MS. SAINT-FORT:  Are we still

11       using this exhibit?

12                   MR. COLES:  Yes.  Just leave it up

13       for a second.

14                   MS. SAINT-FORT:  Okay.

15   BY MR. COLES:

16       Q      Does the department have a

17   position as to whether or not unproven or

18   pending allegations against officers are

19   protected as unreasonable invasions of privacy

20   under FOIL?

21                   MS. SAINT-FORT:  Objection.

22                   You can answer.

23                   THE WITNESS:  Could you reread the

24       question, please?

25                   CERTIFIED STENOGRAPHER:  Do you

Page 79

1                    LESA MOORE

2      want me to read the question back?

3             MR. COLES:  Yes, please.

4             (Previous question read back.)

5             THE WITNESS:  So prior to the

6      institution of this lawsuit, we had placed

7      them on the -- I believe it was a link on

8      the department's trial calendar page, and

9      then with the institution of this lawsuit,

10     it went back to being a decision where

11     there is no final decision because we are

12     awaiting the outcome of this lawsuit to

13     make a determination as to what will happen

14     with charges and specifications that are --

15     that are just at the allegation stage.

16  BY MR. COLES:

17     Q     That was my question.  What is the

18  department's position as to whether or not

19  mere allegations that are not proven, if

20  released to the public, would constitute an

21  unreasonable invasion of privacy?

22             MS. SAINT-FORT:  Objection to

23     form.

24             You can answer.

25             THE WITNESS:  I'm saying that

Page 80

1                      LESA MOORE

2      right now there is no position because we

3      are awaiting making a final determination

4      in part based on the outcome of this

5      lawsuit, but that prior to it we had posted

6      them on the trial calendar's page so that a

7      decision had previously been made to post

8      them on -- as -- I believe it was links on

9      the trial calendar's page.

10  BY MR. COLES:

11      Q       And when did that posting first

12  take place?

13      A       In -- sometime in June of 2020.

14      Q       It took place post the repeal of

15  50-a, correct?

16      A       Yes.

17      Q       What kind of determination was

18  made as to whether or not the posting of those

19  trial calendars was protected under FOIL?

20              MS. SAINT-FORT:  Objection.  Form.

21              You can answer.

22              THE WITNESS:  I -- I mean, that

23      would not have been a FOIL decision because

24      we have not answered any of our FOIL or

25      pending post 50-a disciplinary requests.

Page 81

1                   LESA MOORE

2   BY MR. COLES:

3       Q       Right.

4       A       So it wouldn't have had nothing to

5   do with FOIL.

6       Q       Do you know whether or not a

7   determination was made as to whether or not

8   the posting of those calendars would be an

9   unreasonable invasion of privacy of the

10  subject officers?

11              MS. SAINT-FORT:  Objection to

12      form.

13              You can answer.

14              THE WITNESS:  I don't know.

15  BY MR. COLES:

16      Q       You don't know whether or not the

17  department made that determination or not?

18      A       I don't know.

19              MR. COLES:  All right.  I'd like

20      to mark as Exhibit 2 the -- our Tab 1,

21      Evan.  It's a letter dated June 29th, 2020,

22      from the Police Benevolent Association to

23      Ernest Hart, and it attaches a letter from

24      the Police Benevolent Association, also

25      June 29th, 2020, to Dermot Shea.

Page 82

```
 1                    LESA MOORE

 2                (Exhibit Number 2, Letter from

 3            Patrick J. Lynch, President of the

 4            Police Benevolent Association, to

 5            Dermot Shea, dated 6/29/20; Letter

 6            from Michael T. Murray, Police

 7            Benevolent Association, to Ernest

 8            Hart, dated 6/29/20, was marked for

 9            identification.)

10   BY MR. COLES:

11      Q      Have you seen Exhibit 2 before,

12   ma'am?

13      A      I'm just going to read it.

14             (Reviewing document.)

15             Could you scroll up, please.

16      Q      The only question is have you seen

17   it before?

18             MS. SAINT-FORT:  Just allow the

19      witness to read the document.

20             THE WITNESS:  (Reviewing

21      document.)

22             Is that the entire document?

23   BY MR. COLES:

24      Q      No.  I just want to know whether

25   or not you've seen the first page of
```

1                    LESA MOORE

2     Exhibit 2.

3          A       Is this the entire document,

4     though?

5          Q       No.  There's an attachment to it,

6     but I'm only interested right now on the first

7     page.

8          A       Based on the first page, I can't

9     recall.  The first line looks familiar.  The

10    document I read was very long.  I -- I don't

11    recall this first page in particular.

12         Q       Okay.  In determining whether or

13    not the release of information about police

14    disciplinary records would create a risk of

15    safety, does the department consider at all

16    the fact that officers WenJian Liu and Rafael

17    Ramos were assassinated in 2014?

18                    MS. SAINT-FORT:  Objection.  Form.

19                    You can answer.

20                    THE WITNESS:  I don't know.

21    BY MR. COLES:

22         Q       Do you know whether or not in

23    determining whether or not the release of

24    disciplinary records would constitute a risk

25    of safety if the department considers the fact

Page 84

1                    LESA MOORE

2    that Police Officer Miosotis Familia was

3    assassinated in 2017?

4                    MS. SAINT-FORT:  Objection to

5        form.

6                    You can answer.

7                    THE WITNESS:  I don't know.

8    BY MR. COLES:

9        Q       Do you know whether or not the

10   department takes into account the fact that in

11   2018 the Department of Justice arrested a man

12   for using a weapon of mass destruction whose

13   intent was to kill police officers?

14                   MS. SAINT-FORT:  Objection to

15       form.

16                   You can answer.

17                   THE WITNESS:  I don't think I

18       understood the question.  Could you read

19       back the question, please?

20   BY MR. COLES:

21       Q       I'll make it more specific.

22                   Are you aware that the department,

23   according to the Department of Justice, in

24   2018, a man attempted to send a mail bomb to

25   the New York City police officers who arrested

Page 85

1                    LESA MOORE

2    him?

3                    MS. SAINT-FORT:   Objection.

4        Outside the scope of this deposition.

5    BY MR. COLES:

6        Q        Are you familiar with that?

7                    MS. SAINT-FORT:   Same objection.

8                    I'm instructing the witness not to

9        answer.

10   BY MR. COLES:

11       Q        My question is whether or not --

12   if she's familiar with that, whether or not

13   the department takes that into account in

14   evaluating the safety exemption in FOIL.

15                   MS. SAINT-FORT:   Okay.

16                   You can answer that question.

17      Objection to form.

18                   But you can answer.

19                   THE WITNESS:   I don't know.

20   BY MR. COLES:

21       Q        Here's the 30(b)(6) witness, and

22   yet you can't testify as to whether or not the

23   department takes into account killings or

24   attempted killings of police officers in

25   making a determination as to whether or not to

Page 86

```
 1                    LESA MOORE
 2   publicly release certain disciplinary records?
 3   Is that your testimony?
 4              MS. SAINT-FORT:  Objection to
 5       form.
 6              You can answer.
 7              THE WITNESS:  What I'm saying is,
 8       I don't know if in all the discussions
 9       we've had that those have been specifically
10       raised as -- as, like, specifically these
11       three -- these three incidents were raised.
12   BY MR. COLES:
13       Q     Are you aware of other incidents
14   involving attacks on police officers that have
15   been raised in discussions about whether or
16   not the privacy exemption should apply to
17   disciplinary records post the repeal of 50-a?
18              MS. SAINT-FORT:  Objection to
19       form.
20              You can answer.
21              THE WITNESS:  I'm not aware of
22       specific incidents being raised.  What I am
23       aware of is that one of the making or
24       determination one of the considerations
25       will be in making a determination whether
```

Page 87

1                    LESA MOORE

2     or not life and safety should be a concern

3     that we should be -- that we should take

4     into -- in place -- take into consideration

5     when looking at the document that is

6     disclosable but that we have to review for

7     exemptions, that life and safety is one of

8     the grounds that we will contemplate.

9              But as to, like, specifically

10    these incidents or a specific incident, I'm

11    not aware of that being discussed.

12  BY MR. COLES:

13    Q      Does the department have a

14  position as to whether or not the release of

15  unsubstantiated or unfounded allegations would

16  unfairly stigmatize the officer?

17              MS. SAINT-FORT:  Objection to

18    form.

19              You can answer.

20              THE WITNESS:  I don't think we

21    have a final position.  I think it's

22    something that we have -- in discussions

23    there's been consideration about what --

24    the information that we release, what

25    future impact it will have upon the person

Page 88

1                    LESA MOORE

2      whose information is being released.

3  BY MR. COLES:

4      Q      You would have a concern about

5  that, correct?

6            MS. SAINT-FORT:  Objection to

7      form.

8            You can answer.

9            THE WITNESS:  We have -- in our

10     discussions -- in discussions I

11     participated in, one issue that we have

12     discussed is what will be the impact once

13     we -- if we release -- if we decide to

14     release certain records, what will be the

15     impact on the person in the future.

