EXHIBIT U

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

UNIFORMED FIRE OFFICERS ASSOCIATION, et. al.,

                                       Plaintiffs,

          -against-

BILL DE BLASIO, et. al.,

                                   Defendants.

------------------------------------------------------------------- x

**DECLARATION OF JONATHAN DARCHE**

20 Civ. 05441 (KPF)

        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

        1.    I am the Executive Director of the New York City Civilian Complaint Review Board ("CCRB" or the "Board"), a Defendant in the above-captioned action. I have held this position since May 2017. I have been employed at the CCRB since 2013 when I was hired as the Deputy Chief Prosecutor and helped to establish the CCRB's Administrative Prosecution Unit. I also served as the Chief Prosecutor and Acting Chief of Investigations before being appointed Acting Executive Director in November of 2016. Prior to joining the CCRB, I was an Assistant District Attorney in Queens County.

**A.    Background, Composition and Statutory Authority of the CCRB**

        2.    The CCRB is a police oversight board that has investigated civilian complaints against members of the New York City Police Department (the "NYPD") since 1953.

        3.    Originally, the CCRB was housed within the NYPD and was comprised of three Deputy Police Commissioners selected by the Police Commissioner. However, in 1993, Chapter18-A of the New York City Charter ("Charter") was amended to establish the CCRB as an

independent entity composed entirely of civilians with responsibility for the investigation of civilian complaints of misconduct against uniformed members of the NYPD. N.Y.City Charter section 440(a).

4. Pursuant to a recent Charter amendment passed by referendum in November 2019, the CCRB was expanded to 15 board members. Five board members are appointed by the Mayor. Five board members are appointed by the City Council (one for each of the five boroughs). Three board members are designated by the NYPD Police Commissioner and then appointed by the Mayor. One board member is appointed by the Public Advocate. The board chair is jointly appointed by the Mayor and the Speaker of the City Council. None of the board members can be current employees of the City, and only the three designated by the Police Commissioner may have law enforcement experience. N.Y. City Charter section 440(b).

5. The CCRB is authorized under the Charter "to receive, investigate, make findings and recommend action upon complaints by members of the public against members of the Police Department" regarding excessive force, abuse of authority, discourtesy, and offensive language ("FADO"). The November 2019 referendum also authorized the CCRB to investigate the truthfulness of any material statement that is made within the course of a CCRB investigation or resolution of a complaint by a police officer who is the subject of that complaint, and recommend action, where appropriate. N.Y. City Charter section 440(c).

**B.  Structure of the CCRB**

6. The CCRB consists of several units, including, (i) the Intake Unit, responsible for processing complaints filed by the public; (ii) the Investigations Unit, responsible for investigating complaints; (iii) the Mediation Unit, responsible for informally resolving less serious cases, such as those that did not involve allegations of physical force; (iv) the Administrative Prosecution Unit

("APU"), created pursuant to an Memorandum of Understanding ("MOU") with the NYPD, whose CCRB attorneys serve in the role as NYPD agency advocates in the police disciplinary process, is responsible for prosecuting the most serious substantiated complaints; (v) the Outreach Unit, is responsible for informing and educating the public about the CCRB's existence and authority; (vi) the Communications Unit, which handles press inquiries and public statements; (vii) the Policy Unit, which is responsible for producing the CCRB's annual and semi-annual reports as well as issue-based reports; (viii) the Training Unit, which provides training for new investigators and ensures current staff are up-to-date on necessary continuing education or training requirements; (ix) the Case Management Unit, which handles the processing, storage, and retention of investigative cases files as well as the production of case files to the NYPD and other agencies and entities; and (x) the General Counsel's Office that, among other tasks, is responsible for handling FOIL requests, responding to subpoenas and other court orders, assisting the board with reaching resolutions against members of service, and ensuring that the agency is in compliance with local, state, and federal laws and regulations.

7. The CCRB's Executive Director is appointed by the Board and manages the day-to-day operations of the agency. N.Y.C. Charter Chapter 18-A § 440(c)(5); 38-A R.C.N.Y. § 1-53.

