EXHIBIT "V"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

UNIFORMED FIRE OFFICERS ASSOCIATION, et al.,

                                            Plaintiffs,

                    -against-

BILL DE BLASIO, et al.,

                                            Defendants.

---------------------------------------------------------------------- x

**DECLARATION OF KERRY S. JAMIESON**

20 Civ. 05441 (KPF)

        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

        1.      I am an Assistant General Counsel at the New York City Civilian Complaint Review Board ("CCRB" or the "Board"), a Defendant in the above-captioned action. I have served in that capacity since August 2017. I am currently the CCRB's Agency Privacy Officer and Records Access Appeals Officer. I previously served in the role of Records Access Officer from approximately September 2017 to October 2018.

        2.      This declaration is based upon personal knowledge, which I've obtained as a result of performing my official job functions, particularly as Records Access Officer and Records Access Appeals Officer, as well as based on my knowledge and review of CCRB records and discussions with other members of the CCRB staff.

**I.      New York Freedom of Information Law**

        3.      New York State Public Officers Law §§ 86-89 governs the disclosure of records held by public entities. Public Officers Law § 87 mandates that *all* public agency records be made available to the public, with the exception of certain records, or portions thereof, which may be

withheld from disclosure if any exceptions from disclosure itemized in the Public Officers Law are applicable.

4.      Records that are protected from disclosure by state or federal statute are exempt from disclosure under Public Officers Law § 87(2)(a) and are also withheld from disclosure in response to a FOIL request because the agency would be violating state or federal law by releasing such protected records.

5.      The remaining exceptions from disclosure itemized in the Public Officers Law are discretionary as reflected by the use of the word "may" in Public Officers Law § 87.

6.      When withholding a requested record, an agency must assert all FOIL exceptions it is relying on at the time of the initial response.  Any exception that is not asserted is waived. For this reason, the CCRB asserts all applicable FOIL exceptions it is relying upon at the time of its initial FOIL response, even if multiple exceptions apply to the same record.

7.      Beginning in late 2018, the CCRB began utilizing the City's OpenRecords portal to receive and respond to FOIL requests. OpenRecords is managed and maintained by the New York City Department of Records. Upon information and belief, the purpose of the portal is to standardize FOIL responses across City agencies and monitor the timeliness of their FOIL responses. The portal is searchable for pending and closed FOIL requests. In order to submit a FOIL request on OpenRecords, the requestor must enter his name and contact information, the substance of the FOIL request, and the agency to which the FOIL request is directed. When a new request is submitted, the portal notifies the appropriate agency via electronic notification.

8.      Once the agency is ready to respond to a FOIL request, the Records Access Officer ("RAO") will use drop down menus to select the grounds, if any, for denying all or part of a

request. If any additional explanation is needed, the RAO can enter a note into the response or upload a separate letter detailing the reasons for denial. If the agency grants access to all or some portion of the requested records, those records are uploaded directly to the OpenRecords portal, and the requestor will receive the information electronically. On OpenRecords, the agency can either keep the request and response private or it can make them public and accessible to everyone accessing the OpenRecords portal. If a request and response are kept private, only the individual who submitted the request has access to it. The CCRB generally keeps requests and responses private. However, the public feature can be incredibly useful for responding to common requests for the same types of information.

**II.     CCRB FOIL Policy Prior to Repeal of Civil Rights Law § 50-a**

9.      Beginning in approximately September 2017, I became the CCRB's RAO and assumed responsibility for receiving, processing, and responding to FOIL requests submitted to the CCRB. I remained in that role until approximately October 2018 when a new RAO was appointed. At that time, I assumed the responsibilities of the Records Access Appeals Officer; a position that I currently hold.

10.      During my time as RAO, Civil Rights Law § 50-a was in effect and prohibited the CCRB from disclosing the majority of its records for members of the NYPD. Any FOIL request for an officer's CCRB history was denied outright unless the officer, his or her attorney, or another authorized party personally requested his or her own records. Civil Rights Law § 50-a was cited as the grounds for the denial in all of the CCRB's responses to FOIL requests involving an NYPD officer. Until the Legislature repealed Civil Rights Law § 50-a on June 12, 2020, my successors as RAO continued to adhere to this legally-mandated practice.

