UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNIFORMED FIRE OFFICERS ASSOCIATION; UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK; CORRECTION OFFICERS' BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.; POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.; SERGEANTS BENEVOLENT ASSOCIATION; LIEUTENANTS BENEVOLENT ASSOCIATION; CAPTAINS ENDOWMENT ASSOCIATION; and DETECTIVES' ENDOWMENT ASSOCIATION,<br><br>                    Plaintiffs,<br><br>                    -against-<br><br>BILL de BLASIO, in his official capacity as Mayor of the City of New York; THE CITY OF NEW YORK; FIRE DEPARTMENT OF THE CITY OF NEW YORK; DANIEL A. NIGRO, in his official capacity as the Commissioner of the Fire Department of the City of New York; NEW YORK CITY DEPARTMENT OF CORRECTION; CYNTHIA BRANN, in her official capacity as the Commissioner of the New York City Department of Correction; DERMOT F. SHEA, in his official capacity as the Commissioner of the New York City Police Department; THE NEW YORK CITY POLICE DEPARTMENT; FREDERICK DAVIE, in his official capacity as the Chair of the Civilian Complaint Review Board; and THE CIVILIAN COMPLAINT REVIEW BOARD,<br><br>                    Defendants. | Case No. 1:20-CV-05441-KPF<br><br><br>**DECLARATION OF ANDREA RITCHIE IN SUPPORT OF COMMUNITIES UNITED FOR POLICE REFORM'S OPPOSITION TO PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION** |

Andrea J. Ritchie declares under penalty of perjury as follows.

1.      I submit this sworn statement in support of Communities United for Police Reform's ("CPR") Opposition to Plaintiff's Request for a Preliminary Injunction.  I have personal knowledge of the facts contained in this declaration, and, if called as a witness, am competent to testify to those facts, except as to matters expressly stated to be upon opinion and belief.  As to those, I believe them to be true.

2.      I have worked as a police misconduct attorney for 16 years.  I am also a researcher, academic lecturer, policy expert and author.  Currently, I am Researcher in Residence on Race, Gender, Sexuality and Criminalization at the Barnard Center for Research on Women, a role I have held since 2016.  Prior to that, from 2014-2016, I served as a Soros Justice Fellow, where I conducted research on policies governing law enforcement interactions with women and LBGT people by surveying and reviewing the policies of 36 of the largest law enforcement agencies across the country and publishing the results in the peer reviewed journal *Women and Criminal Justice*.

3.      As a Soros Justice fellow, I provided policy expertise to the White House Office of Public Engagement, White House Counsel on Women and Girls of Color, U.S. Department of Justice, and law enforcement agencies and associations across the country on an ongoing basis regarding issues including profiling and police violence, and supported the Department of Justice Community Oriented Policing Services department in the development of a publication entitled *Gender, Sexuality, and 21st Century Policing*.  I provided expert testimony before President Obama's Task Force on 21st Century Policing based on submissions outlining an agenda for police reform rooted in the experiences of women and LGBT people of color, which were endorsed by over 75 organizations and individuals.  The Task Force quoted my testimony and

submissions, and adopted several key recommendations.  I also played a leadership role in ongoing advocacy regarding the implementation of those recommendations.

4.      During my Soros Justice Fellowship, my work specific to New York included co-chairing the Anti-Violence & Criminal Justice Committee of New York City Council Young Women's Initiative, and researching and developed policy recommendations adopted in the Young Women's Initiative's final reports, including a recommendation that the NYPD develop and effectively enforce policy on police sexual misconduct against members of the public in concert with community based organizations, which was never implemented by the NYPD.

5.      I am the author of *Invisible No More: Police Violence Against Black Women and Women of Color* (Beacon Press 2017), the first full-length publication on gender-based violence by law enforcement agents, including a chapter summarizing existing research on police sexual violence.  More recently, I wrote an opinion piece for the Washington Post on police sexual violence entitled "How Some Cops Use the Badge to Commit Sex Crimes."

