UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

UNIFORMED FIRE OFFICERS
ASSOCIATION; UNIFORMED
FIREFIGHTERS ASSOCIATION OF
GREATER NEW YORK; CORRECTION
OFFICERS' BENEVOLENT ASSOCIATION
OF THE CITY OF NEW YORK, INC.;
POLICE BENEVOLENT ASSOCIATION OF
THE CITY OF NEW YORK, INC.;
SERGEANTS BENEVOLENT
ASSOCIATION; LIEUTENANTS
BENEVOLENT ASSOCIATION; CAPTAINS
ENDOWMENT ASSOCIATION; and
DETECTIVES' ENDOWMENT
ASSOCIATION,

                Plaintiffs,

             -against-

BILL de BLASIO, in his official capacity as
Mayor of the City of New York; THE CITY
OF NEW YORK; FIRE DEPARTMENT OF
THE CITY OF NEW YORK; DANIEL A.
NIGRO, in his official capacity as the
Commissioner of the Fire Department of the
City of New York; NEW YORK CITY
DEPARTMENT OF CORRECTION;
CYNTHIA BRANN, in her official capacity as
the Commissioner of the New York City
Department of Correction; DERMOT F.
SHEA, in his official capacity as the
Commissioner of the New York City Police
Department; THE NEW YORK CITY
POLICE DEPARTMENT; FREDERICK
DAVIE, in his official capacity as the Chair of
the Civilian Complaint Review Board; and
THE CIVILIAN COMPLAINT REVIEW
BOARD,

                Defendants.

----------------------------------------

Case No. 1:20-CV-05441-KPF

**DECLARATION OF COUNCILMAN
DONOVAN RICHARDS IN SUPPORT
OF COMMUNITIES UNITED FOR
POLICE REFORM'S OPPOSITION TO
PLAINTIFF'S REQUEST FOR A
PRELIMINARY INJUNCTION**

Donovan Richards declares under penalty of perjury as follows.

1.      I submit this sworn statement in support of Communities United for Police Reform's ("CPR") Opposition to Plaintiff's Request for a Preliminary Injunction.  I have personal knowledge of the facts contained in this declaration, and, if called as a witness, am competent to testify to those facts, except as to matters expressly stated to be upon opinion and belief.  As to those, I believe them to be true.

2.      I am a Councilmember on the New York City Council and Chair of the Committee on Public Safety, which has jurisdiction over New York City's Civilian Complaint Review Board and the Police Department.  In this declaration I explain why, in light of my experience and expertise in the area, I have come to the opinion that the culture of police secrecy perpetuated by § 50-a has damaged community safety and public trust, because without full transparency about police misconduct complaints and discipline, the police department can hide officer misconduct and can avoid meaningful discipline of its officers.

### Advocacy for Police Reform as NYC Councilmember

3.      I currently serve on the New York City Council as Councilmember representing the 31st District in Southeast Queens, where I have been a longtime resident.  I have held this position since March 2013.

4.      During my second term in office, I was named Chair of the Public Safety Committee.  In that role, I have worked to press the mayor and NYPD to address issues within the police disciplinary process.  In particular, I have advocated and pushed various resolutions related to police transparency.  That advocacy led to former police Commissioner O'Neil to implement a Blue-Ribbon Panel, which looked at the internal disciplinary process and proposed recommendations regarding what the police department could be doing better.

5.      Based on the findings of the Blue-Ribbon Panel, I introduced a bill focusing on a disciplinary matrix, which mandates the Commissioner to create disciplinary guidelines on punishment that the department implements consistently when an officer engages in certain misconduct.  The disciplinary matrix successfully passed in June 2020 after about a year and a half of advocacy.

6.      A disciplinary matrix and the repeal of § 50-a go hand-in-hand because releasing records would allow citizens and elected officials to see that the matrix is working, and that discipline is being applied consistently.  For example, I think that it is important to track the disciplinary process to determine if discipline given matches the misconduct at issue.  Such tracking would require publicly available records regarding discipline and misconduct.

### The Importance of Transparency in Promoting Community Trust

7.      Throughout my time in office, I have been a big supporter of efforts to repeal § 50-a, including participating in many press conferences.

8.      The culture of police secrecy perpetuated by § 50-a has damaged community safety and public trust.  A lack of transparency means that the department can avoid meaningfully disciplining its officers, because the public has no way of knowing if an officer was appropriately disciplined or if the department simply handed down minor punishment such as the forfeiture of a few vacation days for acts of serious misconduct.

9.      Releasing all the records regarding police misconduct and how the internal workings of the city responds to misconduct—a goal the repeal of § 50-a accomplished—is necessary to build public trust, ensure that the officers practice the tenets of courtesy, professionalism, and respect, and hold the department accountable for the conduct of its officers. Without transparency, the police is tasked with policing itself.  This means that institutional

problems go unchecked and become part of the unofficial culture of the department, undercutting official training new recruits receive.  That the police Commissioner has the ability to downgrade CCRB charges to further avoid disciplining officers only worsens this lack of transparency.

10.     Officers are public servants whose salaries are paid by the citizens.  Of course, the members of the community have a right to know who is policing their communities and who the department shields from the consequences of bad acts.  And of course, the police should not be held to a lower standard of accountability than other public servants; in fact it should be higher. If a councilmember is accused of violating public trust, the violation is not kept secret from the public.  The same should be true about officers.

