UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK

| | |
|---|---|
| Uniformed Fire Officers Association; Uniformed Firefighters Association of Greater New York; Correction Officers' Benevolent Association of the City of New York, Inc.; Police Benevolent Association of the City of New York, Inc.; Sergeants Benevolent Association; Lieutenants Benevolent Association; Captains Endowment Association; and Detectives' Endowment Association,<br><br>            Petitioners/Plaintiffs,<br><br>  -against-<br><br>Bill de Blasio, in his official capacity as Mayor of the City of New York; the City of New York; Fire Department of the City of New York; Daniel A. Nigro, in his official capacity as the Commissioner of the Fire Department of the City of New York; New York City Department of Correction; Cynthia Brann, in her official capacity as the Commissioner of the New York City Department of Correction; Dermot F. Shea, in his official capacity as the Commissioner of the New York City Police Department; the New York City Police Department; Frederick Davie, in his official capacity as the Chair of the Civilian Complaint Review Board; and the Civilian Complaint Review Board,<br><br>            Respondents/Defendants. | Case No. 1:20-cv-05441-KPF |

**BRIEF OF AMICI CURIAE COMMON CAUSE/NEW YORK, REINVENT ALBANY, CITIZENS UNION/CITIZENS UNION FOUNDATION, AND BetaNYC IN SUPPORT OF DEFENDANTS AND DISMISSAL**

Susan Lerner
Executive Director
Common Cause/NY
80 Broad Street, Suite 2703
New York, NY 10004
(212) 691-6421
slerner@commoncause.org

John Kaehny
Executive Director
Reinvent Albany
148 Lafayette St, 12th Fl.
New York, New York 10013
(917) 388-9087
info@reinventalbany.org

Betsy Gotbaum
Executive Director
Citizens Union/Citizens Union Foundation
299 Broadway, Suite 700
New York, NY 10007
(212) 227-0342
bgotbaum@citizensunionfoundation.org

Noel Hidalgo
Executive Director
BetaNYC c/o Fund for the City of New York
121 Sixth Avenue, 6th Floor
New York, NY 10013
(347) 272-2302
noel@beta.nyc

Sean Murphy
Kamel Aitelaj
Joshua Zimberg
55 Hudson Yards
New York, NY 10001
(212) 530-5688
SMurphy@milbank.com
KAitelaj@milbank.com
JZimberg@milbank.com

*Counsel for CommonCause/New York,
Reinvent Albany, Citizens Union/Citizens
Union Foundation, and BetaNYC*

## <u>Corporate Disclosure Statement</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Amici Curiae CommonCause/New York, Reinvent Albany, Citizens Union/Citizens Union Foundation, And BetaNYC state that they do not have a parent corporation and that no publicly held corporation owns 10 percent or more of their stock.

## <u>TABLE OF CONTENTS</u>

INTERESTS OF AMICI ...................................................................................................1

ARGUMENT ....................................................................................................................4

    I.      The Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted. ............6

    II.     The Reason Plaintiffs Have Failed to State an Actionable Claim is Presumably Because Such Claim Would Have Been Facially Meritless. .............9

    III.    In Any Event, the Plaintiffs' Oblique Attack On FOIL Is Misguided as No Legal Privilege Exists to Cloak Law Enforcement in Secrecy............................10

    IV.    By Releasing Appropriate Law Enforcement Disciplinary Records, the City Is In Full Compliance With The Statute And FOIL, And In Keeping With The Spirit Of Open Data Regulations And Best Practices. ..................................11

    V.     Open Government And Transparency Are Essential For A Strong Democratic Government. ......................................................................................14

CONCLUSION.................................................................................................................18

CERTIFICATE OF COMPLIANCE ................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2007) ...............................................................................................6

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 .........................................................................................................6

*Bi-Metallic Inv. Co. v. State Bd. of Equalization,*
    239 U.S. 441 (1915) ...............................................................................................9

*Brody v. Village of Port Chester,*
    434 F.3d 121 (2d Cir. 2005) ..................................................................................9

*Data Tree, LLC v. Romaine,*
    9 N.Y.3d 454, 880 N.E.2d 10 (N.Y. 2007) .........................................................17

*Garner v. Behrman Bros. IV, LLC,*
    260 F. Supp. 3d 369 (S.D.N.Y. 2017) ..................................................................7

*Hahn v. Armas,*
    No. 209-CV-01479-JAM-GGH, 2010 WL 596145 (E.D. Cal. Feb. 9, 2010) ........7

*Jones v. U-Haul Co. of Massachusetts & Ohio Inc.,*
    16 F. Supp. 3d 922 (S.D. Ohio 2014) ...................................................................8

*Kalven v. Chicago,*
    2014 IL App (1st) 121846 ....................................................................................14

*Kelly v. Cty. of Ulster,*
    No. 118CV00240BKSDJS, 2018 WL 5811423 (N.D.N.Y. Nov. 6, 2018) .............8

