UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNIFORMED FIRE OFFICERS ASSOCIATION; UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK; CORRECTION OFFICERS' BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.; POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.; SERGEANTS BENEVOLENT ASSOCIATION; LIEUTENANTS BENEVOLENT ASSOCIATION; CAPTAINS ENDOWMENT ASSOCIATION; and DETECTIVES' ENDOWMENT ASSOCIATION, <br><br>     Plaintiffs, <br><br>  -against- <br><br>BILL de BLASIO, in his official capacity as Mayor of the City of New York; THE CITY OF NEW YORK; FIRE DEPARTMENT OF THE CITY OF NEW YORK; DANIEL A. NIGRO, in his official capacity as the Commissioner of the Fire Department of the City of New York; NEW YORK CITY DEPARTMENT OF CORRECTION; CYNTHIA BRANN, in her official capacity as the Commissioner of the New York City Department of Correction; DERMOT F. SHEA, in his official capacity as the Commissioner of the New York City Police Department; THE NEW YORK CITY POLICE DEPARTMENT; FREDERICK DAVIE, in his official capacity as the Chair of the Civilian Complaint Review Board; and THE CIVILIAN COMPLAINT REVIEW BOARD, <br><br>     Defendants. | Case No. 1:20-CV-05441-KPF <br><br><br>**DECLARATION OF MICHAEL J. GENNACO IN SUPPORT OF COMMUNITIES UNITED FOR POLICE REFORM'S OPPOSITION TO PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION** |

Michael J. Gennaco declares under penalty of perjury as follows.

1. I submit this sworn statement in support of Communities United for Police Reform's ("CPR") Opposition to Plaintiff's Request for a Preliminary Injunction. I have personal knowledge of the facts contained in this declaration, and, if called as a witness, am competent to testify to those facts, except as to matters expressly stated to be upon opinion and belief. As to those, I believe them to be true.

## My Professional Police Oversight Experience

2. I have worked in the field of independent police oversight for almost twenty years. As a result of my work, I have reviewed hundreds of internal affairs investigations involving numerous law enforcement agencies. I have also examined the internal affairs systems of numerous police agencies and assessed the effectiveness of misconduct investigations and disciplinary processes for those agencies. That work includes NYPD and other large police agencies, including the Los Angeles Sheriff's Department, and the Chicago Police Department. I have written numerous public reports on my findings and recommendations for improvement and publicly presented those findings to decision-makers.

3. As a result of my experience, I have been designated by a federal court and an administrative law judge as an expert on internal investigations and discipline. I have provided training on internal investigations and discipline to internal affairs investigators from multiple agencies, some of it ordered by the court as part of a remedial plan. I worked as a party expert in the New York City "stop and frisk" litigation, *Floyd v. City of New York*, 08 Civ. 1034 (AT) (S.D.N.Y.) during implementation of the remedial plan and became familiar with NYPD's internal investigation and disciplinary system. A copy of my bio/resume detailing my relevant experience is attached as Exhibit A to this Declaration.

**The Importance of Public Disclosure of Officer Misconduct and Disciplinary Records**

4. I have worked extensively with state law provisions that preclude public disclosure of law enforcement misconduct and disciplinary records and have recognized the negative implications of such systems for transparency and accountability.

5. One of those implications is the way that secrecy intensifies the skepticism that many members of the public already possess about law enforcement's ability and willingness to hold itself accountable. Lacking confidence that a given department will "police itself" appropriately, and prevented from knowing the outcomes of misconduct investigations, aggrieved individuals sometimes decline to file complaints in the first place. This perception of illegitimacy, then, undermines an important check on problematic conduct: even well-intentioned police leadership cannot address violations that it is not aware of. Indeed, the Court-appointed facilitator who oversaw the several-year-long Court-ordered community-input portion of the remedial phase of the *Floyd* litigation identified this very problem with respect to the NYPD. *See* Hon. Ariel Belen, *New York City Joint Remedial Process: Final Report and Recommendations*, 08 Civ. 1034, Dkt # 597 at 8 (S.D.N.Y. May 15, 2018), available at https://ccrjustice.org/sites/default/files/attach/2019/12/Joint-Remedial-Process-Final-Report.pdf ("There exists deep levels of mistrust of the NYPD, and great skepticism remains about the NYPD's willingness to be transparent and to hold its officers and managers accountable, especially around the discipline of police officers engaging in misconduct.").

