UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNIFORMED FIRE OFFICERS ASSOCIATION; UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK; CORRECTION OFFICERS' BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.; POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.; SERGEANTS BENEVOLENT ASSOCIATION; LIEUTENANTS BENEVOLENT ASSOCIATION; CAPTAINS ENDOWMENT ASSOCIATION; and DETECTIVES' ENDOWMENT ASSOCIATION, <br><br>        Plaintiffs, <br><br>-against- <br><br>BILL de BLASIO, in his official capacity as Mayor of the City of New York; THE CITY OF NEW YORK; FIRE DEPARTMENT OF THE CITY OF NEW YORK; DANIEL A. NIGRO, in his official capacity as the Commissioner of the Fire Department of the City of New York; NEW YORK CITY DEPARTMENT OF CORRECTION; CYNTHIA BRANN, in her official capacity as the Commissioner of the New York City Department of Correction; DERMOT F. SHEA, in his official capacity as the Commissioner of the New York City Police Department; THE NEW YORK CITY POLICE DEPARTMENT; FREDERICK DAVIE, in his official capacity as the Chair of the Civilian Complaint Review Board; and THE CIVILIAN COMPLAINT REVIEW BOARD, <br><br>        Defendants. | Case No. 1:20-CV-05441-KPF <br><br>**DECLARATION OF JUMAANE D. WILLIAMS IN SUPPORT OF COMMUNITIES UNITED FOR POLICE REFORM'S OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION** |

Jumaane D. Williams declares under penalty of perjury as follows:

1.       I submit this sworn statement in support of Communities United for Police Reform's Opposition to Plaintiffs' Request for Preliminary Injunction. I have personal knowledge of the facts contained in this declaration, and, if called as a witness, am competent to testify to those facts, except as to matters expressly stated to be upon opinion and belief. As to those, I believe them to be true.

2.       I am the Public Advocate for the City of New York, a role in which I am a non-voting member of the New York City Council ("City Council") with the right to introduce and co-sponsor bills. Previously, I served as member of the City Council, representing Brooklyn's 45th District. I was first elected to the City Council in 2009 and was re-elected in 2013 and 2017.

**My Efforts to Improve Policing and Increase Transparency and Accountability**

3.       I have worked for better policing and fought to improve transparency and accountability throughout my time in public office. I believe that law enforcement has an important role to play in ensuring public safety, but that law enforcement is not the only role needed to ensure public safety.

4.       As a Black man in New York City, I have personally witnessed and experienced police misconduct, most recently during the Black Lives Matters protests that took place this year. I understand that the public's trust in the police suffers when misconduct is handled behind closed doors or, even worse, goes unpunished.

5.       The police best protect the public when they work with other stakeholders, including community groups, city agencies responsible for public health, and anti-violence organizations. I expect law enforcement to do their job with equity, transparency, and accountability.

6.      During my first term on the City Council, I worked closely with Communities United for Police Reform ("CPR") on Local Laws 70 and 71 of 2013 ("the Community Safety Act"), which sought to end the New York City Police Department's ("NYPD") abusive use of stop, question, and frisk.  The Act, which passed despite a veto from then-Mayor Michael Bloomberg, mandated an end to unconstitutional policing practices typically used in communities of more color.  The Act also created the first Inspector General for the NYPD, who is charged with investigating unlawful or unethical practices within the NYPD.

7.      As Public Advocate, I am responsible for appointing a member of the New York City Civilian Complaint Review Board ("CCRB"), the nation's largest independent police oversight entity.  The authority to appoint a member of the CCRB was granted to me by the citizens of New York City who, in 2019, voted overwhelmingly to amend the City Charter to add two members to the CCRB—one appointed by the Public Advocate and one jointly appointed by the Mayor and the Speaker of the City Council.

8.      I have long supported victims of police violence and their families.  I have stood with the families of Eric Garner, Ramarley Graham, Mohamed Bah, Delrawn Small, Valerie Bell, Anthony Baez and Shantel Davis to call for the public release of police officer records.  Families whose loved ones have been injured or killed by police are left to wonder why their government cares more about shielding a police officer's personnel record from the public than being as transparent and forthcoming as possible to try and fix grievous wrongs.

9.      I have also worked with representatives of police organizations to address police officer mental health.  In August 2019, I held a roundtable discussion with a coalition of NYPD fraternal organizations to address a recent increase in NYPD officer suicide.  The discussion

3

identified several ways to address police officer mental health, and I announced my support for legislation that would enable officers to seek mental health support anonymously.

