**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNIFORMED FIRE OFFICERS
ASSOCIATION, et al.,

                              *Plaintiffs*,

            -v.-

DE BLASIO, et al.,

                              *Defendants*.

Case No. 20-cv-05441 (KPF)

**DECLARATION OF**
**LOYDA COLON**

I, LOYDA COLON, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746:

1.      I am a co-director of Justice Committee Inc., *amicus curiae* in this action.  I am submitting this declaration in opposition to Plaintiffs' Motion for a Preliminary Injunction.  This declaration is based on my personal knowledge and on information and documents in the possession of Justice Committee.

2.      I joined Justice Committee as a member in 2005 and served as co-coordinator.  I became a co-director of Justice Committee in 2013.

3.      Justice Committee was founded in 1981.  Justice Committee is a non-partisan non-profit grassroots organization dedicated to ending police violence and systemic racism in New York City.  Since its founding, Justice Committee has supported survivors of police misconduct and violence and the families of people killed by police, and empowered them to be advocates for social change.  The organization's programs and strategies are led by more than 160 volunteer members who are people of color impacted by police and state violence.

1

4.      Justice Committee provides training and education programs, monitors and documents police activity, organizes for policy change to decrease police violence and promote community safety, and leads and participates in campaigns to end discriminatory policing.  As part of its Families and Cases Program Area, Justice Committee advises and organizes survivors and victims' families, provides resources and secures attorneys, and mobilizes communities in support of police accountability.  To date, Justice Committee has provided support to hundreds of survivors and victims' families.

5.      As part of advocating for the repeal of Section 50-a of the New York Civil Rights Law, Justice Committee spent hundreds of hours organizing and educating New Yorkers on the deleterious effects of Section 50-a, preparing written testimony and memoranda, traveling to Albany for hearings and lobbying meetings, engaging in traditional and social media campaigns, and organizing and participating in protests, all on behalf of survivors of police misconduct and violence and victims' families.  Justice Committee specifically addressed the limitations of a partial amendment to Section 50-a as being insufficient to hold law enforcement accountable; instead, Justice Committee urged legislators to repeal Section 50-a in its entirety to ensure transparency and access to information.  For Justice Committee and its members, the intended result of the repeal was the full disclosure of all records concerning misconduct and disciplinary matters.  My understanding from working with other advocates is that that intent was widely shared among those advocating for repeal of Section 50-a.

6.      Attached hereto as Exhibit A is a true and correct copy of a written memorandum submitted by Justice Committee in June 2018 to the state legislature in support of repeal of Section 50-a of the Civil Rights Law.

7.      Attached hereto as Exhibit B is a true and correct copy of a written memorandum submitted by Justice Committee in April 2019 to the state legislature in support of repeal of Section 50-a of the Civil Rights Law.

8.      Attached hereto as Exhibit C is a true and correct copy of written testimony that I submitted on October 24, 2019, to the state legislature.

9.      Attached hereto as Exhibit D is a true and correct copy of written testimony submitted by Constance Malcom, a member of Justice Committee and the mother of Ramarley Graham, on October 17, 2019, to the state legislature.

10.     Attached hereto as Exhibit E is a true and correct copy of written testimony submitted by Constance Malcom on October 24, 2019, to the state legislature.

11.     Attached hereto as Exhibit F is a true and correct copy of written testimony submitted by Gwen Carr, a member of Justice Committee and the mother of Eric Garner, on October 17, 2019, to the state legislature.

12.     Attached hereto as Exhibit G is a true and correct copy of written testimony submitted by Gwen Carr on October 24, 2019, to the state legislature.

13.     In the wake of police violence, survivors and victims' families usually attempt to obtain information regarding involved officers' identification and misconduct records.  Justice Committee advises and supports its members and clients in their efforts to obtain this information.

14.     I am familiar with the process for requesting police misconduct records from the City of New York and Civilian Complaint Review Board using the Freedom of Information Law (FOIL).  The FOIL request process is complex, burdensome, and nearly inaccessible to survivors and victims' families without legal assistance.

15.     Prior to the repeal of Section 50-a, FOIL requests for police misconduct and disciplinary records by Justice Committee members and clients were almost always rejected on the basis that the records were exempted from disclosure by Section 50-a.  Because of the frequency of this response and the burden of continuing to seek records was so great, Justice Committee did not actively encourage its members and clients to request records of police misconduct and discipline via FOIL.

16.     Justice Committee is participating in the Joint Remedial Process in the wake of the finding by this Court, in *Floyd v. City of New York*, that the NYPD's stop-and-frisk practices were unconstitutional.  As part of that process, Justice Committee has advocated for NYPD to develop, with community input, a disciplinary matrix that would be available to the public, and for the NYPD to document level one and two stops.  Justice Committee believes the NYPD has a pattern of not disciplining officers and a pattern of abusive policing in the context of those stops.  Police misconduct records would strengthen Justice Committee's ability to make the case for the disciplinary matrix and the recording of level one and two stops, but those records have not been available due to Section 50-a.

17.     Justice Committee was part of a coalition working to pass the Right to Know Act, City Council legislation addressing police searches and other encounters with the community.  It took five years to get the legislation passed, and the legislation was heavily watered down from what advocates wanted.  Access to police misconduct records would have enabled Justice Committee to bolster its case for the legislation with statistics relating to police searching people without their consent, refusing to identify themselves when stopping people, and otherwise abusing their authority during everyday encounters.  Justice Committee believes that such records would have sped the enactment of stronger legislation.

18.    Justice Committee's members and clients routinely express their grave concern that police officers who have engaged in misconduct—often violent or deadly—remain on the streets.


I declare under penalty of perjury that the foregoing is true and correct.

Executed at Brooklyn, New York this 14th day of August 2020.

Loyda Colon