# EXHIBIT K

*The New York Times*

# Former Officer Gets 7 1/2 Years In Man's Death

By Benjamin Weiser

Oct. 9, 1998

In a case that galvanized a bitter debate about police brutality in New York City, a Federal judge in Manhattan sentenced a former police officer, Francis X. Livoti, to seven and a half years in prison yesterday for violating the Federal civil rights of Anthony Baez, who died after a 1994 confrontation with police officers outside his family s home in the Bronx.

Saying that Mr. Livoti had caused the death of an innocent man, lied to cover it up and sought the testimony of other officers knowing that they would also lie, Judge Shira A. Scheindlin declared that no shorter term was adequate to punish the crime.

Mr. Livoti, you killed a man, Judge Scheindlin said. You disgraced the badge you wore. You will have to live with that. You decided that you were the law, and above the law. You were terribly wrong on both counts.

The judge reached her sentence after prosecutors suggested that a term of at least 10 years would be appropriate and Mr. Livoti s lawyer proposed a sharply lower term, of between 8 and 14 months.

Judge Scheindlin imposed the sentence before a packed courtroom of members of the Baez family and their supporters, and backers of Mr. Livoti, including his family and friends, and many police officers out of uniform.

The officers sat silently and without noticeable expression as Judge Scheindlin also issued a broad attack on the department's handling of Mr. Livoti's case, and said that she had refrained from imposing an even greater sentence because the department shared some responsibility in Mr. Baez's death.

"The Police Department did Mr. Livoti and the people of this city a grave injustice when it permitted Mr. Livoti to remain on active patrol knowing of his propensity toward violence," Judge Scheindlin said. "There is no doubt in my mind that the department knew, or should have known, that Mr. Livoti was dangerous."

She said that nine earlier police brutality complaints against Mr. Livoti should have been enough "to alert those in charge to the fact that Mr. Livoti should be off the streets, if not off the force."

"The Police Department let him remain on the streets, knowing that one day a real tragedy would occur," she said.

The judge's sentence does not necessarily end the four-year legal battle that had been waged from One Police Plaza to State Supreme Court in the Bronx and ultimately in Federal District Court in Manhattan, to affix some form of responsibility to Mr. Livoti for the death of Mr. Baez.

Mr. Livoti's lawyer, Stuart London, said last night that he intended to appeal both his client's conviction and the sentence. He said that Mr. Livoti "really thinks that he was just performing his duties as a cop" the night Mr. Baez was killed.

Mr. Livoti was acquitted of state charges of criminally negligent homicide in 1996; last year, he was found at a departmental hearing to have used an illegal choke hold to subdue Mr. Baez, and he was dismissed from the force by Police Commissioner Howard Safir.

Last night, Mr. Safir and Mayor Rudolph W. Giuliani defended the department's handling of Mr. Livoti's case, and Mr. Giuliani, in a statement released by a spokesman, Jack Deacy, attacked the judge.

"Judge Scheindlin's comments regarding the Police Department during sentencing today are gratuitous," the Mayor said, "and certainly don't reflect the department's excellent record in uncovering corruption, and disciplining and dismissing rogue cops."

The Mayor added, "Francis Livoti is a brutal criminal who deserves a long sentence in Federal prison."

Deputy Commissioner Marilyn Mode, a spokeswoman for Mr. Safir, noted that it was the Police Commissioner who had dismissed Mr. Livoti. She said that Mr. Safir "has said repeatedly that he did not feel that Mr. Livoti deserved to be a New York City police officer,

and that he had committed a heinous act in spite of the fact that the Bronx County court acquitted him.

Mr. Livoti, who is serving a seven-month prison term in the Bronx House of Detention in an unrelated assault case, was led away to a cell adjacent to the courtroom and not available for comment.

There had been no question under Federal sentencing rules that Mr. Livoti would be sentenced to prison, but it was not clear whether the judge would side with Mr. Livoti s lawyer or the Government.

In court, Mr. Livoti made an emotional appeal to the judge, at times appearing to be on the verge of tears, asking that she at least allow him to salvage the rest of his life by not imposing the maximum term.

But he also made clear that he was not deviating from his position that he had never used an illegal choke hold or done anything else wrong in the confrontation with Mr. Baez. He has argued that Mr. Baez was resisting arrest and that in the ensuing struggle with the police he died of a severe asthmatic attack.

Mr. Livoti said that the publicity surrounding the case had made it impossible for him to apologize or to show remorse. He said that such a statement would most surely be twisted into an admission of guilt.

To me, I make a sharp distinction between remorse and regret and culpability, he told the judge. I just want you to appreciate that.

Mr. Livoti also suggested that he had suffered enough by losing his job. Being dismissed from the New York City Police Department is not like being fired from a delicatessen, he said. He wanted to marry, he said, have children, and care for his parents. I am missing a big piece of my life every day, he said.

After court, Mr. Baez s mother, Iris, reacted with astonishment at the remarks. Livoti said he wants to get married, she said. My son was married, and he didn t give him the opportunity to have children.

She added: He had no remorse. He just talked about himself and his family.

In arguing for the heaviest sentence, prosecutors focused on what one called a police cover-up of a death in custody.

There are few acts so destructive, Mark F. Pomerantz, chief of the criminal division of the United States Attorney s office, told the judge, so serious in their impact on the community s respect for the law and order as a police cover-up of the kind that this

defendant participated in in an effort to avoid responsibility for his crime.

Judge Scheindlin agreed.

A civil society cannot look the other way, she said, when its law enforcement officers commit crimes against the very city they are duty bound to protect.

Countering arguments by Mr. Livoti s lawyer, Mr. London, that Mr. Baez had contributed to his death by resisting arrest, Judge Scheindlin said that there had been no provocation, nor was there any probable cause to arrest him in the first place. The incident that led to his death stemmed from an errant football hitting a police cruiser during a late-night family football game.

Judge Scheindlin said she hoped her sentence would send a strong message to the police officers and people of the city of New York that police brutality will be punished.

She added: This conduct has caused a breach of trust. Mr. Livoti has caused a significant segment of the population of this city to lose faith in the police.