UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Uniformed Fire Officers Association; Uniformed Firefighters Association of Greater New York; Correction Officers' Benevolent Association of the City of New York; Police Benevolent Association of the City of New York, Inc.; Sergeants' Benevolent Association; Lieutenants' Benevolent Association; Captains' Endowment Association; and Detectives' Endowment Association, <div style="height:1em"></div> Plaintiffs, <div style="height:1em"></div> v. <div style="height:1em"></div> Bill de Blasio, in his official capacity as Mayor of the City of New York; the City of New York; Fire Department of the City of New York; Daniel A. Nigro, in his official capacity as the Commissioner of the Fire Department of the City of New York; New York City Department of Correction; Cynthia Brann, in her official capacity as the Commissioner of the New York City Department of Correction; Dermot F. Shea, in his official capacity as the Commissioner of the New York City Police Department; the New York City Police Department; Frederick Davie, in his official capacity as the Chair of the Civilian Complaint Review Board; and the Civilian Complaint Review Board, <div style="height:1em"></div> Defendants. | No. 1:20-CV-05441 (KPF) (RWL) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION**

i

# **TABLE OF CONTENTS**

I.   Plaintiffs' Members Will Be Irreparably Injured by the Public Release of Unsubstantiated and Non-Final Allegations or Confidential Settlement Agreements, Which Is Imminent and Irreversible. ...................................................................... 3

II.  Plaintiffs Are Likely to Succeed on Multiple Claims for Relief or, at Least, There Are Sufficiently Serious Questions Going to the Merits and the Balance of Hardships Favors Plaintiffs. ................................................................................................... 7

    A.   Defendants' Release Would Interfere with Collective Bargaining Rights. .................... 8

    B.   Publication of Unsubstantiated and Non-Final Allegations Would Violate Plaintiffs' Members' Constitutional Rights to Due Process of Law Under the Federal and New York State Constitutions.................................................... 12

    C.   Publication of Unsubstantiated and Non-Final Allegations Would Violate Plaintiffs' Members' Constitutional Rights to Equal Protection of Law Under the Federal and New York State Constitutions............................................ 16

    D.   Release of the Documents Would Constitute a Breach of Settlement Agreements. ................................................................................................ 18

    E.   Defendants' Decision to Release Unsubstantiated and Non-Final Allegations Was Affected by Errors of Law or Was Arbitrary and Capricious.............................. 19

    CONCLUSION.................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Able v. United States,*
    155 F.3d 628 (2d Cir. 1998)...........................................................................16, 17

*Andino v. Fischer,*
    555 F. Supp. 2d 418 (S.D.N.Y. 2008)......................................................................2

*Brandt v. Bd. of Coop. Educ. Servs.,*
    820 F.2d 41 (2d Cir. 1987)......................................................................................16

*Cantres v. Bd of Education,*
    145 A.D.3d 359 (1st Dep't 1988) ...........................................................................9

*Chiavarelli v. State Uni. Of NY Health Science Center,*
    248 A.D.2d 712 (2d Dep't 1998) ............................................................................9

*Chicago Journeymen Plumbers' Local Union 130, U.A. v. Personnel Board,*
    No. 96 C 0751, 1996 WL 288631 (N.D. Ill. May 30, 1996) .................................12

*Ciechon v. City of Chicago,*
    686 F.2d 511 (7th Cir. 1982) .................................................................................17

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
    598 F.3d 30 (2d Cir. 2010)......................................................................................7

*City of Cleburne, Tex. v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985)...............................................................................................16

*Coleman v. Daines,*
    79 A.D.3d 554 (1st Dep't 2010) ..............................................................................9

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
    661 F.2d 328 (5th Cir. 1981) ...................................................................................6

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016)...........................................................................................22

*Gambale v. Deutsche Bank AG,*
    377 F.3d 133 (2d Cir. 2004).....................................................................................3

*Greenberg v. Spitzer,*
    155 A.D.3d 27 (2d Dep't 2017) .......................................................................14, 15

i

*Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd.*,
    53 Misc. 3d 947 (N.Y. Sup. Ct., Kings Cnty. 2016)................................................7, 21

*International Union of Op. Engineers v. City of Niagara Falls*,
    191 Misc.2d 375 (N.Y. Sup. Ct., Niagara Cnty. 2002)............................................9

*Intertek Testing Servs., N.A. v. Pennisi*,
    443 F. Supp. 3d. (E.D.N.Y. 2020) .........................................................................8

*Jacobson & Co. v. Armstrong Cork Co.*,
    548 F.2d 438 (2d Cir. 1977)...................................................................................7

*Kravitz v. DiNapoli*,
    122 A.D.3d 1199 (3d Dep't 2014) .........................................................................9

*Kwasnik v. City of New York*,
    262 A.D.2d 171 (1st Dep't 1999) ..........................................................................17

*LaRocca v. Board of Educ. of Jericho Union Free Sch. Dist.*,
    220 A.D.2d 424 (2d Dep't 1995) ...........................................................................11

*Luongo v. Records Access Off.*,
    150 A.D.3d 13 (1st Dep't 2017) ...............................................................7, 21, 24

*Lynch v. N.Y. City Civilian Complaint Review Bd.*,
    183 A.D.3d 512 (1st Dep't 2020) ..........................................................................23

*Motondo v. City of Syracuse*,
    124 N.Y.S.3d 151 (N.Y. Sup. Ct., Onodaga Cnty. May 11, 2020) ...................10, 11

*Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Org., LLC*,
    875 F. Supp. 2d 211 (W.D.N.Y. 2012) ..................................................................4

*MySpace, Inc. v. Wallace*,
    498 F. Supp. 2d 1293 (C.D. Cal. 2007) .................................................................4

*N.Y. City Transit Auth. v. N.Y. State Pub. Empl. Relations Bd.*,
    19 N.Y.3d 876 (2012) ............................................................................................11

*Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Development Corp.*,
    70 A.D. 2d 1021 (3d Dep't 1979) ..........................................................................24

*O'Brien v. Leidinger*,
    452 F. Supp. 720 (E.D. Va. 1978) .........................................................................17

*Paterno v. City of New York*,
    No. 17-cv-8278, 2018 WL 3632526 (S.D.N.Y. July 31, 2018)..............................14

*Matter of Patrolmen's Benevolent Ass'n of the City of New York, Inc.*,
    6 N.Y.3d 563 (2006) ...........................................................................................10, 11

*Patterson v. City of Utica*,
    370 F.3d 322 (2d Cir. 2004)..............................................................................15

*People v. David W.*,
    95 N.Y.2d 130 (2000) ...................................................................................12, 16

*Reuters Ltd. v. United Press Int'l, Inc.*,
    903 F.2d 904 (2d Cir. 1990).................................................................................3

*Sec. Indus. & Fin. Markets Ass'n v. Garfield*,
    469 F. Supp. 2d 25 (D. Conn. 2007)...................................................................3

*Sessom v. N.Y. State Div. of Parole*,
    No. 17-cv-6634, 2017 U.S. Dist. LEXIS 177988 (S.D.N.Y. Oct. 25, 2017)..........................16

*Skandia Am. Reinsurance Corp. v. Schenck*,
    441 F. Supp. 715 (S.D.N.Y. 1977) .....................................................................18

*Slevin v. City of New York*,
    477 F. Supp. 1051 (S.D.N.Y. 1979).....................................................................3

*Suffolk County PBA v. County of Suffolk*,
    150 A.D.2d 361 (2d Dep't 1989) .........................................................................9

*Swinton v. Safir*,
    93 N.Y.2d 758 (1999) ........................................................................................12

*Matter of the City of Schenectady*,
    30 N.Y.3d 109 (2017) ........................................................................................10

*Thomas v. City of N.Y.*,
    143 F.3d 31 (2d Cir. 1998)................................................................................12

