# Exhibit 4

```
          UNITED STATES DISTRICT COURT

          SOUTHERN DISTRICT OF NEW YORK

          No.: 1:20-CV-05441 (KPF)(KWL)


UNIFORMED FIRE OFFICERS     )
ASSOCIATION, et al.,        )
                            )
        Plaintiffs,         )
                            )
    vs.                     )
                            )
BILL de BLASIO, et al.,     )
                            )
        Defendants.         )
_____ )




          REMOTE VIDEOTAPED DEPOSITION OF

                    LESA MOORE

             Thursday, August 6, 2020








 REPORTED BY:

 RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

 JOB NO. 28092
```

Page 40

```
 1                       LESA MOORE
 2       follow the law.
 3   BY MR. COLES:
 4       Q       I had a more specific question.
 5       A       We're required to follow the law.
 6   I can't be more specific than that.
 7       Q       Well, as part of the law, do you
 8   believe the department has a responsibility to
 9   protect the collective bargaining rights of an
10   officer when responding to FOIL?
11              MS. SAINT-FORT:  Objection.
12              THE WITNESS:  I believe -- I
13       believe we have a -- we have a
14       responsibility to apply the law.
15   BY MR. COLES:
16       Q       No, I have that answer.  I was
17   asking a more specific question.  My more
18   specific question is whether or not the
19   department has a responsibility to protect the
20   collective bargaining rights of officers when
21   responding to a FOIL request.
22              MS. SAINT-FORT:  Objection.  The
23       witness has already answered that question.
24   BY MR. COLES:
25       Q       Can you answer that yes or no?
```

```
 1                    LESA MOORE
 2              MS. SAINT-FORT:  The witness
 3       already answered.
 4   BY MR. COLES:
 5       Q      Yes, I'm asking whether or not you
 6   can ask -- yes or no, whether or not the
 7   department has a responsibility to protect the
 8   collective bargaining rights of an officer
 9   when responding to FOIL.
10       A      I can't -- I can't answer that yes
11   or no.
12       Q      And why is that?
13       A      Because I believe we have a
14   right -- we have a responsibility to apply the
15   law.
16       Q      Okay.  Is there anything that you
17   want to add to your answer?
18       A      No.
19       Q      Are you sure?
20       A      Yes.
21       Q      Okay.  Do you know whether or not
22   the department provides training to its FOIL
23   officers as to whether settlement agreements
24   entered into should be produced under FOIL?
25       A      I don't think there's been a -- I
```

```
 1                    LESA MOORE
 2      answer.
 3   BY MR. COLES:
 4        Q      Does the department have a
 5   position as to whether or not charges and
 6   specifications would be producible under FOIL
 7   or subject to the FOIL exemptions?
 8        A      So prior to the repeal of 50-a, we
 9   would not have produced charges and a spec to
10   a third party asking.  We would have asserted
11   50-a.
12        Q      And today?
13        A      We have not fulfilled any of the
14   request as yet.  We have certainly
15   contemplated it being responsive.
16        Q      How would you define a charge and
17   specification?
18        A      I would define it as the
19   allegations brought against a member of
20   service by the department advocate's office
21   listing out all the specific misconduct that
22   is alleged that the person did and that will
23   be adjudicated before the office of the deputy
24   commissioner of trials.
25        Q      Right.  And would it be clear to
```

```
 1                    LESA MOORE
 2    say -- would it be accurate to say that
 3    charges and specifications are not proven?
 4              MS. SAINT-FORT:  Objection.
 5              You can answer.
 6              THE WITNESS:  It would -- yes.  It
 7       would be accurate to say it's alleged.
 8    BY MR. COLES:
 9        Q    Okay.
10              MS. SAINT-FORT:  Are we still
11       using this exhibit?
12              MR. COLES:  Yes.  Just leave it up
13       for a second.
