# Exhibit 10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

No.: 1:20-CV-05441 (KPF)(KWL)

UNIFORMED FIRE OFFICERS       )
ASSOCIATION, et al.,          )
                              )
        Plaintiffs,          )
                              )
  vs.                         )
                              )
BILL de BLASIO, et al.,       )
                              )
        Defendants.          )
_____)

REMOTE VIDEOTAPED DEPOSITION OF

KERRY JAMIESON

Thursday, August 6, 2020

REPORTED BY:

RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

JOB NO. 28092

```
 1                    KERRY JAMIESON
 2     the CCRB's procedures and policies in
 3     complying with FOIL.
 4              Is that what this manual does?
 5        A    Yes.
 6        Q    Okay.  And it also directs the
 7     records access officer to comply with the
 8     responsibilities, procedures, and policies
 9     that are set forth in the manual?
10        A    Yes, that's what it says.
11        Q    Okay.  If you look towards the
12     bottom of the paragraph, there's a highlighted
13     sentence that says:
14              "The New York State -- New York
15     Department of State's Committee on Open
16     Government is responsible for overseeing and
17     advising the government, public, and news
18     media on FOIL."
19              Do you see that?
20        A    Yes.
21        Q    Okay.  Do you have an
22     understanding as to what the Committee on Open
23     Government is and what its function is?
24        A    Yes.
25        Q    Can you please describe its
```

```
 1                    KERRY JAMIESON
 2     function and how you worked with it.
 3          A      Well, the main function is a
 4     Committee on Open Government provides guidance
 5     on access to public records, and, you know,
 6     the FOIL law can be found on its Website and
 7     they also provide advisory opinions to people
 8     writing in on various questions involving the
 9     FOIL law.
10          Q      Okay.
11          A      They have other functions as well,
12     but that's -- for FOIL purposes, that's what
13     they do.
14          Q      Okay.  And as part of your job, do
15     you review the Committee on Open Government's
16     opinions?
17          A      Not regularly, but I have reviewed
18     some.
19          Q      Okay.  Would you consider the
20     Committee on Open Government to be the
21     statewide authority on the application of
22     FOIL?
23          A      What do you mean -- "statewide
24     authority," what do you mean by that?
25          Q      Is it the state agency that
```

```
 1                    KERRY JAMIESON
 2    where -- anybody else at the CCRB responsible
 3    for responding to FOILs rejected an opinion of
 4    the advisory committee -- of the advisory --
 5    an advisory opinion on the Committee on Open
 6    Government?
 7               MS. QUINN:  Objection.
 8               You can answer.
 9               THE WITNESS:  Not that I'm aware
10      of.
11    BY MR. COLES:
12        Q     Are you aware that the committee
13    has long held that the release of
14    unsubstantiated and pending allegations of
15    misconduct would constitute an unreasonable
16    invasion of personal privacy?
17               MS. QUINN:  Objection.
18               You can answer.
19               THE WITNESS:  I'm aware that the
20      committee has issued advisory opinions
21      stating that an agency can assert that
22      exception to the FOIL law if they want to,
23      but it's not mandatory that it's asserted.
24    BY MR. COLES:
25        Q     Right.  My question was a little
```

1  KERRY JAMIESON
2  different, though.  And my question is, are
3  you aware that the Committee on Open
4  Government has actually issued a number of
5  opinions saying that the release of
6  unsubstantiated or unfounded allegations is a
7  invasion of privacy?
8          MS. QUINN:  Objection.
9          THE WITNESS:  My --
10         MS. QUINN:  I believe that she
11     answered that question.
12         But you can answer.
13         THE WITNESS:  I was going to say,
14     my answer remains the same.
15 BY MR. COLES:
16    Q     Okay.  Does the CCRB have a
17 position as -- as to the release of
18 unsubstantiated and unfounded allegations
19 against a police officer that believes that
20 those allegations are not an unwarranted
21 invasion of privacy?
22         MS. QUINN:  Objection to form.
23         You can answer.
24         THE WITNESS:  I'm not sure I
25     understand your question.

1                KERRY JAMIESON

2    BY MR. COLES:

3        Q      Okay.  Does this -- does the CCRB

4    have a position as to whether or not the

5    release of unsubstantiated or unfounded

6    complaints against a police officer would

7    constitute an unwarranted invasion of personal

8    privacy?

