# Exhibit 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | |
|---|---|
| Uniformed Fire Officers Association; Uniformed Firefighters Association of Greater New York; Correction Officers' Benevolent Association of the City of New York, Inc.; Police Benevolent Association of the City of New York, Inc.; Sergeants Benevolent Association; Lieutenants Benevolent Association; Captains Endowment Association; and Detectives' Endowment Association, | **DECLARATION OF KERRY JAMIESON**<br><br>20 CV 05441 (KPF) |
| Plaintiffs, | |
| -against- | |
| Bill de Blasio, in his official capacity as Mayor of the City of New York; the City of New York; Fire Department of the City of New York; Daniel A. Nigro, in his official capacity as the Commissioner of the Fire Department of the City of New York; New York City Department of Correction; Cynthia Brann, in her official capacity as the Commissioner of the New York City Department of Correction; Dermot F. Shea, in his official capacity as the Commissioner of the New York City Police Department; the New York City Police Department; Frederick Davie, in his official capacity as the Chair of the Civilian Complaint Review Board; and the Civilian Complaint Review Board., | |
| Defendants. | |

------------------------------------------------------------------------x

**KERRY JAMIESON**, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I have been employed as Assistant General Counsel by the Civilian Complaint Review Board ("CCRB") since August 2017. In addition, I am the CCRB's Agency Privacy Officer and Records Access Appeals Officer. I previously served in the role of Records Access Officer from approximately September 2017 to October 2018. My responsibilities include

responding to appeals from denials of Freedom of Information Law ("FOIL") requests, helping to develop agency policy, ensuring the agency is in compliance with various state and local laws and regulations, and handling certain employee-related matters.

2. This declaration is based upon my personal knowledge obtained as a result of my work as Records Access Officer and Records Access Appeals Officer, and my review of agency records and discussions with agency staff.

3. CCRB Rule § 1-33 defines the terms used by the agency in its case dispositions. The CCRB's rules are attached hereto as Exhibit A and can be found on the CCRB's website and at 38-A R.C.N.Y.

4. In this Declaration, I describe terms that the CCRB commonly uses in its day-to-day operations, which are not contained in the CCRB's rules, as well as terms that the CCRB does not use, but that are used in the course of trials following a CCRB recommendation of Charges and Specifications:

> i. "Final" – findings and determination of the CCRB's board on a case, which are outlined in the attached rules, after a three-member panel or the full board votes on the disposition of the allegations, and a discipline recommendation, if any of the allegations were substantiated.
>
>> a. The CCRB's recommendations are considered final by the agency and will not be changed or altered to concur with the determination of the Police Commissioner if the Police Commissioner reaches a different determination than the CCRB.
>>
>> b. When a CCRB officer history is disclosed via FOIL, the officer history contains both the CCRB final determination and the outcome following an Administrative Prosecution Unit ("APU") case, if any. Pursuant to a Memorandum of Understanding ("MOU") between the NYPD and the CCRB,[1] if the CCRB's board issues a final recommendation of "Charges and Specifications" for a substantiated allegation(s), the CCRB's APU is authorized through a delegation of duty to prosecute these cases. For the purposes of the APU process, the CCRB APU attorney

---

[1] The MOU is codified in 38 R.C.N.Y. §§ 15-11 *et seq.*

        stands in the stead of an NYPD Department Advocate. 38 R.C.N.Y. § 15-01. The APU process is completely separate from the CCRB investigative process and can only continue after the board has issued a final determination upon the resolution of a CCRB investigation.

   c. While not as regularly as in APU cases, the CCRB is eventually informed of the discipline, if any, imposed on a member of service for substantiated CCRB cases where the board recommended discipline lesser than charges and specifications (such as Instructions, Training, Command Discipline "A," Command Discipline "B." The CCRB is not, however, informed of the penalty.

ii. "Non-final"- this is not a term that the CCRB regularly uses.

iii. "Pending CCRB Case" - open CCRB investigations or cases where the investigation is complete, but that have not yet been voted on by the board.

iv. "Pending APU Case" - cases that are ongoing in the APU, meaning that the case is still open awaiting plea, trial, or a final determination by the Police Commissioner following a plea or trial.

   a. Although the underlying CCRB finding and disposition is considered final, the CCRB does not release, pursuant to FOIL, records related to cases that are still pending in the APU.

v. "Guilty" - this is not a term that is defined by the CCRB in any document that I am aware of, but is used in the APU context where an officer accepts a plea that he or she has engaged in the alleged misconduct, where a NYPD Deputy Commissioner of Trials or Assistant Deputy Commissioner of Trials finds that a member of service engaged in misconduct following an APU trial, or a determination by the Police Commissioner that a member of service engaged in misconduct.

vi. "Not Guilty" - this is not a term that is defined by the CCRB in any document that I am aware of, but is used in the APU context where a NYPD Deputy Commissioner of Trials or Assistant Deputy Commissioner of Trials finds that a member of service did not engage in misconduct following an APU trial, or a determination by the Police Commissioner that a member of service did not engage in misconduct.

