UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Uniformed Fire Officers Association; Uniformed Firefighters Association of Greater New York; Correction Officers' Benevolent Association of the City of New York; Police Benevolent Association of the City of New York, Inc.; Sergeants' Benevolent Association; Lieutenants' Benevolent Association; Captains' Endowment Association; and Detectives' Endowment Association,

    Plaintiffs,

 v.

Bill de Blasio, in his official capacity as Mayor of the City of New York; the City of New York; Fire Department of the City of New York; Daniel A. Nigro, in his official capacity as the Commissioner of the Fire Department of the City of New York; New York City Department of Correction; Cynthia Brann, in her official capacity as the Commissioner of the New York City Department of Correction; Dermot F. Shea, in his official capacity as the Commissioner of the New York City Police Department; the New York City Police Department; Frederick Davie, in his official capacity as the Chair of the Civilian Complaint Review Board; and the Civilian Complaint Review Board,

    Defendants.

No. 1:20-CV-05441 (KPF) (RWL)

**AFFIDAVIT OF JOSEPH ALEJANDRO**

---

  JOSEPH ALEJANDRO, being duly sworn, deposes and says:

  1. I am the Second Vice President of the Police Benevolent Association of the City of New York, Inc. ("PBA"). I have held that position since December 3, 2018. Prior to that I was Treasurer of the PBA from July 1, 1999 until December 3, 2018. I have been a New York City Police Department ("NYPD") Police Officer since January 4, 1984.

2. I submit this affidavit on behalf of the Plaintiffs' Motion for a Preliminary Injunction restraining the Defendants, and those acting in concert with them, from publicly disclosing any records concerning disciplinary matters against New York City law enforcement officers that are non-final, unsubstantiated, unfounded, exonerated or resulted in a finding of not guilty ("Unsubstantiated and Non-Final Allegations"), and confidential settlement agreements entered into before June 12, 2020, the date of repeal of section 50-a on the Civil Rights Law. This affidavit is based upon my personal knowledge, and, where noted, upon information and belief, which I believe to be true.

3. I am informed that the Defendants intend to publicly release, and promote on the internet, Unsubstantiated and Non-Final Allegations regarding thousands of current and retired NYPD officers. The intended publication of these officers' full names and Unsubstantiated and Non-Final Allegations on the internet would constitute a danger to the life and safety of these officers and their families. I am informed that neither the NYPD nor the Civilian Complaint Review Board ("CCRB") intends to make any individualized determination and analysis of the records that they will promote on the internet, and do not intend to make any meaningful evaluation or analysis of how the release of those records may affect officer safety, or make any other meaningful individualized review of the records they intend to publish.

4. By letters to the NYPD and the CCRB, dated June 29 and July 8, 2020, respectively, the PBA detailed its serious concerns about the planned release of Unsubstantiated and Non-Final Allegations, and the safety risk caused by those planned releases. The PBA letters also asked each agency to provide notice before the release of any records so that officers could protect their safety, privacy and other legal interests. Neither agency responded, and I now understand that neither agency intends to provide any advance notice to officers of the release of

Unsubstantiated and Non-Final Allegations regarding police officers. (The PBA letters to the CCRB and the NYPD are attached as Exhibits 8 and 9 to the Declaration of Anthony Coles.)

5.  The lack of any investigation or analysis as to the consequences of the promotion and release on the internet of Unsubstantiated and Non-Final Allegations creates an unacceptable safety risk to Plaintiffs. The dangers of police work are readily apparent. As part of their duties, police officers frequently interact with dangerous suspects, many of whom have lengthy criminal histories and are sometimes violent and/or armed. A police officer's duties necessarily place him or her in an adversarial relationship with such individuals. Officers arrest, investigate, interrogate, execute search warrants and testify against these dangerous suspects.

6.  In New York City alone, there have been far too many examples of the readily apparent dangers of police work. Police Officers Wenjian Liu and Rafael Ramos were assassinated in Brooklyn in December 2014. Their killings came in a prior wave of anti-police demonstrations; as Commissioner Shea later noted, "these things are not unrelated."[1] In 2015, there were two more deaths: Police Officer Brian Moore was shot while questioning an individual and Police Officer Randolph Holder was shot and killed while pursuing an armed subject. In November 2016, NYPD Sergeant Paul Tuozzolo was shot and killed by an individual who was evading the police. In July 2017, Police Officer Miosotis Familia was killed in the line of duty while in her police vehicle in the Bronx. Her killer had ranted on Facebook about police misconduct and threatened that he was "gonna do something."[2]

---

[1] Editorial, *Attempted assassinations of NYPD cops show it's time to cool anti-police fury*, N.Y. Post (Feb. 9, 2020), https://nypost.com/2020/02/09/attempted-assassinations-of-nypd-cops-show-its-time-to-cool-anti-police-fury/.

