## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Uniformed Fire Officers Association; Uniformed
Firefighters Association of Greater New York;
Correction Officers' Benevolent Association of the
City of New York, Inc.; Police Benevolent
Association of the City of New York, Inc.;
Sergeants Benevolent Association; Lieutenants
Benevolent Association; Captains Endowment
Association; and Detectives' Endowment
Association,

Petitioners/Plaintiffs,

- against -

20 Civ. 5441 (KPF)

Bill de Blasio, in his official capacity as Mayor of
the City of New York; the City of New York; Fire
Department of the City of New York; Daniel A.
Nigro, in his official capacity as the Commissioner
of the Fire Department of the City of New York;
New York City Department of Correction; Cynthia
Brann, in her official capacity as the Commissioner
of the New York City Department of Correction;
Dermot F. Shea, in his official capacity as the
Commissioner of the New York City Police
Department; the New York City Police Department;
Frederick Davie, in his official capacity as the Chair
of the Civilian Complaint Review Board; and the
Civilian Complaint Review Board,

Respondents/Defendants.

## BRIEF OF *AMICUS CURIAE* THE NEW YORK CIVIL LIBERTIES UNION
## IN SUPPORT OF RESPONDENTS/DEFENDANTS

LATHAM & WATKINS LLP
Jamie L. Wine
Lawrence E. Buterman
Samir Deger-Sen
(pro hac vice application forthcoming)
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

New York Civil Liberties Union Foundation
Michael Sisitzky
(pro hac vice application forthcoming)
Jordan Laris Cohen
Christopher Dunn
Molly K. Biklen
125 Broad Street,19th Floor
New York, N.Y. 10004
(212) 607-3300

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

INTEREST OF *AMICUS CURIAE*..........................................................................2

ARGUMENT ...........................................................................................................4

I.   THE LEGISLATURE EFFECTED A COMPLETE REPEAL
     OF SECTION 50-A ........................................................................................4

     A.   The Text of the Repeal Legislation Allows for Disclosure
          of Law Enforcement Disciplinary Records Regardless of
          Disposition.........................................................................................4

     B.   The Legislative Debates Demonstrate an Unambiguous
          Intent to Effectuate a Comprehensive Repeal ....................................5

     C.   The Legislature Considered—and Rejected—Competing,
          Narrower Proposals ............................................................................8

II.  NEW YORK PUBLIC POLICY BARS PLAINTIFFS FROM
     ASSERTING A CONTRACTUAL RIGHT TO SHIELD
     FROM SCRUTINY INFORMATION PROPERLY WITHIN
     THE SCOPE OF FOIL .................................................................................10

III. PLAINTIFFS FAIL TO ESTABLISH A LIBERTY INTEREST
     IN AVOIDING RELEASE OF PUBLIC RECORDS ON
     POTENTIAL MISCONDUCT OF POLICE OFFICERS IN
     THE LINE OF DUTY ..................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*159 MP Corp. v. Redbridge Bedford, LLC*,
  33 N.Y.3d 353 (2019) ................................................................................................. 10, 11

*390 W. End Assocs. v. Harel*,
  298 A.D.2d 11 (1st Dep't 2002) .......................................................................................... 12

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ............................................................................................................. 12

*Boss v. Kelly*,
  306 F. App'x 649 (2d Cir. 2009) ........................................................................................ 17

*Brandt v. Bd. Of Co-op. Educ. Servs.*,
  820 F.2d 41 (2d Cir. 1987) ................................................................................................. 17

*Bursac v. Suozzi*,
  22 Misc. 3d 328 (Sup. Ct. Nassau Cty. 2008) .............................................................. 17, 18

*Capital Newspapers, Div. of Hearst Corp. v. Whalen*,
  69 N.Y.2d 246 (1987) ........................................................................................................... 4

*City of New York v. 17 Vista Assocs.*,
  84 N.Y.2d 299 (1994) ......................................................................................................... 10

*DiBlasio v. Novello*,
  344 F.3d 292 (2d Cir. 2003) ............................................................................................... 16

*Filteau v. Prudenti*,
  161 F. Supp. 3d 284 (S.D.N.Y. 2016) ............................................................................... 16

*People ex rel. Fleming v. Dalton*,
  158 N.Y. 175 (1899) .............................................................................................................. 5

*Ford v. D.C. 37 Union Local 1549*,
  579 F.3d 187 (2d Cir. 2009) ............................................................................................... 10

*Gerry v. Volger*,
  252 A.D. 217 (4th Dep't 1937) ............................................................................................. 5

*Jewish Press, Inc. v. N.Y.C. Dep't of Educ.*,
    183 A.D.3d 731 (2d Dep't 2020)................................................................11, 12

*Kass v. Kass*,
    91 N.Y.2d 554 (1998) ........................................................................10

*Kennedy v. City of New York*,
    No. 12 Civ. 4166 (KPF), 2015 WL 6442237 (S.D.N.Y. Oct. 23,
    2015) .................................................................................................16

*Kraut v. Morgan & Brother Manhattan Storage Co., Inc.*,
    38 N.Y.2d 445 (1976) ........................................................................11

*Lee T.T. v. Dowling*,
    87 N.Y.2d 699 (1996) ........................................................................17

*Livson v. Town of Greenburgh*,
    141 A.D.3d 658 (2d Dep't 2016)........................................................13

*M. Farbman & Sons, Inc. v. N.Y.C. Health & Hosps. Corp.*,
    62 N.Y.2d 75 (1984) ..........................................................................12

*Morales v. Gross*,
    230 A.D.2d 7 (2d Dep't 1997) .............................................................5

