**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
UNIFORMED FIRE OFFICERS ASSOCIATION, et al.,  :
         :
        *Plaintiffs,*  :
         :  No. 1:20-cv-05441 (KPF)
     v.  :
         :
DE BLASIO, et al.,  :
         :
        *Defendants.*  :
         :
------------------------------------------------------------------------X

# MEMORANDUM OF LAW OF *AMICUS CURIAE* CENTER ON RACE, INEQUALITY, AND THE LAW AT NEW YORK UNIVERSITY SCHOOL OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Charlita Mays
Cynthia Chen
SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010
Tel: (212) 213-6996
*Attorneys for Amicus Curiae Center on Race, Inequality, and the Law at NYU School of Law*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

RELEVANT FACTUAL BACKGROUND....................................................................... 2

    History of Section 50-a of the Civil Rights Law ................................................. 2

    Repeal of Section 50-a .......................................................................................... 3

    Overview of CCRB................................................................................................. 4

ARGUMENT ................................................................................................................ 5

I.    The Court Should Lift the Temporary Restraining Order
    and Deny the Motion For a Preliminary Injunction........................................... 5

    A.    Legal Standard ......................................................................................... 5

    B.    Plaintiffs Fail to Show a Risk of Irreparable Harm ............................... 6

        1.    Plaintiffs' Delay in Seeking Relief Prevents a
            Finding of Irreparable Harm ....................................................... 6

        2.    Plaintiffs' Alleged Potential Injuries Do Not
            Support a Finding of Irreparable Harm....................................... 7

    C.    Plaintiffs Cannot Demonstrate a Likelihood of Success
        on the Merits Regarding the Release of CCRB Records ....................... 8

        1.    The Release of CCRB Records Does Not Violate Plaintiffs'
            Federal or State Constitutional Due Process Rights ................... 8

            a.    Release of Information Concerning Complaints CCRB
                Found Unfounded or Exonerated is Not Derogatory.................... 10

            b.    Release of Information Concerning Complaints CCRB
                Found Substantiated or Unsubstantiated Do Not Cause Injury
                Adequate to Support a Stigma Plus Due Process Claim............... 11

            c.    Even if the Release of CCRB Records Implicate a Liberty Interest
                Protected by Due Process the CCRB's Investigative Process
                Provides Adequate Due Process Protections to Officers ............. 14

2.      Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits of Their Equal Protection Claims ................................................................. 17

3.      Plaintiffs Are not Likely to Succeed on Their Claims That it is an Error of Law to Release CCRB Records and That Defendants' Decision to Release CCRB Records Following the Repeal of 50-a was Arbitrary and Capricious .............................................................................................. 18

        a.      The Decision to Release CCRB Records is not an Error of Law . 19

        b.      The Decision to Release CCRB Records is Not Arbitrary and Capricious .................................................................................... 20

D.      The Balance of Equities Favors Defendants Because Lifting the Temporary Restraining Order is in the Public Interest ............................................. 22

CONCLUSION ...................................................................................................... 25

## **TABLE OF AUTHORITIES**

### **Cases**

*Able v. United States,*
    155 F.3d 628 (2d Cir. 1998)......................................................................17

*Bd. of Educ. of the Middletown Enlarged City School Dist. v. Douglas,*
    4305/06, 2006 WL 6851993 (N.Y. Sup. Ct. July 07, 2006) ....................7

*Brandt v. Bd. of Coop. Educ. Servs,*
    820 F.2d 41 (2d Cir. 1987)......................................................................12

*Bursac v. Suozzi,*
    22 Misc.3d 328 (Sup. Ct. 2008)..............................................................14

*Citibank, N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir. 1985)......................................................................6

*Columbia-Greene Beauty Sch., Inc. v. City of Albany,*
    995 N.Y.S.2d 340 (1st Dep't 2014) ..........................................................2

*Daily Gazette Co. v. City of Schenectady,*
    93 N.Y.2d 145 (1999) ................................................................................2

*Data Tree, LLC v. Romaine,*
    9 N.Y.3d 454 (2007) ................................................................................18

*Doe v. Greco,*
    405 N.Y.S.2d 801 (1978) ..........................................................................7

*Gambale v. Deutsche Bank AG,*
    377 F.3d 133 (2d Cir. 2004)......................................................................6

*Gannett Co. v. James,*
    447 N.Y.S.2d 781 (4th Dep't 1982)..........................................................2

*Hepps v. New York State Dep't of Health,*
    122 N.Y.S.3d 446 (2020)........................................................................19

*Lee TT. v. Dowling,*
    87 N.Y. 2d 699 (1996) ..................................................................... passim

*Local 1159 of Counsel 4 AFSCME, AFL-CIO v. City of Bridgeport,*
    435 F. Supp. 3d 400 (D. Conn. 2020)...............................................7, 23

*Majorica, S.A. v. R.H. Macy & Co.*,
  762 F.2d 7 (2d Cir. 1985) ............................................................................ 6

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................... 15

*McGinnis v. Royster*,
  410 U.S. 263 (1973) ................................................................................... 17

*Miller v. DeBuono*,
  90 N.Y.2d 783 (1997) .......................................................................... 15, 16

*Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York*,
  928 N.Y.S.2d 701 (1st Dep't 2011) ........................................................... 18

*Myers v. Schneiderman*,
  30 N.Y.3d 1 (2017) .................................................................................... 17

*New York Civil Liberties Union v. City of Schenectady*,
  761 N.Y.S.2d 704 (3rd Dep't 2003) ............................................................. 2

*Novus Partners, Inc. v. Vainchenker*,
  938 N.Y.S.2d 228 (Sup. Ct. 2011) ............................................................... 7

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*,
  769 F.3d 105 (2d Cir. 2014) ......................................................................... 5

*Paloger v. Cohen*,
  964 N.Y.S.2d 61 (Sup. Ct. 2012) ................................................................. 7

*Patterson v. City of Utica*,
  370 F.3d 322 (2d Cir. 2004) ............................................................... 9, 11, 12

*Paul v. Davis*,
  424 U.S. 693 (1976) ............................................................................. 10, 12

*Peck v. Montefiore Med. Ctr.*,
  987 F. Supp. 2d 405 (S.D.N.Y. 2013) .......................................................... 7

*People v. David W.*,
  95 N.Y.2d 130 (2000) .......................................................................... 13, 15

*Plaza Health Labs., Inc. v. Perales*,
  878 F.2d 577 (2d Cir. 1989) ......................................................................... 5

*R.R. P.B.A. of State of New York, Inc. v. Metro-N. Commuter R.R.*,
    699 F. Supp. 40 (S.D.N.Y. 1988) ........................................................................6

*Sadallah v. City of Utica*,
    383 F.3d 34 (2d Cir. 2004) .....................................................................9, 10, 11

*Swinton v. Safir*,
    93 N.Y.2d 758 (1999) ...............................................................................13

*U.S. R.R. Ret. Bd. v. Fritz.*,
    449 U.S. 166 (1980) .................................................................................17

