UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Uniformed Fire Officers Association, *et al.* <br><br> Plaintiffs, <br><br> -against- <br><br> Bill de Blasio, in his official capacity as Mayor of the City of New York, *et al.* <br><br> Defendants. | 20 Civ. 5441 (KPF) |

**BRIEF OF *AMICUS CURIAE*
THE LEGAL AID SOCIETY**

## TABLE OF CONTENTS

STATEMENT OF INTEREST .................................................................................................. 2

ARGUMENT ......................................................................................................................... 4

   I.   A Preliminary Injunction Would Undermine the Strong Public Interests in Transparency and Accountability Underlying the State's Legislative Intent to Repeal Section 50-a and Make Officer Disciplinary Records Subject to Public Inspection ....................................................... 4

      A.   Section 50-a Repeal Is Landmark Legislation Intended to Curb Police Abuse and Promote Public Trust ......................................................................................................... 5

      B.   The Legislature Considered and Rejected the Union's Arguments That Certain Police Records Should Not be Released ......................................................................................... 7

   II.   Plaintiffs' Legal Claims Have No Likelihood of Success on the Merits ........................... 12

      A.   Plaintiff's Contractual Claims and Lack Support ................................................... 13

      B.   The City's Choice to Voluntarily Disclose Information Following Landmark Legislation Is Rational and Does Not Impermissibly Discriminate Against Plaintiffs Under the Constitution or New York Law. ...................................................................................... 16

      C.   The Fourteenth Amendment Does Not Prevent Release of The Records Because Plaintiffs Have No Cognizable Interest Protected by Due Process ...................................... 18

      D.   Plaintiffs' Equal Protection Arguments Also Fail Because Officers Are Not Treated Differently from Similarly Situated Individuals...................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Beverlin v. Bd. of Police Comm'rs,*
  722 F.2d 395 (8th Cir 1983) ............................................................................16, 19

*Burns v. Burns,*
  2018 NY Slip Op 05411, 81 N.Y.S.3d 846 (N.Y. App. Div. 4th Dept. 2018) ........................14

*Businesses for a Better N.Y. v. Angello,*
  341 F. App'x 701 (2d Cir. 2009) .............................................................................16

*Confederation of Police v. City of Chi.,*
  481 F. Supp. 566 (N.D.Ill. 1980) .......................................................................17, 19

*Dolman v. United States Tr. Co.,*
  2 N.Y.2d 110 (N.Y. 1956) .....................................................................................14

*Kent v. Jamestown St. Ry. Co.,*
  205 N.Y. 361 (N.Y. 1912) .....................................................................................12

*Lee TT. v. Dowling,*
  87 N.Y.2d 708 (1996) ..........................................................................................18

*Lehnhausen v. Lake Shore Auto Parts Co.,*
  410 U.S. 356 (1973) .............................................................................................16

*Matter of Cole's Estate,*
  235 N.Y. 48 (N.Y. 1923) ......................................................................................12

*Matter of Daily Gazette Co. v. City of Schenectady,*
  93 N.Y.2d 145 (N.Y. 1999) ...................................................................................12

*Matter of N.Y. Civ. Liberties Union v. N.Y. City Police Dept.,*
  32 N.Y.3d 556 (N.Y. 2018) ...................................................................................12

*Matter of Prisoners' Legal Servs. of N.Y. v N.Y. State Dept. of Correctional Servs.,*
  73 N.Y.2d 26 (N.Y. 1988) .....................................................................................12

*Matter of Waters v. N.Y. City Police Dept.,*
  2011 N.Y. Slip. Op. 30742(U) (Sup. Ct., NY Cty. 2011)..........................................16

*Morgan Stanley & Co. Inc. v. Archer Daniels Midland Co.*,
   570 F. Supp. 1529 (S.D.N.Y. 1983)...........................................................................14

*Patrolmen's Benevolent Ass'n of City of New York, Inc. v. New York State Public
   Employment Relations Bd.*,
   848 N.E.2d 448 (N.Y. 2006)....................................................................................14

*Paul v. Davis*,
   424 U.S. 693 (1976).................................................................................................18

*Sadallah v. City of Utica*,
   383 F.3d 34 (2d Cir.2004)........................................................................................18

*Thorpe v. Vill. of Greenwich*,
   No. 5:13-CV-0902 GTS ATB, 2014 WL 788816 (N.D.N.Y. Feb. 25, 2014) ........................19

*Wilcox v. Newark Valley Cent. Sch. Dist.*,
   74 A.D.3d 1558 (N.Y. App. Div. 2010) ...............................................................18

*Amicus curiae* The Legal Aid Society ("Legal Aid"), a long-time advocate for police reform on behalf of itself and its clients, respectfully submits this brief in opposition to the motion filed by Plaintiffs[1] for entry of a preliminary injunction against Defendants.[2]  Plaintiffs' invocation of largely frivolous legal arguments is an attempt to use the federal courts to undermine clear state legislative prerogatives and fundamental values of civil rights and open government.  Earlier this year, New York State passed sweeping legislative reforms, an essential component of which was to remove the special protections afforded to local law enforcement disciplinary records, making those records – like *most* government records in the State of New York – available for public inspection.  The repeal legislation addressed the disturbing pattern of police violence against and harassment of people of color and the inability of policymakers and members of the public to retrieve the information they needed to evaluate the NYPD's promise of self-regulation.  The City seeks to further the State's legislative intent and avoid the unnecessary burden of responding to the tidal wave of individual N.Y. Freedom of Information Law ("FOIL") requests generated in the wake of these reforms by proactively disclosing officer disciplinary records eligible for public disclosure under FOIL.

After trying and failing to lobby the New York State legislature for exceptions that would cover the information at issue in this case,[3] Plaintiffs brought this action against the City to

---

[1] As defined in the Complaint, ECF No. 1-1, Plaintiffs are the Police Benevolent Association of New York ("PBA"); Correction Officers' Benevolent Association of the City of New York; Sergeants Benevolent Association; Lieutenants Benevolent Association; Captains' Endowment Association; Detectives' Endowment Association; Uniformed Fire Officers Association; and Uniformed Firefighters Association of Greater New York (collectively, the "Plaintiffs").

