

**The City of New York**
**LAW DEPARTMENT**
LABOR & EMPLOYMENT LAW
DIVISION
100 Church Street, 2nd Floor
NEW YORK, NEW YORK 10007

**JAMES E. JOHNSON**
*Corporation Counsel*

**Rebecca G. Quinn**
Phone: (212) 356-4382
Fax: (212) 356-2439
Email: rquinn@law.nyc.gov

August 17, 2020

<u>BY ECF</u>
Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     <u>Uniformed Fire Officers Association, et al. v. Bill DeBlasio, et al.</u>
20-cv-05441 (KPF) (RWL)

Dear Judge Failla:

We write to respectfully request that the Court strike the expert report of Dr. Jon Shane, *see* Docket No. 157-6 ("Shane Report"), submitted by plaintiffs in support of their Supplemental Memorandum of Law in Support of Their Motion for a Preliminary Injunction ("Plaintiff's Memo.") and to preclude any testimony from Dr. Shane at the hearing in connection with Plaintiffs' motion for a preliminary injunction. For the reasons set forth below, defendants submit that Dr. Shane's expert report, and any accompanying testimony, must be precluded under Federal Rule of Civil Procedure 37(c) and is nevertheless inadmissible pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

For all expert witnesses, a party must disclose "the identity of [the] witness." Fed. R. Civ. P. 26(a)(2)(A). For expert witnesses retained by a party for the purpose of providing expert testimony the disclosure "must be accompanied by a written report[ ] prepared and signed by the witness" containing several categories of information. Fed. R. Civ. P. 26(a)(2)(B). Under Federal Rule of Civil Procedure 37(c), "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiffs' eleventh hour "disclosure" is exactly the type of surprise Rule 26(a)(2) guards against. Plaintiffs failure to disclose that they had retained an expert deprived defendants of a copy of the report under Rule 26(a)(2)(B) and of the opportunity to take Dr. Shane's deposition in advance of the August 18, 2020 hearing.  This failure to disclose is completely unjustified and entirely prejudicial to defendants and therefore the Shane Report must be excluded under Rule 37(c)(1).

Even if the Court does not preclude the Shane Report under Rule 37(c)(1) it is nevertheless inadmissible under Federal Rule of Evidence 702 because Dr. Shane is not a qualified expert witness.

Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The threshold question under Rule 702 is whether the witness is qualified to provide expert testimony on the subject matter at hand. To make this determination, a court "must first ascertain whether the proffered expert has the educational background or training in a relevant  field, by looking at the totality of the witness's background." *Arista Records LLC v. Lime Grp. LLC*, 06 Civ. 5936 (KMW), 2011 U.S. Dist. LEXIS 47416, at *2 (S.D.N.Y. May 2, 2011)(citations and quotations omitted). Experts may be qualified based on any of the qualities listed in Rule 702, namely, knowledge, skill, experience, training or education. Fed. R. Evid. 702. The court must then "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Id.* (*quoting United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).

Here, Dr. Shane is not qualified as an expert to opine that "publication of Unsubstantiated and Non-Final Allegations are likely to have an unfairly damaging and stigmatizing effect on a police officer's future employment prospects," see Shane Report at ¶ 2. Nothing in the Shane Report or accompanying curriculum vitae suggest that Dr. Shane has any expertise, knowledge, training, experience or education in connection with the disciplinary process applicable to NYPD officers[1] and/or the hiring practices of municipal law enforcement agencies.  While Dr. Shane makes the bald proclamation that such publication "will decrease

---

[1] Dr. Shane's CV notes that he testified at a trial in New Jersey Superior Court, Atlantic County regarding, among other things, "discipline," however, the remainder of his CV is devoid of any reference to any training, expertise, education or experience in the field of police officer discipline.

future job prospects and may cause an officer to be deprived of a position she or he applies for," Dr. Shane appears to have absolutely no knowledge, let alone superior knowledge sufficient to qualify him as an expert, regarding the hiring practices of municipal law enforcement agencies. For this reason, Dr. Shane must be excluded as an expert.

