# Exhibit A

OFFICE OF COLLECTIVE BARGAINING
BOARD OF COLLECTIVE BARGAINING
------------------------------------------------------------------X

In the Matter of Arbitration

      -between-

THE CITY OF NEW YORK and
NEW YORK POLICE DEPARTMENT,

           Petitioners,

      -and-

POLICE BENEVOLENT ASSOCIATION

           Respondents.

------------------------------------------------------------------X

**<u>PETITION
CHALLENGING
ARBITRABILITY</u>**

OCB Case No.
A-15742-20

Petitioners, by their attorney Steven H. Banks, First Deputy Commissioner and General Counsel of the New York City Office of Labor Relations, by Abigail Sole, Deputy General Counsel, and Michael Cotter, Assistant General Counsel, pursuant to Title 61, §1-06(c) of the Rules of the City of New York Office of Collective Bargaining ("OCB"), respectfully allege as follows:

1.  Petitioner, the City of New York ("City"), is a public employer having an office at 22 Cortlandt Street, 14th Floor, New York, New York 10007.

2.  Petitioner, the New York Police Department ("NYPD" or "Agency") is a public employer having an office at One Police Plaza, New York, New York 10038.

3.  Respondent, the Police Benevolent Association ("PBA" or "Union"), is a labor organization having an office at 125 Broad Street, 11th Floor, New York, New York 10004.

4.  The City and the Union are parties to a Collective Bargaining Agreement, the Police's Benevolent Association Agreement ("Agreement"), dated February 26, 2016, which remains in *status quo*.

**STATEMENT OF THE CONTROVERSY AND RELIEF SOUGHT**

5. On August 4, 2020, the PBA filed a Request for Arbitration ("RFA") on behalf of its

members, which described the nature of the grievance as follows:

> Whether the City of New York ("City") violated Article XVI, Section 7(c) of
> the Collective Bargaining Agreement between the Police Benevolent
> Association of the City of New York, Inc. (the "PBA") and the City (the
> "Agreement") by publishing information regarding unfounded, exonerated,
> unsubstantiated, unadjudicated and non-final allegations of misconduct against
> police officers.
>
> Whether the City violated Article XVI, Section 8 of the Agreement by
> publishing information regarding Schedule A Command Disciplines that
> resulted in a disposition other than guilty, or that are non-final.
>
> A copy of the RFA is attached as Petitioners' Exhibit 1.

6. In its RFA, Respondent seeks as a remedy, "ordering the City to: (i) cease and desist from

publishing any information regarding unfounded, exonerated, unsubstantiated, unadjudicated

and non-final allegations of misconduct against police officers; (ii) cease and desist from

publishing information regarding Schedule A Command Disciplines that resulted in a

disposition other than guilty, or that are non-final; (iii) make any police officer whose

information has been improperly published in violation of Article XVI, Section 7(c) or 8

whole for any economic loss suffered as a result of the violation of the Agreement; and (iv)

provide such other and further relief as is just and proper." *See Id*.

7. Petitioners challenge the arbitrability of the instant grievance on the basis that public policy

grounded in statute prohibits arbitration and that Respondent failed to establish a *prima facie*

relationship between the acts complained of and the source of the alleged right, redress for

which is sought through arbitration. Specifically, Respondent has failed to establish a nexus

between the grievance and the Article XVI, Section 7(c) or Article XVI, Section 8 of the

Agreement.

8.  Accordingly, Petitioners submit that the RFA must be dismissed in its entirety.

## STATEMENT OF FACTS

9.  The NYPD is the established Police Department of the City of New York pursuant to Section 431 of the New York City Charter.

10. As per the Department's Mission Statement, "[t]he mission of the New York City Police Department is to enhance the quality of life in our City by working in partnership with the community and in accordance with constitutional rights to enforce the laws, preserve the peace, reduce fear, and maintain order."[1]

11. Article XVI, Section 7(c) of the Agreement states:

Section 7. Personal Folder

   c.  The Department will, upon written request to the Chief of Personnel by the individual employee, remove from the Personal Folder investigative reports which, upon completion of the investigation, are classified "exonerated" and/or "unfounded."

*See* Petitioners' Exhibit 1.

12. Article XVI, Section 8 of the Agreement states:

Section 8. Disciplinary Records

   Where an employee has been charged with a "Schedule A" violation as listed in Patrol Guide 118-2 and such case is heard in the Trial Room and disposition of the charge at trial or on review or appeal therefrom is other than "guilty", the employee concerned may, after 2 years from such disposition, petition the Police Commissioner for a review for the purpose of expunging the record of the case. Such review will be conducted by a board composed of the Deputy Commissioner -Trials, Department Advocate, and the Chief of Personnel, or their designees. The Board will make a recommendation to the Police Commissioner. The employee concerned will be notified of the final decision of the Police Commissioner by the Deputy Commissioner-Trials.

*See id*.

---

[1] *See* http://www1.nyc.gov/site/nypd/about/about-nypd/mission.page (last visited on August 12, 2020).

13. On June 12, 2020, New York State Governor, Andrew Cuomo, signed legislation repealing Civil Rights Law § 50-a.

14. Section 50-a made personnel records, including disciplinary records, confidential and not subject to public inspection or review without the express written consent of the officer.

15. The repeal of § 50-a allows the release of personnel records[2] without the officer's express consent.

16. On June 17, 2020 Mayor Bill de Blasio announced the City's plans to release personnel records of uniformed employees at NYPD in compliance with the law, including those who are members of the PBA.

