UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

Uniformed Fire Officers Association; Uniformed
Firefighters Association of Greater New York; Correction
Officers' Benevolent Association of the City of New York,
Inc.; Police Benevolent Association of the City of New
York, Inc.; Sergeants Benevolent Association; Lieutenants
Benevolent Association; Captains Endowment Association;
and Detectives' Endowment Association,

No.: 20-Civ.-05441-KPF

Petitioners/Plaintiffs,

- against -

Bill de Blasio, in his official capacity as Mayor of the City
of New York; the City of New York; Fire Department of
the City of New York; Daniel A. Nigro, in his official
capacity as the Commissioner of the Fire Department of the
City of New York; New York City Department of
Correction; Cynthia Brann, in her official capacity as the
Commissioner of the New York City Department of
Correction; Dermot F. Shea, in his official capacity as the
Commissioner of the New York City Police Department;
the New York City Police Department; Frederick Davie, in
his official capacity as the Chair of the Civilian Complaint
Review Board; and the Civilian Complaint Review Board,

Respondents/Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

*Of Counsel:*
Kami Zumbach Barker

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

THE REPEAL OF CIVIL RIGHTS LAW §50-A ...............................................................2

**ARGUMENT** ....................................................................................................................3

    POINT I ...........................................................................................................................3

        PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FOURTEENTH
        AMENDMENT OF THE U.S. CONSTITUTION.............................................................3

            A.   Due Process ........................................................................................4

            B.   Equal Protection .................................................................................11

    POINT II..........................................................................................................................13

        PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE NEW YORK STATE
        CONSTITUION ...............................................................................................................13

    POINT III ........................................................................................................................14

        PLAINTIFFS ARTICLE 78 MUST BE DISMISSED......................................................14

    POINT IV ........................................................................................................................21

        THE COURT HAS DECIDED PLAINTIFFS ARTICLE 75 PETITION AND ANY
        REMAINING CLAIMS SHOULD BE DISMISSED......................................................21

    POINT V .........................................................................................................................22

        PLAINTIFFS FAIL TO STATE A CLAIM OF BREACH OF CONTRACT ..................22

            A.   Plaintiffs Lack Standing to Bring a Breach of Contract Claim ....................23

            B.   Plaintiffs' Complaint Must Be Dismissed Because Plaintiffs Failed to
            Exhaust Their Contractual Remedies .............................................................23

            C.   Plaintiffs' Complaint Must Be Dismissed for Failure to State a Claim ........24

CONCLUSION ....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Able v. United States, 155 F.3d (2d. Cir. 1998)...........................................................................12

Adams v. N.Y. State Educ. Dep't, 732 F. Supp. 2d 420 (S.D.N.Y. 2010)....................................7

Allen v. Wright, 468 U.S. 737 (1984) ...........................................................................................4

Analytical Diagnostic Lab, Inc. v. Kusel, 626 F.3d 135 (2d Cir. 2010) ......................................11

Bd. of Educ. v. Ambach, 70 N.Y.2d 501 (1987)....................................................................23, 24

Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972) .................................................4

Boss v. Kelly, 306 F. App'x 649 (2d Cir. 2009).........................................................................7, 8

Bright Homes v. Wright, 8 NY2d 157 (1960)...............................................................................16

Burgos Vega v. Lantz, 596 F.3d 77 (2d Cir. 2010) ........................................................................7

Cantres v. Bd. of Educ., 145 A.D.2d 359 (1st Dep't 1988) .........................................................24

Capital Nat'l Bank of New York v. McDonald's Corp., 625 F. Supp. 874 (S.D.N.Y. 1986)........23

Capital Newspapers, Div. of Hearst Corp. v. Whalen, 69 N.Y.2d 246 (1987) ........................9, 17

Conyers v. Rossides, 558 F.3d 137 (2d Cir. 2009)..................................................................11, 12

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42(2d Cir. 1991) ..........................................14

Data Tree, LLC v. Romaine, 9 N.Y.3d 454 (2007)......................................................................15

Davis v. City of New York, 959 F. Supp. 2d 324 (S.D.N.Y. 2013)...............................................13

DiBlasio v. Novello, 344 F.3d 292 (2d Cir. 2003) .........................................................................5

DirectTV Incorporated v. Imburgia, 136 S. Ct. 463 (2015). .........................................................9

Doe v. Pataki, 481 F.3d 69 (2d Cir. 2007) ..................................................................................24

Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 627 F. Supp. 1202 (S.D.N.Y. 1986).............................................................................................................................23

Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008)...........................................................11

Fink v. Lefkowitz, 47 N.Y.2d 567 (1979).....................................................................................20

Franza v. Stanford, No. 16-CV-7635, 2019 U.S. Dist. LEXIS 18448 (S.D.N.Y. February 5, 2019) ...................................................................................................................................14

Gould v. New York City Police Department, 89 N.Y.2d 267 (1996) ..........................................20

Hall v. Town of Henderson, 17 A.D.3d 981 (4th Dep't), lv. to appeal den., 5 N.Y.3d 714 (2005) ...................................................................................................................................24

Heath v. Stephen Banks, 692 Fed. Appx. 60 (2d Cir. 2017) .......................................................23

Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997)........................................................................................10

Henderson v. New York, 423 F. Supp. 2d 129 (S.D.N.Y. 2006) ..................................................10

In the Matter of Pell v. Bd. of Educ., 34 NY2d 222 (1974) .........................................................15

Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) ...........................................10

Koehler v. New York City, Docket No. 04 Civ. 6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005).......................................................................................................................10

Lee TT v. Dowling, 87 N.Y.2d 699 (1996)......................................................................................5

Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001)..........................................................................4, 10

Luongo v. Records Access Off., 150 A.D.3d 13 (1st Dep't 2017) ................................................19

Margolin v. Bd. of Educ., 485 U.S. 1034 (1988) .........................................................................24

Massi v. Flynn, 353 Fed. Appx. 658 (2d Cir. 2009)......................................................................11

Matter of Collins v Dukes Plumbing & Sewer Serv., Inc., 75 AD3d 697 (3d Dep't 2010)..........16

Matter of Daniel Pantaleo v. New York City Civilian Complaint Review Board, Index No. 100641/19 (Sup. Ct. N.Y. Cty. 2019)................................................................................14

Matter of Gilman v. New York State Division of Housing and Community Renewal, 99 NY2d 144 (2002) .....................................................................................................................14, 21

Matter of Harbatkin v. New York City Dept. of Records & Info. Servs., 19 N.Y.3d 373 (2012) 18

Matter of Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd., 53 Misc. 3d 947 (Sup. Ct., Kings Cnty. 2016) ...........................................................................................18

Matter of Kittredge v. Planning Bd. of Town of Liberty, 57 AD3d 1336 (2008)........................16

Matter of TJS of N.Y., Inc. v. New York State Dep't of Taxation & Fin., 89 A.D.3d 239 (3d Dep't 2011)..........................................................................................................................18

iii

McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001) ......................................................4

