Index No. 20-Civ-05441(KPF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Uniformed Fire Officers Association; Uniformed
Firefighters Association of Greater New York; Correction
Officers' Benevolent Association of the City of New
York, Inc.; Police Benevolent Association of the City of
New York, Inc.; Sergeants Benevolent Association;
Lieutenants Benevolent Association; Captains
Endowment Association; and Detectives' Endowment
Association,

Plaintiff,

-against-

Bill de Blasio, in his official capacity as Mayor of the
City of New York; the City of New York; Fire
Department of the City of New York; Daniel A. Nigro, in
his official capacity as the Commissioner of the Fire
Department of the City of New York; New York City
Department of Correction; Cynthia Brann, in her official
capacity as the Commissioner of the New York City
Department of Correction; Dermot F. Shea, in his official
capacity as the Commissioner of the New York City
Police Department; the New York City Police
Department; Frederick Davie, in his official capacity as
the Chair of the Civilian Complaint Review Board; and
the Civilian Complaint Review Board,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

***JAMES E. JOHNSON***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Kami Zumbach Barker*
*Tel:  (212) 356-2409*
*Matter No. 2020-025039*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES....................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS............................................................................................3

PROCEDURAL HISTORY ..........................................................................................3

ARGUMENT ................................................................................................................4

    POINT I

        PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE
        FOURTEENTH AMENDMENT OF THE U.S.
        CONSTITUTION...............................................................................4

        A.    Due Process..........................................................................4

            (i.) Stigma-Plus...............................................................5

                a.    Stigma ............................................................5

            (ii.) Plus    8

                b.    Potential Loss of Employment................................9

                c.    Potential Threat to Officer Safety .........................10

                d.    Potential Loss of Rights Derived from
                      Prior Settlement Agreement....................................12

            (iii.) No Denial of Due Process ................................13

        B.    Equal Protection..........................................................16

    POINT II

        PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE
        NEW YORK STATE CONSTITUION .................................................19

    POINT III

        PLAINTIFFS ARTICLE 78 MUST BE DISMISSED.........................................20

**Page**

POINT IV

    THE COURT HAS DECIDED PLAINTIFFS ARTICLE 75
    PETITION, AND ANY REMAINING CLAIMS SHOULD
    BE DISMISSED ........................................................................................ 30

    A.    Section 7(c) of Plaintiffs' CBAs Do Not Require
           Defendants to Withhold the Disputed Records from
           Public Disclosure ....................................................................... 30

    B.    Section 8 of Plaintiffs' CBAs May Require
           Defendants to Withhold a Tiny Fraction of the
           Disputed Records, Which Related to Schedule A
           Violations .................................................................................... 31

    C.    Plaintiffs' Article 75 Fails Because Their
           Grievances Are Not Arbitrable ................................................... 32

POINT V

    PLAINTIFFS FAIL TO STATE A breach of contract
    CLAIM ..................................................................................................... 33

    A.    Plaintiffs Lack Standing to Bring a Breach of
           Contract Claim ............................................................................ 33

    B.    Plaintiffs' Complaint Must Be Dismissed Because
           Plaintiffs Failed to Exhaust Their Contractual
           Remedies ...................................................................................... 34

    C.    Plaintiffs' Complaint Must Be Dismissed for
           Failure to State a Claim ............................................................. 34

CONCLUSION ........................................................................................................ 36

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

600 W. 115th St. Corp. v. Von Gutfeld,
   80 NY2d 130 (1992)...........................................................................................7

Able v. United States,
   155 F.3d (2d. Cir. 1998) ...................................................................................17

Adams v. N.Y. State Educ. Dep't,
   732 F. Supp. 2d 420 (S.D.N.Y. 2010) ..............................................................8

Allen v. Wright,
   468 U.S. 737 (1984) ..........................................................................................4

Analytical Diagnostic Lab, Inc. v. Kusel,
   626 F.3d 135 (2d Cir. 2010) ...........................................................................16

Bd. of Educ. v. Ambach,
   70 N.Y.2d 501, 509-10 (1987),
   cert denied sub nom. Margolin v. Bd. of Educ., 485 U.S. 1034 (1988)..................34

Board of Regents of State Colleges v. Roth,
   408 U.S. 564 (1972) ..........................................................................................4

Boss v. Kelly,
   306 F. App'x 649 (2d Cir. 2009)...............................................................8, 9, 11

Bright Homes v. Wright,
   8 NY2d 157 (1960)..........................................................................................24

Burgos Vega v. Lantz,
   596 F.3d 77 (2d Cir. 2010) ................................................................................8

Cantres v. Bd. of Educ.,
   145 A.D.2d 359 (1st Dep't 1988)....................................................................34

Capital Nat'l Bank of New York v. McDonald's Corp.,
   625 F. Supp. 874 (S.D.N.Y. 1986) .................................................................34

Capital Newspapers, Div. of Hearst Corp. v. Whalen,
   69 N.Y.2d 246 (1987)...............................................................................13, 25

Carpenter v City of Plattsburgh,
   105 AD2d 295 (1985)......................................................................................24

Matter of Collins v Dukes Plumbing & Sewer Serv., Inc.,
   75 AD3d 697 (3d Dep't 2010).........................................................................24

Conyers v. Rossides,
    558 F.3d 137 (2d Cir. 2009) ........................................................... 16, 17

Cornell Univ. v City of N.Y. Police Dept.,
    153 AD2d 515 (1st Dep't 1989) ........................................................... 15

Data Tree, LLC v. Romaine,
    9 N.Y.3d 454 (2007) ........................................................................... 22

Davis v. Boeheim,
    24 N.Y.3d 262 (2014) ........................................................................... 7

Davis v. City of New York,
    959 F. Supp. 2d 324 (S.D.N.Y. 2013) ................................................. 19

DiBlasio v. Novello,
    344 F.3d 292 (2d Cir. 2003) ................................................................. 5

DirectTV Incorporated v. Imburgia,
    136 S. Ct. 463 (2015) ......................................................................... 13

Doe v. Pataki,
    481 F.3d 69 (2d Cir. 2007) ................................................................. 35

Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.,
    627 F. Supp. 1202 (S.D.N.Y. 1986), aff'd,
    814 F.2d 90 (2d Cir. 1987) ................................................................. 34

Engquist v. Oregon Dep't of Agric.,
    553 U.S. 591 (2008) ............................................................... 16, 17, 19

Feeseha v. TD Waterhouse Inv. Servs., Inc.,
    305 A.D.2d 268 (1st Dep't 2003) ......................................................... 31

Fink v. Lefkowitz,
    47 N.Y.2d 567 (1979) ......................................................................... 28

Floyd v. City of New York,
    302 F.R.D. 69 (S.D.N.Y. 2014) ............................................... 10, 11, 19

Matter of Gilman v. New York State Division of Housing and Community
    Renewal,
    99 NY2d 144 (2002) ........................................................................... 21

Gould v. New York City Police Department,
    89 N.Y.2d 267 (1996) ......................................................................... 28

Gross v. New York Times Co.,
    82 NY2d 146 (1993) ............................................................................. 7

Hall v. Town of Henderson,
    17 A.D.3d 981, lv. to appeal den., 5 N.Y.3d 714 (2005) ........................................34

Matter of Harbatkin v. New York City Dept. of Records & Info. Servs.,
    19 N.Y.3d 373 (2012)...............................................................................................26

Heath v. Stephen Banks,
    692 Fed. Appx. 60 (2d Cir. 2017) ...........................................................................33

Hellenic Am. Neighborhood Action Comm. v. City of New York,
    101 F.3d 877 (2d Cir. 1996), cert. denied,
    521 U.S. 1140 (1997) ...............................................................................................13

Henderson v. New York,
    423 F. Supp. 2d 129,145 (S.D.N.Y. 2006) ..............................................................13

Matter of Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd.,
    53 Misc. 3d 947 (Sup. Ct., Kings Cnty. 2016) ........................................................27

Immuno AG. V. Moor-Jankowski,
    77 NY2d 235 (1991)...................................................................................................7

Inc. Vill. Of Ocean Beach v. Dep't of Health Servs., Cty. Of Suffolk,
    715 N.Y.S.2d 902 (App. Div. 2000).........................................................................26

Jamaica Recycling Corp. v. City of New York,
    816 N.Y.S.2d 282 (Sup. Ct. 2006), aff'd, 38 A.D.3d 398 (2007) ...........................21

Jewish Press, Inc. v. N.Y.C. Dep't of Educ.,
    183 A.D.3d 731 (2d Dep't 2020)..............................................................................15

Johnston v. Tn. of Orangetown,
    562 F. App'x 39 (2d Cir. 2014).................................................................................13

Matter of Kittredge v. Planning Bd. of Town of Liberty,
    57 AD3d 1336 (2008)................................................................................................24

Koehler v. New York City,
    Docket No. 04 Civ. 6929,
    2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005) ........................................................14

Lee TT v. Dowling,
    87 N.Y.2d 699 (1996)..............................................................................................5, 6

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001) ..................................................................................4, 13

Luongo v. Records Access Off.,
    150 A.D.3d 13 (1st Dep't 2017)................................................................................27

Matter of Luongo v Records Access Officer,
    161 A.D.3d 1079 (2d Dep't 2018)..........................................................24

M. Farbman & Sons, Inc. v. N.Y.C. Health & Hosps. Corp.,
    62 N.Y.2d 75 (1984)..............................................................................15

M/A-COM Sec. Corp. v. Galesi,
    904 F.2d 134 (2d Cir. 1990) ..................................................................31

Margolin v. Bd. of Educ.,
    485 U.S. 1034 (1988) .............................................................................34

Massi v. Flynn,
    353 Fed. Appx. 658 (2d Cir. 2009) ........................................................16

McMenemy v. City of Rochester,
    241 F.3d 279 (2d Cir. 2001) ....................................................................4

