UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

Uniformed Fire Officers Association, et al.,

                Petitioners/Plaintiffs,

        -against-

Bill de Blasio, in his official capacity as Mayor of
the
City of New York, et al.,

             Respondents/Defendants

        -against-

Communities United for Police Reform,

             Intervenor-
             Respondent/Defendant.

------------------------------------------------

Case No. 1:20-cv-05441-KPF

**MEMORANDUM OF LAW OF INTERVENOR-DEFENDANT COMMUNITIES
UNITED FOR POLICE REFORM IN SUPPORT OF ITS MOTION TO DISMISS**

Baher Azmy
Darius Charney
Guadalupe V. Aguirre
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, New York 10012
Tel: (212) 614-6464

Alex V. Chachkes
Rene Kathawala
Christopher J. Cariello
Margaret Wheeler-Frothingham
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Tel: (212) 506-5100
Fax: (212) 506-5151

*Attorneys for Intervenor-Respondent/Defendant*

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

III.    ARGUMENT ..................................................................................... 3

    A.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE
    FOURTEENTH AMENDMENT ......................................................... 6

        1.      Plaintiffs Fail to Allege either Stigma or Plus. ......................... 6

        2.      New York Civil Rights Law 74 Immunizes the City Defendants
        from Liability for Publishing Accurate Reports of Allegations and
        Investigations. .......................................................................... 8

        3.      New York Common Law Immunizes City Defendants from
        Liability for Statements Made in Their Official Capacity. ............ 12

    B.      PLAINTIFFS' ARTICLE 78 CLAIMS FAIL FOR A CLEAR
    MISINTERPRETATION OF THE LAW ............................................ 13

        1.      The Repeal of § 50-a Removes a Longstanding Barrier to
        Disclosure and the City Defendants' Decision to Release Records
        is Neither an Error of Law Nor Arbitrary or Capricious. .............. 14

        2.      City Defendants Decision to Comport with Repeal of § 50-a is not
        an Erroneous or Arbitrary and Capricious Departure from Past
        Practice. .................................................................................... 16

    C.      PLAINTIFFS' CONTRACT CLAIMS ARE MERITLESS ................... 18

        1.      Plaintiffs Fail to Plead a Breach of Their Collective Bargaining
        Agreements. .............................................................................. 18

        2.      Plaintiffs Fail to Plead With Sufficient Particularity Any Breach of
        the Settlement Agreements. ........................................................ 23

        3.      The Unmistakability Doctrine Also Bars Plaintiffs' Contract
        Claims. ..................................................................................... 24

IV.     CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcor Life Extension Found. v. Johnson*,
  43 Misc. 3d 1225(A), 992 N.Y.S.2d 157 (N.Y. Sup. 2014),
  *aff'd*, 136 A.D.3d 464, 24 N.Y.S.3d 629 (2016).................................................................8

*Ashcroft v. Iqbal*,
  556 U.S.662 (2009).................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. (2007).....................................................................................................4

*Bertuglia v. City of New York*,
  133 F. Supp. 3d 608 (S.D.N.Y. 2015),
  *aff'd sub nom.*, *Bertuglia v. Schaffler*, 672 F. App'x 96 (2d Cir. 2016) ...............................10

*Beyah v. Goord*,
  309 A.D.2d 1049 (2003) .........................................................................................16

*Bloom v. Fox News of Los Angeles*,
  528 F. Supp.2d 69 (E.D.N.Y. 2007) ..........................................................................9

*Buffalo Police Benevolent Ass'n, Inc. v. Brown*,
  No. 807664/2020, 2020 WL 6039110 (N.Y. Sup. Ct. Oct. 9, 2020) .........................................4

*Capital Newspapers Div. of Hearst Corp. v. Burns*,
  67 N.Y.2d 562 (1986) ...........................................................................................16

*Capital Newspapers Div. of Hearst Corp. v. Whalen*,
  69 N.Y.2d 246 (1987) ...........................................................................................16

*Caruci v. Dulan*,
  246 N.Y.S.2d 727 (Sup. Ct. 1964),
  *rev'd on other grounds*, 261 N.Y.S.2d 677 (1965) ...........................................................17

*City of Newark v. Law Dep't of City of New York*,
  305 A.D.2d 28 (App. Div. 2003) ..............................................................................20

*Continental Ins. Co. v. Atl. Cas. Ins. Co.*,
  603 F.3d 169 (2d Cir. 2010)....................................................................................20

*Conversions for Real Estate, LLC v. Zoning Bd. of Appeals of Inc. Vill. of Roslyn*,
  818 N.Y.S.2d 298 (App. Div. 2006) ...........................................................................17

*Cordell-Reeh v. Nannies of St. James, Inc.,*
13 A.D.3d 140 (2004) ...................................................................................................12

*Cummings v. City of New York,*
No. 19-CV-7723 (CM)(OTW), 2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) .................10, 11

*Dava v. City of New York,*
No. 1:15-CV-08575 (ALC), 2016 WL 4532203 (S.D.N.Y. Aug. 29, 2016) ..........................6

*Doe v. Pataki,*
481 F.3d 69 (2d Cir. 2007).............................................................................................25

*In re Elevator Antitrust Litig.,*
502 F.3d 47 (2d Cir. 2007)...............................................................................................4

*Endara-Caicedo v. New York State Dep't of Motor Vehicles,*
74 N.Y.S.3d 839 (N.Y. Sup. Ct. 2018),
*aff'd*, 115 N.Y.S.3d 880 (2020), *leave to appeal granted*, 2020 WL 5414769 ......................14

*Eternity Glob. Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y.,*
375 F.3d 168 (2d Cir. 2004)............................................................................................18

*Follendorf v. Brei,*
273 N.Y.S.2d 128 (Sup. Ct. 1966) ..............................................................................12, 13

*Freeze Right Refrigeration & Air Conditioning Servcs., Inc. v. City of New York,*
475 N.Y.S.2d 383 (N. Y. App. Div. 1984) .....................................................................10

*Highlands Ins. Co. v. PRG Brokerage, Inc.,*
No. 01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004)..................................................24

*Inc. Vill. of Ocean Beach v. Dep't of Health Servs., Cty. Of Suffolk,*
715 N.Y.S.2d 902 (App. Div. 2000) ................................................................................17

*Jackson v. New York State Urban Dev. Corp.,*
67 N.Y.2d 400 (1986) .....................................................................................................16

*Jamaica Recycling Corp. v. City of New York,*
816 N.Y.S.2d 282 (Sup. Ct. 2006),
*aff'd*, 38 A.D.3d 398 (2007)...........................................................................................13

*Johnson v. Nextel Commc'ns. Inc.,*
660 F.3d 131 (2d Cir. 2011)............................................................................................18

*Komarov v. Advance Magazine Publishers, Inc.,*
180 Misc.2d 658 N.Y.S.2d 298 (Sup. Ct. 1999)....................................................................9

*LaRocca v. Bd. of Educ. of Jericho Union Free School Dist.*,
  220 A.D.2d 424 (App. Div. 1995) ........................................................................20

*Madeleine L.L.C. v. Street*,
  757 F. Supp. 2d 403 (S.D.N.Y. 2010).................................................................21

*Medtech Prods. Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008).................................................................20

*Mena v. City of New York*,
  No. 15-CV-3707 (ALC), 2019 WL 1900334 (S.D.N.Y. Apr. 29, 2019)..................6

*Merrion v. Jicarilla Apache Tribe*,
  455 U.S. 130 (1982)............................................................................................25

*Napster, LLC v. Rounder Records Corp.*,
  761 F. Supp. 2d 200 (S.D.N.Y. 2011).............................................................20, 21

