UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

Uniformed Fire Officers Association; Uniformed
Firefighters Association of Greater New York; Correction
Officers' Benevolent Association of the City of New York,
Inc.; Police Benevolent Association of the City of New
York, Inc.; Sergeants Benevolent Association; Lieutenants
Benevolent Association; Captains Endowment Association;
and Detectives' Endowment Association,

No. 20-Civ-05441(KPF)

Plaintiffs,

- against -

Bill de Blasio, in his official capacity as Mayor of the City
of New York; the City of New York; Fire Department of
the City of New York; Daniel A. Nigro, in his official
capacity as the Commissioner of the Fire Department of the
City of New York; New York City Department of
Correction; Cynthia Brann, in her official capacity as the
Commissioner of the New York City Department of
Correction; Dermot F. Shea, in his official capacity as the
Commissioner of the New York City Police Department;
the New York City Police Department; Frederick Davie, in
his official capacity as the Chair of the Civilian Complaint
Review Board; and the Civilian Complaint Review Board,

Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS**

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

*Of Counsel:*
Kami Zumbach Barker

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT

      POINT I

            PLAINTIFFS' ARTICLE 75 PETITION HAS BEEN DECIDED AND DOES NOT REQUIRE DISMISSAL ........................................................................... 2

      POINT II

            PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE U.S. AND N.Y. CONSTITUTIONS ................................................................................. 2

           A.   Plaintiffs' stigma-plus claim fails on every element ...................... 2

                a.   No Plus ......................................................................... 3

                b.   No Stigma ..................................................................... 5

                c.   Ample Process .............................................................. 7

           B.   Plaintiffs' equal protection claims have no merit .......................... 8

      POINT III

            PLAINTIFFS ARTICLE 78 MUST BE DISMISSED .................................................................................... 9

      POINT IV

            PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM .......................................................................... 11

CONCLUSION ................................................................................................................. 13

## TABLE OF AUTHORITIES

<u>**Cases**</u> <u>**Pages**</u>

<u>2 Tudor City Place Assoc. v. 2 Tudor City Tenants Corp.</u>,
    924 F.2d 1247 (2d Cir. 1991) ...................................................................... 12, 13

<u>Am. Economy Ins. Co. v. State of N.Y.</u>,
    30 N.Y.3d 136 (2017)........................................................................................ 12

<u>Balentine v. Tremblay</u>,
    554 F. App'x 58 (2d Cir. 2014)........................................................................... 3

<u>Bona v. Barasch</u>,
    2003 U.S. Dist. LEXIS 8760 (S.D.N.Y. May 27, 2003) ................................12-13

<u>Brandt v. Bd. of Coop. Educ. Servs., Third Supervisory Dist.</u>,
    820 F.2d 41 (2d Cir. 1987) ............................................................................. 3, 4

<u>Burgos Vega v. Lantz</u>,
    596 F.3d 77 (2d Cir. 2010) .................................................................................5

<u>Capital Newspapers Div. of Hearst Corp. v. Burns</u>,
    67 N.Y.2d 562 (1986)..........................................................................................9

<u>Matter of Charles A. Field Delivery Serv.</u>,
    66 N.Y.2d 516 (1985)....................................................................................... 10

<u>Chrysler Corp. v. Brown</u>,
    441 U.S. 281 (1979) ............................................................................................9

<u>City of Newark v. Law Dep't of N.Y.</u>,
    305 A.D.2d 28 (1st Dep't 2003)........................................................................ 11

<u>City of Troy Unit of Rensselaer Cnty. Ch. of Civ. Serv. Empls. Ass'n v. City of
Troy</u>,
    36 A.D.2d 145 (3d Dep't 1971)........................................................................ 13

<u>Cortec Indus., Inc. v. Sum Holding L.P.</u>,
    949 F.2d 42 (2d Cir. 1991) ............................................................................... 10

<u>Franza v. Stanford</u>,
    No. 16-CV-7635, 2019 U.S. Dist. LEXIS 18448 (S.D.N.Y. February 5, 2019).................... 10

