UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Uniformed Fire Officers Association, et al.,

    Petitioners/Plaintiffs,

   -against-

Bill de Blasio, in his official capacity as Mayor of the City of New York, et al.,

    Respondents/Defendants

   -against-

Communities United for Police Reform,

    Intervenor-
    Respondent/Defendant.

Case No. 1:20-cv-05441-KPF

---

## MEMORANDUM OF LAW OF INTERVENOR-DEFENDANT COMMUNITIES UNITED FOR POLICE REFORM IN REPLY TO ITS MOTION TO DISMISS

Baher Azmy
Darius Charney
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, New York 10012
Tel: (212) 614-6464

Alex V. Chachkes
Rene Kathawala
Christopher J. Cariello
Margaret Wheeler-Frothingham
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Tel: (212) 506-5100
Fax: (212) 506-5151

*Attorneys for Intervenor-Respondent/Defendant*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................... 1

II.   PLAINTIFFS HAVE NOT ALLEGED VIOLATION OF ANY RIGHT
      GRANTED BY THE US OR NEW YORK CONSTITUTION........................................ 1

      A.    Plaintiffs Cannot Meet the "Stigma" Prong of a Stigma Plus Claim.................... 1

      B.    Plaintiffs Have Alleged No Deprivation of a Liberty Interest. ............................ 4

      C.    The Immunities Granted by Section 74 Are Applicable to the Claims
            Brought in this Action.................................................................... 5

III.  THE UNIONS' CONTRACT CLAIMS ARE RIPE FOR DISMISSAL. ........................ 6

      A.    Neither the CBAs Nor the Settlement Agreements Can Circumvent FOIL. ......... 6

IV.   THE CITY'S INTENDED RELEASE IS NEITHER ARBITRARY AND
      CAPRICIOUS NOR ERRONEOUS ........................................................ 8

      A.    The Unions Fundamentally Misunderstand FOIL. ................................... 8

      B.    The City's Decision to Not Apply Not Apply FOIL's Privacy Exemption
            was not Arbitrary and Capricious or Erroneous.  ................................... 9

      C.    The Unions' "Longstanding Policy" Arguments Lack Merit. ........................... 10

V.    LEAVE TO AMEND SHOULD BE DENIED ............................................... 10

VI.   CONCLUSION................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Pataki,*
    278 F.3d 93 (2d Cir. 2002)...................................................................................4, 5

*Adelson v. Harris,*
    973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017)...........................3, 4

*Baden v. Koch,*
    No. 79 Civ. 4296-CSH, 1984 WL 664 (S.D.N.Y. July 25, 1984) ...........................2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. (2007)....................................................................................................1

*Bertuglia v. City of New York,*
    133 F. Supp. 3d 608 (S.D.N.Y. 2015), *aff'd sub nom.*, *Bertuglia v. Schaffler,*
    672 F. App'x 96 (2d Cir. 2016) ............................................................................6

*Boss v. Kelly,*
    No. 07 CIV. 2113(SHS), 2007 WL 2412261 (S.D.N.Y. Aug. 23, 2007), aff'd,
    306 F. App'x 649 (2d Cir. 2009) ..........................................................................6

*Matter of Capital Newspapers Div. of Hearst Corp. v. Burns,*
    67 N.Y.2d 562 (1986) ........................................................................................6, 9

*Conversions for Real Estate, LLC v. Zoning Bd. of Appeals of Inc. Vill. of Roslyn,*
    31 A.D.3d 635 (2d Dept 2006) ............................................................................10

*DeMichele v. Greenburgh Cent. Sch. Dist. No. 7,*
    167 F.3d 784 (2d Cir. 1999)..................................................................................9

*Doe v. Pataki,*
    481 F.3d 69 (2d Cir. 2007)....................................................................................7

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007)....................................................................................1

*Esposito v. Metro-N. Commuter R. R. Co.,*
    856 F. Supp. 799 (S.D.N.Y. 1994) .......................................................................2

*F.T.C. v. Actavis, Inc.,*
    570 U.S. 136 (2013)..............................................................................................10