16  BY MR. COLES:

17     Q      Okay.  And how have you gone --

18  gone about trying to determine what the impact

19  would be?

20            MS. SAINT-FORT:  Objection.

21            And I would instruct the witness

22     not to answer anything as privileged

23     information.

24  BY MR. COLES:

25     Q      You can answer the question.

Page 89

1                      LESA MOORE

2               MS. SAINT-FORT:  You can answer

3        without revealing anything that is

4        privileged information, to the extent you

5        can answer.

6               THE WITNESS:  I mean, to the

7        extent I can answer that, we have

8        contemplated certain consequences that

9        might flow to somebody by our release of

10       records.

11  BY MR. COLES:

12      Q      What kind of consequences?

13               MS. SAINT-FORT:  Same objection.

14               You can answer to the extent

15       you're not revealing any privileged

16       information.

17               THE WITNESS:  Well, certainly we

18       have -- we've thought about whether or not

19       there will be post employment consequences

20       based on records that we could release.

21  BY MR. COLES:

22      Q      Okay.

23               MS. SAINT-FORT:  I just want to

24       note that we've reached our 90-minute time

25       frame, from my stopwatch.

Page 90

1                    LESA MOORE

2              MR. COLES:  Okay.  Ms. Moore,

3     thank you for your testimony today.  I'm

4     going to close the deposition because we're

5     at the 90-minute time frame, but as you

6     know, there were issues that I had with

7     your counsel on the interposition of

8     certain objections, and so it may be

9     necessary to call you back in your capacity

10    as a 30(b)(6) witness, and I reserve my

11    right to do that.  But thank you for your

12    time today.

13              THE WITNESS:  Okay.

14              So I'm going to leave the chat

15    now.  Okay?

16              THE VIDEOGRAPHER:  This concludes

17    today's deposition of Lesa Moore.  The

18    total media used was one.

19              Going off record at 2:37 p.m.

20    Eastern Standard Time.

21              (Concluded at 2:37 p.m.)

22

23

24

25

Page 91

1

2

3

4

5

6        _____

7        LESA MOORE

8

9

10       Subscribed and sworn to before me

11       this ___ day of _____, 2020.

12

13       _____

14       (Notary Public)

15

16       My Commission

17       expires:_____

18

19

20

21

22

23

24

25

Page 92

1                    CERTIFICATE OF OATH

2

3    STATE OF FLORIDA

4    COUNTY OF POLK

5

6         I, the undersigned authority, certify

7    that LESA MOORE remotely appeared before me

8    and was duly sworn.

9

10        WITNESS my hand and official seal this

11   6th day of August, 2020.

12

13

14

15   _____

16   Rhonda Hall-Breuwet, RDR, CRR, LCR, CCR, FPR

17   Notary Public - State of Florida

18   My Commission Expires:  9/28/23

19   Commission No. GG 360849

20

21

22

23

24

25

Page 93

1                  C E R T I F I C A T E

2     STATE OF FLORIDA:

3

4          I, RHONDA HALL-BREUWET, RDR, CRR, LCR,

5     CCR, FPR, stenographic shorthand reporter, do

6     hereby certify:

7          That the witness whose deposition is

8     hereinbefore set forth was duly sworn, and

9     that such deposition is a true record of the

10    testimony given by such witness.

11         I further certify that I am not related

12    to any of the parties to this action by blood

13    or marriage, and that I am in no way

14    interested in the outcome of this matter.

15         IN WITNESS WHEREOF, I have hereunto set

16    my hand this 6th day of August, 2020.

17

18    _____

19    RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

20    Stenographic Shorthand Reporter

21

22

23

24

25

Page 94

1      ERRATA SHEET FOR THE TRANSCRIPT OF:

2      Case Name: UNIFORMED FIRE OFFICERS
       ASSOCIATION, et al. V. BILL de BLASIO, et al.
3      Dep. Date: August 6, 2020
       Deponent:  LESA MOORE
4                      CORRECTIONS:

5    Pg.   Ln.   Now Reads        Should Read     Reason

6    ____  ____  _____  _____   _____

7    ____  ____  _____  _____   _____

8    ____  ____  _____  _____   _____

9    ____  ____  _____  _____   _____

10   ____  ____  _____  _____   _____

11   ____  ____  _____  _____   _____

12   ____  ____  _____  _____   _____

13   ____  ____  _____  _____   _____

14   ____  ____  _____  _____   _____

15   ____  ____  _____  _____   _____

16   ____  ____  _____  _____   _____

17

18                 _____

19                 Signature of Deponent

20     SUBSCRIBED AND SWORN BEFORE ME

21     THIS _____ DAY OF _____, 2020

22

23     _____

24     (Notary Public)  MY COMMISSION EXPIRES: _____

25

**A**

**ability** 10:6
**able** 55:6
**absent** 72:25
**access** 13:13,16
    14:7 19:7,17,19
    21:3,5,9 22:6
    53:12
**account** 45:13,21
    45:22 84:10 85:13
    85:23
**accurate** 69:17,21
    69:23 78:2,7
**acknowledged** 9:4
    48:6
**action** 36:12 93:12
**actual** 43:9,12,24
    43:25
**add** 30:10 41:17
    63:11 75:2
**addition** 17:4
**additional** 42:12
    67:12
**address** 23:7 24:8,9
    60:12
**addressed** 44:13,13
    51:12 58:17
**addresses** 31:5
**adjudicated** 77:23
**admin** 17:23
**advised** 74:11
**advisory** 51:5,7,11
    51:15,24 53:5,13
    54:2,14,15 56:7,9
    57:10,13 60:14
    67:24 68:10 69:25
    70:2 73:17 74:12
    74:19
**advocate's** 77:20
**affect** 67:18,20
**affirmative** 60:9
**afternoon** 7:2,5
    8:5 9:9
**agency** 11:18 12:8
    12:10 22:7 72:21
    75:25
**agree** 56:7,8 68:22

**agreement** 35:17
**agreements** 36:11
    37:4,11,20 39:14
    41:23
**agrees** 52:6 57:14
**ahead** 16:13 32:8
    38:17
**al** 1:5,8 7:8,9 94:2,2
**allegation** 75:5,6
    79:15
**allegations** 55:13
    56:10,11 57:3
    58:6 59:16 60:23
    61:18 62:15,16
    77:19 78:18 79:19
    87:15
**alleged** 77:22 78:7
**allow** 82:18
**Alvarez** 4:17 7:19
**amended** 70:6,15
    71:2,6
**amendments** 69:8
    70:14
**Americas** 3:6
**analyze** 23:8
**annual** 54:10
**answer** 10:5 11:2
    11:12 15:2 16:12
    20:18 21:20 23:12
    25:21 26:17 27:11
    28:12 29:4,15,19
    30:11 31:23 33:12
    34:18 36:17,20
    37:15 38:6,25
    39:5,22 40:16,25
    41:10,17 43:6
    45:10 46:3,23
    47:14,16 48:3
    49:7 50:8,10,21
    52:4,23 53:8,19
    54:20 55:4,19
    56:14 57:7,16
    58:10 59:11,22,25
    60:5 61:21 62:19
    63:11 64:4,17
    67:9,11 68:6

**agree** 69:19 71:9,22
    72:10 73:11 74:4
    74:7,7,9 75:2,14
    76:13 77:2 78:5
    78:22 79:24 80:21
    81:13 83:19 84:6
    84:16 85:9,16,18
    86:6,20 87:19
    88:8,22,25 89:2,5
    89:7,14
**answered** 25:20
    30:8 40:23 41:3
    60:7 80:24
**answering** 26:3
**ANTHONY** 3:9
**anthony.coles@d...**
    3:11
**anybody** 45:3
**anyone's** 26:21
**AO** 6:5 65:11,18
**apart** 72:12
**appeal** 63:6
**appeals** 58:14 63:6
**appeared** 92:7
**application** 44:8
    54:25
**applied** 31:4 37:23
    38:10 51:19
**applies** 23:9 28:8
    34:4,10 38:21
    46:9 51:10
**apply** 14:17 26:9
    27:16 28:3 29:6
    29:17,21 30:4,17
    30:22 31:19,20
    35:13 36:3 38:4
    40:14 41:14 47:4
    48:12,21 51:2,20
    64:6,19,23,25
    67:12,23 86:16
**applying** 63:25
**appropriate** 25:6,7
**area** 52:7 70:24
**arrested** 84:11,25
**asked** 25:19 58:3
    63:2
**asking** 10:3 21:23