8. The Board holds monthly public board meetings and issues monthly, semi-annual, and annual reports describing its activities and summarizing its actions. N.Y.C. Charter Chapter 18-A §§ 440(c)(6), (7).

C. **Chronology of a CCRB Investigation**

9. The CCRB's investigations must be conducted "in a manner in which the public and the police department have confidence." N.Y.C. Charter Chapter 18-A § 440 (a). Civilians can file complaints utilizing the following methods: (i) online via the CCRB's website, (ii) by calling

311 or the CCRB's Hotline, (iii) in person at the CCRB's offices in lower Manhattan, (iv) at the office of a City Council Member who participates in the Community Partners Initiative, (v) at any police precinct, (vi) by mailing a written complaint to the CCRB, (vii) or at a monthly CCRB Board meeting. *See* 38-A RCNY §§ 1-12, 1-13. Members of the public may also contact the CCRB or alert the agency to alleged police misconduct via various social media platforms.

10. In addition to receiving complaints from members of the public, complaints are also referred to the CCRB by the NYPD when the Department receives a report of alleged misconduct and determines that the alleged police misconduct falls within the CCRB's jurisdiction. Other government entities, such as district attorney's offices, the Mayor's office, the Public Advocate's Office, and other members of city and state government, also make referrals to the CCRB.

11. All complaints received by the CCRB are entered into an electronic case tracking system. This system captures information such as: (i) the date, time, and location of the occurrence, (ii) the names and contact information of the complainant(s) and any witness(es), (iii) a brief narrative of the events based on the information provided by the complainant(s), and, if known, (iv) identifying information about the member of service ("subject officer") involved in the incident. Each complaint is assigned a unique case number.

12. Based on the description of events, the CCRB then makes an initial determination about whether the complaint falls within the CCRB's jurisdiction. Complaints that are clearly outside of the CCRB's jurisdiction are immediately referred to the appropriate investigative body, usually the NYPD's Internal Affairs Bureau ("IAB") or the Office of the Chief of Department ("OCD"). *See* 38-A R.C.N.Y. § 1-14(a)-(b). If it is unclear whether a complaint is within the CCRB's jurisdiction, an investigation is commenced. If it is later determined that the CCRB does not have jurisdiction, the case is then referred.

13. In instances where a complaint contains some allegations that fall within the CCRB's jurisdiction and some allegations that do not, the CCRB investigates the allegations over which it has jurisdiction and refers the remaining allegations to the appropriate agency. However, in some instances, the CCRB will decline to investigate even the allegations it has jurisdiction over and refer the entire complaint to another agency when doing so will more effectively address the complaint. 38-A R.C.N.Y. § 1-14.

**Mediation**

14. Complaints presenting certain less egregious allegations, such as those which do not involve complainant's physical injury, arrest, property damage, or pending litigation, are considered for mediation, rather than investigation.

15. If the complaint is eligible for mediation, the investigator will contact the interested parties and offer mediation as an option. If mediation is accepted, then the case is taken off the investigative track and handled by CCRB's Mediation Unit. If any of the parties declines to mediate or mediation was unsuccessful, the complaint remains in the Investigation Unit.

16. At the end of each mediation, the mediator completes a Statement of Outcome, which records the mediation's outcome. For successful mediations, the Statement of Outcome will note one of the following options: (a) an agreement that mediation resolved the issues raised in the complaint was executed by all parties; (b) an oral agreement that the mediation resolved the issues was reached; or (c) after a full and frank discussion of the incident, the parties agree to disagree, but, no further action is required, and the case is closed.

17. After a successful mediation, the underlying complaint is closed as "Mediated." This means that there will be no further investigation or action by the CCRB.

18. If mediation is unsuccessful, the complaint is returned to the Investigations Unit, unless the complainant decides to withdraw the complaint.