11.     One of the permissive FOIL exceptions asserted by the CCRB arose where disclosure would constitute an unwarranted invasion of personal privacy pursuant to Public Officers Law § 87(2)(b). Public Officers Law § 89(2)(b) provides a non-exhaustive list of the types of information that may be withheld under this exception.[1] Although the exception is permissive, local laws, [2] such as the Identifying Information Law,[3] require the CCRB to assert this privacy exception in order to withhold or redact personal identifying information, including, but not limited to, complainant and witness name, address, phone number, email, and social security number, date of birth, arrest information, and immigration status.

12.     Since September 2017, a period encompassing my tenure as the CCRB's RAO and my successors' tenure in that role, to my knowledge, the CCRB did not assert the personal privacy exception in response to requests by anyone for officer complaint histories, regardless of the dispositions of the allegations contained within. Officer histories include limited information regarding CCRB complaints, such as the CCRB case number, the Board disposition, the

---

[1] Public Officers Law § 89 (2)(b) provides:
  (b) An unwarranted invasion of personal privacy includes, but shall not be limited to:
      i. disclosure of employment, medical or credit histories or personal references of applicants for employment;
      ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility;
      iii. sale or release of lists of names and addresses if such lists would be used for solicitation or fund-raising purposes;
      iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it;
      v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency; or
      vi. information of a personal nature contained in a workers' compensation record, except as provided by section one hundred ten-a of the workers' compensation law; or
      vii. disclosure of electronic contact information, such as an e-mail address or a social network username, that has been collected from a taxpayer under section one hundred four of the real property tax law; or
      viii. disclosure of law enforcement arrest or booking photographs of an individual, unless public release of such photographs will serve a specific law enforcement purpose and disclosure is not precluded by any state or federal laws.
[2] Citywide Privacy Protection Policies and Protocols, at 4, available at:
https://www1.nyc.gov/assets/moip/downloads/pdf/citywide_privacy_protection_policies_and_protocols.pdf
[3] New York City Local Laws 245 and 247 of 2017.

Administrative Prosecution Unit ("APU") outcome, if applicable, and the final Police Commissioner determination, if known. The CCRB received dozens of these requests over this time period, and those requests were denied solely based on Civil Rights Law § 50-a prior to the repeal thereof.

13.     Upon information and belief, it appears that the CCRB elected to assert the privacy exception as a supplemental basis for denying disclosure in two cases from 2014 and 2015 due to "unsubstantiated" dispositions within. (a 2014 request from Legal Aid for records related to Daniel Pantaleo and a 2015 request for records related to Officer Louis Scarcella.)   However, to my knowledge, since September 2017, the CCRB has not asserted the privacy exception as a basis for denying access to officer histories based on any case disposition, including those which are "unsubstantiated."

14.     Prior to the repeal of Civil Rights Law § 50-a, when responding to FOIL requests for CCRB documents related to a particular case, such as the CCRB investigative file or complaint report, the CCRB would release information depending on the requester.  If a member of the public made the request, the CCRB would assert Civil Rights Law § 50-a as grounds for withholding the records.  Certain limited records would be provided, however, if the requester was the complainant or a witness in the investigation.  The RAO provided complainants and witnesses with copies of any audio recordings or statements made by that individual and any evidence or personal identifying information (e.g., copy of driver license or identification card) they may have provided to the CCRB. The CCRB also provided them with a copy of the complaint report received by the CCRB, if they were the person who filed the complaint, as well as a copy of the case disposition letter that previously had been sent to that individual. If the complainant's attorney requested the

information, the RAO required a signed release or authorization by the complainant permitting the agency to release these limited records to the attorney.

15.     If there were multiple civilians involved in a CCRB complaint, the RAO would disclose the aforementioned records relating to the particular requester, her attorney, or other authorized party making the request on behalf of the particular person.  In other words, persons requesting the records would only get their own CCRB statement and personal information – not those of anyone else without providing a written authorization. In those instances, where the records requested did not pertain to the individual making the FOIL request, the RAO would assert the privacy exception under Public Officer Law § 87 (2)(b) and deny disclosure.

16.     Prior to the repeal of Civil Rights Law §50-a, if a third-party submitted a FOIL request for CCRB records, the request would be denied in full based on Civil Rights Law § 50-a. The privacy exception would also be asserted whenever some information in the requested documents would include details about the underlying incident or personally identifying information about civilians, such as the identity of the complainant/victim, their address, phone number, or date of birth.  The agency would assert both Civil Rights Law § 50-a and the privacy exception because all applicable exceptions must be asserted when the RAO responds to a FOIL request.