6.      My work (both advocacy and research) focuses heavily on issues relating to sexual or gender-based violence perpetrated by the police.  The above are only recent examples of my long career in this arena.  I began this work in the mid-1990s while living in Toronto as a member of an advisory committee to the City Auditor on an audit of the Toronto Police Services' practices with respect to sexual assault, and continued and expanded my work in this field throughout my life and work in the U.S.  From 2003-2004 I worked as an expert consultant for Amnesty International USA.  Among the projects I undertook there, I worked on an initiative documenting police misconduct against the LGBTQ community in four major U.S. Cities (NY, Chicago, LA, San Antonio).  I presented to UN on Committee Against Torture, Committee on Human Rights in 2006, and to the UN Committee on the Eradication of Racial Discrimination in

2008.  While violence by law enforcement officers amounts to torture under international human rights law, we know that police violence and police sexual violence occur in the United States, including in New York, often in secrecy and with impunity.  There have been high profile examples of such cases.

7.      I submit this declaration in particular to testify to the need for the release of records of complaints of gender-based violence by law enforcement that are "unfounded," "unsubstantiated," "exonerated," "truncated," or otherwise non-final and/or not substantiated— categories of records I understand the police, corrections and fire organizations oppose disclosing.  As a scholar, survivor, a woman walking the streets of New York, and as an advocate for women and LGBTQ people, I believe that disclosing records of alleged non-adjudicated sexual or gender based violence by law enforcement is crucial to identifying systemic problems, common contexts and forms of police gender-based violence, and removing individuals responsible for perpetrating or condoning sexual and gender-based violence against members of the public from the police force.  In connection with sexual violence in particular, the need to disclose and examine complaints that are not formally substantiated is especially crucial because of the nature of sexual assault and the barriers to reporting and low substantiation rates.

8.      Sexual violence by law enforcement is the second most frequently reported form of police misconduct, and one study found that an officer was caught in an act of sexual violence every five (5) days on average over a decade-long period.  Researchers—including former law enforcement officers—agree that documented cases of police sexual violence represent only the tip of the iceberg, and that unreported cases no doubt far exceed those which are reported. Federal Bureau of Justice statistics data shows that only about a third of sex assaults are reported

to anyone.  It stands to reason that even fewer would be reported when the assault is committed by a law enforcement officer.  When the individuals investigating an alleged sexual assault are the same individuals who are friends and colleagues of the assailant, a true and unbiased investigation is much less likely.

9.      Throughout my work and research, I have seen that there are significant barriers to victims of police sexual violence (or any sexual violence) coming forward.  Police officers who commit sexual violence deliberately target vulnerable women and LGBTQ people who are least likely to feel comfortable coming forward, least likely to be believed if they do, and most vulnerable to retaliation—including young people, particularly those engaged in "Explorer" and other police engagement programs, survivors of domestic and sexual violence seeking assistance, migrants, homeless and low-income people, disabled people, trafficking survivors and women who are or are believed to be involved in the sex trades, and people who are criminalized due to drug use.  In addition, because of the private nature of sexual violence—which often takes place in isolated areas, in police vehicles and facilities, and behind closed doors, often without third party witnesses, and often without corroborating physical evidence—allegations of those claims are less likely to be deemed "substantiated."  Unlike other forms of police violence, sexual violence by law enforcement officers is less likely to be recorded by a bystander.  As a result, many complaints are dismissed or unsubstantiated because the evidence boils down to the officer's word against that of the survivor, with the officer's credibility almost always assumed.  Additionally, many survivors of police sexual violence elect not to pursue their complaint in the face of potential retaliation, lack of support, and trauma due to the assault, resulting in the majority of being deemed "unsubstantiated" or otherwise not substantiated.

10.     As with any individual who commits sexual violence, reported incidents often represent a gross underestimation of the number of acts that the individual has committed. Research on police sexual violence suggests that officers responsible are often in serial offenders.