11.     I have seen firsthand how a lack of transparency harms the community and makes citizens less likely to come to the police about crime in their neighborhoods.  When I was a city council staffer, there was a shooting in the 101st Precinct.  Rather than come forward to the police, witnesses approached me to provide information about the shooter, which I then relayed to the police.  Although the community members did not want the shooter to be free, they were also scared of the police because of a lack of transparency and a resulting lack of trust.  This was not a one-time occurrence; I played the role of intermediary on many occasions when citizens wanted to report crimes but did not want to be in direct contact with police officers. Transparency is key to building trust so that, one day, we may reach a point where more members of the community may one day feel safe reporting crime directly to the police.

12.     Releasing records is key to having conversations about reform efforts because everyone has access to the same underlying data.  Personally, I have found § 50-a has impeded my ability to do my job, because I have been denied access to certain records.  Lack of access to

data makes it more difficult for me—the Chair of New York City's Public Safety Committee—to have necessary conversations about public safety.

13.     The need for transparency extends to *all* police misconduct and disciplinary records.  Only a view of the full picture can reveal patterns of behavior and make way for systemic change.  Otherwise, elected officials and the public are unable to discern if and how NYPD tracks the data; there is no way of knowing if NYPD is meaningfully monitoring officers who have numerous complaints above a critical threshold.

### Transparency Does Not Jeopardize Officer Safety

14.     As Chair of the Public Safety Committee, I view police officers as part of the population that I am tasked with protecting.  And as the Chair of the Public Safety Committee I do not believe the unions' claims that the release of misconduct records jeopardizes officer safety.

15.     First, those who led the effort to repeal § 50-a made it abundantly clear that there was never any intention of releasing officers' personal contact information.  That protection was included in the repeal itself.  And during the legislative process, officer safety concerns were addressed at every juncture.  Those with a seat at the table have consistently made clear that officer safety is valued.  But simply releasing an officer's name and precinct in connection to misconduct records will not jeopardize officers.  I am not aware of any threat to officer safety—and I believe that legitimate threats would have been brought to my attentions given my committee role.

16.     Second, NYPD has a very active social media presence, where the department routinely publicizes officer names, their pictures, and their precincts in connection with the departments' successes.  The NYPD cannot claim that their continual social media presence is

unproblematic, but that releasing the same information—name and precinct—in connection with misconduct is harmful.  This is hard to reconcile.

17.     Additionally, the unions' claim that the release of records will cause reputational harm.  Not true.  Officers already have reputations in the community based on their interactions with community members.  Officers who use abusive language or force already have that reputation.  For example, once a grandmother called me with concern because her grandson wanted to walk to the grocery store, and she was worried about a particular officer who was on the street at the time, and who had a reputation in the community for targeting Black, male youth.  This reputation was not a result of records being released, but rather because of how this officer routinely interacted with the community.  This example is not an anomaly.  Like my role as intermediary between community and police, community members within my district routinely shared their concerns about an officer with a bad reputation to me.

18.     For those officers with a bad reputation, the release of records will only show the patterns of behavior that led to that reputation.  And reputations exist regardless of the outcome of the disciplinary process.  For example, even if a complaint is unsubstantiated, the community will already be aware of the "problem officers."  But being able to assess these patterns of behavior is crucial to identify, diagnose, and fix internal problems within the police department.

## My Own Experience with Police Misconduct

19.     Community mistrust due to a lack of transparency results in the community failing to come forward to report instances of police misconduct.  On multiple occasions, as a Black man living in the city, I have been subject to police abuse.  In my early experiences, when I was not yet an elected official, I did not come forward because I did not (and do not) trust the investigative process fully.  But even as an elected official, I have faced mistreatment by the

police—who later changed their attitude only upon learning who I was.  And even then, I was

not allowed to find out the outcome of any investigation into the incident.

20.     While I was working as a City Council staffer, I was walking to a store, which

unbeknownst to me, had a fire inside.  As I approached the store, an individual grabbed my arm

and aggressively knocked me out of the way.  It was only after I was knocked aside did I realize

that the man who pushed me was a police officer.  He informed me that there was a fire in the

store.  I was startled and shaken, and believed grabbing my arm in such an aggressive manner

was an unnecessary way for the officer to warn a citizen of a fire.  I told the officer as such and

suggested that next time he should identify himself as an officer and give some warning.  I then

asked for the officer's name and badge number, which he refused.  I reminded the officers that

they are obligated to provide this information, and once again he refused.  At that point, I pulled

out my city council ID card.  Immediately, the officer changed his attitude and provided his

name and badge number.  I later found out that that officer has a reputation for hassling members

of the community.

21.     I contacted the inspector located at the officer's precinct about the incident, which

simply caused to be moved to a neighboring precinct.  He never apologized and I do not know if

he was disciplined.  That as a city council staffer, I was only able to get an officer to comply with

his legal duty to give me his name and badge because of my role; and was later unable to find out

about any discipline that officer received for needlessly using force in tackling me shows the

huge lack of transparency.  That officers act without regard to citizens' rights until they know

they are dealing with an elected official points to a systemic problem.  The release of misconduct

records—for all types of misconduct allegations, regardless of their status—would allow me, my

colleagues, the public, and the police department to better assess that problem and help remedy it.

Executed on this 13th day of August, 2020, in Queens, New York.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Donovan Richards