*Latta v. Cuomo,*
    No. 10-CV-4120 NGG CLP, 2010 WL 4607523 (E.D.N.Y. Nov. 5, 2010) ...........8

*Madeiros v. New York State Educ. Dep't,*
    30 N.Y.3d 67, 86 N.E.3d 527 (N.Y. 2017) .........................................................16

*N.L.R.B. v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) .............................................................................................16

*Nat'l Archives & Records Admin. v. Favish,*
    541 U.S. 157 (2004) .............................................................................................16

*Native Am. Mohegans v. United States*,
    184 F. Supp. 2d 198 (D. Conn. 2002) ...................................................................7

*Parkcentral Glob. Hud Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014) ...............................................................................6

*Polanco v. Hopkins*,
    No. 03-CV-6661-CJS ...........................................................................................8

*Reyes-Aponte v. City of New York Dep't of Correction*,
    173 F.3d 845 (2d Cir. 1999) ...............................................................................7

*United States v. Campbell*,
    111 F. Supp. 3d 340 (W.D.N.Y. 2015).................................................................7

**Statutes**

28 U.S.C. § 2403 ...........................................................................................................8

By Releasing Appropriate Law...................................................................................10

Civil Rights Law Section 50-a...........................................................................*passim*

Freedom of Information Act....................................................................................2, 2

In Any Event, the Plaintiffs' Oblique Attack On FOIL Is Misguided as No Legal
    Privilege Exists to Cloak Law...............................................................................9

Information Law ...................................................................................................*passim*

New York City Open Data Law ..................................................................................10

New York City's 2012 Open Data Law .....................................................................12

New York Civil Rights Law .........................................................................................6

New York's Civil Rights Law .......................................................................................8

NYC Open Data, Laws...............................................................................................12

Open Data Law ...........................................................................................................12

Public Officer's Law ..................................................................................................6, 8

Public Officers Law, Article 6, Sections 84-90 ..........................................................4

## Other Authorities

*2018 Report to the Governor and State Legislature* (Dec. 2018),
  https://www.dos.ny.gov/coog/pdfs/2018%20Annual%20Report.pdf ...................................11

Eleventh Amendment ...........................................................................................................7

Fourteenth Amendment ...................................................................................................9, 10

Civil Rights, *Police Use of Force: an Examination of Modern Policing Practices*
  (Nov. 15, 2018), https://www.usccr.gov/pubs/2018/11-15-Police-Force.pdf .......................14

Fed. R. Civ. Proc. 5.1(b) ..................................................................................................8, 9

Fed. R. Civ. Proc. 5.1(c) .....................................................................................................8

Fed. R. Civ. Proc. 12(b)(7), 19 ............................................................................................7

Federal Rules of Appellate Procedure Rule 26.1 ...................................................................8

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................................6, 9

FRCP 5.1 ..........................................................................................................................8

FRCP 12(b)(7), 12(b)(4), and 5.1 .........................................................................................5

FRCP Rule 32(g)(1) ...........................................................................................................19

Governor's Executive Order 95 ..........................................................................................11

Letter from James Madison to William T. Barry (Aug. 4, 1822),
  https://founders.archives.gov/documents/Madison/04-02-02-0480 .....................................17

Local Civil Rule 11.1 .........................................................................................................19

*Memo in Support Intro 29 A (Open Government Data)*,
  https://reinventalbany.org/wp-content/uploads/2012/02/NYC-TWG-Memo-of-
  Support-Intro-29A-FINAL-Feb-27-2012.pdf .....................................................................13

N.Y. Gov. Exec. Order No. 95 (2020) .................................................................................11

National Police Foundation, *5 Things You Need to Know About Data in Policing*,
  https://www.policefoundation.org/5-things-you-need-to-know-about-open-
  data-in-policing/ (last visited Aug. 13, 2020) ..............................................................15, 16

Rule 5.1, and (iv) ................................................................................................................6

Rule 12(b)(4) ..................................................................................................................6, 9

Rule 12(b)(6), (ii) ...................................................................................................6

Rule 12(b)(7) ....................................................................................................7, 8

Rule 12(b)(7), (iii) ..................................................................................................6

Rule 19 ...................................................................................................................7

Senate Bill S8496 ..................................................................................................4

Robert Lewis, et. al, *Is Police Misconduct a Secret in Your* State (Oct. 15, 2015),
    https://www.wnyc.org/story/police-misconduct-records/ .....................................15

**INTERESTS OF AMICI**

Amici are organizations with expertise in principles of open government that seek to brief the Court on the implications of the case S8496, FOIL, and government transparency in New York.

**CommonCause/New York:**

Common Cause is a nonpartisan grassroots organization dedicated to upholding the core values of American democracy.  Common Cause has more than 1.12 million members in 50 states plus the District of Columbia.  It works to create open, honest, and accountable government that serves the public interest; to promote equal rights, opportunity, and representation for all; and to empower all people to make their voices heard in the political process.