6. For this reason, transparency has benefits that extend beyond added accountability for agencies and individual officers. It increases public trust in ways that reinforce individual participation and strengthen feedback loops. And the achievement of these benefits depends in part on the full and timely nature of the disclosures for which law enforcement is responsible.

Limiting disclosure of disciplinary records to substantiated and completed investigations would interfere with these potential improvements.

7. Such an approach seriously hampers full knowledge of officers' conduct and the effectiveness of an agency's disciplinary system. One problem with a "completed" disclosure requirement, for example, is that disciplinary proceedings can and often do take years to complete, even when an officer does not exercise all levels of appeal. I am aware that this has been a documented problem in New York City. *See e.g.*, https://www.propublica.org/article/the-nypd-isnt-giving-critical-bodycam-footage-to-officials-investigating-alleged-abuse (discussion re how NYPD's delays in providing BWC footage to CCRB investigators has caused long delays in the completing of CCRB misconduct investigations. *See also* https://www.nytimes.com/2017/07/19/nyregion/new-york-police-challenging-more-of-review-boards-findings-study-shows.html (discussing how the NYPD's requests to CCRB to reconsider its substantiated findings are often months late, thus delaying final investigatory determinations for many months.) The inability of the public—or other justice system participants—to know of the allegations and state of the evidence prior to a final determination could therefore undermine one of the key objectives of a disclosure requirement: fair warning about conduct issues of personnel entrusted with significant authority by the state.

8. With regard to non-substantiated cases, knowledge of an officers' full misconduct complaint and disciplinary history is critical for purposes of non-disciplinary remediation and intervention. For example, if an officer receives numerous complaints of discourtesy while other officers assigned to the same precinct do not, the number of complaints provide an important data set in and of themselves. Even if the individual cases are not sustained, the pattern suggests a need to further consider remedial non-disciplinary intervention. Making such complaint

history publicly available not only provides insight about the officers, but also could improve the rigor with which the relevant hiring authorities are addressing such patterns.

9. In the same way, the performance history of officers who have numerous use of force incidents provides a potential source of insight, even if each force usage was found to be within policy, as may be the case with allegations that are deemed "exonerated."  Again, officers who use force frequently may need additional non-disciplinary guidance and/or training on de-escalation, tactical decision-making, and/or communication skills in an effort to reduce future instances.  Making use of force history by officer, the results of investigations, and any information about non-disciplinary remedial measures public will help the City's public better understand how effectively (or not) NYPD is addressing officers who have an outsized number of such incidents.

10. In my police oversight work, I have studied and reviewed processes of decision making by police officials.  It is my professional opinion that, if those decision makers recognize that founded decisions will be publicized while non-founded determinations will not, then "close cases" will be more likely to result in a non-founded determination so that the records will not be available to the public. This would obviously constitute an unintended but potentially real consequence of a partial move toward transparency and I have seen that dynamic occur in other jurisdictions.

11. While these potential pitfalls all deserve consideration, another important factor in public trust is the perceived legitimacy of cases in which allegations are not sustained.  I know from direct experience that agencies can conduct thorough, fair, and effective investigations that either refute charges or reach valid conclusions about insufficiency of evidence—only to have that diligence disregarded or otherwise rejected by people who do not have access to the case.

The chance to "show their work" could therefore actually redound to the advantage of law enforcement's public reputation, even as it puts heightened pressure on NYPD decision-makers to perform their roles appropriately. And if non-founded determinations are not made public, there will be no opportunity for the public to adjudge, consider, and critique those results.

12.     I am aware of concerns that have been raised about reprisals, threats, and even harm being directed at officers whose disciplinary records are made public. While I am also aware that NYPD officers have been lost to acts of violence, the targeting of officers in those fortunately rare and isolated incidents appear to be unconnected to specific performance history or officer identity. I am aware of no case in which an officer has been subjected to actual harm as a result of the officer's discipline records being disclosed. Moreover, to the degree that the public has expressed anger at NYPD officer conduct in communications that could be interpreted as threatening, it is my experience that those instances of inappropriate verbal aggression have been connected to high-profile events—such as in-custody deaths or shootings that have been otherwise highly publicized.