**<u>Releasing All Records of Police Misconduct is in the Public Interest</u>**

10.     For the past several years, I worked to repeal N.Y. Civil Rights Law § 50-a.  With CPR input, I drafted and introduced City Council Res. 750-2019, a resolution calling on the New York state legislature to repeal § 50-a.

11.     My extensive experience working closely with law enforcement and New York City communities at large has informed my belief that greater transparency and accountability will improve the relationship between the community and the police.  Citizens will have more trust in the police if they believe wrong doers will be punished appropriately.

12.     In my view, various constituents among the named Defendants in this lawsuit have over time failed to protect the interests of the communities most affected by police misconduct and by the absence of transparency and accountability – communities of more color.  The interpretation and application of § 50-a deprived the public of information fundamental to oversight and lent a shield of opacity to the very public, state and local police agencies that have perhaps the greatest day-to-day impact over the lives of New York City citizens.  Section 50-a increased the harm caused to New Yorkers who experienced police abuse by denying them and their loved ones access to information about the police officers who engaged in unlawful actions and as to whether the police department took disciplinary action against officers who violated the law.

13.     This harm cannot be remedied without prompt and full effectuation of the § 50-a repeal.  Thus, dismantling the structures and policies that served to expand § 50-a's coverage and replacing them with ready and full public access is in the public interest.

14.     The NYPD's ability to operate, pursuant to § 50-a, with almost zero public consequences in cases of misconduct and abuse is a clear example of power exercised in secret - it is corrupt and could not continue.  The public interest requires transparency and accountability at all levels of government, and that includes ensuring that those in charge of protecting the public are also answerable to the public.

15.     It is critically important that all misconduct and disciplinary records be publicly accessible.  Excluding categories of records from disclosure would undermine the very public interests that animated the repeal of § 50-a.  Full transparency is absolutely critical to further organizing, policymaking, and reform efforts.  The public, through their elected officials, can propose and garner support for policy changes only if full, real time facts concerning past and present NYPD conduct is available.  Shrouding large swathes of misconduct and disciplinary records from scrutiny renders it impossible to hold the NYPD accountable.

16.     The repeal of § 50-a does not mean that New Yorkers are anti-police or that we do not support our men and women in blue, who are tasked with protecting the public every single day.  To the contrary, it is because of public support for them and better policing that the repeal of § 50-a was necessary.  Section 50-a prevented us all from creating a true system to identify officers who perpetuate abusive practices and target communities of colors. Further, by shielding the nature and extent of ongoing misconduct, § 50-a made it difficult to develop a proper training program to deter misconduct.  It also eroded public trust in law enforcement.

**Plaintiffs' Concerns About Officer Safety Were Heard and Addressed by the Legislature**

17.     I understand that Plaintiffs assert that the public release of misconduct and disciplinary records threatens the safety of police officers, among others.  This same concern was raised by the NYPD during the legislative process to repeal § 50-a.  For example, representatives

of the NYPD stated their support for greater transparency, but also expressed concerns about the release of personally identifiable information ("PII") during the February 7, 2019 joint hearing of the New York City Council's Committee on Public Safety and Committee on Justice System. The hearing concerned the resolution I sponsored – City Council Res. 750-2019 – and I was in attendance. The concerns regarding the release of PII were heard and addressed by both city council members and representatives of other organizations. Council Member Donovan Richards, chair of the Public Safety Committee, stated that "we want to be 100% supportive of protecting our police officers, but we also want to be 100% positive in protecting the public as well." Representatives of public advocacy groups explained that New York's FOIL laws already provided more protection against the release of PII than § 50-a.

18.   The New York State Legislature also heard and considered concerns about the release of PII. On October 17, 2019, I testified at a public hearing held by the New York Senate Standing Committee on Codes regarding the repeal of § 50-a. Representatives from the New York Police Benevolent Association and the New York Correctional Officers' Benevolent Association also testified at the hearing about the need to protect police officer's PII. Representatives of the NYPD, the New York Police Benevolent Association, the New York State Association of Police Benevolent Associations, the Police Conference of New York, the New York State Troopers Benevolent Association, and the New York State Police Investigators Association offered similar testimony at a hearing held by the Senate's Standing Committee on Codes on October 24, 2019.

19.   It is my understanding that the legislature heard the concerns of law enforcement and incorporated privacy protections into the bill that repealed § 50-a. The legislation enacted by the legislature and signed by Governor Cuomo included enhanced protections that shield PII

from public release. Indeed, when Senator Jamaal T. Bailey introduced the #Repeal50a Bill on the Senate floor, he specifically explained that the bill added privacy protections for PII because the legislature had heard the concerns of law enforcement.

Executed on this 14th day of August 2020, in New York, New York.

                                          Respectfully submitted,

                                          Jumaane D. Williams