*U.S. Dep't of Justice v. Reporters Comm.*,
    489 U.S. 749 (1989)...........................................................................................13

*Valmonte v. Bane*,
    18 F.3d 992 (2d Cir. 1994).................................................................................13

*Wasserman v. Haller*,
    216 A.D.2d 289 (2d Dep't 1995) .......................................................................14

*Watergate II Apts v. Buffalo Sewer Auth.*,
    46 N.Y.2d 52 (1978) ...........................................................................................9

iii

*Whitehead v. Morgenthau,*
    552 N.Y.S.2d 518 (N.Y. Sup. Ct., N.Y. Cnty. 1990)............................................................20

*Wiese v. Kelley*,
    No. 08-cv-6348, 2009 WL 2902513 (S.D.N.Y. Sept. 10, 2009) ......................................13, 14

**Statutes & Rules**

Fed. R. Civ. P. 30(b)(6)..........................................................................................................20, 21

NY CAPA § 1041 ...........................................................................................................................23

NY CAPA § 1043 ...........................................................................................................................23

NY CPLR § 7502(c) ...............................................................................................................7, 8, 9

NY CRL § 50-a ...................................................................................................................... *passim*

38 RCNY 15-04(g) ..................................................................................................................22, 23

38A RCNY §§ 1-45(a)............................................................................................................22, 25

**Other Authorities**

Michael Balsamo & Colleen Long, *AP Exclusive: Police officers' personal info
    leaked online*, Associated Press (June 10, 2020),
    https://apnews.com/23a5e9d316127994ae31ad4813db3f80 ....................................................6

Colleen Long & Karen Matthews, *Police look into what prompted deadly ambush
    of officer*, Associated Press (July 6, 2017),
    https://apnews.com/df961291617942639503375ebf80491/Police-look-into-
    what-prompted-deadly-ambush-of-officer.........................................................................5

Comm. on Open Gov't, Adv. Op. No. FOIL-AO-19775 (July 27, 2020) ..............................17, 21

Editorial, *Attempted assassinations of NYPD cops show it's time to cool anti-
    police fury*, N.Y. Post (Feb. 9, 2020) ...................................................................................4, 5

Mona Chalabi, *Which NYPD officers have most complaints against them?*, The
    Guardian (Aug. 4, 2020), https://www.theguardian.com/us-
    news/datablog/2020/aug/04/new-york-police-department-allegations-
    complaints ..............................................................................................................................14

Mark Morales & Brynn Gingras, *Woman arrested after NYPD chief and 3 officers
    injured following clash with protestors*, CNN (July 17, 2020),
    https://www.cnn.com/2020/07/16/us/nypd-three-injured-protesters-
    chief/index.html .......................................................................................................................4

Sarah Taylor, *Group of teens brutally beat off-duty NYPD officer after he tells them he's an officer: report*, The Blaze (Aug. 7, 2020), www.theblaze.com/news/group-of-teens-brutally-beat-off-duty-nypd-officer ........................4

Thomas Tracy & John Annese, *Queens NYPD lieutenant gets phone threats after protester's arrest: sources*, N.Y. Daily News (July 14, 2020).................................................5

11 Williston on Contracts § 30:19 (4th ed. 2020)........................................................................18

Plaintiffs respectfully submit this Supplemental Memorandum of Law in Support of Their Motion for a Preliminary Injunction.  Plaintiffs hereby incorporate by reference the arguments in their Memorandum of Law in Support of Verified Petition/Complaint and Proposed Order To Show Cause Seeking Temporary Restraining Order and Preliminary Injunction (the "Initial Memorandum"), which is attached as Exhibit A.

The Court, in issuing a TRO, found that there were "serious issues that transcend reputation, that affect employment, that affect safety" and accepted those "harms as not speculative and imminent" for the purposes of the hearing.  (ECF No. 91 ("7/22/2020 Hr'g Tr.") at 82:8-12.) The Court also found that Plaintiffs' claims "raised sufficiently serious questions going to the merits" and that the public interests and Defendants were not harmed by the delay occasioned by the TRO.  (*Id.* at 82:12-16.)  As this Court previously recognized, without injunctive relief, "the case is over."  (*Id.* at 81:25.)  Those findings remain true today.

In addition, numerous developments since this Court entered the temporary restraining order have confirmed the need for injunctive relief to remain in effect pending the outcome of this proceeding.  This relief is necessary to bar Defendants from publishing Unsubstantiated and Non-Final Allegations and settlement agreements of disciplinary matters entered into before June 12, 2020, at least until Plaintiffs' claims are resolved on the merits.  After the Court ordered the Defendant agencies to explain their final plans for public disclosure of disciplinary records, the Department of Corrections was the ***only*** agency that could give assurances it would not release Unsubstantiated and Non-Final Allegations.  (Coles Decl., Ex. 1 ("Grossman Decl.") at ¶ 6.)  And even then, the Department of Corrections failed to give any assurances on maintaining the confidentiality of disciplinary actions that were subject to settlement agreements prior to the repeal of § 50-a.  (*Id.* ¶ 6.)  With respect to the other Defendants, as of July 15, 2020:

- CCRB planned "to establish an online database that would allow members of the public to search for CCRB officer histories," including "cases that were substantiated, unsubstantiated, unfounded, and truncated." (Coles Decl., Ex. 2 ("First Jamieson Decl.") at ¶¶ 5-6.)

- NYPD planned to publicly release on its website, *inter alia*, (a) Charges and Specifications, regardless of whether they have been adjudicated, and (b) "[r]esponses to FOIL requests for the disciplinary records of members of service received following the repeal of New York Civil Rights Law § 50-a, where the requested disciplinary records resulted in substantiated final determinations." (Coles Decl., Ex. 3 ("Barrows Decl.") at ¶¶ 5-6.) As NYPD's 30(b)(6) representative testified, Charges and Specifications are unproven allegations that have yet to be adjudicated. (Coles Decl., Ex. 4 ("NYPD Dep. Tr.") at 77:16-78:7.) NYPD's plans do not contemplate individualized review of records prior to publication on its website.

- FDNY had not yet "developed a protocol or process for the public release of firefighter or fire officer disciplinary records." (Coles Decl., Ex. 5 ("Brown Decl.") at ¶ 4.)

Moreover, based on the CCRB's production to NYCLU, ***over 92%*** of the 290,649 allegations fall into the category of Unsubstantiated and Non-Final Allegations. Defendants' plans to release Unsubstantiated and Non-Final Allegations and information regarding settlement agreements entered into before June 12, 2020, will irreparably harm Plaintiffs' members.

Plaintiffs are also likely to succeed on multiple claims for relief—or at least have raised serious questions going to the merits of those claims. Further, the balance of hardships tips decidedly in Plaintiffs' favor, where the denial of an injunction would extinguish Plaintiffs' rights and the grant of an injunction would merely delay Defendants' release of these materials, some of which some Defendants have admitted contain false allegations and will negatively impact the subjects. The status quo must be maintained to ensure meaningful relief can be granted. As a result, just as this Court granted temporary relief, it should grant a preliminary injunction pending the outcome of this matter. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (stating that the standard for a preliminary injunction is the same as the standard for a temporary restraining order).

I.     **Plaintiffs' Members Will Be Irreparably Injured by the Public Release of Unsubstantiated and Non-Final Allegations or Confidential Settlement Agreements, Which Is Imminent and Irreversible.**

As more fully detailed in the Initial Memorandum, without a preliminary injunction to maintain the status quo pending resolution of Plaintiffs' claims, Plaintiffs' members will be irreparably harmed, and there will be no possibility of meaningful relief for Plaintiffs. (*See* Initial Memorandum at 6-9.) A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (quotation omitted). Plaintiffs have shown significant risk of irreparable harm in the irreversible disclosure of confidential information—which will ruin reputations, threaten the safety of officers and their families, violate settlement agreements, and nullify collectively bargained for rights. Therefore, the Court should grant the preliminary injunction.