14              MS. SAINT-FORT:  Okay.
15    BY MR. COLES:
16        Q    Does the department have a
17    position as to whether or not unproven or
18    pending allegations against officers are
19    protected as unreasonable invasions of privacy
20    under FOIL?
21              MS. SAINT-FORT:  Objection.
22              You can answer.
23              THE WITNESS:  Could you reread the
24       question, please?
25              CERTIFIED STENOGRAPHER:  Do you
```

```
 1                    LESA MOORE
 2    Exhibit 2.
 3        A      Is this the entire document,
 4    though?
 5        Q      No.  There's an attachment to it,
 6    but I'm only interested right now on the first
 7    page.
 8        A      Based on the first page, I can't
 9    recall.  The first line looks familiar.  The
10    document I read was very long.  I -- I don't
11    recall this first page in particular.
12        Q      Okay.  In determining whether or
13    not the release of information about police
14    disciplinary records would create a risk of
15    safety, does the department consider at all
16    the fact that officers WenJian Liu and Rafael
17    Ramos were assassinated in 2014?
18               MS. SAINT-FORT:  Objection.  Form.
19               You can answer.
20               THE WITNESS:  I don't know.
21    BY MR. COLES:
22        Q      Do you know whether or not in
23    determining whether or not the release of
24    disciplinary records would constitute a risk
25    of safety if the department considers the fact
```

```
 1                    LESA MOORE
 2    that Police Officer Miosotis Familia was
 3    assassinated in 2017?
 4              MS. SAINT-FORT:  Objection to
 5       form.
 6              You can answer.
 7              THE WITNESS:  I don't know.
 8    BY MR. COLES:
 9       Q     Do you know whether or not the
10    department takes into account the fact that in
11    2018 the Department of Justice arrested a man
12    for using a weapon of mass destruction whose
13    intent was to kill police officers?
14              MS. SAINT-FORT:  Objection to
15       form.
16              You can answer.
17              THE WITNESS:  I don't think I
18       understood the question.  Could you read
19       back the question, please?
20    BY MR. COLES:
21       Q     I'll make it more specific.
22              Are you aware that the department,
23    according to the Department of Justice, in
24    2018, a man attempted to send a mail bomb to
25    the New York City police officers who arrested
```

```
 1                        LESA MOORE
 2    him?
 3               MS. SAINT-FORT:  Objection.
 4       Outside the scope of this deposition.
 5    BY MR. COLES:
 6        Q      Are you familiar with that?
 7               MS. SAINT-FORT:  Same objection.
 8               I'm instructing the witness not to
 9       answer.
10    BY MR. COLES:
11        Q      My question is whether or not --
12    if she's familiar with that, whether or not
13    the department takes that into account in
14    evaluating the safety exemption in FOIL.
15               MS. SAINT-FORT:  Okay.
16               You can answer that question.
17       Objection to form.
18               But you can answer.
19               THE WITNESS:  I don't know.
20    BY MR. COLES:
21        Q      Here's the 30(b)(6) witness, and
22    yet you can't testify as to whether or not the
23    department takes into account killings or
24    attempted killings of police officers in
25    making a determination as to whether or not to
```

1                LESA MOORE
2              MS. SAINT-FORT:  You can answer
3        without revealing anything that is
4        privileged information, to the extent you
5        can answer.
6              THE WITNESS:  I mean, to the
7        extent I can answer that, we have
8        contemplated certain consequences that
9        might flow to somebody by our release of
10       records.
11    BY MR. COLES:
12       Q     What kind of consequences?
13             MS. SAINT-FORT:  Same objection.
14             You can answer to the extent
15       you're not revealing any privileged
16       information.
17             THE WITNESS:  Well, certainly we
18       have -- we've thought about whether or not
19       there will be post employment consequences
20       based on records that we could release.
21    BY MR. COLES:
22       Q     Okay.
23             MS. SAINT-FORT:  I just want to
24       note that we've reached our 90-minute time
25       frame, from my stopwatch.