9        A      I don't know that we have a

10   position.  I know that this -- from my

11   understanding, the CCRB has not and does not

12   assert that FOIL exception when responding to

13   a FOIL request that involves those records.

14       Q      I'm sorry.  I didn't really

15   understand your answer.  Say that one more

16   time.

17       A      My answer was that --

18              MS. QUINN:  I'm sorry.  Can you

19      read back -- can you read back her answer,

20      please.

21              (Previous answer read back.)

22   BY MR. COLES:

23       Q      Could you explain what you mean by

24   that.

25       A      Sure.  So to my knowledge, the

1                KERRY JAMIESON
2    CCRB does not assert an unwarranted invasion
3    of privacy FOIL exception on the basis of what
4    the outcome of the case was.
5        Q      My question -- does it as a policy
6    matter assert the exception as to unfounded
7    and unsubstantiated allegations?
8              MS. QUINN:  Objection.
9              You can answer.
10             THE WITNESS:  The CCRB doesn't
11      assert the FOIL from -- again, to my
12      knowledge, the CCRB does not assert the
13      unwarranted invasion of privacy exception
14      based on whatever the outcome of the case
15      was.  That does not factor into whether or
16      not that exception is asserted.
17   BY MR. COLES:
18       Q      So even if a case is
19   unsubstantiated or unfounded, the CCRB will
20   not assert the unwarranted invasion of
21   personal privacy exception?  Is that your
22   testimony?
23             MS. QUINN:  Objection.  Asked and
24      answered.
25             But you may answer.

1                    KERRY JAMIESON

2             Pardon me.

3             THE WITNESS:  The records access

4     officer takes every FOIL request and

5     evaluates it individually.  However, to my

6     knowledge, that exception is not asserted

7     on that basis.

8   BY MR. COLES:

9        Q     Why not?

10       A     Why not?  Well, because the

11  records access officer does not -- we've never

12  done an analysis of whether or not an

13  allegation is unsubstantiated on exonerated,

14  unfounded doesn't have to be -- it's not an

15  exception that needs to be asserted.  It

16  doesn't fall -- it's not mandatory that that

17  exception is asserted under the FOIL law.

18       Q     Okay.  And are you saying that as

19  a policy matter the CCRB has decided not to

20  assert that exemption?

21            MS. QUINN:  Objection.  Asked and

22     answered.

23            You may answer.

24            THE WITNESS:  I would say that to

25     my knowledge, the records access officer

```
 1                    KERRY JAMIESON
 2         does not assert that the unwarranted
 3         invasion of privacy exception for -- based
 4         on the outcome of a CCRB investigation.
 5                 MR. COLES:  Evan, you can take the
 6         exhibit down for the time being.
 7    BY MR. COLES:
 8         Q       Does the CCRB have a policy as to
 9    whether or not it releases the disciplinary
10    records of claims and allegations that are
11    pending?
12         A       I'm sorry.  I don't know if I
13    understand your question.
14         Q       Okay.  Does the CCRB -- well, you
15    understand that a claim or allegation at the
16    CCRB will go through a process, correct?
17         A       Uh-huh.
18         Q       Okay.  And then ultimately that
19    process will result in a claim being
20    unsubstantiated or substantiated, correct?
21                 MS. QUINN:  Objection.  This is
22         outside the scope of this deposition.
23                 MR. COLES:  It's not.
24                 MS. QUINN:  Asking about the
25         process of CCRB investigations is outside
```

1                KERRY JAMIESON

2        A       No.

3        Q       Will you tell me the substance of
4    the discussions there?

5                MS. QUINN: Objection.

6                I'm instructing the witness not to
7        answer that question as it breaches
8        attorney-client privilege.

9    BY MR. COLES:

10       Q       Will you tell me the reasons why
11   the CCRB does not follow the Committee on Open
12   Government's guidance that unsubstantiated or
13   unfounded allegations are subject to the
14   privacy exemption of FOIL?