Executed on:  New York, New York
                 August 5, 2020

_____
**KERRY JAMIESON**

Jamieson Declaration – Exhibit A

The Rules of the City of New York

**Current through rules effective June 29, 2018.**

Published by:
**American Legal Publishing Corporation**
One West Fourth Street, Third Floor
Cincinnati, Ohio 45202
800-445-5588
Fax: 513-763-3562
www.amlegal.com

# Title 38-A: Civilian Complaint Review Board

## Chapter 1: Rules of the Civilian Complaint Review Board

### Subchapter A: Introduction

#### § 1-01 Definitions.

As used in this chapter:

**Agency Staff.** The term "Agency Staff" means employees of the Civilian Complaint Review Board, including Board investigators.

**Alleged Victim.** The term "Alleged Victim" refers to the person alleging harm by the alleged police misconduct.

**Case.** The term "Case" refers to an investigation undertaken by the Civilian Complaint Review Board.

**Chair.** The term "Chair" means the Chair of the Civilian Complaint Review Board, appointed pursuant to New York City Charter § 440(b)(1).

**Charges.** The term "Charges" means charges and specifications brought by the Board against an officer with respect to an allegation falling within the jurisdiction of the Board and substantiated by the Board with the recommendation of charges and specifications.

**Civilian Complaint Review Board.** The term "Civilian Complaint Review Board" or "Board" means the entity established by Local Law No. 1 for the year 1993, codified as § 440 of the New York City Charter.

**Complainant.** The term "Complainant" refers to a person with Personal Knowledge of alleged police misconduct who is filing a complaint on behalf of themselves or another person regarding the alleged misconduct.

**Executive Director.** The term "Executive Director" means the chief executive officer of the Civilian Complaint Review Board, appointed pursuant to New York City Charter § 440(c)(5).

**Full Board.** The term "Full Board" refers to all current members of the Board who have been appointed, pursuant to New York City Charter § 440(b)(1).

**Mediation.** The term "Mediation" means an informal process, voluntarily agreed to by a Complainant and/or Alleged Victim and the subject officer and conducted with the assistance of a neutral third party, engaged in for the purpose of fully and frankly discussing alleged misconduct and attempting to arrive at a mutually agreeable resolution of a complaint.

**Personal Knowledge.** The term "Personal Knowledge" means knowledge of a circumstance or fact gained through firsthand observation or experience.

**Police Commissioner.** The term "Police Commissioner" means the Police Commissioner of the New York City Police Department, and where appropriate, his or her designee.

**Police Department.** The term "Police Department" means the New York City Police Department.

**Police Department Advocate.** The term "Police Department Advocate" means the Department Advocate, and includes any Assistant Department Advocate of the Police Department.

**Prosecution.** The term "Prosecution" means the administrative prosecution of department Charges before a Trial Commissioner and includes all matters undertaken pursuant to such prosecution.

**Reporting Non-Witness.** The term "Reporting Non-Witness" refers to a person(s) without personal knowledge of the alleged police misconduct filing a complaint on behalf of another person.

**Trial Commissioner.** The term "Trial Commissioner" refers to the Deputy Commissioner of Trials or the Assistant Deputy Commissioner of Trials of the Police Department.

**Victim.** The term "Victim" refers to the person harmed by at least one or more substantiated allegation(s) of police misconduct.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-02 Jurisdiction.

(a)   Pursuant to Chapter 18-A § 440 (c)(1) of the New York City Charter, the Board has the power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public against uniformed members of the New York City Police Department that allege misconduct involving excessive use of force, abuse of authority, discourtesy, or use of offensive language, including, but not limited to, slurs relating to race, ethnicity, religion, gender, sexual orientation and disability.

(b)   The jurisdiction of the Board includes the prosecution of certain substantiated civilian complaints pursuant to a Memorandum of Understanding (MOU) executed by the Board and the Police Department on April 2, 2012, (as from time to time amended) during the period that such MOU is in effect.

(c)   The findings and recommendations of the Board, and the basis therefor, regarding Case investigations and administrative Prosecutions will be submitted to the Police Commissioner.

(Amended City Record 1/2/2018, eff. 2/1/2018)

## Subchapter B: Initial Procedures

### § 1-11 Filing Complaints.

(a)   An Alleged Victim, a parent, legal guardian or legal representative if the Alleged Victim is a minor, or any individual having Personal Knowledge (as defined in 38-A RCNY § 1-01) of alleged misconduct by a member of the New York City Police Department, each have standing to file a complaint.

(b)   Complaints of alleged police misconduct filed by Reporting Non-Witnesses (as defined in 38-A RCNY § 1-01) may be investigated at the discretion of the Executive Director or Chair of the Board. Among the factors to be considered are: the nature and/or severity of the alleged misconduct, the availability of evidence and/or witnesses, the ability to identify officers and civilians involved, the practicability of conducting a full investigation within the time prescribed by the statute of limitations and the numbers of complaints received by the Board regarding the incident.

(c) The Board has the power to review incidents involving members of the New York City Police Department and investigate Cases arising therefrom within the Board's jurisdiction under the New York City Charter.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-12 Written Complaints.