[2] Colleen Long & Karen Matthews, *Police look into what prompted deadly ambush of officer*, Associated Press (July 6, 2017), https://apnews.com/df9612916179426395033375ebf80491/Police-look-into-what-prompted-deadly-ambush-of-officer.

7.     In February 2018, a resident of Brooklyn, New York was arrested on charges of using a weapon of mass destruction, after attempting to send an explosive device to a member of the NYPD.  The perpetrator had found the officer's home address through an internet search as well as through various other legal processes, including civil litigation, but the address was off by a few numbers.  As a result, the bomb failed to reach the officer, and instead was delivered to and killed a neighbor when he opened the package.  Upon execution of a search warrant post-arrest, other explosive devices were found in various stages of construction, as well as documents demonstrating other NYPD officers may have been future targets.  (The Department of Justice's press release regarding this arrest and prosecution is attached to the Coles Declaration as Exhibit 14.)

8.     As a result of the ongoing dangers of police work combined with the many threats directed towards the lives of officers, and sometimes their families as well, the NYPD maintains a Threat Assessment and Protection Unit ("TAPU"), which is part of the Intelligence Bureau, whose purview includes investigating threats against police officers.  Between January 1, 2018 and September 9, 2018, the most current data that I have seen, there were a total of 231 Threats Cases received by TAPU.  In 2017, there were a total of 361 Threats Cases received. In 2016, there were a total of 428 Threats Cases received. The vast majority of these cases are against members of the NYPD, and these numbers are at least representative of the current period, and, based on my experience and awareness of the increasing prevalence of threats against officers, I would expect them to be considerably higher this year.

9.     As a reality, the concern for officer safety is only heightened by the release of Unsubstantiated and Non-Final Allegations.  During the New York State Senate hearings on the repeal of section 50-a, one local activist bluntly stated on the record: "Name a cop and I'll find

4

their address, phone numbers and relatives, I'll find them all on Google." (Coles Decl., Ex. 8 at 9 n.21.)  I am informed that the CCRB and NYPD intend to delete home addresses from the Unsubstantiated and Non-Final Allegations that are released in order to protect officer privacy and safety.  In this day and age, that is woefully inadequate, and an antiquated and ineffective means to protect safety.  An officer's full name can lead to the discovery of his/her home address through a simple internet search.  This puts officers and their families at increased risk of serious harm, including burglaries or robberies, since it literally gives driving directions right to the officer's front door.

10.    The vast majority of allegations against police officers are unproven, including more than 90% of allegations made to the CCRB - yet the indiscriminate release of Unsubstantiated and Non-Final Allegations predictably will increase the risk of hostility against officers, despite the fact that those allegations are unproven.  An analysis of the CCRB's own data base of the confidential disciplinary records of 81,000 police officers produced in discovery makes the point. *Over 92%* of the complaints CCRB proposes to publicly emphasize are baseless.

- **36.1% were "unsubstantiated"** because "there was insufficient evidence to establish whether or not there was an act of misconduct."

- **28.4% did not result in a disposition or are "truncated"** because "the Complainant withdrew the complaint," "the Complainant could not be reached or located," "the alleged victim could not be reached or located," "the participation of the Complainant was insufficient to enable the Board to conduct a full investigation," "Complainant Uncooperative," "Alleged Victim Uncooperative," "Alleged Victim Unidentified," or "Officer Unidentified."

- **19.2% were "exonerated"** because "there was a preponderance of the evidence that the acts alleged occurred but did not constitute misconduct."

- **9.0% were "unfounded"** because "there was a preponderance of the evidence that the acts alleged did not occur."

11.     In fact, CCRB allegations do not reflect final disciplinary determinations as a matter of law.  According to its rules, the CCRB may make recommendations to the NYPD, but the Police Commissioner is vested with the sole authority to make final disciplinary determinations; the CCRB has no such disciplinary authority.  (Rule 1-46 (b) of the Rules of the City of New York.)

12.     Recent media has made no distinction between allegations that have been proven and those that have not been proven.  It is arbitrary and dangerous for the Defendants to create a risk to safety of police officers by promoting and publishing unproven claims on the internet without any meaningful effort to analyze or consider the consequences.  The publication of Unsubstantiated and Non-Final Allegations against officers under these circumstances needlessly would present an imminent risk to safety.

JOSEPH ALEJANDRO

Sworn to before me this 14th day of
August, 2020

_____
NOTARY PUBLIC

DAVID M. NICHOLSON
NOTARY PUBLIC, STATE OF NEW YORK
No. 02NI6108881
COUNTY: ROCKLAND
COMMISSION EXPIRES 04/36/2024

7