*Mulligan v. City of New York*,
    194 Misc. 579 (Sup. Ct. N.Y. Cty. 1949), *aff'd*, 275 A.D. 795 (1st
    Dep't 1949) .........................................................................................9

*NYCLU v. Buffalo Police Dep't*
    Index No. I 40-2016 (Sup. Ct. Erie Cty.)..............................................3

*NYCLU v. N.Y.C. Police Dep't*,
    32 N.Y.3d 556 (2018) ..........................................................................3

*In re Patrolmen's Benevolent Ass'n of N.Y., Inc. v. N.Y. State Pub.
Emp't Relations Bd.*,
    6 N.Y.3d 563 (2006) ..........................................................................10

*Patterson v. City of Utica*,
    370 F.3d 322 (2d Cir. 2004) ...............................................................17

*Paul v. Davis,*
424 U.S. 693 (1976)..........................................................................................16

*People v. David W.,*
95 N.Y.2d 130 (2000)........................................................................................17

*Skandia America Reinsurance Corp. v. Schenck,*
441 F. Supp. 715 (S.D.N.Y. 1977) ...................................................................15

*Swinton v. Safir,*
93 N.Y.2d 758 (1999)........................................................................................17

*Valmonte v. Bane,*
18 F.3d 992 (2d Cir. 1994) ..........................................................................16, 17

*Victor v. Office of Admin. Trials & Hearings,*
Index No. 100890/15 (Sup. Ct. N.Y. Cty., June 4, 2018) ...................................3

*Weston v. Sloan,*
84 N.Y.2d 462 (1994)...................................................................................12, 13

## STATUTES

29 U.S.C. § 152(2) ....................................................................................................10

N.Y. Pub. Off. Law § 84 ...........................................................................................11

N.Y. Pub. Off. Law § 86(6)(d)....................................................................................4

N.Y. Pub. Off. Law § 89(2-b) .....................................................................................4

N.Y. Pub. Off. Law § 89(2-c) .....................................................................................5

## OTHER AUTHORITIES

Christopher Robbins et al., *Newly Released Data Shows 1 Out of
Every 9 NYPD Officers Has A Confirmed Record of Misconduct,*
Gothamist (July 28, 2020), https://gothamist.com/news/nypd-
police-ccrb-database-shows-confirmed-record-misconduct.............................15

*Hearing on S.3695 Before the N.Y. Senate Comm. on Codes*, 242nd N.Y. Leg. Sess., (Oct. 24, 2019) (statement of Oleg Chernyavsky, Assist. Deputy Comm'r, Legal Matters, NYPD), https://www.nysenate.gov/sites/default/files/oct_24th_public_heari ng_on_discovery_reform.pdf .................................................................................9

James O'Neill, *Let NYC See Police Records, now: We Must Reform State Law Keeping Disciplinary Actions Secret*, N.Y. Daily News, Feb. 7, 2019, https://www.nydailynews.com/opinion/ny-oped-let-nyc-see-police-records-now-20190207-story.html ...............................................9

Luis Ferré-Sadurní et al, *Defying Police Unions, New York Lawmakers Ban Chokeholds*, N.Y. Times, June 8, 2020 ...................................7

N.Y. Assembly, Floor Debate, 69, 243rd N.Y. Leg., Reg. Sess., (June 9, 2020), https://nystateassembly.granicus.com/DocumentViewer.php?file=n ystateassembly_e9af7a3d256bee2d470e331a2a0dd9ae.pdf&view= 1 ...................................................................................................................5, 6

N.Y. Senate Bill S4213, 243rd N.Y. Leg. Sess. .......................................................8

N.Y. Senate Bill S4215, 243rd N.Y. Leg. Sess. .......................................................8

N.Y. Senate Bill S8674, 243rd N.Y. Leg. Sess. .......................................................7

N.Y. Senate, Floor Debate, 1823, 243rd N.Y. Leg., Reg. Sess., (June 9, 2020), https://legislation.nysenate.gov/pdf/transcripts/2020-06-09T11%3A53 .................................................................................................6

N.Y. Senate-Assembly Bill S3398, A1685, 243rd N.Y. Leg. Sess. ..........................8

N.Y. Senate-Assembly Bill S4214, A2671, 243rd N.Y. Leg. Sess. ..........................8

NYCLU, *Mission Failure: Civilian Review of Policing in New York City 1994-2006* (2007) ...............................................................................3

NYCLU, *Report: Five Years of Civilian Review: A Mandate Unfulfilled* (1998) .........................................................................................4

NYCLU, *Testimony Before the New York State Senate Committee on Codes in Support of S.3695, Repealing Civil Rights Law Section 50-a*, Oct. 17, 2019, https://www.nyclu.org/sites/default/files/field_documents/final_testimony_for_senate_codes_50a_hearing_-_2019.10.17.pdf ................................. 3

Press Release, N.Y.C. Mayor, Mayor de Blasio Outlines Core Principles of Legislation to Make the Disciplinary Records of Law Enforcement and Other Uniformed Personnel Subject to Disclosure (Oct. 14, 2016), https://www1.nyc.gov/office-of-the-mayor/news/820-16/mayor-de-blasio-outlines-core-principles-legislation-make-disciplinary-records-law ........................................................ 9

**INTRODUCTION**

At a time when communities across the country are demanding stronger systems of accountability in response to the ongoing crisis of police killings of people of color, Plaintiffs by this lawsuit seek to subvert the will of New York's democratically-elected representatives, and impede their response to the unprecedented levels of public demonstrations and calls for reform. Central to these calls for reform was the repeal of section 50-a of the New York Civil Rights Law, which had erected a nearly impenetrable wall of secrecy around records of police misconduct and discipline in New York state. Plaintiffs advance a number of theories for why this court should negate these critical reforms and deny the public access to information on the systems entrusted with holding public officials accountable. While each of these theories lack merit, the New York Civil Liberties Union ("NYCLU") writes to address three specific areas about which we have particular expertise: namely, the legislature's unequivocal intent to effect a comprehensive repeal of section 50-a with respect to all law enforcement disciplinary records; New York's overriding public policy interest in such disclosure, which renders Plaintiffs' contractual arguments meritless; and the insufficiency of plaintiffs' due process claims.