*Valmonte v. Bane*,
    18 F.3d 992 (2d Cir. 1994) ................................................................ passim

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................23

## Statutes

N.Y. Civil Rights Law § 50-a ......................................................... passim

N.Y. C.P.L.R. § 7803 ........................................................................18

N.Y. Pub. Off. Law § 87 ....................................................................19

N.Y. Pub. Off. Law § 89 ....................................................................19

## Legislative Materials

N.Y. Senate Bill S8496.................................................................. passim

## Other Authorities

CCRB, *CCRB Case Outcomes,*
    https://www1.nyc.gov/site/ccrb/investigations/case-outcomes.page ........................................4

CCRB, *CCRB Report on Youth and Police,* (June 2020),
    https://www1.nyc.gov/site/ccrb/investigations/case-outcomes.page .......................................15

Comm. on Open Gov't, *2018 Report to the Governor and State Legislature* (Dec. 2018),
    https://www.dos.ny.gov/coog/pdfs/2018%20Annual%20Report.pdf................................20, 24

Comm. on Open Gov't, *Celebrating 40 Years of the Freedom of Information Law and the Committee on Open Government … More to Be Done* (Dec. 2014), https://www.dos.ny.gov/coog/pdfs/2014AnnualReport.pdf .....................................................2

Cynthia H. Conti-Cook, *Defending the Public: Police Accountability in the Courtroom,* 46 SETON HALL L. REV. 1063 (2016)..........................................................................................3

Jake Bittle, *The State Legislature May Repeal 50-a. Here's What That Means*, QUEENS DAILY EAGLE (June 4, 2020), https://queenseagle.com/all/50a-repeal-new-york-police-records-queens..............................20

James O'Neill, *Let NYC See Police Records, Now*, NEW YORK DAILY NEWS (Feb. 7, 2019) https://www.nydailynews.com/opinion/ny-oped-let-nyc-see-police-records-now-20190207story.html.............................................................................................................20

Lauren Cook, *NYC Protests Reignite Calls to Repeal 50-a Law Protecting Police Records,* PIX11 NEW YORK (June 2, 2020), https://www.pix11.com/news/local-news/nyc-protests-reignite-calls-to-repeal-50-a-law-protecting-police-records ......................................................................................21

Nathan Tempey, *The NYPD is Keeping Cop Disciplinary Records Secret… Except When It's 'Important',* GOTHAMIST (Jan. 27, 217), https://gothamist.com/news/the-nypd-is-keeping-cop-disciplinary-records-secretexcept-when-its-important...............................................................................................................3

Nick Pinto, *How New York's Law Shielding Cops From Scrutiny Became One of the Toughest in the Country,* GOTHAMIST (Mar. 10, 2020) https://gothamist.com/news/ny-police-nypd-50a-cops-crime...................................................3

Press Release, Governor Andrew M. Cuomo, *Governor Cuomo Signs 'Say Their Name' Reform Agenda Package*, (June 12, 2020), https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-signs-say-their-name-reform-agenda-package....................................................................1, 25

Report, New York City Bar, *Promote Police Transparency with the Repeal of CRL 50-a,* (June 9, 2020), https://www.nycbar.org/memberandcareerservices/committees/reportslisting/reports/detail/promote-police-transparency-repeal-crl-50-a ..................................................................24, 25

Report of the Independent Panel on the Disciplinary System of the New York City Police Department, (Jan. 25, 2019), https://www.independent panelreport nypd.net/ ............... passim

Written Testimony, Senate Standing Committee on Codes, Public Hearing: Policing (S3695) THE NEW YORK STATE SENATE (Oct. 24, 2019), https://www.ny.senate.gov/sites/default/files/oct_24th_public_hearing_on_discovery_reform.pdf..........................................................................................................21, 24

## PRELIMINARY STATEMENT

New York University School of Law's Center on Race, Inequality, and the Law ("Center") participates in this litigation as *amicus curiae* opposing Plaintiffs' motion for a preliminary injunction to enjoin the New York Civilian Complaint Review Board ("CCRB") and other New York City agencies from releasing certain disciplinary records of New York City police officers, among others.[1]

For decades, Section 50-a of the Civil Rights Law ("§ 50-a") permitted the personnel records of New York police officers and the disciplinary process concerning officers accused of misconduct to be almost entirely concealed from the public.  Finally, in June 2020, after years of challenges to the law by criminal and social justice advocates, bar associations, and numerous other non-profit and civic organizations, § 50-a was repealed overwhelmingly by the New York legislature.  In signing the bill repealing of § 50-a, Governor Andrew Cuomo acknowledged racial inequality in the criminal legal system and also declared that "police reform is long overdue."[2]  The repeal was expected to reaffirm the social contract between the public and the police and increase public trust in law enforcement by creating a more just, transparent, and accountable disciplinary regime.

Public interest demands that Plaintiffs be denied injunctive relief.  Plaintiffs have not met their legal burden to show either irreparable harm or likelihood of success on the merits of their constitutional and other claims.  Effecting the repeal of § 50-a and disclosing practices

---

[1] Among the Center's top priorities is wholesale reform of the criminal legal system, including challenging the unlawful and biased exercise of discretion by actors in that system, to ensure the fair administration of justice.  This brief focuses exclusively on Plaintiffs' efforts to enjoin the CCRB, in particular, from releasing disciplinary records concerning allegations of police misconduct.

[2] Press Release, Governor Andrew M. Cuomo, *Governor Cuomo Signs 'Say Their Name' Reform Agenda Package* (June 12, 2020), *available at* https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-signs-say-their-name-reform-agenda-package (hereinafter "Press Release, *Governor Cuomo*").

concerning law enforcement disciplinary procedures formerly shrouded in secrecy will start the process of eliminating racial injustice and inequitable outcomes in our criminal legal system. Enjoining the release of this critical information for what could amount to years allows Plaintiffs to undermine the legislature and usurp its authority from the people.  This is an unacceptable outcome.

**RELEVANT FACTUAL BACKGROUND**

**History of Section 50-a of the Civil Rights Law**

Adopted in 1976, § 50-a classified police records as confidential and not subject to disclosure without the consent of the officer or by court order.[3]  Section 50-a was enacted in response to New York's then-new Freedom of Information Law ("FOIL"), which provided providing greater access to public records.  Specifically, § 50-a was enacted to prevent defense lawyers from cross-examining police officers based on information in their personnel files.  *See* Annual Report, Comm. on Open Gov't, *Celebrating 40 Years of the Freedom of Information Law and the Committee on Open Government … More to Be Done* (Dec. 2014), at 3, *available at* https://www.dos.ny.gov/coog/pdfs/2014AnnualReport.pdf.  Over time, § 50-a was "expanded in the courts to allow police departments to withhold from the public virtually any record that contains any information that could conceivably be used to evaluate the performance of a police officer."[4]  *Id.*  Prior to the repeal of § 50-a, New York was "nearly alone in maintaining a statute

---

[3] The statute provides that "all personnel records used to evaluate continued employment or promotion, under the control of any police agency . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . .  except as may be mandated by lawful court order."  N.Y. Civ. Rights Law § 50-a.