[2] As defined in ECF No. No. 1-1, Defendants are Bill de Blasio; Daniel Nigro; Cynthia Brann; Dermot F. Shea; and Frederick Davie, all in their official capacities, as well as the Civilian Complaint Review Board ("CCRB"); the Fire Department of the City of New York; the New York City department of Correction; the New York City Police Department; and the City of New York (collectively, "Defendants" or the "City").

[3] *See* Press Release, Police Benevolent Association of the City of New York ("NYC PBA"), PBA President Fights to Preserve Civil Rights Law 50 A (Dec. 24, 2018), http://nycpba.org/press-releases/2018/fighting-for-civil-rights-law-50-a/; N.Y. State Senate, *Policing (S3695), Repeals Provisions Relating to Personnel Records of Police Officers, Firefighters, and Correctional Officers*: *Senate Standing Committee on Codes Public Hearing*, 2019 Leg.

prevent the full implementation of this historic legislation.  Plaintiffs' inventive smorgasbord of legal claims provides no basis for the Court to issue a preliminary injunction that would prevent the City from voluntarily disclosing information that is statutorily obligated to disclose under state law.  Every day that Plaintiffs are permitted to delay disclosure through this baseless litigation thwarts public accountability for officers, harms members of the public, including Legal Aid's clients, who benefit from police transparency, and contravenes the will of the people of the State of New York, through their elected legislature, to make all officer records available to the public.  The Court should deny Plaintiffs' motion for a preliminary injunction.

## STATEMENT OF INTEREST

Legal Aid is the oldest and largest provider of legal services to low-income families and individuals in the United States.  Founded in 1876, Legal Aid annually provides legal assistance to families and individuals in hundreds of thousands of matters in every borough of New York City.  Legal Aid serves as the primary public defender of low income people prosecuted in the New York court system in all five New York City boroughs.  For years, Legal Aid has used police and correction officer disciplinary records in its direct representation of individual clients

---

(N.Y. Oct. 17, 2019) (testimonies of NYC PBA President Patrick J. Lynch and COBA President Elias Husamudeen),
https://www.nysenate.gov/sites/default/files/testimonies_on_policing_s3695_repeals_provisions_101719.pdf; Press Release, NYC PBA, *PBA Debunks 50-A Repeal Advocates' Lies* (Oct. 24, 2019), https://www.nycpba.org/press-releases/2019/pba-corrects-lies-on-50-a/; Press Release, PBA Responds to Governor Cuomo's Remarks on Police Personnel Records Law (May 30, 2020), https://www.nycpba.org/press-releases/2020/pba-responds-to-cuomo-on-records/; *New York State Police and Corrections Unions Memorandum of Opposition to the State legislature's "Raft of Anti-Police Bills"* (June 5, 2020), https://www.nycpba.org/media/36577/200605-coalition.pdf;  Press Conference, *NYC PBA Leads Coalition of 21 Law Enforcement Unions Condemning Anti-Police Environment* (June 9, 2020), https://www.nycpba.org/news-items/pba-video/2020/nyc-pba-leads-coalition-of-21-law-enforcement-unions-condemning-anti-police-environment/; Press Release, NYC PBA Statement on 50-A Repeal (June 10, 2020), https://www.nycpba.org/press-releases/2020/nyc-pba-statement-on-50-a-repeal/; Press Release, *NYC PBA Statement on Signing of Anti-Police Measures* (June 12, 2020), https://www.nycpba.org/press-releases/2020/nyc-pba-statement-on-signing-of-anti-police-measures/.

and worked to ensure transparency and accountably in the City through litigation, policy reform and advocacy to ensure public access to records of officer discipline.

Transparency in officer misconduct records is critical for all actors in the criminal justice system,[4] but few people are more directly impacted by issues of officer credibility than those who are prosecuted for crimes based on officer observations, statements, and testimony. Within the first seventy-two hours of an arrest, prosecutors make charging decisions and judges decide whether to remand, release, or set bail, often based on the word of police officers. When relevant information on an officers' misconduct record is available, Legal Aid's criminal defense attorneys provide this information to prosecutors and judges, often leading to better outcomes for Legal Aid's clients, including the dismissal of charges or pre-trial release. Timely access to police misconduct records can mean the difference between being released from police custody versus spending months or even years incarcerated pre-trial, losing a job, losing custody of children, and other devastating collateral consequences of facing criminal charges.

Legal Aid maintains and publishes the nationally recognized Cop Accountability Project ("CAP") database, which collects information on police misconduct and abuses. Legal Aid has also filed and litigated numerous N.Y. Freedom of Information Law ("FOIL") requests seeking access to the records that the Unions seek to enjoin the City and NYCLU from disclosing in this case, and has pursued every available opportunity known to secure information falling into those broad categories of records, including by advocating strenuously for City agencies to proactively disclose them.

---

[4] *See, e.g.*, James C. McKinley, Jr., *Manhattan District Attorney Demands Access to Police Records*, N.Y. Times (July 8, 2018), https://www.nytimes.com/2018/07/08/nyregion/manhattan-district-attorney-police-records.html.

Further, Legal Aid's law reform units use officer misconduct records in civil rights litigation on behalf of victims of police misconduct and to contribute to public and policymaker understanding of the failings of the NYPD's systems for holding officers accountable for misconduct. Every day that this information is kept from the public harms Legal Aid's ability to serve its clients.