However, if the Court deems Dr. Shane a qualified expert witness in connection with the effect that publishing Unsubstantiated and Non-Final Allegations will have on a police officer's future employment prospects, the Shane Report must nevertheless be precluded under Rule 702 and *Daubert*. District Courts exercise "reasonable control over the mode and order of examining witnesses and presenting evidence" at a hearing or trial, and that through this function "[i]t is a trial judge's role to be the gatekeeper and determine whether a proffered expert meets the requirements of Rule 702." Fed. R. Evid. 611; *Tramontana v. Home Depot U.S.A., Inc.*, 15 Civ. 8528 (NSR), 2018 U.S. Dist. LEXIS 163259 at *14-15 (S.D.N.Y. Sept. 24, 2018) (citing *Daubert*, 509 U.S. at 588-89). Specifically, a "district court must ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Tramontana*, 2018 U.S. Dist. LEXIS 163259 at *14-15; *accord Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. N.Y. 2002)

This role requires the Court to first "look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e. whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Amorgianos*, 303 F.3d at 265 (quotations omitted). After determining that the proffered testimony is relevant under Rule 401, the trial court "must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Id.* Under *Daubert*, factors relevant to this inquiry include (1) the theory's testability, that is, whether the theory or technique upon which the expert relies has been and could be tested; (2) whether the expert's theory has been subjected to peer review and publication; (3) the existence of scientific standards concerning the expert's methodology, and the extent to which the expert's methods are based in those standards; (4) the known or potential rate of error in the technique or theory applied by the expert; and (5) whether the technique or theories utilized by the expert have been generally accepted in the scientific community. *See Restivo v. Hessemann*, 846 F.3d 547, 575-76 (2d Cir. 2017).

Further, while the *Daubert* analysis is a "fluid one which focuses solely on principles and methodology, not the conclusions they generate" (*Tramontana*, 2018 U.S. Dist. LEXIS 163259 at *14-15 (*quoting Daubert*, 509 U.S. at 595)), "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146 (1997). Indeed, a "court may conclude that there is simply too great an analytical gap between the data and opinion proffered," resulting in a rejection of the proffered testimony. *Id.* That is, "[i]f a court concludes that an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Fate v. Spring Valley*, 2013 U.S. Dist. LEXIS 83425, at *7 (S.D.N.Y. June 12, 2013). Similarly, a district court "should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison."

*Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (*quoting Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009)).

Rule 702 also requires the District Court to decide whether the expert's testimony as to a particular matter will "assist the trier of fact." Fed. R. Evid. 702. Expert testimony may not usurp the role of the trier of fact by dictating how the facts of a particular case should be applied to the law. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Said differently, an expert may not tell the trier of fact what result to reach. *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

Turning first to the threshold question of relevance, Dr. Shane's opinion that "publication of Unsubstantiated and Non-Final Allegations are likely to have an unfairly damaging and stigmatizing effect on a police officer's future employment prospects," *see* Shane Report at ¶ 2, is entirely irrelevant to Plaintiffs' Motion for a Preliminary Injunction ("Plaintiff's Motion"). Plaintiffs argue that the Shane Report demonstrates their members will be irreparably harmed by the release of Unsubstantiated and Non-Final Allegations because "if released, allegations of officer misconduct will follow the identified officers and permanently affect their professional standing, even in cases where the agency did not substantiate the allegation or the officer was not disciplined." *See* Plaintiffs' Memo. at 3-4. This entirely speculative "harm" is irrelevant to Plaintiffs' motion for a preliminary injunction because Plaintiffs' burden requires them to show that there is a threat of actual injury for which available legal remedies are inadequate. *See Score, Inc. v. Cap Cities/ABC, Inc.*, 724 F. Supp. 194, 198 (S.D.N.Y. 1989). Reputational harm and difficulty finding future employment do not warrant the issuance of a preliminary injunction. *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 29 (2d Cir. N.Y. 1995)(reputational harm insufficient); *Peck v. Montefiore Medical Center*, 987 F. Supp. 2d 405, 412 (S.D.N.Y. 2013) (*citing Sampson v. Murray*, 415 U.S. 61, 89-92 (1974))(difficulty finding future employment does not constitute irreparable harm because money damages make whole any loss suffered).

The Shane Report is also irrelevant to Plaintiffs' due process claims because the Supreme Court has made clear that alleged damage to reputation, without more, is not a deprivation of any liberty interest protected by the Due Process Clause. *See Paul v Davis*, 424 US 693, 701 & n.3 (1976). The argument that a liberty interest arises when the government makes public statements that potentially interfere with future job prospects is an argument that has been routinely and consistently rejected by the Second Circuit as plainly insufficient to support a "stigma-plus" claim. *See Boss v. Kelly*, 306 F. App'x 649 (2d Cir. 2009) (summary order). As such, the Shane Repot is utterly irrelevant to Plaintiffs' arguments in support of their preliminary injunction motion.