**Procedural History**

17. On or about July 13, 2020, the PBA filed this grievance at Step III on behalf of its members. *See* Petitioners' Exhibit 1.

18. On or about July 15, 2020, the NYPD issued a Step III determination, denying the grievance. *Id*.

19. On or about August 4, 2020, the PBA filed the instant Request for Arbitration with the Office of Collective Bargaining. *Id*.

20. By email dated August 4, 2020, the Office of Collective Bargaining acknowledged receipt of the RFA and assigned this grievance docket no. A-15742-20.

---

[2] The repeal of §50-a requires the redaction of certain personal information such as home address.

## AS AND FOR ITS FIRST CHALLENGE TO ARBITRABILITY

21. The RFA must be dismissed because Respondent has failed to establish a *prima facie* relationship between the act complained of and the specific contractual right.  There is no nexus between the public disclosure of personnel files and disciplinary records and Article XVI, Sections 7 and 8 of the Agreement.

22. Neither provision cited by Respondent addresses, let alone prohibits, the public disclosure of records.  These contract provisions simply provide employees with a process to request that certain investigative reports and command disciplines be removed from their records.

**Alleged Violation of Article XVI, Section 7(c)**

23. Here, in its first claim, Respondent cites Article XVI, Section 7(c) of the Agreement, which simply provides that "The Department will, upon written request to the Chief of Personnel by the individual employee, remove from the Personal Folder investigative reports which, upon completion of the investigation, are classified 'exonerated' and/or 'unfounded.'"

24. It is clear Respondent has failed to meet their burden of alleging specific facts to establish a relationship between the language of Section 7(c) and NYPD's exercise of discretion to release records as allowed by the recent repeal of § 50-a.

25. In its grievance and request for arbitration the Union does not allege, let alone provide a sufficient offer of proof, that any PBA member was prevented from exercising his or her rights under Article XVI, Section 7(c) of the Agreement. Instead, the PBA's claim is wholly speculative, arguing in its grievance that "The City will violate Article XVI, Section 7(c) of the Agreement if it releases Personnel Records." This claim is speculative and illusory.

26. Moreover, there is no nexus whatsoever between the Union's claim and the simple straightforward language of Section 7(c). Under this provision, if and only if an <u>individual</u>

employee submits a <u>written request</u> to the Chief of Personnel, <u>investigative reports</u> which upon completion of the investigation are classified as exonerated and/or unfounded, will be <u>removed from the personal file</u>.

27. First, no individual employee has been identified by the Union, which is necessary for any claim under this provision. Upon information and belief, no such adversely impacted individual employee exists.

28. Second, there is no evidence whatsoever to support a claim that a written request for any employee was submitted to the Chief of Personnel.

29. Third, the gravamen of the Union's grievance is the "publication of Trial Room decisions", which are very clearly not "investigative reports."

30. Finally, the entirety of the Union's grievance deals with disclosure to the public and not the maintenance of documents within an employee's Personal Folder.

31. The contract language is explicitly clear on each of these points. Without an individual employee, there can be no claim under Section 7(c). Without a written request to the Chief of Personnel, there can be no claim under Section 7(c). Based on the mere publication of trial room decisions, there can be no claim under Section 7(c). And based on the public disclosure of documents, as opposed to maintenance of documents within a particular folder in the face of a written request, there can be no claim under Section 7(c).

32. It is abundantly clear that there is no nexus between this attenuated claim and the contract provision relied upon by the PBA. Quite simply, Article XVI, Section 7(c) does not govern or discuss the prohibition of public disclosure of personnel records.

33. There is no arguable connection between the City's planned public disclosure of uniformed employees' disciplinary records in conformance with the law and Article XVI, Section 7(c).

Article XVI, Section 7(c) simply sets forth a procedure for members to request the removal of a very limited group of completed investigative reports. This procedure is not related in any way to the prohibition against the public disclosure of personnel information.  Nothing in the City's planned disclosure would prohibit any member from making requests pursuant to Section 7(c) in the future.

34. Moreover, while the cited to provision entitles members to the right to removal of certain records from their personal folder, there is nothing in the contract language that creates an entitlement to remove the event from the NYPD's own records.  Nor is there contract language that provides that a removal of an event from a personal folder equates to a prohibition of release to the public.  In other words, even full application of Section 7(c) would not restrict what the NYPD does with its own records outside of employees' Personal Folders. Simply put, there is nothing in the language of Article XVI, Section 7(c) to support Respondent's fanciful claim that its intended purpose is to shield members from criticism from or transparency to the public at large.

**Alleged Violation of Article XVI, Section 8**

35. In its second claim, Respondent alleges a violation of Article XVI, Section 8, which sets forth a procedure by which an officer can request that certain command discipline records be expunged.

36. Importantly, there is nothing in Section 8 that guarantees the removal of the requested information.  Under the clear contract language, the request is presented to the Deputy Commissioner -Trials, Department Advocate, and the Chief of Personnel, or their designees. This Board will make a recommendation to the Police Commissioner, who has the final decision-making authority.

37. Article XVI, Section 8 in no way governs or even discusses the prohibition of public disclosure of personnel records. To the contrary, the State legislature's repeal of § 50-a clearly indicates the intent to prohibit the concealment of these records.