Missere v. Gross, 826 F. Supp. 2d 542 (S.D.N.Y. 2011) ................................................................5

Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York, 928 N.Y.S.2d 701 (1st Dep't
    2011) ......................................................................................................................................15

Neilson v. D'Angelis, 409 F.3d 100 (2d Cir. 2005) ......................................................................12

Oneida Indian Nation of N.Y. v. Madison Cnty., 665 F.3d 408 (2d Cir. 2011) ...............................4

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir. 1998) ............................................14

Patrick Lynch, et. al. v. The New York City Civilian Complaint Review Board, Index No.
    152235/2018 (Sup. Ct. N.Y. Cty. 2018 ................................................................................14

Patterson v. City of Utica, 370 F.3d 322 (2d. Cir. 2004) ..............................................................6

Paul v Davis, 424 US 693 (1976) ..................................................................................................5

Peckham v. Calogero, 12 NY3d 424 (2009) ...............................................................................15

People v. Olah, 300 NY 96 (1949) ..............................................................................................16

Plummer v. Klepak, 48 N.Y.2d 486 (1979), cert. denied, 445 U.S. 952 (1980) ..........................24

Police Benevolent Assn. v. State of New York, 145 A.D.3d 1391 (3d Dept. 2016) .....................20

Porr v. Daman, 299 Fed. Appx. 84 (2d Cir. 2008) ......................................................................11

Raymond v. City of New York, No. 15 CV 6886 (LTS) (HBP), 2017 U.S. Dist. LEXIS 31742
    (S.D.N.Y. Mar. 6, 2017) .......................................................................................................13

Ryan v. Carroll, 67 F. Supp. 2d 356 (S.D.N.Y. 1999) ................................................................10

Sadallah v. City of Utica, 383 F.3d 34 (2d Cir. 2004) ..................................................................5

Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006) .............................................................10

Sessom v. New York State Div. of Parole, Docket No. 17-CV-6634 (CM), 2017 U.S. Dist.
    LEXIS  177988 (S.D.N.Y.  2017) ..........................................................................................7

Short v. Bd. of Managers of Nassau Cty. Med. Ctr., 57 N.Y.2d 399 (1982) ................................17

Skandia America Reinsurance Corp. v. Schenck, 441 F. Supp. 715 (S.D.N.Y. 1977) .................25

Staskowski v. Cty. of Nassau, 410 F. App'x 420 (2d Cir. 2011) ..................................................11

Tannerite Sports, LLC v. NBC Universal News Grp., 864 F.3d 236 (2d. Cir. 2017) .....................6

<u>Town of Castle Rock v. Gonzales,</u> 545 U.S. 748 (2005) ................................................4

<u>United States v. Bari,</u> 599 F.3d 176 (2d Cir. 2010).................................................5

<u>Valmonte v. Bane,</u> 18 F.3d 992 (2d Cir. 1994) ...................................................7

<u>Wiese v. Kelly,</u> No. 08-CV-6348 (CS), 2009 U.S. Dist. LEXIS 82307 (S.D.N.Y. 2009).............6

<u>Yan Won Liao v. Holder,</u> 691 F. Supp. 2d 344 (E.D.N.Y. 2010) .................................14

<u>Zahra v. Town of Southfield,</u> 48 F.3d 674 (2d Cir. 1995) ............................................4

**Statutes**

42 U.S.C. § 1983 ...........................................................................................1

Civil Rights Law § 50-a ...........................................................................1, 2, 3, 4

Fed. R. Civ. P. 30(b)(6) ...............................................................................18

Pub. Off. Law § 87 ...............................................................................11, 17, 20

Pub. Off. Law § 89 .....................................................................................15, 16

## PRELIMINARY STATEMENT

On June 12, 2020, Governor Andrew Cuomo signed the statute repealing Civil Rights Law § 50-a ("§50-a"), allowing law enforcement disciplinary records to be open to public inspection, under New York Freedom of Information Laws ("FOIL").  On June 17, 2020, Mayor de Blasio announced that the City of New York would soon publish law enforcement disciplinary records in an online searchable database.  On July 14, 2020, over a month after the repeal, the unions representing various New York City police, fire and correction personnel (hereinafter "plaintiffs"), brought this action, pursuant to 42 U.S.C. § 1983, the New York State Constitution, CPLR Articles 75 and 78, and breach of contract laws.  Specifically, plaintiffs allege that defendants' determination to disclose members' disciplinary records, including unsubstantiated, unfounded, exonerated, and non-final charges of misconduct (hereinafter "the disputed records" or "Unsubstantiated and Non-Final Allegations"), violated their members' constitutional rights to due process and equal protection, was arbitrary and capricious, and violated certain provisions of applicable collective bargaining agreements ("CBA") and their members' prior settlement agreements.

Plaintiffs sought an order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, preventing defendants from disclosing the disputed records.  See Plaintiffs' State Court Memo. of Law ("Pl. Memo.") at Dkt. No. 10. Ex. 12, p. 9.  On August 21, 2020, the Court denied, in large part, plaintiffs' motion for a preliminary injunction, finding, *inter alia,* that plaintiffs could not establish a likelihood to succeed on the merits of their claims.  See August 21, 2020 Decision at Dkt. No. 216.

Now, for reasons more thoroughly explained below, defendants move to dismiss plaintiffs' Complaint, in its entirely.  Plaintiffs have failed to state a claim under the U.S. or N.Y.

Constitutions for a violation of due process and equal protection because plaintiffs receive all that process that is due, they are not part of a protected class, and defendants have a rational basis for treating plaintiffs' members' disciplinary records differently than other City employees'. Defendants' decision to publish the disputed records was not arbitrary and capricious but rather made upon the rational basis of fulfilling the legislative intent of FOIL and the repeal of § 50-a. Because Plaintiffs have not exhausted the contractual remedies provided by their relevant CBAs, Plaintiffs cannot state a claim under CPLR Article 75 or for breach of contract.  Finally, plaintiffs lack the standing and basis to claim that, by publishing the disputed records, defendants would breach plaintiffs' members' prior settlement agreements, as plaintiffs fail to allege any incorporated guarantee of confidentiality for the underlying complaint.  Accordingly, defendants respectfully request that this Court dismiss the Complaint in its entirety.

## STATEMENT OF FACTS

For a complete statement of facts, defendants respectfully refer the Court to the Declaration of Kami Z. Barker, dated August 14, 2020, ("Barker Decl.") and the annexed exhibits, Dkt. No. 135, to the Declaration of Kerry Jamieson, dated August 14, 2020 ("Jamieson Decl."), Dkt. No. 135-22, and to the Declaration of Jonathan Darche, dated August 14, 2020 ("Darche Decl.") and the annexed exhibits, Dkt. No. 135-23, and Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 134.