Missere v. Gross,
    826 F. Supp. 2d 542 (S.D.N.Y. 2011) ......................................................5

Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York,
    928 N.Y.S.2d 701 (1st Dep't 2011)........................................................22

Negrete v. Citibank, N.A.,
    187 F. Supp. 3d 454 (S.D.N.Y. 2016), aff'd,
    759 F. App'x 42 (2d Cir. 2019)..............................................................35

Neilson v. D'Angelis,
    409 F.3d 100 (2d Cir. 2005) ..................................................................18

Patterson v. City of Utica,
    370 F.3d 322 (2d. Cir. 2004) ...................................................................6

Paul v Davis,
    424 US 693 (1976) ...................................................................................5

Peckham v. Calogero,
    12 NY3d 424 (2009)...............................................................................22

Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale &
    Mamaroneck, Westchester Cty.,
    34 N.Y. 222 (1974)................................................................................21

In the Matter of Pell v. Bd. of Educ.,
    34 NY2d 222 (1974)...............................................................................21

Pennsylvania v. Rizzo,
    530 F.2d 501 (3d Cir.1976) ...................................................................19

People v. Olah,
    300 NY 96 (1949) ............................................................................................. 24

Plummer v. Klepak,
    48 N.Y.2d 486 (1979),
    cert. denied, 445 U.S. 952 (1980) ..................................................................... 34

Police Benevolent Assn. v. State of New York,
    145 A.D.3d 1391 (3d Dept. 2016) ..................................................................... 28

Porr v. Daman,
    299 Fed. Appx. 84 (2d Cir. 2008) ..................................................................... 16

Raymond v. City of New York,
    No. 15 CV 6886 (LTS) (HBP),
    2017 U.S. Dist. LEXIS 31742 (S.D.N.Y. Mar. 6, 2017) ................................... 20

Ryan v. Carroll,
    67 F. Supp. 2d 356 (S.D.N.Y. 1999) ................................................................ 14

Sadallah v. City of Utica,
    383 F.3d 34 (2d Cir. 2004) ................................................................................. 5

Matter of Schenectady County Socy. for The Prevention of Cruelty To Animals,
    Inc. v. Mills,
    74 A.D.3d 1417 (3d Dep't 2010) ....................................................................... 15

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006) ............................................................................. 13

Sessom v. New York State Div. of Parole,
    Docket No. 17-CV-6634 (CM),
    2017 U.S. Dist. LEXIS 177988 (S.D.N.Y. 2017) ............................................... 8

Staskowski v. Cty. of Nassau,
    410 F. App'x 420 (2d Cir. 2011) ....................................................................... 16

Sud v. Sud,
    211 A.D.2d 423 (App. Div. 1995) ..................................................................... 35

Tannerite Sports, LLC v. NBC Universal News Grp.,
    864 F.3d 236 (2d. Cir. 2017) .............................................................................. 7

In re Thomas v. N.Y.C. Dep't of Educ.,
    103 A.D.3d 495 (App. Div. 2013) ..................................................................... 25

Matter of TJS of N.Y., Inc. v. New York State Dep't of Taxation & Fin.,
    89 A.D.3d 239 (3d Dep't 2011) ......................................................................... 25

Town of Castle Rock v. Gonzales,
   545 U.S. 748 (2005) .......................................................................................4

Unif. Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. Cuevas,
   714 N.Y.S.2d 802 (App. Div. 2000)...............................................................26

United States v. Bari,
   599 F.3d 176 (2d Cir. 2010) ............................................................................6

Valmonte v. Bane,
   18 F.3d 992 (2d Cir. 1994) ..............................................................................8

Weston v. Sloan,
   84 N.Y.2d 462 (1994)....................................................................................15

Wiese v. Kelly,
   No. 08-CV-6348 (CS), 2009 U.S. Dist. LEXIS 82307 (S.D.N.Y. 2009)................6

Zahra v. Town of Southfield,
   48 F.3d 674 (2d Cir. 1995) ..............................................................................4

**Statutes**

42 U.S.C. § 1983 ...............................................................................................2, 19

CCRB Rules § 1-21-1-30 .......................................................................................14

CCRB Rule § 1-33.............................................................................................5, 6

CEA § 6 ..........................................................................................................30

Civil Rights Law § 50-a ....................1, 3, 4, 12, 13, 14, 16, 18, 21, 22, 23, 24, 25, 26, 27, 34, 35

COBA § 11 .......................................................................................................30

CPLR Article 75 ...............................................................................................2, 3

**<u>Statues</u>**                                                                                      **<u>Pages</u>**

CPLR Article 78 ...................................................................................................2

Fed. R. Civ. P. 30(b)(6) ................................................................................26, 27

New York City Administrative Code § 14-115 ...............................................4

New York City Administrative Code § 15-113 ...............................................4

NY State Civil Service Law § 75 .....................................................................4

PBA § 7(c) .......................................................................................................30

Pub. Off. Law § 87 ...................................................................................16, 25

Pub. Off. Law § 89 ...................................................................................22, 23

Public Officers Law §87(2)(b) ........................................................................28

§ 7(c) ...............................................................................................................30

§ 8 .............................................................................................................31, 32

UFA § 9 ...........................................................................................................30

**<u>Other Authorities</u>**

Senate and Assembly Introducer Mem. in Support, Bill Jacket, L 1976, ch. 413........................24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

Uniformed Fire Officers Association; Uniformed
Firefighters Association of Greater New York; Correction
Officers' Benevolent Association of the City of New York,
Inc.; Police Benevolent Association of the City of New
York, Inc.; Sergeants Benevolent Association; Lieutenants
Benevolent Association; Captains Endowment Association;
and Detectives' Endowment Association,

No. 20-Civ-05441(KPF)

Plaintiffs,

- against -

Bill de Blasio, in his official capacity as Mayor of the City
of New York; the City of New York; Fire Department of
the City of New York; Daniel A. Nigro, in his official
capacity as the Commissioner of the Fire Department of the
City of New York; New York City Department of
Correction; Cynthia Brann, in her official capacity as the
Commissioner of the New York City Department of
Correction; Dermot F. Shea, in his official capacity as the
Commissioner of the New York City Police Department;
the New York City Police Department; Frederick Davie, in
his official capacity as the Chair of the Civilian Complaint
Review Board; and the Civilian Complaint Review Board,

Defendants.

-------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS

### PRELIMINARY STATEMENT

George Floyd's tragic death at the hands of a Minneapolis police officer on
Memorial Day of this year, galvanized the country into historic levels of public engagement and
protests, calling for criminal justice reform.  In New York, this ground swell of activism renewed
the years-long battle to repeal Civil Rights Law § 50-a ("§50-a"), and less than a month later, on
June 12, 2020, Governor Cuomo signed the statute repealing §50-a.  Effective immediately, law

enforcement disciplinary records became open to public inspection under Freedom of Information Laws ("FOIL").

Days later, on June 17, 2020, Mayor de Blasio announced the City's plan to publish these records in an online searchable database.  With that, the City ushered in a new era of police transparency.   Yet, approximately one month later on July 14, 2020, plaintiffs, representing various New York City uniformed police, fire and correction personnel, brought this action, pursuant to 42 U.S.C. § 1983, the New York State Constitution, CPLR Articles 75 and 78, and breach of contract laws.  Specifically, plaintiffs allege that defendants' plan to publish unsubstantiated, unfounded, exonerated, and non-final allegations of misconduct (hereinafter "the disputed records" or "Unsubstantiated and Non-Final Allegations") violates their members' constitutional rights of due process and equal protection, certain provisions of their collective bargaining agreements ("CBA") and prior settlement agreements, and is arbitrary and capricious.

While plaintiffs sought to prevent defendants from disclosing the disputed records, on August 21, 2020, this Court denied, in large part, their motion for a preliminary injunction, finding that plaintiffs' claims were unlikely to succeed.  <u>See</u> August 21, 2020 Order ("Decision") at Dkt. No. 216. On September 4, 2020, defendants moved to dismiss plaintiffs' complaint. Defendant-Intervenor Communities United for Police Reform moved to dismiss the complaint on September 11, 2020. In response to the motions, plaintiffs amended their complaint, adding little substantive allegations to their pleadings.   Now, for reasons more thoroughly explained below, defendants move to dismiss plaintiffs' First Amended Complaint (hereinafter "Complaint") in its entirety.  Plaintiffs have failed to state a claim under the U.S. or N.Y. Constitutions for due process or equal protection violations because plaintiffs are not part of a protected class, they receive all the process that is due, and because defendants have a rational basis for how they intend to disclose plaintiffs' members' disciplinary records.

2

Moreover, defendants' decision to publish the disputed records was not arbitrary or capricious. Instead, it was rationally made to fulfill the legislative intent behind FOIL and the repeal of § 50-a. Plaintiffs cannot state a claim under CPLR Article 75 or for breach of contract due to a lack of standing, the failure to exhaust contractual remedies, and their ultimate inability to state a claim. Accordingly, defendants move to dismiss the Complaint and respectfully request the Court dismiss the complaint in its entirety.

## STATEMENT OF FACTS

For a complete statement of facts, defendants respectfully refer the Court to the Declaration of Kami Z. Barker, dated August 14, 2020, ("Barker Decl.") and the annexed exhibits, Dkt. No. 135, the Declaration of Kerry Jamieson, dated August 14, 2020 ("Jamieson Decl."), Dkt. No. 135-22, the Declaration of Jonathan Darche, dated August 14, 2020 ("Darche Decl.") and the annexed exhibits, Dkt. No. 135-23, and Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 134.