*Negrete v. Citibank, N.A.*,
  187 F. Supp. 3d 454 (S.D.N.Y. 2016),
  *aff'd*, 759 F. App'x 42 (2d Cir. 2019).................................................................24

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964)..............................................................................................8

*Nobu Next Door LLC v. Fine Arts Housing, Inc.*,
  800 N.Y.S.2d 48 (2005)......................................................................................19

*Patrolmen's Benevolent Assn. of City of N.Y., Inc. v. N.Y.S. Pub. Empl. Relations*
  *Bd.*, 6 N.Y.3d 563, 451 (2006)..........................................................................20

*Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale &*
  *Mamaroneck, Westchester Cty.*,
  34 N.Y.2d 222 (1974) .........................................................................................14

*People v. Gissendanner*,
  48 N.Y.2d 543, 399 N.E.2d 924 (1979)..............................................................15

*Phillips v. Murchison*,
  252 F. Supp. 513 (S.D.N.Y. 1966),
  *aff'd in part, rev'd in part on unrelated grounds*, 383 F.2d 370 (2d Cir. 1967)......................12

*Red Ball Interior Demolition Corp. v. Palmadessa*,
  173 F.3d 481 (2d Cir. 1999)................................................................................25

*Rivera v. Time Warner Inc.*,
  56 A.D.3d 298, 867 N.Y.S.2d 405 (2008) .............................................................8

*Rosado-Acha v. Red Bull Gmbh*,
  No. 15 CIV. 7620 (KPF), 2016 WL 3636672 (S.D.N.Y. June 29, 2016)............................3, 4

*Scacchetti v. Gannett Co.*,
  123 A.D.2d 497, N.Y.S.2d 337 (1986) ......................................................................................8

*SentosaCare LLC v. Lehman*,
  No. 2016-504407, 2018 WL 692568 (N.Y. Sup. Ct. Jan 25, 2018),
  *appeal docketed*, No. 2018-03473 (N.Y. App. Div. Nov. 20, 2018) ......................................10

*Sharpe v. City of New York*,
  No. 11 Civ. 5494 (BMC), 2013 WL 2356063 (E.D.N.Y. May 29, 2013) ,
  *aff'd*, 560 F. Appx. 78 (2d Cir. 2014) ......................................................................................7

*Sheffield v. Roslyn Union Free Sch. Dist.*,
  No. 13-CV-5214 SJF AKT, 2014 WL 4774133 (E.D.N.Y. Sept. 23, 2014) ..........................13

*Sirohi v. Tr. of Columbia Univ.*,
  No. 97-7912, 1998 WL 642463 (2d Cir. Apr. 16, 1998) ........................................................23

*Spinelli v. Nat'l Football League*,
  96 F.Supp.3d 81 (S.D.N.Y. 2015) ...........................................................................................24

*Sud v. Sud*,
  211 A.D.2d 423 (App. Div. 1995) ......................................................................................23, 24

*Swan Media Group, Inc. v. Staub*,
  841 F.Supp.2d 804 (S.D.N.Y. 2002).......................................................................................24

*The New York Times Co. v. City of New York Fire Dep't*,
  4 N.Y.3d 477 (2005) ...............................................................................................................15

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
  603 F. Supp. 2d 584 (S.D.N.Y. 2009).................................................................................8, 9

*In re Thomas v. N.Y.C. Dep't of Educ.*,
  103 A.D.3d 495 (App. Div. 2013) ...........................................................................................15

*Unif. Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. Cuevas*,
  714 N.Y.S.2d 802 (App. Div. 2000)........................................................................................17

*United States v. ITT Cont'l Baking Co.*,
  420 U.S. 223 (1975)................................................................................................................25

*United States v. Winstar Corp.*
  518 U.S. 839 (1996)................................................................................................................25

*Valmonte v. Bane*,
   18 F.3d 992 (2d Cir. 1994)..................................................................................7

*Washington Post Co. v. N.Y.S. State Ins. Dep't*,
   61 N.Y.2d 557 (1984) ........................................................................................20

*Washington Post Co. v. U.S. Dep't of Health and Human Servs.*,
   690 F.2d 252 (D.C. Cir. 1982)............................................................................20

*Weyant v. Okst*,
   101 F.3d 845 (2d Cir. 1996)................................................................................13

*Wiese v. Kelly*,
   No. 08-CV-6348 (CS), 2009 WL 2902513 (S.D.N.Y. Sept. 10, 2009)..................11

**Statutes**

Freedom of Information Law .......................................................................... *passim*

N.Y. Pub. Off. Law § 86(6)(a).............................................................................4

N.Y. Pub. Off. Law § 87.....................................................................................19

New York Civil Practice Law and Rules § 7803(3) ......................................... *passim*

New York Civil Rights Law § 50-a .................................................................. *passim*

New York Civil Rights Law § 74 ..................................................................... *passim*

**Other Authorities**

Ashley Southall, *4 Years After Eric Garner's Death, Secrecy Law on Police
   Discipline Remains Unchanged*, N.Y. TIMES (Jun. 3, 2018),
   https://nyti.ms/2DPr6YF ....................................................................................2

N.Y. State Senate Bill S8496 (June 6, 2020).......................................................15

State of New York, Department of State Committee on Open Government,
   ANNUAL REPORT TO THE GOVERNOR AND STATE LEGISLATURE, 1, 3 (Dec.
   2014), https://on.ny.gov/3fbCxGO ......................................................................2

Testimony for Oct. 17, 2019 Hr'g, N.Y. Senate Standing Committee on Codes,
   https://bit.ly/2DPhTzA........................................................................................2

Testimony for Oct. 24, 2019 Hr'g, N.Y. Senate Standing Committee on Codes,
   https://bit.ly/2E099X0.........................................................................................2

Tr. of June 17, 2020 Press Conference of Mayor Bill de Blasio, City of New
   York, https://on.nyc.gov/2DFqghb ....................................................................2, 3

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and this Court's August 28, 2020 Order, ECF No. 214, Intervenor-Respondent/Defendant Communities United for Police Reform ("CPR") hereby submits its Memorandum of Law in support of its Motion to Dismiss the First Amended Complaint in this action.

## I.  <u>PRELIMINARY STATEMENT</u>

For decades, records of officer misconduct and discipline in New York have been shrouded in secrecy, pursuant to N.Y. C.R.L. § 50-a (repealed) ("§ 50-a").  Advocates have long sought reform and lobbied for the repeal of § 50-a.  Police officers' unions have used their power to stonewall those efforts.  In June 2020, the New York State Legislature (the "Legislature") lifted this shroud of secrecy when it repealed § 50-a.  The Legislature had considered the Plaintiffs' many arguments during the legislative hearings and rejected each.

Plaintiffs ask this Court to circumvent the Legislature's clear intent in repealing § 50-a, asserting sweeping legal claims and broad-based privacy interests that would permanently bar release of the vast majority of the records the Legislature just made public.

For the reasons stated in the City Defendants' and CPR's prior Motions to Dismiss Complaint, ECF Nos. 220 and ECF No. 223—and for the new and independent reasons stated herein—Plaintiffs' legal theories, even as amended, fail as a matter of law and the First Amended Complaint should be dismissed.