<u>Gen. Motors Corp. v. Romein</u>,
    503 U.S. 181 (1992) ......................................................................................... 12

<u>Gould v. N.Y. City Police Dep't</u>,
    89 N.Y.2d 267 (1996)..........................................................................................9

**<u>Cases</u>**                                                                                                      **<u>Pages</u>**

<u>Greenberg v. Spitzer</u>,
    155 A.D.3d 27 (2d Dept. 2017) ................................................................ 5

<u>Knox v. N.Y. City Dep't of Educ.</u>,
    85 A.D.3d 439 (1st Dep't 2011) ............................................................... 4

<u>Madison Cnty. Indus. Dev. Agency v. State of N.Y. Auths. Budget Off.</u>,
    33 N.Y.3d 131 (2019) ......................................................................... 9-10

<u>Miller v. DeBuono</u>,
    90 N.Y.2d 783 (1997) ........................................................................ 4, 5

<u>P&G v. Quality King Distribs.</u>,
    974 F. Supp. 190 (E.D.N.Y. 1997) .......................................................... 6

<u>Pani v. Empire Blue Cross Blue Shield</u>,
    152 F.3d 67 (2d Cir. 1998) ................................................................... 10

<u>Partridge v. State of New York</u>,
    173 A.D.3d 86 (3d Dept. 2019) ............................................................ 6-7

<u>Paul v. Davis</u>,
    424 U.S. 693 (1976) ............................................................................. 3

<u>Sadallah v. City of Utica</u>,
    383 F.3d 34 (2d Cir. 2004) ..................................................................... 6

<u>Segal v. City of N.Y.</u>,
    459 F.3d 207 (2d Cir. 2006) ................................................................ 7, 8

<u>Short v. Bd. of Mgrs. of Nassau Cnty. Med. Ctr.</u>,
    57 N.Y.2d 399 (1982) ........................................................................... 9

<u>Skanska USA Bldg. Inc. v. Atl. Yards B2 Owner, LLC</u>,
    31 N.Y.3d 1002 (2018) ....................................................................... 12

<u>Tannerite Sports, LLC v. NBC Universal News Group</u>,
    864 F.3d 236 (2d Cir. 2017) ................................................................... 6

<u>Valmonte v. Bane</u>,
    18 F.3d 992 (2d Cir. 1994) ................................................................. 3, 4-5

<u>Velez v. Levy</u>,
    401 F.3d 75 (2d Cir. 2005) ..................................................................... 3

**Cases**                                                                 **Pages**

Washington Post Co. v. N.Y. State Ins. Dept.,
    61 N.Y.2d 557 (1984)............................................................................................11

Yan Won Liao v. Holder,
    691 F. Supp. 2d 344 (E.D.N.Y. 2010) ...............................................................10

**Statutes**

CBA § 8 ......................................................................................................................2

Fed. R. Civ. P.12(b)(6) ............................................................................................10

Fed. R. Civ. P. 30(b)(6) ...........................................................................................10

FOIL § 50-a ..............................................................................1, 9, 10, 11, 12, 13

N.Y. Pub. Off. L. § 87 ...............................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs challenge the public disclosure of all settlement or plea agreements between their members and the NYPD and all records related to unsubstantiated, unfounded, exonerated, and non-final allegations of misconduct (hereinafter "the disputed records") against their members.  However, beyond their Article 75 claim, which was decided on August 21, 2020, plaintiffs fail to state a claim, and defendants move to dismiss.

First, this Court has fully decided plaintiffs' claims for a preliminary injunction, including in aid of arbitration under Article 75. See August 21, 2020 Order ("Decision") at Dkt. No. 216.  Defendants accept the Court's decision, and now that plaintiffs admit to seeking no further injunctive relief, defendants no longer seek to dismiss any portion of their Article 75 claims.  Thus, plaintiffs' interlocutory appeal should have no impact on the Court's ability to decide defendants' remaining motion to dismiss.