*Federico v. Bd. of Educ. of Pub. Sch. of Tarrytowns*,
   955 F. Supp. 194 (S.D.N.Y. 1997) .......................................................................4, 5

*Hoepker v. Kruger*,
   200 F. Supp. 2d 340 (S.D.N.Y. 2002)......................................................................3

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988)...................................................................................................3

*Inc. Vill. of Ocean Beach v. Dep't of Health Servs., Cty. Of Suffolk*,
   277 A.D.2d 453 (2d Dept 2000) .............................................................................10

*LaForgia v. Davis*,
   No. 01CIV7599(GBD)(LMS), 2004 WL 2884524 (S.D.N.Y. Dec. 14, 2004).........2

*Lee TT. v. Dowling*,
   87 N.Y.2d 699 ( 1996) .............................................................................................5

*McCrory v. Vill. of Mamaroneck*,
   34 Misc. 3d 603 (Sup. Ct, Westchester County 2011)............................................7

*Miller v. DeBuono*,
   90 N.Y.2d 783 ( 1997) .............................................................................................5

*Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York*,
   31 Misc. 3d 296 (Sup. Ct, NY County 2011), *aff'd*, 87 A.D.3d 506 (1st Dept
   2011) ...............................................................................................................6, 8, 9

*New York Times Co. v. U.S. Dep't of Treasury*,
   No. 09 CIV. 10437(FM), 2010 WL 4159601 (S.D.N.Y. Oct. 13, 2010)..................9

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
   720 F.3d 490 (2d Cir. 2013).....................................................................................4

*Patterson v. City of Utica*,
   370 F.3d 322 (2d Cir. 2004).....................................................................................4

*Segal v. City of New York*,
   459 F.3d 207 (2d Cir. 2006).....................................................................................4

*Sharpe v. City of New York*,
   No. 11 CIV. 5494 BMC, 2013 WL 2356063 (E.D.N.Y. May 29, 2013), aff'd,
   560 F. App'x 78 (2d Cir. 2014) ...............................................................................6

*Singh v. Schikan*,
   No. 14 CIV. 5450 NRB, 2015 WL 4111344 (S.D.N.Y. June 25, 2015) .................10

*In re Tamoxifen Citrate Antitrust Litig.*,
    466 F.3d 187 (2d Cir. 2006)............................................................................................10

*Unif. Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. Cuevas*,
    276 A.D.2d 184 (3d Dept 2000) ...................................................................................10

*Valmonte v. Bane*,
    18 F.3d 992 (2d Cir. 1994)..............................................................................................5

*Warren v. City of Junction
    City*, 207 F. Supp. 2d 1216 (D. Kan. 2002) ...................................................................2

*Wiese v. Kelley*,
    No. 08-CV-6348 (CS), 2009 WL 2902513 (S.D.N.Y. Sept. 10, 2009) ................................2, 3

*In re WorldCom, Inc. Securities Litigation*,
    303 F.Supp. 2d 385 (S.D.N.Y. 2004)............................................................................10

**Statutes**

Freedom of Information Law................................................................................... *passim*

N.Y. Civ. Rights Law § 50-a ..................................................................................7, 10

N.Y. Civ. Rights Law § 74 ..........................................................................................5

N.Y. Civil Practice Laws and Rule § 7803(3) .............................................................10

N.Y. Pub. Off. Law § 87...............................................................................................8

N.Y. Pub. Off. Law § 89(2-b)(a)-(d) ............................................................................9

**Other Authorities**

N.Y. Senate, Floor Debate, https://bit.ly/2FmWHkN (June 9, 2020)............................9

## I.     PRELIMINARY STATEMENT

In defense of their pleadings, Plaintiffs argue that an array of harms may arise if the records at issue in this case are released.  All the harms they posit are hypothetical—e.g., if officers seek new employment, they might be denied that employment due to the disclosure of their disciplinary records.  But Plaintiffs do not allege that what is being disclosed is false.  Indeed, these are the true records of what allegations were made and how these allegations were investigated and resolved.  And even if among the thousands of records being disclosed there are some false allegations, the harm Plaintiffs allege is precisely the sort that New York courts have consistently found unactionable.  Because as pled, any asserted harm is merely conceivable, and not plausible, it must be dismissed.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S., 544, 570 (2007)).