23:14 40:17 41:5
    46:11 55:17 61:14
    63:19 68:25 77:10
**assassinated** 83:17
    84:3
**assert** 35:18
**asserted** 35:19
    77:10
**assign** 11:21 17:2
**assigned** 20:3,20
    22:25 23:23 27:13
    27:14,14 32:2
    42:13 44:23,24
**assistant** 12:9
**Association** 1:5 6:8
    6:10 7:8 81:22,24
    82:4,7 94:2
**attaches** 81:23
**attachment** 83:5
**attacks** 86:14
**attempt** 73:6
**attempted** 84:24
    85:24
**attend** 20:23 43:16
**attended** 9:23
**attending** 7:15
**attorney** 7:23
    11:17,18 12:8,10
**attorneys** 3:3 4:1
    11:21 13:2,6
    44:23
**attorney-client**
    10:16
**August** 1:17 2:4 7:4
    92:11 93:16 94:3
**authority** 54:25
    55:9 92:6
**available** 72:6
**Avenue** 3:6
**awaiting** 79:12
    80:3
**awards** 34:24
**aware** 17:9,21,21
    19:13 21:6 22:25
    23:6 39:9,11,16
    49:19 50:13,17
    52:17,24 53:9

55:11 57:7,19
    73:17 74:12 84:22
    86:13,21,23 87:11

**B**

**B** 6:1
**back** 33:16,17 50:2
    50:4 67:10 75:16
    75:17 76:17 79:2
    79:4,10 84:19
    90:9
**bar** 56:23
**bargaining** 34:13
    34:24 35:4,9,16
    36:5,11 37:4,11
    37:20,23 38:3,22
    39:14,19 40:9,20
    41:8
**barred** 61:23 62:21
    63:5,7,9
**bars** 61:7
**based** 28:14 49:3
    55:24 61:11 72:20
    75:21,24 80:4
    83:8 89:20
**basis** 47:23 48:13
    48:22 54:5,8 59:7
    59:9 62:24 75:12
**beginning** 7:22
**begins** 68:15 75:22
**behalf** 10:20
**believe** 12:8,25
    15:20 16:4 17:5
    17:12,14,22 18:2
    18:14 32:17 40:8
    40:12,13 41:13
    42:17,18 43:7,23
    43:23 44:6,11,17
    45:16 63:14 69:7
    69:11,14,24 70:3
    70:13,16,22 71:5
    79:7 80:8
**Benevolent** 6:7,10
    81:22,24 82:4,7
**best** 10:5 18:5 74:7
    74:9
**beyond** 19:11

74:17
**Bill** 1:8 7:9 94:2
**birth** 24:10
**bit** 42:7 68:15
**blanket** 36:21
**Blasio** 1:8 7:9 94:2
**blood** 93:12
**blue** 66:6,7
**blue's** 66:4
**bomb** 84:24
**bound** 73:22
**break** 10:13,15
**bring** 76:16
**broad** 49:18,23
**broader** 71:19
**brought** 77:19
**bureau** 44:23 45:4

**C**

**C** 3:1 93:1,1
**calendar** 79:8
**calendars** 80:19
  81:8
**calendar's** 80:6,9
**call** 90:9
**capacity** 13:25 90:9
**case** 7:11 11:23
  51:19,20,21 52:6
  52:7,8 94:2
**cases** 14:5 17:3,7
  37:17
**case-by-case** 48:22
  49:2
**CCR** 1:24 92:16
  93:5,19
**certain** 21:16,17
  30:24 35:23 45:14
  45:23 86:2 88:14
  89:8 90:8
**certainly** 57:20
  73:19 77:14 89:17
**CERTIFICATE**
  92:1
**Certified** 2:10,12
  8:18,25 78:25
**certify** 92:6 93:6,11
**challenged** 14:6

**change** 55:25 60:8
  70:24
**changed** 64:7 70:19
  70:20
**changes** 43:12
  68:17 69:15 71:10
  71:19 72:4,5
**charge** 76:21 77:16
**charges** 77:5,9 78:3
  79:14
**chart** 13:20
**chat** 90:14
**chief** 15:8,11,17,23
**Church** 4:4
**circumstances** 33:5
**City** 4:3 8:7 10:20
  39:14,17,23 45:21
  47:3 48:11,17
  57:4 63:15,25
  64:15 84:25
**City's** 15:8,11
**civil** 11:18 12:13,15
  13:10
**claim** 23:4 24:4
  31:10
**claiming** 24:12
**clarify** 35:6 48:16
**clear** 10:9,9 18:4
  44:19 48:20 77:25
**clearly** 49:23
**close** 90:4
**Coles** 3:9 5:4 7:24
  7:24 9:8 11:5,14
  13:4 15:6 16:17
  20:24 21:24 23:15
  25:8,10 26:2,10
  26:23 27:17 28:16
  29:10,18 30:9
  32:7 33:15,19
  34:20 35:11 36:18
  36:24 37:18 38:11
  38:19 39:3 40:3
  40:15,24 41:4
  43:15,20 45:11
  46:10 47:6,21
  48:9,19 49:10,16
  49:25 50:7,12,23

52:12 53:2,10
  54:3,22 55:7,18
  55:21 56:24 57:12
  57:24 58:18 59:4
  59:12,21,24 60:2
  60:20 62:11,22
  63:21,22 64:11
  65:2,7,15,21,23
  66:16,18 68:2,13
  69:2,22 71:12
  72:2,17 74:3 75:9
  75:15,19 76:14,18
  77:3 78:8,12,15
  79:3,16 80:10
  81:2,15,19 82:10
  82:23 83:21 84:8
  84:20 85:5,10,20
  86:12 87:12 88:3
  88:16,24 89:11,21
  90:2
**collective** 34:13,24
  35:4,9,16 36:5,11
  37:4,10,20,23
  38:3,21 39:13,18
  40:9,20 41:8
**come** 24:16
**comes** 26:25 63:25
  76:9
**coming** 60:17
**Commission** 91:16
  92:18,19 94:24
**commissioner**
  77:24
**committee** 6:4 49:5
  49:12 50:13,18,25
  51:12,16,22 52:14
  52:19 53:5,13,25
  54:24 55:12 56:9
  56:25 58:4 65:4
  65:10,16,17
**committee's** 51:24
**common** 24:17
  44:10,13
**communication**
  10:9
**complaint** 72:23
  76:3,9

**complaints** 68:12
**complete** 56:23
  74:4
**concern** 87:2 88:4
**concerning** 68:17
  69:16 70:20
**Concluded** 90:21
**concludes** 90:16
**conclusion** 62:24
**conducted** 42:14
**conference** 7:20
**confidential** 18:17
  19:2
**connect** 49:21
**connection** 26:14
  72:7
**Conroy** 42:15
  44:21
**consequences** 89:8
  89:12,19
**consider** 24:14
  37:2 38:9 46:8
  83:15
**consideration**
  31:25 32:10 45:17
  52:9 57:21,23
  58:2 60:14 73:18
  74:11,18 87:4,23
**considerations**
  86:24
**considered** 32:18
  38:2
**considering** 68:8
**considers** 83:25
**consistent** 51:20,21
**constitute** 22:12,17
  28:9 55:14 72:24
  79:20 83:24
**constitutes** 58:6
**constitutional**
  45:15,24 46:5,14
  47:2,8,17
**consultation** 14:19
**contains** 24:2
**contemplate** 71:25
  87:8
**contemplated**

77:15 89:8
**context** 23:20
  55:17
**continued** 3:25
  59:8
**contract** 34:24
  35:15,20,21 36:8
**Corporation** 8:8
**correct** 33:23 35:21
  48:17,24 54:17
  70:3 80:15 88:5
**CORRECTIONS**
  94:4
**counsel** 7:20 8:8,13
  9:25 12:9 90:7
**COUNTY** 92:4
**court** 1:1 2:11,12
  7:10 8:14,16
  11:24 17:3 33:15
**cover** 37:5,11
**COVID-19** 7:16
**create** 28:25 30:18
  32:15 33:21 83:14
**created** 15:18
**creating** 56:2 60:11
**CRR** 1:24 92:16
  93:4,19
**current** 11:15
  53:12
**currently** 55:24
  56:2

**D**

**D** 5:1
**date** 7:3 24:10 94:3
**dated** 6:5,8,10
  65:11,21 81:21
  82:5,8
**David** 13:9
**day** 91:11 92:11
  93:16 94:21
**DC** 3:15
**de** 1:8 7:9 94:2
**deals** 45:18
**decide** 88:13
**deciding** 32:25
**decision** 32:21 46:6

51:13,19,21 52:11
56:4,5 58:14,22
61:6,11,25 62:2,7
63:2,4 70:9 73:13
73:16,19,25 79:10
79:11 80:7,23
**decisions** 37:24
74:21
**defend** 17:3 63:9
**DEFENDANT** 4:1
**defendants** 1:9 8:9
8:11
**defended** 9:22
**deference** 51:14,24
**define** 77:16,18
**defined** 68:18
**definitely** 36:9
**definitive** 70:8
**definitively** 67:16
**deliberative** 59:10
**Dep** 94:3
**department** 4:3 8:7
12:5 13:15 15:21
16:20 17:10 18:7
18:12 19:8 21:15
22:16,20,21 23:17
24:20 25:11,17
26:5,12 27:7,12
28:8 29:11,24
30:16 34:2,8 37:2
38:13,21 39:12,24
40:8,19 41:7,22
44:2,7 45:22
46:12 47:9,22
48:21 50:24 51:23
52:18 53:4 54:8
55:23 56:8 57:14
59:2 61:15 62:13
63:24 64:12 67:7
67:17 68:4 69:4
69:13 70:19 71:4
71:16 73:7,13
76:7,19 77:4,20
78:16 81:17 83:15
83:25 84:10,11,22
84:23 85:13,23
87:13