### i. Full Investigations

19. The CCRB's mission is to complete full investigations in all cases handled by the Investigations Unit. N.Y. City Charter section 440(a). However, due to factors outside of the CCRB's control, full investigations cannot be completed in some cases. This occurs because (i) the complainant and/or victim is unavailable or uncooperative and there is insufficient real or documentary evidence, such as video/audio records, to clearly demonstrate that misconduct occurred, (ii) the complainant withdraws the complaint, (iii) the complainant and/or victim cannot be identified, (iv) or the case is closed due to pending litigation on the complainant's or the complainant's attorney's request. Complaints that are closed before a full investigation is completed are referred to as "Truncated" investigations.

20. A "Full Investigation" is an investigation that involves collecting real and documentary evidence, including audio/video evidence, as well as testimonial evidence through interviews of civilians and members of service. *See* 38-A R.C.N.Y. §§ 1-23, 1-24.

21. At the completion of a full investigation, the investigator prepares a recommendation report describing the investigation into the allegations, including relevant facts and circumstances, the NYPD rules or laws allegedly violated, an analysis of any legal and/or Patrol Guide issues, and the investigator's recommendation on each potential violation.

### Case Dispositions

22. Recommendation reports include one of the following dispositions for each alleged violation: substantiated, unsubstantiated, exonerated, unfounded, or officer(s) unidentified. 38-A

R.C.N.Y. § 1-33(e). An allegation is **"Substantiated"** when a preponderance of evidence demonstrates that the officer in question committed the misconduct charged in the allegation. *See* 38-A RCNY § 1-33(e)(1). An allegation is **"Unsubstantiated"** when there is insufficient evidence to establish whether an act of misconduct occurred. *Id.* at § 1-33(e)(2). An unsubstantiated disposition does not mean that the officer did not engage in the alleged misconduct or that the civilian was not telling the truth. Rather, it simply means that there was not enough evidence to make a determination one way or the other. An allegation is **"Exonerated"** when a preponderance of evidence indicates that the alleged act occurred but that the officer's actions were lawful and proper and within the scope of his or her authority under the NYPD guidelines. *Id.* at § 1-33(e)(3). An allegation is deemed **"Unfounded"** when a preponderance of evidence shows that the alleged acts did not occur. *Id.* at § 1-33(e)(4). Finally, when the investigation fails to identify the officer who is alleged misconduct, the investigator will recommend closing the investigation as **"Officer(s) Unidentified."** *Id.* at § 1-33(e)(11).

23.     Where an investigation uncovers misconduct that does not fall within CCRB's jurisdiction, such as failures to prepare memo book entries or to file stop and frisk reports, the investigator may detail the factual basis for the misconduct and recommend that that Board inform the NYPD about the officer's conduct. This is referred to as **"Other Misconduct Noted."**

**IV.     Board Panels and Disciplinary Recommendations**

24.     Investigators submit their Recommendation Reports to Board panels. Each panel has rotating members consisting of one mayoral appointee, one City Council appointee, and one Police Commissioner designee1. Panels meet to discuss the Recommendation Reports and vote

---

1 Both the Board Chair and the Public Advocate Appointee serve as "swing" panel members, as the Chair is now jointly appointed by the Council Speaker & the Mayor.

on dispositions for the cases.[2] *See* 38-A R.C.N.Y. § 1-31. Each panel's dispositions are deemed the entire Board's final determinations, unless the Board reconsiders its disposition after the NYPD submits a reconsideration request.[3] *See* 38-A R.C.N.Y. § 1-32(c). The Board's disposition after reconsideration constitutes the CCRB's final agency determination.

25. Although the panel considers the investigator's recommendations, panel members independently review the investigatory materials for each case and make a final determination as whether to find the allegations substantiated, unsubstantiated, exonerated or unfounded. *See* 38-A R.C.N.Y. § 1-32(a). It is also up to the panel to refer other misconduct that is not within CCRB's jurisdiction to the NYPD. A panel can also return a case to the investigative staff for further investigation, if they think appropriate. *See* 38-A R.C.N.Y. § 1-32(b).

26. In cases where one or more allegations of misconduct are substantiated, the panel also issues final disciplinary recommendations for those allegations. 38-A R.C.N.Y. § 1-33(d).