17.     To my knowledge, since September 2017, when I first became the RAO, the agency has not asserted the privacy exception based on the disposition of the case. That is to say, during this period of time, the CCRB's assertion of the privacy exception did not depend on whether the requested documents related to an unsubstantiated complaint of misconduct or one that the Board found to be substantiated.

18.     Plaintiffs' claims that the CCRB disclosed information about pending CCRB investigations or cases in the Administrative Prosecution Unit (APU) are untrue. While I was the CCRB's RAO, it was – and continues to be – CCRB policy to deny FOIL requests for information relating to open CCRB investigations or pending APU cases. In these instances, the CCRB would deny the request and note to the requestor that the investigation was still open or the case was in the APU and direct the requester to resubmit the FOIL request after the case closed. This FOIL denial, however, was not based on the privacy exception. Instead, the RAO asserted the non-final intra-agency/inter-agency exception under Public Officers Law § 87(2)(g).

19.     The above policies are reflected in the CCRB's draft FOIL Manual, which was revised in March 2019. A draft of the FOIL Manual is attached to the Barker Declaration, dated August 14, 2020 as Exhibit "X." Although the Manual is still in draft form, the policies and procedures reflected therein have been and continued to be followed by the RAO. As stated in the Manual, the privacy exception can be asserted whenever "the [r]equester [is] not a party to the complaint, [or when the] attorney does not assert client as party." FOIL Manual at 5, 14.

20.     In accordance with the City's Model Protocols for Third-Party Requests, when the CCRB receives requests for most NYPD records, the CCRB's RAO refers those requests to the NYPD to determine whether any FOIL exceptions should be asserted.

III.     CCRB's FOIL Policy Post Civil Rights Law § 50-a Repeal

21.     At the CCRB's November 2019 public board meeting, I conducted a presentation about the various legislative bills concerning Civil Rights Law § 50-a that were pending in the New York State Assembly and Senate. During the public comment period, every speaker vocalized support for the repeal or reform of Civil Rights Law § 50-a. Many speakers expressed the desire

to know more about their cases with the CCRB as well as the importance of having access to disciplinary information about the police officers who were patrolling their neighborhoods.

22.    After Civil Rights Law § 50-a was repealed on June 12, 2020, the CCRB was inundated with requests for records that were previously shielded by the statute. Within weeks of the repeal, the CCRB received almost as many FOIL requests as it had in the entire previous year. Most of these requests were for CCRB officer histories and complaint reports.

23.    CCRB officer histories only contain information for complaints handled by the CCRB. They do not reflect any record of cases that were not investigated by the CCRB. As such, if an officer had an NYPD-specific disciplinary history, the CCRB would not have that information in its records, and it would not be included in the CCRB officer history. If a civilian requested information about a complaint that was referred to the NYPD, the CCRB would not have any information to provide in response and would instead refer the civilian to the NYPD. CCRB cases that resulted in charges and specifications that are prosecuted by the APU appear on the CCRB officer history. In those instances, the officer history would reflect the CCRB's final disposition and discipline recommendation, and it would separately list the outcome of the disciplinary trial prosecuted by APU and the discipline, if any, imposed by the Police Commissioner. The CCRB's findings and disposition become final upon the board vote and are not altered based upon the Commissioner's determination. Consequently, the CCRB's final disposition and penalty recommendation may differ from the Police Commissioner's final determination and the penalty actually imposed.

24.    Prior to responding to the numerous FOIL requests for officer histories, the CCRB carefully considered what information should be included in the officer histories provided in response to FOIL requests. The agency determined that it would produce officer histories

containing information regarding closed CCRB and APU cases that were substantiated, unsubstantiated, unfounded, and truncated. However, the CCRB's officer histories produced in response to FOIL would not include cases that were mediated or where mediation was attempted, notations about other misconduct outside of CCRB's jurisdiction, cases referred to the NYPD or other investigative entities, or pending CCRB cases.

25.     I note, however, that the increasingly intense public sentiment regarding transparency on police disciplinary matters, culminating in the repeal of Civil Rights Law § 50-a without an exception carved-out for pending, unsubstantiated, exonerated, and unfounded cases, is evidence of the tremendous public interest in this information, particularly in officer histories and complaint reports. The Legislature's decision only reinforces our judgment not to invoke the privacy exception for those records and to only apply the exception on a case-by-case basis. Pursuant to that judgment, since the repeal of Civil Rights Act § 50-a, the CCRB has disclosed complaint reports to third parties with appropriate redactions for privacy reasons, as well as any other applicable exception.