11.     In the context of the NYPD, and of my representation of individuals who have experienced sexual assault by law enforcement, I am familiar with the investigatory and disciplinary process.  I have been invited to meet with and present to New York City's Civilian Complaint Review Board ("CCRB") on why the agency should exercise its jurisdiction to investigate and adjudicate complaints of sexual misconduct.  Generally speaking, complaints of police sexual violence are referred to the Internal Affairs Bureau  ("IAB") of the New York City Police Department.  Allegations of sexual misconduct by police officers are investigated by other police officers, often using tactics of interrogation and intimidation against survivors who come forward.  There is no external oversight.  In 2018, the CCRB asserted its jurisdiction over cases related to sexual harassment and assault, but its ability to investigate and adjudicate such cases was challenged in a lawsuit filed by the police organizations.

12.     Survivors of police sexual violence who do come forward are subject to victim-blaming and shaming that is common to rape culture.  For example, when Anna Chambers alleged that two NYPD detectives raped her after arresting her in a park, the ensuing investigation and eventual trial against the officers focused more on Chambers' credibility, rather than on the two officers whose DNA was found on a teenager under arrest.  As I wrote in the New York Daily News, "[t]he message to survivors Chambers' treatment in the media and courts sends is clear: If you come forward, you will be the one under the microscope, not the officers who violated you.  Your every prior call to police will be scrutinized, every statement dissected

for inconsistencies, every Facebook picture held up as evidence of promiscuity."[1]  This was also true of a survivor whose sexual assault by two NYPD officers was discredited because she was intoxicated at the time—in fact, the officers first came into contact with her ostensibly to assist her in returning home, and later returned to her apartment to engage in sex with her.[2]

13.     However, generally speaking, when one survivor of police sexual or gender-based assault does come forward and their experience becomes public, often more survivors feel empowered to do the same.  This is not unique to cases of police sexual violence.  It permeates every level of society—as shown by recent high-profile examples of entertainment performers and executives who had benefited from their victims' silence for years, only to later be met by a floodgate of credible, similar accusations after the first victim came forward.

14.     Transparency and a sense that complaints of police sexual violence will be taken seriously, survivors will receive support, and that officers responsible will be held accountable and removed from positions where they are likely to be able to continue to engage in sexual violence is essential for creating a safe space for survivors to come forward.  Transparency requires listening to victims and bringing their experiences to light rather than silencing them, and making public information that might protect future potential victims.

15.     My research has found that transparency around sexual assault complaints is important to identify officers who are likely to engage in future acts of police violence— including deadly violence.  Sexual harassment and assault of members of the public is often an

---

[1] *The Trial of Anna Chambers: Police Departments Haven't Done Nearly Enough to Protect People from Sexual Exploitation at the Hands of Cops*, NEW YORK DAILY NEWS (May 14, 2019, 10:30 AM), https://www.nydailynews.com/opinion/ny-oped-the-trials-of-anna-chambers-20190514-4hump2keozawdc66pfhgmdvn3a-story.html.
[2] *See Two New York City Police Officers Acquitted of Rape*, NEW YORK TIMES, (May 26, 2011), *https*://www.nytimes.com/2011/05/27/nyregion/two-new-york-city-police-officers-acquitted-of-rape.html.

early warning sign that officers are likely to abuse their power in many situations. If the behavior remains unchecked these serial offenders may escalate their violence. This can lead to more serious assaults, and even lethal uses of force. For instance, the officer responsible for killing Breonna Taylor had several prior complaints of sexual misconduct, as did the officer who killed Loreal Tsingine.

16.     Finally, monitoring patterns of complaints of sexual misconduct allows for identification of problem officers, units, and policing practices. For instance, in several police departments across the country, awareness of complaints of sexual misconduct enabled individual officers to be caught and held accountable through sting operations, units such as the LAPD's infamous Rampart Division to be dismantled, and problematic practices in the enforcement of drug and prostitution laws to be addressed through oversight and ideally intervention.

17.     For these reasons, I submit this declaration in strong opposition to the Plaintiffs' attempt to keep these records secret.


Executed on this 13th day of August, 2020, in Toronto, Ontario, Canada.

I declare under penalty of perjury that the foregoing is true and correct.


Respectfully submitted,

Andrea J. Ritchie