Common Cause/New York is a chapter of Common Cause, with its own separate advisory board that participates in Common Cause/New York's annual strategic review process, advises the staff of Common Cause/New York, and supports Common Cause/New York through fundraising and other means.  Common Cause/New York currently has more than 75,000 activists and members residing in New York State, which includes more than 25,000 activists and members in New York City.

Common Cause/NewYork has been an advocate for government transparency and accountability from its founding in the 1970s.  Common Cause/NewYork was directly involved in helping advocate for, and draft, the original Freedom of Information Law in 1974 and in each of its major revisions subsequently.  Its experience and dedication of government transparency issues in New York is similar to the organization's activities and experiences in other states in which it is active. Similarly, Common Cause monitors and advocates with Congress for

1

strengthening and protecting the federal Freedom of Information Act, as it has from its founding in 1970.

Government transparency is an essential issue for the Common Cause/NewYork organization, as there cannot be any effective accountability without citizen and watch dog knowledge as to what government agencies are doing and what actions are being taken or not taken.  Common Cause expends substantial staff time and resources on a regular basis on government transparency issues, at the municipal, state and federal level. Accordingly, the repeal of Section 50-a of the Civil Rights Law and the modification of the Public Officers Law so that disciplinary records of police, fire and correction officers are subject to public disclosure via a Freedom of Information request has been a long term goal of  Common Cause/NY, working with other good government groups and police reform advocates. Accordingly, the outcome of the instant litigation is of significant moment to Common Cause/NY and its entire program of encouraging adequate transparency and accountability for all government agencies.

**Reinvent Albany:**

Reinvent Albany is a non-partisan, New York State non-profit group that has advocated for open and accountable government in New York City and State since 2010. In that time, Reinvent Albany has been one of New York's most prominent public voices for government transparency, especially in strengthening the state Freedom of Information law and open data. Reinvent Albany has successfully championed new state and NYC FOIL and open data laws and practices, and has been cited by state and national news media more than 2,000 times in the last decade. Reinvent Albany is the New York State representative of the National Freedom of Information Coalition.

Reinvent Albany has been advocating for the repeal of 50-a since 2015 and strongly supported its recent repeal by the legislature. In Reinvent Albany's view, 50-a was an arbitrary loophole in the state Freedom of Information Law, which was specifically created to increase government transparency and accountability. Reinvent Albany believes that the police, like any other government employees, should be fully accountable to the public. Indeed, the police exercise more direct power over the public than many other government agencies and should be more accountable, not less.

**Citizens Union/Citizens Union Foundation:**

Citizens Union, founded in 1897, is a nonprofit, nonpartisan organization committed to reforming New York City and State government by fostering transparency, accountability, accessibility, honesty and the highest ethical standards.  The organization undertakes research, issues reports, urges legislative and executive action to promote reform, and educates the public on policy and electoral issues.

One of Citizens Union's priorities has been improving the accountability of law enforcement in New York City.  Since 2008, it has issued four reports addressing policies and practices regarding accountability, with a focus on investigating and disciplining police misconduct.  Its 2016 report, a Brief and Policy Paper on Police Accountability, contained numerous recommendations for improving the disciplinary process regarding police officers.  Citizens Union has also advocated for a number of legislative measures in this area, including the repeal of Article 50-a of the Civil Rights Law, and has formed a committee specifically tasked with recommending changes in light of this year's events affecting the City's Police Department.

**BetaNYC:**

ument 141-1   Filed 08/14/20   Page 12 of 27

BetaNYC is a partner project of the Fund for the City of New York. BetaNYC is a civic organization dedicated to improving lives in New York through civic design, technology, and data. BetaNYC's work empowers individuals and local communities to build a civically engaged technology ecosystem and provide for an honest and inclusive government. BetaNYC wants New York's governments to work for the people, by the people, for the 21st century.

Founded in 2008 as a Meetup to discuss open government in NYC, BetaNC has evolved to be a key local leader and national partner in civic technology, open data, and open government. In 2014, the community wrote the People's Roadmap to a Digital New York City which outlined BetaNYC's values, vision, and 34 goals — a few of those ideas have turned into the Civic Innovation Lab and Fellowship. Now, BetaNYC works in partnership with Manhattan Borough President Gale A. Brewer, the Mayor's Office of Data Analytics, and City University of New York's Service Corps program to address civic society's technology, data, and literacy needs.

Open data is a critical channel for holding government powers accountable in New York City. BetaNYC stands behind reinstating Section 50-a and using it to ensure that officer misconduct and discipline information is accessible to the public, for the longevity of our democracy. BetaNYC does not support the use of our courts to rollback landmark legislation and waste taxpayer's dollars.

Based on the foregoing, CommonCause/New York, Reinvent Albany, Citizens Union/Citizens Union Foundation, and BetaNYC, respectfully request leave to participate in the above-captioned action as *amici curiae*.