13.     And significantly, since it is anticipated that the initial disclosure would result in numerous records being disseminated including founded and unfounded determinations, to the degree that there would be public reaction, any such public response would more likely be directed to officers with founded complaints of a serious nature.

14.     I am aware of other state laws relating to disclosure of officer disciplinary records. For example, Florida's Statute, Chapter 119 *et al*, provides public access to complaint investigations whether founded or non-founded. Even with such public access to records, I have not been advised of any serious impediment to policing in Florida or an inability as a result of the statute to attract suitable candidates to the police profession.

15. If the release of disciplinary records was limited to substantiated investigations, it would provide a skewed public accounting of NYPD's disciplinary system.  I am aware that NYPD has a long and documented history of issues with failure to discipline officers for misconduct and failure to conduct thorough misconduct investigations, but that information about these problems has been limited given the overall lack of NYPD transparency.  *See, e.g.*, https://www1.nyc.gov/assets/doi/reports/pdf/2019/Jun/19BiasRpt_62619.pdf;  (OIG report on problems with NYPD investigations of biased policing complaints. https://www.buzzfeednews.com/article/kendalltaggart/nypd-police-misconduct-database-explainer#.wl9BNr996Q; https://www.wnyc.org/story/can-the-nypd-spot-the-abusive-cop/.  It is critical for public trust in that process to be able to learn more about how that system is working and what aspects of that system are not working.  A complete data set would provide an opportunity for public analysis, further examination of why so high a percentage of disciplinary determinations by NYPD result in non-founded dispositions, and whether disposition decisions on non-founded cases are supported by the evidence (or not).  Whether it is an examination of a single non-founded case or a series of non-founded cases (or all non-founded cases), academics, statistical experts, public policy officials, and the general public would all benefit from access to those records for further consideration, analysis, criticism and recommendations for reform.

Executed on this 12th  day of August, 2020, in Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

    Respectfully submitted,

_____
Michael J. Gennaco, Declarant

# Exhibit A

**MICHAEL J. GENNACO**
7142 Trask Avenue
Playa Del Rey, CA 90293
323-821-0586
*Principal: OIR Group (www.oirgroup.com)*
Michael.Gennaco@oirgroup.com

   I have worked for nineteen years as a police practices professional, focusing on police oversight: reviewing, assessing, providing recommendations for reform, and monitoring numerous law enforcement agencies by promoting progressive police practices focusing particularly on accountability and use of force.  One key focus has been reviewing internal affairs investigations and disciplinary practices for numerous agencies, including the Los Angeles Sheriff's and Chicago Police Departments.  I have provided training to internal investigators assigned to investigate and review allegations of misconduct for those agencies, as well as the San Francisco Police Department and the Portland Police Bureau.

   I have reviewed scores of officer-involved shootings and developed recommendations designed to improve policy, training, and internal review processes. I have also conducted high profile internal affairs investigations and conducted qualitative audits of internal affairs, uses of force reviews, and other accountability functions, offering systemic recommendations for improvement.  I have conducted qualitative reviews of other critical police functions such as officer performance, recruiting and hiring, community policing programs, background investigations, policies and training.  Copies of our public reports can be found at our website: www.oirgroup.com.

   OIR Group regularly conducts policy reviews of use of force and other critical components of police departments.  In conjunction with those reviews, OIR Group strives to solicit and facilitate public and community input and stakeholder buy in for meaningful reform.  Combining a community component with those who have expertise in progressive police practices creates a symbiotic relationship and more responsive outcomes.

   I have provided training to police and civilian investigators and to civilian review boards on internal investigations, risk management, civil litigation, and other police practices.  I have designed oversight mechanisms and offered recommendations intended to strengthen and improve current models.  I speak regularly to oversight groups, police executives, and elected officials.  I present regularly to elected bodies on the finding of our public reports.

   I have served as an independent police auditor for a number of law enforcement agencies including the Anaheim, Burbank, Palo Alto, Davis, and Los Angeles County Sheriff's Department.

I have been qualified and designated as an expert on use of force and internal investigative practices by federal judges and administrative law judges. I have testified as an expert in several administrative hearings.