Disclosure of confidential information "is the quintessential type of irreparable harm that cannot be compensated or undone by money damages." *Sec. Indus. & Fin. Markets Ass'n v. Garfield*, 469 F. Supp. 2d 25, 41 (D. Conn. 2007); *Slevin v. City of New York*, 477 F. Supp. 1051, 1055 (S.D.N.Y. 1979) (preliminarily enjoining law requiring disclosure of confidential information of police officers where "the forms will immediately become available to the public"). Courts cannot undo such disclosures. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again.").

But this case involves more than the risk of information being irretrievably disseminated: it involves the risk of irreparable reputational damage as a result of that dissemination. Plaintiffs' expert Dr. Jon Shane, a professor at the John Jay College of Criminal Justice, shows in his report that, if released, allegations of officer misconduct will follow the identified officers and permanently affect their professional standing, even in cases where the agency did not substantiate

the allegation or the officer was not disciplined.  (Coles Decl., Ex. 6 ("Shane Rep.") ¶ 12.)  He explains that these ramifications would adversely affect future job applications, blacklisting officers and branding them with "guilt by accusation."  (*Id.* ¶¶ 12-19.)  Damage to reputation is often sufficient to justify a finding of irreparable injury.  *See, e.g.*, *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) (stating that "[h]arm to business goodwill and reputation is unquantifiable and considered irreparable"); *Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 231 (W.D.N.Y. 2012) (finding irreparable harm where "possible damage to [plaintiff's] reputation … is not easily quantifiable or remediable by damages").

In addition, these disclosures threaten the safety of the officers and their families, as well as officers generally.  The news is replete with examples of increased violence against police officers resulting from increased hostility.  The disclosures of hundreds of thousands of misconduct allegations—even if untrue or unproven, which most will likely be[1]—will stoke even more hostility.[2]  Some of the widely reported recent incidents of violence against law enforcement have been linked to perceived officer misconduct.  Taking just a few examples:

- In February 2020, a man walked into a Bronx police precinct and opened fire, in what Defendant Mayor de Blasio called "an attempt to assassinate police officers."[3]

- NYPD officers Rafael Ramos and Wenjian Liu were ambushed and killed while sitting in a patrol car, which came in "a prior wave of anti-police demonstrations."  Defendant Commissioner Shea noted that "these things are not unrelated."[4]

---

[1] Within the CCRB release of officer history records to NYCLU, there were 290,649 allegations of misconduct, only 20,826 (or 7.2 percent) of which were "substantiated" by the CCRB.  And of those 20,826 allegations, 3,373 (or 16.2 percent) resulted in dismissal or a not-guilty finding by the NYPD.

[2] *See, e.g.*, Sarah Taylor, *Group of teens brutally beat off-duty NYPD officer after he tells them he's an officer: report*, The Blaze (Aug. 7, 2020), https://www.theblaze.com/news/group-of-teens-brutally-beat-off-duty-nypd-officer; Mark Morales & Brynn Gingras, *Woman arrested after NYPD chief and 3 officers injured following clash with protestors*, CNN (July 17, 2020), https://www.cnn.com/2020/07/16/us/nypd-three-injured-protesters-chief/index.html.

[3] Editorial, *Attempted assassinations of NYPD cops show it's time to cool anti-police fury*, N.Y. Post (Feb. 9, 2020), https://nypost.com/2020/02/09/attempted-assassinations-of-nypd-cops-show-its-time-to-cool-anti-police-fury/.

[4] *Id.*

- NYPD officer Miosotis Familia was murdered at point-blank range by a man who had ranted on Facebook about alleged police misconduct and threatened that he was "gonna do something."[5]

- According to the U.S. Department of Justice, a man attempted to send a mail bomb to an NYPD officer who had previously arrested him.  He had methodically "conducted internet searches and made telephone calls to determine the locations of the officers' residences."  The bomb, however, was sent to the wrong address, and the civilian who received the package was murdered when the bomb detonated.[6]

These incidents go beyond general targeting of officers for their uniforms.  NYPD's Threat Assessment and Protection Unit ("TAPU"), which investigates threats against police officers, investigated 113 cases involving direct threats to NYPD officers where subjects were motivated by their interactions with police officers; an additional 101 cases involved general threats against police officers.  (Affidavit of Joseph Alejandro ("Alejandro Aff.") ¶ 8.)  Plaintiffs allege these incidents will continue and even accelerate with the release of Unsubstantiated and Non-Final Allegations.  (Compl. ¶ 75.)

Relatedly, publishing Unsubstantiated and Non-Final Allegations will result in increased hostility, violence, and "doxing" against law enforcement—whereby a person uses an officer's full name as a basis for collecting and publicizing the officer's personal information, such as home address, phone number, and the names of family members, often for purposes of targeted harassment.[7]  The publication of officers' full names endangers the life and safety of officers and

---

[5] Colleen Long & Karen Matthews, *Police look into what prompted deadly ambush of officer*, Associated Press (July 6, 2017), https://apnews.com/df961291617942639503375ebf80491/Police-look-into-what-prompted-deadly-ambush-of-officer.

[6] Coles Decl., Ex. 14; *see also* Alejandro Aff. ¶ 7.

[7] *See, e.g.*, Thomas Tracy & John Annese, *Queens NYPD lieutenant gets phone threats after protester's arrest: sources*, N.Y. Daily News (July 14, 2020), https://www.nydailynews.com/new-york/nyc-crime/ny-queens-cop-threatened-after-protester-arrest-20200714-uau5dt4aq5ftzefjn7q7mbpyvy-story.html ("The lieutenant got about 30 phone calls and 40 texts on his department phone, including photos of severed legs and limbs."); Michael Balsamo & Colleen Long, *AP Exclusive: Police officers' personal info leaked online*, Associated Press (June 10, 2020), https://apnews.com/23a5e9d316127994ae31ad4813db3f80 (citing a DHS intelligence document warning that doxing "could lead to attacks by 'violent opportunists or domestic violent extremists'").

their families because of the ease with which that information can be used to learn an officer's home address and other family information. (Alejandro Aff. at ¶ 9.) Because the fodder for this activity will be only a click away if the injunction is not granted, these threats to officer privacy and safety constitute imminent and irreparable harm. *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (holding that threatened or actual violation of right to privacy constitutes threat of irreparable harm).

Moreover, the need for an injunction to protect officer privacy and safety is heightened because some Defendants would not otherwise consider these important interests in determining whether disciplinary records should be released. Before this lawsuit was filed, Plaintiff Police Benevolent Association of the City of New York, Inc. ("PBA") wrote letters to NYPD and CCRB to remind them of the importance of these interests.[8] The PBA asked each agency to provide notice of any decision not to protect Unsubstantiated and Non-Final Allegations from disclosure. Neither did so, and the CCRB never even responded to the letter. (Coles Decl., Ex. 10 ("CCRB Dep. Tr.") at 81:19-82:10.) Also, the 30(b)(6) representative for NYPD testified that she did not know whether NYPD would take into account past attacks on officers in evaluating whether disciplinary records are exempt from disclosure under the safety exemption to FOIL. (NYPD Dep. Tr. at 83:12-85:19.) And the CCRB representative stated that CCRB does not scrutinize individual records for potential safety or privacy issues prior to public release, nor does it consider disclosure of an unsubstantiated allegation to constitute unwarranted invasion of privacy—despite that agency's past practice of doing so, as discussed in at least two court cases.[9] (CCRB Dep. Tr.

---

[8] *See* Coles Decl., Exs. 8 ("CCRB PBA Letters") & 9 ("NYPD PBA Letters").