15               MS. QUINN: Objection.

16               You can answer.

17               THE WITNESS: Well, I disagree
18       with the premise of your question. The --
19       my understanding of the guidance from the
20       Committee on Open Government is that the
21       unwarranted invasion of privacy exception
22       could be asserted for that purpose, but
23       that agency is not required to assert that.
24       So I don't believe that the CCRB does not
25       follow the guidance.

```
 1                KERRY JAMIESON
 2    BY MR. COLES:
 3        Q     Are you aware recently that the
 4    CCRB released records of 81,000 police
 5    officers to the New York Civil Liberties
 6    Association?
 7              MS. QUINN:  Objection.
 8              You can answer.
 9              THE WITNESS:  I'm aware.
10    BY MR. COLES:
11        Q     Okay.  Is it your testimony that
12    the records access officer in that case
13    provided or conducted an individualized
14    determination of the privacy exemption for all
15    those 81,000 officers?
16              MS. QUINN:  Objection.
17              You can answer.
18              THE WITNESS:  I believe that the
19         records access officer -- again, I was not
20         that person, but the request was for
21         similar records.  So in an individual -- so
22         there was no need to do a line by line of
23         every -- of all 81,000-plus officers.  I
24         believe it was the determination to give
25         out information -- limited information
```

1              KERRY JAMIESON
2       about cases.
3              So from my understanding, pending
4       cases, which means cases that were pending
5       at the CCRB or are pending in the APU were
6       not included in that disclosure.  Cases
7       that were mediated were not just included
8       in that disclosure.  I believe cases that
9       were referred were not included in that
10      disclosure.
11             So I do believe that the records
12      access officer made a determination based
13      on -- that -- those records, whether or not
14      they were substantiated or unsubstantiated,
15      unfounded, exonerated, that did not go
16      to -- that did not warrant the assertion of
17      that privacy exemption.
18   BY MR. COLES:
19      Q     Is it your testimony she looked at
20   all of the claims for the 81,000 officers
21   claim by claim?
22             MS. QUINN:  Objection.
23             You can answer.
24             THE WITNESS:  That's not my
25      testimony.  My testimony is that the

```
 1                    KERRY JAMIESON
 2     exemptions, CCRB noted that the request for
 3     records relating to unsubstantiated matters
 4     would constitute an unreasonable invasion of
 5     privacy?"
 6              Do you see that?
 7        A     Yes, I see it.
 8        Q     Okay.
 9              MS. QUINN:  Can I just ask that we
10        scroll down to the paragraph at the bottom
11        of the first column?  I just want to see
12        the paragraph preceding.
13              Thank you.
14     BY MR. COLES:
15        Q     Do you have an understanding as to
16     the basis for the CCRB's conclusion that the
17     request for records related to unsubstantiated
18     matters would constitute an unreasonable
19     invasion of privacy?
20        A     I did not work at the CCRB at the
21     time of that letter.  So no, I don't know.
22        Q     Okay.  But wasn't that the
23     practice at the CCRB at the time you joined in
24     August 2017?
25              MS. QUINN:  Objection.
```

```
 1                    KERRY JAMIESON
 2              MR. COLES:  We can mark as the --
 3       what exhibit are we up to?
 4              CERTIFIED STENOGRAPHER:  Since I'm
 5       not handling them, I have not kept up with
 6       the numbers.
 7              MR. COLES:  Okay.  We're going to
 8       go to the next exhibit, the -- go to the
 9       next page of this PDF.
10              MR. NORTH:  This should be
11       Exhibit 6 [sic].
12              MR. COLES:  This will be 6-A
13       [sic].
14                (Exhibit Number 7-A, Letter
15                 from Michael T. Murray to Jonathan
16                 Darche, dated 7/8/20, was marked
17                 for identification.)
18       BY MR. COLES:
19          Q     This is a letter from the Office
20       of General Counsel that's a number of pages
21       long to the executive director of the CCRB.
22                Is this the letter you're
23       referring to?
24          A     I believe so.  I believe that
25       this -- I remember the longer letter.
```

```
 1                  KERRY JAMIESON
 2        Q     Okay.  And did you, in fact,
 3   prepare a response to the letter?
 4        A     I did not.
 5        Q     Did anybody?
 6              MS. QUINN:  Objection.
 7              You can answer.
 8              THE WITNESS:  Not to my knowledge.
 9        I was the person that was supposed to
10        respond and I did not.
11   BY MR. COLES:
12        Q     And why did you choose not to
13   respond?
14              MS. QUINN:  Objection.
15              You can answer.
16              THE WITNESS:  I didn't choose not
17        to respond.  The instant lawsuit was filed.
18   BY MR. COLES:
19        Q     Why did that stop you from
20   responding?
21              MS. QUINN:  Objection.  I'm going
22        to instruct her not to answer as that
23        impinges upon attorney-client privilege.
24   BY MR. COLES:
25        Q     Did you prepare a draft of a
```