Written complaints may be sent to the Board's offices by mail or email or may be submitted in person at that office during operating hours. Written complaints may be filed on forms furnished by the Board. The Board will accept written complaints filed at local precincts and forwarded by the Police Department. The Board will also accept complaints submitted through the CCRB's website and by such other methods as the Board may determine.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-13 Telephone or In-Person Complaints.

Telephone complaints will be received twenty-four hours a day, seven days a week by the Board. Complaints can be reported in person at the Board office during operating hours. Complaints may also be filed at public locations to be designated by the Board.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-14 Referrals of Complaints.

   (a) Where the Board receives allegations about persons or matters falling within the sole jurisdiction of another agency (and not that of the Board), the Chair or the Executive Director will refer such allegations to such other agency.

   (b) Where the Board receives allegations about persons or matters falling partly within the sole jurisdiction of another agency (and not that of the Board) and partly within the joint jurisdiction of both the other agency and the Board, the Chair in consultation with the Executive Director may refer the entire complaint to the other agency if in the determination of Chair, in consultation with the Executive Director, it is appropriate for the entire complaint to be investigated by one single agency.

   (c) The Board can investigate any complaint or allegation that falls within the Board's jurisdiction, regardless of whether another agency is investigating or has previously investigated the same complaint or allegation.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-15 Late Complaints.

   (a) When a complaint is filed with the Board after the 18-month statute of limitations has expired pursuant to Civil Service Law § 75(4), the Chair in consultation with the Executive Director will determine whether to investigate the complaint.

   (b) When a complaint is filed with the Board more than one year after the incident, the Chair in consultation with the Executive Director will determine whether to investigate the complaint.

   (c) Among the factors to be considered in determining whether to investigate complaints made after one year or after the 18-month statute of limitations has expired are: the nature and/or severity of the alleged misconduct, the availability of evidence and/or witnesses, the ability to identify officers and civilians involved, the practicability of conducting a full investigation within any applicable limitation period, the reason for the late filing and the numbers of complaints received by the Board regarding the incident.

(Added City Record 1/2/2018, eff. 2/1/2018)

### § 1-16 Notification to the Police Department.

With respect to complaints about officers and matters within the Board's jurisdiction, the Board will notify the Police Department of the actions complained of within a reasonable period of time after receipt of the complaint.

(Amended City Record 1/2/2018, eff. 2/1/2018)

## Subchapter C: Fact-finding Process

### § 1-21 Statement of Policy.

The procedures to be followed in investigating complaints will be such as in the opinion of the Full Board will best facilitate accurate, orderly and thorough fact-finding.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-22 Method of Investigation of Complaints.

In investigating a complaint, Agency Staff may utilize one or more of the methods set forth in this subchapter, and any other techniques not enumerated here, as may be allowed by law in conducting an investigation.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-23 Obtaining Documentary and Other Evidence.

   (a)   Board investigators may make written or oral requests for information or documents.

   (b)   Board investigators or, as provided in 38-A RCNY § 1-32(b), a panel established pursuant to 38-A RCNY § 1-31, may interview the Complainant, Alleged Victim, the subject officer, and/or witnesses.

   (c)   Board investigators may make field visits for purposes such as examining the site of alleged misconduct and interviewing witnesses.

   (d)   Upon a majority vote of the members of the Full Board, subpoenas ad testificandum and duces tecum may be issued and served. Such subpoenas are enforceable pursuant to relevant provisions of Article 23 of the New York Civil Practice Law and Rules.

   (e)   The Board may obtain records and other materials from the Police Department which are necessary for the investigation of complaints submitted to the Board, except such records and materials that cannot be disclosed by law. In the event that requests for records or other evidence are not complied with, investigators may request that the Board issue a subpoena duces tecum or a subpoena ad testificandum.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-24 Conduct of Interviews.

   (a)   It is the intent of these Rules not to alter the rights afforded to police officers by the Police Department Patrol Guide with respect to interviews in a manner that diminishes such rights, including but not limited to the right to notice of an interview, the right to counsel, and the right not to be compelled to incriminate oneself.

   (b)   A member of the Police Department who is the subject of a complaint will be given two business days notice prior to the date of an interview, to obtain and consult with counsel. A member of the Police Department who is a witness in an investigation of a complaint will be given a period of time, up to two business days, to confer with counsel.

(c)   All persons interviewed may be accompanied by up to two representatives, including counsel. Such counsel or representative may advise the person interviewed as circumstances may warrant, but may not otherwise participate in the proceeding.

(d)   Prior to the commencement of the interviewing of a police officer, the following statement will be read to such officer:

> "You are being questioned as part of an official investigation of the Civilian Complaint Review Board. You will be asked questions specifically directed and narrowly related to the performance of your duties. You are entitled to all the rights and privileges guaranteed by the laws of the State of New York, the Constitution of this State and the Constitution of the United States, including the right not to be compelled to incriminate yourself and the right to have legal counsel present at each and every stage of this investigation.
> If you refuse to testify or to answer questions relating to the performance of your official duties, your refusal will be reported to the Police Commissioner and you will be subject to Police Department charges which could result in your dismissal from the Police Department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings. However, these statements may be used against you in relation to subsequent Police Department charges."

All interviewed police officers will also be informed prior to the commencement of an interview that under the New York City Police Department Patrol Guide, absent exceptional circumstances, an officer will be dismissed from the Police Department for intentionally making a false official statement that is material to the pending investigation.