Plaintiffs' central argument—that records of police misconduct and discipline should continue to be cloaked in secrecy—is one that has been heard and resoundingly rejected by the public and the legislature. After at least five years considering a wide range of 50-a related proposals, the legislature made a clear and unequivocal choice to fully repeal section 50-a and make *all* disciplinary records public, including in cases where the ultimate disposition was unsubstantiated, unfounded, exonerated, or not guilty, and in cases pending resolution. It is imperative that this Court uphold that legislative intent.

In an effort to continue to shield those disciplinary records from the public, Plaintiffs further misstate the provisions of their collective bargaining agreements and argue for their

enforcement in a manner that would plainly violate New York law as against public policy.  New York has a strong public policy favoring open government and public scrutiny of official misconduct.  This policy was reaffirmed through the repeal of section 50-a, and New York's Freedom of Information Law (FOIL) now clearly establishes that all allegations of government misconduct, including misconduct carried out by police officers, is subject to public disclosure.

And while the NYCLU champions the due process rights of all people, including government employees, plaintiffs fail to establish a due process right in avoiding disclosure of public records regarding potential misconduct of police officers in the line of duty.  That disclosure is not harmful to officers, and even if it were, plaintiffs do not identify a tangible interest other than reputational harm as is necessary to establish a "stigma-plus" claim.

Defendants are entitled to implement the letter and spirit of this new law by making such information available to the public.  Plaintiffs' resistance is nothing more than an attempt to undo a legislative process that produced a policy outcome with which they disagree.  They now seek to obtain in court the policy that they failed to convince the public and the legislature to embrace: namely, the continued, blanket secrecy for allegations of officer misconduct.  This court should permit defendants to give full effect to the legislature's clear and unambiguous intent and reject plaintiffs' arguments as violative of public policy.

## INTEREST OF *AMICUS CURIAE*

Amicus Curiae the NYCLU, the New York State affiliate of the American Civil Liberties Union, is a not-for-profit, non-partisan organization with more than 180,000 members and supporters.  The NYCLU's mission is to defend and promote civil rights and liberties as embodied in the United States Constitution, the New York state Constitution, and state and federal law.  Defending New Yorkers' rights to be free from discriminatory and abusive policing is a core component of that mission.  Protecting this right requires robust systems for investigating abusive

officers and holding them accountable.  To that end, the NYCLU long has been involved in efforts to challenge and ultimately repeal section 50-a of the New York Civil Rights Law, which had erected a nearly impenetrable wall of secrecy around records of police misconduct and discipline in New York state.

The NYCLU frequently has litigated issues concerning the application of section 50-a. *See, e.g., NYCLU v. N.Y.C. Police Dep't*, 32 N.Y.3d 556 (2018) (addressing application of section 50-a to NYCLU request for NYPD disciplinary decisions); *Victor v. Office of Admin. Trials & Hearings*, Index No. 100890/15 (Sup. Ct. N.Y. Cty., June 4, 2018) (amicus curiae in dispute addressing application of section 50-a to disciplinary decisions involving Department of Correction officers); *NYCLU v. Buffalo Police Dep't* Index No. I 40-2016 (Sup. Ct. Erie Cty.) (challenging the Buffalo Police Department's application of section 50-a to withhold use of force and firearm use reports).  The NYCLU also was deeply involved in the years-long legislative process concerning the repeal of section 50-a, testifying regularly at public hearings concerning relevant proposals and advocating with lawmakers in support of the June 2020 repeal legislation. *See, e.g.,* NYCLU, *Testimony Before the New York State Senate Committee on Codes in Support of S.3695, Repealing Civil Rights Law Section 50-a*, Oct. 17, 2019, https://www.nyclu.org/sites/default/files/field_documents/final_testimony_for_senate_codes_50a _hearing_-_2019.10.17.pdf.  The NYCLU has also long raised concerns about the need to more closely scrutinize the high rates at which oversight agencies do not substantiate allegations of police misconduct in order to assess the integrity and effectiveness of police accountability systems.  NYCLU, *Mission Failure: Civilian Review of Policing in New York City 1994-2006* (2007), (analyzing  CCRB's failures and making recommendations for improvements in order to

strengthen police accountability); NYCLU, *Report: Five Years of Civilian Review: A Mandate Unfulfilled* (1998) (same).

## ARGUMENT

### I.     THE LEGISLATURE EFFECTED A COMPLETE REPEAL OF SECTION 50-A

#### A.     The Text of the Repeal Legislation Allows for Disclosure of Law Enforcement Disciplinary Records Regardless of Disposition.