[4] *See, e.g.*, *N.Y. Civil Liberties Union v. City of Schenectady*, 761 N.Y.S.2d 704, 705 (3rd Dep't 2003), *rev'd on other grounds*, 2 N.Y.3d 657 (2004); *Columbia-Greene Beauty Sch., Inc. v. City of Albany*, 995 N.Y.S.2d 340, 343 (1st Dep't 2014); *Daily Gazette Co. v. City of Schenectady*, 93 N.Y.2d 145, 158-59 (1999); *Gannett Co. v. James*, 447 N.Y.S.2d 781 (4th Dep't 1982).

specifically blocking police disciplinary records from disclosure under freedom of information laws."[5]  Report of the Independent Panel on the Disciplinary System of the New York City Police Department (Jan. 25, 2019), at 44, *available at* https://www. independentpanelreport nypd.net/ (hereinafter, "Report of the Independent Panel").

**Repeal of Section 50-a**

In repealing § 50-a, the legislature amended relevant sections of public officer laws to provide for disclosure of "law enforcement disciplinary records"[6] and "law enforcement disciplinary proceedings."  Sponsor Mem., N.Y. Senate Bill S8496, *available at* https://www. nysenate.gov/legislation/bills/2019/s8496 (hereinafter, "Senate Bill S8496").  Authorized disclosure is not limited to final complaints or allegations or proven complaints and allegations.

---

[5] Notwithstanding 50-a, prior to 2016, the New York Police Department regularly posted in its press room detailed summaries of the outcomes of its internal disciplinary trials.  Nathan Tempey, *The NYPD Is Keeping Cop Disciplinary Records Secret… Except When It's 'Important'*, Gothamist (Jan. 27, 2017, 12:30 PM), https://gothamist.com/news/the-nypd-is-keeping-cop-disciplinary-records-secretexcept-when-its-important.  Also, for a short time, starting in 2013, the CCRB disclosed less-detailed summaries of officers' records in response to FOIL requests.  Cynthia H. Conti-Cook, *Defending the Public:  Police Accountability in the Courtroom*, 46 Seton Hall L. Rev. 1063, 1071-72 (2016).  The CCRB stopped providing these summaries in September 2014.  *Id.* at 1072.  In 2016, under the administration of Mayor Vincent De Blasio, and in the midst of the public outcry following the controversial death of Eric Garner at the hands of a NYPD officer, the NYPD discontinued posting disciplinary trial summaries, and all hard copies of these records were removed from the publicly accessible archives at City Hall. Nick Pinto, *How New York's Law Shielding Cops From Scrutiny Became One of the Toughest in the Country*, Gothamist (Mar. 10, 2020, 1:05 PM), https://gothamist.com/news/ny-police-nypd-50a-cops-crime.  Once the NYPD and CCRB stopped providing summaries, the public had virtually no insight into police disciplinary records and the handling of police misconduct.

[6] Law enforcement disciplinary records include, among other things, "the complaints, allegations, and charges against an employee."

**Overview of CCRB**

CCRB is an independent agency that is authorized to investigate, prosecute, and make findings regarding complaints filed against NYPD officers, as well as recommend disciplinary action against officers. *See* CCRB, *About CCRB*, https://www1.nyc.gov/site/ccrb/about/about.page. CCRB's jurisdiction is complaints that allege use of excessive or unnecessary force, abuse of authority, discourtesy, or the use of offensive language. *Id.* After completing an investigation, CCRB makes findings, including findings on the merits. Findings on the merits include:

> Substantiated: means there is sufficient credible evidence to believe that the subject officer committed the alleged act without legal justification. . . .
>
> Exonerated: means the subject officer was found to have committed the act alleged, but the officer's actions were determined to be lawful.
>
> Unfounded: means there is sufficient credible evidence to believe that the subject officer did not commit the alleged act.

CCRB, *CCRB Case Outcomes*, https://www1.nyc.gov/site/ccrb/investigations/case-outcomes page (hereinafter, "*CCRB Outcomes*"). When there is not enough evidence to make a finding on the merits, the CCRB may make a finding of "unsubstantiated" which means "the available evidence is insufficient to determine whether the officer did or did not commit misconduct." *Id.* Almost immediately following the repeal of § 50-a, CCRB responded to FOIL requests by providing certain law enforcement disciplinary records. CCRB's ultimate intention is to create an online database reflecting historical information on the disciplinary records of 81,000 active and retired police officers. (*See* ECF No. 31-1 at 1-2; *see also* Transcript of July 22 Hearing at

11:2-6, 47:17-48:6).  CCRB intends only to release records concerning complaints for which CCRB has reached a final determination.[7]  (ECF No. 7 at 3).

## ARGUMENT

### I.  The Court Should Lift the Temporary Restraining Order and Deny the Motion For a Preliminary Injunction

The temporary restraining order currently in place enjoining the release of CCRB records should be lifted because Plaintiffs have not met their burden of showing that they are entitled to injunctive relief.

### A.  Legal Standard

"In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party," but where, as here, "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory. . .  scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes . . .  a likelihood that he will succeed on the merits of his claim."  *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989) (emphasis added); *see also Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014)

---

[7] Specifically, CCRB intends to release records concerning complaints for which CCRB has reached a final determination, including complaints that were ultimately found to be substantiated, unsubstantiated, exonerated, or unfounded.  (ECF No. 7 at 3; *see also* Transcript of July 28 Hearing at 63:6-11).  Plaintiffs object to the release of this CCRB material in its entirety.  (*See* Transcript of July 22 Hearing at 61:7-13).  While CCRB considers all of these records to reflect a final CCRB determination, regardless of whether the complaint was found "substantiated or unsubstantiated"  (Transcript of July 28 Hearing at 63:6-11; *see also* ECF No. 7 at 3), Plaintiffs consider CCRB's substantiated records to be "unproven, pending matters" because the substantiated specifications and charges from CCRB could still proceed to a hearing in the NYPD's internal processes (Transcript of July 22 Hearing at 57:3-58:8).

(unavailability of fair-ground-for-litigation alternative "reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly" (internal citations and quotation marks omitted)).

**B.** **Plaintiffs Fail to Show a Risk of Irreparable Harm**

*1.* *Plaintiffs' Delay in Seeking Relief Prevents a Finding of Irreparable Harm*

As an initial matter, Plaintiffs' "delay in seeking relief" by waiting to file this case an entire month after the June 12, 2020 repeal of § 50-a prevents them from making the required showing of irreparable harm. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (holding, in trademark infringement case, that delay in seeking relief prevented plaintiff from showing irreparable harm); *see also R.R. P.B.A. of State of N.Y., Inc. v. Metro-N. Commuter R.R.*, 699 F. Supp. 40, 43 (S.D.N.Y. 1988) (denying injunctive relief on grounds of delay where plaintiffs filed complaint approximately six weeks after implementation of new policy they wished to enjoin).