## ARGUMENT

**I.   A Preliminary Injunction Would Undermine the Strong Public Interests in Transparency and Accountability Underlying the State's Legislative Intent to Repeal Section 50-a and Make Officer Disciplinary Records Subject to Public Inspection**

Prior to June 12, 2020, all state and local government employee records were generally subject to FOIL, *except* the records of a specific set of public employees which included Plaintiffs' members due to a controversial statute known as Police Secrecy Law 50-a ("Section 50-a"). Courts found that Section 50-a broadly prevented public access to the disciplinary records of police, correction officers, and firefighters. This changed in June 2020, when the New York State legislature passed S8496/A10611 as part of the "Say Their Name" Reform Agenda package of bills,[5] which ushered in several landmark reforms designed to enhance police transparency and accountability. The legislature extensively debated the repeal of Section 50-a and ultimately passed the legislation, fully repealing Section 50-a and specifying how FOIL exemptions were to be applied to officer disciplinary records. The bill was subsequently signed into law by Governor Andrew M. Cuomo on June 12, 2020. The repeal of Section 50-a brought

---

[5] "Say Their Names" is a reference to the #SayTheirNames campaign, which encourages "publications and social media users to not just identify victims of police brutality by the incidents that killed them but to focus on their individual humanity and use their names." Caitlin O'Kane, *"Say Their Names:" The list of people injured or killed in officer-involved incidents is still growing*, CBS News (June 8, 2020), https://www.cbsnews.com/news/say-their-names-list-people-injured-killed-police-officer-involved-incidents/.

previously-exempt disciplinary records squarely *within* the scope of FOIL, including all of the records the City seeks to disclose in this case.  This brings New York's protections for police records in line with those of other New York public officers and the majority of states across the country.[6]

### A.  Section 50-a Repeal Is Landmark Legislation Intended to Curb Police Abuse and Promote Public Trust

The enactment of the law repealing Section 50-a marked the culmination of years of organizing and advocacy by hundreds of community-based organizations, good government groups, and other proponents of police transparency and accountability, including Legal Aid.[7] The groups that led this advocacy effort represented constituents from all five boroughs of New York City and from every corner of New York State.[8]  Among these organizations, a group of mothers whose sons were killed by NYPD officers, including Gwen Carr, the mother of Eric Garner, Constance Malcolm, the mother of Ramarley Graham, and Victoria Bell, the mother of Sean Bell, were among the most committed and vocal of advocates for repealing Section 50-a.[9] These family members who lost loved ones to NYPD killings and members of the Communities United for Police Reform campaign held dozens of lobbying visits with legislators,[10] organized

---

[6] *See* Hon. Mary Jo White, Hon. Robert L. Capers, and Hon. Barbara S. Jones, *The Report of the Independent Panel on the Disciplinary System of the New York City Police Department*, 18 (Jan. 25, 2019), https://www.independentpanelreportnypd.net/index.html. *See also* Robert Lewis, et al., *New York Leads in Shielding Police Misconduct*, N.Y. Pub. Radio WNYC (Oct. 15, 2015) https://www.wnyc.org/story/new-york-leads-in-shielding-police-misconduct/; *Is Police Misconduct a Secret in Your State?*, N.Y. Pub. Radio WNYC https://project.wnyc.org/disciplinary-records/.

[7] *See* Tom Robbins, *How a Coalition of New York Activists Revealed Police Department Secrets*, New Yorker (July 17, 2020).

[8] Comms. United for Police Reform, Safer NY Endorsers, https://www.changethenypd.org/safer-ny/endorsers (last visited Aug. 14, 2020).

[9] *See* N.Y. State Senate, *supra* n. 3 testimonies of Valerie Bell, Gwen Carr, and Constance Malcolm); Justice Committee, *NY Families Who've Lost Loved Ones to Police Call for a Full Repeal of Police Secrecy Law, 50-a*, (June 1, 2020), https://www.justicecommittee.org/post/ny-families-whove-lost-loved-ones-to-police-call-for-full-repeal-of-police-secrecy-law-50

[10] *See* Rocco Parascandola and John Annese, *EXCLUSIVE: Reform groups say they'll lobby hard in Albany to repeal law that*

large rallies and press conferences,[11] penned opinion editorials and letters to the editor,[12] and

mobilized hundreds of thousands of New Yorkers to contact their legislators in support of

repealing Section 50-a.[13]   These advocates laid the groundwork for the repeal of Section 50-a to

become a rallying cry at anti-police violence protests,[14] garnering the endorsement of groups

ranging from the New York City Bar Association,[15] students and faculty at all fifteen New York

law schools,[16] and even hundreds of celebrity musicians including Mariah Carey and Ariana

Grande.[17]   This groundswell of support for repealing Section 50-a translated into a decisive

victory for the advocates when overwhelming majorities in both the New York Assembly (101

---

*keeps police discipline records secret*, N.Y. Daily News (Feb. 11, 2019), http://www.nydailynews.com/new-york/nyc-crime/ny-metro-police-reform-groups-want-discipline-records-public-20190211-story.html.

[11] See Press Release, Comms. United for Police Reform, *Ahead of New York Senate Hearings, Elected Officials & Groups call for Full Repeal of State Police Secrecy Law (50-A) That is Worst in the Nation,* (Oct. 16, 2019), https://www.changethenypd.org/releases/ahead-new-york-senate-hearings-elected-officials-groups-call-full-repeal-state-police; Press Release, *Police Accountability Advocates and Progressive Leaders Call on Governor Cuomo and State Legislative Leaders to Pass Safer NY Act, Including Special Prosecutor, #PoliceSTATAct, and Full Repeal of 50-A Before* June 19, (June 12, 2019), https://www.changethenypd.org/releases/police-accountability-advocates-and-progressive-leaders-call-governor-cuomo-and-state.

[12] *See*, e.g., Cynthia Conti-Cook and Dan Quart, *Holding law enforcement accountable begins with full repeal of 50-a, City & State* (Feb. 6, 2019), https://www.cityandstateny.com/articles/opinion/opinion/full-repeal-50a-nypd-oversight.html.

[13] Elly Belle, *Why Advocates in New York Are Working to Repeal The 50-A Law*, Refinery29 (June 9, 2020), https://www.refinery29.com/en-us/2020/06/9855031/repeal-50a-law-police-records-meaning ("As of Friday, June 5, constituents in New York have sent over 100,000 emails, made over 20,000 phone calls, and spoken out constantly on social media to urge public officials to repeal 50-A").

[14] See Tom Robbins, supra n.7.

[15] NYC Bar, *Promote Police Transparency with the Repeal of CRL 50-a*, (June 9, 2020), https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/promote-police-transparency-repeal-crl-50-a.