Further, all of the *Daubert* factors militate in favor of striking Dr. Shane's expert report in its entirety. This is particularly true because, as further explained, the Shane Report is not based on any data, methodology or studies. Rather, Dr. Shane bases his opinion ***entirely*** on his own personal experiences as a professor at John Jay and, before that, an employee of the Newark, New Jersey police department. For this reason alone, the Shane Report must be rejected.

4

Nevertheless, in looking at the *Daubert* factors, first, Dr. Shane's conclusion that, "publication of Unsubstantiated and Non-Final Allegations are likely to have an unfairly damaging and stigmatizing effect on a police officer's future employment prospects," *see* Shane Report at ¶ 2, is completely untested. To permit Dr. Shane to testify to his theory of causation would invite the Court "to guess as to the validity of a novel and untested theory based essentially on his say-so." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. 3d 213, 270-71 (S.D.N.Y. 2018). However, the courtroom is not the place for "guesswork, even of the most inspired sort." *Id.* (internal quotations and citations omitted).

Second, notably absent from Dr. Shane's expert report is an assertion that his theory has been subjected to peer review and/or publication. Along these same lines, Dr. Shane did not review upon any studies or articles (peer reviewed or otherwise) in reaching this conclusion. *See* Shane Report at ¶ 11.

Third, in reaching his conclusion that "publication of Unsubstantiated and Non-Final Allegations are likely to have an unfairly damaging and stigmatizing effect on a police officer's future employment prospects," Dr. Shane completed absolutely no testing and therefore his report is devoid of any discussion of the methodology he utilized in reaching his conclusion. *See* Shane Report *passim*. Dr. Shane does not indicate what standards he applied when reaching his conclusion. To be sure, Dr. Shane has never spoken to any police officer, correction officer or firefighter who had their employment opportunities diminished because of publication of disciplinary records. Nor did Dr. Shane survey any municipalities to determine if the publication of Unsubstantiated and Non-Final Allegations has impacted or would impact that municipality's employment decisions. Rather, Dr. Shane simply states the ultimate conclusion the Plaintiffs seek to have this Court reach, namely that publishing Unsubstantiated and Non-Final Allegations is unduly stigmatizing. *See* Shane Report at ¶ 17. However, the Second Circuit holds that an expert "may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). As such, the Court should reject Dr. Shane's "opinion evidence" because it is "connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

With respect to the fourth and fifth *Daubert* factors, because Dr. Shane completed no testing, those factors conclusively favor striking the report. Dr. Shane does not supply any data concerning his untested opinion, and therefore there is no ability to test his unspecified methodology for errors. Indeed, as bluntly stated by this Court in *Stone v. 866 3ʳᵈ Next Generation Hotel, LLC*,

> The 1999 Report provides no basis upon which Krongelb's hypotheses can be tested. Nor does the 1999 Report cite any published authority in support of its conclusions, much less proffer any evidence of peer review of the causal theory. Standards and error rates are impossible to assess based on the information set forth in the 1999 Report and there is no information proffered from which the Court could gauge general acceptance of Krongelb's

> methodology, since he offers no methodology at all.
> The proffer thus fails all of the reliability measures
> outlined by the Supreme Court in *Daubert*.

No. 99 Civ. 4780 (LTS)(KNF), 2002 U.S. Dist. LEXIS 9215, at *11 (S.D.N.Y. May 22, 2002) (internal citations omitted).  The problems with Dr. Shane's Report are nearly identical to those of the expert in *Stone*, and for the same reasons the court articulated there, Dr. Shane's report must be stricken and any testimony he may seek to provide be precluded.  *See also Fate*, 2013 U.S. Dist. LEXIS 83425, at *11-13 ("simply put, there is no 'method' whose 'reliability' can be tested, as Brave has done little more than offer his layman's perspective,"; expert testimony precluded); *Nook v. Long Island R.R. Co.*, 190 F. Supp. 2d 639, 642 (S.D.N.Y. 2002) ("No data, testing methodology or empirical evidence is offered to support Leighton's conclusions . . . Nor does the Report cite any published authority in support of its recommendations and conclusions, much less proffer any evidence of peer review . . . Standards and error rates are impossible to assess based on the information set forth in the Report"; Expert precluded).

For all of the reasons stated above, defendants respectfully request an Order striking the Shane Report and precluding Plaintiffs from offering any from Dr. Shane at the hearing on Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

/s/
Rebecca G. Quinn
Assistant Corporation Counsel

/s/
Dominique Saint-Fort
Assistant Corporation Counsel

cc:    All attorneys of record
       (By ECF)