38. Much like the claim under Section 7(c), the grievance is notably devoid of any allegation, let alone factual evidence to support a claim, that any PBA employee was restrained from exercising his or her rights under this provision. No employee requested to the Police Commissioner that a command discipline falling into this category be expunged. And even if an employee did make a request, the Police Commissioner has absolute decision-making authority as to whether expungement is appropriate based on the facts of each particular request.

39. There is no arguable connection between the City's planned public disclosure of uniformed employees' disciplinary records and Article XVI, Section 8. Article XVI, Section 8 simply sets forth a procedure for members to request the expungement of a narrow series of command disciplines. This contractual provision is not related in any way to the public disclosure of personnel information. Furthermore, nothing in the City's planned disclosure would prohibit any member from making requests pursuant to Section 8 in the future.

40. Respondent here has the burden of articulating specific facts and circumstances that illustrate a clear relationship between the acts and the cited contractual provisions.  Conclusory statements are insufficient and will not meet this burden.

41. Respondent's RFA is wholly absent of any specificity on how Petitioners' planned public disclosure violates the language of Section 8.

42. Section 8 does not prohibit the disclosure of command disciplines to the public, the members of the community Respondent's members are specifically tasked with serving.  It simply

outlines a process a member may follow if they wish to request the expungement of certain command disciplines.  As clearly articulated, this request is subject to review and may be denied at the discretion of the Police Commissioner.

43. Similar to the language of Section 7(c), the language of Section 8 in no way equates an expungement of an event from a personnel file to a prohibition of release of non-expunged records to the public.

44. Respondent fails to allege any facts that even remotely correlate the planned public disclosure and any type of violation of Section 8.  It relies solely on speculative and conclusory statements.

**Legal Argument**

45. It is well-settled in this forum that when an RFA is challenged, it becomes the burden of the union to establish a nexus between the grievance and a specific contractual right that it claims has been violated.  *See DOC & City v. COBA*, 61 OCB 20, at 10 (BCB 1998) (internal citations omitted). Here, there is no nexus whatsoever between the complaint and either of the two contractual rights that the PBA claims were violated, or more accurately "may be violated at some unknown point in the future."

46. When making the determination of whether a dispute is arbitrable, the Board has enunciated the following two-pronged approach:

> (1) whether the parties are in any way obligated to arbitrate a controversy, absent court-enunciated public policy, statutory, or constitutional restrictions, and, if so (2) whether the obligation is broad enough in its scope to include the particular controversy presented. In other words, whether there is a nexus, that is, a reasonable relationship between the subject matter of the dispute and the general subject matter of the Agreement.

*SSEU, L. 371*, 4 OCB2d 44, at 13 (2011) (*quoting UFOA*, 4 OCB2d 5, at 8-9 (BCB 2011)
(citations and internal quotation marks omitted)); *see also SSEU*, 3 OCB 2, at 2 (BCB
1969).

47. With regards to the first prong of this test, although a presumption exists in favor of
arbitration as a means to resolve disputes between parties to a collective bargaining
agreement, the Board cannot create a duty to arbitrate where none exists, nor can it expand
the duty to arbitrate beyond the scope as established between the parties. *See Social Services
Employees Union, Local 371(Aseervatham)*, 77 OCB 4 (BCB 2006) at 7; *United Marine
Division, Local 333, ILA,* 75 OCB 12 (BCB 2005) at 8; *Social Services Employees Union,
Local 371*, 69 OCB 34 (BCB 2002). In this case, the parties have not agreed to any provision
which would allow for a broad, sweeping, open-ended grievance dealing with the lawful
disclosure of public records. Instead, the PBA relies on two narrowly tailored contract
provisions which deal solely with the maintenance of NYPD records. This grievance
amounts to little more than an unhappiness about the duly elected State legislature's decision
to repeal § 50-a.

48. Further, while arbitration is often favored and encouraged, there are recognized instances
where arbitration is prohibited on public policy grounds. *See City v. PBA*, 73 OCB 22 (BCB
2004) at 8. This public policy exception to the presumption in favor of arbitration exists
when it can be concluded "that a public policy exists without engaging in extended fact
finding or legal analysis." *Id. quoting New York City Transit Auth. v. Transp. Workers Union
of America, Local 100,* 99 N.Y.2d 1, 7 (2002).

49. Here, not only has the Union failed to present any contract language relating to, let alone
expressly prohibiting, the public disclosure of disciplinary records, public policy clearly

dictates that said records must be available for public review.  Under the current climate,

transparency of disciplinary records of police officers is vital in maintaining the public's trust

in this institution.  While it is clear public policy alone is substantial enough to outweigh the

presumption for arbitration, here, this public policy in favor of transparency has now been

grounded in statute.  The repeal of § 50-a clearly indicates that this past practice of

concealment, which the Union seeks to enforce, is now statutorily restricted and is thus

neither acceptable nor legal today.  For those reasons, this Request for Arbitration must be

denied.

50. With respect to the second prong of the arbitrability test, in *Sanitation Officers Association*

*Local 444, S.E.I.U.*  55 OCB 4 (BCB 1995) the Board outlined the steps in the analysis of a

challenge to arbitrability:

> In considering challenges to arbitrability, the Board must first ascertain whether
> there is a demonstrable relationship between the act complained of and the source
> of the right alleged to have been violated. When challenged, the party requesting
> arbitration must show that the contract provision invoked is arguably related to the
> grievance to be arbitrated, and that the parties have agreed to arbitrate the type of
> dispute set forth in the request for arbitration. Further, where the public employer
> asserts that the action in question is a right accorded to management by statute, the
> Union must show that a substantial issue under the collective bargaining
> agreement has been presented. This requires close scrutiny by the Board.