## THE REPEAL OF CIVIL RIGHTS LAW §50-A

George Floyd's tragic death at the hands of a Minneapolis police officer in late May of this year, galvanized the country to respond with historic levels of public engagement and protests, calling for criminal justice reform.  In New York, the ground swell of activism for improved police relations renewed the years-long battle to repeal § 50-a, which shrouded police disciplinary records in secrecy for decades and helped erode public trust in law enforcement.

2

Thousands of New Yorkers marched the streets demanding greater police transparency, and on June 12, 2020, Governor Cuomo signed S8496,[1] repealing § 50-a, effective immediately.

The repeal neither required confidentiality nor directed any other form of special treatment to apply to Unsubstantiated and Non-Final disciplinary records.  Plaintiffs, as part of a broader coalition of law enforcement unions, objected to the proposed repeal multiple times, including through formal testimony and a Memorandum in Opposition to the Legislature, on the grounds that it did not want unsubstantiated or unfounded allegations publicly disclosed.  See Barker Decl. at ¶¶ 20, 23-24, 45.  On the day of the bill's passage, the issue was debated at length on the State Assembly floor, including multiple Assembly Members, who sought to carve out an exception in the repeal for unsubstantiated allegations.  See Barker Decl. at ¶¶ 46-50 and Exhibit "M" thereto.  Nevertheless, over these objections, without any carveout whatsoever for Unsubstantiated and Non-Final allegations, the bill passed by an overwhelming majority in both houses of the Legislature and is now the law of New York State.

On June 17, 2020, Mayor de Blasio announced that the City would begin publishing law enforcement disciplinary records in an online searchable database, and with that, the City ushered in a new era of greater police transparency.

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

---

[1] Available at https://perma.cc/L9Q2-4H9H (last viewed on August 13, 2020).

To make a Fourteenth Amendment claim, plaintiffs must allege a personal injury, which is traceable to defendants' allegedly unlawful conduct and likely to be redressed by the requested relief. <u>See</u> . Plaintiffs' claims are deficient on their face and should be dismissed.

## A.   Due Process

The Fourteenth Amendment's guarantee of procedural due process applies only when a constitutionally protected property or liberty interest is at stake. <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 756 (2005). Therefore, when analyzing procedural due process claims, the threshold issue is whether the plaintiff possessed a valid property[2] or liberty interest. <u>See</u> ; <u>see also</u> <u>Zahra v. Town of Southfield</u>, 48 F.3d 674, 689 (2d Cir. 1995). The Due Process Clause "does not itself create" protectable property interests; rather property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 286 (2d Cir. 2001) (quotations omitted). To demonstrate such an interest, plaintiffs must show more than a mere abstract need or desire, but rather a legitimate entitlement to said interest. <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972). Since the repeal of § 50-a, plaintiffs' members' disciplinary records are no longer categorically shielded from disclosure, and, thus, plaintiffs' members lack any such entitlement.

Plaintiffs allege reputational harm as the basis of an alleged deprivation of a liberty interest. <u>See</u> ¶ 6 of Complaint, Dkt. Nos. 1, 5. But on August 21, 2020, this Court held that "a loss of reputation without more is insufficient to establish a procedural due process claim." <u>See</u>

---

[2] Plaintiffs do not claim, nor can they, that their members are at risk of losing a property interest without due process under the circumstances presented in this case. In any event, for the permanent employees who possess a property interest in their employment, any process that is due to protect such employees is provided through the disciplinary hearing process, set forth in Section 14-115 of the New York City Administrative Code (for the uniformed ranks of the NYPD), Section 15-113 of the New York City Administrative Code (for Firefighters and Fire Officers) and New York State Civil Service Law Section 75 for all other members. <u>See</u> <u>Locurto v. Safir</u>, 264 F.3d 154 (2d Cir. 2001).

August 21, 2020 Decision, Dkt. No. 216, at 27:3-4 (citing Paul v Davis, 424 US 693, 701 & n.3 (1976)).  To prevail, therefore, plaintiffs must demonstrate a "stigma-plus" claim, where courts recognize a protected liberty interest when there is an "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus)."  DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).

To make out this type of stigma-plus claim, "a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  See August 21, 2020 Decision, Dkt. No. 216, at 27:17 – 28:2 (quoting Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004); see also Lee TT v. Dowling, 87 N.Y.2d 699, 708 (1996).  Plaintiffs cannot demonstrate, nor have they pled, all of these elements.

First, a CCRB disposition of "unfounded" means that the CCRB found, by a preponderance of the evidence, that there was "sufficient credible evidence to believe that the subject officer did not commit the alleged act."  See The Report of the Independent Panel on the Disciplinary System of the New York City Police Department (Jan. 25, 2019) at 8–9, available at https://perma.cc/EX3U-G8DT (last visited September 3, 2020); see also ¶ 22 of Darche Decl.[3]  A CCRB finding of "exonerated" means that while the subject officer was found to have committed the act alleged, that the officer's actions were nonetheless determined to be lawful.  See id. Publishing the records of, or in this case the mere existence of, "exonerated" or "unfounded"

---

[3] All of this information is a matter of the public record, which can be found on the CCRB website, available at https://www1.nyc.gov/site/ccrb/investigations/case-outcomes.page (last visited on September 2, 2020).  Therefore, the Court may take judicial notice of this evidence in a motion to dismiss.  Missere v. Gross, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss."); see also United States v. Bari, 599 F.3d 176, 180-81 (2d Cir. 2010) (the Court can take judicial notice of information provided on the Internet).

complaints cannot possibly "call[] into question their good name, reputation, honor, or integrity" and cannot, therefore, implicate the officers' constitutionally protected rights and liberties, sufficient to trigger due process protections.  Lee TT., 87 N.Y.2d at 708-09.  They certainly cannot be considered the type of "[s]tatements that denigrate the employee's competence as a professional and impugn the employee's professional reputation" either.  Patterson v. City of Utica, 370 F.3d 322, 330 (2d. Cir. 2004).

With respect to the first and second element, the Complaint only alleges that the disputed records *may* be false or misleading and they cannot plead, with any certainty or particularity, that the statements are, in fact, false.  See Complaint, ¶¶ 60, 69.  This broad and speculative statement is insufficient to establish a due process claim.  Moreover, it is clear that the records will have information (such as the agency's classification of the complaint and disposition) that would help contextualize any description of the complaint or charges provided.  As this Court upheld, "[a]ccurate descriptions of allegations and personnel actions or decisions that are made public are not actionable, 'even when a reader might infer something unfavorable about the employee from these allegations.'"  See August 21, 2020 Order, Dkt. 216, at 29:4-9 (quoting Wiese v. Kelly, No. 08-CV-6348 (CS), 2009 U.S. Dist. LEXIS 82307, at *13-15 (S.D.N.Y. 2009).