## PROCEDURAL HISTORY

On August 21, 2020, this Court denied, in large part, plaintiffs' motion for a preliminary injunction and directed the parties to propose a briefing schedule for defendants' expected motion to dismiss. After doing so and receiving defendants' motions to dismiss, plaintiffs amended their complaint on September 25, 2020. See First Amended Complaint ("Complaint"), Dkt. No. 226. In the Complaint, plaintiffs replaced previously unsuccessful allegations regarding the "concrete and real" "damage" that plaintiffs expect their members to sustain with equally insufficient allegations of harm, which are based on the very same theories this Court previously found meritless.

<u>**ARGUMENT**</u>

**POINT I**

**PLAINTIFFS FAIL TO STATE A CLAIM
UNDER THE FOURTEENTH AMENDMENT
OF THE U.S. CONSTITUTION**

To make a Fourteenth Amendment claim, plaintiffs must allege a personal injury, which is traceable to defendants' allegedly unlawful conduct and likely to be redressed by the requested relief. See <u>Allen v. Wright</u>, 468 U.S. 737 (1984). Plaintiffs' claims are deficient on their face and should be dismissed.

**A.     Due Process**

The Fourteenth Amendment's guarantee of procedural due process applies only when a constitutionally protected property or liberty interest is at stake. <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 756 (2005). Therefore, when analyzing procedural due process claims, the threshold issue is whether the plaintiff possessed a valid property[1] or liberty interest. <u>See Zahra v. Town of Southfield</u>, 48 F.3d 674, 689 (2d Cir. 1995). The Due Process Clause "does not itself create" protectable property interests; rather property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 286 (2d Cir. 2001) (quotations omitted). To demonstrate such an interest, plaintiffs must show more than a mere abstract need or desire, but rather a legitimate entitlement to said interest. <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972). Since the repeal of § 50-a, plaintiffs' members' disciplinary records are no longer categorically shielded from disclosure. Rather, they

---

[1] Plaintiffs do not claim, nor can they, that their members are at risk of losing a property interest without due process under the circumstances presented in this case. In any event, for the permanent employees who possess a property interest in their employment, any process that is due to protect such employees is provided through the disciplinary hearing process, set forth in Section 14-115 of the New York City Administrative Code (for the uniformed ranks of the NYPD), Section 15-113 of the New York City Administrative Code (for Firefighters and Fire Officers) and New York State Civil Service Law Section 75 for all other members. <u>See</u> <u>Locurto v. Safir</u>, 264 F.3d 154 (2d Cir. 2001).

are open to public disclosure, pursuant to FOIL, and, thus, plaintiffs' members lack any such entitlement.

**(i.)    Stigma-Plus**

Plaintiffs allege reputational harm as the basis of an alleged deprivation of a liberty interest.  See ¶¶ 56, 59 of Complaint, Dkt. No. 226.  However, the "loss of reputation without more is insufficient to establish a procedural due process claim."  See Decision, Dkt. No. 216, at 27:3-4 (citing Paul v Davis, 424 US 693, 701 & n.3 (1976)).  Indeed, to prevail, plaintiffs must demonstrate a "stigma-plus" claim, where courts recognize a protected liberty interest when there is an "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus)."  DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).

To make a stigma-plus claim, "a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  See Decision, Dkt. No. 216, at 27:17 – 28:2 (quoting Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)); see also Lee TT v. Dowling, 87 N.Y.2d 699, 708 (1996).  Plaintiffs cannot demonstrate, nor have they pled, all of these elements.

a. **Stigma**

First, a CCRB disposition of "unfounded" means that the CCRB found, by a preponderance of the evidence, that the alleged acts did not occur.  See The Report of the Independent Panel on the Disciplinary System of the New York City Police Department (Jan. 25, 2019) at 8–9, available at https://perma.cc/EX3U-G8DT (last visited September 3, 2020); see also CCRB Rule § 1-33 at ¶ 22 of Darche Decl.[2]  A CCRB finding of "exonerated" means that

---

[2] All of this information is a matter of the public record, which can be found on the CCRB website, available at https://www1.nyc.gov/site/ccrb/investigations/case-outcomes.page (last visited on September 2, 2020).  Therefore, the Court may take judicial notice of this evidence in a motion to dismiss.  Missere v. Gross, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) ("It is well established that a district court may rely on matters of public record in deciding a

while the subject officer was found to have committed the act alleged, his or her actions were nonetheless lawful.  See id.  Publishing or even admitting the existence of records regarding "exonerated" or "unfounded" complaints cannot possibly "call[] into question their good name, reputation, honor, or integrity" and cannot, therefore, implicate the officers' constitutionally protected rights and liberties, sufficient to trigger due process protections.  Lee TT., 87 N.Y.2d at 708-09.  They certainly cannot be considered the type of "[s]tatements that denigrate the employee's competence as a professional and impugn the employee's professional reputation" either.  Patterson v. City of Utica, 370 F.3d 322, 330 (2d. Cir. 2004); see also Decision, 30:8-12 ("…a CCRB record's statement that an allegation is unsubstantiated is not a false statement; it is an accurate depiction of an outcome of a CCRB investigation into a complaint.").

With respect to the first and second element, the Complaint only alleges that the disputed records are "susceptible to defamatory connotation."  See Complaint at ¶ 58, Dkt. No. 226.  They have not and cannot plead, with any particularity, that the disputed records are, in fact, false, let alone defamatory.  Regardless, the disputed records are not meant to assert the veracity of the allegations reflected within.  Instead, they reflect the processes defendants took to address those allegations and the final dispositions thereof.  Moreover, the records will have information (such as the agency's classification of the complaint and disposition) that helps contextualize the allegations of misconduct and dispositions reflected within.

Furthermore, "[a]ccurate descriptions of allegations and personnel actions or decisions that are made public are not actionable, 'even when a reader might infer something unfavorable about the employee from these allegations.'"  See Decision, Dkt. 216, at 29:4-9 (quoting Wiese v. Kelly, No. 08-CV-6348 (CS), 2009 U.S. Dist. LEXIS 82307, at *13-15 (S.D.N.Y. 2009).  Indeed, this Court previously noted that,

---

motion to dismiss."); see also United States v. Bari, 599 F.3d 176, 180-81 (2d Cir. 2010) (the Court can take judicial notice of information provided on the Internet).

> This is not a case, for example, where the defendants are uncritically publishing the allegations of misconduct made against officers as if these allegations were true. Disclosure of a record that an allegation was found to be unfounded or unsubstantiated is a true statement as to the outcome of an investigation of that allegation.
>
> But to establish defamation under New York law, it is "well settled" that the statement must actually be false. Tannerite Sports, LLC v. NBC Universal News Grp., 864 F.3d 236, (2d. Cir. 2017). And here, for example, a CCRB record's statement that an allegation is unsubstantiated is not a false statement; it is an accurate depiction of an outcome of a CCRB investigation into a complaint.

See Decision, Dkt. No. 216, at 29: 9-15; 30:4-12 (citations corrected).

"[S]ince falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false,. . . only statements alleging facts can properly be the subject of a defamation action.'" Davis v. Boeheim, 24 N.Y.3d 262, 268 (2014) (citing Gross v. New York Times Co., 82 NY2d 146, 152-153 (1993)); see also 600 W. 115th St. Corp. v. Von Gutfeld, 80 NY2d 130, 139 (1992); Immuno AG. V. Moor-Jankowski, 77 NY2d 235, 254 (1991)). Therefore, since plaintiffs admit that the disputed records provide an accurate description of the allegations and the surrounding disciplinary processes, see Complaint, Dkt. No. 226, at ¶ 58, their claims of reputational harm and "stigma-plus" should end there.

In fact, the Court has already held that,

> These records are also not sufficiently derogatory to injure plaintiffs' reputation. … plaintiffs have not established that the publication of these records will cause any concrete, particularized, actual, or imminent injury to their reputation. And for these reasons [], they have failed to establish that any of the records are likely to cause actual injury to reputation.

7

> Now, plaintiffs have failed to establish that these records are false and they have, therefore, failed to meet the stigma prong.

See Decosopm, Dkt. No. 216, at 31:6-13; 32:6-8.   Claiming now that these records are "susceptible to defamatory connotation," see Complaint, Dkt. No. 226, at ¶ 59, is nothing more than an attempt to rebrand their futile claims.  Thus, plaintiffs' due process claim should end there.

### (ii.) Plus

Nevertheless, even if plaintiffs could meet the stigma component of their claim, they are, nevertheless, unable to demonstrate a loss of employment or some other tangible employment action, sufficient to fulfill the plus prong.  Plaintiffs allege that the publication of the disputed records will "depriv[e] [its members] of a liberty interest in the form of interference with future employment opportunities and other material burdens."  See Complaint, Dkt. No. 226, at ¶ 60.  However, the argument that a liberty interest arises when the government makes public statements that potentially interfere with future job prospects is an argument that has been routinely and consistently rejected by the Second Circuit, including this very Court in the instant action, as plainly insufficient to support a "stigma-plus" claim.  See Boss v. Kelly, 306 F. App'x 649 (2d Cir. 2009) (summary order); Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994) ("the deleterious effects which flow directly from a sullied reputation," including "the impact the defamation might have on job prospects" are insufficient to establish a protected liberty interest.); Sessom v. New York State Div. of Parole, Docket No. 17-CV-6634 (CM), 2017 U.S. Dist. LEXIS 177988 at *4-5 (S.D.N.Y. 2017) (quoting Burgos Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010); Adams v. N.Y. State Educ. Dep't, 732 F. Supp. 2d 420, 449 (S.D.N.Y. 2010).

Similarly, plaintiffs allege that the online publication of the disputed records would permit "search engines, credit agencies, landlords, and potential employers [to] access

[these records]. . . for a lifetime," "result[ing] in limitless and eternal notoriety." Pl. Memo., Dkt. Nos. 10-12, at 16; see also Complaint, Dkt. No. 226, at ¶ 2.  Plaintiffs claim, "A single allegation of misconduct—substantiated, unsubstantiated, or otherwise—could cause an officer to lose out on a future job."  See Complaint, Dkt. No. 226, at ¶ 61.  However, plaintiffs' new allegations fail to specify, much less prove, the "concrete and real" "damage" plaintiffs' members will sustain if defendants were to publish the disputed records.  In a classic argument of mutual causation, the only deprivations plaintiffs identify are the sort of "typical consequences of a bad reputation" that the Second Circuit and this Court has expressly rejected.  Boss, 306 F.App'x 649.