## II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Enacted in 1976, N.Y. C.R.L. § 50-a generally excluded from disclosure officer "records used to evaluate performance toward continued employment or promotion."  Over time, the provision "expanded . . . to allow police departments to withhold from the public virtually any record that contains any information that could conceivably be used to evaluate the performance

of a police officer."[1]

The statute and its broad interpretation wrought extraordinary injustice.  Its secrecy destroyed community trust and blocked victims of officer misconduct from obtaining information about those responsible.  This undermined police accountability and community trust.  Yet, repeal proved difficult, as the officers' unions used their considerable influence among lawmakers to stonewall reform and repeal efforts[2]

Nonetheless, in Fall 2019, the New York State Senate held two hearings to consider repeal of § 50-a.  State legislators heard testimony from a range of stakeholders concerning § 50-a's impact.[3]  Unions representing police and correction officers resisted reform, advancing the same arguments they do here, citing their members' privacy, safety, and reputation.  The hearings and debates during the Assembly and Senate votes expressly addressed the categories of records at issue in this case—at a June 9, 2020 Floor Debate, for example, several senators emphasized that repeal of §50-a would presumptively make public officer records pertaining to "unsubstantiated" and "unfounded" claims public.  N.Y. Senate, Floor Debate, at 1808-09, 1812-13, https://bit.ly/2FmWHkN (June 9, 2020) (exchange between Senators Ashkar and Bailey); *id.* at 1836 (Sen. Borrello); *id.* at 1850 (Sen. Gallivan); *id.* at 1857 (Sen. Sepulveda).

In June 2020, the New York State Legislature voted to repeal § 50-a.  On June 12, 2020, Governor Cuomo signed the bill into law.  A week later, City Defendants pledged to release records that had for decades been shielded from public view.  Tr. of June 17, 2020 Press

---

[1] State of New York, Department of State Committee on Open Government, ANNUAL REPORT TO THE GOVERNOR AND STATE LEGISLATURE, 1, 3 (Dec. 2014), https://on.ny.gov/3fbCxGO.

[2] Ashley Southall, *4 Years After Eric Garner's Death, Secrecy Law on Police Discipline Remains Unchanged*, N.Y. TIMES (Jun. 3, 2018), https://nyti.ms/2DPr6YF.

[3] *See* Testimony for Oct. 17, 2019 Hr'g, N.Y. Senate Standing Committee on Codes, https://bit.ly/2DPhTzA; Testimony for Oct. 24, 2019 Hr'g, N.Y. Senate Standing Committee on Codes, https://bit.ly/2E099X0.

Conference of Mayor Bill de Blasio, City of New York, https://on.nyc.gov/2DFqghb.

In response to § 50-a's repeal and the Mayor's pledge to release all records, Plaintiffs brought this suit, seeking to bar the release of a vague and broad category of records in misconduct incidents that are "non-final, unsubstantiated, unfounded, exonerated, or resulted in a finding of not guilty . . . and [those subject to] confidential settlement agreements."  ECF No. 226 at 2.

Plaintiffs advance a laundry list of legal theories in support of their extraordinary requests for relief.  They claim release is barred by their Collective Bargaining Agreements ("CBAs"); the Due Process and Equal Protection Clauses of the United States and New York State Constitutions; and past settlement agreements.  ECF No. 226 at 2-3.  They allege that actions taken by City Defendants to effectuate the § 50-a repeal are "erroneous" and "arbitrary and capricious."  *Id.* at 26.

Plaintiffs also seek broad injunctive relief against disclosure of any record "that implicate[s] the privacy and safety concern of officers."  *Id.* at 26–33, 39.  But, after reviewing briefing on the issues and hearing argument, on August 21, 2020, the Court denied Plaintiffs' request for a preliminary injunction, with one limited exception.  ECF No. 197.

The City Defendants and CPR moved to dismiss Plaintiffs' original complaint, ECF No. 220, 222.  In response, on September 25, 2020, Plaintiffs filed their First Amended Complaint. ECF No. 226.  But even as revised, the First Amended Complaint fails to correct the defects pointed out by the City and CPR in their first Motions to Dismiss.  For the reasons explained in those prior briefings and as further elaborated here, Plaintiffs' claims remain meritless.

III.   **ARGUMENT**

Where a complaint consists of "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," this Court must not accept the Complaint's

allegations as true. *Rosado-Acha v. Red Bull Gmbh*, No. 15 CIV. 7620 (KPF), 2016 WL
3636672, at *11 (S.D.N.Y. June 29, 2016) (citing *Ashcroft v. Iqbal*, 556 U.S.662, 663 (2009)).
Plaintiffs' claims lack the legally required specificity.  Rather, Plaintiffs' Complaint is replete
with generalities and vague allegations.  They posit that they will suffer harms—but generally
present only a parade of hypothetical horribles that are far from plausible, or advance theories
advocating the protection of interests that are not legally cognizable.  Indeed, some of the very
claims that Plaintiffs raise in this action were recently rejected by a New York State trial court
upon concluding that the law enforcement unions had no legally cognizable claim.  *Buffalo
Police Benevolent Ass'n, Inc. v. Brown*, No. 807664/2020, 2020 WL 6039110, at *4 (N.Y. Sup.
Ct. Oct. 9, 2020) (concluding that "[w]hat Petitioners find objectionable [the release of records
containing unsubstantiated allegations] is specifically authorized by . . . Public Officers Law §
86(6)(a).")

        And even to the extent the Complaint alleges any legally protectable interest, nothing in
the Complaint establishes that disclosure will result in plausible harm to Plaintiffs' interests.  *See
In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S., 544, 570 (2007)).  ("While *Twombly* does not require heightened fact
pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line
from conceivable to plausible.'").

        In Section A, CPR will show that Plaintiffs' stigma plus claims, even as amended to
include two new examples of supposed harm specifically tied to the release of disciplinary
records, fail to satisfy either the stigma or plus prong.  *Infra* 6–8.  Police officers are considered
public officials, and thus the "stigma" prong, as analyzed under New York defamation law, is
subject to the heightened requirement of actual malice by the party publishing the statements at

issue.  Plaintiffs have failed to allege malice or ill intent.  Nor have they alleged that the records

do not accurately represent that allegations were made during the investigative process.  They

cannot meet the actual malice standard.  Second, as to the "plus" prong, Plaintiffs amended

claims still only point to speculative harms and potential negative public opinion, which fail to

demonstrate a tangible loss sufficient to satisfy the "plus."  Plaintiffs appear to allege that the

65,000 officers they purport to represent all have due process claims against Defendants, arising

from two instances in which private actors used disciplinary and misconduct records in a way

that displeases Plaintiffs.  This is not a cognizable legal claim.

Plaintiffs' stigma plus claims also fail for the independent reason that they are barred by

New York Civil Rights Law § 74 ("§ 74"), which provides immunity against claims based upon

the fair and accurate reporting of official proceedings, and by New York common law

immunizing government officials from statements made in the course of their official duties.

*Infra* 8–13.

In Section B, CPR will show that Plaintiffs' claims under New York Civil Practice Law

and Rules § 7803(3) ("Article 78 claims") are entirely conclusory, premised on the faulty idea

that because City Defendants reasoned differently than Plaintiffs would have liked—and reached

a conclusion dissatisfying to Plaintiffs—City  Defendants acted erroneously, arbitrarily and

capriciously.  Plaintiffs' Article 78 claims, which ignores the undisputed seismic change that

occurred when the legislature repealed § 50-a, mischaracterize the legislative intent, criticize

City Defendants' decision to ignore *irrelevant* case law, and ignore the due deference owed to

agency decision making, are unsupported.  *Infra* 13–18.

In Section C, CPR will show that Plaintiffs' contract claims are based on the remarkable

notion that private parties can simply contract around public laws they find inconvenient (here,

New York's Freedom of Information Law ("FOIL")).  This cannot be.  *Infra* at 20.  And based

on the language of the contracts themselves—or on Plaintiffs' failure to clearly specify what

contractual language provides the protection they seek—the contract claims also fail on their

face.  *Infra* at 20–24.