Next, while plaintiffs brand the City's proposed databases as "registries," they utterly fail to state a viable claim under the U.S. or N.Y. Constitutions for due process or equal protection violations.  Plaintiffs have failed to sufficiently plead a deprivation of liberty entitling them to due process protections, they are not part of a protected class and defendants have a rational basis for disclosing plaintiffs' members' disciplinary records as planned.

Finally, defendants' decision to publish the disputed records was not arbitrary or capricious but rationally made to fulfill the legislative intent behind FOIL and the repeal of § 50-a.  Plaintiffs also fail to state a claim for breach of contract.  Accordingly, defendants respectfully request that the Court dismiss the undecided claims in the First Amended Complaint ("Complaint").

## ARGUMENT

### POINT I

### PLAINTIFFS' ARTICLE 75 PETITION HAS BEEN DECIDED AND DOES NOT REQUIRE DISMISSAL

On August 21, 2020, the Court preliminary enjoined defendants from disclosing records related to any "Schedule A" violations where PBA, SBA, and LBA members are still capable of asserting their collectively bargained-for right to request "expungement of the record of the[ir] case," pursuant to Section 8 of their Collective Bargaining Agreements ("CBA"). See Decision, Dkt. No. 216, at pp. 21-23. The Court found that such an injunction was appropriate to aid the parties in arbitration, and defendants have accepted that decision.

Now that plaintiffs admit to seeking no further preliminary injunctive relief, see Plaintiffs' Memorandum in Opposition ("Pls. Memo. in Opp."), Dkt. No. 237, at p. 8 ("the Unions have not made any new motion for preliminary injunctive relief"), their claims under Article 75 have been fully decided, and defendants no longer move to dismiss any portion of it. The Court is, therefore, fully capable of deciding defendants' motion to dismiss, regardless of plaintiffs' interlocutory appeal. And plaintiffs' attempt to re-litigate these issues in their Complaint and Memorandum of Law in Opposition is nothing but a distraction from plaintiffs' ultimate failure to state any other legitimate claim.

### POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE U.S. AND N.Y. CONSTITUTIONS

**A.    Plaintiffs' stigma-plus claim fails on every element**

In a blunderbuss attempt to prevent the City from disclosing disciplinary records plaintiffs assert a "stigma-plus" due process claim on behalf of their entire membership. Try as

2

they might, however, plaintiffs cannot establish a substantive constitutional right to keep the disputed records hidden.

      a.     **No Plus**

Perhaps plaintiffs' clearest failing is from their inability to establish the "plus" element. True to its name, the stigma-plus doctrine reflects the tenet that reputational harm alone is insufficient to establish deprivation of a liberty interest. See Paul v. Davis, 424 U.S. 693, 701 (1976). Consequently, a stigma-plus plaintiff must establish "a specific and adverse action clearly restricting the plaintiff's liberty—for example, the loss of employment, or the termination or alteration of some other legal right or status." Velez v. Levy, 401 F.3d 75, 87−88 (2d Cir. 2005) (internal citations, quotations marks, and parentheticals omitted). Indeed, a concrete injury is required, such as actual loss of property or public employment. Paul, 424 U.S. at 701 (holding that "the mere defamation of an individual, whether by branding him disloyal or otherwise," may be stigmatizing, but is not "sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment").

Plaintiffs cannot show any tangible injury to their members if the disputed records are released to the public. They only allege reputational injury,[1] including downstream consequences, such as damage to future job prospects, which the Second Circuit has found insufficient time and again. See, e.g., Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994); Balentine v. Tremblay, 554 F. App'x 58, 61 (2d Cir. 2014). Plaintiffs cite to Brandt, which only confirms defendants' point. While plaintiffs misleadingly quote from the stigma discussion in that case, the "plus" prong was fulfilled by the plaintiff's discharge from government