## II.    PLAINTIFFS HAVE NOT ALLEGED VIOLATION OF ANY RIGHT GRANTED BY THE US OR NEW YORK CONSTITUTION

Plaintiffs' stigma plus claims fail on both prongs.[1]

### A.      Plaintiffs Cannot Meet the "Stigma" Prong of a Stigma Plus Claim.

The Unions have not alleged that the records at issue are anything but a truthful reporting of what allegations were made and how those allegations were investigated and resolved.  Crucially, and as this Court has already noted, Plaintiffs have failed to allege that the records at issue are, themselves, false.  Aug. 21, 2020 Order at 28-29.  At most, they allege that some records may pertain to allegations which are untrue, not yet proven, or have been proven false.  The Unions' opposition papers largely fail to address this.

Instead, Plaintiffs seek to change the well-established legal standards here.  They concede

---

[1] Plaintiffs also purport to allege violations of officers' Equal Protection rights.  These allegations are addressed in the City's Motion.  ECF No. 233 at 16-19.

that the "stigma" prong is analyzed under the same legal framework as a New York state law defamation claim.  Opp. at 17.  They argue, however, that the intent prong of the analysis for defamation cases involving public figures cannot be applied because "the actual malice standard derives from the First Amendment, not New York law."  *Id.* at 23.  In support, Plaintiffs cite the dicta from two cases—an eighteen-year-old case from Kansas, and a nearly forty-year-old case from this court.[2]  The Court need not address this constitutional question because there are alternate grounds on which to dismiss.  *See, e.g., Esposito v. Metro-N. Commuter R. R. Co.*, 856 F. Supp. 799, 808 (S.D.N.Y. 1994) (declining to address whether a statement was constitutionally protected where there were alternate grounds for dismissal); *LaForgia v. Davis*, No. 01CIV7599(GBD)(LMS), 2004 WL 2884524, at *8 n. 1 (S.D.N.Y. Dec. 14, 2004) (same).

Plaintiffs' claims fail in any case because they do not allege that the records at issue are false or inaccurate reports of the citizens' allegations and the resulting investigations.  Opp. at 12 (citing *Baden v. Koch*, No. 79 Civ. 4296-CSH, 1984 WL 664, at *3 (S.D.N.Y. July 25, 1984)).  Plaintiffs generally hypothesize that *some* of the underlying allegations at issue in these thousands upon thousands of records *may* be false.  These very sorts of reports—accurate records of allegations, pending investigations, and adjudications—fall squarely within the categories of records recognized in a long line of cases declining to find stigma plus.  *See Wiese v. Kelley*, No. 08-CV-6348 (CS), 2009 WL 2902513, at *5 (S.D.N.Y. Sept. 10, 2009) (collecting authority that "true public statements that a party is under investigation" and enumerating as examples of such statement those that "leak of true stigmatizing grand jury information to media," a "true

---

[2] Opp. at 12 citing *Warren v. City of Junction* City, 207 F. Supp. 2d 1216 (D. Kan. 2002) and *Baden v. Koch*, 1984 WL 664.  In both *Warren* and *Baden*, however, the malice discussion is nothing more than dicta as the jury award was ultimately reduced for failure by the plaintiffs to establish that the false statements caused the claimed injury.  *See Warren*, 207 F. Supp. 2d at 1224; *Baden*, 1984 WL 664, at * 61-62.

statement that plaintiff 'was under investigation,'" and a "notification by defendant that Department of Investigation 'was conducting a criminal investigation of plaintiff . . . is merely a statement of fact and cannot give rise to a liberty-interest due process violation.'").

Rather than addressing this, the Unions hypothesize the possibility of "guilt by accusation." But although the reporting of allegations may lead some to make negative inferences about an officer, that is not the deprivation of a liberty interest. *Id.* at *4 ("negative inferences that might be drawn from plaintiff's suspension 'not enough to make out a stigma-plus claim' and that 'Even assuming that [Defendant's] alleged statement[s] regarding [Plaintiff] . . . [were] stigmatizing and may foreclose future employment opportunities, [P]laintiff's liberty interest is not implicated where the defamatory statement is substantially true.'").