**department's**
13:13 58:4 59:14
60:22 61:16 65:5
79:8,18
**depending** 73:23
**deponent** 63:20
94:3,19
**deposed** 9:13,17,19
**deposition** 1:15 2:8
7:6,13 9:16 24:25
34:15 35:10 36:15
45:9 49:20,22,24
50:11 63:19 75:13
76:12,24 85:4
90:4,17 93:7,9
**depositions** 9:20,22
**deputy** 77:23
**Dermot** 6:8 81:25
82:5
**describe** 16:22 24:7
**DESCRIPTION**
6:3
**descriptions** 53:22
53:23
**destruction** 84:12
**details** 61:9
**determination**
32:13 33:6,23
34:3,9 46:13 49:3
51:9 59:20 60:10
63:7 64:9 67:18
74:15 79:13 80:3
80:17 81:7,17
85:25 86:24,25
**determine** 22:16
27:23 28:18 31:7
31:9 32:11 38:20
72:22 76:2 88:18
**determining** 23:17
28:8 30:17,23
31:13 33:20 47:10
57:18 73:22 83:12
83:23
**difference** 75:4
76:8
**different** 31:12,18
38:8 56:7

**Diplomate** 2:10
**direct** 5:4 9:7 14:2
66:20
**directed** 30:6
**direction** 14:3,16
**directions** 15:20,23
16:4
**directives** 16:3
**directly** 26:4 70:4
**director** 13:10
42:18
**disagreed** 52:18
53:4
**disciplinary** 47:24
52:20 60:16 61:5
61:10,12 63:4
66:23 67:2 68:11
73:3,4 74:21
80:25 83:14,24
86:2,17
**disclosable** 87:6
**disclosed** 22:11
34:23 72:24
**disclosure** 36:4
67:20
**discretion** 14:17
**discussed** 42:22
87:11 88:12
**discussion** 42:3
59:9 72:15
**discussions** 42:2
72:12 86:8,15
87:22 88:10,10
**District** 1:1,2 7:10
7:10
**DLA** 3:5 4:14 8:3,4
**document** 7:19
32:11 44:9 45:14
66:2,8,11 82:14
82:19,21,22 83:3
83:10 87:5
**documents** 11:23
22:17 23:18,24
27:24 28:19,24
37:3,12 43:2
45:23 47:11
**Dominique** 4:7 8:6

**dosaint@law.nyc...**
4:9
**due** 7:15 45:6
**duly** 9:4 92:8 93:8

**E**

**E** 3:1,1 5:1 6:1 93:1
93:1
**Eastern** 7:5 90:20
**effect** 71:3,6
**effort** 37:10
**eight** 13:2,5
**Eighth** 3:14
**email** 3:11,18 4:9
24:9
**employee** 57:4 67:3
72:23 76:3
**employees** 63:16
63:25 64:15 67:15
73:5
**employment** 89:19
**encapsulated** 46:18
47:20 67:15
**enforcement** 46:20
64:22 67:13,14
73:3
**enhances** 72:15
**enjoy** 73:4
**ensuring** 11:23
**entered** 39:15
41:24
**entire** 12:13 18:19
65:14 82:22 83:3
**entitled** 61:13
**Ernest** 6:10 81:23
82:7
**ERRATA** 94:1
**ESQUIRE** 3:9,10
3:17 4:7,8
**essentially** 11:19
**et** 1:5,8 7:8,9 94:2,2
**evaluating** 21:16
85:14
**Evan** 3:17 8:3 65:7
66:17 75:17 81:21
**evan.north@dla...**
3:18

**eventually** 73:24
73:25
**everybody** 7:25
20:3
**exactly** 23:24 53:21
64:23
**EXAMINATION**
5:4 9:7
**examples** 52:18
**exclusions** 64:2
**Excuse** 9:18
**exemption** 22:11
23:5,8,9 28:3 29:8
31:3,14,15 34:4
34:10 35:8,13,18
38:3,22 46:8,18
51:10,18 68:9
85:14 86:16
**exemptions** 27:16
28:3,22 29:6
30:21 31:17 38:8
44:10,14 48:8,12
48:22 64:21 77:7
87:7
**exhibit** 4:16 6:4,6
65:8,9,16 66:19
75:8,10,16,17
78:11 81:20 82:2
82:11 83:2
**exist** 23:25
**expand** 42:6
**expanded** 72:5
**expires** 91:17 92:18
94:24
**explain** 52:13
69:10
**explicit** 71:24
**explicitly** 72:13
**expressing** 73:2
**extended** 72:14
**extent** 52:5 56:14
89:4,7,14

**F**

**F** 4:7 93:1
**fact** 70:4 83:16,25
84:10

**factors** 23:16 28:7
  30:17 31:12,19
  36:2
**fair** 11:9 20:11
  26:11 33:25 34:6
  45:19 46:17 47:19
**fall** 13:20
**Familia** 84:2
**familiar** 15:16
  21:25 22:5,9,13
  34:21 37:10 49:4
  49:8 83:9 85:6,12
**far** 48:4,5
**feel** 24:19,20 25:16
**feeling** 25:9
**feelings** 25:5
**filed** 7:9 11:23
**file-by-file** 28:14
  28:18,23 33:22
  47:23
**final** 57:21 67:17
  74:15 79:11 80:3
  87:21
**finalized** 35:18
**fine** 10:14
**finish** 46:23
**Fire** 1:5 7:8 94:2
**firm** 8:2
**first** 9:15 16:6,15
  66:6,7 80:11
  82:25 83:6,8,9,11
**five** 14:21,22
**Florida** 2:13,14
  92:3,17 93:2
**flow** 89:9
**fluctuated** 12:25
**FOIL** 6:5 11:3,8,19
  12:21 13:7,23
  14:11 15:19,21
  16:3,19 17:6,11
  17:24,25 18:8
  19:10,10,12,16,24
  20:2,4 22:11,19
  22:23 23:20,23
  24:22 25:3,13,15
  26:14 27:3,8,19
  27:20,22 29:13

30:2,16,22 32:18
  32:19 33:21 34:2
  34:7,22 35:8 36:4
  36:25 37:9,22
  39:12,20,25 40:10
  40:21 41:9,22,24
  42:11,13,13 43:3
  44:11,14,24 45:12
  45:16 47:3,3,11
  48:22 49:21 50:14
  50:19 51:3 52:2
  53:12 55:2,6,17
  59:5,17 60:25
  61:13 62:16 63:15
  64:2,14 65:11,18
  68:16 69:15 72:7
  76:9 77:6,7 78:20
  80:19,23,24 81:5
  85:14
**FOILs** 22:22 48:23
**FOIL-related** 16:8
**follow** 17:13,17
  40:2,5 68:4
**following** 44:8
**follows** 9:6 55:23
  58:4
**footnotes** 18:25
**form** 10:25 11:11
  12:23 14:6,25
  16:11 20:16 21:19
  23:11 24:24 26:16
  31:22 33:11 37:14
  43:5 46:2 47:13
  62:18 71:8,21
  72:9 73:10 79:23
  80:20 81:12 83:18
  84:5,15 85:17
  86:5,19 87:18
  88:7
**formal** 62:6
**formerly** 74:22
**formulating** 42:9
  57:21
**forth** 93:8
**forward** 67:21
  73:15
**FPR** 1:24 92:16

93:5,19
**frame** 89:25 90:5
**Freedom** 22:2,2
**frequently** 30:22
  31:4
**fulfilled** 77:13
**further** 49:8 66:4
  93:11
**future** 87:25 88:15

___

**G**

**GA** 2:12
**Gabriela** 4:17 7:19
**general** 35:8 46:5
**generally** 48:17
**GG** 92:19
**GIBSON** 4:8
**give** 8:21 10:2
  19:11 30:16 51:15
  51:23 55:6 74:6
**given** 16:7 17:6
  21:4 42:4,9 93:10
**gives** 39:12
**giving** 32:3
**go** 16:12 21:15
  30:23 32:8,25
  38:17 68:14 73:15
**going** 36:18,20 58:2
  59:6 63:24 64:5,6
  64:8,8,9,18,23,24
  65:3,24 67:18,19
  67:20 75:12 76:10
  82:13 90:4,14,19
**Goldfarb** 13:10
**Good** 7:2,25 8:5
  9:9 10:13,19
  66:15
**gotten** 16:2 19:20
  21:11 48:5,7
  56:19,20 61:6
**government** 6:5
  49:5,13 50:14,18
  50:25 51:16 52:15
  52:19 53:6,14
  54:2,24 56:10
  57:2 58:5 65:4,10
  65:17 73:5

**ground** 10:3
**grounds** 87:8
**group** 12:11 13:18
  13:21 16:7,16
**guess** 20:25
**guidance** 52:14,16
  54:16 55:6
**guidances** 15:17
**guide** 17:22,23
  18:14,20,22,24
  19:4
**guided** 73:21
**guidelines** 17:13,20
  18:6,12
**guides** 18:16