27. The panel can make one of four disciplinary recommendations to the Police Commissioner. *Id.* **"Instructions"** recommendations are issued when the board believes that the officer should receive instructions at the command level regarding the proper procedures that he or she should have used during the incident. **"Formalized training"** recommendations are issued when the board believes that the officer should receive formal training, which usually takes place at the police academy. When the Board recommends a **"Command Discipline,"** there are two options: (i) **"Command Discipline A,"** which is automatically removed from the officer's record

---

[2] At the request of a member of a panel, or upon the direction of the Board Chair, a case can be referred to the Full Board for its consideration. *See* 38-A R.C.N.Y. §§ 1-31(a), 1-32(c).

[3] Pursuant to CCRB Rule 1-36, upon a written request, the Board may reconsider its determination of a case for a number of reasons, including whether new evidence or witnesses become available, there is new or overlooked legal authority relevant to the outcome of the case, or the penalty recommendation was excessive. *See* 38-A R.C.N.Y. § 1-36.

after one year, may require the officer to forfeit up to five vacation days; (ii) **"Command Discipline B"** may be removed from the officer's record after one year if the officer petitions the NYPD for removal and may require the officer to forfeit up to ten vacation days. Finally, for the most egregious misconduct, the board can recommend that the NYPD serve **"Charges and Specifications,"** against the officer. An officer served with charges and specifications may stipulate to a plea and penalty or proceed to an administrative hearing at which the NYPD has the burden of proving the charges by substantial evidence. The maximum penalty that can result from charges and specifications is termination. However, lesser penalties such as reprimand, suspension, or probation, may also be imposed. N.Y. City Admin. Code 14-115.

28. After the board makes a final disposition, a disposition letter is sent to the complainant, the subject officer(s), and others involved in the case, including all complainants and victims.[4] The letter notifies recipients of the board's final disposition (substantiated, unsubstantiated, exonerated, unfounded, officer unidentified, etc.), but does not include the board's recommended discipline.

29. Under the City Charter and the Administrative Code, only the Police Commissioner is empowered to discipline members of the NYPD. N.Y. City Charter section 434; N.Y. City Admin. Code 14-115. Consequently, while the CCRB can and does recommend discipline, the CCRB cannot impose discipline and the NYPD can decline to follow the CCRB's recommendations. In fact, setting aside cases that the CCRB's Administrative Prosecution Unit (APU) prosecutes under a designation by the Police Commissioner, the NYPD concurred with the CCRB on disposition of cases in 53% of the cases in 2018 and 51% in 2019. For cases prosecuted

---

[4] A disposition letter is also sent in truncated cases explaining that the case was closed without a full investigation.

by CCRB's APU, the concurrence rate was 35% in 2018 and 32% in 2019. However, as an independent civilian oversight body, the CCRB does not change its findings and recommendations, even if the Police Commissioner does not agree with the CCRB's determinations.

### E. Administrative Prosecution of Substantiated Complaints

30. Pursuant to a MOU between the NYPD and the CCRB, if the CCRB's board issues a final recommendation of "Charges and Specifications" for substantiated allegation(s), the CCRB's Administrative Prosecution Unit ("APU") is authorized by the Police Commissioner to prosecute those cases through the NYPD's Administrative Trials process.[5] The APU attorney will stand in the stead of an NYPD Department Advocate, 38 R.C.N.Y. § 15-01.

31. If a plea agreement with the subject officer is not entered or approved by the Police Commissioner, the APU attorney will conduct a public trial before the NYPD Deputy Commissioner of Trials ("DCT") or an Assistant Deputy Commissioner of Trials ("ADCT"). Following the trial, the DCT or ADCT submits a draft decision and recommendation to the Police Commissioner reflecting the results of the trial. The Police Commissioner then makes a final disciplinary determination regarding the officer. Even if a commissioner of trial's decision and recommendation finds a member of service guilty, the Police Commissioner retains final authority over whether to adopt the finding and/or impose discipline.