26.     With respect to mediated cases and cases where mediation was attempted, the CCRB intends to assert the privacy exception because the parties are promised confidentiality when entering into the mediation process, and the CCRB does not want to take any steps that would discourage officers from participating in mediations. In addition, the RAO could also assert that these cases were non-responsive to a request for an officer's CCRB history because mediated and mediation-attempted cases have not been included in an officers' history.

27.     With respect to cases where misconduct outside of CCRB's jurisdiction was noted and cases that were referred to other entities, the CCRB intends to assert the non-final intra-agency\inter-agency exception as those cases are not within the CCRB's jurisdiction and thus no

findings were made about whether the officer engaged in misconduct. In this instance, the RAO could also determine that there were no records responsive to an inquiry for a CCRB history.

28.     As demonstrated above, the CCRB did not engage in a blanket and indiscriminate disclosure of CCRB officer histories following the repeal of Civil Rights Law § 50-a. Rather, after thoughtful consideration, the officer histories that were released were limited to certain categories, and applicable FOIL exceptions were asserted where the agency deemed it appropriate.

29.     Given the dramatic increase in the number of FOIL requests the CCRB's Executive Director Jonathan Darche determined that, to prevent a backlog of FOIL requests, the RAO should prioritize providing officer histories because those could be easily compiled electronically through a program developed by the CCRB. The next priority would be to respond to requests for complaint reports. The complaint reports are summaries of the complaint filed with the agency. These are generally one to two-page documents. The RAO would need to redact the complainant's personal information from the record, but could do so fairly quickly given the short record length. Requests for case files would be responded to last, as those files are generally hundreds of pages and would take a significant amount of time to redact.

30.     Despite Plaintiff's claims to the contrary, the CCRB does not disclose substantive information about pending cases. Following the repeal of Civil Rights Law § 50-a, the CCRB continued its previously-described policy of denying requests for substantive information about pending cases under the non-final inter-/intra-agency and/or interference with judicial proceedings exceptions and directing the requester to resubmit the FOIL request after the case is closed.

**IV.     FOIL and Data Requests Provided by the CCRB After Civil Rights Law § 50-a Repeal**

31.     Upon information and belief, the list of disclosures provided by the CCRB following the repeal of Civil Rights Law § 50-a, <u>see</u> Dkt. No. 31, accurately reflects the information that was released by the CCRB between June 12, 2020 and July 24, 2020.

32.     As explained above, requests for officer histories and complaint reports were prioritized over other FOIL requests because they were easiest to fulfill. Likewise, because requests for datasets are easily retrieved from the CCRB's electronic database, those were also fulfilled quickly. The list of disclosures reflects the implementation of this prioritization policy. Disclosures in response to two notable FOIL requests received after June 12, 2020, are described below.

33.     Upon information and belief, on or about June 19, 2020, the CCRB received a request from Eric Umansky of ProPublica for a dataset containing the substantiated officer histories of 40 members of service. The dataset was provided the next day on June 20, 2020. An additional dataset request was submitted by Mr. Umansky on or about June 24, 2020, for the officer histories of all members of service with at least one substantiated CCRB allegation. The CCRB fulfilled that request, which contained the officer histories (including substantiated, unsubstantiated, exonerated, unfounded allegations) of 4,059 members of service on or about June 30, 2020.

34.     Upon information and belief, on or about July 9, 2020, the CCRB's RAO received an email from the Executive Director, which contained a FOIL request from the New York Civil Liberties Union ("NYCLU"). <u>See</u> Dkt. No. 31.  The NYCLU sought CCRB officer histories for all current and former NYPD members of service.  Given the volume of records encompassed by the NYCLU request, producing the officer histories in pdf format would consume significant time

and computing/storage resources. Further, transferring those documents in an electronic format would have been difficult. As a result, the decision was made by the RAO, in conjunction with the CCRB Development team, to send the records as a dataset rather than as individual pdfs. On July 14, 2020, at or about 12:03 p.m., the CCRB provided the dataset to the NYCLU via the OpenRecords platform, which is stored and accessed via a link similar to how one would access an attachment to an email – only with a storage capacity in excess of 25 megabytes. The link is to a dataset containing a fixed set of data as of July 14, 2020, and the data is not updated with new information. Additionally, it does not provide the NYCLU with access to the CCRB's entire database.

Dated: Queens, New York

     August 14, 2020

_____

KERRY S. JAMIESON