**ARGUMENT**

Government transparency is an essential tenet of American democracy.  It is vital to freedom at the ballot box, truth in the courtroom, and is the sole pathway to keeping a check on

4

those whom citizens grant power.  This right of transparency is safeguarded through our freedom

of information regulations—in New York State, the Public Officers Law, Article 6, Sections 84-

90, also known as the Freedom of Information Law or FOIL.  The principle of FOIL is

embedded into the State's identity, but the law itself has been changed and amended numerous

times as New Yorkers themselves have evolved.

By Senate Bill S8496 ("S8496"), passed on June 6, 2020, the New York legislature both

repealed Section 50-a of the Civil Rights Law ("50-a") and added certain provisions to FOIL

pertaining to transparency of disciplinary actions undertaken by the New York police, fire

department and department of corrections.  The repeal of 50-a is, therefore, an integral element

of the FOIL amendment scheme, which was decided by the legislature as  a direct response to the

deleterious effects of biased policing, and previously ignored need for transparency in law

enforcement.

The Petitioners/Plaintiffs ("Plaintiffs") purport to challenge the Respondents/Defendants'

("Defendants" or the "City") release of law enforcement disciplinary records.  Under the guise of

a complaint against such release by the City, however, Plaintiffs' arguments essentially dwell on

the consequences of the implementation of FOIL, as amended per S8496, notably why the City's

contemplated implementation will be unconstitutional.  In other words, the Plaintiffs' Complaint

("Complaint") is a misdirected attack on the statute itself.  Indeed, the City is doing exactly what

it is required to do by law, and complies with the legislature's demand for a more open

government.  The *amici* submit that the Defendants' release of disciplinary records obtained via

requests made under FOIL is in full compliance with the law and, as such, cannot be faulted. To

the extent that the Plaintiffs take issue with the Defendants' release, they take issue with the law.

Yet, they fail to mount a facial challenge to either section of S8496 and/or FOIL.

Thus, the Defendants' case evidences a failure to state a claim on which relief can be granted and the Complaint should be dismissed under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). For the same reason, the Complaint is also defective under FRCP 12(b)(7), 12(b)(4), and 5.1.

In sum, ruling in favor of the Plaintiffs would eviscerate the legislature's unambiguous intent, which is to allow all disciplinary records opened against law enforcement officers to be disclosed (as all other records of other public servants in New York are), through the repeal of 50-a and the concomitant revision of FOIL.  The Court should rule in favor of the Defendants and dismiss the Plaintiffs' Complaint.

## I.      The Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

Plaintiffs argue that Defendants' contemplated actions would violate their rights. *See generally Compl.* (alleging claims for future violations of constitutional due process and equal protection rights, and collective bargaining rights, violations of breach of contract, violations of Plaintiffs' legally protected interests, and alleging Defendants' actions were arbitrary and capricious).  Plaintiffs' accusations are misdirected, as the impugned document release is nothing more than the direct implementation of the New York State Legislature's choice to repeal section 50-a and open FOIL to disciplinary records within law enforcement.

Plaintiffs take issue with the fact that FOIL now requires public disclosure of law enforcement disciplinary records, not Defendants' *modus operandi* as to how it intends to do so. As a result, Plaintiffs' arguments obliquely challenge the repeal of 50-a and of FOIL itself, but fail to mount a facial challenge to the New York Civil Rights Law, the Public Officer's Law, and FOIL themselves.  Accordingly, this Court should dismiss Plaintiffs' claims for (i) failure to state

a claim on which relief can be granted under Rule 12(b)(6), (ii) failure to join the State as a

necessary party under Rule 12(b)(7), (iii) failure to serve the New York State Attorney General

under Rule 5.1, and (iv) insufficient process under Rule 12(b)(4).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a plaintiff to plead

"enough factual matter, taken as true" to "state a claim to relief that is plausible on its face."  *Bell*

*Atlantic Corp. v. Twombly*  550 U.S. 544, 550-54; 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662,

677-79 (2007) (whether a complaint is "plausible" turns on whether the complaint contains

sufficient nonconclusory factual allegations to support a reasonable inference that the alleged

conduct occurred); *see also* Fed. R. Civ. Proc. 12(b)(6).  "Dismissal is appropriate when 'it is

clear from the face of the complaint, and matters of which the court may take judicial notice, that

the plaintiff[s'] claims are barred as a matter of law.'"  *Parkcentral Glob. Hud Ltd. v. Porsche*

*Auto. Holdings SE,* 763 F.3d 198, 208-09 (2d Cir. 2014).

To successfully mount a constitutional challenge, plaintiffs must clearly assert a facial

challenge to the statute in question, not simply allege a violation of constitutional rights.