I am currently the monitor for the stipulated judgment entered into by the California Department of Justice and the Stockton Unified School District, reporting on the progress of reforms agreed to and involving the Stockton Unified School District Police Department. I have been involved in conducting systemic reviews for a number of college campus police departments including San Jose State University, Cal State University Bakersfield and Humboldt State University.

Prior to my current work, I also served as a federal prosecutor for fifteen years investigating and prosecuting criminal allegations of civil rights offenses for the United States Department of Justice, Civil Rights Division and United States Attorney, Central District of California. As a result, I conducted federal grand jury investigations in numerous states investigating allegations of excessive force and other Fourth Amendment violations by police officers, federal agents, and judges. I led prosecutions of numerous police officers and other public officials stemming from those investigations.

**Experience**

| | |
|---|---|
| 2020 | **Skelly Officer for City of Oakland**<br>Assigned as Skelly Officer for review of officer-involved shooting. |
| 2020 | **Monitor: Santa Clara County Sheriff's Office**<br>Continual monitoring of law enforcement in Santa Clara County. |
| 2019 | **King County Sheriff's Office, Seattle, Washington**<br>Systemic review of officer-involved shooting. |
| 2019-20 | **Internal Investigations for Cal State University San Marcos, Cal State University Stanislaus, and Humboldt State University**<br>Conducted internal investigations of misconduct, including allegations raised against the Chiefs of Police. |
| 2019 | **Internal Review of the California State University Police Department**<br>Conducted internal review of concerns about leadership. |
| 2019 | **Court Monitor, Stockton Unified School District Police Department, Stockton, California**<br>Monitor for compliance with settlement agreement regarding use of force and other reforms regarding Police Department |

2019 | **Use of Deadly Force Investigation, Portland State University Police Department, Portland Oregon**
Conducted investigation of deadly force incident involving PSU police officers

2018- | **Use of Force Expert Review, Office of Public Accountability, San Francisco, California**
Performing use of force expert reviews for the Office of Public Accountability relating to Uses of Deadly Force by personnel of the San Francisco Police Department.

2018 | **Independent Review, San Jose State University Police Department, San Jose, California**
Performed independent review of the San Jose State University Police Department focusing on use of force and other high risk and accountability functions.

7/2018 | **Internal Affairs Investigation, Merced County Sheriff's Office, Merced, California**
Conducted Internal Affairs investigation into allegations of misconduct involving correctional officers in the Merced County jail.

6/2018 | **Independent Police Auditor, Davis Police Department, Davis, California**
Currently serving as independent police auditor for the City of Davis, reviewing and auditing complaints and internal investigations.

6/2018 | **Review of Clackamas County Sheriff's Office, Oregon City, Oregon**
Conducted independent review of Sheriff's Office detective unit and provided recommendations for systemic change focusing on accountability.

5/2018 | **Expert Witness and Independent Review of Officer Involved Shootings, Chicago Police Department, Chicago, Illinois**
Serve as expert witness in administrative hearing and conducted independent review and analysis of officer-involved shootings.

4/2018 | **Independent Review, Lompoc Police Department, Lompoc, California**
Conducted independent review of the Lompoc Police Department.

3/2018 | **Training for Civilian Review Board, Newark, New Jersey**
Provided training to a newly formed civilian review board on how to review complaints, investigations, and policies.