[9] *Luongo v. Records Access Off.*, 150 A.D.3d 13, 16 (1st Dep't 2017) ("In addition to the statutory exemptions, CCRB noted that the request for records relating to unsubstantiated matters would constitute 'an unreasonable invasion of privacy.'"); *Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd.*, 53 Misc. 3d 947, 950 (Sup. Ct., Kings Cnty. 2016) (stating that CCRB denied FOIL request for unsubstantiated allegations in part

24:11-12, 24:18-25:4.)

Finally, as detailed in the Initial Memorandum, release of the data also will destroy valuable collectively bargained-for rights and "would have a dramatically deleterious impact on the related arbitration." (7/22/2020 Hr'g Tr. 82:1-2.) This irreparable harm likewise supports the issuance of a preliminary injunction "in connection with an arbitration that is pending or that is to be commenced" because any arbitration award "may be rendered ineffectual without such provisional relief." CPLR § 7502(c).

## II. Plaintiffs Are Likely to Succeed on Multiple Claims for Relief or, at Least, There Are Sufficiently Serious Questions Going to the Merits and the Balance of Hardships Favors Plaintiffs.

Plaintiffs' claims are likely to succeed on the merits. At a minimum, Plaintiffs present sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships favor Plaintiffs. *See Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 33-35 (2d Cir. 2010) ("The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction."). As here, in cases involving the threatened and irreversible disclosure of confidential information, the balance of hardships typically favors granting an injunction. *See, e.g.*, *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441, 445 (2d Cir. 1977) (stating that "the potential hardship" to plaintiff of "threatened loss of good will and customers" would "outweigh[] any inconvenience that [defendant] might suffer as a result of an injunction"); *Intertek Testing Servs., N.A. v. Pennisi*, 443 F. Supp. 3d., 303, 346, 345 (E.D.N.Y. 2020) (concluding that "absent an injunction, plaintiff

---

because "disclosure of police personnel records concerning any matters that were not substantiated … would … represent an unreasonable invasion of privacy" (internal quotation marks and citation omitted)).

will likely lose the confidentiality of its trade secrets and confidential information" and thus had "sufficiently demonstrated that the balance of hardships weighs in its favor"). As explained in detail in the Initial Memorandum, the balance of hardships tips decidedly in Plaintiffs' favor, where granting the motion would not cause any party prejudice or hardship and will simply maintain the status quo. (*See* Initial Memorandum at 9-11.) And an injunction is surely in the public interest. The public gains little from the release of documents that, by their nature, are unproven or potentially false and therefore have little value for public discourse.

## A.    Defendants' Release Would Interfere with Collective Bargaining Rights.

For the reasons articulated in the Initial Memorandum, Plaintiffs are likely to succeed on —or, at a minimum, have raised serious questions with respect to—their Article 75 claim. Plaintiffs are pursuing their collective bargaining rights[10] through the administrative process, and four Plaintiffs are waiting for arbitration dates to be scheduled.[11] CPLR § 7502(c) specifically authorizes the issuance of "a preliminary injunction in connection with an arbitration that is pending ***or that is to be commenced*** . . . upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief" (emphasis added). Any relief here would be ineffectual without a preliminary injunction for the reasons

---

[10] As explained in the Initial Memorandum, nearly all the CBAs give each individual officer the contractual right to have investigative reports that are classified "exonerated" and/or "unfounded" removed from his or her personnel file. For example, section 7(c) of Article XV of the Sergeants Benevolent Association CBA requires: "The Department will upon written request to the Chief of Personnel by the individual employee, remove from the Personnel Folder investigative reports which, upon completion of the investigation are classified 'exonerated' and/or 'unfounded.'" (*See* ECF No. 10-4 ("SBA CBA") at Art. XV, § 7(c); ECF No. 10-6 ("LBA CBA") at Art. XVI, § 7(c); ECF No. 10-7 ("CEA CBA") at Art. XIV, § 6(c); ECF No. 10-5 ("PBA CBA") at Art. XVI, § 7(c); ECF No. 10-9 ("COBA CBA") at Art. XVI, § 11.) As another example, the CBAs have provisions that allow employees to seek expungement of records of disciplinary cases where "disposition of the charge at trial or on review or appeal therefrom is other than 'guilty.'" (SBA CBA, Art. XV, § 8; PBA CBA, Art. XVI, § 8; LBA CBA, Article XVI, § 8; COBA CBA Art. XVI, § 11; DOC Directive 4257R-A, VI(6) and X, a violation of which may be grieved; *see also* ECF No. 10-11 (UFOA CBA), Art. XVII, § 9; ECF No. 10-10 (UFA CBA) at Art. XVII, § 9.) The COBA CBA also states: "The past disciplinary or work record of an employee may not be revealed during a Section 75, Civil Service Law, disciplinary proceeding until a determination as to guilt or innocence of the member has been determined." COBA CBA, Art. XVI, § 12.

[11] The Demands for Arbitration filed by the PBA, SBA, LBA and CEA are attached to the Declaration of Anthony P. Coles as Exhibits 15, 16, 17, and 18, respectively.

articulated above regarding irreparable harm.   Courts routinely grant injunctions under these circumstances.  *Suffolk County PBA v. County of Suffolk*, 150 A.D.2d 361, 362 (2d Dep't 1989) (granting preliminary injunction while waiting for labor arbitration to go ahead); *Chiavarelli v. State Uni. Of NY Health Science Ctr.*, 248 A.D.2d 712 (2d Dep't 1998) (granting injunction in proceeding pursuant to CPLR 7502(c) to prevent termination of employment by union member pending arbitration of labor dispute); *Int'l Union of Op. Engineers v. City of Niagara Falls*, 191 Misc.2d 375 (N.Y. Sup. Ct., Niagara Cnty. 2002) (grating preliminary injunction to maintain status quo pending arbitration under CBA appropriate).   As a result, a preliminary injunction is warranted.

Defendants are wrong in arguing (in their letter to the Court dated August 7, 2020) that Plaintiffs were required to show they had exhausted their administrative remedies before bringing suit.  (*See* ECF No. 75 at 3.)  Had Plaintiffs delayed this lawsuit until after the arbitration, the Unsubstantiated and Non-Final Allegations would already be permanently in the public sphere, and Plaintiffs' members would have suffered irreparable injury.  Any arbitral relief would then be meaningless.  Article 75 exists to prevent this very outcome.[12]

Defendants' argument (in their letter to the Court dated July 25, 2020) that these CBA provisions concern "police discipline" and are therefore not subject to collective bargaining is without merit.  (*See* ECF No. 23 at 3.)  Both CBA provisions at issue relate to the treatment of Unsubstantiated and Non-Final Allegations and officers' ability to expunge related complaints

---

[12] "The exhaustion rule . . .  is not an inflexible one"; rather, it is subject to "important qualifications." *Watergate II Apts v. Buffalo Sewer Auth.*, 46 N.Y.2d 52, 57 (1978).  "It need not be followed, for example, when an agency's action is challenged as either unconstitutional … or when resort to an administrative remedy … would cause irreparable injury." *Coleman v. Daines*, 79 A.D.3d 554, 560 (1st Dep't 2010), aff'd 19 N.Y.3d 1087 (2012) (quoting *Watergate*, 46 N.Y.2d at 57); *see also Kravitz v. DiNapoli*, 122 A.D.3d 1199 (3rd Dep't 2014).  Both of these exceptions apply here.  By contrast, *Cantres v. Bd of Education*, 145 A.D.3d 359, 360 (1st Dep't 1988), cited as relevant authority by Defendants, did not involve a constitutional claim or potential for irreparable injury (or any of the other exceptions to the exhaustion rule).