(e)   Interviews will be scheduled at a reasonable hour, and reasonable requests for interview scheduling or rescheduling will be accommodated. If possible, an interview with a police officer will be scheduled when such officer is on duty and during daytime hours. Interviews may be conducted at the Board's offices or other locations designated by the Board.

(f)   The interviewer will inform a member of the Police Department of the name and position of the person in charge of the investigation, the name and position of the interviewer, the identity of all persons present at the interview, whether the member is a subject or witness in the investigation, the nature of the complaint and information concerning all allegations, and the identity of witnesses and Complainants, except that addresses need not be disclosed and confidential sources need not be identified unless they are witnesses to the alleged incident.

(g)   The interviewer will not use off-the-record questions, offensive language or threats, or promise of reward for answering questions.

(h)   The interviewer will regulate the duration of question periods with breaks for such purpose as meals, personal necessity and telephone calls. The interviewer must record all recesses.

(i)   Interviews will be recorded by the Complaint Civilian Review Board. No other recordings are permitted.

(j)   If a person participating in an interview needs an interpreter, a qualified interpreter will be obtained from an official registry of interpreters or another reliable source as soon as possible.

(k)   When requested, reasonable accommodations will be made for persons with disabilities who are participating in an interview.

(l)   Prior to the commencement of an interview of a Complainant, Alleged Victim and/or civilian witness, the following statement will be read to such person, in sum and substance:

At the start of the interview:

> Today is [ENTER DATE] and the time is now [ENTER TIME]. I am Investigator [ENTER NAME] and I am conducting an official investigation into Civilian Complaint Review Board case number [ENTER CASE NUMBER]. In this case, an allegation of misconduct has been made against (a) member(s) of the New York

City Police Department.

This interview is taking place at [LOCATION], and is being recorded.
For the record, please state your name, address, date of birth, occupation/employer (if any) and/or student status.

Also present is/are [ENTER RECORD]

Mr./Ms. [ENTER NAME], you are being asked to provide a statement pursuant to an official CCRB investigation under the authority granted the CCRB pursuant to Section 440 of the New York City Charter. All statements made become part of the official investigative file and may be disclosed pursuant to subpoena or other document request to the extent permitted by law and in furtherance of criminal, administrative or civil litigation.

Please be advised that you will be asked to sign a verification statement at the conclusion of this interview verifying that all of the statements you have provided in connection with this investigation are true to your knowledge.

Mr./Ms. [ENTER NAME], do you understand what I have just told you?

At conclusion of interview:

Is there anything that I haven't asked you about that you wish to add to the record?
I am now going to present for your signature the verification form I mentioned earlier. This form requires your signature and reflects the fact that you have verified that the statements you have made in connection with this case are true to your knowledge.

Have the witness sign the form.

(Sign the form as a commissioner of deeds or have someone who is a commissioner of deeds present to witness the civilian's signature and sign the form as a commissioner of deeds).

The time is now [ENTER TIME].

The interview is now concluded.

(Amended City Record 1/2/2018, eff. 2/1/2018)

## Subchapter D: Disposition of Cases

### § 1-31 Assignment of Cases.

   (a)   The Chair or the Executive Director will assign to a panel consisting of at least three Board members, or may assign to the Full Board for review, all Cases which have been fully investigated, and such other Cases or categories of Cases as the Board may determine by resolution.

   (b)   Pursuant to Chapter 18-A § 440(c)(2) of the New York City Charter, no panel will consist exclusively of members designated by the Council, Police Commissioner or selected by the Mayor. Panel membership will be determined by the Chair, but each panel will consist of at least one member designated by City Council, at least one designated by the Police Commissioner, and at least one designated by the Mayor; unless such a panel composition would interfere with or unreasonably delay the Civilian Complaint Review Board's operations. Panel membership will be rotated on a regular basis.

   (c)   If the Chair or the Executive Director determines that circumstances require it, the Chair or the Executive Director may reassign a Case to a new panel.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-32 Panel or Board Review of Cases.

(a)   The panel or the Full Board will review the investigatory materials for each assigned Case, and report its findings and recommendations in writing.

(b)   The panel or the Full Board may, if it deems appropriate, return a Case to investigative staff for further investigation. A panel may conduct additional fact-finding, including interviews, in accordance with the provisions of 38-A RCNY § 1-24.

(c)   Panel findings and recommendations are deemed to be the findings and recommendations of the Board. However, upon request of a member of the panel, or upon the direction of the Chair at the request of any member of the Board, the Case will be referred to the Full Board for its consideration.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-33 Case Dispositions.

(a)   Pursuant to Chapter 18-A § 440(c)(1) of the New York City Charter, no finding or recommendation shall be based solely upon an unsworn complaint or statement, nor shall prior unsubstantiated, unfounded or withdrawn complaints be the sole basis for any such finding or recommendation.

(b)   Panels or the Full Board will employ a "preponderance of the evidence" standard of proof in evaluating Cases.

(c)   The findings and recommendations with respect to each Case reviewed by the Board will be submitted to the Police Commissioner.