The legislature's repeal of section 50-a is sweeping.  The final legislation repealed 50-a in its entirety, with no disposition-based distinctions, and the plain text of the law clearly contemplates the disclosure of all records, not just those where the claims were "substantiated."  The legislature included within the definition of law enforcement disciplinary records, "any record created in furtherance of a law enforcement disciplinary proceeding, including, but not limited to: . . . the disposition of any disciplinary proceeding . . . ."  N.Y. Pub. Off. Law § 86(6)(d) (McKinney).  Plaintiffs' contention that only substantiated complaints may be disclosed would render this provision meaningless and must be rejected.  *See, e.g., Capital Newspapers, Div. of Hearst Corp. v. Whalen*, 69 N.Y.2d 246, 254 (1987) (noting the accepted principle of New York statutory construction that a statute should be interpreted so as to give effect to all of its provisions).  There would be little point in specifying "the disposition" so broadly if the legislature did not intend for disclosure to encompass a broader category of records than only substantiated complaints.

The legislature also plainly considered Plaintiffs' privacy arguments; it merely reached a different policy determination as to how to balance those concerns alongside the public's interest in transparency.  The repeal bill mandated the redaction of home addresses and personal contact information of officers, their families, complainants, and anyone named in a complaint; social security numbers; and medical information.  N.Y. Pub. Off. Law § 89(2-b) (McKinney).  It also

permitted withholding or redacting records of "technical infractions," defined as minor rule violations of little public interest.  *Id.* § 89(2-c).  That the legislature utilized such narrow and precise language in recognition of officer privacy concerns clearly suggests an intent to apply those exemptions narrowly and with precision.

Plaintiffs' chief objection appears to be less the extent of now-permitted disclosures, and more that the legislature passed anything at all.  During the floor debate, the bill's sponsor, Assemblymember O'Donnell, stated, "I've had this legislation for five years, and I have had hundreds and hundreds of hours of conversations about 50-a and about my belief that it needs to be repealed, and different proposals with different language to do so.  At no time did any police PBA offer any suggestions other than, *No, we can't repeal it*."  N.Y. Assembly, Floor Debate, 69, 243rd N.Y. Leg., Reg. Sess., (June 9, 2020), https://nystateassembly.granicus.com/DocumentViewer.php?file=nystateassembly_e9af7a3d256 bee2d470e331a2a0dd9ae.pdf&view=1.  If Plaintiffs wanted to try to limit which records can be disclosed, the venue for making that case would have been the legislature.  Instead, they seek to litigate in court a policy disagreement.

## B.     The Legislative Debates Demonstrate an Unambiguous Intent to Effectuate a Comprehensive Repeal

To the extent there is any ambiguity in the text of the legislation (there is not), New York courts may examine records of legislative debate in order to discern and give effect to the legislature's intent.  *See, e.g., Morales v. Gross*, 230 A.D.2d 7, 10 (2d Dep't 1997); *Gerry v. Volger*, 252 A.D. 217, 221(4th Dep't 1937) (citing *People ex rel. Fleming v. Dalton*, 158 N.Y. 175, 184 (1899)).  It is impossible to read the transcripts of the New York State Assembly and Senate floor debates and discern anything other than the legislature's clear intent to fully repeal

section 50-a in such a way as to allow public release of unsubstantiated, unfounded, and exonerated records.

In response to a question as to whether the bill distinguished between substantiated and unsubstantiated complaints, Assemblymember O'Donnell, stated clearly, "And so, no, we don't distinguish between those two things in this law."  Assembly Floor Debate, *supra* at 61.  In expressing his support for the legislation, Assemblymember Ramos noted the value of unsubstantiated complaints in establishing patterns of misconduct and in identifying officers "[w]ho might be a problem and who might be a risk to the public[.]" *Id.* at 100.  Assemblymember Abinanti similarly noted the value in examining such patterns.  *Id.* at 205–06.  Assemblymember Bichotte, in voicing her support for the legislation, said, "I'm happy to know that unsubstantiated will be also open to the public." *Id.* at 198.  Assemblymember Mosely remarked how the bill will allow the public to uncover "whether police departments have ignored repeated patterns of complaints about officers."  *Id.* at 152.  Whether such complaints were ignored could only be uncovered by reviewing and analyzing records beyond just substantiated complaints.

In the Senate, Senator Salazar expressed her support for the legislation, noting that the release of these records would mean that "[p]olice departments will no longer be able to conceal whether or not they knew about previous excessive-force complaints in their too-frequent attempts to avoid responsibility."  N.Y. Senate, Floor Debate, 1823, 243rd N.Y. Leg., Reg. Sess., (June 9, 2020), https://legislation.nysenate.gov/pdf/transcripts/2020-06-09T11%3A53.  Senator Sepúlveda pointed out one of the core reasons for making unfounded records public in declaring his support for the bill: "[Unfounded or not founded] is really an accurate measure of how the department and the hearing examiner wants to find at the end of the day for the police officer.  And I can tell that it's equally unfair to the police officer."  *Id.* at 1857.  Senate Majority Leader Andrea Stewart-

Cousins also clarified that these disclosures were intended, saying, "If I've got 20 accusation of excessive force that are unsubstantiated, that's got to be a red flag, one way or the other . . . .  We can no longer afford complaint after complaint built up on your record and then nobody does anything about it.  That's over."[1]

Even those opposed to the bill made unequivocally clear their understanding that it would allow for disclosure of all disciplinary records, regardless of disposition.  These legislators noted that they were voting to oppose the legislation *because* it would allow for disclosure of all complaints.  *See* N.Y. Assembly, *supra* at 132, 167, 243, 221, 241 (statements of Assemblymembers Fitzpatrick, Garbarino, Goodell, and Reilly); N.Y. Senate, *supra* at 1797, 1836, 1850 (statements of Senators Akshar, Borrello, and Gallivan).  One senator opposed to the repeal subsequently introduced a bill to provide for the mandatory redaction of unsubstantiated and unfounded allegations,[2] legislation that would be entirely unnecessary if the repeal legislation did not make such records available.