Because "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights," *Citibank*, 756 F.2d at 276, a "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm." *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985). Plaintiffs have offered no justification for waiting approximately a whole month to file this case, and their delay belies their assertion of irreparable harm.

2.      *Plaintiffs' Alleged Potential Injuries Do Not Support a Finding of Irreparable Harm*

Plaintiffs' argue that the release of CCRB findings of substantiated, unsubstantiated, unfounded, and exonerated allegations (collectively, "CCRB records") previously classified as confidential under § 50-a will constitute irreparable harm.  (ECF No. 10-12 at 6).  But the authority Plaintiffs cite does not support their argument because in those cases, unlike here, the information a party wished to keep confidential was actually protected by law.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 134-35 (2d Cir. 2004) (sealed court filings protected as confidential under parties' settlement agreement); *Novus Partners, Inc. v. Vainchenker*, 938 N.Y.S.2d 228 (N.Y. Sup. Ct. 2011) (trade secrets protected by non-compete agreement); *Bd. of Educ. of the Middletown Enlarged City School Dist. v. Douglas*, No. 4305/06, 2006 WL 6851993 (N.Y. Sup. Ct. July 07, 2006) (student information protected by the Family Educational Rights and Privacy Act); *Doe v. Greco*, 405 N.Y.S.2d 801 (1978) (names and addresses of individuals receiving public assistance).  CCRB records are no longer confidential as a matter of law following the repeal of § 50-a.[8]  As discussed, *infra* at 8-18, Plaintiffs do not have any constitutional right to keep these records private, and as discussed, *infra* at 18-20, FOIL provides adequate exemptions for disclosure of Plaintiffs' personal information.  In sum, release of the CCRB records will not irreparably harm Plaintiffs.

Plaintiffs further argue that the disclosure of the CCRB records will cause them to suffer injuries to their reputation for which money damages are insufficient.  (ECF No. 10-12 at 6).  But, even if this were true, this does not constitute irreparable injury.  *See Paloger v. Cohen*, 964 N.Y.S.2d 61 (N.Y. Sup. Ct. 2012) (holding that speculative allegations that "*may* damage

---

[8] Indeed, the fact that the NYPD publicly posted detailed summaries of disciplinary records for courts' is compelling evidence that the type of information in CCRB records was never in fact confidential, despite courts' interpretation of 50-a.

[another's] reputation" were inadequate to demonstrate "irreparable injury that is imminent")
(emphasis in original); *see also Local 1159 of Counsel 4 AFSCME, AFL-CIO v. City of
Bridgeport*, 435 F. Supp. 3d 400, 411 (D. Conn. 2020) (injuries, including "damage to
reputation, and difficulty finding future employment[] do not constitute the irreparable harm
necessary to obtain a preliminary injunction"); *Peck v. Montefiore Med. Ctr.,* 987 F. Supp. 2d
405, 412 (S.D.N.Y. 2013) (collecting cases from Second Circuit courts).

C.    **Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits
Regarding the Release of CCRB Records**

Further Plaintiffs are not likely to succeed on their claims that disclosure of
"unsubstantiated and non-final" CCRB records will violate their federal and state constitutional
rights to due process and equal protection.  Nor are Plaintiffs likely to succeed on their claim that
the decision to disclose "unsubstantiated and non-final" CCRB records was affected by errors of
law or was arbitrary and capricious in violation of Article 78.

1.    *The Release of CCRB Records Does Not Violate Plaintiffs' Federal or
State Constitutional Due Process Rights*

Plaintiffs' due process claims under both the U.S. Constitution and New York State
Constitution will fail because Plaintiffs not entitled to constitutional protection from their
claimed injuries based on disclosure of CCRB records, and even if they are, CCRB's
investigative procedures prior to making a finding are more than adequate to protect any due
process rights of the officers.

Under both the U.S. Constitution and the New York State Constitution, the due process
clause prohibits the government from "depriving a person of life, liberty or property without due
process of law." *Lee TT. v. Dowling*, 87 N.Y.2d 699, 707 (1996).  Whether this constitutional
protection applies "depends on whether the government's actions impair a protected liberty or
property interest." *Id.*  If such a "protectible liberty interest" is implicated, the court must then

8

"determine whether the state's statutory procedures established to protect the liberty interest are constitutionally adequate." *Valmonte v. Bane*, 18 F.3d 992, 994 (2d Cir. 1994).

Plaintiffs' due process argument is premised on the "stigma-plus" theory of a due process violation.  (ECF No. 10-12 at 13).  Specifically, Plaintiffs argue that the public release of CCRB records they consider unsubstantiated and non-final would "threaten not only officers' good names, but also tangibly damage their future employment opportunities," creating the type of liberty interest protected by the right to due process, and entitling Plaintiffs to "constitutional right to notice of their inclusion in the database and an opportunity to contest it" prior to release. (*Id.*).

To make out this type of stigma-plus claim under either federal or New York state law, "a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal citations and quotation marks omitted); *see also Lee TT.*, 87 N.Y.2d at 708 (requiring both government's "publication of . . . defamatory material" and "some more 'tangible' interest [being] affected or a legal right [being] altered," resulting in "[a] loss of liberty" to make out "stigma plus" due process claim).

To be sufficiently derogatory or defamatory to satisfy the stigma factor of a stigma-plus due process claim, the government statements at issue must "call into question plaintiff's 'good name, reputation, honor, or integrity'" or "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her

profession." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004); *see also Lee TT.*, 87 N.Y.2d at 708-09.

To create the type of "cognizable liberty interest" that supports the plus factor of a stigma-plus due process claim, Plaintiff's alleged burden or injury arising from the derogatory government statements must go beyond the mere "deleterious effects which flow directly from a sullied reputation." *Valmonte*, 18 F.3d at 1001. As the United States Supreme Court has explained, an "interest in reputation . . . is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Paul v. Davis*, 424 U.S. 693, 712 (1976); *see also Lee TT.*, 87 N.Y.2d at 709 ("The question is whether the State's action resulted in the additional damage sufficient to constitute a constitutional deprivation as defined by the holding in *Paul v. Davis*."). In other words, "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation" is inadequate to make out the plus in a stigma-plus claim. *Valmonte*, 18 F.3d at 1001.