[16] See Jason Grant, *Students, Faculty from All 15 NY Law Schools Signed Petition Calling for Repeal of Section 50-a*, N.Y. Law Journal (June 9, 2020), https://www.law.com/newyorklawjournal/2020/06/09/students-faculty-from-all-15-ny-law-schools-sign-petition-calling-for-repeal-of-section-50-a/.

[17] See Mackenzie Nichols, *Gov. Andrew Cuomo to Sign 50-A Law Reform Supported by Ariana Grande, Mariah Carey and Other Artists*, Variety (June 10, 2020), https://variety.com/2020/music/news/gov-andrew-cuomo-to-sign-50-a-law-reform-after-backlash-from-ariana-grande-mariah-carey-and-other-artists-1234630225/.

Ayes to 43 Nays),[18]and the New York Senate (40 Ayes to 22 Nays) voted to repeal Section 50-a in early June 2020.[19]

Following repeal, the City announced that it would be proactively releasing information about disciplinary complaints to the public in light of the clear legislative direction of the "Say Their Name" Reform Agenda, which meant that the public would not need to make a FOIL request in order to access such information.  Plaintiffs sued seeking to enjoin a subset of the records that the City intended to release which included all unsubstantiated, unfounded, or exonerated complaints and settlement agreements relating to officer discipline (the "Records"). While the Plaintiffs have tried to paint the City as acting without regard to their purported rights in releasing the Records, the City is merely following its obligation to the public to disclose government records covered by FOIL, in line with the clear legislative text and intent articulated in the repeal of Section 50-a. Plaintiffs now ask this court to write into the law an entirely new FOIL exemption for "unsubstantiated, unfounded, or exonerated" complaints that the legislature specifically *rejected.*

### B. The Legislature Considered and Rejected the Union's Arguments That Certain Police Records Should Not be Released

The Section 50-a repeal legislation contains only two narrow exemptions to FOIL where "law enforcement disciplinary records" must be redacted by an agency.  This reflects the balance the legislature struck between protecting privacy and ensuring transparency and accountability. The first exemption requires *redactions* for the medical history, home addresses, personal

---

[18] N.Y. State Assembly, *Assembly Session* at 7:55:17 (June 9, 2020), http://nystateassembly.granicus.com/MediaPlayer.php?view_id=7&clip_id=5533&meta_id=118598 (voting on A.10611).
[19] Sen. Bailey, *S.8496 Assembly Vote*, 2020 State Senate (N.Y. 2020), https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=S08496&term=2019&Summary=Y&Floor%26nbspVotes=Y&Text=Y.

telephone numbers, personal cell phone numbers, personal email addresses, social security numbers, and use of employee assistance programs, mental health counseling, and substance abuse programs by law enforcement officers.[20]  The second exemption permits *redactions* of portions of law enforcement disciplinary records "pertaining to technical infractions" and only under circumstances where the violation has no connection to public interaction, public concern, or any of the officers' duties.[21]  Plaintiffs' position here, in contrast, is that only substantiated, final allegations may be released.  Nothing in the new law supports this.

The state and city unions, including Plaintiffs, participated in the legislative drafting process where they advanced many of the same arguments that they are making now.  All of those arguments were rejected.  The legislature held hearings on the repeal of Section 50-a for eight months before passing the "Say Their Name" legislation, and the unions were involved from the very beginning of that process.[22]

Most importantly, the legislature considered *and rejected* proposals to revise Section 50-a in a way that would protect unsubstantiated complaints from FOIL disclosure.  In New York State Senate hearings discussing Section 50-a, legislators discussed a possible exemption for 'unsubstantiated' records repeatedly.  Senator Bailey explained "the term 'substantiated' or 'unsubstantiated' is not a term that appears anywhere in this bill.  That is a term of art that is unique to the CCRB and the NYPD.  So, the notion of the word 'substantiated' or

---

[20] Law enforcement agencies responding to FOIL requests must comply with N.Y. Pub. Off. Law §89, which outlines the kinds of information contained in disciplinary records to be redacted prior to disclosure. Sen. Bailey S8496;  N.Y. Assemb. A10611.

[21] Technical infractions is defined as a "minor rule violation by a person employed by a law enforcement agency . . . that (a) do not involve interactions with members of the public, (b) are not of public concern, and (c) are not otherwise connected to such person's investigative, enforcement, training, supervision, or reporting responsibilities." *Id*.

[22] PBA gave testimony before the New York State Standing Committee on Codes on Section 50-a as early as October 17, 2019.  *See* NYC PBA, *Statement of PBA President Patrick J. Lynch*, (Oct. 17, 2019), https://www.nycpba.org/media/35716/191017.pdf. *See also  Supplemental Statement of PBA President Patrick J. Lynch*, (Oct. 24, 2019), https://www.nycpba.org/media/35728/191024.pdf .

'unsubstantiated' could not be added because that is an internal determination."  This comment was made in response to Senator Akshar's initial mention of a possible exemption for 'unsubstantiated' records in light of the fact "that that is an issue in which the police and corrections community have spoken about a lot."  The point was brought up again when Senator Akshar requested the legislators "go back to [their discussion about] unsubstantiated complaints," to which Senator Bailey noted that "unsubstantiated" or "substantiated," records were never "in the previous iteration" and "don't exist in the current statute" because "'unsubstantiated' does not meant that something didn't happen…"  He added that " [because the senators] don't know the specific facts, [] it's very difficult to opine on 'unsubstantiated' versus 'substantiated'" in the context of the legislation.  The senators discussed "unsubstantiated" records again, comparing disclosures of teachers' records as compared to law enforcement officers,  and Senator Bailey explained the impossibility of ascertaining a general definition for the term 'unsubstantiated', noting that "in the City of New York roughly 3,000 individuals made complaints about racial profiling.  Zero were substantiated."  Senator Bailey further noted that the meaning of the terms "substantiated" and "unsubstantiated" were highly fact-specific, differed across agencies and were dependent upon "the internal disciplinary process" such that the imprecise terms were ill-fitting for inclusion in the legislation.  The senators also discussed and rejected a possible exemption for 'unfounded' records as well.  After extensive discussion at several points on these issues as well as other issues and negotiations that resulted in "ma[king] some changes to this [] piece of legislation[,]" the legislators agreed to vote and did vote overwhelmingly in favor of a version of the bill that contained no such exemptions.[23]

---

[23] *Tr. of Regular Session*, N.Y. State Senate (June 9,2020), 1793:18-21, 1794:2-12, 1797:19-20, 1798:10-15, 1805:22 – 1806:2, 1812:20 – 1813:1, https://www.nysenate.gov/transcripts/floor-transcript-060920txt.