> *Id.* at 10.

51. Consistent with the its holding in *Sanitation Officers*, the Board has routinely held that a failure

to cite a relevant contractual provision is insufficient to demonstrate the necessary nexus. *See*

*also Sergeants Benevolent Ass'n,* 79 OCB 15 (BCB 2007) (*"*The Union has not pointed to a

relevant contractual provision in the SBA Agreement through which it may proceed to

arbitration.*"*). Similarly, here, the PBA has not cited to any on-point contractual provision; any

connection between these claims and Sections 7(c) and 8 of the collective bargaining agreement are so attenuated as to be non-existent.

52. Rather than any contract provision which is "broad enough in its scope to include the particular controversy presented," as the Board-established test requires, the PBA has cited to two contract provisions which plainly have no connection whatsoever to this claim. Moreover, the PBA asks for these provisions to be construed in such an outlandishly broad fashion so as to overrule a series of statutory obligations placed upon the NYPD by the State legislature. Based on clear Board precedent, this claim falls woefully short of the standard required to survive a Challenge to Arbitrability.

53. In *City v. DC37*, 37 OCB 46 (BCB 1986), the Board held:

> We are concerned here to formulate a rule that will strike a balance between the City's right to exercise discretion and the employee's right to fair and reasonable treatment... We will require, in cases such as this, that a union allege more than the mere conclusion that discretion has been exercised in an arbitrary manner. In any case in which the City's discretionary action is challenged on a basis that the discretion has been exercised in an improper manner, the burden will be on the Union to establish initially, to the satisfaction of the Board, that a substantial issue exists in this regard. This is not to say, as the Union suggests, that the Board will examine or determine the merits of this case. Rather, the Union must specify facts and circumstances which establish a relationship between [the alleged violative act] and an arbitrary exercise of discretion.

54. Here, the PBA does not even allege that a discretionary action by the City has been exercised in an arbitrary or improper manner. The Union has not claimed that an individual employee requested that a certain investigatory report be removed from a Personal Folder and that the City or any of its agents refused. The Union has not claimed that an employee requested that an eligible disciplinary record be expunged and there was an arbitrary refusal by the City or any of its agents. Instead, the gravamen of this complaint regards the potential future and lawful public disclosure of the NYPD's own records. This claim has no nexus whatsoever

with the contractual provisions cited. Respondent has failed to demonstrate an obligation to arbitrate under either Section 7(c) or Section 8 of Article XVI of the Agreement. Further, Respondent fails to demonstrate a nexus between the cited provisions in Article XVI, Sections 7(c) and 8 and the Grievant's claim, as none of these provisions are relevant to the matter.  In sum, the Union's claim, which is solely about the public disclosure of disciplinary records, is not remotely connected to the cited contractual provisions regarding procedures for requesting information be removed from employees' personal folders.

55. As such, the Request for Arbitration must be dismissed in its entirety.

**WHEREFORE,** Petitioners respectfully request that an Order be entered dismissing the Request for Arbitration in its entirety and that the City of New York be granted such other and further relief as the Board deems just and proper.

Dated:        New York, New York

August 18, 2020

**STEVEN H. BANKS**
First Deputy Commissioner &
General Counsel
Attorney for Respondent
Office of Labor Relations of the
City of New York
22 Cortlandt Street, 14th Floor
New York, New York 10007
(212) 306-7230

By:   _____

Abigail Sole
Deputy General Counsel

By:   _____

Michael Cotter
Assistant General Counsel

## <u>VERIFICATION</u>

**ABIGAIL SOLE,** an attorney admitted to practice before the Courts of the State of New York affirms under penalty of perjury and pursuant to Rule 2106 of the Civil Practice Law and Rules, that he has been duly designated as Assistant General Counsel of the Office of Labor Relations of the City of New York and as such that he is an officer of the City of New York, Respondent in this proceeding.  That the foregoing Petition Challenging Arbitrability is true based on his own knowledge, the source of which is set forth below except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes to be true.  Petitioner further says that the reason why this verification is not made by the City of New York is that it is a corporation; that the grounds of his knowledge are as follows: information obtained from the books and records of the City of New York and other departments of the city government and from statements made to him by certain officers or agents of the City of New York.

Dated:      New York, New York
            August 18, 2020

                                       **ABIGAIL SOLE**

## <u>AFFIRMATION OF SERVICE</u>

**MICHAEL COTTER,** an attorney duly admitted to practice before the Courts of the State of New York, affirm, pursuant to Rule 2106 of the Civil Practice Law and Rules, and under penalty of perjury, that on August 18, 2020, New York City Office of Labor Relations staff served the annexed Petition Challenging Arbitrability upon:

> David Morris
> Police Benevolent Association
> 125 Broad Street, 11th Floor
> New York, New York 10004

said address being designated by Respondent for service, by email, at dmorris@nycpba.org, within the State of New York.

Dated:      New York, New York
            August 18, 2020


_____
            **MICHAEL COTTER**

# EXHIBIT 1



*Police Benevolent Association*

Of The City Of New York, Inc.