The Court went on to note,

> This is not a case, for example, where the defendants are uncritically publishing the allegations of misconduct made against officers as if these allegations were true. Disclosure of a record that an allegation was found to be unfounded or unsubstantiated is a true statement as to the outcome of an investigation of that allegation.
>
> But to establish defamation under New York law, it is "well settled" that the statement must actually be false. Tannerite Sports, LLC v. NBC Universal News Grp., 864 F.3d 236, (2d. Cir. 2017). And here, for example, a CCRB record's statement that an allegation is unsubstantiated is not a false statement; it is an accurate depiction of an outcome of a CCRB investigation into a complaint.

6

See August 21, 2020 Decision, Dkt. No. 216, at 29: 9-15; 30:4-12 (citations corrected).

The Court held,

> These records are also not sufficiently derogatory to injure plaintiffs' reputation. … plaintiffs have not established that the publication of these records will cause any concrete, particularized, actual, or imminent injury to their reputation. And for these reasons [], they have failed to establish that any of the records are likely to cause actual injury to reputation.
>
> Now, plaintiffs have failed to establish that these records are false and they have, therefore, failed to meet the stigma prong.

See id. at 31:6-13; 32:6-8.

Even if plaintiffs could meet the stigma component of their claim, they are, nevertheless, unable to demonstrate a loss of employment or some other tangible employment action, sufficient to fulfill the plus prong. Plaintiffs allege that the publication of the disputed records can "deprive[] the identified individuals of a protected liberty interest," which "[f]or some . . . will be a loss of employment" or "[f]or others . . . interfer[ence] with their future employment opportunities." See Pl. Memo., Dkt. Nos. 10-12 at 15. However, the argument that a liberty interest arises when the government makes public statements that potentially interfere with future job prospects is an argument that has been routinely and consistently rejected by the Second Circuit as plainly insufficient to support a "stigma-plus" claim. See Boss v. Kelly, 306 F. App'x 649 (2d Cir. 2009) (summary order); Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994) ("the deleterious effects which flow directly from a sullied reputation," including "the impact the defamation might have on job prospects" are insufficient to establish a protected liberty interest.); Sessom v. New York State Div. of Parole, Docket No. 17-CV-6634 (CM), 2017 U.S. Dist. LEXIS 177988 at *4-5 (S.D.N.Y. 2017) (quoting Burgos Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010); Adams v. N.Y. State Educ. Dep't, 732 F. Supp. 2d 420, 449 (S.D.N.Y. 2010).

Similarly, plaintiffs allege that the online publication of the disputed records would permit "search engines, credit agencies, landlords, and potential employers [to] access [these records]. . . for a lifetime," "result[ing] in limitless and eternal notoriety." Pl. Memo., Dkt. Nos. 10-12, at 16.  Plaintiff's unsupported and speculative assertion that being labeled a bad actor could impact their members' safety is also the sort of "typical consequence of a bad reputation" that the Second Circuit has rejected.  Boss, 306 F.App'x 649 (rejecting liberty interest claim arising from removal of Police Officer's firearm).  Plaintiffs not only fail to establish any element of their Fourteenth Amendment liberty interest due process claims, their reliance on theories consistently rejected by the Second Circuit makes such claims borderline frivolous.

On August 21, 2020, this Court held,

> Second Circuit precedent forecloses the argument that the plus prong is satisfied by a vague allegation of potential loss of employment due to reputational harm. … At base, vague allegations of future loss of employment are another way of claiming stigmatic harm.
>
> Even assuming that such loss of employment, or that these allegations could satisfy the standard, plaintiffs' alleged harm to employment prospects is so remote that it is not proof of a tangible state-imposed burden concurrent with the disclosure. To meet their burden, plaintiffs must do more than simply say that records may lead to diminished employment prospects for some vague subset of officers in the future. Again, plaintiffs failed to explain why law enforcement officers in charge of hiring would be incapable of interpreting the records disclosed by defendants.
>
> As noted repeatedly, the dispositional discussions will contextualize the description of the complaint or charges provided. They will allow future employers to make hiring decisions by evaluating the complaint and the investigation and its outcome independently. And as to any claim that the publication of these records may cause the immediate loss of employment for some officers, plaintiffs do not explain why an officer would lose their job.

8

<u>See</u> August 21, 2020 Order, Dkt. No. 216 at 32:20-23; 33:4 – 34:1.

Plaintiffs also allege that the effect of the repeal on existing settlement agreements has an impermissible retroactive effect on the liberty and property interests of the officers.  Pl. Memo., p. 17-18.  Plaintiffs allege that a retroactive application of the repeal only passes due process muster when supported by "a legitimate legislative purpose furthered by rational means." Pl. Memo., p. 18.  Plaintiffs argue that defendants' release of the disputed records does not pass this test because plaintiffs relied on the assurance of §50-a confidentiality when entering into these settlements and, had they known that the records would be released, they would have vigorously defended the allegations.  But a legislative change that authorizes disclosure of existing as well as newly created records is not "retroactive.   Further, there are multiple legitimate legislative purposes for such disclosure.  The plainest is compliance with FOIL and greater transparency about the workings of the disciplinary systems for law enforcement officers and firefighters.

On August 21, 2020, this Court agreed, holding,

> [P]laintiffs are essentially arguing that a state legislature can never change the law, that, while not even referenced in the parties' agreement, might possibly impact a party's contractual rights. I do not believe this to be the case, as the Supreme Court recognized in the context of California law in the decision of <u>DirectTV Incorporated v. Imburgia</u>, 136 S. Ct. 463 (2015).
>
> And even accepting plaintiffs' arguments that the settlements were negotiated with reference to Section 50-a, the Court must also accept that such settlements were negotiated with reference to FOIL, which is, as the parties know, to be liberally construed, and its exemptions narrowly tailored so the public is granted maximum access to the records of government. <u>Capital Newspapers, Div. of Hearst Corp. v. Whalen</u>, 69 N.Y.2d 246 (1987).

<u>See</u> August 21, 2020 Order, Dkt. No. 216, at 24:11- 25:1.

Even assuming that plaintiffs could establish a sufficient liberty interest, they nevertheless fail to state a claim for how the City is depriving their members of all the process that is due.  The Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy."  Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997).  It is clear that the City provides a full panoply of remedies, such as pre-deprivation disciplinary hearings for permanent employees, the opportunity to respond to allegations throughout the course of an investigation, and the availability of Article 78 review.  Plaintiffs have not alleged otherwise, and that is all the process that is due.  See Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Henderson v. New York, 423 F. Supp. 2d 129,145 (S.D.N.Y. 2006); Koehler v. New York City, Docket No. 04 Civ. 6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005); Ryan v. Carroll, 67 F. Supp. 2d 356, 361 (S.D.N.Y. 1999).

Accordingly, even if plaintiffs were able to establish a constitutionally protected liberty interest – which they cannot – their due process claims fail, as a matter of law, because the City indisputably provides all the process that is due.  Indeed, this Court agreed, finding,

> plaintiffs fail to allege that the officers are deprived of the process that is due, because in the creation of the records themselves, the officers are entitled to pre-deprivation disciplinary hearings, the opportunity to respond to allegations throughout the course of the investigation, and the availability of Article 78 review. So on these many bases, there is not an adequate showing as to the due process claim.