Indeed, this Court explained that,

> Second Circuit precedent forecloses the argument that the plus prong is satisfied by a vague allegation of potential loss of employment due to reputational harm. … At base, vague allegations of future loss of employment are another way of claiming stigmatic harm.

> … plaintiffs failed to explain why law enforcement officers in charge of hiring would be incapable of interpreting the records disclosed by defendants. As noted repeatedly, the dispositional discussions will contextualize the description of the complaint or charges provided. They will allow future employers to make hiring decisions by evaluating the complaint and the investigation and its outcome independently. And as to any claim that the publication of these records may cause the immediate loss of employment for some officers, plaintiffs do not explain why an officer would lose their job.

See Decision, Dkt. No. 216, at 32:20-23; 33:4 – 34:1.  Plaintiffs' newly amended allegations provide no greater explanation for these arguments either.

### b.  Potential Loss of Employment

Plaintiffs first allege that the "harassment" and apparent suspension of Richard Taylor, a retired NYPD officer and adjunct professor at St. John's University, is "a warning sign

of what is to come."  See Complaint, Dkt. No. 226, at ¶ 99.  They claim that, after viewing Taylor's CCRB history on the New York Civil Liberties Union ("NYCLU") online database,  a student group began "interfer[ing] with" his employment "on the basis of a handful of unfounded and unsubstantiated complaints [from] many years [prior]."  See id. at ¶ 99.  Out of nowhere and other than a desire to "hold [Taylor] accountable for this 'misconduct,'" the student group allegedly demanded his dismissal.  See id. at ¶ 63.

These tabloidesque allegations imply that the disclosure of these records, even if only to third parties through a FOIL response, will nonetheless result in officers repeatedly and innocently falling victim to today's so-called "cancel culture."  However, a simple search of the public record reveals that  Taylor's suspension came after a student group, named "the Radicals," reported him to the University for pushing his class to justify slavery.[3]  While it is true that the Radicals later posted Taylor's CCRB record to their Instagram page[4] via the NYCLU, there are no allegations – other than plaintiffs' rank speculation – linking that publication to Taylor's suspension.  Plaintiffs' allegations claiming otherwise are not only misleading; they are based upon theories of defamation, which this Court has already rejected.

c.  **Potential Threat to Officer Safety**

Plaintiffs' newly crafted assertions that being labeled a bad actor would somehow impact their members' safety[5] is also the kind of "typical consequence of a bad reputation" that

---

[3]  See "EXCLUSIVE: St. John's University investigating professor for suggesting there was 'good' to come from slavery," available at https://qns.com/2020/09/exclusive-st-johns-university-investigating-professor-for-suggesting-there-was-good-to-come-from-slavery/ (last visited on October 6, 2020); see also "SJU conducting investigation after students demand termination of History instructor," available at https://www.torchonline.com/news/2020/09/14/sju-conducting-investigation-after-students-demand-termination-of-history-instructor/ (last visited on October 6, 2020).

[4]  "The Radicals'" Instagram page is available at https://www.instagram.com/p/CFAXqN1Jytn/ (last visited on October 7, 2020).

[5]  Plaintiffs' arguments  resemble the police unions' arguments when attempting to intervene in the City's federal "stop and frisk" action seven years ago. There, "[t]he [unions'] only evidence of the alleged connection between reputational harm and officer [] safety consist[ed] of … the affidavit of Officer Joseph Alejandro."  See Floyd v.

the Court rejected.  <u>Boss</u>, 306 F.App'x 649.  Plaintiffs' new allegations regarding the August 19, 2020 protest[6] outside of PBA President Patrick Lynch's home is, arguably, their most absurd and misleading allegation yet.  <u>See</u> Complaint, Dkt. No. 226, at ¶ 95.  Plaintiffs allege that an angry and boisterous crowd of up to 70 protesters "converged [up]on" Lynch's home, "hurl[ing] insults and threats" at about six officers standing guard.  <u>See id.</u>  They claim that one protester threatened to rape the officers' wives while another "yell[ed], directly into [an] officer's face, the details of [another officer's] CCRB complaints."  <u>See id.</u>  Plaintiffs assert that this confrontation "demonstrates the harassment and threats officers now face," as well as the great "confusion" that "the City's recent data dumps to third parties" caused.  <u>See id.</u>

        While plaintiffs allege that angry protesters, armed with their smartphones bearing screenshots of NYCLU's database, presented a "clear danger" to their members, <u>see</u> Complaint, Dkt. No. 226, at ¶ 96, the public record paints a very different picture.  For one, protesters did not "converge upon" Lynch's home due to his or anyone else's CCRB record.  Rather, they came to protest the PBA and Lynch's endorsement of President Trump for re-election, its first presidential endorsement in 36 years.  <u>See</u> "The Inevitable Trump-Police Union Synthesis," available at https://nymag.com/intelligencer/2020/08/trump-endorsed-by-nyc-police-union.html (last visited on October 6, 2020).  Moreover, by their own allegations, plaintiffs concede that neither Lynch,nor any of the officers dispatched to the protests, suffered any harm

---

<u>City of New York</u>, 302 F.R.D. 69, 103 (S.D.N.Y. 2014).  Just like his affidavit in this case, Alejandro argued that the remedial orders, to stop engaging in disparate "stop and frisk" measures, caused "substantial confusion."  <u>See id.</u>  He believed that "officers second-guessing themselves during the stop, question and frisk procedure threatens [] their safety."  <u>See id.</u>  "[T]hat the Unions or their members feel demeaned by having been mentioned in court proceedings … is insufficient," the Court held, to support claims of reputational harm.  <u>See id.</u> The Court also found that, just like their claims here, "it [wa]s too detached from the subject of the actions."  <u>See id.</u>

[6] Protesters did not "converge upon" Lynch's home due to his or anyone else's CCRB record. Rather, they came to protest the PBA and Lynch's endorsement of President Trump for re-election, its first presidential endorsement in 36 years.  <u>See</u>  "The  Inevitable  Trump-Police  Union  Synthesis,"  available  at https://nymag.com/intelligencer/2020/08/trump-endorsed-by-nyc-police-union.html  (last  visited  on  October  6, 2020).

beyond mere aggravation.  Indeed, Lynch himself admitted as much in a formal statement to NY1, "these protestors should realize they are wasting their time. Their campaign of harassment and intimidation might have the politicians running scared, but it will have zero impact on the PBA.[7]"  It is wildly hypocritical to now claim otherwise.  See Complaint, Dkt. No. 226, at ¶ 96. Thus, plaintiffs not only fail to establish any element of their Fourteenth Amendment liberty interest due process claims, their repeated reliance on theories consistently rejected by the Second Circuit, as well as this Court, makes these claims patently frivolous.

### d. **Potential Loss of Rights Derived from Prior Settlement Agreement**

Plaintiffs also allege that the effect of the repeal on existing settlement agreements has an impermissible retroactive effect on the liberty and property interests of their officers.  See Complaint, Dkt. No. 226, at ¶ 72.  Plaintiffs allege that a retroactive application of the repeal only passes due process muster when supported by a legitimate legislative purpose furthered by rational means.  See id.  Plaintiffs argue that defendants' release of the disputed records does not pass this test because plaintiffs relied on the assurance of §50-a confidentiality when entering into these settlements.  Had they known that the records would be released, plaintiffs allege, they would have vigorously defended the allegations.  See id.  However, a legislative change that authorizes disclosure of existing as well as newly created records is not "retroactive."  In any case, there are multiple legitimate legislative purposes for such disclosure.  The plainest of which is the compliance with FOIL and the desire to provide greater transparency around the workings of the disciplinary systems for law enforcement officers and firefighters.

Moreover, the Court agrees.

> [P]laintiffs are essentially arguing that a state
> legislature can never change the law, that, while not

---

[7]  See "Black Lives Matter Protesters Gather in Front of PBA President Pat Lynch's Home," available at https://www.ny1.com/nyc/all-boroughs/public-safety/2020/08/20/protests-come-close-to-home-for-pba-president-lynch (last visited on October 6, 2020).

> even referenced in the parties' agreement, might possibly impact a party's contractual rights. I do not believe this to be the case, as the Supreme Court recognized in the context of California law in the decision of <u>DirectTV Incorporated v. Imburgia</u>, 136 S. Ct. 463 (2015).
>
> And even accepting plaintiffs' arguments that the settlements were negotiated with reference to Section 50-a, the Court must also accept that such settlements were negotiated with reference to FOIL, which is, as the parties know, to be liberally construed, and its exemptions narrowly tailored so the public is granted maximum access to the records of government. <u>Capital Newspapers, Div. of Hearst Corp. v. Whalen</u>, 69 N.Y.2d 246 (1987).

<u>See</u> Decision, Dkt. No. 216, at 24:11- 25:1.

**(iii.)   No Denial of Due Process**

Even if plaintiffs could establish a sufficient liberty interest, they would nevertheless fail to state a legitimate claim of a due process violation.  The Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful *post*[-]deprivation remedy."  <u>Hellenic Am. Neighborhood Action Comm. v. City of New York</u>, 101 F.3d 877, 880 (2d Cir. 1996), <u>cert. denied</u>, 521 U.S. 1140 (1997)(emphasis added).  It is clear that the City provides a full panoply of remedies, such as pre-deprivation disciplinary hearings for permanent employees, the opportunity to respond to allegations and provide evidence to refute them throughout the course of an investigation, as well as the availability of an Article 78 review.  That is all the process that is due.  <u>See</u> <u>Segal v. City of New York</u>, 459 F.3d 207, 216-217 (2d Cir. 2006); <u>Locurto v. Safir</u>, 264 F.3d 154, 173-174 (2d Cir. 2001); <u>Johnston v. Tn. of Orangetown</u>, 562 F. App'x 39, 41 (2d Cir. 2014) (summary order) ("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); <u>Henderson v. New York</u>, 423 F. Supp. 2d 129,145 (S.D.N.Y.