Plaintiffs' claims are wholly meritless, and should be dismissed, with prejudice.

A.     **PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FOURTEENTH
       AMENDMENT**

Plaintiffs' due process and equal protection claims fail for reasons previously identified

by the City (ECF No. 220 at 3–13).[4]  Even as amended, those claims are speculative and purely

hypothetical, with no adequate explanation as to what specific damage to a legally protectable

interest would be causally tied to this "reputational harm."  *See* ECF 220 at 10–14; *infra* 6–8.

These claims must also fail because they are barred by New York statutory and common law.

1.     **Plaintiffs Fail to Allege either Stigma or Plus.**

In support of their due process claims, Plaintiffs allege that reputational harm resulting

from the release of misconduct records constitutes the deprivation of a liberty interest.  The FAC

alleges two examples of such supposed harm.  *See* ECF No. 226 ¶ 63 (a social media post calling

for the termination of St. John's University adjunct Professor and former NYPD officer Richard

Taylor for racially charged comments made during his lectures, and including a screenshot of

---

[4] For the reasons also noted by the City in its previous briefing, Plaintiffs' New York State
Constitution claims also fail.  ECF No. 220; *Dava v. City of New York*, No. 1:15-CV-08575
(ALC), 2016 WL 4532203, at *10 (S.D.N.Y. Aug. 29, 2016) (concluding that because 42 U.S.C.
§ 1983 provides a remedy for equal protection claims, New York law does not provide a private
equal protection cause of action); *Mena v. City of New York*, No. 15-CV-3707 (ALC), 2019 WL
1900334, at *5 (S.D.N.Y. Apr. 29, 2019) (concluding that plaintiff's Article 1, Section 6 claim—
due process under the NY constitution—fails as a matter of law because it is "redundant" of his
42 U.S.C. § 1983 claims).

misconduct and disciplinary records from his prior career as an a NYPD officer[5]); *Id.* ¶ 64 (a cartoon parodying a "10 Most Wanted" list by depicting NYPD officers with the highest numbers of misconduct complaints as "NYPD's Most Unwanted."). But neither of these anecdotes allege any actual loss of a property or liberty interest to satisfy the "plus" prong of the stigma-plus analysis. ECF No. 223 at 5; ECF No. 133 at 23; *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (future impact on job prospects is "not by itself a deprivation of a liberty interest").

Instead, Plaintiffs now seem to be making the remarkable assertion that stigma itself is the plus—i.e., that when bad things are said about someone in public discourse, the subject of those statements suffers a violation of his constitutional rights. This is not supported by the law. Worse, the chilling effect of accepting this argument would have grave implications for the First Amendment right to freedom of speech.

Moreover, Plaintiffs cannot show any legally actionable "stigma" attaching to Defendants. The stigma prong of a stigma-plus claim is analyzed under the same rubric as defamation claims. *Sharpe v. City of New York*, No. 11 Civ. 5494 (BMC), 2013 WL 2356063, at *6 n. 10 (E.D.N.Y. May 29, 2013), *aff'd*, 560 F. Appx. 78 (2d Cir. 2014) ("federal courts in New York often look to New York defamation law when analyzing a "stigma-plus" claim."). Police

---

[5] Plaintiffs attempt to cure their prior pleading deficiencies by leveraging (and deceptively framing) Taylor's story. Plaintiffs' allegations regarding Professor Taylor cannot support stigma plus claims for the 65,000 officers purportedly represented by the Plaintiff Unions. First, a review of very Instagram post cited in Plaintiffs' FAC demonstrates that the calls for Taylor's dismissal stem from Taylor's alleged racially charged comments during a class lecture in which he prompted his class to justify slavery, with his CCRB records only raised later and as an ancillary factor. Second, Taylor is neither a current police officer nor a member of the Plaintiff Unions, and his story is of no import to the current litigation. To the extent he has any due process claim against the City Defendants, his remedy would be to bring an individual action against the City.

officers are, as a matter of law, public officials for purposes of a defamation claim, holding those claims to a higher standard of 'actual malice'" on behalf of the speaker or published of allegedly defamatory statements. *Alcor Life Extension Found. v. Johnson*, 43 Misc. 3d 1225(A), 992 N.Y.S.2d 157 (N.Y. Sup. 2014), *aff'd*, 136 A.D.3d 464, 24 N.Y.S.3d 629 (2016) (holding that a police officer plaintiff is a public figure as a matter of law); *Scacchetti v. Gannett Co.*, 123 A.D.2d 497, 498, 507 N.Y.S.2d 337, 338 (1986) (plaintiff, a police sergeant, is a public official as a matter of law and thus plaintiff must prove that defendant published the offending article with actual malice.); *New York Times Co. v. Sullivan*, 376 U.S. 254, 281 (1964) (public official who brings defamation claim must allege actual malice).  Actual malice requires the plaintiff to prove that the statement was made with knowledge that the statement was false or with reckless disregard of whether it was false or not, and simply alleging "gross irresponsibility" is insufficient.  *Rivera v. Time Warner Inc.*, 56 A.D.3d 298, 867 N.Y.S.2d 405, 406 (2008). Plaintiffs have not pled, nor can they satisfy the requisite mental state.

> **2.** **New York Civil Rights Law 74 Immunizes the City Defendants from Liability for Publishing Accurate Reports of Allegations and Investigations.**

Plaintiffs' "stigma plus" claims are barred by § 74 of the New York C.R.L., which provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y.C.R.L. § 74 (McKinney).

***Reports of official proceedings.***  There can be no dispute that the records at issue pertain to "official proceedings."  For the purposes of § 74, that term is broadly construed.  *See Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009) ("New York courts have broadly construed the meaning of an official proceeding as used in Section 74. . . .  The test 'is whether the report concerns actions taken by a person officially

empowered to do so.' . . .  New York Courts have found that 'an administrative agency

investigation into activities within its purview is an 'official proceeding.' . . . ") (citations

omitted).  Section 74 has been held to protect reports of, *inter alia*, an internal governmental

investigation.  *Id.* at 588–99 ("Given the range of investigatory proceedings that have been held

to be official proceedings for purposes of Section 74, there can be no doubt that the investigation

of a consumer protection agency into consumer complaints constitutes an official proceeding."

(internal citations omitted)).  Investigations and hearings by professional conduct boards—

similar to the proceedings at issue here—fall within this broad construction of "official

proceedings" under § 74.  *See Bloom v. Fox News of Los Angeles*, 528 F. Supp.2d 69, 76

(E.D.N.Y. 2007) (proceedings of the State Board for Professional Medical Conduct have been

interpreted as official proceedings for the purposes of § 74).

 That some records at issue in this case may pertain to internal, nonpublic proceedings

does not matter.  The plain language of the statute does not carve this category out for special

treatment.  *See Komarov v. Advance Magazine Publishers, Inc.*, 180 Misc.2d 658 , 691 N.Y.S.2d

298, 300–01 (Sup. Ct. 1999) ("[P]laintiff argues that the FBI report was prepared for internal FBI

use only, and that since it was not prepared for public consumption, it '. . . should not be awarded

the protections of [Civil Rights Law] Section 74.'  However, this argument is unavailing. . .

.'[T]he activities of the agency need not be public for the statutory privilege to apply.  The report

is protected as long as it concerns activities which are within the prescribed duties of a public

body.  The test is whether the report concerns 'action taken by a person officially empowered to

do so.'" (internal citations omitted)).  Rather, the records at issue in this case fall squarely within

the scope of official proceedings whose reports are protected by § 74.