---

[1] Indeed, plaintiffs admit that the allegations of Richard Taylor's suspension were only meant to demonstrate stigma. See Pls. Memo. in Opp., Dkt. 237, at 18 FN6 ("The Unions include this story as an example of the stigmatizing effect of publishing Unsubstantiated and Non-Final Allegations... It is not included to show that Taylor has a due process claim against the City or that he was disciplined by the University because of his CCRB record.")

employment.  See Brandt v. Bd. of Coop. Educ. Servs., Third Supervisory Dist., 820 F.2d 41, 43 (2d Cir. 1987).[2]

Further, after plaintiffs attempt to distort the meaning of common words like "remove" and "expunge," see Pls. Memo. in Opp. at pp. 13-14, they  attempt to infer stigma by manipulatively referring to the City's proposed database as a "registry."   However, the City's proposed  database  is,  most  certainly,  *not*  a  registry,  and  their  repeated  use  of  deceptive terminology is nevertheless unpersuasive in demonstrating the "plus" element of their claims. Plaintiffs cite two cases where, in both, the employers had a legal obligation to search certain official state registries before making employment decisions.  In Miller v. DeBuono, the plaintiff was included on a nurse's aid registry after being found guilty of abusing a patient[3] – not for being suspected of it, as plaintiffs contend.  Miller, 90 N.Y.2d 783 (1997); Pl. Mem. in Opp., Dkt. No. 237, at p. 24.  Further, the plaintiff in Miller only satisfied the "plus" prong because she was terminated from her job and could never be hired by another nursing home again.  Id. at 789-790, 792.

Similarly, in Valmonte v. Bane, the plaintiff was included on a child abuse registry after being found guilty of striking her child. [4]  Valmonte, 18 F.3d 992, 995 (2d Cir.

---

[2] Plaintiffs also cite a state court case, Knox v. N.Y. City Dep't of Educ., 85 A.D.3d 439, 440 (1st Dep't 2011), which they characterize as holding under "New York state law" that a significant impairment to the plaintiff's ability to gain employment in the future is enough of a "plus."  Significant is the operative term; the plaintiff in Knox was blacklisted from every job in her chosen profession based on unproven allegations of dishonesty without first receiving any legal process.  The intermediate appellate court concluded that this was more than just a reputational harm, distinguishing it from plaintiffs' claim here. In any event, because this outlier decision, which consists of one paragraph and no legal analysis, purports to construe federal law, but conflicts with federal cases on the scope of the federal due process right, e.g., Valmonte, 18 F.3d at 1001, it has no persuasive value.

[3] The plaintiff in Miller only satisfied the "stigma" prong because she had a finding of patient abuse against her.  Id. at 792.  Plaintiffs here cannot even demonstrate that.

[4] As in Miller, the stigma in Valmonte arose from plaintiff's placement on a registry following a finding that plaintiff had engaged in misconduct.  Valmonte, 18 F.3d 992, 995 (2d Cir. 1994).

4

1994).   Like in <u>Miller</u>, the "plus" was satisfied because childcare employers were legally required to search the registry before hiring: "This is not just the intangible deleterious effect that flows from a bad reputation.   Rather, it is a specific deprivation of her opportunity to seek employment caused by a statutory impediment established by the state."   <u>Id.</u> at 995, 1001.

Here, however, plaintiffs' members have neither been terminated nor risk termination, and plaintiffs' claims to the contrary are particularly speculative.   Moreover, employers are not obligated to search the City's proposed database or refuse to hire an officer contained within, particularly one who only has unsubstantiated, exonerated or unfounded allegations of misconduct.   Thus, plaintiffs fail to meet the "plus" prong of their "stigma-plus" claim, and their constitutional claims must be dismissed.

### b.   No Stigma

Plaintiffs also fail to satisfy the "stigma" prong, which requires "the existence of a reputation-tarnishing statement that is false."   <u>Burgos Vega v. Lantz</u>, 596 F.3d 77, 82 (2d Cir. 2010).   As a threshold point, plaintiffs have no legitimate basis to claim falsity.   They purport to bring this categorical claim on behalf of thousands of individual officers, relating to thousands of distinct incidents.   Yet, they have never claimed to know the facts underlying any of the incidents.   At best, they can only allege that the disputed records are "susceptible to defamatory connotation."[5]   <u>See</u> Complaint at ¶ 58, Dkt. No. 226.