Were the Court to address the constitutional issue, the First Amendment standard for defamation cases should indeed apply. This would be particularly appropriate here because Plaintiffs cite, as exemplar of the "harm" they seek to prevent through this action, speech of the very kind most vehemently protected by the First Amendment—e.g., a list of "NYPD's 10 Most Unwanted" officers, mocking by caricature the ten officers with the highest number of CCRB complaints lodged against them. ECF No. 226, ¶ 64. The law is clear that this sort of caricature is a constitutionally protected form of speech. *See, e.g.*, *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 352 (S.D.N.Y. 2002); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988) (even an "outrageous" caricature is afforded First Amendment protection and does not give rise to libel claim). There is nothing in the article that Plaintiffs identify as untrue. Indeed, Plaintiffs only seem to take issue with the article's suggestion that the officers identified are the "worst," but that is "loose, figurative, or hyperbolic language . . . protected by the First Amendment." *Adelson v. Harris*, 973 F. Supp. 2d 467, 487–88 (S.D.N.Y. 2013) (citation and quotation marks

omitted), *aff'd*, 876 F.3d 413 (2d Cir. 2017); *see ONY, Inc. v. Cornerstone Therapeutics, Inc.*,

720 F.3d 490, 496 (2d Cir. 2013).  Plaintiffs attack the very speech the First Amendment

protects.

### B.        Plaintiffs Have Alleged No Deprivation of a Liberty Interest.

Nothing in Plaintiffs' opposition remedies the failure to allege a "plus"—i.e. "the

deprivation of some 'tangible interest' or property right."  *Segal v. City of New York*, 459 F.3d

207, 212 (2d Cir. 2006); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (stigma

plus plaintiff must show both loss of reputations *and* deprivation of tangible interest, such as

government employment).  Plaintiffs have not alleged that a single officer lost his or her job due

to the release of disciplinary records.  Nor do they allege any instance in which an officer has

sought new employment and been denied such opportunities because of their misconduct

records.  Instead, they allege that officers *might* lose some possible future job opportunities.

That is not the "plus" the law requires.[3]  There must be a causal connection between the alleged

stigma and claimed plus.  *See Federico v. Bd. of Educ. of Pub. Sch. of Tarrytowns*, 955 F. Supp.

194, 200 (S.D.N.Y. 1997) ("plaintiff must demonstrate not only that he has had difficulty finding

employment but that such difficulty resulted from the stigma placed upon him by defendants.);

*Abramson v. Pataki*, 278 F.3d 93, 103 (2d Cir. 2002) ("The appellants also fail to show that the

stigma attributable to the statements was coupled with the loss of governmental employment or

---

[3] Plaintiffs have failed to address CPR's ripeness argument (CPR Br. at 7, n.5).  Instead, they point to the fact that a student group called for the dismissal of a single former officer, Professor Richard Taylor, from his university position.  Opp. at 18-19.  Put aside that this is a fact-specific outlier that does not represent the harm that Plaintiffs allege would occur to their thousands of members, or that there is no harm caused by these records (Professor Taylor remains employed, and even were he dismissed, the calls for his dismissal originated from his racially charged classroom remarks, not his misconduct records).  More fundamentally—whether they are right or wrong—the students are merely turning truth into action.

deprivation of a legal right or status, such as a loss of job opportunities.").

The Unions rely on *Miller v. DeBuono*, 90 N.Y.2d 783 ( 1997), *Valmonte v. Bane*, 18

F.3d 992 (2d Cir. 1994), and *Lee TT. v. Dowling*, 87 N.Y.2d 699 ( 1996).  This reliance is

misplaced.  The "plus" in *Miller* stemmed from a state regulation that prohibited nursing homes

from employing individuals who appeared in a registry of nurses suspected of patient abuse—

making the negative consequence concrete and certain.  *Miller*, 90 N.Y.2d 789.  Likewise, in

both *Valmonte* and *Lee*, the harm was a result of a statute *requiring* a prospective employer to

consult the registry of child abuse reports before hiring a candidate.  *Valmonte*, 18 F.3d at 1001;