___

**H**

**H** 6:1
**Hall-Breuwet** 1:24
  2:9 8:15 92:16
  93:4,19
**hand** 8:19 92:10
  93:16
**handling** 11:7
  17:10
**happen** 79:13
**Hart** 6:10 81:23
  82:8
**head** 16:2 47:18
**hear** 39:7
**heard** 15:14
**held** 2:9 55:12
**HEPWORTH** 3:10
**hereinbefore** 93:8
**hereunto** 93:15
**Higher** 66:4
**highlighted** 66:20
**home** 24:8 31:5

___

**I**

**identifiable** 24:3
**identification**
  65:12 82:9
**identify** 7:21
**identifying** 24:6
**immediate** 13:9
**immediately** 12:18
**imminent** 34:23

36:5
**impact** 87:25 88:12
  88:15,18
**impair** 34:23 36:4
**important** 10:8
  33:8
**impute** 73:6
**inaccurate** 69:21
**incident** 87:10
**incidents** 86:11,13
  86:22 87:10
**include** 46:25
**included** 16:4 44:9
  70:15
**including** 28:4 29:8
  60:13
**inconsistent** 37:3
**individualized**
  47:23
**individually** 27:22
**information** 22:2
  23:2,25 24:3,6,11
  24:14 28:7 31:6,9
  32:4,10,22 51:2
  56:16 57:11 83:13
  87:24 88:2,23
  89:4,16
**injunction** 73:20
**instance** 53:3
**institution** 79:6,9
**instruct** 75:14
  76:12 88:21
**instructing** 36:16
  50:9 59:11 76:25
  85:8
**instruction** 36:19
**intake** 11:21
**intended** 73:2
**intends** 68:4
**intent** 84:13
**interested** 83:6
  93:14
**interfere** 46:21
**interference** 45:18
  46:8,18
**interposition** 90:7
**interpretation**

72:21 75:25
**intricately** 70:23
**invasion** 22:12,18
  23:19 26:13 27:24
  28:10 55:14 56:12
  57:5 58:7 59:17
  60:24 61:19 62:3
  72:24 79:21 81:9
**invasions** 78:19
**investigations**
  68:12
**investigator** 46:7
**invited** 42:21
**involving** 86:14
**issue** 10:17 37:17
  62:25 63:4,6
  88:11
**issued** 15:21,23
  16:5 18:7 51:15
  53:13 58:12,13,21
**issues** 90:6

**J**

**J** 6:6 82:3
**James** 42:15
**Jeremy** 4:20 7:17
**Jim** 42:22 44:17
**job** 1:25 53:16,22
**joined** 20:12
**judicial** 46:24
**July** 65:22
**June** 80:13 81:21
  81:25
**Justice** 84:11,23

**K**

**kill** 84:13
**killings** 85:23,24
**kind** 51:14 80:17
  89:12
**knew** 20:10
**know** 10:7 15:11
  16:2 17:17 18:6
  18:11 19:3,6,9,22
  20:21 21:2,10
  26:3 31:2,4 33:5
  35:23,23 36:6,7,8
  37:7,19,21,21,22

38:15,18 39:16
41:21 42:19 43:2
43:9,14 45:20
46:4,5,12,17 52:9
53:11,15 54:4,6,7
54:9,11 59:13
68:3 74:20 81:6
81:14,16,18 82:24
83:20,22 84:7,9
85:19 86:8 90:6
**knowledge** 18:5
**KPF** 1:3
**KWL** 1:3

**L**

**LA** 2:12
**language** 72:25
**law** 4:3 8:7 12:18
  15:21 17:18 22:3
  22:6 23:4 26:9
  29:17,22 30:4,21
  31:3 34:22 40:2,5
  40:7,14 41:15
  42:13 43:7,8,10
  43:11,13,24,25
  44:7,8,10 45:17
  46:9,19,20 47:20
  51:19,20,21 52:7
  52:7,8 64:6,7,19
  64:19,20,21,25
  67:12,13,14,23
  70:24 73:3
**lawsuit** 73:21 79:6
  79:9,12 80:5
**LCR** 1:24 92:16
  93:4,19
**leave** 66:16 78:12
  90:14
**legal** 44:23 45:4
**legislature** 73:2
**LeMASTER** 4:20
  7:17
**Lesa** 1:16 2:8 7:1,7
  8:1 9:1,3 10:1
  11:1 12:1 13:1
  14:1 15:1 16:1
  17:1 18:1 19:1

20:1 21:1 22:1
23:1 24:1 25:1
26:1 27:1 28:1
29:1 30:1 31:1
32:1 33:1 34:1,18
35:1 36:1 37:1
38:1 39:1 40:1
41:1 42:1 43:1
44:1 45:1 46:1
47:1 48:1 49:1
50:1 51:1 52:1
53:1 54:1 55:1
56:1 57:1 58:1
59:1 60:1 61:1
62:1 63:1 64:1
65:1 66:1 67:1
68:1 69:1 70:1
71:1 72:1 73:1
74:1 75:1 76:1
77:1 78:1 79:1
80:1 81:1 82:1
83:1 84:1 85:1
86:1 87:1 88:1
89:1 90:1,17 91:7
92:7 94:3
**letter** 6:6,9 81:21
  81:23 82:2,5
**let's** 49:25 75:15
**Licensed** 2:11
**life** 29:9 31:3,7,10
  31:24 32:6 87:2,7
**light** 66:22 70:4
**line** 70:3,9 83:9
**lines** 18:15
**link** 79:7
**linked** 70:23
**links** 80:8
**list** 24:16,16,17
**listed** 23:2 24:9
  32:10 35:14 71:11
  72:13
**listing** 77:21
**litigation** 11:20
  12:21 13:7 14:2,5
  17:2 19:10 20:21
  20:22 63:8 74:13
**little** 42:7 56:6

68:15
**Liu** 83:16
**LLP** 3:5
**Ln** 94:5
**locate** 31:6
**location** 32:3
**long** 11:25 19:13
  24:15,17 55:12
  83:10
**longstanding** 72:20
  75:24
**look** 23:23,25 27:22
  31:8 33:3,4 50:25
  54:13,15 64:7,8
  72:18 75:20
**looked** 74:19
**looking** 28:2 47:4
  87:5
**looks** 23:17 34:2
  47:9 83:9
**Lynch** 6:7 82:3

**M**

**mail** 84:24
**making** 32:21 33:5
  46:6 49:2 60:6
  73:16 80:3 85:25
  86:23,25
**man** 84:11,24
**manage** 11:19
**managing** 11:17
**manner** 66:25
**Mantellini** 14:16
**Mantellino** 13:17
  14:3 21:3
**Mantellino's** 19:18
**mark** 65:8 81:20
**marked** 65:12 82:8
**marking** 65:15
**marriage** 93:13
**mass** 84:12
**materials** 43:14,22
  44:2
**MATT** 4:14
**matter** 7:7 93:14
**matters** 16:8 60:16
  74:21

**MATYSTIK** 4:14
**ma'am** 34:21 44:20
  46:23 48:21 82:12
**mean** 14:5 16:15
  19:16 22:19,20
  24:5 25:8 27:3
  32:20 48:16 69:3
  80:22 89:6
**media** 90:18
**member** 61:4,5
  62:9 63:3 77:19
**memo** 44:6
**mere** 79:19
**mesh** 52:6
**Michael** 3:10 6:9
  82:6
**michael.hepwort...**
  3:12
**middle** 10:15
**mind** 31:13
**Miosotis** 84:2
**misconduct** 55:13
  77:21
**months** 12:19
**Moore** 1:16 2:8 7:1
  7:7 8:1 9:1,3,9
  10:1 11:1 12:1
  13:1 14:1 15:1
  16:1 17:1 18:1
  19:1 20:1 21:1
  22:1 23:1 24:1
  25:1 26:1 27:1
  28:1 29:1 30:1
  31:1 32:1 33:1
  34:1 35:1 36:1
  37:1 38:1 39:1
  40:1 41:1 42:1
  43:1 44:1 45:1
  46:1 47:1 48:1
  49:1 50:1 51:1
  52:1 53:1 54:1
  55:1 56:1 57:1
  58:1 59:1 60:1,5
  61:1 62:1 63:1
  64:1 65:1 66:1
  67:1 68:1 69:1
  70:1 71:1 72:1

73:1 74:1 75:1
76:1 77:1 78:1
79:1 80:1 81:1
82:1 83:1 84:1
85:1 86:1 87:1
88:1 89:1 90:1,2
90:17 91:7 92:7
94:3
**moving** 65:20
**Murray** 6:9 82:6