**Repeal of Civil Rights Law 50-a**

32. When access to police disciplinary records was again brought to the forefront of the public discourse amidst the protests in response to the death of George Floyd in Minneapolis, the New York State Legislature took action to repeal Civil Rights Law § 50-a and make law

---

[5] The MOU is codified in 38 R.C.N.Y. §§ 15-11 *et seq.* A true and correct copy of the MOU is attached to the Barker Decl. as Exhibit "W."

enforcement disciplinary records more accessible to the public. Most notable is the fact that the Legislature put no restrictions on the types of records that oversight agencies such as the CCRB could release to the public. *See* Public Officers Law § 89(2-b).[6]

33. As discussed more fully in the accompanying declaration of Kerry Jamieson, an Assistant General Counsel and the Records Access Appeals Officer at the CCRB, since the repeal of Civil Rights Law § 50-a, the CCRB experienced an enormous increase in the number of Freedom of Information Law (FOIL) requests it receives. In order to efficiently address the FOIL requests and try to avoid a backlog, I directed our Records Access Officer to prioritize requests for which responses could be compiled quickly by the CCRB's computer program. Jamieson Dec. ¶ 29.

34. As the CCRB and the NYPD are two wholly separate city agencies, they may have differing findings and dispositions about the same incident. Thus, it is important that the public have access to CCRB final dispositions and recommendations, even if they are not in concurrence with the findings and disposition of the NYPD and the Police Commissioner. Indeed, if the CCRB is prohibited from disclosing its final determinations simply because they differ from the NYPD's, that would eliminate the CCRB's independence from the NYPD, which, critically, was the motivation for establishing the CCRB as a fully civilian, separate oversight body in 1993.

35. It is critical to note that while the CCRB investigates allegations by members of the public of police misconduct and making findings and recommendations, the CCRB does not have

---

[6] Public Officers Law § 89(2-b) only applies to law enforcement agencies.

a role in the discipline of police officers.  Only the Police Commissioner has the authority to discipline officers.[7]

36. The CCRB's investigative records and findings are of a different nature than the records from the other agencies that Plaintiffs seek to shield from public scrutiny. However, the CCRB's reason for existing is to investigate misconduct and make findings.  Public confidence and trust that the CCRB is carrying out its mission demands that CCRB's findings and recommendations be available for public review.

37. Allegations that are unfounded are as important to disclose as allegations that are substantiated in order to allow the public to scrutinize cases where the CCRB sided with the officers and determined that the incident did not occur. Unfounded cases demonstrate that the CCRB fairly assesses the credibility of all parties, including complainants and witnesses. Exonerated allegations allow the public to scrutinize cases where the CCRB determined that the officer acted within the boundaries of the law and the Patrol Guide. These cases demonstrate the CCRB's fair and impartial application of pertinent laws and guidelines. Unsubstantiated allegations allow the public to scrutinize cases where the CCRB failed to determine the veracity of the complaint. These cases demonstrate the CCRB's unbiased practice of weighing all the evidence and ability to acknowledge when the evidence does not reach a standard of preponderance. It also emphasizes the importance of civilian participation in the agency's investigatory process, which ensures that sufficient evidence exists to make a finding on the merits in all cases.

---

[7] While APU does prosecute charges under a designation by the Police Commissioner, the CCRB attorneys in that unit are standing in for members of the NYPD's Department Advocate's office.  They are not prosecuting those charges as the CCRB.

38. The CCRB can only function well when it has earned the confidence of the public. Transparency is vital to achieving this confidence. Preventing the CCRB from disclosing records of its own determinations would severely undermine the purpose of the CCRB. Such an order would drastically inhibit the agency's ability to function as the public's eyes, ears, and voice when investigating police misconduct. And it would thwart its Charter-mandated independence by essentially relegating the sole and full authority to make determinations of NYPD misconduct to the Police Commissioner. Such a result flies in the face of legislative intent and undermines the very concept of civilian oversight.

Dated: New York, New York
      August 14, 2020

_____
JONATHAN DARCHE