Complaints that assert a facial challenge must expressly seek a declaration that a statute is

unconstitutional on its face or  an injunction against future enforcement.  *Reyes-Aponte v. City of*

*New York Dep't of Correction*, 173 F.3d 845 (2d Cir. 1999) (affirming dismissal in part for lack

of standing because a plaintiff failed to allege a facial challenge to the underlying statute where

her rights were allegedly violated, but reversing summary judgment on an as-applied challenge).

To succeed, a facial constitutional challenge to a legislative act must establish that "no set of

circumstances exists under which the Act would be valid."  *United States v. Campbell*, 111 F.

Supp. 3d 340, 344 (W.D.N.Y. 2015) (citing *City of New York v. United States*, 179 F.3d 29, 33

(2d Cir. 1999).

Plaintiffs fail to assert a facial challenge to the statute in question despite their thinly veiled attempt to do so. *See generally Compl.* Instead, the Plaintiffs attack the City for complying with the repeal of 50-a and FOIL, all while using arguments that backhandedly attack the reasoned and expressed will of the legislature.

Further, a court must dismiss an action under Rule 12(b)(7) where a plaintiff fails to join a necessary party as defined by Rule 19. *See* Fed. R. Civ. Proc. 12(b)(7), 19; *see also TMT Co., Ltd.*, v. JP Morgan Chase Bank, No. 16 CIV. 8757, 2018 WL 1779378, at *2 (S.D.N.Y. Mar. 28, 2018); *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 380 (S.D.N.Y. 2017); *Native Am. Mohegans v. United States*, 184 F. Supp. 2d 198, 212 (D. Conn. 2002) (dismissing two counts where the United States was an "indispensable party," but maintaining others); c*f. Hahn v. Armas*, No. 209-CV-01479-JAM-GGH, 2010 WL 596145, at *4 (E.D. Cal. Feb. 9, 2010) (noting that California was a necessary party and had not been joined, dismissing claims because the State could not be sued in federal court under the Eleventh Amendment, rather than under Rule 19).  Plaintiffs' arguments should be directed at New York State, not the City Defendants.  Since Plaintiffs failed to join the State, the Complaint should be dismissed in its entirety. *See* Fed. R. Civ. Proc. 12(b)(7).

Under FRCP 5.1, a plaintiff may challenge the constitutionality of a law by filing a notice of the challenge and serving the Attorney General of the United States (in the case of a challenge to a federal law) or the Attorney General of the State in which a challenged state law was enacted.  *See* Fed. R. Civ. Proc. 5.1; *see also Polanco v. Hopkins*, No. 03-CV-6661-CJS F, 2007 WL 914023, at *3 (W.D.N.Y. Mar. 23, 2007).  Once that process is complete, "[t]he court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." Fed. R. Civ. Proc. 5.1(b).  The relevant Attorney General is then given 60 days to

intervene. Fed. R. Civ. Proc. 5.1(c).  Significantly, Rule 5.1 applies "when a constitutional challenge is asserted and *no state officer is a party* in his or her official capacity."  *Latta v. Cuomo*, No. 10-CV-4120 NGG CLP, 2010 WL 4607523, at *1 (E.D.N.Y. Nov. 5, 2010).

Since Plaintiffs raise a constitutional challenge to the repeal of 50-a and the current requirements of New York's Civil Rights Law, Public Officer's Law, and FOIL, Plaintiffs' claims should be dismissed for insufficient process under Rule 5.1.  *See Kelly v. Cty. of Ulster*, No. 118CV00240BKSDJS, 2018 WL 5811423, at *2 (N.D.N.Y. Nov. 6, 2018) (indicating a complaint could be dismissed in part for failure to file notice with the relevant state attorney general where the plaintiff filed a constitutional challenge to a state law, and dismissing the claim on the merits in part pursuant to Rule 5.1(c)); *see also Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014) ("Because Jones has not filed that notice, the Court will not consider Jones's constitutional arguments or certify her questions regarding the FAA's constitutionality to the Attorney General of the United States under Rule 5.1(b)."). For the same reason, Plaintiffs should be deemed to have failed to follow the appropriate process, resulting in a default under Rule 12(b)(4).

## II.      The Reason Plaintiffs Have Failed to State an Actionable Claim is Presumably Because Such Claim Would Have Been Facially Meritless.

The Supreme Court has long-held that the Due Process Clause does not apply where a state legislature passes a law that affects an individual's life, liberty, or property interests, since it is impracticable to hold proceedings where so many individual parties may be involved, and because their interests are better represented through the legislature.  *See Brody v. Village of Port Chester*, 434 F.3d 121, 133–34 (2d Cir. 2005) ("Those persons who are deprived of property by operation of a general statute 'are protected in the only way that they can be in a complex

society, by their power, immediate or remote, over those who make the rule.'"); *accord Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) (plaintiffs' due process rights had not been violated because their rights were properly exercised and respected through the state legislature).  Here, Plaintiffs' Fourteenth Amendment Due Process claims under section 1983 must be dismissed for failure to state a claim under Rule 12(b)(6) for the same reason; 50-a was repealed through the lawful actions of the New York State Legislature and Governor Cuomo.