| | |
|---|---|
| 2/2018 | **Training for Internal Affairs and Civilian Investigators, Portland, Oregon** |
| | Provided training on best practices in internal investigations to investigators from Portland Police Bureau and Independent Police Monitor. |
| 2016-17 | **Review of Madison Police Department, Madison, Wisconsin** |
| | Conducted 360-degree review of numerous practices of Department, including use of force, internal investigations, community policing programs, training, hiring, and performance evaluations. |
| 2017 | **Review of BART Oversight Program, Oakland, California** |
| | Studied and developed public report designed to improve police oversight over the BART Police Department. |
| 2017 | **Review of Officer-Involved Shooting: Oxnard Police Department** |
| | Conducted an independent review of a controversial officer-involved shooting and developed systemic recommendations designed to improve Department's response, training and internal review processes. |
| 2017 | **Use of Force Expert: California Department of Justice: Investigation into Stockton Unified School Police Department** |
| | Assisted Cal DOJ with investigation into use of force and internal investigations processes of SUSPD. |
| 2017 | **Internal Affairs Investigation: Ventura County Sheriff's Office.** |
| | Conducted internal affairs investigation involving allegations of misconduct of Captain of VCSO. |
| 2016 | **Review of In-Custody Death: Oxnard Police Department** |
| | Following a controversial in-custody death, reviewed internal practices and provided systemic recommendations designed to improve Department's response, training, and internal review processes. |
| 2016 | **Review of King County Sheriff's Department (OIM)** |
| | Conducted review of processes of oversight entity for King County Washington. |
| 2015- 2016 | **Independent Review of Use of Force and Internal Affairs Functions Denver Sheriff's Department** |
| | Six-month review of Denver's Sheriff Department focusing on force in the jails and developing recommendations for systemic reform. |
| 2015 | **Training to Investigators: San Francisco Office of Civilian Complaints** |
| | Provided training on effective internal investigations of police officers. |

| | |
|---|---|
| 2015 | **Systemic Review Relating to Deadly Force Incidents: Alhambra Police Department** |
| | Conducted systemic review of a series of officer-involved shootings – provided recommendations for systemic improvements on policy, training, and internal review processes. |
| 2015- | **Consultant: NYPD Stop and Frisk Remedial Plan** |
| | Served as expert to Center for Constitutional Rights by reviewing draft policies and training designed to remediate practices consistent with Court's order. |
| 2015 - 2016 | **Special Counsel: Orange County Board of Supervisors** |
| | Evaluated oversight entity and recommended improvements designed to strengthen and broaden independent oversight in the County. |
| 2014 | **Expert Witness: California State Attorney General** |
| | Expert witness in an administrative hearing relating to use of force and use of force investigations in a custodial setting. |
| 2014 – 2016 | **Instructor: Peace Officer Standards and Training** |
| | Regular instructor to police supervisors on Civil Liability and Risk Management issues. |
| 2001 - 2014 | **Chief Attorney, LA County Office of Independent Review** |
| | Continual oversight and monitoring of LA Sheriff's Department internal affairs functions, including deputy-involved shootings, force, and misconduct allegations.  Recommended changes in policy, protocols, and training.  Also requested by Board of Supervisors to design oversight mechanism for County Probation Department and Department of Child Family Services. |
| 2014 | **Systemic Review of Westminster Police Department** |
| | Following a large adverse verdict against City, performed systemic review of Westminster Police Department's force, performance evaluations, internal investigations, policies, early intervention system, and selection and promotion practices. |
| 2014- 2015 | **Systemic Review of Santa Maria Police Department** |
| | Following several controversial shootings, performed systemic review of Santa Maria Police Department's investigation and review of shootings, force, misconduct allegations, force training, and related matters.  After initial report, prepared follow up report on implementation and presented to City Council |
| 2013, 2017 | **Audit: Hermosa Beach Police Department** |
| | Conducted audit of complaint, internal affairs investigations, and force incidents and offered recommendations designed to improve policies, training, and accountability.  In 2017, at request of City revisited processes to gauge the degree |

of implementation of the recommendations.

2012 **Auditor for City of Spokane Use of Force Committee**
Conducted independent review of Spokane Police Department's use of force investigations and review process.

2012 **Glendale Police Department**
Provided independent review of remedial measures by Glendale Police Department to ensure compliance with terms of settlement.

2010 - **In Custody Death Review: Fullerton Police Department**
Systemic review of the Fullerton Police Department following the in-custody death of a homeless man, conducted an internal affairs investigation, and continual monitoring of implementation of systemic reforms stemming from systemic review.

2010- 2012 **California Department of Juvenile Justice**
Worked with Special Master to audit and develop recommendations for improvement of force policies and review of force incidents in juvenile facilities.

2011 **Review of Criminal and Internal Investigation: Santa Monica Police Department**
Conducted review and critique of high-profile criminal and internal investigations against a member of the School Board.

2009 - **Force and Misconduct Audits: Burbank Police Department**
Regular and ongoing monitoring of the quality of investigations and appropriateness of outcomes with respect to force, bias based-policing, misconduct investigations, and vehicle pursuits.