from their Personal Records.  The CBA provisions concern the officers' privacy interests with respect to this category of allegations.  These CBA provisions do not relate to discipline—the ability to punish for wrongdoing—itself.  Indeed, Defendants' position flies in the face of New York State law and policy regarding collective bargaining rights.  Moreover, Defendants appear to be conflating the concepts of bargainability and arbitrability.  Plaintiffs are not attempting to bargain over Defendants' treatment of Unsubstantiated and Non-Final Allegations, but rather, enforce existing CBA provisions—*i.e.*, contractual obligations Defendants are already required to honor.[13]

The Taylor Law, which requires public employers to negotiate collectively with certified or recognized employee organizations regarding grievances, "represents a strong and sweeping policy of the State to support collective bargaining." *Matter of the City of Schenectady*, 30 N.Y.3d 109, 114 (2017) (internal quotation marks and citation omitted).  "'The presumption . . . that all terms and conditions of employment are subject to mandatory bargaining' cannot easily be overcome." *Matter of Patrolmen's Benevolent Ass'n of the City of New York, Inc.*, 6 N.Y.3d 563, 572 (2006) (quoting *Matter of City of Watertown v. State of N.Y. Pub. Empl. Relations Bd.*, 95 N.Y.2d 73, 79 (2000)).  Overcoming this presumption in favor of issues being subject to collective bargaining turns on the expressed intent of the local governmental body.  *See Motondo v. City of Syracuse*, 124 N.Y.S.3d 151 (Sup. Ct., Onondaga Cnty., May 11, 2020) (citing *Patrolmen's Benevolent Assn. of City of N.Y.*, 6 N.Y.3d at 563).  Here, Defendants do not—and cannot—identify any specific legislative intent to justify excluding from collective bargaining rules the procedures relating to NYPD officers' rights to remove information relating to complaints in which

---

[13] Defendants are obliged to bargain over any change in policy relating to the treatment of information including Unsubstantiated and Non-Final Allegations *before* implementation of that new policy, not merely bargain over the impact of their breach of a contractual agreement after implementation, as Defendants suggest.  (*See* ECF No. 23.)

the subject officer was exonerated, where the complaint was determined to be unfounded, or where a disposition other than "guilty" was reached for Schedule A violations.  The CBA provisions thus control.  *See, e.g.*, *Motondo*, 124 N.Y.S.3d at 159; *N.Y. City Transit Auth. v. N.Y. State Pub. Empl. Relations Bd.*, 19 N.Y.3d 876 (N.Y. 2012).

In this vein, Defendants' reliance on *Patrolmen's Benevolent Assn. of City of N.Y.,* 6 N.Y.3d 563 (2006), is misplaced.  There, the court considered officers' rights in connection with *investigations of alleged officer misconduct*, including the time permitted for officers to confer with counsel before being questioned in a department investigations, guidelines for interrogation of police officers, the procedures for timely resolution of disciplinary charges, and the development of a pilot program to refer disciplinary matters to an outside agency.  *Id.*  The CBA provisions at issue in this case, by contrast, are not about the investigative or adjudicative *process* for police discipline—indeed, they deal specifically with circumstances in which disciplinary proceedings have already been favorable resolved.  Rather, the CBA provisions here concern the privacy protections afforded to personnel records about Unsubstantiated and Non-Final Allegations.

Finally, Defendants' blanket assertion in their letter of August 7, 2020, that, "as a matter of public policy, an agency cannot bargain away the public's right to access public records," (ECF No. 75 at 3), misses the point.  There is no wholesale agreement to limit public access to public records in this case.  Rather, the information protected by the CBAs is the Unsubstantiated and Non-Final Allegations.  This information implicates due process, privacy, and safety interests of Plaintiffs' members.  Non-disclosure of the information to protect these interests is entirely proper.  *See LaRocca v. Board of Educ. of Jericho Union Free Sch. Dist.*, 220 A.D.2d 424, 427 (2d Dep't 1995) (school union could make a FOIL request for a school principal's settlement agreement, but charges that were denied or not admitted by the principal, or which contained the name of any

teachers, were required to be redacted because production of that information "would constitute [an] unwarranted invasion of privacy").

For each of the above reasons, Plaintiffs are likely to succeed on their CBA claims or at least have raised substantial questions regarding those claims, entitling Plaintiffs to a preliminary injunction pending the outcome of the claim.

### B.    Publication of Unsubstantiated and Non-Final Allegations Would Violate Plaintiffs' Members' Constitutional Rights to Due Process of Law Under the Federal and New York State Constitutions.

As shown in the Initial Memorandum, Plaintiffs are likely to succeed on their Due Process claims or, in the alternative, there are sufficiently serious questions going to the merits to make them a fair ground for litigation.   Defendants' release of Unsubstantiated and Non-Final Allegations threatens to (1) stigmatize the identified officers and (2) interfere with their future employment opportunities without the due process guaranteed by the U.S. and N.Y. Constitutions.[14]  (*See* Initial Memorandum at 13-18; *People v. David W.*, 95 N.Y.2d 130, 137-38 (2000) ("This Court has held that the mere likelihood of dissemination to prospective employers of allegations of rape and abuse in a fired public employee's personnel file sufficiently impaired that employee's liberty interest to warrant due process protections." (citing *Swinton v. Safir*, 93 N.Y.2d 758, 764 (1999)).)   Such action is unconstitutional under both the federal and New York Constitutions.

---

[14] Defendants seem to suggest there can be no associational standing for constitutional claims, (ECF No. 75 at 2), which of course is not correct under the law.  *See, e.g.*, *Thomas v. City of N.Y.*, 143 F.3d 31, 36 n.9 (2d Cir. 1998) (finding that associations of livery car drivers had standing to bring an Equal Protection Clause challenge on behalf of their members).  Here, unlike in *Chicago Journeymen Plumbers' Local Union 130, U.A. v. Personnel Board*, 1996 WL 288631 (N.D. Ill. May 30, 1996), cited by Defendants, (ECF No. 75 at 2), the Unions sufficiently allege that one or more of each Union's members is threatened with a concrete and particularized injury.  (*See* Compl. ¶ 38.)

With respect to the "stigma" element, Defendants' worldwide transmission of Unsubstantiated and Non-Final Allegations, including those that are misleading or simply false, will stigmatize the identified officers and result in "'public opprobrium' and damage to [their] reputation[s]." *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994); *see also U.S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 764 (1989) ("Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information."). As Dr. Shane describes in his report, even unsubstantiated, unfounded, or exonerated allegations may undermine an officer's reputation for professionalism and integrity. (Shane Rep. ¶¶ 15-19.) Indeed, the detrimental consequences of releasing Unsubstantiated and Non-Final Allegations were recognized by at least two of the defendant agencies. The NYPD representative testified that the NYPD has "contemplated certain consequences that might flow to somebody by release of our records" and has "thought about whether or not there will be post-employment consequences based on records that we could release." (NYPD Dep. Tr. 89:6-20.) The DOC representative stated that "the department is aware [it] is a concern" both that the release of unsubstantiated allegations could damage officer reputations and affect future employment opportunities. (Coles Decl., Ex. 11 ("DOC Dep. Tr.") at 65:18-66:20.)

Defendants' argument (in their letter to the Court dated August 7, 2020) that the publication of Unsubstantiated and Non-Final Allegations is not actionable defamation because the allegations are accompanied by "accurate descriptions of personnel actions or decisions" is wrong for at least three reasons. (*See* ECF No. 75 at 2 (citing *Wiese v. Kelley*, No. 08-cv-6348, 2009 WL 2902513 (S.D.N.Y. Sept. 10, 2009)).)

First, the dissemination and widespread promotion of these Unsubstantiated and Non-Final

Allegations can hardly be compared to the publication of letters that "merely announced changes to … employment status" in *Wiese v. Kelley*.  (*Id.*)  As the *Wiese* court noted, that case did not involve charges that the plaintiff "was guilty of dishonesty or immorality, or accusations that call[ed] into question [his] good name, reputation, honor, or integrity."  *Wiese*, 2009 WL 2902513, at *13 (internal quotation marks omitted).  Accusations of misconduct necessarily call into question the professionalism and integrity of the identified officers, and the attendant reputational harm will be swift and serious.  (*See supra* at 6-10 (discussing irreparable harm)).