(d)   Where the disposition of one or more allegations is "Substantiated," as defined in Subdivision (e) of this section, the Board's findings and recommendations will be forwarded in writing to the Police Commissioner within five business days and include appropriate pedigree information regarding the subject officer, the Case number and any other control or serial number assigned to the Case, and a summary of the pertinent facts. Based on its findings, the Board may recommend penalties of Charges, command discipline or instructions with formalized training, or any combination of these. However, if the Board or panel recommends Charges for any Case allegation against a subject officer, all substantiated allegations against that officer will be included as part of that recommendation.

(e)   The following categories of Case investigation dispositions will be used in reports to the Police Commissioner:

   (1)   Substantiated: there was a preponderance of evidence that the acts alleged occurred and constituted misconduct.

   (2)   Unsubstantiated: there was insufficient evidence to establish whether or not there was an act of misconduct.

   (3)   Exonerated: there was a preponderance of the evidence that the acts alleged occurred but did not constitute misconduct.

   (4)   Unfounded: there was a preponderance of the evidence that the acts alleged did not occur.

   (5)   Complaint Withdrawn: the Complainant withdrew the complaint.

   (6)   Complainant Unavailable: the Complainant could not be reached or located.

   (7)   Alleged Victim Unavailable: the Alleged Victim could not be reached or located.

   (8)   Complainant Uncooperative: the participation of the Complainant was insufficient to enable the Board to conduct a full investigation.

(9)   Alleged Victim Uncooperative: the participation of the Alleged Victim was insufficient to enable the Board to conduct a full investigation.

(10)   Alleged Victim Unidentified: the Board could not identify the Alleged Victim and therefore was unable to conduct a full investigation.

(11)   Officer Unidentified: the Board was unable to identify the officer who was the subject of the allegation.

(12)   Referral: the complaint was referred to another agency.

(13)   No Jurisdiction: the complaint does not fall within the jurisdiction of the Board.

(14)   Mediated: the parties to the mediation agreed that the complaint should be considered as having been resolved through mediation.

(15)   Mediation Attempted: the parties agreed to mediate the complaint but the civilian subsequently did not participate in the mediation.

(16)   Miscellaneous: the subject of the complaint is not currently employed by the Police Department as a police officer.

(17)   Administrative Closure: the Case was referred to the Board by another agency, not by a member of the public, and the Board was unable to conduct a full investigation.
(Amended City Record 1/2/2018, eff. 2/1/2018)

## § 1-34 Cases Closed without a Full Investigation.

   (a)   The Full Board, a panel, or the Executive Director may close without conducting a full investigation any Case falling within categories (5) through (17) of 38-A RCNY § 1-33(e).

   (b)   No Case(s) falling within categories (5) through (17) of 38-A RCNY § 1-33(e) will be closed by the Executive Director until copies have first been provided to any member of the Full Board who has asked to review copies of said Case(s).

   (c)   The Executive Director must from time to time conduct an audit of Cases closed pursuant to this rule. After an audit of the aforementioned sample of Cases, the Executive Director will report his or her review of those Cases to the Full Board.

(Amended City Record 1/2/2018, eff. 2/1/2018)

## § 1-35 Communications with and Notifications to Complainants, Alleged Victims, and Reporting Non-Witnesses Regarding Status of Complaints.

   (a)   Within seven business days of the receipt of a complaint, the Board will notify a Complainant, Alleged Victim, and/or Reporting Non-Witness by telephone or letter that the Civilian Complaint Review Board has received the complaint, and must identify the Case number and Agency Staff assigned to investigate the Case.

   (b)   The Civilian Complaint Review Board will, within seven business days of a final decision of the Board, write to the Complainant and/or Alleged Victim with such findings and recommendations.

   (c)   If an allegation is substantiated and Charges are recommended by a panel or the Full Board, the Civilian Complaint Review Board will, as soon as it is determined under 38-A RCNY § 1-42, advise the Complainant and/or Alleged Victim in writing whether such allegation will be prosecuted and, if it will, whether the Board or the Police Department Advocate will be responsible for prosecuting it.

   (d)   The Civilian Complaint Review Board will within seven business days of the Civilian Complaint Review Board's receipt of the Police Commissioner's final determination notify the Complainant and/or Alleged Victim by letter of the final action taken by the Police Commissioner.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-36 Reconsideration or Reopening of Cases.

   (a)   Upon receipt of a written request to reconsider or reopen a Case from a Complainant, Alleged Victim, Victim or subject police officer, a panel, Chair, or Executive Director may:

      (1)   Reopen any Case previously closed without a full investigation; or

      (2)   Agree to reconsider any Case previously closed with a full investigation if

         i.   New evidence becomes available which could reasonably lead to a different finding or recommendation in the Case; or

         ii.   A previously unavailable or uncooperative witness becomes available which could reasonably lead to a different finding or recommendation in the Case; or

         iii.   If reopening or reconsidering the Case serves the interests of justice.