The release of these records, whether through a database as envisioned by defendants or in response to public records requests,[3] would be consistent with the text of the statute and the

---

[1] Luis Ferré-Sadurní et al, *Defying Police Unions, New York Lawmakers Ban Chokeholds*, N.Y. Times, June 8, 2020, https://www.nytimes.com/2020/06/08/nyregion/floyd-protests-police-reform.html.

[2] *See* N.Y. Senate Bill S8674, 243rd N.Y. Leg. Sess.

[3] Plaintiffs note a recent advisory opinion from the Committee on Open Government concerning one such public records request (*see* Dkt. No. 30), which is inapposite and ignores the clear and unequivocal intent of the legislation. In any event, the main import of that decision was its statement that "an agency *may, but not must*, withhold as exempt a record meeting the criteria for such exemption . . . when allegations or charges of misconduct have not yet been determined or did not result in disciplinary action, the records relating to such allegations *may* in our view be withheld . . . ." *Id* at 3.  (emphasis added).  This opinion, therefore, supports Defendants' position that agencies are  permitted to release disciplinary records in cases that are pending or otherwise not substantiated.

legislature's clearly established intent, and it also would constitute a clear fulfilment of that intent by maximizing the public's ability to assess the integrity of police disciplinary investigations.

### C.    The    Legislature    Considered—and    Rejected—Competing,    Narrower Proposals

Beyond the text of the legislation and the views expressed by lawmakers, the legislature's intent to fully repeal section 50-a with respect to all disciplinary records is further evidenced by the fact that lawmakers easily could have pursued a narrower approach.  Instead, the legislature made a deliberate decision to advance the farthest-reaching proposal before them.

The final repeal measure was not the only relevant bill pending before the legislature.  In the 2019–2020 session, it was one of at least five 50-a related bills.[4]  These bills would have left in place section 50-a's broad secrecy mandate, while creating exceptions for limited disclosure. The most detailed of these bills, S4213, would have allowed for the release of narrow categories of records depending on the type or severity of misconduct alleged, but only where allegations were substantiated.  *See* N.Y. Senate Bill S4213, 243rd N.Y. Leg. Sess.  The de Blasio Administration had also put forth broad policy outlines—falling far short of full repeal—as early

---

[4] These included proposals to allow civilian review boards to seek a court order authorizing release of certain records (N.Y. Senate-Assembly Bill S4214, A2671, 243rd N.Y. Leg. Sess.), narrow the scope of 50-a's definition of personnel records (N.Y. Senate Bill S4215, 243rd N.Y. Leg. Sess.), and exclude video recordings from the definition of personnel records (N.Y. Senate-Assembly Bill S3398, A1685, 243rd N.Y. Leg. Sess.).

as 2016 that closely tracked with this last proposal.[5]  These principles were supported by the NYPD in subsequent media and legislative testimony.[6]

The legislature's consideration of—and decision not to advance—S4213 or the near identical policies outlined by the de Blasio Administration and the NYPD reflects a rejection of the arguments made in support: that limiting release to only these narrower, substantiated allegations struck the appropriate balance between transparency and officer privacy.[7]  The legislature had ample opportunity to consider these arguments,[8] and made a reasoned policy choice favoring the stronger public interest in transparency and rejecting the policies reflected in competing, but failed, legislative proposals. *See, e.g., Mulligan v. City of New York*, 194 Misc. 579, 581 (Sup. Ct. N.Y. Cty. 1949) (discerning the legislature's intent by distinguishing the language enacted by the legislature from that of similar legislative proposals that failed passage), *aff'd,* 275 A.D. 795 (1st Dep't 1949).

---

[5] *See* Press Release, N.Y.C. Mayor, Mayor de Blasio Outlines Core Principles of Legislation to Make the Disciplinary Records of Law Enforcement and Other Uniformed Personnel Subject to Disclosure (Oct. 14, 2016), https://www1.nyc.gov/office-of-the-mayor/news/820-16/mayor-de-blasio-outlines-core-principles-legislation-make-disciplinary-records-law.

[6] *See Hearing on S.3695 Before the N.Y. Senate Comm. on Codes*, 242nd N.Y. Leg. Sess., (Oct. 24, 2019) (statement of Oleg Chernyavsky, Assist. Deputy Comm'r, Legal Matters, NYPD), https://www.nysenate.gov/sites/default/files/oct_24th_public_hearing_on_discovery_reform.pdf; James O'Neill, *Let NYC See Police Records, now: We Must Reform State Law Keeping Disciplinary Actions Secret*, N.Y. Daily News, Feb. 7, 2019, https://www.nydailynews.com/opinion/ny-oped-let-nyc-see-police-records-now-20190207-story.html.

[7] *See id.*

[8] Indeed, an earlier version of S4213 was first introduced in 2017 (S6826).

## II.  NEW YORK PUBLIC POLICY BARS PLAINTIFFS FROM ASSERTING A CONTRACTUAL RIGHT TO SHIELD FROM SCRUTINY INFORMATION PROPERLY WITHIN THE SCOPE OF FOIL

New York public policy bars Plaintiffs' attempts to assert provisions of their collective bargaining agreements ("CBAs") as a shield against the disclosure of disciplinary records.  At bottom, Plaintiffs' argument is that provisions of their CBAs bar Defendants from disclosing to the public any and all complaints of official misconduct against officers, unless the relevant allegations have been proven by a "preponderance of evidence" in an internal investigation.  *See* Compl. ¶¶ 43, 45, 47.  That theory grossly distorts the text of the CBAs at issue, which provide for no such limitation.  *See infra* at 13–14.  But, even if the CBAs did contain such an extraordinary provision, they would be plainly unenforceable as against public policy.