### a.   Release of Information Concerning Complaints CCRB Found Unfounded or Exonerated Is Not Derogatory

To begin, Plaintiffs have not demonstrated that the release of information concerning complaints the CCRB ultimately found to be unfounded or exonerated is "sufficiently derogatory to injure [the] reputation" of an accused officer, *Sadallah*, 383 F.3d at 38, such that it is "defamatory material" and requires due process protection, *Lee TT.*, 87 N.Y.2d at 708. A CCRB finding of unfounded means that CCRB found by "a preponderance of the evidence," "sufficient credible evidence to believe that the subject officer did not commit the alleged act." *CCRB Outcomes*. A CCRB finding of exonerated means that while "the subject officer was found to have committed the act alleged," by the "preponderance of the evidence," "the officer's actions

were determined to be lawful." *Id.* Findings that officers did not commit the acts alleged in a complaint or that officers' actions were lawful cannot possibly "call[] into question their good name, reputation, honor, or integrity" and cannot, therefore, implicate the officers' constitutionally protected rights and liberties, such that they are entitled to due process protections. *Lee TT.*, 87 N.Y.2d at 708-09. Similarly, such findings (exonerated and unfounded) are necessarily not "[s]tatements that denigrate the employee's competence as a professional and impugn the employee's professional reputation." *Patterson,* 370 F.3d at 330. Accordingly, release of information based on unfounded and exonerated findings does not trigger a due process claim.[9]

> **b.     Release of Information Concerning Complaints CCRB Found Substantiated or Unsubstantiated Do Not Cause Injury Adequate to Support a Stigma-Plus Due Process Claim**

Nor have Plaintiffs shown that the release of substantiated or unsubstantiated findings is sufficient to create a stigma-plus due process claim. A CCRB finding that a complaint is "substantiated" means that, by a "preponderance of evidence," "there is sufficient credible evidence to believe that the subject officer committed the alleged act without legal justification." *CCRB Outcomes.* A finding that a complaint is unsubstantiated means "the available evidence is insufficient to determine whether the officer did or did not commit misconduct." *Id.* Assuming, for the sake of argument, that substantiated and unsubstantiated allegations satisfy the "stigma" factor of the stigma-plus test, meaning the allegations are "sufficiently derogatory to injure [the] reputation" of an accused officer, *Sadallah*, 383 F.3d at 38, Plaintiffs cannot satisfy the "plus" factor of the test because they have not alleged potential injuries arising from the disclosure of

---

[9] The public interest requires full transparency on all CCRB findings. There is value in knowing, for example, that certain exonerated conduct (e.g., a chokehold) is lawful because, armed with that knowledge, the public may seek changes in policy concerning that conduct.

these CCRB records that go beyond "the deleterious effects which flow directly from a sullied reputation." *Valmonte*, 18 F.3d at 1001.

Plaintiffs argue that the release of what they consider unsubstantiated and non-final allegations can "deprive[] the identified individuals of a protected liberty interest," which "[f]or some . . . will be a loss of employment" or "[f]or others . . . interfer[ence] with their future employment opportunities." (ECF No. 10-12 at 15). In particular, Plaintiffs make much of how CCRB's plans to disclose officer histories online, including records of past substantiated or unsubstantiated complaints, will create records that "search engines, credit agencies, landlords, and potential employers could access . . . for a lifetime," purportedly creating the grounds for a stigma-plus claim because the availability of those records online could "result[] in limitless and eternal notoriety." (*Id.* at 16). But these are merely "deleterious effects which flow directly from a sullied reputation." *Valmonte*, 18 F.3d at 1001. Although substantiated and unsubstantiated allegations may impact Plaintiffs' "job prospects," this is a "typical consequence of [having] a bad reputation" that does not create a "cognizable liberty interest" requiring due process protection. *Id.* The Supreme Court has been explicit that this "interest in reputation . . . is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Paul*, 424 U.S. at 712.

Importantly, cases cited by Plaintiffs do not demonstrate that potential injuries to their reputations amount to harm of a protected liberty interest sufficient to support a due process claim. (*See* ECF No. 10-12 at 15-17). For example, in *Patterson* and *Brandt v. Bd. of Coop. Educ. Servs.*, the courts held that the termination of the plaintiffs at the same time the government made stigmatizing statements about them, including in a personnel file in *Brandt*, was a necessary element of their stigma-plus due process claims. *See Patterson*, 370 F.3d at

331-32 (describing stigmatizing statements made by mayor in connection with plaintiff's termination from his government job); *Brandt*, 820 F.2d at 42 (noting that claims arose in connection with plaintiff's "dismissal as a public school teacher" and the placement of "allegedly false and defamatory charges in his personnel file").  Here, Plaintiffs have not shown that mere public disclosure of substantiated and unsubstantiated allegations would necessarily result in terminations and/or harm their employability because pre-repeal of § 50-a, law enforcement agencies and officials already had access to the personnel records of officers (which contained this very information).  *See Swinton v. Safir*, 93 N.Y.2d 758, 764-65 (1999).  Even to the extent that officers seek employment outside of law enforcement, it is purely speculative to assert that they will be unemployable based on the mere disclosure of substantiated and unsubstantiated allegations.  Public disclosure of CCRB records is not comparable to the disclosure of the identifies of individuals in child abuse registries, inasmuch as certain employers are required to review such registries and required to justify hiring any person who appears on them.  *See, e.g.*, *Valmonte*, 18 F.3d at 1002 (holding that deprivation of protected liberty interest "stems from the fact that employers *must* consult the [New York central child abuse register] list before hiring [plaintiff], and if they choose to hire her must state the reasons in writing to the state" (emphasis in original)).

Plaintiffs cite *People v. David W.*, 95 N.Y.2d 130, 137 (2000), for the proposition that New York's Court of Appeals has found a mere likelihood of dissemination of negative information to prospective employers to sufficiently harm a person's protected liberty interests. (ECF No. 10-12 at 15).  That is not so.  *David W.* involved a sex offender registry classification that was "[m]ore than name calling by public officials" and would instead result in plaintiff's "photograph, description and exact address, along with other identifying information" being

added to a "sexually violent predator subdirectory" that would be actively "distributed to the offices of local . . . or state law enforcement agenc[ies] for purposes of public access" on an annual basis, and also imposed affirmative obligations on plaintiff to "register . . . with local law enforcement and to promptly advise of changes in address . . . every 90 days." *David W.*, 95 N.Y.2d at 137.  There are no such parallels with respect to the disclosure of CCRB records, which would be available on the CCRB website but only distributed in response to internal law enforcement requests, court order, or FOIL requests.

While the court in *Bursac v. Suozzi*, 22 Misc. 3d 328 (N.Y. Sup. Ct. 2008), did find that Bursac's protected liberty interests were harmed by the dissemination of her name and arrest photograph on a press release made available on a government website as part of a larger "wall of shame" campaign to publicize "those who break the law by driving drunk" and to "make sure their friends, neighbors and families know about it," Plaintiffs in this case cannot point to any similar actions by CCRB to wage a "scarlet letter campaign" against officers subject to complaints.  *Id.* at 329-31, 342.  To the contrary, CCRB follows an established investigative process in each case and proposes to post an online database that includes its final determinations on complaints affecting 81,000 different current and retired NYPD officers, en masse, without drawing specific attention to individual officers.  (*See* ECF No. 31-1 at 2; Transcript of July 22 Hearing at 12:22-13:5).

> ### c.    Even If the Release of CCRB Records Implicates a Liberty Interest Protected by Due Process, CCRB's Investigative Process Provides Adequate Due Process Protections to Officers

To the extent the court finds that release of substantiated and unsubstantiated allegations could implicate a protected liberty interest, Plaintiffs still cannot show a likelihood of success on the merits because the CCRB investigatory process adequately protects officers' right to due process.