Furthermore, the legislature recognized that a designation of "unsubstantiated" does not mean that the officer did not commit the acts for which they are accused, nor does it exonerate the officer. 38-A RCNY § 1-31(e). Instead, an "unsubstantiated" finding simply means that the investigation failed to find sufficient evidence to determine whether the officer did or did not engage in misconduct, either because the investigators failed to determine if the incident did or did not occur, or because it was not certain that the incident actually violated NYPD's policies. *Id.*

Indeed, in practice, "unsubstantiated" means very little because of the well-publicized inadequacies in the City's own investigatory and record-keeping processes: More than 99 percent of NYPD complaints never reach the final resolution of a disciplinary trial or settlement, and 40 percent of the less than one percent of complaints remaining are settled.[24] In 2019, for example, a review by the New York City Department of Investigation of the NYPD's handling of complaints of racially biased policing found that *none* of the 2,495 complaints filed against the NYPD between 2014 and 2018 had been substantiated, and an audit of the investigations conducted into those complaints found inadequacies in how the NYPD investigated and tracked complaints.[25] CCRB investigators are often unable to reach conclusive determinations as to misconduct, in large part because they rely on the NYPD to disclose evidence, such as body-camera footage, and the NYPD has nearly complete discretion over its cooperation with CCRB investigations.[26] For example, according to an internal CCRB memo, the CCRB made 212

---

[24] Compl. ¶ 48.

[25] Press Release, NYC Dep't of Investigation, Examination By DOI's Office of the Inspector General for the NYPD Identifies Deficiencies and Recommends Improvements in How NYPD Handles Complaints of Biased Policing (June 26, 2019), https://www1.nyc.gov/assets/doi/reports/pdf/2019/Jun/19BiasRpt_62619.pdf.

[26] Eric Umansky*, We're Publishing Thousands of Police Discipline Records That New York Kept Secret for Decades, ProPublica* (July 26, 2020), https://www.propublica.org/article/nypd-civilian-complaint-review-board-editors-note.

requests for body-worn camera footage in May 2020, and the NYPD responded to just 33 of them.[27]  The number of complaints deemed "unfounded" (i.e., where an investigator is actually able to determine the incident did not happen as alleged) is small and accounts for approximately nine percent of all complaints made, and—in part because Section 50-a  previously blocked access to this information—there is no way of knowing how accurate these internal investigations were.[28]

The legislature discussed proposals to remove unsubstantiated complaints from the scope of the Section 50-a repeal during floor debates of S8496 and A10611 on June 9, 2020,[29]and the enacted repeal bill contains no such exemption.  The New York State Senate's statement of purpose for the repeal bill recognizes the importance of *all* complaints being disclosed:  "Police-involved killings by law enforcement officials who have had histories of *misconduct complaints*, and *in some cases* recommendations of departmental charges, have increased the need to make these records more accessible."[30]  Members of the legislature have subsequently confirmed that this was their intent.  Assemblyman Daniel O'Donnell, the sponsor of Assembly Bill A10611, responded to a question on whether the bill distinguished between substantiated and unsubstantiated claims, saying "No, we don't distinguish between those two things in this law."[31]  Senator Jamaal Bailey, the Senate sponsor of S8496, explained the legislature's choice to make

---

[27] Eric Umansky, *The NYPD Isn't Giving Critical Bodycam Footage to Officials Investigating Alleged Abuse, ProPublica* (July 3, 2020), https://www.propublica.org/article/the-nypd-isnt-giving-critical-bodycam-footage-to-officials-investigating-alleged-abuse.

[28]  *Id.*

[29] *Supra* n. 23.

[30] Sen. Bailey, *Senate Bill S.8496*, N.Y. State Senate (June 6, 2020), https://www.nysenate.gov/legislation/bills/2019/s8496.

[31] *Supra* n. 18 at 1:57 – 1:59  (voting on A.10611); *see also* Ian Pickus, *NYS Assemblyman O'Donnell On The End of 50-a*, WAMC N.E. Public Radio (June 10, 2020), https://www.wamc.org/post/nys-assemblyman-odonnell-end-50 ("There's something like 4,000 complaints in the last two years in New York City about racial profiling and the police department has found that zero, were substantiated, and that just simply can't be. So I have confidence in, in the FOIL process."); *see also*

unsubstantiated complaints subject to FOIL, explaining that "[u]nsubstantiated does not mean something didn't happen."[32]  Both sponsors discussed how thousands of complaints of racial discrimination have been submitted to the NYPD's Internal Affairs Bureau, but that zero have been deemed substantiated—an example of why restricting disclosure to only substantiated complaints would completely contradict the legislature's intent of mandating the transparency of police misconduct records.[33]  Indeed, viewing complaints through the "binary lens" of substantiated/unsubstantiated itself is inconsistent with the repeal of Section 50-a.[34]

This clear legislative intent places the Plaintiffs' request for a preliminary injunction in direct opposition to the clear public interest and state legislative prerogatives.[35]  The FOIL exemption Plaintiffs are lobbying this court to invent would allow the police and other state officers to keep information away from the public simply by not cooperating with the CCRB or not doing a diligent job investigating their own officers.  This would violate both the plain language of FOIL and the intent of the repeal of Section 50-a, and this court should decline Plaintiffs' request for it to rewrite New York state law.

## II.   Plaintiffs' Legal Claims Have No Likelihood of Success on the Merits

Plaintiffs assert more than a half dozen claims for relief, none of which have a likelihood

---

[32] *Supra* n. 23 at ¶¶ 1798:22 – 1799:8.

[33] *Id.* at 1805-06.