OFFICE OF THE GENERAL COUNSEL

August 4, 2020

<u>VIA E-MAIL</u>
Susan Panepento, Esq.
Chair
Board of Collective Bargaining
100 Gold Street, 4th Floor
New York, NY 10038

> Re:  **PBA Request for Arbitration: Release of Police Officer Personnel Records, Violation of Article XVI, Section 7(c) and Section 8 of the Collective Bargaining Agreement**

Dear Ms. Panepento:

I enclose a Request for Arbitration (the "RFA") and Waiver regarding the City of New York's (the "City") violation of Article XVI, Section 7(c) and Section 8 of the Collective Bargaining Agreement (the "Agreement") between the Police Benevolent Association of the City of New York, Inc. (the "PBA") and the City.

The PBA is filing this Request with the Office of Collective Bargaining in accord with Article XXI, Section 8 of the Agreement. However, this Request is not intended to be, and shall not be construed as, a request for the appointment of an arbitrator pursuant to Article XXI, Section 8 of the Agreement, and the PBA expressly reserves all of its rights with respect to that provision. Rather, since the arbitration panel established under that section to hear disputes between these parties is currently vacant, the PBA will also be filing, unless there is an agreement between the parties as to the appointment of an arbitrator, a Petition with the New York State Supreme Court, pursuant to Section 7504 of the Civil Practice Law and Rules, requesting that the court apppoint a neutral arbitrator to resolve this dispute. The PBA will contact the City's Office of Labor Relations to discuss a possible agreement on an arbitrator appointment in this matter.

If you have any questions or concerns, please contact me at (212) 298-9194.

Very truly yours,

David W. Morris

Enclosures

cc: Steven Banks
    Patrick J. Lynch
    Michael T. Murray

# REQUEST FOR ARBITRATION

| | |
|---|---|
| **OFFICE OF COLLECTIVE BARGAINING**<br>**100 GOLD STREET - 4TH FLOOR**<br>**NEW YORK, N.Y. 10038**<br>PHONE (212) 306-7160  FAX (212) 306-7167 | **Docket Number**<br><br>**Date Filed** |

**INSTRUCTIONS:** Consult the New York City Collective Bargaining Law, Chapter 3, Title 12 of the Administrative Code of the City of New York ("NYCCBL"), § 12-312, and the Rules of the Office of Collective Bargaining (Rules of the City of New York, Title 61, Chapter 1) ("OCB Rules"), § 1-06.  File original with OCB and serve one copy on the designated agent for the other party.

☐ **CHECK BOX IF YOU HAVE REQUESTED EXPEDITED ARBITRATION IN QUESTION 6(c).**

## 1.  NAME OF PUBLIC EMPLOYEE ORGANIZATION AND LOCAL

Name:  Police Benevolent Association of the City of New York, Inc.

Address: 125 Broad Street, 11th Floor, 10004

| Phone:  (212) 298-9100 | Fax: (212) 608-7824 | Email (optional): |
|---|---|---|

## 2.  NAME OF PUBLIC EMPLOYER

Name:  City of New York, Police Department

Address:  One Police Plaza, New York, NY 10038

| Phone:  (646) 610-5060 | Fax: | Email (optional): |
|---|---|---|

## 3.  NATURE OF DISPUTE

**(a)** Name(s) of agency which employ the grievant(s):

New York City Police Department

**(b)** Name(s) of grievant(s): Group Grievance

**(c)** A precise and concise statement of the grievance to be arbitrated:

See the attachment.

**(d)** Specify the remedy sought:

See the attachment.

**4.  If this request is made by a municipal employee organization, are the waivers required by NYCCBL § 12-312(d) and OCB Rule § 1-06(b)(1)(iii) included? (see attached)**

☑ Yes      ☐ No

Page 1 of 2

**5.  ATTACH THE FOLLOWING** (check appropriate boxes). Failure to provide documents may delay processing of request.

| | |
|---|---|
| ☑ The written grievance, if any | |
| ☐ The Step II decision, if issued | Date issued |
| ☑ The Step III decision, if issued | Date issued   July 15, 2020 |
| ☑ The contract provision and/or the rule or regulation alleged to have been violated | |

**6.  (a)**  Do the parties use a designated contract arbitrator?

☐ Yes    ☑ No

If "yes" please identify:

**(b)**  Do the parties use a rotating panel of arbitrators?

☑ Yes    ☐ No

**(c)**  Is this a request for expedited arbitration under the terms of the parties' agreement?

☐ Yes    ☑ No

**STATEMENT REQUESTING ARBITRATION:** The undersigned hereby requests impartial arbitration of the unresolved grievance described above.  A request is made for the designation of an arbitrator or arbitration panel to hear and decide the dispute.

**7.  PERSON FILING REQUEST**

| | |
|---|---|
| Name: David W. Morris | Title: Associate General Counsel |
| Address: 125 Broad Street, 11th Floor, New York, NY 10004 | |
| Phone: (212) 298-9194    Fax: (212) 608-7824 | Email (optional): |
| Signature | Date   August 4, 2020 |

OCB-6  Revised 12/22/03

## REQUEST FOR ARBITRATION
## (ATTACHMENT)

**(c) A precise and concise statement of the grievance to be arbitrated:**

Whether the City of New York ("City") violated Article XVI, Section 7(c) of the Collective Bargaining Agreement between the Police Benevolent Association of the City of New York, Inc. (the "PBA") and the City (the "Agreement") by publishing information regarding unfounded, exonerated, unsubstantiated, unadjudicated and non-final allegations of misconduct against police officers.