See August 21, 2020 Order, Dkt. No. 216, at 34:5-12.

**B.      Equal Protection**

For their Fourteenth Amendment equal protection claim, plaintiffs allege that they are treated differently than similarly situated employees when applying the privacy and safety exemptions provided in Pub. Off. Law § 87.  See Complaint ¶ 11 Dkt. Nos. 1, 5.   Such an equal protection claim has specifically been rejected by the Supreme Court.   In the context of constitutional claims arising from public employment, plaintiffs are required to demonstrate that any alleged disparate treatment was based on membership in a specific class that has been granted legal protection.  See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 605 (2008); see also Analytical Diagnostic Lab, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) ("The Supreme Court's decision in Engquist ... eliminated class-of-one claims for government employees."); Staskowski v. Cty. of Nassau, 410 F. App'x 420 (2d Cir. 2011) (summary order); Conyers v. Rossides, 558 F.3d 137, 151–52 (2d Cir. 2009); Massi v. Flynn, 353 Fed. Appx. 658, 660 (2d Cir. 2009) (summary order); Porr v. Daman, 299 Fed. Appx. 84, 86 (2d Cir. 2008).

In reading this requirement into the equal protection clause, the Supreme Court specifically ruled out equal protection claims challenging different applications of discretion to different employees because permitting such would serve to constitutionalize all decisions by a public employer concerning its employees:

> [If] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim.

Engquist, 553 U.S. 607-608.

Plaintiffs are attempting to constitutionalize the discretionary applications of FOIL with respect to specific City employees.   Because plaintiffs do "not allege [that they were]

11

discriminated against on the basis of race, sex, national origin, or other protected classification," their equal protection claims must be dismissed.  <u>Conyers</u>, 558 F.3d, 152.  This Court noted that,

> the plaintiffs *concede* that they are not members of a protected class, such that the appropriate level of scrutiny is a rational basis review. And "as a general rule, the equal protection guarantee of the constitution is satisfied when the government differentiates between persons for a reason that there's a rational relationship to an appropriate governmental interest."

<u>See</u> August 21, 2020 Decision, Dkt. No. 216, at 34:23 – 35:5 (emphasis added)(quoting <u>Able v. United States</u>, 155 F.3d, 628 (2d. Cir. 1998)).

However, even under a rational basis review, plaintiffs' claim would nonetheless fail because, as set forth in Point III *infra*, the City has articulated a rational and non-discriminatory basis for publishing the disputed records, which is to fulfill the legislative intent behind repealing § 50-a, comply with FOIL, and "help the public regain trust that law enforcement officers and agencies may be held accountable for misconduct."  <u>See</u> Sponsor Memo., N.Y. Senate Bill S8496, June 6, 2020, Barker Decl. at ¶ 39.  Likewise, it would be improper to compare plaintiffs' members to City employees who do not work in law enforcement due to the obvious and significant differences between those various roles.  <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005)(to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.").

Indeed, this Court held,

> [P]laintiffs work in law enforcement, and the very nature of their roles, vis-a-vis the public, is very different from other City employees. They are not similarly situated. And I believe plaintiffs conceded as much at oral argument. Officers patrol the streets with firearms and are authorized to use force under the aegis of state power. And therefore, a state-licensed medical physicist is just not similarly

> situated to a City-employed police officer or correction officer.
>
> …the City has articulated a rational and nondiscriminatory basis for treating the plaintiffs differently than other City employees, if it could be found that these employees were similarly situated. As the city and the state legislature articulated, there are strong governmental interests in accountability and transparency. And the role of police officers in society, the unique responsibilities they carry, the harms they are capable of inflicting on the public, also explain why the City might choose to release records about investigations into allegations of misconduct, but might not proactively release similar records by other city employees, such as teachers or sanitation workers, who do not have similar powers.

See August 21, 2020 Decision, Dkt. No. 216, at 36:2-22.  Accordingly, plaintiffs' equal protections claims should be dismissed.

## POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE NEW YORK STATE CONSTITUION

It is well settled that "New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff."  Davis v. City of New York, 959 F. Supp. 2d 324 (S.D.N.Y. 2013)(quotation and citation omitted).  Here, plaintiffs assert their due process and equal protection claims under both the New York State Constitution and § 1983, demonstrating that plaintiffs have an alternative remedy through § 1983. Therefore, no private right of action is available.  See Raymond v. City of New York, No. 15 CV 6886 (LTS) (HBP), 2017 U.S. Dist. LEXIS 31742 at *25 (S.D.N.Y. Mar. 6, 2017) (dismissing plaintiffs' state constitutional claims as superfluous where they were also brought under § 1983). Therefore, these claims should be dismissed.

## POINT III

### PLAINTIFFS ARTICLE 78 MUST BE DISMISSED

Animating their Article 78 claim, plaintiffs allege that the "release of []

Unsubstantiated and Non-Final Allegations would…constitute errors of law and be arbitrary and

capricious agency action as an unwarranted and irreversible invasion of the right to privacy." See

¶ 8 of Complaint at Dkt. Nos. 1, 5.  That is patently false.  Notably, at the outset, all CCRB

determinations, including unsubstantiated findings, are final agency determinations[4] and,

therefore, do not fall within plaintiffs' objections to "non-final allegations." See Darche Decl.[5] at

¶ 24.  That aside, however, plaintiffs fully fail to state a cause of action.

It is well settled that "[i]n reviewing an administrative agency determination,

[courts] must ascertain whether there is a rational basis for the action in question or whether it is

arbitrary and capricious." Matter of Gilman v. New York State Division of Housing and

Community Renewal, 99 NY2d 144, 149 (2002).  Tellingly, a court may not substitute its judgment

for that of the board or body it reviews unless the decision under review is "arbitrary and

unreasonable and constitutes an abuse of discretion." In the Matter of Pell v. Bd. of Educ., 34

---

[4] In contrast, a non-final agency determination is not reviewable in court. See Art. 78, CPLR Sec. 7801.  Given that plaintiff PBA itself has challenged CCRB determinations, through Article 78, plaintiffs plainly recognize the finality of the CCRB's determinations, which include findings of, inter alia, an "unsubstantiated" complaint of misconduct. See e.g. Patrick Lynch, et. al. v. The New York City Civilian Complaint Review Board, Index No. 152235/2018 (Sup. Ct. N.Y. Cty. 2018); Matter of Daniel Pantaleo v. New York City Civilian Complaint Review Board, Index No. 100641/19 (Sup. Ct. N.Y. Cty. 2019), decisions of which are annexed to the Barker Decl. as Exhibit "P."