2006); Koehler v. New York City, Docket No. 04 Civ. 6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005); Ryan v. Carroll, 67 F. Supp. 2d 356, 361 (S.D.N.Y. 1999).

Plaintiffs now claim that "officers [lack] an opportunity to present or contest evidence in the CCRB investigative process, [which] … does not include adequate procedural protections for officers to satisfy due process." See Complaint, Dkt. No. 226, at ¶ 115. However, the public record proves that this is demonstrably false. See CCRB Rules 1-21-1-30 available at https://www1.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/ccrb_rules.pdf. Ultimately, plaintiffs fail to allege a single time, in which they challenged a CCRB determination due to the denial of due process, and that silence says it all.

Indeed, plaintiffs' amended claims highlight the duplicity of their due process allegations. For one, even if the Radicals' Instagram posts, depicting Taylor's CCRB history via NYCLU's website, caused Taylor's suspension and alleged harassment, plaintiffs' due process claims still fail. This is because the NYCLU publication was made after the Second Circuit affirmed this Court's decision to lift the temporary restraining order and permit the NYCLU to publish. Those decisions were made after the Legislature *and* the Governor repealed § 50-a, which only occurred after plaintiffs and other law enforcement organizations spent *years* lobbying the Legislature against it. There can be no greater due process than that. Plaintiffs' claims to the contrary reveal their ultimate motive, which is to shroud these records in secrecy forevermore.

Accordingly, even if plaintiffs were able to establish a constitutionally protected liberty interest – which they cannot – their due process claims fail, as a matter of law, because the City indisputably provides all the process that is due. Indeed, this Court agreed, finding,

> plaintiffs fail to allege that the officers are deprived
> of the process that is due, because in the creation of
> the records themselves, the officers are entitled to
> pre-deprivation      disciplinary      hearings,      the

> opportunity to respond to allegations throughout the course of the investigation, and the availability of Article 78 review. So on these many bases, there is not an adequate showing as to the due process claim.

<u>See</u> Decision, Dkt. No. 216, at 34:5-12.

Moreover, plaintiffs' new allegations assume irrational standards of due process that are based entirely upon case dispositions, demonstrating exactly how pretextual this distinction really is.  Plaintiffs claim that their members are entitled to "pre-deprivation procedures that would give notice and the opportunity to be heard before" defendants can publish as little as an officer's name in relation to an Unsubstantiated or Non-Final allegation of misconduct in an online publication.  <u>See</u> <u>id.</u> at ¶¶ 4, 114.  Adding to this already fabricated standard, plaintiffs further allege that their members are entitled to require defendants to somehow "cleanse falsity embedded in the allegations themselves" before disclosing the records. <u>See</u> <u>id.</u> at ¶ 120.

However, "the statutory provisions of FOIL do not address the rights of individuals whose information may be included in government documents [] subject to disclosure." <u>Matter of Schenectady County Socy. for The Prevention of Cruelty To Animals, Inc. v. Mills</u>, 74 A.D.3d 1417, 1420 (3d Dep't 2010) (citing <u>Cornell Univ. v City of N.Y. Police Dept.</u>, 153 AD2d 515, 516 (1st Dep't 1989)).  FOIL only vests the *public* with such an entitlement or right, which is the "inherent right to know." <u>Jewish Press, Inc. v. N.Y.C. Dep't of Educ.</u>, 183 A.D.3d 731, 731-32 (2d Dep't 2020) (citation omitted); <u>Weston v. Sloan</u>, 84 N.Y.2d 462, 465 (1994) ("[T]he general principle underlying FOIL [is] the presumption that the records of government should be accessible to the public under the public's inherent right to know the processes of government decision-making."); <u>M. Farbman & Sons, Inc. v. N.Y.C. Health &</u>

Hosps. Corp., 62 N.Y.2d 75, 80 (1984) ("Full disclosure by public agencies is, under FOIL, a public right…").

Through these new allegations, plaintiffs seek to impose greater confidentiality requirements upon the disputed records than § 50-a once required, including their, frankly impossible, redaction requirement.  Irrationally, however, plaintiffs do not impose these requirements for substantiated charges of misconduct, which are more likely to have a greater impact.  In any case, when plaintiffs allege that "[a] single allegation of misconduct—substantiated, unsubstantiated, or otherwise—could cause an officer to lose out on a future job," they admit just how irrelevant the case disposition is.  See Complaint, Dkt. No. 226, at ¶ 61.  To be sure, by inventing such meaningless distinctions, plaintiffs hope to chip away at the repeal, one case after the next, until the City is forced to return to the days of § 50-a.

**B.  Equal Protection**

For their Fourteenth Amendment equal protection claim, plaintiffs allege that they are treated differently than similarly situated employees when applying the privacy and safety exemptions provided in Pub. Off. Law § 87.  See Complaint, Dkt. No. 226, at ¶¶ 68, 130 and 136.  Such an equal protection claim has specifically been rejected by the Supreme Court. Further, in the context of constitutional claims arising from public employment, plaintiffs are required to demonstrate that any alleged disparate treatment was based on their membership to a specific legally protected class.  See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 605 (2008); see also Analytical Diagnostic Lab, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010); Staskowski v. Cty. of Nassau, 410 F. App'x 420 (2d Cir. 2011) (summary order); Conyers v. Rossides, 558 F.3d 137, 151–52 (2d Cir. 2009); Massi v. Flynn, 353 Fed. Appx. 658, 660 (2d Cir. 2009) (summary order); Porr v. Daman, 299 Fed. Appx. 84, 86 (2d Cir. 2008).

In reading this requirement into the equal protection clause, the Supreme Court found that equal protection claims, challenging differential applications of discretion to dissimilar employees, would simply serve to constitutionalize every decision a public employer makes concerning its employees:

> [If] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim.

Engquist, 553 U.S. 607-608.

Nevertheless, plaintiffs are attempting to do what the Supreme Court precisely warned against – constitutionalize the discretionary applications of FOIL with respect to specific City employees.  Because plaintiffs do "not allege [that they were] discriminated against on the basis of race, sex, national origin, or [any] other protected classification," their equal protection claims must be dismissed.  Conyers, 558 F.3d, 152.  This Court noted that,

> the plaintiffs *concede* that they are not members of a protected class, such that the appropriate level of scrutiny is a rational basis review. And "as a general rule, the equal protection guarantee of the constitution is satisfied when the government differentiates between persons for a reason that there's a rational relationship to an appropriate governmental interest."

See Decision, Dkt. No. 216, at 34:23 – 35:5 (emphasis added)(quoting Able v. United States, 155 F.3d, 628 (2d. Cir. 1998)).   While plaintiffs' recent allegations conveniently claim that the alleged disparate treatment was made upon "class-based distinctions," see Complaint, Dkt. No. 226, at ¶ 70, such crafty phrasing does nothing to make their claims any more viable.

17

However, even under a rational basis review, plaintiffs' claim would nonetheless fail because, as set forth in Point III *infra*, the City has articulated a rational and non-discriminatory basis for publishing the disputed records.  That is, to fulfill the legislative intent behind repealing § 50-a, to comply with FOIL, and to "help the public regain trust."  See Barker Decl. at ¶ 39.  Likewise, it would be improper to compare plaintiffs to other City workers due to the obvious and significant differences between their duties. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)(to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.").

Indeed, on August 21, 2020, this Court held,

> [P]laintiffs work in law enforcement, and the very nature of their roles, vis-a-vis the public, is very different from other City employees. They are not similarly situated. And I believe plaintiffs conceded as much at oral argument. Officers patrol the streets with firearms and are authorized to use force under the aegis of state power.
>
> …the City has articulated a rational and nondiscriminatory basis for treating the plaintiffs differently than other City employees, if it could be found that these employees were similarly situated. As the city and the state legislature articulated, there are strong governmental interests in accountability and transparency. And the role of police officers in society, the unique responsibilities they carry, the harms they are capable of inflicting on the public, also explain why the City might choose to release records about investigations into allegations of misconduct, but might not proactively release similar records by other city employees, such as teachers or sanitation workers, who do not have similar powers.

See Decision, Dkt. No. 216, at 36:2-22.

It would be similarly improper to compare plaintiffs' NYPD members to those of COBA or the UFOA, due to the obvious and significant differences between their job duties. Beyond these noticeable differences, defendants also have a rational basis for implementing different polices across various agencies regarding the disclosure of these records. The most obvious is the fact that each City agency is independent from each other and directed by different leadership, promulgating their own policies as they see fit. City agencies are under no obligation to issue matching or even similar policies when addressing comparable issues. Holding any other way would constitutionalize public employers' discretionary applications of FOIL, in violation of Engquist and the very public policy behind FOIL.

Nevertheless, requiring the CCRB and the NYPD to agree upon and issue identical policies, particularly regarding issues of transparency, would eliminate the essential independence our community relies upon to maintain and build its trust in law enforcement. Public safety and effective policing are the prerogatives of the City, and its agencies are thereby permitted to act in whichever means they deem fit, so long as rationally deployed. See Floyd v. City of New York, 302 F.R.D. at 103 (S.D.N.Y. 2014) (citing Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir.1976)). Accordingly, plaintiffs' equal protection claims should be dismissed.

## POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE NEW YORK STATE CONSTITUION

It is well settled that "New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff." Davis v. City of New York, 959 F. Supp. 2d 324 (S.D.N.Y. 2013)(quotation and citation omitted). Here, plaintiffs assert their due process and equal protection claims under both the New York State Constitution and § 1983, demonstrating that plaintiffs have an alternative remedy through §

1983.  Therefore, no private right of action is available.  See Raymond v. City of New York, No.

15 CV 6886 (LTS) (HBP), 2017 U.S. Dist. LEXIS 31742 at *25 (S.D.N.Y. Mar. 6, 2017)

(dismissing plaintiffs' state constitutional claims as superfluous where they were also brought

under § 1983).  Therefore, these claims should be dismissed.

### POINT III

### PLAINTIFFS ARTICLE 78 MUST BE DISMISSED

Animating their Article 78 claim, plaintiffs allege that the "wholesale and

indiscriminate release of Unsubstantiated and Non-Final Allegations[8] without individualized and

particularized review for safety and privacy" would "constitute errors of law and be arbitrary and

capricious agency action."  See Complaint, Dkt. No. 226, at p. 5 and ¶¶ 77-78, 148.  This is

patently false.  Regardless, plaintiffs fail to identify a single agency determination where

defendants disclosed the disputed records with a blatant disregard to plaintiffs' members' privacy

or safety, such as disclosing their personally identifying information ("PII") to the public.  Thus,

plaintiffs fail to state a legitimate claim under Article 78.

Plaintiffs preposterously claim that the disclosure of these records, bearing officer

names, will inevitably permit anyone to easily access officers' PII through the powerful tool of

Google.[9]  However, the publication of the disputed records makes it no easier to learn an

---

[8] All CCRB determinations, including unsubstantiated findings, are final agency determinations. Therefore, plaintiffs' objections to "non-final allegations" are inapposite to the CCRB.  See Darche Decl. at ¶ 24.

[9] To support their claims, plaintiffs newly allege that the activist, Loyda Colon, testified before the Legislature, "Finding the home address for police officers, that's not a 50-a issue, that's a Google issue. You name a police officer to me right now, and I will find their address, their phone number, and their relatives. I will find them all through Google."  See Complaint, Dkt. No. 226, at ¶ 96.  However, after reviewing the transcript of the Legislature's October           24,           2019           hearing,           see https://www.nysenate.gov/sites/default/files/oct_24th_public_hearing_on_discovery_reform.pdf (last visited on October 12, 2020), it is clear that Ms. Colon never made any such statement, nor did anyone else for that matter.  Moreover, plaintiffs cite to an invalid link, indicating a time marker of "2:53:39."  See Complaint, Dkt. No. 226, at n.11.  Yet, the hearing's recording reveals that Ms. Colon was not testifying at that precise time; Katurah Topps was.  See https://www.youtube.com/watch?v=h6I3xxmTYDw&feature=youtu.be (last visited on October 12, 2020).

officer's name and, thus, find his or her PII via Google than it has been since the passage of the Right to Know Act in 2018.[10]   This law, which plaintiffs also aggressively opposed, requires NYPD officers to identify themselves to civilians, including by providing their name, rank, command, and shield number.   Thus, plaintiffs' insinuation that an officer's name be kept confidential to prevent the revelation of their PII via Google is frankly absurd and directly controverted by local law.

Nevertheless, an agency decision is only arbitrary and capricious when it lacks a "sound basis in reason and is generally taken without regard to the facts."   Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester Cty., 34 N.Y. 222, 231 (1974).   Moreover, plaintiffs bear the burden of proving that defendants had no rational basis whatsoever for disclosing the disputed records as planned after the repeal of § 50-a. Jamaica Recycling Corp. v. City of New York, 816 N.Y.S.2d 282, 289 (Sup. Ct. 2006), aff'd, 38 A.D.3d 398 (2007).   Even including their new and largely deceptive allegations, plaintiffs nonetheless fail to meet this burden.

It is well settled that "[i]n reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious."   Matter of Gilman v. New York State Division of Housing and Community Renewal, 99 NY2d 144, 149 (2002).   Tellingly, a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is "arbitrary and unreasonable and constitutes an abuse of discretion."   In the Matter of Pell v. Bd. of Educ., 34 NY2d 222, 230-231 (1974).   Further, "courts must defer to an administrative agency's

---

[10]   Additional information on the Right to Know Act of 2018 is available at https://www1.nyc.gov/site/ccrb/complaints/right-to-know-act.page (last visited on October 12, 2020).

rational interpretation of its own regulations in its area of expertise." Peckham v. Calogero, 12 NY3d 424, 431 (2009).

The centerpiece of plaintiffs' claim under Article 78 is an assertion that "[d]efendants' reversal" of "long-settled" "policies" "is not based on sound reason and lacks even a minimal level of analysis beyond … unlimited disclosure." See Complaint, Dkt. No. 226, at ¶ 98. Plaintiffs assert that such a shift in policy "would constitute an error of law and would be arbitrary and capricious." See id. at ¶ 147. However, now that § 50-a has been repealed, for the first time in decades, these disciplinary records are subject to the FOIL's presumption of public transparency and disclosure. See Data Tree, LLC v. Romaine, 9 N.Y.3d 454, 463 (2007)(FOIL compels "disclosure, not concealment.").

Moreover, "the party seeking an exemption from disclosure has the burden of proving entitlement to the exemption." Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York, 928 N.Y.S.2d 701, 702 (1st Dep't 2011). However, plaintiffs wholly fail to meet their burden. Aside from the now defunct § 50-a, plaintiffs fail to point to a single statute mandating the confidentiality of the disputed records. Nevertheless, fulfilling the legislative intent of FOIL and the repeal of § 50-a is an amply rational basis for publishing these records. Thus, plaintiffs Article 78 claim must be dismissed.

Along with the repeal of § 50-a, the Legislature amended Pub. Off. Law § 89 to require the redaction of certain information in these disciplinary records prior to disclosure, including, an officer's medical history, home addresses, personal telephone numbers and e-mail addresses, and mental health services. Pub. Off. Law § 89 (2-b). In addition, agencies may redact records pertaining to technical infractions, such as minor Patrol Guide violations like, for example, an officer's unprofessional appearance. Id. Further, the Legislature considered and rejected plaintiffs' arguments for exempting unsubstantiated, unfounded, exonerated and non-

final allegations from disclosure.  See Barker Decl., Dkt. No. 135, at ¶¶ 20, 23-24, 46-50.  In

fact, it declined to exempt, limit, or even define these records to ensure full transparency.  See id.

Thus, the public disclosure of disciplinary records – a disclosure plaintiffs

continue to impede – fully accords with the legislative purpose of the repeal of § 50-a and the

concurrent amendment of Pub. Off. Law § 89.  That galvanizing legislative purpose is captured

in the sponsor's memorandum that accompanied the repeal of § 50-a:

> FOIL already provides that agencies may redact or
> withhold information whose disclosure would
> constitute an unwarranted invasion of privacy.
> Recent changes to the Civil Service Law have
> created additional, non-discretionary protections
> against the release of certain sensitive information
> such as contact information. Furthermore, this bill
> adds additional safeguards in the FOIL statute.
> Finally, courts have the ability to protect against
> improper cross-examination and determine if police
> records are admissible in a trial, without the denial
> of public access to information regarding police
> activity created by § 50-a. The broad prohibition on
> disclosure created by § 50-a is therefore
> unnecessary and can be repealed as contrary to
> public policy.
>
> Repeal of § 50-a will help the public regain trust
> that law enforcement officers and agencies may be
> held accountable for misconduct.

Sponsor Memo, S8496, June 6, 2020, Barker Decl. at ¶ 39.

Plaintiffs, in their newly amended Complaint, distort the meaning of this

memorandum in a desperate ploy to make FOIL exemptions mandatory for Unsubstantiated and

Non-Final Allegations.  Specifically, they claim that the Senate's statement that "§ 50-a is

therefore unnecessary" "make[s] clear that the FOIL exemptions for privacy and safety should be

applied to protect law enforcement officers in the absence of § 50-a."  See Complaint, Dkt. No.

226, at ¶ 81.  Plaintiffs infer from their own cherry picking of terms that defendants are somehow

obliged to assert FOIL exemptions *in precisely the same manner* as § 50-a once did, as evidenced by their fabricated standards of due process.  This could not be further from the truth.

The Sponsor's Memorandum clearly prefaces the phrase in question with a description of the courts' "ability to protect against improper cross-examination and determine [the records'] admissib[ility] [at] trial."  See Barker Decl. at ¶ 39.  The Senate understood that the original intent behind § 50-a was "to limit access to said personnel records by criminal defense counsel, who used the contents of the[se] records … to embarrass officers during cross-examination."  Matter of Luongo v Records Access Officer, 161 A.D.3d 1079, 1080 (2d Dep't 2018) (citing Carpenter v City of Plattsburgh, 105 AD2d 295, 298 (1985) and the Senate and Assembly Introducer Mem. in Support, Bill Jacket, L 1976, ch. 413.  Thus, the Senate did not repeal § 50-a because the FOIL exemptions provided equivalent confidentiality.  Rather, it simply recognized that § 50-a's intent could just as easily be fulfilled through an average evidentiary proceeding rather than through a "broad prohibition on disclosure," which is precisely what plaintiffs seek.  See Barker Decl. at ¶ 39.  Plaintiffs' attempts to twist the Senate's words into something entirely different and to the detriment of the public good only proves just how desperate they are to make a single allegation stick.