 It also does not matter that some of the records at issue in this case pertain to proceedings

that have not yet reached their final disposition.  Under the statute's plain language, the official

proceeding at issue need not be complete before it can be fairly and accurately reported upon

with immunity.  As another judge of this Court recently noted, "New York courts have

consistently held that 'even the announcement of an investigation by a public agency, made

before the formal investigation has begun, is protected as a report of an official proceeding

within the contemplation of the statute, as the report is of an ongoing investigation.'" *Cummings*

*v. City of New York*, No. 19-CV-7723 (CM)(OTW), 2020 WL 882335, at *16 (S.D.N.Y. Feb. 24,

2020) (citing *Freeze Right Refrigeration & Air Conditioning Servcs., Inc. v. City of N.Y.,*, 475

N.Y.S.2d 383, 388 (N. Y. App. Div. 1984)).

And the disclosure of the allegations or complaints that led to an official investigative

proceeding is also protected.  *Id.* at *16 (quoting *SentosaCare LLC v. Lehman*, No. 2016-504407,

2018 WL 692568, at *7 (N.Y. Sup. Ct. Jan 25, 2018), appeal docketed, No. 2018-03473 (N.Y.

App. Div. Nov. 20, 2018) ("'reports on allegations that lead to a government investigation are

fully protected.'")); *see also Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 648–49

(S.D.N.Y. 2015), *aff'd sub nom.*, *Bertuglia v. Schaffler*, 672 F. App'x 96 (2d Cir. 2016) (Plaintiff

could not sustain stigma plus claims against New York City's assistant district attorneys in

connection with press release reporting on Plaintiff's arraignment because "the ADA defendants

simply reported what had been previously stated during the arraignment, and this type of fair

reporting is not actionable").

***Fair and accurate report.***  Plaintiffs do not contest that the records that City Defendants

intend to release are indeed fair and accurate reports of the City Defendant agencies' official

proceedings or of the allegations underpinning those proceedings.  Aug. 21, 2020 Order at 29:16-

18 (ruling that Plaintiffs have made no showing that the released records would inaccurately

reflect the disciplinary or investigative process).  As this Court has already noted, "the records at issue are not false."  *Id.* at 28:7; 29:9-12 ("this is not a case, for example, where the defendants are uncritically publishing the allegations of misconduct made against officers as if these allegations were true").  All Plaintiffs argue is that the underlying allegations that spurred each proceeding may be untrue.  *See* ECF No. 226 at ¶¶ 1; 2; 3; 56–57; *see also* Aug. 21, 2020 Order at 28:17–21 ("[P]laintiffs are eliding the distinction between the underlying allegation, which may be about conduct that never happened, and the actual record being released, which record states the outcome of an investigation into that complaint.").  But as this Court noted, reporting *the fact that an allegation was made* through "[a]ccurate descriptions of allegations and personnel actions or decisions that are made pubic [is] not actionable."  Aug. 21, 2020 Order at 29:4–9 (citing to *Wiese v. Kelly*, No. 08-CV-6348 (CS), 2009 WL 2902513 (S.D.N.Y. Sept. 10, 2009)); *see also Cummings*, 2020 WL 882335, at *16 ("Crucially, § 74 protects reporting on charges and allegations made in proceedings regardless of whether the underlying allegations are in fact true."); *id.* at *19 ("Even if the allegations are 'erroneous[ ],' . . . § 74's privilege is purposely designed to immunize reporting on the allegations made in proceedings regardless of the veracity of those underlying allegations. . . .'The question is not whether or not the statement is 'true.' The question is whether it is a substantially accurate description of the . . . proceeding. . . .'").

What the records at issue in this case will report include that a complainant levied allegations, whether there was a particular investigation and investigatory disposition, and, if applicable, that there was a disciplinary disposition and what that outcome was—all squarely covered by § 74 immunity.  And even when the complaints or proceedings reported on are later found unsubstantiated or exonerated, that does not erase the privilege that attaches to reporting

on those complaints and proceedings in the first place, nor does it undermine the accuracy of the

reporting when made.  *See Phillips v. Murchison*, 252 F. Supp. 513, 522–23 (S.D.N.Y. 1966),

*aff'd in part, rev'd in part on unrelated grounds*, 383 F.2d 370 (2d Cir. 1967) ("The report here

was co-extensive with the judicial proceeding—only the complaints were then in existence and

that is what was reported.  It was as complete as could be and that is when the privilege attached,

not years later; it was not destroyed because the charges ultimately were not sustained.

Dismissal of the charges did not render the charges in the complaint non-existent as a record in a

judicial proceeding. . . . There is no principle of law which so eradicates the privilege which has

attached because of subsequent events."); *see also Cordell-Reeh v. Nannies of St. James, Inc*., 13

A.D.3d 140, 141 (2004) ("It does not avail defendant to argue that plaintiff will be ultimately

precluded from proving such of the complaint's allegations as are based on documents that were

obtained in violation of her social worker privilege under CPLR 4508.  Any such preclusion

would 'not render the charges in the complaint non-existent as a record in a judicial

proceeding.'").

Because Plaintiffs have failed to allege that any of the records at issue would be anything

other than a fair and accurate report of the allegations made and the official investigatory and

adjudicatory proceedings resulting from those allegations, Plaintiffs' stigma plus claims are

barred by § 74.

### 3.    New York Common Law Immunizes City Defendants from Liability for Statements Made in Their Official Capacity.

Independent of the statutory protections of § 74, New York common law has long

recognized that government officials and bodies are protected from civil suit arising from non-

malicious statements made in carrying out official duties.  *See Follendorf v. Brei*, 273 N.Y.S.2d

128, 131–32 (Sup. Ct. 1966) ("The release of [intra-department] reports by a municipal official

to the press after they have become duly made is within the scope of the absolute privilege

against defamation actions."); *see also Sheffield v. Roslyn Union Free Sch. Dist.*, No. 13-CV-

5214 SJF AKT, 2014 WL 4774133, at *3 (E.D.N.Y. Sept. 23, 2014) (School board's public

statements were subject to immunity because "[t]he subject matter of the Board Statement—a

public explanation of the termination of the District's Claims Auditor in an attempt to 'be fully

transparent' . . . is within the competence and purview of the Board of Education and the District

. . . The forum in which the Board Statement was made-on the District's own website . . . further

supports the conclusion that defendants were acting within the scope of their official capacity

when they published the Board Statement.").[6]

Because disclosure of the records at issue is protected by both § 74 and by the common

law privilege for official statements made within official authority, Plaintiffs' stigma plus claims

are barred.

## B.   PLAINTIFFS' ARTICLE 78 CLAIMS FAIL FOR A CLEAR MISINTERPRETATION OF THE LAW

Plaintiffs' Article 78 claims fail for the reasons stated by the City in its prior brief, ECF

No. 220 at 14–21 and by CPR in its prior brief, ECF No 223 at 11–14, and for the additional

reasons explained below.  Plaintiff cannot show a decision "affected by error of law" or one that

is "arbitrary and capricious" as Article 78 requires.  In an Article 78 proceeding, it is the plaintiff

who bears the burden of proving that the determination was an error of law or that there is no

rational basis for that challenged determination. *Jamaica Recycling Corp. v. City of New York*,

816 N.Y.S.2d 282, 289 (Sup. Ct. 2006), *aff'd*, 38 A.D.3d 398 (2007).  Plaintiffs have not met this

---

[6] Particularly as it pertains to the individual officials named as defendants, the claims should be dismissed because "public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996).

standard.