Plaintiffs rely on the fact that many of the investigations or adjudicative proceedings were resolved favorably to their members, which they cite as proof that the entirety

---

[5] Plaintiffs cite to <u>Greenberg v. Spitzer</u> for the proposition that mere accusations are "susceptible of a defamatory connotation."   Pl Mem. in Opp., Dkt. No. 237, at p. 22; <u>Greenberg v. Spitzer</u>, 155 A.D.3d 27, 49 (2d Dept. 2017). However, the court in <u>Greenberg</u> simply found that a concededly false statement was susceptible of a defamatory connotation.   That is not the case here, as defendants have never conceded that the disputed records, or their final determinations, are false.

of the anticipated releases will necessarily include "false and misleading" allegations. This ignores that unsubstantiated complaints are not exonerating and pending charges and specifications are undetermined either way. Indeed, plaintiffs have identified no argument for how unsubstantiated or pending charges could possibly be "capable of being proven false," as required in a "stigma-plus" claim. Decision, Dkt. No. 216, at 27:17 – 28:2 (quoting Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)). Even plaintiffs admit that allegations, ultimately leading to exonerated or unfounded dispositions have not been adjudicated as false. Pls. Mem. in Opp., Dkt. No. 237, at p. 21.

Nevertheless, plaintiffs' focus on favorably resolved allegations and proceedings, in and of itself, reveals the inevitable failure of any stigma claim. Since the disputed records bear the agency's favorable findings, those records put into context any reputation-tarnishing statement that may appear in the underlying complaint. Moreover, the proposed CCRB officer histories do not even reveal any facts about the underlying complaint. Thus, because any information about these allegations is disclosed with context, the records at issue cannot be materially stigmatizing under a stigma-plus standard. Indeed, accurately disclosing the receipt of a formal complaint is not a false statement; nor is releasing the allegations, with appropriate context. See P&G v. Quality King Distribs., 974 F. Supp. 190, 196 (E.D.N.Y. 1997); Tannerite Sports, LLC v. NBC Universal News Group, 864 F.3d 236, 246–47 (2d Cir. 2017).

Finally, plaintiffs argue that by including the disputed records in the proposed databases, defendants will harm their members' reputations through "defamation by implication." Pl. Mem. in Opp., Dkt. No. 237, at p. 17. They argue that this kind of defamation arises when a statement is not literally false but nonetheless calls into question an officer's good name and reputation. Id. at p. 18. Plaintiffs cite to a single New York case, Partridge v. State of

New York, from the Appellate Division, Third Department to support this argument. However, in Partridge, the court established a two-prong test for defamation by implication, which required that: (1) the language of the entire communication reasonably conveys a defamatory inference, and (2) such language affirmatively and contextually suggests that the declarant either intended or endorsed the inference. Partridge, 173 A.D.3d 86, 91-92 (3d Dept. 2019).[6] Plaintiffs fail to meet or even allege the second prong of this test, and their attempts to disguise this claim as one of defamation by implication must, therefore, also fail.

### c.   Ample Process

Because plaintiffs have failed to sufficiently plead a deprivation of liberty through a stigma-plus claim, they are not entitled to pre-deprivation due process protections. Nevertheless, even if plaintiffs could somehow show stigma and plus (which they cannot), their claim would nonetheless fail because their members cannot show a lack of adequate process. "Like any procedural due process claim, a stigma-plus claim enforces a limited but important right: the right to be heard at a meaningful time and in a meaningful manner." Segal v. City of N.Y., 459 F.3d 207, 213 (2d Cir. 2006) (cleaned up). Thus, "the availability of adequate process defeats [the] claim." Id.