*Lee*, 87 N.Y.2d at 709.  Here, however, there is no statutory requirement that future employers

review misconduct or disciplinary records, nor is there any statutory prohibition on hiring former

officers who have a misconduct or disciplinary record.  The Plaintiffs fail to allege "plus."  *See*

*Federico*, 955 F. Supp. at 200 (where plaintiff "simply asserts that the allegedly defamatory

statements 'have impaired [his] ability to pursue [his] career; since [his] termination [he] has

been unable to secure a teaching position[]' . . .  such conclusory allegations are not enough to

raise genuine issues of fact.").

### C.      The Immunities Granted by Section 74 Are Applicable to the Claims Brought in this Action.

Plaintiffs claim that a state law defense to libel does not apply to stigma plus at all,

arguing that the title of the statute somehow limits the statute's application here.  Opp. at 30-32.

Plaintiffs, however, ignore the actual text.  The statute itself broadly provides "a civil action

cannot be maintained," without limitation.  N.Y. Civ. Rights Law § 74 (McKinney).  Moreover,

the first prong of the stigma plus inquiry is analyzed as a defamation or libel claim, consonant

with the title of the statute.  Indeed, elsewhere Plaintiffs themselves concede that there is case

law recognizing Section 74 as a defense to a stigma plus claim.  Opp. at 31, n. 12 (citing

*Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 648-49 (S.D.N.Y. 2015), *aff'd sub nom.*, *Bertuglia v. Schaffler*, 672 F. App'x 96 (2d Cir. 2016)).  And contrary to the Unions' claims, courts consistently apply state privileges and defenses to a federal stigma plus claims.  *See, e.g.*, *Pisani v. Westchester Cty. Health Care Corp.*, 424 F. Supp. 2d 710, 718 (S.D.N.Y. 2006) ("[e]stablishing defamation in the § 1983 context is no different than under New York State law"); *Boss v. Kelly*, No. 07 CIV. 2113(SHS), 2007 WL 2412261, at *6 (S.D.N.Y. Aug. 23, 2007), aff'd, 306 F. App'x 649 (2d Cir. 2009) (noting that "[t]he New York Court of Appeals has clearly held that statements made in the course of legal proceedings are absolutely privileged" and that federal due process claims failed for the same reasons the plaintiff's prior state court case failed); *Sharpe v. City of New York*, No. 11 CIV. 5494 BMC, 2013 WL 2356063, at *7 (E.D.N.Y. May 29, 2013), aff'd, 560 F. App'x 78 (2d Cir. 2014) (statements absolutely privileged under New York common law and could not support a stigma plus claim).

## III.   THE UNIONS' CONTRACT CLAIMS ARE RIPE FOR DISMISSAL

### A.   Neither the CBAs Nor the Settlement Agreements Can Circumvent FOIL.

FOIL grants a broad right of public access to government records.  As CPR has already shown, FOIL's exemptions are both permissive and narrowly construed.  CPR Br. at 16; *Matter of Capital Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562, 566 (1986).  Plaintiffs, however, seek to create their own personal exemption by pointing to their CBAs and the Settlement Agreements.  But the public did not sign those contracts and, as such, they have no bearing on the public's FOIL rights.  *See Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of New York*, 31 Misc. 3d 296, 303 (Sup. Ct, NY County 2011), *aff'd*, 87 A.D.3d 506 (1st Dept 2011) (The "argument that the DOE assured teachers that the TDRs were confidential means that they cannot be disclosed under FOIL is without merit. . . . 'as a matter of public policy, the Board of Education cannot bargain away the public's right to access to public records.'"); *see*

*also McCrory v. Vill. of Mamaroneck*, 34 Misc. 3d 603, 625–26  (Sup. Ct, Westchester County

2011) (rejecting notion that a confidentiality order in a litigation is a basis to withhold FOIL

disclosures, which "would contravene the clear legislative declaration of public policy set forth

in Public Officers Law 84").