**N**

**N** 3:1 5:1
**name** 7:17,24 8:6
15:14 32:15,24
94:2
**named** 21:4 24:18
**necessarily** 52:10
70:25
**necessary** 90:9
**negotiations** 34:25
**never** 61:2 62:5
**new** 1:2 3:7,7 4:3,5
4:5 7:11 8:7 43:8
43:11 68:16 69:12
69:14 75:22 84:25
**North** 3:17 8:3
**Notary** 2:13 91:14
92:17 94:24
**note** 89:24
**November** 12:16
**number** 6:3 7:11
24:9 32:2 65:9
82:2
**NW** 3:14
**NYPD** 11:20 12:13
12:15 25:4 48:16

**O**

**oath** 9:5 10:4 92:1
**object** 36:19 43:19
59:7 75:12
**objecting** 59:9
**objection** 10:25
11:10 12:22 14:24
16:10 20:15 21:18
23:10 24:23 25:19
26:7,15 27:10

28:11 29:3,14
31:21 33:10 34:14
35:5 36:13,21
37:13 38:5,14,24
39:21 40:11,22
43:4 45:8,25 47:5
47:12 48:2 49:6,8
49:14 50:5,20
52:3,22 53:7,18
54:18 55:3,16
56:13 57:6,15
58:8 59:3 61:20
62:17 63:17 64:3
64:16 67:8 68:5,9
68:10,24 69:18
71:7,20 72:8 73:9
76:15,23 78:4,21
79:22 80:20 81:11
83:18 84:4,14
85:3,7,17 86:4,18
87:17 88:6,20
89:13
**objections** 76:11
90:8
**obviously** 33:7
**occasion** 14:10
**occasions** 14:13,21
**occurred** 20:10
**office** 8:7,10 77:20
77:23
**officer** 13:13,16
15:9,12,18,24
16:5 19:7,17,19
21:3,5,10 24:21
25:13,15 27:9
29:2,25 30:19,25
32:15 33:9 37:5
39:19 40:10 41:8
53:12 58:14 63:6
66:24 72:6 84:2
87:16
**officers** 1:5 7:8
17:18 23:4 25:23
26:14 29:13 30:16
30:21 31:3 32:2
37:12 39:13 40:20
41:23 43:3,10,11

45:7,17 46:9,19
47:3,20 63:14,24
64:13,20 67:11,14
78:18 81:10 83:16
84:13,25 85:24
86:14 94:2
**officer's** 45:24
**official** 92:10
**Oh** 34:19 39:9
**okay** 9:11,12,24
10:17,18,22 11:6
11:15,25 12:4,10
12:14,17,20 13:5
13:12,22 14:4,20
14:23 15:7,16,22
16:6,22 17:9,16
17:19 18:4,11,21
19:6,15 20:5 21:8
21:12 22:5,9 24:5
24:13,19 27:21
28:5,17,23 30:13
30:15 31:18 33:20
35:3 36:2,10,18
39:11,17 41:16,21
42:19 44:19,25
45:5,20 46:11
48:10 49:4,11
50:17,24 51:6,14
51:23 52:17 55:11
55:22 57:13 58:11
58:25 62:12 64:12
65:3 66:12 68:3
68:14 69:13 70:18
71:16 74:25 75:11
75:20 76:14 78:9
78:14 83:12 85:15
88:17 89:22 90:2
90:13,15
**once** 88:12
**ones** 24:18 46:16
47:17
**ongoing** 46:24
74:13 76:15
**open** 6:4 49:5,12,23
50:14,18,25 51:16
52:14,19 53:5,14
53:25 54:24 56:10

56:25 58:5 65:4
65:10,17
**opinion** 6:4 53:5
57:10,14 60:15
63:19 65:4,6,9,14
65:16 67:24 68:11
68:25 69:25 70:2
73:17 74:12,19
**opinions** 51:5,7,11
51:15,24 53:13
54:2,14,16 56:8,9
**opportunity** 43:21
**opposed** 31:14
**option** 74:23
**organizational**
13:20
**original** 44:16
**outcome** 73:23
79:12 80:4 93:14
**outside** 24:24 34:15
35:10 36:14 45:9
49:15,16 50:10
63:18 75:13 76:11
76:24 85:4
**oversee** 11:20
**overview** 11:22

**P**

**P** 3:1,1
**page** 5:3 6:3 66:7
66:16 68:14 79:8
80:6,9 82:25 83:7
83:8,11
**pandemic** 7:16
**papers** 63:9
**paragraph** 75:21
**Paralegal** 4:14
**part** 13:18 26:19
39:10 40:7 53:16
80:4
**participants** 7:15
**participate** 20:5,9
42:23
**participated** 88:11
**particular** 25:5
39:25 83:11
**parties** 93:12

**party** 61:6 63:2
77:10
**Patrick** 6:6 82:3
**patrol** 17:22 18:14
18:16,20,22,23
19:4
**PAUL** 3:9
**pending** 35:16,17
78:18 80:25
**people** 12:20
**people's** 31:5
**person** 14:7 19:12
19:16 23:22 44:17
77:22 87:25 88:15
**personal** 22:13,18
23:2 24:2,6 32:24
55:15 56:12 57:5
58:7 68:18,25
69:16 70:20 71:18
72:6,25 74:23
**personally** 13:22
14:10 36:10
**personnel** 11:8
18:13,17,24 19:2
21:13,17 53:6
**persons** 27:13
42:12 74:22
**Pg** 94:5
**PI** 24:2
**Piper** 3:5 4:14 8:3
8:4
**place** 7:13 35:21
80:12,14 87:4
**placed** 79:6
**plaintiffs** 1:6 3:3
8:2 36:12
**plan** 48:10,11
**plans** 48:21
**play** 73:25
**please** 7:21 8:19
42:6 46:23 50:2
59:22 65:19 66:3
66:17 69:10 75:17
78:24 79:3 82:15
84:19
**point** 56:20 58:16
61:2

**police** 6:7,9 12:4
13:12,15 16:20
18:7,12 19:8
22:20,21 25:23
26:13 30:16 39:24
45:6,22 55:23
58:3 59:2,14
60:22 61:15,16
62:13 63:14,23
66:24 67:6 69:4
69:13 81:22,24
82:4,6 83:13 84:2
84:13,25 85:24
86:14
**policies** 11:4,7
17:10 25:3
**policy** 15:21 16:3
17:15 18:19 25:6
42:9 50:15 55:22
56:2,3 57:18,22
58:4 60:12,18,22
62:6,14,20 67:6
73:13
**POLK** 92:4
**portion** 36:8
**position** 11:16 12:2
12:7 19:21 58:23
59:2,14 60:3
61:16,22 64:13
65:5 69:7 70:8
71:17 76:20 77:5
78:17 79:18 80:2
87:14,21
**post** 60:8,18 63:13
63:23 71:6 80:7
80:14,25 86:17
89:19
**posted** 80:5
**posting** 80:11,18
81:8
**PowerPoint** 44:12
44:15
**practices** 11:7 25:3
**preceding** 16:25
**prepared** 44:3,15
44:17
**present** 4:13 28:19

34:23 35:20 36:4
**presentation** 19:11
**President** 6:7 82:3
**previous** 33:17
50:4 67:11 79:4
**previously** 80:7
**Primarily** 71:14
**primer** 17:6
**prior** 19:23 32:18
32:19 56:2,17
60:21 77:8 79:5
80:5
**privacy** 11:8 15:8
15:12,18,23 16:5
18:13 21:13 22:13
22:18 23:5,8,9,19
24:4,12,21 25:12
25:14,18,23 26:13
26:22,25 27:9,15
27:25 28:4,10
31:11,14,20 32:5
34:3 55:15 56:12
57:5 58:7 59:17
60:17,24 61:19
62:3 68:8,9,18
69:16 70:17,21
71:18 72:6,25
74:24 78:19 79:21
81:9 86:16
**private** 21:17 24:14
**privilege** 10:17
59:7,10
**privileged** 56:15
88:22 89:4,15
**problematic** 32:24
33:2
**procedure** 18:24
**proceed** 11:22
**proceeding** 46:24
**process** 45:6 57:18
59:10 60:11
**produce** 14:18
47:10
**produced** 28:25
41:24 42:5,10
51:25,25 77:9
**producible** 77:6

**producing** 37:12
**production** 23:18
45:14,23 46:14
52:20
**Professional** 2:13
**proper** 16:18 54:25
**protect** 24:21 25:12
25:14,17,22 26:12
29:12,24 33:8
39:18 40:9,19
41:7
**protected** 27:2,9
56:21 60:16 74:22
78:19 80:19
**protecting** 26:21
**protection** 71:18
73:4
**protections** 63:15
64:2,14
**protocol** 26:20
**protocols** 15:17
22:15 23:7
**proven** 78:3 79:19
**provided** 44:21
**provides** 41:22
**provisions** 68:16
68:17 69:15,16
70:20 75:22
**public** 2:14 17:17
23:4,4 30:20 31:2
43:10,11 45:17
46:9,19 47:20
64:20 67:2,11
79:20 91:14 92:17
94:24
**publicly** 32:14 86:2
**put** 30:24 69:12
75:9,17
**p.m** 2:5 7:4 90:19
90:21