### III.     In Any Event, the Plaintiffs' Oblique Attack On FOIL Is Misguided as No Legal Privilege Exists to Cloak Law Enforcement in Secrecy.

The Complaint is not only an oblique attack on the repeal of 50-a, but a challenge to FOIL itself.  The repeal of 50-a was not an isolated event – it was Section 1 of S8496, while Section 2 is a series of amendments to the sections of FOIL that focus on law enforcement. Therefore, the repeal was passed as an amendment to FOIL and they are inextricably bound together.  S8496 states:

> AN ACT to amend the civil rights law and the public officers law, in relation to the disclosure of law enforcement disciplinary records; and to repeal section 50-a of the civil rights law relating thereto THE PEOPLE OF THE STATE OF NEW YORK, REPRESENTED IN SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS: Section 1. Section 50-a of the civil rights law is REPEALED. § 2. Section 86 of the public officers law is amended by adding four new subdivisions 6, 7, 8 and 9.

The explicit goal of the statute is to bring law enforcement under the same FOIL rules  as everyone else.  The rules affect the governor, senators, state assemblymen, assistant attorney generals, medical professionals, lawyers, and every other public employee of the New York state government.  FOIL further provides certain protections for each of these individuals' privacy and for the secrecy of certain programs.  The law as amended is not a dismissal of law enforcement's

rights – it provides law enforcement with the same Fourteenth Amendment Equal Protection rights extended to all other government employees and programs, equalizing public record disclosure throughout the State (as well as providing law enforcement further protections beyond what other state employees receive through Public Officers Law section 89(2-b) and (2-c), which provide for redaction of personal information for law enforcement personnel) and protecting the purpose of FOIL.

**IV.    By Releasing Appropriate Law Enforcement Disciplinary Records, the City Is In Full Compliance With The Statute And FOIL, And In Keeping With The Spirit Of Open Data Regulations And Best Practices.**

Since 50-a was repealed, the City, along with every other municipality in the state, is required to adhere to the expanded disclosure duties under FOIL regarding law enforcement disciplinary records. This is not optional; it is mandatory by law. The legislature was not vague, and their intentions were clear: law enforcement disciplinary records are now available to the public. This is so irrespective of whether such records pertain to proceedings which gave rise to sanctions or not—or as Plaintiffs say, unsubstantiated.

The legislature fully grasped the effects of a 50-a repeal and, over the objections of lobbying groups such as the Plaintiffs here, did not place limits on the sort of law enforcement disciplinary records—substantiated or unsubstantiated—that could be requested and released to the public. *See* State of New York Department of State, Committee on Open Government, *2018 Report to the Governor and State Legislature* (Dec. 2018), https://www.dos.ny.gov/coog/pdfs/2018%20Annual%20Report.pdf (2018 committee report advocating for the repeal of 50-a). The legislature notably understood that transparency would help to combat discriminatory policing. It was to be expected, therefore, that law enforcement

disciplinary records would be requested through FOIL.  Defendants merely complied with their

disclosure obligation by preparing the records for dissemination to the public

It should be emphasized that these records, once properly released pursuant to a FOIL

request, are stripped of any confidentiality; the releasee is under no obligation to maintain the

records private and is instead at a liberty to disseminate them. The Plaintiffs point to no such

obligation, let alone any authority establishing that such obligation exists.

Releasing the records via an online database was further to be expected after the repeal of

50-a, as it has become common practice—and indeed is required of State agencies—to publish

the records on an online data website per the Governor's Executive Order 95 and the New York

City Open Data law.  Executive Order 95 is an executive order signed by Governor Andrew

Cuomo on March 11, 2013.  N.Y. Gov. Exec. Order No. 95 (2020).  In recognition of the ways

the Internet has made mass dissemination of public information and government documents

more feasible and efficient than ever before, the order established "[a]n online Open Data

Website for the collection and public dissemination of Publishable State data."  N.Y. Gov. Exec.

Order No. 95 (2020), at 1.  The order was motivated by the fact that such a website would

"enhance public access to government data and make government in New York more transparent

in order to promote public trust," motivations which are of paramount importance considering

the repeal of 50-a.  *Id.*  The Executive Order presumes that public information and government

documents will be published unless a specific exception codified by statute, regulation, or the

Order itself applies. (The Order defines "publishable data" as "data that is collected by a covered

State entity where the entity is permitted, required or able to make the data available to the

public, consistent with any and all applicable laws, rules, regulations, ordinances, resolutions,

policies or other restrictions, requirements or rights associated with the State data, including but

12

not limited to contractual or other legal orders, restrictions or requirements." *Id.* at 2.  However, "[d]ata shall not be Publishable State data if making such data available on the Open Data Website would violate statute or regulation (e.g., disclosure that would constitute an unwarranted invasion of personal privacy), endanger the public health, safety or welfare, hinder the operation of government, including criminal and civil investigations, or impose an undue financial, operational or administrative burden on the covered State entity or State" *Id.* at 2.).