2009 - **Officer Involved Shooting Reviews: Portland Police Bureau**
Regular and ongoing analysis of the investigation and internal review processes of officer-involved shootings for the City Auditor's Office.

2006/14 **Use of Force Audit for San Diego Sheriff's Department**
In depth analysis of deputy-involved shootings and jail uses of force resulting in numerous systemic recommendations. Follow up report identifying degree to which recommendations were implemented. Subsequent audit of jail policies relating to force, suicide prevention, and medical delivery.

2006 - **Independent Police Auditor for Palo Alto Police Department**
Review and monitor all complaints, including bias-based policing complaints, misconduct allegations, and use of Tasers. Prepared special reports on quality of high profile criminal investigation and concerns about bias-based policing. Chaired Taser Task Force convened to determine whether to implement use of Tasers by Department.

2008-09        **Force Evaluation and Review for Torrance Police Department**
               Review of officer-involved shootings and other uses of force relating to appropriateness of investigation and robustness of review process.

2008 -         **Independent Auditor for Anaheim Police Department**
               Ongoing review of officer-involved shootings, other uses of force, citizen complaints, and internal affairs cases.  Liaison to City of Anaheim's Public Safety Board.

2006           **Review of Officer Involved Shootings: Inglewood Police Department**
               Conducted review of a series of officer-involved shootings with recommendations designed to improve investigative and review process.

2009/14        **Officer Involved Shooting Reviews for Pasadena Police Department**
               Reviews of two officer-involved shootings focusing on internal protocols, investigation, and review processes.

2005- 08       **City of Oakland**
               Conducted internal misconduct investigations relating to allegations involving Oakland Police Department supervisors and command staff, including Chief of Police.  Evaluated quality and appropriateness of criminal sexual misconduct investigation.

2003 - 05      **City of Oakland**
               At request of Independent Monitoring Team, reviewed delinquent Internal Affairs cases and made recommendations on how to address them.

2003 - 2010    **Court Expert in Madrid v. Gomez**
               Appointed by Judge Thelton Henderson to develop an oversight body for the California Department of Corrections and Rehabilitation as part of the Court's remedial plan.  At request of Court and Special Master, worked with parties to completely revise and reform use of force policy.  Provided Code of Silence Training at the CDCR Academy.

1986- 2001     **Federal Civil Rights Prosecutor, U.S. Department of Justice, Civil Rights Division and Office of United States Attorney, Central District of California**
               Prosecuted police officer misconduct, hate crimes, and human trafficking cases, first as a Trial Attorney with the Criminal Section of the Civil Rights Division and then as Chief of the Civil Rights Section of the United States Attorney's Office, Central District of California. Prosecuted and oversaw numerous investigations and prosecutions of police officers and law enforcement officials throughout the country.  Also prosecuted hate crimes murder of postal carrier and shooting of children at North Valley Jewish Community Center, first federal hate crime prosecution over the Internet, and a modern day slavery case involving over seventy Thai garment workers.

| | |
|---|---|
| 1984- 1986 | **Trial Attorney, U.S. Department of Justice, Civil Rights Division, Voting Section** <br> Conducted voting discrimination investigations and involved in voting rights litigation. |

**Expert Testimonial Experience:**

| | |
|---|---|
| 2019 | Testified before Administrative Hearing Officer in case involving use of deadly Force by Chicago Police Officer |
| 2018 | Testified before Administrative Hearing Officer in case involving use of deadly force by Chicago Police Officer |
| 2016 | Testified before Arbitrator in case involving use of deadly force relating to Kelly Thomas in custody death: Fullerton, California |
| 2014 | Testified before Administrative Law Judge involving Internal Affairs investigators of the California Department of Corrections and Rehabilitation: Sacramento, California |
| 2006 | Testified before Personnel Board in termination case in Springfield, Missouri involving Springfield Police Officer |

**Education:**         **Stanford Law School, J.D. 1983**
            **Dartmouth College, B.A. 1975**

**Other Professional Experience:**

| | |
|---|---|
| 1976-1980 | Elementary and high school teacher, Glendale, Arizona |
| 1992-2001 | Adjunct Law School Professor Loyola Law School, Chapman Law School, American University School of Law, George Washington School of Law: Civil Rights and Oral Advocacy |