Second, in analyzing the "stigma" component, courts look to state substantive law of defamation.  *Paterno v. City of New York*, No. 17-cv-8278, 2018 WL 3632526, at *4 (S.D.N.Y. July 31, 2018).  Under New York defamation law, when "a reasonable listener could have concluded that the statement was conveying a fact about [the plaintiff] that was susceptible of a defamatory connotation," the statement is actionable.  *Greenberg v. Spitzer*, 155 A.D.3d 27, 49 (2d Dep't 2017).  "Words which affect a person in his or her profession by imputing to him or her any kind of fraud, dishonesty, misconduct, or unfitness in conducting one's profession may be actionable."  *Wasserman v. Haller*, 216 A.D.2d 289, 289-90 (2d Dep't 1995).  Members of the public could reasonably read Unsubstantiated and Non-Final Allegations as being true when they are not—even when dispositional terms such as "unsubstantiated" are attached, as such terms may lack sufficient context.  Press coverage following CCRB's recent public disclosures underscores this point and demonstrates the ramifications for officer reputations.  Following CCRB's releases of disciplinary records in June and July, the Guardian published a cartoon of "NYPD's 10 Most unWanted" officers, depicting and identifying ten police officers and purporting to list the number

of allegations lodged against each officer, with citation to CCRB data.[15]  But the underlying data reveals that very few of the allegations listed for each officer were substantiated.  For example, one officer was accused in 73 allegations but just six were substantiated.  The vast majority of the rest were unfounded (meaning by the CCRB's own standard there was a preponderance of the evidence that the acts alleged did not occur) or unsubstantiated (meaning, according to the CCRB, there was insufficient evidence to establish whether or not there was an act of misconduct).  The damage to reputation of guilt by accusation, including those the agency investigated and found to be without merit, is done.  Under New York law, these allegations are "susceptible of a defamatory connotation."  *Greenberg*, 155 A.D.3d at 49.

Third, at this stage of the litigation, Plaintiffs are "required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false."  *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).  The falsity of these statements is an issue because the dispositional terms, based on Defendants' definitions of the terms, neither confirm nor refute the truth of underlying allegation—they simply state the outcome of the related investigation.  Thus, when the allegation is false and defamatory, attaching a dispositional term does not affect the falsity inquiry.

With respect to the "plus" element, this stigmatization will result in prospective employers disqualifying these officers and firefighters from future employment.  *David W.*, 95 N.Y.2d at 137-38 ("This Court has held that the mere likelihood of dissemination to prospective employers of allegations of rape and abuse in a fired public employee's personnel file sufficiently impaired that employee's liberty interest to warrant due process protections." (citing *Swinton*, 93 N.Y.2d at 764)).  Dr. Shane reports that a single allegation of misconduct—substantiated, unsubstantiated,

---

[15] Mona Chalabi, *Which NYPD officers have most complaints against them?*, The Guardian (Aug. 4, 2020), https://www.theguardian.com/us-news/datablog/2020/aug/04/new-york-police-department-allegations-complaints.

or otherwise—could cause an officer to lose out on a future job.  (Shane Rep. ¶ 14.)  Thus, Defendants are incorrect that the possibility that these allegations will interfere with future job prospects is too remote to establish the "plus" prong.  (ECF No. 75 at 2.)[16]  The damage to these future job opportunities is concrete and real, and it impairs a liberty interest that requires due process prior to such deprivation.  *Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987) (stating that if plaintiff "is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities"); *David W.*, 95 N.Y.2d 130, 137-38.

For these reasons, Plaintiffs are likely to succeed on their Due Process claims, or at least have raised sufficiently serious questions going to the merits to make them a fair ground for litigation, entitling Plaintiffs to a preliminary injunction pending the outcome of the claims.

### C. Publication of Unsubstantiated and Non-Final Allegations Would Violate Plaintiffs' Members' Constitutional Rights to Equal Protection of Law Under the Federal and New York State Constitutions.

For the reasons given in the Initial Memorandum, Plaintiffs are likely to succeed on their Equal Protection claims, or at least have shown sufficiently serious questions.  The Equal Protection Clauses of the United States and New York Constitutions require that "all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  These constitutional guarantees require that any disparate treatment of similarly situated employees bear "a rational relationship to an appropriate governmental interest."  *Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998).  Here, the disparate treatment of Plaintiffs

---

[16] Defendants' comparison of this case to *Sessom v. N.Y. State Div. of Parole*, No. 17-cv-6634, 2017 U.S. Dist. LEXIS 177988 (S.D.N.Y. Oct. 25, 2017), serves to highlight the strength of Plaintiffs' due process claims.  In *Sessom*, the court dismissed a *pro se* complaint alleging reputational harm flowing from the plaintiff's inclusion on a Division of Parole "Most Wanted" poster after the plaintiff failed to report.  *Id.* at *3-5.  But that complaint suffered two obvious deficiencies not present here: the plaintiff neither alleged the report was false nor that the state imposed a "burden or alteration of his status or rights."  *Id.* at *4.

as compared to similarly situated City employees bears no rational relationship to an appropriate governmental interest.   As a result, the planned release of Unsubstantiated and Non-Final Allegations by Defendants is unconstitutional.

As explained in the Initial Memorandum, Defendants have singled out law enforcement officers for disclosure of Unsubstantiated and Non-Final Allegations but have not done so for other City employees.   (*See* Initial Memorandum at 19-21.)   It also is now clear that, even among the agencies in this lawsuit, law enforcement officers will not be treated alike.   (*Compare, e.g.*, Coles Decl. Ex. 12 ("FDNY Dep. Tr.") at 49:23-50:14 (testifying that FDNY would not identify firefighters by name in unsubstantiated allegations to protect firefighters from reputational harm), *with* CCRB Dep. Tr. 22:2-23:16 (testifying that "the CCRB does not assert the unwarranted invasion of privacy exception based on whatever the outcome of the case was").)   Because this disparate treatment of similarly situated City employees does not have "a rational relationship to an appropriate governmental interest," *Able*, 155 F.3d at 631, the planned releases will violate Plaintiffs' rights to equal protection under the law.   *See Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir. 1982) (holding that city's "arbitrary, irrational decision to discriminate" among similarly situated employees violated equal protection); *O'Brien v. Leidinger*, 452 F. Supp. 720 (E.D. Va. 1978) (holding that defendants violated plaintiffs' right to equal protection by refusing to discuss employment matters with some union representatives while engaging in similar discussions with agents of other labor organizations where defendants "offered no explanation whatever for this disparate treatment").   The irrationality of this unequal treatment is punctuated by the Committee on Open Government's contrary instruction that, after the repeal of § 50-a, requests for disciplinary records of law enforcement "must be reviewed in the ***same manner*** as a request for disciplinary records of ***any other*** public employee."   Comm. on Open Gov't, Adv. Op. No. FOIL-AO-19775 (July 27, 2020) (emphasis added), https://docs.dos.ny.gov/ coog/ftext/f19775.html.   The Committee

is the authority in New York on the proper interpretation of FOIL.  *See Kwasnik v. City of New York*, 262 A.D.2d 171, 172 (1st Dep't 1999) (stating that courts should defer to the Committee's opinions on FOIL).

    **D.**    **Release of the Documents Would Constitute a Breach of Settlement Agreements.**

As shown in the Initial Memorandum, Plaintiffs are likely to succeed on their anticipatory breach claims, or at least there are sufficiently serious questions going to the merits to make them a fair ground for litigation.  Defendants' proposed release of disciplinary records is an anticipatory breach of negotiated settlement agreements between law enforcement officers and the agencies that were entered into before the repeal of § 50-a (the "Settlement Agreements").