   (b)   Upon receipt of a written request sent by the Police Department Advocate requesting the reconsideration of a previously fully investigated Case with panel findings and recommendations, a panel, the Chair, or the Full Board may agree to reconsider the penalty and/or disposition of an allegation if:

      (1)   The penalty recommended for the Case by the deciding panel or Full Board against any subject officer is found by the deciding panel or Full Board to be inappropriate or excessive; or

      (2)   There exists new facts or evidence that were not previously known by the deciding panel or Full Board which could reasonably lead to a different finding or recommendation in the Case; or

      (3)   There are matters of fact or law which are found to have been overlooked or misapprehended by the deciding panel or Full Board or if reconsidering the case serves the interests of justice.
In considering requests from the Police Department Advocate, any such request must be made to the Chair, Executive Director, deciding panel, or Full Board, addressed to the Executive Director, within 30 days from receipt of the Civilian Complaint Review Board's initial findings and recommendations of a Case, absent good cause for any such delay beyond 30 days.

   (c)   The Full Board, Chair, a panel, or Executive Director considering a request to reopen or reconsider a Case will have full discretion in making a determination, and may properly consider all relevant circumstances, including, but not limited to: any delays on the part of the person requesting that the Case be reopened; new, material information as to the Complainant, Alleged Victim, Victim, the subject officer, or any civilian or police witness; and the practicability of conducting a full investigation of the allegations contained in the Case within any applicable limitation period.

   (d)   If a previously closed Case is reopened or reconsidered:

      (1)   If all members of the previously deciding panel are presently members of the Board, then that previously deciding panel will be reconvened to reconsider the Case.

      (2)   If any member of the previously deciding panel is no longer a member of the Board, then the remaining members of the previously deciding panel will be reconvened with a replacement panel member designated by the Chair as required by 38-A RCNY § 1-31(b) to reconsider the Case.

      (3)   If all members of the previously deciding panel are no longer members of the Board, the Chair will select a panel will be convened to reconsider the Case pursuant to 38-A RCNY § 1-32.

(Added City Record 1/2/2018, eff. 2/1/2018)

## Subchapter E: Administrative Prosecution

### § 1-41 Introduction.

This Subchapter E is adopted pursuant to a Memorandum of Understanding (the "MOU") dated April 2, 2012, and made between the Police Commissioner and the Chair, concerning the administrative prosecution by the Board of Cases in which it finds that an allegation falling within its jurisdiction has been substantiated against an officer and recommends that formal Charges and specifications be brought against such officer. The MOU takes effect on the date on which this Subchapter E takes effect and applies to allegations substantiated by the Board and in which the Board has recommended that charges and specifications be preferred on or after such date. This Subchapter E does not create any rights or benefits in any third parties.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-42 Prosecution of Charges.

   (a)   Where the Board finds an allegation falling within its jurisdiction to have been substantiated against an officer and recommends that Charges be brought against such officer, the Board will promptly notify the Police Commissioner of its finding and recommendation.

   (b)   In those limited circumstances where the Police Commissioner determines that the Civilian Complaint Review Board's prosecution of the Charges would be detrimental to the Police Department's disciplinary process, the Police Commissioner shall so notify the Civilian Complaint Review Board. Such instances shall be limited to Cases in which there are parallel or related criminal investigations, or when, in the instance of an officer with no disciplinary history or prior substantiated Civilian Complaint Review Board complaints, based on such officer's record and disciplinary history the interests of justice would not be served.

   (c)   Any request by the Police Commissioner for the Civilian Complaint Review Board to refrain from prosecution of Charges shall be made in writing to the Civilian Complaint Review Board and shall include a detailed explanation for such request and a statement detailing what discipline if any the Police Commissioner would pursue on such officer.

   (d)   The Civilian Complaint Review Board may reject such request to refrain from Prosecution within five business days of receipt of such request. Such rejection shall be made in writing and shall include a statement rebutting the Police Commissioner's explanation for his or her request.

   (e)   The Police Commissioner may deny such rejection within five business days of receipt of such rejection. Such denial shall be made in writing to the Civilian Complaint Review Board and shall include a detailed response to the Civilian Complaint Review Board's rebuttal. Upon receipt of such denial the Board shall refrain from further Prosecution of the Case.

   (f)   In all Cases other than those in which the Board is refraining from prosecuting, the Civilian Complaint Review Board shall promptly draft, and request that the Police Department Advocate serve on behalf of the Board, Charges against the subject officer.
   (g)   If the Civilian Complaint Review Board, acting through the Chair or Executive Director, believes that suspension or modified assignment of a subject officer would be prudent while a Prosecution is pending, the Civilian Complaint Review Board, acting through the Chair or Executive Director, shall make such recommendation to the Police Commissioner, who shall determine whether to suspend or modify the assignment of such officer.

   (h)   After a Case has been referred to the Administrative Prosecution Unit for Prosecution, the Chief Prosecutor or Executive Director, or either of their designees, must make a formal request in writing to the deciding panel or, if necessary, the Full Board when:

      (1)   The Administrative Prosecution Unit is requesting that additional allegations be considered against a subject officer in addition to the allegations previously recommended by the Board; or

 (2) The Administrative Prosecution Unit is requesting that previously considered allegations against a subject officer that did not previously result in a substantiation by the Board be reconsidered for substantiation.
In the formal written request, the Chief Prosecutor or Executive Director, or either of their designees, must detail their reasons for making said request. If the Full Board chooses to reopen the matter to add or reconsider any allegations, such matter will be reopened considering the same criteria designated in 38-A RCNY § 1-36(d). Where the Board decides to substantiate additional allegations, the Civilian Complaint Review Board will notify, in writing, all affected civilian and law enforcement parties of the changes to the allegation and/or Charges.