Under New York law, a "contractual provision [is] unenforceable where the public policy in favor of freedom of contract is overridden by another weighty and countervailing public policy." *159 MP Corp. v. Redbridge Bedford*, *LLC*, 33 N.Y.3d 353, 360 (2019) (citation omitted); *see also Kass v. Kass*, 91 N.Y.2d 554, 565 n.4 (1998) ("Parties' agreements may, of course, be unenforceable as violative of public policy").[9]  Accordingly, a "City is restricted from bargaining and agreeing to schemes or arrangements beyond public policy and procedures prescribed by the law." *City of New York v. 17 Vista Assocs.*, 84 N.Y.2d 299, 306 (1994).  Any such agreement is void ab initio.  *See In re Patrolmen's Benevolent Ass'n of N.Y., Inc. v. N.Y. State Pub. Emp't Relations Bd.*, 6 N.Y.3d 563, 573 (2006) (holding that CBA provision was invalid because "public policy bars enforcement of a provision in a collective bargaining agreement that would limit the

---

[9] Plaintiffs' arguments regarding the CBA are subject to state, not federal, law because the defendants are political subdivisions exempt from Section 301 of the Labor Management Relations Act. *See* 29 U.S.C. § 152(2) (exempting from the definition of employer "any State or political subdivision thereof"); *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) ("As the language of the LMRA makes plain, public employees are not covered by that statute.").

power of the New York City Department of Investigation to interrogate city employees in a criminal investigation") (citation omitted).

"Although 'public policy' is a vague term, it 'is to be ascertained by reference to the laws and legal precedents." *Kraut v. Morgan & Brother Manhattan Storage Co., Inc.*, 38 N.Y.2d 445, 451–52 (1976). New York's FOIL reflects the State's strong public policy in favor of open government and public scrutiny of official misconduct. FOIL was enacted to promote a "free society," which "is maintained when a government is responsive and responsible to the public, and when the public is aware of governmental actions," promoting a "more open [] government," which, in turn, allows the public to have a "greater [] understanding and participation . . . in government." N.Y. Pub. Off. Law § 84 (McKinney). And, as discussed above, in voting to repeal the New York State Civil Rights Law § 50-a, the legislature made clear that the State's public policy favors disclosure of all allegations of official misconduct, including those by police officers.

Under Plaintiffs' theory, however, the terms of their CBAs prohibit dissemination of information that is otherwise subject to public disclosure under FOIL. *See* Compl. ¶¶ 5, 52–55. Reading the contracts in such a manner would significantly impair New York's strong public policy in favor of open government, and thus render the relevant provisions unenforceable.

Importantly, this is not a case where the Court needs to "balanc[e]" "the public interests favoring invalidation" against the "strong public policy interest in" "freedom of contract." *159 MP Corp. v. Redbridge Bedford, LLC,* 33 N.Y.3d 353, 360–61 (2019). That is because the rights that purportedly have been bargained away here are not those of Defendants but those *of the public*—which Defendants have no "freedom" to contract away in the first place. FOIL "is based on the policy that '*the public* is vested with an inherent right to know and that official secrecy is anathematic to our form of government.'" *Jewish Press, Inc. v. N.Y.C. Dep't of Educ*., 183 A.D.3d

11

731, 731-32 (2d Dep't 2020) (citation omitted); *Weston v. Sloan*, 84 N.Y.2d 462, 465 (1994) ("[T]he general principle underlying FOIL [is] the presumption that the records of government should be accessible to the public under the public's inherent right to know the processes of government decision-making."); *M. Farbman & Sons, Inc. v. N.Y.C. Health & Hosps. Corp.*, 62 N.Y.2d 75, 80 (1984) ("Full disclosure by public agencies is, under FOIL, a public right and in the public interest, irrespective of the status or need of the person making the request.").  FOIL thus creates a public *right* to access information about allegations of official misconduct, which Plaintiffs seek to impair via contract.  But it is well-settled that entities cannot enter into contracts that would bargain away the statutory rights of third parties.  *See 390 W. End Assocs. v. Harel*, 298 A.D.2d 11, 16 (1st Dep't 2002) (landlord and tenant could not contract to exempt apartment from rent stabilization laws because "[t]he goal of ensuring an adequate supply of affordable housing 'is frustrated when landlords and tenants attempt to contract around the regulated rent[s]") (citation omitted); *cf. Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211–12 (1985) (noting the established principle that "parties to a collective-bargaining agreement [cannot] contract for what is illegal under state law").[10]

Moreover, any effort by Defendants to bargain away the rights created by FOIL would be particularly impermissible, because FOIL is directed at *Defendants themselves*.  The law is designed to ensure both that public officials *and government agencies* are properly subject to

---

[10] And if the applicable CBA provisions do not—because they cannot—bar Defendants from providing the relevant information in response to a FOIL request, they likewise cannot bar Defendants from releasing that same information voluntarily.  The public's right to disclosure extends to information *subject to* disclosure under FOIL—not merely information that happens to have been requested through the FOIL process.  *Jewish Press, Inc. v. N.Y.C. Dep't of Educ.*, 183 A.D.3d 731, 731–32 (4th Dep't 2020) (describing the relevant right as the "right to know" relevant information about the government, not merely the right to petition the government for information).