To determine whether government procedures provide adequate due process to protect individuals from an improper deprivation of a protected liberty interest, courts consider three factors: "(1) the private interest affected by the State's action, (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional safeguards and (3) a consideration of the government's interest." *Lee TT.*, 87 N.Y.2d at 710 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).  Applying this standard, the New York Court of Appeals has held that "[d]ue process requires that a person whose constitutional rights are affected by government action is entitled to be heard" at a time when the "deprivation can be prevented."[10] *Lee TT.*, 87 N.Y.2d at 713.  The appropriate due process standard of proof is a preponderance of evidence.  *Id.* at 712; *see also Miller v. DeBuono*, 90 N.Y.2d 783, 788 (1997).  Generally, due process requires that "the State bear the burden of proving, at some meaningful time, that a defendant deserves the classification assigned," and that the person against whom a stigmatizing finding is made have "notice and an opportunity to be heard before a determination is made." *David W.*, 95 N.Y.2d at 141.

Here, the due process procedural safeguards are more than adequate.  Before making a finding that a complaint is substantiated or unsubstantiated, the CCRB's "civilian investigators gather documentary and video evidence and conduct interviews," including with "subject officers," in order "to determine whether the allegations occurred and whether they constitute misconduct."  CCRB, *CCRB Report on Youth and Police* (June 2020), at 46, *available at* https://www1.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/issue_based/CCRB_YouthReport.pdf. "At the conclusion of the investigation, a closing report is prepared, summarizing the relevant

---

[10] In *Lee TT.*, where the stigmatizing allegations concerned child abuse, the Court found that due process required a hearing.  87 N.Y.2d at 712.  Substantial state interests may justify less in the way of "procedural safeguards," and the court should also consider the State's "clear interest in controlling the expense involved" in administering the relevant procedures.  *Id.* at 710.

evidence and providing a factual and legal analysis of the allegations," which is then provided to a "panel of three Board members" to "review[] the material, make[] findings for each allegation in the case, and if any allegations are substantiated, provide[] a recommendation as to the discipline that should be imposed." *Id.* Findings that a complaint is "substantiated" are made based on a "preponderance of evidence" standard. *CCRB Outcomes*.

Additionally, "the government's interest," *Lee TT.*, 87 N.Y.2d at 710, in the release of CCRB records is substantial:  the legislature concluded that § 50-a's broad prohibition on disclosure was "contrary to public policy" and resulted in the records of complaints and findings of law enforcement misconduct being almost entirely inaccessible to the public, including to the affected victims.  Senate Bill S8496.  The government repealed § 50-a to "help the public regain trust that law enforcement officers and agencies may be held accountable for misconduct." [11] *Id.* Accordingly, the state's interest in releasing these records, which have already gone through the CCRB investigative process, is considerable.

Because CCRB investigations include an interview of the officer who is the subject of the complaint, officers receive notice of the complaints made against them and have the opportunity to present evidence.   The preponderance of the evidence standard that CCRB uses in order to make a finding that a complaint is substantiated is adequate to protect the rights of officers against whom such a finding is made.  *See Lee TT.*, 87 N.Y.2d at 710 (finding "preponderance of the evidence" standard adequate in child abuse cases); *Miller*, 90 N.Y.2d at 788 (same in context of patient abuse cases).  Plaintiffs cannot, therefore, show a likelihood of success on the merits as to their due process claims based on the release of substantiated and unsubstantiated allegations

---

[11] It is particularly in the public interest to have disclosure on unsubstantiated findings because this is the largest category of CCRB findings – 48% in 2018 (*see* Report of the Independent Panel at 31) – and, depending on the number of unsubstantiated findings an officer has, this information may be a tool to identify officers that are at risk of later engaging in substantiated misconduct.

because the investigatory process that precedes such findings protects the subject officers' rights

to due process.

> 2. *Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits of Their Equal Protection Claims*

Nor can Plaintiffs succeed on their equal protection claims under either the U.S.

Constitution or the New York State Constitution.  Under federal law, "[a]s a general rule, the

equal protection guarantee of the Constitution is satisfied when the government differentiates

between persons for a reason that bears a rational relationship to an appropriate governmental

interest," except "in limited circumstances when the subject of the different treatment is a

member of a class that historically has been the object of discrimination, the Supreme Court has

required a higher degree of justification than a rational basis, either strict or intermediate

scrutiny." *Able v. United State*s, 155 F.3d 628, 631 (2d Cir. 1998).  Equal protection under the

New York State Constitution is evaluated under the same standard. *See Myers v. Schneiderman*,

30 N.Y.3d 1, 13 (2017) ("Our State's equal protection guarantees are coextensive with the rights

protected under the Federal Equal Protection Clause.").  Because Plaintiffs are not members of a

historically discriminated-against protected class, rational basis review applies.

As New York state law recognizes,

> [t]he rational basis test is not a demanding one[,] rather, it is the most relaxed and tolerant form of judicial scrutiny.  Rational basis involves a strong presumption that the challenged legislation is valid, and a party contending otherwise bears the heavy burden of showing that a statute is so unrelated to the achievement of any combination of legitimate purposes as to be irrational.  A challenged statute will survive rational basis review so long as it is rationally related to any conceivable legitimate State purpose. Indeed, courts may even hypothesize the Legislature's motivation or possible legitimate purpose.  At bottom, the rational basis standard of review is a paradigm of judicial restraint.

*Myers*, 30 N.Y.3d at 15-16 (internal citations and quotation marks omitted).  "[L]egislative

solutions must be respected if . . . some legitimate state interest is advanced." *McGinnis v.*

17

*Royster*, 410 U.S. 263, 276 (1973). "Where … there are plausible reasons for [the legislature's] action, [the court's] inquiry is at an end." *U.S. R.R. Ret. Bd. v. Fritz,* 449 U.S. 166, 179 (1980). Simply put, the rational basis test is satisfied here because the release of CCRB records is related to the legitimate government interest in repealing § 50-a. The legislative history is clear that one important reason for the repeal was to "help the public regain trust that law enforcement officers and agencies may be held accountable for misconduct" by allowing the public to access "records of complaints or findings of law enforcement misconduct," records that were previously "almost entirely inaccessible to the public" for decades while § 50-a was in place. Sponsor Mem., N.Y. Senate Bill S8496.

> 3.  *Plaintiffs Are Not Likely to Succeed on Their Claims That Would Be an Error of Law to Release CCRB Records and That Defendants' Decision to Release CCRB Records Following the Repeal of Section 50-a Would Be Arbitrary and Capricious*

Plaintiffs argue that the release of CCRB records will be an "error of law" and/or "arbitrary or capricious" in violation of N.Y. C.P.L.R. Section 7803. Specifically, Plaintiffs argue that CCRB's decision to release these records will be done "without considering the potential privacy interests at stake" and will represent a "break with established practice." (ECF No. 10-12 at 23). Plaintiffs cannot prevail on their claims because (1) any legitimate privacy rights that Plaintiffs have remain protected under FOIL, (2) CCRB's decision to begin releasing CCRB records is carefully considered and well-reasoned.