[34] *Id.*

[35] The import of repealing Section 50-a was clear to the legislature.  Beyond the months of debates,  courts consistently held that Section 50-a barred release of officers' disciplinary records. *See Matter of N.Y. Civ. Liberties Union v. N.Y. City Police Dept.*, 32 N.Y.3d 556, 564 (N.Y. 2018) (holding that NYPD disciplinary decisions fell within Section 50-a);  *Matter of Daily Gazette Co. v. City of Schenectady*, 93 N.Y.2d 145, 159 (N.Y. 1999) (holding that records regarding disciplinary action against officers following off-duty incidents involving the pelting of civilians' vehicle with raw eggs were confidential personnel records under Section 50-a); *Matter of Prisoners' Legal Servs. of N.Y. v N.Y. State Dept. of Correctional Servs.*, 73 N.Y.2d 26, 32 (N.Y. 1988) (holding inmates grievances against state correction officers and administrative decisions related thereto constituted confidential personnel records under Section 50-a).  The legislature understood that it would be removing these broad protections and eliminating the only exemption to FOIL requiring categorical withholding of police records.  *See Matter of Cole's Estate*, 235 N.Y. 48 (N.Y. 1923) (noting legislature is presumed to be aware of judicial interpretation of existing law when it legislates); *Kent v. Jamestown St. Ry. Co.*, 205 N.Y. 361 (N.Y. 1912) (same).

of success on the merits that warrants issuance of a preliminary injunction.  Plaintiffs' claims

based on settlement agreements and collective bargaining agreements fail because the contracts

do not support Plaintiffs' argument.  Plaintiffs' claims based on the idea that the public

disclosure of records following landmark legislation making those records publicly accessible is

"arbitrary and capricious" or unconstitutionally discriminatory against them are absurd in light of

the obvious public policy justification for such disclosures.  Finally, Plaintiffs cannot meet the

burden on them to show that releasing records of public employee disciplinary processes

constitutes a reputational threat that rises to constitutional proportions.  Given the weakness of

these legal claims, Plaintiffs have provided the Court no basis for issuing a preliminary

injunction that undermines police accountability and the intent of the New York state legislature.

### A.  Plaintiff's Contractual Claims and Lack Support

Plaintiffs argue that disclosure of officer disciplinary records would violate two separate

contractual obligations of the City: (1) settlement agreements between police officers and the

NYPD that were entered into before the repeal of Section 50-a, and (2) Plaintiffs' collective

bargaining agreements. Compl. ¶ 65; Plaintiffs' Brief (July 17, 2020), ECF No. 10-12  ("Pl. Br.")

at 21; Compl. ¶¶ 52-58; Pl. Br. at 11-12.  These claims are without merit, as they cite no specific

contractual provisions addressing public disclosure of these records.

Plaintiffs' claim appears to be that Section 50-a became a material term of every

agreement and endures even after its repeal, but they present no evidence that any contract

explicitly references either Section 50-a, either in substance or for purposes of incorporating its

provisions. Pl. Br. at 21; Compl. ¶¶ 52-58; Pl. Br. at 11-12. The canon of construction the

Plaintiffs rely on for the proposition that Section 50-a became part of their contracts because it

was the law in effect at the time does not help them.  The canon provides that existing law can be

used to give meaning to terms, not to create terms or provisions that were never negotiated.

13

None of the Plaintiffs' cited case law suggests otherwise.  Pl. Br. at 21 (citing *Skandia*, 441 F. Supp. at 724 (construing phrase "statutory successor" in light of statutory scheme); *Morgan Stanley & Co. Inc. v. Archer Daniels Midland Co.*, 570 F. Supp. 1529, 1541 (S.D.N.Y. 1983) (importing rules of construction); *see also  Dolman v. United States Tr. Co.*, 2 N.Y.2d 110, 116 (N.Y. 1956) (conforming definition of "condemnation" to statutory scheme); *Burns v. Burns*, 2018 NY Slip Op 05411, 81 N.Y.S.3d 846 (N.Y. App. Div. 4th Dept. 2018) (same for "maintenance").

The specific restrictions in the collective bargaining agreements were discussed before the Court during the hearing on the TRO and warrant particular attention, because their terms are far more specific than was apparent from that discussion.  *See* SDNY July 22, 2020 Hearing Transcript ("Tr.") at 38-40.  These contracts do not purport to require the City to keep disciplinary records hidden from the public; at most, the collective bargaining agreements mandate removal of records from a particular personnel file maintained by Plaintiffs' members' employer, such that the employer can no longer base employment-related decisions upon that record. *See, e.g.*, U.S. Dep't of Labor *Collective Bargaining Agreement* ("CBA") Art. XVI, Section 7(c).  Further, New York law prohibits collective bargaining on the right to have disciplinary records expunged. *Patrolmen's Benevolent Ass'n of City of New York, Inc. v. New York State Public Employment Relations Bd.*, 848 N.E.2d 448, (N.Y. 2006) (finding a public policy exclusion to collective bargaining on matters of police discipline, including the right to have disciplinary records expunged).  Plaintiffs ignore that allegations and investigations of potential misconduct and disciplinary records are maintained by units within the NYPD for purposes other than personnel matters as well as by other agencies that have *no* obligations under the collective bargaining agreements to delete records or otherwise:  the CCRB maintains

14

records on investigations into NYPD officers that it regularly uses to produce reports containing aggregate data and statistics concerning civilian complaints against NYPD officers,[36] the NYPD's Force Investigation Division maintains records on use of force to audit, analyze, and report on the department's use of force,[37] the NYPD's Risk Management Bureau maintains records related to officer misconduct to assess the department's trainings and policies in addition to working with other government agencies to improve policing and community relations,[38] the Department of Investigations investigates allegations of potential criminal misconduct across all of the City's agencies, district attorneys' offices maintain their own databases of police misconduct to assess the credibility of officer witnesses,[39] and OATH makes its decisions about *all* City employees subject to its jurisdiction searchable on an internet database.  The CBA terms at issue in this case are about the use of personnel records in the evaluation of the officer.[40]  They are not an agreement to completely remove the document from existence in all City records that are used for non-personnel purposes.  Indeed, the terms of the CBA could not mandate the *complete* destruction of such records, as the City is often obligated to maintain these records under preservation orders in both civil and criminal litigation as well as under FOIL, which imposes distinct obligations on these other agencies to make available much of the same information that Plaintiffs claim must be kept hidden in this action.