Whether the City violated Article XVI, Section 8 of the Agreement by publishing information regarding Schedule A Command Disciplines that resulted in a disposition other than guilty, or that are non-final.

**(d) Specify the remedy sought:**

We request that the arbitrator enter an award finding that the City violated Article XVI, Sections 7(c) and 8 of the Agreement, and ordering the City to: (i) cease and desist from publishing any information regarding unfounded, exonerated, unsubstantiated, unadjudicated and non-final allegations of misconduct against police officers; (ii) cease and desist from publishing information regarding Schedule A Command Disciplines that resulted in a disposition other than guilty, or that are non-final; (iii) make any police officer whose information has been improperly published in violation of Article XVI, Section 7(c) or 8 whole for any economic loss suffered as a result of the violation of the Agreement; and (iv) provide such other and further relief as is just and proper.

## WAIVER

| | |
|---|---|
| **OFFICE OF COLLECTIVE BARGAINING**<br>**100 GOLD STREET - 4TH FLOOR**<br>**NEW YORK, N.Y. 10038**<br>**PHONE (212) 306-7160  FAX (212) 306-7167** | **Docket Number**<br><br>**Date Filed** |

**INSTRUCTIONS:** Consult the New York City Collective Bargaining Law, Chapter 3, Title 12 of the Administrative Code of the City of New York ("NYCCBL"), § 12-312(d), and the Rules of the Office of Collective Bargaining (Rules of the City of New York, Title 61, Chapter 1) ("OCB Rules"), § 1-06(b). File original with OCB and serve one copy on the designated agent for the other party.
**NOTE:** A separate waiver must be filed for each individual grievant unless this is a group grievance, in which case the waiver may be filed by the authorized union representative only.

**Description of grievance sought to be arbitrated:**

See the attachment.

---

The undersigned employee organization and employee(s) aggrieved in this matter waive the right, if any, to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.

NYC Police Benevolent Association
_____
Union

Patrick J. Lynch
_____
Representative (print name)

President
_____
Title

_____
Representative (signature)

_____
Grievant (print name)

_____
Grievant (signature)

Date: 8/4/2020
_____

OCB-7  Revised 1/19/16

**WAIVER**
**(ATTACHMENT)**

**Description of the grievance sought to be arbitrated:**

Whether the City of New York ("City") violated Article XVI, Section 7(c) of the Collective Bargaining Agreement between the Police Benevolent Association of the City of New York, Inc. (the "PBA") and the City (the "Agreement") by publishing information regarding unfounded, exonerated, unsubstantiated, unadjudicated and non-final allegations of misconduct against police officers.

Whether the City violated Article XVI, Section 8 of the Agreement by publishing information regarding Schedule A Command Disciplines that resulted in a disposition other than guilty, or that are non-final.



**OFFICE OF LABOR RELATIONS**

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:     ROBERT W. LINN, COMMISSIONER

SUBJECT:  EXECUTED CONTRACT: POLICE OFFICERS

TERM:     AUGUST 1, 2010 TO JULY 31, 2012

      Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the Patrolmen's Benevolent Association on behalf of the incumbents of positions listed in Article I of said contract.

      The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: February 26, 2016

> OFFICE OF LABOR RELATIONS
> REGISTRATION
> OFFICIAL     CONTRACT
>
> NO: 16001     DATE:
> February 26, 2016

## Patrolmen's Benevolent Association
## 2010 - 2012 Agreement

**AGREEMENT** made this 26th day of February 2016 by and between the City of New York (hereinafter called "the City" or "the Employer"), acting by the Commissioner of Labor Relations, and the Patrolmen's Benevolent Association of the City of New York, Inc. (hereinafter called "the Union" or the "PBA"), for the two year period from August 1, 2010 to July 31, 2012. The parties agree that this Agreement modifies the 2006-2010 collective bargaining agreement based upon the November 13, 2015 arbitration award ("Arbitration Award"). Nothing in this agreement is intended to amend or modify the content of the Arbitration Award.

**WHEREAS,** the Police Officers employed by the City have duly designated the Union as their exclusive bargaining representative for the purpose of collective bargaining with the City with respect to wages, hours, and conditions of employment; and

**WHEREAS,** the Union and the City desire to cooperate in establishing conditions which will tend to secure standards and conditions of employment consistent with the dignity of Police Officers, and to provide methods for fair and peaceful adjustment of disputes that may arise between the Union and the City; and

**WHEREAS,** as a result of collective bargaining, the parties have reached an agreement which they desire to reduce to writing;

**NOW, THEREFORE,** it is mutually agreed as follows:

## ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

**Section 1.**

The City recognizes the Union as the sole and exclusive collective bargaining representative for the unit consisting of the employees of the New York City Police Department in the title of Police Officer, except those detailed as First, Second or Third Grade Detectives.

**Section 2.**

Except as otherwise provided herein, for purposes of this Agreement, the terms "employee" and "employees" or "Police Officer" shall be interchangeable and shall relate solely to employees in the unit described in Section 1 of this Article.

1

16001

a.    The Department will provide the Union with a copy of all Orders, Department Bulletins, "Open Door" issues, and press releases. The details of delivery shall be worked out between the parties.