[5] The Court may consider the record when deciding the instant motion to dismiss on plaintiffs' Article 78 petition. See Franza v. Stanford, No. 16-CV-7635, 2019 U.S. Dist. LEXIS 18448, *7, n.3 (S.D.N.Y. February 5, 2019) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (finding that the district court could consider documents, which the plaintiffs had notice of and were "integral" to their claim, in ruling on a motion to dismiss even though those documents were not incorporated into the complaint by reference); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)..."); Yan Won Liao v. Holder, 691 F. Supp. 2d 344, 352 (E.D.N.Y. 2010) (taking judicial notice of "public documents filed in connection with" proceedings in a different court on a motion to dismiss was proper)).

NY2d 222, 230-231 (1974).  Further, "courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise."  Peckham v. Calogero, 12 NY3d 424, 431 (2009).

      The centerpiece of plaintiffs' claim under Article 78 is an assertion that "[i]t is an error of law and arbitrary and capricious for the [Defendants] to change decades of agency practice on the protections afforded Unsubstantiated and Non-Final Allegations under the pretext of the repeal of § 50-a."  See ¶ 8 of Complaint.  However, now that § 50-a has been repealed, for the first time in decades, these disciplinary records are subject to FOIL, which presumes disclosure.  Data Tree, LLC v. Romaine, 9 N.Y.3d 454, 463 (2007)(FOIL compels "disclosure, not concealment.").  Moreover, "the party seeking an exemption from disclosure has the burden of proving entitlement to the exemption."  Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York, 928 N.Y.S.2d 701, 702 (1st Dep't 2011).  Plaintiffs wholly fail to meet their burden.  Aside from the now defunct § 50-a, plaintiffs fail to point to a single statute mandating the confidentiality of the disputed records.  Fulfilling the legislative intent of FOIL and the repeal of § 50-a is an amply rational basis for publishing the disputed records.  Therefore, plaintiffs Article 78 claim should be dismissed.

      Along with the repeal of § 50-a, the Legislature also amended Pub. Off. Law § 89 to require the redaction of certain information in law enforcement disciplinary histories, including, an officer's medical history, home addresses, personal telephone numbers, personal e-mail addresses, and mental health services, prior to disclosure.  Pub. Off. Law § 89 (2-b).  Agencies may also redact records pertaining to technical infractions, such as a minor violation of the Patrol Guide concerning officer appearance, for example.  Id.  Further, the Legislature considered and *rejected* plaintiffs' arguments for exempting unsubstantiated, unfounded, and exonerated allegations from disclosure.  See Barker Decl. ¶¶ 20, 23-24, 46-50.  In fact, it declined to exempt, limit, or even define these records to ensure full transparency.  See id.

Thus, the public disclosure of disciplinary records – a disclosure that plaintiffs seek to impede – fully accords with the legislative purpose of the repeal of § 50-a and the concurrent amendment of Pub. Off. Law § 89.   That galvanizing legislative purpose is captured in the sponsor's memorandum that accompanied the senate bill, repealing § 50-a:

> FOIL already provides that agencies may redact or withhold information whose disclosure would constitute an unwarranted invasion of privacy. Recent changes to the Civil Service Law have created additional, non-discretionary protections against the release of certain sensitive information such as contact information. Furthermore, this bill adds additional safeguards in the FOIL statute. Finally, courts have the ability to protect against improper cross-examination and determine if police records are admissible in a trial, without the denial of public access to information regarding police activity created by § 50-a. The broad prohibition on disclosure created by § 50-a is therefore unnecessary and can be repealed as contrary to public policy.
>
> Repeal of § 50-a will help the public regain trust that law enforcement officers and agencies may be held accountable for misconduct.

Sponsor Memo, S8496, June 6, 2020, Barker Decl. at ¶ 39.

Therefore, the Legislature's failure to exclude from public release unsubstantiated or non-final allegations in law enforcement disciplinary records clearly evidences that it was the legislature's intent that they be disclosed.  Matter of Collins v Dukes Plumbing & Sewer Serv., Inc., 75 AD3d 697, 699-700 (3d Dep't 2010); see also Bright Homes v. Wright, 8 NY2d 157, 162, 168 (1960)("Courts are not supposed to legislate under the guise of interpretation, and in the long run it is better to adhere closely to this principle and leave it to the Legislature to correct evils if any exist."); People v. Olah, 300 NY 96, 102 (1949)("A statute must be construed and applied as it is written by the Legislature, not as some judges may believe it should have been written."); Matter of Kittredge v. Planning Bd. of Town of Liberty, 57 AD3d 1336, 1339 (2008) ("In

construing a statute, a court must attempt to harmonize all its provisions and to give meaning to all its parts, considered as a whole, in accord with legislative intent.

Plaintiffs suggest that the privacy and safety exemptions in Pub. Off. Law § 87 somehow require mandatory confidentiality for unsubstantiated and non-final allegations towards law enforcement.  See ¶ 123 of Complaint at Dkt. Nos. 1, 5 ("Because the pre-existing privacy exceptions plainly apply to Unsubstantiated and Non-Final Allegations, any decision to release this data in full would necessarily [be] an error of law.")  However, these exceptions are plainly permissive.[6]  The statute reads, "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency *may* deny access to records or portions thereof that…"  Pub. Off. Law § 87 (emphasis added).  Capital Newspapers, 67 N.Y.2d at 567 (1986) ("the language of the exemption provision contains permissive rather than mandatory language, and it is within the agency's discretion to disclose [] records, with or without identifying details, if it so chooses."); see also Short v. Bd. of Managers of Nassau Cty. Med. Ctr., 57 N.Y.2d 399, 404 (1982).

Moreover, after the repeal of § 50-a, on July 27, 2020, the New York State Committee on Open Government ("Committee") issued an advisory opinion on this subject, which plaintiffs incongruously argue bolsters their claims.  See Advisory Opinion attached to Dkt. No. 75 as Exhibit "C."  However, the Committee opined that agencies could permissively disclose or withhold unsubstantiated and non-final law enforcement disciplinary records at their discretion. Id.  Additionally, while advisory opinions "are not binding authority, they may be considered on the strength of their reasoning and analysis."  Matter of TJS of N.Y., Inc. v. New York State Dep't

---

[6] Moreover, plaintiff PBA president, Patrick Lynch, admitted that these exceptions are permissive when testifying for the Legislature on October 24, 2019.  See Testimony of Patrick Lynch, annexed to Barker Decl. as Exhibit "J."

of Taxation & Fin., 89 A.D.3d 239, 242 n.1 (3d Dep't 2011). To better understand the Committee's reasoning and analysis, it is important to examine their earlier 2018 Report—prior to the repeal of § 50-a— where it noted that "it is ironic that public employees having the most authority over peoples' lives [referring to police] are the least accountable relative to disclosure of government records." See the Committee's 2018 Annual Report annexed to the Barker Decl. as Exhibit "B."

For an agency to assert discretionary privacy exceptions to disclosure under FOIL, it must "balance[e] the privacy interests at stake against the public interest in [the] disclosure of the information." See Matter of Harbatkin v. New York City Dept. of Records & Info. Servs., 19 N.Y.3d 373, 380 (2012)("a court must decide whether any invasion of privacy . . . is unwarranted by balancing the privacy interests at stake against the public interest in [the] disclosure of the information."). Defendants' determination is entirely supported by the legislative intent.