In the end, the Legislature's refusal to exclude from public release unsubstantiated and non-final allegations of misconduct clearly shows the legislature's intent to presume disclosure at the agency's discretion.  Matter of Collins v Dukes Plumbing & Sewer Serv., Inc., 75 AD3d 697, 699-700 (3d Dep't 2010); see also Bright Homes v. Wright, 8 NY2d 157, 162, 168 (1960); People v. Olah, 300 NY 96, 102 (1949)("A statute must be construed and applied as it is written by the Legislature, not as some judges may believe it should have been written.");  Matter of Kittredge v. Planning Bd. of Town of Liberty, 57 AD3d 1336, 1339 (2008).  Defendants do not "disregard[] legislative intent" by allegedly failing to "consider whether [the]

disclosure of unsubstantiated and non-final allegations would [broadly] constitute an unwarranted invasion of privacy" or "jeopardize [officer] security or safety." See Complaint, Dkt. No. 226, at ¶¶ 81, 91.  The only parties disregarding legislative intent are plaintiffs, who repeatedly assert the same baseless allegations to frustrate defendants' attempts at greater transparency.

In any case, these exceptions are plainly permissive.[11]  The statute reads, "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency *may* deny access to records or portions thereof …" Pub. Off. Law § 87 (emphasis added); Capital Newspapers, 67 N.Y.2d at 567 (1986) ("the language of the exemption provision contains permissive rather than mandatory language, and it is within the agency's discretion to disclose [] records, with or without identifying details, if it so chooses.").

After the repeal of § 50-a, on July 27, 2020, the New York State Committee on Open Government ("Committee") issued an advisory opinion on this subject, which plaintiffs incongruously refer to as a "simple command."  See Advisory Opinion attached to Dkt. No. 75 as Exhibit "C;" see also Complaint, Dkt. No. 226, at ¶¶ 68, 130.  However, the Committee opined that agencies could permissively disclose or withhold the disputed records at their discretion.  Id.  In any event, advisory opinions "are [neither] binding authority," nor "simple commands," but "they may be considered on the strength of their reasoning and analysis." Matter of TJS of N.Y., Inc. v. New York State Dep't of Taxation & Fin., 89 A.D.3d 239, 242 n.1 (3d Dep't 2011).  Nor can they be used to create a blanket exemption under FOIL either.  In re Thomas v. N.Y.C. Dep't of Educ., 103 A.D.3d 495, 498 (App. Div. 2013).

---

[11] Moreover, plaintiff PBA president, Patrick Lynch, admitted that these exceptions are permissive when testifying for the Legislature on October 24, 2019.  See Testimony of Patrick Lynch, annexed to Barker Decl. as Exhibit "J."

For an agency to assert discretionary privacy exemptions under FOIL, it must "balance[e] the privacy interests at stake against the public interest in [the] disclosure of the information."  See Matter of Harbatkin v. New York City Dept. of Records & Info. Servs., 19 N.Y.3d 373, 380 (2012)("a court must decide whether any invasion of privacy . . . is unwarranted by balancing the privacy interests at stake against the public interest in [the] disclosure of the information.").  Defendants' determination is entirely supported by the legislative intent.

Plaintiffs further allege that defendants are breaking from a "long-established practice of applying the privacy or safety exemptions in FOIL to Unsubstantiated and Non-Final Allegations," which they allegedly "asserted for decades."  See Complaint, Dkt. No. 226, at § G and ¶ 149.  Plaintiffs argue that such a break is arbitrary, absent a "sound reason" for the change. See id. at ¶ 98.  Even assuming this were true, which is it not, the repeal of § 50-a was a sufficiently rational basis for defendants to change their policies regarding the disclosure of disciplinary records for all members of uniformed service.  See Unif. Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. Cuevas, 714 N.Y.S.2d 802, 804 (App. Div. 2000) ("Where a change in policy is openly acknowledged and the decision to implement a new approach is cogently explained, a determination which declines to follow agency precedent will not be disturbed unless it is irrational."); see also Inc. Vill. Of Ocean Beach v. Dep't of Health Servs., Cty. Of Suffolk, 715 N.Y.S.2d 902, 903 (App. Div. 2000) (an amendment to New York's Sanitary Code justified a break from the agency's previous determinations under Article 78 standards).

Plaintiffs cannot demonstrate that defendants ever had a practice, let alone one spanning decades, to categorically assert FOIL exemptions for the disputed records.  Indeed, defendants testified, through Fed. R. Civ. P. 30(b)(6) witnesses, in the exact opposite of how plaintiffs misrepresent to the Court.  They affirmed that FOIL requests are evaluated on an

individualized basis, with exemptions applied only as appropriate.  See Barker Decl. at ¶¶ 62, 64, 66, and 68; compare with Complaint, Dkt. No. 226, at ¶ 83 ("CCRB's Rule 30(b)(6) witness testified that those records were not reviewed individually for either safety or privacy issues."). Defendants further testified that nothing requires a categorical or reflexive application of these exemptions.  See Barker Decl. at ¶¶ 63, 65, 67, and 69.

Plaintiffs' only support for the proposition that defendants ever had such a practice, even after amending their complaint, is to cite to two cases from three and four years ago, where the CCRB asserted the privacy exception, in addition to § 50-a, with respect to unsubstantiated cases.  However, neither Matter of Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd., 53 Misc. 3d 947 (Sup. Ct., Kings Cnty. 2016) nor Luongo v. Records Access Off., 150 A.D.3d 13, 16 (1st Dep't 2017) note the existence of any such policy, and the FOIL requests they relate to date back to 2015 and 2014 respectively.  See Jamieson Dec. ¶ 13. Nevertheless, for the past several years, the CCRB has not asserted the privacy exemption on the basis of case disposition (such as unsubstantiated, unfounded, or exonerated), id. ¶¶ 13, 17, and two cases, involving requests from 2014 and 2015, cannot possibly establish a categorical policy then or now.

Further, while defendants have made no policy changes with respect to the discretionary application of FOIL exemptions, recent events support the CCRB's current practice choosing not to assert the privacy exemption based on case dispositions.  According to the CCRB,

> the increasingly intense public sentiment regarding transparency on police disciplinary matters, culminating in the repeal of Civil Rights Law § 50-a without an exception carved-out for pending, unsubstantiated, exonerated, and unfounded cases, is evidence of the tremendous public interest in this information, particularly for officer histories and complaint reports. The Legislature's decision to

27

> repeat the law only reinforces our judgment not to
> invoke the privacy exception for those records and
> to only apply the exception on a case-by-case basis.

<u>See</u> Jamieson Decl. ¶ 25.

It is true that the CCRB plans to proactively publish certain categories of their officer history database, similar to the NYCLU's publication, where none of the disclosed cells contain any PII.  However, this does not mean, as plaintiffs claim, that defendants intend to make a "wholesale and indiscriminate release of Unsubstantiated and Non-Final Allegations without individualized and particularized review for safety and privacy concerns."  <u>See</u> Complaint, Dkt. No. 226, at ¶ 148.  In the end, plaintiffs' new allegations only demonstrate just how frivolous their claims really are.  The publications they complain of were each made by third parties, which they legally obtained through an individual FOIL response. Thus, plaintiffs' objection to disclosure is not limited to "wholesale, indiscriminate releases outside of the FOIL request process," as they later duplicitously claim.  <u>See id.</u> at ¶ 86.  Instead, plaintiffs will object to the publication of these records, regardless of how defendants try to improve transparency.

Finally, it is black letter law in New York that categorical exemptions from disclosure based upon document type are impermissible under FOIL.  <u>Gould v. New York City Police Department</u>, 89 N.Y.2d 267, 275 (1996) ("blanket exemptions  for particular types of documents are inimical to FOIL's policy of open government"); <u>Police Benevolent Assn. v. State of New York</u>, 145 A.D.3d 1391, 1392 (3d Dept. 2016) ("Public Officers Law §87(2)(b) permits an agency to deny access to records or portions thereof, if disclosure 'would constitute an unwarranted invasion of privacy.'  The statute does not, however, categorically exempt such documents from disclosure."); <u>Fink v. Lefkowitz</u>, 47 N.Y.2d 567, 571 (1979).

Therefore, defendants' decision to comply with FOIL and disclose the disputed records was not arbitrary and capricious, and their Article 78 petition should be denied.  Indeed, this Court agreed, holding,

> [T]he legislature thoroughly considered and rejected plaintiffs' arguments for exempting unsubstantiated, unfounded, and exonerated allegations from disclosure. And as evidence that the legislature considered plaintiffs' concerns about privacy and safety, they made a reasoned determination to enact the provisions additional to the New York Public Officers' Law, which requires the redaction of certain information in law enforcement disciplinary histories… And so I'm entirely unpersuaded that the repeal itself was arbitrary or capricious.
>
> …On this record, I will not find that the NYPD's and the CCRB's planned disclosures, in light of the repeal of 50-a, are arbitrary and capricious. Rather, it appears that the planned disclosures accord with the legislative purposes of both the repeal of 50-a, the concurrent amendments to Public Officers' Law, Section 89, and FOIL.

See Decision, Dkt. No. 216, at 37:12-25; 38:5-20 (citations corrected).

29

## POINT IV

### THE COURT HAS DECIDED PLAINTIFFS ARTICLE 75 PETITION, AND ANY REMAINING CLAIMS SHOULD BE DISMISSED

**A.      Section 7(c) of Plaintiffs' CBAs Do Not Require Defendants to Withhold the Disputed Records from Public Disclosure**

Plaintiffs contend that they have the contractual right to have exonerated and/or unfounded "investigative reports" removed from their personnel files.  See Complaint, Dkt. No. 226, at ¶ 46.  However, plaintiffs misstate and misinterpret the applicable CBA provisions.  Each provision that exists on this matter[12] only grants the right of removal upon request[13] and solely from an officer's personnel file.   That right does not create an entitlement to remove the investigative reports or actual complaints thereof from defendants' own records in toto, much less from the public domain.  On August 21, 2020, the Court agreed, finding,

> [This provision] does not give [an] officer the right to have [] investigative reports removed from the public record. And, so, it remains the case that officers can and will be able to exercise their rights under this provision to have specified investigative reports removed from their personnel or personal folder, and it remains the case that the NYPD can remove such reports. And by that measure, whatever benefits the officers derived from having personal files with this information removed remain available to them, but it does not extend to exclude these materials from the public.