**1.**      **The Repeal of § 50-a Removes a Longstanding Barrier to Disclosure and the City Defendants' Decision to Release Records is Neither an Error of Law Nor Arbitrary or Capricious.**

An agency decision is affected by an error of law under Article 78 only when it misinterprets governing, non-discretionary law.  *Endara-Caicedo v. New York State Dep't of Motor Vehicles*, 74 N.Y.S.3d 839, 842 (N.Y. Sup. Ct. 2018), *aff'd*, 115 N.Y.S.3d 880 (2020), *leave to appeal granted*, 2020 WL 5414769.  Relatedly, an agency decision is arbitrary and capricious only where the decision lacks a "sound basis in reason and is generally taken without regard to the facts."  *Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester Cty.*, 34 N.Y.2d 222, 231 (1974) (a rational decision is not arbitrary and capricious).

To begin with, perhaps the most telling problem with Plaintiffs' theory is that they cannot clearly articulate what law they are claiming the City Defendants misinterpreted.  At times, they appear to claim City Defendants' made an "erroneous" interpretation of the repeal of § 50-a. ECF No. 226  ¶¶ 77, 144–147.  There is no such thing as an erroneous interpretation of the *repeal* of a statute.  To show an error of law, Plaintiffs need to point to an affirmative, non-discretionary legal obligation and demonstrate how City Defendants misapplied it.

At other times, Plaintiffs adopt the absurd position that disclosure would only be permissible if, instead of repealing the statute that forbade disclosure, the New York State Legislature passed a law that *mandated or required* release of records.  *Id.,* 226 ¶ 80.  But by repealing § 50-a—the only source of law that prohibited wholesale disclosure—the Legislature signaled that release of such misconduct and disciplinary records were to be governed by FOIL, and accordingly that those records would be presumptively public.

Otherwise, Plaintiffs seek to mischaracterize the nature of the repeal by (1) challenging

the soundness of the repeal itself and (2) by misconstruing the intent of the legislature in repealing § 50-a.  Although the they assured the Court during the Preliminary Injunction Hearing that it was not challenging the repeal itself (Aug. 18, 2020 Hr'g. Tr. 73:22–24), by noting that the repeal passed in "just three days" (ECF No. 226, ¶ 80), the Plaintiffs insinuate that the repeal was hastily passed and lacked validity.  Second, a review of the Sponsor Memorandum for Senate Bill S8496 demonstrates that § 50-a's wholesale bar was unnecessary *because more narrow safeguards* (some mandatory, like redacting addresses and some permissive, like the applicability of a FOIL exemption) were the appropriate method to managing release of misconduct and disciplinary records.[7]

City Defendants complied with the requirements of FOIL in determining that none of the *permissive*—not mandatory—exemptions applied, and plaintiffs cannot plausibly allege the contrary.  Instead, Plaintiffs claim that City Defendants were bound by three stray bits of *inapplicable* authority (ECF No. 226 ¶ 88-90): *People v. Gissendanner*, 48 N.Y.2d 543, 399 N.E.2d 924 (1979) simply confirmed § 50-a's purpose to withhold records for use by criminal defense attorneys during cross examination for impeachment;  *The New York Times Co. v. City of New York Fire Dep't*, 4 N.Y.3d 477 (2005) simply upheld Fire Department's application of the privacy exemption to withhold 911 call transcripts (notably, it does not hold that it would be error if Fire Department chose to release the transcripts); and the Committee on Open Government's advisory opinions are non-binding and to the extent informative, specifically note that FOIL exemptions are permissive (*See* ECF No. 220 at 17; *see also In re Thomas v. N.Y.C. Dep't of Educ.*, 103 A.D.3d 495, 498 (App. Div. 2013) (noting that non-binding advisory opinions of Committee on Open Government did not create a blanket exemption under FOIL)).

---

[7] N.Y. State Senate Bill S8496 (June 6, 2020).

This Court's review is limited to whether City Defendants procedurally and substantively complied with statutory requirements and thus it is neither error of law or arbitrary and capricious where City Defendants chose to ignore inapplicable authority that it was not bound to follow. *Jackson v. New York State Urban Dev. Corp.*, 67 N.Y.2d 400, 416 (1986).

Nor are the City Defendants required to always find that an exemption applies. ECF No. 226 ¶ 83. Under FOIL, government records are presumptively public *unless* a narrow exemption applies. *Beyah v. Goord*, 309 A.D.2d 1049, 1049 (2003); *Capital Newspapers Div. of Hearst Corp. v. Whalen*, 69 N.Y.2d 246, 252 (1987) ("FOIL is to be liberally construed and its exemptions narrowly interpreted"). Thus, when an individual makes a FOIL request, the responding agency can *choose* to withhold records if one of the exemptions applies. However, when, as here, a government agency affirmatively decides to release its own records, it can do so without being forced to apply certain *permissive* exemptions. *Capital Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562, 567 (1986) ("while an agency is permitted to restrict access to those records falling within the statutory exemptions," it is also "within the agency's discretion to disclose such records . . . if it so chooses").

Plaintiffs also argue that CCRB's decision to release 81,000 records without individualized review violates Article 78. However, even if CCRB did not conduct an individualized review, CCRB made the decision to treat certain types of officer records that disclose the same type of basic information as the same. In treating like records alike, CCRB uniformly decided to release the records.

### 2. City Defendants Decision to Comport with Repeal of § 50-a is not an Erroneous or Arbitrary and Capricious Departure from Past Practice.

Plaintiffs concede that Defendants are free to change policies, yet they ignore the deference due to agency decision-making, instead claiming that City Defendants' decision was a

"reversal . . . . not based on sound reason[,] lack[ing] even a minimal level of analysis."  ECF No. 226 ¶ 98.  But what Plaintiffs fail to allege is how City Defendants' decision to comport with the repeal of § 50-a and the public disclosure presumption could be an error of law or arbitrary and capricious.  And they cannot.  *Caruci v. Dulan*, 246 N.Y.S.2d 727, 730 (Sup. Ct. 1964), *rev'd on other grounds*, 261 N.Y.S.2d 677 (1965) (The test for arbitrary and capricious is not what the court thinks the agency should have done, but rather whether there is a "plausible" basis for the decision.).

Plaintiffs' claims are based on an alleged change of "longstanding" policy and practice at the "expense of the long-settled reliance" under the pretext of § 50-a's repeal.  ECF No. 226 ¶¶ 1, 98.  However, a change in policy or precedent is only erroneous or arbitrary and capricious if the change lacks reason.  *Conversions for Real Estate, LLC v. Zoning Bd. of Appeals of Inc. Vill. of Roslyn*, 818 N.Y.S.2d 298, 299 (App. Div. 2006).  Where the agency explains its reasoning for changing an alleged policy, even a "longstanding" one, such change does not violate Article 78. *Unif. Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. Cuevas*, 714 N.Y.S.2d 802, 804 (App. Div. 2000) ("Where a change in policy is . . . cogently explained, a determination which declines to follow agency precedent will not be disturbed unless it is irrational.").  New York law expressly recognizes that a statutory change is a sound reason for an agency's change in policy. *See Inc. Vill. of Ocean Beach v. Dep't of Health Servs., Cnty. Of Suffolk*, 715 N.Y.S.2d 902, 903 (App. Div. 2000) (agency's decision was not arbitrary and capricious, because although the factual predicates were identical, a 1998 amendment to New York's Sanitary Code justified a different determination than in previous instances).

Although City Defendants previously withheld officer misconduct and disciplinary records, the repeal of § 50-a not only provides sound reasoning to adopt practices in support of

broad disclosure and transparency, it requires such practices.  Pursuant to clear direction from the

Legislature, City Defendants responded accordingly.  Because the agencies conformed their

decision-making to the Legislature's stated intent, Plaintiffs cannot allege that City Defendants'

reliance on the repeal was in any way irrational.  What Plaintiffs really argue is not an irrational

policy change, but that unless City Defendants made the decision Plaintiffs desired, any decision

to release misconduct and disciplinary records would be erroneous or arbitrary and capricious.