Instead of arguing that the disputed records were generated without adequate process, plaintiffs argue that defendants must provide additional notice and opportunity to be heard before their records are disclosed, including the requirement to somehow "cleanse falsity embedded in the allegations themselves," see Complaint, Dkt. No. 226, at ¶ 120. Accepting plaintiffs' argument as true and taking it to its logical conclusion, governments would be forced into a stand-still, vitiating FOIL (not to mention, FOIA) and triggering a mini-trial with each

---

[6] The Court of Appeals has not created a test for defamation by implication.

release of information.  In any event, their members were given process "at a meaningful time and in a meaningful manner," when the records were created.  Segal, 459 F.3d at 213.  And plaintiffs identify no authority that would require the City to provide anything more.

**B.    Plaintiffs' equal protection claims have no merit**

Animating their equal protection claims, plaintiffs assert that NYPD and CCRB are treating police officers differently than how other City agencies treat their employees, including plaintiffs' members in FDNY and DOC.  See ¶ 69 of Complaint, Dkt. No. 226. Plaintiffs conclude, therefore, that all of their members' disciplinary records at issue must be shrouded in secrecy forever.  These claims are utterly baseless and must be dismissed.

Exercising reasoned decision-making, NYPD and CCRB began adopting post-repeal disclosure policies based on their independent public missions and assessments of the records in their possession.  Plaintiffs concede that police officers are decidedly different from other public employees.  See Decision, Dkt. No. 216, at 36:2-8.  They carry weapons, are permitted to use force (including lethal force) against civilians, have the power to arrest or detain people, and otherwise wield extraordinary authority over members of the public.  The intense public interest in police disciplinary records, over, for example, firefighters' records, only confirms this point.[7]

Nor can plaintiffs credibly dispute that defendants play distinct roles in their shared mission to enhance public safety and build trust between police officers and the communities they serve.  NYPD's planned disclosures aim to demonstrate that the agency takes credible allegations of misconduct seriously, while CCRB's disclosure is calculated to build faith

---

[7] Indeed, plaintiffs have focused their entire litigation on their members in the NYPD, advocating entirely for police officers and paying little, if any, attention to firefighters and correction officers.  Given this, to now claim that the City's "different treatment" of police officers from firefighters and correction officers somehow rises to "arbitrary and irrational line-drawing," see Pls. Memo. in Opp., Dkt. 237, at p. 35, is illogical, to say the least.

in the handling of civilian complaints.  In the end, plaintiffs cannot demonstrate that defendants lacked a rational basis for deciding how to release disciplinary records previously protected by § 50-a, and their claims must, therefore, be dismissed.

### POINT III

### PLAINTIFFS ARTICLE 78 MUST BE DISMISSED

Plaintiffs also have no plausible claim under CPLR Article 78.  Indeed, their attempts to "enforce" FOIL exemptions, N.Y. Pub. Off. L. § 87, and prevent defendants from disclosing the disputed records, either in response to FOIL requests or proactively through an online database, fail as a matter of law.  FOIL is a pro-disclosure statute whose exemptions are permissive, not mandatory.  Gould v. N.Y. City Police Dep't, 89 N.Y.2d 267, 274–75 (1996).  Thus, an agency is not required to withhold records falling within statutory exemptions.  Capital Newspapers Div. of Hearst Corp. v. Burns, 67 N.Y.2d 562, 567 (1986) ("it is within the agency's discretion to disclose such records, with or without identifying details, if it so chooses."); Short v. Bd. of Mgrs. of Nassau Cnty. Med. Ctr., 57 N.Y.2d 399, 404 (1982).

Because FOIL exemptions are discretionary, they do not create a third-party right to block government disclosure.  Cf. Chrysler Corp. v. Brown, 441 U.S. 281, 290−94 (1979) (reaching the same conclusion as to the federal FOIA).  Unsurprisingly, plaintiffs do not cite a single New York case that forces an agency to invoke a discretionary FOIL exemption at a third party's behest, and for good reason.  Indeed, permitting such a claim to survive would be antithetical to FOIL and thwart the legislative intent behind § 50-a's repeal.