As these contracts did not include the public, there is no reason to address the Unions'

argument that the City Defendants intended the contracts at issue to bury misconduct and

disciplinary records regardless of any change in the law.  Even so, Plaintiffs are wrong.     Under

the unmistakability doctrine, the State "cannot be held to have surrendered in [an agreement] its

authority to amend its statutes unless the [agreement] clearly indicates that intention." *Doe v.*

*Pataki*, 481 F.3d 69, 79 (2d Cir. 2007).  Plaintiffs claim to not understand the applicability of that

doctrine to this case.  Opp. at 40.  But it is simple:  The agreements at issue do not reflect the

City Defendants' unmistakable intent to surrender their authority to amend § 50-a—certainly,

Plaintiffs cannot point to it.  Had the City intended to be forever bound by § 50-a regardless of

future repeal, they could have included clear language to that effect.

Finally, given the fact that the public did not join in the CBA, little needs to be said

regarding how Plaintiffs mischaracterize Section 7(c) therein.  Simply, that section is of very

limited applicability, and its intended benefits are not abrogated by disclosure. [4]

---

[4] Plaintiffs argue that Section 7(c) somehow requires the complete erasure of the subject records
from any source.  However, Section 7(c) of the CBA states, "[t]he Department will, upon written
request to the Chief of Personnel by the individual employee, *remove from the Personal Folder*
investigative reports which, upon completion of the investigation, are classified 'exonerated'
and/or 'unfounded.'"  ECF No. 10-2 Ex. 2 at 16.  (emphasis added).  7(c) is narrow in focus and
its meaning is clear—it pertains only to the copies of records that exist in the "Personal Folder."
Further, as this Court has already noted, regardless of public disclosure of the records at issue,
officers will continue to be able to exercise their Section 7(c) rights.  Aug. 21, 2020 Order at
20:5-13.

IV.     **THE CITY'S INTENDED RELEASE IS NEITHER ARBITRARY AND CAPRICIOUS NOR ERRONEOUS**

    A.     **The Unions Fundamentally Misunderstand FOIL.**

Under Public Officer's Law § 87, "[e]ach agency *shall*, in accordance with its published rules, make available for public inspection and copying *all records*." N.Y. Pub. Off. Law § 87(2) (McKinney) (emphasis added). Only when an exemption applies *may* the agency choose to deny public access to records fitting within the exemption. *Id.* The Unions want to flip this standard. That is, they wrongly argue that the agency *must* withhold a record whenever an exemption may apply, and that it is arbitrary and capricious and erroneous to do otherwise. But FOIL exemptions are permissive. The City was well within its agency decision-making power to release the records. Plaintiffs have not shown otherwise. Moreover, Plaintiffs have not responded to the law that holds that the City's actions were not actionable. *See, e.g.*, *Mulgrew*, 31 Misc. 3d at 300, (concluding that the Department of Education's "determination that teachers' names were not subject to any of the [FOIL] exemptions was not arbitrary and capricious").

Plaintiffs argue at length that the City's discretion is not "boundless." Opp. at 43. Whatever that means, the City did not cross this undefined "bound." The City did not exceed its bounds, because its disclosure under FOIL was not discretionary.

The Unions object to the disclosure of the 81,000 records without individualized review. But even if such review was required (it was not), the Unions ignore that the CCRB both knew how the records were coded and, with that information, could easily determine that none were exempted from FOIL. Because the CCRB already knew that each record contained similar information and could uniformly and consistently analyze those records for FOIL exemptions, it was hardly arbitrary and capricious or erroneous to bypass line-by-line review.

**B.     The City's Decision to Not Apply Not Apply FOIL's Privacy Exemption was not Arbitrary and Capricious or Erroneous.**

Plaintiffs attempt to invoke some sort of privacy interest.  Opp. at 45.  This fails.