**Q**

**qualifying** 38:22
**question** 10:7,16
15:22 16:12,14,18
20:25 21:22 25:7
26:4,4 29:19,23

30:6,8 33:14,17
35:8 39:6,7,8 40:4
40:17,18,23 47:7
49:19,23 50:2,4,8
56:6 58:25 65:24
74:8,10 78:24
79:2,4,17 82:16
84:18,19 85:11,16
88:25
**questioning** 7:23
**questions** 10:4,5
**quick** 10:3
**Quinn** 4:8 8:10
**quite** 21:22 23:13
44:12
**quo** 72:16

**R**

**R** 3:1,10 93:1
**Rafael** 83:16
**raise** 8:18 68:8
**raised** 86:10,11,15
86:22
**Ramos** 83:17
**RDR** 1:24 92:16
93:4,19
**reached** 58:16
89:24
**reacting** 74:16
**read** 33:16,17
37:20 50:2,4 57:9
65:14 79:2,4
82:13,19 83:10
84:18 94:5
**reading** 75:21
**reads** 66:21 94:5
**Realtime** 2:11
**Reason** 94:5
**Rebecca** 4:8 8:9
**recall** 14:14 15:3
15:13,14 18:18
19:5 53:21,21
83:9,11
**receive** 17:24 18:2
29:7
**received** 11:20
28:15 45:5

**receives** 19:7
**record** 7:3 10:9
13:13 21:9,16,17
29:7 31:9 33:3
44:20 48:20 61:5
61:10,12 63:4
71:25 90:19 93:9
**records** 11:9 13:16
18:13,17,24 19:2
19:2,7,17,19 21:3
21:4,13 22:7,11
23:3 24:10 25:23
26:20 27:15 42:4
42:10 46:8,20
47:24 48:8 52:21
53:6 58:14,24
60:13 63:3,10
66:24 67:2,13,20
73:3,5 74:14
83:14,24 86:2,17
88:14 89:10,20
**redact** 70:16 71:25
**refer** 67:10 70:11
**referring** 58:20
70:12
**refers** 22:6
**reflected** 71:14
**reflects** 70:25
**regard** 15:18 16:19
18:7 39:13 50:19
52:20
**regarding** 11:4
25:24 51:2 53:6
74:21
**regardless** 57:2
**regards** 46:6
**Registered** 2:10
**regular** 54:5,8
**related** 93:11
**relates** 70:5
**relating** 21:13 63:3
66:24
**relationship** 15:8,9
50:14
**release** 28:19 32:12
32:22 46:20 55:12
56:11 57:3 58:5

59:15 61:7,18,23
62:9,15 63:5,10
83:13,23 86:2
87:14,24 88:13,14
89:9,20
**released** 58:24
74:14 79:20 88:2
**releasing** 32:14,23
**relevant** 49:24
**relied** 73:14
**remains** 50:6 72:16
**remember** 18:22
18:23 44:12
**REMOTE** 1:15
**remotely** 2:9 7:15
92:7
**REO** 37:24 58:13
62:25
**repeal** 11:4 42:4,9
43:12 44:8 47:25
48:23 55:25 56:18
58:13 60:18,21
61:17 63:13,23
66:22 67:19 71:6
74:16 77:8 80:14
86:17
**repealed** 69:11
**repeat** 33:13 60:4
**rephrase** 10:8
21:21
**report** 13:8
**REPORTED** 1:23
**reporter** 2:10,11,11
2:12,13 8:14,16
33:15 93:5,20
**reporting** 15:9
**reports** 54:10
**represent** 7:22,25
**representative**
61:15 69:5
**representing** 7:18
8:8,10,15
**request** 13:23
14:11 17:24 18:2
22:17,23 23:23
24:22 25:13 26:19
26:24 27:6,8,19

27:20,22 28:9,15
30:2,18,24 34:7
39:20 40:21 47:11
49:3 61:4 66:23
66:25 72:7 77:14
**requested** 25:24
27:23 37:3
**requesting** 14:7
**requests** 11:8 14:15
17:11 18:8 25:15
26:14 29:13 36:25
37:9 45:12 47:24
48:6 51:3 60:7
80:25
**request-by-request**
48:13
**required** 39:25
40:5
**requires** 71:2 72:21
75:25
**reread** 78:23
**researching** 54:13
54:17
**reserve** 90:10
**respect** 34:7
**respond** 17:25 18:8
**responded** 13:23
14:10 37:9
**responding** 14:15
22:21,23 24:22
25:13,15 27:8
29:13,25 36:25
39:20 40:10,21
41:9
**responds** 34:8
**response** 33:21
35:7 47:11
**responses** 32:18,20
**responsibility**
24:20 25:12,17
26:5,9,12 29:12
29:17,21,24 30:3
39:18 40:8,14,19
41:7,14 53:17
**responsive** 77:15
**result** 71:19
**revealing** 56:15

89:3,15
**reveals** 33:4
**review** 26:20,24
27:5,7,13,15
28:14,18,24 35:24
43:22 44:2 46:7
47:23 48:7,11,11
51:6,11 53:25
54:9,10,11,12
87:6
**reviewed** 15:20
35:24 36:11 43:24
44:7 51:4 66:25
69:24
**reviewing** 18:23
29:8 31:8 36:3
45:12 48:25 51:18
66:2,8,11 69:25
82:14,20
**revised** 43:10 44:18
**Rhonda** 1:24 2:9
8:14 92:16 93:4
93:19
**Richard** 13:17 14:3
19:18
**right** 8:19 10:2,20
12:25 27:19,25
31:12 33:9,18
41:14 45:18 46:17
46:22 47:19 56:25
57:5 77:25 80:2
81:3,19 83:6
90:11
**rights** 39:19 40:9
40:20 41:8 45:6
45:15,24 46:5,15
47:2,9,17
**risk** 28:20,25 30:18
30:25 32:15 33:22
83:14,24
**role** 11:19 49:12
**rquinn@law.nyc...**
4:10
**rules** 10:3

─────────
**S**
─────────
**S** 3:1 6:1

**safety** 28:20,25
29:9,12,25 30:6
30:19,25 31:3,10
31:15,19,25 32:6
32:16 33:8,22
34:9 83:15,25
85:14 87:2,7
**Saint-Fort** 4:7 8:5
8:6 10:25 11:10
12:22 14:24 16:10
20:15,18 21:18
23:10 24:23 25:19
26:7,15 27:10
28:11 29:3,14
30:7 31:21 33:10
34:14,17 35:5
36:13,23 37:13
38:5,14,17,24
39:21 40:11,22
41:2 43:4,19 45:8
45:25 47:5,12
48:2,15 49:6,14
49:18 50:3,5,9,20
52:3,22 53:7,18
54:18,20 55:3,16
55:19 56:13 57:6
57:15 58:8,10
59:3,6,18,23 60:4
61:20 62:17 63:17
64:3,16 65:13
67:8 68:5,24
69:18 71:7,20
72:8 73:9 75:7,11
76:10,23 78:4,10
78:14,21 79:22
80:20 81:11 82:18
83:18 84:4,14
85:3,7,15 86:4,18
87:17 88:6,20
89:2,13,23
**saying** 56:20 63:5
74:17 79:25 86:7
**says** 17:23 18:24,25
34:22 46:20 53:24
60:15 68:10 72:19
75:23
**school** 12:18

**scope** 23:7 24:24
34:15 35:10 36:14
45:9 49:15,17
50:11 63:18 71:17
72:5 75:13 76:11
76:24 85:4
**scroll** 66:3,9 82:15
**seal** 92:10
**second** 75:22 78:13
**section** 11:18 12:13
12:15,21 13:11
19:3,11 22:6,10
37:23 45:17 46:19
66:23 68:19 69:17
70:2,21 71:5 72:4
75:20
**sections** 44:10
67:12 69:12
**see** 51:12 67:4
68:20 76:4
**seeks** 22:17
**seen** 17:15 65:25
66:12,13 67:24
82:11,16,25
**send** 84:24
**sense** 10:11
**sentence** 66:20
68:15 72:18 75:23
**separate** 31:16
**service** 61:4 62:9
77:20
**service's** 61:5 63:3
**session** 43:17
**sessions** 42:12
**set** 93:8,15
**sets** 50:18
**settlement** 41:23
**Shea** 6:8 81:25 82:5
**SHEET** 94:1
**shorthand** 93:5,20
**show** 65:3
**sic** 14:16
**Signature** 94:19
**similar** 63:7
**sitting** 18:5 59:13
**solemnly** 8:20
**somebody** 61:3

89:9
somebody's 24:8
  45:15
sorry 32:8 34:19
  46:23 75:7
sort 24:11
sought 23:24 73:20
Southern 1:2 7:10
spec 77:9
specific 17:14 18:3
  20:25 32:3 40:4,6
  40:17,18 47:4
  64:21 74:6 77:21
  84:21 86:22 87:10
specifically 18:21
  30:6 46:11 67:13
  86:9,10 87:9
specification 76:22
  77:17
specifications 77:6
  78:3 79:14
stage 48:5 63:8
  79:15
standard 7:5 26:20
  90:20
standards 50:18
  51:2
stands 64:20
start 12:14
started 16:24 42:8
state 2:14 7:21 22:2
  62:8,21 64:7
  67:21 92:3,17
  93:2
statement 11:9
  57:8 67:22 69:14
  69:17
States 1:1 7:10
statewide 54:25
  55:8
status 72:16
statute 35:15,25
stay 73:20
stays 53:12
STENOGRAPH...
  8:18,25 78:25
stenographic 93:5