Local Law 11, the "Open Data Law," is a 2012 New York City law which amended their administrative code, mandating that "all public data be made available on a single web portal by the end of 2018."  NYC Open Data, Laws and Reports; New York City, N.Y., Local Law No. 11 Int. No. 29-A (2012); New York City, N.Y., Local Law No. 11 Int. No. 29-A (2012).  The declaration of legislative intent for New York City's 2012 Open Data Law states:

> The council hereby finds and declares that it is in the best interest of New York city that its agencies and departments make their data available online using open standards. Making city data available online using open standards will make the operation of city government more transparent, effective and accountable to the public. Declaration of Legislative Intent, New York City Open Data Law (2012).

The law is part of NYC Open Data, a city-wide effort to increase transparency and public access to data across the board and a demonstration of the City's view that informational transparency is a key aspect of good governance.  The project is run by the Mayor's Office of Data Analytics and the Department of Information Technology and Telecommunications, who work together and across agencies to ensure progressively more transparent city data.  Initiatives are wide-ranging – not only is agency data made publicly available, but NYC Open Data also combines and visualizes data in new ways that encourage public access. These efforts make the data more accessible not only in terms of raw availability, but in terms of data comprehension as well.  For example, the project took the NYPD's crime and traffic statistics and helped map and

13

chart them, giving the public multiple ways to view the same data.  It also developed the OpenRecords application, which gives the public a user-friendly way to file FOIL requests.

Proactive disclosure of law enforcement disciplinary records is not only compliant with the law, but it is good government.  It is a normal transparency best practice that has been explicitly supported by New York City, the State of New York, journalists, transparency advocates, and municipalities around the country.[1]  As amicus Reinvent Albany wrote in a Memo of Support for New York City's Open Data law in 2012: "[m]aking more City agency data easily available has profound opportunities to make government more open and responsive to the public, to deliver better public services at a lower cost and to share information among government agencies." Citizens Union, et. al, *Memo in Support Intro 29 A (Open Government Data)*, https://reinventalbany.org/wp-content/uploads/2012/02/NYC-TWG-Memo-of-Support-Intro-29A-FINAL-Feb-27-2012.pdf (last visited Aug. 13, 2020).

### V.   Open Government And Transparency Are Essential For A Strong Democratic Government.

There is a far-reaching hope that America's new political climate of justice reform will bring the country to a turning point.  The fight for civil rights is not new.  The fear of power with its historical ties to discrimination is not new.  America's openness to act in the face of these discussions as it currently stands is, however, unique.  It is imperative that this country take advantage of these discussions now.  New York's legislature has responded with S8496.  Their

---

1 Chicago's Citizens Police Data Project, led by the Invisible Institute, has been making such information, including officer names and incidents, public since 2015.  The Invisible Institute's About page notes that the release of this information was the result of a 2014 Illinois state appellate court decision, *Kalven v. Chicago,* 2014 IL App (1st) 121846, a lawsuit brought by the Mandel Legal Aid Clinic of the University of Chicago Law School.  Citizens Police Data Project.

obvious goal is that transparency can help increase public safety in the State of New York, as well as offer credibility to those on whom citizens bestow power.  *See* U.S. Commission on Civil Rights, *Police Use of Force: an Examination of Modern Policing Practices*, (Nov. 15, 2018), https://www.usccr.gov/pubs/2018/11-15-Police-Force.pdf ("a lack of accurate data, lack of transparency about policies and practices in place governing use of force, and lack of accountability for noncompliance foster a perception that police use of force in communities of color and the disability community is unchecked, unlawful, and unsafe").  The legislature's repeal of 50-a as a tool to protect its citizens can be successful, as Justice Brandeis said, "[s]unlight is said to be the best of disinfectants."  *Other People's Money and How the Bankers Use It* 89 (1914) (Reprinted by Bedford Books *of* St. Martin's Press 1995).

The Committee on Open Government, which issues advisory opinions as to how the state should administer the Freedom of Information Law, has advocated for repealing or reforming 50-a since at least 2013.

> [50-a] creates a legal shield that prohibits disclosure, even when it is known that misconduct has occurred. It undermines the public policy goals of FOIL, which are to make government agencies and their employees accountable to the public, and therefore, more deserving of the public's trust.  State of New York Department of State, Committee on Open government, *Annual Report to the Governor and State Legislature* (Dec. 2014), https://www.dos.ny.gov/coog/pdfs/2014AnnualReport.pdf.