As described in Plaintiffs' opening memorandum, by operation of law, the Settlement Agreements include the confidentiality protection provided by § 50-a.  The disclosures of allegations that resulted in settlement agreements before June 12, 2020, would breach those agreements.  *See Skandia Am. Reinsurance Corp. v. Schenck*, 441 F. Supp. 715, 724 (S.D.N.Y. 1977) ("Unless the contract provides otherwise, the law in force at the time it is entered into becomes a part of the contract.  It is presumed that the parties had that law in contemplation when the contract was made, and the contract must be construed in that light."); 11 Williston on Contracts § 30:19 (4th ed. 2020) (stating that "valid applicable laws existing at the time of the making of a contract enter into and form a part of the contract as fully as if expressly incorporated in the contract").

Defendants have so far failed to address either Plaintiffs' anticipatory breach argument or the Defendant agencies' plans with respect to disclosing allegations and complaints that resulted in settlement agreements.  Considering Defendants' failure to address this tranche of confidential materials, despite the Court's Order to provide final plans, the only safe assumption for present

18

purposes is that Defendants intend to publicize the allegations subject to contractual expectations of confidentiality.  Such disclosure, of course, would breach the settlement agreements.

**E.      Defendants' Decision to Release Unsubstantiated and Non-Final Allegations Was Affected by Errors of Law or Was Arbitrary and Capricious.**

For the reasons articulated in the Initial Memorandum, Plaintiffs are likely to succeed on their Article 78 claims, or in the alternative there are sufficiently serious questions going to the merits to make them a fair ground for litigation.  (*See* Initial Memorandum at 23-29.)  It is an error of law and arbitrary and capricious for Defendants to change decades of agency practice on the protections afforded Unsubstantiated and Non-Final Allegations—including the recognition that such release would be an unwarranted invasion of privacy—just because § 50-a was repealed.  Thus, their actions violate Article 78 of the CPLR.

Discovery has uncovered compelling data that strengthen the record supporting this claim. The overwhelming effect of the CCRB's release of the 81,000 officer records will be to promote widespread attention to baseless accusations that present disturbing privacy and safety risks because of "guilt by accusation."   The 81,000 officer complaint records contain 290,649 allegations, of which:

- **36.1% were "unsubstantiated"** because "there was insufficient evidence to establish whether or not there was an act of misconduct."

- **28.4% did not result in a disposition or are "truncated"** because "the Complainant withdrew the complaint," "the Complainant could not be reached or located,", "the alleged victim could not be reached or located," "the participation of the Complainant was insufficient to enable the Board to conduct a full investigation," "Complainant Uncooperative," "Alleged Victim Uncooperative," "Alleged Victim Unidentified," or "Officer Unidentified."

- **19.2% were "exonerated"** because "there was a preponderance of the evidence that the acts alleged occurred but did not constitute misconduct."

- **9.0% were "unfounded"** because "there was a preponderance of the evidence that the acts alleged did not occur."

19

That is, misconduct was not substantiated in **over 92%** of the allegations CCRB proposes to publicly disclose.  Of the allegations that are substantiated, even fewer ultimately result in guilty determinations by the Police Commissioner.

Defendants' planned releases would fail to protect (and in some cases even fail to consider) the privacy and safety rights that continue to be protected after the repeal of § 50-a.  In addition to the reasons given in the Initial Memorandum, the decisions to release this information are errors of law and arbitrary and capricious because:

*First*, the decision to promote public attention on baseless complaints fails to follow the Advisory Opinions of the Committee on Open Government ("COOG") on privacy concerns threatened by releasing Unsubstantiated and Non-Final Allegations.  (CCRB Dep. Tr. 20:12-21:14; 22:3-25:4.)  For the 81,000 officer records released by the CCRB to NYCLU, CCRB's Rule 30(b)(6) witness testified that those records were *not* reviewed individually for either safety or privacy issues in accordance with the Advisory Opinions or with case law, and CCRB's position was that there was that "*there was no need to do a line by line of every—of all 81,000-plus officers*" to determine individual privacy or safety protection.  (CCRB Dep. Tr. 41:21-23 (emphasis added); *see also id.* at 47:3-12; 48:14-49:19; 53:12-19.)  "I was not the person who did that, but I can assume that she did not go through every single line."  (*Id.* at 47:10-12.)  Such actions are, and threaten to continue to be, arbitrary and capricious and in error as a matter of law.

COOG is the governmental body responsible for guidance on FOIL requests.  (CCRB Dep. Tr. 16:21-17:9.)  The CCRB website itself refers to the COOG as the authority on FOIL requests: "All government records are subject to the exemptions stipulated in FOIL. For more information about FOIL visit the Committee on Open Government website hosted by the New York State Department of State at http://www.dos.ny.gov/coog."  COOG's Advisory Opinions are "entitled to great weight and, if not irrational or unreasonable, should be upheld."  *Whitehead v.*

*Morgenthau*, 552 N.Y.S.2d 518 (Sup. Ct., N.Y. Cnty. 1990).  A July 27, 2020 COOG Advisory

Opinion emphasizes that before *and after* the repeal of § 50-a, the law "*requires* an agency to

determine if an unsubstantiated or unfounded complaint against an employee would, if disclosed,

constitute an unwarranted invasion of personal privacy."  Comm. on Open Gov't, Adv. Op. No.

FOIL-AO-19775 (July 27, 2020) (emphasis added), https://docs.dos.ny.gov/coog/ftext/f19775.html

(the "July 27, 2020 COOG Advisory Opinion").  The July 27, 2020 COOG Advisory Opinion

states that the repeal of § 50-a did not change this, and concludes:

> [W]hen allegations or charges of misconduct have not yet been determined or did not result in disciplinary action, the records relating to such allegations may in our view be withheld where the agency determines that disclosure would result in an unwarranted invasion of personal privacy.  In addition, to the extent that charges are dismissed, or allegations are found to be without merit, we believe that those records also may be withheld based on considerations of privacy.

CCRB's Rule 30(b)(6) witness claimed CCRB could ignore this Advisory Opinion and not

conduct any review to protect privacy and safety because applying any FOIL exemption was

always optional.  (CCRB Dep. Tr. 33:17-25.)  But a failure to review for or even to consider

applying privacy and safety exemptions—exemptions reasonably emphasized as important by the

COOG and court decisions—is arbitrary and capricious on its face.

*Second*, Defendants defy law and logic when they say (in their letter to the Court dated

August 7, 2020) that "any" agency determination to release Unsubstantiated and Non-Final

Allegations is rational after the repeal of § 50-a.  (*See* ECF No. 75 at 3; ECF No. 7 at 5.)  The

July 27, 2020 COOG Advisory Opinion reconfirmed that disclosure of Unsubstantiated and Non-

Final Allegations can be unwarranted invasions of privacy.  Defendants' current position also

conflicts with very recent practice—as demonstrated in FOIL response letters from CCRB dated

as recently as May 2020[17]—and as explained in *Hughes Hubbard* and *Luongo*.  (*See* Initial

Memorandum at 28.)  Legislative history also shows the repeal of § 50-a was not intended to allow

release of *all* personnel records previously protected by § 50-a, but instead confirms an expectation

that agencies judiciously review such records before release to ensure proper protection of officer

privacy and safety.  The New York Legislature did not repeal other legal protections for privacy

and safety.  (Initial Memorandum at 24-25; *see also* Coles Decl., Ex. 7 (position statement of the

New York City Municipal Labor Committee stating that "release of unsubstantiated or yet to be

adjudicated claims goes far beyond what the legislation intended").)  The decision to release

Unsubstantiated and Non-Final Allegations is arbitrary, capricious, and an error of law because it

lacks "even a minimal level of analysis" beyond the erroneous conclusion that the repeal of § 50-

a justifies any disclosure.  *Encino Motorcars*, *LLC v. Navarro*, 136 S. Ct. 2117, 2120 (2016).