 (i) After a Case has been referred to the Administrative Prosecution Unit for Prosecution, the Chief Prosecutor or Executive Director may, upon approval by either the Chair or Full Board, dismiss any Charges. When any such Charge is dismissed, the Civilian Complaint Review Board will notify, in writing, all affected civilian and law enforcement parties of the dismissal.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-43 Expedited Cases.

If the Civilian Complaint Review Board becomes aware that a Case requires expedited Prosecution, the Civilian Complaint Review Board shall make every reasonable effort to conclude such prosecution within the required time frame. If the Civilian Complaint Review Board determines that it will not be able to conclude such Prosecution within such time frame the Civilian Complaint Review Board will decline to prosecute such Case and request that the Police Department Advocate undertake such Prosecution.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-44 Other Misconduct.

If during the course of a Prosecution the Civilian Complaint Review Board becomes aware of possible misconduct falling outside its jurisdiction, such as the making of a false statement by an officer, the Board shall not itself prosecute such possible misconduct but shall instead immediately refer such possible misconduct to the Police Department for investigation and possible prosecution by the Police Department. The Civilian Complaint Review Board will provide to the Police Department such assistance as may be requested, in the investigation or Prosecution by the Police Department of such possible misconduct and shall, if necessary, coordinate its Prosecution with that of the Police Department. Other misconduct will be noted in case dispositions by categories describing the possible misconduct and the evidence of such misconduct.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-45 Police Department Procedures and Disciplinary Practices.

 (a) The Police Commissioner retains in all respects the authority and discretion to make final disciplinary determinations.

 (b) The Civilian Complaint Review Board will establish and maintain a unit of appropriately qualified and experienced attorneys and support staff of sufficient number to undertake in a timely and effective manner the responsibility of conducting Prosecutions.

 (c) The Civilian Complaint Review Board's attorneys and support staff appointed pursuant to this section will be trained in all aspects of the Police Department's procedures and policies as they affect the Prosecutions.

 (d) The Civilian Complaint Review Board's attorneys and support staff appointed pursuant to this section will, to the extent practicable and relevant, familiarize themselves with and apply in relation to Prosecutions, Police Department disciplinary policies and standards.

 (e) The Police Department will provide all reasonable assistance requested by the Civilian Complaint Review Board

in the creation and maintenance of this unit, including training and guidance in both legal and administrative matters.

   (f)   During the course of a Prosecution, the Civilian Complaint Review Board may contact the Police Department Advocate to request the assistance of employees of the Police Department in the evaluation, preparation and prosecution of the Case. In such instances, the Police Department Advocate shall arrange for the Police Department to provide reasonable assistance to the Civilian Complaint Review Board.

   (g)   In any Case substantiated by the Board in which the Police Commissioner intends to impose discipline that is of a lower level than that recommended by the Board or by the Trial Commissioner, the Police Commissioner will notify the Civilian Complaint Review Board, with notice to the subject officer, at least ten business days prior to the imposition of such discipline. Such notification will be in writing and shall include a detailed explanation of the reasons for deviating from the Board's or, as the case may be, the Trial Commissioner's, recommendation, including but not limited to each factor the Police Commissioner considered in making his or her decision. The Civilian Complaint Review Board and the subject officer may respond to such notification within five business days of its receipt, after which the Police Commissioner will make a final determination.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-46 Other Matters Relating to Administrative Prosecutions.

   (a)   The Police Department will upon receipt send to the Civilian Complaint Review Board a copy of each report and recommendation issued by the Trial Commissioner with respect of a Prosecution. The Civilian Complaint Review Board may provide to the Trial Commissioner a letter commenting on such report and recommendation, commonly referred to as a "Fogel" letter.

   (b)   Where a Prosecution ends without the issuance by the Trial Commissioner of a report and recommendation, the Civilian Complaint Review Board will forward to the Police Commissioner a final recommendation of the Civilian Complaint Review Board reflecting the results of its Prosecution of the Case. The Civilian Complaint Review Board will include all relevant forms, memoranda and background information to assist the Police Commissioner in making a final disciplinary determination.

   (c)   The Police Commissioner may accept, reject, or modify the recommendation presented by the Civilian Complaint Review Board, or may ask the Civilian Complaint Review Board for additional investigative or background information in its possession. The Police Commissioner may also request further investigation or development of the record to enable him or her to make a final disciplinary determination. If the Civilian Complaint Review Board's recommendation is rejected or modified, the Civilian Complaint Review Board will be responsible for taking any appropriate follow-up action, such as proceeding with the Prosecution, engaging in additional investigation, or further developing the record.