public scrutiny. *Livson v. Town of Greenburgh*, 141 A.D.3d 658, 659–60 (2d Dep't 2016) (FOIL "was enacted 'to promote open government and public accountability,' and 'imposes a broad duty on government to make its records available to the public'") (citations omitted); *Weston*, 84 N.Y.2d 462 at 465 ("In the legislative declaration the act noted that 'a free society is maintained when government is responsive and responsible to the public' and that 'it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible.' We have consistently interpreted the statute liberally to implement these broad purposes.") (citations omitted). Defendants cannot lawfully "contract out" of an imposition the legislature placed on *them* by agreeing with their employees to refuse to abide by applicable provisions of FOIL. Indeed, taken to its logical conclusion, Plaintiffs' theory must be that government employers can agree in their CBAs to simply refuse to honor FOIL requests across the board—and presumably opt out of all kinds of other state laws too. That cannot be correct.[11]

In short, Plaintiffs' argument that the CBAs prohibit disclosure of information properly subject to FOIL is patently meritless. Such a limitation would squarely violate New York public policy and settled law prohibiting the impairment of statutory rights. Plaintiffs' argument should be dismissed on that ground alone.

---

[11] For this reason, Plaintiffs' focus on whether the relevant allegations have been "substantiated" is likewise misplaced. *See* Compl. ¶ 1 (defining "Unsubstantiated and Non-Final Allegations" to include "non-final, unsubstantiated, unfounded, exonerated, or [those that] resulted in a finding of not guilty.") It is no answer that the disclosures here concern instances where, following an *internal* departmental review, an employing agency has declined to discipline an officer. The very reason why public scrutiny is so vital in this context is to ensure the adequacy of those very internal processes, and ensure that allegations of misconduct are being treated in a serious and even-handed way.

Furthermore, and in any event, Plaintiffs' reading of the CBAs as creating a sweeping restriction on public dissemination of allegations of misconduct is simply wrong. The CBA provisions do no such thing.

Plaintiffs point to provisions of the CBAs which provide for (1) "remov[al] from *the Personnel Folder* [of] investigative reports which, upon completion of the investigation are classified 'exonerated' and/or 'unfounded,'"[12] and (2) "expunge[ment] from the member's *personnel folder* after one year if they have not been penalized thereafter in a separate disciplinary matter during that time."[13] But those provisions say nothing at all about disclosure of official complaints to the public.

Plaintiffs argue that disclosing allegations of misconduct "would functionally negate the rights of officers to clear their disciplinary records of unfounded and unsubstantiated allegations, where that information would forever be publicly available in the future." Compl. ¶ 56. But the Unions did not bargain for the extraordinary "right" to ensure that all allegations of misconduct never see the light of day; they simply bargained for the removal of certain allegations from "personnel folder[s]." And Plaintiffs' complaint itself makes clear that such "personnel records are used for future promotions and job transfers"—that is, for the *internal* evaluation of officer performance. Compl ¶¶ 55, 57. The CBA provisions that the Unions point to are plainly directed

---

[12] Compl. at ¶ 53 (emphasis added); *see also* SBA CBA, Art. XV, § 7(c); PBA CBA XVI, § 7(c); LBA CBA Art. XVI, §7(c); CEA CBA Art. XIV, § 6(c); COBA CBA Art. XVI, § 11, DOC Directive 4257R-A, VI(6) and X; Union Mem. of Law in Supp. of Pet., ("Union Mem.") at 12 (Dkt. 10-12).

[13] Compl. at ¶ 55 (emphasis added); *see also* SBA CBA, Art. XV, § 8; PBA CBA, Art. XVI, § 8; LBA CBA, Article XVI, § 8; COBA CBA Art. XVI, § 11, DOC Directive 4257R-A, VI(6) and X, a violation of which may be grieved; Union Mem. at 12.

toward such evaluations, and accordingly do not bar Defendants from releasing allegations of misconduct to the public.

In short, even on their own terms, the Unions' CBA-based arguments are meritless and should be rejected.[14]

## III. PLAINTIFFS FAIL TO ESTABLISH A LIBERTY INTEREST IN AVOIDING RELEASE OF PUBLIC RECORDS ON POTENTIAL MISCONDUCT OF POLICE OFFICERS IN THE LINE OF DUTY

The NYCLU, as an organization dedicated to vindicating the civil rights and civil liberties of all persons, fully supports the notion that the Due Process Clause protects all people—including, critically, government employees—from certain government action that can damage them. But those protections are not implicated in this case, which involves government agencies providing information in response to open records requests regarding the conduct of government officials, and specifically officials authorized to use deadly force.

The information at issue here is not damaging to police officers,[15] and, even if it were, plaintiffs' due process claims would still fail because they do not establish a liberty interest

---

[14] Plaintiffs also purport to rely to certain settlement agreements signed by certain officers with Defendants. Plaintiffs do not appear to assert that these settlement agreements *themselves* contain any applicable confidentiality provisions; instead, they argue that because the agreements were signed "against the backdrop of Civil Rights Law § 50-a, which required that the disciplinary files be kept confidential," Section 50-a should be deemed "a part of the contract." Compl. ¶ 65. The notion that *all* laws "in force at the time" a contract is signed (even if not referenced in the contract itself) should be deemed "part of the contract"—and binding on a counterparty—is utterly nonsensical. Union Mem. at 21. The only authority Plaintiffs cite for that radical proposition is *Skandia America Reinsurance Corp. v. Schenck*, 441 F. Supp. 715, 724 (S.D.N.Y. 1977); but there the court merely interpreted an ambiguous provision in a contract in light of then-applicable state law. Here, Plaintiffs do not rely on any provision of the settlement agreements themselves; rather, they argue all repealed laws that constitute the "backdrop" for an agreement are forever binding on the parties. This Court should reject that absurd argument out of hand.