As the party challenging or resisting disclosure, Plaintiffs have the burden of showing that the CCRB records at issue should be withheld. "Public agency records . . . are presumptively open for public inspection and copying [under FOIL], and the party seeking an exemption from disclosure has the burden of proving entitlement to the exemption." *Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York*, 928 N.Y.S.2d 701, 702 (1st Dep't 2011).

Section 50-a has been repealed and, accordingly, absent another statutory exemption, "FOIL

compels 'disclosure, not concealment.'"  *Data Tree, LLC v. Romaine*, 9 N.Y.3d 454, 463 (2007).

### a.   The Decision to Release CCRB Records Is Not an Error of Law

Plaintiffs argue that Defendants' decision to release CCRB records because of the repeal

of Section § 50-a is erroneous as a matter of law because "Section 50-a was never the only

source of [Defendants'] obligation to protect the privacy and safety of" Plaintiffs.  (ECF No. 10-

12 at 24).  But protection of Plaintiffs' personal privacy does not mean that their personnel and

disciplinary records must be entirely blocked from disclosure.  Privacy considerations have been

and remain embedded in the FOIL statutory framework.  *See* N.Y. Pub. Off. Law Section 87(2)

("Each agency shall . . . make available . . . all records, except that such agency may deny access

to records or portions thereof that . . . (b) if disclosed would constitute an unwarranted invasion

of personal privacy.").

In repealing § 50-a and providing for disclosure of personnel records, the bill's sponsor

observed:  "FOIL already provides that agencies may redact or withhold information whose

disclosure would constitute an unwarranted invasion of privacy.  Recent changes to the Civil

Service Law have created additional, non-discretionary protections against the release of certain

sensitive information such as contact information."  Senate Bill S8496.  Moreover, the bill

repealing § 50-a also "adds additional safeguards in the FOIL statute" to protect legitimate

privacy concerns. [12]  *Id.*  This legislative history demonstrates that privacy concerns were

---

[12] As part of the repeal of § 50-a, FOIL's enumerated personal privacy exemptions now explicitly protect certain categories of information contained in "law enforcement disciplinary records," including the "home addresses, personal telephone numbers, personal cell phone numbers, personal email addresses" of officers and their families, their "social security numbers," and records of officers' "use of an employee assistance program, mental health service, or substance abuse assistance service."  N.Y. Pub. Off. Law § 89.  Agencies may also withhold information that "does not fall squarely into any of the specifically enumerated categories of exempt personal information," and courts "balance[e] the privacy interests at stake against the public interest in disclosure of the information" to

19

specifically considered and addressed in the context of the decision to disclose the disciplinary

records Plaintiffs seek to withhold from the public.[13]

### b. The Decision to Release CCRB Records Is Not Arbitrary and Capricious

Plaintiffs claim that in releasing the CCRB records, CCRB is "proceeding without due

consideration of . . . even their own past treatment of such records," making the release of the

records "arbitrary and capricious" in violation of Article 78.  (ECF No. 10-12 at 27).  Even if,

"[a]bsent reasoned analysis," Defendants were not permitted to "break with long-established

practice" of withholding CCRB records (*id.*), that standard is more than met here.

Plaintiffs' suggestion CCRB's decision to release disciplinary records was not afforded

"due consideration" is in a word incredible.  (ECF No. 10-12 at 27).  The repeal of § 50-a was

achieved after nearly a decade of challenges by criminal and social justice advocates and

numerous civic organizations, as well as pointed criticism by independent bodies and panels and

acknowledgement by the Governor, the Mayor, and the NYPD Commissioner that it was time for

the repeal of § 50-a.  *See* Press Release, *Governor Cuomo*; Jake Bittle, *The State Legislature*

*May Repeal 50-a. Here's What That Means*, Queens Daily Eagle (June 4, 2020), https://queens

eagle.com/all/50a-repeal-new-york-police-records-queens; James O'Neill, *Let NYC See Police*

*Records, Now*, New York Daily News (Feb. 7, 2019, 7:10 PM), https://www.nydailynews.com

---

determine whether such withholding is proper under FOIL.  *Hepps v. N.Y. State Dep't of Health*, 122 N.Y.S.3d 446, 450-51 (2020).

[13] It is worth noting that Plaintiffs cite a 2008 report by New York State's Committee on Open Government in support of their argument that unsubstantiated and allegations are protected from disclosure.  (*See* ECF No. 10-12 at 26).  Contrary to Plaintiffs' assertions, however, the Committee on Open Government has <u>not</u> "taken the position that the release of unsubstantiated allegations constitutes and unwarranted invasion of privacy."  *Id.*  Rather, prior to the appeal of § 50-a, the Committee, while unequivocally advocating for its repeal, merely asserted that FOIL contains exceptions that "allow," but do not require, "'unsubstantiated allegations' against an employee to be withheld."  *See* Annual Report, Comm. on Open Gov't, *2018 Report to the Governor and State Legislature* (Dec. 2018), at 5 (hereinafter, "Comm. on Open Gov't, 2018 Report").

/opinion/ny-oped-let-nyc-see-police-records-now-20190207-story.html.  The legislature received

a staggering number of written statements and heard dozens of witnesses in considering the

repeal of § 50-a.  *See Written Testimony*, Senate Standing Committee on Codes, Public Hearing:

Policing (S3695), The New York State Senate (Oct. 24, 2019), *available at* https://www.ny

senate.gov/sites/default/files/ oct_24th_public_hearing_on_discovery_reform.pdf (hereinafter,

"*Written Testimony*, (S3695)").  The news coverage of the battle over repeal of § 50-a extends

back years and continues to this day.  Across the state of New York, massive protests for police

reform erupted in 2020 with repeal of § 50-a as a lodestar of the movement.  *See, e.g.*, Lauren

Cook, *NYC Protests Reignite Calls to Repeal 50-a Law Protecting Police Records,* PIX11 New

York (Jun. 2, 2020, 12:38 PM), https://www.pix11.com/news/local-news/nyc-protests-reignite-

calls-to-repeal-50-a-law-protecting-police-records.  To argue, against this backdrop, that the

CCRB's decision to disclose disciplinary records following the repeal of § 50-a "lacks 'even a

minimal level of analysis'" ignores reality.  (ECF No. 10-12 at 28).

CCRB's decision to release disciplinary records of substantiated and unsubstantiated

complaints is based on the express language of the bill, which requires disclosure of "Law

Enforcement Disciplinary Records" – specifically defined to include "complaints, allegations,

and charges against an employee," among various other enumerated supporting documents.

Senate Bill S8496.  There is no carve-out for unsubstantiated or unfounded complaints.  This was

clearly intentional.  The Independent Panel appointed in 2018 by New York Police

Commissioner James P. O'Neill to review the internal disciplinary system, including the

operation of § 50-a, affirmatively "recognize[d] that there is a legitimate public interest in

knowing that an allegation could not be substantiated."  Report of the Independent Panel at 45.