---

[36] *See* CCRB, *Reports*, https://www1.nyc.gov/site/ccrb/policy/reports.page ("The CCRB issues a minimum of 14 reports per year to fulfill its mandate to inform the public and New York City elected officials about Agency operations, complaint activity, case dispositions and police department discipline.").

[37] *See* Myles Miller, *Inside the NYPD Unit That Studies Use of Police Force*, NY1 (Jan. 30, 2019), https://www.ny1.com/nyc/all-boroughs/news/2019/01/30/inside-the-new-nypd-unit-that-studies-use-of-police-force.

[38] *See* NYPD, *Risk Management*, https://www1.nyc.gov/site/nypd/bureaus/administrative/risk-management.page.

[39] *See* Joseph Goldstein, *Why 7 Police Officers Were Blacklisted in Brooklyn*, N.Y. Times (Nov. 7, 2019), https://www.nytimes.com/2019/11/07/nyregion/police-credibility-brooklyn-district-attorney.html.

[40] *See, e.g.,* Article XV, section 7(c) of the CBA entered into between the SBA and the City stating the NYPD "will upon written request to the Chief of Personnel by the individual employee, remove from the Personnel Folder investigative reports which, upon completion of the investigation are classified 'exonerated' and/or 'unfounded'."

**B. The City's Choice to Voluntarily Disclose Information Following Landmark Legislation Is Rational and Does Not Impermissibly Discriminate Against Plaintiffs Under the Constitution or New York Law.**

Plaintiffs' make two conceptually related arguments that the records should not be disclosed because it would infringe on Plaintiffs' constitutional right to equal protection, and that it is "arbitrary and capricious" under New York state law (Article 78) to change the policy of releasing plaintiff's records after landmark legislation that made plaintiff's records available to the public. Equal protection claims are evaluated under a rational basis standard,[41] and Article 78 claims are also evaluated under a similar rational basis standard.[42]

There is not a remotely difficult question as to whether the government has a rational basis for its actions: it does.[43]  The City's decision to disclose the Records related to officer misconduct plainly furthers legitimate government interests in protecting the public from officer misconduct, ensuring officer accountability, and improving public trust.  Each of these reflects legitimate government interests.  The role of police officers in society and the unique responsibilities they carry and harms they are capable of also clearly explains why the City might choose to release allegations of their misconduct, but may not proactively release allegations of misconduct by other city employees, such as teachers or sanitation workers.  *See, e.g.*, *Beverlin v. Bd. of Police Comm'rs*, 722 F.2d 395 (8th Cir 1983) (upholding statute that treated police officers differently from other city employees in collective bargaining procedures because of "unique place in society"); *Confederation of Police v. City of Chi.*, 481 F. Supp. 566, 568

---

[41] *Businesses for a Better N.Y. v. Angello*, 341 F. App'x 701, 704 (2d Cir. 2009) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973).

[42] *Matter of Waters v. N.Y. City Police Dept.*, 2011 N.Y. Slip. Op. 30742(U) (Sup. Ct., NY Cty. 2011).

[43] This rational basis is thoroughly documented in The Report of the Independent Panel on the Disciplinary System of the New York City Police Department, commissioned by the NYPD and chaired by the Honorable Mary Jo White.  The Commission presented detailed findings on the ways that § 50-a thwarted NYPD transparency and accountability, and recommended an overhaul of § 50-a as central to recommended reforms of the NYPD's disciplinary system. White, Capers, & Jones, *supra* n.6 at 17-20, 44-47.

(N.D.Ill. 1980) (finding "functional differences between police officers and other city employees may justify different treatment for the police officers").

The link between proactive disclosure and the rational (indeed, admirable) legislative intent behind the repeal of Section 50-a is illustrated by the progress toward police accountability already achieved by the limited disclosure of officer disciplinary records to date.  In the few weeks since ProPublica published an online database of just a fraction of the available disciplinary records that the government is now obligated to disclose after Section 50-a repeal, the press and members of the public have identified significant points of public interest in their analysis of the data, including that one in nine NYPD officers has had a complaint against them substantiated, 34 officers in their database have faced 40 or more allegations, and 303 officers have had five or more substantiated allegations yet remained employed.[44]  Although the available data shows only brief descriptions of the alleged misconduct, ProPublica also reported that there were nearly 5,000 allegations of "physical force," nearly 2,000 of "frisk" and more than 600 of "gun pointed."[45]

Moreover, the City's decision to proactively disclose records is a rational response to the fact that, following the repeal of Section 50-a, it received dozens of FOIL requests for officer disciplinary records that it was now statutorily obligated to fulfill, and anticipated receiving many more for the same set of records.  The City's decision to proactively publish information

---

[44] *See, e.g., supra* n. 26; Aaron Feis, *NYPD disciplinary records reveal a host of substantiated complaints: report*, New York Post (July 26, 2020), https://nypost.com/2020/07/26/nypd-records-reveal-a-host-of-substantiated-complaints-report/; Christopher Robbins et al*., Newly Released Data Shows 1 Out Of Every 9 NYPD Officers Has A Confirmed Record Of Miscon*duct,  Gothamist (July 28, 2020), https://gothamist.com/news/nypd-police-ccrb-database-shows-confirmed-record-misconduct; Jose Pagliery (@Jose_Pagliery), TWITTER (July 29, 2020, 9:48 AM), https://mobile.twitter.com/Jose_ Pagliery/status/1288471444490420227; *Reportes revelan que policías de Nueva York señalados por abuso de autoridad no reciben los castigos acordados*, Univision (July 28, 2020), https://www.univision.com/local/nueva-york-wxtv/reportes-revelan-que-policias-de-nueva-york-senalados-por-abuso-de-autoridad-no-reciben-los-castigos-acordados-video.
[45] *Supra* n. 26.

avoided a fiscal and administrative burden on both the public and the City to draft, process and respond to these many overlapping and duplicative requests.