The Department will provide to the Union on a semi-annual basis a computer printout containing names and addresses of employees, listed alphabetically.

b.    The Union will provide the Department with a copy of Union publications, bulletins and press releases.

## Section 6.  Meal Areas

A representative of the Department and a representative of the PBA will meet to determine an adequate meal area for employees within each command and other Departmental places of assignment. This does not contemplate rebuilding or extensive remodeling.

## Section 7.  Personal Folder

a.    The Personnel Bureau will provide the Union with a list of categories of items included in the Personal Folder with an indication of those confidential items which an employee is not permitted to review.

b.    Employees may view their folders on normal business days between the hours of 9 A.M. and 5 P.M. by appearing in person at the Employee Management Division, Personnel Bureau, 10th Floor, Police Headquarters. To avoid delay, employees should call the Employee Management Division at least one day in advance.

c.    The Department will, upon written request to the Chief of Personnel by the individual employee, remove from the Personal Folder investigative reports which, upon completion of the investigation, are classified "exonerated" and/or "unfounded."

## Section 8.  Disciplinary Records

Where an employee has been charged with a "Schedule A" violation as listed in Patrol Guide 118-2 and such case is heard in the Trial Room and disposition of the charge at trial or on review or appeal therefrom is other than "guilty", the employee concerned may, after 2 years from such disposition, petition the Police Commissioner for a review for the purpose of expunging the record of the case. Such review will be conducted by a board composed of the Deputy Commissioner - Trials, Department Advocate, and the Chief of Personnel, or their designees. The Board will make a recommendation to the Police Commissioner. The employee concerned will be notified of the final decision of the Police Commissioner by the Deputy Commissioner - Trials.

## Section 9.  Disciplinary Procedure

The parties, through a joint subcommittee, shall develop procedures to insure that:

a.    All disciplinary charges shall be brought in a timely fashion pursuant to the current departmental regulations.


16001



*Police Benevolent Association*

Of The City Of New York, Inc.

OFFICE OF THE PRESIDENT

July 13, 2020

<u>VIA E-MAIL & HAND DELIVERY</u>
John P. Beirne
Deputy Commissioner
Office of Labor Relations
New York City Police Department
One Police Plaza, Room 304
New York, NY 10038

Re:    Group Grievance, Release of Police Officer Personnel Records, Violation of Article
        XVI, Section 7(c) and Section 8 of the Collective Bargaining Agreement

Dear Commissioner Beirne:

We write on behalf of all members of the Police Benevolent Association of the City of
New York Inc. ("PBA") to object to the City of New York ("City") and New York City Police
Department ("NYPD" or "Department") imminent publication of information regarding
unsubstantiated, unfounded, exonerated and unadjudicated allegations against active and retired
police officers. The City's release of such information would be in violation of Article XVI,
Sections 7(c) and Section 8 of the Collective Bargaining Agreement between the PBA and the
City of New York ("Agreement").

On June 12, 2020, Chapter 96 of the Laws of 2020 ("Chapter 96") was signed into law.
Chapter 96 repealed Civil Rights Law 50-a, which, in sum, made police officer personnel records
confidential, and exempt from disclosure, inspection or review absent the subject police officer's
consent, or authorization by a court. Chapter 96 did not rescind or amend other exemptions to
disclosure provided pursuant to New York State's Freedom of Information Law ("FOIL", Public
Officer's Law § 84, *et seq.*), except that it amended the FOIL law to require agencies to redact
certain personal information, and to permit agencies to redact information regarding technical
infractions, from law enforcement records prior to disclosure. Chapter 96 also did not amend or
in any way disturb the rights of public employees or their collective bargaining agents pursuant
to the Taylor Law (Civil Service Law § 200, *et seq.*), the New York City Collective Bargaining

1

Law (New York City Administrative Code § 12-301, *et seq.*) or the agreements collectively bargained pursuant to those laws.[1]

At a press conference on June 17, 2020, Mayor Bill De Blasio announced that the City planned to release to the public all new NYPD Trial Room decisions, and information regarding approximately 1,100 disciplinary cases relating to members of the service, including the accused's names, charges, hearing dates and final dispositions. Mayor De Blasio also declared that the City planned to publish an online database containing detailed information regarding members' personnel records and disciplinary history.

On or about June 25, 2020, the NYPD sent an email message to all uniformed members of the service regarding Chapter 96 and other recently enacted legislation affecting law enforcement (the "June 25th Message"). The June 25th Message stated in part that "the new law [Chapter 96] requires the release of substantiated, unsubstantiated, unfounded and exonerated allegations." In response, on June 29, 2020 PBA President Patrick J, Lynch and General Counsel Michael T. Murray wrote to Police Commissioner Dermot Shea objecting to the Department's announced policy and urging it to apply the various exemptions allowed under FOIL to lawfully withhold documents related to unsubstantiated, unfounded, exonerated and unadjudicated allegations against police officers.

On or about July 2, 2020, the NYPD's Chief of Personnel's office summoned representatives of all of the uniformed unions for a meeting.[2] At the meeting, NYPD representatives informed the unions that the Department intended, as a first step in relation to what it viewed as its new disclosure obligations, to release summaries of all charges and specifications currently pending against uniformed members of the service. The PBA and the other uniformed unions strongly objected to the announcement on various legal and practical bases. In a subsequent meeting on July 9, 2020, the Department reiterated its prior position and again informed the unions that the summaries of pending disciplinary charges would be released on or about July 15, 2020, and that publication of additional information regarding all manner of personnel records, including unsubstantiated, unfounded and exonerated allegations, would follow at an as-yet undetermined, but imminent date.