Plaintiffs further allege that defendants are breaking an "established practice on the protections afforded Unsubstantiated and Non-Final Allegations" and, that such a break with past policy is arbitrary absent an explanation of the reason for the change. But plaintiffs cannot demonstrate that defendants ever had a practice to categorically assert FOIL's privacy or safety exemptions to unsubstantiated or non-final allegations. Indeed, defendants testified, through Fed. R. Civ. P. 30(b)(6) witnesses, that FOIL requests are evaluated on a case-by-case basis, with exemptions applied only as appropriate. See Barker Decl. at ¶¶ 62, 64, 66, and 68. Defendants further testified that nothing requires a categorical or reflexive application of these exemptions for categories of records. See Barker Decl. at ¶¶ 63, 65, 67, and 69.

Plaintiffs' only support for the proposition that defendants ever had such a practice is to cite to two cases, where the CCRB asserted the privacy exception, in addition to § 50-a, with respect to unsubstantiated cases. However, neither Matter of Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd., 53 Misc. 3d 947 (Sup. Ct., Kings Cnty. 2016) nor Luongo v.

Records Access Off., 150 A.D.3d 13, 16 (1st Dep't 2017) note the existence of any such policy, and the FOIL requests that they relate to date back to 2015 and 2014 respectively. See Jamieson Dec. ¶ 13.  In addition, for the past several years, the CCRB has not relied on the case disposition (such as unsubstantiated, unfounded, or exonerated) as a basis for asserting the privacy exemption in response to a FOIL request for officer CCRB histories or other documents. Id. ¶¶ 13, 17.  Two cases, involving requests from 2014 and 2015, do not suggest the existence of any categorical policy even at that time, let alone in recent years.

While the CCRB *has* asserted the privacy exemption in response to certain FOIL requests in recent years, it explained that its basis for doing so was unrelated to the case disposition. Thus, the CCRB asserted (and continues to assert) the privacy exception in response to FOIL requests calling for documents that include civilian names (other than the requester's), or that include private details regarding an incident.  Thus, even prior to the repeal of § 50-a, the CCRB did not assert a privacy exemption to bar disclosure of officer history reports related to truncated, unsubstantiated, exonerated, or unfounded complaints of misconduct.  See ¶17 of the Jamieson Decl.  Plaintiffs' claim of a recent break with past established practice is baseless.

In addition, while there has been no change in policy, the CCRB has explained that recent events provide additional support for its current practice of not asserting the privacy exemption with regard to complaints or dispositions in unsubstantiated, exonerated, or unfounded cases.  As CCRB notes, "the increasingly intense public sentiment regarding transparency on police disciplinary matters, culminating in the repeal of Civil Rights Law § 50-a without an exception carved-out for pending, unsubstantiated, exonerated, and unfounded cases, is evidence of the tremendous public interest in this information, particularly for officer histories and complaint reports. The Legislature's decision to repeal the law only reinforces our judgment not

to invoke the privacy exception for those records and to only apply the exception on a case-by-case basis."  See Jamieson Decl. ¶ 25.

Finally, it is black letter law in New York that there are no categorical exemptions from disclosure under FOIL for particular types of documents.  Gould v. New York City Police Department, 89 N.Y.2d 267, 275 (1996) ("blanket exemptions  for particular types of documents are inimical to FOIL's policy of open government"); Police Benevolent Assn. v. State of New York, 145 A.D.3d 1391, 1392 (3d Dept. 2016) ("Public Officers Law §87(2)(b) permits an agency to deny access to records of portions thereof, if disclosure 'would constitute an unwarranted invasion of privacy.'  The statute does not, however, categorically exempt such documents from disclosure."); Fink v. Lefkowitz, 47 N.Y.2d 567, 571 (1979)(An agency that seeks to invoke an exemption, must therefore "articulate a particularized and specific justification' for not disclosing requested documents.")

Therefore, defendants' decision to comply with FOIL and disclose the disputed records was not arbitrary and capricious, and their Article 78 petition should be denied.  Indeed, this Court agreed on August 21, 2020 and held,

> [T]he legislature thoroughly considered and rejected plaintiffs' arguments for exempting unsubstantiated, unfounded, and exonerated allegations from disclosure. And as evidence that the legislature considered plaintiffs' concerns about privacy and safety, they made a reasoned determination to enact the provisions additional to the New York Public Officers' Law, which requires the redaction of certain information in law enforcement disciplinary histories, including a medical history, home address, personal telephone number, personal email address, and mental health service, and that that was the correct balance to strike. The legislature also added a provision permitting agencies to redact records pertaining to technical infractions. And so I'm entirely unpersuaded that the repeal itself was arbitrary or capricious.

20

> But "in reviewing an administrative agency
> determination, courts must ascertain whether there is
> a rational basis for the action in question or whether
> it is arbitrary and capricious." <u>Matter of Gilman v.
> New York State Division of Housing and
> Community Renewal</u>, 99 N.Y.2d 144 (2002).
>
> On this record, I will not find that the NYPD's and
> the CCRB's planned disclosures, in light of the repeal
> of 50-a, are arbitrary and capricious. Rather, it
> appears that the planned disclosures accord with the
> legislative purposes of both the repeal of 50-a, the
> concurrent amendments to Public Officers' Law,
> Section 89, and FOIL.

<u>See</u> August 21, 2020 Decision, Dkt. No. 216, at 37:12-25; 38:5-20 (citations corrected).

## POINT IV

### THE COURT HAS DECIDED PLAINTIFFS ARTICLE 75 PETITION AND ANY REMAINING CLAIMS SHOULD BE DISMISSED

Plaintiffs contend that they have the contractual right to have exonerated and/or unfounded "investigative reports" removed from their personnel files.  <u>See</u> Pl. Memo. at 8. However, plaintiffs misstate the applicable CBA provisions.  Each provision that exists on the matter[7] only grants the right of removal upon request[8] and solely from an officer's personnel file. That right does not create an entitlement to remove the investigative reports or the actual complaint and allegation from the defendants' own records in toto, much less from the public domain. Indeed, this Court agreed, finding that

> this is not a grievance to be arbitrated at all. This is
> not a situation, as plaintiffs claimed at oral argument,
> where the Court would be nullifying relief an

---

[7] Section 7(c) of the PBA, SBA, and LBA CBAs. Section 6 of the CEA CBA. Section 11 of COBA. Section 9 of UFA and UFOA. The DEA CBA is entirely silent on the matter.

[8] The UFA and UFOA CBAs grant automatic expungement from personnel files.

> arbitrator might be able to provide because the relief
> sought is simply nowhere to be found in the CBA.

See Transcript of the August 21, 2020 Order, Dkt. No. 216 at 20:18-22.