See Decision, Dkt. No. 216, at 20:3-13.

Plaintiffs' newly amended complaint insists that the provision's language not be read literally but to infer an obligation upon defendants to "eliminate those records and make

---

[12] Section 7(c) of the PBA, SBA, and LBA CBAs. Section 6 of the CEA CBA. Section 11 of COBA. Section 9 of UFA and UFOA. The DEA CBA is entirely silent on the matter.

[13] The UFA and UFOA CBAs grant automatic expungement from personnel files.

them unavailable for any purpose." See Complaint, Dkt. No. 226, at ¶ 48.  Plaintiffs further

allege that "the purpose, intent, and meaning of 'remove' *cannot* mean … that when records are

moved [from one place] to another [,] those records can [nevertheless] be made publicly

available." See id. (emphasis added).  Plaintiffs seem to argue an implied covenant of good faith

and fair dealing, whereby a party cannot "do anything which has the effect of destroying or

injuring the right of the other party to receive the fruits of th[at] contract."  M/A-COM Sec.

Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990).  However, even this argument fails to

withstand the slightest scrutiny, as covenants of good faith and fair dealing cannot, as a matter of

law, "create independent contractual rights."  Feeseha v. TD Waterhouse Inv. Servs., Inc., 305

A.D.2d 268, 268 (1st Dep't 2003).  Thus, plaintiffs' new allegations wholly fail to establish a

cognizable claim for interpreting this provision to create a blanket right of confidentiality to all

such records in perpetuity.

**B.      Section 8 of Plaintiffs' CBAs May Require Defendants to Withhold a Tiny Fraction of the Disputed Records, Which Related to Schedule A Violations**

Next, plaintiffs contend that disclosure of the disputed records would violate their

members collectively bargained-for rights to "petition the Police Commissioner to expunge the

records of certain cases heard in the Trial Room where the disposition of the charge at trial or on

review or appeal is other than 'guilty,' after 2 years have passed." See Complaint, Dkt. No. 226,

at ¶ 49.  However, once again, plaintiffs misstate the applicable CBA provision, including in

their newly amended Complaint, and this provision only exists in the CBAs of the PBA, SBA,

and LBA.  See Barker Decl., Dkt. No. 135, at Exhibit "N" at § 8.  Moreover, under these CBAs,

a member may seek the expungement of "the record of the case" for all "Schedule A"

violations,[14] two years after receiving a disposition of anything but "guilty" in the Trial Room or on appeal.  See id.

This Court has already preliminary enjoined defendants from disclosing records related to any "Schedule A" violations where PBA, SBA, and LBA members are still capable of asserting their collectively bargained-for right, pursuant to Section 8 of the CBAs, to request "expungement of the record of the[ir] case."  See Decision, Dkt. No. 216 at pp. 21-23.  That preliminary injunction in aid of arbitration, which defendants accept, is all the relief the Court may grant under Article 75.

## C.    Plaintiffs' Article 75 Fails Because Their Grievances Are Not Arbitrable

Finally, plaintiffs do not claim that any officer has sought and been denied the right to remove investigative reports from his personnel folder or to expunge the record of a Schedule A violation after being found not guilty in the Trial Room, as guaranteed by either of these CBA provisions.  Thus, plaintiffs do not claim a breach of the CBA's plain terms and therefore fail to establish an arbitrable grievance for purposes of an Article 75 petition.

Further, neither provision addresses, let alone prohibits, the public disclosure of disciplinary records.  Indeed, these provisions simply provide employees with a process for requesting certain investigative reports and command disciplines to be removed from their records with the NYPD. What is more, nothing in either section guarantees the removal or expungement the requested information.  Indeed, under the contract's clear language, the request is presented to the Deputy Commissioner – Trials, Department Advocate, and the Chief of Personnel, or their designees.    This Board then makes a recommendation to the Police

---

[14] "Schedule A" violations are minor patrol guide violations, such as an officer's failure to have identification or to report for duty on time.  See Transcript of August 18, 2020 Preliminary Injunction Hearing, at Dkt. No. 211, at 53:1-7;      54:1-4;      see      also      NYPD      Patrol      Guide      available      at https://www1.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf (last viewed on September 1, 2020) at 438.

Commissioner, who has the final decision-making authority.  Therefore, as this Court previously found,

> this is not a grievance to be arbitrated at all. This is not a situation, as plaintiffs claimed at oral argument, where the Court would be nullifying relief an arbitrator might be able to provide because the relief sought is simply nowhere to be found in the CBA.

See Decision, Dkt. No. 216 at 20:18-22.  As a result, defendant NYPD, the only agency to receive a request for arbitration ("RFA") from the unions, is challenging their requests, citing the lack of arbitrability, in which case plaintiffs would not be entitled to relief under Article 75. Thus, plaintiffs' remaining claims under Article 75 should be dismissed.

## POINT V

### PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM

Plaintiffs allege that, by disclosing the disputed records, including charges of misconduct underlying plaintiffs' members' prior settlement agreements, defendants will violate those agreements.  They allege that had they known the underlying allegations might become public, they might have defended themselves against disciplinary charges more vigorously.  See Complaint, Dkt. No. 226, at ¶ 66.  As a result, they demand that disciplinary records related to charges underlying eventual settlement agreements that arose prior to the repeal be withheld from public disclosure forevermore.  See id. at p. 48, ¶ 2.

### A.    Plaintiffs Lack Standing to Bring a Breach of Contract Claim

As an initial matter, plaintiffs lack the standing to assert these claims on behalf of their members.  Only parties to a contract have standing to assert a breach of contract claim. Heath v. Stephen Banks, 692 Fed. Appx. 60, 60-61 (2d Cir. 2017)("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties."); see also Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 627 F. Supp. 1202, 1212 (S.D.N.Y. 1986), aff'd, 814 F.2d 90 (2d Cir. 1987); Capital Nat'l Bank of New York v. McDonald's Corp., 625 F. Supp. 874, 883 (S.D.N.Y. 1986).

**B.      Plaintiffs' Complaint Must Be Dismissed Because Plaintiffs Failed to Exhaust Their Contractual Remedies**

Plaintiffs' CBAs contain grievance and arbitration procedures for resolving disputes such as these. Plaintiffs cannot proceed in any court on a breach of contract claim where their CBAs contain a provision to arbitrate disputes arising under those agreements. The Legislature has recognized a strong policy favoring internal grievance mechanisms and the finality of the grievance process in public CBAs. See Bd. of Educ. v. Ambach, 70 N.Y.2d 501, 509-10 (1987), cert denied sub nom., Margolin v. Bd. of Educ., 485 U.S. 1034 (1988). Accordingly, in New York, a union and its members must first exhaust the remedies provided in the applicable collective bargaining agreement covering that employee before proceeding to court. Cantres v. Bd. of Educ., 145 A.D.2d 359, 360 (1st Dep't 1988)(citing Plummer v. Klepak, 48 N.Y.2d 486, 489 (1979), cert. denied, 445 U.S. 952 (1980)); Hall v. Town of Henderson, 17 A.D.3d 981, 982 (4th Dep't), lv. to appeal den., 5 N.Y.3d 714 (2005).

**C.      Plaintiffs' Complaint Must Be Dismissed for Failure to State a Claim**

Plaintiffs further argue that such a disclosure would make defendants in breach of their plaintiffs' members' settlement agreements because those agreements were entered into while § 50-a was in effect and must necessarily include the confidentiality protection provided by § 50-a. See Complaint, Dkt. No. 226, at ¶ 73. In effect, the unions are making the remarkable claim that settlements with a City agency rendered § 50-a immutable and FOIL inoperable as to all records concerning the settled charges.

This claim is all the more preposterous because the unions have not alleged which of the settlements' provisions, if any, defendants have actually breached. Plaintiffs conveniently

fail to attach a single settlement agreement to any of their filings.  Stranger still, they never even reference the contractual language that led plaintiffs to believe that their members' settlements were entitled to § 50-a confidentiality requirements for the rest of time.  For these reasons alone, plaintiffs' breach of contract claims should be dismissed.  See Sud v. Sud, 211 A.D.2d 423, 424 (App. Div. 1995) ("[Plaintiff] failed to successfully plead a breach of contract claim because he did not allege the essential terms of the parties' purported contract 'in non-conclusory language,' including the specific provisions of the contract upon which liability is predicated."); see also Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), aff'd, 759 F. App'x 42 (2d Cir. 2019)("a plaintiff does not meet the Twombly-Iqbal standard and must be dismissed when 'the Complaint does not specify which clause of the Agreement City Defendants are alleged to have breached.'").

Moreover, everyone—contracting parties included—is presumed to understand that state law is subject to change by act of the Legislature.  Contracting parties rarely, if ever, succeed in limiting the state's sovereign power to legislate.  This is true even where, unlike here, the agreement is entered into by state agencies and includes language that could be read as purporting that very thing.  See Doe v. Pataki, 481 F.3d 69 (2d Cir. 2007).  There's certainly no basis for any such claim against a city agency.  Ultimately, on August 21, 2020, the Court held that the "settlements were [also] negotiated with reference to FOIL," and, therefore, defendants have no authority, much less obligation, to "prohibit public access to such records."  See Decision, Dkt. No. 216, at 24:11- 25:22 (citation corrected).  Therefore, these claims should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss plaintiffs' First Amended Complaint in its entirety and grant such further relief as the Court deems just and proper.

Dated:      New York, New York
            October 16, 2020

JAMES E. JOHNSON
Corporation Counsel of the
 City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
646-960-1103
kbarker@law.nyc.gov


By:        /s/
           Kami Z. Barker
           Assistant Corporation Counsel