This, however, is not the law.  Plaintiffs' claims must be dismissed.

## C.   PLAINTIFFS' CONTRACT CLAIMS ARE MERITLESS

Under New York law, to state a claim for breach of contract, Plaintiffs must allege (a) the

existence of a contract, (b) performance of the contract by the plaintiff, (c) breach by the

defendant, and (d) damages suffered as a result of the breach.  *See Eternity Glob. Master Fund*

*Ltd. V. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004); *see also*

*Johnson v. Nextel Commc'ns. Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).  For reasons explained in

City Defendants' motion and below, both varieties of contract claims at issue in this case—those

brought under the Unions CBAs and those brought under settlement agreements—fail to meet

these requirements, and fail for additional reasons as well.

### 1.   Plaintiffs Fail to Plead a Breach of Their Collective Bargaining Agreements.

Plaintiffs' initial Complaint purported to plead a count for breach of the CBAs.  *See* ECF

No. 10-2 ¶¶ 77–83.  Although City Defendants moved to dismiss those claims based only on the

ongoing arbitration on those claims, because they were also interposed against CPR as

Intervenor-Defendant, CPR moved to dismiss those claims on the merits.  ECF No. 223.  In their

First Amended Complaint, Plaintiffs have withdrawn their claims for breach of the CBA, instead

seeking only injunctive relief in aid of arbitration of those claims.  (ECF No. 226 ¶¶ 100–110).

-18-

It is unclear from Plaintiffs' re-framing of their CBA-based claims whether Plaintiffs intend to seek a new ruling on preliminary relief specifically in aid of arbitration under Section 75 (*see* ECF 226 ¶¶ 101–110).  Regardless, Plaintiffs should not be given another bite at the apple; nor would they be entitled to a different outcome as the standard for an injunction in aid of arbitration is analogous to the general standard for preliminary relief.  *Nobu Next Door LLC v. Fine Arts Housing, Inc.*, 800 N.Y.S.2d 48, 49 (2005) (applying the same standard for a preliminary injunction to a request for injunction in aid of arbitration).

Despite Plaintiffs' re-framing of their claims, moreover, Plaintiffs have retained their request for declaratory *relief* pertaining to the CBAs—specifically, the FAC seeks from this Court "a declaration that publication of Unsubstantiated and Non-Final Allegations (1) would violate the collective bargaining agreements between the City and Plaintiffs." ECF No. 226 ¶ 155.  And so once again, Plaintiffs place the meaning and effect of the CBAs directly before this Court, in a pleading interposed against CPR, requiring CPR to seek to dismiss this request for relief on the merits.

This Court should decide whether Plaintiffs are entitled to their requested relief on their merits and dismiss the request with prejudice.  Although some of the Plaintiffs have elected to decide their dispute under the CBAs in arbitration against the City, CPR is not a party to the CBAs or to any such bilateral arbitration.[8]  But CPR is a defendant in this action, and the declaratory relief Plaintiffs maintain in this action unquestionably threatens CPR's legal rights— in particular its right to inspect and copy the misconduct and disciplinary records Plaintiffs seek to enjoin the City from making publicly available.  N.Y. Pub. Off. Law § 87 (McKinney 2020).

---

[8] Notably, the CCRB itself is also not a party to the CBAs and thus is not in contractual privity with the provisions upon which Plaintiffs rely.

That legal right is not before the arbitrator, nor does the arbitrator have any power to restrict it. But under the First Amended Complaint, it remains at issue here.  ECF No. 226 ¶ 155.  The full merits of these claims are therefore before this Court on CPR's motion to dismiss.  They should be fully rejected for two independent reasons.

*First*, Plaintiffs' CBA claims are contravened by the foundational rule that a government agency cannot contract around what FOIL requires—an agency simply "cannot bargain away the public's right to access public records."  *LaRocca v. Bd. of Educ. of Jericho Union Free School Dist.*, 220 A.D.2d 424, 427 (App. Div. 1995); *accord City of Newark v. Law Dep't of City of New York*, 305 A.D.2d 28, 32–33 (App. Div. 2003); *see Washington Post Co. v. N.Y.S. State Ins. Dep't*, 61 N.Y.2d 557, 566–67 (1984) (agency cannot avoid disclosure with a mere "label of confidentiality"); *accord Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 690 F.2d 252, 263 (D.C. Cir. 1982).  This rule is categorical—"some subjects are excluded from collective bargaining as a matter of policy."  *Patrolmen's Benevolent Assn. of City of N.Y., Inc. v. N.Y.S. Pub. Empl. Relations Bd.*, 6 N.Y.3d 563, 451 (2006).  FOIL is among them, because "as a matter of public policy" any attempt to contract around it is ineffective.  *LaRocca*, 220 A.D.2d at 427.  So even if Plaintiffs' contention on the meaning of the CBAs were right as a matter of the parties' expressed intent, such a promise would be unlawful.

*Second*, in any event, Plaintiffs' reading of the plain language of the relevant contractual provisions is wrong as a matter of law.  Contract interpretation is generally a question of law that is suitable for disposition on a motion to dismiss.  *Medtech Prods. Inc. v. Ranir, LLC*, 596  F. Supp. 2d 778, 807 (S.D.N.Y. 2008).  Whether a contract is unambiguous is a question of law for the court to decide.  *Continental Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010). If unambiguous, a contract's meaning is also a question of law for the court to decide.  *Napster,*

*LLC v. Rounder Records Corp.*, 761 F. Supp. 2d 200, 206 (S.D.N.Y. 2011).  Where, as here, the "contract is unambiguous, that is, only susceptible to one reasonable interpretation, the court must 'give effect to the contract as written.'" *Madeleine L.L.C. v. Street*, 757 F. Supp. 2d 403, 405 (S.D.N.Y. 2010).

***Section 7(c).***  Section 7(c) provides for removal of "exonerated" or "unfounded" investigative reports from an officer's personnel folder, upon written request.  *See, e.g.*, ECF No. 10-2 Ex. 2 at 16.[9]  Notably, Section 7(c) requires removal of the investigative reports from *one place only*: that officer's "Personnel Folder."  This provision is silent regarding public disclosure of these records and does not require NYPD or CCRB to delete the documents from anywhere they may exist.  As this Court explained, "the provision gives the officer the right to request that an investigative report be removed from a personnel file.  It does not give the officer the right to have the investigative report removed from the public record."  Aug. 21, 2020 Order at 20:1–5.  The unambiguous language of the CBA forecloses Plaintiffs' argument that Section 7(c) provides broad relief and such interpretation has been explicitly rejected by this Court, "I completely disagree with plaintiffs' broad interpretation of this provision, and in no way do I believe that it can stretch so far as to prevent the disclosure of this information."  *Id*. at 19:22–25.  The words "remove from the Personnel Folder" mean exactly that and Plaintiffs cannot claim that disclosure will breach a right Plaintiffs do not contractually even have.  Thus, on its face, Plaintiffs' breach of contract claims fails.  Moreover, because "officers can and will be able to exercise their rights under this provision to have specified investigative reports removed from

---

[9] Plaintiffs did not file exhibits with their FAC, but the FAC itself refers to and directs the Court's attention to the same documents which were attached as exhibits to the initial complaint. *See, e.g.*, ECF No. 226 ¶ 47, n.1.  Accordingly, CPR references and cites to those exhibits as numbered in the initial complaint.

their personnel or personal folder" (*id*. at 20: 5–8), any limited right Plaintiff enjoy has not been undermined.  Based on the unambiguous language contained within Section 7(c), Plaintiffs cannot claim breach.