Nevertheless, while plaintiffs disagree with defendants' FOIL decisions, they cannot credibly argue that those choices were made irrationally, as required by such a claim.  See Madison Cnty. Indus. Dev. Agency v. State of N.Y. Auths. Budget Off., 33 N.Y.3d 131, 135

(2019).  Plaintiffs' suggestion that recent CCRB disclosures, such as the FOIL response to NYCLU, evince a lack of "particularized review" is entirely without merit.  See Complaint, Dkt. No. 226, at ¶¶ 77-78, 148.  CCRB testified, through a Fed. R. Civ. P. 30(b)(6) witness,[8] that there was no need for a line-by-line review of officer history datasets because the disclosed datasets contained only standardized information: none of the spreadsheet's fields include any personally identifying information ("PII"), narrative text, or details about underlying complaints, and CCRB knew the content of the drop-down fields.  See Barker Decl., Dkt. No. 135, at ¶¶ 62-67 and 69.

Plaintiffs' argument that the City is suddenly reversing its past FOIL practices is similarly unavailing and squarely refuted by the record.  Plaintiffs point to two FOIL requests from 2014 and 2015 where CCRB (but not NYPD) invoked the privacy exemption in addition to § 50-a as to matters classified unsubstantiated.  This is not sufficient to establish a past practice. And in any event, CCRB has not invoked the privacy exemption in response to officer history requests, much less for reasons of case disposition, for at least the past three years.  See Jamieson Decl., Dkt. No. 135-22, at ¶¶ 13, 17.  Thus, plaintiffs fail to demonstrate a recent shift in policy.

Even if a shift had occurred, it would not necessarily avail the plaintiffs of Article 78 relief.  At most, a shift would require defendants to explain.  Matter of Charles A. Field Delivery Serv., 66 N.Y.2d 516, 520 (1985) (as a matter of New York administrative law,

---

[8] The Court may consider the record when deciding the instant motion to dismiss on plaintiffs' Article 78 petition. See Franza v. Stanford, No. 16-CV-7635, 2019 U.S. Dist. LEXIS 18448, *7, n.3 (S.D.N.Y. February 5, 2019) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (finding that the district court could consider documents, which the plaintiffs had notice of and were "integral" to their claim, in ruling on a motion to dismiss even though those documents were not incorporated into the complaint by reference); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)..."); Yan Won Liao v. Holder, 691 F. Supp. 2d 344, 352 (E.D.N.Y. 2010) (taking judicial notice of "public documents filed in connection with" proceedings in a different court on a motion to dismiss was proper)).  Since plaintiffs have incorporated the transcripts of witness testimony by reference in their First Amended Complaint, they concede that such transcripts are integral to their claim.

agencies can change course so long as they provide an explanation).  Section 50-a's repeal and

the surrounding historic public engagement provides all the explanation needed.

**POINT IV**

**PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM**

Plaintiffs' breach of contract theory is more bizarre than viable.  They contend

that the City cannot disclose settlements ("guilty-plea agreements") that were entered into before

§ 50-a's repeal because union members and employers have tacitly incorporated § 50-a—

wholesale and as a matter of law—into every agreement since 1976.  See Complaint, Dkt. No.

226, at ¶¶ 2 and 66.  However, plaintiffs have presented no evidence that any of the agreements

mention or even allude to the statute.  Instead, they make the incredible and false claim that they

need not identify the contract or even contractual language that gave rise to their claim.  Pls.