First, in the context of government employees, "[c]ourts have repeatedly held that release of job-performance related information, even negative information such as that involving misconduct, does not constitute an unwarranted invasion of privacy." *Mulgrew*, 31 Misc. 3d at 302.  The Second Circuit has similarly recognized that "New York courts have found that the disposition of misconduct charges does not constitute part of an employee's 'employment history' as that phrase is used in New York's FOIL." *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 792 (2d Cir. 1999).  Second, even were the records at issue covered by a FOIL exemption (they are not), it would still be within the agency's discretion to release those records.  *Burns*, 67 N.Y.2d at 566.  Third, the alleged harm of disclosing these records is speculative at best.  In analogous contexts, courts have rejected such claims.  *See, e.g. New York Times Co. v. U.S. Dep't of Treasury*, No. 09 CIV. 10437(FM), 2010 WL 4159601, at \*5 (S.D.N.Y. Oct. 13, 2010) (rejecting claim that records were exempt from federal FOIA disclosure where "the best Treasury can do is opine that disclosure 'could' result in scorn, harassment, stigmatization, as well as efforts to contact" the individuals at issue).

Even if the records at issue implicated a cognizable privacy interest, the legislature has already accounted for those privacy concerns when mandating redaction of certain officer information.  *See* N.Y. Pub. Officers Law § 89(2-b)(a)-(d) (McKinney) (redaction of home addresses, personal telephone numbers, personal email addresses, and information concerning the officer's mental health of substance abuse assistance); *see also* N.Y. Senate, Floor Debate, at 1771-72, https://bit.ly/2FmWHkN (June 9, 2020) (Senators Ashkar and Bailey); *id.* at 1830:1-13, 1840:7-13, 1860:4-7 (statements of Senators Savino, Mayer, and Sepúlveda in support of repeal).

-9-

C.     **The Unions' "Longstanding Policy" Arguments Lack Merit.**

Plaintiffs again trot out an argument based on the City's "longstanding policy" of withholding misconduct records.  Opp. 44-47.  But they ignore that a change in policy is not a violation of Article 78 where the agency provides a rational reason for the change.  *See, e.g.*, *Conversions for Real Estate, LLC v. Zoning Bd. of Appeals of Inc. Vill. of Roslyn*, 31 A.D.3d 635, 636 (2d Dept 2006); *Unif. Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. Cuevas*, 276 A.D.2d 184, 187 (3d Dept 2000); *Inc. Vill. of Ocean Beach v. Dep't of Health Servs., Cty. Of Suffolk*, 277 A.D.2d 453, 454 (2d Dept 2000).  The City's reasoning for releasing records after years of secrecy is clear—§ 50-a was repealed and the City is no longer permitted to withhold these documents.

V.     **LEAVE TO AMEND SHOULD BE DENIED**

The Unions' request for leave to amend should be denied as futile.  *Singh v. Schikan*, No. 14 CIV. 5450 NRB, 2015 WL 4111344, at *1 (S.D.N.Y. June 25, 2015);  *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) abrogated on other grounds by *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013).  The Unions have not indicated how they could salvage their case.  All their alleged harm is both hypothetical and non-cognizable.  There is no reason to conclude that, somehow the Unions will have discovered some real and cognizable harm that they overlooked in the original complaint or their First Amended Complaint.  This warrants denial of the request.  *See In re WorldCom, Inc. Securities Litigation*, 303 F.Supp. 2d 385, 391 (S.D.N.Y. 2004) ("In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile.").

VI.     **CONCLUSION**

For the reasons stated above and in Defendants' and CPR's prior briefing, the First Amended Complaint should be dismissed, with prejudice.

Dated: New York, New York
       November 20, 2020

                                  Respectfully submitted,

                                  Orrick, Herrington & Sutcliffe LLP

                                  By: */s/ Alex V. Chachkes*

| | |
|---|---|
| Baher Azmy | Alex V. Chachkes |
| Darius Charney | Rene Kathawala |
| | Christopher J. Cariello |
| CENTER FOR CONSTITUTIONAL RIGHTS | Margaret Wheeler-Frothingham |
| 666 Broadway | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| New York, New York 10012 | 51 West 52nd Street |
| Tel: (212) 614-6464 | New York, New York 10019 |
| bazmy@ccrjustice.org | Tel: (212) 506-5100 |
| dcharney@ccrjustice.org | achachkes@orrick.com |
| laguirre@ccrjustice.org | rkathawala@orrick.com |
| | ccariello@orrick.com |
| | mwheeler-frothingham@orrick.com |