93:20
stigmatize 87:16
stop 65:19
stopwatch 89:25
strategies 11:22
strategized 17:5,6
Street 3:14 4:4
strike 63:21 76:20
subject 37:5 49:8
  49:20,22 63:14
  64:14 77:7 81:10
Subscribed 91:10
  94:20
substantiated
  61:10
supervise 13:5,12
supervisor 13:3,9
  17:2,8 19:23
  20:22
supervisors 19:10
supposed 17:25
  23:3,3 24:3 46:7
  70:16
Supreme 17:3
sure 10:4 21:22,25
  23:13 26:21,25
  27:8 28:24 30:13
  35:22 36:23 41:19
  43:8 44:16,18
  45:2,3 50:3
swear 8:16,20
sworn 9:4 91:10
  92:8 93:8 94:20

T
T 6:1,9 82:6 93:1,1
Tab 65:7 81:20
take 10:13,15 14:16
  31:25 32:9 36:21
  45:13,21,22 52:8
  57:20 65:13 69:6
  80:12 87:3,4
taken 9:20 57:22
  58:2,23 70:8
  74:10
takes 45:16 84:10
  85:13,23

talk 10:22,24 11:6
  18:15
talking 25:3 35:6
talks 22:10
tech 7:19
TECHNICIAN
  4:16
telephone 24:9
tell 9:4 44:20
ten 14:23 15:4,5
tenure 20:20
terms 38:7 58:21
testified 9:5 18:9
  28:6
testify 85:22
testifying 25:4
testimony 8:21
  62:12 86:3 90:3
  93:10
thank 8:12,25
  66:10 90:3,11
Thanks 66:7
thing 10:14
things 65:6 70:15
  71:24
think 15:5,13,24,25
  15:25 18:25 28:13
  29:16 30:3 39:23
  41:25 42:2 44:13
  47:2,18 53:3,23
  53:24 55:5 57:19
  62:20,23 64:5,18
  64:24 68:7 69:6
  70:7,18 71:23
  73:12 84:17 87:20
  87:21
third 61:6 63:2
  77:10
thought 32:23
  89:18
three 86:11,11
Thursday 1:17
time 7:4,5 10:14
  12:13 19:13 20:4
  20:8,13,22 54:12
  54:12 65:13 89:24
  90:5,12,20

timely 11:24
times 14:19 18:18
  37:8 54:9
title 11:17 42:17
TN 2:12
today 8:14 18:5
  38:23 58:3 59:14
  60:3 77:12 90:3
  90:12
today's 7:3 90:17
Tony 7:24 48:17
top 16:2 47:18 66:5
topic 39:10 49:24
  51:3,17
topics 54:13,16
total 90:18
totality 33:4
train 17:4 19:10,22
  20:22 42:12 43:3
trained 16:19
  19:25 21:7 24:11
  45:4
training 16:7,23
  19:6,20,24 20:6
  20:12,23 21:2,11
  21:12 30:15 34:12
  35:4 39:12 41:22
  42:3,11,14,20,21
  42:24 43:13,16
  44:21 45:3,6
  49:11
TRANSCRIPT
  94:1
transparency
  42:18
TransPerfect 7:18
  8:15
treat 63:24
trial 45:19 46:17,21
  47:19 79:8 80:6,9
  80:19
trials 77:24
true 38:12,12 57:8
  93:9
truth 8:22,22,23
  9:5
try 10:7 38:20

54:10
trying 51:8 53:20
  88:18
two 10:10 12:9
  18:15,18 31:16
type 24:13 31:6,8
types 42:4

U
ultimate 73:25
undersigned 92:6
understand 10:6
  21:20 23:14 30:5
  33:7 35:12 76:16
understanding
  10:23 25:2 54:23
  76:7
understood 84:18
unfairly 87:16
unfounded 56:10
  56:11 72:22 75:5
  76:2,9 87:15
Uniformed 1:5 7:7
  94:2
union 37:5
unit 17:24,25 20:4
  20:13,21 22:19
  39:25 42:13 44:24
  45:16
United 1:1 7:9
unproven 78:17
unreasonable 28:9
  55:14 57:4 58:7
  59:17 78:19 79:21
  81:9
unsubstantiated
  55:13 56:21 57:3
  58:6,23 59:16
  60:15,23 61:9,18
  62:2,6,14,15
  68:11 72:22 74:20
  75:5 76:2,8 87:15
unwarranted 22:12
  22:18 23:19 26:13
  27:24 56:12 60:24
  61:19 72:24
use 35:7,25

uses 22:16

**V**

V 94:2
various 18:16
version 43:11
versus 7:8
video 7:6
videoconference
   7:14
videographer 4:19
   7:2,18 8:12 90:16
Videotaped 1:15
   2:8
view 52:14,16 55:8
   70:19 72:3
violate 45:14,24
   46:14
violation 62:16
vs 1:7

**W**

want 10:13 30:10
   41:17 48:15 74:25
   79:2 82:24 89:23
Washington 3:15
wasn't 39:9
way 71:4 93:13
ways 31:5
weapon 84:12
web 7:14
WenJian 83:16
went 79:10
we'll 65:8 76:16
we're 23:3 24:11
   25:2 26:21 29:7
   40:5 51:18 54:12
   64:5,6,8,8,9,18,23
   64:24 65:15 70:16
   90:4
we've 16:2 17:4
   19:9,12 36:7,7,8
   48:6 58:21,22
   70:7 74:15,19
   86:9 89:18,24
WHEREOF 93:15
witness 8:17,24
   10:20 11:3,13

12:24 15:3 16:14
20:17,19 21:21
23:13 25:4,22
26:8,18 27:12
28:13 29:5,16
30:7 31:24 33:13
33:18 34:16,19
36:16 37:16 38:7
38:15,18,23 39:2
39:23 40:12,23
41:2 43:7 45:10
46:4 47:15 48:4
48:18 49:9 50:10
50:22 52:5,24
53:9,20 54:19,21
55:5,20 56:17
57:9,17 58:9,11
59:8,18,21,24
60:6 61:22 62:20
64:5,18 65:19
67:10 68:7 69:20
71:10,23 72:11
73:12 75:14 76:12
76:16,25 78:6,23
79:5,25 80:22
81:14 82:19,20
83:20 84:7,17
85:8,19,21 86:7
86:21 87:20 88:9
88:21 89:6,17
90:10,13 92:10
93:7,10,15
Word 44:9
words 27:21
work 12:21
wouldn't 27:5
   56:19,19 61:8,24
   81:4
written 17:9,15,16
   17:19 18:6,12,19
   53:22

**X**

X 5:1 6:1

**Y**

Yeah 48:18
years 12:9 15:5

16:25 17:7 19:19
York 1:2 3:7,7 4:3
   4:5,5 7:11 8:7
   84:25

**1**

1 6:4 65:8,9,16
   66:19 75:17 81:20
1:04 2:5 7:4
1:20-CV-05441 1:3
1:20-cv-05441(K...
   7:12
100 4:4
10007 4:5
10020 3:7
1251 3:6
14 65:7
19775 6:5 65:11,18

**2**

2 6:6 81:20 82:2,11
   83:2
2:37 90:19,21
20004 3:15
2006 12:16 16:25
2014 83:17
2017 12:3,5 84:3
2018 84:11,24
202 3:16
2020 1:17 2:4 7:4
   65:22 80:13 81:21
   81:25 91:11 92:11
   93:16 94:3,21
212 3:8 4:6
27 65:22
28092 1:25
29th 81:21,25

**3**

30(b)(6) 10:19
   38:23 61:14 69:4
   85:21 90:10
335-4500 3:8
356-2444 4:6
360849 92:19

**5**

50-a 11:4 42:5,9

43:12 47:25 48:23
55:25 56:3,5,18
56:22 57:2 58:13
60:8,18,21 61:7
61:12,17,24 62:4
62:8,21 63:5,7,9
63:13,23 66:23
67:19 69:11 71:6
73:15 74:17,22
77:8,11 80:15,25
86:17
50-a's 67:18
500 3:14

**6**

6 1:17 2:4 94:3
6th 7:4 92:11 93:16
6/29/20 6:8,11 82:5
   82:8
65 6:4

**7**

7/27/20 6:5 65:11
799-4000 3:16

**8**

82 6:6
87 22:6 70:21
87(2)(b) 22:10
   68:19 69:7,17
   70:4,22 71:2,5,18
   72:4
87(2)(c) 34:22
   35:20
89 71:19
89(2)(b) 69:9,12
   70:5,5,11,14,22
   70:25 71:11,15,23
   72:14

**9**

9 5:4
9/28/23 92:18
90-minute 89:24
   90:5