New York has historically ranked as one of the worst states for accessibility to police misconduct records.  *See* Robert Lewis, et. al, *Is Police Misconduct a Secret in Your* State (Oct. 15, 2015), https://www.wnyc.org/story/police-misconduct-records/. With S8496, New York has joined 12 other states in making their law enforcement disciplinary records public. *Id*. Releasing law enforcement records makes law enforcement better: "[o]pen data helps the community understand what police do and provides opportunities for two-way engagement . . . [o]pen data

demonstrates transparency and can promote legitimacy . . . [p]ublic safety data is important in addressing broader community concerns; and . . . [o]pen law enforcement data can help identify new tools and better processes to improve public safety." National Police Foundation, *5 Things You Need to Know About Data in Policing*, https://www.policefoundation.org/5-things-you-need-to-know-about-open-data-in-policing/ (last visited Aug. 13, 2020).

The repeal of 50-a closed a loophole in FOIL that was contradictory to the law's intent. In enacting FOIL, the New York legislature explicitly acknowledged the importance of freedom of information and government transparency in building a functioning society. Section 84 of FOIL, the legislative declaration, states that "a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government." FOIL § 84. The law was enacted in recognition of the ongoing duty "to extend public accountability wherever and whenever feasible." *Id.* Most crucially, "[t]he people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality." *Id.* Stopping the lawful publication of all public officer civilian complaint histories fundamentally subverts both the letter and spirit of New York law and is contrary to the expressed will of the people of New York.

Moreover, "FOIL is based on a presumption of access in accordance with the underlying 'premise that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government.'" *Madeiros v. New York State Educ. Dep't*, 30 N.Y.3d 67, 73, 86 N.E.3d 527, 531 (N.Y. 2017) (quoting *Matter of Fink v. Lefkowitz*, 47 N.Y.2d 567,

16

571, 419 N.Y.S.2d 467, 393 N.E.2d 463 (N.Y. 1979).  In light of these overriding policy goals, "exemptions are to be narrowly interpreted so that the public is granted maximum access to the records of government."  *Data Tree, LLC v. Romaine*, 9 N.Y.3d 454, 462, 880 N.E.2d 10, 15 (N.Y. 2007).

In 1967, the U.S. Attorney General, Ramsey Clark stated what he viewed as an important truth: "[n]othing so diminishes democracy as secrecy."  This tenet of liberty has been echoed over and over again.  *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (Public disclosure of information about government is "a structural necessity in a real democracy"); *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (Laws dedicated to increasing openness and transparency in government "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed").

Even assuming that this Court did not consider the Plaintiffs' Complaint to be procedurally defective, it should uphold the New York legislature's efforts to foster this essential pillar of democracy that is truth and honesty in the discharging of governmental functions.  The reverse would be a chip in our country's delicate framework.  In the words of James Madison, "A popular Government, without popular information, or the means of acquiring it, is but a prologue to a Farce or a Tragedy; or perhaps both. Knowledge will forever govern ignorance: and a people who mean to be their own Governours, must arm themselves with the power which knowledge gives."  Letter from James Madison to William T. Barry (Aug. 4, 1822), https://founders.archives.gov/documents/Madison/04-02-02-0480.  The *amici* urge the Court to deny the Plaintiffs' Complaint, uphold the legislature's intent and rule in favor of a more free, fair, and open New York.

## CONCLUSION

For the foregoing reasons, this Court should find in favor of the Defendants and dismiss the Plaintiffs' Complaint.

August 14, 2020                                              Respectfully submitted,

                                                             MILBANK LLP

                                                             By:      */s/ Sean M. Murphy*
                                                                      Sean Murphy
                                                                      Kamel Aitelaj
                                                                      Joshua Zimberg
                                                                      55 Hudson Yards
                                                                      New York, NY 10001
                                                                      (212) 530-5688
                                                                      SMurphy@milbank.com
                                                                      KAitelaj@milbank.com
                                                                      JZimberg@milbank.com

                                                             *Counsel for CommonCause/New York,*
                                                             *Reinvent Albany, Citizens Union/Citizens*
                                                             *Union Foundation, and BetaNYC*

Susan Lerner                                                 John Kaehny
Executive Director                                          Executive Director
Common Cause/NY                                             Reinvent Albany
80 Broad Street, Suite 2703                                148 Lafayette St, 12th Fl.
New York, NY 10004                                         New York, New York 10013
(212) 691-6421                                             (917) 388-9087
slerner@commoncause.org                                    info@reinventalbany.org

Betsy Gotbaum                                              Noel Hidalgo
Executive Director                                         Executive Director
Citizens Union/Citizens Union Foundation                  BetaNYC c/o Fund for the City of New York
299 Broadway, Suite 700                                   121 Sixth Avenue, 6th Floor
New York, NY 10007                                        New York, NY 10013
(212) 227-0342                                            (347) 272-2302
bgotbaum@citizensunionfoundation.org                     noel@beta.nyc

18

## CERTIFICATE OF COMPLIANCE

I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,256 words (exclusive of the motion for leave, cover page, certificate of compliance, table of contents, and table of authorities), and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with FRCP Rule 32(g)(1).

/s/ *Sean M. Murphy*
Sean M. Murphy