Similarly, and contrary to CCRB's contentions, none of the disciplinary records it plans to release

are truly final determinations.  CCRB says it internally refers to determinations as "final" (Coles

Decl., Ex. 13 ("Second Jamieson Decl.") (on definitions) at ¶ 4), but CCRB does not make final

determinations.  CCRB makes final *recommendations*, but the Police Commissioner makes final

*determinations* on discipline.[18]

 *Third*, NYPD's plan to provide public access to "Charges and Specifications" against

police officers as soon as those Charges and Specifications are served on the officer—before any

---

[17] As this brief was being finalized, Defendants produced hundreds of pages of FOIL response letters from CCRB.  A significant number of these response letters denied requests for disciplinary records on § 50-a grounds *as well as on unwarranted invasion of privacy grounds*, contradicting CCRB's 30(b)(6) testimony.  CCRB advised numerous requestors that "Public Officers Law § 87(2)(b) permits the CCRB to deny access to records that 'if disclosed would constitute an unwarranted invasion of personal privacy.'  Public Officers Law § 89(2)(c) (ii) does not consider disclosure an unwarranted invasion of personal privacy 'when the person to whom a record pertains consents in writing to disclosure.'  Therefore, any records in regard to another person are not being disclosed without their written consent."

[18] *See* 38A RCNY §§ 1-45(a) ("The Police Commissioner shall retain in all respects the authority and discretion to make final disciplinary determinations"), 1-45(b) ("final recommendation"), 1-45(c) ("CCRB's recommendation"), 1-46 ("recommendation"); http://www.nyc.gov/ html/ccrb/downloads/pdf/ccrb_rules.pdf.

hearing, defense, or adjudication (Barrows Decl. ¶ 5)—is arbitrary and capricious because it ignores all of the contractual and constitutional rights discussed above. At a minimum, proposed disclosures must be reviewed individually to determine whether they should be withheld based on privacy and safety concerns. This individualized review is a necessary step in preserving a meaningful right to protect officers by closing disciplinary hearings to the public, which is provided by 38 RCNY 15-04(g) (also discussed below).

*Fourth*, NYPD's plan to provide full public access to Charges and Specifications before any adjudication (Barrows Decl. ¶ 5) is an unlawful rule change made without going through the required rulemaking process. The Rules of the City of New York for NYPD disciplinary proceedings provide for "public access" only to hearings, and even that public access can be denied:

> Public access to hearings. Hearings shall be open to the public unless the Deputy Commissioner of Trials finds a legally recognizable ground for closure of all or a portion of the Hearing. The Deputy Commissioner of Trials may also exclude witnesses from the Hearing room during proceedings other than their own testimony.

38 RCNY 15-04(g). No other public access is discussed. The new NYPD plan to change "public access" on disciplinary charges and specifications amounts to a rule change and thus must go through the normal City Administrative Procedure Act ("CAPA") process. The situation is similar to what is discussed in a May 28, 2020 decision on a CCRB resolution to make a general policy change on investigating allegations of sexual misconduct. The change was "a sweeping policy change that materially affected the rights of all alleged victims of sexual misconduct and allegedly offending police officers 'equally and without exception,' and thus amounted to the adoption of a new 'rule' [citations omitted.] However, because the CCRB undisputedly did not follow the public vetting process required by CAPA for adopting a new rule, [the court ruled that] the sexual

misconduct resolution is a nullity[.]"  *Lynch v. N.Y. City Civilian Complaint Review Bd.*, 183

A.D.3d 512, 125 N.Y.S.2d 395, 400 (1st Dep't 2020); *see also* CAPA § 1041 ("'Rule' means the

whole or part of any statement or communication of general applicability that (i) implements or

applies law or policy, or (ii) prescribes the procedural requirements of an agency including an

amendment, suspension, or repeal of any such statement or communication.); CAPA § 1043

("Rulemaking . . . No agency shall adopt a rule except pursuant to this section. . . .").[19]

  *Finally*, failure to even consider privacy, safety, and other aspects relevant to release (like

finality) are errors of law and arbitrary and capricious.  For example, NYPD's representative

testified that she did not know whether NYPD considers safety risks in light of attacks on and

assassinations of police officers when determining whether to release disciplinary records.  (NYPD

Dep. Tr. 83:12-85:19.)  The representative also could not answer whether the NYPD has a

responsibility to protect the collective bargaining rights of an officer when responding to a FOIL

request—all she could say was that NYPD has a responsibility to follow the law.  (NYPD Dep. Tr.

40:7-41:20.)  The CCRB representative had no idea of the CCRB's prior policy of withholding

unsubstantiated and unfounded complaints as invasions of privacy apart from section 50-a, as

described in *Luongo, v. Records Access Officer*, 150 A.D.3d 13 (1st Dep't 2017), stating that "I

did not work at the CCRB at the time" and therefore "I don't know."  (CCRB Dep. Tr. 62:20-21.)

CCRB admitted that it does not now even analyze whether privacy or safety are implicated in the

release of Unsubstantiated and Non-Final Allegations.  (CCRB Dep. Tr. 23:12-16 ("[T]he CCRB

does not assert the unwarranted invasion of privacy exception based on [what] the outcome of the

case was.  That does not factor into whether or not that exception is asserted.");  CCRB Dep. Tr.

---

[19] Defendants are simply wrong in claiming preliminary injunctive relief cannot be granted in connection with Article 78.  (*See* ECF No. 75 at 3; ECF No. 7 at 5.)  Preliminary injunctive relief is proper in an Article 78 case to preserve the status quo and prevent the risk of irreparable harm.  *See, e.g., Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Development Corp.*, 70 A.D. 2d 1021 (3d Dep't 1979).

24:11-15 ("We've never done an analysis of whether or not an allegation is unsubstantiated or exonerated, unfounded doesn't have to be -- it's not an exception that needs to be asserted."). Indeed, the CCRB admitted to releasing the records of 81,000 former and current NYPD officers without making any individualized determinations.  (*Id.* 47:3-15, and 49:7-19, 53:17-9).   And CCRB fails to take into account that its decisions are not final.   Contrary to the CCRB's characterization, none of the disciplinary records it plans to release are final determinations.  CCRB says that internally it refers to its determinations as "final" (Second Jamieson Decl. ¶ 4), but what it makes are actually final *recommendations*.  It is only the Police Commissioner who makes the final *determinations* on discipline.  *See* 38A RCNY §§ 1-45(a) ("The Police Commissioner shall retain in all respects the authority and discretion to make final disciplinary determinations"); 1-45(b) ("final recommendation"); 1-45(c) ("CCRB's recommendation"), 1-46 ("recommendation").

For these reasons, Plaintiffs are likely to succeed on their Article 78 claims or at least have raised sufficiently serious questions going to the merits to make them a fair ground for litigation, entitling Plaintiffs to a preliminary injunction pending the outcome of the claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the preliminary injunctive relief requested in the Complaint.

Dated: August 14, 2020
  New York, New York

              **DLA PIPER LLP (US)**

              By: */s/ Anthony P. Coles*
              Anthony P. Coles
              Michael R. Hepworth
              1251 6th Avenue
              New York, NY 10020
              Telephone: (212) 335-4844
              Facsimile: (212) 884-8644

Email: anthony.coles@dlapiper.com
Email: michael.hepworth@dlapiper.com

Courtney G. Saleski
   (admitted *pro hac vice*)
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-2431
Facsimile: (215) 606-2046
Email: courtney.saleski@dlapiper.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony P. Coles, hereby certify that, on this 14th day of August, 2020, the foregoing document was served via ECF on all counsel of record.


*/s/ Anthony P. Coles*
Anthony P. Coles
*Attorney for Plaintiffs*