   (d)   The Civilian Complaint Review Board may conduct plea negotiations with subject officers and their attorneys, to be heard by a Trial Commissioner. The Police Commissioner will be informed of any proposed plea and said plea will be held in abeyance until approved by the Police Commissioner. In all Prosecutions in which the Police Commissioner rejects a negotiated plea, the Civilian Complaint Review Board will be responsible for implementing the Police Commissioner's decision, including further negotiating the Prosecution in a manner consistent with the Police Commissioner's determination or proceeding with the Prosecution.

   (e)   The Civilian Complaint Review Board will provide to the Police Department quarterly status reports on its Prosecutions or as otherwise requested by the Police Department.

   (f)   The Police Department Advocate will ensure that the Civilian Complaint Review Board is notified of the final disciplinary result and specific penalty in each Case prosecuted by the Board within thirty calendar days of the Police Commissioner's final determination.

(Amended City Record 1/2/2018, eff. 2/1/2018)

## Subchapter F: Mediation

### § 1-47 Mediation.

(a)   A Complainant and/or Alleged Victim and the subject officer may choose to resolve a complaint by means of Mediation, unless the Board or a panel thereof determines that the complaint is not appropriate for mediation. The mediator will be designated by the Executive Director.

(b)   A Reporting Non-Witness does not have standing to seek Mediation or refuse and prevent Mediation from proceeding. A Reporting Non-Witness who is a family member of an Alleged Victim may participate in Mediation whether the Alleged Victim participates or not.

(c)   If one of the parties does not agree to Mediation, the complaint will be referred to Agency Staff for investigation.

(d)   Written notice of the time, date and location of the first Mediation session must be provided to each party. Such notice will be accompanied by a description of procedures and guidelines for mediation. Subsequent session(s) will be scheduled by a member of the Board's mediation staff if the Mediation is not completed at the first session.

(e)   Those present at the Mediation session must include the mediator and all parties who have consented to the Mediation. Where appropriate, arrangements will be made for a translator or interpreter to be present. In the case of a Complainant or Alleged Victim who is a minor, a parent or legal guardian must be present. Upon request, reasonable accommodations will be made for persons with disabilities who are participating in a Mediation. Parties' representatives or counsel may be available outside the room where the Mediation is being conducted.

(f)   All information discussed or statements made at a Mediation session must be held in confidence by the mediator, and the parties must also agree in writing to maintain such confidentiality. No records of any kind, including, but not limited to, stenographic, video, or audio, may be made by any party.

(g)   The Mediation session(s) will continue as long as the participants believe that progress is being made toward the resolution of the issues. The Mediation process may terminate if either party announces his or her unwillingness to continue Mediation, the mediator believes no progress is being made, or the Complainant fails to attend two or more Mediation sessions without good cause shown.

(h)   If Mediation is successful, the parties may, but are not required to, sign an agreement stating that each believes the issues have been satisfactorily resolved. The Director of Mediation, or any Agency Staff designee will advise the Board when a Mediation is concluded and whether such Mediation was successful or unsuccessful. The Board will forward this information to the Police Commissioner.

(i)   If a Case is not successfully resolved through Mediation, any party may ask for the complaint to be investigated, and the complaint will be referred to Agency Staff for investigation.
(Amended City Record 1/2/2018, eff. 2/1/2018)

## Subchapter G: Board Meetings, Organization, and Delegated Authority

### § 1-51 Meetings of the Board.

(a)   The Full Board must meet at least monthly, at which meeting it will consider Cases referred to it and conduct any other business.

(b)   If a Case has been referred to the Full Board, the Full Board may take such action as it deems appropriate, including, but not limited to: making its own findings and recommendations, remanding the Case to a referring panel for further consideration or action, and remanding the Case for further investigation.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-52 Panel and Board Meetings: General Matters.

   (a)   If a Board member has a personal, business or other relationship or association with a party to or a witness in a Case before a panel to which such member has been assigned, the member must disclose this situation to the Chair, and request that the Case be transferred to another panel. If a Board member has such relationship in a Case before the Full Board, the member should recuse themselves from deliberations or action in connection with that Case.

   (b)   Board members must be present at a meeting of the Board or a panel in person or, subject to such limitations as the Board may by resolution from time to time determine, by videoconference in order to register their votes.

(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-53 Authority given to the Executive Director.

   (a)   The authority given under these Rules to the Executive Director will:

   (1)   be exercisable either by the Executive Director or by such members of Agency Staff or members of the Board as the Executive Director may designate, and

   (2)   be subject to such limitations as the Board may determine by resolution.

   (b)   Consistent with the Charter mandate and without relinquishing its oversight authority, the Board authorizes the Executive Director, in consultation with the Chair, to manage all matters related to the appointment of Agency Staff, the organizational structure, and the day-to-day operations of the Civilian Complaint Review Board.
(Amended City Record 1/2/2018, eff. 2/1/2018)

### § 1-54 Committees and Subcommittees.

The Chair has the authority to create committees and/or subcommittees to assist the Board in fulfilling its responsibilities pursuant to law. The members of any such created committees and/or subcommittees will be chosen by the Chair and Executive Director, and will be chosen from the Board as well as Agency Staff, subject to review by the Full Board.

(Added City Record 1/2/2018, eff. 2/1/2018)

### § 1-55 Reconsideration or Reopening of Cases. [Repealed]

(Repealed City Record 1/2/2018, eff. 2/1/2018)