[15] Many officers with numerous complaints have in fact been *promoted* despite those records. *See, e.g.*, Christopher Robbins et al., *Newly Released Data Shows 1 Out of Every 9 NYPD*

implicated by defendants' release to the public of disciplinary records regarding potential misconduct in the line of duty.  Loss of reputation alone is insufficient to invoke the procedural protections of the Due Process Clause.  *Paul v. Davis*, 424 U.S. 693, 702–12 (1976).  In so-called "stigma-plus" claims, courts have recognized a protected liberty interest in "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus)."  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).  Plaintiffs contend that the "plus" is satisfied here by the potential loss of employment or future employment opportunities caused by the release of disciplinary records.  But that argument is plainly foreclosed by Second Circuit precedent.  *See Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994); *Filteau v. Prudenti*, 161 F. Supp. 3d 284, 295 (S.D.N.Y. 2016) (Engelmayer, J.) (noting that "[u]nder settled doctrine," plaintiff's "claim of diminished job prospects is insufficient to support a claim of injury to a protected liberty interest"); *Kennedy v. City of New York*, No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *14 (S.D.N.Y. Oct. 23, 2015).

In *Valmonte*, the Second Circuit concluded that "the deleterious effects which flow directly from a sullied reputation," including "*the impact that defamation might have on job prospects*," are insufficient to establish a protected liberty interest.  18 F.3d at 1001 (emphasis added).  The court nevertheless held that the plaintiff there established a tangible interest in prospective employment in her chosen field because of a state statute specifically requiring childcare employers to check applicants against the registry, and requiring employers who hired people on the registry "to explain the reasons why in writing" to the state.  *Id.*  Only because of this "statutory

---

*Officers Has A Confirmed Record of Misconduct*, Gothamist (July 28, 2020),
https://gothamist.com/news/nypd-police-ccrb-database-shows-confirmed-record-misconduct.

impediment," which "by *operation of law*" prevented the plaintiff from employment in her chosen field, did the court hold loss of job prospects sufficient to establish a liberty interest. *Id.* (emphasis in original); *cf. Lee T.T. v. Dowling*, 87 N.Y.2d 699, 703 (1996) (concluding under New York Due Process Clause that plaintiff established liberty interest as to same statutory scheme, and noting consistency with *Valmonte*).

Plaintiffs do not cite any cases in which courts have found potential loss of employment or job opportunities constitute a tangible interest giving rise to due process protection.  In the majority of the cases they rely on, the "plus" was termination from government employment—not speculation that the plaintiffs might be fired or lose future job opportunities.  *See Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004); *Swinton v. Safir*, 93 N.Y.2d 758, 763 (1999); *Brandt v. Bd. Of Co-op. Educ. Servs.*, 820 F.2d 41, 44 (2d Cir. 1987); *see also Boss v. Kelly*, 306 F. App'x 649, 651 (2d Cir. 2009) (noting that under *Valmonte* loss of "job prospects" is insufficient, and concluding that plaintiff police officer failed to satisfy "plus" element where he did "not allege that he was terminated").  In *People v. David W.*, 95 N.Y.2d 130 (2000), which involved a due process challenge to a state statute classifying and publicizing a private person on a sex-offender registry, the "plus" included the fact that classification entailed "affirmative obligations" to register every 90 days with local law enforcement and "promptly advise of changes in address," as well as publication of a person's photograph, home address, and phone number.  *Id.* at 137.  That case provides no support for plaintiffs' contention that potential loss of employment or job opportunities is sufficient.

Plaintiffs' extensive reliance on *Bursac v. Suozzi*, 22 Misc. 3d 328, 340 (Sup. Ct. Nassau Cty. 2008), is similarly misplaced.  In that case a woman who was arrested on DUI charges that were dismissed following urine test results brought a due process challenge to her inclusion on a

county "Wall of Shame" website, which published her name, mugshot, the allegations, and other "identifying information" that led to her receipt of several phone calls and e-mails. *Id.* at 330–31. The state trial court concluded that the county's permanent online publication of that information implicated a liberty interest. *Id.* at 336–42. The facts here are starkly different: the records at issue involve the actions of public officials in the line of duty, rather than criminal allegations against private persons; disclose the outcome of the agency review process, rather than simply disclose the fact of allegations with an automatic suggestion of guilt ("shame"); and do not include photos or private contact information. *Valmonte* and its progeny make clear that, under the facts of this case, plaintiffs have no due process claim.

Dated:  August 14, 2020
      New York, New York

Respectfully submitted,

New York Civil Liberties Union Foundation

s/ Jamie L. Wine_____
Jamie L. Wine

/s/ Christopher Dunn_____
Christopher Dunn

LATHAM & WATKINS LLP
Jamie L. Wine
Lawrence E. Buterman
Samir Deger-Sen
(pro hac vice application forthcoming)
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile: (212) 751-4864

New York Civil Liberties Union Foundation
Michael Sisitzky
(pro hac vice application forthcoming)
Jordan Laris Cohen
Christopher Dunn
Molly K. Biklen
125 Broad Street,19th Floor
New York, N.Y. 10004
(212) 607-3300

*Attorneys for Amicus Curiae New York Civil Liberties Union*

18