Repeal of § 50-a was intended to provide full transparency into police disciplinary procedures

21

and "help the public regain trust that law enforcement officers and agencies may be held accountable for misconduct."  Senate Bill S8496.

Additionally, Plaintiffs argue that the decision to release CCRB records is arbitrary and capricious because it has "implications for the safety of officers."  (ECF No. 10-12 at 28). Plaintiffs attempt to support this argument by pointing to various incidents of violence against an officer.  *Id.* at 28-29.  However, Plaintiffs cite no incidents of violence against a police officer based on disclosure of substantiated or unsubstantiated complaints concerning that officer. There is simply no evidence that police officers are in more danger when complaints against them are made public.  *See* Report of the Independent Panel at 45 ("It bears emphasis that in the 40 years that the Department regularly posted Personnel Orders for inspection, there was no evidence that any officer was harassed as a result of a posting.  In Chicago, an advocacy group posted some 240,000 police disciplinary records online in a searchable database, and no increase in threats against officers or their families has been reported.").

The CCRB's "turnabout" in policy with respect to release of police disciplinary records was anything but "sudden" (ECF No. 10-12, at 29) and was adopted only after extensive consideration of multiple sources of advocacy and reports.  Accordingly, its decision was not arbitrary and capricious.

### D.    The Balance of Equities Favors Defendants Because Lifting the Temporary Restraining Order Is in the Public Interest

The balance of equities in this case tips strongly in favor of CCRB because the prompt and continuous dissemination of CCRB records to the public is critical to achieving the goals of the hard-fought repeal of § 50-a – namely, transparency and accountability around the disciplinary process for law enforcement officers accused of misconduct.  Plaintiffs have failed to show irreparable harm or a likelihood of success on the merits.  Indeed, the burden that would

be borne by Plaintiffs in the event of disclosure of CCRB records is much less severe than the harm that the public will suffer if CCRB continues to be enjoined from providing disciplinary records to the public.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs do not even address the consequences of a preliminary injunction to the most important victim: the public. Delaying the effect of the repeal of § 50-a for years during the pendency of this litigation permits Plaintiffs to improperly thwart the will of people, who have clearly spoken through their elected representatives.

Plaintiffs argue that the equities weigh in their favor because they "face the prospect of immediate and permanent reputational harm, loss of privacy, and even threats to their safety." (ECF 10-12, at 10). These arguments are unavailing. As noted above, damage to one's reputation does not constitute irreparable harm sufficient to obtain a preliminary injunction. *Local 1159*, 435 F. Supp. 3d at 411. As set forth in more detail, *supra* at 18-20, Plaintiffs' privacy rights are well protected under FOIL. Moreover, "[o]fficer privacy is a legitimate concern, but some meaningful disclosure is necessary if the public is to have confidence that the Department's disciplinary process works." Report of the Independent Panel at 44. Nor do Plaintiffs credibly claim a safety concern. *See id.* at 45-46 (noting that for 40 years, certain disciplinary information of New York police officers was available to the public and "there was no evidence that any officer was harassed as a result of a posting"; also noting that when 240,000 disciplinary records were posted in Chicago "no increase in threats against officers or their families has been reported). Relevant to balancing the equities in this case, the Independent Panel concluded, "[i]f New York is to strike the proper balance between privacy and

transparency, concern for officer safety must be respected, but not exaggerated." *Id.* at 46.

Plaintiffs argue that if the preliminary injunction is granted, "no party would suffer prejudice or hardship.  Rather, enjoining [Defendants] will simply preserve the status quo." (ECF No. 10-12, at 11).  Plaintiffs could not be more wrong and are clearly not attuned to the widely reported damage that 40 years of hiding police misconduct from the public has inflicted and will continue to inflict on our society.  Prior to the repeal of § 50-a, the Independent Panel appointed by the New York City Police Commissioner found that § 50-a "keeps the public in the dark about police discipline, breeds mistrust, and reduces accountability.  Public confidence is vital to the Department's mission, and a shrouded disciplinary process undermines that confidence."  Report of the Independent Panel at 5.  For the same reason, the New York State Committee on Open Government actively advocated for the repeal of § 50-a, noting that the interpretation of the law "over the past 40 years has turned a narrow FOIL exception into a virtually impenetrable statutory bar to the disclosure of information about the conduct of law enforcement officers."  *See* Comm. On Open Gov't, *2018 Report* at 3-4.  The Committee concluded that "[t]he corrosive absence of transparency existing under Section 50-a undermines accountability, increases public skepticism and foments distrust . . . . It is long past time to act." *Id.* at 5-6.

In calling for the repeal of § 50-a, many organizations emphasized the disproportionate impact police misconduct has in the African-American community in particular.[14]  The deleterious effect on Black communities of rampant police misconduct without accountability

---

[14] As a part of the Senate hearing, myriad organizations submitted written testimony in support of the repeal of § 50-a, including the Hearst Corporation, Rise Up Kingston, Citizen Action of New York, JustLeadershipUSA, Justice Committee, NAACP: Brooklyn Branch, the Center for Law and Social Justice, Reporters Committee, Innocence Project, Center for Constitutional Rights, Communities United for Police Reform, New York News Publishers Association, NAACP Legal Defense Fund, Common Cause, and Vocal New York.  *See Written Testimony* (S3695).

was one of the principal reasons that repeal of the law was demanded.  *See* Report, New York City Bar, *Promote Police Transparency with the Repeal of CRL 50-a* (June 9, 2020), at 6, *available at* https://www.nycbar.org/member-and-career-services/committees/reportslisting/reports/detail/ promote-police-transparency-repeal-crl-50-a ("New York should join other states and prioritize public transparency of police misconduct to ensure accountability and racial equity.  Repealing CRL-50 will be one step in the direction toward combating the searing legacy of systemic racism that continues to mar our country and our state.").  When signing the repeal of § 50-a, Governor Cuomo acknowledged that the Black community has repeatedly been victimized by the police, evidencing an "injustice against minorities in America by the criminal justice system . . . . [t]oday is about enough is enough." *See* Press Release, *Governor Cuomo*.

The law no longer requires police disciplinary records to be kept confidential.  Plaintiffs' self-serving interest in continuing to conceal CCRB records cannot take priority over the public; fundamental interest in transparency and accountability.  This litigation could easily last for years.  It would undermine the clear intent of the legislature to allow law enforcement to continue to avoid public scrutiny of their disciplinary records and their misconduct, further deteriorate public trust, and prey on minority communities during the pendency of this case.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court lift the temporary restraining order currently in place and permit the CCRB to disclose police disciplinary records consistent with the repeal of § 50-a.

Respectfully submitted,

/s/ Charlita Mays

Charlita Mays
Cynthia Chen

SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010
Tel:  (212) 213-6996
Fax:  (212) 213-0849
cmays@spearsimes.com
cchen@spearsimes.com

*Attorneys for Amicus Curiae Center on Race,
Inequality, and the Law at NYU School of Law*