### C. The Fourteenth Amendment Does Not Prevent Release of The Records Because Plaintiffs Have No Cognizable Interest Protected by Due Process

Police officers do not have a due process right to prevent the release of documents pertaining to internal disciplinary processes.[46]  Indeed, at least a dozen states routinely release information on officer discipline.[47]

The due process theory invoked by Plaintiffs requires that there be both a reputational "stigma" and a "plus" factor affecting some more "tangible" interest.  *Paul v. Davis,* 424 U.S. 693 (1976)*; Lee TT. v. Dowling*, 87 N.Y.2d 708 (1996) (holding same under New York Constitution).  But Plaintiffs have not, and cannot, meet their burden to show that the City's release of the Records would be defamatory.  *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir.2004) (plaintiffs alleging stigma-plus claims bear the burden to show that statements are false and cause specific injury to reputation); *Wilcox v. Newark Valley Cent. Sch. Dist.*, 74 A.D.3d 1558, 1562  (N.Y. App. Div. 2010))  (same).  Plaintiffs have made no showing that any record that would be released by the City would inaccurately reflect the disciplinary process.  Moreover, the records being released would also include the *outcome* of the complaints, the public would be aware if a complaint was unsubstantiated, negating any claim of defamation or reputation injury.[48]  Releasing truthful, factual information about the nature and outcome of complaints

---

[46] Plaintiffs bring claims under the due process clauses of both the U.S. and N.Y. Constitutions but have identified no substantive difference between the two claims.

[47] As of 2015, police disciplinary records were either generally publicly available or available in some situations in 27 of the 50 states. *See* Robert Lewis, Noah Veltman & Xander Landen, *Is Police Misconduct a Secret in Your State,* N.Y. Pub. RadioWNYC (2015), https://www.wnyc.org/story/police-misconduct-records/.

[48] The City described its planned release of records at a hearing on July 22, 2020.  The City explained that the FDNY intended to release no additional records beyond what it released prior to repeal, the NYPD would release substantiated, final complaints, the CCRB would release all complaints and their outcome, and DOC would release substantiated complaints.

cannot be defamatory and cannot satisfy the "stigma" prong for purposes of due process.  *See Thorpe v. Vill. of Greenwich*, No. 5:13-CV-0902GTSATB, 2014 WL 788816, at *6 (N.D.N.Y. Feb. 25, 2014) (holding that the plaintiff lost on his "stigma plus" claim because he could not show the defendant's statements were actually false).

### D.  Plaintiffs' Equal Protection Arguments Also Fail Because Officers Are Not Treated Differently from Similarly Situated Individuals

With respect to Plaintiffs' equal protection claims, Plaintiffs' argument also fails because they have not shown they are treated differently from other "similarly situated" individuals. Plaintiffs are wrong that they are being "singled out" by the City's policy compared to other civil servants.  Compl. ¶¶ 59-64; Pl. Br. at 19.  For decades, because of Section 50-a, officers were afforded *preferential* treatment over many other similarly-situated civil servants because of Section 50-a. The City's release of the Records would not be disparate treatment but instead put Plaintiffs' members on the same footing as other civil servants that work for the City.[49]

Misconduct allegations against all City employees except members of the NYPD are heard by the Office of Administrative Trials and Hearings ("OATH"), which publishes decisions on its website, including decisions where the allegations are not proven. *See, e.g. Dep't of Education v. Williams,* OATH Index No. 718/07 (Nov. 17, 2006) (dismissing charge against DOE employee because evidence was purely circumstantial); *Dep't of Sanitation v. Lucas*, OATH Index No. 1637/06 (June 30, 2006) and *Dep't of Sanitation v. Griffith*, OATH Index No. 308/07 (Feb. 8, 2007) (finding insufficient evidence to support charges of abuse of sick leave and various counts

---

[49] Plaintiffs cite the fact that state agencies choose not to publish unsubstantiated allegations against certain licensed professionals regulated by the state.  Compl. ¶ 63.  Those licensed professionals are not similarly situated to Plaintiffs' members for several reasons.  Most importantly, the City affords officers substantial authority over the life and liberty of members of the public with limited real-time oversight, which distinguishes them from nearly all licensed professionals.  *See, e.g., Beverlin*, 722 F.2d (upholding statute that treated police officers differently from other city employees in collective bargaining procedures because of "unique place in society"); *Confederation of Police v*, 481 F. Supp. (finding "functional differences between police officers and other city employees may justify different treatment for the police officers").

of on-duty misconduct).  The NYPD's administrative disciplinary process is administered by its

Deputy Commissioner of Trials ("DCT"), which is the equivalent of OATH for all other

municipal employees.  Publishing the outcomes of DCT trials is precisely equivalent to how *all*

other City of New York employees' internal discipline is handled.  Further, non-officer public

employees' disciplinary records are available by FOIL request.[50]


## CONCLUSION

For the foregoing reasons, Legal Aid respectively requests that this Court decline to enter

a preliminary injunction.


Dated: August 14, 2020
      New York, New York

                          Respectfully submitted,

                          THE LEGAL AID SOCIETY

                     By:  */s/ Corey Stoughton*
                          Corey Stoughton
                          The Legal Aid Society
                          199 Water St. 6th Floor
                          (212) 577-3300

                          *Counsel for Legal Aid*

---

[50] For example, the New York State Education Department lists "professional disciplinary records" on its subject matter list of documents available by FOIL request. New York State Education Department FOIL Requests, NYS Education Department Subject Matter List (Sept. 24, 2014), http://www.nysed.gov/new-york-state-education-department-foil-requests.

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _/s/ Roger A. Cooper_____
        Roger A. Cooper
        Joseph M. Kay
        Aaron M. Francis
        Kayla M. Rooney
        Ye Eun Charlotte Chun
        One Liberty Plaza
        New York, NY 10006
        (212) 225-2000
        racooper@cgsh.com
        jkay@cgsh.com


        *Of Counsel for Legal Aid*