I.    The City Will Violate Article XVI Section 7(c) of the Agreement if it Releases Personnel Records

Article XVI, Section 7(c) of the Agreement provides:

---

[1] The PBA expressly reserves all rights under the Taylor Law, the NYCCBL, FOIL and other applicable law to enforce any rights that have been infringed upon by the City and the Department's policies relating to the release of personnel records.

[2] The Department initially informed the unions that the purpose of the meeting was to discuss recently passed legislation regarding the use of chokeholds when effecting arrests. The unions were informed only just before arriving for the meeting that the Department instead intended to discuss the disclosure of personnel records.

> The Department will, upon written request to the Chief of Personnel
> by the individual employee, remove from the Personal Folder
> investigative reports which, upon completion of the investigation,
> are classified "exonerated" and/or "unfounded."

The Personal Folder acts as a central repository for the personnel records of a police officer throughout his or her career. The purpose of Article XVI, Section 7(c) is to protect police officers from adverse consequences that may result from allegations of misconduct that have been determined to be false or unproven. The City's publication of final Trial Room decisions, databases or any other personnel record that includes information regarding unsubstantiated, unfounded and exonerated allegations would effectively nullify Article XVI, Section 7(c). Once the allegations are published by the Department and available to anyone for any purpose, removing them from the Personal Folder would be futile. The public allegations could be used by the Department to influence personnel decisions, including determinations relating to promotions, transfers, detail assignments and overtime eligibility. More troubling, the information will undoubtedly be used by members of the public, including anti-police advocates, to harm the reputation of police officers, undermine their ability to continue to effectively perform police work, prevent them from obtaining employment outside of the Department, and subject them and their families to harassment, and possibly violence.

The City's imminent publication of all *pending* disciplinary charges, or any summary, database or record containing information regarding those pending charges, would also negate the rights provided by Article XVI, Section 7(c). Many pending charges will ultimately result in a finding that the allegations are exonerated or unfounded. Yet the City intends to release the allegations, purportedly without any exception or practical consideration of the potential harm to police officers, before the officers even have an opportunity to defend against the charges and request that the record of the allegations be removed from their Personal Folders pursuant to Article XVI. Section 7(c). Information regarding those pending charges will be used to harm police officers, who will have no longer have an opportunity to clear their record by having them expunged.

## II. The City Will Violate Article XVI Section 8 of the Agreement if it Releases Personnel Records

Article XVI, Section 8 of the Agreement provides:

> Where an employee has been charged with a "Schedule A"
> violation as listed in Patrol Guide 118-2 and such case is heard in
> the Trial Room and disposition of the charge at trial or on review
> or appeal therefrom is other than "guilty", the employee concerned
> may, after 2 years from such disposition, petition the Police
> Commissioner for a review for the purpose of expunging the
> record of the case. Such review will be conducted by a board
> composed of the Deputy Commissioner - Trials, Department
> Advocate, and the Chief of Personnel, or their designees.  The
> Board will make a recommendation to the Police Commissioner.

3

The employee concerned will be notified of the final decision of
the Police Commissioner by the Deputy Commissioner - Trials.

The City's planned publication of Trial Room decisions, pending charges and any other
records relating to Schedule A violations where there has been any disposition other than a guilty
finding is in violation of Article XVI, Section 8. If the City releases records relating to Schedule
A violations, whether the allegations are final or pending, the records will be available to anyone
wishing to harm the career or reputation of a police officer. Police officers will be irreversibly
deprived of their right under the Agreement to have those records expunged.

***

For the reasons set forth above, the City and NYPD's plan to imminently publish Trial
Room decisions, pending disciplinary charges or summaries of such charges, databases or any
other records that include information regarding unsubstantiated, unfounded and exonerated
allegations, as well as records relating to Schedule A violations with dispositions other than
guilty, will, if executed, be in clear violation of Article XVI Sections 7(c) and 8 of the
Agreement. Accordingly, we request that the City and Department cease and desist from
publishing that information.

Please contact me if you would like to discuss.

Very truly yours,

Patrick J. Lynch

cc: John Puglissi
     Michael T. Murray

4



POLICE DEPARTMENT

OFFICE OF LABOR RELATIONS
ONE POLICE PLAZA – ROOM 304
NEW YORK, NEW YORK 10038

OLR   2020-00155
IG   3653

July 15, 2020

Mr. Patrick J. Lynch
President
Patrolmen's Benevolent Association
125 Broad Street
New York, New York 10004

> Re:   **Group Grievance, Release of**
> **Police Officer Personnel Records,**
> **Violation of Article XVI, Section**
> **7c and Section 8 of the Collective**
> **Bargaining Agreement**

Dear Mr. Lynch:

The Step III grievance submitted by the Association is denied. There has been no violation, misinterpretation, or misapplication of the current collective bargaining agreement, nor has there been any violation, misinterpretation, or misapplication of the rules and procedures of this Department. Under, Article XXI Section 4 of the CBA, which states "grievances which affect substantial numbers of employees may be compressed by elimination of the fourth step of the grievance procedure," this grievance may be brought to arbitration within 20 days.

Sincerely yours,

John P. Beirne
Deputy Commissioner

/sf

Misc. 243-73 (04-09)