Finally, plaintiffs contend that the disclosure of disputed records would violate their members collectively bargained-for rights to "petition the Police Commissioner to expunge the records of certain cases heard in the Trial Room where the disposition of the charge at trial or on review or appeal is other than 'guilty,' after 2 years have passed."  See Complaint at ¶ 54. However, once again, plaintiffs misstate the applicable CBA provisions, which only exist in the PBA, SBA, and LBA CBAs.  See Barker Decl. at Exhibit "N" at § 8.  Under these CBAs, a member may only seek expungement "of the record of the case" for "Schedule A" violations[9] two years after a disposition of anything but "guilty" in the Trial Room or on appeal.  See Barker Decl. at Exhibit "N" at § 8.

But this Court has already preliminary enjoined defendants from disclosing records relating to "Schedule A" violations where PBA, SBA, and LBA members of service can still assert their bargained-for right, under Section 8 of their CBAs, to request "expungement of the record of the case."  See Transcript of the August 21, 2020 Order, Dkt. No. 216 at pp. 21-23.  That preliminary injunction in aid of arbitration, which defendants accept, is all the relief the Court may grant under Article 75.  Thus, defendants' motion is directed at plaintiffs' remaining claims under Article 75, for which the Court properly denied relief and should now be dismissed.

## POINT V

## PLAINTIFFS FAIL TO STATE A CLAIM OF BREACH OF CONTRACT

---

[9] "Schedule A" violations are minor patrol guide violations, such as failure to have identification and reporting late for duty.  See Transcript of August 18, 2020 Preliminary Injunction Hearing, at Dkt. No. 211, at 53:1-7; 54:1-4; see also NYPD Patrol Guide available at https://www1.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf (last viewed on September 1, 2020) at 438.

Plaintiffs allege that defendants would violate their members' settlement agreements over charges of misconduct by disclosing the disputed records,[10] which *might* relate to those allegations or charges.  They allege that had they known the underlying allegations might become public, they might have defended themselves against disciplinary charges more vigorously.  See Complaint at ¶ 7, 62, 65.

## A.   Plaintiffs Lack Standing to Bring a Breach of Contract Claim

As an initial matter, plaintiffs lack the standing to assert these claims on behalf of their members.  Only parties to a contract have standing to assert a breach of contract claim.  Heath v. Stephen Banks, 692 Fed. Appx. 60, 60-61 (2d Cir. 2017)("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); see also Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 627 F. Supp. 1202, 1212 (S.D.N.Y. 1986), aff'd, 814 F.2d 90 (2d Cir. 1987); Capital Nat'l Bank of New York v. McDonald's Corp., 625 F. Supp. 874, 883 (S.D.N.Y. 1986).

## B.   Plaintiffs' Complaint Must Be Dismissed Because Plaintiffs Failed to Exhaust Their Contractual Remedies

Plaintiffs' CBAs contain grievance and arbitration procedures to resolve disputes, such as these.  Plaintiffs cannot proceed in any court on a breach of contract claim where their CBAs each contain a provision to arbitrate disputes arising under those agreements. The Legislature has recognized the strong policy favoring internal grievance mechanisms and the finality of the grievance process in public collective bargaining agreements.  Bd. of Educ. v. Ambach, 70 N.Y.2d 501, 509-10 (1987), cert denied sub nom., Margolin v. Bd. of Educ., 485 U.S.

---

[10]  To the extent that plaintiffs argue that disclosure of unsubstantiated, unfounded, exonerated, and non-final allegations would violate their members' past settlement agreements: "unsubstantiated and non-final" allegations of misconduct would never be disputed in the first place, let alone the need to defend or settle them.  Never mind that settlements, by their very nature, are final.

Case 1:20-cv-05441-KPF   Document 220   Filed 09/04/20   Page 30 of 31

1034 (1988).  Accordingly, in New York, a union and its members must first exhaust the remedies provided in the applicable collective bargaining agreement covering that employee before proceeding to court.  Cantres v. Bd. of Educ., 145 A.D.2d 359, 360 (1st Dep't 1988)(citing Plummer v. Klepak, 48 N.Y.2d 486, 489 (1979), cert. denied, 445 U.S. 952 (1980)); Hall v. Town of Henderson, 17 A.D.3d 981, 982 (4th Dep't), lv. to appeal den., 5 N.Y.3d 714 (2005).

The Court of Appeals has repeatedly recognized that the interests of all parties to collective bargaining are served through the grievance procedures and, thus, once in place, those procedures should not be undermined.  Ambach, 70 N.Y.2d at 509.  Because the parties' CBAs bind plaintiffs to its terms, the instant dispute must be pursued through the grievance and arbitration processes contained within those CBAs, not in this or any other court.

## C.    Plaintiffs' Complaint Must Be Dismissed for Failure to State a Claim

Plaintiffs further argue that such a disclosure would make defendants in breach of their plaintiffs' members' settlement agreements because those agreements were entered into while § 50-a was in effect and, thus, necessarily "include[d] the confidentiality protection provided by § 50-a."  Pl. Memo. at 21-22; see also ¶ 65 of the Complaint.  In effect, the unions are making the remarkable claim that settlements with a city agency rendered § 50-a immutable and FOIL inoperable as to all records concerning the settled charges.

This claim is all the more preposterous because the unions do not allege that the referenced settlements included any language about document disclosure, let alone allege that they incorporated § 50-a or the confidentiality requirements thereof.  Everyone—contracting parties included—is presumed to understand that state law is subject to change by act of the Legislature.  Contracting parties rarely, if ever, succeed in limiting the state's sovereign power to legislate even where, unlike here, they are entered into by state agencies and include language that could be read as purporting to do so.  Doe v. Pataki, 481 F.3d 69 (2d Cir. 2007).  There's certainly no basis for

24

such a claim against a city agency, especially one where plaintiffs cite no contractual language even hinting that state law might be frozen in place, if that were possible.

Plaintiffs rely on <u>Skandia America Reinsurance Corp. v. Schenck</u>, 441 F. Supp. 715 (S.D.N.Y. 1977) to support the proposition that "[the] law, 'in force at the time' of the settlement agreements, is 'a part of the contract.'" <u>See</u> <u>id.</u> at 724.  However, as previously mentioned in Part I *infra*, this Court noted that their reliance upon this case was entirely misplaced and wholly inapplicable to the instant case. Indeed, the Court held that the "settlements were [also] negotiated with reference to FOIL," and, therefore, defendants have no authority to "prohibit public access to such records." <u>See</u> August 21, 2020 Order, Dkt. No. 216, at 24:11- 25:22 (citation corrected). Therefore, these claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss plaintiffs' Complaint in its entirety and grant such further relief as the Court deems just and proper.

Dated:        New York, New York
              September 4, 2020

                              JAMES E. JOHNSON
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007
                              646-960-1103
                              kbarker@law.nyc.gov


                   By:      ___/s/_____
                              Kami Z. Barker
                              Assistant Corporation Counsel