 ***Section 8.***  Section 8 of the CBAs provides that "where an employee has been charged with a 'Schedule A' violation . . . and such case is heard in the Trial Room and [the] disposition of the charge . . . is other than 'guilty,' the employee concerned may, after 2 years from such disposition, petition the Police Commissioner for a review for the purpose of expunging the record of the case." *See, e.g.*, ECF No. 10-4 Ex. 2 at 16.  This also does not provide that the details of those cases may never be disclosed.  The right to petition for expungement the official records of a case years after the fact has no bearing on how that record will be treated during the pendency of that case and in the years immediately following.  No language in the CBA provides that the record of the case will be sealed in the interim, and there is no basis to infer such language *sub silentio*.

 The language of the CBAs is clear: Officers may seek the expungement of their disciplinary records *from their personnel files* or from the *record of the case*.  But nothing in language granting right to seek expungement implies a right to prevent disclosure of what is currently contained in a personnel file, let alone a right against disclosure of records held *elsewhere*.  And the disclosure of records to the public would not frustrate the rights granted in either Section 7(c) or Section 8 the CBAs.  Even after public disclosure of records, Plaintiffs can still exercise their rights under the collective bargaining agreements to have investigative reports removed from their Personnel File.  That is the only right granted, and it is not frustrated by City Defendants' intended release.  Accordingly, based upon the plain language of the CBAs, Plaintiffs have failed to allege any breach.  Plaintiff's request for declaratory judgment related to

these agreements should be dismissed for failure to state a claim.

      2.      **Plaintiffs Fail to Plead With Sufficient Particularity Any Breach of the Settlement Agreements.**

Plaintiffs broadly alleged that "any settlement agreement entered into before June 2020 . . . necessarily and as a matter of law incorporated § 50-a's protection against disclosure" because §50-a was the law in force at the time of those agreements.  ECF No. 226 at ¶¶ 5, 71. But Plaintiffs fail to plead with any particularity what any of these settlement agreements contain, making it impossible to evaluate the plausibility of this contention.  As this Court noted, Plaintiffs "have only provided . . . the most cursory explanations of these purported settlement agreements" and have not provided a "single example" of those agreements or any witness or declarant testimony regarding those agreements.  Aug. 21, 2020 Order at 25:24–26:6.  In fact, in Plaintiffs' Amended Complaint, Plaintiffs explicitly acknowledge that "there were no express confidentiality provisions in the settlement agreements."  ECF No. 226 ¶ 73.  Plaintiffs' claims based on these purported settlement agreements are based on conclusory assumption, and must be dismissed for that reason.[10]

And even were this not the case, Plaintiffs' conclusory claim—that the settlement agreements did somehow incorporate § 50-a, despite the lack of *any* confidentiality provision— simply do not permit the court to determine the existence of any contractual right implicated by City Defendants' actions.  *See Sirohi v. Tr. of Columbia Univ.*, No. 97-7912, 1998 WL 642463, at *2 (2d Cir. Apr. 16, 1998) (quoting *Sud v. Sud*, 211 A.D.2d 423, 424 (App. Div. 1995))

---

[10] The settlement claims fail for the same threshold reasons the CBA-based claims do: An agency cannot contract around FOIL.  That logic applies just as fully here, as the Court held in its preliminary injunction ruling.  *See* Aug. 21, 2020 Order at 24:11-15 ("[P]laintiffs are essentially arguing that a state legislature can never change the law, that, while not even referenced in the parties' agreement, might possibly impact a party's contractual rights.  I do not believe this to be the case.").

("[Plaintiff] failed to successfully plead a breach of contract claim because he did not allege the essential terms of the parties' purported contract 'in nonconclusory language,' including the specific provisions of the contract upon which liability is predicated.").

This court has found that "a plaintiff does not meet the *Twombly-Iqbal* standard and must be dismissed when 'the Complaint does not specify which clause of the Agreement City Defendants are alleged to have breached'" *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (citing *Swan Media Group, Inc. v. Staub*, 841 F.Supp.2d 804, 807 (S.D.N.Y. 2002) and *Spinelli v. Nat'l Football League*, 96 F.Supp.3d 81, 131 (S.D.N.Y. 2015)).

Here, Plaintiffs have not identified any specific provision they allege will be breached by the release of records. They have not quoted or even paraphrased any language from the settlement agreements. They have not attached a single settlement as an exhibit to any of their numerous filings in this case, providing no context at all for consideration of the parties' intent. They have simply made the broad, conclusory allegation that the settlements incorporated § 50-a—apparently forever and independent of § 50-a remaining on the books, regardless of the fact that "there were no express confidentiality provisions." ECF No. 226 ¶ 74. This merits dismissal. *See Negrete*, 187 F. Supp. 3d at 468 ("'A breach of contract claim will be dismissed. . . as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.' *Highlands Ins. Co. v. PRG Brokerage, Inc*., No. 01 Civ. 2272, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (quoting *Sud, v. Sud*, 211 A.D.2d at 424)").

### 3.     The Unmistakability Doctrine Also Bars Plaintiffs' Contract Claims.

The doctrine of unmistakability similarly underscores why Plaintiffs have failed to

sufficiently allege that the contracts at issue were intended to circumvent the requirements of FOIL.  Under the unmistakability doctrine, "sovereign power . . . will remain intact unless surrendered in unmistakable terms." *Doe v. Pataki*, 481 F.3d 69, 79 (2d Cir. 2007) (quoting *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982)); *see also United States v. Winstar Corp.* 518 U.S. 839 (1996).  Indeed, the Second Circuit has found that the State "cannot be held to have surrendered in [an agreement] its authority to amend its statutes unless the [agreement] clearly indicates that intention." *Doe*, 481 F.3d at 79.  Moreover, where the agreement fails to make such an indication, the "recitation of existing statutory provisions is properly construed to do no more than serve as notice of what the state law then provided." *Id.*, at 79 (vacating the District Court's order enjoining the State from implementing its amendments to a statute).[11]  The same is true for settlement agreements, such as those at issue here.  *See Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999).

## IV.    **CONCLUSION**

For the reasons stated above and in Defendants' and CPR's prior briefing, ECF Nos. 220 and 223, the First Amended Complaint should be dismissed.

---

[11] While *Doe* involved a consent decree rather than a CBA or settlement agreement, its precedent remains an applicable because a consent decrees "reflect a contract between the parties[,]" and the ordinary rules of contract interpretation are applicable to such a decree.  *Id.* at 75 (*citing United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975)).

Dated:  New York, New York
        October 16, 2020

                                    Respectfully submitted,

                                    Orrick, Herrington & Sutcliffe LLP

                                    By: */s/ Alex V. Chachkes*

Baher Azmy                          Alex V. Chachkes
Darius Charney                      Rene Kathawala
Guadalupe V. Aguirre                Christopher J. Cariello
CENTER FOR CONSTITUTIONAL RIGHTS    Margaret Wheeler-Frothingham
666 Broadway                        ORRICK, HERRINGTON & SUTCLIFFE LLP
New York, New York 10012            51 West 52nd Street
Tel: (212) 614-6464                 New York, New York 10019
bazmy@ccrjustice.org                Tel: (212) 506-5100
dcharney@ccrjustice.org             achachkes@orrick.com
laguirre@ccrjustice.org             rkathawala@orrick.com
                                    ccariello@orrick.com
                                    mwheeler-frothingham@orrick.com