Memo. in Opp., Dkt. No. 237, at 38.  Indeed, plaintiffs admit that "the only language that matters

to this claim is in former § 50-a."  Id.  This, alone, proves that nothing in these agreements could

lead an officer to believe that his or her settlement would be entitled to § 50-a confidentiality for

the rest of time.[9]

That § 50-a was in the background when plaintiffs' members pleaded guilty to

disciplinary charges does not somehow vest those members with a right to have their agreements

treated confidentially in perpetuity after § 50-a's repeal.  Indeed, the New York Court of Appeals

has rejected exactly this argument twice in last few years: "The mere fact that an agreement [is]

---

[9] To be sure, NYPD could not have made an enforceable promise to plaintiffs' members to keep their plea agreements confidential regardless of changes to § 50-a.  This is because the City is not empowered "to immunize a document from FOIL disclosure by designating it as confidential, either unilaterally or by agreement with a private party."  City of Newark v. Law Dep't of N.Y., 305 A.D.2d 28, 32–33 (1st Dep't 2003).  By making the agreements subject to FOIL, the repeal of § 50-a would have abrogated any such promise.  See Washington Post Co. v. N.Y. State Ins. Dept., 61 N.Y.2d 557, 567 (1984) (promise to keep documents confidential could not override legislation making them public); see also LaRocca, 220 A.D.2d at 427.

governed by the law of a particular jurisdiction does not transform all statutory requirements that may otherwise be imposed under that body of law into contractual obligations." Skanska USA Bldg. Inc. v. Atl. Yards B2 Owner, LLC, 31 N.Y.3d 1002, 1007 (2018) (declining to read into an agreement statutory rights that the parties "neglected to specifically include"); Am. Economy Ins. Co. v. State of N.Y., 30 N.Y.3d 136, 154 (2017) (same).

Under New York law, "state laws are implied into private contracts … only when those laws affect the validity, construction, and enforcement of contracts." Am. Economy, 30 N.Y.3d at 154 (quoting Gen. Motors Corp. v. Romein, 503 U.S. 181, 190 (1992) (discussing)). To hold otherwise – and read into contacts all statutes in effect at the time of execution – "would severely limit the ability of … legislatures to amend their regulatory legislation," because every statutory change would be subject to a Contract Clause challenge. Id. Therefore, because § 50-a did not address the validity, construction, or enforcement of guilty-plea agreements, it was not impliedly incorporated, which is precisely what plaintiffs' cases provide.

In fact, none of the cases plaintiffs rely upon support their novel legal theory: that the mere existence of § 50-a constituted a tacit promise by the City to never disclose a guilty-plea agreement. 2 Tudor simply rejected a regulatory taking claim on the ground that the statute permitting that taking had been in effect when the plaintiff executed its lease. 2 Tudor City Place Assoc. v. 2 Tudor City Tenants Corp., 924 F.2d 1247, 1254 (2d Cir. 1991). Bona declined to invalidate employee benefit fund agreements, even though they did not expressly include arguably mandatory provisions, since contracts are presumed to be lawful absent a clear indication to the contrary. Bona v. Barasch, 2003 U.S. Dist. LEXIS 8760 (S.D.N.Y. May 27,

2003).  Neither 2 Tudor nor Bona remotely suggest that contracting parties implicitly promise to accord a life-after-death to every statute repealed after the time of contracting.[10]

The bottom line is that the City could not and did not promise to keep guilty-plea agreements confidential under § 50-a regardless of any future repeal.  None of plaintiffs' cases suggests otherwise.  So, their breach of contract claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' First Amended Complaint, with the exception of plaintiffs' Article 75, and grant such further relief as the Court deems just and proper.

Dated:      New York, New York
            November 20, 2020

JAMES E. JOHNSON
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
646-960-1103
kbarker@law.nyc.gov


By:      _____/s/_____
         Kami Z. Barker
         Assistant Corporation Counsel

_____

[10] Plaintiffs also cite City of Troy from the Appellate Division, Third Department, which further demonstrates why plaintiffs' claim fails.  City of Troy stands for the proposition that the government cannot contract around statutory obligations.  City of Troy Unit of Rensselaer Cnty. Ch. of Civ. Serv. Empls. Ass'n v. City of Troy, 36 A.D.2d 145, 147 (3d Dep't 1971).  In City of Troy, a local ordinance imposed a 35-hour minimum work week on city employees, five hours more than their contract implicitly required. The Court held that the contract did not circumvent the ordinance, and it would control until repealed.  This is precisely the situation with § 50-a.